| | |
|---|---|
| **From:** | Cowie Robb |
| **To:** | Crowell Courtney W |
| **Cc:** | Darby BethAnne |
| **Subject:** | Attorney Client privilege: FC materials |
| **Date:** | Friday, January 06, 2017 9:33:38 AM |
| **Attachments:** | OHA response 03_29_16.docx |
| | Family Care communications plan 03_19_16.docx |
| **Importance:** | High |
| **Sensitivity:** | Confidential |

Fpr your background, here are some of the materials we prepared last year as part of our response to the Family Care litigation.


Robb Cowie
Communications Director
External Relations Division
Oregon Health Authority
robb.cowie@state.or.us
Desk: 503-945-7849
Cell: 503-421-7684
www.oregon.gov/OHA

Exhibit 14
Page 1 of 112
2017.08.10 Updated FamilyCare Comm Request 0001 08/10/2017

OHA_LIT_00208810

DRAFT

Attorney Client Privilege

(Insert reporter's name):

I wanted to give you an update on OHA's negotiations with Family Care. As you know, this dispute is about the $55 million rate overpayment Family Care received in 2015 and Family Care's lack of CMS-approved contracts for 2015 and 2016.

At the most basic level, this disagreement has been driven by Family Care from the start. Family Care objected to its 2015 rates and asked that rates be redeveloped. While OHA was collaborating with Family Care and the other CCOs to develop new rates, Family Care filed suit. In the meantime, Optumas – the independent actuarial firm setting the rates – determined Family Care and other CCOs were actually being overpaid. Now, Family Care has refused to return its overpayment and continues to contest its rates (despite having agreed to 2016 rates), based on a rate redevelopment process they demanded.

While we are disappointed Family Care rejected OHA's most recent offer, we remain hopeful we can find an agreement. Both sides have an interest in a clear, timely resolution. OHA has participated in mediation and negotiation with Family Care for a year now, despite a tone and rhetoric Family Care has employed which is combative and personally demeaning toward OHA's leadership. OHA is committed to ending this dispute.

Given the current impasse, I want to clarify the key issues and correct some of the statements Family Care has made in recent weeks:

- **Family Care is not entitled to keep the $55 million in 2015 rate overpayments**: Family Care's rates are paid for through state dollars and federal matching funds – i.e., Family Care is negotiating over public dollars they received in the form of an overpayment. The overpayment was a direct result of a rate redevelopment process Family Care and other CCOs initiated in 2015. Until the overpayment issue is resolved, Family Care does not have a CMS-approved contract for 2016, according to CMS.
- **Family Care is not entitled to receive a rate of its choosing within the CMS-approved rate range**: Family Care and the other CCOs were assigned rates Optumas developed based on the health risks of each CCO's member population. While Family Care contends they should receive 100 percent of the approved range, OHA is obligated to pay CCOs within CMS-approved parameters:
    - The rates must be actuarially sound for each CCO, according to Optumas.
    - The rates one CCO receives cannot be inequitable in relation to rates paid to other CCOs in the range, otherwise all rates would have to be revised upward. Upward revision to the rates of multiple CCOs jeopardizes OHA's waiver agreement with CMS to stay within a 3.4 percent growth limit.

- **OHA's proposed rates are actuarially sound and do not jeopardize the financial health of any CCOs:** The health and well-being of OHP members depends on the financial strength and stability of the CCOs that serve them. As partners in health care transformation, OHA is committed to the success of all of Oregon's CCOs – the actuarially sound rates approved by Optumas are designed to ensure CCOs are able to serve OHP members profitably. There is no external evidence that Family Care's rates are unsustainable, or that Family Care is financially unable to return its overpayment:
    - o In 2014, Family Care's operating margin was greater than 20 percent, by far the highest margin of any CCO (see attached chart).
    - o Through the first nine months of 2015, Family Care's operating margin was approximately 5 percent.
    - o No other CCOs have reported operating deficits under the current CMS-approved rates.
    - o All other CCOs have paid back their 2015 rate overpayments.

  OHA and Optumas are responsible for paying CCOs appropriate rates approved by CMS. *Oregon and its actuaries are not responsible for business decisions CCOs make that affect their operating margin: e.g., provider contracts, operating expenses (including staff compensation and benefits) and other costs.*

- **Family Care's offer to return a portion of its rate overpayment in exchange for federally-funded enhanced rates puts federal funding for Oregon's Medicaid program at risk**:  Family Care has publicized its offer to repay $47.3 million of its 2015 rate overpayment, in exchange for receiving enhanced rates in 2016 and 2017 for the expanded population eligible for coverage under the ACA. While Family Care is correct in stating their enriched rates would not have an impact on the state general fund (since the expansion population is currently paid for 100 percent through federal dollars), Family Care's windfall risks pushing Oregon's Medicaid expenses past the 3.4 percent CMS-allowed growth rate, since OHA would be obligated to treat all other CCOs equitably and enrich their rates as well. Exceeding the 3.4 percent growth limit would put federal participation in OHP funding at risk.

If we can't reach an agreement, Family Care will be in breach of contract with the state. As we move forward, it is OHA's responsibility to resolve this dispute in a way that protects coverage and benefits for OHP members, maintains federal participation in Oregon's Medicaid program and provides equitable treatment for all CCOs. While we continue to press for a settlement, we can't compromise these principles or allow this process to drag out indefinitely.

Please let me know if you have questions. If you'd like, I'd be happy to set up a time for you to talk more with Lynne or Lori Coyner (our state Medicaid director) if you'd like clarification on any of these issues.

Attorney-Client Privilege

## Family Care Communications Plan

**Situation analysis:**

OHA is seeking to successfully resolve a rate and contract dispute with Family Care. At risk are the soundness of CCO rates, OHA's reputation, and continued federal matching funds for OHP (as well as $55 million in overpayments to Family Care that OHA is required to recover by CMS). OHA has provided Family Care a 14-day breach of contract notice. The dispute may accelerate and intensify toward a high-stakes and high-visibility resolution in coming weeks.

**Goal:**

1. Create conditions for successful resolution of Family Care dispute, which meets OHA's priorities.
    - Key audiences understand and support OHA's efforts to secure appropriate rate repayment from Family Care and protect OHP members and Oregon taxpayers. (Isolate Family Care.)
    - Key audiences understand and support OHA's efforts to resolve current litigation with Family Care.
    - Demonstrate OHA's commitment to resolving Family Care's dispute in a collaborative manner, which maintains the integrity of Oregon's CCOs and health system transformation. (Counter Family Care rhetoric and allegations.)

2. Minimize disruption and worry for OHP members (if necessary).
    - Keep OHP members informed and reassured that OHA will ensure their coverage or benefits will not be interrupted.

3. Maintain OHA's reputation and advance health system transformation.
    - Demonstrate OHA's commitment to coordinated care and better health for OHP members.
    - Demonstrate OHA's focus on cost stewardship and the financial integrity of the health system.

**Strategies**

1. **Stay in close communication with legislators:** Generate support for OHA's goals through regular direct contact with legislators.
2. **Tell OHA's story through targeted earned media:** Generate earned media that effectively tells an accurate story through targeted interviews with key reporters and outlets.
3. **Simplify a complex story through easy to understand tools:** Develop clear and compelling informational resources to support accurate media and stakeholder understanding of the issues.

Exhibit 14
Page 4 of 112
2017.08.10 Updated FamilyCare Comm Request 0004 08/10/2017

OHA_LIT_00208813

4. **Immediately counter Family Care's misinformation:** Correct allegations and distortions as soon as they are issued by Family Care through prompt, informal communication with key media.
5. **Provide timely and appropriate member communications:** If necessary, communicate directly with OHP members enrolled with Family Care to keep them informed about their benefits and coverage.

**Tone:** Measured, reasonable, responsible, and settlement-focused.

**Audiences:**

| Audience | Values/Concerns | Think/Feel/Do | Pathways |
|---|---|---|---|
| Legislators | Relationship with Family Care. Financial impact on General Fund. | **Think:** Understand OHA's urgency in securing rate repayment and reaching agreement that finalizes 2015 contract. **Feel:** Comfortable OHA is working to reach reasonable settlement that protects members and GF. **Do:** Avoid intervening on behalf of Family Care. | Meetings Phone Calls Email |
| CCOs | Stability of system. Equity among CCOs. Predictability in rate-setting. Opportunity to expand market share. | **Think:** Understand how OHA is attempting to settle FC dispute in a way that preserves integrity of CCOs and HST; and why we served breach of contract notice. **Feel:** OHA is a fair and transparent business partner. **Do:** Be prepared for successful transition, if necessary. | Meetings Phone calls Email Memos |
| Health care opinion leaders | Better outcomes and lower costs in health care. OHA's effectiveness in leading health system transformation in OR. | **Think:** OHA is effective in managing health system transformation in OR. **Feel:** Confidence in OHA. **Do:** Support OHA. | Media |

Exhibit 14
Page 5 of 112

2017.08.10 Updated FamilyCare Comm Request 0005 08/10/2017

OHA_LIT_00208814

| OHP members | Better health for themselves and their families. Access to coverage and benefits. | Think: Know how to access health care coverage and benefits. Feel: Confident and calm during any potential transition, if necessary. Do: Obtain care without interruption and report positive experience to policymakers/media. | Letters Media Community media Social media Paid media |
|---|---|---|---|

## Tactics and Deliverables

Italics: Major products and deliverables to be developed.

| Deliverable | OHA solution | Response to FC solution | FC seeks injunction | Post-injunction | Transition |
|---|---|---|---|---|---|
| Legislative outreach | Legislator update (3/15) | Phone calls to legislators | *Legislator update* <br><br> Phone calls to legislators | *Legislator update* <br><br> Phone calls to legislators | *Legislator update* <br><br> Phone calls to legislators |
| Earned media | News release (3/16) Media follow-up (3/17) <br> • PBJ <br> • LR | Continue targeted outreach (3/21): <br> • PBJ <br> • LR <br> • WW <br> • OR <br> • Tribune <br> • OPB | *OHA statement* <br><br> Continue targeted outreach: <br> • PBJ <br> • LR <br> • WW <br> • OR <br> • Tribune <br> • OPB | *News release* <br><br> Continue targeted outreach: <br> • PBJ <br> • LR <br> • WW <br> • OR <br> • Tribune <br> • OPB | *News release* <br><br> News conference <br><br> Continue targeted outreach: <br> • PBJ <br> • LR <br> • WW <br> • OR <br> • Tribune <br> • OPB |
| Myth-busting/ Transparency | | *Side by side comparison of OHA/FC proposed solutions. (TBD)* <br><br> **Rapid response:** *Personalized, informal email* | **Rapid response:** *Personalized, informal email to key reporters correcting inaccuracies in FC statements. (TBD)* | **Rapid response:** *Personalized, informal email to key reporters correcting inaccuracies in FC statements. (TBD)* | **Rapid Response:** *Personalized, informal email to key reporters correcting inaccuracies in FC statements. (TBD)* |

