Stephen F. English, OSB No. 730843
SEnglish@perkinscoie.com
Thomas R. Johnson, OSB No. 010645
TRJohnson@perkinscoie.com
Alletta Brenner, OSB No. 142844
ABrenner@perkinscoie.com
Brian Samuelson, OSB No. 165476
BSamuelson@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Telephone:  503.727.2000
Facsimile:  503.727.2222

Matthew Gordon, *pro hac vice*
MGordon@perkinscoie.com
Nicholas Hesterberg, *pro hac vice*
NHesterberg@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone:  206.359.8000
Facsimile:  206.359.9000

*Attorneys for Plaintiff FamilyCare, Inc.*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| FAMILYCARE, INC., an Oregon non-profit corporation,<br><br>  Plaintiff,<br><br>  v.<br><br>OREGON HEALTH AUTHORITY, an agency of the State of Oregon, PATRICK ALLEN, both individually and in his official capacity as director of the Oregon Health Authority, and LYNNE SAXTON,<br><br>  Defendants. | No. 6:18−cv−00296−MO<br><br>FAMILYCARE, INC.'S OPPOSITION TO PATRICK ALLEN'S MOTION TO DISMISS OR STRIKE<br><br>ORAL ARGUMENT REQUESTED |

FAMILYCARE, INC.'S OPPOSITION TO PATRICK
ALLEN'S MOTION TO DISMISS OR STRIKE

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ............................................................................................... 1

II.     BACKGROUND .................................................................................................. 1

III.    LEGAL STANDARD........................................................................................... 6

IV.     ARGUMENT ....................................................................................................... 7

        A.      Patrick Allen knowingly participated in OHA's effort to retaliate
                against FamilyCare's exercise of its First Amendment rights. ................... 7

        B.      FamilyCare's right to be free from government retaliation for
                exercise of its First Amendment rights is clearly established.................. 12

                1.      Preexisting law establishes that Allen's retaliation against
                        FamilyCare was unlawful ........................................................... 13

                2.      Allen's attempt to define away FamilyCare's claim is
                        unavailing...................................................................................... 17

V.      CONCLUSION.................................................................................................. 19

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Allen v. Scribner*,
812 F.3d 426 (9th Cir.), *amended*, 828 F.2d 1445 (9th Cir. 1987) ....................................8, 15

*Alpha Energy Savers, Inc. v. Hansen*,
381 F.3d 917 (9th Cir. 2004) ...............................................................................7, 16, 18

*CarePartners, LLC v. Lashway*,
545 F.3d 867 (9th Cir. 2008) ........................................................................................15

*Coszalter v. City of Salem*,
320 F.3d 968 (9th Cir. 2003) ................................................................................ passim

*Cunningham v. Gates*,
229 F.3d 1271 (9th Cir. 2000) .......................................................................................18

*Deorle v. Rutherford*,
272 F.3d 1272 (9th Cir. 2001) .......................................................................................18

*Fayer v. Vaughn*,
649 F.3d 1061 (9th Cir. 2011) .........................................................................................6

*Gilbrook v. City of Westminster*,
177 F.3d 839 (9th Cir. 1999) .........................................................................................16

*Hope v. Peltzer*,
536 U.S. 730 (2002)...............................................................................................13, 18

*Jensen v. City of Oxnard*,
145 F.3d 1078 (9th Cir. 1998) .................................................................................13, 18

*Johnson v. Multnomah County*,
48 F.3d 420 (9th Cir. 1995) ...........................................................................................16

*Kelley v. Borg*,
60 F.3d 664 (9th Cir. 1995) ......................................................................................13, 18

*Keyser v. Sacramento City Unified Sch. Dist.*,
265 F.3d 741 (9th Cir. 2001) ...............................................................................9, 10, 15, 17

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

# TABLE OF AUTHORITIES
## (continued)

**Page**

*LSO, Ltd. v. Stroh*,
  205 F.3d 1146 (9th Cir. 2000) ....................................................................................18

*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*,
  429 U.S. 274 (1977)...............................................................................................7, 8

*Nelson v. City of Davis*,
  685 F.3d 867 (9th Cir. 2012) ....................................................................................13

*Robinson v. York*,
  566 F.3d 817 (9th Cir. 2009) ...............................................................................13, 16

*Roth v. Veteran's Admin.*,
  856 F.2d 1401 (9th Cir. 1988) ..................................................................................16

*Saucier v. Katz*,
  533 U.S. 194 (2001)...............................................................................................7, 13

*Soranno's Gasco, Inc. v. Morgan*,
  874 F.2d 1310 (9th Cir. 1989) ........................................................................... passim

*Thomas v. Carpenter*,
  881 F.2d 828 (9th Cir. 1989) ......................................................................................7

*Todd v. United States*,
  849 F.2d 365 (9th Cir. 1988) .....................................................................................17

*Whittlestone, Inc. v. Handi-Craft Co.*,
  618 F.3d 970 (9th Cir. 2010) ......................................................................................6

*Williams v. California*,
  764 F.3d 1002 (9th Cir. 2014)...............................................................................8, 9

*Yamamoto v. Omiya*,
  564 F.2d 1319 (9th Cir. 1977) ....................................................................................6

**STATUTES**

42 U.S.C. § 1983................................................................................................... passim

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

**RULES**

Rule 12(b)(6)......................................................................................................................6

Rule 12(f) ...........................................................................................................................6

**OTHER AUTHORITIES**

U.S. Const. amend. I ................................................................................................. passim

U.S. Const. amend. VIII......................................................................................................18

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

## I.    INTRODUCTION

After taking the helm of the Oregon Health Authority in September 2017, Patrick Allen doubled down on the agency's efforts to silence FamilyCare's criticisms of and challenges to its actions by forcing FamilyCare out of business.  Allen contends that he is entitled to qualified immunity from FamilyCare's claim against him under 42 U.S.C. § 1983 because his conduct against FamilyCare does not amount to First Amendment retaliation and because FamilyCare's right to be free of such retaliation is not clearly established.  Allen is wrong on both counts. FamilyCare's allegations regarding Allen are more than sufficient to state a First Amendment retaliation claim, and a long line of Ninth Circuit decisions set forth the right of any company— and of a government contractor or employee in particular—to speak on matters of public concern free of adverse actions by government officials like those alleged here.  The Court should deny Allen's motion to dismiss.

