PERKINSCOIE

1120 NW Couch Street
10th Floor
Portland, OR 97209-4128

T +1.503.727.2000
F +1.503.727.2222
PerkinsCoie.com

May 2, 2018

Nathan R. Morales
NMorales@perkinscoie.com
D. +1.503.727.2187
F. +1.503.346.2187

Matthew Levin
Markowitz Herbold PC
1211 SW Fifth Avenue, Suite 3000
Portland, OR 97204-3730

Re:    **FamilyCare, Inc. v. Oregon Health Authority**
       **US District Court of Oregon (Portland Division) Case No. 3:18-cv-00212-MO**
       **(leading)**
       **US District Court of Oregon (Portland Division) Case No. 6:18-cv-00296-MO**
       **(trailing)**

Dear Matt:

Thank you for your letter dated April 20, 2018, regarding FamilyCare's preliminary FRCP
30(b)(6) topics. FamilyCare recognizes that the federal rules require the party requesting a
deposition to "describe with reasonable particularity the matters for examination," and that, as
interpreted by courts in this district, that means defining specifically each of the subject areas
relevant to the dispute that the requesting party intends to question the corporate witness about.
*Updike v. Clackamas Cty.*, No. 3:15-CV-00723-SI, 2016 WL 111424, at *3 (D. Or. Jan. 11,
2016).

Applying that standard, FamilyCare believes that each of the topics it has proposed for the FRCP
30(b)(6) deposition of OHA are reasonably particularized and unambiguous.  Notwithstanding
that, FamilyCare replies to OHA's specific objections and further clarifies its topics for
examination as follows:

1.  Topic 1: OHA's process and methodology for setting capitation rates for the Coordinated
    Care Organizations that contract with OHA to serve Oregon Health Plan members.

        OHA Response: OHA objects to this topic as overbroad as to timeframe. The
        parties previously agreed the timeframe at issue in this case begins January 1,
        2015. OHA proposes the scope of this topic is narrowed to January 1, 2015 -
        February 2018. FamilyCare has only alleged claims related to the process and
        methodology for setting capitation rates for 2015 through 2018.

        FamilyCare Reply: FamilyCare will not agree to limit the scope of this topic by
        date as proposed. Although FamilyCare ceased operating as a Coordinated Care
        Organization on January 31, 2018, activity relating to OHA's process and

139632649.1

Perkins Coie LLP

Matthew Levin
May 2, 2018
Page 2

methodology for setting rates that is material and relevant is ongoing. FamilyCare, therefore, proposes limiting this topic to the date range of January 1, 2015 to present.

2. Topic 2: The actuarial review of Oregon's Medicaid capitation rate development methodology dated November 30, 2017 that was prepared by Lewis and Ellis (*sic*).

OHA Response: OHA does not object to this topic. Because third party trade secrets are implicated by this topic, OHA will likely need to designate its testimony on this topic Attorneys' Eyes Only.

Family Care Reply: FamilyCare will not agree to the overbroad designation of testimony on an entire topic as "Attorneys' Eyes Only." FamilyCare will agree to limiting specific testimony as AEO, to the extent that the testimony concerns information specific to a third party that the parties mutually agree is subject to protection from disclosure under applicable law.

3. Topic 3: The regulatory review of Oregon's Medicaid capitation rate development methodology November 30, 2017 that was prepared by Manatt, Phelps and Phillips:

OHA Response: OHA does not object to this topic. Because third party trade secrets are implicated by this topic, OHA will likely need to designate its testimony on this topic Attorneys' Eyes Only.

Family Care Reply: FamilyCare will not agree to the overbroad designation of testimony on an entire topic as "Attorneys' Eyes Only." FamilyCare will agree to limiting specific testimony as AEO, to the extent that the testimony concerns information specific to a third party that the parties mutually agree is subject to protection from disclosure under applicable law.

4. Topic 4: All OHA "communications plans" related to the Oregon Health plan, rate-setting, and any coordinated care organizations in Oregon, including but not limited to FamilyCare.

OHA Response: OHA objects to this topic as overbroad as to scope. First, the language "including but not limited to" is improper. *See, e.g. Tri-State Hosp. Supply Corp. v. U.S.*, 226 F.R.D. 118, 125 (D. D.C. 2005). OHA requests the scope of this topic is limited to FamilyCare. The term "rate-setting" is also overbroad. OHA oversees rate-setting for a variety of organizations beyond CCOs. OHA proposes "rate-setting" is limited to capitation rate setting for Coordinated Care

139632649.1
Perkins Coie LLP

Matthew Levin
May 2, 2018
Page 3

Organizations. OHA also proposes the timeframe is limited to January 1, 2015 to February 2018.

