Case 6:18-cv-00296-MO    Document 147-4    Filed 07/20/18    Page 1 of 4

With Redactions William Guest, 5/17/2018                    Allen v. FamilyCare, Inc.

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

PATRICK ALLEN, in his
official capacity as
DIRECTOR OF OREGON HEALTH
AUTHORITY, an agency of
the State of Oregon,
            Plaintiff,
    v.                    No. 3:18-cv-00212-MO(Leading)
                             6:18-cv-00296-MO(Trailing)
FAMILYCARE, INC., an
Oregon non-profit
corporation,
            Defendant.
_____

FAMILYCARE, INC., an Oregon
non-profit corporation,
            Plaintiff,
    v.
OREGON HEALTH AUTHORITY,
an agency of the State of
Oregon; and PATRICK ALLEN,
both individually and in
his official capacity as
director of the Oregon
Health Authority,
            Defendants.

VIDEO DEPOSITION OF WILLIAM C. GUEST III
(AEO DESIGNATIONS UNDER SEPARATE COVER)
THURSDAY, MAY 17, 2018

Page 2

BE IT REMEMBERED THAT, pursuant to the Federal Rules of Civil Procedure, the deposition of WILLIAM C. GUEST III was taken before Marilynn Hoover, a Certified Shorthand Reporter in Oregon; on Thursday, May 17, 2018, commencing at the hour of 9:02 A.M.; at 1011 Commercial Street N.E., in Salem, Oregon.

APPEARANCES

MARKOWITZ HERBOLD, P.C.
    BY MR. MATTHEW A. LEVIN
      MS. KATHERINE M. ACOSTA
    1211 S.W. Fifth Avenue, Suite 3000
    Portland, Oregon 97204
    Telephone:  503-295-3085
    E-mail:  MattLevin@markowitzherbold.com
    Appearing as Special Assistant Attorneys
    General for OHA, Patrick Allen

PERKINS COIE, LLP
    BY MR. NICK HESTERBERG
    1201 Third Avenue, Suite 4900
    Seattle, Washington 98101
    Telephone:  206-359-3087
    E-mail:  NHesterberg@perkinscoie.com
    On behalf of FamilyCare, Inc., and the witness

Page 3

APPEARANCES (CONT.)

PERKINS COIE, LLP
    MR. SASHA PETROVA
    1120 N.W. Couch Street, 10th Floor
    Portland, Oregon 97209
    Telephone:  503-727-2296
    E-mail:  SPetrova@perkinscoie.com
    On behalf of FamilyCare, Inc., and the witness

ALSO PRESENT:  Mr. Artur Suchorzewski
               Ms. Camille Schmitt, videographer

Page 4

EXAMINATION INDEX
                                              PAGE
Examination by Mr. Levin                         6

                * * *
    (AEO designations under separate cover.)
                * * *

EXHIBIT INDEX
EXHIBIT NO.   DESCRIPTION                      PAGE
Exhibit 46    2017 provider dinner presentation    5
Exhibit 47    Third amended complaint          104
Exhibit 48    Event ledger                     207
Exhibit 49    2014-2016 provider overpayment   213
Exhibit 50    Attachment A (Medicaid) (CCO)
              services and compensation attachment
              group provider agreement         221
Exhibit 51    E-mail string                    236
Exhibit 52    2015 business profile - FCI      241
Exhibit 53    Perkins Family 003351.xlsx       250
Exhibit 54    07/26/2016 e-mail                281

Page 5

THURSDAY, MAY 17, 2018; SALEM, OREGON
(Exhibit 46 marked.)
THE VIDEOGRAPHER: Good morning. We are on the record. The time is 9:01 a.m. on March 17th, 2018 (as spoken). Here begins media number 1 of the deposition of William Guest in the matter of Allen v. FamilyCare Inc.

This case is in the United States District Court, Portland Division. The leading case number is 3:18-cv-00212-MO; the trailing case number is 6:18-cv-00296-MO.

