1

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION


PATRICK ALLEN, in his official )
capacity as DIRECTOR OF OREGON )
HEALTH AUTHORITY, an agency of )
the State of Oregon,           )
                               )
          Plaintiff,           )
    vs.                        )No. 3:18-cv-00212-MO
                               )No. 6:18-cv-00296-MO
FAMILYCARE, INC., an Oregon    )
non-profit corporation,        )
                               )
          Defendant.           )
_____)


        VIDEOTAPED DEPOSITION OF COURTNEY CROWELL

        Taken at the instance of FamilyCare, Inc.




                               June 5, 2018

                               9:00 a.m.

                               1990 Third Street

                               Baker City, Oregon




        BRIDGES REPORTING & LEGAL VIDEO
         Certified Shorthand Reporters
              P. O. Box 223
          Pendleton, Oregon  97801
         (541) 276-9491 - (800) 358-2345

2

_____

FAMILYCARE, INC., an Oregon          )
non-profit corporation,              )
                                     )
            Plaintiff,               )
                                     )
    vs.                              )
                                     )
OREGON HEALTH AUTHORITY, an          )
agency of the State of Oregon,       )
and PATRICK ALLEN, both              )
individually and in his             )
official capacity as director        )
of the Oregon Health Authority,      )
                                     )
            Defendants.              )
_____)

        BE IT REMEMBERED that the videotaped

deposition of COURTNEY CROWELL was taken in behalf of

FamilyCare, Inc., pursuant to the Federal Rules of

Civil Procedure before William J. Bridges, Certified

Shorthand Reporter for Oregon, Washington and Idaho,

on Tuesday, the 5th day of June, 2018, at the Yervasi

Law Office, 1990 Third Street, Baker City, Oregon,

commencing at the hour of 9:00 a.m.

3

APPEARANCES:


For Patrick Allen, in his official capacity as
Director of Oregon Health Authority:


                         LAURA SALERNO OWENS, ESQ.
                         Markowitz Herbold PC
                         Attorneys at Law
                         1211 S.W. Fifth Avenue
                           Suite 3000
                         Portland, OR  97204
                         (503) 295-3085
                         laurasalerno@markowitzherbold.com


For FamilyCare, Inc.:


                         ALLETTA BRENNER, ESQ.
                         LAURA F. SEGAL, ESQ.
                         Perkins Coie
                         Attorneys at Law
                         1120 N.W. Couch Street
                           10th Floor
                         Portland, OR  97209
                         (503) 727-2226
                         lsegak@perkinscoie.com
                         abrenner@perkinscoie.com


Also present:      GREG SCOTT

                   DUSTIN E. BUEHLER

                   ARTUR SUCHORZTWSKI

                   CHRISTIAN PULLEN, Videographer

129

about any of the information in these documents or about these documents.

Is that correct?

MS. OWENS:  Objection.  That misstates the testimony.

THE WITNESS:  I don't remember having any conversations about any of these documents.

Q.    (BY MS. BRENNER:)  Okay.  Did you have any conversation with anyone at OHA at all about creating the Communications Plan that you were asked to create?

A.    Yes.

Q.    Who did you talk to about creating that Communications Plan?

A.    I don't remember everyone.  But I did have general conversations with Robb and BethAnne and other folks in OHA who might be able to give me kind of background and a little more understanding about what the potential litigation might be about and sort of general background.

Q.    So, which other people are those?

A.    Again, I can't remember everyone, but I know I had a conversation with Kate Nass and Chelsea Guest and Janelle Evans, I think it is.  And I don't remember who else specifically.  But those three, I

131

Q.    Okay.  So, what is this e-mail?

A.    This is an e-mail from BethAnne to myself with a bunch of documents and resources about previous FamilyCare litigation.

Q.    Okay.  So, if we look at the e-mail here on the top, it says "Courtney -- As we discussed, attached are most of the docs we created the last time.  I am about to send you some of the newer materials.  We will want to create a comms plan for Lynne as soon as possible."

What is it that you were discussing with BethAnne Darby?

