UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

|  |  |
|---|---|
| PATRICK ALLEN, in his official capacity as DIRECTOR OF OREGON HEALTH AUTHORITY, an agency of the State of Oregon,<br>   Plaintiff,<br>    v.<br>FAMILYCARE, INC., an Oregon non-profit corporation,<br>   Defendant. | ) ) ) ) ) ) No. ) 3:18-CV-00212-MO ) ) ) ) |
| FAMILYCARE, INC., an Oregon non-profit corporation,<br>   Plaintiff,<br>    v.<br>OREGON HEALTH AUTHORITY, an agency of the State of Oregon, and PATRICK ALLEN, both individually and in his official capacity as director of the Oregon Health Authority,<br>   Defendants. | ) ) ) No. ) 6:18-CV-00296-MO ) ) ) ) ) ) ) ) ) |

VIDEOTAPE DEPOSITION OF

PATRICK M. ALLEN

Taken in behalf of FamilyCare

\*   \*   \*

June 15, 2018

1211 S.W. Fifth Avenue, Suite 3000

Portland, OR 97204

Shannon K. Krska,
CSR, CCR
Court Reporter

Patrick M. Allen, 6/15/2018              Allen v. Family Care

2

APPEARANCES:

For the Plaintiff Allen:

MR. DAVID B. MARKOWITZ
Special Assistant Attorney General
Markowitz Herbold PC
Suite 3000
1211 S.W. Fifth Avenue
Portland, OR 97204
503.295.3085
DavidMarkowitz@MarkowitzHerbold.com
        and
MS. RENEE  STINEMAN
Oregon Department of Justice Trial Division
100 S.W. Market Street
Portland, OR 97201
971.673.1880
renee.stineman@doj.state.or.us
          and
MR. THEODORE C. FALK
Oregon Department of Justice Health & Human
Services Section
1162 Court Street NE
Salem, OR 97301
503.947.4430
theodore.falk@doj.state.or.us

For the Defendant FamilyCare:

MR. STEPHEN F. ENGLISH and MR. BRIAN P. SAMUELSON
and MS. SASHA A. PETROVA
Perkins Coie
Tenth Floor
1120 N.W. Couch Street
Portland, OR 97209
503.727.222
SEnglish@Perkinscoie.com

Also Present:  Penny Evans, Greg Scott, Jeff
Heatherington, Bill Murray, and Julian Ivory -
videographer

Schmitt Reporting & Video, Inc.
(360) 695-5554 -- (503) 245-4552 -- (855) 695-5554

Patrick M. Allen, 6/15/2018                    Allen v. Family Care

159

connotation anywhere from positive to neutral to negative depending on the actual circumstances that underlie it.

Q.    How do you think it's being used in the communication plan in the context of where it sits in that communication plan?

A.    Well, my understanding is the draft communication plan wasn't implemented so I would say, in answer to your specific question, it wasn't used at all.

Q.    How do you think it's used in the draft communication plan, positive or negative, or neither?

A.    Hard to say without being more familiar with the underlying facts and circumstances.

Q.    Okay.  Would you agree that FamilyCare, as one of its major expenditures historically or at least in the last several years, has had higher spending for primary care reimbursement than at least some, if not many, of the other CCOs?

A.    I don't know that I know enough to characterize that as a major expenditure, but I certainly know that -- that our independent actuarial findings were that they spent more on

they had people in attendance?

A.    Not on the Leg -- the Legislator call, but on the public -- on the public webinar.

Q.    Okay.  Well, what I'm trying to figure out is as late as December 16th, after this meeting that you just talked about, my information is Laura Robison was communicating with FamilyCare promising further discussions, and then come December 20th they're given a 24-hour ultimatum, and that's what I'm trying to figure out.

A.    Sure.

Q.    What caused that?

A.    Yeah.  So let me fill in some more of the -- some more of the details.  So in -- in detail the agreement that came out from the meeting on presumably the 15th was that there were two steps to being able to try to get them the order of magnitude kind of assessment of the adjustments.  And the first was a data validation step that needed to be done by Optumas to assure that the -- that the data that they had been -- that they had received relating to the final disposition of redeterminations was accurate.

Patrick M. Allen, 6/15/2018                 Allen v. Family Care

242

Laura and Bill were in relatively frequent conversation over those next few days around questions related to the date of validation as well as trying to be more specific about small, medium, and large and what those steps would look like.

The thing that you apparently don't have information about, or -- or you're not sharing it, is that a couple of days later we became aware of the fact that FamilyCare had pulled together an all-staff meeting and started talking about if not providing notices of layoffs of their staff.  And we began getting calls from staff members, from providers, and -- and occasionally from members expressing concern that they hear FamilyCare is going out of business and what are we going to do about it.

