IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| PATRICK ALLEN, in his official capacity as DIRECTOR OF OREGON HEALTH AUTHORITY, an agency of the State of Oregon, <br><br> Plaintiff, <br><br> vs. <br><br> FAMILYCARE, INC., an Oregon non-profit corporation, <br><br> Defendant. <br><br> FAMILYCARE, INC., an Oregon non-profit corporation <br><br> Plaintiff, <br><br> vs. <br><br> OREGON HEALTH AUTHORITY, an agency of the State of Oregon, and PATRICK ALLEN, both individually and in his official capacity as director of the Oregon Health Authority, <br><br> Defendants. | Case No. 3:18-cv-00212-MO (Leading) Case No. 6:18-cv-00296-MO (Trailing) <br><br> VOLUME II <br><br> VIDEOTAPED FRCP 30(b)(6) DEPOSITION OF <br><br> WILLIAM MURRAY <br><br> Taken in Behalf of Defendants <br><br> July 17, 2018 <br><br> 1120 N.W. Couch Street, 10th Floor Portland, OR 97209 |

Teresa L. Dunn,

Court Reporter

CSR, CCR, RPR

William Murray, 7/17/2018          Allen v. FamilyCare, Inc.

145

APPEARANCES:

For the Plaintiff:

MR. THOMAS R. JOHNSON
MS. ALETTA BRENNER
Perkins Coie, LLP
Tenth Floor
1120 N.W. Couch Street
Portland, OR 97209
503-727-2076
trjohnson@perkinscoie.com
abrenner@perkinscoie.com


For the Defendants:

MR. DAVID B. MARKOWITZ
Special Assistant Attorney General
Markowitz Herbold Glade & Mehlhaf, P.C.
Suite 3000
1211 S.W. Fifth Avenue
Portland, OR 97204
503-295-3085
davidmarkowitz@markowitzherbold.com


MR. THEODORE C. FALK
Senior Assistant Attorney General
Oregon Department of Justice
1162 Court Street, N.E.
Salem, OR 97301
503-947-4430
theodore.falk@doj.state.or.us


Also Present:
Camille Schmitt, Videographer
Greg Scott
Laura Robison
Renee Steiman
Artur Suchorzewski

William Murray, 7/17/2018          Allen v. FamilyCare, Inc.

171

coordinate care for which there is no billing rate.

Those services under the traditional model aren't reimbursable. So the only way an office could get reimbursement is to receive the reimbursement for those services that are billable and increase the revenue there to be able to afford the additional services and supports to help their members and patients have better health outcomes.

Q. And when was this policy first adopted by FamilyCare, the $65?

A. So FamilyCare actually did that in a two-step process. So FamilyCare began -- in March of 2013 it at that point in time had a $35 conversion factor. It moved from 35 to 50 in March of 2013.

And then in August of 2014 it made the second move to increase from 50 to $65.

Q. And when it made the move from 50 to $65 was that level ever changed?

A. The 65 remains in place today if that's --

Q. And it's not been changed from the time it was implemented up to today?

William Murray, 7/17/2018                Allen v. FamilyCare, Inc.

245

average of those for either CCO because the
costs have to be reasonable and attainable for
each CCO.

So a simple averaging is -- would be
subject to question by CMS or subject to
concern.

Q.    So it is FamilyCare's position that its
contract with OHA entitles it to actuarially
sound rates?

A.    Yes.

Q.    And how is that defined?

A.    So --

Q.    How is actuarially sound rates defined?

A.    So actuarially -- actuarially sound
rates are defined in the CMS rule.  The contract
states that there shall be compliance with the
federal rules.

We know that OHA entered into its waiver
agreement for a five-year fixed period
acknowledging that it would be subject to the
CMS rules which include those of actuarially
sound rates.

The CMS rules talk about the contract
between the State and the CCOs and those
containing actuarially sound rates.

Schmitt Reporting & Video, Inc.
(360) 695-5554 -- (503) 245-4552 -- (855) 695-5554

William Murray, 7/17/2018          Allen v. FamilyCare, Inc.

258

FamilyCare decided to have FamilyCare representatives at that meeting with CMS.

Q.    And so you -- after discussion with counsel relating to the litigation you decided not to bring your experts to make the pitch to CMS?

MR. JOHNSON:  Object to the form of the question.

Q.    (By Mr. Markowitz) Is that correct?

A.    We had a discussion about who should attend the meeting and --

MR. JOHNSON:  Bill, exclude from your answer anything about our discussion.

Q.    (By Mr. Markowitz) The decision was made not to present expert -- direct expert presence to CMS?

A.    I have no other answer outside of the privileged discussion.

Q.    Has FamilyCare received any advice on the actuarial soundness of the OHA rates for the 2017 and '18 years other than that which has come from Milliman?

A.    FamilyCare in conjunction with counsel is -- has engaged PricewaterhouseCoopers.

Q.    As a testifying expert in this case?

William Murray, 7/17/2018                    Allen v. FamilyCare, Inc.

