**Fritsche Jeffrey P**

| | |
|---|---|
| From: | Zachary Aters <zachary.aters@optumas.com> |
| Sent: | Tuesday, December 20, 2016 7:31 AM |
| To: | Fairbanks Mark R; Fritsche Jeffrey P |
| Cc: | Jones Kayla; Jessica Grado; Barry Jordan |
| Subject: | RE: FC response |

Mark,
I will provide comments by slide


Slide 2
For the rates to be "actuarially sound" they must meet the criteria to "provide for all reasonable, appropriate and attainable costs under the terms of the contract" (not force an operating loss)
- This is true, but from a program perspective, not an individual CCO perspective. Actuarially soundness does not imply that the state has to pass through any and all expenditures associated with specific business decisions made by each MCE. If that were the intent, then all MCEs could increase to commercial reimbursement or more and the state would have to fund that decision. Instead, the intent is that the rates need to provide for all REASONABLE and OBTAINABLE cost, to the extent that one MCE has made business decisions that make that challenging, then that MCE may not have the risk tolerance for the program any longer.
▢ For three years in a row, OHA's rates for FamilyCare have been explicity calculated to produce an operating loss
- The loss is a result of poor business decisions. FC made a significant investment into the ACA population by increasing that membership significantly during a time where the capitation rate for this group was far in excess of the ACAs actual risk. In short, by increasing this membership with the highest disconnect between payment and risk, FC created significant reserves and surplus. This business decision assumed that the ACA rate would always increase at the sustainable rate of growth (3.4%) thereby locking in tremendous surplus for FC. However, they failed to recognize that the Feds would require states to better match payment to risk for this population (since it was fed dollars) as such the premium for the ACA has continued to come down over last two cycles. This has had a financial impact on FC since they made changes to their reimbursement assuming that the original high ACA capitation would continue. Since ACA rates have come down, the do not make enough revenue to support their high reimbursement rates. This is what has contributed to the FC loss, business decision surrounding the ACA population (a population that was new and the risk were unknown).
▢For 2015 Rates: $ 31.5 million operating deficit ▢ Raised in July, 2015 to $ 55.1 million through a "clawback" ▢For 2016 Rates: $ 44.8 million operating deficit ▢For 2017 Rates: $ 55.7 million operating deficit estimate* ▢ This is the same figure as the 2015 "Clawback"
- If you were to take the financials and adjust their professional reimbursement to pre-ACA levels as well as account for any PDR that they book, they actually have a 0%-2% profit, which is what is targeted. It has been awhile since we did this exercise, so would recommend going through this again to confirm.


Slide 3
OHA/Optumas unwilling to share base/source information to validate accuracy, fairness and actuarial soundness ▢Lack of information sharing suggests rates are not accurate, fair or sound; FamilyCare public record requests not responded to ▢Prior to 2014, information sharing was not an issue ▢OHA/Optumas claims transparency achieved based on number of meetings held, not actual information shared
- Recommend showing the amount of meetings and calls. Each CCO has been provided their data and summaries related rate development. They have not been provided data for other CCOs, which is what this comment is directed at. FC is trying to say that they cannot replicate the entire rate development process because they do not have all the CCO data. Instead they need to be focused on using the data that has been shared (which is FC specific) and compare to their financial profile to determine if they can absorb the risk of the program.

OHA-HC000139
Ex. 27
Page 1 of 3

- Under OHA/Optumas there have been significant changes in the rate development methodologies used in each rate-setting cycle ▯Changes in methodologies appear to be driven by OHA target rate objectives for individual CCO's
  - Changes have been made, but all changes have been fully vetted with CCOs and have been implemented to better the process.  We could itemize each and every change as well as the reason for the change.
- Oregon leadership unwilling to meet with FamilyCare to discuss/resolve OHP rate development and OHP program operation concerns

Slide 4

In 2015 Rate Development, OHA stated that the $70 Million profit for FamilyCare was too high. Base costs were reduced by $70 M. •
  - 2015 rates were reduced only due to lowering the ACA capitation rates and applying risk score, the traditional medicaid population received an increase even with applying risk score.  The end result of lowering total revenue was due to the FC business decision to pursue the ACA population (mentioned above).

The other CCO's passed profits to related parties, at similar profit levels, which were left in base data as costs
  - This comment seems to be directed at HS, and is untrue.  However, even if this were true this comment fails to recognize that this would benefit FC as the region would increase which would benefit all CCOs within that region.

▯FamilyCare analysis indicates base data used by OHA/Optumas in rate-setting includes $426 million per year of "inflated costs" attributable to related-party profits
  - Above, FC states that they have been provided all base data (assuming they are referring to HS data).  Given that, how did they conduct this calculation?  The answer is that they are using HS financials filings to back into pieces of the rate process.  This is a disingenuous statement.

