ELLEN F. ROSENBLUM
Attorney General

FREDERICK M. BOSS
Deputy Attorney General

**DEPARTMENT OF JUSTICE**
TRIAL DIVISION

February 21, 2017

*Via email only: SEnglish@perkinscoie.com*

Stephen F. English
Perkins Coie
1120 NW Couch St 10th Fl
Portland, OR 97209-4128

Re:     FamilyCare-OHA Dispute Resolution

Dear Mr. English:

Thank you for your letter of February 9, 2017, which addresses public records requests made by your office to OHA on February 6 and OHA's preliminary response to those requests (Mr. Falk's letter to you dated February 8). Specifically, your February 9 letter demands that OHA: (1) immediately produce data responsive to FamilyCare's Request No. 5, to the extent it relates *only* to FamilyCare; (2) enter into an agreement to produce to FamilyCare and its actuaries trade secret and other confidential information of other Coordinated Care Organizations (CCOs); and (3) agree to a meeting to occur within days of your letter, during which the parties, counsel, and actuaries would engage in further discussion pursuant to the Dispute Resolution Agreement. Your letter also sets out a proposed agenda for our next meeting.

This letter corrects some apparent misunderstandings relating to the parties' responsibilities under the Dispute Resolution Agreement, responds to the demands in your February 9 letter, and proposes an alternative timeframe and agenda for our next meeting. Today we received your letter dated February 20, 2017 (state holiday) and will respond separately, as appropriate.

## 1.     FamilyCare-exclusive data in response to Request No. 5

It appears that there is no FamilyCare specific data responsive to Request No. that has not previously been provided to FamilyCare.

Your Request No. 5 seeks:

Data underlying the "2017 Reimbursement Review" identified in Appendix VIII to the Optumas 2017 Rate Certification and the reimbursement adjustment made in connection with that policy.

In our February 6 meeting, to explain this request, you displayed a graph entitled "2014 to 2015 Implied Growth Rate by CCO." You also similarly referred to an "Exhibit 4 –

Ex. 7 to Stineman Decl.
Page 1 of 5
FCI0104566

FamilyCare PMPM Summary" attached to the request to explain this request. These references highlight a continuing challenge that FamilyCare's numerous public records requests pose to OHA. FamilyCare's requests are rarely clear, and they continually evolve and overlap.

We conferred with OHA's actuary to better understand what you may be seeking. To the extent you seek data underlying the reimbursement review, the reimbursement adjustment or implied growth rate for FamilyCare, that is base data *all provided by FamilyCare to OHA* as part of its financial templates. To the extent you seek a statement of the adjustments, those amounts, which were *calculated based on the data provided by FamilyCare*, are identified in the Ex. 4 attached to the request. Those calculations and amounts were further detailed in emails and personal communications directly with FamilyCare including, for example, see email correspondence dated July 25 and August 12, 2016 from Chelsea Guest (or Tricia Macinnes on behalf of Chelsea Guest) to Bill Murray and others within FamilyCare. Copies of these examples were provided to you via email on February 16, 2017. At your request, we will produce copies of additional email exchanges between OHA and FamilyCare regarding the 2017 reimbursement analysis and adjustments.

We will continue to work with OHA's actuary to confirm whether any of the data underlying the reimbursement review, reimbursement adjustment or implied growth rate relating specifically and exclusively to FamilyCare was not either provided by FamilyCare or produced previously to FamilyCare. In addition, as confirmed by my email of February 16, 2017, we will provide a written explanation of the 2017 reimbursement analysis and adjustments. In the meantime, let us know if you wish to further clarify your February 6 request.

## 2. Trade secrets and other CCO's confidential information

Your letter incorrectly asserts that the Dispute Resolution Agreement requires OHA to disregard obligations it may have to other CCOs to keep confidential information secret and unilaterally enter into an agreement with FamilyCare to disclose that information.

In relevant part, the Dispute Resolution Agreement provides:

6. The parties agree that they will work cooperatively and provide information that either OHA's actuary or FamilyCare's actuary believes is relevant and necessary to evaluate actuarial rates, *subject to protection of confidential information such as trade secrets, personal or private health information, or other information not subject to disclosure under Oregon's public records law* ("Confidential Information"). If the *parties conclude* that the Dispute Resolution *requires* review of Confidential Information, the parties will cooperatively *work toward* an agreement for protection of Confidential Information (by, for example, providing Confidential Information to an independent third-party).

(Emphasis added).

As you note, this provision anticipates an ordered process. The first step requires OHA to determine the nature of the requested information. The nature of the information must be determined because any duty to produce the information is expressly subject to Oregon's public records law and the public records law exempts from production certain confidential information of the agency or third parties.

As explained in Mr. Falk's February 8 letter, OHA began the process to determine whether the information you request is protected under the public records law. From its initial review, OHA concluded that it cannot unilaterally determine that the information is not Confidential Information (as defined in the Dispute Resolution Agreement). Therefore, OHA is obtaining the CCOs' positions and other relevant information regarding the information you seek. All the CCOs, including FamilyCare, were contacted on the morning of February 14 with a questionnaire seeking information which will assist OHA in determining whether your February 6 letter requests Confidential Information of the CCOs. OHA is working to quickly complete this process, which must allow a reasonable time for the other CCOs to respond and for OHA to consider their positions (we understand FamilyCare wishes to have its position considered as well). Your efforts to rush this process will not shortcut it.

