IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

FAMILYCARE, INC., an Oregon      )
non-profit corporation,          )
                                 )
          Plaintiff,             )    Case No. 6:18-cv-00296-MO
                                 )
      v.                         )
                                 )
OREGON HEALTH AUTHORITY, an      )
agency of the State of Oregon,   )
PATRICK ALLEN, both              )    July 31, 2018
individually and in his          )
official capacity as director    )
of the Oregon Health Authority,  )
and LYNNE SAXTON,                )
                                 )
          Defendants.            )    Portland, Oregon
_____)

Oral Argument

TRANSCRIPT OF PROCEEDINGS

BEFORE THE HONORABLE MICHAEL W. MOSMAN

UNITED STATES DISTRICT COURT CHIEF JUDGE

                              APPEARANCES

FOR PLAINTIFF:              Mr. Stephen F. English
                           Mr. Thomas R. Johnson
                           Perkins Coie, LLP
                           1120 N.W. Couch Street, 10th Floor
                           Portland, OR 97209


FOR DEFENDANTS OREGON
HEALTH AUTHORITY and
PATRICK ALLEN:             Mr. Matthew A. Levin
                           Ms. Brittany Simpson
                           Markowitz Herbold PC
                           1211 S.W. Fifth Avenue, Suite 3000
                           Portland, OR 97204


FOR DEFENDANT
LYNNE SAXTON:              Mr. Peter R. Mersereau
                           Mersereau Shannon, LLP
                           111 S.W. Columbia Street, Suite 1100
                           Portland, OR 97201


FOR SCHRAMM HEALTH
PARTNERS:                  Mr. Kevin E. O'Malley
                           Gallagher & Kennedy
                           2575 E. Camelback Road
                           Phoenix, AZ 85016



COURT REPORTER:            Bonita J. Shumway, CSR, RMR, CRR
                           United States District Courthouse
                           1000 S.W. Third Ave., Room 301
                           Portland, OR  97204
                           (503) 326-8188

(P R O C E E D I N G S)

(July 31, 2018; 1:03 p.m.)

THE CLERK:  Your Honor, this is the time set for oral argument in Case No. 6:18-cv-296-MO, FamilyCare, Incorporated v. Oregon Health Authority, et al.

Counsel, please state your name for the record.

MR. ENGLISH:  Stephen English on behalf of FamilyCare, Your Honor.

Your Honor, may I take this moment to introduce my colleague, Amanda Beane, who is admitted pro hac vice but has not appeared in front of you yet.

MS. BEANE:  Good afternoon, Your Honor.

THE COURT:  Good afternoon.  Thank you.

MR. GORDON:  Matthew Gordon for FamilyCare, Your Honor.

MR. LEVIN:  Good afternoon, Your Honor.  Matt Levin, special assistant attorney general, on behalf of FamilyCare and -- excuse me.  On behalf of OHA and Mr. Allen.

MS. SIMPSON:  Good afternoon, Your Honor.  Brittany Simpson on behalf of OHA and Mr. Allen.

MR. O'MALLEY:  Good afternoon, Your Honor.  Kevin O'Malley on behalf of Schramm Health Partners, LLC, dba Optumas.  And thank you for allowing me to participate pro hac.

MR. MERSEREAU:  Good afternoon, Your Honor.  Peter Mersereau on behalf of defendant Lynne Saxton.

THE COURT:  Thank you all for being here.

I'd like to start sort of backwards from the way we usually do things and begin with the scheduling questions, and then we can get those nailed down.

So it starts, Mr. Mersereau, I think with your client's request for an extension, right?

MR. MERSEREAU:  Yes, Your Honor.

THE COURT:  I certainly am concerned about what that would do to the overall case schedule.  I'm willing to consider some extension.  Tell me more about what the position is you're in.

MR. MERSEREAU:  Yes.  Thank you, Your Honor.

We are before you on defendant Saxton's request to extend two deadlines in the case:  first, the dispositive motion filing deadline, and then the discovery cutoff deadline.  And, in addition, we're asking for relief with respect to the first set of discovery requests.

Your Honor, Ms. Saxton became a defendant in this case with the filing of the fourth amended complaint on June 18th.  In that complaint, in paragraphs 82, 83, 84, and 85, for the first time allegations are made relating to a First Amendment speech retaliation claim.  It is those allegations that are brand-new to the complaint.  By that point the complaint had been pending for 16 months.

In paragraph 82, FamilyCare alleges eight specific

areas of protected speech, and in paragraph 83, FamilyCare alleges that defendant Saxton retaliated against FamilyCare in five different particulars.  That's the core area of discovery that is my concern.

Now, in opposition to our request, FamilyCare has objected.  My understanding is OHA does not object to the request, with the exception of any modification that might move the January trial date.

FamilyCare raises three objections:  one, they argue that Ms. Saxton has already been the subject of discovery in this case.  Her conduct as director of OHA --

THE COURT:  Have you participated in that discovery?

MR. MERSEREAU:  No, Your Honor.  I was first contacted by the Department of Justice in mid May, at which time the motion for leave to amend was still pending before Your Honor.  I was contacted for the purpose of representing Ms. Saxton, in the event she became a defendant.  Prior to that time, I had no involvement in the case.

THE COURT:  Did she participate in discovery personally in an unrepresented capacity?

MR. MERSEREAU:  Yes.  She would have participated as an employee of OHA, working with OHA's lawyers with respect to discovery requests directed at OHA.  So she has certainly been involved in terms of assisting OHA in responding to discovery requests directed to it.

This is now a $50 million damage claim against her individually.  That's what new.  And while it's true that she has been involved in some discovery, she has not had any discovery relating to the First Amendment retaliation claims that are raised in this fourth amended complaint.

In any other $50 million retaliation claim, the parties would start with a 120-day presumptive period to begin the case.  And I appreciate the fact these parties have been litigating for 16 months, I appreciate the fact that Your Honor has imposed schedules on the parties, but I think everyone here has to agree that this defendant is entitled to defend herself on these claims, and that is all we're seeking in these requests.

My colleague points out from FamilyCare that -- literally in his words -- there is not much earth yet to scorch in discovery.  I'm not interested in scorching earth.  I'm interested in reviewing the earth that has already been scorched in this case, at least as it applies to these claims.

In the scheme of things, we don't think that's an unreasonable request, and we're happy to work out an accommodating schedule that would protect Ms. Saxton's right to discovery and reflect the Court's earlier scheduling efforts.

With regard to the answers to these discovery requests, Your Honor, we've only asked for an extension until September 1.  FamilyCare has only agreed to allow us until

August 17th.  That's not much of a gap to deal with.

The larger problem is the discovery cutoff deadline and the dispositive motion filing deadline.  So we ask for relief from the Court in that respect.

THE COURT:  What specific date are you asking for for discovery cutoff?

MR. MERSEREAU:  I'm asking for 120 days for both of those cutoffs.

THE COURT:  Which is what date?  Because if you say 120 days in pleadings, then in oral argument it floats.  So today what is the date you're asking for?

MR. MERSEREAU:  It would be 120 days from July 20th for the dispositive motion deadline, which is November 20th; and then 120 days for the discovery cutoff, which is currently July 31, so that would be November 30th.

THE COURT:  And then, again, we're likely to end up somewhere else, but if you had until November 20th to -- for your dispositive motion deadline, when would you be seeking a hearing?

Let me ask, are you talking about filing your own dispositive motion?

MR. MERSEREAU:  Yes, Your Honor.

THE COURT:  So you'll respond to dispositive motions when?  Are you facing any yet?

MR. MERSEREAU:  No, and I don't anticipate any

dispositive motions against Ms. Saxton.  These would only be her motions, so that there would be a briefing --

THE COURT:  So you'd want a hearing when?  The briefing would be done December 20th under the normal schedule.

MR. MERSEREAU:  Yes, Your Honor.

THE COURT:  So you wouldn't make the trial date.

MR. MERSEREAU:  That's correct.

THE COURT:  Are you asking to be severed from the trial?

MR. MERSEREAU:  I'm not asking at this time.  I guess I wanted to get a feel for what the other parties --

THE COURT:  Well, you're not asking for it but you are, right?  If you get the discovery extension you're asking for today, you can't try this case in January.  Right?

MR. MERSEREAU:  I think that's realistic, Your Honor, yes.

THE COURT:  And so corresponding to your request for extension, you'd want to be out -- you'd either want the trial date extended for everybody or severed, right?

MR. MERSEREAU:  Yes.

THE COURT:  All right.  Thank you very much.

MR. MERSEREAU:  Thank you, Your Honor.

THE COURT:  Is it true that OHA only moderately opposes this?

MR. LEVIN:  The definition of "moderately" is as long

as it doesn't move the trial date for this part of the table, then yes.

THE COURT:  So that's all you care about?  No other specific date matters to you?

MR. LEVIN:  Correct, Your Honor.

THE COURT:  And do you care about severance versus non?

MR. LEVIN:  My number one priority would be to keep the trial dates for these parties, so I would prefer severance over moving a trial date.

THE COURT:  Thank you.

Mr. English?

MR. ENGLISH:  Your Honor, as far as the August 17th to September 1st, that doesn't give me heartburn, frankly.  I don't see a problem with that.

But as far as with severance, we don't want to move the trial date, number one.  Number two, as you're aware from review of the pleadings, Lynne Saxton we believe was at the heart of much of the conduct that we are complaining of, in terms of at least one of our claims.  We also have --

THE COURT:  What does that do to help me, though?  Yes --

MR. ENGLISH:  That's why I'm saying I don't know that severance is going to solve that problem.  It will enhance it, in my opinion.  We want her there at the trial.  I'm not going

to --

THE COURT:  Well, she'd be there, just not as a party, right?

MR. ENGLISH:  Yes, that's true, Your Honor.

THE COURT:  You could call her as a witness.

MR. ENGLISH:  Yes, and we would plan to.  But as far as moving the dispositive motion --

THE COURT:  Let's start with discovery.  I mean, we can sort of reverse engineer this in part by getting your considered view on what's a reasonable period of discovery for someone in her position.

Now, I appreciate what both of you have sort of agreed upon, which is that we're not going to see a lot of new discovery -- some but not a lot in connection with this case.  It's really just how much time would a lawyer in Mr. Mersereau's position need to absorb what's in the case.

MR. ENGLISH:  If he understands the words "I don't know" and "I don't remember," he's pretty much dealing with what we've found out so far.  I'm taking her deposition tomorrow, so the deposition of Lynne Saxton will be over in 24 hours -- by the end of business tomorrow, Your Honor.

As far as the depositions taken so far, obviously we would work with him, but I don't believe it's something that's going to require a three-month extension.

THE COURT:  Well, you say she's central to the case.

I guess that means that most of the discovery already produced in the case would be something he'd need to be familiar with, right?  It's not like she's got sort of a tangential involvement that makes it unnecessary for him to have, say, your familiarity with the case.  He needs to have the familiarity of any of the main parties to the case.

MR. ENGLISH:  I'm trying to give you a thoughtful answer on this.

THE COURT:  That's one of my questions.  See, I don't know what her role at trial will be, and if Mr. Mersereau were here with a sort of a tangential claim, no lawyer in his position would want to go without reading the discovery, but you could say, well, I need to be familiar with but not intimately familiar with the rest of the case for a tangential claim.  For a core claim, he's got to be as knowledgeable as all of you are about this case, and that costs some time.

MR. ENGLISH:  The core issues that I believe relate to Lynne Saxton that he would need to be familiar with are, number one, the circumstances surrounding the initial campaign against FamilyCare which took place in the January 2017 period. The contact she had with Optumas, because she renegotiated at least two of those contracts, would be significant as well.

I don't expect her to have any more knowledge than anybody else in OHA has had so far with respect to actually dealing with issues of rate settings and methodology.  That

appears to have been essentially -- "punted" isn't the best word but it's the only one I can think of right now, punted to Optumas.

Beyond that, I don't believe that the issues relating to methodology, the core issue with relation to the actuarial applications are issues that she would be involved with.  So she has a role, it's important as to part of the case, it does not appear to be significant as to other parts of the case.

THE COURT:  So the current discovery deadline is today.  And you'd want -- you'd agree to extend that to when?

MR. ENGLISH:  Your Honor, may I consult with Mr. Johnson?

THE COURT:  Yes.

(There is a pause in the proceedings.)

MR. ENGLISH:  So apparently we were willing to give them until August 20th, and so obviously I've already said that if it's significant to the Court and to the other side that they go until September 1, I would certainly be willing to do that, Your Honor.

THE COURT:  And the current --

MR. ENGLISH:  I'm going to let Mr. Johnson deal with this as well because he's actually more familiar with that part of it, Your Honor.

THE COURT:  Thank you.

Mr. Johnson, are we really talking, to make this

work, in your view, about a separate dispositive motion deadline schedule for Ms. Saxton with a separate hearing?

MR. JOHNSON:  So that's -- when Mr. Mersereau raised this, that's I think in a sense what he would be -- what Ms. Saxton would have would be a separate -- completely separate briefing schedule for his motion for summary judgment.

THE COURT:  Right.  We can't fit Saxton into the current briefing schedule because that's already done, so it's either -- it's either the current briefing schedule and hearing schedule gets modified to include Saxton or it's Saxton on a different schedule with a different hearing date.

Do you have a preference?

MR. JOHNSON:  So in my discussion with Mr. Mersereau, we had asked, and in front of Your Honor is our request to respond to the OHA motion for summary judgment on August 20th. And so that's why I said to Mr. Mersereau, "Why don't you file your summary judgment around that time," and then his briefing schedule could be done sometime in mid October, which may make -- it may be, if that were the schedule, it may make more sense to move the summary judgment hearing date to mid October from September 21st.  I know that OHA did not want to move the summary judgment hearing date from September 21st, so I'm sure Mr. Levin would comment on that.

THE COURT:  Thank you.

Same question, I guess.  We can fold Saxton into some

sort of delayed summary judgment hearing schedule and hearing date or we can run it separately -- that is, run Saxton on a separate schedule, with an additional summary judgment hearing.

Do you care?

MR. LEVIN:  My preference, my client's preference, Your Honor, would be to run it separately so we can keep the hearing date for the --

THE COURT:  Why?

MR. LEVIN:  Because we do have a lot of additional core issues that we have to get ready for for trial, and right now we've got a hearing date of September 21st that is going to give us time to digest the Court's ruling and get ready for trial on the issues that are remaining.  I worry that as that moves closer to the trial date, that will make the process much more difficult.  Briefing is already in on our motions.

THE COURT:  Mr. Johnson, are you here to talk about FamilyCare's extension?  I know you just mentioned it.

MR. JOHNSON:  Yes.

THE COURT:  So you'd like an extension to file your motion for summary judgment until August 10th?

MR. JOHNSON:  Until August 20th.

THE COURT:  Why is that?

MR. JOHNSON:  We are -- the parties are still conducting some depositions.  We are --

THE COURT:  30(b)(6) deposition is tomorrow?

MR. JOHNSON:  30(b)(6) depositions.  There are a few fact witnesses that will be deposed next week, and then a couple to the following week.  Just with summer schedules we've -- all the lawyers have been trying very hard to get all these depositions done but we haven't been able to.  So a couple of those depositions that are helpful -- critical for our summary judgment response to the arguments they are making, we will need to have those depositions completed before we respond, and so that's why we have requested August 20th for our response date.  And that would still allow all of the briefing to be completed for a September 21st hearing, which is the current hearing.

THE COURT:  Right.  You just reduced my gap, that's all.

MR. JOHNSON:  It reduces your gap.

THE COURT:  You have great confidence in my brilliance.

MR. JOHNSON:  In our email to your chambers, Your Honor, we did point that out and ask if that was sufficient time.  It gave eight or nine days.  I don't know --

THE COURT:  I can absorb this stuff in minutes really.

Do you have an idea of the degree of overlap between the cross motions for summary judgment?  Are they going to be handling much the same issues or significantly different

issues?

MR. JOHNSON:  You mean in terms of --

THE COURT:  When you intend to file compared to your opponents.

MR. JOHNSON:  We haven't made a determination about whether we will be filing a motion ourselves.  We may file a motion on some of their discrete motions on some of their affirmative defenses, and that's what we are conducting the final discovery to figure out.

THE COURT:  All right.

MR. JOHNSON:  But our summary judgments would be limited to some of their affirmative defenses.

THE COURT:  And your position is fundamentally the same.  You just don't want to lose the summary judgment date, the pretrial conference date or the trial date?

MR. LEVIN:  And we want to be more respectful of your time, Your Honor.

THE COURT:  It cuts both ways.  That's suggesting I need a lot of time.

All right.  I'm going to take a brief recess so I can access my own schedule.  I'll be back within five or ten minutes to try to sort out scheduling.  Thank you.

THE CLERK:  Court is in recess.

(A recess is then taken.)

THE COURT:  All right.  I'm going to put this case on

three separate dispositive motion schedules, keeping the pretrial conference and the trial for everyone.  And so the greatest burden that imposes is on Ms. Saxton.

And here's the schedule I'm going to use for Ms. Saxton:  I'm going to require Ms. Saxton to respond to dispositive motions by September 20th.  And at that same time, September 20th will be Ms. Saxton's discovery cutoff.

Ms. Saxton has already agreed to respond to discovery requests by August 29th, so I'll leave that in place, and I'll set the hearing on Ms. Saxton's dispositive motions November 2nd, at 2:00 p.m.

I'm sensitive to how many schedules are in place here and I wish we could discuss this more, but, you know, these are the only -- if you want a judge at that hearing, these are the only dates and times that will work.

So OHA has already filed its dispositive motions in the case.  I'm going to require FamilyCare's response by August 24th, OHA's reply by September 7th, and the current hearing date of September 21 for that round of dispositive motions.  FamilyCare will also file its own dispositive motion, if any, on August 24th.

Keep in mind one option -- I'm not requiring it, but one option available to you is to then make that just one document, your response and your own motion, to which OHA would then reply and respond, and we'd get four briefs, and we could

run it like that.

I'm taking it that today you just don't know whether that's what will happen, whether they'll be just really independent motions or whether really it's an omnibus response and its own motion by FamilyCare.

So there's two ways this could go. I'm setting it up as though they were divergent, but if you want to do that with four pleadings wrapping up everything, that's great, let's do that.

But assuming they're divergent, FamilyCare's dispositive motions August 24th, OHA's response September 7th, FamilyCare's reply the day of our hearing, September 21st, and a hearing on that divergent discovery -- excuse me, dispositive motion October 22nd at 2:00 p.m.

That leaves in place expert reports September 28th, pretrial documents beginning October 29th, the first pretrial conference November 30th. Further pretrial documents start coming due December 6th, second pretrial conference January 4th, trial January 15th, starting at 6:00 a.m.

I'm kidding. 9:00 a.m. 9:00 a.m.

So the only thing I see changing in this are two things: One is you may end up with, as I said, kind of combined summary judgment pleadings, and the other is I do feel obligated to say that since I've accelerated Ms. Saxton's schedule, then I'm going to be willing to accelerate response

deadlines to discovery requests and the like, since presumably whatever new discovery you propound is highly related to what's already happened and doesn't require anyone to go ask their client for new information.  It's likely it will be in somebody's pocket already.  Then I'll entertain requiring accelerated responses, and you'll just let me know if that's the position you think you're in.

MR. MERSEREAU:  Understood.

THE COURT:  All right.  That's scheduling.

Have I missed anything on scheduling before we go to the merits?

MR. LEVIN:  Your Honor, I have one point.

THE COURT:  Yes?

MR. LEVIN:  The subtleties of Mr. English's original email, I think, was that as far as the FamilyCare dispositive motion deadline of August 24th, the only thing that OHA would request is that there be a dispositive motion deadline for OHA that happens on the same day, on that same schedule.

The reason for that is the same issue that FamilyCare has raised:  There has been some discovery that's been conducted since we filed a motion for summary judgment.

THE COURT:  You want to just amend it or file a new one?

MR. LEVIN:  Whichever the Court's preference.  We might put out some of this.  There might be some bases for

additional summary judgment motions based on discovery that's completed up to the 24th.

THE COURT:  All right.  Well, let's cross that bridge if it gets there.  You'll let me know if you want to.  I prefer amending it.  You'll let me know if you want to amend your previously filed summary judgment motion.

MR. LEVIN:  Yes, Your Honor.

THE COURT:  And make a showing for why it's necessary, and if I grant it, you'll get the same date.

MR. LEVIN:  Okay.

THE COURT:  Same schedule as FamilyCare.

MR. LEVIN:  Yes.

THE COURT:  All right.  Then let's turn to the substantive issues.  The first is the motion for reconsideration.

So the first question is whether I should reconsider claim 10's ruling at all.  I think it's a close call.  The subject of remedies under a contract being available or not available did come up both in reply and in oral argument somewhat.

So I'm dubious as to whether it was clear error to rule in light of what I had in front of me by briefing and oral argument, but I now have in front of me and have reviewed everything the parties want me to understand about claim 10 on the merits, and so I am going to grant the motion to

reconsider, in the sense of I'm going to reconsider my ruling on claim 10, in light of the briefing and arguments I've received.

Let me give you my tentative thoughts.  So I think the crux of the case turns on the holding in *Tolbert v. First National*.  And that's, of course, a companion case to *Best*. I'm not sure *Best* provides much more than a backdrop for what the Court is saying in *Tolbert*.  And I think in that case, the Court sets up two sort of contractual scenarios:  one where the implied covenant of good faith and fair dealing applies, is applicable, and the other where it isn't.  And so in *Tolbert*, the Court goes on at some length to set out in fairly settled law that although every contract -- I'm now quoting the opinion -- "imposes on each party a duty of good faith and fair dealing in its performance and its enforcement, that duty does not extend to the formation of the contract."

That's how the Court viewed the depositors in its case differently than *Best*, the depositors in *Best*, the idea being that if the parties have an opportunity to agree to express terms, even, say, NSF fees or something like that, if the parties have an opportunity to agree to express terms and do agree to them, and the complaining party had notice of that -- which I guess is implicit in express terms -- that that involves, therefore, contract formation not contract performance or enforcement, and in that setting, the implied

covenant or duty of good faith and fair dealing is inapplicable.

And in that case, for example, it happened in both ways.  There's an initial fee that was agreed upon by the parties, the depositors into the bank, with the contract referencing future increases.  And certainly the initial fee agreed upon didn't create the duty -- the duty of good faith and fair dealing because it involved contract formation, it was an express term, and that just was inapplicable.

How does that apply to our case?  Well, a lot depends, I think, on whether you really view this as a long five-year contract with an initial formation and subsequent increases like *Best* that didn't involve new contract formation, they just involved performance of a multiyear contract, or whether at each new year what's really going on is new contract formation, and then if there's not agreement on increases, the contract expires on its own terms.  It's not breached, it just ceases to exist.

And so which is it?  I mean, that's why we're here to hear your oral arguments.  I'll tell you that my own tentative view is that this seems more like a series of contracts in which at each year the parties agree or don't agree on express terms.  It doesn't much matter -- the Court in *Tolbert* makes that clear.  It doesn't much matter if they like the terms or not, it's just did you agree to express terms, and if you

didn't, the contract ceases to exist; there's no new contract formation.  And if you do, you had at that year new contract formation on express terms.

And if that's what happened, if at each year you had new contract formation on express terms, then there's no claim 10, there's no duty of -- covenant of -- implied covenant of good faith and fair dealing, there's just the express terms.

So I'll hear oral argument on what I think is the dividing question.

