Stephen F. English, OSB No. 730843
SEnglish@perkinscoie.com
Thomas R. Johnson, OSB No. 010645
TRJohnson@perkinscoie.com
Alletta Brenner, OSB No. 142844
ABrenner@perkinscoie.com
Brian Samuelson, OSB No. 165476
BSamuelson@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Telephone:  503.727.2000
Facsimile:  503.727.2222

Matthew Gordon, *pro hac vice*
MGordon@perkinscoie.com
Nicholas Hesterberg, *pro hac vice*
NHesterberg@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone:  206.359.8000
Facsimile:  206.359.9000

*Attorneys for Plaintiff FamilyCare, Inc.*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| FAMILYCARE, INC., an Oregon non-profit corporation,<br><br>                         Plaintiff,<br><br>        v.<br><br>OREGON HEALTH AUTHORITY, an agency of the State of Oregon, PATRICK ALLEN, both individually and in his official capacity as director of the Oregon Health Authority, and LYNNE SAXTON,<br><br>                         Defendants. | No. 6:18−cv−00296−MO<br><br>PLAINTIFF FAMILYCARE, INC.'S OPPOSITION TO OREGON HEALTH AUTHORITY'S MOTION TO COMPEL PRODUCTION OF DATABASE |

FAMILYCARE'S OPPOSITION TO OHA'S
MOTION TO COMPEL PRODUCTION OF
DATABASE

## L.R. 7-1 COMPLIANCE

In response to the certification submitted by counsel for the Oregon Health Authority, counsel for FamilyCare, Inc. state that the parties made an effort to resolve the dispute prior to the filing of OHA's unsuccessful March 12, 2018 Motion to Compel Production of Documents (which included a motion to compel the production of FamilyCare's provider claims database). *See* Dkt. 19. That motion was denied on April 6, 2018. *See* Declaration of Alletta Brenner in support of FamilyCare's Opposition to OHA's Motion to Compel Production of Documents ("Brenner Decl."), Exh. 2 at 3. Other than a brief return to the topic in April, May, and July, no further attempt has been made by OHA to resolve the dispute presented in the motion currently before this Court.

## MEMORANDUM IN OPPOSITION

For the second time in this action, Oregon Health Authority ("OHA") has moved to compel the production of FamilyCare, Inc.'s ("FamilyCare") provider claims database. As did the initial motion, OHA's renewed request seeks the production of information that was previously available to it or has already been produced in this litigation. This Court denied OHA's first motion on "relevance grounds," and although OHA attempts to distinguish its refurbished request based on the current procedural posture of the case, the issues with OHA's request remain the same: providing the claims database would be duplicative of the information already available to OHA, and is burdensome to FamilyCare. Moreover, OHA's excuses for reviving its unsuccessful motion now, based on subsequent events, are spurious. Nothing in FamilyCare's Fourth Amended Complaint ("Complaint") or OHA's counterclaims and defenses asserted in its Answer has any relationship to this information. For these reasons and those that follow, this Court should deny OHA's motion.

## BACKGROUND

As a preliminary matter, FamilyCare disputes OHA's characterization of the parties' negotiations regarding OHA's earlier discovery requests seeking data contained in FamilyCare's claims database. In response to OHA's Fifth Request for Production of Documents (which

1- FAMILYCARE'S OPPOSITION TO OHA'S MOTION TO COMPEL PRODUCTION OF DATABASE

140798160.12

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

included several requests for information contained in the database), FamilyCare objected that the information sought by OHA had "already been provided to OHA in the ordinary course of business," and agreed only to "search for additional non-privileged documents within its custody and control responsive to this request and * * * provide documents and/or reports sufficient to show the information sought." *See* Declaration of Matthew A. Levin in Support of Oregon Health Authority's Motion to Compel Production of Database ("Levin Decl."), Exh. 3 at 7-10. In subsequent conferrals, counsel for FamilyCare agreed to investigate and follow-up regarding any additional, relevant information contained in FamilyCare's claims database that was not included in the reports regularly submitted to OHA.  However, before FamilyCare had the opportunity to do so, OHA filed its first motion to compel in March 2018 while including the following statement: "Although FamilyCare has not given OHA access to this database yet, the parties are still negotiating over the issue.  OHA raises the issue in this motion to preserve the issue should the parties fail to reach an agreement."  *See* Dkt. 19, Oregon Health Authority's Motion to Compel Production of Documents from FamilyCare, Inc., p. 9.  FamilyCare opposed that motion on the grounds that FamilyCare had already submitted detailed claims data to OHA as part of the rate-setting process, and that any additional information included in FamilyCare's database which was *not* required to be submitted to OHA could not be relevant to OHA's rate-setting methodology, which relied on the information that OHA already had and used in the rate-setting process.  *See* Dkt. 36, FamilyCare, Inc.'s Response to Oregon Health Authority's Motion to Compel Production of Documents, pp. 8-9.  This Court denied OHA's motion "[o]n relevance grounds" on April 6, 2018.  Brenner Decl., Exh. 2 at 3.

