Stephen F. English, OSB No. 730843
SEnglish@perkinscoie.com
Thomas R. Johnson, OSB No. 010645
TRJohnson@perkinscoie.com
Alletta Brenner, OSB No. 142844
ABrenner@perkinscoie.com
Brian Samuelson, OSB No. 165476
BSamuelson@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Telephone:  503.727.2000
Facsimile:  503.727.2222

Matthew Gordon, *pro hac vice*
MGordon@perkinscoie.com
Nicholas Hesterberg, *pro hac vice*
NHesterberg@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone:  206.359.8000
Facsimile:  206.359.9000

*Attorneys for Plaintiff FamilyCare, Inc.*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| FAMILYCARE, INC., an Oregon non-profit corporation,<br><br>            Plaintiff,<br><br>    v.<br><br>OREGON HEALTH AUTHORITY, an agency of the State of Oregon, and PATRICK ALLEN, both individually and in his official capacity as director of the Oregon Health Authority, and LYNNE SAXTON<br><br>            Defendants. | No. 6:18−cv−00296−MO<br><br>FAMILYCARE, INC.'S MOTION TO COMPEL DOWN-DESIGNATION OF ATTORNEYS' EYES ONLY DOCUMENTS<br><br>ORAL ARGUMENT REQUESTED |

**LOCAL RULE 7-1 CERTIFICATION**

In compliance with Local Rule 7-1, counsel for FamilyCare, Inc. ("FamilyCare") has conferred in good faith with counsel for Oregon Health Authority ("OHA") and counsel for Health Share of Oregon, Inc. ("Health Share"), the non-party that requests that the documents at issue in this motion be designated as Attorneys' Eyes Only ("AEO"), but the conferring parties were unable to resolve the dispute.

**ORAL ARGUMENT REQUESTED**

Oral argument is requested. FamilyCare estimates that thirty minutes will be required.

**MOTION**

Pursuant to Federal Rules of Civil Procedure 26 and 37, FamilyCare moves for an Order requiring OHA to de-designate or down-designate the documents marked as AEO identified herein. This motion is supported by the points and authorities set forth below, the Declaration of William Murray ("Murray Decl."), and the Declaration of Alletta Brenner ("Brenner Decl.").

**POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

The capitation rate-setting process at the center of this litigation is driven by data furnished to OHA and its actuaries by Oregon's Coordinated Care Organizations ("CCOs"). FamilyCare's claims are particularly dependent on the ability to evaluate OHA's respective treatment of FamilyCare, on the one hand, and Health Share, the CCO that operates in the same geographic area, serves roughly the same population, and whose data is reflected in many of the key documents that OHA's actuaries used and created in the process of setting rates for FamilyCare. However, Health Share has insisted on designating much of the data it furnished to OHA as AEO, thereby preventing FamilyCare's counsel from discussing these documents with FamilyCare, and in particular, with its COO, William Murray—the individual with both extensive knowledge about Oregon's rate-setting process in general, and crucial first-hand knowledge about the context in which these documents were prepared. As explained below,

1-    FAMILYCARE'S MOTION TO COMPEL DOWN-
      DESIGNATION OF AEO DOCUMENTS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

140045734.8

Health Share cannot meet its burden of establishing good cause for AEO treatment of these documents, and even if Health Share could establish a risk of competitive harm, that risk would be outweighed by the prejudice their designations are causing FamilyCare. As such, this Court should order the down-designation of these documents.

## II.     BACKGROUND

Much of the CCO data utilized by OHA is highly aggregated, showing a CCO's total expenditures and utilization for eighteen categories of medical services (*e.g.*, prescription drugs, medical services, inpatient hospital stays by one of two hospital types) and twelve categories under which an individual qualifies for Medicaid (*e.g.*, persons who are blind and disabled, or persons who receive Temporary Assistance for Needy Families ("TANF")).[1] Murray Decl. ¶ 8. In fact, the total annual expenditures across the twelve categories of aid and eighteen categories of service in the Tri-County region—where FamilyCare and Health Share operated—exceed $1 billion. Murray Decl. ¶ 8. Although this highly-aggregated data does not reveal details about a CCO's payments to individual providers or other information of arguable competitive value, OHA and certain CCOs have insisted on designating all such data as "Attorneys' Eyes Only," hampering FamilyCare's ability to develop its case.

