Stephen F. English, OSB No. 730843
SEnglish@perkinscoie.com
Thomas R. Johnson, OSB No. 010645
TRJohnson@perkinscoie.com
Alletta Brenner, OSB No. 142844
ABrenner@perkinscoie.com
Brian Samuelson, OSB No. 165476
BSamuelson@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Telephone:  503.727.2000
Facsimile:  503.727.2222

Matthew Gordon, *pro hac vice*
MGordon@perkinscoie.com
Nicholas Hesterberg, *pro hac vice*
NHesterberg@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone:  206.359.8000
Facsimile:  206.359.9000

*Attorneys for Plaintiff FamilyCare, Inc.*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| FAMILYCARE, INC., an Oregon non-profit corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>OREGON HEALTH AUTHORITY, an agency of the State of Oregon, PATRICK ALLEN, both individually and in his official capacity as director of the Oregon Health Authority, and LYNNE SAXTON,<br><br>    Defendants. | No. 3:18-cv-00296-MO<br><br>DECLARATION OF WILLIAM MURRAY IN SUPPORT OF FAMILYCARE, INC.'S MOTION TO COMPEL DOWN-DESIGNATION OF ATTORNEYS' EYES ONLY DOCUMENTS |

1-  MURRAY DECLARATION IN SUPPORT OF
    FAMILYCARE'S MOTION TO COMPEL DOWN-
    DESIGNATION

123045-0001/140138305

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

I, William Murray, state as follows:

1.      I am the Chief Operating Officer of FamilyCare, Inc., ("FamilyCare"), parent company to FamilyCare Health Plans, Inc. and party to the above-captioned cases.  I have personal knowledge of the matters stated herein and am competent to testify thereto.

2.      In my role as FamilyCare's Chief Operating Officer, I am responsible for leading the day-to-day operations of the organization, overseeing reporting and monitoring of the organizational performance, and staying abreast of changes in the healthcare industry and adjusting business operations as required.  I am also directly involved in preparing and submitting the specific kinds of data and information that FamilyCare was, as a Coordinated Care Organization (CCO), required to submit to OHA as part of the rate-setting process, and in communicating with OHA about those submissions and the rate-setting process in general.

3.      Prior to joining FamilyCare in 2013, I was Chief Executive Officer with another Oregon Medicaid managed care organization for 10 years.  I have also been active in Oregon's administrative and legislative process in the healthcare field, including serving on the Oregon Health Policy Board's Health Incentives and Outcomes Committee that helped develop Oregon's CCO model that is in effect today.  I have over 30 years of leadership, business management, information systems, finance and regulatory experience.  I began my career as a certified public accountant (CPA) with an international accounting firm and subsequently ran my own healthcare-focused CPA practice for seven years.

4.      Based on this experience, I am familiar with the types of information that CCOs, including Health Share of Oregon, Inc. (Health Share) submit to the Oregon Health Authority (OHA) as part of the rate-setting process, and the extent to which that information would be of competitive value to another CCO participating in Oregon's Medicaid Program.

5.      To evaluate and litigate its claims in this case, many of which relate to the sufficiency of the rates that OHA has set for FamilyCare in recent years, it is necessary for

2-  MURRAY DECLARATION IN SUPPORT OF FAMILYCARE'S MOTION TO COMPEL DOWN-DESIGNATION

123045-0001/140138305

FamilyCare to obtain and analyze a wide range of documents and information related to the rate-setting process.

6.     The unmasked tri-county regional rate model is a document that is prepared by OHA in connection with rate setting for FamilyCare and OHA.  Based on my familiarity with the masked version of this document, I know that the tri-county regional rate model combines cost and utilization data for both CCOs, aggregated to the levels of Category of Aid and Category of Service.

7.     CCOs submit "Exhibit L" templates to OHA on a quarterly basis.  The fourth quarter (or yearend) Exhibit L includes additional annual templates used by OHA for rate setting. Included in Exhibit L templates are a number of reports detailing, among other things, each CCO's financial information (*e.g.*, reported revenues and expenses).  OHA makes some of the Exhibit L templates, or information contained therein, available to the public.

8.     Based on my background and experience in the industry, and my understanding of the types of information contained in the types of documents at issue in this motion, I know that the vast majority of the information, while important to rate setting, is of minimal competitive value.  This includes aggregated information regarding total expenditures and utilization of medical services by Category of Aid (the category under which an individual qualifies for Medicaid, such as persons who are blind and disabled, or persons who receive Temporary Assistance for Needy Families (TANF)) or Category of Service (the type of medical services received, such as prescription drugs, prescription services, inpatient hospital by one of two hospital types).  I know that the total annual expenditures across the 12 categories of aid and 18 categories of service in the Tri-County region—where FamilyCare and Health Share operated— exceeded $1 billion.  Even assuming, for the sake of argument, that pricing information at the individual provider level has value, aggregated information about what Health Share spends by Category of Service and Category of Aid neither reveals such pricing information, nor permits

3-   MURRAY DECLARATION IN SUPPORT OF
     FAMILYCARE'S MOTION TO COMPEL DOWN-
     DESIGNATION

123045-0001/140138305

one to reverse engineer it.  Similarly, because each CCO has its own unique mix of members, information on the utilization of medical services at the regional level is of limited use.

