Lynne Saxton, 8/1/2018                     FamilyCare, Inc. v. Oregon Health Authority, et al.

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION

FAMILYCARE, INC., an Oregon )
non-profit corporation,     )
                            )
         Plaintiff,         )
                            )  No.
         vs.                )  6:18-cv-00296-MO
                            )
OREGON HEALTH AUTHORITY, an )
agency of the State of      )
Oregon, and PATRICK ALLEN,  )
both individually and in    )
his official capacity as    )
director of the Oregon      )
Health Authority, and LYNNE )
SAXTON,                     )
                            )
         Defendants.        )

VIDEOTAPED DEPOSITION OF
LYNNE SAXTON
Taken in behalf of Plaintiff
* * *
August 1, 2018
1211 S.W. Fifth Avenue, Suite 3000
Portland, Oregon 97204

Teresa L. Dunn,
Court Reporter
CSR, CCR, RPR

---

Page 3

INDEX

Examination by:                           Page
MR. ENGLISH                                  5
MR. MERSEREAU                              208

EXHIBITS

Exhibit    Description                     Page
208        Oregon Health Authority's        66
           Response to FamilyCare,
           Inc.'s, Second Set of
           Requests for Admission
209        Text Messages                    82
210        2016 SMS Messages                83
211        Joint Operations Steering        87
           Committee Operational
           Policy
212        E-Mail dated 4-4-15              90
213        E-Mail chain dated 3-26-15       96
214        OHA/Optumas Contract            110
213A       E-Mail chain dated 3-26-15      128
215        Lund Report                     144
216        Audit Alert:  OHA Spends        147
           Millions Providing Benefits
           for Ineligible Recipients,
           May 17, 2017
217        Letter dated 8-7-17             151
218        E-Mail dated 1-6-17             158
219        E-Mail dated 8-8-17             191
220        Newsroom Detail dated          204
           8-8-17

---

Page 2

APPEARANCES:
For the Plaintiff:
MR. STEPHEN F. ENGLISH
MR. BRIAN SAMUELSON
Perkins Coie, LLP
Tenth Floor
1120 N.W. Couch Street
Portland, OR 97209
503-727-2076
senglish@perkinscoie.com
bsamuelson@perkinscoie.com

For the Defendant, Oregon Health Authority:

MS. LAURA SALERNO OWENS
MS. ANNA JOYCE
Special Assistant Attorneys General
Markowitz Herbold Glade & Mehlhaf, P.C.
Suite 3000
1211 S.W. Fifth Avenue
Portland, OR 97204
503-295-3085
laurasalerno@markowitzherbold.com
annajoyce@markowitzherbold.com

For the Defendant, Lynne Saxton:

MR. PETER R. MERSEREAU
Mersereau and Shannon, LLP
Suite 1100
One S.W. Columbia
Portland, OR 97258
503-226-6400
pmersereau@mershanlaw.com

Also Present:
Joe Walsh, Videographer

---

Page 4

PORTLAND, OREGON; WEDNESDAY, AUGUST 1, 2018
9:00 a.m.
* * *
THE VIDEOGRAPHER:  Okay.  Good morning. We are going on record.  It is 9:04 on August 1st, 2018.  We begin with media number one of the deposition of Lynne Saxton in the matter of FamilyCare, Inc., versus Oregon Health Authority, in the case in the U.S. District Court in Portland, Oregon.  The case number is 6:18-C7 -- I'm sorry -- CV-00296-MO.

We're at the offices of Markowitz Herbold at 1211 Southwest 5th, Portland, Oregon. I'm the videographer.  My name is Joe Walsh, and the court reporter is Teresa Dunn, appearing on behalf of Schmitt Reporting & Video located at 400 Columbia Street, Suite 140, in Vancouver, Washington.

Will counsel please identify yourselves and state who you are representing with the plaintiff's counsel.

MR. ENGLISH:  Stephen English on behalf of FamilyCare.

MR. SAMUELSON:  Brian Samuelson on behalf of FamilyCare.

---

Schmitt Reporting & Video, Inc.
(360) 695-5554 -- (503) 245-4552 -- (855) 695-5554

Exhibit C
Page 1 of 3

Lynne Saxton, 8/1/2018                          FamilyCare, Inc. v. Oregon Health Authority, et al.

Page 61

you got the first call from Governor Kitzhaber asking for names until you took over in late January 2015?

**A. I believe the first call was in the late fall, November-ish, and then the end of January I started.**

Q. And did you accept the position -- well, strike that.

How long between when you accepted the position and the end of January?

**A. Well, it would be January, December, and November. Probably two months.**

Q. Just so I'm clear because I -- strike that.

You accepted the position sometime in the late fall and actually took over in late January?

**A. Yes. And I don't know the date that I resigned from Youth Villages, but I believe it was in December. I gave them notice and resigned in December.**

Q. Okay.

**A. I don't have those dates on top of mind.**

Q. Those are probably a matter of public record. We can figure that out.

Page 62

I would like to talk about an issue that has come up in the discovery of the case and that has to do with text messages from your phone.

It appears as though there have been deletions on the text messages from your phone following the filing of the lawsuit.

Do you have any understanding of that?

MS. SALERNO OWENS: Objection, vague as to what you mean by the lawsuit. There have been numerous lawsuits.

MR. ENGLISH: That's a fair question, excuse me, fair objection.

Q. (By Mr. English) We are currently in a federal court lawsuit and you are actually a named defendant.

Do you understand that?

