## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is entered into and effective as of May 22, 2016 (the "Effective Date") between FamilyCare Inc. ("FamilyCare") and the State of Oregon by and through its Oregon Health Authority ("OHA") (each a "Party" and collectively the "Parties").

WHEREAS, pursuant to approval from the federal Centers for Medicare & Medicaid Services ("CMS"), OHA established the Oregon Health Plan ("OHP"), which since July 1, 2012 has made capitation payments to Coordinated Care Organizations ("CCOs") to provide coordinated and integrated managed care designed to achieve a sustainable growth rate for Medicaid spending; and

WHEREAS, OHA and FamilyCare are parties to Coordinated Care Organization Contract #143114, as amended and restated (the "Contract"); and

WHEREAS, CMS must approve CCO rates and informed OHA on August 7, 2014 that it had "identified issues that are endemic to the state's rate setting methodology" for CCOs and required the OHA to submit a corrective plan that would result in improvements in its rate-setting methodology in 2015; and

WHEREAS, OHA consequently did not present CCOs with their original 2015 capitation rates until December 24, 2014, and required signature by January 1, 2015; and

WHEREAS, the new rates represented a 9.7% decrease in FamilyCare's rates as compared to 2014 and FamilyCare immediately notified OHA of its concern that the rates were incorrect; and

WHEREAS, FamilyCare signed the 2015 rate amendment ("Amendment No. 5") to the Contract stating it was doing so under duress; and

WHEREAS, a number of other CCOs and CMS also raised concerns and questions regarding both the process for developing the original 2015 capitation rates and the actuarially soundness of those rates; and

WHEREAS, in March 2015, FamilyCare provided OHA with contractual notice that FamilyCare believed its 2015 rates did not comply with actuarial soundness and needed to be amended to conform to federal law; and

WHEREAS, in April 2015, FamilyCare provided OHA with a notice of breach; and

WHEREAS, in April 2015, OHA engaged Optumas, an outside actuarial firm, to reexamine and redevelop the original 2015 capitation rates, and to develop the 2016 capitation rates; and



EXHIBIT NO. 45
4·19·18
Schmitt Reporting

1

Exhibit 1 to Notice of Removal
Page 297 of 816

Exhibit 2
Page 1 of 13

Exhibit 3
Page 1 of 14

WHEREAS, on May 27, 2015, FamilyCare sued OHA in the Circuit Court of the State of Oregon, for the County of Marion, Case No. 15CV13782, alleging that the original 2015 capitation rates were not actuarially sound; and

WHEREAS, Optumas redeveloped the 2015 capitation payments, which OHA then incorporated in a contract amendment (for FamilyCare, "Amendment No. 6") presented to the CCOs in August 2015; and

WHEREAS, Amendment No. 6 would further reduce FamilyCare's original 2015 rates by approximately $54 million and result in an additional 10.9% reduction in FamilyCare's rate, compared to the original 2015 rates, for a resulting total reduction of 19.6% for 2015 when compared to FamilyCare's 2014 rates; and

WHEREAS, FamilyCare declined to sign Amendment No. 6; and

WHEREAS, on December 28, 2015, CMS approved the redeveloped 2015 rates, with an effective date of January 1, 2015, as "actuarially sound and meet[ing] the requirements at 42 CFR 438.6(c) for all Coordinated Care Organizations (CCO) included in the certification;" and

WHEREAS, by letter dated February 24, 2016, CMS informed OHA that it was "unable to move forward with approval of [FamilyCare's] contract for federal financial participation" because, in the absence of a signed Amendment No. 6, the Contract (Amendment No. 5 only) still included rates "that are not consistent with the rate ranges in the certification dated August 28, 2016 which CMS determined to be actuarially sound"; and

WHEREAS, FamilyCare did sign an amendment ("Amendment No. 7") that included the capitation rates that Optumas had developed under OHA's direction for 2016, but CMS has informed OHA that it will not approve Amendment No. 7 until Amendment No. 6 is approved; and

WHEREAS, absent CMS approval, OHA believes it is at risk of a disallowance of federal financial participation in the 2015 and 2016 payments made to FamilyCare, which could amount to over $1 billion (total state and federal); and

