IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

PATRICK ALLEN, in his            )
official capacity as DIRECTOR    )
OF OREGON HEALTH AUTHORITY,      )
an agency of the State of        )
Oregon,                          )
                                 )
            Plaintiff,           )
                                 )
v.                               ) No. 3:18-cv-00212-MO
                                 )     (Leading)
FAMILYCARE, INC., an Oregon      ) No. 6:18-cv-00296-MO
non-profit corporation,          )     (Trailing)
                                 )
            Defendant.           )
_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _  ) Videotaped Deposition
FAMILYCARE, INC., an Oregon      ) Upon Oral Examination
non-profit corporation,          )         of
                                 ) BENJAMIN J. DIEDERICH
            Plaintiff,           )
                                 )
v.                               )
                                 )
OREGON HEALTH AUTHORITY, an      )
agency of the State of           )
Oregon, and PATRICK ALLEN,       )
both individually and in his     )
official capacity as director    )
of the Oregon Health             )
Authority,                       )
                                 )
            Defendants.          )
                                 )
_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

9:13 a.m.

July 10, 2018

1201 Third Avenue, Suite 4900

Seattle, Washington
Kristin L. Mattsen, CCR, RPR

Exhibit 11
Page 1 of 8

Benjamin Diederich, 7/10/2018    Allen, et al v. FamilyCare, Inc.

38

A.    Yes.

Q.    Outside of litigation, was Milliman ever retained by FamilyCare to look at whether the settlement credit was used to determine 2017 or 2018 rates?

A.    I don't -- no.

Q.    That's going to look funny on the transcript.

A.    No, but I don't completely understand the question.

Q.    Okay.  Let's back up a little bit.

Has Milliman been retained by FamilyCare to analyze the 2017 rate-setting process?

MS. BEANE:  Objection.  To the extent you're asking about the scope of the privileged engagements, I would instruct him not to answer.

Q.    (BY MR. LEVIN)  I -- I just want the answer that's -- would be unrelating to -- unrelated to what you've done for counsel.

A.    Could you repeat the question now.

Q.    Sure.

Has Milliman been engaged by FamilyCare, outside of litigation, to analyze the rate-setting process for 2017 rates?

A.    No.

Q.    Has Milliman been engaged by FamilyCare to analyze the rate-setting process, outside of litigation,

Schmitt Reporting & Video, Inc.
(360) 695-5554 -- (503) 245-4552 -- (855) 695-5554

Exhibit 11
Page 2 of 8

Benjamin Diederich, 7/10/2018   Allen, et al v. FamilyCare, Inc.

39

for 2018 rates?

A.   No.

Q.   Based on your work with FamilyCare, not including projects you've done for counsel, do you have an opinion about the rate-setting process for 2017?

A.   No.

Q.   Based on your work with FamilyCare outside of the litigation process for its counsel, do you have an opinion as to the rate-setting process for 2018 rates?

A.   No.

Q.   Okay.

(Exhibit No. 137 marked for identification.)

THE COURT REPORTER:  Do you want me to pass it to him?

MR. LEVIN:  Yes, please.

That's all I have.

THE COURT REPORTER:  That's 137.

Q.   (BY MR. LEVIN)  Mr. Diederich, I've handed you what's been marked as Deposition Exhibit 137, which appears to be a PowerPoint presentation with the logo "FamilyCare Health" and "Perkins Coie" in the upper left-hand corner.  It is dated January 17th, 2017, on the first page of Exhibit 137, and it is presented by some lawyers and you?

Benjamin Diederich, 7/10/2018    Allen, et al v. FamilyCare, Inc.

50

faith, OHA's explanation about why it considers the 2017 rates to be actuarially sound."

Ignoring any communications with counsel, did you see any example of FamilyCare considering OHA's explanation about why it considers the 2017 rates to be actuarially sound?

A.    I don't recall any at this time.

Q.    Page 7, it says:

"FCI's rates have been the lowest of all CCOs since 2014."

Do you see that?

A.    Uh-huh.

Q.    Is that --

A.    Yes.

Q.    -- your statement?

A.    I don't recall.

Q.    Did you talk about that at the meeting?

A.    I don't recall.

Q.    Okay.  Based on your work, do you believe it's true that FamilyCare's rates have been the lowest of all CCOs since 2014?

