| From: | Saxton Lynne |
|---|---|
| To: | Darby BethAnne |
| CC: | Fairbanks Mark R |
| Sent: | 1/17/2017 11:23:04 AM |
| Subject: | Fwd: slide deck |
| Attachments: | Deck for FCI-OHA Meeting v 3.pptx; ATT00001.htm |



EXHIBIT
1203

BethAnne - here is the slide deck for today's dispute resolution process. First, this is a good heads up about the sophistication of their communication. Second, this will be helpful to us in developing our communication strategy and timeline. Please let us know when you would like to schedule discussion of our strategy. Mark, Lori, Zach and Jeff Wahl should be include in the first discussion and Ted and Renee after we have reviewed a draft internally. Thank you.

Sent from my iPad

Begin forwarded message:

**From:** Fairbanks Mark R <MARK.R.FAIRBANKS@dhsoha.state.or.us>
**Date:** January 17, 2017 at 11:15:12 AM PST
**To:** Saxton Lynne <LYNNE.SAXTON@dhsoha.state.or.us>
**Subject: Fwd: slide deck**

Of interest and still in session but will call around noonish

Sent from my iPhone

Begin forwarded message:

**From:** "Fairbanks Mark R" <MARK.R.FAIRBANKS@dhsoha.state.or.us>
**To:** "GUEST Chelsea A" <Chelsea.A.GUEST@dhsoha.state.or.us>, "Fritsche Jeffrey P"
<JEFFREY.P.FRITSCHE@dhsoha.state.or.us>, "Jones Kayla" <KAYLA.JONES@dhsoha.state.or.us>
**Subject: Fwd: slide deck**

Sent from my iPhone

Begin forwarded message:

**From:** "Falk Theodore C" <theodore.falk@doj.state.or.us>
**To:** "Coyner Lori A" <LORI.A.COYNER@dhsoha.state.or.us>, "Fairbanks Mark R"
<MARK.R.FAIRBANKS@dhsoha.state.or.us>, "Chauhan Varsha" <VARSHA.CHAUHAN@dhsoha.state.or.us>,
"Zachary Aters" <zachary.aters@optumas.com>, "Barry Jordan" <barry.jordan@optumas.com>
**Cc:** "WAHL Jeffrey" <Jeffrey.WAHL@doj.state.or.us>, "STINEMAN Renee"
<Renee.STINEMAN@doj.state.or.us>, "SCOTT Carla A" <Carla.A.SCOTT@doj.state.or.us>
**Subject: Fwd: slide deck**

For today's meeting

Ted Falk
Oregon Department of Justice
503-947-4430<tel:503-947-4430> (Salem office); 971-673-1980<tel:971-673-1980> (Portland office);

OHA_LIT_00613091

Exhibit 16
Page 1 of 22

503-931-0517<tel:503-931-0517> (mobile)
Please note changed DOJ mobile number: 503-931-0517<tel:503-931-0517>

Begin forwarded message:

From: "Gordon, Matthew P. (Perkins Coie)" <MGordon@perkinscoie.com<mailto:MGordon@perkinscoie.com>>
To: "Falk Theodore C" <theodore.falk@doj.state.or.us<mailto:theodore.falk@doj.state.or.us>>
Subject: slide deck

Matthew Gordon | Perkins Coie LLP
COUNSEL
D. +1.206.359.3552
F. +1.206.359.4552
E. MGordon@perkinscoie.com<mailto:%20MGordon@perkinscoie.com>

---

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents. Thank you.

