**From:**     Fairbanks Mark R
**To:**       Zachary Aters; GUEST Chelsea A; Coyner Lori A
**CC:**       Jessica Grado; Barry Jordan; Martin McNamara
**Sent:**     7/25/2016 12:13:05 PM
**Subject:**  RE: Reimbursement references from final rule


Thanks Zack

Mark R. Fairbanks
*Chief Financial Officer*
*Oregon Health Authority*

*500 Summer St NE, E-20*
*Salem, Oregon 97301*
*Desk: 503.947.5384*
*Mobile: 503.507.3792*
Mark.R.Fairbanks@state.or.us

**From:** Zachary Aters [mailto:zachary.aters@optumas.com]
**Sent:** Monday, July 25, 2016 12:04 PM
**To:** GUEST Chelsea A <Chelsea.A.GUEST@dhsoha.state.or.us>; Coyner Lori A
<LORI.A.COYNER@dhsoha.state.or.us>; Fairbanks Mark R <MARK.R.FAIRBANKS@dhsoha.state.or.us>
**Cc:** Jessica Grado <jessica.grado@optumas.com>; Barry Jordan <barry.jordan@optumas.com>; Martin McNamara
<martin.mcnamara@optumas.com>
**Subject:** Reimbursement references from final rule

Hi All
Just so we have it, I am emailing excerpts from final rule surrounding reimbursement and efficiency to you,
------------------------------------------------------------------------------------------------------------------

Page 261
In §438.4(b)(3), we proposed that capitation rates be adequate to meet the requirements on
MCOs, PIHPs, and PAHPs in §§438.206, 438.207, and 438.208, which contain the requirements
for MCOs, PIHPs, and PAHPs to ensure availability and timely access to services, adequate
networks, and coordination and continuity of care, respectively.  We noted that the definition of
actuarially sound capitation rates in proposed §438.4(a) provides that the rates must provide for all
reasonable, appropriate, and attainable costs that are required under the contract.  The maintenance
of an adequate network that provides timely access to services and ensures coordination and
continuity of care is an obligation on the managed care plans for ensuring access to services under
the contract.  In the event concerns in these areas arise, the review of the rate certification would
explore whether the capitation payments, and the provider rates on which the capitation payments
are based, are sufficient to support the MCO's, PIHP's, or PAHP's obligations.


Page 263
We explained that the rates must appropriately account for the
expected benefit costs for enrollees in each rate cell, and for a reasonable amount of the non
benefit costs of the plan.  We further explained that payments from any rate cell must not be
expected to cross-subsidize or be cross-subsidized by payments for any other rate cell.  In
accordance with the existing rule in §438.6(c)(2)(i), we proposed that all payments under risk
contracts be actuarially sound and that the rate for each rate cell be developed and assessed
according to generally accepted actuarial principles and practices. See 67 FR 40989, 40998
(discussion of existing rule).



**EXHIBIT**
1223

OHA_LIT_00297049

Exhibit 61
Page 1 of 2

Page 323
States have the flexibility to determine which services would be reimbursed
through value-based purchasing models as such models may not be appropriate for all services and populations covered under the contract. Regardless of the reimbursement models used by the contracted managed care plans, all enrollee protections for access and availability of care in part 438 apply. Therefore, we do not believe it is necessary to specify additional protections in relation to value-based purchasing models.

Page 328
As proposed and finalized here, §438.6(c)(1)(iii)(A) and (B) is intended to
permit—not mandate—states to require their contracted managed care plans reimburse providers that provide a particular service in accordance with a minimum fee schedule or at a uniform dollar or percentage increase as an exception to the general rule specified in paragraph (c)(1) regarding state direction of managed care plan expenditures under the contract. It is not a requirement that states do so. We restate that these provisions would permit the state to specify a minimum payment threshold and would not prohibit the managed care plans from negotiating higher provider rates. To clarify the parameters for the state in setting a fee schedule for particular network providers under the contract, we will add a new paragraph (c)(1)(iii)(C) to specify that states could include a maximum fee schedule in the managed care plan contract, so long as the managed care plan retains the ability to reasonably manage risk and have discretion in accomplishing the goals of the contract. An example of a maximum fee schedule that would satisfy this requirement is that the managed care plan could pay no more than a specified percentage of a benchmark rate, such as Medicare or commercial rates. The use of minimum or maximum fee schedule or uniform increases ensures that provider payment initiatives are tied to
CMS-2390-F        328
the utilization and delivery of particular services under the contract. In the event the state used these provisions under the contract, the minimum payment expectations would be taken into account in the rate development process. However, for consistency with changes in the final rule at §438.6(c)(2)(i)(B), described in response to comments on that provision below, we will finalize §438.6(c)(1)(iii)(A) and (B) without the proposed requirement that the minimum fee schedule or uniform dollar or percentage increase in provider payments apply to all providers that provide a particular service under the contract

Page 1414
A state must use payment rates based on public or private payment rates for comparable
services for comparable populations, consistent with actuarially sound principles as defined at §457.10. This requirement for using actuarially sound principles to develop payment rates does not prohibit a state from (implementing value-based purchasing models for provider reimbursement, such as pay for performance arrangements, bundled payments, or other service payment models intended to recognize value or outcomes over volume of services; such alternate payment models should be developed using actuarially sound principles to the extent applicable.

Page 167
Section 438.3(i) is based on section 1903(m)(2)(A)(x) of the Act, which
requires physician incentive plans to comply with the requirements for physician incentive plans at section 1876(i)(8) of the Act, which have been implemented at §417.479 of this chapter for reasonable cost plans and made applicable to MA organizations at §422.208 of this chapter. To ensure that the identical requirements are made applicable to MCOs under section 1903(m)(2)(A)(x) of the Act and PIHPs and PAHPs under section 1902(a)(4) of the Act, we have cross-referenced the MA regulations. These are the only explicit limitations on physician incentive programs for network providers and we are supportive of managed care plans incentivizing providers to meet performance metrics that improve the quality and efficiency of care.

Zachary Aters ASA, MAAA | Optumas
7400 E. McDonald, Suite 101. Scottsdale, AZ 85250
v. 480.588.2495 | c. 480.280.5881 | zachary.aters@optumas.com

OHA_LIT_00297050

Exhibit 61
Page 2 of 2