**GREGORY A. CHAIMOV, OSB #822180**
gregorychaimov@dwt.com
**CHRISTOPHER F. MCCRACKEN, OSB #894002**
christophermccracken@dwt.com
**DAVIS WRIGHT TREMAINE LLP**
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
Telephone:  (503) 241-2300
Facsimile:  (503) 778-5299

    Attorneys for Non-Party Health Share of Oregon

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| FAMILYCARE, INC., an Oregon non-profit corporation,<br><br>              Plaintiff,<br><br>    v.<br><br>OREGON HEALTH AUTHORITY, an agency of the State of Oregon, and PATRICK ALLEN, both individually and in his official capacity as director of the Oregon Health Authority, and LYNNE SAXTON Defendants. | Case No. 6:18-cv-00296-MO<br><br>**NON-PARTY HEALTH SHARE OF OREGON'S MEMORANDUM IN OPPOSITION TO FAMILYCARE, INC.'S MOTION TO COMPEL DOWN-DESIGNATION OF ATTORNEYS' EYES ONLY DOCUMENTS** |

## I.    INTRODUCTION

Non-party Health Share of Oregon ("Health Share") objects to FamilyCare, Inc.'s

("FamilyCare") employees, especially William Murray, seeing the information that is the subject

of FamilyCare's motion to down-designate documents.  This Court should deny the motion.

FamilyCare does not need the documents to prove its case.

Page 1 – NON-PARTY HEALTH SHARE OF OREGON'S RESPONSE TO FAMILYCARE'S MOTION TO
      COMPEL DOWN-DESIGNATION OF ATTORNEYS' EYES ONLY DOCUMENTS

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

The three documents FamilyCare wants to see contain the information most important for FamilyCare not to see. Mr. Murray is the most important individual at FamilyCare to keep from seeing the information. Declaration of Larry Soderberg, ¶4 ("Soderberg Dec.").

FamilyCare's description of the contested documents is not accurate. Health Share has not objected to FamilyCare's reviewing "highly aggregated data." But that is not the information FamilyCare's motion seeks. FamilyCare seeks information that would disclose Health Share's pricing strategies, pricing, and business plans information that would permit FamilyCare to use and improve upon innovations Health Share developed to compete with Health Share in the next procurement to coordinate care, thereby causing a likelihood of substantial competitive harm. The information FamilyCare seeks is of such commercial sensitivity that knowledge of the information within Health Share is limited to the small number of individuals who have a need to know that information. Soderberg Dec., ¶5.

To the extent material to this Court's decision, FamilyCare's statements about the extent to which Health Share has designated documents as attorneys-eyes-only and Health Share's supposedly providing "no explanation" for the designations are misleading.

Health Share will, however, drop its objection if FamilyCare and the FamilyCare employees who will see the information commit to screen themselves from, and not participate in, the Oregon Health Authority's ("OHA") 2020 procurement. Those commitments would sufficiently reduce the competitive harm Health Share would suffer from the disclosure of its commercially-sensitive information. Those commitments would also conform with the protective order, which provides that FamilyCare's consultants, experts, and lawyers may view "attorney eyes only" documents only if they do not assist FamilyCare in Medicaid rate setting through the rate setting process for 2021 rates. Dkt. # 197-8, p. 6-7.

Page 2 – NON-PARTY HEALTH SHARE OF OREGON'S RESPONSE TO FAMILYCARE'S MOTION TO COMPEL DOWN-DESIGNATION OF ATTORNEYS' EYES ONLY DOCUMENTS
4816-0262-1040v.4 0095765-000004
DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

## II.    ARGUMENT

### A.    FamilyCare does not need the documents to prove its case

FamilyCare's reason for seeking to see Health Share's information is that "FamilyCare's claims are particularly dependent on the ability to evaluate OHA's respective treatment of FamilyCare, on the one hand, and Health Share the CCO that operates in the same geographic area[.]" Motion, p. 1.  This unsubstantiated statement is inaccurate as a proposition of law, and to the extent a fact issue, rebutted by the only evidence in the record.

