**GREGORY A. CHAIMOV, OSB #822180**
gregorychaimov@dwt.com
**CHRISTOPHER F. MCCRACKEN, OSB #894002**
christophermccracken@dwt.com
**DAVIS WRIGHT TREMAINE LLP**
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
Telephone:  (503) 241-2300
Facsimile:  (503) 778-5299

Attorneys for Non-Party Health Share of Oregon

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| FAMILYCARE, INC., an Oregon non-profit corporation,<br><br>                        Plaintiff,<br><br>            v.<br><br>OREGON HEALTH AUTHORITY, an agency of the State of Oregon, and PATRICK ALLEN, both individually and in his official capacity as director of the Oregon Health Authority, and LYNNE SAXTON Defendants. | Case No. 6:18-cv-00296-MO<br><br>**DECLARATION OF LARRY SODERBERG IN SUPPORT OF NON-PARTY HEALTH SHARE OF OREGON'S MEMORANDUM IN OPPOSITION TO FAMILYCARE, INC.'S MOTION TO COMPEL DOWN-DESIGNATION OF ATTORNEYS' EYES ONLY DOCUMENTS** |

I, Larry Soderberg, hereby declare:

1.      I am employed as the Chief Financial Officer for Health Share of Oregon ("Health Share").  I make this declaration based on personal knowledge and in opposition to FamilyCare, Inc.'s Motion to Compel.

2.      Health Share is an Oregon non-profit corporation and a certified Coordinated Care Organization ("CCO") under ORS 414.625.  As a CCO, Health Share contracts with the State of Oregon, through the Oregon Health Authority ("OHA"), to coordinate physical, mental,

and dental health services for Medicaid-eligible individuals insured under the Oregon Health Plan ("OHP") in the Tri-County Region of Multnomah, Clackamas, and Washington Counties.

3.    To prepare this testimony, I reviewed the Declaration of William Murray that supports FamilyCare's motion. As set forth below, many of Mr. Murray's statements about the nature and potential use of Health Share's information are inaccurate.

4.    The three documents FamilyCare wants to see contain the information most important for FamilyCare not to see. Mr. Murray is the most important individual to keep from seeing Health Share's proprietary information because he is the individual most able to use the information to Health Share's disadvantage.

5.    FamilyCare's description of the contested documents is not accurate. Health Share has not objected to FamilyCare's reviewing "highly aggregated data." But that is not the information FamilyCare's motion seeks. FamilyCare seeks information that would disclose Health Share's pricing strategies, pricing, and business plans—information that would permit FamilyCare to use and improve upon innovations Health Share developed to compete with Health Share in the next procurement to coordinate care, thereby causing a likelihood of substantial competitive harm. The information FamilyCare seeks is of such commercial sensitivity that knowledge of the information within Health Share is limited to a small number of individuals with the need to know the information.

6.    CCOs compete for OHA's business. OHA's goal is to contract with the CCOs that offer the lowest cost and the best care. Of particular importance to OHA is a CCO's willingness to accept payments that are not based on a fee for a service. OHA puts special emphasis on a CCO's agreeing to, for example, make payments to providers for favorable outcomes, with the CCO's assuming the risk that the outcome can be achieved with a minimum of care. CCOs, therefore, compete with each other to develop value-based service and pricing models that OHA will find attractive. If a CCO develops a specially-attractive service model, the CCO does not want a competitor to take advantage of the innovation. CCOs also compete for the services of health care providers. CCOs want to provide care through the best providers

at the lowest prices.  If one CCO knew the terms of another CCO's contracts with providers, the second CCO could lure away the first CCO's providers.

7.      Exhibit 4 is like the triangulation report referred to by Mr. Murray as being at Bates # OPT00003040.   Most of Exhibit 4 is proprietary information Health Share added.  A triangulation report, as prepared by Optumas, is a one- to three-page document that compares how and how much a CCO reports spending against OHA's own information about the CCO's spending.  Exhibit 4 is an 11-page document.  The first two pages of Exhibit 4 include a triangulation report on Health Share's spending in 2014.  The last nine pages are a communication from Health Share to OHA explaining in detail sums spent under different payment structures.  From Health Share's explanation, FamilyCare could deduce how much Health Share and its partners paid to providers, including the nature and amounts of the value-based services Health Share was providing.  FamilyCare could use this information to structure proposals like or better than Health Share's, thereby convincing OHA to contract with FamilyCare instead of Health Share.  In addition, contrary to Mr. Murray's testimony, the information in a triangulation report is not similar to the information made public about Health Share's finances.  A competitor can use a triangulation report to determine how much and under what methodology a CCO pays different kinds of contractors.

8.      FamilyCare could use portions of Exhibit 3 (which contains information from 2016) to take business from Health Share.  Exhibit 3 contains, among other proprietary information:

- Narrative descriptions of Health Share's payment arrangements, including value-based payments (which FamilyCare could copy or try to improve upon).

- The percentage of payments under value-based payment methodologies (the more a CCO pays under value-based payment methodologies, the more likely the CCO is to attract OHA's business).

- The amount of business Health Share conducts through providers who are willing to share risks for potential rewards (the more risk accepted, the more likely a CCO is to attract OHA's business).

All of this information would give FamilyCare the ability to outbid Health Share in a new procurement, both in terms of price and payment methods.

9.      Information about value-based payment methodologies is so commercially sensitive--if disclosed, so likely to cause substantial competitive harm—that Health Share does not even share information about value-based payment methodologies with its own contractors. Health Share contracts with health care plans and providers based in part on the plans' and providers' proposals and willingness to accept value-based payments.  Health Share is careful not to disclose one plan's or provider's proposals or terms to another for the same reason Health Share's proposals and terms should not be disclosed to FamilyCare: a plan or provider could use the information to structure proposals like or better than a competitor's, thereby causing a likelihood of substantial competitive harm.

10.      FamilyCare mischaracterizes Exhibit 2 and Health Share's position on Exhibit 2. There are two "regional rate models," masked and unmasked.  Both models contain information about CCOs' payments aggregated into categories that are so broad as to make the information not particularly useful in competition.  The "unmasked" model, however, includes a few columns of more detailed information that a competitor could use to compete unfairly.  Contrary to Mr. Murray's testimony, the information in the unmasked model is more detailed information to which FamilyCare should not have access.  The difference between the masked and unmasked models is the inclusion in the latter of information from which a competitor can easily determine the average amounts paid to a particular kind of provider.  For example, the unmasked model will disclose the average amount per trip paid to the provider who transports patients to appointments.  Even if, as was the case with the transportation provider, FamilyCare and Health Share used the same provider, FamilyCare could subtract the amount FamilyCare pays from the total to learn how and how much Health Share pays.  By learning how and how much Health

Page 4 – DECL. OF LARRY SODERBERG ISO NON-PARTY HEALTH SHARE OF OREGON'S RESPONSE TO FAMILYCARE'S MOTION TO COMPEL  DOWN-DESIGNATION OF ATTORNEYS' EYES ONLY DOCUMENTS
4821-7940-3632v.2 0095765-000004

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

Share pays, FamilyCare could outbid Health Share for that provider's services or structure an arrangement with the provider more likely to be of interest to OHA than Health Share's arrangement. Not all categories have a single provider. The more providers in a category, such as with urban health groups, the harder it is to reverse engineer payments to an individual provider, but even knowing how and how much a CCO pays urban health groups as a group increases materially the ability of a competitor to outbid the CCO for services from those hospitals or structure an arrangement with the hospitals more likely to be of interest to OHA than Health Share's arrangement.

11.    The information FamilyCare seeks is also not so old as to lose its significant competitive value. It is not true that information that is a few years old is of marginal value. In fact, proposed changes for OHA's 2020 procurement, of which FamilyCare appears to be unaware, make data from 2016 more valuable than under the current procurement system. A factor in the amount OHA will pay a CCO is how much (or how little) the CCO spent in the past. Under the current system, OHA looks back two years, meaning that, if OHA conducted the 2020 procurement under current procedures, OHA would in 2019 consider a CCO's data from 2017 and 2018. Based on communications with OHA, however, Health Share expects OHA to look back three years, meaning OHA will consider 2016 data in the 2020 procurement--when FamilyCare plans to reenter the market.

12.    Health Share has never asked for or desired to obtain FamilyCare's commercially sensitive information. It is true that OHA—apparently inadvertently—sent CCOs, including Health Share, documents of the type that would have contained commercially sensitive information of FamilyCare. Health Share, however, recognized the information as inappropriate for Health Share to have and instructed recipients to discard the information without reviewing it. To the best of Health Share's knowledge, the instructions were followed.

13.    When FamilyCare chose to stop serving patients through the Oregon Health Plan, OHA turned to Health Share to take on many of FamilyCare's members. To ensure that FamilyCare's members could keep their health care providers, OHA asked Health Share to

continue to honor existing provider relationships and prior authorizations of service from providers who were under contract with FamilyCare but not Health Share--at least for the few months until Health Share could enter into its own contracts with the providers. Health Share has made no other use of the information, has no interest in using the information, and will not use the information for competitive purposes.

14.    Although Health Share has hired four former employees of FamilyCare, the employees were and are line workers. None of the employees was an executive or involved in FamilyCare's financial decision making or came to Health Share with commercially sensitive information.

15.    Health Share has asked OHA to designate as AEO only the information that would permit a competitor (whether FamilyCare, an existing CCO, or a new market entrant) to learn Health Share's payment arrangements, both as to methods and amounts, with providers. This is the information that needs to be kept from any competitor to prevent a likelihood of substantial competitive harm.

*In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.*

DATED this 27th day of August, 2018

Larry Soderberg

4821-7940-3632v.2 0095765-000004    DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax