# PERKINS COie

1120 NW Couch Street
10th Floor
Portland, OR 97209-4128

**T** +1.503.727.2000
**F** +1.503.727.2222
PerkinsCoie.com

April 25, 2018

Alletta S. Brenner
ABrenner@perkinscoie.com
D.   +1.503.727.2076

**VIA HAND DELIVERY**

Judge Michael Mosman
Mark O. Hatfield United States Courthouse
Room 1615
1000 Southwest Third Avenue
Portland, Oregon 97204-2945

**Re:    Allen v. FamilyCare/FamilyCare v. OHA (3:18-cv-00212-MO, 6:18-cv-00296-MO))**
**Update on Status of Confidentiality Designation Issues**

Dear Judge Mosman:

In advance of the status conference scheduled for April 26, FamilyCare writes to provide the Court with an update on the parties' progress in resolving issues relating to the use of the Attorney's Eyes Only (AEO) designation in this case.

In the discussion on April 6, the Court suggested, in light of OHA's marking of (at that time) over 18,000 documents as AEO and over 50,000 documents as Confidential, that the Coordinated Care Organizations (CCOs) revisit the issue of these designations with OHA. The CCOs, whose information is at issue, were asked to review what documents they were designating, with the expectation that there would be "substantial" progress in addressing this over-designation issue by the next scheduled status hearing on April 26. As discussed in further detail below, it appears that that expectation has not been met.

Considering the Court's ruling, and in the interest of avoiding further delay to its review of documents in this case, FamilyCare has taken multiple, concrete steps to support the expedient resolution of these issues. During the last three weeks, FamilyCare has met in-person with counsel for the CCOs as a group, and communicated with them individually by letter, email and in some cases by phone about the scope and impact of over-designation in this case. In addition, at the CCOs' request, FamilyCare set forth a specific proposal agreeing, for the time being, to accept the designation of certain categories of information, and provided additional details and specific exemplars to each of the CCOs regarding types of documents it believes have been over-designated. (*See* Exhibit 1 (April 13 letter).)[1] Aside from these efforts, FamilyCare has sought

_____

[1] FamilyCare attaches its letter to the CCOs. Although FamilyCare believes that none of the encounter data is a trade secret and should be designated as AEO, it made this offer in the interest of attempting to resolve this issue so that the documents could be produced and the parties could move forward. We have not included the emails

Exhibit 4
Page 1 of 12

Judge Michael Mosman
April 25, 2018
Page 2

information from OHA about what is being done to address this issue, and more importantly, about the scope of what it expects to de-designate and the timeframe within which that process will be complete. (*See* Exhibit 2 (conferral emails).)

Despite FamilyCare's efforts to promote a timely response to the Court's instruction, progress on this issue has been limited and uncertain. To date, only a handful of CCOs have responded to FamilyCare's specific proposals and examples.  And, of these, none have clearly indicated the parameters of their disagreement, if any, with FamilyCare's suggestions for how AEO designation might be more reasonably used and limited in this case.  Moreover, although OHA states that it is reviewing and validating its document designations, and that it has plans to de-designate 7,000 documents so far, its process for doing so and the timeframe for completion are unclear.  As of the time of this letter, OHA has provided only the barest of information about its plans to de-designate documents, no information about its criteria for doing so, no information about when it expects that process to be complete and no information about what steps are being taken to prevent the repetition of these problems in the future.

Based on what OHA has communicated, and some additional details we have learned from conferral with the CCOs, OHA has now, for the first time, provided the CCOs with copies of AEO documents to review, with the expectation that they will determine the extent of over-designation and instruct OHA on how certain documents should be down-designated.  In addition, OHA states that it has been engaging in its own internal examination of designations. FamilyCare believes that this response to the Court's directive is inadequate for several reasons.

First, as we understand it, the only documents OHA has provided CCOs to review are those that relate uniquely to the receiving CCO.  However, more than half of the documents that have been designated as AEO so far relate to either multiple CCOs, or none at all. FamilyCare is unaware of what process, if any, OHA is using to address the over-designation of those documents, beyond reviewing the examples that we have identified. But FamilyCare has previously identified hundreds of over-designated documents for OHA with limited results, and in past conferrals, OHA has stated that no additional measures can be taken to reduce over-designation without further specific instructions from the CCOs. In addition, FamilyCare's conferrals with OHA and the CCOs strongly suggest that the parties continue to disagree on what kinds of information may be appropriately designated as AEO. Given that many of these documents relate to key aspects of the rate-setting process, OHA's failure to communicate what meaningful steps

---

exchanged with each of the CCOs individually here, but can provide them upon request.  Aside from further clarifying and discussing FamilyCare's concerns with AEO over-designation and the process for remedying it, these emails included sample over-designated documents (containing information relating solely to the receiving CCO), as well as descriptions and bates numbers for dozens of over-designated documents pertaining to multiple CCOs.

139567805.2
Perkins Coie LLP

Exhibit 4
Page 2 of 12

Judge Michael Mosman
April 25, 2018
Page 3

are being taken obtain clarification from the CCOs and what is being doing to address their systemic over-designation, both remedially and going forward, is a point of significant concern.[2]

Second, the timeline for when the current CCO document review process will be complete is unclear at best, and likely to be prolonged.  From what we can discern, the CCOs have not reviewed any documents yet, as OHA only began providing documents a few days ago and, before any designation review takes place, the CCOs are first having them reviewed by counsel to confirm that no information belonging to another CCO has been disclosed. Furthermore, once that process is complete (and assuming there are no further disputes about what should be designated), it will be up to OHA to implement these de-designations, a process that has previously taken OHA three weeks or longer to complete. And, FamilyCare has received no indication that the CCOs, or OHA, are engaging in any form of activity to address the over-designation of tens of thousands of documents as Confidential.  (This is all with depositions ongoing, and with OHA's most significant witnesses set to be deposed starting in the next few weeks.)

Meanwhile, the over-designation of documents continues with each new production. In the last month, OHA has produced thousands of additional documents marked as AEO, and thousands more marked as Confidential, many of which appear to be similarly inappropriate in their designation. Indeed, although OHA's 37th production, delivered yesterday, contains only a few dozen AEO documents, that collection includes egregious examples of over-designation, including the wholesale designation of entire document families, and the designation of non-confidential public information, such as: documents sent to all CCOs; copies of the CCOs' 2018 contract amendments; and documents discussing overall CCO enrollment figures (which are publicly posted on OHA's website).

To summarize, although FamilyCare's knowledge of the process underway is limited, there is reason to believe that discovery will be nearly over by the time significant progress has been made in remedying the existing over-designation of documents and that problems of a similar magnitude will continue to occur.

Given this uncertain outcome, and the parties' lack of agreement on the scope of what information should be de-designated, it is apparent to FamilyCare that further judicial intervention is needed.  Specifically, FamilyCare asks that the Court set a date certain by which the review and de-designation of documents must be complete, and provide specific instructions defining what kinds of information may be treated as AEO (and confidential) in this case.

---

[2] This morning, OHA finally notified FamilyCare that it plans to de-designate about 7,000 documents and that it is currently validating its designation of another 8,000 documents.  From what we can tell, these figures overlap with the 10,000 documents being currently reviewed by the CCOs. As a result, it is unclear whether all 23,000+ AEO documents produced thus far are actually being re-reviewed, and if so, by whom and with what process.

139567805.2
Perkins Coie LLP

Exhibit 4
Page 3 of 12

Judge Michael Mosman
April 25, 2018
Page 4

FamilyCare's Omnibus Discovery Motion and accompanying exhibits set forth the reasons why such relief is appropriate in detail. However, a few points warrant further note. First, because the rate-setting process relies on historical data that is trended forward, the information at issue—data relating to the cost and utilization of medical services—is of limited competitive use in the first place. In this case, the rates at issue (for CY2017 and CY2018) were set using data from 2015 and 2016. Although helpful for understanding how and why the rates were set in a certain way, most of this information is already stale from a competitive standpoint, and will be even more so in 2019, the earliest date at which FamilyCare may theoretically begin bidding for the next Medicaid contract cycle to begin operating again in 2020. *See Biles v. Dep't of Health and Human Servs*, 931 F. Supp. 2d 211, 225-226 (D.D.C. 2013) (holding that substantially similar data was stale after two years).

Second, most of the information at issue is highly aggregated, further limiting its competitive value. *See id.* at 229 and n.24. For, to the extent that the rate-setting documents at issue (emails and spreadsheets showing how data received from the CCOs was trended and manipulated in the rate-setting process) do contain information relating to a specific CCO, that information is almost always summarized at a high-level. For example, many of these documents only include gross numbers according to broad categories, such as expenditures by category of aid (types of people who are eligible for Medicaid) or by category of service (general types of medical services, such as inpatient hospital, primary care, etc.). Enclosed for the Court's reference is an exhibit showing examples of the kinds of aggregation described herein. (Exhibit 3 (sample spreadsheet).) Aside from the fact that much of this information is already available in substantially similar form in the public domain, data aggregated at this level of generality is of marginal use from a competitive standpoint because it lacks sufficient detail to reveal anything specific about a CCO's contracting practices or business strategy.

Third, to the extent that some CCOs may argue that FamilyCare would gain an unfair competitive advantage from the disclosure of their information, that purported inequity is belied by the past and ongoing disclosures of FamilyCare's information to other CCOs. FamilyCare has recently learned from documents produced in discovery that not only has OHA shared certain rate-setting documents relating to FamilyCare with other CCOs, it has had a practice of routinely sharing other information about FamilyCare's business and provider network—information that is materially similar to that for which some CCOs are now seeking trade secret protections— upon request. For example, we have now learned that OHA has been sharing detailed information about FamilyCare's claims and encounter data (which includes what was paid to individual providers for specific types of services rendered) with each of the CCOs that have received former FamilyCare members following the closure of its Medicaid business on January 31 (Health Share, Willamette Valley Community Health and Yamhill Community Care Organization). And, previously, OHA had a practice of providing detailed information about

Exhibit 4
Page 4 of 12

Judge Michael Mosman
April 25, 2018
Page 5

FamilyCare's provider network to other CCOs, and indeed provided such information to Health Share in 2015, 2016 and again in late 2017, years and months before FamilyCare announced its exit from the marketplace. Given this extraordinary and preexisting information asymmetry, there is no reason why the same information for these CCOs should not be freely provided to FamilyCare to allow it to fully and fairly litigate its claims in this case.

FamilyCare appreciates the Court's attention to these issues. To the extent that any further information or explanation would be helpful to the Court's analysis, please let us know and we would be happy to provide it.

Very truly yours,

Alletta S. Brenner

ASB
Encl.

Cc :    Matthew Levin, Markowitz Herbold (via email)
        Renee Rothauge, Markowitz Herbold (via email)
        Harry Wilson, Markowitz Herbold (via email)
        Laura Salerno Owens, Markowitz Herbold (via email)
        David B. Markowitz, Markowitz Herbold (via email)
        Brian M. Parrott, Brian M Parrott LLC (via email)
        Elizabeth C. Knight, Dunn Carney Allen (via email)
        Michael D. Crew, Dunn Carney Allen (via email)
        Anna Sortun, Tonkon Torp LLP (via email)
        Daniel P. Larsen, Ater Wynne LLP (via email)
        Frank V. Langfitt III. Miller Nash Graham & Dunn LLP (via email)
        Gregory A. Chaimov, Davis Wright Tremaine LLP (via email)
        Christopher McCracken, Davis Wright Tremaine LLP (via email)
        W. Chris Jenkins, Samaritan Health Services (via email)
        Tyler G. Jacobsen, Samaritan Health Services (via email)
        Eric A Lindenauer, Garvey Schubert Barer (via email)
        Joel A. Parker, Schwabe Williamson & Wyatt PC (via email)
        Jeffrey D. Hern, Schwabe Williamson & Wyatt PC (via email)
        Arden J. Olson, Harrang Long Gary Rudnick PC (via email)
        Peter F. Stoloff, Peter F Stoloff PC (via email)

139567805.2
Perkins Coie LLP

Exhibit 4
Page 5 of 12

**PERKINS COIE**

1120 NW Couch Street
10th Floor
Portland, OR 97209-4128

T   +1.503.727.2000
F   +1.503.727.2222
PerkinsCoie.com

April 13, 2018

Thomas R. Johnson
TRJohnson@perkinscoie.com
D.  +1.503.727.2176
F.  +1.503.346.2176

**VIA EMAIL AND MAIL**

Gregory Chaimov
Davis Wright Tremaine, LLP
Suite 2400
1300 SW Fifth Avenue
Portland, Oregon 97201-5610

**Re:    FamilyCare v. OHA: CCO Attorney's Eyes Only Designations**

Dear Greg:

Thank you for coming to our office this week to confer with us on these issues. FamilyCare appreciates the efforts of Health Share, and of the other CCOs, to remedy the over-designation of documents as Attorney's Eyes Only (AEO) and Confidential in this litigation.

For efficiency's sake, we are directing this correspondence to you as the informal representative for all the CCOs (with copies to the others).  However, per your request and in the interest of aiding progress on these issues, we will also follow up with each CCO individually, by email, with specific examples of the kinds of over-designation we have been observing.

As discussed, it is FamilyCare's position that few, if any, of the documents produced in this case warrant AEO designation, due in part to FamilyCare's exit from Oregon's Medicaid market in 2018, the staleness of the historical data in question, and the information asymmetries that already exist. Therefore, notwithstanding any agreement the parties may reach on the designation of documents, FamilyCare continues to reserve all rights as to whether such information qualifies as a trade secret under Oregon law and whether it should be marked AEO.

Nonetheless, in the interest of resolving these issues expediently, FamilyCare is willing to accept some degree of AEO designation, to the extent that it is appropriately limited, does not unreasonably hinder FamilyCare's ability to litigate its claims, and is not implemented in a way that ultimately shifts the burden of confidentiality review.  FamilyCare will agree to the use of AEO designation for the following documents and information:

1.  Detail claim or encounter data at the individual provider-patient specific level of service (e.g. encounter data submissions by CCOs to OHA as required under the CCO contract);

139407506.1
Perkins Coie LLP

Exhibit 1
Page 1 of 4
Exhibit 4
Page 6 of 12

Gregory Chaimov
April 13, 2018
Page 2

2. Individual provider level contract payment or reimbursement terms, to the extent those terms are confidential (e.g. contract pricing term sheets between a CCO and an individual contracted provider);

3. Detailed financial information, to the extent that it is <u>both</u> competitively valuable and not otherwise publicly available, or available in a substantially similar format (e.g. Report L16 from the CCO Financial Reporting Template that contains a breakdown of alternative payment arrangements by provider);[1]

4. Portions of documents that reference the data identified above, *to the extent those references include similar levels of detail*.[2]

With respect to category 4 above (document containing information identified in categories 1-3), documents should be produced in redacted form (as well as in full and marked AEO), so that FamilyCare may review the other, non-AEO information contained within the same document. Likewise, document families that contain one or more AEO document should also be produced in redacted form (e.g. with a slipsheet for the AEO documents), to allow access to the other non-AEO documents in the same family without breaking the family.

As previously noted, FamilyCare does not object to marking documents as Confidential where appropriate (e.g. where the document contains Protected Health Information, or contains other confidential information that a CCO is legally obligated to protect from disclosure). That said, as noted in FamilyCare's motion, there appear to be over-designation problems in this category as well. To the extent this continues to be a problem, FamilyCare will likely need to revisit this issue as we move towards trial.

One of FamilyCare's biggest concerns is the way OHA appears to have been marking documents as AEO without reference to the information contained in the document (or lack thereof). As described in our meeting, FamilyCare has observed many instances where individual documents have been marked as AEO even when that designation was plainly inappropriate, for example, when a FamilyCare representative was included on the communication in question, or when the document expressly referenced the fact it is publicly available. FamilyCare has found numerous examples of important emails between OHA and Optumas regarding rate-setting issues where the email has been marked as AEO, even though there is no reference to any CCO in particular, and/or there is no actual data or information in the email.

FamilyCare is not in a position to tell OHA, or the CCOs, how to fix these issues. That said, it is apparent to us that OHA needs to be provided with more specific instructions about how

---

[1] Based on our review of AEO documents thus far, documents of this type appear to be relatively rare.

[2] Again, in our review thus far, documents of this type appear to be relatively rare, as in almost every case, this kind of information is referred to in a highly aggregated or summary manner.

Exhibit 1
Page 2 of 4
Exhibit 4
Page 7 of 12

Gregory Chaimov
April 13, 2018
Page 3

documents should be marked. From FamilyCare's standpoint, this can only be achieved if the CCOs define what is AEO more narrowly. FamilyCare's proposal above attempts to achieve that objective.  In addition, FamilyCare strongly encourages the CCOs to supplement any further instructions to OHA with specific exemplars to assist its reviewers in understanding and distinguishing between information that is protectable and that which is not.

You also requested that FamilyCare provide examples of documents that it believes should <u>not</u> be designated, so that the CCOs can use that information to help inform their communications with OHA.  As noted in our meeting, FamilyCare has concerns about this request. While FamilyCare can provide some examples based on what it has reviewed thus far, those examples will be far from comprehensive. And, FamilyCare neither can, or will, assume responsibility for identifying all the myriad ways that OHA has over-designated documents in this case.  With these caveats, however, FamilyCare is willing to provide some further examples of over-designated documents, which it will soon do, as noted above.

Likewise, although FamilyCare cannot identify all the ways documents have been over-designated so far, we do note the following types of information that, in FamilyCare's view, should <u>not</u> be designated AEO:

- Claims, encounter and utilization data that is aggregated by category of service and/or category of aid;

- Documents that reference *topics* related to AEO information (e.g. rate of growth, expenditures for care, rate-setting), but do not contain any specific information that that *is* AEO (e.g. provider-specific information about what is paid in an individual case for certain services); and

- Information that is not confidential, including, but not limited to, information available in the public domain in substantially similar form (e.g. CCO financial statements, enrollment data, actuarial opinions, MLR information and information contained within various OHA publications, including but not limited to, Oregon's Primary Care Spending Report, Quality Metrics Reports and Oregon Medicaid Waiver reports).

Thank you again for your prompt attention to this matter.

Exhibit 1
Page 3 of 4

Exhibit 4
Page 8 of 12

Gregory Chaimov
April 13, 2018
Page 4


Very truly yours,


Thomas R. Johnson

cc:     Brian M. Parrott, Brian M Parrott LLC (via email)

        Elizabeth C. Knight, Dunn Carney Allen (via email)

        Michael D. Crew, Dunn Carney Allen (via email)

        Anna Sortun, Tonkon Torp LLP (via email)

        Daniel P. Larsen, Ater Wynne LLP (via email)

        Frank V. Langfitt III. Miller Nash Graham & Dunn LLP (via email)

        Gregory A. Chaimov, Davis Wright Tremaine LLP (via email)

        Christopher McCracken, Davis Wright Tremaine LLP (via email)

        W. Chris Jenkins, Samaritan Health Services (via email)

        Tyler G. Jacobsen, Samaritan Health Services (via email)

        Eric A Lindenauer, Garvey Schubert Barer (via email)

        Joel A. Parker, Schwabe Williamson & Wyatt PC (via email)

        Jeffrey D. Hern, Schwabe Williamson & Wyatt PC (via email)

        Arden J. Olson, Harrang Long Gary Rudnick PC (via email)

        Peter F. Stoloff, Peter F Stoloff PC (via email)

Exhibit 1
Page 4 of 4
Exhibit 4
Page 9 of 12

**From:** Brittany M. Simpson
**To:** Brenner, Alletta S. (POR)
**Cc:** Johnson, Thomas R., Jr. (POR); Matt Levin
**Subject:** RE: FamilyCare v. OHA: Need for conferral on AEO de-designation
**Date:** Wednesday, April 25, 2018 9:15:32 AM

Alletta,

We have provided 10,000 documents to the CCOs' counsel, divided by CCO for them to confirm or change designations. To date we have dedesignated approximately 7,000 documents, including most of the documents FamilyCare identified previously. We are conducting additional validation of about 8,000 documents.

As we understand it, Perkins Coie has only provided a handful of example documents to the CCOs since the hearing. Although we are confident in the process that we have engaged in without you, if there are any remaining documents you have identified that should be dedesignated send us a list today.

Best,

Brittany M. Simpson | Lawyer

Markowitz Herbold PC

1211 SW Fifth Avenue, Suite 3000 | Portland, OR  97204-3730

T (503) 295-3085 |  <https://urldefense.proofpoint.com/v2/url?u=http-3A__www.markowitzherbold.com_&d=DwMF-g&c=XRWvQHnpdBDRh-yzrHjqLpXuHNC_9nanQc6pPG_SpT0&r=lbhPi3Pr94RAPFadNJFa6YPY96vWHPRSaSidkVu3P5o&m=BCzqXdzsKmtgPeit9Vrqr4NplCsuf8fhfEl7FQ0OaQs&s=ZoOFtq6RiGk8arGhY22gqxtmL_CdvzBk-sSzNdOTvgc&e=> Web

CONFIDENTIALITY NOTICE: The information contained in this transmission is confidential. It may also be subject to the attorney-client privilege or be privileged work product or proprietary information. This information is intended for the exclusive use of the addressee(s). If you are not the intended recipient, you are hereby notified that any use, disclosure, dissemination, distribution (other than to the addressee(s)), copying or taking of any action because of this information is strictly prohibited.

From: Brenner, Alletta S. (Perkins Coie) [mailto:ABrenner@perkinscoie.com]
Sent: Tuesday, April 24, 2018 10:05 AM
To: Brittany M. Simpson
Cc: Johnson, Thomas R., Jr. (Perkins Coie); Matt Levin
Subject: FamilyCare v. OHA: Need for conferral on AEO de-designation

Brittany,

I understand that after the rescheduling of yesterday's conferral, Tom and Matt are working on finding another date to confer on a variety of issues.  However, in advance of the scheduled hearing with Judge Mosman on April 26, we need information on the steps that OHA has taken with respect to the designation of documents as AEO following the court's ruling on April 6. We have been in communication with the CCOs on this issue and they have represented that OHA has been working with them to review and de-designate documents.  We have not heard anything, however, from OHA about the scope of these efforts, the process being utilized, and more importantly, the number of documents to be de-designated and the timeframe within which that process will be complete.

Please provide us with an update on these points by the end of the day today.

Best,

Alletta

Alletta Brenner | Perkins Coie LLP

ASSOCIATE ATTORNEY

D. +1.503.727.2076

F. +1.503.727.2222

E.  <mailto:%20ABrenner@perkinscoie.com> ABrenner@perkinscoie.com

_____

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents. Thank you.

Exhibit 2
Page 1 of 1
Exhibit 4
Page 10 of 12

Summary of FamilyCare Data Request

| I. Enrollment Data | | | | | |
|---|---|---|---|---|---|
| **Measurement Unit** | **Frequency** | **By Benefit Coverage** | **By Expenditure Type** | **By Category of Service** | **By Category of Aid** |
| Member Months | By Month | Physical Health | Not Applicable | Not Applicable | TANF |
| | | Behavioral Health | | | PLMA |
| | | Dental | | | Child 0-1 |
| | | | | | Child 1-5 |
| | | | | | Child6-18 |
| | | | | | ABAD & OAA Duals |
| | | | | | ABAD & OAA Medicaid Only |
| | | | | | CAF |
| | | | | | ACA 19-44 |
| | | | | | ACA 45-54 |
| | | | | | ACA-55.64 |
| | | | | | SNRG |

| II. Expenditures Data | | | | | |
|---|---|---|---|---|---|
| **Measurement Unit** | **Frequency** | **By Benefit Coverage** | **By Expenditure Type** | **By Category of Service** | **By Category of Aid** |
| Dollars | By Year | Not Applicable | Expenditures (Not Sub-Capitated) | Inpatient - A & B Hospital | TANF |
| | | | Expenditures (Sub-Capitated) | Inpatient - DRG Hospital | PLMA |
| | | | Expenditures (Maternity) | Inpatient - Other | Child 0-1 |
| | | | IBNR | Outpatient - A & B Hospital | Child 1-5 |
| | | | Quality Pool | Outpatient - DRG Hospital | Child6-18 |
| | | | Other Incentives | Outpatient - Other | ABAD & OAA Duals |
| | | | Case Management | Primary Care Physician | ABAD & OAA Medicaid Only |
| | | | Inten. Case Management | Non-Primary Care Physician | CAF |
| | | | PCPCH | Substance Abuse | ACA 19-44 |
| | | | Flexible Services | Prescription Drugs | ACA 45-54 |
| | | | Other Payment1 | DME and Miscellaneous | ACA-55-64 |
| | | | | Mental Health Services Inpatient | SNRG |
| | | | | Applied Behavior Analysis (ABA) | |
| | | | | ACT/SE | |
| | | | | A&D Residential | |
| | | | | MH Children's Wraparound | |
| | | | | CANS | |
| | | | | Mental Health Other Non-Inpatient | |
| | | | | Dental | |
| | | | | NEMT | |

| III. Utilization Data | | | | | |
|---|---|---|---|---|---|
| **Measurement** | **Frequency** | **By Benefit Coverage** | **By Expenditure Type** | **By Category of Service** | **By Category of Aid** |
| Units/1000 Mbr Months | By Year | Not Applicable | Not Applicable | Inpatient - A & B Hospital | TANF |
| | | | | Inpatient - DRG Hospital | PLMA |
| | | | | Inpatient - Other | Child 0-1 |
| | | | | Outpatient - A & B Hospital | Child 1-5 |
| | | | | Outpatient - DRG Hospital | Child6-18 |
| | | | | Outpatient - Other | ABAD & OAA Duals |
| | | | | Primary Care Physician | ABAD & OAA Medicaid Only |
| | | | | Non-Primary Care Physician | CAF |
| | | | | Substance Abuse | ACA 19-44 |
| | | | | Prescription Drugs | ACA 45-54 |
| | | | | DME and Miscellaneous | ACA-55-64 |
| | | | | Mental Health Services Inpatient | SNRG |
| | | | | Applied Behavior Analysis (ABA) | |
| | | | | ACT/SE | |
| | | | | A&D Residential | |
| | | | | MH Children's Wraparound | |
| | | | | CANS | |
| | | | | Mental Health Other Non-Inpatient | |
| | | | | Dental | |
| | | | | NEMT | |

Exhibit 3
Page 1 of 2

Exhibit 4
Page 11 of 12

**Grocery Store Analogy**

| I. Customer Data | | | | | |
|---|---|---|---|---|---|
| **Measurement Unit** | **Frequency** | **By Customer Type** | **By Method of Payment** | **By Department** | **By Store** |
| Customer Count | By Month | In-store Customer | Not Applicable | Not Applicable | Store 1 |
| | | Online Pick-up Customer | | | Store 2 |
| | | | | | Store 3 |
| | | | | | Store 4 |
| | | | | | Store 5 |

| II. Expenditures Data | | | | | |
|---|---|---|---|---|---|
| **Measurement Unit** | Frequency | By Customer Type | **By Expenditure Type** | **By Department** | **By Store** |
| Dollars | By Year | Not Applicable | Cash | Produce | Store 1 |
| | | | Check | Meat/Seafood | Store 2 |
| | | | Store-sponsored Credit Card | Dairy | Store 3 |
| | | | Other Credit Card | Bakery | Store 4 |
| | | | | Household | Store 5 |
| | | | | Frozen Foods | |
| | | | | Packaged Foods | |
| | | | | Deli | |

| III. Utilization Data | | | | | |
|---|---|---|---|---|---|
| **Measurement** | Frequency | **By Customer Type** | **By Expenditure Type** | **By Department** | **By Store** |
| Ave number of items sold per customer | By Year | Not Applicable | Not Applicable | Produce | Store 1 |
| | | | | Meat/Seafood | Store 2 |
| | | | | Dairy | Store 3 |
| | | | | Bakery | Store 4 |
| | | | | Household | Store 5 |
| | | | | Frozen Foods | |
| | | | | Packaged Foods | |
| | | | | Deli | |

Exhibit 3
Page 2 of 2

Exhibit 4
Page 12 of 12