**PETER R. MERSEREAU,** OSB No. 732028
pmersereau@mershanlaw.com
**BETH F. PLASS,** OSB No. 122031
bplass@mershanlaw.com
MERSEREAU SHANNON LLP
111 SW Columbia Street, Suite 1100
Portland, Oregon 97201-5865
Telephone: 503.226.6400
Facsimile: 503.226.0383

      Of Attorneys for Defendant
Lynne Saxton

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **FAMILYCARE, INC.**, an Oregon non-profit corporation,<br><br>    Plaintiff,<br><br>  v.<br><br>**OREGON HEALTH AUTHORITY**, an agency of the State of Oregon, and **PATRICK ALLEN**, both individually and in his official capacity as director of the Oregon Health Authority, and **LYNNE SAXTON**,<br><br>    Defendants. | Case Nos.  6:18-cv-00296-MO<br><br>DEFENDANT LYNNE SAXTON'S MOTION FOR SUMMARY JUDGMENT<br><br>*ORAL ARGUMENT REQUESTED* |

**LR 7-1 CERTIFICATE**

Pursuant to Local Rule 7-1(a) the parties have made a good faith effort to resolve this dispute but have been unable to do so.

**MOTION**

Defendant Lynne Saxton ("Saxton") moves this Court for an Order granting summary judgment under Federal Rule of Civil Procedure 56 in her favor against plaintiff FamilyCare,

Inc.'s ("FamilyCare") first claim for relief against her in the Fourth Amended Complaint. The grounds for this motion are that there is no genuine dispute as to any material fact and Saxton is entitled to judgment as a matter of law.

In support of this motion, Saxton relies on the argument and authority below, together with: the declaration of Lynne M. Saxton; Oregon Health Authority ("OHA") and Patrick Allen's Motion for Summary Judgment (dkt. 149) together with attached declarations and exhibits in support; OHA and Patrick Allen's Reply in Support of Motion for Summary Judgment (dkt. 245) together with attached declarations and exhibits in support; and the pleadings and record of this case.

## INTRODUCTION

FamilyCare is dissatisfied with the amount of a limited pool of taxpayer money it received from the government to fund its Medicaid business. FamilyCare generally complains that OHA made actuarial errors that resulted in low rates for FamilyCare. In the Fourth Amended Complaint, FamilyCare brings a single federal claim against Saxton. FamilyCare alleges that Saxton retaliated against FamilyCare on account of FamilyCare's alleged protected speech – complaints about its own treatment under the terms of its contract with OHA. This Court should grant summary judgment in favor of Saxton on FamilyCare's claim because Saxton's conduct neither violated FamilyCare's First Amendment rights, nor is FamilyCare's theory of speech retaliation clearly established under the law.

## SUMMARY JUDGMENT STANDARDS

A court must grant summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The existence of a factual dispute between the parties is

PAGE 2 -    DEFENDANT LYNNE SAXTON'S MOTION FOR SUMMARY JUDGMENT

insufficient to defeat a motion for summary judgment. "Likewise, mere allegation and speculation do not create a factual dispute for purposes of summary judgment." *Nelson v. Pima Community College*, 83 F.3d 1075, 1081-82 (9th Cir. 1996). To defeat a motion for summary judgment, there must be a genuine issue of fact which means that the disputed evidence would be sufficient to support a reasonable jury verdict for the plaintiff. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 245-52 (1986). As described below, there are no genuine issues of material fact which would allow FamilyCare to proceed to trial, and Saxton is entitled to summary judgment as a matter of law on FamilyCare's first claim for relief.

## BACKGROUND

### I.    Oregon's Medicaid Program

Medicaid offers federal funds to states, like Oregon, to provide medical assistance programs to low-income, elderly, and disabled individuals. Dkt. 112, 4th Am. Compl. ¶ 6. The Centers for Medicare & Medicaid Services ("CMS") oversees the Medicaid Program. *Id.*

OHA administers Oregon's Medicaid program and operates as a demonstration project under Section 1115 of the Social Security Act. *Id.* at ¶ 8. The terms of Oregon's demonstration project are governed by the terms of a Section 1115 waiver. *Id.* Under the waiver's terms, OHA contracts with Coordinated Care Organizations ("CCOs"), which in turn contract with health care providers. *Id.* at ¶ 10.

OHA funds the cost of those services by making capitation payments (also called per member, per month, or PMPM payments), which are set on a yearly basis. *Id.* The CCOs then compensate providers. During the time that gives rise to FamilyCare's sole claim against Saxton, FamilyCare was one of the 16 Coordinated Care Organizations ("CCOs").

///

///

PAGE 3 -        DEFENDANT LYNNE SAXTON'S MOTION FOR SUMMARY JUDGMENT

## II.    Lynne Saxton's Tenure at OHA

Lynne Saxton was employed as the director of OHA from January 2015 to August 31, 2017. Declaration of Lynne Saxton ("Saxton decl.") ¶ 1. OHA oversees most of Oregon's health-related programs including behavioral health, public health, the Oregon State Hospital, and the state's Medicaid program. *Id.* at ¶ 2. In her position, Saxton set high level policy which applied to all CCOs, including FamilyCare. *Id.* at ¶ 3. Saxton did not personally and substantively participate in the rate work itself. *Id.* at ¶ 4.

During her tenure, OHA struggled to explain the highly complex Medicaid rate setting process to the public. Saxton decl. ¶ 5. Also, commencing in late 2016, FamilyCare spelled out in detail the claims it planned to bring against OHA related to the aforementioned Medicaid rate setting issues. *Id.* Accordingly, Saxton asked her staff to come up with a communications plan that would provide protocols for communicating with stakeholders, the legislature, and the public about the rate setting process and OHA's policies regarding Medicaid funding. *Id.* To that end, Saxton asked BethAnne Darby ("Darby"), director of the external relationships division at OHA, to develop a communications plan. *Id.* at ¶ 6. Darby, in turn, tasked Courtney Crowell ("Crowell") to work on this project. *Id.* Crowell created a draft communications plan. *Id.* After Crowell created the draft, Darby forwarded it to Saxton on January 26, 2017.

Saxton reviewed Crowell's draft several weeks later when she was on an airplane. Saxton decl. ¶ 7. The draft did not meet Saxton's goals or OHA's standards. *Id.* Shortly after reviewing the draft, Saxton met with Darby. Saxton decl. ¶ 8. Saxton expressed that the draft communications plan did not meet her expectations. *Id.* Saxton and Darby agreed that the draft communications plan would not be used and that it would be shelved.

As director of OHA, Saxton did not take any action or make any decision regarding FamilyCare in retaliation for FamilyCare's alleged speech and conduct set forth in paragraph 83 of the Fourth Amended Complaint, nor did Saxton direct anyone at OHA to do so. Saxton decl.

PAGE 4 -    DEFENDANT LYNNE SAXTON'S MOTION FOR SUMMARY JUDGMENT

¶ 9.

## ARGUMENT AND AUTHORITY

FamilyCare alleges that Saxton retaliated against it in violation of FamilyCare's First Amendment rights. FamilyCare's claim against Saxton is barred in substantial part by the Settlement Agreement and the statute of limitations. To the extent the claim against Saxton is not otherwise barred, FamilyCare's claim still fails: Saxton did not violate FamilyCare's First Amendment rights and, even if she did, Saxton is entitled to qualified immunity. For any or all of these reasons, Saxton is entitled to summary judgment in her favor.

### I. FamilyCare's claim against Saxton is barred in substantial part by the Settlement Agreement.

FamilyCare's First Amendment claim is barred in substantial part by the release of claims in the Settlement Agreement. Effective May 22, 2016, FamilyCare and OHA signed a Settlement Agreement in which FamilyCare released claims against Saxton:

> FamilyCare…hereby releases and discharges the State of Oregon including OHA and all of its affiliated agencies or divisions and each of OHA's and its affiliated agencies or divisions' *employees, officers, directors*…from any and all claims, whether raised or not, that relate to the Dispute[.] (emphasis added).

Dkt. 155-2 OHA MSJ Ex. 3 (5/22/16 Settlement Agreement at 9). The Settlement Agreement defined "the Dispute" as FamilyCare's 2015 and 2016 capitation rates and the implementation or execution of the Contract amendments incorporating those rates. *Id.* at 3. Saxton was a signatory to the agreement. *Id.* at 11.

///

///

PAGE 5 -    DEFENDANT LYNNE SAXTON'S MOTION FOR SUMMARY JUDGMENT

Here, many of the alleged acts of retaliation in the claim against Saxton predate the signing of the Settlement Agreement. Any alleged retaliation in the 2015 and 2016 rate-setting process is barred by the release of claims in the Settlement Agreement.

**II.    FamilyCare's claim against Saxton is also barred in substantial part by the two-year statute of limitations.**

FamilyCare's First Amendment claim against Saxton is also barred in substantial part by the two-year statute of limitations. In Oregon, section 1983 claims are governed by the two-year statute of limitations for personal injuries under Or. Rev. Stat. § 12.110(1). *Douglas v. Noelle,* 567 F.3d 1103, 1109 (9th Cir. 2009).

The complaint in this matter was originally filed on February 2, 2017. Dkt. 1, Ex. 1. Saxton was not a party to the original complaint (or its second, third, or fourth iterations). Saxton became a party when FamilyCare filed its Fourth Amended Complaint on June 21, 2018. With respect to a new party, relation back applies only if (1) the claim arises from the same conduct as the original pleading; (2) the added party received "such notice of that action that it will not be prejudiced in defending on the merits"; *and* (3) the added party knew or should have known that, "but for a mistaken concerning identity, the action would have been brought against it." *Butler v. Nat'l Community Renaissance of California,* 766 F.3d 1191, 1202-03 (9th Cir. 2014).[1] FamilyCare cannot credibly argue that this is a case of mistaken identity, thus the claim against Saxton does not relate back to the original filing date.

The claim against Saxton was deemed filed when FamilyCare moved to amend its complaint for the third time to add Saxton as a defendant on April 25, 2018. Dkt. 85 (Mot. for Leave to File Fourth Amended Complaint); *see Villanueva v. Liberty Acquisition Servicing, LLC,* 215 F. Supp. 3d 1045, 1059 (D. Or. 2016) (holding that complaint is "filed" for purposes of a

---

[1] Oregon law regarding relation back is substantially the same. Or. R. Civ. P. 23 C.

PAGE 6 -    DEFENDANT LYNNE SAXTON'S MOTION FOR SUMMARY JUDGMENT

motion to amend new party when motion is made to add new party).  Accordingly, FamilyCare's claims regarding alleged retaliation that occurred prior to April 2016 are time-barred.

In *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 113 (2002) the Supreme Court held that, where a plaintiff alleges discrete retaliatory acts, the statute of limitations runs separately from each act.  This rule applies even when the time-barred acts are "related to acts alleged in timely filed charges."  *Id.*  Although *Morgan* was an employment discrimination action brought under Title VII, the Ninth Circuit applies the holding of *Morgan* to actions brought under section 1983.  *Carpenteria Valley Farms, Ltd. v. County of Santa Barbara,* 344 F.3d 822, 829 (2003); *O'Connor v. County of Clackamas,* 2013 WL 3818143, *23 n. 20 (D. Or. July 22, 2013).  Thus, insofar as Family Care's section 1983 claim against Saxton is based on discrete retaliatory actions which occurred before April 2016, the claim is time-barred.

### III.    FamilyCare fails to state a claim against Saxton in her individual capacity.

FamilyCare's First Amendment claim against Saxton does not state a claim. FamilyCare's claim against Saxton is brought pursuant to 42 U.S.C. § 1983.  To prevail on a section 1983 claim, a plaintiff must establish the violation of a right secured by the federal constitution, and "must show that the deprivation was committed by someone acting under color of state law."  *West v. Atkins,* 487 U.S. 42, 48 (1988).

There is no vicarious liability under section 1983.  *See generally Monell v. Dep't of Social Svs. of City of New York,* 436 U.S. 658 (1978).  Accordingly, an individual's liability under section 1983 arises only if she "personally participated" in the alleged constitutional deprivation.  *Ortez v. Washington Co.,* 88 F.3d 804, 809 (9th Cir. 1996).  That is, an official can only be liable under section 1983 "for his or her own misconduct."  *Ashcroft v. Iqbal,* 556 U.S. 662, 677 (2009).

MERSEREAU SHANNON LLP
111 SW COLUMBIA STREET, SUITE 1100
PORTLAND, OREGON 97201-5865
(503) 226-6400

Here, the complaint makes no attempt to distinguish Saxton's actions from Allen, OHA generally, or any other employee of OHA. Because FamilyCare cannot use its response brief to remedy the complaint's failure to state a claim, summary judgment should be granted to Saxton. *See Navajo Nation v. U.S. Forest Serv.,* 535 F.3d 1058, 1079-80 (9th Cir. 2008).

**IV.    No genuine issue of material fact exists as to FamilyCare's claim that Saxton retaliated against FamilyCare based on FamilyCare's alleged exercise of its First Amendment rights.**

As given above, the claim against Saxton is a speech retaliation claim under section 1983. At the relevant times that give rise to its claim against Saxton, FamilyCare was operating under a contract with OHA. 4th Am. Compl. ¶ 19. A government contractor alleging retaliation for exercise of First Amendment rights must establish that: (a) it engaged in expressive conduct that addressed a matter of public concern; (b) government officials took adverse(s) actions against it; and, (c) the expressive conduct was a substantial or motivating factor for the adverse action(s). The government contractor carries the burden of establishing each of these elements. If the business vendor does not establish all of these elements, then the speech retaliation claim fails. *See Eng v. Cooley,* 552 F.3d 1062, 1070-72 (9th Cir. 2009) (discussing requirements for public employees).

Even if the government contractor establishes these elements, the public official is not liable if she can show that (1) the public entity's legitimate administrative interest in promoting efficient service delivery and avoiding workplace disruption outweigh speech interests; or (2) under *Mt. Healthy,* the public entity would have taken the same actions in the absence of the vendor's expressive conduct. *Alpha Energy Savers, Inc. v. Hansen,* 381 F.3d 917, 923 (9th Cir. 2004).

///

///

PAGE 8 -    DEFENDANT LYNNE SAXTON'S MOTION FOR SUMMARY JUDGMENT

### A. FamilyCare did not sufficiently allege, and cannot prove that it engaged in speech on a matter of public concern.

As a preliminary matter, FamilyCare bears the burden of showing that its purported speech is protected under the First Amendment in the first place:  that is, that the alleged speech addressed an issue of public concern.  *See Eng v.* at 1070.  Whether a contractor's expressive conduct addresses a matter of public concern is a question of law.  *Connick v. Myers,* 461 U.S. 138, 148 n. 7 (1983).  This determination is made in light of "the content, form, and context" of the expressive conduct "as revealed by the whole record[.]"  *Id.* at 147-48.

The content of the speech is "the single greatest factor" in determining whether it addresses an issue of public concern.  *Desrochers v. City of San Bernardino,* 572 F.3d 703, 710 (9th Cir. 2009).  "[S]peech that deals with individual personnel disputes and grievances and that would be of no relevance to the public's evaluation of the performance of governmental agencies is generally not of public concern."  *Id.*  The same can be said of "speech that relates to internal power struggles within the workplace," and speech which is of no interest "beyond the employee's bureaucratic niche."  *Id.*

While the content of speech is the most important factor in determining whether it addressed an issue of public concern, the form and context of the speech are also relevant.  "Form" and "context" is a reference to "the employee's motivation and the audience chosen for the speech."  *Ulrich v. City of S.F.,* 308 F.3d 968, 979 (9th Cir. 2002).  Context in particular includes "the point of the speech…: why did the employee speak (as best we can tell)?  Does the speech seek to bring to light actual or potential wrongdoing or breach of public trust, or is it animated instead by" something else, like "dissatisfaction with one's employment situation?"  *Desrochers,* 572 F.3d at 715.  Form includes the method used by an employee to convey her speech.  *Id.* at 714-15.  Therefore, speech that is disseminated to a "limited audience" is a factor which "cuts against a finding of public concern."  *Id.* at 714-15.  Speech which contains only

PAGE 9 -    DEFENDANT LYNNE SAXTON'S MOTION FOR SUMMARY JUDGMENT

"passing references" to matters of public concern "incidental to the message conveyed" weighs against a finding of public concern. *See Robinson v. York,* 566 F.3d 817, 823 (9th Cir. 2009).

FamilyCare's allegations regarding its purported speech are contained in paragraph 83 of the complaint. These allegations do not even state a claim. To make a threshold First Amendment showing, a plaintiff must offer specific "details" of the speech, including details of its content, form and context. *Kurtz v. Vickrey*, 855 F.2d 723, 730 n. 4 (11th Cir. 1988). Where, as here, the speech itself is vague or described in general or vague terms, the court (and naturally the defendant) "can hardly review the content, form, and context of what was actually said." *See Nixon v. City & Cty. of Denver,* 784 F.3d 1364, 1369 (10th Cir. 2015).

It is impossible to determine whether the purported speech identified in paragraph 83 of the complaint meets the public concern requirement. Summary judgment should be granted in favor of Saxton on the First Amendment claim for this reason alone. Regardless, from the face of the complaint, it is evident that at least some of FamilyCare's issues with OHA are not a matter of public concern.

In general, FamilyCare's "speech" involved complaints about the rates OHA offered it under a contract with OHA. The purpose of FamilyCare's "speech" was and is to get higher rates for itself – rates which it believes it is entitled to under an existing contract. For each and every instance of "speech" FamilyCare intends to rely upon to support its claim, FamilyCare must prove that the speech was on a matter of public concern. FamilyCare cannot make this showing.

## B. FamilyCare cannot demonstrate that Saxton took any adverse action against it in retaliation for any alleged speech.

Even if FamilyCare could establish that any of its speech warranted First Amendment protection, FamilyCare cannot establish that Saxton engaged in the adverse actions alleged in the

MERSEREAU SHANNON LLP
111 SW COLUMBIA STREET, SUITE 1100
PORTLAND, OREGON 97201-5865
(503) 226-6400

complaint in retaliation for any such protected speech.  FamilyCare alleges the following acts of

"retaliation":  "setting rates that were unreasonable, biased, actuarially unsound, and based on

erroneous data and methodology; refusing to correct known errors in data and methodology,

developing and implementing a smear campaign"…"refusing to grant FamilyCare the procedural

protections guaranteed by law, and implementing a policy decision to put FamilyCare out of

business."  4th Am. Compl. ¶ 84.  Each of these claims is addressed in turn.[2]

### (1). No genuine issue of material fact exists as to OHA's rate setting.

FamilyCare first alleges that "defendants" retaliated against it by improperly setting rates.

No dispute of fact exists as to the reasonableness and propriety by which OHA and Optumas set

rates.  As explained in OHA and Allen's briefing, which Saxton expressly incorporates herein,

FamilyCare's own actuary consultant concluded that the rates for 2017 and 2018 were actuarially

sound.  FamilyCare admitted that it has never received an opinion that the 2018 rates were

actuarially unsound and could attest to no evidence that either the 2017 or 2018 rates were

actuarially unsound.  To the contrary, FamilyCare itself defined actuarially sound rates as CMS

defines actuarially sound rates.  And, as noted above, pursuant to that rule, CMS approved the

2017 rates as being in accordance with federal law and regulation.  Dkt. 149 OHA MSJ at 32-33.

Furthermore, OHA had a legitimate non-discriminatory reason for making policy

decisions which resulted in decreases to FamilyCare's (and other CCOs') rates and which would

have occurred regardless of any of FamilyCare's alleged speech:  cost containment.  During the

2016 rate-setting process, Optumas examined what was driving the increased growth in rates and

then, applying OHA's policy to adjust for those drivers that the CCOs had control over, adjusted

---

[2]As mentioned above, FamilyCare cannot rely on any adverse action barred by the Settlement Agreement or that occurred outside of the two-year statute of limitations to support its First Amendment retaliation claim.

PAGE 11 -    DEFENDANT LYNNE SAXTON'S MOTION FOR SUMMARY JUDGMENT

the base data for each of the CCOs experiencing that growth based on those drivers, while at the same time, ensuring that the rates were actuarially sound. *See* Dkt. 149 OHA MSJ at 27-30.

That evidence notwithstanding, FamilyCare has sued Saxton in her individual capacity. As explained above, to prove its claim against Saxton, FamilyCare must establish that Saxton *personally* retaliated against FamilyCare. In the context of the rate setting decisions, this means that FamilyCare must come forward with some evidence that Saxton personally improperly set its rates. FamilyCare can produce no evidence that Saxton targeted FamilyCare or any of the other 15 CCOs in this manner. Saxton is not an actuary. She was involved in high level policymaking at OHA. The policies she set applied to all CCOs. Saxton decl. ¶¶ 3, 4.

### (2). OHA did not engage in a so-called smear campaign against FamilyCare.

FamilyCare also alleges that "defendants" retaliated against it by engaging in a "smear campaign." Of course, there is no such thing as a "smear campaign." What FamilyCare is referring to is an internal document that was released in response to a public records request, *see* 4th Am. Compl. ¶ 46, months after it was shelved. The discarded draft communications plan cannot support FamilyCare's retaliation claim against Saxton for at least four different reasons.

The *first* reason that the draft communications plan cannot be deemed retaliatory is that it was never implemented. The *second* reason is that it was not created by Saxton, meaning that even if it could support a First Amendment retaliation claim (and it cannot), it does not support a claim against Saxton acting in her individual capacity because section 1983 does not allow for vicarious liability.

Regardless of the first and second reasons, the *third* reason FamilyCare's "smear campaign" theory fails is that the draft communications plan is not an adverse action that can support a First Amendment claim, as a matter of law. *Mulligan v. Nichols,* 835 F.3d 983, 989 (9th Cir. 2016). In *Mulligan,* the Ninth Circuit held that a "smear campaign" in which

PAGE 12 -    DEFENDANT LYNNE SAXTON'S MOTION FOR SUMMARY JUDGMENT

government officials publicly maligned an individual as a drug user and published a defamatory police report about him was not sufficient to support a First Amendment retaliation claim. *Id.* ("It would be the height of irony…if mere speech, in response to speech could constitute a First Amendment violation.") (quoting *Nunez v. City of Los Angeles,* 147 F.3d 867, 875 (9th Cir. 1998).

*Fourth* and finally, and as addressed more fully below, Saxton is entitled to summary judgment over this theory on the basis of qualified immunity. Assuming for the sake of argument only that Saxton could be responsible under section 1983 for a draft communications plan that was created by a subordinate employee and which was never implemented, there is no case that put Saxton on notice that she could violate FamilyCare's First Amendment rights by doing so. *Mulligan* demonstrates that the opposite is true.

### (3). FamilyCare cannot establish that Saxton denied it any procedural protections.

FamilyCare next claims that "defendants" retaliated against it by denying FamilyCare "procedural protections guaranteed by law." This is not an adverse action that can support a retaliation claim against Saxton. In the complaint, FamilyCare alleges that it was *Allen* who denied FamilyCare a procedural right in December 2017. 4th Am. Compl. ¶ 71. Saxton left OHA on August 31, 2017. Saxton decl. ¶ 1. FamilyCare cannot base its First Amendment claim against Saxton on an adverse action that post-dates her employment with OHA. The complaint identifies no other "procedural protections guaranteed by law" which Saxton allegedly refused to grant FamilyCare, and there are none.[3]

---

[3] To the extent FamilyCare intends to rely on a purported breach of the Dispute Resolution Agreement ("DRA") to support its First Amendment claim against Saxton, its argument fails. An alleged breach of the DRA is not a "procedural protection guaranteed by law." Additionally, for the reasons set forth in OHA and Allen's motion for summary judgment at pages 9-14, no genuine issue of material fact exists regarding FamilyCare's claim that OHA or Saxton breached the DRA.

MERSEREAU SHANNON LLP
111 SW COLUMBIA STREET, SUITE 1100
PORTLAND, OREGON 97201-5865
(503) 226-6400

**(4). FamilyCare cannot establish that Saxton implemented a decision to put it out of business.**

Lastly, FamilyCare claims that "defendants" implemented a policy decision and plan to put FamilyCare out of business." Once again, this allegation is not directed at Saxton. The complaint alleges that Allen and OHA implemented a purported policy decision and plan to put FamilyCare out of business in 2018. 4th Am. Compl. ¶ 70. Saxton cannot possibly be responsible for an alleged adverse action that FamilyCare itself alleges she did not take. No evidence exists that Saxton created a plan to put FamilyCare out of business, much less a plan to do so in retaliation for FamilyCare exercising its speech rights.

**C. FamilyCare cannot establish that any of its purported speech caused any adverse action.**

FamilyCare bears the burden to establish the element of causation. To establish a section 1983 speech retaliation claim against an individual government official, a plaintiff must allege that the official knew of the plaintiff's protected activity. While the government official's knowledge that plaintiff has engaged in the alleged protected activity is necessary to establish a causal link between the alleged retaliatory action, *Cohen v. Fred Meyer,* 686 F.2d 793, 796 (9th Cir. 1982), that mere knowledge, in and of itself is not sufficient to establish causation, *Keyser v. Sacramento City Unified Sch. Dist.,* 265 F.3d 741, 751 (9th Cir. 2001). FamilyCare cannot meet its burden for the reasons embedded in the discussion set forth in section III. B. above.

**D. Saxton is entitled to qualified immunity.**

As a final and independent basis for summary judgment, FamilyCare's section 1983 claims against Saxton fails under the doctrine of qualified immunity. Whether a public official is entitled to qualified immunity is a two-pronged inquiry: (1) whether the officials violated a federal statutory or constitutional right, and (2) whether the right was "clearly established."

PAGE 14 -    DEFENDANT LYNNE SAXTON'S MOTION FOR SUMMARY JUDGMENT

MERSEREAU SHANNON LLP
111 SW COLUMBIA STREET, SUITE 1100
PORTLAND, OREGON 97201-5865
(503) 226-6400

*Saucier v. Katz,* 533 U.S. 194, 201 (2001).

Regarding the second prong, a right is "clearly established" only if the legal principle is dictated by "controlling authority" or "a robust consensus of cases of persuasive authority." *District of Columbia v. Wesby,* 138 S.Ct. 577, 589-90 (2018) (quoting *Ashcroft v. al-Kidd,* 563 U.S. 731, 735 (2011)). The Supreme Court explained that the "clearly established" standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him," emphasizing that the rule must have been previously expressed with "a high 'degree of specificity.'" *Id.* (quoting *Mullenix v. Luna,* 136 S.Ct. 305, 309 (2015) (*per curium*)).

Saxton is entitled to qualified immunity because it is not beyond debate that her conduct violated FamilyCare's First Amendment speech rights. It is not clearly established that: (1) FamilyCare's alleged speech, which primarily concerned FamilyCare's attempt to get more money under an existing contract, was on a matter of public concern; (2) the rates OHA offered FamilyCare were unreasonable, biased, actuarially unsound, and/or based on erroneous data and methodology; (3) an alleged "smear campaign" is an adverse action that can support a First Amendment retaliation claim; (4) there is any "procedural protection guaranteed by law" which OHA refused to grant FamilyCare; and/or (5) there is any basis under the First Amendment to hold an individual defendant liable for loss of "goodwill."

### III.     FamilyCare has failed to show any genuine issue of material facts as to its damages claims against Saxton.

FamilyCare has failed to show a genuine issue of material fact as to request for damages against Saxton. Saxton incorporates the arguments made by OHA and Allen regarding FamilyCare's damages claims. Dkt. 149 OHA MSJ at 35-37; dkt. 245 OHA Reply at 22-25.

///

PAGE 15 -      DEFENDANT LYNNE SAXTON'S MOTION FOR SUMMARY JUDGMENT

## CONCLUSION

For the reasons given above, Saxton respectfully requests that this Court grant summary judgment in her favor.


DATED: September 20, 2018.

MERSEREAU SHANNON LLP


_____*s/ Peter R. Mersereau*_____
**PETER R. MERSEREAU,** OSB No. 732028
pmersereau@mershanlaw.com
**BETH F. PLASS,** OSB No. 122031
bplass@mershanlaw.com
503.226.6400
Of Attorneys for Defendant
Lynne Saxton

PAGE 16 -    DEFENDANT LYNNE SAXTON'S MOTION FOR SUMMARY JUDGMENT