Stephen F. English, OSB No. 730843
SEnglish@perkinscoie.com
Thomas R. Johnson, OSB No. 010645
TRJohnson@perkinscoie.com
Alletta Brenner, OSB No. 142844
ABrenner@perkinscoie.com
Brian Samuelson, OSB No. 165476
BSamuelson@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Telephone:  503.727.2000
Facsimile:  503.727.2222

Matthew Gordon, *pro hac vice*
MGordon@perkinscoie.com
Nicholas Hesterberg, *pro hac vice*
NHesterberg@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone:  206.359.8000
Facsimile:  206.359.9000

*Attorneys for Plaintiff FamilyCare, Inc.*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| FAMILYCARE, INC., an Oregon non-profit corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>OREGON HEALTH AUTHORITY, an agency of the State of Oregon, PATRICK ALLEN, both individually and in his official capacity as director of the Oregon Health Authority, and LYNNE SAXTON<br><br>    Defendants. | No. 6:18−cv−00296−MO<br><br>PLAINTIFF FAMILYCARE, INC.'S MOTION FOR SANCTIONS AGAINST OHA DUE TO EVIDENCE SPOLIATION<br><br>REQUEST FOR ORAL ARGUMENT |

FAMILYCARE, INC.'S MOTION FOR
SANCTIONS UNDER FED. R. CIV. P. 37(e)

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

**TABLE OF CONTENTS**

**Page**

I. Introduction .................................................................................................................. 1

II. Factual Background ...................................................................................................... 2

    A. Events Leading Up to The Current Litigation ...................................................... 2

    B. FamilyCare Files Suit ........................................................................................... 5

    C. FamilyCare Learns of OHA's Spoliation ............................................................. 5

III. Legal Standard ............................................................................................................. 9

IV. Argument .................................................................................................................... 10

    A. OHA Breached Its Duty to Preserve the Saxton Text Messages ........................ 10

        1. OHA Had a Duty to Preserve the Saxton Text Messages Since at Least October 2016 ...................................................................................... 10

        2. OHA's Preservation Duty Extended to the Saxton Text Messages ......... 11

        3. OHA Failed to Take Reasonable Steps to Preserve the Saxton Text Messages .................................................................................................. 12

        4. The Saxton Text Messages Cannot Be Restored or Replaced with Additional Discovery ............................................................................... 16

    B. The Destruction of the Saxton Text Messages Has Prejudiced FamilyCare ....... 17

    C. OHA Intended to Deprive FamilyCare of the Use of Saxton Text Messages in this Litigation ................................................................................. 19

    D. OHA Should Be Sanctioned for Its Destruction of the Saxton Text Messages ............................................................................................................. 23

        1. Rule 37(e)(2) Sanctions Are Necessary to Remedy OHA's Intentional Deprivation of the Saxton Text Messages ........................... 23

        2. FamilyCare is Entitled to Recover Its Attorneys' Fees and Costs ........... 24

V. Conclusion ................................................................................................................. 24

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

**TABLE OF AUTHORITIES**

**Page**

CASES

*Alabama Aircraft Indus., Inc. v. Boeing Co.*,
　319 F.R.D. 730 (N.D. Ala. 2017)...............................................................................20, 21, 23

*Byrnie v. Town of Cromwell, Bd. of Educ.*,
　243 F.3d 93 (2d Cir. 2001).....................................................................................................13

*DVComm, LLC v. Hotwire Comm'ns, LLC*,
　No. CV 14-5543, 2016 WL 6246824 (E.D. Pa. Feb. 3, 2016) ...............................................13

*EPAC Techs., Inc. v. HarperCollins Christian Publ'g, Inc.*,
　No. 3:12-CV-00463, 2018 WL 1542040 (M.D. Tenn. Mar. 29, 2018) ...................................11

*First Fin. Sec., Inc. v. Freedom Equity Grp., LLC*,
　No. 15-CV-1893-HRL, 2016 WL 5870218 (N.D. Cal. Oct. 7, 2016) ........................16, 20, 23

*GN Netcom, Inc. v. Plantronics, Inc.*,
　No. CV 12-1318-LPS, 2016 WL 3792833 (D. Del. July 12, 2016) .................................15, 18

*Leidig v. Buzzfeed, Inc.*,
　No. 16CIV542VMGWG, 2017 WL 6512353 (S.D.N.Y. Dec. 19, 2017)........................11, 24

*Lokai Holdings LLC v. Twin Tiger USA LLC*,
　No. 15CV9363 (ALC) (DF), 2018 WL 1512055 (S.D.N.Y. Mar. 12, 2018) ................. passim

*Marten Transp., Ltd. v. Plattform Advert., Inc.*,
　No. 14-CV-02464-JWL-TJJ, 2016 WL 492743 (D. Kan. Feb. 8, 2016) .....................10, 12, 13

*Matthew Enter., Inc. v. Chrysler Grp. LLC*,
　No. 13-CV-04236-BLF, 2016 WL 2957133 (N.D. Cal. May 23, 2016) ............................9, 10

*Nuvasive, Inc. v. Madsen Med., Inc.*,
　No. 13CV2077 BTM(RBB), 2016 WL 305096 (S.D. Cal. Jan. 26, 2016).............................24

*Oppenheimer v. City of La Habra*,
　No. SACV1600018JVSDFMX, 2017 WL 1807596 (C.D. Cal. Feb. 17, 2017)....16, 17, 20, 21

*Passlogix, Inc. v. 2FA Tech., LLC*,
　708 F. Supp. 2d 378 (S.D.N.Y. 2010)....................................................................................11

ii- FAMILYCARE, INC.'S MOTION FOR
SANCTIONS UNDER FED. R. CIV. P. 37(e)

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Zubulake v. UBS Warburg LLC,*
   220 F.R.D. 212 (S.D.N.Y. 2003) ........................................................................12

*Zubulake v. UBS Warburg LLC,*
   229 F.R.D. 422 (S.D.N.Y. 2004) ........................................................................15

**STATUTES**

O.R.S. § 192.005(5) .............................................................................................14

O.R.S. § 192.018(1) .............................................................................................13

**RULES**

Fed. R. Civ. P. 37(e) .................................................................................. passim

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

## LOCAL RULE 7-1 CERTIFICATION

FamilyCare, Inc. ("FamilyCare") has conferred with Oregon Health Authority ("OHA") in an effort to resolve this issue without the Court's intervention. Such resolution is impossible as the information sought is lost and "unrecoverable."

## ORAL ARGUMENT REQUESTED

FamilyCare requests oral argument, and estimates that 30 minutes will be required.

## MOTION

FamilyCare moves for an order imposing sanctions for OHA's failure to preserve electronically stored information.

## POINTS AND AUTHORITIES

## I.    INTRODUCTION

For nearly four years, OHA has failed to adhere to its purported commitment to transparency, forcing FamilyCare to seek judicial intervention. Now, faced with litigation for the third time in as many years, OHA's aversion to transparency has progressed into the intentional destruction of relevant evidence.

The most senior member of OHA's leadership—former Director Lynne Saxton— regularly deleted text messages from her OHA-issued mobile phones. This practice was not only in violation of OHA's record retention policy and public records law, it continued after litigation was anticipated and after a document hold was issued. Indeed, Saxton continued deleting all of her text messages until her last day at the agency, ten months after she anticipated this lawsuit, and six months after the complaint was filed. As a result, at least dozens of potentially relevant communications—all made during the relevant time-period and between employees who were directly involved in matters at the heart of this litigation—are lost. And those are just the ones we know about. Just as alarmingly, although most of Saxton's messages were communications

1-  FAMILYCARE, INC.'S MOTION FOR
SANCTIONS UNDER FED. R. CIV. P. 37(e)

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

with one or more of twelve other OHA custodians, OHA has deemed the messages "unrecoverable" from *any* custodian, including other senior members of leadership. The agency has not provided an explanation for the scope of the loss. Taken together, OHA's conduct suggests the agency intentionally destroyed text messages to deprive FamilyCare of evidence relevant to its claims.

Sanctions under Federal Rule of Civil Procedure 37(e)(2) are an appropriate punishment for OHA's conduct, and are necessary to deter the agency from engaging in such conduct in the future. Accordingly, FamilyCare respectfully requests that the Court issuing an adverse inference jury instruction requiring the jury to presume that the missing text messages were destroyed to prevent FamilyCare from obtaining documents that would support its claims. The Court should also preclude OHA from introducing testimonial evidence that OHA's anti-FamilyCare smear campaign was not implemented, if such testimony is offered by witnesses whose messages are missing. Alternatively, FamilyCare requests that the Court issue an appropriate permissive adverse inference jury instruction.

## II.    FACTUAL BACKGROUND

FamilyCare relies upon and incorporates the facts set forth in its opposition to OHA's motion for summary judgment. *See generally* Dkt No. 222 ("MSJ Opp."). For the Court's convenience, FamilyCare summarizes the relevant facts as follows.

### A.    Events Leading Up to The Current Litigation

After a series of disputes and litigation regarding Medicaid rates set by OHA in 2015 and 2016, the parties entered into a settlement agreement effective as of May 22, 2016. Dkt No. 224-3. OHA then released the 2017 capitation rates in October 2016. Dkt No. 154-2. Finding them insufficient to cover its costs of providing services, FamilyCare objected to the rates, and through its counsel, sent a public records request to OHA, seeking the data underlying the 2017 rates and

2- FAMILYCARE, INC.'S MOTION FOR
SANCTIONS UNDER FED. R. CIV. P. 37(e)

insight into the rate-setting process.  *See* MSJ Opp. at 10[1]; *see also* Decl. of Amanda Beane ("Beane Decl.") Ex. 1 (October 13, 2016 public records request). OHA knew that the 2017 rates could cause additional litigation with FamilyCare.  *See id.* Ex. 2.

On December 30, 2016, the parties entered into a Dispute Resolution Agreement, under which FamilyCare agreed to sign the 2017 contract amendment (reserving its right to challenge the 2017 rates) and OHA agreed to participate in substantive discussions about the actuarial soundness of the 2017 rates.  *See* Dkt No. 224-15.

About a week before the parties agreed to participate in alternative dispute resolution, on December 21, 2016, Oregon Department of Justice attorney Renee Stineman issued a litigation hold notice to OHA, which expressly forbade the agency "and its employees" from "destroy[ing] any documents relating to FamilyCare or the potential claims[.]"  Beane Decl. Ex. 3.

Unbeknownst to FamilyCare, shortly after the parties executed the Dispute Resolution Agreement, OHA began to develop a communications plan designed to hamper FamilyCare's attempt to obtain transparency into OHA's rate setting process by smearing FamilyCare's reputation.  *See* MSJ Opp. at 18-23.  Specifically, OHA planned to tarnish FamilyCare's reputation through a coordinated effort that included feeding negative stories to local news outlets and state legislators.  Dkt No. 224-29 (communications plan) at 1–2.  The "goals" of the plan included "[h]ighlight[ing] Family Care as an outlier and only worried about profit margins," while extolling the virtues of another CCO, Health Share.  *Id.* at 1.  The plan listed OHA personnel who would implement parts of the communications plan—Saxton, Kate Nass (Deputy Director of Finance), Janell Evans (Budget Director), Chelsea Guest (Manager, Actuarial Services), Jeff Fritsche (Finance Director), and Jeston Black (Director of Government Relations)—and identified targets for its "off the record" pitches to reporters (Jeff Manning, Nigel Jaquiss, and Nick Budnick).  *Id.* at 3.

---

[1] Cites to documents filed with the Court refer to PDF page numbers.

3-  FAMILYCARE, INC.'S MOTION FOR
SANCTIONS UNDER FED. R. CIV. P. 37(e)

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

OHA developed this smear campaign under Saxton's leadership, using information provided by FamilyCare during the parties' dispute resolution process. *See* Dkt Nos. 224-17, 224-29, 224-32. On January 3, 2017—the first business day after the Dispute Resolution Agreement was executed—Saxton instructed OHA's Director of External Relations, BethAnne Darby to prepare a draft of the communications plan. Dkt No. 224-31. Several OHA employees were on the email: Black, Rhonda Busek (Provider Services Director), Varsha Chuahan (Chief Health Systems Officer), Robb Cowie (Communications Director), Lori Coyner (Director, Accountability and Quality), Darby, Mark Fairbanks (CFO/COO), and Theresa Souza (Saxton's Executive Assistant). *Id.* Darby promptly delegated the task to OHA Communications Officer, Courtney Crowell. *Id.*

On January 17, 2017, FamilyCare and OHA met pursuant to the Dispute Resolution Agreement. At the meeting, FamilyCare gave a detailed presentation outlining its concerns and identifying the data needed to evaluate the 2017 rates and the rate-setting process. While the meeting was still in progress, Fairbanks, who attended for OHA, forwarded a copy of FamilyCare's presentation to Saxton. Dkt No. 224-17.[2] Saxton sent the presentation to Darby, telling her it "will be helpful to us in developing our communication strategy," and Darby forwarded the deck to Crowell and Cowie. *Id.* (copying Fairbanks); *see also id.* Ex. 4. Darby, Crowell, and Saxton continued to be involved in the development of the plan. *See id.* Ex. 5; *see also* Dkt Nos. 224-29, 224-32, 224-40.

After the plan was exposed by the media,[3] Saxton publicly apologized to FamilyCare, and at the request of Governor Kate Brown, tendered her resignation on August 8, 2017. Dkt No. 224-38; Beane Decl. Ex. 6. Within months of Saxton's resignation, several individuals

---

[2] FamilyCare shared an electronic copy of its PowerPoint presentation when requested by OHA's counsel.

[3] *See* Nick Budnick, *State sought to plant negative stories about nonprofit*, Portland Tribune (August 4, 2017), *available at* https://portlandtribune.com/pt/9-news/368266-250011-state-sought-to-plant-negative-stories-about-nonprofit.

4- FAMILYCARE, INC.'S MOTION FOR
SANCTIONS UNDER FED. R. CIV. P. 37(e)

implicated in OHA's rate-setting processes and communications plan would also resign or retire, including Darby, Chuahan, and Fairbanks.  *See* Dkt. No. 224-18.

### B.     FamilyCare Files Suit

FamilyCare filed the instant action in Oregon state court, on February 27, 2017.  *See* Dkt. No. 1-1 at 1–24.  On February 15, 2018, defendants removed the case to this Court.  Dkt. No. 1. Under the operative complaint (the Fourth Amended Complaint, "FAC"), FamilyCare claims that OHA intentionally interfered with FamilyCare business relationships with providers, members, and employees, including by developing and implementing the smear campaign.  *See generally* Dkt No. 111 at 48-49.  The FAC also alleges that Saxton and current director Patrick Allen retaliated against FamilyCare for exercising its First Amendment rights through its critiques and criticisms of OHA and its leadership to the media, legislature, and governmental bodies, including its litigation.  *See* Dkt. No. 111 at 33–36 (¶¶ 81–93).  FamilyCare anticipates that like Allen, Saxton will contend that there is insufficient evidence that she retaliated against FamilyCare's First Amendment conduct.  For its part, OHA and its employees—including Saxton—claim that the anti-FamilyCare smear campaign developed by Saxton and her subordinates was never implemented.   Dkt No. 149 at 24.

### C.     FamilyCare Learns of OHA's Spoliation

On March 2, 2018, FamilyCare advised OHA that certain text messages were missing from OHA's document production, including any texts to or from Lynne Saxton, and requested an explanation for their absence.  Beane Decl. Ex. 7.  None was forthcoming.  On April 13, 2018, FamilyCare again followed up with OHA regarding the lack of text message production from Ms. Saxton.  *Id*. Ex. 8.  FamilyCare did not receive a substantive response for more than two weeks.  Finally, on April 30, 2018, OHA advised for the first time that some of the texts on Ms. Saxton's phone were "missing" and "unavailable," without explaining why.  *Id*. Ex. 9.  OHA promised to provide matrices containing the metadata of the missing text messages.  *Id.*  After

5-    FAMILYCARE, INC.'S MOTION FOR
      SANCTIONS UNDER FED. R. CIV. P. 37(e)

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

ignoring repeated requests from FamilyCare's counsel, *id.* Exs. 10, 11, OHA finally provided the metadata matrices on June 13, 2018. *Id*. Ex. 12, 13.

The matrices purportedly provide metadata for 78 text messages OHA was unable to recover from Saxton's OHA-issued iPhone, and could not rule out as non-responsive to FamilyCare's discovery requests (the "Saxton Text Messages").[4]  Beane Decl. Ex. 13; *see also id.* Ex. 14.  The matrices provide the following metadata for each missing text message: (1) date and time stamp; (2) sender/recipient information (phone number, and name if the individual was saved in Saxton's contacts); and (3) nature of message (SMS or iMessage).  Beane Decl. Ex. 13. The metadata shows that the Saxton Text Messages were sent or received between October 13, 2016 and August 31, 2017. *Id*.  Most (76%) of the missing text messages are dated in 2017; 64% of the messages are dated after this lawsuit was filed. *Id*.; *see also* Dkt. No. 1-1 at 24.  In other words, the missing messages coincide with the very period in which OHA developed and implemented its communications plan.  Of course, the matrices merely reflect the messages for which metadata was recoverable from Saxton devices.  There is no guarantee that other messages were not permanently lost.

The missing messages reflect Saxton's communications with approximately 27 individuals, categorized as follows:

| Category | |
|---|---|
| OHA Custodians | 12 |
| Legislators/Staff | 4 |
| Executive Branch/Staff | 1 |
| CCO Leadership | 4 |
| Unidentified Numbers | 2 |
| Lobbyists/Public Affairs | 4 |

---

[4] The matrices show 85 texts, but some have since been ruled out as non-responsive.  Notably, the matrices only include messages for which OHA was able to recover some metadata and do not include the unknown number of deleted messages for which no metadata remains. Beane Decl. Ex. 14.  As such, many more relevant text messages may be permanently lost.  FamilyCare sought discovery related to these messages, including by requesting that OHA and Saxton produce telephone billing records showing the data and recipients of texts sent from Saxton's phone, but OHA and Saxton refused to produce such records.  Beane Decl. Ex. 15.

6- FAMILYCARE, INC.'S MOTION FOR
SANCTIONS UNDER FED. R. CIV. P. 37(e)

Beane Decl. Ex. 13.

Notably, the metadata reveals that 80% of the missing Saxton Text Messages are communications between Saxton and one (or more) of twelve other OHA custodians.  *Id.* Information about the other OHA custodians is summarized in the chart below:

| OHA Custodians Implicated in Saxton Text Messages | | | |
|---|---|---|---|
| **Name** | **Title at OHA in 2017** | **# Missing Texts** | **Comm. Plan Involvement?** |
| BethAnne Darby | Director of External Relations ("ER") | 5 | Y |
| Janell Evans | Budget Director | 4 | Y |
| Jeremy Vandehey | Director, Health Policy & Analytics[5] | 2 | Y |
| Jeston Black | Director of Government Relations (ER) | 1 | Y |
| Kayla Jones | Executive Assistant to CFO | 1 | |
| Leslie Clement | Director, Health Policy & Analytics | 3 | |
| Lori Coyner | Director, Accountability & Quality | 3 | Y |
| Mark Fairbanks | CFO/COO | 11 | Y |
| Rhonda Busek | Provider Services Director | 1 | Y |
| Robb Cowie | Communications Director (ER) | 27 | Y |
| Theresa Souza | Executive Assistant to the Director | 12 | Y |
| Varsha Chauhan | Chief Health Systems Officer | 4 | Y |

*Id.*  This group of OHA custodians includes current and former OHA executives and staffers who were either involved in the rate-setting process or implicated in the communications plan.  *See, e.g.,* Dkt. No. 224-29 (identifying OHA custodians as resources; *see also* Dkt. No. 224-31 (January 3, 2017 email from Saxton email informing recipients that she asked Darby "to develop our communications plan for the dispute resolution process").

OHA has confirmed that it "searched other document custodian devices for text messages that corresponded with the metadata from [the Saxton Text Messages]," and determined the messages are "not recoverable or otherwise retrievable from an alternative source."  Beane Decl. Ex. 14.  Indeed, OHA's initial response to FamilyCare's Interrogatory No. 20 indicates that Mark

---

[5] Vandehey joined OHA in September 2017.  Previously, he worked as a health care policy advisor for Oregon Governor Kate Brown.  https://www.linkedin.com/in/jeremyvandehey/

7-  FAMILYCARE, INC.'S MOTION FOR
SANCTIONS UNDER FED. R. CIV. P. 37(e)

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Fairbanks, at least, also deleted his texts. *Id.* Ex. 16 at 4–5, 22.[6]  On September 7, 2018, OHA issued a supplemental response to FamilyCare's Interrogatory No. 20, this time stating for each missing Fairbanks text message that Fairbanks "does not know why this message is unrecoverable because he maintained text messages."  Beane Decl. Ex. 20.  In addition to contradicting earlier statement, OHA had no explanation for why text messages were unrecoverable to other custodians.[7]  *Id.*

OHA has provided no innocent explanation for the missing messages.  OHA admitted that Saxton deleted "some text messages from the cellular phones issued to her by OHA," but provided no detail on how many messages were deleted, the nature of the deletions (manual or automatic), or even when the messages were deleted, despite FamilyCare's repeated requests. Beane Decl. Ex. 17; *see also id.* Ex. 18.  Instead, in response to requests for more information, OHA stated that "Lynne [Saxton] will be prepared to answer your additional inquiries during deposition."  *Id.* Ex. 14.

During her August 1, 2018 deposition, Saxton admitted she deleted *all* of her texts daily, even after October 6, 2016, when she herself said that there would likely be litigation over the rates, and even after the December 21, 2016 litigation hold issued by the DOJ.  She testified she "removed texts from [her] screen as [her] general practice of business," *Id.* Ex. 19.  Her "removal" involved selecting all messages and hitting the "delete" button.  *Id.* at 79:8–80:7.

---

[6] On July 30, 2018, OHA responded to Interrogatories propounded by FamilyCare which sought a detailed description of OHA's efforts to preserve and collect electronic communications, and an explanation of how the Saxton Text Messages were lost and how OHA determined the messages were not recoverable.  Beane Decl. Ex. 16 at 3–4.  OHA did not provide a meaningful response to these inquiries, instead, it directed FamilyCare to OHA's counsel's emails dated June 18, 19, 20, 25, and July 9, 2018, a set of charts, which are entirely conclusory, and 4,000 pages of Saxton and Cowie's calendar entries.  *See id.* at 13–24.

[7] In its supplemental interrogatory responses, OHA claims that many of the messages were deleted before there was a preservation obligation.  Beane Decl. Ex. 20. Yet, as explained in Section IV.A, all of the messages are dated after OHA anticipated litigation, and most are dated after OHA issued a litigation hold, so OHA's claim makes no sense.

8-  FAMILYCARE, INC.'S MOTION FOR
    SANCTIONS UNDER FED. R. CIV. P. 37(e)

Saxton stated she engaged in such "removal" on her OHA-issued device "on a daily basis" throughout her tenure at OHA, which spanned from late January 2015 through August 31, 2017. *Id.* at 66:1–13.[8] Saxton also acknowledged that she was aware that there was a litigation hold on communications within OHA, but still "removed" texts daily. *Id.* at 70:8-11, 70:24-71:1.

Saxton testified that she did not consider her daily "removal" of text messages to violate the litigation hold because it was her "understanding was that all texts were recoverable like e-mails." *Id.* at 72:25–75:22; *see also id.* at 79:20-80:7. But Saxton also testified that she never had a conversation with anyone to confirm the accuracy of her understanding. *Id.* Contrary to Saxton's unfounded belief, the missing text messages "were not backed up on a hard drive or stored in the cloud." *Id.* Ex. 21. OHA represents that its "vendor has made every technological effort to recover the subject text messages . . . and was unable to do so." *Id.* Ex. 14. Apparently, the only recoverable information about the Saxton Text Messages is contained in the matrices. OHA has not confirmed that the matrices reflect all deleted text messages; nor can it.

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 37(e) "explicitly defines when spoliation has occurred and what remedies a court may order to correct it." *Matthew Enter., Inc. v. Chrysler Grp. LLC*, No. 13-CV-04236-BLF, 2016 WL 2957133, at *3 (N.D. Cal. May 23, 2016). If electronically stored information ("ESI") that should have been preserved is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court, "upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). But where a party "acted with the intent to deprive another party of the information's use in the litigation," more severe sanctions are available, including a presumption that the lost information

---

[8] Saxton also described a daily practice of deleting emails on her OHA issued iPhone, computer, and iPad. *Id.* Ex. 19 at 78:24-80:10 (emails on iPhone); 81:4–19 (computer); 196:3–15 (iPad).

9-    FAMILYCARE, INC.'S MOTION FOR
      SANCTIONS UNDER FED. R. CIV. P. 37(e)

was unfavorable to the party, a permissive or mandatory adverse inference jury instruction, or even dismissal of the action entirely.  Fed. R. Civ. P. 37(e)(2); *see also Matthew Enter., Inc.*, 2016 WL 2957133 at \*3.

## IV.    ARGUMENT

### A.    OHA Breached Its Duty to Preserve the Saxton Text Messages

#### 1.    OHA Had a Duty to Preserve the Saxton Text Messages Since at Least October 2016

The duty to preserve is triggered when a party reasonably anticipates future litigation. *See* Fed. R. Civ. P. 37(e) advisory committee's notes to 2015 amendment; *see also Marten Transp., Ltd. v. Plattform Advert., Inc.*, No. 14-CV-02464-JWL-TJJ, 2016 WL 492743, at \*5 (D. Kan. Feb. 8, 2016) ("[T]he duty to preserve definitely exists upon the filing of a lawsuit, but . . . may arise even before a lawsuit is filed if a party has notice that future litigation is likely.").

Here, the record demonstrates that OHA reasonably anticipated litigation when FamilyCare raised concerns about the 2017 rates in early October 2016.  As an initial matter, the terms of the May 2016 settlement agreement (which resolved the parties' litigation regarding the 2015/2016 rate years) reflected the reality that litigation about future rate years was likely. Pursuant to the settlement agreement, if FamilyCare had "a disagreement with any new rates proposed by OHA," it could request that OHA engage in a 20-day "Discussion Period" (*i.e.*, alternative dispute resolution).  Dkt No. 224-3, at 7.  The parties agreed to refrain from "initiat[ing] litigation in state or federal court or in an administrative venue related to the [n]ew [r]ates" during the Discussion Period.  *Id.* at 8.  This provision reflected OHA's awareness that (1) FamilyCare would likely have "concerns regarding rate amendments in the future," and (2) the concerns would likely lead to litigation.  *Id.* at 7.

To be sure, immediately after FamilyCare raised concerns about the 2017 rates on October 5, 2016, OHA acknowledged the likelihood of litigation.  On October 6, Lynne Saxton sent an email to her team indicating that OHA "anticipate[d] litigation [with FamilyCare] as a

10- FAMILYCARE, INC.'S MOTION FOR SANCTIONS UNDER FED. R. CIV. P. 37(e)

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

result of the rates process . . . ."  Beane Decl. Ex. 2.  And the prospect of litigation between OHA and FamilyCare became even more imminent on October 13, 2016, when FamilyCare's counsel requested various public records associated with the 2017 rates and rate-setting process. Beane Decl. Ex. 1.

At the absolute latest, OHA's preservation duty attached on December 21, 2016, when the Oregon Department of Justice issued a litigation hold notice to OHA, instructing the agency to "take immediate action to prevent the routine destruction of documents **and electronically-stored information** related to [potential claims asserted by FamilyCare]."  Beane Decl. Ex. 3.

### 2.    OHA's Preservation Duty Extended to the Saxton Text Messages

The scope of the duty to preserve is "defined by what information is relevant to anticipated claims and defenses."  *EPAC Techs., Inc. v. HarperCollins Christian Publ'g, Inc.*, No. 3:12-CV-00463, 2018 WL 1542040, at *17 (M.D. Tenn. Mar. 29, 2018); *see also Leidig v. Buzzfeed, Inc.*, No. 16CIV542VMGWG, 2017 WL 6512353, at *9 (S.D.N.Y. Dec. 19, 2017). The "obligation to preserve relevant evidence exists whether or not the evidence has been specifically requested in a demand for discovery."  *Passlogix, Inc. v. 2FA Tech., LLC*, 708 F. Supp. 2d 378, 409 (S.D.N.Y. 2010).[9]

As OHA has conceded, the timing of and parties to the missing messages supports the inference that the messages were likely relevant to the issues raised in this litigation, including the development and implementation of the communications plan, and other evidence of anti-FamilyCare bias or retaliatory intent by Saxton or her subordinates.  *See* Beane Decl. Ex. 22 ("We determined which documents were unrecoverable from any source and also non-responsive

---

[9] *See also Lokai Holdings LLC v. Twin Tiger USA LLC*, No. 15CV9363 (ALC) (DF), 2018 WL 1512055, at *10 (S.D.N.Y. Mar. 12, 2018) (a party "is under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request.").

11-  FAMILYCARE, INC.'S MOTION FOR
SANCTIONS UNDER FED. R. CIV. P. 37(e)

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

based on date, time and participant information, which allowed us to determine the context of the communication, and its subject."); *see also* Dkt. No. 111 ¶¶ 29–58, 81–153.

The Saxton Text Messages—the ones we know about—are dated October 13, 2016 through August 31, 2017. *See* Beane Decl. Ex. 13. Several incidents underlying this litigation occurred during this period: OHA released 2017 rates and presented the 2017 contract amendment to FamilyCare and other CCOs (October–November 2016), the parties executed the Dispute Resolution Agreement and began mediation (December 30, 2016–February 21, 2017), and OHA began developing the communications plan (January 3, 2017). *See* Beane Decl. Ex. 23; Dkt No. 224-15 (Dispute Resolution Agreement); *see also* Dkt. No. 224-31 (Saxton's email instruction Darby to begin work on the communications plan). Moreover, most of the Saxton Text Messages were between OHA executives and staff responsible for capitation rate development and external communications planning. *See supra* Section II.A (describing development of communications plan); *see also* Beane Decl. Ex. 13. The mere fact that OHA designated the 12 other participants to the missing messages as custodians suggests the Saxton Text Messages are within the scope of the preservation duty. *See Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003) ("[T]he duty to preserve extends to those employees likely to have relevant information[.]"); *see also Marten Transp., Ltd*, 2016 WL 492743, at *5.

### 3. OHA Failed to Take Reasonable Steps to Preserve the Saxton Text Messages

The loss of the Saxton text messages is attributable to OHA's failure to take reasonable steps to preserve them. In evaluating the reasonableness of a party's preservation efforts, courts consider the party's level of sophistication, available resources, and the extent of its control over ESI, among other factors. Fed. R. Civ. P. 37(e) advisory committee's notes to 2015 amendment; *see also Lokai Holdings LLC*, 2018 WL 1512055, at *11. Also relevant is whether ESI was lost because of "the routine, good-faith operation of an electronic information system[.]" Fed. R.

12- FAMILYCARE, INC.'S MOTION FOR
SANCTIONS UNDER FED. R. CIV. P. 37(e)

Civ. P. 37(e) advisory committee's notes to 2015 amendment; *see also Marten Transp., Ltd.*, 2016 WL 492743, at *9.

Each of the factors supports the conclusion that OHA did not take reasonable preservation efforts. The loss of the Saxton Text messages cannot be blamed on OHA's naivete or inexperience with document preservation or lack of control over the documents in question. OHA is a sophisticated and experienced litigant, with significant resources—including a more than $20 billion budget—at its disposal. Beane Decl. Ex. 24**;**[10] *see also DVComm, LLC v. Hotwire Comm'ns, LLC*, No. CV 14-5543, 2016 WL 6246824, at *6 (E.D. Pa. Feb. 3, 2016) ("Sophisticated parties are expected to have a higher degree of awareness of preservation obligations."). Nor can the loss be attributed to "the routine, good-faith operation of an electronic information system," as text messages were manually deleted (daily!) by Saxton herself. Fed. R. Civ. P. 37(e) advisory committee's notes to 2015 amendment; *see also* Beane Decl. Ex. 19 at 78:24-80:1. And OHA indisputably controlled the ESI at issue because the messages were sent and/or received on an OHA-issued device. Beane Decl. Ex. 19 at 77:18-78:6.

Moreover, the circumstances surrounding the loss demonstrate OHA's failure to take reasonable steps to preserve the Saxton Text Messages. First, Saxton's "daily practice" of deleting emails and text messages likely violated OHA's Record Retention and Management Policy ("OHA Retention Policy"), which was created to ensure the agency's compliance with Oregon law. *See* Beane Decl. Ex. 26 (OHA Retention Policy); O.R.S. § 192.018(1); *see also Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 108 (2d Cir. 2001) (finding destruction of evidence in violation of a regulation requiring its retention supports an inference of spoliation). Pursuant to that policy, any text message that meets the definition of a public record

---

[10] Including the instant action, OHA was named as a party to at least twelve (12) lawsuits filed in this Court alone. Beane Decl. Ex. 25.

13- FAMILYCARE, INC.'S MOTION FOR
SANCTIONS UNDER FED. R. CIV. P. 37(e)

or is related to official state business must be "converted from the messaging format to a separate public record format and stored in accordance with agency retention schedules." *See* Beane Decl. Ex. 26 at 3 (¶¶ 14–15).[11]  It is likely the Saxton Text Messages were "public records."[12] Although Saxton testified that she does not recall the content of the missing messages, *see id.* Ex. 19 at 78:19–23, Saxton testified her texts "could deal with specific aspects of [her] day," and was clear that she did not use her OHA-issued phone for private business or communications. *Id.* at 71:14–72:12.[13]  Documents produced in discovery indicate Saxton sent and/or received text messages about official state business.  For example, a text message conversation between Saxton, Darby, and Cowie references the communications plan.  *See* Beane Decl. Ex. 27 at 9–12. And on August 31, 2017, Saxton texted, "Good news - we will final and send complete and accurate with no changes, reflecting CMS approved revisions at 9:30. Thank you!"  *Id.* Ex. 28.

Although aware of the OHA Retention Policy, Saxton did not convert text messages that she removed from her OHA-issued phone to a permanent record—and OHA did nothing to ensure that she did so.  *Id.* Ex. 19 at 85:7-87:24.  Nor did Saxton inquire whether her practice of daily deleting texts and emails complied with OHA's legal obligation to retain public records. *Id.*  That fact that Mark Fairbanks, the CFO/COO, is also missing text messages is particularly egregious, as he approved updates to the OHA Retention Policy a month before date of the first missing message.  *Id.* Ex. 26 at 1 (policy updated on September 1, 2016); *id.* Ex. 13 (earliest missing message dated October 13, 2016).

---

[11] *See also id.* at 1 (defining public record); O.R.S. § 192.005(5) (same).

[12] *See* Beane Decl. Ex. 26 at 1 (defining public record as "a document, book, paper, file, sound recording, machine readable electronic record or other material, *regardless of form or characteristic, technology or medium*, prepared, owned, used or retained by DHS and OHA in connection with the transaction of the public's business."); *see also* O.R.S. § 192.005(5) (definition of public record).

[13] She further described her use of text messages as "mostly business logistics."  *Id.* at 83:10–83:15.

14- FAMILYCARE, INC.'S MOTION FOR
SANCTIONS UNDER FED. R. CIV. P. 37(e)

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Saxton deletion practice also violated the December 21, 2016 litigation hold notice, which expressly instructed OHA not to "destroy any documents relating to FamilyCare *or* the potential claims," including "electronically-stored information that may be located on … Smartphones[.]" Beane Decl. Ex. 3 at 2 (emphasis added). The hold notice requested OHA "**suspend compliance with [its] record retention schedule**" and instructed, "**[d]o not discard, delete, overwrite, alter, or destroy any** [ ] **documents or electronically-stored information**" "**relating to FamilyCare or this litigation**." *Id.* (emphasis in original). Although "aware of …the litigation hold," Saxton continued her practice of daily deleting messages, contrary to its express instructions. *Id.* Ex. 19 at 72:25-73:18; *id.* at 70:8-11.

Taken together, the record reveals that OHA's counsel abdicated its responsibility to "oversee compliance" with [the] litigation hold and monitor OHA's "efforts to retain and produce the relevant documents." *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 432 (S.D.N.Y. 2004). Apparently, Saxton believed her deletion practice "complied with the litigation hold," and the deleted messages were recoverable. Beane Decl. Ex. 19 at 72:25-73:18; *see also id.* at 63:14-64:4, 72:25-75:22, 78:24-80:10, 81:4-19, 196:3-15. That the Director of OHA held this mistaken belief suggests OHA's counsel fell short of its obligation to "become fully familiar with [their] client's document retention policies [and] data retention architecture." *Zubulake*, 229 F.R.D. at 432; *see also Lokai Holdings LLC*, 2018 WL 1512055, at *11. As a result, 59 text messages (76%) were lost *after* the litigation hold was formally issued. *See* Beane Decl. Ex. 13. OHA's failure to preserve these messages is objectively unreasonable. *See GN Netcom, Inc. v. Plantronics, Inc.*, No. CV 12-1318-LPS, 2016 WL 3792833, at *6 (D. Del. July 12, 2016) ("[defendant's] extensive document preservation efforts do not absolve it of all responsibility for the failure of a member of its senior management to comply with his document preservation obligations.").

15- FAMILYCARE, INC.'S MOTION FOR
SANCTIONS UNDER FED. R. CIV. P. 37(e)

### 4. The Saxton Text Messages Cannot Be Restored or Replaced with Additional Discovery

As detailed above, the Saxton Text Messages "cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e).[14] OHA concedes that the messages were not backed up and could not be recovered by OHA's vendor. Beane Decl. Ex. 21; *id.* Ex. 14. Nor are the messages available from any of the other participants. Eighty percent (80%) of the Saxton Text Messages were exchanged with one or more of **12 other OHA custodians**. Beane Decl. Ex. 13. Yet, incredibly, OHA has determined the messages are "not recoverable or otherwise retrievable from an alternative source." Beane Decl. Ex. 14.[15] This subset of the Saxton Text Messages is "completely lost." *See Oppenheimer*, 2017 WL 1807596, at *11 (deleted text messages were "completely lost"); *see also First Fin. Sec., Inc. v. Freedom Equity Grp., LLC*, No. 15-CV-1893-HRL, 2016 WL 5870218, at *3 (N.D. Cal. Oct. 7, 2016) (finding "messages cannot be restored or replaced through additional discovery," where defendant conceded its agents deleted discoverable text messages). OHA has not explained why a total of 13 custodians are missing text conversations with each other.

The remaining Saxton Text Messages (16 messages or 20.5%) reflect exchanges between Saxton and one or more of 14 third-parties, including legislators and their staff, CCO leadership, lobbyists, and public affairs professionals. Beane Decl. Ex. 13. In most instances, only a single text message between Saxton and a third party is missing. *Id.* FamilyCare has attempted to obtain some of these missing text messages, using public records requests and third-party discovery. Beane Decl. ¶ 45. This effort has not yielded much missing information.[16]

---

[14] OHA also cannot guarantee that there are not deleted messages that are simply lost and not reflected on the matrices

[15] Curiously, nearly half of the OHA custodians implicated in the missing Saxton messages produced other text messages in response to discovery requests in this litigation. Beane Decl. ¶ 26.

[16] To date, a single missing text message has been disclosed in response to a public records request. Beane Decl. ¶45. While the message appears to discuss OHA business, it does not pertain to FamilyCare or the rate-setting process. *Id.*

16- FAMILYCARE, INC.'S MOTION FOR
SANCTIONS UNDER FED. R. CIV. P. 37(e)

**B.     The Destruction of the Saxton Text Messages Has Prejudiced FamilyCare**

Rule 37(e)(1) "does not place [the] burden of proving or disproving prejudice on one party or the other." Fed. R. Civ. P. 37(e)(1) advisory committee's notes to the 2015 amendment. Instead, courts are left with the "discretion to determine how best to assess prejudice in particular cases." *Id.* "An evaluation of prejudice from the loss of information necessarily includes an evaluation of the information's importance in the litigation." *Id.* Prejudice lies where other evidence suggests that the lost ESI "may have been valuable … in proving the elements of [the non-spoliating party's] claims." *Lokai Holdings LLC*, 2018 WL 1512055, at *12.

Although the content of the Saxton Text Messages is unknown, ample circumstantial evidence suggests they were likely important to this litigation. Metadata indicates that the missing texts involved key players and were sent during a key timeframe in this litigation. *See supra* IV.A.2. More than half (55% or 43 messages) the missing texts are between Saxton and either Cowie, Fairbanks, or Darby—the architects of the smear campaign—and most of these messages were exchanged after the parties entered the Dispute Resolution Agreement. *See supra* Section II.A (describing development of communications plan); *see also supra* Section II.C. Other OHA custodians implicated in the Saxton text messages were involved in the rate development process: Fairbanks (who attended the first dispute resolution meeting); Chauhan, and Evans. As noted above, *see supra* Section IV.A.3, these individuals used text messages to communicate about the subject matter of this litigation, including OHA's anti-FamilyCare communications plan. *See, e.g.,* Beane Decl. Ex. 28, 29 (January 26, 2017 message from Darby to Cowie and Crowell, "Need to finalize Next draft to FC plan and send to Lynne today if possible - nothing new by stress is happening"); *id.* Ex. 30 (May 20, 2016 text from Fairbanks, recipient unknown, "You need to hear the back story re: FC"); *id.* Ex. 27 at 12 (August 8, 2017 text from Darby to Cowie and Saxton referring to the communications plan). The fact that the available texts are about litigation is sufficient to establish prejudice as a result of the deleted texts. *Oppenheimer v. City of La Habra*, No. SACV1600018JVSDFMX, 2017 WL 1807596, at

17-  FAMILYCARE, INC.'S MOTION FOR
     SANCTIONS UNDER FED. R. CIV. P. 37(e)

*12 (C.D. Cal. Feb. 17, 2017) (finding deletion of text messages amounted to prejudice where available texts showed the subject of the litigation was a topic of discussion).

Other missing text messages reflect communications with various OHA stakeholders, including several individuals falling into the categories of audiences identified in the communications plan. For example, on January 24, 2017, Saxton texted Oregon State Senator Betsy Johnson, a member of the Senate Ways and Means Committee ("Ways and Means"). Beane Decl. Ex. 13 at 4; *see also id.* Ex. 31. Perhaps not coincidentally, Ways and Means is where FamilyCare's bill (SB 233) seeking transparency into OHA's rate-development process died. *See id.* Ex. 32. Two days later, on January 26, 2017, Darby texted Black, "ASAP - Lynne thinks she didn't know the FC bills were coming and now feels we need a firm to help is [sic] with our strategy[.]" *Id.* Ex. 33. On March 4, 2017, Saxton communicated with Oregon Representative Knute Buehler via text. Ex. 13 at 6; *see also id.* Ex. 34. Representative Buehler serves on the Health Care Committee and Joint Ways and Means - Human Services Subcommittee. *See id.* Ex. 34. These missing texts are consistent with the communications plan, which called for "OHA Leadership" to communicate with legislators to "[s]howcase success of CCOs and position Family Care [sic] as outlier." *See* Dkt. No. 224-29, at 2.

Both the timing of and participants to the Saxton Text Messages suggest that the missing communications are relevant to FamilyCare's claims and thus that their destruction "is prejudicial to the presentation of [FamilyCare's] case." *GN Netcom, Inc.*, 2016 WL 3792833, at *6. FamilyCare contends that OHA's development and implementation of the smear campaign evinces that OHA improperly interfered with FamilyCare's business relations and that Saxton improperly retaliated against FamilyCare's exercise of its First Amendment rights. *See* Dkt. No. 111 ¶¶ 81–93, 142–148; *see also* Dkt. No. 222 at 20-23. In response, OHA denies that the communications plan was implemented and Saxton denies that she retaliated against

18- FAMILYCARE, INC.'S MOTION FOR
SANCTIONS UNDER FED. R. CIV. P. 37(e)

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

FamilyCare's exercise of its First Amendment rights. *See* Dkt. No. 149 at 16-17 (OHA Motion for Summary Judgment); Dkt. 201 at 1-2 (Saxton's Answer to Fourth Amended Complaint).

The available evidence strongly suggests that the destroyed text messages are relevant to these disputed issues. Texts exchanged between Saxton and the plan's architects (Darby, Saxton, Cowie), research sources (Fairbanks and Evans), and target audiences (legislators, CCOs, etc.) are relevant because they may reveal that OHA covertly implemented at least part of the plan, using the "informal" and "off the record" means contemplated therein. Dkt. No. 224-29, at 2–3 (communications plan). Additional evidence could prove material to FamilyCare's ability to rebut OHA's and Saxton's self-serving claims that the plan was "shelved," never finalized, or "implemented." *Id.* Ex. 19 at 181:10-187:15, 188:3-189:1, 187:16-188:1, 193:24-194:15; *see also id.* Ex. 35 at 154:6–162:8, 163:22–165:3; *id.* Ex. 36 at 134:1–135:25, 209:8–216:20. Where, as here, the destruction of relevant ESI "has limited the universe of documents available to use in … in support of its claims," courts have found prejudice warranting sanctions *Lokai Holdings LLC*, 2018 WL 1512055, at \*12.

Finally, FamilyCare has been forced to spend extra time and expense pursuing the Saxton Text Messages (through informal conferences and this motion), and pursuing relevant discovery from third parties. Prejudice lies where a non-spoliating party is forced to expend resources in this manner. *Lokai Holdings LLC*, 2018 WL 1512055, at \*12.

The prejudicial effect of OHA's deliberate deletion of the Saxton Text Messages can only be cured with serious measures, as discussed below. *See infra* Section IV.D.1.

C.      **OHA Intended to Deprive FamilyCare of the Use of Saxton Text Messages in this Litigation**

The sanctions provided by Rule 37(e)(2) are available where a court finds ESI that should have been preserved was lost because a party "acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2). Courts have inferred intent to deprive where the destruction of ESI is caused by an intentional, affirmative act. For example, in

19-   FAMILYCARE, INC.'S MOTION FOR
      SANCTIONS UNDER FED. R. CIV. P. 37(e)

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

*Oppenheimer*, 2017 WL 1807596, at \*13, the court found a defendant who deleted text messages exchanged with a key witness to the lawsuit after the suit was filed intended to deprive plaintiff of the use of those messages.  The court inferred intent from the timing of the deletion of the messages, and the fact that a surviving text message revealed the witnesses discussed the subject of the litigation.  *Id.*

OHA's destruction of the Saxton Text Messages is analogous to *Oppenheimer*.  Saxton admits deleting text messages from their OHA-issued devices, and doing so after litigation was reasonably anticipated and after a document hold was issued.  The messages are also missing from devices issued by OHA to twelve other custodians. Indeed, the majority of the Saxton Text Messages (50 messages) were deleted *after* this lawsuit was filed on February 27, 2017.  *See* Beane Decl. Ex. 13.  Finally, as discussed above, documents produced in discovery reveal Saxton, Fairbanks, and others texted about the subject of this litigation.  *See supra* Section IV.B. This is ample evidence of OHA's intent to deprive.  *See Oppenheimer*, 2017 WL 1807596, at \*13.

Intent to deprive is also inferred where, as here, a party cannot offer a credible explanation for affirmatively deleting ESI subject to the duty to preserve.  *See, e.g., Alabama Aircraft Indus., Inc. v. Boeing Co.*, 319 F.R.D. 730, 746 (N.D. Ala. 2017) (defendants could not explain why they complied with litigation hold policy in some instances, but not others); *see also First Fin. Sec., Inc.*, 2016 WL 5870218, at \*3 (inferring intent from agreement to avoid communicating electronically).  OHA has not offered a credible explanation for the deletion of the Saxton Text Messages, which is contrary to the OHA Retention Policy, Oregon Public Records Law, and the litigation hold notice.  *See Alabama Aircraft Indus., Inc.*, 319 F.R.D. at 746 (inferring intent to deprive from circumstantial evidence where emails were "intentionally destroyed by an affirmative act which ha[d] not been credibly explained.").

20- FAMILYCARE, INC.'S MOTION FOR
SANCTIONS UNDER FED. R. CIV. P. 37(e)

Courts have also inferred the intent to deprive from a failure to adhere to company policy, particularly where deletions are made after requests for information.  *See, e.g.*, *Oppenheimer*, 2017 WL 1807596, at \*13; *see also Alabama Aircraft Indus., Inc.*, 319 F.R.D. at 746 (inferring intent to deprive where defendant's agents departed from company policy).  *Oppenheimer* is, once again, instructive.  There, the court found the requisite intent to deprive and imposed a permissive adverse inference jury instruction where defendant city deleted emails, purportedly pursuant to its record retention policy, even though plaintiff had made a written request for information four months prior, and a government investigation was pending when the emails were deleted.  2017 WL 1807596, at \*13.  Here, the facts are stronger than in *Oppenheimer*— Saxton deleted potentially relevant text messages, in contravention of the OHA Retention Policy *and* Oregon Public Records Law, while litigation was pending or reasonably anticipated, and after FamilyCare had made several written requests for information relating to the 2017 capitation rates.  *See supra* Section IV.A.3 (discussing violation of the OHA Retention Policy); *see also* Beane Decl. Ex. 1 (October 13, 2016 public records request); *see also* Dkt No. 222, at 9–11.  Moreover, OHA's production of text messages from other custodians indicates that OHA, like the defendant in *Alabama Aircraft Industries, Inc.*, knew how to comply with a litigation hold.  319 F.R.D. at 746.

Also indicative of OHA's intent to deprive is the agency's pattern and practice of denying FamilyCare's (and the media's) requests for information, particularly as they relate to the rate-development process and communications plan.  For nearly three years, OHA has evaded its obligation to disclose documents sought by FamilyCare in public records requests, discovery, and mediation.  *See generally* Dkt No. 222, at 9–11; *see also* Dkt. No. 224-10 at 75.  OHA also employed similar tactics to keep the communications plan out of the public eye.  *See* Beane Decl. Ex. 37, at 3 (May 22, 2017 public records request from Nick Budnick of the Portland Tribune); *see also* Nick Budnick, *State hiding communication plan in FamilyCare battle*, PORTLAND

21- FAMILYCARE, INC.'S MOTION FOR
SANCTIONS UNDER FED. R. CIV. P. 37(e)

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

TRIBUNE (July 3, 2017), *available at* https://portlandtribune.com/pt/9-news/365002-244843-state-hiding-communication-plan-in-familycare-battle.

Even after the communications plan was exposed, OHA sought to conceal its import, informing members of the media and legislators (falsely) that the plan was "never formally reviewed or approved, or fully implemented." Beane Decl. Ex. 38; *see also id.* Ex. 39. OHA also misrepresented the level of staff involvement in creating the draft, and its knowledge of pending legislation at the time. *Compare* Ex. 40 ("We did not know about SB 233 at the time this single staff draft was created.") *with id.* Ex. 29 ("Need to finalize Next draft to FC plan and send to Lynne today if possible") *and id.* Ex. 33 ("ASAP -- Lynne thinks she didn't know the FC bills were coming …").

OHA has continued such conduct in this litigation. For example, OHA's counsel notified FamilyCare of the issue with Saxton's text messages on April 30, 2018, but did not produce the matrices until June 13, and then only after multiple requests. OHA also did not meaningfully respond to FamilyCare's counsel's inquiries about OHA's preservation policies and practices. *See supra* Section II.C. Saxton too has refused to provide information relevant to spoliation. For example, in response to an interrogatory asking Saxton to identify cell phones she used during the relevant period, Saxton claimed that she "lacks sufficient knowledge" to provide *any* identifying information about her OHA-issued phones, notwithstanding her prior sworn testimony confirming that at least some of her deletion efforts were undertaken on her iPhone. *Compare* Beane Decl. Ex. 41 (Saxton's Response to Interrogatory No. 1) *with* Beane Decl. Ex. 19 (Saxton Dep. at 70:5-7; 77:4-8).

Taken together, the only reasonable conclusion is that OHA acted intentionally to deprive FamilyCare of the use of the Saxton Text Messages.

22- FAMILYCARE, INC.'S MOTION FOR
SANCTIONS UNDER FED. R. CIV. P. 37(e)

**D.      OHA Should Be Sanctioned for Its Destruction of the Saxton Text Messages**

**1.      Rule 37(e)(2) Sanctions Are Necessary to Remedy OHA's Intentional Deprivation of the Saxton Text Messages**

The Court should remedy OHA's flagrant violation of law and intentional destruction of relevant evidence by issuing an adverse inference jury instruction.  Specifically, the Court should instruct the jury that it must presume OHA destroyed the Saxton Text Messages to prevent FamilyCare from obtaining documents establishing that OHA implemented the communications plan and otherwise retaliated against FamilyCare. Fed. R. Civ. P. 37(e)(2)(B).  The Court should also preclude OHA from introducing testimonial evidence that the communications plan (1) was created for a proper purpose; and (2) not implemented, if such testimony is offered by Saxton, Fairbanks, Darby, or Cowie.

Alternatively, FamilyCare requests that the Court issue an appropriate permissive adverse inference jury instruction for use at the upcoming trial.  Such an instruction would inform that jury that it may, but need not, presume that OHA destroyed the Saxton Text Messages to prevent FamilyCare from obtaining evidence that would support FamilyCare's case, including evidence that OHA implemented the communications plan and that Saxton's conduct towards FamilyCare was in retaliation for FamilyCare's exercise of its First Amendment rights.

Courts have imposed such sanctions where, as here, a defendant's agents' deletion of discoverable text messages reflected a "shared intent to keep incriminating facts out of evidence." *First Financial Security, Inc. v. Freedom Equity Group, LLC*, No. 15-CV-1893-HRL, 2016 WL 5870218, at *3 (N.D. Cal. Oct. 7, 2016); *see also Alabama Aircraft Indus., Inc. v. Boeing Co.*, 319 F.R.D. 730, 746 (N.D. Ala. 2017) (imposing permissive adverse inference instruction and awarding attorney's fees and costs where emails were "intentionally destroyed by an affirmative act which ha[d] not been credibly explained.").[17]

---

[17] If the Court finds the measures available under Rule 37(e)(2) are not warranted here, it should exercise its substantial discretion to impose one or more of the "broad" range of curative measures available under Rule 37(e)(1).  For example, FamilyCare should be at least permitted

23-   FAMILYCARE, INC.'S MOTION FOR
       SANCTIONS UNDER FED. R. CIV. P. 37(e)

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

**2.    FamilyCare is Entitled to Recover Its Attorneys' Fees and Costs**

Finally, the Court should award FamilyCare its attorney's fees and costs incurred in bringing this motion and in fruitlessly pursuing discovery of the Saxton Text Messages from OHA, Saxton, and via public records requests and third-party discovery.  Such a remedy "ameliorates the economic prejudice imposed, . . .  and also serves as a deterrent to future spoliation."  *Lokai Holdings LLC*, 2018 WL 1512055, at *17.

**V.    CONCLUSION**

For the foregoing reasons, FamilyCare respectfully requests that the Court sanction OHA's egregious spoliation of the Saxton Text Messages.

DATED:  September 24, 2018                    **PERKINS COIE LLP**


By: *s/ Stephen F. English*
⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
Stephen F. English, OSB No. 730843
SEnglish@perkinscoie.com
Thomas R. Johnson, OSB No. 010645
TRJohnson@perkinscoie.com
Brian P. Samuelson, OSB No. 165476
BSamuelson@perkinscoie.com
Perkins Coie LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Telephone:  503.727.2000
Facsimile:  503.727.2222

*Attorneys for Plaintiff FamilyCare, Inc.*

---

to present evidence and argument to the jury regarding OHA's destruction of the Saxton Text Messages and the likely relevance of the messages.  *See, e.g., Leidig*, 2017 WL 6512353, at *14; *see also Nuvasive, Inc. v. Madsen Med., Inc.*, No. 13CV2077 BTM(RBB), 2016 WL 305096, at *3 (S.D. Cal. Jan. 26, 2016) (imposing evidentiary sanction in lieu of adverse inference instruction).  The Court should instruct the jury that it may consider FamilyCare's evidence regarding the destruction of the Saxton Text Messages "along with all other evidence in the case in making its decision."  *Nuvasive, Inc.*, 2016 WL 305096, at *3.

24- FAMILYCARE, INC.'S MOTION FOR
SANCTIONS UNDER FED. R. CIV. P. 37(e)