IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| FAMILYCARE, INC., an Oregon non-profit corporation,<br><br>        Plaintiff,<br><br>    v.<br><br>OREGON HEALTH AUTHORITY, an agency of the State of Oregon, and PATRICK ALLEN, both individually and in his official capacity as director of the Oregon Health Authority, and LYNNE SAXTON<br>Defendants. | Case No. 6:18-cv-00296-MO<br><br>**DECLARATION OF LORI COYNER** |

I, Lori Coyner, hereby declare:

1. I make this declaration based upon my personal knowledge.

2. I am a managing principal of Health Management Associates ("HMA"), a health care consulting firm. I became employed by HMA in December, 2017

3. Prior to my employment by HMA, from approximately February, 2013 to July, 2017, I was employed by Oregon Health Authority ("OHA"). During that period, in June 2014, I became OHA's Director of Health Analytics and in December, 2015 I became Statewide Medicaid Director.

4. My deposition was taken in this case on August 30, 2018 and I have reviewed the transcript from that deposition.

5. I have read Stephen F. English's description of my deposition testimony in his letter to the Court dated September 7, 2018. He has mischaracterized my testimony. I did not testify that I was unaware of any restrictions on my "ability to use information" to which I had access at OHA.

6. I am aware that I have a legal obligation not to use confidential information

gained in the course of or by reason of my former position as a public official or of my activities as a public official for my personal gain. I have not used and would not use confidential information gained while employed by OHA.

7. My employment at HMA is governed by the Health Management Associates, Inc. Policy and Guidelines Related to Conflicts of Interest and Proprietary Information, which provides in pertinent part:

> "2. Prohibited Exchanges of Information
>
> HMA staff members must carefully regulate the exchange of information with other staff concerning the issues identified above as having potential for conflict. The potential for inappropriate exchange of information among HMA staff members occurs when working on similar projects for multiple clients. To prevent inappropriate exchanges of information, HMA staff should observe the following rules when working with client- specific information:
>
> - oral exchange of information is prohibited;
> - exchange of printed documents is prohibited; and
> - exchange of electronic files is prohibited.
>
> 3. Storage of Information
>
> Documents and electronic files which are confidential/proprietary in nature should be handled and stored at HMA to prevent inadvertent or inappropriate exchanges of information. Each project shall have a designated storage location on HMA's servers in which electronic files will be securely stored and file access will be strictly limited to the project's team members."
>
> At all times as an HMA employee, I have complied with these obligations.

8. Further, HMA typically includes in its proposals to and contracts with its clients, including Coordinated Care Organizations, its standard confidentiality provisions and has done so with respect to both of the CCO clients that I identified in the "attorneys eyes only" portion of my deposition. That provision states:

"CONFIDENTIALLY, NON-DISCLOSURE AND CONFLICTS

HMA often serves multiple clients within a certain industry or market, including those with potentially opposing interests, and HMA's relationship with you would not be an exclusive relationship. Accordingly, HMA may have served, may currently be serving or may in the future serve other companies whose interests may be adverse to yours. In all such situations, HMA is committed to maintaining the confidentiality of each client's information, and ensuring that your interests, proprietary and otherwise are protected. To that end, HMA strictly adheres to our Policy and Guidelines Related to Conflicts of Interest and Proprietary Information which contains nondisclosure procedures (such as firewall protocols and other safeguards) for the purpose of maintaining each client's confidential information and ensuring that your interests are protected.

Both parties acknowledge that, in the course of performing under this Agreement, a party may learn of or receive confidential, trade secret, or other proprietary information concerning the other party or third parties to whom the party has an obligation of confidentiality (Confidential Information). Each party agrees to take at least such reasonable precautions to protect the other party's Confidential Information as it takes to protect its own Confidential Information, and agrees to not disclose to any third party any Confidential Information belonging to the other party."

At all times as an HMA employee, I have complied with these obligations.

9.    When I worked for OHA in 2015 and 2016, I reviewed some financial information that CCOs submitted to OHA for the period 2014 and 2015. Most of the data I reviewed was summaries of information. I do not remember the specific, detailed financial information of any CCO that I may have reviewed while employed by OHA.

10.    The work I am performing at HMA as an employee and consultant does not involve the use of any individualized, specific CCO financial data that I reviewed or saw while working for OHA. My consulting work in Oregon for HMA involves analyzing publicly-available state information and information provided to me by CCOs to advise those CCOs.

*In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.*

DATED this 30 day of September, 2018

Lori Coyner