Kevin O'Malley, AZ No. 006420
Sonia A. Montalbano, OSB No. 97082
ELLIOTT, OSTRANDER & PRESTON, PC
707 SW Washington, Suite 1500
Portland, OR  97205
Telephone (503) 224-9867
Fax (503) 224-7819
kevin.omalley@gknet.com
sonia@eoplaw.com
Attorneys for Schramm Health Partners, LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| FAMILYCARE, INC., an Oregon non-profit corporation, | Case No.  6:18-cv-00296-MO |
| Plaintiff, | RESPONSE TO FAMILYCARE'S MOTION TO PERMIT ACCESS TO AEO DOCUMENTS PURSUANT TO PROTECTIVE ORDER |
| v. | |
| OREGON HEALTH AUTHORITY, and agency of the State of Oregon, PATRICK ALLEN, both individually and in his official capacity as director of the Oregon Health Authority, and LYNNE SAXTON, | *ORAL ARGUMENT REQUESTED* |
| Defendants. | |

## INTRODUCTION

When FamilyCare made an oral motion to permit its Chief Operating Officer (Bill

Murray) access to Optumas' AEO documents during the July 30, 2017 hearing, Optumas

objected, noting the topic should the be "subject of further discussion between counsel and with

specific documents being presented." 07/30/18 Tr. 60:19-20.   The Court advised those in

attendance that a formal motion would be required.  Inexplicably, FamilyCare did not raise the

1 | RESPONSE TO MOTION TO PERMIT ACCESS TO AEO DOCUMENTS

issue again with Optumas until after the close of business on September 17, 2018. In an after-hours telephone call, FamilyCare demanded access to all of Optumas' AEO documents not only for Bill Murray, but also Art Suchorzewski, its Director of Government Affairs. When Optumas reiterated its suggestion that FamilyCare identify specific documents, FamilyCare called Optumas' proposal unworkable and informed Optumas that if did not stipulate to complete access by close of business on September 18, then it would file its motion. Less than 24 hours later, Family Care filed the Motion to Permit Access.

Putting aside FamilyCare's lack of good faith conferral, Optumas' interest in protecting its proprietary and commercially sensitive business information is not outweighed by FamilyCare's vague assertions that the AEO designations are interfering with its ability to "offer suggestions" or have "detailed discussions" about its experts' work. FamilyCare has not articulated why their *independent* expert even needs FamilyCare's employees' suggestions or input. Moreover the Stipulated Protective Order applicable to Optumas' documents dated January 17, 2018 (the "Optumas Protective Order") specifically prohibits Family Care employees having access to documents designated AEO by Optumas. Assuming FamilyCare could meet its burden of establishing a need for access to some of Optumas' AEO materials, there is a process set out in the Optumas Protective Order that FamilyCare could have followed; it did not. Nor is the relief requested proportional to the problem articulated in FamilyCare's motion. The more appropriately tailored, practical, and agreed upon approach requires FamilyCare to identify the specific AEO materials that its expert has utilized in his models, and then confer with Optumas regarding their designation. This can hardly be a burden for FamilyCare since its expert already knows which documents were utilized to build their models.

To the extent that FamilyCare contends there is no longer time for such a practical solution, any hardship results from its own delay.  The motion should be denied.

**BACKGROUND**

Optumas performed the rate-setting work at issue in this litigation under a contract with OHA.  That contract grants OHA ownership of all work-product deliverables by Optumas to OHA.  Declaration of Steve Schramm ("Schramm Decl."), ¶3.  As part of OHA's production of relevant material in this case, OHA required Optumas to produce all work-product deliverables supporting its development of the rates at issue.  *Id*.  Optumas complied, produced that information to OHA, and OHA subsequently produced that information to FamilyCare with the bates stamp pre-fix OPT.  *Declaration of Greg Scott ("Scott Decl."), ¶6.* The only information Optumas withheld from production to OHA were certain pre-existing trade secret information developed independently of Optumas' Contract with OHA.  *Schramm Decl., at ¶3.*  Optumas only designated 7 documents produced by OHA with OPT pre-fix as AEO.  *Scott Decl*., at ¶7.  After FamilyCare filed the present motion, Optumas reviewed those documents and determined that they could be down-designated from AEO.  *Schramm Decl. at ¶3.*  As it stands now, no Optumas materials produced to OHA that are necessary to conduct an independent review and/or the underlying data necessary to independently develop rates have been designated AEO by Optumas.  *Schramm Decl.,* at ¶4.

Lewis & Ellis is an actuarial firm that OHA retained to independently determine whether Optumas' rate-setting work for Oregon comported with generally accepted actuarial principles and was actuarially sound.  Schramm Decl., at ¶6.  Optumas did not play any role in OHA's production of documents requested by Lewis & Ellis to conduct its independent review.  *Id.*  Every document OHA produced to Lewis & Ellis was subsequently produced by OHA in this

litigation as OHALIT 00570907-005703056 and OHALIT 005703062-005703077. *Scott Decl.,* at ¶4. Importantly, Optumas did not designate any of those specific OHALIT documents AEO before OHA produced them in this litigation. *Id.* at ¶5. FamilyCare's assertion that Lewis & Ellis "received and reviewed information that Optumas claimed as trade secrets" is incorrect.[1] It is true that 96 of the documents provided to Lewis & Ellis were designated AEO <u>by the CCOs</u>. Scott Decl., at ¶5. But Lewis & Ellis is required under its contract with OHA to keep all information confidential. *Id.* at ¶3.

Subsequent to OHA's production of Optumas' work-product specific to the rate setting work at issue in this case, FamilyCare served a subpoena on Optumas seeking additional materials. Schramm Decl., at ¶¶8-9. The subpoena was overly broad and implicated production of documents wholly unrelated to the rate setting work at issue, including work Optumas did in other states. *Id* at ¶10. This resulted in a protracted discovery dispute before this case was removed to federal court. That dispute was resolved with the state court's entry of the Optumas Protective Order. Schramm Decl., at ¶¶12-13.

In attempting to "reframe the question" regarding who may have access to AEO documents, FamilyCare misstates the restrictions imposed by the Optumas Protective Order, and ignores the fact that the proposal set forth in its Motion was specifically contemplated at the time the Optumas Protective Order was drafted and is prohibited. FamilyCare also does not explain why it failed to utilize the procedure that could have avoided this very Motion.

---

[1] In fact, if one checks the factual support for FamilyCare's assertion (located at Exhibit 7, p. 219:18-25), there is no support what-so-ever for the proposition that Lewis & Ellis received information Optumas considers trade secret. When FamilyCare's attorney asked Lewis & Ellis if they knew whether they received any information Optumas considered trade secret, the Lewis & Ellis representative stated: "Optumas did not communicate with me, so they didn't give me any indication [about whether the information was trade secret]."

The restrictions on who may view AEO documents is not limited to competitors. While "independent consultants or expert witnesses" are permitted access[2], FamilyCare employees are specifically *excluded* (Motion to Allow Access, Ex. 2, para. 10). This restriction was and is important to Optumas.

First, Optumas desired to protect its own proprietary and commercially sensitive information from FamilyCare's employees (e.g., the unique methodology, processes and analytics Optumas has developed over the years to produce its models and analyses). Schramm Decl., at ¶¶14-15. Second, Optumas' rate-setting work isn't conducted in a vacuum, Optumas utilizes real world data to create models and perform analyses supporting its rate-development. *Id.* In this case, the real world data consists of a large volume of third-party CCO information (e.g., network, service utilization figures, reimbursement rates, etc.,) that is proprietary and commercially sensitive information of third-party CCOs.[3] *Id.* at ¶11. Optumas received this information from OHA (and from other states) and is contractually bound by its contract with Oregon to treat all information it received from OHA as confidential. *Id.* This is a common contractual provision in all states in which Optumas has operated and received commercially sensitive information from state agencies. *Id.*

After the Optumas Protective Order was entered, approximately 5% of the documents Optumas produced were marked AEO. Schramm Decl., at ¶13. Generally, these 4,500 documents fall into nine categories of information that is commercially valuable and sensitive for the reasons articulated above and as detailed in Mr. Schramm's declaration. *Id.* at ¶¶14-16.

---

[2] Motion to Allow Access, Ex. 2, para. 9 (d).

[3] In this case, due to the breadth of FamilyCare's subpoena, the information produced also included third-party data from other states and those states' CCOs that also demanded protection. Schramm Decl., at ¶11.

The Optumas Protective Order provides that if a party disputes the confidential status of a document, the parties must confer. "As part of that conferral, the designating party must assess whether redaction is a viable alternative to complete non-disclosure." (Motion to Allow Access, Ex 2, para. 10). This necessarily implies that FamilyCare must identify the documents it wishes to allow access to. Despite Optumas' production being completed by mid-May, it wasn't until the July 30, 2017 hearing that FamilyCare first raised the issue of granting AEO access to FamilyCare's employees via an oral motion. The Court ultimately noted that "it's entirely necessary here that [FamilyCare] file a formal motion." 07/30/18 Tr. 62:13-14.

Family then failed to engage with Optumas in any discussion about access to materials Optumas produced as AEO. After reviewing a series of letters sent to this Court by FamilyCare and Health Share concerning an amendment to the general protective order in this case, Optumas reached out to FamilyCare on September 17 to clarify whether the amendment being discussed was intended to include Optumas AEO documents. Kevin O'Malley Declaration ("O'Malley Decl."), ¶2. FamilyCare did not return Optumas phone call until after close of business on September 17. *Id.* at ¶3. At that time, FamilyCare's attorney stated their intention to include Optumas AEO documents in the proposed amendment to the protective order, and sought Optumas stipulation to permit Mr. Murray and Mr. Suchorzewski access. *Id.*

Optumas noted that it had not been included in the negotiations between FamilyCare and the CCOs, and reiterated its request that FamilyCare provide it a list of the specific AEO documents at issue for evaluation. O'Malley Decl., at ¶3. The next day, FamilyCare informed Optumas that if it did not stipulate to providing access by close of business it would file a motion with the Court. *Id.* at ¶4. Given that Optumas was provided less than 24 hours to consider a

request covering 4,500 documents, Optumas informed FamilyCare it could not stipulate to its request. *Id.* at ¶5. Within an hour, FamilyCare filed its Motion.

## II. ARGUMENT

**A.    FamilyCare has not demonstrated a need for access to all Optumas AEO documents**

FamilyCare's asserted reason for expanding access to the AEO documents produced by Optumas is that FamilyCare employees "cannot ask questions or offer suggestions" to portions of its experts' work that apparently rely on documents designated AEO by Optumas.   As previously mentioned, that problem had a less drastic and more practical solution.  FamilyCare's experts have "relied on Optumas and CCO-specific AEO information to prepare detailed models relating to several aspects of FamilyCare's rate-setting claims."  Motion, p. 4.  FamilyCare's experts simply need to identify the Optumas-specific AEO information that its actuarial expert relied on, and Optumas can determine if access is appropriate as to the identified FamilyCare employees.  If it is not, then and only then would it be appropriate to involve the Court.  If FamilyCare's expert has not utilized a document or information designated AEO, then FamilyCare has not asserted any justification for access beyond that limited set of documents utilized by its expert.

FamilyCare does not articulate how AEO restrictions limit FamilyCare's trial preparation, let alone demonstrate any prejudice to trying its case that would outweigh Optumas' interest in keeping its proprietary and commercially sensitive information from being viewed by FamilyCare's employees. *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1464, 1472 (9th Cir. 1192) (requiring a party to demonstrate how a protective order actually could or did accomplish prejudice to its case in order to justify modification).  All materials necessary for *any*

expert to evaluate the actuarial soundness of the rates developed by Optumas have been produced and were not designated AEO by Optumas.  Schramm Decl., at ¶¶ 4, 7, and 21.

Optumas' concerns are not hypothetical.  Mr. Murray is FamilyCare's Chief Operating Officer and has extensive knowledge about Oregon's rate-setting processes.  His experience in running FamilyCare, as well as other CCOs, means that the information he is able to glean from Optumas' AEO documents could be used for the commercial benefit of FamilyCare (or Mr. Murray).  Schramm Decl., ¶¶17-18.  He also has the requisite background to appreciate and understand Optumas' unique and proprietary actuarial approach to its modeling and analytics for rate-setting.  *Id*.  In short, Mr. Murray has the ability to leverage the information for commercial benefit whether it is Optumas or CCO-specific, regardless of whether he remains at FamilyCare or changes employment.  The commercial interest Optumas seeks to protect by restricting FamilyCare's employees access to AEO documents isn't alleviated simply because FamilyCare does not compete with Optumas in actuarial rate-setting work, and any contention to the contrary is misinformed.  *Id.*  As for Mr. Suchorzewski, FamilyCare does not explain, nor can Optumas understand, why a Director of Government of Affairs at FamilyCare would need access to Optumas AEO documents – he does not appear to have any relevant expertise. *Id. at ¶19.*

Lori Coyner and Lewis & Ellis are not parties to the protective orders in this case.  As explained above, they have not had access to materials Optumas designated AEO on the basis of protecting its trade secrets.  Additionally, it is not true that Lewis & Ellis is not subject to a confidentiality agreement.  OHA's contract with Lewis & Ellis contains a confidentiality provision concerning the materials OHA provided to it. Scott  Decl., at ¶3.

In short, FamilyCare and Mr. Murray already have access to all Optumas materials used by Optumas to develop its rates because Optumas did not designate them AEO, and FamilyCare

has not offered any justification for access to all the AEO documents Optumas produced pursuant to FamilyCare's subpoena.

### B. The Competitive Restrictions Do Not Reduce the Risk of Competitive Harm

Optumas does business beyond Oregon and its trade secrets are valuable in markets other than Oregon. FamilyCare's offer to refrain from competition in Oregon is not sufficient to protect Optumas from commercial harm. Schramm Decl., at ¶18. Moreover, Optumas trade secrets do not lose value over time because the trade secrets are Optumas methods and processes developed by Optumas to assist with rate development. *Id.* As a result, even a country-wide restriction until 2021 would not reduce the potential for commercial harm to Optumas from disclosure of its proprietary methods and processes. Optumas' proprietary methods and processes have been built up through years of experience and are utilized in various setting and projects by Optumas across the country. *Id.* at ¶ 10. Without knowing what specific documents FamilyCare's employees intend to access, Optumas cannot contemplate what additional protections or safeguards might be necessary to sufficiently mitigate competitive harm caused by further disclosure to FamilyCare's employees. Schramm Decl., at ¶¶17-18.

The Protective Order for Optumas Documents balances the competing interest of Optumas protecting its proprietary information against FamilyCare's need to retain an independent expert able to understand and render competent opinions concerning FamilyCare's claims. That balance is up-ended by permitting further disclosure to FamilyCare's employees given the scant justification provided by FamilyCare. Optumas cannot say whether it will agree to permit access to the specific AEO documents that FamilyCare's expert has actually utilized in his models and report. However, restricting access to only those limited set of documents

9 | RESPONSE TO MOTION TO PERMIT ACCESS TO AEO DOCUMENTS

identified utilized by FamilyCare's expert would be an appropriate middle ground – so long as Optumas has the ability to object once those documents are identified. *Id*. at ¶20.

###### C.        **FamilyCare failed to confer in Good Faith under LR 7-1.**

Local Rule 7–1(a)(1) requires certification that "[t]he parties made good faith effort through personal or telephone conference to resolve the dispute, and have been unable to do so[.]"Local Rule 7–1(a) exists to encourage parties to resolve disputes amicably when possible, preserving judicial resources for those matters that require the court's intervention." *Kazemy v. BMW of N. Am., LLC*, No. 3:13-CV-02050-AC, 2014 WL 3667217, at *2 (D. Or. July 17, 2014).

As detailed in the Background section (*supra*) and Declaration of Kevin O'Malley,, FamilyCare did not engage in a good faith conferral with Optumas by addressing the issue 24 hours before it filed the motion.  Had FamilyCare engaged Optumas at any time after the July 30, 2018 hearing when it first raised the issue, it is likely this motion could have been avoided as to Optumas.  At minimum, such conferral would have defined the specific documents at issue, rather than all 4,500 documents marked AEO by Optumas - many of which have no utterly no connection to Optumas rate-setting work in Oregon.  For this reason, Optumas requests its attorneys' fees incurred in responding to FamilyCare's motion.

###### CONCLUSION

Optumas respectfully requests the Court to deny FamilyCare's motion. Alternatively, Optumas requests the Court to direct FamilyCare to identify the specific documents utilized by its experts so that Optumas can determine the appropriateness of permitting access.  And

Optumas requests its attorneys fees in responding to this motion based on FamilyCare's failure to confer in good faith.

DATED: October 2, 2018

ELLIOTT, OSTRANDER & PRESTON, P.C.

By s/ Sonia A. Montalbano _____

Sonia A. Montalbano, OSB No. 97082
Elliott, Ostrander & Preston, P.C.
Kevin E. O'Malley, AZ Bar No. 006420
sonia@eoplaw.com
Tel: (503) 224-7112
Fax: (5030 224-7819

## CERTIFICATE OF COMPLIANCE

This brief complies with the applicable word count limitation under LR 26-3(b) because it contains 2,627 words including headings, footnotes, and quotations, but excluding the caption, signature block, exhibits and any certificates of counsel.

# CERTIFICATE OF SERVICE

I hereby certify that I served the attached RESPONSE TO MOTION TO PERMIT ACCESS TO AEODOCUEMNTS PURSUANT TO PROTECTIVE ORDERS AND TO PERMIT SUPPLEMENTATION OF ACTUARIAL EXPERT REPORT on:

Amanda J. Beane
Perkins Coie, LLP
1201 Third Avenue
Suite 4800
Seattle, WA 98101-3099
abeane@perkinscoie.com

Alletta S. Brenner
Perkins Coie, LLP
1120 NW Couch Street
10th Floor
Portland, OR 97209-4128
abrenner@perkinscoie.com

Gregory A. Chaimov
Davis Wright Tremaine, LLP
1300 SW Fifth Avenue
Suite 2400
Portland, OR 97201-5630
gregorychaimov@dwt.com

Stephen F. English
Perkins Coie, LLP
1120 NW Couch Street
10th Floor
Portland, OR 97209-4128
senglish@perkinscoie.com

Matthew P. Gordon
Perkins Coie, LLP (Seattle)
1201 Third Avenue
Suite 4800
Seattle, WA 98101-3099
MGordon@perkinscoie.com

Renata Gowie
U.S. Attorney's Office District of Oregon
1000 SW Third Ave, Suite 600
Portland, OR 97204
renata.gowie@usdoj.gov

Jeffrey D. Hern
Schwabe, Williamson & Wyatt
1211 SW 5th Ave
Ste. 1600
Portland, OR 97204
jhern@schwabe.com

Nicholas H. Hesterberg
Perkins Coie, LLP (Seattle)
1201 Third Avenue
Suite 4800
Seattle, WA 98101-3099
nhesterberg@perkinscoie.com

Thomas R. Johnson
Perkins Coie, LLP
1120 NW Couch Street
10th Floor
Portland, OR 97209-4128
TRJohnson@perkinscoie.com

Elizabeth C. Knight
Dunn Carney Allen Higgins & Tongue, LLP
851 SW Sixth Avenue
Suite 1500
Portland, OR 97204-1357
eknight@dunncarney.com

Vivek A. Kothari
Markowitz Herbold PC
1211 SW 5th Ave
Suite 3000
Portland, OR 97204
vivekkothari@markowitzherbold.com

Daniel P. Larsen
Ater Wynne, LLP
1331 NW Lovejoy Street
Suite 900
Portland, OR 97209-3280
dpl@aterwynne.com

Arden J. Olson
Harrang Long Gary Rudnick, PC (Eugene)
360 E.10th Avenue
Suite 300
Eugene, OR 97401-3273
arden.j.olson@harrang.com

Brian M. Parrott
Brian M. Parrott LLC
851 SW Sixth Avenue
Suite 1500
Portland, OR 97204
brian@bparrott-law.com

Brian P. Samuelson
Perkins Coie, LLP
1120 NW Couch Street
10th Floor
Portland, OR 97209-4128
bsamuelson@perkinscoie.com

Anna Sortun
Tonkon Torp LLP
1600 Pioneer Tower
888 SW Fifth Avenue
Suite 1600
Portland, OR 97204-2099
anna.sortun@tonkon.com

Frank V. Langfitt
Miller Nash Graham & Dunn LLP
111 SW Fifth Avenue
Suite 3400
Portland, OR 97204
frank.langfitt@millernash.com

Eric A. Lindenauer
Garvey Schubert Barer
121 SW Morrison Street
11th Floor
Portland, OR 97204
elindenauer@gsblaw.com

Douglas R. Pahl
Perkins Coie, LLP
1120 NW Couch Street
10th Floor
Portland, OR 97209-4128
dpahl@perkinscoie.com

Laura R. Salerno Owens
Markowitz Herbold PC
1211 SW Fifth Avenue, Suite 3000
Portland, OR 97204
LauraSalerno@MarkowitzHerbold.com

Carla Scott
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
carla.a.scott@doj.state.or.us

Renee R. Stineman
Oregon Department of Justice
Trial Division
100 SW Market Street
Portland, OR 97201
renee.stineman@doj.state.or.us

Peter F. Stoloff                                    B. Scott Whipple
Peter F. Stoloff, P.C.                              Whipple Law Office, LLC
5285 Meadows Road                                  1675 SW Marlow Avenue
Suite 235                                          Suite 201
Lake Oswego, OR 97035                              Portland, OR 97225
pstoloff@peterstoloff-law.com                      scott@whipplelawoffice.com

Harry B. Wilson
Markowitz Herbold PC
1211 SW 5th Ave
Suite 3000
Portland, OR 97204
harrywilson@markowitzherbold.com


[  ]    by mailing to said attorney(s) a full and correct copy thereof, contained in a sealed
        envelope, with postage paid, addressed to said attorney(s) as stated above and deposited
        at the United States Post Office at Portland, Oregon.

[  ]    by hand delivering to said attorney(s) a true copy thereof.

[  ]    by faxing to said attorney(s) a true copy thereof.

[X]     by emailing to said attorney(s) a true copy thereof.  (Pursuant to LR 5-11, interrogatories,
        requests for production, or requests for admission were emailed in Word or WordPerfect
        format, not in PDF, unless otherwise agreed to by the parties.)

[  ]    by electronic filing with the District Court's CM/ECF system.  The CM/ECF system
        generated Notice of Electronic Filing constitutes proof of service upon a filing user in
        accordance with Fed. R. Civ. P. 5(d).

                Dated this 2rd of October, 2018

                                        ELLIOTT, OSTRANDER & PRESTON, P.C.


                                        By: s/ Sonia A. Montalbano
                                        Sonia A. Montalbano, OSB No. 970821
                                        Of Attorneys for Schramm Health Partners, LLC


15 | RESPONSE TO MOTION TO PERMIT ACCESS TO AEO DOCUMENTS