Joel P. Leonard, OSB No. 960810
Sonia A. Montalbano, OSB No. 97082
ELLIOTT, OSTRANDER & PRESTON, PC
707 SW Washington, Suite 1500
Portland, OR  97205
Telephone (503) 224-9867
Fax (503) 224-7819
joel@eoplaw.com
sonia@eoplaw.com
Attorneys for Schramm Health Partners, LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| FAMILYCARE, INC., an Oregon non-profit corporation,<br><br>                    Plaintiff,<br><br>        v.<br><br>OREGON HEALTH AUTHORITY, and agency of the State of Oregon, PATRICK ALLEN, both individually and in his official capacity as director of the Oregon Health Authority, and LYNNE SAXTON,<br><br>                    Defendants. | Case No.  6:18-cv-00296-MO<br><br>DECLARATION OF STEVEN SCHRAMM IN SUPPORT OF RESPONSE TO MOTION TO DE-DESIGNATE |

I, Steven Schramm, declare under penalty of perjury as follows:

1.      I am the founder and Managing Director of Schramm Health Partners LLC dba Optumas ("Optumas").  I submit this declaration in connection with *Family Care, Inc. v. Oregon Health Authority,* No. 3:18-cv-00212-MO filed in the Portland Division of the United States District Court for the District of Oregon.

1 | DECLARATION OF STEVEN SCHRAMM

2.      Optumas is not a party to this litigation. Optumas' role with respect to the issues in this case was to develop a regional model for capitation rates for the Oregon Health Authority ("OHA").

3.      Optumas performed rate-setting work for Calendar Year 2016 and Calendar 2017 at issue in this litigation under a contract that grants OHA ownership of all rate-setting work product deliverables supporting its development of the rates at issue. As part of OHA's production of discovery materials relevant to this case, it exercised its authority under the contract to request Optumas to provide OHA with all of its work-product deliverables. Ex. 1 (*See* Exhibit B, Section 8). Optumas complied with that request and produced that information to OHA. I understand that OHA subsequently produced those materials to FamilyCare with the bates stamp pre-fix "OPTOHA####." The only information Optumas withheld from production to OHA were certain pre-existing trade secret information developed independently of Optumas' Contract with Oregon. Otherwise, Optumas only requested OHA to designate seven documents AEO before OHA produced them in this litigation. After FamilyCare filed its Motion to Allow-Access, Optumas reviewed these AEO designations and determined that they could be down-designated to confidential because they do not disclose Optumas' trade secrets. Those documents relate to an analyses prepared at OHA's request to assist with its 2016 mediation between OHA and FamilyCare.

4.      It is important to emphasize that all the detailed data input for each of the key steps in the rate development process in Oregon and all of the detailed output for each step of the rate development process necessary for anyone to conduct their own independent rate development were provided directly to OHA and produced in this litigation. Optumas did not designate those materials AEO, although some of the CCOs may have asked OHA to designate

2 | DECLARATION OF STEVEN SCHRAMM

them as AEO. But to be clear, materials designated AEO are not necessary for anyone to independently review the rates Optumas developed for Oregon.

5.    Additionally, after Optumas completed its rate-setting work, OHA retained the actuarial firm Lewis & Ellis to independently review whether Optumas' rate-setting work comported with generally accepted actuarial principles and was actuarial sound.

6.    As part of that review, I understand that Lewis & Ellis determined what specific materials it would need to conduct its independent review and requested those materials directly from OHA. Optumas did not play any role in OHA's production of documents to Lewis & Ellis.

7.    I do not believe that any of the information provided to Lewis & Ellis discloses the proprietary and trade-secret processes that Optumas employs in its rate-setting projects. Optumas did not designate as AEO any of the materials produced by OHA in this litigation that were also provided to Lewis & Ellis. Moreover, all of the materials provided to Lewis & Ellis are all that FamilyCare's expert should need to determine the actuarial soundness of the rates at issue in this case.

8.    Although Optumas provided all work-product necessary to support Optumas' development of rates for Oregon to OHA and OHA subsequently produced that work-product in this litigation, FamilyCare also independently issued a subpoena to Optumas in July 2017 that sought the production of 14 different categories of information, including all documents relating to "all worksheets, workbooks, spreadsheets, models, documents, and communications addressing rate calculation model(s), including all supporting and linked worksheets with all formulas intact"; all documents relating to "correspondences regarding the OHA and/or Optumas' capitation rate development, the capitation rates, and/or the actuarial rate certification" and all documents "evidencing, reflecting, or relating to communications regarding the 2015,

3 | DECLARATION OF STEVEN SCHRAMM

2016, and 2017 Capitation Rates or their development, between members of the executive or legislative branch of the Oregon state government and Optumas and/or OHA."

9.    The subpoena sought production of proprietary information that was not considered work-product under Optumas' contract with OHA and was withheld from production to OHA because it concerned Optumas' pre-existing trade secret information developed independently of Optumas contract with OHA.

10.    The breadth of FamilyCare's subpoena also covered a variety of intellectual capital and other proprietary work-product done by Optumas that is considered trade secret because it provides sufficient detail to reveal Optumas' processes and methodology in its actuarial approach to rate setting. To be clear, the data and analytical models used in the Oregon rate setting process are not considered by Optumas to be its trade secrets.  Again, those materials were provided to OHA who produced them in this litigation without Optumas designating them AEO.  Optumas' trade secret information, however, was developed independently of its contract with Oregon and is used as a predicate by Optumas in connection with its rate setting projects across the country, not just in Oregon.  The actual Oregon-specific rate model developed by Optumas has been fully disclosed and produced to FamilyCare and Optumas did not designate those materials as AEO.

11.    In addition to Optumas' own trade secrets, much of the information sought by FamilyCare's subpoena implicated production of commercially sensitive information provided to Optumas by OHA concerning CCOs.  This information often include sensitive pricing, network, and reimbursement rates that Optumas needs to develop accurate models and analyses.  It is normal practice for Optumas to agree to keep any such information it received confidential and Optumas' work for Oregon is no different. Optumas is contractually bound to keep any data it

4 | DECLARATION OF STEVEN SCHRAMM

received from OHA confidential, which includes information provided by OHA concerning Oregon related CCOs that Optumas used to support its models and analyses. Exhibit 1 to this Declaration. (*See* Exhibit A, Part 3, Special Provisions, Section 1(a)-(c).

12.    In order to protect Optumas' confidential, proprietary and sensitive business information, as well as third-party information, Optumas sought and received a protective order from Judge Armstrong on January 17, 2018 ("Optumas Protective Order") that permitted it to produce records as "confidential" or "attorneys eyes only" and restricted FamilyCare employees from access to all documents marked AEO. The restriction on employees of FamilyCare accessing AEO documents is important irrespective of the fact it does not compete with Optumas in rate-setting work, as is discussed further below.

13.    After the Protective Order for Optumas Documents was approved by the state court, Optumas ultimately produced approximately 100,000 documents. Optumas only designated approximately 4,500 documents as "attorneys eyes only." Generally, those documents marked AEO fall into 9 major categories: 1) Optumas Base Data Model; 2) Optumas Service Specific Models; 3) Optumas Oregon Programmatic Adjustments; 4) Optumas Developed Risk Scores; 5) Optumas Payment Rate Models; (6) Optumas Reimbursement Analyses; (7) Optumas Pharmacy Specific Analyses; (8) Optumas Rate of Growth Analyses; and 9) Optumas Trend and Administration Models.

14.    The nine categories of documents were marked AEO as opposed to confidential for two primary reasons. First, with respect to items 2, 3, 4, 7, and 9 the underlying data being utilized by Optumas to build its models and conduct its analyses contains both summarized and detailed data from other states (including MCO/CCO data in those other states) that Optumas has committed to keeping protected. Without analyzing each particular file and data within those

5 | DECLARATION OF STEVEN SCHRAMM

five groupings it is not practicable to sort which files contain commercially sensitive data from third-parties from those that could simply be marked confidential.

15.    Second, with respect to items 1, 5, 6, 8, and 9, the documents in these categories reflect core aspects of Optumas' intellectual capital and trade secrets related to its methods and processes in building actuarial models and analyses. In addition, the documents in these categories also contain high-level information related to other CCOs pricing and membership enrollment.

16.    To be clear, there are additional materials that may have been designated AEO that do not fall into those categories. However, it is not possible to generalize the specific basis for each designation among 4,500 documents in this Declaration.

17.    While the Protective Order for Optumas Documents permits FamilyCare's actuarial experts the ability to access AEO document in exchange for limited non-competition assurances, those protections do not make sense for, or even address, the different set of concerns pertaining to FamilyCare's employees accessing such AEO materials. For example, Mr. Murray is FamilyCare's Chief Operating Office and has extensive knowledge about Oregon's rate-setting processes. His experience in running FamilyCare, as well as other CCOs, means that the information he is able to glean from Optumas' AEO documents could be used for the commercial benefit of FamilyCare. Likewise, Mr. Murray could leave FamilyCare for a different company or become an independent consultant where his knowledge of Optumas' trade secrets could competitively harm Optumas.

18.    In short, whether FamilyCare is a competitor of Optumas misses the point concerning whether Mr. Murray should be prevented from gaining access to documents Optumas designated AEO. Anyone with Mr. Murray's background, experience, and expertise, would be

6 | DECLARATION OF STEVEN SCHRAMM

able to utilize the information contained in Optumas AEO designated materials and competitively harm Optumas.

19.     As to Mr. Suchorzewski, based on my experience and expertise, he does not appear to have any background or experience that would explain why he needs access to Optumas' AEO materials in order to assist FamilyCare's expert concerning the area of rate-setting.  Without FamilyCare disclosing the files to be reviewed by Mr. Suchorzewski or the role/purpose Mr. Suchorzewski would serve, it is not possible for Optumas to determine what protections may be necessary for his unfettered participation in the process.

20.     Due to the variety of commercially sensitive nature of the material contained in the documents that Optumas produced in response to FamilyCare's subpoena and marked AEO, I am willing to consider individual documents identified by FamilyCare to determine, on a case-by-case basis, whether access by Mr. Murray and Mr. Suchorzewski is appropriate.  I understand that this offer was made to FamilyCare at the end of July, but they did not offer to engage with Optumas until the day before they filed the Motion to Allow Access.

21.     It does not seem credible to me that FamilyCare cannot identify the specific documents or categories of documents marked AEO for which they seek expanded access. There does not appear to be any justification to me for complete access to all 4,500 documents in order to assist FamilyCare's expert in the preparation of his independent report.

I DECLARE THAT THE ABOVE STATEMENT IS TRUE TO THE BEST OF MY KNOWLEDGE AND BELIEF, AND THAT IT IS MADE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.  I FURTHER UNDERSTAND IT IS MADE FOR USE AS EVIDENCE IN COURT.

DATED this __1st__ day of __October__, 2018.

By: _____
Steven Schramm
Managing Director, Schramm Health Partners
LLC dba Optumas