Exhibit 14
Page 6 of 112

2017.08.10 Updated FamilyCare Comm Request 0006 08/10/2017

OHA_LIT_00208815

| | | | | | |
|---|---|---|---|---|---|
| | | to key reporters correcting inaccuracies in FC statements. (TBD)<br><br>Update HST web site to show CCO financial position. (TBD)<br>• Email link to key media. | | | |
| CCO outreach | | Update memo to CCOs who may be affected by transition(TBD):<br>• OHA focused on equitable settlement that protects integrity of system.<br>• OHA will facilitate smooth transition, if necessary. | | Update memo to all CCOs (if OHA prevails).<br><br>Update memo to all CCOs affected by transition (if OHA prevails).<br><br>Conference call with CCOs affected by transition (if OHA prevails). | |
| Member outreach | | | | Letter to FC members.<br><br>Automated calls in home languages.<br><br>Hotline for transition questions. | Letter to FC members.<br><br>Automated calls in home languages.<br><br>Hotline for transition questions.<br><br>Paid media in community |

Exhibit 14<br>Page 7 of 112
2017.08.10 Updated FamilyCare Comm Request 0007 08/10/2017

OHA_LIT_00208816

| | | | | | *news outlets/digital.* *Sponsored social media.* |
|---|---|---|---|---|---|
| | | | | | |

## Metrics

- Legislators are comfortable with OHA's efforts to settle dispute – based on the number and tenor of calls we receive from legislators.
- Earned media accurately reflects OHA's messages and priorities at every stage of the process.
    - Prominence: OHA's messages in first 1-2 paragraphs of articles
    - Placement: coverage reflects OHA's targeted outreach.
    - Accuracy: Media reports correct Family Care misinformation.
- CCOs are comfortable and informed – based on informal feedback in phone calls/emails.
- Members report little anxiety or disruption – based on a significant increase in calls to Member Services.

Exhibit 14
Page 8 of 112

2017.08.10 Updated FamilyCare Comm Request 0008 08/10/2017

OHA_LIT_00208817

OHA's settlement solution is fair to FC and protects members and taxpayers.

- OHA has proposed a settlement that allows repayment over time.
- OHA's offer accounts for disproportionate impact of rate recalculation on FC.

OHA is forced to serve breach of contract notice to protect integrity of CCO system.

- CMS: no valid 2015 contract in place.
- With no valid 2015 contract, OR is liable for as much as $500M.
- OHA cannot agree to special treatment for one CCO.

**OHA is working toward a fair settlement with Family Care that protects OHP members and Oregon taxpayers.**

OHA has proposed a settlement that maintains sound CCO rates and protects state General Fund.

- State is liable for $55M owed CMS if FC doesn't reimburse rate overpayment.
- State is liable for more than $500M if FC does not agree to 2015 contract.

OHA's priority is a settlement, but we are prepared to maintain members' coverage and benefits through a transition, if necessary.

- Proof of urgency and commitment: OR at risk for $500M if FC defaults on contract.
- If no settlement: we are working with other CCOs to cover FC members.

Exhibit 14
Page 9 of 112
2017.08.10 Updated FamilyCare Comm Request 0009 08/10/2017

OHA_LIT_00208818

| From: | Darby BethAnne |
|---|---|
| To: | Crowell Courtney W |
| Cc: | WAHL Jeffrey |
| Subject: | FW: Attorney Client Privilege - Family Care Plan |
| Date: | Monday, January 09, 2017 1:49:00 PM |
| Attachments: | - JUSTICE-#7232668-v1-News_release_- March 16 2016 4pm.docx |
| | - JUSTICE-#7232668-v1-News_release_- March 16 2016 5pm LS FINAL.docx |
| | - Rates and FamilyCare - FAQ - March 2016 copy -4pm.docx |
| | - Rates and FamilyCare - FAQ - March182016.pdf |
| | - Timeline - Rates FamilyCare -- March 16 2016 - 5pm FINAL.docx |
| | 2016-23-03_FAQs_-_FamilyCare_and_OHA_Dispute.pdf |
| | FAQ- Rates and FamilyCare -March 16 2016 -5pm FINAL.docx |
| | OHA response 03_29_16.docx |

Courtney ---As we discussed, attached are most of the docs we created the last time. I am about to send you some of the newer materials. We will want to create a comms plan for Lynne as soon as possible.

Thank,s

**BethAnne Darby**
Director, External Relations Division
OREGON HEALTH AUTHORITY
BethAnne.Darby@state.or.us
503-798-7100
www.oregon.gov/OHA

**From:** Saxton Lynne
**Sent:** Tuesday, January 03, 2017 10:16 AM
**To:** Darby BethAnne <BETHANNE.DARBY@dhsoha.state.or.us>; Black Jeston J <JESTON.J.BLACK@dhsoha.state.or.us>; Cowie Robb <ROBB.COWIE@dhsoha.state.or.us>; Fairbanks Mark R <MARK.R.FAIRBANKS@dhsoha.state.or.us>; Chauhan Varsha <VARSHA.CHAUHAN@dhsoha.state.or.us>; Coyner Lori A <LORI.A.COYNER@dhsoha.state.or.us>; Zachary Aters <zachary.aters@optumas.com>; Busek Rhonda J <RHONDA.J.BUSEK@dhsoha.state.or.us>
**Cc:** SCOTT Carla A <Carla.A.SCOTT@doj.state.or.us>; STINEMAN Renee <Renee.STINEMAN@doj.state.or.us>; Falk Theodore C <theodore.falk@doj.state.or.us>; WAHL Jeffrey <Jeffrey.WAHL@doj.state.or.us>; Souza Theresa <THERESA.SOUZA@dhsoha.state.or.us>
**Subject:** RE: Attorney Client Privilege - Family Care Plan

Hi all – I am asking BethAnne to develop our communication plan for the dispute resolution process; Theresa, I need a 15 minute call with BethAnne to start this process following the work last week. Thank you.

**From:** Saxton Lynne
**Sent:** Friday, December 23, 2016 8:03 AM
**To:** Darby BethAnne <BETHANNE.DARBY@dhsoha.state.or.us>; Black Jeston J <JESTON.J.BLACK@dhsoha.state.or.us>; Cowie Robb <ROBB.COWIE@dhsoha.state.or.us>; Fairbanks Mark R <MARK.R.FAIRBANKS@dhsoha.state.or.us>; Chauhan Varsha

<VARSHA.CHAUHAN@dhsoha.state.or.us>; Coyner Lori A <LORI.A.COYNER@dhsoha.state.or.us>;
Zachary Aters <zachary.aters@optumas.com>; Busek Rhonda J
<RHONDA.J.BUSEK@dhsoha.state.or.us>
**Cc:** SCOTT Carla A <Carla.A.SCOTT@doj.state.or.us>; STINEMAN Renee
<Renee.STINEMAN@doj.state.or.us>; Falk Theodore C <theodore.falk@doj.state.or.us>; WAHL
Jeffrey <Jeffrey.WAHL@doj.state.or.us>; Souza Theresa <THERESA.SOUZA@dhsoha.state.or.us>
**Subject:** Attorney Client Privilege - Family Care Plan

Thank you all for your time. I want to clarify next steps. We will discuss further at our 1:30 call, if not earlier. Again, Carla and Ted, please feel free to step out of the meeting and call my cell.

Mark: Ensure BethAnne's team have all the slides Jeff and Zach shared yesterday; they need to be formatted so they can be used with the media.  Also, I don't have the email referenced on the call this morning regarding FC's other issue so please forward that. Theresa, I will need both an electronic and print set of these slides by COB today.

BethAnne: your team will need to be prepared for a press release today should FC decide to go to court today. I would like your recommendation on a proactive strategy for that possibility.

Varsha: I need to know how many contracts are signed from CCOS and I will need a continuous update on this. Thank you.

Going to another meeting – will follow up.

**Oregon Health Authority proposes resolution to 2015 rate dispute**

The Oregon Health Authority (OHA) presented FamilyCare with a plan for resolving the more than $55 million in rate overpayment FamilyCare received in 2015 to provide care to Oregon Health Plan (OHP) members. OHA offered a monetary settlement to address concerns that FamilyCare had the most significant rate difference when revised 2015 rates were implemented to address issues with the original 2015 rates. This plan would also allow FamilyCare to have an extended period to make the necessary repayments, through December of 2018.

In exchange, FamilyCare would agree to reimburse Oregon for the remaining overpayments; drop its lawsuit challenging OHA to revise rates set for FamilyCare; and agree that they should not have a separate or different methodology than other CCOs.

OHA has also provided FamilyCare a notice of breach of contract in the event the two sides are unable to reach an agreement. OHA has been advised by the federal government's Center for Medicare and Medicaid Services (CMS) that FamilyCare does not have a valid 2015 or 2016 contract in place. Without a CMS-approved agreement in place, FamilyCare is not in compliance with its state contract to provide coordinated care to Oregon Health Plan (OHP) members in the tri-county metro region or to receive federal funding for those services. Despite the lack of CMS-approved contract, OHP members will continue to receive their health plan benefits and are not at risk of losing coverage.

Lynne Saxton, director of the Oregon Health Authority said, "This is a reasonable solution that allows FamilyCare and OHA to move forward and focus on serving members Oregon Health Plan members."

**Federal government calls for sound FamilyCare rates**

At the request of Oregon's coordinated care organizations and with the approval of the Centers for Medicare and Medicaid Services (CMS), OHA redeveloped the 2015 rate methodology and in August 2015 issued revised rates. Based on those rates, FamilyCare was liable to return more than $55 million in overpayments. All other 15 CCOs have signed the 2015 contracts with revised rates based on the new rate-setting methods.  Family Care is the only CCO that has not reimbursed, or began a plan to reimburse, the state and federal government for its 2015 overpayment.

OHA, in consultation with CMS, has been attempting to resolve this matter with FamilyCare. In late February, CMS issued a letter calling for the state to finalize its 2015 contract with FamilyCare based on the new rate methodology, certification and rates. If FamilyCare doesn't sign a 2015 contract with CMS approved rates, the state will be liable for repayment of federal funds already paid to FamilyCare.

 "We have a responsibility to protect the health and well-being of Oregon's most vulnerable citizens --- Oregon Health Plan members," said Lynne Saxton, director of the Oregon Health Authority. "OHA's proposal is in line with the expectations of Oregon's federal partners, as well

as the long-term financial sustainability of our health care system.  Now it's time to move forward and prevent any further worry or disruption for OHP members."

Oregon's Medicaid program is funded approximately three-quarters through federal taxpayer dollars and one-quarter through state funds. Funding for a settlement is not available through federal dollars.

###

**Oregon Health Authority proposes resolution to 2015 rate dispute**

The Oregon Health Authority (OHA) presented FamilyCare with a plan for resolving the more than $55 million in rate overpayment FamilyCare received in 2015 for providing care to Oregon Health Plan (OHP) members. OHA offered a monetary settlement to address FamilyCare's dispute that it had the most significant rate difference, when revised 2015 rates were implemented to address concerns with the original 2015 rates. This plan would also allow FamilyCare to have an extended period to make the necessary repayments, through December of 2018.

In exchange, FamilyCare would agree to reimburse Oregon for the remaining overpayments; drop its lawsuit challenging OHA to revise rates set for FamilyCare; and agree that they should not have a separate or different rate methodology than other CCOs.

OHA has also provided FamilyCare a notice of breach of contract in the event the two sides are unable to reach an agreement. OHA has been advised by the federal government's Center for Medicare and Medicaid Services (CMS) that FamilyCare does not have a valid 2015 or 2016 contract in place. Without a CMS-approved agreement in place, FamilyCare is not in compliance with its state contract to provide coordinated care to Oregon Health Plan (OHP) members in the tri-county metro region or to receive federal funding for those services. Despite the lack of CMS-approved contract, OHP members will continue to receive their health plan benefits and are not at risk of losing coverage.

Lynne Saxton, director of the Oregon Health Authority said, "This is a reasonable solution that allows FamilyCare and OHA to move forward and focus on serving Oregon Health Plan members."

**Federal government calls for sound FamilyCare rates**

At the request of Oregon's coordinated care organizations and with the approval of the Centers for Medicare and Medicaid Services (CMS), OHA redeveloped the 2015 rate methodology and in August 2015 issued revised rates. Based on those rates, FamilyCare was liable to return more than $55 million in overpayments. All other 15 CCOs have signed the 2015 contracts with revised rates based on the new rate-setting methods. Family Care is the only CCO that has not reimbursed, or began a plan to reimburse, the state and federal government for its 2015 overpayment.

OHA, in consultation with CMS, has been attempting to resolve this matter with FamilyCare. In late February, CMS issued a letter calling for the state to finalize its 2015 contract with FamilyCare based on the new rate methodology, certification and rates. If FamilyCare doesn't sign a 2015 contract with CMS approved rates, the state will be liable for repayment of federal funds already paid to FamilyCare.

 "We have a responsibility to protect the health and well-being of Oregon's most vulnerable citizens --- Oregon Health Plan members," said Lynne Saxton, director of the Oregon Health Authority. "OHA's proposal is in line with the expectations of Oregon's federal partners, as well

as the long-term financial sustainability of our health care system.  Now it's time to move forward and prevent any further worry or disruption for OHP members."

Oregon's Medicaid program is funded approximately three-quarters through federal taxpayer dollars and one-quarter through state funds. Funding for a settlement is not available through federal dollars.

###

Exhibit 14
Page 15 of 112
2017.08.10 Updated FamilyCare Comm Request 0015 08/10/2017

OHA_LIT_00208824



# Rates and FamilyCare – Frequently asked questions

## Updated March 18, 2016

How is OHA trying to resolve the overpayment issue with FamilyCare?
The Oregon Health Authority (OHA) presented FamilyCare with a plan for resolving the more than $55 million in rate overpayment FamilyCare received in 2015 to provide care to Oregon Health Plan (OHP) members. OHA offered a monetary settlement to address concerns that FamilyCare had the most significant rate difference when revised 2015 rates were implemented to address issues with the original 2015 rates. This plan would also allow FamilyCare to have an extended period to make the necessary repayments, through December of 2018.

In exchange, FamilyCare would agree to reimburse Oregon for the remaining overpayments; drop its lawsuit challenging OHA to revise rates set for FamilyCare; and agree that they should not have a separate or different methodology than other CCOs.

### What is the role of CMS?

The Center for Medicare and Medicaid Services is the third party to Oregon's Medicaid contract with the federal government. Oregon's Medicaid program is funded approximately three-quarters through federal taxpayer dollars and one-quarter through state funds.

OHA has been advised by the federal government's Center for Medicare and Medicaid Services (CMS) that FamilyCare does not have a valid 2015 or 2016 contract in place. Without an agreement in place, FamilyCare is not in compliance with its state contract to provide coordinated care to Oregon Health Plan (OHP) members in the tri-county metro region. Despite the lack of contract, OHP members will continue to receive their health plan benefits and are not at risk of losing coverage.

### Why didn't OHA accept the proposed solution that FamilyCare offered?

After analyzing FamilyCare's proposed solution, OHA concluded FamilyCare's proposed solution would:

- Be inconsistent with CMS approved 2015 and 2016 rate methodologies;
- Treat FamilyCare differently in regard to payment, violating trust and transparency with other CCOs and CMS; and
- Require addition taxpayer dollars to pay FamilyCare instead of benefiting some of Oregon's most vulnerable citizens-- Oregon Health Plan members.

June 28, 2017
Page **1** of **3**

Exhibit 14
Page 16 of 112
2017.08.10 Updated FamilyCare Comm Request 0016 08/10/2017

OHA_LIT_00208825



### How many CCOs have signed 2015 contract amendments?

To date, 15 of 16 CCOs have signed their 2015 rate amendments. Those rates were approved by CMS in December 2015. The February 2016 letter from CMS confirmed that FamilyCare does not have an approved contract for 2015 or 2016.

### How many OHP members are enrolled in FamilyCare? What's their capacity?

Approximately 128,000 OHP members are enrolled in FamilyCare. They are approved to serve up to 240,000 members.

### Has FamilyCare had a chance to review their rates with OHA?

OHA remains committed to transparency and this was a priority during the 2015 rate redevelopment process. Individuals meetings were held with all the CCOs, including FamilyCare, to review the methodology and answer any questions.

### Why were rates redeveloped?

In January 2015, eleven of Oregon's coordinated care organizations sent a letter to Governor Kitzhaber saying 2015 rates were flawed.

In particular, the issues raised were that the rates varied widely without explanation for CCOs within the same region and that 2015 rates had been developed without transparency. The coordinated care organizations also expressed concern that the 2015 final rates were not presented until late in December 2014 and without adequate opportunity to review.

### How long will OHA use the same rate methodology?

Now that OHA knows that it has an actuarially sound rate methodology, it will continue to use the same methodology for the foreseeable future as the foundation for future rates. This methodology is consistent with CMS's proposed guidelines. OHA used the redeveloped 2015 rate methodology to determine 2016 rates and will use it again for 2017 rates. By statute, all CCOs (including FamilyCare) have 60 days to review and negotiate proposed rates prior to signing the annual contract rate amendment. Oregon's waiver requires that rates stay within 3.4% sustainable rate of growth.

### How did the lawsuit between OHA and FamilyCare develop?

FamilyCare notified OHA that the 2015 rates were not actuarially sound and needed to be redeveloped by law March 2016, prior to seeing the revised 2015 rates. Their lawsuit was filed in May 2015. FamilyCare sued asking for the rates to be redeveloped, which OHA had begun at that time – and then completed in August 2015.

### How did OHA work with Oregon's CCOs to redevelop the rates?

In March 2015, OHA convened Oregon's coordinated care organizations to discuss the challenges and opportunities of redeveloping rates. The outcome of the meeting was that OHA would contract with the actuarial consultant, Optumas, to redevelop the 2015 rates using a revised 2015 rate methodology and certification.

June 28, 2017
Page **2** of **3**

Exhibit 14
Page 17 of 112
2017.08.10 Updated FamilyCare Comm Request 0017 08/10/2017

OHA_LIT_00208826



At the request of Oregon's coordinated care organizations and with the consent of the Centers for Medicare and Medicaid Services, OHA began redeveloping 2015 rates in April 2015, seeking not only to address the 2015 methodological issues but also to establish a solid financial foundation for Oregon's health system in 2016 and beyond. OHA hired Optumas as its actuarial consultant to redevelop the 2015 rate methodology and the 2015 rates, as well develop a methodology that could be applied to future rates.

OHA, coordinated care organizations, and Optumas developed the new methodology through a transparent, intensive process. This process included over 100 meetings between coordinated care organizations, OHA staff, and Optumas. Close coordination, partnership, and transparency with CCOs and their actuaries were key to this successful process. A revised rate methodology and certification for 2015 was completed in August and the same methodology is used for the 2016 rates.

### Did FamilyCare participate in the rate redevelopment meetings with CCOs?
A representative from FamilyCare attended all group meetings. For 2015, FamilyCare attended five individual meetings and 16 group meetings, for a total of 21 meetings on 2015 rate development.  For 2016, FamilyCare attended three individual meetings and six group meetings, for a total of nine meetings.

### What is an overpayment?
As defined in OAR 410-120-0000, overpayment "means a payment made by the Authority to a provider in excess of the correct Authority payment amount for a service. Overpayments are subject to repayment to the Authority."

OHA Contracts with Coordinate Care Organizations specifically define overpayments as "Any payments received by Contractor from OHA under this Contract, and any other payments received by Contractor from OHA, or any other source to which Contractor is not entitled under the terms of this Contract shall be considered an overpayment and may be recovered by OHA from Contractor."

### Would the federal government cover the cost of a settlement?
Funding for a settlement is not available through federal dollars.

June 28, 2017
Page **3** of **3**



# Rates and FamilyCare – Frequently asked questions

## Updated March 18, 2016

How is OHA trying to resolve the overpayment issue with FamilyCare?
The Oregon Health Authority (OHA) presented FamilyCare with a plan for resolving the more than $55 million in rate overpayment FamilyCare received in 2015 to provide care to Oregon Health Plan (OHP) members. OHA offered a monetary settlement to address concerns that FamilyCare had the most significant rate difference when revised 2015 rates were implemented to address issues with the original 2015 rates. This plan would also allow FamilyCare to have an extended period to make the necessary repayments, through December of 2018.

In exchange, FamilyCare would agree to reimburse Oregon for the remaining overpayments; drop its lawsuit challenging OHA to revise rates set for FamilyCare; and agree that they should not have a separate or different methodology than other CCOs.

## What is the role of CMS?

The Center for Medicare and Medicaid Services is the third party to Oregon's Medicaid contract with the federal government. Oregon's Medicaid program is funded approximately three-quarters through federal taxpayer dollars and one-quarter through state funds.

OHA has been advised by the federal government's Center for Medicare and Medicaid Services (CMS) that FamilyCare does not have a valid 2015 or 2016 contract in place. Without an agreement in place, FamilyCare is not in compliance with its state contract to provide coordinated care to Oregon Health Plan (OHP) members in the tri-county metro region. Despite the lack of contract, OHP members will continue to receive their health plan benefits and are not at risk of losing coverage.

## Why didn't OHA accept the proposed solution that FamilyCare offered?

After analyzing FamilyCare's proposed solution, OHA concluded FamilyCare's proposed solution would:

- Be inconsistent with CMS approved 2015 and 2016 rate methodologies;
- Treat FamilyCare differently in regard to payment, violating trust and transparency with other CCOs and CMS; and
- Require addition taxpayer dollars to pay FamilyCare instead of benefiting some of Oregon's most vulnerable citizens-- Oregon Health Plan members.

March 18, 2016
Page **1** of **3**

Exhibit 14
Page 19 of 112
2017.08.10 Updated FamilyCare Comm Request 0019 08/10/2017

OHA_LIT_00208828



### How many CCOs have signed 2015 contract amendments?
To date, 15 of 16 CCOs have signed their 2015 rate amendments. Those rates were approved by CMS in December 2015. The February 2016 letter from CMS confirmed that FamilyCare does not have an approved contract for 2015 or 2016.

### How many OHP members are enrolled in FamilyCare? What's their capacity?
Approximately 128,000 OHP members are enrolled in FamilyCare. They are approved to serve up to 240,000 members.

### Has FamilyCare had a chance to review their rates with OHA?
OHA remains committed to transparency and this was a priority during the 2015 rate redevelopment process. Individuals meetings were held with all the CCOs, including FamilyCare, to review the methodology and answer any questions.

### Why were rates redeveloped?
In January 2015, eleven of Oregon's coordinated care organizations sent a letter to Governor Kitzhaber saying 2015 rates were flawed.

In particular, the issues raised were that the rates varied widely without explanation for CCOs within the same region and that 2015 rates had been developed without transparency.  The coordinated care organizations also expressed concern that the 2015 final rates were not presented until late in December 2014 and without adequate opportunity to review.

### How long will OHA use the same rate methodology?
Now that OHA knows that it has an actuarially sound rate methodology, it will continue to use the same methodology for the foreseeable future as the foundation for future rates.  This methodology is consistent with CMS's proposed guidelines.  OHA used the redeveloped 2015 rate methodology to determine 2016 rates and will use it again for 2017 rates.  By statute, all CCOs (including FamilyCare) have 60 days to review and negotiate proposed rates prior to signing the annual contract rate amendment. Oregon's waiver requires that rates stay within 3.4% sustainable rate of growth.

### How did the lawsuit between OHA and FamilyCare develop?
FamilyCare notified OHA that the 2015 rates were not actuarially sound and needed to be redeveloped by law March 2016, prior to seeing the revised 2015 rates. Their lawsuit was filed in May 2015. FamilyCare sued asking for the rates to be redeveloped, which OHA had begun at that time – and then completed in August 2015.

### How did OHA work with Oregon's CCOs to redevelop the rates?
In March 2015, OHA convened Oregon's coordinated care organizations to discuss the challenges and opportunities of redeveloping rates. The outcome of the meeting was that OHA would contract with the actuarial consultant, Optumas, to redevelop the 2015 rates using a revised 2015 rate methodology and certification.

March 18, 2016
Page **2** of **3**



At the request of Oregon's coordinated care organizations and with the consent of the Centers for Medicare and Medicaid Services, OHA began redeveloping 2015 rates in April 2015, seeking not only to address the 2015 methodological issues but also to establish a solid financial foundation for Oregon's health system in 2016 and beyond. OHA hired Optumas as its actuarial consultant to redevelop the 2015 rate methodology and the 2015 rates, as well develop a methodology that could be applied to future rates.

OHA, coordinated care organizations, and Optumas developed the new methodology through a transparent, intensive process. This process included over 100 meetings between coordinated care organizations, OHA staff, and Optumas. Close coordination, partnership, and transparency with CCOs and their actuaries were key to this successful process. A revised rate methodology and certification for 2015 was completed in August and the same methodology is used for the 2016 rates.

### Did FamilyCare participate in the rate redevelopment meetings with CCOs?
A representative from FamilyCare attended all group meetings. For 2015, FamilyCare attended five individual meetings and 16 group meetings, for a total of 21 meetings on 2015 rate development.  For 2016, FamilyCare attended three individual meetings and six group meetings, for a total of nine meetings.

### What is an overpayment?
As defined in OAR 410-120-0000, overpayment "means a payment made by the Authority to a provider in excess of the correct Authority payment amount for a service. Overpayments are subject to repayment to the Authority."

OHA Contracts with Coordinate Care Organizations specifically define overpayments as "Any payments received by Contractor from OHA under this Contract, and any other payments received by Contractor from OHA, or any other source to which Contractor is not entitled under the terms of this Contract shall be considered an overpayment and may be recovered by OHA from Contractor."

### Would the federal government cover the cost of a settlement?
Funding for a settlement is not available through federal dollars.

March 18, 2016
Page **3** of **3**

Exhibit 14
Page 21 of 112
2017.08.10 Updated FamilyCare Comm Request 0021 08/10/2017

OHA_LIT_00208830

OHA Rate Development Timeline

**July 2014**
OHA receives a corrective action from CMS stating that OHA needed to change its rate methodology and no longer use the cost template methodology.

**Fall 2014**
The 2015 capitation rates are developed by OHA in-house actuaries using a CCO-specific methodology that was certified by OHA's internal actuary.

**December 24, 2014**
CCOs received final 2015 rates included in their contracts for 2015. They had six days to sign without a comment period.

**January 2015**
Eleven of Oregon's sixteen coordinated care organizations sent a letter to Governor Kitzhaber saying 2015 rates are flawed. In particular, the issues were that the rates varied widely without explanation for CCOs within the same region and that 2015 rates had been developed without transparency. The coordinated care organizations also expressed concern that the 2015 final rates were not presented until late in December 2014 and without adequate opportunity to review and provide input.

Family Care meets with OHA to object to rate methodology used in 2014 for 2015 rates.

**March 2015**
FamilyCare notifies OHA that they believe the 2015 rates are not actuarially sound, need to be corrected, and made retroactive to January 1, 2015.

OHA convenes Oregon's all 16 coordinated care organizations to discuss the challenges and opportunities of redeveloping rates. The outcome of the meeting was that OHA would contract with the actuarial consultant, Optumas, to redevelop the 2015 rates using a revised 2015 rate methodology and certification. The effective date of those rates was not determined.

OHA received a letter from CMS that requested the certifying in-house actuary answer 103 questions regarding the original 2015 capitation rates.

**April 2015 through August 2015**
At the request of Oregon's coordinated care organizations and with the consent of the Centers for Medicare and Medicaid Services, OHA began redeveloping 2015 rates, seeking not only to address the 2015 methodological issues but also to establish a solid financial foundation for Oregon's health system in 2016 rates and beyond.

OHA commits to hiring Optumas as its actuarial consultant to redevelop the 2015 rate methodology and the 2015 rates as well develop a methodology that could be applied to future rates.

OHA, the coordinated care organizations, and Optumas make progress on developing the new methodology through a transparent, intensive process that included over 100 meetings between

OHA_LIT_00208831

coordinated care organizations, OHA staff, and Optumas, OHA's actuarial contractor. Close coordination, partnership, and transparency with CCOs were key to this successful process. Revised rate methodology and certification for 2015 was completed in August and the same methodology was used for the 2016 rates. FamilyCare attended all group meetings. For 2015, FamilyCare attended 5 individual meetings and 16 group meetings, for a total of 21 meetings on 2015 rate development.  For 2016, FamilyCare attended 3 individual meetings and 6 group meetings, for a total of 9.

### May 2015
Family Care sues OHA, based on their March 2015 intent to file a lawsuit (prior to new rate methodology being determined). The lawsuit demands that OHA re-develop the 2015 rates to satisfy federal law requirements that they be actuarially sound, and also demanded that OHA apply the re-developed rates retroactive to January 1, 2015.

### July 13, 2015
OHA and Optumas released the regional rate ranges to the CCOs for the redeveloped 2015 rates.

### July 21, 2015
OHA and Optumas released the payment rates within the rate ranges to each CCO. The payment rate was chosen within the rate range by OHA, in conjunction with Optumas, after analyzing sustainable growth targets of 3.4% and waiver requirements. At this time, OHA had scheduled meetings with CMS to discuss the effective date of the rates.

### July 27, 2015 and August 10, 2015
OHA had calls with CMS to discuss the effective date of the redeveloped rates. CMS advised OHA their preference was to approve only one rate methodology for 2015 and gave verbal acknowledgement that the redeveloped rates were consistent with CMS/OACT regulations and proposed rules.

### August 19, 2015
OHA and Optumas released the payment rates within the rate ranges to each CCO with an effective date of January 1, 2015.

The agency accomplished both requirements of the Family Care lawsuit with its August rate setting: 1) actuarially sound rates; and 2) retroactive to January 1, 2015.

### August 21, 2015
OHA received a formal letter from CMS regarding the redeveloped rates and the preferred effective date of January 1, 2015.

### August 28, 2015
OHA submitted the 2015 redeveloped rate methodology, certification, and rates to CMS for review and approval. The actuarial certification and contract rate sheets are available on the OHP rates website: www.oregon.gov/oha/analytics/Pages/OHPrates.aspx.

### August 31, 2015

CCOs received their executable 2015 contract amendment with the redeveloped 2015 rates.

September 2015
Legislative days focus on rates and health system transformation. CCOs see 2016 rate ranges.

October 2015
15 out of 16 CCOs sign their 2015 contract amendments containing redeveloped rates. These annual amendments are required in the CCO's contract.

November 2015
FamilyCare fails to sign the 2015 contract amendment containing redeveloped rates. CMS sends letter signaling intent to approve 2015 redeveloped rate methodology, certification, and rates; OHA begins mediation with FamilyCare. OHA sends Letter of Interest request to certified CCOs to ensure members are served in 2016 regardless of the lawsuit. FamilyCare confirms they are interested in serving members in 2016.  OHA sends CCOs 2016 contracts with 60 day notice.

December 2015
The Centers for Medicare and Medicaid Services approve the 2015 redeveloped rate methodology, certification, and contracts. OHA continues mediation efforts with Family.Care. FamilyCare signs the 2016 contract, which is based on the same methodology as the 2015 rates.

February 2016
OHA receives a letter from CMS regarding FamilyCare's unapproved and unapprovable 2015 and 2016 contracts. The CMS letter indicates that FamilyCare's refusal to accept the rates approved by CMS have put at risk the state's ability to draw down federal funds for 2015 and 2016.

March 2016
OHA reviews FamilyCare's proposal and concludes that it would: 1) violate CMS-approved 2015 and 2016 rate methodologies and certifications (OHA has not yet received CMS approval of the 2016 rate methodology and certification, but anticipates it based on the similar, approved 2015 rate methodology); and 2) treat FamilyCare differently in regard to payment, violating trust and transparency with other CCOs and CMS. For these actuarial, financial, and policy reasons, OHA does not accept FamilyCare's proposal.

The Oregon Health Authority issues a 14-day breach of contract notice to FamilyCare to resolve the overpayment in rates FamilyCare received for 2015.  OHA requests that FamilyCare sign their 2015 contract amendment; repay the overpayment; and withdraw their lawsuit.

*Definition of overpayment:*
As defined in OAR 410-120-0000, overpayment "means a payment made by the Authority to a provider in excess of the correct Authority payment amount for a service. Overpayments are subject to repayment to the Authority."

OHA contracts with Coordinate Care Organizations specifically define overpayments as "Any payments received by Contractor from OHA under this Contract, and any other payments

OHA_LIT_00208833

received by Contractor from OHA, or any other source to which Contractor is not entitled under the terms of this Contract shall be considered an overpayment and may be recovered by OHA from Contractor."

OHA_LIT_00208834



## FAMILYCARE HEALTH'S DISPUTE WITH THE OREGON HEALTH AUTHORITY (OHA) -
## FREQUENTLY ASKED QUESTIONS

### What is FamilyCare?

FamilyCare is an Oregon Not for Profit Corporation. It was founded in 1984 and has been serving the Medicaid population for the last 32 years.

### What are the basic issues at hand?

There are two issues: 1) the methodology used by the OHA to set the reimbursement rates paid to the Coordinated Care Organizations (CCOs) for services provided to Oregon Health Plan members; and 2) the unfair treatment of FamilyCare in the process.

### How was FamilyCare treated differently?

The state developed 2015 and 2016 rates based on costs, but costs were not counted the same for all CCOs.  Unlike several of the CCO's, FamilyCare is a single corporate entity, with no subsidiaries or sub-contractors. As a result, all of FamilyCare's revenues and costs are itemized on a single balance sheet, and are not passed through to subsidiaries and sub-contractors (related entities). OHA's rate methodology only calculates the profits of the CCO contractor. Profits that are passed through to related entities (i.e. sub-contractors, partners, risk accepting entities) are treated as costs, thereby inflating their premium structure and negatively impacting FamilyCare's premium structure. It is estimated that approximately $400 million in CCO profits were actually counted as costs in 2014.

### Why did FamilyCare file a lawsuit?

FamilyCare filed a lawsuit in May, 2015 after months of attempts to engage OHA in a dialog about the 2015 rate setting process, resulting in a 9% decrease of FamilyCare's rates as compared to 2014.  This was greater than any other plan. It is important to note that CMS had similar concerns which were transmitted in a list of 100+ questions to OHA in March, 2015.

### Why was FamilyCare asked to pay back money?

OHA decided to redo the rate setting process in the summer of 2015 and apply the new rates retroactively (claw back) to January, 2015. The rates were recalculated using a regional rate range versus the individual rate plan methodology OHA used previously.  OHA made the final decision on where CCOs rates fell within the regional range.

OHA issued a contract amendment in September requiring CCOs to pay back funds if their new rates were lower than their original 2015 rates.  The new rates reduced FamilyCare's reimbursement by another 11% for a total reduction of 19.2% compared to 2014 rates.



825 NE Multnomah St., Suite 1400, Portland, OR 97232  |  P: 503-222-2880 F: 503-345-5720  |  www.familycareinc.org



## Why didn't FamilyCare sign the contract amendment?

Oregon law requires CCO premium rates to be established "prospectively." An opinion by Oregon Legislative Council affirmed OHA's lack of authority to retroactively apply revised rates and claw back overpayments based on those rates. Additionally, there were no requirements from CMS to retroactively apply the revised rates.

## Why does FamilyCare bring up transparency concerns?

OHA has consistently not responded to, and refused requests made by FamilyCare and its attorneys for information:

- OHA claimed information that was previously publicly available is now proprietary.
- OHA asked CCO's to "vote" on what they wanted to release in response to FamilyCare's request.
- OHA has outstanding public records requests from FamilyCare that date back to January 2015.

All of these requests relate to data included in the rate calculations for 2015 and how pass-through profits to related entities were treated.

## What about all the meetings OHA had with CCOs to develop the rates?

Several meetings does not equate to transparency or collaboration.  FamilyCare has participated in meetings, raising concerns and requesting information.  OHA failed to respond. Concerns expressed by FamilyCare, still unanswered, relate to inconsistency in OHA reporting requirements, incomplete data validation and fair treatment of related party transactions.

## What about Mediation?

FamilyCare entered into mediation with OHA in late 2015; OHA terminated mediation on March 14, 2016 and demanded FamilyCare sign their settlement proposal without modification. Three days later, OHA delivered a revised demand letter to FamilyCare.  Subsequent counter-proposals have been offered by both parties.

## What is FamilyCare's current proposal?

FamilyCare's most recent proposal, offered on Monday March 21, would require FamilyCare to repay OHA $47.3 million for 2015 and its rates for 2015 and 2016 would be increased for the ACA population. This increase would be fully funded by the federal government and have *no impact* on the state general fund.

Contrary to OHA's statements that FamilyCare's prior proposal is inconsistent with CMS-approved rates, FamilyCare received confirmation from PricewaterhouseCoopers that the proposal is "consistent with the approved rate ranges" as required by CMS's February 24, 2016 letter to OHA. As such, FamilyCare's prior proposal would have allowed OHA to avoid a loss of over $500 million in matching federal funds.



825 NE Multnomah St., Suite 1400, Portland, OR 97232 | P: 503-222-2880 F: 503-345-5720 | www.familycareinc.org



The same is true of FamilyCare's current proposal.  It proposes rates within the CMS-approved rate ranges and would allow OHA to obtain full federal funding to avoid the projected $500 million loss.  Additionally, the current proposal employs the exact same rate methodology adopted by OHA.

Under the current 2016 OHA rates, FamilyCare expects to incur a loss of $31.6 million.  The expected 2016 loss has been confirmed by Milliman, an independent actuarial firm. To FamilyCare's knowledge, no other CCO is projecting a loss for 2016, based on their OHA rates.

### Correcting the Record on OHA Statements

1.  *FamilyCare is asking to be treated differently than other CCO's*. Contrary to OHA's statements, FamilyCare filed the lawsuit last year claiming that OHA was treating it differently in its rate setting process.  OHA's most recent (March 22) proposal acknowledges that the 2015 and 2016 reimbursement rates for FamilyCare were calculated using a flawed methodology.

2.  *FamilyCare's proposals are inconsistent with CMS approved 2015 and 2016 rate methodologies*. Contrary to OHA's statements that FamilyCare's proposals are inconsistent with CMS-approved rates, FamilyCare received confirmation from PricewaterhouseCoopers that FamilyCare's proposals are "consistent with the approved rate ranges" as required by CMS's February 24, 2016 letter to OHA. As such, FamilyCare's proposals allow OHA to avoid a loss of over $500 million in matching federal funds.  OHA's most recent proposal agrees to accept FamilyCare's suggested revisions to its 2015 rates.  However, the new proposal does not include a revision to 2016 rates.  OHA previously indicated the rate methodology must be consistent for both years.

3.  *CMS required OHA to redo the rate setting process for 2015*. Contrary to OHA's statements, CMS never rejected the original 2015 rates submitted by OHA.  They only submitted a lengthy list of questions.  OHA unilaterally decided to completely redo the rates and apply them retroactively.

4.  *FamilyCare does not have a valid 2015 or 2016 contract in place*. Contrary to OHA's statements, FamilyCare has contracts for 2015 and 2016, both of which have been signed by OHA and FamilyCare.  OHA drafted the language for both contracts.

5.  *FamilyCare's settlement proposals cannot be funded through federal dollars*. Our settlement proposals are revisions to the rates within the CMS approved rate ranges and add no cost to the state general fund. OHA has proposed a lump sum payment from the state general fund. FamilyCare is requesting a rate revision, consistent with the OHA rate methodology, not a lump sum payment.



825 NE Multnomah St., Suite 1400, Portland, OR 97232 | P: 503-222-2880 F: 503-345-5720 | www.familycareinc.org



6. *FamilyCare had a chance to review their rates with OHA.* Contrary to OHA's statements, FamilyCare attended meetings. However, information requested was not distributed, nor released. This information was critical for FamilyCare to adequately understand how OHA was developing the rates. Without this information, FamilyCare could not raise informed questions or challenges to the process.

7. *The 2015 and 2016 rates are actuarially sound for FamilyCare.* The actuarial opinion certified by Optumas states clearly that the rate ranges for each region are actuarially sound, but the rates for each CCO may not be actuarially sound. Rates cannot be sound if they produce a prospective deficit. Under the current 2016 OHA rates, Milliman, an independent actuarial firm, predicts that FamilyCare will incur a loss of $31.6 million in 2016. To FamilyCare's knowledge, no other CCO is projecting a loss for 2016, based on their OHA rates. Prior to 2015, rates were developed and certified as actuarially sound for each CCO at the individual level. In the development of the 2015 rates, OHA and Optumas, changed the process to certify rates as actuarially sound only at the regional level, versus CCO level. It's unclear why the process was changed in this manner.



Exhibit 14
Page 29 of 112
2017.08.10 Updated FamilyCare Comm Request 0029 08/10/2017

OHA_LIT_00208838

Rates and FamilyCare – Frequently asked questions – March 2016

**How is OHA trying to resolve the overpayment issue with FamilyCare?**
The Oregon Health Authority (OHA) presented FamilyCare with a plan for resolving the more than $55 million in rate overpayment FamilyCare received in 2015 to provide care to Oregon Health Plan (OHP) members. OHA offered a monetary settlement to address concerns that FamilyCare had the most significant rate difference when revised 2015 rates were implemented to address issues with the original 2015 rates. This plan would also allow FamilyCare to have an extended period to make the necessary repayments, through December of 2018.

In exchange, FamilyCare would agree to reimburse Oregon for the remaining overpayments; drop its lawsuit challenging OHA to revise rates set for FamilyCare; and agree that they should not have a separate or different methodology than other CCOs.

**What is the role of CMS?**

The Center for Medicare and Medicaid Services is the third party to Oregon's Medicaid contract with the federal government.

OHA has been advised by the federal government's Center for Medicare and Medicaid Services (CMS) that FamilyCare does not have a valid 2015 or 2016 contract in place. Without an agreement in place, FamilyCare is not in compliance with its state contract to provide coordinated care to Oregon Health Plan (OHP) members in the tri-county metro region. Despite the lack of contract, OHP members will continue to receive their health plan benefits and are not at risk of losing coverage.

**Why didn't OHA accept the proposed solution that FamilyCare offered?**

After analyzing FamilyCare's proposed solution, OHA concluded FamilyCare's proposed solution would:

- Be inconsistent with CMS approved 2015 and 2016 rate methodologies;
- Treat FamilyCare differently in regard to payment, violating trust and transparency with other CCOs and CMS; and
- Require addition taxpayer dollars to pay FamilyCare instead of benefiting some of Oregon's most vulnerable citizens-- Oregon Health Plan members.

**How many CCOs have signed 2015 contract amendments?**
To date, 15 of 16 CCOs have signed their 2015 rate amendments. Those rates were approved by CMS in December 2015. The February 2016 letter from CMS confirmed that FamilyCare does not have an approved contract for 2015 or 2016.

**How many OHP members are enrolled in FamilyCare? What's their capacity?**
Approximately 128,000 OHP members are enrolled in FamilyCare. They are approved to serve up to 240,000 members.

### Has FamilyCare had a chance to review their rates with OHA?
OHA remains committed to transparency and this was a priority during the 2015 rate redevelopment process. Individuals meetings were held with all the CCOs, including FamilyCare, to review the methodology and answer any questions.

### Why were rates redeveloped?
In January 2015, eleven of Oregon's coordinated care organizations sent a letter to Governor Kitzhaber saying 2015 rates were flawed.

In particular, the issues raised were that the rates varied widely without explanation for CCOs within the same region and that 2015 rates had been developed without transparency.  The coordinated care organizations also expressed concern that the 2015 final rates were not presented until late in December 2014 and without adequate opportunity to review.

### How did the lawsuit between OHA and FamilyCare develop?
FamilyCare notified OHA that the 2015 rates were not actuarially sound and needed to be redeveloped by law March 2016, prior to seeing the revised 2015 rates. Their lawsuit was filed in May 2015. FamilyCare sued asking for the rates to be redeveloped, which OHA had begun at that time – and then completed in August 2015.

### How did OHA work with Oregon's CCOs to redevelop the rates?
In March 2015, OHA convened Oregon's coordinated care organizations to discuss the challenges and opportunities of redeveloping rates. The outcome of the meeting was that OHA would contract with the actuarial consultant, Optumas, to redevelop the 2015 rates using a revised 2015 rate methodology and certification.

At the request of Oregon's coordinated care organizations and with the consent of the Centers for Medicare and Medicaid Services, OHA began redeveloping 2015 rates in April 2015, seeking not only to address the 2015 methodological issues but also to establish a solid financial foundation for Oregon's health system in 2016 and beyond. OHA hired Optumas as its actuarial consultant to redevelop the 2015 rate methodology and the 2015 rates, as well develop a methodology that could be applied to future rates.

OHA, coordinated care organizations, and Optumas developed the new methodology through a transparent, intensive process. This process included over 100 meetings between coordinated care organizations, OHA staff, and Optumas. Close coordination, partnership, and transparency with CCOs and their actuaries were key to this successful process. A revised rate methodology and certification for 2015 was completed in August and the same methodology is used for the 2016 rates.

### Did FamilyCare participate in the rate redevelopment meetings with CCOs?
A representative from FamilyCare attended all group meetings. For 2015, FamilyCare attended five individual meetings and 16 group meetings, for a total of 21 meetings on 2015 rate development.  For 2016, FamilyCare attended three individual meetings and six group meetings,

for a total of nine meetings.

**What is an overpayment?**
As defined in OAR 410-120-0000, overpayment "means a payment made by the Authority to a provider in excess of the correct Authority payment amount for a service. Overpayments are subject to repayment to the Authority."

OHA contracts with Coordinate Care Organizations specifically define overpayments as "Any payments received by Contractor from OHA under this Contract, and any other payments received by Contractor from OHA, or any other source to which Contractor is not entitled under the terms of this Contract shall be considered an overpayment and may be recovered by OHA from Contractor."

**Would the federal government cover the cost of a settlement?**
Funding for a settlement is not available through federal dollars.

DRAFT

Attorney Client Privilege

(Insert reporter's name) / Oregon Legislators

Today the Oregon Health Authority provided a technical response to FamilyCare's latest proposal. As you know, this dispute is about the $55 million rate overpayment FamilyCare received in 2015 and FamilyCare's lack of CMS-approved contracts for 2015 and 2016.

At the most basic level, this disagreement has been driven by Family Care from the start. Family Care (and most other CCOs) objected to OHA's original 2015 rates and asked OHA to revise them to ensure that they were actuarially sound. While OHA was collaborating with FamilyCare and the other CCOs to develop revised 2015 rates, FamilyCare filed a legal suit challenging the original rates.  They demanded that revised rates be developed and retroactive to January 2015. As part of this process, Optumas – the independent actuarial firm setting the rates – determined that FamilyCare and five other CCOs were actually being overpaid, and that others were actually being underpaid. Even though all of the 15 other CCOs have resolved their 2015 contract rate amendment -- including returning all applicable overpayments, Family Care is continuing to demand special treatment. FamilyCare refuses to return its overpayment and continues to contest the 2015 redeveloped rates created through the collaborative and transparent process they demanded.

While we are disappointed FamilyCare rejected OHA's most recent offer, we remain hopeful we can find agreement. Both sides have an interest in a clear, timely resolution. OHA has participated in mediation and negotiation with Family Care for over a year now.  OHA is committed to ending this dispute, despite FamilyCare's combative tone and rhetoric.

With all of this in mind, OHA wants to clarify the key issues and correct some of the statements Family Care has made recently:

- **FamilyCare is not entitled to keep the $55 million in 2015 rate overpayment**: FamilyCare's rates are paid for through state dollars paid by taxpayers, and federal matching funds – i.e., FamilyCare is negotiating to keep public dollars they received in the form of an overpayment. The overpayment was a direct result of a rate redevelopment process FamilyCare and other CCOs initiated in 2015. *In that process, Optumas determined that FamilyCare had enjoyed significant but inflated profits and had failed to deliver medical services meeting minimal medical loss ratio requirements.*  Until the overpayment issue is resolved, FamilyCare does not have a CMS-approved contract for 2016, according to CMS.

- **FamilyCare is not entitled to receive a rate of its own choosing within the CMS-approved rate range for Oregon**: FamilyCare and the other CCOs were assigned rates Optumas developed based on the health risks of each CCO's member population. While FamilyCare contends they should receive 100 percent of the approved range, OHA is obligated to pay CCOs within CMS-approved parameters:

- o The rates must be actuarially sound for each CCO, according to Optumas.
- o The rates one CCO receives cannot be inequitable in relation to rates paid to other CCOs in the range, otherwise all rates would have to be revised upward. Upward revision to the rates of multiple CCOs jeopardizes OHA's waiver agreement with CMS to stay within a 3.4 percent growth limit.

- **OHA's proposed rates are actuarially sound and do not jeopardize the financial health of any CCOs:** The health and well-being of OHP members depends on the financial strength and stability of the CCOs that serve them. As partners in health care transformation, OHA is committed to the success of all of Oregon's CCOs -- however, we want our CCO partners to be financially sound so they can serve OHP members, not maximize their profit margins. There is no external evidence that FamilyCare's operations are unsustainable, or that Family Care is financially unable to return its overpayment:
  - o In 2014, Family Care's operating margin was greater than 20 percent, by far the highest margin of any CCO (see attached chart).
  - o Through the first nine months of 2015, Family Care's operating margin was approximately 5 percent.
  - o No other CCOs have reported operating deficits under the current CMS-approved rates.
  - o All other CCOs have paid back their 2015 rate overpayments.

  OHA and Optumas are responsible for paying CCOs appropriate rates approved by CMS. *Oregon and its actuaries are not responsible for business decisions CCOs make that affect their operating margin: e.g., provider contracts, operating expenses (including staff compensation and benefits) and other costs.*

- **Family Care's offer to return a portion of its rate overpayment in exchange for federally-funded enhanced rates puts federal funding for Oregon's Medicaid program at risk**: FamilyCare has publicized its offer to repay $47.3 million of its 2015 rate overpayment, in exchange for receiving enhanced rates in 2015 and 2016 for the expanded population eligible for coverage under the ACA. While FamilyCare is correct in stating their enriched rates would not have an impact on the state general fund (since the expansion population is currently paid for 100 percent through federal dollars), FamilyCare's windfall risks pushing Oregon's Medicaid expenses past the 3.4 percent CMS-allowed growth rate, since OHA would be obligated to treat all other CCOs equitably and enrich their rates as well. Exceeding the 3.4 percent growth limit would put federal participation in OHP funding at risk.

If we can't reach an agreement, FamilyCare will be in breach of contract with the state. As we move forward, it is OHA's responsibility to resolve this dispute in a way that protects coverage and benefits for OHP members, maintains federal participation in Oregon's Medicaid program and provides equitable treatment for all CCOs. While we continue to press for a settlement, we can't compromise these principles or allow this process to drag out indefinitely.

Please let me know if you have questions. If you'd like, I'd be happy to set up a time for you to talk more with Lynne Saxton, OHA Director or Lori Coyner (our state Medicaid director) if you'd like clarification on any of these issues.

Exhibit 14
Page 35 of 112

2017.08.10 Updated FamilyCare Comm Request 0035 08/10/2017

OHA_LIT_00208844

| From: | Darby BethAnne |
|---|---|
| To: | Crowell Courtney W |
| Cc: | WAHL Jeffrey |
| Subject: | FC: Atty / Client Privilege |
| Date: | Monday, January 09, 2017 2:26:00 PM |
| Attachments: | Re FamilyCare v. OHA Mediation Strategy.msg |
| | 20161230 Dispute Resolution Agreement (fully executed).pdf |
| | CCO Margin Comparison.pdf |
| | TriCounty Summary Final.xlsx |
| | TriCounty Summary Final.pdf |

For use preparing the comms plan... thanks!

**BethAnne Darby**
Director, External Relations Division
OREGON HEALTH AUTHORITY
BethAnne.Darby@state.or.us
503-798-7100
www.oregon.gov/OHA

Exhibit 14
Page 36 of 112
2017.08.10 Updated FamilyCare Comm Request 0036 08/10/2017

OHA_LIT_00208845

PERKINSCOIE

1120 NW Couch Street
10th Floor
Portland, OR 97209-4128

● +1.503.727.2000
● +1.503.727.2222
PerkinsCoie.com

December 30, 2016

Stephen F. English
SEnglish@perkinscoie.com
D.  +1.503.727.2003

Renee Stineman
Attorney-in-Charge, Special Litigation Unit
Oregon Department of Justice
1162 Court Street NE
Salem, OR 97301

Re:    FamilyCare v. OHA: Dispute Resolution Agreement

Dear Renee:

Thank you again for taking the time to meet with us last week.  FamilyCare, Inc. ("FamilyCare") would like to have a binding agreement in place on the next steps and protocol for resolution of its disputes (the "Dispute Resolution") with the Oregon Health Authority ("OHA") regarding the rates under the 2017 amendment to FamilyCare's CCO Contract (the "2017 Amendment" to the "Contract").

The following is the protocol for the Dispute Resolution:

1. FamilyCare and OHA (together, the "parties") agree that FamilyCare will sign the 2017 Amendment before December 31, 2016, but that by so signing, FamilyCare will not waive any rights to contest—or any grounds for contesting—the 2017 rates and that, should the Dispute Resolution process prove unsuccessful, FamilyCare may challenge its 2017 rates and if necessary, seek retroactive changes to those rates.  Similarly, by signing the 2017 Amendment, OHA will not waive any rights with respect to the Contract or any claims or allegations brought by FamilyCare.  OHA will present the 2017 Amendment to the Centers for Medicare and Medicaid Services ("CMS") for approval.  OHA may represent to CMS that the 2017 Amendment is binding under state law.

2. The parties intend to conduct a free and open discussion between them regarding the appropriate application of actuarial rates including such issues as appropriateness of the methodology, whether geographic areas come in to play with respect to methodology, the actuarial soundness of the rates, an explanation by OHA as to why OHA believes the rates are sound in light of CMS approvals, and any alternative actuarially sound methodology proposed by FamilyCare.

3. Actuaries for OHA and actuaries for FamilyCare should be present at any such meeting and in the same room so that there can be an actuary-to-actuary discussion with appropriate questions posed by counsel for OHA or counsel for FamilyCare.  Each of the

Perkins Coie LLP

Renee Stineman
December 30, 2016
Page 2

parties will designate in advance the actuaries who will be present for the duration of the Dispute Resolution.

4. The Dispute Resolution will begin at the first date reasonably available for both parties and their actuaries and attorneys. Subsequent meetings will be scheduled at the first dates reasonably available for both parties and their actuaries and attorneys.

5. The parties commit to participating in good faith in at least three substantive Dispute Resolution discussions starting during the next 30 days with the first discussion occurring no later than January 17, 2017 and the second discussion occurring no later than 30 days following that date. If the parties have not resolved the dispute after engaging in those Dispute Resolution discussions, the parties may agree to negotiate and enter into a formal Mediation Agreement to move the Dispute Resolution into a mediation. The parties agree that they will work cooperatively to select a mediator as quickly as possible. (In this regard, someone such as former Chief Justice Paul DeMuniz or former judge Janice Wilson would be a strong selection). FamilyCare will pay the cost of the mediator.

6. The parties agree that they will work cooperatively and provide information that either OHA's actuary or FamilyCare's actuary believes is relevant and necessary to evaluate actuarial rates, subject to protection of confidential information such as trade secrets, personal or private health information, or other information not subject to disclosure under Oregon's public records law ("Confidential Information"). If the parties conclude that the Dispute Resolution requires review of Confidential Information, the parties will cooperatively work toward an agreement for protection of Confidential Information (by, for example, providing Confidential Information to an independent third-party expert).

7. The Dispute Resolution can take place at a mutually agreeable location. Perkins Coie will make available its office as necessary to accommodate both parties.

8. The Dispute Resolution protocol would include a presentation by FamilyCare through a combination of its actuary and counsel to outline and demonstrate why the actuarial methodology is unsound and to provide a specific alternative proposal based on a methodology within the limits of OHA's waiver, a response by OHA through a combination of its actuary and counsel, and a mutual attempt to understand and if possible resolve the differences. OHA understands and agrees that if it does not provide the information that FamilyCare's actuary believes is relevant and necessary to establish actuarial rates, then FamilyCare's ability to provide a specific alternative proposal will be limited.

9. FamilyCare believes that:

123045-0001/134026738.2
Perkins Coie LLP

Exhibit 14
Page 38 of 112
2017.08.10 Updated FamilyCare Comm Request 0038 08/10/2017

OHA_LIT_00208847

Renee Stineman
December 30, 2016
Page 3

- The proposed 2017 rates violate the settlement agreement between OHA and FamilyCare. Under the agreement, OHA covenanted that it would "not use rates paid to FamilyCare under the 2016 contract or the settlement credit as a basis for limiting the amount that can be paid to FamilyCare in future rate years," unless required by the Section 1115 Demonstration Project ("Waiver").

  OHA's proposal to reduce FamilyCare's payments by at least $34 million in 2017 because of the reimbursement amount FamilyCare has paid to primary care providers since November 2014 is a clawback of the settlement credit and a claim by OHA to recover amounts paid to FamilyCare before the proposed 2017 rates were issued. The clawback not only violates the Agreement, but is a retroactive rate amendment in violation of Oregon law, and the Waiver does not require OHA to implement the clawback.

- The proposed 2017 rates further violate the settlement agreement, as well as the Contract and federal law, because they are not actuarially sound for two reasons.

  First, actuarial soundness requires that rates be sufficient to cover the CCO's expected expenses. But the 2017 rates are insufficient to cover FamilyCare's proposed expenses for the upcoming year.

  Second, actuarial soundness requires that rates be developed using actuarially sound methodologies. While the precise details of the methodology utilized by OHA remain unclear, OHA's proposal to pay significantly different rates for the two CCOs serving the same population in the TriCounty region indicates that its methodology is unsound. Problems with the methodology include, but are not necessarily limited to, the inconsistent application of various methods, including selectively and inconsistently switching between cost-relativity and risk-scoring methods across different categories and changing the basis for rate components between statewide data, regional data, and plan-specific data.

  At bottom, OHA's justification for the difference in rates between the two TriCounty CCOs does not make sense. OHA states that the 16% difference in the proposed 2017 rates for FamilyCare and Health Share results from a higher-risk profile among Health Share's members. But that seems implausible, given that the two CCOs serve the same geographic area, that both have significant numbers of members, and that those members are, for the most part, randomly assigned between the two CCOs.

10. The parties:

123045-0001/134026738.2
Perkins Coie LLP

OHA_LIT_00208848

Renee Stineman
December 30, 2016
Page 4

    a.  Agree that the Dispute Resolution will be conducted with the actuaries present, counsel for the parties present, and top level executives of FamilyCare and OHA.

    b.  Agree that any Dispute Resolution and face-to-face discussions will be conducted at the highest level of professionalism and courtesy, all with the goal toward accomplishing a prompt resolution satisfactory to both parties.

11. You have requested identification of claims, which will be made in the FamilyCare lawsuit. Specifically, the complaint alleges claims for specific performance, for declaratory relief, and for judicial review under ORS 183.480(3), as follows:

- The first claim is for specific performance of the settlement agreement. As discussed above, the proposed 2017 rates violate the settlement agreement because OHA's proposal to reduce FamilyCare's payments by at least $34 million in 2017 is a clawback of the settlement credit.

- The second claim is for a declaration enjoining OHA from implementing the clawback or from using actuarially unsound methods based on the rates paid to FamilyCare in 2016 to limit the amounts paid to FamilyCare in 2017.

- The third claim seeks an order compelling OHA to comply with the settlement agreement.

- In addition to the violations of the settlement agreement's prohibition on using 2016 or prior rates as a basis for limiting future rates to FamilyCare, the complaint also alleges that the 2017 rates further violate the settlement agreement and federal law because they are actuarially unsound, and that the 2017 Amendment violates the prohibitions on multiple amendments and on retroactive amendments.

12. The parties agree that the following obligations will survive termination of the Dispute Resolution:

    a.  All written and oral communications relating to the Dispute Resolution between December 23, 2016 through conclusion of any mediation will be considered settlement communications governed by Oregon Evidence Code Rule 408 (ORS 40.190).

    b.  The parties will not subpoena or otherwise examine or seek to compel discovery of any internal communications (including but not limited to communications with a

123045-0001/134026738.2
Perkins Coie LLP

Renee Stineman
December 30, 2016
Page 5

party's officers, board members, or expert advisers) regarding the Dispute
Resolution between December 23, 2016 through conclusion of any mediation.

I hope this letter is sufficient in detail to allow you to determine whether a Dispute Resolution
with FamilyCare would make sense from OHA's perspective. From the perspective of
FamilyCare we are willing to make a good faith effort to resolve our differences and, all things
considered, would prefer not moving forward with the lawsuit if we can reach an agreement.
Thank you for your consideration.

If the foregoing is acceptable, please confirm OHA's acceptance by your signature below.

Very truly yours,

Stephen F. English

Accepted:

Renee Stineman

cc:     Theodore Falk; Jeff Wahl; Carla Scott; Jeff Heatherington; Bill Murray; Tom Johnson;
        Melanie Curtice; Matt Gordon

123045-0001/134026738.2
Perkins Coie LLP

Exhibit 14
Page 41 of 112
2017.08.10 Updated FamilyCare Comm Request 0041 08/10/2017

OHA_LIT_00208850

# Family Care Rate Change Summary

| COA | May 2015 MMs | 2014 Rate | 2015 Rate | 1H 2016 Rate | 2H 2016 Rate | 2017 Rate |
|---|---|---|---|---|---|---|
| TANF | 7,024 | $ 332.50 | $ 349.41 | $ 351.51 | $ 361.69 | $ 341.51 |
| PLMA | 2,844 | $ 323.15 | $ 430.80 | $ 416.87 | $ 419.60 | $ 337.84 |
| CHILD 00-01 | 4,176 | $ 476.10 | $ 526.53 | $ 527.94 | $ 527.97 | $ 567.96 |
| CHILD 01-05 | 15,083 | $ 123.09 | $ 121.86 | $ 124.04 | $ 132.87 | $ 134.80 |
| CHILD 06-18 | 29,954 | $ 144.06 | $ 140.33 | $ 140.07 | $ 141.01 | $ 146.57 |
| DUAL-MEDS | 1,615 | $ 199.16 | $ 245.11 | $ 256.15 | $ 266.52 | $ 326.09 |
| ABAD & OAA | 3,029 | $ 820.80 | $ 1,079.79 | $ 1,150.65 | $ 1,161.33 | $ 1,238.10 |
| CAF | 1,591 | $ 625.37 | $ 517.83 | $ 517.89 | $ 520.47 | $ 525.29 |
| ACA 19-44 | 40,359 | $ 508.08 | $ 296.93 | $ 308.65 | $ 316.49 | $ 304.56 |
| ACA 45-54 | 10,806 | $ 518.34 | $ 479.58 | $ 502.66 | $ 515.46 | $ 552.11 |
| ACA 55-64 | 9,038 | $ 549.08 | $ 512.94 | $ 538.97 | $ 550.05 | $ 583.17 |
| Maternity | 151 | $ 9,626.57 | $ 9,120.77 | $ 9,288.99 | $ 9,288.99 | $ 9,127.76 |
| Total (Non-ACA) | 65,315 | $ 255.22 | $ 272.32 | $ 276.36 | $ 280.86 | $ 285.46 |
| Total (ACA) | 60,203 | $ 516.08 | $ 362.14 | $ 378.05 | $ 387.26 | $ 390.82 |
| Total | 125,518 | $ 380.34 | $ 315.40 | $ 325.13 | $ 331.89 | $ 335.99 |

1) All rates shown are net of HRA.

2) SNRG rates not shown

3) ACA includes ACA 19-44, ACA 45-54, ACA 55-64

4) 2H 2016 reflects mid-year policy changes

5) Totals reflect weighted average using May 2015 Member Months (MMs)

6) Premium (Rates) do not include any settlement amounts from 2015 mediation

| COA | May 2015 MMs | 2014 Rate | 2015 Rate | 1H 2016 Rate | 2H 2016 Rate | 2017 Rate |
|---|---|---|---|---|---|---|
| Total (Non-ACA) | 65,315 | $ 255.22 | $ 272.32 | $ 276.36 | $ 280.86 | $ 285.46 |
| % Change | | | 6.7% | 1.5% | 1.6% | 1.6% |
| Total (ACA) | 60,203 | $ 516.08 | $ 362.14 | $ 378.05 | $ 387.26 | $ 390.82 |
| % Change | | | -29.8% | 4.4% | 2.4% | 0.9% |
| Total | 125,518 | $ 380.34 | $ 315.40 | $ 325.13 | $ 331.89 | $ 335.99 |
| % Change | | | -17.1% | 3.1% | 2.1% | 1.2% |





Optumas

Exhibit 14
Page 42 of 112

2017.08.10 Updated FamilyCare Comm Request 0042 08/10/2017

OHA_LIT_00208851

# ACA Rates vs Actual Medical Cost

| COA | May 2015 MMs | 2014 Rate | 2014 Medical Cost | 2015 Rate | 2015 Medical Cost |
|---|---|---|---|---|---|
| ACA 19-44 | 40,359 | $ 508.08 | $ 221.40 | $ 296.93 | $ 261.12 |
| ACA 45-54 | 10,806 | $ 518.34 | $ 356.87 | $ 479.58 | $ 449.23 |
| ACA 55-64 | 9,038 | $ 549.08 | $ 387.08 | $ 512.94 | $ 492.76 |
| Total (ACA) | 60,203 | $ 516.08 | $ 270.59 | $ 362.14 | $ 329.66 |
| Implied MLR | | | 52.4% | | 91.0% |

1) Rates are shown net of HRA
2) Total (ACA) is calculated using May 2015 MMs for weighting
3) 2014/2015 Actual cost is based on submitted financial template
   The 2014 Medical cost column includes 2015 dental rates as a placeholder,
   since those costs are omitted from FC 2014 template.
4) Implied MLR is just an estimate using the submitted financial template



Optumas
Risk · Strategy · Reform

Exhibit 14
Page 43 of 112
2017.08.10 Updated FamilyCare Comm Request 0043 08/10/2017

OHA_LIT_00208852

# Medical PMPMs

| Medical PMPMs | FamilyCare | HealthShare |
|---|---|---|
| CY2014 | $ 243.79 | $ 324.88 |
| CY2015 | $ 294.67 | $ 334.29 |
| CY2016 (Through March) | $ 327.85 | $ 336.75 |
| **Growth Rates** | FamilyCare | HealthShare |
| 2014/2015 | 20.9% | 2.9% |
| 2015/2016 | 11.3% | 0.7% |



1) Medical PMPMs are based on Income Statements provide to OHA



Exhibit 14
Page 44 of 112

2017.08.10 Updated FamilyCare Comm Request 0044 08/10/2017

OHA_LIT_00208853

## Risk Factor Summary

| COA | FamilyCare | HealthShare | Diff |
|---|---|---|---|
| TANF | 0.95 | 1.03 | -8.4% |
| PLMA | 1.00 | 1.00 | 0.0% |
| CHILD 00-01 | 1.00 | 1.00 | 0.0% |
| CHILD 01-05 | 0.97 | 1.01 | -3.9% |
| CHILD 06-18 | 1.01 | 1.00 | 1.6% |
| ABAD & OAA Duals | 1.00 | 1.00 | 0.0% |
| ABAD & OAA Medicaid Only | 0.86 | 1.03 | -16.2% |
| CAF | 1.00 | 1.00 | 0.0% |
| ACA 19-44 | 0.94 | 1.04 | -9.4% |
| ACA 45-54 | 0.94 | 1.04 | -9.1% |
| ACA 55-64 | 0.95 | 1.03 | -8.0% |
| BCCP | 1.00 | 1.00 | 0.0% |



1) Risk Factors are normalized across Tri-County region
2) A risk factor of 1.0 reflects average risk for COAs that are risk adjusted
3) The following COAs are not risk adjusted:  BCCP, CAF, ABAD&OAA Duals, PLMA and Child 00-01

Optumas

Exhibit 14
Page 45 of 112

2017.08.10 Updated FamilyCare Comm Request 0045 08/10/2017

OHA_LIT_00208854

| From: | Darby BethAnne |
| --- | --- |
| To: | Crowell Courtney W |
| Cc: | Cowie Robb |
| Subject: | FW: slide deck |
| Date: | Tuesday, January 17, 2017 2:11:00 PM |
| Attachments: | Deck for FCI-OHA Meeting v 3.pptx |
| | ATT00001.htm |

FYI --- Thoughts on an eta for a comms plan for FC?  Thanks,

**BethAnne Darby**
Director, External Relations Division
OREGON HEALTH AUTHORITY
BethAnne.Darby@state.or.us
503-798-7100
www.oregon.gov/OHA

**Assistant: MiKayla Marcott (MiKayla.Marcott@state.or.us)**

**From:** Saxton Lynne
**Sent:** Tuesday, January 17, 2017 11:23 AM
**To:** Darby BethAnne <BETHANNE.DARBY@dhsoha.state.or.us>
**Cc:** Fairbanks Mark R <MARK.R.FAIRBANKS@dhsoha.state.or.us>
**Subject:** Fwd: slide deck

BethAnne - here is the slide deck for today's dispute resolution process. First, this is a good heads up about the sophistication of their communication. Second, this will be helpful to us in developing our communication strategy and timeline. Please let us know when you would like to schedule discussion of our strategy. Mark, Lori, Zach and Jeff Wahl should be include in the first discussion and Ted and Renee after we have reviewed a draft internally. Thank you.

Sent from my iPad

Begin forwarded message:

> **From:** Fairbanks Mark R <MARK.R.FAIRBANKS@dhsoha.state.or.us>
> **Date:** January 17, 2017 at 11:15:12 AM PST
> **To:** Saxton Lynne <LYNNE.SAXTON@dhsoha.state.or.us>
> **Subject: Fwd: slide deck**
>
> Of interest and still in session but will call around noonish
>
> Sent from my iPhone
>
> Begin forwarded message:
>
> > **From:** "Fairbanks Mark R"
> > <MARK.R.FAIRBANKS@dhsoha.state.or.us>
> > **To:** "GUEST Chelsea A" <Chelsea.A.GUEST@dhsoha.state.or.us>,
> > "Fritsche Jeffrey P" <JEFFREY.P.FRITSCHE@dhsoha.state.or.us>,