## II.    BACKGROUND

As the Court is aware from the briefing on the prior motions to dismiss and motion for leave to amend the complaint, FamilyCare alleges that the directors of OHA orchestrated an ultimately successful effort to drive FamilyCare out of business.   Defendant and former director Lynne Saxton was forced to resign in August 2017 after OHA's campaign to smear FamilyCare came to light.  *See* Fourth Amended Complaint ("FAC") ¶ 56.  Undeterred, her replacement— defendant Patrick Allen—finally succeeded where Saxton could not, forcing FamilyCare to leave the market after demanding that FamilyCare sign a contract amendment within 24 hours and without knowing what the rates would be, in clear violation of Oregon law and the parties' contract.  *See id.* ¶¶ 71-76.

That FamilyCare was targeted for elimination was no coincidence:  FamilyCare had long been a thorn in the side for OHA and its directors.  Based on its concerns with the accuracy of the initial 2015 capitation rates, FamilyCare notified OHA that the rates were incorrect,

1-    FAMILYCARE, INC.'S OPPOSITION TO PATRICK
       ALLEN'S MOTION TO DISMISS OR STRIKE

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

requested information necessary to evaluate OHA's rate-setting decisions, and ultimately sued OHA. *Id.* ¶¶ 20-22. Thereafter, OHA redeveloped the rates so as to reduce FamilyCare's 2015 rates by nearly an additional 11% from the 2014 rates. *Id.* ¶¶ 24-25. FamilyCare again expressed its concerns about the adequacy and accuracy of the rates and the data underlying them, and again requested that OHA furnish information about the rate-setting process. *Id.* When OHA failed to address FamilyCare's concerns, FamilyCare refused to sign the contract amendment incorporating the redeveloped 2015 rates. *Id.* ¶ 26. This time, OHA sued FamilyCare, seeking an order permitting OHA to terminate FamilyCare's contract and drive it from the Medicaid market. *Id.* ¶¶ 27-28. Ultimately, the parties settled the dispute about the redeveloped 2015 rates, with OHA committing to establish an independent rate verification process and agreeing not to use a settlement credit or the 2016 rates as a basis to limit FamilyCare's rates in the future. *Id.* ¶¶ 30-32.

Despite the settlement agreement, the 2017 rates developed by FamilyCare were, on average, the lowest of those offered to all 16 CCOs, ensuring that FamilyCare would incur significant operating losses. *Id.* ¶ 33. FamilyCare again spoke out, requesting that OHA act upon its promise of transparency regarding rate development and release data underlying the rates. *Id.* ¶¶ 34-35. OHA again refused to provide the data and demanded that FamilyCare sign an incomplete version of the 2017 amendment before January 1, 2017. *Id.* ¶¶ 35-37. After FamilyCare's protests, the parties entered a dispute resolution agreement under which FamilyCare agreed to sign the 2017 amendment before December 31, 2016 and to delay filing any lawsuit so that the parties could cooperatively work to resolve the dispute over rates. *Id.* ¶¶ 38.

OHA—led by former director Lynne Saxton—did not participate in good faith in the dispute resolution process. *See id.* ¶¶ 41-58. To the contrary, OHA refused to furnish key data, disclose information about the rate setting process, or otherwise contribute meaningfully to the

2- FAMILYCARE, INC.'S OPPOSITION TO PATRICK ALLEN'S MOTION TO DISMISS OR STRIKE

process. *Id.* ¶¶ 41-45, 52. At the same time, Saxton and her staff used information provided by FamilyCare in the dispute resolution process for its smear campaign against FamilyCare. *Id.* ¶¶ 46-51. The "communications plan" approved by Saxton was, in OHA's own words, designed to portray FamilyCare as an "outlier" that is "more concerned with the bottom line and increasing revenues than the health of Oregonians"; to "hurt [FamilyCare's] credibility in the news"; and to promote the only other competing CCO operating in the Portland metropolitan area, Health Share, at FamilyCare's expense. *Id.* ¶¶ 54-55. When details of the smear campaign became publicly known, Saxton halfheartedly apologized and then tendered her resignation as director of OHA, effective August 31, 2017. *Id.* ¶ 56.

Patrick Allen took over as director of OHA on September 1, 2017. *Id.* ¶ 59. Despite FamilyCare's hope that installation of a new leader at OHA would end the agency's efforts to target FamilyCare for elimination, Allen promptly continued where his predecessor had left off. When FamilyCare raised its concerns about data errors and methodological problems underlying the 2018 rate development process, OHA continued to refuse to live up to its promise of transparency. *Id.* ¶¶ 59-60. In October 2017, OHA presented to FamilyCare 2018 rates that it knew were inadequate, unsound, and which would cause FamilyCare to incur a nearly $100 million operating loss in 2018. *Id.* ¶¶ 61-64. After an outside actuarial firm identified deficiencies with OHA's rate setting methodologies, OHA announced that it would revisit the 2018 rates. *Id.* ¶¶ 65-67.

As it had before, FamilyCare voiced its concerns about the rate development process and the data used to calculate capitation rates. *Id.* ¶¶ 67-69. In early December 2017, OHA admitted that the data errors identified by FamilyCare necessitated a rate redetermination analysis that would materially affect FamilyCare's 2018 rates, and committed to provide FamilyCare a "preliminary analysis" of the redetermination no earlier than December 29, 2017—the last business day of the year and the last day to sign the 2018 contract amendment—so that

3- FAMILYCARE, INC.'S OPPOSITION TO PATRICK ALLEN'S MOTION TO DISMISS OR STRIKE

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

FamilyCare could determine whether to sign the amendment and continue providing services to Oregon's Medicaid recipients. *Id.* ¶ 69. To assist in the redetermination process, FamilyCare shared detailed information about how correction of the rates could impact FamilyCare and its ability to stay in business. *Id.* ¶ 70. FamilyCare believed that Allen and OHA would use this information to develop appropriate rates that would permit FamilyCare to operate, thereby avoiding an unnecessary disruption on Oregon's Medicaid system. *Id.* Instead, Allen and OHA used the information to aid in their policy decision to put FamilyCare out of business. *Id.*

On December 20, 2017, Allen gave FamilyCare an ultimatum, demanding that FamilyCare decide within 24 hours whether to sign the 2018 rate amendment. *Id.* ¶ 71. In doing so, Allen shortened the deadline for signing the amendment by 10 days, even though OHA had yet to provide any of the promised analysis on what compensation FamilyCare would receive in 2018, and despite the fact that Oregon law requires OHA to provide CCOs 60 days' advance notice of contract amendments. *Id.* When FamilyCare requested additional information, Allen refused, stating that OHA was implementing a transition plan to move FamilyCare's members and providers to other CCOs. *Id.* ¶ 72. The decision to eliminate FamilyCare had been made. Lacking information about the rates it would actually receive in 2018, but rightfully concerned about the adequacy of those rates, FamilyCare had no choice but to decline to sign the 2018 contract on December 21, as demanded by Allen. *Id.* ¶ 73. At 4:55 PM on December 29, 2017, with five minutes left in the last business day of the year, OHA informed FamilyCare that, as a result of data errors that FamilyCare had been raising for years, OHA might adjust the 2018 rates anywhere between zero and five percent. *Id.* ¶ 75. Having already been forced to make a decision about the contract with incomplete information, FamilyCare began the process of shutting down its Medicaid business on January 1, 2018. *Id.* ¶¶ 75-76. Only after FamilyCare was driven from the marketplace did OHA issue a "CY18 Rate Update," stating that the agency had decided to address the data errors that FamilyCare had previously identified and OHA had

4-  FAMILYCARE, INC.'S OPPOSITION TO PATRICK
     ALLEN'S MOTION TO DISMISS OR STRIKE

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

previously recognized.  *Id.* ¶ 78.  For FamilyCare, this change in its rates would have resulted in an increase of no less than $20 million in additional compensation under the contract had FamilyCare continued to provide Medicaid services to Oregon Health Plan members throughout 2018.  *Id.*

FamilyCare's persistent and vocal criticism of OHA, Allen, and Saxton has included multiple rounds of litigation, including this case.  On April 25, 2018, FamilyCare moved for leave to amend its complaint to add a Section 1983 claim and to add Lynne Saxton as a defendant based on Saxton's and Allen's retaliation against FamilyCare's exercise of its First Amendment rights.  *See generally* Dkt. 85.  In opposing FamilyCare's motion, Allen argued that the proposed amendment was futile because FamilyCare's allegations were insufficient to state a claim of retaliation and because FamilyCare's right to be free from retaliation was not clearly established, meaning that Allen and Saxton were entitled to qualified immunity.  *See* Dkt. 91 at 7-10.  As in this motion, Allen argued that FamilyCare's allegations did not establish a nexus between FamilyCare's protected speech and Allen's conduct.  *Compare* Dkt. 91 at 8 ("Here, FamilyCare does not allege facts that would allow the Court to draw the reasonable inference that FamilyCare's protected First Amendment activity was a substantial factor in the alleged decision to retaliate.") *with* Dkt. 115 at 4 ("Here, FamilyCare fails to allege facts that would allow the Court to draw the reasonable inference that Allen was involved in any retaliation or that FamilyCare's protected First Amendment activity was a causative factor for actions alleged in the Fourth Amended Complaint by Allen (or anyone else).").  Focusing, appropriately, on the case law assessing First Amendment retaliation claims brought by government contractors, Allen further argued that FamilyCare's right to be free from retaliation was not "clearly established," and thus FamilyCare's proposed amendment was futile.  *See* Dkt. 91 at 9-10.

In response, FamilyCare argued that amendment was not futile because the proposed changes sufficiently stated a First Amendment retaliation claim and the defendants were not

5-  FAMILYCARE, INC.'S OPPOSITION TO PATRICK
     ALLEN'S MOTION TO DISMISS OR STRIKE

entitled to qualified immunity. *See* Dkt. 99 at 8-14. As to the former, FamilyCare set forth the allegations establishing that FamilyCare's First Amendment conduct was a substantial or motivating factor for defendants' targeting of FamilyCare and explained that Allen (and Saxton) were personally involved in the initiatives that unfairly targeted FamilyCare. *Id.* at 9-10. As to the latter, FamilyCare detailed the wealth of authority clearly establishing that a government official may be held personally liable for violating a company or individual's First Amendment rights when the official responds to protected speech by taking action that impairs the company's ability to operate. *Id.* at 10-14. Thereafter, the Court granted FamilyCare's motion for leave to amend. *See* Dkt. 111.

## III.    LEGAL STANDARD

"When evaluating a motion to dismiss under Rule 12(b)(6), courts are to accept the well-pleaded factual allegations of a complaint as true and construe all inferences in favor of the nonmoving party." Opinion and Order on Motions to Dismiss [Dkt. 106] at 9-10 (citing *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 864 (9th Cir. 2016)). Accordingly, "[a] motion to dismiss will only be granted if the complaint fails to allege 'enough facts to state a claim to relief that is plausible on its face.'"[1] *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Where a defendant raises the affirmative defense of qualified immunity, courts employ "a two-step process" by "assess[ing] whether the state actor's conduct violated a constitutional right when viewed in the light most favorable to the party asserting the injury" and "determin[ing]

---

[1] Allen purports to move the Court to "dismiss and/or strike the First Claim for Relief" on qualified immunity grounds, Mot. at 1, but fails to address the applicable legal standard for a motion to strike or to otherwise explain how his motion to strike differs from his motion to dismiss. In any event, Rule 12(f) merely permits a court to strike "redundant, immaterial, impertinent, or scandalous matter" from a pleading so as to avoid litigating "spurious issues," *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (quotations omitted) and a motion to strike is "neither an authorized nor a proper way to procure the dismissal of all or part of a complaint." *Yamamoto v. Omiya*, 564 F.2d 1319, 1327 (9th Cir. 1977) (citation omitted). Allen's motion to strike should thus be denied.

6-    FAMILYCARE, INC.'S OPPOSITION TO PATRICK
    ALLEN'S MOTION TO DISMISS OR STRIKE

whether the right violated was clearly established." Opinion and Order on Motions to Dismiss [Dkt. 106] at 9-10 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

## IV. ARGUMENT

Allen's motion to dismiss should be denied because FamilyCare alleges facts sufficient to state a claim that Allen unlawfully retaliated against FamilyCare's exercise of its First Amendment rights and because FamilyCare's right to be free of such retaliation is clearly established.

### A. Patrick Allen knowingly participated in OHA's effort to retaliate against FamilyCare's exercise of its First Amendment rights.

A plaintiff states a claim for First Amendment retaliation under Section 1983 by pleading facts showing that (1) it engaged in expressive conduct that addressed a matter of public concern; (2) the government officials took an adverse action against it; and (3) its conduct was a substantial or motivating factor for the adverse action. *Alpha Energy Savers, Inc. v. Hansen*, 381 F.3d 917, 923 (9th Cir. 2004). Allen does not dispute that FamilyCare's conduct—including its repeated complaints to OHA, the Oregon legislature, and the media regarding the systemic flaws in OHA's administration of the Oregon Health Plan; its stated concerns about OHA's compliance with state and federal law and its use of taxpayer funds; and its filing of lawsuits, including this action—amounts to First Amendment expression on matters of public concern. Instead, Allen contends that FamilyCare fails to allege that Allen himself participated in any retaliation or that FamilyCare's protected First Amendment activity was "a causative factor for actions" of Allen that helped drive FamilyCare out of business. The Court necessarily rejected similar arguments in granting FamilyCare's motion for leave to amend. The Court should also reject Allen's arguments here.

First Amendment retaliation occurs when a government official takes "action designed to retaliate against and chill political expression." *Thomas v. Carpenter*, 881 F.2d 828, 829 (9th Cir. 1989). Pursuant to the Supreme Court's decision in *Mt. Healthy City Sch. Dist. Bd. of Educ. v.*

7- FAMILYCARE, INC.'S OPPOSITION TO PATRICK ALLEN'S MOTION TO DISMISS OR STRIKE

*Doyle*, 429 U.S. 274 (1977), "a plaintiff alleging retaliation for the exercise of constitutionally protected rights must initially show that the protected conduct was a 'substantial' or 'motivating' factor in the defendant's decision."  *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989) (citing *Mt. Healthy*, 429 U.S. at 287).  "At that point, the burden shifts to the defendant to establish that it would have reached the same decision even in the absence of the protected conduct."  *Id.*  The mere fact that the government official was legally entitled to take the action in question does not negate the possibility of improper retaliatory motive.  *Id.* at 1314-15 (citing *Allen v. Scribner*, 812 F.3d 426, 435 (9th Cir.), *amended*, 828 F.2d 1445 (9th Cir. 1987)) ("The defendants here have merely established that they *could* have suspended the permits.  This court has clearly stated that this is insufficient to support summary judgment.").  Because "motivation generally presents a jury question," the issue is typically "inappropriate for summary judgment," much less a motion to dismiss.  *Soranno's Gasco*, 874 F.2d at 1315; *see also Allen*, 812 F.3d at 436 (noting dispute regarding basis for defendant's conduct and holding that "a jury must decide the issue of motivation").

The Ninth Circuit has recognized that "a fact finder [can] infer a retaliatory motive" from a number of different types of evidence ranging from express statements by the government official to the merely "suspicious" timing and nature of the defendant's conduct, which may suggest that "the defendants' chosen course of action was to maximize harm" to the plaintiff.  *Soranno's Gasco*, 874 F.2d at 1315-16.  Similarly, the Ninth Circuit has held that "a plaintiff can show that retaliation was a substantial or motivating factor" via evidence showing "the 'proximity in time between the protected action and the allegedly retaliatory'" conduct; that the government agent "expressed opposition to [plaintiff's] speech, either to [plaintiff] or to others"; or that the "proffered explanations" for the adverse action "were false and pre-textual."[2]

---

[2] Allen cites *Williams v. California*, 764 F.3d 1002, 1016-17 (9th Cir. 2014) for the proposition that "[a]lleged speculative motives and attenuated timing are insufficient to state a claim of retaliation," (Mot. at 4), but *Williams* is inapposite at best, because there, only one

8-  FAMILYCARE, INC.'S OPPOSITION TO PATRICK
    ALLEN'S MOTION TO DISMISS OR STRIKE

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

*Coszalter v. City of Salem*, 320 F.3d 968, 977 (9th Cir. 2003) (quoting *Keyser v. Sacramento City Unified Sch. Dist.*, 265 F.3d 741, 751-52 (9th Cir. 2001)).

FamilyCare's retaliation claim against Allen is based on a number of actions he personally took or directed after becoming Director of OHA in September 2017, only some of which pertain to his role in the process of setting inadequate rates for FamilyCare. First, Allen and staff acting at his direction failed to timely address the errors in the proposed 2018 rates, despite FamilyCare's repeated (and constitutionally protected) statements about those errors. *See* FAC ¶¶ 59-65. Second, when Allen finally ordered reviews of the rate development process by actuarial firm Lewis & Ellis and law firm Manatt, Phelps, & Phillips LLP, he severely restricted the scope of the examinations, specifically excluding any review or examination of the errors FamilyCare had identified (which errors were ultimately confirmed by the Oregon Secretary of State and were the subject of the 2018 rate redetermination analysis). *See id.* ¶¶ 60, 65-69. Third, Allen refused to reveal the results of the 2018 rate redetermination in advance of requiring FamilyCare to decide whether to sign the 2018 rate amendment, despite knowing that the results of the redetermination were material to FamilyCare's ability to sign the contract and stay in business. *See id.* ¶¶ 71-73. Fourth, Allen demanded on December 20, 2017 that FamilyCare decide within 24 hours whether to sign the 2018 rate amendment, thus moving up the deadline by ten days, even though he had yet to provide any of the promised analysis on what

---

motive for defendants' conduct could be inferred from plaintiffs' allegations, and that motive was to follow the law, not to retaliate against plaintiffs' free exercise of religion. In *Williams*, a care facility for developmentally disabled persons was cited for violating obligations to a client and ceased receiving client referrals from the defendant-state actors. *Id.* The care facility claimed that the citation and cessation of client referrals was retaliation for refusing to accompany a client to religious services, in violation of the plaintiffs' free exercise rights. *Id.* In affirming dismissal of the retaliation claim, the court found that "Plaintiffs allege no facts to show that the assertion of their free exercise rights was the impetus for Defendants' [conduct]" and that the "Plaintiffs themselves allege that the reason" for the conduct was Plaintiffs' "violat[ion of] their obligations to a client," which in turn required the defendants to sanction plaintiff pursuant to the applicable regulations. In contrast, FamilyCare's complaint includes numerous allegations supporting the inference that Allen's misconduct was taken in retaliation for FamilyCare's protected speech.

9-    FAMILYCARE, INC.'S OPPOSITION TO PATRICK
       ALLEN'S MOTION TO DISMISS OR STRIKE

compensation FamilyCare would receive in 2018 once the data errors were corrected, and despite the statutory requirement that OHA provide at least 60 days' advance notice of rate amendments. *See id.* Finally, soon after Allen knowingly forced FamilyCare to shutter its Medicaid business, OHA announced that rates would increase significantly after FamilyCare left the market. *See id.* ¶¶ 71, 78. This series of events, including the suspicious nature and timing of Allen's conduct towards FamilyCare and the close proximity between this conduct and FamilyCare's protected activity, is enough for a reasonable jury to infer that FamilyCare was penalized for its complaints and criticisms of Allen and OHA. *See Keyser v. Sacramento City Unified Sch. Dist.*, 265 F.3d 741, 751 (9th Cir. 2001) (proximity in time between protected action and allegedly retaliatory conduct is enough to create genuine issue of material fact on retaliatory motive). Indeed, the decision to increase capitation rates shortly after FamilyCare left the market resulted in a significant financial benefit to FamilyCare's (former) competitor Health Share, reflecting a continuance of the smear campaign's aim of promoting Health Share at FamilyCare's expense.

Against this strong evidence of both retaliatory conduct and retaliatory motive, Allen raises the same fact-based arguments that he made in opposing FamilyCare's motion for leave to amend. First, Allen argues that FamilyCare fails to plead retaliatory motive because it "does not allege that Allen had any personal animus towards FamilyCare. Mot. at 4. But "personal animus" is simply not an element of a retaliation claim. *See Soranno's Gasco*, 874 F.2d at 1314 ("If the plaintiffs can establish that the decision to suspend the permits was made because of Soranno's exercise of constitutionally protected rights, they have established a first amendment violation, and are entitled to relief under section 1983."). And FamilyCare *does* allege that "FamilyCare's protected expression was a substantial and motivating factor in the Defendants' decision to act as they did." FAC ¶ 84.

Second, Allen argues that "FamilyCare . . . does not allege that Allen was involved in the process that resulted in the alleged actuarially unsound rates." Mot. at 4. But as detailed above,

10- FAMILYCARE, INC.'S OPPOSITION TO PATRICK ALLEN'S MOTION TO DISMISS OR STRIKE

FamilyCare alleges that Allen committed misconduct independent of rate setting, including with respect to his strongarm tactics regarding the 2018 contract renewal. Moreover, FamilyCare alleges that Allen is the director of the Oregon Health Authority, from which a reasonable jury could conclude that they were involved with OHA's rate-setting decisions. *See* FAC ¶ 3. The complaint also alleges that Allen failed to timely respond to rate-development problems identified by FamilyCare, restricted the scope of the outside actuarial review to prevent examination of those problems, and thus prevented the correction of those errors in time to permit FamilyCare to sign the 2018 rate amendment and stay in business. *See supra.* As such, the complaint adequately pleads Allen's involvement in the rate-setting process and other acts of retaliation.

Third, Allen argues that he cannot have retaliated against FamilyCare because the 2018 rate-setting process and this litigation were underway when Allen became director of OHA, and because many of the data and methodological errors in the capitation rates were present in prior years. But the fact that Lynne Saxton and other OHA employees initiated the process of retaliation against FamilyCare prior to Allen's appointment as Director does not absolve Allen of liability for his own misconduct. Allen had the authority and the opportunity to change OHA's tack towards FamilyCare by promptly addressing the known rate errors and otherwise putting FamilyCare on equal footing with Health Share and other CCOs, but he instead chose to double down on OHA's policy decision to eliminate FamilyCare and then personally helped ensure FamilyCare's demise through his unlawful tactics during the 2018 contract renewal process.

Finally, Allen contends that FamilyCare's retaliation claim is "inverted" because FamilyCare's "exercise of free speech rights was subsequent to, or was a result of OHA actions, not vice versa." Mot. at 5. But this argument is nonsensical; First Amendment retaliation claims often begin with complaints about a government agency's actions. *See, e.g.*, *Soranno's Gasco*, 874 F.2d at 1312-13 (retaliation based on plaintiff's complaints about government regulations

11- FAMILYCARE, INC.'S OPPOSITION TO PATRICK ALLEN'S MOTION TO DISMISS OR STRIKE

and exemption decisions). Although some of the data and methodological errors impacting the actuarial soundness of the rates set by OHA date back years, several more recent actions were taken against FamilyCare in response to FamilyCare's increasingly pronounced complaints to and about OHA, including the campaign to smear FamilyCare, adverse decisions regarding primary care funding, and Allen's misconduct with respect to the 2018 rate amendment. And all of the alleged retaliatory conduct by Allen himself occurred after September 2017, which is to say, after FamilyCare's vocal criticism of Allen and OHA, and after initiation of this lawsuit. In sum, FamilyCare's allegations are more than sufficient to state a claim for First Amendment retaliation against Allen.

> **B.    FamilyCare's right to be free from government retaliation for exercise of its First Amendment rights is clearly established**

Allen contends that even if he violated FamilyCare's constitutional rights, he is entitled to qualified immunity because those rights are not "clearly established." But multiple Ninth Circuit decisions establish that government officials may not respond to a company's exercise of its First Amendment rights by taking action that impairs the entity's ability to operate. This includes a long line of cases—many of which were discussed at length in the parties' briefing on FamilyCare's motion for leave to amend—setting forth a government contractor or employee's right to speak on matters of public concern free from retaliation. Allen chooses not to address any of this authority, instead opting to cite a couple inapposite cases in an attempt to define the right at issue so narrowly that he would necessarily avoid liability. But it is well established that courts must resist government officials' attempts to define away a plaintiff's claim. And it is just as well established that conduct like that alleged here constitutes First Amendment retaliation.

12-  FAMILYCARE, INC.'S OPPOSITION TO PATRICK
     ALLEN'S MOTION TO DISMISS OR STRIKE

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

### 1. Preexisting law establishes that Allen's retaliation against FamilyCare was unlawful

"Government officials are entitled to qualified immunity only 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Coszalter v. City of Salem*, 320 F.3d 968, 979 (9th Cir. 2003) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Although the determination of whether a right was clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition," *Saucier v. Katz*, 533 U.S. 194, 201 (2001), the inquiry "is not so narrowly defined that it 'allows [government officials] to define away all potential claims.'" *Nelson v. City of Davis*, 685 F.3d 867, 883-84 (9th Cir. 2012) (quoting *Kelley v. Borg*, 60 F.3d 664, 667 (9th Cir. 1995)). To the contrary, government officials "can be on notice that their conduct violates established law even in novel factual situations." *Hope v. Peltzer*, 536 U.S. 730, 741 (2002). Thus, "to show that the right in question . . . was clearly established, [a plaintiff] need not establish that [the defendant's] behavior had been previously declared unconstitutional, only that the unlawfulness was apparent in light of preexisting law." *Nelson*, 685 F.3d at 884 (quoting *Jensen v. City of Oxnard*, 145 F.3d 1078, 1085 (9th Cir. 1998)); *see also Robinson v. York*, 566 F.3d 817, 826 (9th Cir. 2009) (quoting *Hufford v. McEnaney*, 249 F.3d 1142, 1148 (9th Cir. 2001) ("Notwithstanding this particularity requirement, 'closely analogous preexisting case law is not required to show that a right was clearly established.'").

Here, preexisting law clearly established that Allen could not lawfully take action impairing FamilyCare's ability to operate in response to FamilyCare's protected First Amendment conduct. First, the Ninth Circuit's decisions in *Soranno's Gasco* and its progeny make clear that where a government official responds to a company's public criticism of and lawsuit against the official by taking action impacting the company's operations, the official is liable for First Amendment retaliation and is not entitled to qualified immunity.

13- FAMILYCARE, INC.'S OPPOSITION TO PATRICK ALLEN'S MOTION TO DISMISS OR STRIKE

In *Soranno's Gasco*, the plaintiffs operated two petroleum bulk plants under permits issued by the county government and the county air pollution control district ("APCD"). 874 F.2d at 1312. After the County and APCD promulgated regulations impacting his business, Mr. Soranno publicly criticized the County and APCD, protested exemptions given to other businesses, and initiated litigation challenging the regulations and exemptions. *Id.* The APCD subsequently suspended Soranno's permits and a government official notified Soranno's customers that it could not deliver gasoline while under suspension. *Id.* at 1313. Soranno's filed suit against the government actors under Section 1983, alleging First Amendment retaliation and due process violations through the permit suspension. *Id.* The district court granted defendants' motion for summary judgment, but the Ninth Circuit reversed.

Citing prior U.S. Supreme Court and Ninth Circuit decisions, the Court held that "[i]t is clear that state action designed to retaliate against and chill political expression strikes at the First Amendment. There is no dispute that Soranno has a protected interest in commenting on the actions of government officials. If the plaintiffs can establish that the decision to suspend the permits was made because of Soranno's exercise of constitutionally protected rights, they have established a first amendment violation, and are entitled to relief under section 1983."[3] *Id.* at 1314 (internal quotations and citations omitted). The Court then rejected defendants' qualified immunity defense, because it can "hardly be disputed that . . . an individual ha[s] a clearly established right to be free of intentional retaliation by government officials based upon that

---

[3] The Court in *Soranno's Gasco* also rejected defendants' argument that because Soranno's did not have a property or liberty interest in the permits, Soranno's could not state a First Amendment retaliation claim, holding that "[t]he Sorannos . . . need not establish a legally protected interest in the permits themselves." 874 F.2d at 1314. As such, Allen's claim that no court has addressed a First Amendment retaliation claim "resulting in the loss of goodwill" is irrelevant. Mot. at 8. Whether FamilyCare's property interest in goodwill is "clearly established" has no bearing on the issue of whether the law clearly establishes that Allen's conduct is improper First Amendment retaliation. In any event, this Court has ruled that FamilyCare has a constitutionally-protected interest in goodwill. *See* Opinion and Order on Motions to Dismiss [Dkt. 106] at 11.

14- FAMILYCARE, INC.'S OPPOSITION TO PATRICK
    ALLEN'S MOTION TO DISMISS OR STRIKE

individual's constitutionally protected expression." *Id.* at 1319 (citing *Allen v. Scribner*, 812 F.2d 426, 436 (9th Cir.), *amended* 828 F.2d 1445 (9th Cir. 1987)).  Subsequent Ninth Circuit decisions have reaffirmed the holding in *Soranno's Gasco* and thus further established the right of companies like FamilyCare to speak out about government misconduct and be free from retaliation by those government actors.  *See, e.g., CarePartners, LLC v. Lashway*, 545 F.3d 867, 872-79 (9th Cir. 2008) (affirming district court decision denying summary judgment on qualified immunity grounds based on factual disputes regarding whether state officials' enforcement action against boarding home operator was motivated by operator's lobbying activity and legal challenge to officials' conduct).

Moreover, a long line of decisions from the Ninth Circuit and other courts clearly establishes that a government employee or contractor is entitled to speak on matters of public concern—in particular, the potential misuse of public funds and inefficiency in managing and operating government entities—free from government interference, absent a countervailing need to maintain workplace harmony.  For example, in *Keyser v. Sacramento City Unified Sch. Dist.*, 265 F.3d 741 (9th Cir. 2001), school district administrators complained that the district and it superintendent were spending federal Title I money to pay for consultants and other personnel in violation of federal guidelines on the use of the money.  *Id.* at 745.  Eventually, the plaintiffs filed a complaint alleging that the superintendent had violated 42 U.S.C. § 1983 by allegedly demoting them in retaliation for alerting the school board to the potential misuse of federal funds. *Id.* at 746.  On appeal, the Ninth Circuit was asked to decide whether the superintendent was entitled to qualified immunity on the retaliation claim.  *Id.*  Relying on a "formidable line of cases," the Ninth Circuit held that the defendant was not entitled to qualified immunity because it was clearly established "that the public's interest in learning about illegal conduct by public officials and other matters at the core of First Amendment protection outweighs a state employer's interest in avoiding a mere *potential* disturbance to the workplace." *Id.* at 748

15- FAMILYCARE, INC.'S OPPOSITION TO PATRICK
ALLEN'S MOTION TO DISMISS OR STRIKE

(discussing *Gilbrook v. City of Westminster*, 177 F.3d 839, 867-70 (9th Cir. 1999); *Roth v. Veteran's Admin.*, 856 F.2d 1401, 1403-08 (9th Cir. 1988); and *Johnson v. Multnomah County*, 48 F.3d 420, 425-27 (9th Cir. 1995)).

Subsequent cases have likewise held that "both the constitutional protection of employee speech and a First Amendment cause of action for retaliation against protected speech were clearly established." *Robinson v. York*, 566 F.3d 817, 826 (9th Cir. 2009) (internal citations and quotations omitted) (holding that defendant was not entitled to qualified immunity for "retaliation motivated by protected speech," including speech on "matters of inherent public concern" such as "misuse of public funds, wastefulness, and inefficiency in managing and operating government entities"); *Alpha Energy Savers, Inc. v. Hansen*, 381 F.3d 917, 923-30 (9th Cir. 2004) (defendants not entitled to summary judgment on government contractor's claim that county and its employees manipulated contracting procedures in order to deny work to contractor in retaliation for his participation in judicial and administrative proceedings); *Coszalter v. City of Salem*, 320 F.3d 968, 979 (9th Cir. 2003) (rejecting qualified immunity claim because "at the time defendants acted, both the constitutional protection of employee speech and a First Amendment cause of action for retaliation against protected speech were clearly established").

The nature of FamilyCare's speech and Allen's retaliatory conduct is directly analogous to the circumstances described in *Soranno's*, *Keyser*, *Alpha Energy Savers*, and the long line of cases described above. *Cf. Coszalter*, 320 F.3d at 974-75 ("The precise nature of the retaliation is not critical to the inquiry in First Amendment retaliation cases. The goal is to prevent, or redress, actions by a government employer that 'chill the exercise of protected' First Amendment rights."). In light of this authority, a reasonable official in Allen's position would have known that his actions impairing FamilyCare's ability to operate, taken in response to FamilyCare's criticisms of Allen and OHA, constituted unlawful First Amendment retaliation. Allen knew or should have known that his efforts to drive FamilyCare from the market would tend to chill the

16- FAMILYCARE, INC.'S OPPOSITION TO PATRICK
ALLEN'S MOTION TO DISMISS OR STRIKE

speech not only of FamilyCare, but of other CCOs considering whether to raise their voices about OHA's misconduct.  As such, Allen cannot establish that he is entitled to qualified immunity.

### 2.    Allen's attempt to define away FamilyCare's claim is unavailing

Ignoring this "formidable line of cases," Allen argues that the right at issue is not the right of a government contractor to speak on matters of public concern without government retaliation, as the Ninth Circuit has repeatedly framed it, but the exceedingly particularized "right to be free from Allen declining to adjust or change the rates to FamilyCare's liking" and the "right to be free from Allen requiring FamilyCare to either accept or reject the rates so that OHA could take steps to ensure services to the public will continue to be provided."  Mot. at 7.  In support of this granular view of the right at issue, Allen cites to a handful of unlawful arrest cases, which merely make the unremarkable point that in that context, the "clearly established" right in question must be defined more specifically than "the generic First Amendment right to free speech or the right to be free from speech-based retaliation."  *See* Mot. at 6-7.  But as detailed above, the proper scope of the right at issue in the context of a government contractor speaking on matters of public concern has been honed by the Ninth Circuit in several decisions spanning several decades.  The Court should reject Allen's exceedingly narrow formulation of the right at issue for at least three reasons.

First, Allen's formulation does not faithfully reflect FamilyCare's allegations against him. FamilyCare does not argue that Allen was required "to adjust or change the rates to FamilyCare's liking," but rather that, among other things, Allen was not allowed to perpetuate known errors in the rate-setting process in retaliation for FamilyCare's criticism of the agency. Similarly, FamilyCare does not allege that Allen merely "require[ed] FamilyCare to either accept or reject the rates," but rather that Allen ignored procedural contracting protections and withheld critical information from FamilyCare so that it would be forced to reject the rates.

17- FAMILYCARE, INC.'S OPPOSITION TO PATRICK
ALLEN'S MOTION TO DISMISS OR STRIKE

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Second, Allen's framing of the right at issue would define away all potential First Amendment retaliation claims against him. There is no dispute that "the right referenced by the [qualified immunity] test is not a general constitutional guarantee . . . but its application in a particular context." *Todd v. United States*, 849 F.2d 365, 370 (9th Cir. 1988). But just as a plaintiff may not formulate the right at issue too generally, nor may a government defendant formulate the right too narrowly. As the Ninth Circuit has warned, "[t]o phrase 'the right allegedly violated' in such detail and in terms so closely paralleling what allegedly happened [in the case at hand] 'would be to allow [Allen], and future defendants, to define away all potential claims.'" *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1158-59 (9th Cir. 2000) (quoting *Kelley v. Borg*, 60 F.3d 664, 667 (9th Cir. 1995)) (rejecting defendants' contention that law must clearly establish that officials "would violate LSO's freedom of expression by advising LSO of the existence of the ABC regulations, and further advising that said regulations apply to conduct on ABC-licensed premises"); *see also Kelley*, 60 F.3d at 667 (lower court appropriately defined issue as "whether Eighth Amendment rights in the prison medical context are clearly established" rather than exceedingly narrow of whether "plaintiff, after complaining about foul smells, ha[d] a clearly established right, then or now, for defendant correctional officers to immediately remove him from his cell in the Security Housing Unit during a lock down . . . ."); *Cunningham v. Gates*, 229 F.3d 1271, 1288 (9th Cir. 2000) ("[W]e must not allow an overly generalized or excessively specific construction of the right to guide our analysis.").

Third, Allen's demand for a case addressing the precise facts at issue in this case is excessively specific and thus improper. "To show that the right in question here was clearly established, [a plaintiff] need not establish that [the defendant's] behavior had been previously declared unconstitutional, only that the unlawfulness was apparent in light of preexisting law." *Jensen v. City of Oxnard*, 145 F.3d 1078, 1085 (9th Cir. 1998) (quotations omitted). Indeed, "[t]he precise nature of the retaliation is not critical to the inquiry in First Amendment retaliation

18- FAMILYCARE, INC.'S OPPOSITION TO PATRICK ALLEN'S MOTION TO DISMISS OR STRIKE

cases. The goal is to prevent, or redress, actions by a government employer that 'chill the exercise of protected' First Amendment rights." *Coszalter*, 320 F.3d at 974-75. "Depending on the circumstances, even minor acts of retaliation can infringe on an employee's First Amendment rights." *Id.* at 975. Here, the unlawfulness of Allen's conduct should have been apparent to him in light of *Soranno's Gasco*, *Alpha Energy Savers*, and the cases discussed above. *Cf. Hope v. Pelzer*, 536 U.S. 730, 741 (2002) ("[O]fficials can be on notice that their conduct violates established law even in novel factual situations."); *Deorle v. Rutherford*, 272 F.3d 1272, 1286 (9th Cir. 2001) (quoting *Mendoza v. Block*, 27 F.3d 1357, 1361 (9th Cir. 1994) ("An officer is not entitled to qualified immunity on the grounds that the law is not clearly established every time a novel method is used to inflict injury.").

In sum, preexisting law clearly establishes that when a government official acts to impair the livelihood of a government contractor, employee, or licensee based on that person or company's expression on matters of public concern, the official is liable for First Amendment retaliation. Although Allen disputes that his action towards FamilyCare in fact constituted retaliation against FamilyCare's speech, he can hardly dispute that if his actions are found to be retaliatory, they would be unlawful under clearly established precedent. And because the issue of retaliatory motive raises questions of fact that can only be resolved by a jury, Allen's motion to dismiss should be denied.

## V.    CONCLUSION

For the foregoing reasons, the Court should deny Patrick Allen's motion to dismiss.

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

DATED:  July 9, 2018                  **PERKINS COIE LLP**

By: *s/ Stephen F. English*
    Stephen F. English, OSB No. 730843
    SEnglish@perkinscoie.com
    Thomas R. Johnson, OSB No. 010645
    TRJohnson@perkinscoie.com
    Alletta Brenner, OSB No. 142844
    ABrenner@perkinscoie.com
    Brian Samuelson, OSB No. 165476
    BSamuelson@perkinscoie.com
    PERKINS COIE LLP
    1120 N.W. Couch Street, 10th Floor
    Portland, OR  97209-4128
    Telephone:  503.727.2000
    Facsimile:  503.727.2222

    Matthew Gordon, *pro hac vice*
    MGordon@perkinscoie.com
    Nicholas Hesterberg, *pro hac vice*
    NHesterberg@perkinscoie.com
    PERKINS COIE LLP
    1201 Third Avenue, Suite 4900
    Seattle, WA 98101-3099
    Telephone:  206.359.8000
    Facsimile:  206.359.9000

    *Attorneys for Plaintiff FamilyCare, Inc.*

20- FAMILYCARE, INC.'S OPPOSITION TO PATRICK
ALLEN'S MOTION TO DISMISS OR STRIKE