Family Care Reply: In the context of this topic, FamilyCare does not agree the wording "including, but not limited to" is improper. *Tri-State Hosp. Supply Corp.* does not draw the conclusion that "including, but not limited to" is never proper, but clarifies that such language is improper when it seeks to extend beyond the enumerated topics listed. *See Tri-State Hosp. Supply Corp. v. U.S.*, 226 F.R.D. 118, 125 (D. D.C. 2005) (noting that the purpose of topics is to provide reasonable notice of area of inquiry and that stating topics so that they encompass other unspecified topics defeats that purpose). Here, FamilyCare's proposed topic specifies that it is requesting "all communications plans" related to any coordinated care organization in Oregon, including, but not limited to, FamilyCare. Although this topic does not list each Coordinated Care Organization individually, the organizations covered by this topic are discrete and readily discernable. Identifying FamilyCare specifically in this context is not designed to extend beyond or limit the enumerated topics, but to clarify them. Specifically, FamilyCare seeks to ensure that the topic covers *all* coordinated care organizations that contracted with OHA for the 2015 to 2018 rate years, including, but not limited to, FamilyCare.

As stated, this topic covers OHA "communications plans" related to the following specific subjects: 1) the Oregon Health Plan; 2) Oregon's Medicaid rates and rate-setting process; and 3) Medicaid Coordinated Care Organizations that have contracted with OHA to serve Oregon Health Plan members. Each of these subjects is reasonably specific and highly relevant to FamilyCare's claims.

For the reasons stated above regarding topic 1, and because other activity relevant to this topic is ongoing, FamilyCare will not agree to limit the scope of this topic as proposed. FamilyCare will agree, however, to limit the scope of this topic to the date range of January 1, 2015 to present.

5. Topic 5: OHA's settlement agreement with FamilyCare entered into on May 22, 2016.

OHA Response: OHA does not object to this topic. Because third party trade secrets are implicated by this topic, OHA will likely need to designate its testimony on this topic Attorneys' Eyes Only.

FamilyCare Reply: FamilyCare will not agree to the overbroad designation of testimony of an entire topic as "Attorneys' Eyes Only." FamilyCare will agree to

Matthew Levin
May 2, 2018
Page 4

limiting specific testimony as AEO, to the extent that the testimony concerns information specific to a third party that the parties mutually agree is subject to protection from disclosure under applicable law.

6. Topic 6: OHA's Dispute Resolution Agreement with FamilyCare, executed on December 30, 2016.

> OHA Response: OHA does not object to this topic, however, OHA's witness will only be prepared to testify about "Information known or reasonably available to the organization."

> Family Care Reply: FamilyCare does not object to limiting testimony under this topic to "information known or reasonably available to the organization." However, FamilyCare reiterates that corporate or other organizational parties have an obligation to present witnesses who are capable of providing testimony on the noticed topics, notwithstanding whether the information was in the specific witness's personal knowledge. *Updike*, 2016 WL 111424, at *3.

7. Topic 7: OHA's lobbying efforts in the Oregon legislature in connection to Oregon's Medicaid program and any of the individual Coordinated Care Organizations that connect with OHA as part of that program.

> OHA Response: OHA objects to this topic on the grounds it is overbroad as to timeframe and scope, and is vague and ambiguous. OHA requests FamilyCare define "lobbying efforts." OHA communicates with the legislature on a variety of issues, including providing such things as fiscal impact statements, reports to Legislative Committees, and providing testimony regarding legislative proposals. OHA does not consider this sort of activity lobbying. Furthermore, the Oregon legislature addresses legislation, budgets, and proposals related to "Oregon's Medicaid program" that deal issues that go far beyond anything alleged by FamilyCare in its complaint. In addition, OHA does not understand the topic as it related to "any of the individual coordinated care organizations that contract with OHA as part of this program." OHA proposes limiting this topic to communications between OHA and the legislature regarding legislation related to CCO contracts. Finally, OHA proposes the timeframe for this topic is limited to January 1, 2015 - February 2018.

> FamilyCare Reply: FamilyCare disagrees that the term "lobbying activities" is vague and ambiguous. "Lobbying" is defined under ORS 171.725(8) as "influencing, or attempting to influence, legislative action through oral or written communication with legislative officials, solicitation of executive officials or

139632649.1
Perkins Coie LLP

Matthew Levin
May 2, 2018
Page 5

> other persons to influence or attempt to influence legislative action or attempting to obtain the goodwill of legislative officials." "'Legislative official' means any member or member-elect of the Legislative Assembly, any member of an agency, board or committee that is part of the legislative branch, and any staff person, assistant or employee thereof." ORS 171.725(7). FamilyCare clarifies that this topic is limited to lobbying (as defined above) by OHA in connection with (1) Oregon's Medicaid program, and (2) the individual Coordinated Care Organizations that contract with OHA as part of Oregon's Medicaid program. OHA's oral and written communications with legislators regarding those subjects are relevant to FamilyCare's claims in multiple ways. FamilyCare will not, therefore, agree to narrow this topic to the far more limited subject of legislation relating only to CCO contracts.
>
> Regarding date range, FamilyCare also declines to limit the scope of this topic as proposed. Lobbying and related legislative activity relevant to the issues in this case continues to be ongoing. FamilyCare will agree, however, to limit the scope of this topic to the date range of January 1, 2015 to present.

8. <u>Topic 8:</u> The 3.4% rate of growth target in Oregon's Section 1115(a) waiver with CMS and all budgetary, policy, and rate-setting decisions made by OHA in connection with that target.

> <u>OHA Response:</u> OHA objects to this topic on the grounds it is overbroad as to timeframe and scope, and is vague and ambiguous. "All budgetary, policy, and rate-setting decisions made by OHA in connection with that target" could include a wide range of topics outlines in the 385-page Special Terms and Conditions OHA must comply with from rate setting, to complaints and grievances, to training activities under the Transformation Center. Virtually every decision affecting the financial performance of the Medicaid program relates to that target. OHA proposes limiting this topic to OHA's policy and rate setting decisions related to any 3.4% growth target in Oregon's Section 1115(a) waiver for capitation rates for CCO's.
>
> <u>FamilyCare Reply:</u> FamilyCare disagrees that this topic is overbroad, vague or ambiguous. The 3.4% rate of growth target in Oregon's Section 1115(a) waiver is a specific and discrete topic. Although that target impacts Oregon's Medicaid program in a wide variety of ways, those impacts are all relevant to issues implicated by FamilyCare's claims. Notwithstanding that, FamilyCare clarifies that this topic is limited to the 3.4% rate of growth target in Oregon's Section 1115(a) waiver with CMS as it relates to the administration of Oregon's Medicaid program, which includes, but is not limited to: the setting of Oregon's Medicaid

139632649.1
Perkins Coie LLP

Ex. 4 - Salerno Owens Decl.
Page 5 of 9

Matthew Levin
May 2, 2018
Page 6

capitation rates, the availability of state and federal funds to pay those rates, the policies that inform the rate-setting process, and the performance of the Coordinated Care Organizations that serve Oregon's Medicaid program.

Regarding date range, for the reasons stated above regarding topic 1, FamilyCare will not agree to limiting the scope of this topic as proposed. FamilyCare will agree, however, to limit the scope of this topic to the date range of January 1, 2015 to present.

9. Topic 9: Other policy decisions made by OHA as part of its rate-setting processes for calendar years 2015-2018.

OHA Response: OHA objects to this topic on the grounds it is overbroad as to timeframe, scope and is vague and ambiguous. "Other policy decisions" is as improper as "including by not limited to." OHA proposes narrowing the scope of this topic to "policy decisions made by OHA as part of its rate-setting processes for calendar years 2015-2018. As with previous topics, OHA proposes "rate-setting" is limited to capitation rate setting for Coordinated Care Organizations.

FamilyCare Reply: FamilyCare disagrees with OHA's characterization of this topic. The use of the word "other," in context, refers to policy decisions beyond and in addition to the 3.4% rate of growth target set forth in Oregon's Section 1115(a) wavier referenced in the preceding topic. As stated, this topic is limited to "policy decisions made by a part of its rate-setting processes for calendar years 2015-2018." FamilyCare agrees that "rate-setting" should be understood in this context to refer to Medicaid capitation rate setting for Coordinated Care Organizations in Oregon. Regarding date range, for the reasons stated above regarding topic 1, FamilyCare will not agree to limiting the scope of this topic as proposed. FamilyCare will agree, however, to limit the scope of this topic to the date range of January 1, 2015 to present.

10. Topic 10: OHA's treatment of sub-capitated entities and payment arrangements, including but not limited to, in its Medicaid rate-setting process and associated policies.

OHA Response: OHA objects to this topic on the grounds it is overbroad as to timeframe, scope and is vague and ambiguous. OHA requests FamilyCare explain what it means by "treatment of sub-capitated entities and payment arrangements." OHA also objects to the phrase "including but not limited to." OHA requests that FamilyCare explain what is meant by associated policies. As explained above, OHA policies for Medicaid are far reaching and go beyond the specific allegations made by FamilyCare. OHA proposes this topic is limited to OHA's

139632649.1
Perkins Coie LLP

Matthew Levin
May 2, 2018
Page 7

treatment of sub-capitated entities and payment arrangement in its capitation rate setting for Coordinated Care Organizations limited to the timeframe proposed in Topic 1.

FamilyCare Reply: FamilyCare disagrees that this topic is vague and ambiguous. Notwithstanding that, FamilyCare clarifies that OHA's "treatment of sub-capitated entities and payment arrangements" refers to OHA's policies and practices relating to coordinated care organizations that contract with OHA that are sub-capitated in structure. This topic includes the manner in which OHA requires sub-capitated coordinated care organizations to report costs, profits, and utilization data to OHA as part of the rate setting process, as well as OHA's policies and practices relating to the use of that data by OHA.

Regarding date range, for the reasons stated above regarding topic 1, FamilyCare will not agree to limiting the scope of this topic as proposed. FamilyCare will agree, however, to limit the scope of this topic to the date range of January 1, 2015 to present.

11. Topic 11: OHA's communications with CMS.

OHA Response: OHA objects to this topic on the grounds it is overbroad as to timeframe, scope and is vague and ambiguous. OHA communicates with CMS on issues that go far beyond the scope of discovery in this matter. OHA requests that FamilyCare narrow the scope of this topic to communications relating to CMS's certification of OHA's rates.

FamilyCare Reply: FamilyCare objects to limiting this topic to communications regarding CMS's certification of OHA's rates. A broader range of communications are relevant, as reflected in FamilyCare's requests for production of documents. As such, FamilyCare clarifies that this topic includes all of OHA's communications with CMS relating to Oregon's Medicaid program, including but not limited to OHA's communications with CMS relating to: 1) the rate development standards for each CCO and the trend models for each CCO in connection with CCO capitation rates from January 1, 2015 onward; 2) the impact of FamilyCare's decision not to sign the 2018 rate amendment in Oregon's 2018 Medicaid capitation rate setting process; 3) Oregon Health Plan eligibility and enrollment; 4) change or potential change in the number of COOs in Oregon; 5) any CCO's ability to meet the goals of Oregon's section 1115(a) Medicaid demonstration, or any negative impacts to enrollee access, quality of care or beneficiary rights; 6) OHA's submission of CMS-64 Expenditure Reports to CMS; and 7) federal law requirements for setting Medicaid capitation rates.

139632649.1
Perkins Coie LLP

Matthew Levin
May 2, 2018
Page 8

As previously noted, FamilyCare is in the process of supplementing the list of preliminary FRCP 30(b)(6) topics that it originally provided. At this time, FamilyCare proposes the following additional topics:

12.  Topic 12: OHA's provision of information to the Oregon legislature about Oregon's Medicaid program, either through public testimony or in one-on-one meetings, including information relating to the program's funding, administration, policy decisions and performance.

13. Topic 13: OHA's decision to hire, and to continue to hire, Optumas to perform work related to the setting of Oregon's Medicaid capitation rates.

14. Topic 14: OHA's internal processes for receiving, compiling, and maintaining data collected from Coordinated Care Organizations for the setting of Oregon's Medicaid Capitation Rates.

15. Topic 15: OHA's internal collection and management of enrollment and eligibility data for the Oregon Health Plan, including, but not limited to: the tracking of enrollment and eligibility changes over time; reconciliation of enrollment and eligibility data over time; OHA's processes for performing enrollment and eligibility re-determinations, and OHA's internal management of assigning, tracking, reconciling, correcting and adjusting the Program Eligibility Resource Code (PERC) for each individual Medicaid recipient in the Oregon Health Plan.

16. Topic 16: The impact of any enrollment and/or eligibility errors on the Medicaid capitations rates paid to Oregon Coordinated Care Organizations, and any planned or potential action to re-determine rates or otherwise compensate those Organizations for amounts they may have been underpaid as a result of those errors.

17. Topic 17: OHA's process and methodology for determining the "Preliminary Rate Redetermination Analysis" provided to Oregon Coordinated Care Organizations on December 29, 2017, including but not limited to, data and materials considered by OHA in reaching its conclusions stated in the Preliminary Redetermination Analysis.

18. Topic 18: The 2018 Medicaid capitation rate amendment, the one-month version of that amendment, and the personal services agreement that FamilyCare entered into with OHA in December 2017.

Finally, as previously noted, these topics are only preliminary in nature and are being provided to OHA as a courtesy to aid in setting a date for OHA's 30(b)(6) deposition. Because document

139632649.1
Perkins Coie LLP

Matthew Levin
May 2, 2018
Page 9

discovery remains ongoing in this case, FamilyCare reserves the right to modify the topics listed above, as well as to add additional topics as appropriate in light of that process.

Very truly yours,

Nathan R. Morales

139632649.1
Perkins Coie LLP