This deposition is taking place at the Garrett Hemann Robertson, P.C., located in Salem, Oregon, and is being taken on behalf of the plaintiffs -- defendants. I'm sorry.

MR. LEVIN: You got it right both times.

THE VIDEOGRAPHER: The videographer is Camille Schmitt, with the court reporter, Marilynn Hoover, appearing on behalf of Schmitt Reporting & Video in Vancouver, Washington.

Would counsel please identify yourselves and state whom you represent, beginning with plaintiff's counsel.

MR. LEVIN: Matt Levin on behalf of the state entities and people, not Lynne Saxton.

Page 6

MS. ACOSTA: Kate Acosta, also on behalf of the state.

MR. HESTERBERG: Nick Hesterberg, Perkins Coie, on behalf of FamilyCare and the witness.

MS. PETROVA: Sasha Petrova on behalf of FamilyCare and the witness.

THE VIDEOGRAPHER: Would the court reporter please swear in the witness.

WILLIAM C. GUEST III, called as a witness, being duly sworn on oath, was examined and did testify as follows:

EXAMINATION

BY MR. LEVIN:

Q. Good morning, Mr. Guest.
A. **Good morning.**
Q. My name's Matt Levin and I represent OHA and Mr. Allen in the long-titled dispute that the videographer just read out.
Do you understand that?
A. **Yes.**
Q. Okay. We haven't met before this morning; correct?
A. **Correct.**
Q. Have you ever had your deposition taken before?

Page 7

A. **Maybe once.**
Q. Maybe once?
A. **I don't know if it was an official dep -- deposition, which...**
Q. Okay. Do you remember what it was regarding?
A. **It was when I was a member of the board of Atrio Health Plans.**
Q. How long ago was that?
A. **It would have been maybe about sometime after 2004, maybe around 2006 or 2007, rough -- roughly.**
Q. Okay. Well, we'll start from scratch. I'll lay the ground rules for you.
I'm going to be asking you a series of questions in this deposition, and we have the questions and answers that are going to be recorded both visually by the camera in front of you, and everything that is said in the room by the videographer sitting to your right.
Do you understand that?
A. **Yes.**
Q. Excuse me. The court reporter is sitting to your right. I got the "right" correct; I was pretty impressed.

Page 8

When I ask you a question, if you answer it, I'm going to assume that you're answering it fully and completely and to the best of your ability. Is that fair?
A. **Yes.**
Q. If you have a question about my question, if you don't understand it, then you're free to tell me that, and I'll do my best to rephrase it. Okay?
A. **Okay.**
Q. Now, the last answer you gave was barely audible. And I want to make sure that, when you answer a question, especially a yes or no question, that we try to stick to yes and no as opposed to shakes of the head and things like that. Is that fair?
A. **Yes.**
Q. Okay. And do you understand that you're represented by counsel during this deposition?
A. **Yes.**
Q. And who is your attorney here?
A. **Nick and Sasha here to the left.**
Q. Okay. Great. So, Mr. Guest, do you understand at any time that FamilyCare in general paid its providers higher rates than other Oregon CCOs?

Case 6:18-cv-00296-MO    Document 147-4    Filed 07/20/18    Page 3 of 4

With Redactions William Guest, 5/17/2018                    Allen v. FamilyCare, Inc.

Page 253

their allocation would have been $3 million. Maybe this was part of that; it would be pure speculation.

Q. Okay.

A. The Unity Center donation, I believe, was also an effort to reduce for -- most of these are trying to divert patients going to the ER unnecessarily, trying to avoid that. And my rough recollection is that Unity Center was sort of a combined effort by other health care providers in the community to try to find an alternative for substance use disorder members, or mental health members, behavioral health related; but I'd have to look at that. I just kind of --

Q. Sure. And this report, as you said, was for payments that were made before your time.

Two questions about that: Who had your job before you?

A. I understood my job was created where -- from -- they took multiple departments and then created it, so I did not have a predecessor. I think I was the first time to have my title.

Q. Okay. Do you know who at FamilyCare would have approved or negotiated the bonuses that are reflected on Exhibit 53 before you?

A. I do not know. But, as I said, Bennett --

Page 254

and we said his name earlier. I told you he was from mental health. I can't remember his last name again -- was over mental health. Now, whether he was there in 2016, I couldn't tell you.

Bennett Garner, maybe, I'm thinking.

Q. Might it have been the CFO? Could it have --

A. I don't know.

Q. -- to do this? You don't know?

A. (Shakes head.)

Q. Okay. When you were at FamilyCare, did you approve any or negotiate any bonus payments that were along the same lines as the ones described in Exhibit 53?

MR. HESTERBERG: Object to form.

THE WITNESS: I do not recall negotiating any bonus payments of this nature for behavioral health or for a donation to a foundation such as Legacy.

Q. BY MR. LEVIN: And if you wanted to see whether there were any such bonus payments made in the FamilyCare system, how would you do that, assuming you were still working there and it still was in business?

A. Well, I did not have access to the general

Page 255

ledger. I would have to ask somebody to do a search for -- for me to see, so...

Q. So, in order to determine whether FamilyCare made bonus payments that you didn't specifically approve of, you would have to look at the general ledger to know whether that happened?

A. Yes. I don't know what subaccounts they use with their chart of accounts looked like. I don't know. I see the word "bonus" here on two of these, but not all of them, to do a search for them. I have no idea how their system -- I did not have an account or access to the general ledger system.

MR. HESTERBERG: Would now be a good time for a break?

MR. LEVIN: It would be. I understand we've got about ten minutes left on the disk, so...

MR. HESTERBERG: Okay.

THE VIDEOGRAPHER: We are off the record. The time is 4:41 -- 42 p.m.

(Recess.)

THE VIDEOGRAPHER: We are back on the record the time is 4:56 p.m.

Q. BY MR. LEVIN: Are you aware of any additional requirements or expectations that FamilyCare put on its providers, that other CCOs

Page 256

didn't put on its providers -- on their providers?

A. You've seen one managed care contract, you've seen one managed care contract.

So our provider -- our contracts are going to be -- FamilyCare's contracts were different than contracts I'd seen in other places. They had provisions that were different than other ones I'd not seen in other contracts. So they're -- they're all unique.

Q. All right. Can you think of any examples where you thought FamilyCare imposed requirements or expectations on its providers, that were innovative and not -- not done by other plans?

MR. HESTERBERG: Object to form.

THE WITNESS: I felt that FamilyCare's contracts made sense to me in that I -- I can see that they were putting contract provisions in that would help them meet the spirit and letter of what the Oregon Health -- OHA was trying to have the CCOs accomplish and implement.

Q. Okay.

A. There's -- There is different ways to do it, there's different emphasis. One plan may emphasize in one year substance use disorder and smoking cessation, another one may focus on diabetes

Schmitt Reporting & Video, Inc.
(360) 695-5554 -- (503) 245-4552 -- (855) 695-5554

Ex. 4 - Simpson Decl.
Page 3 of 4

STATE OF OREGON          )
                         )  SS.
COUNTY OF MARION         )

     I, MARILYNN HOOVER, CSR No. 04-0387 for the State of Oregon, do hereby certify:

     That prior to being examined, the witness named in the foregoing deposition was duly sworn to testify the truth, the whole truth, and nothing but the truth;

     That said deposition was taken down by me in shorthand at the time and place therein named, and thereafter reduced by me to typewritten form; and that the same is a true, correct, and complete transcript of the said proceedings.

     Before completion of the deposition, review of the transcript [X] was [ ] was not requested.  If requested, any changes made by the deponent (and provided to the reporter) during the period allowed shall be appended hereto.

     I further certify that I am not interested in the outcome of the action.

     Witness my hand this 21st day of May 2018.

_____

MARILYNN HOOVER, RPR

CSR No. 04-0387; Exp. 03/31/2020