A.    I believe she had asked me.  I don't know this specifically.  But she had asked me to develop a Draft Communications Plan.

Q.    So, BethAnne Darby gave you information about how you were to go about creating that Draft Communications Plan?

MS. OWENS:  Objection, misstates testimony.

THE WITNESS:  I don't remember specifically what she -- what information, how that conversation proceeded or kind of what information she gave me.

But I do remember she asked me to do, put

COURTNEY CROWELL - by Ms. Brenner
(541) 276-9491 BRIDGES REPORTING & LEGAL VIDEO (800) 358-2345

Ex. 10
Page 5 of 9

132

together a Draft Communications Plan on the off chance the FamilyCare litigated again.

Q.    (BY MS. BRENNER:)    And she provided you with these background materials?

A.    In this e-mail, yes.

Q.    Okay.  Why did she want to create a comms plan for Lynne as soon as possible?

MS. OWENS:  Objection, calls for speculation, lacks foundation.

THE WITNESS:  I don't know.

Q.    (BY MS. BRENNER:)  Did she express to you any reason why there might be urgency around creating a plan?

A.    I don't remember.

Q.    And did she express what the plan specifically was for?

A.    I don't remember specifically.

Q.    Okay.  Did she communicate with you about what her instructions were from Lynne Saxton around the plan?

A.    I don't remember.

Q.    So, if we go to the second e-mail down here in the chain, this looks like it's an e-mail from Lynne Saxton to BethAnne Darby and a number of other people on the team.  And it says, "Hi all -- I am

134

Q.    Did you prepare a similar Communications Plan for FamilyCare in 2017?

MS. OWENS:  Objection, vague.

THE WITNESS:  I was asked to put together a Draft Communications Plan on the off chance that FamilyCare moved forward with litigation in 2017.

Q.    (BY MS. BRENNER:)  And what were the key elements of that plan?

MS. OWENS:  Objection, vague.

THE WITNESS:  I don't -- I don't have it in front of me, so it is hard for me to answer that question.

Q.    (BY MS. BRENNER:)  Was that draft plan you prepared reviewed by your supervisors at OHA?

A.    I did, after I developed a draft, I did send it to, yeah, my superiors.

Q.    Okay.  And did they approve of your work on the plan?

MS. OWENS:  Objection, vague.

THE WITNESS:  It was always a draft plan.  So, I don't know how you can define approved, because we never had an approved final plan.

Q.    (BY MS. BRENNER:)  Did they express that they were pleased with the work that you had done on

135

the plan?

MS. OWENS:  Objection, vague.

THE WITNESS:  I guess I don't know who you're specifically asking about.  My direct supervisor, I'm not sure specifically.  I'm not -- I don't know specifically.

Q.    (BY MS. BRENNER:)  So, did any of your supervisors at OHA who reviewed the Draft Communications Plan that you created express to you that they were pleased with your work?

MS. OWENS:  Objection, vague.

THE WITNESS:  I don't know.  I feel like that's speculating.  I don't know how they felt.  But it was always a draft plan.  It never moved to anything final.

Q.    (BY MS. BRENNER:)  Did they ever express to you how they felt about the plan?

A.    I don't remember specifically.

Q.    Was the plan ever implemented?

A.    No.

Q.    In any part?

A.    Not that I know of.

Q.    All right.

A.    Are we done with 09?

Q.    Yes.

237

STATE OF OREGON          )
                         )  ss.
County of Umatilla       )


I, William J. Bridges, do hereby certify that at the time and place heretofore mentioned in the caption of the foregoing matter, I was a Notary Public for the state of Oregon; that at said time and place I reported in stenotype all testimony adduced and proceedings had in the foregoing matter; that thereafter my notes were reduced to typewriting and that the foregoing transcript consisting of 236 typewritten pages is a true and correct transcript of all such testimony adduced and proceedings had and of the whole thereof.

Witness my hand at Pendleton, Oregon, on this _____ day of June, 2018.


William J. Bridges
Notary Public for Oregon
My certificate expires: 12-21-18