At that point we had been doing some contingency planning around what to do if we weren't able to resolve this with FamilyCare. And the concern became now they're -- we're at a place where we have particularly providers and members who have a concern about where their health care is going to come from.

We needed to begin to consider to take

Patrick M. Allen, 6/15/2018                Allen v. Family Care

243

more concrete steps to be able to plan for what was ultimately, if it happened on -- on the last day of December, going to be a very abrupt transition. We didn't want to just start doing that and have it look like we were pursuing a foregone conclusion that we weren't going to resolve it.

That led to the meet on the 20th where our intent was to say, look, you've got until the 29th to be able to solve -- to sign the agreements, but you're out there telling people that you're going out of business and we need to know what your intent it. And so we asked if they could provide us, within 24 hours, an indication of their intent with respect to the agreements on the -- for the 29th or that we would need to begin to implement a transition plan and be ready for a -- a sudden loss of coverage for 115,000 Oregonians.

Q. So the -- at least one person who was in that meeting --

Kevin Clancy was in that meeting of December 20th, wasn't he?

A. Yeah, that's my recollection.

Q. Right.

Schmitt Reporting & Video, Inc.
(360) 695-5554 -- (503) 245-4552 -- (855) 695-5554

Patrick M. Allen, 6/15/2018                    Allen v. Family Care

245

A.    Neither.

Q.    -- make up their mind?

A.    Neither.  I went into that meeting hoping that we would be able to continue to resolve the circumstances and that they would sign a 2018 contract.  I also went into that meeting knowing that legally they had until the 29th to -- to sign that contract based on the statutory notice requirements.

But given their actions over the preceding few days basically telling the world they were going out of business, I was hoping to get -- and giving them 24 hours to provide some indication of what their intent was so that we would have an indication of whether we should in fact begin planning wholeheartedly for transitioning their members very quickly so we can ensure continuity of care for those Oregonians.

Q.    Okay.  So just so I'm clear in my mind, you went into the meeting of December 20th still unsure as to whether or not you were going to impose a 24-hour ultimatum on them and you --

Did I understand that correctly?

MR. MARKOWITZ:  I'm going to object.

Schmitt Reporting & Video, Inc.
(360) 695-5554 -- (503) 245-4552 -- (855) 695-5554

Patrick M. Allen, 6/15/2018                Allen v. Family Care

246

You've mischaracterized his testimony.

Q.   (By Mr. English)  Okay.  Just so I'm clear in my mind, did you go into the meeting of December 20th still unsure as to whether or not you were going to impose a 24-hour ultimatum on FamilyCare?

A.   What do you mean by "ultimatum"?

Q.   24-hour ultimatum as to whether or not they were going to sign the contract.

A.   I did not go in nor did we in the meeting execute a 24-hour ultimatum requiring them to sign the contract.  We asked for an indication of their intent which we -- on which we would base our moving forward or not with implementing a transition plan.

Q.   Okay.

Let me take a break and -- real quickly.

VIDEO TECHNICIAN:  We're off the record. The time is 4:49 p.m.

(Recess:  4:51 p.m. to 4:58 p.m.)

VIDEO TECHNICIAN:  We're on the record. The time is 4:57 p.m.

Q.   (By Mr. English)  Have you ever discussed the FamilyCare lawsuit with members of any other State agency?

Schmitt Reporting & Video, Inc.
(360) 695-5554 -- (503) 245-4552 -- (855) 695-5554

Patrick M. Allen, 6/15/2018                    Allen v. Family Care

255

C E R T I F I C A T E


I, Shannon K. Krska, a Certified Shorthand Reporter for Oregon, do hereby certify that, pursuant to stipulation of counsel for the respective parties hereinbefore set forth, PATRICK M. ALLEN personally appeared before me at the time and place set forth in the caption hereof; that at said time and place I reported in Stenotype all testimony adduced and other oral proceedings had in the foregoing matter; that thereafter my notes were reduced to typewriting under my direction; and that the foregoing transcript, pages 1 to 255, both inclusive, constitutes a full, true and accurate record of all such testimony adduced and oral proceedings had, and of the whole thereof.

Witness my hand and CSR stamp at Vancouver, Washington, this 19th day of June, 2018.



_Shannon K Krska_

SHANNON K. KRSKA
Certified Shorthand Reporter
Certificate No. 90-0216
Commission Expires: 12/31/20

Schmitt Reporting & Video, Inc.
(360) 695-5554 -- (503) 245-4552 -- (855) 695-5554