259

A.    I believe that's my understanding.    If there's a legal meaning to that phrase, I'm not aware of it, but that is my understanding.

Q.    When did that engagement take place?

A.    That engagement -- I do not remember the exact date of that engagement letter.

Q.    2018?

A.    I believe it was -- no, it was prior to that.

Q.    Can you give us any month in which they were engaged?

A.    Let me think.    I believe it was most likely the first half of 2017.    I'm not sure because I believe it happened at the time of the dispute resolution agreement which is an older document.

So I believe they were engaged -- have been engaged for a while, but I don't recall the exact date.

Q.    As of the end of 2017 without disclosing what the opinion was had there been an opinion issued to you by PricewaterhouseCoopers to FamilyCare on the subject of the actuarial soundness of the 2018 rates?

A.    There's not been an opinion.

Schmitt Reporting & Video, Inc.
(360) 695-5554 -- (503) 245-4552 -- (855) 695-5554

Ex. 13
Page 6 of 10

William Murray, 7/17/2018          Allen v. FamilyCare, Inc.

260

Q.    Or of the '17 rates?

A.    There has not been an opinion.

Q.    Prior to the decision not to sign the 2018 contract had FamilyCare received an opinion from anyone that the actuarial rates for 2018 were not sound?

A.    Not -- they have not received an opinion yet that the rates were not actuarially sound.

(Deposition Exhibit Number 163 marked for identification.)

Q.    (By Mr. Markowitz) So can you identify Exhibit 163 for us, please?

A.    Yes.  This is a PowerPoint presentation between CMS and FamilyCare that occurred on December 7th, 2016.

Q.    Where did the meeting take place?

A.    Seattle.

Q.    And who was present at the meeting?

A.    At that meeting I believe present from FamilyCare was Kevin Clancy, Ben Diedrich from Milliman, and myself.

Q.    So in this meeting you did have Milliman's representation to assist in the FamilyCare presentation to CMS?

A.    We did.

William Murray, 7/17/2018          Allen v. FamilyCare, Inc.

284

mentioned to you the Communication Plan?

A.   She mentioned the Communications Plan. It may have been in combination with -- it probably was in combination with a -- we had a lengthy conversation on the phone.

So it included, you know, other discussions than just the Communications Plan.

Q.   Wasn't her concern that led to termination of the contract whether FamilyCare would remain in business?

A.   Her concern was whether FamilyCare would remain in business or be allowed to remain in business by OHA, yes.

Q.   Did she give any credence to any derogatory statement that had been included in the Communications Plan?

MR. JOHNSON:   Object to the form of the question.

THE WITNESS:   She --

Q.   (By Mr. Markowitz) Did she articulate anything that she felt that was in the Communications Plan that had caused her any concern other than that you might go out of business?

A.   She expressed concern about how could

Schmitt Reporting & Video, Inc.
(360) 695-5554 -- (503) 245-4552 -- (855) 695-5554

William Murray, 7/17/2018          Allen v. FamilyCare, Inc.

285

OHA do something as that.

Q.    What communications with Northwest Primary Care Group existed on the subject of the Communications Plan?

A.    I know with regards to that there were verbal conversations with Bill Guest and probably some other individuals within the contracting unit at FamilyCare.

There is also a written communication from them that expresses, once again, concern about FamilyCare's ability to stay in business.

And as a result of that they moved forward with termination of their contract with concern over their financial -- the financial impact of FamilyCare.

Q.    Northwest Primary Care Group, did any representative say they believed any derogatory information that is contained in the Communications Plan?

A.    My understanding is they expressed similar concerns to Deborah Rumsey, that they didn't see how a state agency could do that.

Q.    And Recovery Works Northwest, why are they on the list?

A.    So Recovery Works Northwest actually the

William Murray, 7/17/2018                    Allen v. FamilyCare, Inc.

290

C E R T I F I C A T E

I, Teresa L. Dunn, a Certified Shorthand Reporter for Oregon, do hereby certify that, pursuant to stipulation of counsel for the respective parties hereinbefore set forth, WILLIAM MURRAY personally appeared before me at the time and place set forth in the caption hereof; that at said time and place I reported in Stenotype all testimony adduced and other oral proceedings had in the foregoing matter; that thereafter my notes were reduced to typewriting under my direction; and that the foregoing transcript, pages 144 to 291, both inclusive, constitutes a full, true and accurate record of all such testimony adduced and oral proceedings had, and of the whole thereof. Witness my hand and CSR stamp at Vancouver, Washington, this 18th day of July, 2018.

_____
TERESA L. DUNN
Certified Shorthand Reporter
Certificate No. 00-0367
Commission Expires:  6/30/20

Schmitt Reporting & Video, Inc.
(360) 695-5554 -- (503) 245-4552 -- (855) 695-5554