Slide 5
  - FC base data was within 2% of their reported financials and through discussions with FC staff, we were able to reconcile within 1%.  Again, this is a disingenuous statement.

Slide 6

Same as above.  We have had numerous conversations with FC on their base data.

Slide 7

Base Data by rate cell and region is used to set rates ▯ CCOs with high base cost receive a larger portion of the state wide average rate ▯ The Regional Average PMPM cost is used without normalization of risk score differences to the statewide average ▯ CCOs modifying cost structure for medical investments and increasing efficiencies are penalized

  - This is a ridiculous statement.  This saying that it is appropriate to compare an urban CCO to a rural CCO that has to deal with A/B hospitals and other rural regional risk.  It is saying that the urban reported cost is lower due to efficiency and implying that FC should get a larger piece of the pie, taking away from the rural CCOs (THIS WAS THE POINT THAT I WAS MAKING THE OTHER DAY ON PHONE, A BLOCK GLOBAL APPROACH HURTS THE RURAL CCO, AS THEY DO NOT GET REIMBURSED COMMENSURATE WITH THEIR RISK).  Instead of comparing themselves to Eastern, they need to compare themselves to HS which is in their region.  HS share has lower reimbursement, serves a more chronic population, has better outreach related to BH integration.

Slide 8
  - All these were changes, but changes that were fully vetted with CCOs and also requested by CCOs in some cases.  These changes were a result of creating methodologies with input from CCOs, such as the relativity factor for ACA in 2015 (This was agreed upon by the CCOs).

Slide 9

Variability of rates by CCO within eligibility categories as much as 98%. ▯ Rate categories should have minimal variability

2

OHA-HC000140
Ex. 27
Page 2 of 3

- Fails to recognize regional differences.  Minimal variability by region is a more accurate statement, and this is a result of the revised methodology.  The previous methodology that existed before the revamp was criticized for this same thing.  Using regional rates along with risk score got rid of the unexplained differences.

▣ Policy limits not consistent across CCOs

▣ Some 2017 CCO rates exceed the actuarially certified rate as well as policy limit. While others are restricted to them

- THIS MAKES NO SENSE. NOT SURE WHAT THIS IS SAYING.  We do not have ranges for the 2017 rate development, so they may be comparing 2017 rates to 2016 rate ranges.  Which would result in their claim.

▣ FamilyCare consistently the lowest paid CCO and 17% lower than HealthShare for the last three years

- This is a beaut, as this totally ignores risk score impact.  Any differences in regional capitation rates between CCOs in that region can be explained by differences in risk score or reported expenditures (for those populations not subject to risk score)

FCI's 2017 rates are 16% lower than its 2014 rates

- AND SHOULD BE SINCE THE 2014 ACA RATES WERE EXTREMELY HIGH, ALMOST 40-60% TOO HIGH.  Their traditional population has received increases.


Slide 10

- Comparison ignores differences in population risk as well as differences in regional risk.


Slide 11

- Rates have been approved by CMS/OACT, justifying the level of substantiation and appropriateness of projections and methodology
- CLEARLY, TRENDS  WILL VARY FROM ACTUAL FC OBSERVED TRENDS DUE TO THE BUSINESS DECISION SURROUNDING REIMBURSEMENT CHANGES.


Slide 12

- FC has never engaged OHA/Optumas in reconciling risk scores, to my knowledge.  However, all detailed risk scores for their CCO have been shared with FC.


Slide 13

- All case management expenditures reported by CCOs are included in rate development.  The case management is moved to non-medical load but at the regional level. Moving forward, this adjustment will be CCO specific to better align payment to unique business models of CCOs


Slide 14

- Ignores the fact that HS has a more chronic population.  If FC received the same rate, then they would get paid a rate that was much too high for their risk of population.


Zachary Aters ASA, MAAA | Optumas
7400 E. McDonald, Suite 101, Scottsdale, AZ 85250
v. 480.588.2495 | c. 480.280.5881 | zachary.aters@optumas.com

-----Original Message-----
From: Fairbanks Mark R [mailto:MARK.R.FAIRBANKS@dhsoha.state.or.us]
Sent: Monday, December 19, 2016 6:18 PM
To: Zachary Aters <zachary.aters@optumas.com>; Fritsche Jeffrey P <JEFFREY.P.FRITSCHE@dhsoha.state.or.us>
Cc: Jones Kayla <KAYLA.JONES@dhsoha.state.or.us>
Subject: FC response


https://olis.leg.state.or.us/liz/2015I1/Downloads/CommitteeMeetingDocument/94554

3

OHA-HC000141
Ex. 27
Page 3 of 3