If OHA's review results in a determination that the information is properly classified as Confidential Information under the Dispute Resolution Agreement, the second step is for the parties to determine whether the "Dispute Resolution" (defined in the agreement) requires review of the Confidential Information. Without jumping ahead to a final decision on this point, OHA has not yet been persuaded that the Dispute Resolution requires review of the information requested.

First, the methodology currently used by OHA has been reviewed in detail and approved by the Centers for Medicare and Medicaid Services (CMS) for 2015 (revised rates) and 2016, and OHA anticipates similar approval for 2017. Indeed, FamilyCare accepted the 2015 (revised rates) and 2016 methodology in the Settlement Agreement between OHA and FamilyCare dated effective May 22, 2016, and expressly acknowledged, "CMS approves CCO contracts and rates contained therein that CMS finds to be actuarially sound and developed in accordance with Actuarially Sound Principles." (Settlement Agreement, p. 3.).

Second, to the extent that OHA is required to produce actuarially sound rates, that obligation is only to CMS. Further, as FamilyCare's actuary agrees, that standard requires only that the rates can be replicated (by CMS) and FamilyCare's actuary stated at the February 6 meeting that he was able to replicate the rates.

Third, for a host of reasons known to FamilyCare, it is impractical for FamilyCare to expect that OHA would be willing to change its methodology at this late stage in the 2017 rate approval process. All CCOs have signed contracts accepting rates developed with the current methodology. Those contracts became effective January 1, 2017. The 2017 rates and methodology are well into CMS review, having been through a second round of CMS questions and OHA answers. CMS approval is expected in the very near future. Any change of the methodology would require resubmission to CMS and would result in a change of rates for other

CCOs.  A change in rates would require additional contract amendments, which would exceed the number of amendments permitted under Oregon law (absent consent).

Assuming *arguendo* that OHA agreed that the Dispute Resolution required review of Confidential Information, FamilyCare still could not require OHA to produce the information. At best, the third step in Section 6 of the Dispute Resolution Agreement would require OHA to "work cooperatively" toward an agreement to facilitate production.  As my February 16, 2017 email confirmed, OHA is willing to consider an appropriate agreement.  However, to be acceptable, any agreement would need to involve the CCO whose Confidential Information FamilyCare seeks.

We agree with your observation that it is not uncommon for parties to enter into a stipulated protective order or other agreement governing the treatment of the parties' own confidential information to be shared.  The same flexibility does not apply when parties intend to exchange confidential information of third parties.  Similarly, engaging a mediator would not address OHA's concerns.  The mere sharing of the confidential information, even under the protections of an order or confidentiality agreement or in mediation, may expose the disclosing party to potential liability.

3.      **Timing and agenda for next meeting**

The parties are not required to have another meeting within the time you demanded.  You suggest that the second meeting (contemplated by Section 5 of the Agreement) has not happened. We see no basis for that position.  OHA has already participated in two discussions.  There does not seem to be any doubt that the January 17th meeting constituted the first discussion.  The February 6th meeting constituted the second.

The February 6th meeting included the owner and CFO of FamilyCare and its actuary, as well as a host of lawyers representing FamilyCare.  By way of example, and not an exhaustive list of the substance of what was discussed, Mr. Heatherington stated his concerns about a number of issues, including the decline of FamilyCare's rates; FamilyCare's actuary provided feedback about his analysis, such as confirming that he understood and was able to replicate from base data to final rate for FamilyCare under the current methodology; and OHA's representatives provided information about the variations of methodology used by OHA since 2014 and the requirements of the standard of actuarial soundness.

In any event, Section 4 of the Dispute Resolution Agreement provides that meetings will be scheduled when the parties, their actuaries and their attorneys are reasonably available.  Due to our schedules and the short notice, we could not attend a meeting within the time you demanded.  Also, we do not expect to have an initial response to your February 6 public records request until the end of February, which suggests that our next meeting would be most fruitful in early March.

During the next meeting, OHA will be prepared to discuss the following:

1.  The written explanation by OHA and its actuary of the 2017 reimbursement analysis and adjustments.

2.  The rate which FamilyCare would consider acceptable (you said in the January 17 meeting that this would be provided, it has not yet been provided).

3.  As provided in Section 8 of the Dispute Resolution Agreement, OHA's response to FamilyCare's presentation of its arguments why the 2017 methodology is unsound (to the extent that has occurred) and any alternative proposed by FamilyCare based on a methodology within the limits of OHA's waiver. In the Dispute Resolution Agreement, it is FamilyCare's stated position that its ability to present an alternative will be limited if it is not provided certain information (there is no indication that providing an alternative proposal would impossible). OHA is prepared to consider FamilyCare's proposal, regardless of potential limitations.

4.  FamilyCare's proposal for an agreement that would allow OHA to share information of third parties without any potential exposure to OHA.

The previous two dispute resolution meetings have not adhered to any agenda identified before the meeting, making it difficult for OHA and its representatives to prepare. Please confirm not later than February 27, 2017, that FamilyCare agrees with the agenda set out above.

Sincerely,

s/ Renee Stineman

Renee Stineman
Attorney-in-Charge

8025160-v3/RS7/rh2

cc:  *(via email only)*
Theodore Falk
Jeff Wahl
Carla Scott
Melanie Curtice (MCurtice@perkinscoie.com)
Matthew Gordon (mgordon@perkinscoie.com)
Thomas Johnson (trjohnson@perkinscoie.com)
Meredith Price (mprice@perkinscoie.com)