I should make clear if it's not that, if it's, in fact, sort of continuing performance on an original contract, then I do agree with FamilyCare that the parties can have an expectation of good faith and fair dealing that's informed by statutory duties.  What I said earlier in my opinion on claim 10 is true as to express contractual terms:  they're not altered by statutory requirements that are referenced in the contract but not incorporated as terms of the contract.

But the same is not true for the issue we're now taking up with claim 10, and that is is there an implied understanding or covenant of good faith and fair dealing that's informed by the contract terms.

And so my going the other way, my tentative view is if it's not a new contract every year with express terms that sort of erases the application of good faith and fair dealing, then it's certainly plausible that a rational jury in this case

could find an understanding of what the offered actuarial terms would be, informed by the relevant statutes that the parties have briefed in this case.

So, Mr. English, I'll turn to you first on whether you think this is a series of new contract formations or one contract with performance across the years.

MR. ENGLISH:  Your Honor, I'm arguing the other motion.  Mr. Gordon is arguing this one.

THE COURT:  Mr. Gordon, go ahead.

MR. GORDON:  Yes.  So this contract at its inception was a five-year contract that provided for annual rate terms, annual rate amendments to the contract.  And so it's -- as the Court rightly recognizes, it has elements of both the five-year contract and one where there are terms that are set each time.

My understanding of the *Tolbert* case and the authority that interprets the *Tolbert* case is that what's really at issue is whether or not -- if a party has discretion to set in this case a price term, the issue is whether or not the party -- there's something in the contract that says that the party has unlimited discretion to set whatever price term it wants.  And that isn't present in this case.  There's nothing that's been identified in the contract that says when OHA presents its annual rates, that it can set them in any manner it chooses, with unbounded discretion.

THE COURT:  That concept is in the case, I just think

it's only in the case when we're talking about contractual performance not formation.  That whole idea of, you know, how one might exercise one's discretion down the line has a lot to do with whether there's contract formation.  But if we're really talking about terms at formation, then that whole concept really doesn't apply, right?

The bank had, for example, discretion to set rate increases for insufficient funds, for the fee for insufficient funds, but if the bank had actually said every year, "We'll get together and we'll tell you what fee we're going to charge for insufficient funds for the coming year," then it had discretion, I suppose, to set a fee that the depositors don't like.

But if that had happened and if every year the depositor could say, "Well, no, that's unacceptable, I'm going to withdraw my money," that would be different, right, than *Best*?

MR. GORDON:  It could be different if there was just a series of one-year contracts in place, where each contract was just a year long and they said, "At the end of the year we'll talk to you again about" --

THE COURT:  "We'll tell you what our fee will be next," right?

MR. GORDON:  So that could be different.

What you have here, what's different here is you have

this overarching five-year contract under which OHA contracts with FamilyCare and the other CCOs.

THE COURT:  Let me ask it this way.  Why shouldn't I view each year, which involves the presentation of one of the major terms of the contract, with the opportunity to accept it or reject it and have the contract live or die based on accepting or rejecting, why shouldn't I view that as at least contract amendment if not contract formation every year?  What cuts against that?

MR. GORDON:  Well, what cuts against that is the nature of the relationship between the parties.  And this is not simply somebody like in *Best* or one of the other bank cases, where somebody is a depositor at a bank and that person can go to another bank and do other business.  This is a long-term relationship between the state agency and the CCOs, that there's a lot that goes into that on the front end on selecting the CCOs, there are all these requirements they have to meet, and of course OHA is the only entity that is contracting with the CCOs for the provision of Medicaid managed care.

When these annual rate issues come up, there's already a lot that's gone into the performance of the contract between the parties.  The CCOs have gone out and established networks, they have in FamilyCare's case 100,000 members.  So it's not quite as simple as a depositor saying, "Okay, I don't

like your NSF, I'm going to go to another bank."  This is a much more deeply engrained long-term relationship, with a lot more investment on the part of the CCOs -- FamilyCare in this case -- up front in terms of its membership and its network.

I would also add that --

THE COURT:  So you're reciting those facts not just to say that walking away from an unacceptable contract term would be more monumental than in *Best*, but to suggest that it shows that the intent of the parties was to enter into a multiyear contract not a year-to-year contract?

MR. GORDON:  That's correct, Your Honor.  That was the intent of the parties was for this to be a five-year contract, where OHA would have the discretion to go through the rate-setting process and set the rates.  But it wasn't unbounded discretion.  And that's where the Oregon case law talks about this is exactly where the implied covenant of good faith and fair dealing applies, when one party has discretion but it's not specified that that discretion is unbounded or that there's a specific way in which the party will exercise that discretion.

In those circumstances, that's where the courts have said that we look to the parties' reasonable -- objectively reasonable expectations about the contract, and the courts have said that that's not -- that's a question of fact.  And so I think it's particularly unsuited for a motion to dismiss like

this, because it is a question of fact that courts can and do look outside the four corners of the contract. They consider things like in the *Iron Horse* case, industry practices, for example, where in the *Best* case they cited there the *Comini* case, talking about whether or not an action was taken to retaliate against the contracting party as an example of bad faith.

THE COURT: Thank you. I don't need you to give me much more than that on that point, since I am at least in tentative agreement that if it's not new contract formation it is a question about what the reasonable intent of the parties would be -- or expectation of the parties would be.

Thank you.

MR. GORDON: Thank you, Your Honor.

THE COURT: Let's start with the first point, whether this is a five-year contract with just performance issues every year or an amended or renewed contract every year in which one party is offering terms that can be accepted or rejected that are express terms.

MR. LEVIN: Your Honor, it's the latter, and here's why: This five-year contract anticipates -- and this is clear from the plaintiff's complaint -- anticipates that something really, really important is going to happen every year. And that is that OHA is going to announce the rates that are worth $500 million to each CCO, and that is something that is going

to happen each and every year, it's going to be announced, there's a period for a CCO to consider it, and the CCO can accept or reject those rates every year.  And that's -- their complaint is rife with allegations about why they didn't like this process, but that was the process.

And there is an important point to that, Your Honor, and I was leafing through -- I know there's a provision there, I think it's cited in the briefs and I can probably find it with a quick recess, but there is a provision here that says the rate setting is part of a process of actuarial rate setting and the part of that process --

THE COURT:  You're saying that rate setting was part of rate setting?

MR. LEVIN:  Well, there's two parts of it.  There are two parts to the rate-setting process, Your Honor.  One of them is the rate document itself.  That is the thing that becomes part of this contract when the CCOs agree to receive these rates or not.  And the other is the certification document from the actuarial expert itself.  And the contract specifically provides that that certification document does not become part of this contract.

Okay.  So let's think about where that leads us. What we've got is a contract that requires the main term be redone every single year, the main term being, in FamilyCare's case, the half a billion dollars worth of rates, that be redone

every year.  So then the question is, is part of that process, is there something in the -- outside of the contract formation itself that now creates new reasonable expectations about the performance of that.  The answer is no.  They could be if the contract incorporated the whole rate-setting process itself, but it specifically does not do that.

So what this contract provides for is a new process every single year where the expectations of the parties are not changed or the express terms of the contract are not changed but the main term of the contract does change every single year.

THE COURT:  So I guess you'd have to agree that we're a long way from depositors to a bank, right, in terms of the costs and consequences of being offered a term that's unacceptable and therefore not entering into a new contract?

MR. LEVIN:  Well, yes and no, Your Honor.  On the other hand, that's exactly what happened in this case.

THE COURT:  Well, I mean just in terms of the ramifications to the depositor.  He or she withdraws his money and finds another bank, right?

MR. LEVIN:  Yes, or --

THE COURT:  Here you have some argument that I'd like you to respond to that no rational party would enter into this business arrangement and invest so much in a business on year-to-year terms.  They'd expect something longer than that

in order to justify all that's done in the business.

What's your response to that idea that a rational business actor wouldn't gin up this much business and invest so much effort in a year-to-year contract that every year might disappear on them?

MR. LEVIN:  Well, Your Honor, I'd say the proof is in the pudding.  And what we've got is FamilyCare in 2018 not accepting the rates that were presented to it.  So --

THE COURT:  That's not the proof, because the proof would be if they didn't accept the rates and humbly agreed that nobody would be a party to this contract anymore.  Instead they didn't accept the rates and they argued that it was a breach to offer the rates you did.  So that sequence of events doesn't help you respond to the argument.

MR. LEVIN:  The -- I think that the answer, Your Honor, is yes, a rational party would do as these CCOs have done, which is to enter into an agreement that provides for new contract negotiation, even though it's for a lot of money, every single year, because that's exactly the arrangement they entered into.  The terms, the rates have changed sometimes more than once every single year that this contract has been in effect.

THE COURT:  All right.  Thank you very much.

All right.  Let's turn to the motion to de-designate Optumas documents.

MR. ENGLISH:  That's my motion, Your Honor.

THE COURT:  All right.  Thank you.

If you don't mind, I'm going to give you some tentative thoughts and then I'll hear from you first.

MR. O'MALLEY:  Yes, Your Honor.  Could I just point out one procedural issue?

THE COURT:  Yes.

MR. O'MALLEY:  This motion and the response and the accompanying declarations were filed under seal, and we would request that the hearing on this particular motion be conducted under seal pending your ultimate ruling on the motion, Your Honor, thus all those that might be in the courtroom that are not subject to the current protective order we would request not be present during this part of the hearing.

THE COURT:  Your position?

MR. ENGLISH:  I think it's an open courtroom, Your Honor, and you've seen the documents we've filed.  I would object.

THE COURT:  It is an open courtroom until someone needs to seal.  So I need to know your position on the motion to seal.

MR. ENGLISH:  The Court should not be sealing this. I think the -- if the Court is concerned about that, that's fine.  I'm not sure there's anybody here that actually isn't involved in the case, so --

THE COURT:  Can you identify anyone who wouldn't be here?

MR. O'MALLEY:  Your Honor, I'm not familiar with who all these folks are.  If they are lawyers for parties that are subject to the protective order, I don't have an issue, but obviously --

THE COURT:  Is there anyone in the courtroom who is not subject to a protective order in this case?

MR. McCRACKEN:  Your Honor, just to identify myself, I'm Chris McCracken.  I represent Health Share of Oregon.  I consider myself subject to the protective order, having helped draft it during the state court proceedings.

THE COURT:  That's fine.  All right.  Then let's go ahead.

Here are my tentative views --

UNIDENTIFIED MALE SPEAKER:  Your Honor, I am not subject to the protective order.  The Oregon Department of Justice -- I'm from a different section.  It does not represent OHA.

THE COURT:  That's fine.  Thank you.

So the de-designation question is separate from the scope of Rule 26.  That is, this issue about sort of undesignated documents that have been -- that are argued not to be confidential but have been produced in discovery assumes a legitimate discovery production and then asks a question that's

different than the discovery question about relevance.  It asks sort of the court proceeding question.  This is a court proceeding, both the hearing and the documents in the court are presumed to be public, absent some reason, a showing justifying them not to be public.  And that's either under the sort of common law idea of open courts or specific rule and statutory premises with a carve-out in Rule 26.  And they are fundamentally very similar concepts.  So I'm looking to see if the specific carve-out in Rule 26 applies here to what is otherwise a presumption, I think it's fair to say, of keeping what's filed or done in court public.

I say that because there are two arguments made here that I think are more discovery-based arguments than privacy-based arguments.  So one is that these documents aren't relevant to this proceeding.  And I think, without deciding it, I think there's some strength to that argument that it may well be that they have no relevance to this proceeding.  But that's a discovery question about whether they ever should have been produced in the first place.  This line of cases assumes legitimate production pursuant to a legitimate request.  And so these were produced.  Nobody said to me, "I don't want to produce these, please allow me not to produce them because they're not relevant."  Instead, they got produced.

So sort of phase one has happened and phase two asks a different question.  And that's not a purely relevance

question.

Similarly, it's not a purely litigation question. That is, the public knowledge component of what happens in court means that information that comes up -- see *In re Roman Catholic Archbishop of Portland* -- might not be relevant to litigation but have other public reasons for disclosure.

So there are two arguments that don't help me a lot. One is that it is not relevant -- that is, under Rule 26 not relevant -- and specifically that it's not something that's going to be used or it is usable in this particular case since both of those are true of the information ordered disclosed in the *Archbishop* case.

So I still think there are two factors among the seven that I ought to balance that are really important.  One is is there an important public benefit here.  In the *Archdiocese* case, the public benefit was pretty significant:  avoiding child abuse.  And here it doesn't appear that we have the same strength, certainly, of public benefit from disclosure.

Conversely, there's the privacy interest of the nonparty, and in the *Archdiocese* case, while the disclosure was alleged to be potentially ruinous, that didn't carry the day with the Ninth Circuit.

Here the disclosure is alleged to be harmful to business interests, and that's not frivolous by any stretch,

but cutting against that is the number of entities -- some of them in the room here today -- to whom disclosure has also been made.  So keeping this confidential doesn't mean what it might often mean in a trade secret case, which is that nobody else would know it.  There are other people who already know it, no matter how I rule.

So those are the two factors that concern me the most in the methodology I think I should employ in deciding this motion.

I'll start with you, sir.

MR. O'MALLEY:  Thank you, Your Honor.

First of all, in response to your comment, we did resist production in the state court, and we were compelled to produce documents much broader in scope than we desired to produce, and done so under a specific Optumas protective order entered by Judge Armstrong.  So it wasn't that these were voluntarily produced by us.

THE COURT:  Well, thank you for that clarification, although I don't think it changes because the whole question is have these been produced in discovery.  If the answer to that is yes, then I don't ask discovery questions anymore, I ask privacy-related questions.  Right?

MR. O'MALLEY:  Yes, Your Honor.  And that's I think the important distinction here, and the courts recognize this over and over, because of the breadth of discovery,

particularly compelled discovery from third parties, all kinds of private confidential information that has nothing to do with the present case can be produced.  And the question then becomes what is the Court's interest, what is the public's interest in de-designating these documents.

The threshold issue, which is ignored completely by FamilyCare in their motion --

THE COURT:  I want to -- I'm sorry, my brain is just catching up with what you said a little bit.

So you're suggesting -- I'm sure it's true -- that in many cases because of the breadth of discovery things get produced in discovery that have nothing to do with the case. But, of course, that's a discovery problem, right?  Because if it literally had nothing to do with this case, then it should never have been required to be produced, right?

MR. O'MALLEY:  Well, and let me just tell you why it was produced.  In connection with all this, as a third party, there was back-and-forth dealings with the discovery process, and ultimately Judge Armstrong allowed FamilyCare to pick out 60 search terms, and we were required to produce documents that hit on those 60 terms, over 100,000 documents from my client, not because we thought they were relevant necessarily -- we didn't think they were -- but we were ordered by Judge Armstrong to produce them.

That takes you to the second element.  Recognizing

that that's the scope of discovery, the courts have repeatedly said the key inquiry for you to make, Your Honor, is are these judicial documents.  And that's -- that ties to the discovery process.  A judicial document is defined as a document that is filed with this Court, that is considered by this Court in ruling on the merits of the dispute.  That's a judicial document.

These documents that we're talking about don't fit that definition at all.  That's the --

THE COURT:  How did the documents in the *Roman Catholic Archbishop* case fit that definition?

MR. O'MALLEY:  They were filed in connection with the -- and I believe there was ultimately a settlement of that case, and there were documents that were produced in connection with -- to further the process of handling the settlement and of convincing other parties to settle.  And so we're between these two parties.

And I will remind you, Your Honor --

THE COURT:  I don't think I still know the answer to my question.  What made the documents that were in question in that case judicial documents, in your view?

MR. O'MALLEY:  Because they were -- Your Honor, they were used in that case on the merits.

THE COURT:  On the merits of settling other cases?

MR. O'MALLEY:  On the merits of settling that case.

And the courts have recognized that in this process not every case goes to trial; some cases get settled.  So documents that are relevant and used in that process for either settlement of the case ultimately or for the trial of the case become judicial documents.

THE COURT:  How does that happen in federal court?  I mean, the trial judge doesn't settle the case.  So how does the fact that some other judge unconnected with the litigation used some document to settle it make it a judicial document?  You said used in the case.  I'll never use any of these documents to settle this case.

MR. O'MALLEY:  And I would also point out, Your Honor, that this is the problem with starting with the *Archbishop* case, because the *Archbishop* case assumed for purposes of its balancing test that these already were judicial documents.  If you look to the *Foltz* case and others, they suggest to you that the threshold question that the Court needs to address is are they judicial documents.  They didn't do that.  The Court, the Ninth Circuit in *Archbishop* didn't even address that question.  It just assumed that they were for the purposes of getting that case ultimately settled.  Maybe they weren't.  Maybe they were not judicial documents, but if you read that *Archbishop* case, you will not see the term "judicial document" and the threshold question even addressed.

We've cited numerous cases to Your Honor that say

that's your threshold determination. And why? It's a threshold determination because the true balancing test here, Your Honor, is the right of the public to hold the courts accountable for your decisions. And that only -- that is their interest. And that's balanced against the privacy interests of other third parties in their confidential documents.

In this case there is no argument, there is no argument that these documents are all relevant or would ever be used in connection with this case we're asking you to rely on to adjudicate this case. So it's not a judicial document. If it's not a judicial document, the cases we've cited say this presumption that you mentioned a minute ago about these being accessible to the public goes away, and we have cited numerous cases to that effect.

So the Court's real interest, the only interest that the Court truly has in these situations is whether or not these documents are actually going to be used in this case, and then the public has an interest. If that's not the case -- and it's clearly not the case here -- then the public has no interest and that presumption you mentioned goes away.

In this case, for purposes of litigating this case, FamilyCare and everyone else has access to the documents under the protective order. They don't suggest to you that they need them for that purpose. They then suggest they want you to de-designate these so they can be submitted to the Department

of Justice, the regulatory authority charged under federal law with the responsibility to look into billing improprieties. That's what they say in their motion.

That already has happened. At the request of OHA, we have submitted those documents and there is an ongoing investigation by DOJ with respect to that issue.

THE COURT: These last two points, just so I'm clear, have nothing to do with whether these are judicial documents, right?

MR. O'MALLEY: Well, they -- they do because, number one, there's no suggestion that they have been used or even intend to be used as a judicial document in this proceeding. There's no suggestion that that is -- that these documents would ever be a judicial document. They're not now and never will be in this case. That's number one.

And number two, since they're not, they're being offered up to -- they say we have a greater public interest because it's potentially Medicaid billing fraud to have the regulatory authorities charged with that responsibility to conduct an investigation. That is occurring. That's exactly what has occurred already. And we are awaiting a determination by the Department of Justice of Oregon, who is charged under federal law to investigate this, to -- we believe to vindicate our client, that once these documents are looked at in their proper context, as explained in Mr. Schramm's declaration, that

these are cherry-picked selected documents, attempting to put Optumas in a false light.

THE COURT:  All right.  Thank you.

MR. ENGLISH:  Well, Your Honor --

THE COURT:  I want to make sure that there's either agreement or not on methodology first.

So the methodology suggested is that my first decision is whether these are judicial documents or not; if yes, then to engage in a balancing test as to whether they ought to be disclosed; if no, they're not disclosed.

Do you agree?

MR. ENGLISH:  I think I can agree with that, yes.

THE COURT:  All right.  So what makes them, in your view, judicial documents?

MR. ENGLISH:  The core issue in this case, particularly after numerous depositions of OHA individuals, virtually all of whom have said, "We don't know how this was done.  We relied on this person at OHA."

We questioned that person at OHA.  That person said, "Well, we don't know either.  We relied on Optumas."

It all boils down to Optumas, and it boils down to Optumas as the entity which we believe incorrectly and improperly separates, and incorrectly and improperly applied methodologies.

Now, what we have discovered is that Optumas, in

fact, didn't spend the time it says it did to do this.  We have billings that we presented -- some of which we presented to the Court that show that, in fact, when Optumas says we spent 20 hours, in fact they didn't.  They inflated those bills.

I think it goes to the core --

THE COURT:  What would you have a jury do with that information?

MR. ENGLISH:  I think it goes to the core of whether or not they're being accurate and honest and dealing with the highest levels of obligations.

THE COURT:  Who is "they"?

MR. ENGLISH:  Optumas.

THE COURT:  Well, why do you want a jury to decide whether Optumas was being honest?

MR. ENGLISH:  Because we believe that Optumas's candor and accuracy is the relevant test as to whether or not they applied -- or at least a test that a jury can consider as to whether or not they applied inappropriate methodology.

THE COURT:  Well, let's say the jury somehow concludes that Optumas didn't apply the appropriate methodology.  How does that help them on the verdict form?  I mean, Optumas isn't on the verdict form.  So you have a theory that OHA is infected in some way by Optumas, right?

MR. ENGLISH:  I guess you could put it that way, Your Honor.

THE COURT:  And it's either because Optumas fooled OHA, they just didn't supervise them well enough, and they got some numbers from Optumas and they just passed them along and they're faulty and that's sloppy, or that OHA was in cahoots with Optumas, right?  And it's really not the latter theory, is it?  You don't -- you've never suggested, yes, that anything that says -- that OHA knew what Optumas was up to and joined in somehow and then committed some sort of joint fraud?

MR. ENGLISH:  That is correct, Your Honor.  We're not doing that.  But keep in mind --

THE COURT:  The reason I ask it that way is that if you're trying to prove fraud, and you have two people committing the fraud, proving that one of them had fraudulent intent helps you prove the other one did, too, but that is not our case, right?

MR. ENGLISH:  That is not our case, but the State has selected an expert, and that expert is Optumas.  So for no other reason we have the right to impeach Optumas as to their credibility.

THE COURT:  Why?  I still am not seeing what a jury does with that.  You want to show that OHA submitted actuarial rates that were unsound?

MR. ENGLISH:  Correct.

THE COURT:  And you could do that with the jury never knowing or caring what made them unsound at Optumas's level.

They just have to be wrong. You just have an expert say Optumas was just dead wrong. Why do they have to decide whether Optumas was wrong because it was lying versus just wrong?

MR. ENGLISH: I think it goes to their competency, I really do. I mean, I think that -- I mean, as much as in federal court we have a more antiseptic view of these, I think it is perfectly appropriate to challenge the competency of an expert by pointing out improper conduct on their part either in arriving at their conclusion or in arriving at the underlying methodology.

THE COURT: So the bottom line is you believe that you have a pathway by which this evidence would show up at trial?

MR. ENGLISH: I do believe that, Your Honor.

The thing is, judgment is involved in a variety of these. You know, you come to a point where you can either choose path A or path B, and we believe --

THE COURT: You mean in setting actuarial rates?

MR. ENGLISH: Yes, yes, right.

And let me back up one moment if I could, Your Honor. I understand that the second issue here is the issue of whether or not the public has a right to know, and I -- first of all, I disagree with the characterization of how we originally got these documents.

But more importantly, I believe, Your Honor, that in addition to the public's right to know, as articulated in the *Archdiocese* case, there's a code of professional conduct, there's a variety of issues that I believe are relevant to that that involve Optumas, but the one specifically for this case today is that similar to CPAs, there is a responsibility to the public.

So --

THE COURT:  That doesn't help you on your judicial document argument.

MR. ENGLISH:  I understand that, Your Honor.

THE COURT:  Because it's a collateral purpose, you'd like to see them held accountable to DOJ or to their own licensing board.  But I only want to find out first of all whether it's a judicial document.  You've disagreed with your opponent who asserted that you've never even claimed you wanted to use it at trial.  Today you're saying you do want to use it at trial.

MR. ENGLISH:  I do think it's useful at trial, absolutely.

THE COURT:  Is that in your brief as well on this subject?

MR. ENGLISH:  I don't remember, Your Honor.

THE COURT:  Thank you.

MR. ENGLISH:  But I'm telling you as a trial lawyer,

that's the kind of thing I would expect to use in cross-examining an expert, and this is the expert that they've chosen.

THE COURT:  Thank you.

MR. ENGLISH:  Now just --

THE COURT:  I'll get back to you.  Thank you.

MR. O'MALLEY:  First of all, in response to your question, this argument about this being a path that's going to lead down the road to being a judicial document appears nowhere in the brief.

THE COURT:  That's not a path to a judicial document. If someone says today they're going to use it at trial, that makes it a judicial document.  I can't decide this after trial by learning what was at trial.  I have to ask people what's going to be used at trial, right?

MR. O'MALLEY:  No.  I disagree, Your Honor.  I think you will --

THE COURT:  I only know it's a judicial document if it actually showed up at trial?  How do I rule on these prior to trial in that analysis?

MR. O'MALLEY:  You will know whether or not a document is a judicial document when it is offered to be used in connection with any proceeding that you're going to make a decision on the merits on.

THE COURT:  If that's the test, then how do I rule on

a motion to de-compel prior to trial as opposed to after the trial?

MR. O'MALLEY:  A number of the cases that we've cited have suggested the answer to that very question, which is to say it's premature.

THE COURT:  All right.  Let's assume I disagree with that analysis because I am going to rule on this motion today, and I am going to decide it based on whether it's plausible to assert that it will be an exhibit at trial.

So do you have an argument that it's not plausible to assert that it will be an exhibit at trial?

MR. O'MALLEY:  Yes, Your Honor.  We've had discussion here today about what the core issue is, and the core issue is supposedly rate setting or actuarial rate-setting work.  Let's all agree that's the case.

As you've pointed out, Your Honor, they can attack the rate-setting work, the actual work that was done to set these rates.  Either it was flawed or it wasn't flawed.  The reason as to how much they billed --

THE COURT:  Why wouldn't it be normal in a trial for Optumas to be called as a very important witness at trial and say, "Our rate setting was great," and for Mr. English to say, "Aren't you a liar"?  Wouldn't that be pretty normal?

MR. O'MALLEY:  Well, if they were going to say you're a liar with respect to something that's relevant in the case,

you're a liar on the work that you did, your rate-setting methodology, you say to the jury it was done this way, you've looked at trends and so forth, that's not true.  Of course, he can do that.

THE COURT:  Isn't it fairly common to ask an expert witness if he was ever a liar in an important way in his conduct in the industry?  I mean, if you had an expert who says, my work here was great, and you could prove that two years ago in another case they lied, that would show up in cross-examination, wouldn't it?

MR. O'MALLEY:  Well, if it was relevant to the case, but smearing someone on the stand with some other bit of alleged untruth?  No, I don't think under a 403 analysis Your Honor would allow that kind of personal attack to take place.

And these documents -- Just one last thing, Your Honor.  These documents, as we laid out, these 42 are taken out of context as draft documents and paint a very negative -- potentially negative picture.  Why do they need -- why are they pushing for this de-designation?  Not to pursue this case.  We believe the only reason, since they've already been turned over to DOJ, is to do what they've already done with OHA, to use them as a smear campaign in the media.  That's what's going to happen.

THE COURT:  We'll get to that.  We've done this in two steps.  Step one is to decide whether they're a judicial

document, which is analysis ending if they're not.

And your argument, Mr. O'Malley, on that score was that it wasn't even FamilyCare's intent to use them in this litigation. Instead, it was only their intent to use it for collateral purposes, and that it had no relevance to this litigation whatsoever.

It turns out that's not the case, although I agree that that's only not the case by virtue of Mr. English's answer here in oral argument, not in his briefing on the subject, which is unfortunate, but still, it is, in my view, not only plausible but likely that something like this could come up in cross-examination of an expert.

I say that only for today's purposes. So I don't want someone to cite this back to me when we're ruling on 403 some day and say I've already decided it, because I'll remember that and I'll be really upset that you made me read my own words again.

So I disagree that it's implausible. I think it's plausible that it could be used. It's a rough analysis because I have to do it prior to trial and have to imagine how cross might go, and there's a lot that could affect whether it's doable. But I disagree that I ought to wait till trial to make this decision.

So then it becomes now the balancing test, and that has a lot to do with the importance of de-designation. Now

we're not just talking about whether it's a judicial document or not but what purposes will be served.  And, of course, no trial purpose will be served to de-designate today because it's not about access by FamilyCare to the information it needs for trial.  It will be able to do what it needs to to get ready for trial, and then at trial, you know, we can make decisions about whether to seal the cross or anything like that that might be necessary.  But there's no reason FamilyCare needs to de-designate to get ready for trial.  There's no reason to de-designate to help Oregon DOJ, who not only has prior access but is here today in court.

So what other purpose is served by de-designation?

MR. ENGLISH:  Well, to begin with, I am uncomfortable personally that OHA is essentially characterizing this as, "Nothing to see here, folks, move along."  OHA is, in fact, being defended by the DOJ, which is doing the investigation.  There is no separation.  In fact, what we were told by Mr. Smith, Tim Smith, who is doing investigation, is that he does intend to share everything he finds with OHA.

I think in terms of the trial issue, that puts me at a bit of a disadvantage because now I'm learning that everything that's discovered is going to be fed to trial counsel, and I don't have any way of knowing that.

So one of the things I wanted to do is get it out of DOJ, State, because 76 percent of the money involved here is

federal money, and let the federal government or some independent group do the investigation.  That's number one.

Number two, Your Honor, with respect to the de-designation issue, 51,488 documents were produced by Optumas, and then a second group that brought it to approximately 70,000.  Every single one of those documents has been dated as AEO or confidential.  That has hamstrung the ability of my client, at least one individual of whom is extremely knowledgeable, to help us in the investigation of this.  So the de-designation gives us some opportunity to at least have competent individuals from my client be able to look at this.

THE COURT:  That's a much narrower issue with a much easier solution.  Is that your main interest here today, to be able to --

MR. ENGLISH:  No.

THE COURT:  -- consult with your client about these documents?

MR. ENGLISH:  It was one I thought I would deal with because of this issue with the DOJ.

The second issue, Your Honor, is that we start with the assumption that the public has a right to know, and we have a bit of a belt and suspenders here because the code of professional conduct of actuaries actually articulates a responsibility to the public.

I don't believe any public interest is served by having individuals or Optumas, which is providing these services to more than just Oregon, it's providing them to the federal government as well as to states, and it's got an obligation under its code of professional conduct to be responsible to the public, that keeping this hidden here in this court serves the greater good for the community at large beyond just this case.

THE COURT:  All right.  Thank you.

I'm going to resolve this in a couple different ways. So first of all, de-designation is a rolling decision.  I've already talked about how this might come up again at trial and we'll have to deal with it again at trial.

This is -- this case is unusual in a couple of different ways.  One is that it has a history of collateral harm being imposed on a variety of different actors, or allegations of collateral harm, I should say, unlike most cases.  So I have to be more cognizant of that than might typically be the case in a de-designation proceeding.  What that does is it means that while there is some public benefit, that consequences are also very significant here of de-designation.

The other way in which it's different is that de-designation is often more bimodal than this.  That is, two parties litigate a case, it's AEO and then it's de-designated

and it's not, and the parties move forward with litigation unfettered.

Here it's -- the documents that are sought to be de-designated are now in the hands of a variety of people, and so it's more of a tiered element of public awareness already out there than might normally be the case.

For those reasons, I don't believe that the test for undesignating or de-designating these documents today has been met, although that may be a different analysis down the line. So I deny the motion to compel de-designation of the Optumas documents. However, I will -- I do want to hear you on whether there's any further usefulness for the AEO designation as to Mr. English consulting with his client about these same documents.

MR. O'MALLEY: Your Honor, we agree that the documents that are the subject of this motion can be treated as confidential and not AEO. It can be shared with his clients subject to the existing protective order.

THE COURT: Very well. That will be my ruling as well.

The sort of doppelganger to this motion is the motion to amend or correct the protective orders under *Foltz*.

So, first, Optumas didn't file a response to this motion. Do you have a position?

MR. O'MALLEY: Your Honor, I believe that, if I

understand it correctly, the State's position was that they wanted to modify the order to allow DOJ to have access to the documents. That has occurred. My position was that the DOJ, who was counsel of record in this case, already was subject to the protective order and it wouldn't be necessary to modify the existing protective order in order to allow that to occur. But I would defer to the State's argument on that.

THE COURT: Yes?

MS. SIMPSON: Good afternoon, Your Honor.

The protective orders that are currently in place do not allow for sharing of the documents outside of this litigation, and DOJ -- counsel for DOJ has not shared the documents outside of this case.

What we're asking for with this motion is that the protective order be modified so that we can allow the Charitable Activities Section access to the documents in this litigation.

MR. O'MALLEY: And for that limited purpose, Your Honor, we would not oppose that request.

THE COURT: FamilyCare's position?

MR. ENGLISH: This is the mirror of what's going on here today. They want to have -- the reality is --

THE COURT: Well, both sides have a mirror going on here, right?

MR. ENGLISH: That's true, Your Honor, by definition.

THE COURT:  So therefore your position is?

MR. ENGLISH:  Number one, the State is exercising its authority to make as many of these other agencies available to investigate my client while this is going on.

THE COURT:  How does that relate to the Optumas documents we're discussing here?

MR. ENGLISH:  This is just generally.  And so we would -- we don't think that these other -- for example, the charitable institutions issue, this is not their idea.  We believe this is something that is a strategy for trial that is putting additional pressure on our clients, and it's not created out of whole cloth, it's created as a trial strategy to put more pressure on us.

So what appears to be an innocent "Can't we just let these others see it," this is not these agencies coming and saying, "Hey, can we see these documents."  It's not happening that way.

THE COURT:  Is the motion dealing just with Optumas documents or more than that?

MS. SIMPSON:  No, Your Honor.  It's dealing with two things.  It's dealing with FamilyCare's documents and Optumas documents.

And, Your Honor, it's important to point out that counsel for OHA has no involvement with what's going on with the Charitable Activities Section and the Civil Enforcement

Division of OHA. The only reason that we have filed this motion is because on June 19th, counsel for both OHA and FamilyCare received a letter from the Charitable Activities Section seeking documents. FamilyCare received an order to appear from the Charitable Activities Section, and FamilyCare failed to sufficiently respond to that order, and because of that, the Charitable Activities Section sent both counsel a letter asking for production in this case, because what the Charitable Activities Section is seeking is duplicative of a lot of the documents that have been produced in this matter by FamilyCare and Optumas.

THE COURT: Okay. Thank you.

One of my concerns is that *Foltz* itself involves a collateral proceeding in another court. And, in fact, *Foltz* says that one of its main points, the point of *Foltz* is for a court like me to loosen the strings of information so that another court can move its case forward according to its own rulings about relevance and confidentiality and the like.

And you'll agree we have nothing like that here, right? There is no second court that wants access to this information, right? Or even litigants in another court wanting it.

MS. SIMPSON: Your Honor, all I know is that there are two investigations going on, and other than that, I don't know what's going on with the Charities Activities Section or

the Civil Enforcement Division.

THE COURT:  Thank you.

Mr. Johnson.

MR. JOHNSON:  I'll just explain.  So yesterday I had a call with the charitable division of the DOJ.  So they are -- they have an investigation that is ongoing.  They have asked us for documents.  They asked in their order that is due -- our response is due later this week, they said, "Can we have documents that you have produced in that litigation?"  And -- in this litigation.

And my response to them on the phone last week and then yesterday on the phone was, "You don't need the access to those documents.  All of the documents that are responsive to your requests, we will provide them to you separately."

And we are going to do that.  They said that we should finish up our production within three weeks.

So this modification of the protective order with respect to the charitable division, our position is that it's unnecessary because we are separately responding to those requests and we will provide the documents separately.  They don't need to go into the database and look around at any documents that might relate to FamilyCare that we have produced in this litigation.

THE COURT:  Thank you.

MR. JOHNSON:  We've produced hundreds of thousands.

THE COURT:  So this again is a decision today that gets -- that has the potential of being different, revisited later.  I think the sine qua non of *Foltz* is another court wanting the documents, and it's a lot about comity and collateral proceedings, and I don't have that here.

And so at least as to the FamilyCare documents, today I'm declining -- I'm denying the motion to amend the protective orders.  When I say that might change later, if the day comes that there is another court who wants this and says, hey, we'd really like this in our proceeding, then I think not only would I revisit it but the answer might well be different.

However, as to the Optumas documents, Optumas itself says it doesn't care and that, in fact, they've already been disclosed.  And so I do grant the motion to amend or correct the protective orders to the degree that we're talking about the Optumas documents, based on the concession of the parties.

MR. ENGLISH:  Thank you, Your Honor.

I have one additional issue, and I'll try to be as simple as I can laying it out.

I mentioned that we have one employee at FamilyCare who is very knowledgeable.  He's been our 30(b)(6) designation witness, and we are at a disadvantage without him being able to look at the documents.  He can see things --

THE COURT:  We just talked about that and your opponent agreed to let him --

MR. ENGLISH:  But I want to broaden it to the AEO documents generally, not just the limited number that were the subject of the motion.  So I'm asking the Court to allow Bill Murray to -- he's already signed all of the confidentiality obligations.  Mr. Murray is here in the courtroom.  He is an individual who we need to prepare for the prosecution of our case.

THE COURT:  Thank you.

So as to the Optumas documents, that request has been granted.  OHA's position on other AEO documents?

You have no dog in that fight, right?

MR. O'MALLEY:  Well, I just want to make sure I understood Mr. English's comment.  What I said was as to the 42 documents that are at issue in this motion, they can be redesignated as confidential and shared.

THE COURT:  That's fine.

MR. O'MALLEY:  I thought I understood him to say he wanted to more broadly today suggest that any AEO document could go to his client.  I think that should be the subject of further discussion between counsel and with specific documents being presented.  I can't argue about other documents that are not the subject of this motion.

THE COURT:  Thank you.

Your position?

MR. LEVIN:  Your Honor, the only thing that the State

would ask is that to the extent that Mr. Murray is allowed to review these documents -- he's already been deposed.  His answers were that at the time we filed the complaint and at the time he had a deposition taken, he had no idea whether the rates were actuarially sound.  He had no idea whether OHA was treating FamilyCare differently.  I would like to be given the opportunity to reask on topics relating to the AEO documents if he's provided those documents.

THE COURT:  Or more traditionally that he's stuck with the answer he gave when he was deposed?

MR. LEVIN:  I think both are true, Your Honor.  At the time that FamilyCare filed this complaint, they didn't know that the rates were not actuarially sound.  In fact, FamilyCare's experts --

THE COURT:  What I'm saying is you have a witness who has been deposed and has given answers.  And all you're really saying is if he learns more now, he doesn't get to change his answers, right?

MR. LEVIN:  I can live with that, Your Honor.

THE COURT:  Come forward, all the way forward in the well of the court.

MR. McCRACKEN:  Thank you, Your Honor.  Chris McCracken for Health Share.  If I understand correctly, Mr. English is asking to allow Bill Murray to review any AEO document that's been produced by any party in this case.

THE COURT:  Yes.

MR. McCRACKEN:  As a co-representative of one of the CCOs who is a direct competitor of FamilyCare, we do oppose that motion.

THE COURT:  Thank you.

MR. McCRACKEN:  And if Your Honor is inclined to treat that motion today, we'd like the opportunity to brief it. And while I'm not here representing other CCOs, I believe they would have the same response as Health Share would today.

THE COURT:  Thank you.

MR. ENGLISH:  I'm happy to brief it, Your Honor, if that would be easier for the Court.

THE COURT:  I think it's entirely necessary here that you file a formal motion.

MR. ENGLISH:  That's fine.

THE COURT:  Your motion -- the motion to alter the protective order didn't get at this range of documents.  So if you want to do that, file a motion, we'll take it from there.

There was a motion to compel production of the general ledger.  It seems to me that ought to happen.  Any opposition?

(No response.)

MR. ENGLISH:  I don't think that was on our calendar for today, Your Honor.

THE COURT:  Right.  It just seemed really simple.  Is

it?

MR. ENGLISH:  Nothing is simple in this case.

MR. GORDON:  I don't think it is simple, Your Honor. My understanding -- and again, this is a bit premature, but my understanding is that this was a motion that was filed -- this was the subject of an earlier motion that was filed by OHA and was denied by this Court earlier on regarding the general ledger, in that the information that -- I'm sorry, this is general ledger, not the claims made basis.  Now I'm getting confused.

THE COURT:  They've filed their motion, they've made a case for why it ought to be produced.  Do you need more time to respond or can you respond right now to why you don't think it should be produced?

MR. GORDON:  We would like more time to respond, Your Honor.

THE COURT:  Very well.  We'll wait.

I'll take a brief recess and I'll come back with the rest of my rulings.

MR. LEVIN:  Excuse me, Your Honor.  May I just add one small point?  I promised to provide the citation to the portion of the contract that said that the actuarial services analysis is not part of the contract.  I have that citation.

THE COURT:  Yes.  Go ahead.

MR. LEVIN:  It's cited on page 5 of our original

reply brief from the April 20th hearing, page 5, the first full paragraph, and it is attached to the declaration of that reply brief as Exhibit 1, page 5.

It's also in the Exhibit 1 to FamilyCare's instant motion for reconsideration, an example of the contract, page 132, subparagraph 6.

THE COURT:  Thank you.

MR. LEVIN:  And the point is, Your Honor, that every single year this big contract is resigned, back to the larger point of whether this is a renewal of the contract.

MR. GORDON:  Your Honor, if I may respond to that.

THE COURT:  No thanks.

(A recess is then taken.)

THE COURT:  Thank you all for your helpful oral arguments today.  The only thing left to rule on is the motion to reconsider.

Just a brief word about motions to reconsider.  I know they're under the case law disfavored in some ways; they require something extraordinary.

I don't -- I don't object in any way to serious motions to reconsider -- and this is a serious one -- because I don't object to the idea that I might have made a mistake.  I don't assume that I'm going to be error free.  I'm very fond of telling my law clerks who move from me to a Court of Appeals clerkship before a hearing like this one, or particularly a

pretrial conference, that "I'm about to make more rulings in the next two hours than your next boss is going to make in a year." So even a very high batting average can result in mistakes.

Be that as it may, I think the actual ruling on claim 10 previously, before the motion to reconsider, was correct as far as it went, in that I don't believe that the statutes in play create any express contractual obligation of the sort that we discussed at oral argument the last time. But what is correct, and why -- and the reason why I've decided to reconsider my ruling is that we needed more fleshing out of this implied covenant of good faith and fair dealing, and I'm glad we have. I have decided to reconsider and hear the oral arguments that we've heard today.

And I consider it a close call. There are factors cutting either way in what in my view is the core question about whether the rate proposals each year amounted to new contract formation, which would eliminate the applicability of the implied covenant of good faith and fair dealing, or whether they amount to performance of a five-year contract and therefore create the possibility that those rate increases along the years of a five-year contract would be handled in a certain way.

Much about this contract makes those annual rate increases seem like the renegotiation of a contract. One is

it's the dominant, the most critical term being renegotiated each year.

Two is that the contract itself has a number of terms referred to by counsel here that support the idea that that's what's happening.

Three -- and I'm now looking at Exhibit 1, page 134 of the contract. It's very clear from the contract that if the rate amendment isn't entered into by the amendment date, then the contract terminates. And that's not a clause that seems to speak about ongoing performance or enforcement of contractual terms.

Certainly it's, I think, a fine argument made by counsel that it's seemingly unusual that a party would enter into this sort of business arrangement with this kind of investment where the contract might terminate each and every year after one year, for example. That's not -- that's not something I can know a lot about on the record I have in front of me today. So I guess I'd say that while to my uninformed eye maybe that does seem like an unusual contractual arrangement, that might just be because I am, in fact, uninformed about what would motivate economic actors in this particular arena, and nothing in the record tells me anything other than that it's certainly an arrangement that one might enter into. The contract certainly seems to make it such.

So ultimately my decision is that, in fact, these

annual rate offers amount to new contract formation every year and therefore make inapplicable the doctrine of the implied covenant of good faith and fair dealing, and therefore I deny the motion to reconsider on the grounds of -- I guess we'd call it futility.

I think that's all we can resolve here today.  We'll handle other matters as they come up according to the schedule I've set.

Mr. English, I haven't set a specific schedule for your broader motion to alter the AEO designation, but we'll take that up as quickly as it can be briefed by the parties.

MR. ENGLISH:  Thank you very much, Your Honor.

THE COURT:  Thank you.  We'll be in recess.

(Proceedings concluded at 3:00 p.m.)

--oOo--


I certify, by signing below, that the foregoing is a correct transcript of the record of proceedings in the above-entitled cause.  A transcript without an original signature or conformed signature is not certified.


/s/Bonita J. Shumway                    August 5, 2018
_____        _____
BONITA J. SHUMWAY, CSR, RMR, CRR        DATE
Official Court Reporter

**MR. ENGLISH: [47]**
3/6 9/12 9/22 10/3 10/5 10/16 11/6 11/16 12/10 12/14 12/20 24/6 31/25 32/15 32/21 42/3 42/11 42/14 43/7 43/11 43/14 43/23 44/8 44/15 44/22 45/4 45/14 45/19 46/10 46/18 46/22 46/24 47/4 51/12 52/15 52/18 55/20 55/24 56/1 56/6 59/16 59/25 62/10 62/14 62/22 63/1 67/11

**MR. GORDON: [10]**
3/13 24/9 25/17 25/23 26/9 27/10 28/13 63/2 63/14 64/10

**MR. JOHNSON: [13]**
13/2 13/12 14/17 14/20 14/22 14/25 15/14 15/17 16/1 16/4 16/10 58/3 58/24

**MR. LEVIN: [25]** 3/15 8/24 9/4 9/7 14/4 14/8 16/15 19/11 19/13 19/23 20/6 20/9 20/11 28/19 29/13 30/15 30/20 31/5 31/14 60/24 61/10 61/18 63/19 63/24 64/7

**MR. McCRACKEN: [4]**
33/8 61/21 62/1 62/5

**MR. MERSEREAU:**
**[16]** 3/23 4/6 4/11 5/12 5/20 7/6 7/11 7/21 7/24 8/4 8/6 8/9 8/14 8/19 8/21 19/7

**MR. O'MALLEY: [24]**
3/20 32/4 32/7 33/2 36/10 36/22 37/15

38/11 38/21 38/24 39/11 41/9 47/6 47/15 47/20 48/2 48/11 48/23 49/10 54/14 54/24 55/17 60/11 60/16

**MS. BEANE: [1]** 3/11

**MS. SIMPSON: [4]**
3/18 55/8 56/19 57/22

**THE CLERK: [2]** 3/2 16/22

**THE COURT: [139]**
**UNIDENTIFIED MALE**
**SPEAKER: [1]** 33/15

# $

**$50 [2]** 6/1 6/6
**$50 million [2]** 6/1 6/6
**$500 [1]** 28/25
**$500 million [1]** 28/25

# -

**--o0o [1]** 68/2

# /

**/s/Bonita [1]** 68/9

# 1

**10 [6]** 20/24 21/2 23/6 23/15 23/19 65/6
**10's [1]** 20/17
**100,000 [2]** 26/24 37/21
**1000 [1]** 2/22
**10th [2]** 2/4 14/20
**1100 [1]** 2/13
**111 [1]** 2/13
**1120 [1]** 2/4
**120 [4]** 7/7 7/10 7/12 7/14
**120-day [1]** 6/7
**1211 [1]** 2/9
**132 [1]** 64/6
**134 [1]** 66/6
**15th [1]** 18/19

**16 [2]** 4/24 6/9
**17th [2]** 7/1 9/13
**18th [1]** 4/20
**19th [1]** 57/2
**1:03 [1]** 3/2
**1st [1]** 9/14

# 2

**20 [1]** 43/3
**2017 [1]** 11/20
**2018 [4]** 1/7 3/2 31/7 68/9
**20th [11]** 7/12 7/13 7/17 8/4 12/16 13/15 14/21 15/9 17/6 17/7 64/1
**21 [1]** 17/19
**21st [5]** 13/21 13/22 14/11 15/11 18/12
**22nd [1]** 18/14
**24 [1]** 10/20
**24th [5]** 17/18 17/21 18/11 19/16 20/2
**2575 [1]** 2/17
**26 [4]** 33/22 34/7 34/9 35/8
**28th [1]** 18/15
**29th [2]** 17/9 18/16
**2:00 p.m [2]** 17/11 18/14
**2nd [1]** 17/11

# 3

**30 [3]** 14/25 15/1 59/21
**3000 [1]** 2/9
**301 [1]** 2/22
**30th [2]** 7/15 18/17
**31 [3]** 1/7 3/2 7/15
**326-8188 [1]** 2/23
**3:00 [1]** 67/14

**4**

**42 [2]** 49/16 60/13
**4th [1]** 18/19

## 5

**503 [1]** 2/23
**51,488 [1]** 52/4

## 6

**60 [2]** 37/20 37/21
**6:00 a.m [1]** 18/19
**6:18-cv-00296-MO [1]** 1/4
**6:18-cv-296-MO [1]** 3/4
**6th [1]** 18/18

## 7

**70,000 [1]** 52/6
**76 percent [1]** 51/25
**7th [2]** 17/18 18/11

## 8

**8188 [1]** 2/23
**82 [2]** 4/20 4/25
**83 [2]** 4/20 5/1
**84 [1]** 4/20
**85 [1]** 4/21
**85016 [1]** 2/18

## 9

**97201 [1]** 2/14
**97204 [2]** 2/10 2/22
**97209 [1]** 2/5
**9:00 a.m [2]** 18/20 18/20

## A

**a.m [3]** 18/19 18/20 18/20
**ability [1]** 52/8
**able [5]** 15/5 51/5 52/11 52/15 59/22
**about [46]** 4/8 4/10

7/20 9/3 9/6 11/16 13/1 14/16 16/5 20/24 25/1 25/5 25/21 27/16 27/23 28/5 28/11 29/4 29/22 30/3 32/23 33/22 34/1 34/18 38/8 40/12 47/8 48/13 51/1 51/4 51/6 52/17 53/12 54/13 57/18 59/4 59/15 59/24 60/21 64/17 65/1 65/17 65/24 66/10 66/17 66/21
**above [1]** 68/6
**above-entitled [1]** 68/6
**absent [1]** 34/4
**absolutely [1]** 46/20
**absorb [2]** 10/16 15/21
**abuse [1]** 35/17
**accelerate [1]** 18/25
**accelerated [2]** 18/24 19/6
**accept [4]** 26/5 29/3 31/10 31/12
**accepted [1]** 28/18
**accepting [2]** 26/7 31/8
**access [8]** 16/21 40/22 51/4 51/10 55/2 55/16 57/20 58/12
**accessible [1]** 40/13
**accommodating [1]** 6/21
**accompanying [1]** 32/9
**according [2]** 57/17 67/7
**accountable [2]** 40/4 46/13
**accuracy [1]** 43/16
**accurate [1]** 43/9
**across [1]** 24/6
**action [1]** 28/5
**Activities [7]** 55/16

56/25 57/3 57/5 57/7 57/9 57/25
**actor [1]** 31/3
**actors [2]** 53/16 66/21
**actual [2]** 48/17 65/5
**actually [7]** 11/24 12/22 25/9 32/24 40/17 47/19 52/24
**actuarial [8]** 12/5 24/1 29/10 29/19 44/21 45/19 48/14 63/22
**actuarially [2]** 61/5 61/13
**actuaries [1]** 52/24
**add [2]** 27/5 63/20
**addition [2]** 4/16 46/2
**additional [5]** 14/3 14/9 20/1 56/11 59/18
**address [2]** 39/18 39/20
**addressed [1]** 39/24
**adjudicate [1]** 40/10
**admitted [1]** 3/10
**AEO [10]** 52/7 53/25 54/12 54/17 60/1 60/10 60/18 61/7 61/24 67/10
**affect [1]** 50/21
**affirmative [2]** 16/8 16/12
**after [4]** 42/16 47/13 48/1 66/16
**afternoon [7]** 3/12 3/13 3/16 3/19 3/21 3/24 55/9
**again [7]** 7/16 25/21 50/17 53/12 53/13 59/1 63/4
**against [9]** 5/2 6/1 8/1 11/20 26/9 26/10 28/6 36/1 40/5
**agencies [2]** 56/3 56/15

**agency [2]** 1/7 26/15
**ago [2]** 40/12 49/9
**agree [17]** 6/11 12/10 21/19 21/21 21/22 22/22 22/22 22/25 23/12 29/17 30/12 42/11 42/12 48/15 50/7 54/15 57/19
**agreed [7]** 6/25 10/13 17/8 22/4 22/7 31/10 59/25
**agreement [4]** 22/16 28/10 31/17 42/6
**ahead [3]** 24/9 33/14 63/24
**al [1]** 3/5
**all [47]** 4/1 6/12 8/21 9/3 11/16 15/4 15/4 15/10 15/14 16/10 16/20 16/25 19/9 20/3 20/13 20/17 26/17 31/1 31/23 31/24 32/2 32/12 33/4 33/13 36/12 37/1 37/17 38/9 40/8 42/3 42/13 42/17 42/21 45/23 46/14 47/7 48/6 48/15 53/9 53/11 57/23 58/13 60/4 61/16 61/20 64/14 67/6
**allegations [4]** 4/21 4/22 29/4 53/17
**alleged [3]** 35/22 35/24 49/13
**alleges [2]** 4/25 5/2
**ALLEN [4]** 1/7 2/8 3/18 3/20
**allow [10]** 6/25 15/10 34/22 49/14 55/2 55/6 55/11 55/15 60/3 61/24
**allowed [2]** 37/19 61/1

**allowing [1]** 3/23
**along [3]** 44/3 51/15 65/22
**already [24]** 5/10 6/17 11/1 12/16 13/8 14/15 17/8 17/16 19/3 19/5 26/22 36/5 39/15 41/4 41/21 49/20 49/21 50/15 53/12 54/5 55/4 59/13 60/4 61/2
**also [7]** 9/20 17/20 27/5 36/2 39/12 53/21 64/4
**alter [2]** 62/16 67/10
**altered [1]** 23/16
**although [4]** 21/13 36/19 50/7 54/9
**am [9]** 4/8 20/25 28/9 33/16 44/20 48/7 48/8 51/13 66/20
**Amanda [1]** 3/10
**amend [6]** 5/15 19/22 20/5 54/22 59/7 59/14
**amended [3]** 4/19 6/5 28/17
**amending [1]** 20/5
**amendment [5]** 4/22 6/4 26/8 66/8 66/8
**amendments [1]** 24/12
**among [1]** 35/13
**amount [2]** 65/20 67/1
**amounted [1]** 65/17
**analysis [7]** 47/20 48/7 49/13 50/1 50/19 54/9 63/23
**announce [1]** 28/24
**announced [1]** 29/1
**annual [6]** 24/11 24/12 24/23 26/21 65/24 67/1
**another [9]** 26/14 27/1 30/20 49/9 57/14 57/17 57/21 59/3 59/9

**answer [9]** 11/8 30/4 31/15 36/20 38/19 48/4 50/8 59/11 61/10
**answers [4]** 6/23 61/3 61/16 61/18
**anticipate [1]** 7/25
**anticipates [2]** 28/21 28/22
**antiseptic [1]** 45/7
**any [22]** 5/7 6/3 6/6 7/24 7/25 11/6 11/23 17/21 24/23 35/25 39/10 47/23 51/23 53/1 54/12 58/21 60/18 61/24 61/25 62/20 64/20 65/8
**anybody [2]** 11/24 32/24
**anymore [2]** 31/11 36/21
**anyone [3]** 19/3 33/1 33/7
**anything [4]** 19/10 44/6 51/7 66/22
**apparently [1]** 12/15
**Appeals [1]** 64/24
**appear [3]** 12/8 35/17 57/5
**APPEARANCES [1]** 2/2
**appeared [1]** 3/11
**appears [3]** 12/1 47/9 56/14
**applicability [1]** 65/18
**applicable [1]** 21/11
**application [1]** 23/24
**applications [1]** 12/6
**applied [3]** 42/23 43/17 43/18
**applies [4]** 6/18 21/10 27/17 34/9
**apply [3]** 22/10 25/6

## A

**apply... [1]** 43/20
**appreciate [3]** 6/8 6/9 10/12
**appropriate [2]** 43/20 45/8
**approximately [1]** 52/6
**April [1]** 64/1
**April 20th [1]** 64/1
**Archbishop [7]** 35/5 35/12 38/11 39/14 39/14 39/19 39/23
**Archdiocese [3]** 35/16 35/21 46/3
**are [81]**
**area [1]** 5/3
**areas [1]** 5/1
**aren't [2]** 34/14 48/23
**arena [1]** 66/22
**argue [2]** 5/9 60/21
**argued [2]** 31/12 33/23
**arguing [2]** 24/7 24/8
**argument [19]** 1/15 3/4 7/10 20/19 20/23 23/8 30/22 31/14 34/16 40/7 40/8 46/10 47/8 48/10 50/2 50/9 55/7 65/9 66/12
**arguments [9]** 15/7 21/2 22/20 34/12 34/13 34/14 35/7 64/15 65/14
**Armstrong [3]** 36/16 37/19 37/24
**around [2]** 13/17 58/21
**arrangement [5]** 30/24 31/19 66/14 66/20 66/23
**arriving [2]** 45/10 45/10
**articulated [1]** 46/2
**articulates [1]** 52/24

**as [85]**
**ask [11]** 7/3 7/20 15/19 19/3 26/3 36/21 36/21 44/11 47/14 49/5 61/1
**asked [4]** 6/24 13/14 58/6 58/7
**asking [13]** 4/16 7/5 7/7 7/11 8/8 8/10 8/12 8/13 40/9 55/14 57/8 60/3 61/24
**asks [3]** 33/25 34/1 34/24
**assert [2]** 48/9 48/11
**asserted [1]** 46/16
**assistant [1]** 3/17
**assisting [1]** 5/24
**assume [2]** 48/6 64/23
**assumed [2]** 39/14 39/20
**assumes [2]** 33/24 34/19
**assuming [1]** 18/10
**assumption [1]** 52/22
**at [69]**
**attached [1]** 64/2
**attack [2]** 48/16 49/14
**attempting [1]** 42/1
**attorney [1]** 3/17
**August [13]** 7/1 9/13 12/16 13/15 14/20 14/21 15/9 17/9 17/18 17/21 18/11 19/16 68/9
**August 10th [1]** 14/20
**August 17th [2]** 7/1 9/13
**August 20th [3]** 13/15 14/21 15/9
**August 24th [4]** 17/18 17/21 18/11 19/16
**August 29th [1]** 17/9
**authorities [1]** 41/19
**authority [7]** 1/6 1/9

2/7 3/5 24/16 41/1 56/3
**available [4]** 17/23 20/18 20/19 56/3
**Ave [1]** 2/22
**Avenue [1]** 2/9
**average [1]** 65/3
**avoiding [1]** 35/17
**awaiting [1]** 41/21
**aware [1]** 9/17
**awareness [1]** 54/5
**away [3]** 27/7 40/13 40/20
**AZ [1]** 2/18

## B

**back [7]** 16/21 37/18 45/21 47/6 50/14 63/18 64/9
**back-and-forth [1]** 37/18
**backdrop [1]** 21/7
**backwards [1]** 4/2
**bad [1]** 28/6
**balance [1]** 35/14
**balanced [1]** 40/5
**balancing [4]** 39/15 40/2 42/9 50/24
**bank [9]** 22/5 25/7 25/9 26/12 26/13 26/14 27/1 30/13 30/20
**based [6]** 20/1 26/6 34/13 34/14 48/8 59/16
**bases [1]** 19/25
**basis [1]** 63/9
**batting [1]** 65/3
**be [120]**
**Beane [1]** 3/10
**became [2]** 4/18 5/17
**because [39]** 7/9 11/21 12/22 13/8 14/9 22/8 28/1 31/9 31/19 34/12 34/22 36/19 36/25

**because... [26]** 37/11 37/13 37/22 38/22 39/14 40/2 41/10 41/18 43/15 44/1 45/3 46/12 48/7 50/15 50/19 51/3 51/21 51/25 52/20 52/23 57/2 57/6 57/8 58/19 64/21 66/20

**become [2]** 29/20 39/4

**becomes [3]** 29/16 37/4 50/24

**been [30]** 4/24 5/10 5/23 6/3 6/8 6/17 12/1 15/4 15/5 19/20 19/20 24/22 31/21 33/23 33/24 34/18 36/2 36/20 37/15 41/11 49/20 52/7 54/8 57/10 59/13 59/21 60/9 61/2 61/16 61/25

**before [7]** 1/17 4/13 5/15 15/8 19/10 64/25 65/6

**begin [3]** 4/3 6/7 51/13

**beginning [1]** 18/16

**behalf [6]** 3/7 3/17 3/18 3/20 3/22 3/25

**being [17]** 4/1 20/18 21/19 29/24 30/14 40/12 41/16 43/9 43/14 47/8 47/9 51/16 53/16 59/2 59/22 60/21 66/1

**believe [20]** 9/18 10/23 11/17 12/4 38/13 41/23 42/22 43/15 45/12 45/15 45/18 46/1 46/4 49/20 53/1 54/7 54/25 56/10 62/8 65/7

**below [1]** 68/4

**belt [1]** 52/23

**benefit [4]** 35/15 35/16

**best [10]** 12/1 21/6 21/7 21/18 21/18 22/13 25/17 26/12 27/8 28/4

**between [6]** 15/23 26/11 26/15 26/23 38/16 60/20

**beyond [2]** 12/4 53/8

**big [1]** 64/9

**Bill [2]** 60/3 61/24

**billed [1]** 48/19

**billing [2]** 41/2 41/18

**billings [1]** 43/2

**billion [1]** 29/25

**bills [1]** 43/4

**bimodal [1]** 53/24

**bit [5]** 37/9 49/12 51/21 52/23 63/4

**board [1]** 46/14

**boils [2]** 42/21 42/21

**Bonita [3]** 2/21 68/9 68/10

**boss [1]** 65/2

**both [13]** 1/7 7/7 10/12 16/18 20/19 22/3 24/13 34/3 35/11 55/23 57/2 57/7 61/11

**bottom [1]** 45/12

**brain [1]** 37/8

**brand [1]** 4/23

**brand-new [1]** 4/23

**breach [1]** 31/12

**breached [1]** 22/17

**breadth [2]** 36/25 37/11

**bridge [1]** 20/3

**brief [9]** 16/20 46/21 47/10 62/7 62/11 63/18 64/1 64/3 64/17

**briefed [2]** 24/3 67/11

**briefing [11]** 8/2 8/4 13/6 13/8 13/9 13/17

**briefs [2]** 17/25 29/8

**brilliance [1]** 15/17

**Brittany [2]** 2/8 3/19

**broaden [1]** 60/1

**broader [2]** 36/14 67/10

**broadly [1]** 60/18

**brought [1]** 52/5

**burden [1]** 17/3

**business [9]** 10/21 26/14 30/24 30/24 31/1 31/3 31/3 35/25 66/14

**but [58]** 3/10 6/10 7/17 8/12 9/16 10/6 10/14 10/23 11/12 11/13 12/2 15/5 16/11 17/13 17/22 18/7 18/10 20/23 23/17 23/18 25/4 25/9 25/14 27/8 27/14 27/18 29/5 29/9 30/6 30/10 33/5 33/24 34/17 35/6 36/1 37/13 37/23 39/22 44/10 44/14 44/16 46/1 46/5 46/14 46/25 49/12 50/10 50/11 50/22 51/2 51/8 51/11 55/6 59/11 60/1 63/4 65/9 67/10

## C

**cahoots [1]** 44/4

**calendar [1]** 62/23

**call [5]** 10/5 20/17 58/5 65/15 67/4

**called [1]** 48/21

**Camelback [1]** 2/17

**campaign [2]** 11/19 49/22

**can [39]** 4/4 10/9 12/2 13/25 14/2 14/6 15/21 16/20 23/12 24/23

**can... [29]**  26/14 28/1 28/18 29/2 29/8 33/1 37/3 40/25 42/12 43/17 45/17 48/16 49/4 51/6 54/16 54/17 55/15 56/16 57/17 58/8 59/19 59/23 60/14 61/19 63/13 65/3 66/17 67/6 67/11
**can't [5]**  8/14 13/7 47/13 56/14 60/21
**candor [1]**  43/16
**capacity [2]**  1/8 5/20
**care [5]**  9/3 9/6 14/4 26/20 59/13
**caring [1]**  44/25
**carry [1]**  35/22
**carve [2]**  34/7 34/9
**carve-out [2]**  34/7 34/9
**case [104]**
**case: [1]**  4/14
**case: first [1]**  4/14
**cases [10]**  26/13 34/19 37/11 38/24 39/2 39/25 40/11 40/14 48/3 53/18
**catching [1]**  37/9
**Catholic [2]**  35/5 38/11
**cause [1]**  68/6
**CCO [3]**  28/25 29/2 29/2
**CCOs [10]**  26/2 26/15 26/17 26/19 26/23 27/3 29/17 31/16 62/3 62/8
**ceases [2]**  22/18 23/1
**central [1]**  10/25
**certain [1]**  65/23
**certainly [9]**  4/8 5/23 12/18 22/6 23/25 35/18 66/12 66/23 66/24
**certification [2]**  29/18

**certified [1]**  68/7
**certify [1]**  68/4
**challenge [1]**  45/8
**chambers [1]**  15/18
**change [3]**  30/10 59/8 61/17
**changed [3]**  30/9 30/9 31/20
**changes [1]**  36/19
**changing [1]**  18/21
**characterization [1]**  45/24
**characterizing [1]**  51/14
**charge [1]**  25/10
**charged [3]**  41/1 41/19 41/22
**charitable [9]**  55/16 56/9 56/25 57/3 57/5 57/7 57/9 58/5 58/18
**Charities [1]**  57/25
**cherry [1]**  42/1
**cherry-picked [1]**  42/1
**CHIEF [1]**  1/18
**child [1]**  35/17
**choose [1]**  45/18
**chooses [1]**  24/24
**chosen [1]**  47/3
**Chris [2]**  33/10 61/22
**Circuit [2]**  35/23 39/19
**circumstances [2]**  11/19 27/21
**citation [2]**  63/21 63/23
**cite [1]**  50/14
**cited [7]**  28/4 29/8 39/25 40/11 40/13 48/3 63/25
**Civil [2]**  56/25 58/1
**claim [13]**  4/22 6/1 6/6 11/11 11/15 11/15 20/17 20/24 21/2 23/5

**claimed [1]**  46/16
**claims [5]**  6/4 6/12 6/18 9/20 63/9
**clarification [1]**  36/18
**clause [1]**  66/9
**clear [6]**  20/21 22/24 23/10 28/21 41/7 66/7
**clearly [1]**  40/19
**clerks [1]**  64/24
**clerkship [1]**  64/25
**client [9]**  19/4 37/21 41/24 52/8 52/11 52/17 54/13 56/4 60/19
**client's [2]**  4/6 14/5
**clients [2]**  54/17 56/11
**close [2]**  20/17 65/15
**closer [1]**  14/14
**cloth [1]**  56/12
**co [1]**  62/2
**co-representative [1]**  62/2
**code [3]**  46/3 52/23 53/5
**cognizant [1]**  53/18
**Coie [1]**  2/4
**collateral [6]**  46/12 50/5 53/15 53/17 57/14 59/5
**colleague [2]**  3/10 6/14
**Columbia [1]**  2/13
**combined [1]**  18/23
**come [8]**  20/19 26/21 45/17 50/11 53/12 61/20 63/18 67/7
**comes [2]**  35/4 59/8
**coming [3]**  18/18 25/11 56/15
**Comini [1]**  28/4
**comity [1]**  59/4
**comment [3]**  13/23 36/12 60/13

**committed [1]** 44/8
**committing [1]** 44/13
**common [2]** 34/6 49/5
**community [1]** 53/7
**companion [1]** 21/6
**compared [1]** 16/3
**compel [3]** 48/1 54/10 62/19
**compelled [2]** 36/13 37/1
**competency [2]** 45/5 45/8
**competent [1]** 52/11
**competitor [1]** 62/3
**complaining [2]** 9/19 21/22
**complaint [9]** 4/19 4/20 4/23 4/24 6/5 28/22 29/4 61/3 61/12
**completed [3]** 15/8 15/11 20/2
**completely [2]** 13/5 37/6
**component [1]** 35/3
**concept [2]** 24/25 25/6
**concepts [1]** 34/8
**concern [2]** 5/4 36/7
**concerned [2]** 4/8 32/23
**concerns [1]** 57/13
**concession [1]** 59/16
**concluded [1]** 67/14
**concludes [1]** 43/20
**conclusion [1]** 45/10
**conduct [8]** 5/11 9/19 41/20 45/9 46/3 49/7 52/24 53/5
**conducted [2]** 19/21 32/10
**conducting [2]** 14/24

**conference [5]** 16/15 17/2 18/17 18/18 65/1
**confidence [1]** 15/16
**confidential [7]** 33/24 36/3 37/2 40/6 52/7 54/17 60/15
**confidentiality [2]** 57/18 60/4
**conformed [1]** 68/7
**confused [1]** 63/10
**connection [6]** 10/14 37/17 38/12 38/14 40/9 47/23
**consequences [2]** 30/14 53/21
**consider [6]** 4/9 28/2 29/2 33/11 43/17 65/15
**considered [2]** 10/10 38/5
**consult [2]** 12/11 52/17
**consulting [1]** 54/13
**contact [1]** 11/21
**contacted [2]** 5/14 5/16
**context [2]** 41/25 49/17
**continuing [1]** 23/11
**contract [78]**
**contracting [2]** 26/19 28/6
**contracts [4]** 11/22 22/21 25/19 26/1
**contractual [6]** 21/9 23/15 25/1 65/8 66/10 66/19
**Conversely [1]** 35/20
**convincing [1]** 38/16
**core [11]** 5/3 11/15 11/17 12/5 14/10 42/15 43/5 43/8 48/13 48/13 65/16
**corners [1]** 28/2
**corporation [1]** 1/3

**correct [10]** 8/7 9/5 27/11 44/9 44/23 54/22 59/14 65/6 65/10 68/5
**correctly [2]** 55/1 61/23
**corresponding [1]** 8/17
**costs [2]** 11/16 30/14
**Couch [1]** 2/4
**could [20]** 10/5 11/13 13/18 17/13 17/25 18/6 24/1 25/15 25/18 25/24 30/4 32/5 43/24 44/24 45/21 49/8 50/11 50/19 50/21 60/19
**counsel [10]** 3/6 51/23 55/4 55/12 56/24 57/2 57/7 60/20 66/4 66/13
**couple [4]** 15/3 15/6 53/10 53/14
**course [5]** 21/6 26/18 37/13 49/3 51/2
**court [44]** 1/1 1/18 2/21 7/4 12/17 16/23 21/8 21/9 21/12 21/17 22/23 24/13 32/22 32/23 33/12 34/2 34/2 34/3 34/11 35/4 36/13 38/5 38/5 39/6 39/17 39/19 40/16 43/3 45/7 51/11 53/7 57/14 57/16 57/17 57/20 57/21 59/3 59/9 60/3 61/21 62/12 63/7 64/24 68/11
**Court's [5]** 6/22 14/12 19/24 37/4 40/15
**Courthouse [1]** 2/21
**courtroom [5]** 32/12 32/16 32/19 33/7 60/5
**courts [8]** 27/21 27/23 28/1 34/6 36/24 38/1 39/1 40/3

**covenant [9]**  21/10 22/1 23/6 23/6 23/20 27/16 65/12 65/19 67/3
**CPAs [1]**  46/6
**create [3]**  22/7 65/8 65/21
**created [2]**  56/12 56/12
**creates [1]**  30/3
**credibility [1]**  44/19
**critical [2]**  15/6 66/1
**cross [7]**  15/24 20/3 47/2 49/10 50/12 50/20 51/7
**cross-examination [2]**  49/10 50/12
**cross-examining [1]**  47/2
**CRR [2]**  2/21 68/10
**crux [1]**  21/5
**CSR [2]**  2/21 68/10
**current [7]**  12/9 12/20 13/8 13/9 15/12 17/18 32/13
**currently [2]**  7/14 55/10
**cutoff [5]**  4/15 7/2 7/6 7/14 17/7
**cutoffs [1]**  7/8
**cuts [3]**  16/18 26/9 26/10
**cutting [2]**  36/1 65/16
**cv [2]**  1/4 3/4

**D**

**damage [1]**  6/1
**database [1]**  58/21
**date [25]**  5/8 7/5 7/9 7/11 8/6 8/19 9/1 9/4 9/10 9/17 13/11 13/20 13/22 14/2 14/7 14/11

14/14 15/10 16/14 16/15 16/15 17/19 20/9 66/8 68/10
**dated [1]**  52/7
**dates [2]**  9/9 17/15
**day [6]**  6/7 18/12 19/18 35/22 50/15 59/8
**days [5]**  7/7 7/10 7/12 7/14 15/20
**dba [1]**  3/22
**de [21]**  31/24 33/21 37/5 40/25 48/1 49/19 50/25 51/3 51/9 51/10 51/12 52/4 52/10 53/11 53/19 53/22 53/24 53/25 54/4 54/8 54/10
**de-compel [1]**  48/1
**de-designate [5]**  31/24 40/25 51/3 51/9 51/10
**de-designated [2]**  53/25 54/4
**de-designating [2]**  37/5 54/8
**de-designation [11]**  33/21 49/19 50/25 51/12 52/4 52/10 53/11 53/19 53/22 53/24 54/10
**dead [1]**  45/2
**deadline [10]**  4/15 4/15 7/2 7/3 7/13 7/18 12/9 13/2 19/16 19/17
**deadlines [2]**  4/14 19/1
**deal [4]**  7/1 12/21 52/19 53/13
**dealing [18]**  10/18 11/25 21/10 21/15 22/1 22/8 23/7 23/13 23/20 23/24 27/17 43/9 56/18 56/20 56/21 65/12 65/19 67/3
**dealings [1]**  37/18

**December [2]**  8/4 18/18
**December 20th [1]**  8/4
**December 6th [1]**  18/18
**decide [5]**  43/13 45/2 47/13 48/8 49/25
**decided [3]**  50/15 65/10 65/13
**deciding [2]**  34/15 36/8
**decision [6]**  42/8 47/24 50/23 53/11 59/1 66/25
**decisions [2]**  40/4 51/6
**declaration [2]**  41/25 64/2
**declarations [1]**  32/9
**declining [1]**  59/7
**deeply [1]**  27/2
**defend [1]**  6/11
**defendant [7]**  2/12 3/25 4/13 4/18 5/2 5/17 6/11
**Defendants [2]**  1/10 2/7
**defended [1]**  51/16
**defenses [2]**  16/8 16/12
**defer [1]**  55/7
**defined [1]**  38/4
**definition [4]**  8/25 38/9 38/11 55/25
**degree [2]**  15/23 59/15
**delayed [1]**  14/1
**denied [1]**  63/7
**deny [2]**  54/10 67/3
**denying [1]**  59/7
**Department [4]**  5/14 33/17 40/25 41/22
**depends [1]**  22/11
**deposed [4]**  15/2 61/2 61/10 61/16
**deposition [4]**  10/19

**deposition... [3]** 10/20 14/25 61/4

**depositions [7]** 10/22 14/24 15/1 15/5 15/6 15/8 42/16

**depositor [4]** 25/15 26/13 26/25 30/19

**depositors [5]** 21/17 21/18 22/5 25/12 30/13

**designate [5]** 31/24 40/25 51/3 51/9 51/10

**designated [2]** 53/25 54/4

**designating [2]** 37/5 54/8

**designation [14]** 33/21 49/19 50/25 51/12 52/4 52/10 53/11 53/19 53/22 53/24 54/10 54/12 59/21 67/10

**desired [1]** 36/14

**determination [4]** 16/5 40/1 40/2 41/21

**did [11]** 5/19 13/21 15/19 20/19 22/25 31/13 36/12 38/10 43/1 44/14 49/1

**didn't [17]** 22/7 22/13 23/1 29/4 31/10 31/12 35/22 37/23 39/18 39/19 43/1 43/4 43/20 44/2 54/23 61/12 62/17

**die [1]** 26/6

**different [18]** 5/3 13/11 13/11 15/25 25/16 25/18 25/24 25/25 33/18 34/1 34/25 53/10 53/15 53/16 53/23 54/9 59/2 59/11

**differently [2]** 21/18

**difficult [1]** 14/15

**digest [1]** 14/12

**direct [1]** 62/3

**directed [2]** 5/23 5/25

**director [2]** 1/8 5/11

**disadvantage [2]** 51/21 59/22

**disagree [5]** 45/24 47/16 48/6 50/18 50/22

**disagreed [1]** 46/15

**disappear [1]** 31/5

**disclosed [4]** 35/11 42/10 42/10 59/14

**disclosure [5]** 35/6 35/19 35/21 35/24 36/2

**discovered [2]** 42/25 51/22

**discovery [46]** 4/15 4/17 5/3 5/10 5/12 5/19 5/23 5/24 6/3 6/4 6/16 6/22 6/23 7/2 7/6 7/14 8/13 10/8 10/10 10/14 11/1 11/12 12/9 16/9 17/7 17/8 18/13 19/1 19/2 19/20 20/1 33/24 33/25 34/1 34/13 34/18 36/20 36/21 36/25 37/1 37/11 37/12 37/13 37/18 38/1 38/3

**discovery-based [1]** 34/13

**discrete [1]** 16/7

**discretion [11]** 24/17 24/20 24/24 25/3 25/7 25/12 27/13 27/15 27/17 27/18 27/20

**discuss [1]** 17/13

**discussed [1]** 65/9

**discussing [1]** 56/6

**discussion [3]** 13/13 48/12 60/20

**disfavored [1]** 64/18

**dismiss [1]** 27/25

**dispositive [19]** 4/14 7/3 7/13 7/18 7/21 7/23 8/1 10/7 13/1 17/1 17/6 17/10 17/16 17/19 17/20 18/11 18/13 19/15 19/17

**dispute [1]** 38/6

**distinction [1]** 36/24

**DISTRICT [4]** 1/1 1/2 1/18 2/21

**divergent [3]** 18/7 18/10 18/13

**dividing [1]** 23/9

**division [4]** 57/1 58/1 58/5 58/18

**do [55]** 4/3 4/9 9/6 9/21 12/18 13/12 14/4 14/9 15/23 18/7 18/8 18/23 21/22 23/2 23/12 25/4 26/14 28/1 30/6 31/16 37/2 37/12 37/14 39/18 41/8 41/10 42/11 43/1 43/6 43/13 44/24 45/2 45/6 45/15 46/17 46/19 47/19 47/25 48/10 49/4 49/18 49/21 50/20 50/25 51/5 51/24 52/2 54/11 54/24 55/10 58/15 59/14 62/3 62/18 63/12

**doable [1]** 50/22

**doctrine [1]** 67/2

**document [26]** 17/24 29/16 29/18 29/20 38/4 38/4 38/7 39/9 39/9 39/24 40/10 40/11 41/12 41/14 46/10 46/15 47/9 47/11 47/13 47/18 47/22 47/22 50/1 51/1 60/18 61/25

## D

**documents [78]**

**does [17]** 5/6 9/21 12/7 21/15 22/10 29/20 30/6 30/10 33/18 39/6 39/7 43/21 44/21 51/19 53/20 56/5 66/19

**doesn't [13]** 9/1 9/14 19/3 22/23 22/24 25/6 31/13 35/17 36/3 39/7 46/9 59/13 61/17

**dog [1]** 60/11

**doing [3]** 44/10 51/16 51/18

**DOJ [12]** 41/6 46/13 49/21 51/10 51/16 51/25 52/20 55/2 55/3 55/12 55/12 58/5

**dollars [1]** 29/25

**dominant [1]** 66/1

**don't [50]** 6/19 7/25 9/15 9/16 9/23 10/17 10/18 10/23 11/9 11/23 12/4 13/16 15/20 16/14 18/2 22/22 25/12 26/25 28/8 32/3 33/5 34/21 35/7 36/19 36/21 38/8 38/19 40/23 42/17 42/20 44/6 46/23 49/13 50/13 51/23 53/1 54/7 56/8 57/24 58/12 58/21 59/5 62/23 63/3 63/13 64/20 64/20 64/22 64/23 65/7

**done [13]** 8/4 13/8 13/18 15/5 31/1 31/17 34/11 36/15 42/18 48/17 49/2 49/21 49/24

**doppelganger [1]** 54/21

**down [6]** 4/4 25/3

**draft [2]** 33/12 49/17

**dubious [1]** 20/21

**due [3]** 18/18 58/7 58/8

**duplicative [1]** 57/9

**during [2]** 32/14 33/12

**duties [1]** 23/14

**duty [6]** 21/14 21/15 22/1 22/7 22/7 23/6

## E

**each [12]** 21/14 22/15 22/22 23/4 24/14 25/19 26/4 28/25 29/1 65/17 66/2 66/15

**earlier [4]** 6/22 23/14 63/6 63/7

**earth [3]** 6/15 6/16 6/17

**easier [2]** 52/14 62/12

**economic [1]** 66/21

**effect [2]** 31/22 40/14

**effort [1]** 31/4

**efforts [1]** 6/22

**eight [2]** 4/25 15/20

**either [12]** 8/18 13/9 13/9 34/5 39/3 42/5 42/20 44/1 45/9 45/17 48/18 65/16

**element [2]** 37/25 54/5

**elements [1]** 24/13

**eliminate [1]** 65/18

**else [4]** 7/17 11/24 36/4 40/22

**email [2]** 15/18 19/15

**employ [1]** 36/8

**employee [2]** 5/22 59/20

**end [5]** 7/16 10/21 18/22 25/20 26/16

**ending [1]** 50/1

**enforcement [5]** 21/15 21/25 56/25 58/1 66/10

**engage [1]** 42/9

**engineer [1]** 10/9

**English [8]** 2/3 3/7 9/12 24/4 48/22 54/13 61/24 67/9

**English's [3]** 19/14 50/8 60/13

**engrained [1]** 27/2

**enhance [1]** 9/24

**enough [1]** 44/2

**enter [5]** 27/9 30/23 31/17 66/13 66/24

**entered [3]** 31/20 36/16 66/8

**entering [1]** 30/15

**entertain [1]** 19/5

**entirely [1]** 62/13

**entities [1]** 36/1

**entitled [2]** 6/11 68/6

**entity [2]** 26/18 42/22

**erases [1]** 23/24

**error [2]** 20/21 64/23

**essentially [2]** 12/1 51/14

**established [1]** 26/23

**et [1]** 3/5

**even [9]** 21/20 31/18 39/19 39/24 41/11 46/16 50/3 57/21 65/3

**event [1]** 5/17

**events [1]** 31/13

**ever [4]** 34/18 40/8 41/14 49/6

**every [22]** 21/13 23/23 25/9 25/14 26/8 28/16 28/17 28/23 29/1 29/3 29/24 30/1 30/8 30/10 31/4 31/19 31/21 39/1 52/6 64/8 66/15 67/1

**everybody [1]** 8/19

**everyone [3]** 6/10 17/2 40/22

**everything [4]**  18/8 20/24 51/19 51/22

**evidence [1]**  45/13

**exactly [4]**  27/16 30/17 31/19 41/20

**examination [2]**  49/10 50/12

**examining [1]**  47/2

**example [7]**  22/3 25/7 28/4 28/6 56/8 64/5 66/16

**exception [1]**  5/7

**excuse [3]**  3/18 18/13 63/20

**exercise [2]**  25/3 27/19

**exercising [1]**  56/2

**exhibit [5]**  48/9 48/11 64/3 64/4 66/6

**Exhibit 1 [3]**  64/3 64/4 66/6

**exist [2]**  22/18 23/1

**existing [2]**  54/18 55/6

**expect [3]**  11/23 30/25 47/1

**expectation [2]**  23/13 28/12

**expectations [3]**  27/23 30/3 30/8

**expert [11]**  18/15 29/19 44/17 44/17 45/1 45/9 47/2 47/2 49/5 49/7 50/12

**experts [1]**  61/14

**expires [1]**  22/17

**explain [1]**  58/4

**explained [1]**  41/25

**express [14]**  21/20 21/21 21/23 22/9 22/22 22/25 23/3 23/5 23/7 23/15 23/23 28/19 30/9

**extend [3]**  4/14 12/10 21/16

**extended [1]**  8/19

**extension [8]**  4/6 4/10 6/24 8/13 8/18 10/24 14/17 14/19

**extent [1]**  61/1

**extraordinary [1]**  64/19

**extremely [1]**  52/9

**eye [1]**  66/19

# F

**facing [1]**  7/24

**fact [17]**  6/8 6/9 15/2 23/11 27/24 28/1 39/8 43/1 43/3 43/4 51/15 51/17 57/14 59/13 61/13 66/20 66/25

**factors [3]**  35/13 36/7 65/15

**facts [1]**  27/6

**failed [1]**  57/6

**fair [13]**  21/10 21/14 22/1 22/8 23/7 23/13 23/20 23/24 27/17 34/10 65/12 65/19 67/3

**fairly [2]**  21/12 49/5

**faith [13]**  21/10 21/14 22/1 22/7 23/7 23/13 23/20 23/24 27/17 28/7 65/12 65/19 67/3

**false [1]**  42/2

**familiar [6]**  11/2 11/13 11/14 11/18 12/22 33/3

**familiarity [2]**  11/5 11/6

**FAMILYCARE [37]**  1/3 3/4 3/8 3/14 3/17 4/25 5/1 5/2 5/5 5/9 6/14 6/25 11/20 17/20 18/5 19/15 19/19 20/11 23/12 26/2 27/3 31/7

51/8 57/3 57/4 57/5 57/11 58/22 59/6 59/20 61/6 61/12 62/3

**FamilyCare's [11]**  14/17 17/17 18/10 18/12 26/24 29/24 50/3 55/20 56/21 61/14 64/4

**far [9]**  9/13 9/16 10/6 10/19 10/22 10/22 11/24 19/15 65/7

**faulty [1]**  44/4

**fed [1]**  51/22

**federal [7]**  39/6 41/1 41/23 45/7 52/1 52/1 53/4

**fee [6]**  22/4 22/6 25/8 25/10 25/12 25/22

**feel [2]**  8/11 18/23

**fees [1]**  21/20

**few [1]**  15/1

**Fifth [1]**  2/9

**fight [1]**  60/11

**figure [1]**  16/9

**file [9]**  13/16 14/19 16/3 16/6 17/20 19/22 54/23 62/14 62/18

**filed [14]**  17/16 19/21 20/6 32/9 32/17 34/11 38/5 38/12 57/1 61/3 61/12 63/5 63/6 63/11

**filing [5]**  4/15 4/19 7/3 7/20 16/6

**final [1]**  16/9

**find [3]**  24/1 29/8 46/14

**finds [2]**  30/20 51/19

**fine [6]**  32/24 33/13 33/20 60/16 62/15 66/12

**finish [1]**  58/16

**first [23]**  4/14 4/17 4/21 4/21 5/13 6/4 18/16

**first... [16]** 20/14 20/16 21/5 24/4 28/15 32/4 34/19 36/12 42/6 42/7 45/23 46/14 47/7 53/11 54/23 64/1
**fit [3]** 13/7 38/8 38/11
**five [11]** 5/3 16/21 22/12 24/11 24/13 26/1 27/12 28/16 28/21 65/20 65/22
**five-year [9]** 22/12 24/11 24/13 26/1 27/12 28/16 28/21 65/20 65/22
**flawed [2]** 48/18 48/18
**fleshing [1]** 65/11
**floats [1]** 7/10
**Floor [1]** 2/4
**fold [1]** 13/25
**folks [2]** 33/4 51/15
**following [1]** 15/3
**Foltz [6]** 39/16 54/22 57/13 57/14 57/15 59/3
**fond [1]** 64/23
**fooled [1]** 44/1
**foregoing [1]** 68/4
**form [2]** 43/21 43/22
**formal [1]** 62/14
**formation [17]** 21/16 21/24 22/8 22/12 22/13 22/16 23/2 23/3 23/5 25/2 25/4 25/5 26/8 28/10 30/2 65/18 67/1
**formations [1]** 24/5
**forth [2]** 37/18 49/3
**forward [4]** 54/1 57/17 61/20 61/20
**found [1]** 10/19
**four [3]** 17/25 18/8 28/2
**fourth [2]** 4/19 6/5

**fraud [4]** 41/18 44/8 44/12 44/13
**fraudulent [1]** 44/13
**free [1]** 64/23
**frivolous [1]** 35/25
**front [7]** 3/11 13/14 20/22 20/23 26/16 27/4 66/17
**full [1]** 64/1
**fundamentally [2]** 16/13 34/8
**funds [3]** 25/8 25/9 25/11
**further [4]** 18/17 38/15 54/12 60/20
**futility [1]** 67/5
**future [1]** 22/6

## G

**Gallagher [1]** 2/17
**gap [3]** 7/1 15/13 15/15
**gave [2]** 15/20 61/10
**general [4]** 3/17 62/20 63/7 63/9
**generally [2]** 56/7 60/2
**get [18]** 4/4 8/11 8/13 14/10 14/12 15/4 17/25 20/9 25/9 37/11 39/2 47/6 49/24 51/5 51/9 51/24 61/17 62/17
**gets [3]** 13/10 20/4 59/2
**getting [3]** 10/9 39/21 63/9
**gin [1]** 31/3
**give [7]** 9/14 11/7 12/15 14/12 21/4 28/8 32/3
**given [2]** 61/6 61/16
**gives [1]** 52/10
**glad [1]** 65/13

**go [14]** 11/12 12/18 18/6 19/3 19/10 24/9 26/14 27/1 27/13 33/13 50/21 58/21 60/19 63/24
**goes [8]** 21/12 26/16 39/2 40/13 40/20 43/5 43/8 45/5
**going [46]** 9/24 9/25 10/13 10/24 12/21 14/11 15/24 16/20 16/25 17/4 17/5 17/17 18/25 20/25 21/1 22/15 23/22 25/10 25/15 27/1 28/23 28/24 28/25 29/1 32/3 35/10 40/17 47/8 47/12 47/15 47/23 48/7 48/8 48/24 49/22 51/22 53/10 55/21 55/23 56/4 56/24 57/24 57/25 58/15 64/23 65/2
**gone [2]** 26/22 26/23
**good [20]** 3/12 3/13 3/16 3/19 3/21 3/24 21/10 21/14 22/1 22/7 23/7 23/13 23/20 23/24 27/16 53/7 55/9 65/12 65/19 67/3
**Gordon [3]** 3/14 24/8 24/9
**got [9]** 11/3 11/15 14/11 29/23 31/7 34/23 44/2 45/24 53/4
**government [2]** 52/1 53/4
**grant [3]** 20/9 20/25 59/14
**granted [1]** 60/10
**great [4]** 15/16 18/8 48/22 49/8
**greater [2]** 41/17 53/7
**greatest [1]** 17/3

**grounds [1]** 67/4
**group [2]** 52/2 52/5
**guess [8]** 8/10 11/1 13/25 21/23 30/12 43/24 66/18 67/4

**H**

**hac [2]** 3/10 3/23
**had [24]** 4/24 5/18 6/3 7/17 11/21 11/24 13/14 20/22 21/22 23/2 23/4 25/7 25/9 25/11 25/14 37/14 44/13 48/12 49/7 50/5 58/4 61/4 61/4 61/5
**half [1]** 29/25
**hamstrung [1]** 52/7
**hand [1]** 30/17
**handle [1]** 67/7
**handled [1]** 65/22
**handling [2]** 15/25 38/15
**hands [1]** 54/4
**happen [6]** 18/3 28/23 29/1 39/6 49/23 62/20
**happened [7]** 19/3 22/3 23/4 25/14 30/17 34/24 41/4
**happening [2]** 56/16 66/5
**happens [2]** 19/18 35/3
**happy [2]** 6/20 62/11
**hard [1]** 15/4
**harm [2]** 53/16 53/17
**harmful [1]** 35/24
**has [48]** 3/10 5/5 5/10 5/23 6/3 6/3 6/10 6/11 6/17 6/25 11/24 12/7 17/8 17/16 19/20 19/20 24/13 24/17 24/20 25/3

27/17 31/21 34/24 36/2 37/2 40/16 40/18 40/19 40/22 41/4 41/21 44/16 45/23 50/25 51/10 52/6 52/7 52/22 53/15 54/8 55/3 55/12 56/24 59/2 60/9 61/16 61/16 66/3
**have [102]**
**haven't [3]** 15/5 16/5 67/9
**having [2]** 33/11 53/2
**he [19]** 10/17 11/5 11/18 13/4 30/19 49/3 49/6 51/18 51/19 59/23 60/5 60/17 61/4 61/4 61/5 61/10 61/10 61/17 61/17
**he'd [1]** 11/2
**he's [8]** 10/18 11/15 12/22 59/21 60/4 61/2 61/8 61/9
**HEALTH [9]** 1/6 1/9 2/7 2/16 3/5 3/22 33/10 61/23 62/9
**hear [5]** 22/20 23/8 32/4 54/11 65/13
**heard [1]** 65/14
**hearing [24]** 7/19 8/3 13/2 13/9 13/11 13/20 13/22 14/1 14/1 14/3 14/7 14/11 15/11 15/12 17/10 17/14 17/19 18/12 18/13 32/10 32/14 34/3 64/1 64/25
**heart [1]** 9/19
**heartburn [1]** 9/14
**held [1]** 46/13
**help [7]** 9/21 31/14 35/7 43/21 46/9 51/10 52/9
**helped [1]** 33/11
**helpful [2]** 15/6 64/14

**helps [1]** 44/14
**her [9]** 5/11 6/1 8/2 9/25 10/5 10/11 10/19 11/10 11/23
**Herbold [1]** 2/9
**here [44]** 4/1 6/10 11/11 14/16 17/12 22/19 25/25 25/25 29/9 30/22 32/24 33/2 33/15 34/9 34/12 35/15 35/17 35/24 36/2 36/24 40/2 40/19 45/22 48/13 49/8 50/9 51/11 51/15 51/25 52/14 52/23 53/6 53/21 54/3 55/22 55/24 56/6 57/19 59/5 60/5 62/8 62/13 66/4 67/6
**here's [2]** 17/4 28/20
**herself [1]** 6/11
**hey [2]** 56/16 59/9
**hidden [1]** 53/6
**high [1]** 65/3
**highest [1]** 43/10
**highly [1]** 19/2
**him [5]** 10/23 11/4 59/22 59/25 60/17
**his [13]** 1/8 6/15 11/11 13/6 13/17 30/19 49/6 50/9 54/13 54/17 60/19 61/2 61/17
**history [1]** 53/15
**hit [1]** 37/21
**hold [1]** 40/3
**holding [1]** 21/5
**honest [2]** 43/9 43/14
**Honor [94]**
**HONORABLE [1]** 1/17
**Horse [1]** 28/3
**hours [3]** 10/21 43/4 65/2
**how [18]** 10/15 17/12 21/17 22/10 25/2 36/6

**how... [12]** 38/10 39/6 39/7 42/17 43/21 45/24 47/19 47/25 48/19 50/20 53/12 56/5
**However [2]** 54/11 59/12
**humbly [1]** 31/10
**hundreds [1]** 58/25

**I**

**I'd [4]** 4/2 30/22 31/6 66/18
**I'll [17]** 16/21 17/9 17/9 19/5 22/20 23/8 24/4 32/4 36/10 39/10 47/6 50/15 50/16 58/4 59/18 63/18 63/18
**I'm [54]** 4/9 6/16 6/16 7/7 8/10 9/23 9/25 10/19 11/7 12/21 13/22 16/20 16/25 17/4 17/5 17/12 17/17 17/22 18/2 18/6 18/20 18/25 20/21 21/1 21/7 21/13 24/7 25/15 27/1 32/3 32/24 33/3 33/10 33/18 34/8 37/8 37/10 41/7 46/25 51/21 53/10 59/7 59/7 60/3 61/15 62/8 62/11 63/8 63/9 64/23 64/23 65/1 65/12 66/6
**I've [7]** 12/16 18/24 21/2 50/15 53/11 65/10 67/8
**idea [10]** 15/23 21/18 25/2 31/2 34/6 56/9 61/4 61/5 64/22 66/4
**identified [1]** 24/22
**identify [2]** 33/1 33/9
**if [69]**

**ignored [1]** 37/6
**imagine [1]** 50/20
**impeach [1]** 44/18
**implausible [1]** 50/18
**implicit [1]** 21/23
**implied [8]** 21/10 21/25 23/6 23/19 27/16 65/12 65/19 67/2
**importance [1]** 50/25
**important [9]** 12/7 28/23 29/6 35/14 35/15 36/24 48/21 49/6 56/23
**importantly [1]** 46/1
**imposed [2]** 6/10 53/16
**imposes [2]** 17/3 21/14
**improper [1]** 45/9
**improperly [2]** 42/23 42/23
**improprieties [1]** 41/2
**in [270]**
**inapplicable [3]** 22/2 22/9 67/2
**inappropriate [1]** 43/18
**INC [1]** 1/3
**inception [1]** 24/10
**inclined [1]** 62/6
**include [1]** 13/10
**incorporated [3]** 3/4 23/17 30/5
**incorrectly [2]** 42/22 42/23
**increases [6]** 22/6 22/13 22/16 25/8 65/21 65/25
**independent [2]** 18/4 52/2
**individual [2]** 52/8 60/6
**individually [2]** 1/8 6/2
**individuals [3]** 42/16 52/11 53/2
**industry [2]** 28/3 49/7
**infected [1]** 43/23

**inflated [1]** 43/4
**information [9]** 19/4 35/4 35/11 37/2 43/7 51/4 57/16 57/21 63/8
**informed [3]** 23/13 23/21 24/2
**initial [4]** 11/19 22/4 22/6 22/12
**innocent [1]** 56/14
**inquiry [1]** 38/2
**instant [1]** 64/4
**Instead [3]** 31/11 34/23 50/4
**institutions [1]** 56/9
**insufficient [3]** 25/8 25/8 25/11
**intend [3]** 16/3 41/12 51/19
**intent [6]** 27/9 27/12 28/11 44/14 50/3 50/4
**interest [11]** 35/20 37/4 37/5 40/5 40/15 40/15 40/18 40/19 41/17 52/14 53/1
**interested [2]** 6/16 6/17
**interests [2]** 35/25 40/5
**interprets [1]** 24/16
**intimately [1]** 11/14
**into [15]** 13/7 13/25 22/5 26/16 26/22 27/9 30/15 30/23 31/17 31/20 41/2 58/21 66/8 66/14 66/24
**introduce [1]** 3/9
**invest [2]** 30/24 31/3
**investigate [2]** 41/23 56/4
**investigation [7]** 41/6 41/20 51/16 51/18 52/2 52/9 58/6
**investigations [1]**

## I

**investigations... [1]** 57/24

**investment [2]** 27/3 66/15

**involve [2]** 22/13 46/5

**involved [8]** 5/24 6/3 12/6 22/8 22/14 32/25 45/16 51/25

**involvement [3]** 5/18 11/4 56/24

**involves [3]** 21/24 26/4 57/13

**Iron [1]** 28/3

**is [253]**

**isn't [7]** 12/1 21/11 24/21 32/24 43/22 49/5 66/8

**issue [23]** 12/5 19/19 23/18 24/17 24/18 32/6 33/5 33/22 37/6 41/6 42/15 45/22 45/22 48/13 48/13 51/20 52/4 52/13 52/20 52/21 56/9 59/18 60/14

**issues [12]** 11/17 11/25 12/4 12/6 14/10 14/13 15/25 16/1 20/14 26/21 28/16 46/4

**it [151]**

**it's [79]**

**its [17]** 17/16 17/20 18/5 21/15 21/15 21/17 22/17 24/10 24/23 27/4 27/4 39/15 53/5 56/2 57/15 57/17 57/17

**itself [7]** 29/16 29/19 30/3 30/5 57/13 59/12 66/3

## J

**January [5]** 5/8 8/14 11/20 18/19 18/19

**January 15th [1]** 18/19

**January 2017 [1]** 11/20

**January 4th [1]** 18/19

**Johnson [6]** 2/3 12/12 12/21 12/25 14/16 58/3

**joined [1]** 44/7

**joint [1]** 44/8

**judge [7]** 1/18 17/14 36/16 37/19 37/23 39/7 39/8

**judgment [16]** 13/6 13/15 13/17 13/20 13/22 14/1 14/3 14/20 15/7 15/24 16/14 18/23 19/21 20/1 20/6 45/16

**judgments [1]** 16/11

**judicial [26]** 38/3 38/4 38/6 38/21 39/5 39/9 39/15 39/18 39/22 39/23 40/10 40/11 41/8 41/12 41/14 42/8 42/14 46/9 46/15 47/9 47/11 47/13 47/18 47/22 49/25 51/1

**July [4]** 1/7 3/2 7/12 7/15

**July 20th [1]** 7/12

**July 31 [1]** 7/15

**June [2]** 4/20 57/2

**June 18th [1]** 4/20

**June 19th [1]** 57/2

**jury [8]** 23/25 43/6 43/13 43/17 43/19 44/20 44/24 49/2

**just [50]** 10/2 10/15 14/17 15/3 15/13 16/14 17/23 18/2 18/3 19/6 19/22 22/9 22/14 22/17

22/25 23/7 24/25 25/18 25/20 27/6 28/16 30/18 32/5 33/9 37/8 37/16 39/20 41/7 44/2 44/3 45/1 45/1 45/2 45/3 47/5 49/15 51/1 53/3 53/8 56/7 56/14 56/18 58/4 59/24 60/2 60/12 62/25 63/20 64/17 66/20

**Justice [4]** 5/14 33/18 41/1 41/22

**justify [1]** 31/1

**justifying [1]** 34/4

## K

**keep [4]** 9/8 14/6 17/22 44/10

**keeping [4]** 17/1 34/10 36/3 53/6

**Kennedy [1]** 2/17

**Kevin [2]** 2/16 3/21

**key [1]** 38/2

**kidding [1]** 18/20

**kind [4]** 18/22 47/1 49/14 66/14

**kinds [1]** 37/1

**knew [1]** 44/7

**know [31]** 9/23 10/18 11/10 13/21 14/17 15/20 17/13 18/2 19/6 20/4 20/5 25/2 29/7 32/20 36/5 36/5 38/19 42/17 42/20 45/17 45/23 46/2 47/18 47/21 51/6 52/22 57/23 57/25 61/12 64/18 66/17

**knowing [2]** 44/25 51/23

**knowledge [2]** 11/23 35/3

**knowledgeable [3]**

**K**

**knowledgeable... [3]** 11/15 52/9 59/21

**L**

**laid [1]** 49/16
**large [1]** 53/7
**larger [2]** 7/2 64/9
**last [4]** 41/7 49/15 58/11 65/9
**later [3]** 58/8 59/3 59/8
**latter [2]** 28/20 44/5
**law [7]** 21/13 27/15 34/6 41/1 41/23 64/18 64/24
**lawyer [3]** 10/15 11/11 46/25
**lawyers [3]** 5/22 15/4 33/4
**laying [1]** 59/19
**lead [1]** 47/9
**leads [1]** 29/22
**leafing [1]** 29/7
**learning [2]** 47/14 51/21
**learns [1]** 61/17
**least [9]** 6/18 9/20 11/22 26/7 28/9 43/17 52/8 52/11 59/6
**leave [2]** 5/15 17/9
**leaves [1]** 18/15
**ledger [3]** 62/20 63/8 63/9
**left [1]** 64/15
**legitimate [3]** 33/25 34/20 34/20
**length [1]** 21/12
**let [12]** 7/20 12/21 19/6 20/4 20/5 21/4 26/3 37/16 45/21 52/1 56/14 59/25

**let's [11]** 10/8 18/8 20/3 20/13 28/15 29/22 31/24 33/13 43/19 48/6 48/14
**letter [2]** 57/3 57/8
**level [1]** 44/25
**levels [1]** 43/10
**Levin [3]** 2/8 3/16 13/23
**liar [4]** 48/23 48/25 49/1 49/6
**licensing [1]** 46/14
**lied [1]** 49/9
**light [3]** 20/22 21/2 42/2
**like [29]** 4/2 11/3 14/19 18/1 19/1 21/20 22/13 22/21 22/24 25/13 26/12 27/1 27/25 28/3 29/4 30/22 46/13 50/11 51/7 57/16 57/18 57/19 59/10 61/6 62/7 63/15 64/25 65/25 66/19
**likely [3]** 7/16 19/4 50/11
**limited [3]** 16/12 55/18 60/2
**line [4]** 25/3 34/19 45/12 54/9
**literally [2]** 6/15 37/14
**litigants [1]** 57/21
**litigate [1]** 53/25
**litigating [2]** 6/9 40/21
**litigation [11]** 35/2 35/6 39/8 50/4 50/6 54/1 55/12 55/17 58/9 58/10 58/23
**little [1]** 37/9
**live [2]** 26/6 61/19
**LLC [1]** 3/22
**LLP [2]** 2/4 2/13
**long [6]** 8/25 22/11

25/20 26/15 27/2 30/13
**long-term [2]** 26/15 27/2
**longer [1]** 30/25
**look [7]** 27/22 28/2 39/16 41/2 52/11 58/21 59/23
**looked [2]** 41/24 49/3
**looking [2]** 34/8 66/6
**loosen [1]** 57/16
**lose [1]** 16/14
**lot [16]** 10/13 10/14 14/9 16/19 22/10 25/3 26/16 26/22 27/2 31/18 35/7 50/21 50/25 57/10 59/4 66/17
**lying [1]** 45/3
**LYNNE [6]** 1/9 2/12 3/25 9/18 10/20 11/18

**M**

**made [11]** 4/21 16/5 34/12 36/3 38/20 44/25 50/16 63/9 63/11 64/22 66/12
**main [6]** 11/6 29/23 29/24 30/10 52/14 57/15
**major [1]** 26/5
**make [20]** 8/6 12/25 13/19 13/19 14/14 17/23 20/8 23/10 38/2 39/9 42/5 47/23 50/22 51/6 56/3 60/12 65/1 65/2 66/24 67/2
**makes [5]** 11/4 22/23 42/13 47/13 65/24
**making [1]** 15/7
**managed [1]** 26/19
**manner [1]** 24/24
**many [3]** 17/12 37/11 56/3

**Markowitz [1]** 2/9

**Matt [1]** 3/16

**matter [4]** 22/23 22/24 36/6 57/10

**matters [2]** 9/4 67/7

**Matthew [2]** 2/8 3/14

**may [13]** 3/9 5/14 12/11 13/18 13/19 13/19 16/6 18/22 34/16 54/9 63/20 64/11 65/5

**maybe [3]** 39/21 39/22 66/19

**McCracken [2]** 33/10 61/23

**me [31]** 3/18 3/23 4/10 7/20 9/14 9/21 18/13 19/6 20/4 20/5 20/22 20/23 20/24 21/4 26/3 28/8 34/21 34/22 35/7 36/7 37/16 45/21 50/14 50/16 51/20 57/16 62/20 63/20 64/24 66/18 66/22

**mean [12]** 10/8 16/2 22/19 30/18 36/3 36/4 39/7 43/22 45/6 45/6 45/19 49/7

**means [3]** 11/1 35/4 53/20

**media [1]** 49/22

**Medicaid [2]** 26/19 41/18

**meet [1]** 26/18

**members [1]** 26/24

**membership [1]** 27/4

**mentioned [4]** 14/17 40/12 40/20 59/20

**merits [7]** 19/11 20/25 38/6 38/23 38/24 38/25 47/24

**Mersereau [8]** 2/12 2/13 3/25 4/5 11/10 13/3 13/13 13/16

**Mersereau's [1]** 10/16

**met [1]** 54/9

**methodologies [1]** 42/24

**methodology [9]** 11/25 12/5 36/8 42/6 42/7 43/18 43/21 45/11 49/2

**MICHAEL [1]** 1/17

**mid [3]** 5/14 13/18 13/20

**might [20]** 5/7 19/25 19/25 25/3 31/4 32/12 35/5 36/3 50/21 51/7 53/12 53/18 54/6 58/22 59/8 59/11 64/22 66/15 66/20 66/23

**million [3]** 6/1 6/6 28/25

**mind [3]** 17/22 32/3 44/10

**minute [1]** 40/12

**minutes [2]** 15/21 16/22

**mirror [2]** 55/21 55/23

**missed [1]** 19/10

**mistake [1]** 64/22

**mistakes [1]** 65/4

**MO [2]** 1/4 3/4

**moderately [2]** 8/23 8/25

**modification [2]** 5/7 58/17

**modified [2]** 13/10 55/15

**modify [2]** 55/2 55/5

**moment [2]** 3/9 45/21

**money [5]** 25/16 30/19 31/18 51/25 52/1

**month [1]** 10/24

**months [2]** 4/24 6/9

**monumental [1]** 27/8

**more [30]** 4/10 11/23 12/22 13/19 14/15 16/16 17/13 21/7 22/21 27/2 27/3 27/8 28/9 31/20 34/13 45/7 46/1 53/3 53/18 53/24 54/5 56/13 56/19 60/18 61/9 61/17 63/12 63/15 65/1 65/11

**MOSMAN [1]** 1/17

**most [4]** 11/1 36/7 53/17 66/1

**motion [65]** 4/15 5/15 7/3 7/13 7/18 7/21 10/7 13/1 13/6 13/15 14/20 16/6 16/7 17/1 17/20 17/24 18/5 18/14 19/16 19/17 19/21 20/6 20/14 20/25 24/8 27/25 31/24 32/1 32/8 32/10 32/11 32/20 36/9 37/7 41/3 48/1 48/7 54/10 54/16 54/21 54/21 54/24 55/14 56/18 57/2 59/7 59/14 60/3 60/14 60/22 62/4 62/7 62/14 62/16 62/16 62/18 62/19 63/5 63/6 63/11 64/5 64/15 65/6 67/4 67/10

**motions [15]** 7/23 8/1 8/2 14/15 15/24 16/7 17/6 17/10 17/16 17/20 18/4 18/11 20/1 64/17 64/21

**motivate [1]** 66/21

**move [9]** 5/7 9/1 9/16 13/20 13/21 51/15 54/1 57/17 64/24

**moves [1]** 14/14

**moving [2]** 9/10 10/7

## M

**Mr [5]** 2/3 2/3 2/8 2/12 2/16

**Mr. [30]** 3/18 3/20 4/5 9/12 10/16 11/10 12/12 12/21 12/25 13/3 13/13 13/16 13/23 14/16 19/14 24/4 24/8 24/9 41/25 48/22 50/2 50/8 51/18 54/13 58/3 60/5 60/13 61/1 61/24 67/9

**Mr. Allen [2]** 3/18 3/20

**Mr. English [6]** 9/12 24/4 48/22 54/13 61/24 67/9

**Mr. English's [3]** 19/14 50/8 60/13

**Mr. Gordon [2]** 24/8 24/9

**Mr. Johnson [5]** 12/12 12/21 12/25 14/16 58/3

**Mr. Levin [1]** 13/23

**Mr. Mersereau [5]** 4/5 11/10 13/3 13/13 13/16

**Mr. Mersereau's [1]** 10/16

**Mr. Murray [2]** 60/5 61/1

**Mr. O'Malley [1]** 50/2

**Mr. Schramm's [1]** 41/25

**Mr. Smith [1]** 51/18

**Ms [1]** 2/8

**Ms. [14]** 4/18 5/10 5/17 6/21 8/1 13/2 13/5 17/3 17/5 17/5 17/7 17/8 17/10 18/24

**Ms. Saxton [9]** 4/18 5/10 5/17 8/1 13/2 13/5 17/3 17/5 17/8

**Ms. Saxton's [4]** 6/21

**Ms. Saxton: I'm [1]** 17/5

**much [24]** 6/15 7/1 8/21 9/19 10/15 10/18 14/14 15/25 21/7 22/23 22/24 27/2 28/9 30/24 31/3 31/4 31/23 36/14 45/6 48/19 52/13 52/13 65/24 67/12

**multiyear [2]** 22/14 27/10

**Murray [4]** 60/4 60/5 61/1 61/24

**Murray to [1]** 60/4

**my [45]** 3/9 5/4 5/6 6/14 9/8 9/25 11/9 13/13 14/5 14/5 15/13 15/16 16/21 21/1 21/4 22/20 23/14 23/22 23/22 24/15 25/16 32/1 33/15 37/8 37/21 38/20 42/7 49/8 50/10 50/16 52/8 52/11 54/19 55/3 56/4 57/13 58/11 63/4 63/4 63/19 64/24 65/11 65/16 66/18 66/25

**myself [2]** 33/9 33/11

## N

**N.W [1]** 2/4

**nailed [1]** 4/4

**name [1]** 3/6

**narrower [1]** 52/13

**National [1]** 21/6

**nature [1]** 26/11

**necessarily [1]** 37/22

**necessary [4]** 20/9 51/8 55/5 62/13

**need [14]** 10/16 11/2 11/13 11/18 15/8 16/19 28/8 32/20 40/23 49/18

**needed [1]** 65/11

**needs [6]** 11/5 32/20 39/17 51/4 51/5 51/8

**negative [2]** 49/17 49/18

**negotiation [1]** 31/18

**network [1]** 27/4

**networks [1]** 26/24

**never [6]** 37/15 39/10 41/14 44/6 44/24 46/16

**new [21]** 4/23 6/2 10/13 19/2 19/4 19/22 22/13 22/15 22/15 23/1 23/2 23/5 23/23 24/5 28/10 30/3 30/7 30/15 31/17 65/17 67/1

**next [4]** 15/2 25/23 65/2 65/2

**nine [1]** 15/20

**Ninth [2]** 35/23 39/19

**no [39]** 1/4 3/4 5/13 5/18 7/25 9/3 11/11 23/1 23/5 23/6 25/15 30/4 30/16 30/23 34/17 36/5 40/7 40/7 40/19 41/11 41/13 42/10 44/17 47/16 49/13 50/5 51/2 51/8 51/9 51/17 52/16 56/20 56/24 57/20 60/11 61/4 61/5 62/22 64/12

**nobody [3]** 31/11 34/21 36/4

**non [3]** 1/3 9/7 59/3

**non-profit [1]** 1/3

**nonparty [1]** 35/21

**normal [3]** 8/4 48/20 48/23

**normally [1]** 54/6

**not [125]**

**nothing [9]** 24/22 37/2

**N**

**nothing... [7]** 37/12 37/14 41/8 51/15 57/19 63/2 66/22

**notice [1]** 21/22

**November [5]** 7/13 7/15 7/17 17/11 18/17

**November 20th [2]** 7/13 7/17

**November 2nd [1]** 17/11

**November 30th [2]** 7/15 18/17

**now [20]** 5/5 6/1 10/12 12/2 14/11 20/23 21/13 23/18 30/3 41/14 42/25 47/5 50/24 50/25 51/21 54/4 61/17 63/9 63/13 66/6

**nowhere [1]** 47/9

**NSF [2]** 21/20 27/1

**number [14]** 9/8 9/17 9/17 11/19 36/1 41/10 41/15 41/16 48/3 52/2 52/3 56/2 60/2 66/3

**numbers [1]** 44/3

**numerous [3]** 39/25 40/13 42/16

**O**

**O'Malley [3]** 2/16 3/22 50/2

**o0o [1]** 68/2

**object [4]** 5/6 32/18 64/20 64/22

**objected [1]** 5/6

**objections: [1]** 5/9

**objections: one [1]** 5/9

**objectively [1]** 27/22

**obligated [1]** 18/24

**obligation [2]** 53/5 65/8

**obligations [2]** 43/10 60/5

**obviously [3]** 10/22 12/16 33/6

**occur [1]** 55/6

**occurred [2]** 41/21 55/3

**occurring [1]** 41/20

**October [4]** 13/18 13/20 18/14 18/16

**October 22nd [1]** 18/14

**October 29th [1]** 18/16

**offer [1]** 31/13

**offered [4]** 24/1 30/14 41/17 47/22

**offering [1]** 28/18

**offers [1]** 67/1

**official [2]** 1/8 68/11

**often [2]** 36/4 53/24

**OHA [39]** 3/18 3/20 5/6 5/11 5/22 5/23 5/24 8/23 11/24 13/15 13/21 17/16 17/24 19/16 19/17 24/23 26/1 26/18 27/13 28/24 33/19 41/4 42/16 42/18 42/19 43/23 44/2 44/4 44/7 44/21 49/21 51/14 51/15 51/19 56/24 57/1 57/2 61/5 63/6

**OHA's [4]** 5/22 17/18 18/11 60/10

**Okay [4]** 20/10 26/25 29/22 57/12

**omnibus [1]** 18/4

**on [105]**

**once [2]** 31/21 41/24

**one [55]** 5/9 9/8 9/17 9/20 11/9 11/19 12/2 17/22 17/23 17/23 18/22 19/12 19/23 21/9 24/5 24/8 24/14 25/3 25/19 26/4 26/12 27/17 28/17 29/15 32/6 34/14 34/24 35/8 35/14 41/11 41/15 44/13 44/14 45/21 46/5 49/15 49/25 51/24 52/2 52/6 52/8 52/19 53/15 56/2 57/13 57/15 59/18 59/20 62/2 63/21 64/21 64/25 65/25 66/16 66/23

**one's [1]** 25/3

**one-year [1]** 25/19

**ongoing [3]** 41/5 58/6 66/10

**only [25]** 6/24 6/25 8/1 8/23 12/2 17/14 17/15 18/21 19/16 25/1 26/18 40/4 40/15 46/14 47/18 49/20 50/4 50/8 50/10 50/13 51/10 57/1 59/10 60/25 64/15

**open [3]** 32/16 32/19 34/6

**opinion [3]** 9/25 21/14 23/14

**opponent [2]** 46/16 59/25

**opponents [1]** 16/4

**opportunity [6]** 21/19 21/21 26/5 52/10 61/7 62/7

**oppose [2]** 55/19 62/3

**opposed [1]** 48/1

**opposes [1]** 8/24

**opposition [2]** 5/5 62/21

**option [2]** 17/22 17/23

**Optumas [38]** 3/23 11/21 12/3 31/25 36/15

**Optumas... [33]** 42/2 42/20 42/21 42/22 42/25 43/3 43/12 43/14 43/20 43/22 43/23 44/1 44/3 44/5 44/7 44/17 44/18 45/2 45/3 46/5 48/21 52/5 53/2 54/10 54/23 56/5 56/18 56/21 57/11 59/12 59/12 59/16 60/9

**Optumas's [2]** 43/15 44/25

**or [79]**

**oral [11]** 1/15 3/3 7/10 20/19 20/22 22/20 23/8 50/9 64/14 65/9 65/13

**order [19]** 31/1 32/13 33/5 33/8 33/11 33/17 36/15 40/23 54/18 55/2 55/5 55/6 55/6 55/15 57/4 57/6 58/7 58/17 62/17

**ordered [2]** 35/11 37/23

**orders [4]** 54/22 55/10 59/8 59/15

**OREGON [14]** 1/2 1/3 1/6 1/7 1/9 1/10 2/7 3/5 27/15 33/10 33/17 41/22 51/10 53/3

**original [4]** 19/14 23/11 63/25 68/6

**originally [1]** 45/24

**other [33]** 6/6 8/11 9/3 12/8 12/17 18/23 21/11 23/22 24/7 26/2 26/12 26/14 29/18 30/17 35/6 36/5 38/16 38/24 39/8 40/6 44/14 44/18 49/12 51/12 53/23 56/3 56/8

57/24 60/19 60/21 62/8 64/2 66/23 67/7

**others [2]** 39/16 56/15

**otherwise [1]** 34/10

**ought [5]** 35/14 42/10 50/22 62/20 63/12

**our [24]** 5/5 9/20 13/14 14/15 15/7 15/10 15/18 16/11 18/12 22/10 25/22 41/24 44/15 44/16 48/22 56/11 58/7 58/16 58/18 59/10 59/21 60/6 62/23 63/25

**ourselves [1]** 16/6

**out [27]** 6/14 6/20 8/18 10/19 15/19 16/9 16/22 19/25 21/12 26/23 32/6 34/7 34/9 37/19 39/12 45/9 46/14 48/16 49/16 49/16 50/7 51/24 54/6 56/12 56/23 59/19 65/11

**outside [4]** 28/2 30/2 55/11 55/13

**over [6]** 9/10 10/20 36/25 36/25 37/21 49/20

**overall [1]** 4/9

**overarching [1]** 26/1

**overlap [1]** 15/23

**own [10]** 7/20 16/21 17/20 17/24 18/5 22/17 22/20 46/13 50/16 57/17

**P**

**p.m [4]** 3/2 17/11 18/14 67/14

**page [5]** 63/25 64/1 64/3 64/5 66/6

**paint [1]** 49/17

**paragraph [3]** 4/25 5/1

**paragraphs [1]** 4/20

**part [14]** 9/1 10/9 12/7 12/22 27/3 29/10 29/11 29/12 29/17 29/20 30/1 32/14 45/9 63/23

**participate [2]** 3/23 5/19

**participated [2]** 5/12 5/21

**particular [3]** 32/10 35/10 66/22

**particularly [4]** 27/25 37/1 42/16 64/25

**particulars [1]** 5/3

**parties [30]** 6/7 6/8 6/10 8/11 9/9 11/6 14/23 20/24 21/19 21/21 22/5 22/22 23/12 24/2 26/11 26/23 27/9 27/12 28/11 28/12 30/8 33/4 37/1 38/16 38/17 40/6 53/25 54/1 59/16 67/11

**parties' [1]** 27/22

**PARTNERS [2]** 2/16 3/22

**parts [3]** 12/8 29/14 29/15

**party [16]** 10/3 21/14 21/22 24/17 24/19 24/20 27/17 27/19 28/6 28/18 30/23 31/11 31/16 37/17 61/25 66/13

**passed [1]** 44/3

**path [4]** 45/18 45/18 47/8 47/11

**pathway [1]** 45/13

**PATRICK [2]** 1/7 2/8

**pause [1]** 12/14

**PC [1]** 2/9

**pending [3]** 4/24 5/15 32/11
**people [4]** 36/5 44/12 47/14 54/4
**percent [1]** 51/25
**perfectly [1]** 45/8
**performance [11]** 21/15 21/25 22/14 23/11 24/6 25/2 26/22 28/16 30/4 65/20 66/10
**period [4]** 6/7 10/10 11/20 29/2
**Perkins [1]** 2/4
**person [4]** 26/13 42/18 42/19 42/19
**personal [1]** 49/14
**personally [2]** 5/20 51/14
**Peter [2]** 2/12 3/24
**phase [2]** 34/24 34/24
**Phoenix [1]** 2/18
**phone [2]** 58/11 58/12
**pick [1]** 37/19
**picked [1]** 42/1
**picture [1]** 49/18
**place [8]** 11/20 17/9 17/12 18/15 25/19 34/19 49/14 55/10
**Plaintiff [2]** 1/4 2/3
**plaintiff's [1]** 28/22
**plan [1]** 10/6
**plausible [5]** 23/25 48/8 48/10 50/11 50/19
**play [1]** 65/8
**pleadings [4]** 7/10 9/18 18/8 18/23
**please [2]** 3/6 34/22
**pocket [1]** 19/5
**point [14]** 4/23 15/19 19/12 28/9 28/15 29/6

32/5 39/12 45/17 56/23 57/15 63/21 64/8 64/10
**pointed [1]** 48/16
**pointing [1]** 45/9
**points [3]** 6/14 41/7 57/15
**portion [1]** 63/22
**Portland [6]** 1/10 2/5 2/10 2/14 2/22 35/5
**position [16]** 4/10 10/11 10/16 11/12 16/13 19/7 32/15 32/20 54/24 55/1 55/3 55/20 56/1 58/18 60/10 60/24
**possibility [1]** 65/21
**potential [1]** 59/2
**potentially [3]** 35/22 41/18 49/18
**practices [1]** 28/3
**prefer [2]** 9/9 20/4
**preference [4]** 13/12 14/5 14/5 19/24
**premature [2]** 48/5 63/4
**premises [1]** 34/7
**prepare [1]** 60/6
**present [3]** 24/21 32/14 37/3
**presentation [1]** 26/4
**presented [4]** 31/8 43/2 43/2 60/21
**presents [1]** 24/23
**pressure [2]** 56/11 56/13
**presumably [1]** 19/1
**presumed [1]** 34/4
**presumption [3]** 34/10 40/12 40/20
**presumptive [1]** 6/7
**pretrial [7]** 16/15 17/2 18/16 18/16 18/17 18/18 65/1

**pretty [3]** 10/18 35/16 48/23
**previously [2]** 20/6 65/6
**price [2]** 24/18 24/20
**prior [5]** 5/17 47/19 48/1 50/20 51/10
**priority [1]** 9/8
**privacy [4]** 34/14 35/20 36/22 40/5
**privacy-based [1]** 34/14
**privacy-related [1]** 36/22
**private [1]** 37/2
**pro [2]** 3/10 3/23
**probably [1]** 29/8
**problem [5]** 7/2 9/15 9/24 37/13 39/13
**procedural [1]** 32/6
**proceeding [9]** 34/2 34/3 34/15 34/17 41/12 47/23 53/19 57/14 59/10
**proceedings [6]** 1/16 12/14 33/12 59/5 67/14 68/5
**process [15]** 14/14 27/14 29/5 29/5 29/10 29/11 29/15 30/1 30/5 30/7 37/18 38/4 38/15 39/1 39/3
**produce [6]** 34/22 34/22 36/14 36/15 37/20 37/24
**produced [20]** 11/1 33/24 34/19 34/21 34/23 36/17 36/20 37/3 37/12 37/15 37/17 38/14 52/4 57/10 58/9 58/22 58/25 61/25 63/12 63/14

**production [6]** 33/25 34/20 36/13 57/8 58/16 62/19

**professional [3]** 46/3 52/24 53/5

**profit [1]** 1/3

**promised [1]** 63/21

**proof [3]** 31/6 31/9 31/9

**proper [1]** 41/25

**proposals [1]** 65/17

**propound [1]** 19/2

**prosecution [1]** 60/6

**protect [1]** 6/21

**protected [1]** 5/1

**protective [17]** 32/13 33/5 33/8 33/11 33/17 36/15 40/23 54/18 54/22 55/5 55/6 55/10 55/15 58/17 59/7 59/15 62/17

**prove [3]** 44/12 44/14 49/8

**provide [3]** 58/14 58/20 63/21

**provided [2]** 24/11 61/8

**provides [4]** 21/7 29/20 30/7 31/17

**providing [2]** 53/2 53/3

**proving [1]** 44/13

**provision [3]** 26/19 29/7 29/9

**public [21]** 34/4 34/5 34/11 35/3 35/6 35/15 35/16 35/18 40/3 40/13 40/18 40/19 41/17 45/23 46/7 52/22 52/25 53/1 53/6 53/20 54/5

**public's [2]** 37/4 46/2

**pudding [1]** 31/7

**punted [2]** 12/1 12/2

**purely [2]** 34/25 35/2

**purpose [6]** 5/16 40/24 46/12 51/3 51/12 55/18

**purposes [6]** 39/15 39/21 40/21 50/5 50/13 51/2

**pursuant [1]** 34/20

**pursue [1]** 49/19

**pushing [1]** 49/19

**put [5]** 16/25 19/25 42/1 43/24 56/13

**puts [1]** 51/20

**putting [1]** 56/11

## Q

**qua [1]** 59/3

**question [25]** 13/25 20/16 23/9 27/24 28/1 28/11 30/1 33/21 33/25 34/1 34/2 34/18 34/25 35/1 35/2 36/19 37/3 38/20 38/20 39/17 39/20 39/24 47/8 48/4 65/16

**questioned [1]** 42/19

**questions [4]** 4/3 11/9 36/21 36/22

**quick [1]** 29/9

**quickly [1]** 67/11

**quite [1]** 26/25

**quoting [1]** 21/13

## R

**raised [3]** 6/5 13/3 19/20

**raises [1]** 5/9

**ramifications [1]** 30/19

**range [1]** 62/17

**rate [23]** 11/25 24/11 24/12 25/7 26/21 27/14

29/10 29/10 29/12 29/13 29/15 29/16 30/5 48/14 48/14 48/17 48/22 49/1 65/17 65/21 65/24 66/8 67/1

**rate-setting [6]** 27/14 29/15 30/5 48/14 48/17 49/1

**rates [16]** 24/23 27/14 28/24 29/3 29/18 29/25 31/8 31/10 31/12 31/13 31/20 44/22 45/19 48/18 61/5 61/13

**rational [4]** 23/25 30/23 31/2 31/16

**re [1]** 35/4

**read [2]** 39/23 50/16

**reading [1]** 11/12

**ready [4]** 14/10 14/12 51/5 51/9

**real [1]** 40/15

**realistic [1]** 8/15

**reality [1]** 55/22

**really [19]** 10/15 12/25 15/22 18/3 18/4 22/11 22/15 24/17 25/5 25/6 28/23 28/23 35/14 44/5 45/6 50/16 59/10 61/16 62/25

**reask [1]** 61/7

**reason [10]** 19/19 34/4 44/11 44/18 48/19 49/20 51/8 51/9 57/1 65/10

**reasonable [5]** 10/10 27/22 27/23 28/11 30/3

**reasons [2]** 35/6 54/7

**receive [1]** 29/17

**received [3]** 21/3 57/3 57/4

**recess [7]** 16/20 16/23 16/24 29/9 63/18 64/13

**recess... [1]** 67/13
**reciting [1]** 27/6
**recognize [1]** 36/24
**recognized [1]** 39/1
**recognizes [1]** 24/13
**Recognizing [1]** 37/25
**reconsider [10]** 20/16
 21/1 21/1 64/16 64/17
 64/21 65/6 65/11 65/13
 67/4
**reconsideration [2]**
 20/15 64/5
**record [5]** 3/6 55/4
 66/17 66/22 68/5
**redesignated [1]** 60/15
**redone [2]** 29/24 29/25
**reduced [1]** 15/13
**reduces [1]** 15/15
**referenced [1]** 23/16
**referencing [1]** 22/6
**referred [1]** 66/4
**reflect [1]** 6/22
**regard [1]** 6/23
**regarding [1]** 63/7
**regulatory [2]** 41/1
 41/19
**reject [2]** 26/6 29/3
**rejected [1]** 28/18
**rejecting [1]** 26/7
**relate [3]** 11/17 56/5
 58/22
**related [2]** 19/2 36/22
**relating [4]** 4/21 6/4
 12/4 61/7
**relation [1]** 12/5
**relationship [3]** 26/11
 26/15 27/2
**relevance [5]** 34/1
 34/17 34/25 50/5 57/18
**relevant [13]** 24/2

34/15 34/23 35/5 35/8
35/9 37/22 39/3 40/8
43/16 46/4 48/25 49/11
**relied [2]** 42/18 42/20
**relief [2]** 4/16 7/4
**rely [1]** 40/9
**remaining [1]** 14/13
**remedies [1]** 20/18
**remember [3]** 10/18
 46/23 50/15
**remind [1]** 38/18
**renegotiated [2]** 11/21
 66/1
**renegotiation [1]** 65/25
**renewal [1]** 64/10
**renewed [1]** 28/17
**repeatedly [1]** 38/1
**reply [6]** 17/18 17/25
 18/12 20/19 64/1 64/2
**REPORTER [2]** 2/21
 68/11
**reports [1]** 18/15
**represent [2]** 33/10
 33/18
**representative [1]** 62/2
**representing [2]** 5/16
 62/8
**request [14]** 4/6 4/13
 5/5 5/7 6/20 8/17 13/14
 19/17 32/10 32/13
 34/20 41/4 55/19 60/9
**requested [1]** 15/9
**requests [9]** 4/17 5/23
 5/25 6/13 6/24 17/9
 19/1 58/14 58/20
**require [5]** 10/24 17/5
 17/17 19/3 64/19
**required [2]** 37/15
 37/20
**requirements [2]** 23/16
 26/17
**requires [1]** 29/23

**requiring [2]** 17/22
 19/5
**resigned [1]** 64/9
**resist [1]** 36/13
**resolve [2]** 53/10 67/6
**respect [8]** 4/16 5/22
 7/4 11/24 41/6 48/25
 52/3 58/18
**respectful [1]** 16/16
**respond [13]** 7/23
 13/15 15/9 17/5 17/8
 17/25 30/23 31/14 57/6
 63/13 63/13 63/15
 64/11
**responding [2]** 5/24
 58/19
**response [16]** 15/7
 15/10 17/17 17/24 18/4
 18/11 18/25 31/2 32/8
 36/12 47/7 54/23 58/8
 58/11 62/9 62/22
**responses [1]** 19/6
**responsibility [4]** 41/2
 41/19 46/6 52/25
**responsible [1]** 53/6
**responsive [1]** 58/13
**rest [2]** 11/14 63/19
**result [1]** 65/3
**retaliate [1]** 28/6
**retaliated [1]** 5/2
**retaliation [3]** 4/22 6/4
 6/6
**reverse [1]** 10/9
**review [3]** 9/18 61/2
 61/24
**reviewed [1]** 20/23
**reviewing [1]** 6/17
**revisit [1]** 59/11
**revisited [1]** 59/2
**rife [1]** 29/4
**right [52]** 4/6 6/21 8/13
 8/14 8/19 8/21 10/3

**right... [45]** 11/3 12/2 13/7 14/10 15/13 16/10 16/20 16/25 19/9 20/3 20/13 25/6 25/16 25/23 30/13 30/20 31/23 31/24 32/2 33/13 36/22 37/13 37/15 40/3 41/9 42/3 42/13 43/23 44/5 44/15 44/18 45/20 45/23 46/2 47/15 48/6 52/22 53/9 55/24 57/20 57/21 60/11 61/18 62/25 63/13

**rightly [1]** 24/13

**RMR [2]** 2/21 68/10

**road [2]** 2/17 47/9

**role [2]** 11/10 12/7

**rolling [1]** 53/11

**Roman [2]** 35/4 38/10

**room [2]** 2/22 36/2

**rough [1]** 50/19

**round [1]** 17/19

**ruinous [1]** 35/22

**rule [11]** 20/22 33/22 34/6 34/7 34/9 35/8 36/6 47/19 47/25 48/7 64/15

**ruling [9]** 14/12 20/17 21/1 32/11 38/6 50/14 54/19 65/5 65/11

**rulings [3]** 57/18 63/19 65/1

**run [4]** 14/2 14/2 14/6 18/1

**S**

**S.W [3]** 2/9 2/13 2/22

**said [18]** 12/16 13/16 18/22 23/14 25/9 25/20 27/22 27/24 34/21 37/9

38/2 39/10 42/17 42/19 58/8 58/15 60/13 63/22

**same [13]** 13/25 15/25 16/14 17/6 19/18 19/18 19/19 20/9 20/11 23/18 35/18 54/13 62/9

**SAXTON [21]** 1/9 2/12 3/25 4/18 5/2 5/10 5/17 8/1 9/18 10/20 11/18 13/2 13/5 13/7 13/10 13/10 13/25 14/2 17/3 17/5 17/8

**Saxton's [5]** 4/13 6/21 17/7 17/10 18/24

**Saxton: [1]** 17/5

**say [28]** 7/9 10/25 11/4 11/13 18/24 21/20 25/15 27/7 31/6 34/10 34/12 39/25 40/11 41/3 41/17 43/19 45/1 48/5 48/22 48/22 48/24 49/2 50/13 50/15 53/17 59/8 60/17 66/18

**saying [8]** 9/23 21/8 26/25 29/12 46/17 56/16 61/15 61/17

**says [11]** 24/19 24/22 29/9 43/1 43/3 44/7 47/12 49/8 57/15 59/9 59/13

**scenarios: [1]** 21/9

**scenarios:  one [1]** 21/9

**schedule [20]** 4/9 6/21 8/4 13/2 13/6 13/8 13/9 13/10 13/11 13/18 13/19 14/1 14/3 16/21 17/4 18/25 19/18 20/11 67/7 67/9

**schedules [4]** 6/10 15/3 17/1 17/12

**scheduling [5]** 4/3 6/22

16/22 19/9 19/10

**scheme [1]** 6/19

**SCHRAMM [2]** 2/16 3/22

**Schramm's [1]** 41/25

**scope [3]** 33/22 36/14 38/1

**scorch [1]** 6/15

**scorched [1]** 6/18

**scorching [1]** 6/16

**score [1]** 50/2

**seal [5]** 32/9 32/11 32/20 32/21 51/7

**sealing [1]** 32/22

**search [1]** 37/20

**second [6]** 18/18 37/25 45/22 52/5 52/21 57/20

**secret [1]** 36/4

**section [8]** 33/18 55/16 56/25 57/4 57/5 57/7 57/9 57/25

**see [12]** 9/15 10/13 11/9 18/21 34/8 35/4 39/23 46/13 51/15 56/15 56/16 59/23

**seeing [1]** 44/20

**seeking [4]** 6/12 7/18 57/4 57/9

**seem [2]** 65/25 66/19

**seemed [1]** 62/25

**seemingly [1]** 66/13

**seems [4]** 22/21 62/20 66/9 66/24

**seen [1]** 32/17

**selected [2]** 42/1 44/17

**selecting [1]** 26/17

**sense [3]** 13/4 13/20 21/1

**sensitive [1]** 17/12

**sent [1]** 57/7

**separate [7]** 13/1 13/2 13/5 13/6 14/3 17/1

**separate... [1]** 33/21
**separately [5]** 14/2 14/6 58/14 58/19 58/20
**separates [1]** 42/23
**separation [1]** 51/17
**September [14]** 6/25 9/14 12/18 13/21 13/22 14/11 15/11 17/6 17/7 17/18 17/19 18/11 18/12 18/15
**September 1 [2]** 6/25 12/18
**September 1st [1]** 9/14
**September 20th [2]** 17/6 17/7
**September 21 [1]** 17/19
**September 21st [5]** 13/21 13/22 14/11 15/11 18/12
**September 28th [1]** 18/15
**September 7th [2]** 17/18 18/11
**sequence [1]** 31/13
**series [3]** 22/21 24/5 25/19
**serious [2]** 64/20 64/21
**served [4]** 51/2 51/3 51/12 53/1
**serves [1]** 53/7
**services [2]** 53/3 63/22
**set [14]** 3/3 4/17 17/10 21/12 24/14 24/18 24/20 24/23 25/7 25/12 27/14 48/17 67/8 67/9
**sets [1]** 21/9
**setting [15]** 18/6 21/25 27/14 29/10 29/10 29/12 29/13 29/15 30/5

**settings [1]** 11/25
**settle [4]** 38/16 39/7 39/9 39/11
**settled [3]** 21/12 39/2 39/21
**settlement [3]** 38/13 38/15 39/3
**settling [2]** 38/24 38/25
**seven [1]** 35/14
**severance [4]** 9/6 9/9 9/16 9/24
**severed [2]** 8/8 8/19
**Shannon [1]** 2/13
**share [4]** 33/10 51/19 61/23 62/9
**shared [3]** 54/17 55/12 60/15
**sharing [1]** 55/11
**she [11]** 5/17 5/19 5/21 5/23 6/2 6/3 11/21 11/21 12/6 12/7 30/19
**she'd [1]** 10/2
**she's [2]** 10/25 11/3
**should [10]** 20/16 23/10 32/22 34/18 36/8 37/14 53/17 58/16 60/19 63/14
**shouldn't [2]** 26/3 26/7
**show [4]** 43/3 44/21 45/13 49/9
**showed [1]** 47/19
**showing [2]** 20/8 34/4
**shows [1]** 27/9
**Shumway [3]** 2/21 68/9 68/10
**side [1]** 12/17
**sides [1]** 55/23
**signature [2]** 68/7 68/7
**signed [1]** 60/4
**significant [4]** 11/22

**significant: [1]** 35/17
**significant: avoiding [1]** 35/17
**significantly [1]** 15/25
**signing [1]** 68/4
**similar [2]** 34/8 46/6
**Similarly [1]** 35/2
**simple [5]** 26/25 59/19 62/25 63/2 63/3
**simply [1]** 26/12
**Simpson [2]** 2/8 3/20
**since [7]** 18/24 19/1 19/21 28/9 35/10 41/16 49/20
**sine [1]** 59/3
**single [7]** 29/24 30/8 30/10 31/19 31/21 52/6 64/9
**sir [1]** 36/10
**situations [1]** 40/16
**sloppy [1]** 44/4
**small [1]** 63/21
**smear [1]** 49/22
**smearing [1]** 49/12
**Smith [2]** 51/18 51/18
**so [115]**
**solution [1]** 52/14
**solve [1]** 9/24
**some [31]** 4/10 6/3 10/14 11/16 13/25 14/24 16/7 16/7 16/12 19/20 19/25 19/25 21/12 30/22 32/3 34/4 34/16 36/1 39/2 39/8 39/9 43/2 43/23 44/3 44/8 49/12 50/15 52/1 52/10 53/20 64/18
**somebody [2]** 26/12 26/13
**somebody's [1]** 19/5
**somehow [2]** 43/19

**S**

**somehow... [1]** 44/8
**someone [5]** 10/11 32/19 47/12 49/12 50/14
**something [14]** 10/23 11/2 21/20 24/19 28/22 28/25 30/2 30/25 35/9 48/25 50/11 56/10 64/19 66/17
**sometime [1]** 13/18
**sometimes [1]** 31/20
**somewhat [1]** 20/20
**somewhere [1]** 7/17
**sorry [2]** 37/8 63/8
**sort [18]** 4/2 10/9 10/12 11/3 11/11 14/1 16/22 21/9 23/11 23/24 33/22 34/2 34/5 34/24 44/8 54/21 65/8 66/14
**sought [1]** 54/3
**sound [2]** 61/5 61/13
**speak [1]** 66/10
**special [1]** 3/17
**specific [9]** 4/25 7/5 9/4 27/19 34/6 34/9 36/15 60/20 67/9
**specifically [4]** 29/19 30/6 35/9 46/5
**specified [1]** 27/18
**speech [2]** 4/22 5/1
**spend [1]** 43/1
**spent [1]** 43/3
**stand [1]** 49/12
**start [7]** 4/2 6/7 10/8 18/17 28/15 36/10 52/21
**starting [2]** 18/19 39/13
**starts [1]** 4/5
**state [9]** 1/7 3/6 26/15

33/12 36/13 44/16 51/25 56/2 60/25
**State's [2]** 55/1 55/7
**states [4]** 1/1 1/18 2/21 53/4
**statutes [2]** 24/2 65/7
**statutory [3]** 23/14 23/16 34/6
**Step [1]** 49/25
**Stephen [2]** 2/3 3/7
**steps [1]** 49/25
**still [7]** 5/15 14/23 15/10 35/13 38/19 44/20 50/10
**strategy [2]** 56/10 56/12
**Street [2]** 2/4 2/13
**strength [2]** 34/16 35/18
**stretch [1]** 35/25
**strings [1]** 57/16
**stuck [1]** 61/9
**stuff [1]** 15/21
**subject [16]** 5/10 20/18 32/13 33/5 33/8 33/11 33/17 46/22 50/9 54/16 54/18 55/4 60/3 60/19 60/22 63/6
**submitted [3]** 40/25 41/5 44/21
**subparagraph [1]** 64/6
**subsequent [1]** 22/12
**substantive [1]** 20/14
**subtleties [1]** 19/14
**such [1]** 66/24
**sufficient [1]** 15/19
**sufficiently [1]** 57/6
**suggest [5]** 27/8 39/17 40/23 40/24 60/18
**suggested [3]** 42/7 44/6 48/4
**suggesting [2]** 16/18

**suggestion [2]** 41/11 41/13
**Suite [2]** 2/9 2/13
**summary [16]** 13/6 13/15 13/17 13/20 13/22 14/1 14/3 14/20 15/7 15/24 16/11 16/14 18/23 19/21 20/1 20/6
**summer [1]** 15/3
**supervise [1]** 44/2
**support [1]** 66/4
**suppose [1]** 25/12
**supposedly [1]** 48/14
**sure [6]** 13/22 21/7 32/24 37/10 42/5 60/12
**surrounding [1]** 11/19
**suspenders [1]** 52/23

**T**

**table [1]** 9/1
**take [6]** 3/9 16/20 49/14 62/18 63/18 67/11
**taken [6]** 10/22 16/24 28/5 49/16 61/4 64/13
**takes [1]** 37/25
**taking [3]** 10/19 18/2 23/19
**talk [2]** 14/16 25/21
**talked [2]** 53/12 59/24
**talking [8]** 7/20 12/25 25/1 25/5 28/5 38/8 51/1 59/15
**talks [1]** 27/16
**tangential [3]** 11/3 11/11 11/14
**tell [5]** 4/10 22/20 25/10 25/22 37/16
**telling [2]** 46/25 64/24
**tells [1]** 66/22
**ten [1]** 16/21

**tentative [6]** 21/4 22/20 23/22 28/10 32/4 33/15

**term [12]** 22/9 24/18 24/20 26/15 27/2 27/7 29/23 29/24 30/10 30/14 39/23 66/1

**terminate [1]** 66/15

**terminates [1]** 66/9

**terms [35]** 5/24 9/20 16/2 21/20 21/21 21/23 22/17 22/23 22/24 22/25 23/3 23/5 23/7 23/15 23/17 23/21 23/23 24/1 24/11 24/14 25/5 26/5 27/4 28/18 28/19 30/9 30/13 30/18 30/25 31/20 37/20 37/21 51/20 66/3 66/11

**test [8]** 39/15 40/2 42/9 43/16 43/17 47/25 50/24 54/7

**than [19]** 11/23 21/7 21/18 25/16 27/8 28/9 30/25 31/21 34/1 34/13 36/14 53/3 53/18 53/24 54/6 56/19 57/24 65/2 66/23

**thank [36]** 3/13 3/23 4/1 4/12 8/21 8/22 9/11 12/24 13/24 16/22 28/8 28/13 28/14 31/23 32/2 33/20 36/11 36/18 42/3 46/24 47/4 47/6 53/9 57/12 58/2 58/24 59/17 60/8 60/23 61/22 62/5 62/10 64/7 64/14 67/12 67/13

**thanks [1]** 64/12

**that [477]**

**that's [90]**

**the CCQs [1]** 26/15

**their [19]** 16/7 16/7 16/12 19/3 29/3 37/7 40/4 40/6 41/3 41/24 44/18 45/5 45/9 45/10 46/13 50/4 56/9 58/7 63/11

**them [22]** 12/16 21/22 24/23 29/15 31/5 34/5 34/22 36/2 37/24 40/24 42/13 43/21 44/2 44/3 44/13 44/25 46/13 49/22 50/3 53/3 58/11 58/14

**then [41]** 4/4 4/15 7/10 7/14 7/16 9/2 13/17 15/2 16/24 17/23 17/25 18/25 19/5 20/13 22/16 23/5 23/12 23/25 25/5 25/11 30/1 32/4 33/13 33/25 36/21 37/3 37/14 40/17 40/19 40/24 42/9 44/8 47/25 50/24 51/6 52/5 53/25 58/12 59/10 64/13 66/8

**theory [2]** 43/22 44/5

**there [42]** 6/15 8/2 9/25 10/2 12/14 15/1 19/17 19/20 19/25 20/4 23/19 24/14 25/18 26/17 28/4 29/6 29/7 29/9 29/14 30/2 33/7 34/12 35/7 35/13 35/15 36/5 37/18 38/13 38/14 40/7 40/7 41/5 46/6 51/17 53/20 54/6 57/20 57/23 59/9 62/18 62/19 65/15

**there's [28]** 18/6 22/4 22/16 23/1 23/5 23/6 23/7 24/19 24/21 25/4 26/16 26/21 27/19 29/2 29/7 29/14 32/24 34/16

35/20 41/11 41/13 42/5 46/3 46/4 50/21 51/8 51/9 54/12

**therefore [6]** 21/24 30/15 56/1 65/21 67/2 67/3

**these [56]** 6/8 6/12 6/12 6/18 6/23 8/1 9/9 15/5 17/13 17/14 26/17 26/21 29/17 31/16 33/4 34/14 34/21 34/22 36/16 36/20 37/5 38/2 38/8 38/17 39/10 39/15 40/8 40/12 40/16 40/16 40/25 41/7 41/8 41/13 41/24 42/1 42/8 45/7 45/17 45/25 47/19 48/18 49/15 49/16 49/16 52/17 53/2 54/8 54/13 56/3 56/8 56/15 56/15 56/16 61/2 66/25

**they [76]**

**They'd [1]** 30/25

**they'll [1]** 18/3

**they're [13]** 18/10 23/15 34/23 41/14 41/16 41/16 42/10 43/9 44/4 47/12 49/25 50/1 64/18

**they've [6]** 47/2 49/20 49/21 59/13 63/11 63/11

**thing [8]** 18/21 19/16 29/16 45/16 47/1 49/15 60/25 64/15

**things [8]** 4/3 6/19 18/22 28/3 37/11 51/24 56/21 59/23

**think [54]** 4/5 6/10 6/19 8/15 12/2 13/4 19/7 19/15 20/17 21/4 21/8 22/11 23/8 24/5 24/25

# T

**think... [39]** 27/25 29/8 29/22 31/15 32/16 32/23 34/10 34/13 34/15 34/16 35/13 36/8 36/19 36/23 37/23 38/19 42/12 43/5 43/8 45/5 45/6 45/7 46/19 47/16 49/13 50/18 51/20 56/8 59/3 59/10 60/19 61/11 62/13 62/23 63/3 63/13 65/5 66/12 67/6
**think the [1]** 32/23
**third [4]** 2/22 37/1 37/17 40/6
**this [164]**
**Thomas [1]** 2/3
**those [22]** 4/4 4/22 7/8 11/22 15/6 15/8 27/6 27/21 29/3 32/12 35/11 36/7 37/21 41/5 43/4 52/6 54/7 58/13 58/19 61/8 65/21 65/24
**though [3]** 9/21 18/7 31/18
**thought [3]** 37/22 52/19 60/17
**thoughtful [1]** 11/7
**thoughts [2]** 21/4 32/4
**thousands [1]** 58/25
**three [5]** 5/9 10/24 17/1 58/16 66/6
**three-month [1]** 10/24
**threshold [5]** 37/6 39/17 39/24 40/1 40/2
**through [2]** 27/13 29/7
**thus [1]** 32/12
**tiered [1]** 54/5
**ties [1]** 38/3
**till [1]** 50/22

**Tim [1]** 51/18
**time [21]** 3/3 4/21 5/15 5/18 8/10 10/15 11/16 13/17 14/12 15/20 16/17 16/19 17/6 24/14 43/1 61/3 61/4 61/12 63/12 63/15 65/9
**times [1]** 17/15
**today [25]** 7/11 8/14 12/10 18/2 36/2 46/6 46/17 47/12 48/7 48/13 51/3 51/11 52/14 54/8 55/22 59/1 59/6 60/18 62/7 62/9 62/24 64/15 65/14 66/18 67/6
**today's [1]** 50/13
**together [1]** 25/10
**Tolbert [6]** 21/5 21/8 21/11 22/23 24/15 24/16
**told [1]** 51/17
**tomorrow [3]** 10/20 10/21 14/25
**too [1]** 44/14
**took [1]** 11/20
**topics [1]** 61/7
**trade [1]** 36/4
**traditionally [1]** 61/9
**transcript [3]** 1/16 68/5 68/6
**treat [1]** 62/7
**treated [1]** 54/16
**treating [1]** 61/6
**trends [1]** 49/3
**trial [49]** 5/8 8/6 8/9 8/18 9/1 9/9 9/10 9/17 9/25 11/10 14/10 14/13 14/14 16/15 17/2 18/19 39/2 39/4 39/7 45/14 46/17 46/18 46/19 46/25 47/12 47/13 47/14 47/15 47/19

47/20 48/1 48/2 48/9 48/11 48/20 48/21 50/20 50/22 51/3 51/5 51/6 51/6 51/9 51/20 51/22 53/12 53/13 56/10 56/12
**true [11]** 6/2 8/23 10/4 23/15 23/18 35/11 37/10 40/2 49/3 55/25 61/11
**truly [1]** 40/16
**try [3]** 8/14 16/22 59/18
**trying [3]** 11/7 15/4 44/12
**turn [3]** 20/13 24/4 31/24
**turned [1]** 49/20
**turns [2]** 21/5 50/7
**two [25]** 4/14 9/17 11/22 18/6 18/21 21/9 29/14 29/15 34/12 34/24 35/7 35/13 36/7 38/17 41/7 41/16 44/12 49/8 49/25 52/3 53/24 56/20 57/24 65/2 66/3
**typically [1]** 53/19

# U

**ultimate [1]** 32/11
**ultimately [5]** 37/19 38/13 39/4 39/21 66/25
**unacceptable [3]** 25/15 27/7 30/15
**unbounded [3]** 24/24 27/15 27/18
**uncomfortable [1]** 51/13
**unconnected [1]** 39/8
**under [15]** 8/4 20/18 26/1 32/9 32/11 34/5 35/8 36/15 40/22 41/1 41/22 49/13 53/5 54/22

**under... [1]** 64/18
**underlying [1]** 45/10
**understand [5]** 20/24 45/22 46/11 55/1 61/23
**understanding [6]** 5/6 23/20 24/1 24/15 63/4 63/5
**understands [1]** 10/17
**understood [3]** 19/8 60/13 60/17
**undesignated [1]** 33/23
**undesignating [1]** 54/8
**unfettered [1]** 54/2
**unfortunate [1]** 50/10
**uninformed [2]** 66/18 66/21
**UNITED [3]** 1/1 1/18 2/21
**unlike [1]** 53/17
**unlimited [1]** 24/20
**unnecessary [2]** 11/4 58/19
**unreasonable [1]** 6/20
**unrepresented [1]** 5/20
**unsound [2]** 44/22 44/25
**unsuited [1]** 27/25
**until [8]** 6/24 6/25 7/17 12/16 12/18 14/20 14/21 32/19
**untruth [1]** 49/13
**unusual [3]** 53/14 66/13 66/19
**up [24]** 7/16 18/6 18/8 18/22 20/2 20/19 21/9 23/19 26/21 27/4 31/3 35/4 37/9 41/17 44/7 45/13 45/21 47/19 49/9 50/11 53/12 58/16 67/7

**upon [3]** 10/13 22/4 22/7
**upset [1]** 50/16
**us [8]** 6/25 14/12 29/22 36/17 52/9 52/10 56/13 58/6
**usable [1]** 35/10
**use [9]** 17/4 39/10 46/17 46/17 47/1 47/12 49/21 50/3 50/4
**used [12]** 35/10 38/23 39/3 39/8 39/10 40/9 40/17 41/11 41/12 47/15 47/22 50/19
**useful [1]** 46/19
**usefulness [1]** 54/12
**usually [1]** 4/3

**V**

**variety [4]** 45/16 46/4 53/16 54/4
**verdict [2]** 43/21 43/22
**versus [2]** 9/6 45/3
**very [15]** 8/21 15/4 31/23 34/8 48/4 48/21 49/17 53/21 54/19 59/21 63/17 64/23 65/3 66/7 67/12
**vice [1]** 3/10
**view [12]** 10/10 13/1 22/11 22/21 23/22 26/4 26/7 38/21 42/14 45/7 50/10 65/16
**viewed [1]** 21/17
**views [1]** 33/15
**vindicate [1]** 41/23
**virtually [1]** 42/17
**virtue [1]** 50/8
**voluntarily [1]** 36/17

**wait [2]** 50/22 63/17
**walking [1]** 27/7
**want [30]** 8/3 8/18 8/18 9/16 9/25 11/12 12/10 13/21 16/14 16/16 17/14 18/7 19/22 20/4 20/5 20/24 34/21 37/8 40/24 42/5 43/13 44/21 46/14 46/17 50/14 54/11 55/22 60/1 60/12 62/18
**wanted [5]** 8/11 46/16 51/24 55/2 60/18
**wanting [2]** 57/21 59/4
**wants [3]** 24/21 57/20 59/9
**was [60]** 5/13 5/15 5/16 9/18 15/19 19/15 20/21 22/4 22/8 22/9 24/11 25/18 25/20 27/9 27/11 27/12 28/5 29/5 29/7 29/12 31/12 35/16 35/21 37/17 37/18 38/13 42/17 43/14 44/4 44/7 45/2 45/3 45/3 47/14 48/17 48/18 48/22 49/2 49/6 49/8 49/11 50/2 50/4 52/19 55/1 55/3 55/4 55/4 58/12 60/13 61/5 61/10 62/19 62/23 63/5 63/5 63/6 63/6 63/7 65/6
**wasn't [4]** 27/14 36/16 48/18 50/3
**way [17]** 4/2 23/22 26/3 27/19 30/13 43/23 43/24 44/11 49/2 49/6 51/23 53/23 56/17 61/20 64/20 65/16 65/23

**ways [6]** 16/18 18/6 22/4 53/10 53/15 64/18
**we [105]**
**we'd [4]** 17/25 59/9 62/7 67/4
**we'll [11]** 25/9 25/10 25/21 25/22 49/24 53/13 62/18 63/17 67/6 67/10 67/13
**we're [20]** 4/16 6/12 6/20 7/16 10/13 22/19 23/18 25/1 25/4 25/10 30/12 38/8 38/16 40/9 44/9 50/14 51/1 55/14 56/6 59/15
**we've [14]** 6/24 10/19 14/11 15/4 29/23 31/7 32/17 39/25 40/11 48/3 48/12 49/24 58/25 65/14
**week [4]** 15/2 15/3 58/8 58/11
**weeks [1]** 58/16
**well [35]** 8/12 10/2 10/25 11/13 11/22 12/22 20/3 22/10 25/15 26/10 29/14 30/16 30/18 31/6 34/16 36/18 37/16 41/10 42/4 42/20 43/13 43/19 44/2 46/21 48/24 49/11 51/13 53/4 54/19 54/20 55/23 59/11 60/12 61/21 63/17
**went [1]** 65/7
**were [30]** 11/10 12/15 13/19 18/7 31/8 32/9 34/21 36/13 36/16 37/20 37/22 37/23 37/23 38/12 38/14

38/14 38/20 38/22 38/23 39/15 39/20 39/22 44/22 48/24 51/17 52/4 60/2 61/3 61/5 61/13
**weren't [1]** 39/22
**what [62]** 4/8 4/10 6/2 7/5 7/9 7/11 8/11 9/21 10/12 10/19 11/10 13/4 13/4 16/8 18/3 20/22 21/7 23/4 23/8 23/14 24/1 25/10 25/22 25/25 26/8 26/10 28/11 29/23 30/7 30/17 31/7 34/9 35/3 36/3 37/4 37/4 37/9 38/20 41/3 41/21 42/13 42/25 43/6 44/7 44/20 44/25 47/14 48/13 49/21 51/2 51/5 51/12 51/17 53/19 55/14 56/14 57/8 60/13 61/15 65/9 65/16 66/21
**what's [14]** 10/10 10/16 19/2 22/15 24/16 25/25 31/2 34/11 47/14 49/22 55/21 56/24 57/25 66/5
**whatever [2]** 19/2 24/20
**whatsoever [1]** 50/6
**when [16]** 7/18 7/24 8/3 12/10 13/3 16/3 24/22 25/1 26/21 27/17 29/17 43/3 47/22 50/14 59/8 61/10
**where [14]** 21/9 21/11 24/14 25/19 26/13 27/13 27/15 27/16 27/21 28/4 29/22 30/8 45/17 66/15
**whether [38]** 16/6 18/2 18/3 18/4 20/16 20/21

22/11 22/15 24/4 24/17 24/18 25/4 28/5 28/15 34/18 40/16 41/8 42/8 42/9 43/8 43/14 43/16 43/18 45/3 45/22 46/15 47/21 48/8 49/25 50/21 51/1 51/7 54/11 61/4 61/5 64/10 65/17 65/19
**which [29]** 5/14 7/9 7/13 7/14 10/13 11/20 13/18 15/11 17/24 21/23 22/19 22/22 26/1 26/4 27/19 28/17 31/17 36/4 37/6 42/22 43/2 45/13 48/4 50/1 50/10 51/16 53/2 53/23 65/18
**Whichever [1]** 19/24
**while [6]** 6/2 35/21 53/20 56/4 62/8 66/18
**who [18]** 3/10 33/1 33/3 33/7 36/5 41/22 43/11 46/16 49/7 51/10 51/18 55/4 59/9 59/21 60/6 61/15 62/3 64/24
**whole [5]** 25/2 25/5 30/5 36/19 56/12
**whom [3]** 36/2 42/17 52/8
**why [23]** 9/23 13/16 13/16 14/8 14/22 15/9 20/8 22/19 26/3 26/7 29/4 37/16 40/1 43/13 44/20 45/2 48/20 49/18 49/18 63/12 63/13 65/10 65/10
**why: [1]** 28/21
**why:  This [1]** 28/21
**will [28]** 9/24 10/20 11/10 14/14 15/2 15/8 16/6 17/7 17/15 17/20 18/3 19/4 25/22 27/19 38/18 39/23 41/15

**will... [11]** 47/17 47/21 48/9 48/11 51/2 51/3 51/5 54/11 54/19 58/14 58/20
**willing [4]** 4/9 12/15 12/18 18/25
**wish [1]** 17/13
**with the [1]** 38/12
**withdraw [1]** 25/16
**withdraws [1]** 30/19
**within [2]** 16/21 58/16
**without [4]** 11/12 34/15 59/22 68/6
**witness [5]** 10/5 48/21 49/6 59/22 61/15
**witnesses [1]** 15/2
**word [2]** 12/2 64/17
**words [3]** 6/15 10/17 50/17
**work [9]** 6/20 10/23 13/1 17/15 48/14 48/17 48/17 49/1 49/8
**working [1]** 5/22
**worry [1]** 14/13
**worth [2]** 28/24 29/25
**would [68]** 4/9 5/21 6/7 6/21 7/12 7/15 7/18 8/1 8/2 8/4 9/8 9/9 10/6 10/15 10/23 11/2 11/12 11/18 11/22 12/6 12/18 13/4 13/5 13/5 13/23 14/6 15/10 16/11 17/24 19/16 24/2 25/16 27/5 27/8 27/13 28/12 28/12 30/23 31/10 31/11 31/16 32/9 32/13 32/17 36/5 39/12 40/8 41/14 43/6 45/13 47/1 49/9 49/14 52/19 55/7 55/19 56/8 59/10 61/1 61/6

62/9 62/9 62/12 63/15 65/18 65/22 66/13 66/21
**wouldn't [7]** 8/6 31/3 33/1 48/20 48/23 49/10 55/5
**wrapping [1]** 18/8
**wrong [4]** 45/1 45/2 45/3 45/4

## Y

**year [47]** 22/12 22/15 22/22 23/2 23/4 23/23 24/11 24/13 25/9 25/11 25/14 25/19 25/20 25/20 26/1 26/4 26/8 27/10 27/10 27/12 28/16 28/17 28/17 28/21 28/23 29/1 29/3 29/24 30/1 30/8 30/11 30/25 30/25 31/4 31/4 31/4 31/19 31/21 64/9 65/3 65/17 65/20 65/22 66/2 66/16 66/16 67/1
**year-to-year [3]** 27/10 30/25 31/4
**years [3]** 24/6 49/9 65/22
**yes [33]** 4/7 4/12 5/21 7/22 8/5 8/16 8/20 9/2 9/22 10/4 10/6 12/13 14/18 19/13 20/7 20/12 24/10 30/16 30/21 31/16 32/5 32/7 36/21 36/23 42/9 42/12 44/6 45/20 45/20 48/12 55/8 62/1 63/24
**yesterday [2]** 58/4 58/12
**yet [3]** 3/11 6/15 7/24
**you [166]**
**you'd [8]** 8/3 8/18 8/18

12/10 12/10 14/19 30/12 46/12
**you'll [6]** 7/23 19/6 20/4 20/5 20/9 57/19
**you're [15]** 4/10 7/11 8/12 8/13 9/17 19/7 27/6 29/12 37/10 44/12 46/17 47/23 48/24 49/1 61/16
**you've [6]** 32/17 44/6 46/15 46/16 48/16 49/2
**your [139]**