Subsequently, in April, May, and July, OHA counsel once again raised the issue of the claims database, asking for additional detail about the information it contained and suggesting that OHA intended to file a second motion to compel on the same issue.  Although counsel for OHA indicated that they believed this Court might reconsider its prior ruling once OHA answered the Complaint, they did not offer any explanation as to why OHA's Answer should change the result and did not indicate that OHA believed it had any other need for this

2- FAMILYCARE'S OPPOSITION TO OHA'S MOTION TO COMPEL PRODUCTION OF DATABASE

140798160.12

information beyond what was articulated in its previous motion. FamilyCare declined at the time to state that a meet and confer had been completed due to a need for further consultation. Since these discussions, the parties have not revisited the issue.

## ARGUMENT

In its current motion to compel production of FamilyCare's provider claims database, OHA asserts that it needs this information to "assess FamilyCare's allegations that OHA relied on 'erroneous' data in setting the rates" and that FamilyCare "refuses to produce the data" that would allow it to do so.[1] *See* Dkt. 180, Oregon Health Authority's Motion to Compel Production of Database, p. 2. In essence, OHA has simply rewarmed the argument it previously made and that the Court rejected on relevance grounds, while offering no legitimate basis for revisiting the Court's earlier decision. OHA has, however, expanded its demand to include even more duplicative information that OHA already has in its custody or control. On both accounts, OHA misstates the nature of FamilyCare's claims, ignores the origins of the data that it has purportedly been deprived of, and overlooks the data that has already been made available to it.

**A.    The Court has already rejected OHA's effort to obtain FamilyCare's claims database and nothing has occurred since to justify revisiting that decision.**

In its motion, OHA contends that this Court's denial of its original motion to compel production of FamilyCare's claims database is of limited significance given the evolved procedural posture of this case. However, OHA identifies no change in circumstances, apart from the mere fact of FamilyCare's Complaint and OHA's Answer, which would warrant a different ruling on the issue. OHA fails to explain why the addition of Ms. Saxton as a defendant, and the modification of FamilyCare's existing Section 1983 claim to clarify that

---

[1] FamilyCare has consistently voiced its concerns regarding OHA's data quality in connection with the rate-setting process, and provided OHA with the information and analyses necessary to identify those issues. *See* Dkt. 111, FamilyCare's Fourth Amended Complaint at ¶¶ 24, 41, 59, 67-70; *see also* Declaration of Bill Murray in support of FamilyCare's Opposition to OHA's Motion to Compel Production of Documents ("Murray Decl."), ¶ 5. It is disingenuous for OHA to claim, now, that it lacks the information necessary to investigate the concerns that FamilyCare has consistently raised with OHA over the years.

3-    FAMILYCARE'S OPPOSITION TO OHA'S
MOTION TO COMPEL PRODUCTION OF
DATABASE

140798160.
12

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

OHA's actions were taken in retaliation for FamilyCare's exercise of its First Amendment rights, requires this Court to revisit its prior ruling.  To the contrary, FamilyCare's claims in the Third Amended Complaint—the operative complaint at the time OHA filed its original motion to compel—identified the same errors in OHA's data that FamilyCare argued resulted in actuarially unsound rates.  Nor does OHA explain how the fact that it has now filed a responsive pleading changes that reality.  OHA's general denials of FamilyCare's allegations do not require discovery of information in addition to that which is, and already was, available to OHA.  *See* Fed. R. Civ. P. 26(b)(C)(1) (the court must "limit the frequency or extent of discovery * * * if it determines that * * * the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive").  Similarly, OHA's Counterclaim, which seeks a declaratory judgment on the issue of the impact of the parties' 2016 Settlement Agreement on OHA's right to recoup certain payments, has nothing to do with the claims database.

**B.     The relevant data contained in FamilyCare's claims database is already available to OHA.**

OHA's motion seeks the production of a specific database maintained by FamilyCare's third-party vendor, Performance Health Technology ("PH Tech").  However, OHA's supporting memorandum describes a much more far-reaching request that conflates two distinct types of data that have different origins and distinct purposes: claims data and enrollment data.  The distinction between the two is significant in the context of this motion.[2]

**1.   Claims Data**

Claims data consists of detailed information regarding the member who received services, the provider, the date of service, the type of service, the amount billed, whether the claim was approved or denied, the amount paid out to providers, and other supplemental

---

[2] By contrast, the distinction drawn by OHA in its motion between "claims data" and "encounter data" is immaterial to the issue at hand.  As such, all subsequent references to such data in this motion will be to "claims data."

4-   FAMILYCARE'S OPPOSITION TO OHA'S MOTION TO COMPEL PRODUCTION OF DATABASE

140798160. 12

information.  Declaration of Bill Murray in support of FamilyCare's Opposition to OHA's Motion to Compel Production of Documents ("Murray Decl."), ¶ 6.  FamilyCare's claims data is collected and tracked through the provider claims database maintained by PH Tech.  *Id*. Pursuant to its contract with OHA, FamilyCare was required to, and regularly did, submit claims data to OHA as part of the rate-setting process, which data OHA then used to set FamilyCare's capitation rates.  *See id*.  Additionally, FamilyCare has produced a variety of documents in this litigation reflecting the same basic information, including information for each and every claim made and paid out to FamilyCare's providers during the discovery period.  *See* Brenner Decl., ¶ 3.

OHA nevertheless argues that FamilyCare's claims database contains additional information that has not been submitted to OHA, which, OHA claims, is relevant to assessing FamilyCare's allegations (*i.e.*, that the data relied upon by OHA was erroneous).  While FamilyCare's claims database does contain additional fields of information that were not provided to OHA as part of the rate-setting process (*e.g.*, demographic and other personal information regarding providers and members), OHA fails to explain how any of that information—which was not requested or utilized by OHA in its rate-setting process—can be useful to evaluate FamilyCare's claims regarding the data issues *with respect to OHA's rate-setting*.  As was true of OHA's prior motion to compel, the fallacy of OHA's argument is that, by definition, OHA already has all of the necessary inputs for its rate-setting methodology.  Any additional information included in the database has no bearing on data issues related to rate-setting.

Furthermore, and contrary to what OHA alleges, access to FamilyCare's full claims database will not help OHA to determine why FamilyCare's financial disclosures differ from the claims data used in rate-setting.  *See* Declaration of Annie Hallum in Support of Oregon Health Authority's Motion to Compel Production of Database ("Hallum Decl."), ¶ 4.  This is so for the simple reason that OHA already has in its possession all of the data necessary to make that determination: OHA possesses both FamilyCare's financial disclosures and the relevant claims

5-  FAMILYCARE'S OPPOSITION TO OHA'S MOTION TO COMPEL PRODUCTION OF DATABASE

140798160. 12

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

data contained in FamilyCare's claims database, which, as explained above, was submitted regularly to OHA as part of the rate-making process. Simply put, OHA, not FamilyCare, is in the best position to assess why there exist discrepancies in the data used by OHA for rate setting.

### 2. Enrollment Data

In an effort to shore up its argument that FamilyCare's "claims database" is needed, OHA now cites to FamilyCare's allegations about discrepancies in OHA "enrollment data" and suggests that this database is needed to help OHA understand and defend against those claims. These assertions fundamentally misrepresent the nature of both the claims database and the enrollment data OHA references.

a. <u>The claims database is not the best source of enrollment data</u>. As an initial matter, the "claims database" that OHA seeks is far from the best source of enrollment data. Unlike claims data, which describes the services that individual Oregon Health Plan ("OHP") members receive, enrollment data describes the population of members that each CCO serves. Murray Decl. ¶ 10. As explained above, because claims data consists of entries for specific services billed and paid for specific members, FamilyCare's claims database is, at best, an incomplete snapshot of FamilyCare's enrollment data, as it tracks only data for members for whom claims were submitted, and not those who did not receive treatment in a given time period. *Id.* at ¶ 14. Thus, although the claims database does include enrollment information for the specific members contained within the database, the list of FamilyCare members within that database is, by definition, incomplete.

b. <u>OHA has in its possession the most complete enrollment data</u>. In any case, even if the claims database did contain enrollment data on all of the members served by FamilyCare, that information would be entirely duplicative of enrollment data already in the possession of OHA. OHA has exclusive control over the enrollment process, *i.e.*, determining members' eligibility and assigning them to a particular CCO. Consistent with this authority and responsibility, OHA provides enrollment information to CCOs weekly, which CCOs then use to update their own records. Murray Decl. ¶ 11. Accordingly, OHA—and not any given CCO—is the best source of

6- FAMILYCARE'S OPPOSITION TO OHA'S MOTION TO COMPEL PRODUCTION OF DATABASE

140798160.12

enrollment data and is in the best position to assess why there exist discrepancies in the enrollment data used by OHA for rate setting.

Citing to the allegations in FamilyCare's complaint, OHA nevertheless contends that FamilyCare has its own source of enrollment data that is different from OHA's. But the language cited by OHA referring to FamilyCare's "own" enrollment data still refers to the data that FamilyCare initially received from OHA through PH Tech. As relevant here, FamilyCare's claims database vendor, PH Tech, received enrollment data from OHA on FamilyCare's behalf and updated FamilyCare's own records to ensure that members who submitted claims for medical services were eligible to receive such services on the date they were rendered. *Id.*; *see also* Levin Decl., Exh. 1 at 21 (stating that "PH Tech picks up the enrollment data on FamilyCare's behalf, from OHA"). Although OHA is the sole arbiter and provider of enrollment data, CCOs do, pursuant to their contractual obligations and in the ordinary course of business, provide information to OHA regarding any apparent discrepancies they identify in that information. In fact, the state maintained an email address specifically for CCOs to report such discrepancies. Murray Decl. ¶ 12. Per the terms of its contract with OHA, FamilyCare, too, reported enrollment data discrepancies to OHA for further investigation (*e.g.*, instances when the enrollment information provided by OHA included individuals who appeared to be mistakenly identified as FamilyCare members because they had previously been identified as members of a different CCO). *Id.* Information pertaining to discrepancies has also been reproduced in this litigation.[3] *See* Brenner Decl. ¶ 4, Exh. 1. In any case, as discussed further below, these types of discrepancies are distinct from the discrepancies at issue in FamilyCare's claims regarding the accuracy and soundness of the enrollment data used in setting OHA's capitation rates.

c. The discrepancies in enrollment data alleged by FamilyCare in this action are discrepancies in enrollment data generated by OHA. The enrollment data discrepancies that

---

[3] Additionally, summaries of FamilyCare's enrollment information for each year were provided to OHA on its Exhibit L templates, which have also been reproduced in this litigation. *See* Brenner Decl. ¶ 2.

7- FAMILYCARE'S OPPOSITION TO OHA'S MOTION TO COMPEL PRODUCTION OF DATABASE

140798160. 12

FamilyCare alleges in this lawsuit are of an entirely different character than those routinely reported by CCOs to OHA.  FamilyCare's complaints with respect to enrollment discrepancies in OHA's data arose when OHA instituted a practice of using two *separate* sets of enrollment data in developing capitation rates: one set to develop rates, and another set to pay out those rates. *See* Murray Decl. ¶ 13.  For example, whereas the enrollment data and corresponding payments made to FamilyCare might indicate that it had a certain number of members who qualified for Medicaid under a particular category of aid, the enrollment data that OHA used to set the rates had a different number of members in that category.  *Id*.  Because in some situations this difference resulted in a material impact on the capitation rates set for those categories, FamilyCare and other CCOs ended up being paid erroneous rates for those members. *Id*.  In other words, while OHA continued to pay FamilyCare monthly capitation rates based on the enrollment information that it regularly provided to PH Tech on FamilyCare's behalf, it set those rates using its own internal set of enrollment data, which, as FamilyCare later discovered, varied significantly from that which it had provided.  Whereas OHA's second, internal set of enrollment data was never provided to FamilyCare (and is therefore not reflected in FamilyCare's claims database), the first set of enrollment data, which FamilyCare does have, is the exact same enrollment data that OHA provided to it and, apparently, did not use in setting its rates.[4]

d.  FamilyCare's 2016 External Quality Review ("Review") does not support OHA's position.  OHA's suggestion in its brief that the findings and recommendations in the Review (which suggest improvements for FamilyCare's processes with respect to its third-party vendor) are indicative of OHA's need to access the claims database is a non-sequitur.  *See* Dkt. 180, Oregon Health Authority's Motion to Compel Production of Database, p. 4-5.  In relying on the

---

[4] To the extent that FamilyCare has ever had information about these discrepancies, it has already provided this information to OHA.  *See* Dkt 111, FamilyCare's Fourth Amended Complaint at ¶ 24 (stating that FamilyCare shared its enrollment data and concerns with OHA); Murray Decl. ¶¶ 12, 15.  In fact, during the rate-setting process, FamilyCare was instructed by OHA to submit its "internal" enrollment data to OHA so that OHA could investigate any discrepancies between the two.  *See* Brenner Decl., Exh. 1.

8- FAMILYCARE'S OPPOSITION TO OHA'S MOTION TO COMPEL PRODUCTION OF DATABASE

140798160.12

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Review, OHA misconstrues both its findings and their implications.  For instance, OHA cites certain "data discrepancies" in FamilyCare's claims database that are identified in the Review. However, upon closer scrutiny, these "discrepancies" relate to member demographic information "such as language spoken and race and ethnicity"—data that is not used by OHA in the rate-development process.[5]  Levin Decl., Exh. 1 at 21.  To the contrary, the Review makes clear that FamilyCare receives its enrollment data *from* OHA—the source of enrollment data for all CCOs. *Id.*  ("PH Tech picks up the enrollment data on FamilyCare's behalf, from OHA.").

To summarize, the enrollment data discrepancies of which FamilyCare complains arise not from some difference between data that FamilyCare has versus data that OHA has, but from the apparent discrepancies between the two different sets of enrollment data that OHA itself maintained and used.  Contrary to OHA's implications, FamilyCare has never had its own, independent enrollment data; to the extent that FamilyCare kept such information in its database, it was provided by OHA in the first place.  Although FamilyCare did sometimes identify issues with the enrollment data provided to it, FamilyCare provided information on those discrepancies to OHA regularly in the ordinary course of business, *see, e.g.*, Murray Decl. ¶ 12, and again in the course of this litigation, *see*, *e.g.*, Brenner Decl. Exh. 1.  For these reasons, any enrollment data that FamilyCare might have in its own system is at best duplicative of what OHA already has in its own possession.

## C.    Requiring FamilyCare to produce its database would be duplicative and burdensome.

FamilyCare's claims database does not contain any additional information beyond that which is already available to OHA, and requiring FamilyCare to produce it would be duplicative and burdensome.  *See* Fed. R. Civ. P. 26(b)(2)(C) (requiring the court to limit cumulative or

---

[5] OHA's suggestion that the Review shows that FamilyCare's encounter data was the source of the errors alleged in FamilyCare's Complaint is similarly disingenuous.  The Review did not conclude that FamilyCare failed to ensure the accuracy of the encounter data in the claims database; rather, the Review encouraged FamilyCare to "*continue* to develop reports and trending analysis to *augment* [PH Tech's] data certification process." *See* Levin Decl., Exh. 1 at at 20 (emphases added).

9-    FAMILYCARE'S OPPOSITION TO OHA'S
140798160. MOTION TO COMPEL PRODUCTION OF
12    DATABASE

duplicative discovery which can be obtained from a less burdensome and less expensive source). The database contains approximately 13.8 million claims and includes information that is outside the scope of rate-setting issues.  Murray Decl. ¶¶ 7, 16.  Furthermore, because of the way this information is stored and maintained within the database, producing it would require FamilyCare to engage in a time-consuming process of modifying 42 existing table structures within that database.  Given that the relevant information OHA seeks is already within its custody, requiring FamilyCare to incur this expense and produce duplicative information would be unreasonable.

## CONCLUSION

In sum, requiring FamilyCare to produce its claims database would not give OHA any additional information relevant to the rate-setting process that is not already in its own custody and control.  Nor is OHA's purported need for FamilyCare's claims database any different now than it was at the time of OHA's original, unsuccessful motion in March 2018.  Therefore, this Court should deny OHA's renewed motion to compel the production of FamilyCare's claims database.

DATED:  August 14, 2018

**PERKINS COIE LLP**

By: *s/ Stephen F. English*
  Stephen F. English, OSB No. 730843
  SEnglish@perkinscoie.com
  Thomas R. Johnson, OSB No. 010645
  TRJohnson@perkinscoie.com
  Alletta Brenner, OSB No. 142844
  ABrenner@perkinscoie.com
  Brian Samuelson, OSB No. 165476
  BSamuelson@perkinscoie.com
  PERKINS COIE LLP
  1120 N.W. Couch Street, 10th Floor
  Portland, OR  97209-4128
  Telephone:  503.727.2000
  Facsimile:  503.727.2222

10- FAMILYCARE'S OPPOSITION TO OHA'S MOTION TO COMPEL PRODUCTION OF DATABASE

140798160. 12

Matthew Gordon, *pro hac vice*
MGordon@perkinscoie.com
Nicholas Hesterberg, *pro hac vice*
NHesterberg@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone:  206.359.8000
Facsimile:  206.359.9000

*Attorneys for Plaintiff FamilyCare, Inc.*

11-  FAMILYCARE'S OPPOSITION TO OHA'S
MOTION TO COMPEL PRODUCTION OF
DATABASE

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222