As this Court is aware from the briefing, argument, and follow-up status conferences related to FamilyCare's Omnibus Discovery Motions, *see* Dkt. 30, the overuse of AEO designations has been widespread and has necessitated the development of a process for the re-review of thousands of documents marked as AEO or Confidential. Although FamilyCare has concerns about the pace and the results of this ongoing review process, *see, e.g.*, Dkt. 104, this motion addresses a narrower issue: the improper AEO designations of a handful of documents that OHA, at the direction of Health Share, refuses to de-designate or down-designate.

---

[1] These categories are referred to as "Categories of Service" and "Categories of Aid," respectively.

2-   FAMILYCARE'S MOTION TO COMPEL DOWN-
      DESIGNATION OF AEO DOCUMENTS

140045734.8

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Following the April 26, 2018 telephone status conference regarding AEO designation, FamilyCare contacted Health Share to confirm Health Share's position on the designation of specific documents marked as AEO. *See* Brenner Decl. Ex. 1 at 3-4 (April 26-May 4, 2018 emails). All portions of the documents that FamilyCare seeks to de-designate through this Motion contain only aggregated data pertaining to the Category of Aid and Category of Service levels. The documents—and Health Share's stated position as to each—are as follows:

- Unmasked Tri-County Regional Rate Model (Brenner Decl. Ex. 2). This document is prepared by OHA in connection with rate setting for FamilyCare and Health Share, and combines cost and utilization data for both CCOs, aggregated to the levels of Category of Aid and Category of Service. Murray Decl. ¶ 6. Health Share has insisted on AEO treatment of the document in its entirety but has provided no further explanation of the basis for this designation. Brenner Decl. ¶ 3; Ex. 1.

- Exhibit L Submission for Health Share (Brenner Decl. Ex. 3). Exhibit L Submissions contain information regarding a CCO's reported revenues and expenses and are submitted to OHA on a quarterly basis. Murray Decl. ¶ 7. This particular document is the fourth quarter (or yearend) Exhibit L, which includes additional annual templates used by OHA for rate setting, some of which are made available to the public by OHA. *Id*. Health Share has acknowledged that, despite the global AEO designation initially applied, most of the reports in the document warrant lesser (or no) confidentiality designation. *See* Brenner Decl. Ex. 1 (May 4, 2018 email confirming Health Share's agreement to "down-designate a number of reports"). However, Health Share has continued to insist, again without explanation, that the remaining reports—many of

3-  FAMILYCARE'S MOTION TO COMPEL DOWN-
    DESIGNATION OF AEO DOCUMENTS

140045734.8

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

which contain data critical to the rate-setting process—remain AEO.[2] *See id.* Ex. 5 (June 4, 2018 email confirming Health Share's position "remains the same").

- Triangulation Analysis (Brenner Decl. Ex. 4). This spreadsheet is a document created by OHA's outside actuary, Optumas, as part of an effort to validate financial data used in rate-setting to a CCO's reported enrollment, revenues, and expenses for each Category of Aid and Category of Service. Murray Decl. ¶ 9. This spreadsheet includes only high-level data and does not contain any provider-specific information. *Id.* Health Share has never offered an explanation as to why this information constitutes a trade secret or why disclosure here would risk any specific harm. Brenner Decl. ¶ 5; Ex. 1.[3] The parties are thus at an impasse as to the proper designation of these documents.

## III.   ARGUMENT

### A.   Health Share Bears the Burden of Establishing that Down-Designation of Each Individual Document Would Cause Specific Prejudice or Harm

"As a general rule, the public is permitted 'access to litigation documents and information produced during discovery.'" *In re Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d 417, 424 (9th Cir. 2011) (quoting *Phillips v. Gen. Motors Corp.*, 307 F.3d 1206, 1210 (9th Cir. 2002)). Federal Rule of Civil Procedure 26(c) presents a limited exception to this rule, allowing courts, for good cause, to enter protective orders "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed in only a specified way." Fed. R. Civ. P. 26(c)(1)(G). Consistent with this limited exception, the

---

[2] One schedule contained within Exhibit L (Report L16) contains some provider-specific information. Without conceding that such information merits AEO treatment, FamilyCare does not challenge Health Share's AEO designation of Report L16.

[3] Health Share has insisted on AEO treatment of a different "triangulation" analysis identified by FamilyCare (Bates numbered OPT00003040) on the basis that it was prepared by Health Share and reflects "proprietary costing decisions and payment types and payment amounts between Health Share and its plan partners." Brenner Decl. Ex. 1. Though FamilyCare disagrees that the document reveals commercially sensitive information, FamilyCare does not seek down-designation of triangulation analyses prepared by Health Share and containing information at the level of Health Share's subcapitated partners at this time.

4- FAMILYCARE'S MOTION TO COMPEL DOWN-
DESIGNATION OF AEO DOCUMENTS

140045734.8

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

operative protective order in this case allows a party to designate as Confidential or AEO only those materials "that the producing party has a good faith basis for asserting is confidential under the applicable legal standards." Brenner Decl., ¶ 9, Ex. 8 at 3.

"If a party takes steps to release documents subject to a stipulated order, the party opposing disclosure has the burden of establishing that there is good cause to continue the protection of the discovery material." *In Re Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d at 424. "A party asserting good cause bears the burden, for each particular document it seeks to protect, of showing that specific prejudice or harm will result if no protective order is granted." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003) (citation omitted). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) (quotation omitted); *see also Deford v. Schmid Prods. Co.*, 120 F.R.D. 648, 653 (D. Md. 1987) (requiring party to provide "specific demonstrations of fact, supported where possible by affidavits and concrete examples, rather than broad, conclusory allegations of potential harm").

Even where a document contains commercially sensitive information warranting protection, a court may nevertheless order disclosure of the information—including to a competitor—if the information is necessary to the receiving party's prosecution of its claims. *See Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992). The party that "opposes disclosure of its confidential information . . . has the burden to show why the risk of disclosure outweighs the risk of harm to [the other party's] case." *Santella v. Grizzly Indus., Inc.*, No. 3:12-MC-00131-SI, 2012 WL 5399970, at *4 (D. Or. Nov. 5, 2012).

**B.    Health Share Cannot Meet Its Burden of Establishing Good Cause for the AEO Designations**

Health Share's AEO designations are improper because the data is too general to be of any competitive value. Nor could FamilyCare's review of the data give it an unfair competitive

5-    FAMILYCARE'S MOTION TO COMPEL DOWN-
DESIGNATION OF AEO DOCUMENTS

140045734.8

advantage because (1) Health Share possesses far more detailed data regarding FamilyCare's business, (2) Health Share's data is already stale, and (3) the information will become even more stale if and when FamilyCare reenters the Medicaid market.

### 1. The Data Is Too General to Be of Competitive Value

As explained above, each of the documents at issue contains highly aggregated data that reveals nothing about the specific services rendered by specific providers on behalf of specific Health Share members.  To the contrary, the data shows Health Share's total expenditures and utilization of medical services by category of service rendered and type of Oregon Health Plan members served—information that is much too general to be of any competitive value.  *See* Murray Dec. ¶ 8.  Indeed, courts have rejected claims that similar high-level, generalized data is commercially sensitive and subject to protection.  *See, e.g.*, *Biles v. Dep't of Health and Human Servs.*, 931 F. Supp. 2d 211, 229, n. 24 (D.D.C. 2013) (rejecting argument that disclosure could cause competitive harm where "high level of aggregation" meant that a competitor could not learn anything about disclosing party's internal contracting policies with hospitals or physicians or how their strategy for managing utilization of high costs procedures is designed).

Nor has Health Share articulated any specific basis for AEO treatment of the data in question, suggesting that it cannot make the requisite showing that "specific prejudice or harm will result" from down-designation.  *See Foltz*, 331 F.3d at 1130.  Notably, the documents do not contain any of the types of purportedly "commercially sensitive information" identified in Health Share's response to FamilyCare's Omnibus Discovery Motions.[4]  *See* Dkt. 59 at 16-17.  Health

---

[4] In its response brief, Health Share identified the following categories of "commercially sensitive information":  (1) Costs and rates Health Share had negotiated with providers [of health care services] including the amount that Health Share will pay providers for specific procedures; (2) Costs Health Share has negotiated and incurred to purchase medications for its members; (3) Claims and encounter data that reflect the costs Health Share has negotiated and paid for individual claims and office visits;  (4) Health Share's proprietary payment structures such as incentives payment structures and sub-capitation rates negotiated with providers; and (5) Information about Health Share's business strategy, such as its strategy for reducing costs or, at least, decreasing the rate of cost growth in the future.  *See* Dkt. 59 at 16-17.

6-   FAMILYCARE'S MOTION TO COMPEL DOWN-
     DESIGNATION OF AEO DOCUMENTS

140045734.8

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Share's response suggested that, because the Regional Rate Model comprises only Health Share and FamilyCare data, FamilyCare could "back out its own data from the aggregated data and arrive at Health Share's data." Dkt. 59 at 14-15. But this "backing out" would reveal only Health Share's payments at the Category of Aid or Category of Service levels. Because Health Share and its subcapitated partners contract with many different medical providers, who in turn provide many different types of services, the data does not reveal anything about Health Share's contractual arrangements with specific providers. *See* Murray Decl. ¶¶ 8, 10. As such, Heath Share cannot possibly establish that de-designation of the information would risk competitive harm.

### 2. The Information is Stale and FamilyCare Is Not Currently a Competitor of Health Share

Designation is inappropriate where the receiving party is not a competitor of the disclosing party, or where the information at issue is so old that it is not useful. *See Team Play, Inc. v. Boyer*, No. 03 C 7240, 2005 WL 256476, at *2 (N. D. Ill. Jan. 31, 2005) (holding that information alleged to be trade secret lacked competitive value because it was outdated and the party at issue was no longer a competitor of the disclosing party); *see also Biles*, 931 F. Supp. 2d at 225-226 (concluding that data claimed to be trade secret should be disclosed, in part because it was too old to be valuable to a competitor).

At present, FamilyCare does not compete with Health Share, but even it did, the data at issue is stale. Each of the documents at issue comprises historical data, and none contains data that is more recent than 2016. *See* Brenner Decl. Exs. 2, 3, 4. In other words, the data at issue here is at best over two years old and, in some cases, nearly five years old. In the fast-changing environment of the healthcare market, and of Oregon's Medicaid program in particular, pricing information of this age is of marginal value. *See* Murray Decl. ¶ 12*; see also Biles*, 931 F. Supp. 2d at 225-27 (concluding that highly similar cost and encounter data was stale). And it will be even more stale if and when FamilyCare reenters the Medicaid market in the future. Murray

7- FAMILYCARE'S MOTION TO COMPEL DOWN-
DESIGNATION OF AEO DOCUMENTS

140045734.8

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

Decl. ¶ 13. At that point, the market landscape, including the manner in which CCOs contract with providers, will be dramatically changed due to transformation that is already underway in how OHA requires CCOs to operate and pay for medical services. *Id.* ¶ 9. As such, Health Share should not be allowed to continue shielding this stale data from FamilyCare's view.

### 3. Health Share Already Possesses More Detailed Data About FamilyCare

Further weighing against any claim of competitive harm is the fact that Health Share already possesses much more detailed and granular information about FamilyCare. As such, disclosure of the requested information would not create an information asymmetry that FamilyCare could exploit to gain an unfair competitive advantage. *See Biles,* 931 F. Supp. 2d at 224 (observing that the "'harm' aspect of 'competitive harm' is an unfair commercial disadvantage by way of exposure" and finding no competitive harm where disclosure would be symmetrical across entities).

Health Share has received detailed FamilyCare data in a variety of ways. First, in February 2017, OHA sent an email to CCOs, including Health Share, attaching reports containing the same type of cost data for FamilyCare, which was used to generate FamilyCare's capitation rates. *See* Brenner Decl. Ex. 6 (OHA email to CCOs attaching FamilyCare data).

Second, in connection with the transition of FamilyCare members to Health Share in early 2018, OHA provided Health Share (and other CCOs who absorbed FamilyCare members) detailed information about FamilyCare business, including its "provider network lists, basic member information, associated provider information, encounter and claims data, prior authorizations, and case management notes." *See* Brenner Decl. Ex. 7 at 8 (OHA's Transition Plan for FamilyCare Closure, identifying FamilyCare data provided to CCOs). The encounter and claims data provided to Health Share, which contains information about each time a specific provider serves a specific patient, is the most granular information that exists about payments to individual providers on behalf of individual FamilyCare members. *See* Murray Decl. ¶ 11. It is

8- FAMILYCARE'S MOTION TO COMPEL DOWN-
DESIGNATION OF AEO DOCUMENTS

140045734.8

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

thus far more detailed than any of the aggregated information contained in the purported AEO documents here.

Moreover, in the wake of FamilyCare's forced closure, Health Share hired at least four, and Care Oregon (a closely related, subcapitated entity that serves most of Health Share's members) hired at least thirty-six, former FamilyCare employees who took with them knowledge and insights gained about FamilyCare's operations and relationships with providers. *See* Murray Decl. ¶ 14. In these circumstances, the notion that FamilyCare could somehow gain an unfair competitive advantage over Health Share by having access to the very general data in question is implausible.

In sum, Health Share already has access to the same information for FamilyCare that Health Share resists disclosing itself. To the extent any of this information could create a competitive advantage, it is Health Share that already currently possesses such an advantage through its custody of such information about FamilyCare. Providing FamilyCare the aggregated data it requests would not result in any unfair competitive advantage to FamilyCare, but, rather, would partially correct the information asymmetry that now exists.

**C.      The AEO Designation of the Information Contained in the Identified Documents Impairs FamilyCare's Ability to Litigate this Case**

Even if Health Share could establish some risk of competitive harm from disclosure of this information to FamilyCare (it cannot), disclosure would nonetheless be warranted because these AEO designations hinder FamilyCare's ability to litigate its claims in this case. *See Santella*, 2012 WL 5399970, at *4 (party that "opposes disclosure of its confidential information . . . has the burden to show why the risk of disclosure outweighs the risk of harm to [the other party's] case").

As explained above, the data at issue is material to FamilyCare's ability to evaluate whether OHA treated it unfairly and how its operating expenses, and reported costs and utilization compared to those of the most similarly-situated CCO, Health Share. The process of

9- FAMILYCARE'S MOTION TO COMPEL DOWN-
DESIGNATION OF AEO DOCUMENTS

140045734.8

setting Medicaid capitation rates is highly technical, but beyond that, it is a process that depends heavily on the involvement of the CCOs that report the data. As such, it is not enough for FamilyCare's experts and attorneys alone to have access to the raw, aggregated data underlying the rates; FamilyCare's counsel need to be able to discuss these documents with FamilyCare, including its COO, William Murray. Mr. Murray has a deep understanding of the issues at play here, including the contours of the data anomalies alleged by FamilyCare, and his active participation is vital to FamilyCare's ability to prosecute its case. Murray Decl. ¶ 5. Other courts have recognized this as a basis to downgrade AEO designations. *See, e.g., Team Play, Inc.*, 2005 WL 256476, at *1–2 (granting motion to remove "Highly Confidential Attorneys' Eyes Only" designation from documents because counsel was severely hindered in discussing case with its client).

Here, the overuse of AEO designations precludes Mr. Murray and FamilyCare from meaningfully participating in key aspects of the case, including consulting with FamilyCare's litigation experts and reviewing deposition transcripts in which the data is discussed in preparation for trial. *See Arvco Container Corp. v. Weyerhaeuser Co.*, No. 1:08-CV-548, 2009 WL 311125, at *6 (W.D. Mich. Feb. 9, 2009) ("[T]he indiscriminate use of 'attorney's eyes only' protective orders does pose a significant handicap on the restricted litigant. Discovery, trial preparation, and trial are made more difficult and expensive if an attorney cannot make complete disclosure of the facts to the litigant."). The prejudice to FamilyCare is undeniable, particularly in view of the fact that OHA has unfettered access to all of the data in question. Thus, while OHA is able to prepare its case with a full view of the AEO data, FamilyCare's counsel and experts are unable to discuss the same data with the employees most knowledgeable about the issues at hand.

## CONCLUSION

For the foregoing reasons, FamilyCare respectfully requests that this Court grant its motion to compel.

10- FAMILYCARE'S MOTION TO COMPEL DOWN-
    DESIGNATION OF AEO DOCUMENTS

140045734.8

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

DATED:  August 17, 2018                    **PERKINS COIE LLP**


By: *s/ Stephen F. English*
    Stephen F. English, OSB No. 730843
    SEnglish@perkinscoie.com
    Thomas R. Johnson, OSB No. 010645
    TRJohnson@perkinscoie.com
    Alletta Brenner, OSB No. 142844
    ABrenner@perkinscoie.com
    Brian Samuelson, OSB No. 165476
    BSamuelson@perkinscoie.com
    PERKINS COIE LLP
    1120 N.W. Couch Street, 10th Floor
    Portland, OR  97209-4128
    Telephone:  503.727.2000
    Facsimile:  503.727.2222

    Matthew Gordon, *pro hac vice*
    MGordon@perkinscoie.com
    Nicholas Hesterberg, *pro hac vice*
    NHesterberg@perkinscoie.com
    PERKINS COIE LLP
    1201 Third Avenue, Suite 4900
    Seattle, WA 98101-3099
    Telephone:  206.359.8000
    Facsimile:  206.359.9000

    *Attorneys for Plaintiff FamilyCare, Inc.*

11- FAMILYCARE'S MOTION TO COMPEL DOWN-
    DESIGNATION OF AEO DOCUMENTS

140045734.8