9.    Based on my experience with Triangulation Analysis documents that OHA has provided to FamilyCare as part of the rate-setting process, these are documents that OHA's actuaries prepare to validate financial data used in rate setting to a CCO's reported enrollment, revenues and expenses for each Category of Aid and Category of Service.  Although this type of document does contain information about the number of enrollees and the amount of money received and spent by a CCO, it is aggregated at a relatively high level that is similar to what can be found in, or derived from, a CCO's publicly available financial statements (*see, e.g.*, Health Share's 2016 L5 Quarterly Balance Sheet of Corporate Activity, available online at this address: https://www.oregon.gov/oha/FOD/CCOFinancial/Health%20Share%20-%202016%20Internal%20Financial%20Statement.pdf).

10.    I understand that, with respect to a Triangulation Analysis not at issue in this motion (Bates number OPT00003040), Health Share has claimed that the information contained therein is properly designated Attorneys' Eyes Only because it reflects Health Share's "proprietary costing decisions and payment types and payment amounts between Health Share and its plan partners."  It is my understanding that this particular document was created by Health Share or its actuary rather than OHA, and contains aggregated information for each of the sub-capitated entities (*i.e.*, "plan partners") that make up its business.  Such revenue and expense data is not proprietary.  Rather, similar high-level financial information has been publicly reported in other contexts.  For example, Care Oregon, one of the largest of the related-party subcapitated entities that Health Share contracts with, includes substantially similar revenue and expense figures in its own audited financial statements, which are published online at this address: https://www.oregon.gov/oha/FOD/Pages/CCO-Financial.aspx. Similarly, the contract between Care Oregon and Health Share, which includes the schedule of payments made by

4-    MURRAY DECLARATION IN SUPPORT OF
FAMILYCARE'S MOTION TO COMPEL DOWN-
DESIGNATION

123045-0001/140138305

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Health Share to Care Oregon under that agreement, has been produced in this litigation without any confidentiality designation.  Lastly, even if such information were proprietary, and FamilyCare were still operating in Oregon's Medicaid marketplace, it would be of no competitive value to FamilyCare because FamilyCare, unlike Health Share, does not contract with related-party subcapitated entities.

11.    In contrast to the general, aggregated information that is contained in the types of documents at issue in this motion, Health Share possesses highly detailed data regarding FamilyCare.  For example, I understand that OHA has provided Health Share with FamilyCare's provider network lists, basic member information, associated provider information, encounter and claims data, prior authorizations, and case management notes.   The encounter and claims data, in particular, contains information about each time a specific provider serves a specific patient, and thus is the most granular information that exists about treatments and payments to individual providers on behalf of individual FamilyCare members.

12.    The healthcare market generally, and the Oregon Medicaid program in particular, is fast-changing.  As such, historical data about prices and costs—particularly when such data is aggregated to a high-level—is of minimal competitive value.  Given the rapidly evolving nature of the market, even information that is a few years old is dated.  This is particularly true due to the policy shift currently underway in the Oregon Medicaid market.  This shift, known as "CCO 2.0," is expected to, among other things, transform the way that OHA requires CCOs to operate and to pay for medical services.  As a result of this transformation, data for past years will be even less commercially sensitive than it currently is.

13.    Because FamilyCare's Medicaid business closed in January 2018, FamilyCare does not currently compete with Health Share.  The earliest that FamilyCare would be able to recommence operating as a CCO would be in 2020.  By that time, any CCO-specific data received in this litigation would be stale and not useful for any competitive purpose.

5-    MURRAY DECLARATION IN SUPPORT OF FAMILYCARE'S MOTION TO COMPEL DOWN-DESIGNATION

123045-0001/140138305

14.     I understand that, since FamilyCare's Medicaid business closed in January 2018, at least four former FamilyCare employees have been hired by Health Share, and at least thirty-six former FamilyCare employees have been hired by Care Oregon (a closely related, subcapitated entity that serves most of Health Share's members).  Many of these former employees possess knowledge and insights about FamilyCare's operations and relationships with FamilyCare's providers.

*I hereby declare that the above statement is true to the best of my knowledge and belief, and that I understand it is made for use as evidence in court and is subject to penalty for perjury.*

DATED: August 17, 2018

_____
William Murray

6-    MURRAY DECLARATION IN SUPPORT OF
      FAMILYCARE'S MOTION TO COMPEL DOWN-
      DESIGNATION

123045-0001/140138305

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222