**A. I do.**

Q. And before that there was a previous case that was filed in Marion County by FamilyCare against OHA.

Are you generally familiar with that?

**A. Yes.**

Q. And are you generally familiar that that lawsuit in Marion County was removed to federal

Page 63

court?

**A. Yes.**

Q. All right. So when I talk about the lawsuit, I want you to go back to the initial lawsuit filed in Marion County which has ultimately been removed to the federal court lawsuit that we're dealing with right now.

Okay?

**A. Yes.**

MS. SALERNO OWENS: For the record is that the lawsuit filed on February 27th, 2017?

MR. ENGLISH: Yes, yes.

MS. SALERNO OWENS: Thank you.

Q. (By Mr. English) So have you deleted texts during that period of time starting from February 27th, 2017?

**A. So can you tell me what you mean by deleting texts?**

Q. Yes. Do you understand what a phone text is?

**A. Yes.**

Q. Okay. What do you understand by the term deleting a phone text?

**A. In my understanding -- so I have not deleted texts. I have removed texts from my**

Page 64

**screen as my general practice of business. And in my mind they are all recoverable. And that's my understanding just like e-mails are recoverable.**

**So I don't -- not knowing your definition of deletion I'm not sure what your question is.**

Q. Well, let me tell you my layman's understanding of what's happened and then you can help clarify for me.

My understanding is that certain texts were sent to you by individuals and then received from you by individuals and neither the text you sent nor the text the individual received are at this point able to be recovered.

So not just what you sent or what you received, but the individuals who sent them to you or received them from you, texts are missing.

So do you have any idea how that happened?

**A. I do not.**

Q. Did you have any discussions with anyone about removing texts that you sent to individuals?

Schmitt Reporting & Video, Inc.
(360) 695-5554 -- (503) 245-4552 -- (855) 695-5554

Exhibit C
Page 2 of 3

Lynne Saxton, 8/1/2018                    FamilyCare, Inc. v. Oregon Health Authority, et al.

Page 65

MS. SALERNO OWENS:  And I'm going to caution you not to reveal any discussions with your attorneys on this topic.

Q.  (By Mr. English) Other than attorneys.

A.  **Can you restate the question?**

Q.  Sure.  Did you have any discussions with anyone other than your lawyers about removing texts that you sent to individuals?

A.  **No.**

Q.  And did any individual -- so you have no understanding of how those texts have either been removed or deleted from your phone?

A.  **I have no understanding.**

Q.  And you didn't do it yourself?

A.  **In my mind I removed texts from my screen and they were recoverable.  I have no knowledge of deleted texts.**

Q.  Did you remove texts from your screen after the lawsuit was filed?

A.  **My practice of removing texts from my screen has been consistent throughout my tenure.**

Q.  My question was did you remove texts from your screen after the lawsuit was filed?

A.  **I think I answered the question.**

Q.  I don't think you have.

Page 66

A.  **I removed texts from my screen on a daily basis as a matter of standard business practice throughout my tenure which would be from the last week in January 2015 to August 31st, 2017.**

Q.  I don't understand what you mean when you say removed from your screen.  Tell me what that involves.  Walk me through it.

A.  **The -- in the course of the day you would have some texts perhaps on your screen and you would edit them and remove them from the screen with my understanding that they were recoverable as e-mails are recoverable.**

Q.  We actually filed what's called a request for admission about texts from your phone and the answer we got was that certain texts had been deleted.

Is that incorrect?

A.  **I can't -- I don't know what you are referring to.**

Q.  Well, hold on.  Let's mark this as an exhibit.

(Deposition Exhibit Number 208 marked for identification.)

Q.  (By Mr. English) So, Ms. Saxton,

Page 67

Exhibit 208 is a document which was filed by the Oregon Health Authority on June 29th, 2018.

And I'm going to direct your attention to request for admission number 22.  And I would like you to take a minute to look at the request for admission which states, quote, Admit that Lynne Saxton deleted text messages from her OHA-issued electronic devices.

And then the response starts with objections and then says, Subject to the foregoing objections and the general objections, OHA admits that Ms. Saxton deleted some text messages from the cellular phones issued to her by OHA.  And OHA denies the remainder of the request.

Now, did somebody from OHA's legal team speak with you, and I don't want you to tell me the content of what they said, but did they speak with you before that request for admission was filed?

MR. MERSEREAU:  Well, I'm going to object.  That's privileged.  I think that the fact of a conversation with a lawyer is itself privileged and I will instruct her not to answer that question.

Page 68

Don't mark on the originals.

THE WITNESS:  I can't do that?  Okay.  I won't.

Q.  (By Mr. English) You marked -- I will hand you remarked Exhibit 208 and it looks as though in the copy you had, which was the originally marked exhibit, you have an arrow and you started to write Not a -- what is that referring to?

A.  **I was noting what Mr. Mersereau was saying.**

Q.  Which is what?

A.  **That I will advise my client not to answer that question.  So that's to say not to answer.**

Q.  All right.  Let me start with did you have a cellular phone or phones issued to you by OHA while you were the executive director of OHA?

A.  **Yes.**

Q.  One or more than one?

A.  **At one time I had one OHA phone.**

Q.  At any given time you had one?

A.  **Yes.**

Q.  Now, did you delete text messages from

Schmitt Reporting & Video, Inc.
(360) 695-5554 -- (503) 245-4552 -- (855) 695-5554

Exhibit C
Page 3 of 3