WHEREAS on March 14, 2016, OHA notified FamilyCare that FamilyCare was in breach of its contracts by refusing to sign Amendment No. 6 and for receiving rate payments for 2015 that were not approved by CMS and stated that it would terminate FamilyCare's CCO Contract if FamilyCare did not sign Amendment No. 6; and

WHEREAS on March 29, 2016, FamilyCare sued OHA in the Circuit Court of the State of Oregon, for the County of Marion, Case No. 16CV10253, seeking a declaratory judgment that: FamilyCare is not contractually bound to sign Amendment No. 6; FamilyCare's receipt of capitation payments for 2015 did not place FamilyCare in default under the Contract; and OHA may not terminate FamilyCare's Contract;

WHEREAS, on April 6, 2016, OHA issued a notice of intent to terminate FamilyCare's CCO Contract; and

2

Exhibit 1 to Notice of Removal
Page 298 of 816

Exhibit 2
Page 2 of 13

Exhibit 3
Page 2 of 14

WHEREAS, on May 12, 2016, the Circuit Court issued an Amended Temporary Restraining Order enjoining OHA from terminating FamilyCare's Contract until the court could resolve FamilyCare's motion for preliminary injunction and OHA's motion to dismiss; and

WHEREAS, the Parties have concluded that it is their best interests and the best interests of the public to resolve these pending disputes and obtain CMS approval of FamilyCare's Contract amendments in order to secure federal financial participation and to minimize the risk of similar disputes in the future:

NOW, THEREFORE, in consideration of the mutual promises and obligations contained herein, and the above Recitals, which are hereby fully incorporated, the Parties hereby agree as follows:

## Agreement

This Agreement is intended to resolve all claims that either Party brought or could have brought against the other Party, as of the date of this Settlement Agreement, relating to FamilyCare's 2015 and 2016 capitation rates and the implementation or execution of the Contract amendments incorporating those rates ("the Dispute"). The Dispute does not include any issue relating to calculation of the medical loss ratio (except as expressly provided in the Paragraph 1(g) of the Financial Terms and Resolution of Pending Disputes Section of this Agreement), financial reporting, quality pool payments, or performance under the Contract:

## Rate Development Process

1. The Parties acknowledge that:

   a. OHA has the authority to set the CCO rates under which OHA contracts with CCOs, subject to CMS approval;

   b. OHA must establish to the satisfaction of CMS that the rates are actuarially sound, in accordance with the Medicaid Act, 42 C.F.R. Part 438, applicable Actuarial Standards of Practice and CMS guidance (collectively, "Actuarially Sound Principles");

   c. Medicaid regulations require OHA to establish rates for each rate cell that are adequate for reasonable, appropriate and attainable benefit and non-benefit Medicaid costs;

   d. OHA is not obligated to adjust the rates paid to any CCO to ensure that such rates cover all costs that a CCO has incurred during a rate year;

   e. OHA must comply with the terms of the Section 1115 Demonstration Project or risk loss of federal funds; and

   f. CMS approves CCO contracts and the rates contained therein that CMS finds to be actuarially sound and developed in accordance with Actuarially Sound Principles, based on the information provided to it by OHA and its actuaries.

3

Exhibit 1 to Notice of Removal
Page 299 of 816

Exhibit 2
Page 3 of 13

Exhibit 3
Page 3 of 14

g.  In developing actuarially sound rates, OHA and its actuaries must take into account any related party arrangements for benefit and non-benefit Medicaid costs to ensure that those related-party transaction do not result in any CCO's rates being over- or under-stated.  An appropriate methodology for addressing related party arrangements may include removal of excess costs reported by CCOs with related party arrangements.

2.  Nothing in Paragraph 1 of this Section affects or alters any preexisting rights or creates any contractual or legal right for either Party.

### Financial Terms and Resolution of Pending Disputes

1.  On June 1, 2016 at 2:00 p.m. (PDT), the Parties shall meet and hold a Closing at the offices of Stoel Rives in Portland ("Closing").  All documents to be signed at Closing will be in a form mutually agreeable to the Parties, and neither party will condition any of the documents on any event subsequent to the Closing, except for CMS approval.  At the Closing:

a.  OHA shall execute and deliver an amendment ("Amendment No. 8") to the Contract to increase FamilyCare's 2016 rates for the population eligible for Medicaid under the Affordable Care Act ("ACA population") from the 10th to the 20th payment percentile of the rate range certified by Optumas for calendar year 2016 ("2016 Revised ACA Rates").   Amendment No. 8 will not address any other issues.

b.  FamilyCare and OHA shall each execute and deliver Amendment No. 6 and Amendment No. 8.

  i.  The Parties agree that Amendment No. 6 results in a 2015 overpayment to FamilyCare of $54,485,814, based on the Amendment No. 6 rates ("2015 Overpayment").

  ii.  The Parties estimate that Amendment No. 8 will result in $2,726,662 in increased base capitation payments to Family Care for calendar year 2016, net of add-ons and the Hospital Reimbursement Adjustment amounts.

c.  OHA shall execute and deliver Notices of Withdrawal withdrawing its notice of breach and Notice of Intent to terminate FamilyCare's Contract.

d.  FamilyCare shall execute and deliver Notices of Withdrawal withdrawing its notices of default relating to the 2014, 2015, and 2016 Contract amendments.

e.  The Parties shall execute and deliver a joint motion to dismiss, with prejudice, *FamilyCare v. OHA*, Case No. 15CV13782, without fees or costs to either Party.

f.  The Parties shall execute and deliver a stipulated order dissolving the Temporary Restraining Order in *FamilyCare v. OHA*, Case No. 16CV10253 without fees or

4

Exhibit 1 to Notice of Removal
Page 300 of 816

Exhibit 2
Page 4 of 13

Exhibit 3
Page 4 of 14

costs to either Party; a joint motion to dismiss, with prejudice, *FamilyCare v. OHA*, Case No. 16CV10253 without fees or costs to either Party.

g. As of the Closing date, OHA shall agree to reduce the Overpayment described in subparagraph 1.b.i of this Section by $24,800,000 (the "Settlement Credit"). The Settlement Credit shall not be included as an adjustment to amounts otherwise reportable for purposes of the medical loss ratio rebate requirement under the Contract for 2014, 2015 or 2016.

h. OHA and FamilyCare shall each execute and deliver a Certificate to the effect that the Settlement Agreement and all documents delivered at Closing have been authorized by all necessary action of the Party, have been executed by an office of the Party authorized to sign for the Party, and are legally binding on the Party.

2. The Party responsible for delivering a document to be executed at Closing shall provide the other Party with a draft of the document by 3:00 pm (PDT) on May 26, 2016.

3. If either Party fails to comply with any of the provisions in Paragraph 1, the other Party is no longer bound by the terms of this Settlement Agreement.

4. Within 5 calendar days of the Closing described in Paragraph 1, OHA shall notify the Office of Administrative Hearings that its Notice of Intent to Terminate has been withdrawn.

5. Within 10 calendar days of receipt of notice of CMS approval of Amendment No. 8, OHA shall change FamilyCare's 2016 rates in accordance with Amendment No. 8, retroactive to January 1, 2016. If CMS does not approve Amendment No. 8, OHA will make a payment to FamilyCare of $2,726,662 using state funds.

6. Within 30 calendar days of the Closing described in Paragraph 1, FamilyCare shall repay OHA the Overpayment amount described in subparagraph 1.b.i, above, less the Settlement Credit described in subparagraph 1.g, for a total repayment amount of $29,685,814.

   a. Such payment shall be made in a reasonable manner specified by OHA.

   b. If FamilyCare does not make the payment within the timeframe specified, OHA may recover the repayment amount by offset against its ongoing 2016 capitation payments to FamilyCare, without notice or opportunity to cure.

7. The Parties agree that:

   a. Amendment No. 6 is entered into by mutual agreement and will be considered a 2015 amendment for purposes ORS 414.652(3);

   b. Pursuant to section 2(2) of Enrolled 2016 HB 4107, the amendments to ORS 414.652 by section 1 of Enrolled 2016 HB 4107 do not apply to Amendment No.

5

Exhibit 1 to Notice of Removal
Page 301 of 816

Exhibit 2
Page 5 of 13

Exhibit 3
Page 5 of 14

6, which results in a claim by OHA for the recovery of amounts paid by OHA to FamilyCare for services provided by FamilyCare prior to January 1, 2016.;

   c. Amendment No. 8 is entered into by mutual agreement and will not be considered the single amendment permitted during a 12-month period during 2016 under ORS 414.652(3); and

   d. Amendment No. 8 does not result in a claim by OHA for the recovery of amounts paid by OHA to FamilyCare prior to the date of the amendment and is an amendment permitted under ORS 414.652(5) as added by 2016 Enrolled Bill 4107.

8. Other than application of the terms of the Section 1115 Demonstration Project to aggregate state expenditures, OHA shall not use rates paid to FamilyCare under the Contract for 2016 or the Settlement Credit as a basis for limiting the amount that can be paid to FamilyCare in future rate years.

9. In any public statements or information published by OHA (other than the actuary's certification report) showing year-over-year comparisons between rates paid in 2015, 2016 and 2017, OHA shall note that: FamilyCare challenged the 2015 and 2016 rates and that there was settlement of that litigation that resulted in a settlement payment to FamilyCare outside the capitation rate for those years.

10. The Parties agree that they will not make any public comment about the Settlement Agreement other than the statement set forth in Paragraph 13, the press release described in Paragraph 13, and by providing a copy of the Settlement Agreement, if requested. This paragraph is not binding on a Party if breached by the other Party. For purposes of clarity, nothing in this Agreement is intended to prohibit any of the following:

   a. Public discussion by either party, including to the legislature, about OHA's draft or final Section 1115 Demonstration Project application;

   b. FamilyCare reporting to its Board of Directors, in private communication, about the Settlement Agreement and Settlement Agreement process, provided FamilyCare informs the Board of Directors that they are bound by this Section;

   c. After Closing in Paragraph 1, public discussion by either Party of FamilyCare's financial results, including either Party's view of the reasons for those results;

   d. After Closing in Paragraph 1, OHA may respond to questions from the legislature regarding OHA's funding for the Settlement Agreement. The plan for financing this settlement is solely at the discretion of OHA as the single state agency responsible for administering the Medicaid program in the best interest of health system transformation; or

   e. After Closing in Paragraph 1, either Party from discussing FamilyCare's 2015 and 2016 rates in the ordinary course of business.

Exhibit 1 to Notice of Removal
Page 302 of 816

Exhibit 2
Page 6 of 13

Exhibit 3
Page 6 of 14

11. Either Party may decline to proceed with the Closing in Paragraph 1 of this Section and withdraw from this Settlement Agreement if the other Party, or any of the other Party's employees or agents, either (a) violates Paragraph 10 of this Section; or (b) makes any unprofessional or disparaging statements in public about the other Party or otherwise attempts to publicly depict the other Party in an inaccurate or unfair light. The right to withdraw from this Settlement Agreement must be exercised prior to Closing. After Closing, this Paragraph shall have no further force or effect.

12. Upon completion of the Closing described in Paragraph 1, this Settlement Agreement will be a public record subject to disclosure by either party once signed by both Parties.

13. Press Release. Between the date of signing this Settlement Agreement and Closing, the Parties shall respond to any inquiries from the media, the public, members of the legislature, or anyone else not employed or under contract with either Party with the following statement: "OHA and FamilyCare have reached an agreement resolving their disputes, the terms of which will be publicly announced and disclosed when the documents finalizing the agreement are completed and executed on June 1, 2016." Nothing in this Settlement Agreement is intended to prohibit FamilyCare prior to Closing from affirmatively notifying its employees of the Settlement Agreement using this same statement, provided FamilyCare directs its employees that this information must remain confidential until after the Closing. Immediately upon Closing, the Parties agree to issue the attached joint press release announcing the Settlement Agreement to the public. FamilyCare shall send the attached joint press release announcing the settlement to its providers, after the Closing described in Paragraph 1.

### Future Rate Amendments

1. It is the Parties' intent to work in a professional manner to address any concerns regarding rate amendments in the future. To that end, if FamilyCare has a disagreement in the future with any new rates proposed by OHA ("New Rates"), FamilyCare may submit a written request to OHA to engage in a Discussion Period concerning the New Rates within five (5) calendar days of receiving the rates and OHA's actuary's certification report. If OHA accepts FamilyCare's request in writing within five (5) calendar days of receiving the request ("Acceptance Date"), the Parties shall have a 20-calendar-day period starting from the Acceptance Date ("Discussion Period") during which they will attempt to resolve any dispute or address any concerns about the New Rates. FamilyCare is not obligated to request a Discussion Period and OHA is not obligated to accept FamilyCare's request for a Discussion Period. The Parties may agree to a longer Discussion Period if necessary to complete their discussions. Either Party may terminate the Discussion Period upon written notice.

2. If the Discussion Period is requested and accepted, the Parties shall meet in person within seven (7) calendar days of the Acceptance Date to discuss FamilyCare's questions, concerns, and/or objections. The Parties' actuaries will be made available to participate in this meeting. Once the Parties have met, and unless either Party provides written notice of termination of the Discussion Period, the Parties shall use the remainder of the Discussion Period to attempt to resolve the issue(s) as promptly as possible.

7

Exhibit 1 to Notice of Removal
Page 303 of 816

Exhibit 2
Page 7 of 13

Exhibit 3
Page 7 of 14

3. In the interest of coming to a mutually agreeable resolution, the Parties agree that during the Discussion Period, neither Party will:

    a. make any public statements regarding the discussions between OHA and FamilyCare, or the specific issue(s) discussed therein;

    b. initiate contact with the legislature (members or staff) to attempt to address or resolve the specific issue(s) that are the subject of discussions between OHA and FamilyCare. (If either Party is contacted by the legislature (members or staff) about the issue(s) that are the subject of discussions between OHA and FamilyCare, such Party shall notify the other Party and work collaboratively to agree on an appropriate response to the legislature's request.); or

    c. initiate litigation in state or federal court or in an administrative venue related to the New Rates.

4. If either Party gives written notice that it is terminating the Discussion Period, neither Party will be thereafter bound by the terms of Paragraph 3. If the Discussion Period ends without extension or an agreement between the Parties concerning the issue, neither Party will be thereafter bound by the terms of Paragraph 3.

5. OHA may use the Discussion Period process described in this section for any other CCO. OHA plans to make the Discussion Period standard OHA practice for all CCOs.

6. It is OHA's goal that all CCOs have confidence in the rate-setting process. To achieve that goal, OHA agrees to establish a process for CCOs to request a verification from an Independent Consulting Actuary, with reasonable limits on the scope and timeline for requests for verification.

**General Terms**

1. <u>Binding Agreement</u>. This Agreement is binding on the Parties and their respective subsidiaries, affiliates, successors, legal representatives, and assigns and on any other persons claiming a right or interest through the Parties.

2. <u>No Admission</u>. This Settlement Agreement constitutes a compromise of disputed claims between the Parties. Nothing herein is to be construed or used as evidence or any admission of liability or responsibility by any Party hereto or any waiver of any privilege. This Settlement Agreement shall not be admissible in any proceeding for any purpose, except a proceeding by a Party hereto to enforce the terms of this Settlement Agreement.

3. <u>OHA Release</u>. Except with respect to the obligations to FamilyCare under this Settlement Agreement, the State of Oregon by and through OHA, for itself and for each of its agencies, employees, officers, directors, divisions, successors, predecessors, affiliates, insurers and their respective assigns and legal representatives, whether former or current, hereby releases and discharges FamilyCare and all of its affiliated entities and each of FamilyCare's and its affiliated entities' employees, officers, directors, corporate

8

Exhibit 1 to Notice of Removal
Page 304 of 816

Exhibit 2
Page 8 of 13

Exhibit 3
Page 8 of 14

parents, subsidiaries, divisions, successors, predecessors, affiliates, insurers and their respective assigns and legal representatives, whether former or current, from any and all claims, whether raised or not, arising from FamilyCare's refusal to sign Amendment No. 6; it being a specific intent and purpose that this release and discharge shall extend to any and all claims, whether now known or unknown and whether specifically mentioned or not, which may exist or might be claimed to exist through and including the Effective Date and that relate to FamilyCare's refusal to sign Amendment No. 6; and OHA expressly waives any and all claims or rights to assert that any matter, cause, or thing of any kind or nature whatsoever has been, through oversight or error, either intentionally or unintentionally omitted to the extent such claims or rights relate to FamilyCare's refusal to sign Amendment No. 6. This Settlement Agreement does not limit OHA's ability to give notice of termination, breach, or default, or take any other action under the Contract, for any issue or matter not related to FamilyCare's refusal to sign Amendment No. 6.

4.  <u>FamilyCare Release</u>. Except with respect to the obligations to OHA under this Settlement Agreement, FamilyCare, for itself and for each of its employees, officers, directors, corporate parents, subsidiaries, divisions, successors, predecessors, affiliates, insurers and their respective assigns and legal representatives, whether former or current, hereby releases and discharges the State of Oregon including OHA and all of its affiliated agencies or divisions and each of OHA's and its affiliated agencies or divisions' employees, officers, directors, successors, predecessors, affiliates, insurers and their respective assigns and legal representatives, whether former or current, from any and all claims, whether raised or not, that relate to the Dispute; it being a specific intent and purpose that this global release and discharge shall extend to any and all claims, whether now known or unknown and whether specifically mentioned or not, which may exist or might be claimed to exist through and including the Effective Date and that relate to the Dispute; and FamilyCare expressly waives any and all claims or rights to assert that any matter, cause, or thing of any kind or nature whatsoever has been, through oversight or error, either intentionally or unintentionally omitted to the extent such claims or rights relate to the Dispute.

5.  <u>Entire Agreement</u>. The Parties intend that this Agreement be complete and not be subject to any claim of mistake of fact or law. This Agreement constitutes the full and complete integration of the Parties' agreements. There are no promises, statements, covenants, representations, or warranties, express or implied, oral or written, about the subject matter of this Agreement that are not contained in this Agreement.

6.  <u>Construction</u>. The rule of construction that an agreement is to be construed against the drafting party is not to be applied in interpreting this Agreement. The Parties acknowledge that they have each read this Agreement, that they understand its meaning and intent, and that this Agreement has been executed voluntarily, with opportunity to consult with legal counsel.

7.  <u>Amendment</u>. This Agreement may only be modified if the modification is in writing and is signed by both Parties.

9

Exhibit 1 to Notice of Removal
Page 305 of 816

Exhibit 2
Page 9 of 13
Exhibit 3
Page 9 of 14

8. <u>Choice of Law and Forum</u>. This Agreement is made under and shall be construed and enforced in accordance with the laws of the State of Oregon without giving effect to its conflicts of law principles that would require or permit a court to consider the laws of any other state. All matters relating to the construction and performance of this Agreement shall be litigated only in the Marion County Circuit Court of the State of Oregon (and no other). Nothing in this agreement shall be construed to waive any immunity from suit in State or Federal Court that the State or OHA or their employees enjoy, including but not limited to Sovereign Immunity and Eleventh Amendment Immunity, except to the extent that such immunity has been waived by Oregon law, including but not limited to as provided in ORS 30.320. Nor shall anything in this agreement be construed as a consent to suit in Federal Court.

9. <u>Notices</u>. Any communication or notice provided under this Agreement shall be effected in writing sent by email and First Class United States mail as follows:

**To FamilyCare:**

Kelly Knivila (kelly.knivila@stoel.com)
Stoel Rives LLP
*Prior to May 31, 2016*:
   900 SW Fifth Avenue, Suite 2600
   Portland, Oregon 97204
*May 31, 2016 and after*:
   760 SW Ninth Avenue, Suite 3000,
   Portland, Oregon 97205
Telephone:(503) 294-9557
Facsimile:  (503) 220-2480

**And to:**

Jeff Heatherington (JeffH@familycareinc.org)
825 NE Multnomah, Suite 1400
Portland, OR 97232
Telephone: (503) 471-2102
Facsimile: (503) 471-2152

**To OHA:**

Renee Stineman (renee.stineman@doj.state.or.us)
Attorney-in-Charge
Special Litigation Unit
1515 SW Fifth Avenue
Portland, Oregon 97201
Telephone: (971) 673-5027
Facsimile:  (971) 673-5000

10

Exhibit 1 to Notice of Removal
Page 306 of 816

Exhibit 2
Page 10 of 13

Exhibit 3
Page 10 of 14

**And to:**

Lynne Saxton (lynne.saxton@state.or.us)
Director, Oregon Health Authority
500 Summer Street, NE, E-20
Salem, OR 97301-1097

10. <u>Counterparts</u>. This Agreement may be executed in one or more counterparts, each of which is to be deemed an original. All counterparts may be consolidated into one agreement, binding on both the Parties.

11. <u>Scanned Signatures</u>. This Agreement, or counterparts as provided for herein, may be executed and transmitted via email, as a scanned file in Adobe Reader (.pdf) format, and shall, when so executed and transmitted, be valid as though an original.

12. <u>Attorney Fees</u>. Each Party shall be responsible for all its own legal costs, fees, and expenses in connection with the preparation of this Agreement and the actions settled by this Agreement.


Lynne Saxton    5-22-16
Director
Oregon Health Authority

Jeff Heatherington
Chief Executive Officer
FamilyCare Inc.

Approval as to form:


Renee Stineman    5-22-16
Counsel for Oregon Health Authority

Kelly Knivila
Counsel for FamilyCare Inc.


Attachment


11


Exhibit 1 to Notice of Removal
Page 307 of 816

Exhibit 2
Page 11 of 13

Exhibit 3
Page 11 of 14

**And to:**

Lynne Saxton (lynne.saxton@state.or.us)
Director, Oregon Health Authority
500 Summer Street, NE, E-20
Salem, OR 97301-1097

10. <u>Counterparts</u>. This Agreement may be executed in one or more counterparts, each of which is to be deemed an original. All counterparts may be consolidated into one agreement, binding on both the Parties.

11. <u>Scanned Signatures</u>. This Agreement, or counterparts as provided for herein, may be executed and transmitted via email, as a scanned file in Adobe Reader (.pdf) format, and shall, when so executed and transmitted, be valid as though an original.

12. <u>Attorney Fees</u>. Each Party shall be responsible for all its own legal costs, fees, and expenses in connection with the preparation of this Agreement and the actions settled by this Agreement.

_____

Lynne Saxton
Director
Oregon Health Authority

Approval as to form:

_____

Renee Stineman
Counsel for Oregon Health Authority

Jeff Heatherington
Chief Executive Officer
FamilyCare Inc.

Kelly Knivila
Counsel for FamilyCare Inc.

Attachment

11

Exhibit 1 to Notice of Removal
Page 308 of 816

Exhibit 2
Page 12 of 13
Exhibit 3
Page 12 of 14

**Attachment**

Press Release

The Oregon Health Authority (OHA) and FamilyCare are pleased to announce they have reached a settlement agreement that resolves the financial issues in dispute between the parties for the 2015 and 2016 rate years, which initially arose from the rate-setting process started in 2014 in response to the federal Centers for Medicare & Medicaid Services' (CMS) objections to the State's previous rate-setting process.

Under the settlement agreement, FamilyCare has agreed to dismiss all pending litigation against OHA. OHA has agreed to withdraw its notice of termination of FamilyCare's CCO contract.

Both parties appreciate the efforts that were made to reach an agreement that will allow them to move forward and focus their full efforts and attention on providing quality care to Oregon Health Plan enrollees and transforming health care for Oregonians in the future.

A copy of the settlement agreement will be made available upon request to:

> Email: OHA.ExternalRelations@state.or.us
> Phone: 503-945-6691

> Or

> Email: LisaJ@familycareinc.org
> Phone: 503-471-2103

12

Exhibit 1 to Notice of Removal
Page 309 of 816

Exhibit 2
Page 13 of 13
Exhibit 3
Page 13 of 14

Exhibit 3
Page 14 of 14