A.    Yes.

Oh, sorry.

MS. BEANE:  Sorry.  Just want to make

Benjamin Diederich, 7/10/2018   Allen, et al v. FamilyCare, Inc.

51

sure we're not getting into privileged work product;
so --

MR. LEVIN:  Okay.

MS. BEANE:  -- if your conclusions are based on work that you've done as part of the expert consulting agreement, then you need to not answer.

THE WITNESS:  Okay.

Q.   (BY MR. LEVIN)  What does that mean, that FamilyCare's rates have been the lowest of all CCOs since 2014?

A.   I don't understand the question.

Q.   Me neither.  Let's focus on the word "lowest."

"FamilyCare's rates have been the lowest of all CCOs since 2014."

And you can read below:

It's "the only plan that has proposed operating loss," and "FCA" -- "FCI rates: 15.5% lower than 3 other large plans."

So can you describe for me what "lowest" means?

A.   It means that the per member, per month capitation rates paid to FamilyCare are the lowest in comparison to all the other per member, per month capitation rates paid to the other CCOs.

Schmitt Reporting & Video, Inc.
(360) 695-5554 -- (503) 245-4552 -- (855) 695-5554

Exhibit 11
Page 5 of 8

Benjamin Diederich, 7/10/2018    Allen, et al v. FamilyCare, Inc.

177

A.    No.

Q.    So at the meeting on December 7th, 2016, the point of the table reflected on page 11 is there's a lot of variability in these rates?

MS. BEANE:  Objection.  Mischaracterizes prior testimony.  And foundation.

THE WITNESS:  Yes.  And that that variability always seems to point to FamilyCare being at the bottom.

Q.    (BY MR. LEVIN)  But is there any reason that you were pointing to to say "And that's unfair because of X"?

A.    Not that I can recall any statements of fairness being made at that meeting.

Q.    Did you have --

A.    It was simply a presentation of fact.  I don't -- or observation.  I don't think there was anything in terms of conjecture about why.

Q.    But did you internally conjecture about why?

A.    No.

Q.    So as you went into this meeting on December 7th, 2016, you didn't have an opinion that anything unfair was happening to FamilyCare in the rate-setting process?

MS. BEANE:  Objection.  Asked and

Page 231

C E R T I F I C A T E

STATE OF WASHINGTON  )
                     )  SS.
COUNTY OF KING       )

I, the undersigned Washington Certified Court Reporter, pursuant to RCW 5.28.010 authorized to administer oaths and affirmations in and for the State of Washington, do hereby certify:

That the annexed and foregoing deposition consisting of pages 1 through 230 of the testimony of each witness named herein was taken stenographically before me and reduced to typed format under my direction;

I further certify that according to CR 30(e) the witness was given the opportunity to examine, read and sign the deposition after the same was transcribed, unless indicated in the record that the review was waived;

I further certify that all objections made at the time of said examination to my qualifications or the manner of taking the deposition or to the conduct of any party have been noted by me upon each said deposition;

I further certify that I am not a relative or employee of any such attorney or counsel, and that I am not financially interested in the said action or the outcome thereof;

I further certify that each witness before examination was by me duly sworn to testify the truth, the whole truth and nothing but the truth;

I further certify that the deposition, as transcribed, is a full, true and correct transcript of the testimony, including questions and answers, and all objections, motions, exceptions of counsel made and taken at the time of the foregoing examination and was prepared pursuant to Washington Administrative Code 308-14-135, the transcript preparation format guidelines;

I further certify that I am sealing the deposition in an envelope with the title of the above cause and the name of the witness visible, and I am delivering the same to the appropriate authority;

Exhibit 11
Page 7 of 8

Electronically signed by Kristin Mattsen (201-382-384-3983)    99b7a0b8-5903-4e55-a333-9b25dcd79bc4

Page 232

I further advise you that as a matter of firm policy, the Stenographic notes of this transcript will be destroyed three years from the date appearing on this Certificate unless notice is received otherwise from any party or counsel hereto on or before said date;

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal this 12th day of July, 2018.

_____
Kristin L. Mattsen, CCR, RPR
Washington State Certified
Court Reporter
License No. 3280

Exhibit 11
Page 8 of 8

Electronically signed by Kristin Mattsen (201-382-384-3983)    99b7a0b8-5903-4e55-a333-9b25dcd79bc4