OHA_LIT_00613092

Exhibit 16
Page 2 of 22

# Document Available in Native Format

Deck for FCI-OHA Meeting v 3.pptx

OHA_LIT_00613093

Exhibit 16
Page 3 of 22



**FamilyCare Health**

**PERKINS COIE**

COUNSEL TO GREAT COMPANIES

# FamilyCare - OHA Dispute Resolution

Meeting No. 1

January 17, 2017

Presented by:

Steve English     Melanie Curtice
Tom Johnson       Matthew Gordon
Jeff Peterson     Ben Diederich

Exhibit 16
Page 4 of 22

# Dispute Resolution Ground Rules

**The parties agreed to at least three substantive dispute resolution discussions, followed by mediation if necessary**

**The parties agreed to a "free and open discussion" regarding:**

- The appropriate application of actuarial rates
- The appropriateness of the methodology used by Optumas
- Whether geographic areas come into play
- The actuarial soundness of the rates

2  Perkins Coie LLP | PerkinsCoie.com

PERKINSCOIE

Exhibit 16
Page 5 of 22

# Dispute Resolution Ground Rules

## The parties agreed that the Dispute Resolution Process would include:

- An explanation by OHA why it believes the rates are sound

- Any alternative sound methodology proposed by FamilyCare

## The parties agreed to:

- Work cooperatively

- Provide information "that either OHA's or FamilyCare's actuary believes is relevant and necessary to evaluate actuarial rates, subject to protection of confidential information"

PERKINS coie

Exhibit 16
Page 6 of 22

# Dispute Resolution Process

## FCI's goals for this meeting:

- Establish what information FCI's actuary, Milliman, believes is relevant and necessary

- Establish when and how that information will be provided to FCI

    - Establish any necessary protections for confidential information

- Establish a framework for future meetings

4  Perkins Coie LLP | PerkinsCoie.com

PERKINSCOIE

Exhibit 16
Page 7 of 22

# Dispute Resolution Process

## Going forward:

- Upon receipt of the requested information, Milliman will evaluate rate development

- FCI will present its analysis and, per the Dispute Resolution Agreement, any suggested alternative

- FCI will consider, in good faith, OHA's explanation about why it considers the 2017 rates to be actuarially sound

- FCI will continue to work cooperatively with OHA

PERKINScoie

Exhibit 16
Page 8 of 22

# FamilyCare, Inc.

## FCI has been an MCO since 1985

- Currently the second-largest CCO

- Serves more than 120,000 members

  - FCI serves 13% of Oregon Medicaid

- FCI's business model has proven successful at delivering high-quality health services to Oregon residents for 30 years

PERKINS COIE

Exhibit 16
Page 9 of 22

# The Problem

## FCI's 2017 rates are too low to cover expenses

- 2017 is the third year in a row where rates are below projected costs

- 2017 operating loss is projected at $55 million

- Unsustainable trajectory for FCI

## FCI's rates have been the lowest of all CCOs since 2014

- FCI is the only plan that has a proposed operating loss

- FCI rates: 15.5% lower than 3 other large plans ($64 million)

7  Perkins Coie LLP | PerkinsCoie.com

PERKINSCOIE

Exhibit 16
Page 10 of 22

# The Questions:

- How did we get here?

  - Do FCI's 2017 rates as constructed indicate that FCI is incapable of providing appropriate care to its members efficiently?

  - Or is there some other explanation?

- Where in the rate development process did rates become disconnected from FCI's costs?

PERKINSCOie

Exhibit 16
Page 11 of 22

# FCI's Dilemma

- FCI needs to evaluate whether the rates are too low because:

    - FCI has a different business model from other CCOs; or

    - The rate development process disfavors FCI

- But information provided to FCI to date is insufficient

9   Perkins Coie LLP | PerkinsCoie.com

PERKINS COIE

Exhibit 16
Page 12 of 22

# Background

## Before 2015

- Each CCO developed an "Experience Rate," based on its own experience, for review by OHA

## 2015-2017

- Methodology changed:
  - OHA developed a "Risk Adjusted Community Rate"
  - OHA presented rates to CCOs

PERKINSCOIE

Exhibit 16
Page 13 of 22

# Background: Legal Framework

## Global Budget– ORS § 414.620

- **Goal:** encourage CCOs to innovate to reduce costs and improve care

  - Intent: flexibility in spending
  - Allows profitability (CCO can keep profits earned within global budget)

- Reasonable inflation in rates for planning and stability

- Anticipates actuarially sound rates for each CCO

PERKINS**COIE**

Exhibit 16
Page 14 of 22

# Background: Legal and Historical Practice

## Clawback Prohibition

- Limits on retroactive amendments

- Enacted in 2016 — HB 4107

## Transparency

- Pre-July 2014, all data available in statewide data book

- Since July 2014: Trade secret claim (ORS § 192.501)

## CMS Regulations and the 1115 Waiver

- Recent approval of waiver renewal

- "Actuarially sound" defined in regulations

PERKINSCOie

Exhibit 16
Page 15 of 22

# Background: Settlement Agreement

- **Executed May 2016 to resolve dispute over 2015 and 2016 rates**

- **Included Settlement Credit reducing amount payable by FCI**

- **The parties agreed that:**

  - **OHA shall not use either (1) rates paid to FCI under the 2016 Contract or (2) the Settlement Credit to limit the amount paid to FCI in future rate years**

  - **OHA will establish a process for CCOs to request verification from an Independent Consulting Actuary**

13   Perkins Coie LLP | PerkinsCoie.com

PERKINSCOIE

Exhibit 16
Page 16 of 22

# Questions about Rate Development Process

**Overall question: Why are FCI's 2017 rates insufficient to provide for FCI's projected costs?**

**Answer requires a detailed understanding of:**

- How the 2017 rates were developed
- Data that was used
- Policy decisions that were made

14  Perkins Coie LLP | PerkinsCoie.com

PERKINSCOIE



Exhibit 16
Page 17 of 22

# Questions about Rate Development Process

## The starting point:  Regional Base Data

- Unusual approach—inconsistent with other comparable states (*e.g.*, WA, HI, UT), which use statewide, not regional, average

- Potentially penalizes plans in a region where health care is delivered more efficiently

    - Superior performance should lead to better earnings (*see* Global Budget concept)

    - But this approach leads to a cycle: lower costs→ reduced regional average→ reduced adjustments → lower rates

    - And could discourage plans in other regions from lowering costs

- Unclear: whether implicit rate adjustments were checked for appropriateness?

15   Perkins Coie LLP  **|** PerkinsCoie.com

PERKINSCOIE

Exhibit 16
Page 18 of 22

# Questions about Rate Development Process

## Adjustments to Regional Base Data to Create Regional Base Rate

- Some adjustments are made using a percentage of regional base data, so adjustments compound the impact of starting with a lower base

- Unclear whether this step includes appropriate checks on impact of regional adjustments

## Risk Adjustment

- Tri-County ACA population was randomly assigned between FCI and HealthShare

- But FCI's ACA population was calculated as less risky in every age group – need to understand why

16  Perkins Coie LLP  |  PerkinsCoie.com

PERKINSCOIE

Exhibit 16
Page 19 of 22

# Questions about Rate Development Process

## Adjustments to Costs

- "Reimbursement review" for increased costs

- "Adjusted Financials"
  - FCI's increased payment to providers =$34MM decrease in contribution to Regional Base Data

- "Reimbursement adjustment" for CCOs that were "outliers and above a sustainable growth"

17  Perkins Coie LLP | PerkinsCoie.com

PERKINSCOIE

Exhibit 16
Page 20 of 22

# Information FCI's actuary believes is relevant and necessary to evaluate actuarial rates

- Data to determine impact of starting with regional base rate

- Utilization and unit cost details for all regions

- Encounter-based files for all regions

- Raw concurrent risk scores

- Details of adjustments to regional base data

- Policy decisions regarding rate development

18   Perkins Coie LLP | PerkinsCoie.com

PERKINSCOie

Exhibit 16
Page 21 of 22

# Next Steps

- Timeline for production of information to Milliman

- Presentation by OHA regarding actuarial soundness of  2017 rates

- Presentation by FCI regarding results of analysis of 2017 rate development and potential alternative approach

PERKINSCOie

Exhibit 16
Page 22 of 22