FamilyCare's remaining non-constitutional claim is that OHA did not provide FamilyCare with rates that were "actuarially sound."  The standard for actuarial soundness is rates that are "projected to provide for all reasonable, appropriate, and attainable costs that are required under the terms of the contract and for the operation of the MCO, PIHP, or PAHP for the time period and the population covered under the terms of the contract[.]"  42 C.F.R. § 438.4. This standard addresses the soundness of rates for a specific entity, under a specific contract, and for a specific population.  Under the standard for actuarial soundness, the structure and amounts of payments to and by another entity are irrelevant.

The evidence before this Court is also that FamilyCare does not need Health Share's information to prove its case.  David A. Neiman, an actuary who meets the Qualification Standards of the American Academy of Actuaries to issue an opinion on actuarial soundness, has testified that FamilyCare does not need Health Share's information:

> [T]he determination of whether the 2015 through 2017 Oregon Medicaid capitation rates developed by OHA are actuarially sound is not a comparative exercise between Coordinated Care Organizations.  The documentation OHA provided to FamilyCare with the rate development package provides sufficient information to FamilyCare to determine whether the rates are actuarially sound. FamilyCare does not need additional data, costs, or member information for other CCOs to determine whether the rates are actuarially sound.  Health Share's cost data, claims experience, provider pricing, pricing structures, and other information do not factor into the review of the actuarial soundness of FamilyCare's rates.  To determine whether FamilyCare's rates are actuarially

4816-0262-1040v.4 0095765-000004

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

sound, FamilyCare's actuaries or other experts in this case do not need to review Health Share's data. Declaration of David A. Neiman, ¶5; Dkt. 64.

## B. The information FamilyCare seeks is the most proprietary and commercially sensitive information

### 1. Coordinated care organizations compete on price and pricing models

Coordinated care organizations ("CCOs") compete for OHA's business. OHA's goal is to contract with the CCOs that offer the lowest cost and the best care. Of particular importance to OHA is a CCO's willingness to accept payments that are not based on a fee for a service. OHA puts special emphasis on a CCO's agreeing to, for example, make payments to providers for favorable outcomes, with the CCO's assuming the risk that the outcome can be achieved with a minimum of care. CCOs, therefore, compete with each other to develop value-based service and pricing models that OHA will find attractive. If a CCO develops a specially-attractive service model, the CCO does not want a competitor to take advantage of the innovation, Soderberg Dec., ¶6, and, in fairness, the competitor should not be able to profit off the other's ideas.

CCOs also compete for the services of health care providers. CCOs want to provide care through the best providers at the lowest prices. If one CCO knew the terms of another CCO's contracts with providers, the second CCO could lure away the first CCO's providers. Soderberg Dec., ¶6.

### 2. The information FamilyCare seeks is exactly the kind of specific information that would permit FamilyCare to compete unfairly

#### a. FamilyCare seeks information about Health Share's prices and pricing models

FamilyCare mischaracterizes Exhibit 4. FamilyCare describes Exhibit 4 as a "triangulation report" prepared by Optumas, which FamilyCare goes on to contrast with another "triangulation report," Bates # OPT00003040, that includes information Health Share added and for which "FamilyCare does not seek down-designation." Motion, p. 4 n. 3. Exhibit 4 is, in fact,

Page 4 – NON-PARTY HEALTH SHARE OF OREGON'S RESPONSE TO FAMILYCARE'S MOTION TO COMPEL DOWN-DESIGNATION OF ATTORNEYS' EYES ONLY DOCUMENTS

4816-0262-1040v.4 0095765-000004

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

just like the triangulation report at Bates # OPT00003040.  Most of Exhibit 4 is proprietary information Health Share added.  Soderberg Dec., ¶7.

A triangulation report, as prepared by Optumas, is a one- to three-page document that compares how and how much a CCO reports spending against OHA's own information about the CCO's spending.  Soderberg Dec., ¶7.  Exhibit 4 is an 11-page document.  The first two pages of Exhibit 4 include a triangulation report on Health Share's spending in 2014, Soderberg Dec., ¶7.  Contrary to Mr. Murray's testimony, the information in a triangulation report is not similar to the information made public about Health Share's finances.  A competitor can use a triangulation report to determine how much and under what methodology a CCO pays different kinds of contractors.  Soderberg Dec., ¶7.  Nevertheless, Health Share has no objection to FamilyCare's seeing the portion of Exhibit 4 that is, in fact, Optumas's triangulation report.

The last nine pages, however, are a communication from Health Share to OHA explaining in detail sums spent under different payment structures.  From Health Share's explanation, FamilyCare could deduce how much Health Share and its partners paid to providers, including the nature and amounts of the value-based services Health Share was providing.  FamilyCare could use this information to structure proposals like or better than Health Share's, thereby convincing OHA to contract with FamilyCare instead of Health Share.  Soderberg Dec., ¶7.

FamilyCare should not see portions of Exhibit 3 (which contains information from 2016) for the same reason FamilyCare should not see portions of Exhibit 4: FamilyCare could use the information to take business from Health Share.  Health Share down-designated the portions of Exhibit 3 that do not contain information with which FamilyCare could unfairly compete.  Health Share has not down-designated—and this Court should not down-designate--the portions with which FamilyCare could unfairly compete.  Exhibit 3 contains, among other proprietary information:

4816-0262-1040v.4 0095765-000004

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

- Narrative descriptions of Health Share's payment arrangements, including value-based payments (which FamilyCare could copy or try to improve upon).

- The percentage of payments under value-based payment methodologies (the more a CCO pays under value-based payment methodologies, the more likely the CCO is to attract OHA's business).

- The amount of business Health Share conducts through providers who are willing to share risks for potential rewards (the more risk accepted, the more likely a CCO is to attract OHA's business). Soderberg Dec., ¶8.

All of this information would give FamilyCare the ability to outbid Health Share in a new procurement, both in terms of price and payment methods. Soderberg Dec., ¶8.

Information about value-based payment methodologies is so commercially sensitive—if disclosed, so likely to cause substantial competitive harm—that Health Share does not even share information about value-based payment methodologies with its own contractors. Health Share contracts with health care plans and providers based in part on the plans' and providers' proposals and willingness to accept value-based payments. Health Share is careful not to disclose one plan's or provider's proposals or terms to another for the same reason Health Share's proposals and terms should not be disclosed to FamilyCare: a plan or provider could use the information to structure proposals like or better than a competitor's, thereby causing a likelihood of substantial competitive harm. Soderberg Dec., ¶9.

### b.    FamilyCare seeks Health Share's payments to providers

FamilyCare mischaracterizes Exhibit 2 and Health Share's position on Exhibit 2. There are two "regional rate models," masked and unmasked. Both models contain information about CCOs' payments aggregated into categories that are so broad as to make the information not particularly useful in competition. The "unmasked" model, however, includes more detailed information that a competitor could use to compete unfairly. Contrary to Mr. Murray's testimony, the information in the unmasked model is more detailed information to which

Page 6 – NON-PARTY HEALTH SHARE OF OREGON'S RESPONSE TO FAMILYCARE'S MOTION TO COMPEL DOWN-DESIGNATION OF ATTORNEYS' EYES ONLY DOCUMENTS

4816-0262-1040v.4 0095765-000004

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

FamilyCare should not have access. The difference between the masked and unmasked models is the inclusion in the latter unmasked model of information from which a competitor can easily determine the average amounts paid to a particular kind of provider. For example, the unmasked model will disclose the average amount per trip paid to the provider who transports patients to appointments. Even if, as was the case with the transportation provider, FamilyCare and Health Share used the same provider, FamilyCare could subtract the amount FamilyCare pays from the total to learn how and how much Health Share pays. By learning how and how much Health Share pays, FamilyCare could outbid Health Share for that provider's services or structure an arrangement with the provider more likely to be of interest to OHA than Health Share's arrangement. Soderberg Dec., ¶10.[1]

### c.    The information is not stale

The information FamilyCare seeks is also not so old as to lose its significant competitive value. Soderberg Dec., ¶11. FamilyCare does not provide any examples of how the 2020 procurement will supposedly be "dramatically changed" in a way to make data from 2016 "of marginal value." Motion, p. 8. It is not true that information that is a few years old is of marginal value. In fact, proposed changes for 2020, of which FamilyCare appears to be unaware, make data from 2016 *more* valuable than under the current procurement system. How much money a CCO has spent in the past (or how little) is a factor OHA considers when setting new rates. Under the current system, OHA looks back two years, meaning that, if OHA conducted the 2020 procurement under current procedures, OHA would in 2019 consider a CCO's data from 2017 and 2018. Based on communications with OHA, however, Health Share

---

[1] Not all categories have a single provider. The more providers in a category, such as with urban health groups, the harder it is to reverse engineer payments to an individual provider, but even knowing how and how much a CCO pays urban health groups as a group increases materially the ability of a competitor to outbid the CCO for services from those hospitals or structure an arrangement with the hospitals more likely to be of interest to OHA than Health Share's arrangement.. Soderberg Dec., ¶10.

Page 7 – NON-PARTY HEALTH SHARE OF OREGON'S RESPONSE TO FAMILYCARE'S MOTION TO COMPEL DOWN-DESIGNATION OF ATTORNEYS' EYES ONLY DOCUMENTS
4816-0262-1040v.4 0095765-000004

expects OHA to look back three years, meaning OHA will consider 2016 data in the 2020 procurement--when FamilyCare plans to reenter the market.  Soderberg Dec., ¶11.

### 3.      Mr. Murray should not see the information

The Court should be clear on FamilyCare's request and the basis—or lack thereof--for it. The information FamilyCare wants to see has been available at all times to FamilyCare's counsel and FamilyCare's experts.  Thus, FamilyCare's actuaries—the only individuals qualified to address actuarial soundness--have Health Share's most sensitive information at their disposal. The state court judge who crafted the protective order for this case considered CCOs' data so sensitive that he debarred FamilyCare's experts from participating in CCO procurements for a period of time.  Yet FamilyCare wants to see that same information in time to use the information to outbid Health Share for providers and for OHA's 2020 contract.

FamilyCare has not provided any evidence why FamilyCare employees, and Mr. Murray in particular, has such a need for Health Share's sensitive information that Health Share should suffer the disadvantage of giving FamilyCare a competitive advantage.  FamilyCare makes only the conclusory assertion that: "Mr. Murray has a deep understanding of the issues at play here, including the contours of the data anomalies alleged by FamilyCare, and his active participation is vital to FamilyCare's ability to prosecute its case."  Motion, p. 10.  FamilyCare offers no testimony suggesting FamilyCare's expert actuaries lack a sufficiently "deep understanding" of the issues.  FamilyCare offers no evidence that its expert actuaries need Mr. Murray or another FamilyCare employee to interpret the three documents at issue so they can form their expert opinions.no testimony on how FamilyCare's case would not be developed or presented adequately without Mr. Murray's seeing Health Share's secrets.  This case, therefore, presents the situation in *Brown Bag Software v. Symantec Corp.,* 960 F.2d 1465, 1472(9th Cir. 1992). There, as here, the moving party failed to demonstrate how a limitation on the party's viewing sensitive information would prejudice its case.  The court declined to order disclosure of

4816-0262-1040v.4 0095765-000004

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

information to the employee the party wanted to see the information; instead, the court permitted an outside consultant to review the information. This Court should rule the same here.

Mr. Murray is the most important individual to keep from seeing Health Share's proprietary information because he is the individual most able to use the information to Health Share's disadvantage. Soderberg Dec., ¶4. Unlike in *Santella v. Grizzly Indus., Inc.*, No. 3:12-MC-00131-SI, 2012 WL 5399970, at *6 (D. Or. Nov. 5, 2012), there is no dispute that Mr. Murray is a competitive decision-maker. Mr. Murray is FamilyCare's Chief Operating Officer and has "both extensive knowledge about Oregon's rate-setting process in general, and crucial first-hand knowledge about the context in which these documents were prepared." Motion, p. 1. Mr. Murray himself notes his long experience at running not only FamilyCare, but other CCOs. Murray Dec., ¶3. The concern with Mr. Murray, therefore, goes not just to his employment with FamilyCare, but his ability to take his knowledge to any competitor.

### 4. Health Share did not seek, want, or make competitive use of any of FamilyCare's information

Health Share has never asked for or desired to obtain FamilyCare's commercially sensitive information. It is true that OHA—apparently inadvertently—sent CCOs, including Health Share, documents of the type that would have contained commercially sensitive information of FamilyCare. Health Share, however, recognized the information as inappropriate for Health Share to have and instructed recipients to discard the information without reviewing it. To the best of Health Share's knowledge, the instructions were followed. Soderberg Dec., ¶12.

When FamilyCare chose to stop serving patients through the Oregon Health Plan, OHA turned to Health Share to take on many of FamilyCare's members. To ensure that FamilyCare's members could keep their health care providers, OHA asked Health Share to continue to honor existing provider relationships and prior authorizations of service from providers who were under contract with FamilyCare but not Health Share--at least for the few months until Health

Page 9 – NON-PARTY HEALTH SHARE OF OREGON'S RESPONSE TO FAMILYCARE'S MOTION TO COMPEL DOWN-DESIGNATION OF ATTORNEYS' EYES ONLY DOCUMENTS
4816-0262-1040v.4 0095765-000004

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

Share could enter into its own contracts with the providers. Health Share has made no other use of the information, has no interest in using the information, and will not use the information for competitive purposes. Soderberg Dec., ¶13.

Although Health Share has hired four former employees of FamilyCare, the employees were and are line workers. None of the employees was an executive or involved in FamilyCare's financial decision making or came to Health Share with commercially sensitive information. Soderberg Dec., ¶14.

### 5.     Health Share has asked OHA to treat as attorneys-eyes-only only the information necessary to prevent a likelihood of substantial competitive harm

It is not true that Health Share has designated "much of the information it provided to OHA as AEO." Motion, p. 1. Health Share has asked OHA to designate as AEO only the information that would permit a competitor (whether FamilyCare, an existing CCO, or a new market entrant) to learn Health Share's payment arrangements, both as to methods and amounts, with providers. This is the information that needs to be kept from any competitor to prevent a likelihood of substantial competitive harm. Soderberg Dec., ¶15.

### 6.     Health Share has for years consistently and explicitly taken the same position on commercially sensitive information

It is not true that Health Share failed to explain why Health Share considers the information in the documents FamilyCare seeks deserve designation as attorneys-eyes-only. Health Share has for over three years repeatedly and explicitly provided FamilyCare the explanations in this memorandum. Declaration of Gregory A. Chaimov, ¶2 ("Chaimov Dec."). FamilyCare simply refuses to accept the explanations.

Beginning in 2015, FamilyCare has, inside and outside of litigation, repeatedly asked OHA and Health Share for the information FamilyCare seeks through its motion. To address the issue, Health Share executives met with FamilyCare executives. Health Share's actuary conferred with FamilyCare's actuary. Health Share's counsel met, conferred, and corresponded

Page 10 – NON-PARTY HEALTH SHARE OF OREGON'S RESPONSE TO FAMILYCARE'S MOTION TO COMPEL DOWN-DESIGNATION OF ATTORNEYS' EYES ONLY DOCUMENTS

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

with FamilyCare's counsel more times than Health Share's counsel can count.  Chaimov Dec.,

¶3.  Health Share, consequently, more than fulfilled its responsibilities to the parties and to this

Court.

DATED this 27th day of August, 2018.

**DAVIS WRIGHT TREMAINE LLP**


By  s/GREGORY A. CHAIMOV
   Gregory A. Chaimov, OSB #822180
   gregorychaimov@dwt.com
   Christopher F. McCracken, OSB #894002
   christophermccracken@dwt.com
   Telephone: (503) 241-2300
   Facsimile: (503) 778-5299

   Attorneys for Non-Party Health Share of Oregon

Page 11 – NON-PARTY HEALTH SHARE OF OREGON'S RESPONSE TO FAMILYCARE'S MOTION TO
COMPEL DOWN-DESIGNATION OF ATTORNEYS' EYES ONLY DOCUMENTS
4816-0262-1040v.4 0095765-000004

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax