IN THE CIRCUIT COURT FOR THE STATE OF OREGON

FOR THE COUNTY OF MARION

| | |
|---|---|
| FAMILYCARE, INC., an Oregon non-profit corporation,<br><br>  Plaintiff,<br><br>  v.<br><br>OREGON HEALTH AUTHORITY, an agency of the State of Oregon,<br><br>  Defendant. | Case No. 17CV09226<br><br>**PLAINTIFF FAMILYCARE INC.'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT OREGON HEALTH AUTHORITY** |

Pursuant to ORCP 36 and 43, Plaintiff FamilyCare, Inc. ( "FamilyCare") hereby requests that Defendant Oregon Health Authority ("OHA") produce the documents described herein for inspection and copying at the offices of Plaintiff's counsel, Perkins Coie LLP, 1120 NW Couch Street, Tenth Floor, Portland, Oregon, 97209, or at such other location as may be determined by agreement, within thirty (30) days of this request.  Please respond to each request for production in accordance with the instructions and definitions set forth below.

## DEFINITIONS

As used in these Requests, the following terms are defined as such:

1.     "2017 Base Data Policy" shall mean the Base Data Policy as discussed in Appendix VIII, 2017 Reimbursement Review, of the 2017 Actuarial Certification.

2.     "2017 Capitation Rates" shall mean the capitated rates for the Oregon CCOs for the 2017 rating period, as reflected in the 2017 Actuarial Certification.

Page 1 -   PLAINTIFF'S FIRST SET OF REQUESTS FOR
           PRODUCTION OF DOCUMENTS TO DEFENDANT

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

3.    "2017 Actuarial Certification" shall mean the document titled "Oregon Health Authority CCO Rate Development Actuarial Certification January 1 – December 31, 2017 Capitation Rates," attached as Exhibit 3 to the Complaint in this Action.

4.    "2017 Reimbursement Review" shall mean the document titled "2017 Reimbursement Review" attached as Appendix VIII to the 2017 Actuarial Certification within Exhibit 3 to the Complaint in this Action.

5.    "Action" means the present litigation entitled *FamilyCare, Inc. v. Oregon Health Authority*, No. 17CV09226.

6.    "Actuarial Soundness" shall refer to any accepted actuarial principles and practices relied on by OHA in developing the 2017 Capitation Rates.

7.    "Base Data" shall refer to the base data described in Section 2.02 of the 2017 Actuarial Certification.

8.    "Base Data Adjustments" shall refer to the base data adjustments described in Section 2.03 of the 2017 Actuarial Certification..

9.    "CareOregon" shall refer to CareOregon, Inc. and any past and present agents, representatives, accountants, actuaries, attorneys, employees, including former employees, subsidiaries, any members, partners, or risk-accepting entities, or any other person or entity that has documents deemed to be in its possession, custody, or control, and including such entity under its prior names and in any form of a domestic or foreign limited liability corporation, partnership, or corporation.

10.    "CMS" shall mean the Centers for Medicare & Medicaid Services and any past and present agents, representatives, accountants, actuaries, attorneys, employees, including former employees, subsidiaries, or any other person or entity that has documents deemed to be in its possession, custody, or control.

11.    "Communicate" or "Communication(s)" shall refer to any transmission or exchange of information between two or more persons, orally or in writing, and includes, but is

PAGE  2-    PLAINTIFF'S FIRST SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS TO DEFENDANT

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222 **EXHIBIT A**
**Page 2 of 17**

not limited, to all conversations or discussions, whether such communication or discussion occurred face-to-face or by means of letter, telephone, telegraph, telecopier, telex, facsimile, electronic mail ("email"), or other media.

12.    "Coordinated care organization" or "CCO" shall means an organization meeting criteria adopted by the Oregon Health Authority under ORS 414.625.

13.    "Document" means all items that are considered to be "documents" or tangible things within the meaning of Rule 43 of the Oregon Rules of Civil Procedure and refers to the original and all copies of written, printed, typed, recorded, computer generated or graphic matter, or other instrument(s) or device(s) which contain information or from which information can be retrieved, including, without limitation, any kind of written, typewritten, or printed material whatsoever, any kind of graphic material, and any computer applications, memoranda, correspondence, studies, working papers, letters, telegrams, invoices, personal diaries, handwritten notes of any kind including Post-it® notes, reports, records, books forms, indexes, transcriptions and recordings, magnetic tapes, video tapes, wire recordings, disks and printed cards, data sheets, data processing cards, personal calendars, interoffice memoranda, minutes and records of any sorts of meetings, financial statements, financial calculations, estimates, reports of telephone or other oral conversations, appointment books, maps, drawings, charts, graphs, photographs, and all other writings and recordings of every kind, however produced or reproduced, whether signed or unsigned.  The terms "document" and "documents" include, without limitation, originals and all file copies that are not identical to the original no matter how or by whom prepared, and all drafts prepared in connection with any documents, whether used or not.  If the original of any documents is not in your possession, custody, or control, a copy of that document should be produced.  A draft or non-identical copy is a separate document within the meaning of this term.

14.    The terms "FamilyCare" or "Plaintiff" shall refer to plaintiff FamilyCare, Inc.

PAGE  3-  PLAINTIFF'S FIRST SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS TO DEFENDANT

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222  **EXHIBIT A**
**Page 3 of 17**

15. "Health Management Associates" shall refer to "Health Management Associates, Inc." and any past and present agents, representatives, accountants, attorneys, employees, including former employees, or any other person or entity that has documents deemed to be in its possession, custody, or control, and including such entity under its prior names and in any form of a domestic or foreign limited liability corporation, partnership, or corporation.

16. "Health Share" shall refer to "Health Share of Oregon" and any past and present agents, representatives, accountants, attorneys, employees, including former employees, any members, partners, or risk-accepting entities, or any other person or entity that has documents deemed to be in its possession, custody, or control, and including such entity under its prior names and in any form of a domestic or foreign limited liability corporation, partnership, or corporation.

17. "Optumas" shall refer to Optumas and/or Schramm Health Partners, L.L.C., and any past and present agents, representatives, accountants, attorneys, employees, including former employees, or any other person or entity that has documents deemed to be in its possession, custody, or control, and including such entity under its prior names and in any form of a domestic or foreign limited liability corporation, partnership, or corporation.

18. The terms "Oregon Health Authority", "Defendant", "You", and/or "Your" shall refer to the Oregon Health Authority, both separately and jointly, and any past and present agents, representatives, accountants, attorneys, employees, including former employees, or any other person or entity that has documents deemed to be in its possession, custody, or control.

19. "Rate Development Standards" shall refer to the rate development standards as set forth in 42 CFR § 438.5(a)-(g) (May 6, 2016).

20. "Regional Rate Model" shall refer to the rate development process used by Optumas described in Section 2.01 of the 2017 Actuarial Certification.

PAGE  4-  PLAINTIFF'S FIRST SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS TO DEFENDANT

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

21.    "Settlement Agreement" shall refer to the agreement entered into and effective as of May 22, 2016, between FamilyCare, Inc. and the State of Oregon by and through the Oregon Health Authority.

22.    References to persons and entities include their agents, employees, officers, directors, affiliated entities and companies, predecessors, successors, accountants, attorneys, and representatives.

23.    The terms "and" and "or" shall be construed both disjunctively and conjunctively.

24.    The term "any" shall include and encompass the words "all" and "each."

25.    The singular shall include the plural, the use of the masculine gender shall include the feminine gender, and vice versa, whenever the context reasonably allows or requires such a construction.

26.    The term "person" means any natural person, public or private corporation, partnership, association, joint venture, any group or any form of a business, legal or governmental entity, or association.

27.    "Relating to" shall mean supporting, contradicting, describing, studying, analyzing, considering, substantiating, regarding, explaining, mentioning, discussing, commenting on, touching upon, and pertaining to any logical connection.

28.    "Reflecting" shall mean summarizing, memorializing, evidencing, constituting, containing, identifying, showing, comprising, and containing any logical connection with.

**INSTRUCTIONS**

A.    You are to produce all documents that are in your possession, custody, or control or in the possession, custody, or control of Your representatives, including persons consulted concerning any factual matters or matters of opinion related to any of the facts or issues involved in this case; such persons shall include attorneys with whom You consulted unless you claim such documents are privileged or otherwise protected, *but see infra* Instruction H.  These

PAGE  5-   PLAINTIFF'S FIRST SET OF REQUESTS FOR
            PRODUCTION OF DOCUMENTS TO DEFENDANT

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

**EXHIBIT A**
**Page 5 of 17**

Requests for Production of Documents extend to correspondence and electronic communications sent from or received at a personal physical address or personal email address.

B.    Unless otherwise specified, the time period covered by these Requests for Production of Documents is January 1, 2014, to the present.  However, if a document prepared prior to January 1, 2014, or subsequent to the date of these Requests for Production of Documents refers to events during the period January 1, 2014, through the present, and/or is necessary for a correct or complete understanding of any document covered by these Requests for Production of Documents, the document shall be produced.  If any document is undated and the date of its preparation cannot be determined, the document shall be produced if it is otherwise responsive to these Requests for Production of Documents and no evidence exists to conclusively establish that this document was prepared prior to January 1, 2014.

C.    Each document request, and the portions thereof, is to be responded to separately, but responses to one document request, or portion thereof, may be incorporated by reference in responses to other document requests, or portions thereof.

D.    All documents produced pursuant to these Requests for Production of Documents shall be produced either in separate groups of documents responsive to each separate document request or in the form and order in which they were kept by you before being produced.

E.    Each request for documents, whether memoranda, reports, letters, minutes, emails, or other documents of any description, requires the production of each document in its entirety, including all pages and attachments or exhibits, without redaction or expurgation.

F.    If a document was prepared in several copies or if additional copies were thereafter made, and if such copies were not identical or are no longer identical by reason of any notation or modification of any kind whatsoever located on either the front or the back of such document, then each non-identical copy is a separate document and must be separately identified and produced.

PAGE   6-   PLAINTIFF'S FIRST SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS TO DEFENDANT

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

EXHIBIT A
Page 6 of 17

G.    If you claim any document request herein is ambiguous, describe in what way the request is ambiguous, state the meaning applied to the request, and respond to the request as interpreted.

H.    If you claim any form of privilege, whether based on statute or otherwise, as a ground for not producing requested documents, please furnish a log providing the following information with respect to each withheld document:

    i.    the date of the document;

    ii.    for each individual who prepared, produced, reproduced, or received the document for which the privilege is claimed, state the person's name, current (or last known) business and residence addresses, current (or last known) business and residential telephone numbers, current (or last known) title or position, and occupation;

    iii.    describe the document in sufficient detail to identify it without revealing the information for which the privilege is claimed; and

    iv.    state every fact or basis upon which you claim any such privilege.

I.    These document requests are continuing and, to the extent required by the Oregon Rules of Civil Procedure, you must immediately produce any responsive documents or information after any such document(s) or information comes within your possession, custody, or control throughout the pendency of this action.

J.    Documents shall be produced in Tagged Image File Format ("TIFF"), single page, black and white (or in color, if necessary for any given document or its content to be readable), dithered (if appropriate), at 300 x 300 dpi resolution and 8½ x 11 inch page size, except for documents requiring different resolution or page size to make them readable.  Each TIFF document shall be produced with an image load file in standard Opticon (*.log) format that reflects the parent / child relationship.  In addition, each TIFF document shall also be produced with a data load file in Concordance delimited format (*.dat), indicating (at a minimum)

PAGE  7-  PLAINTIFF'S FIRST SET OF REQUESTS FOR
          PRODUCTION OF DOCUMENTS TO DEFENDANT

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

EXHIBIT A
Page 7 of 17

appropriate unitization of the documents, including beginning and ending production numbers for (a) each document set, and (b) each attachment within each document set.  The TIFF images shall also be accompanied by extracted text or, for those files that do not have extracted text upon being processed (such as hard copy documents), optical character recognition ("OCR") text data; such extracted text or OCR text data shall be provided in document level form and named after the TIFF image.  Documents that contain redactions shall be OCR'd after the redaction is applied to the image, and the OCR will be produced in placed of extracted text at the document level.  Notwithstanding the foregoing, the parties may negotiate a separate production format (including native format) for any documents that are not reasonably producible or readable as standard image files, such as audio files or large spreadsheets.

K.    For documents produced in TIFF format that originated in electronic form, metadata shall be included with the data load files described above, and shall include (at a minimum) the following information:  file name (including extension); original file path; page count; creation date and time; last saved date and time; last modified date and time; author; custodian of the document (that is, the custodian from whom the document was collected or, if collected from a shared drive or server, the name of the shared driver or server); and MD5 hash value.  In addition, for email documents, the data load files shall also include the following metadata:  sent date; sent time; received date; received time; "to" name(s) and address(es); "from" name and address; "cc" name(s) and address(es); "bcc" name(s) and address(es); subject; names of attachment(s); and attachment(s) count.  All images and load files must be named or foldered in such a manner that all records can be imported without modification of any path or file name information.

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:**  All documents submitted by OHA or its actuarial consultants (including, but not limited to, Optumas) to CMS relating to the Rate Development

PAGE  8-  PLAINTIFF'S FIRST SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS TO DEFENDANT

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

EXHIBIT A
Page 8 of 17

Standards for each CCO and the trend models for each CCO in connection with the 2017 Capitation Rates.

**Response:**

**REQUEST FOR PRODUCTION NO. 2:**  All communications and worksheets, workbooks, spreadsheets, models, and documents that OHA or its actuarial consultants (including, but not limited to, Optumas) used or considered when evaluating or determining the Actuarial Soundness of the 2017 Capitation Rates.

**Response:**

**REQUEST FOR PRODUCTION NO. 3:**  All communications related to and data used or considered by OHA or its actuarial consultants (including, but not limited to, Optumas) in connection with the 2017 Capitation Rates.

**Response:**

**REQUEST FOR PRODUCTION NO. 4:**  All communications related to, and reports, memoranda, models, and documents prepared by, OHA's actuarial consultants (including, but not limited to, Optumas) in connection with the 2017 Capitation Rates.

**Response:**

**REQUEST FOR PRODUCTION NO. 5:**  All documents and data supporting the Regional Rate Model for the region in which FamilyCare operates.

PAGE  9-   PLAINTIFF'S FIRST SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS TO DEFENDANT

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

**Response:**

**REQUEST FOR PRODUCTION NO. 6:**  All documents reflecting or relating to OHA's policy decisions that affected the development of the 2017 Capitation Rates, including, but not limited to, policy decisions pertaining to lowering rates based on a CCO's payments to primary care providers or any decisions pertaining to the 2017 Base Data Policy.

**Response:**

**REQUEST FOR PRODUCTION NO. 7:**  To the extent documents are not provided in response to the foregoing requests, all communications or documents related to the calculation of Base Data Adjustments, including any consideration of a CCO's past or current profitability, analysis of CCO financial statements, and consideration of reported expenditures, in connection with the 2017 Capitation Rates.

**Response:**

**REQUEST FOR PRODUCTION NO. 8:**  All documents recording or reflecting any written or verbal communication between OHA and Health Share regarding capitation rates from January 1, 2013, to present.

**Response:**

**REQUEST FOR PRODUCTION NO. 9:**  All documents recording or reflecting any written or verbal communication between OHA and CareOregon regarding capitation rates from January 1, 2013, to present.

PAGE  10- PLAINTIFF'S FIRST SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS TO DEFENDANT

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222 **EXHIBIT A**
**Page 10 of 17**

**Response:**

**REQUEST FOR PRODUCTION NO. 10:**  To the extent documents are not provided in response to the foregoing requests, all documents recording or reflecting any written or verbal communication between OHA and Jeremy Vandehey regarding capitation rates from 2015 to present.

**Response:**

**REQUEST FOR PRODUCTION NO. 11:**  To the extent documents are not provided in response to the foregoing requests, all documents recording or reflecting any written or verbal communication between OHA and any leadership or staff employee at Health Management Associates regarding capitation rates from 2015 to present.

**Response:**

**REQUEST FOR PRODUCTION NO. 12:**  All versions of any document reflecting the Regional Rate Model for each of the four rating regions within Oregon for the calendar years 2015, 2016, and 2017.

**Response:**

**REQUEST FOR PRODUCTION NO. 13:**  Any documents relating to, reflecting, or containing the Base Data for each of the 16 CCOs in Oregon.

**Response:**

PAGE  11- PLAINTIFF'S FIRST SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS TO DEFENDANT

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

EXHIBIT A
Page 11 of 17

**REQUEST FOR PRODUCTION NO. 14:**  Any documents relating to, reflecting, or containing the regional base data and risk factors and/or raw risk score data for each of the four rating regions within Oregon.

**Response:**

**REQUEST FOR PRODUCTION NO. 15:**  All documents recording or reflecting any communication, written policies, documents, and data regarding any adjustments made by or at the direction of OHA or by Optumas to FamilyCare's reported costs for the calendar years 2015, 2016, and 2017.

**Response:**

**REQUEST FOR PRODUCTION NO. 16:**  All documents recording or reflecting any written or verbal communications regarding FamilyCare between: Lynne Saxton, Rhonda Busek, David Rohrer, Dennis Tang, and/or Jeremy Vandehey, Lori Coyner, Leslie Clement, amongst themselves individually or collectively, or with or including any other person.

**Response:**

**REQUEST FOR PRODUCTION NO. 17:**  All documents recording or reflecting any communication between OHA and Optumas regarding the 2015, 2016, and 2017 capitation rates.

**Response:**

**REQUEST FOR PRODUCTION NO. 18:**  All documents recording or reflecting any communication between OHA and CMS regarding the 2015, 2016, and 2017 capitation rates.

PAGE  12- PLAINTIFF'S FIRST SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS TO DEFENDANT

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

**Response:**

**REQUEST FOR PRODUCTION NO. 19:**  All documents provided to OHA by each and every CCO in Oregon that relate to each and every CCO's income, expenses, and profitability, including, but not limited to, the income, expenses, and profitability of each and every CCO's related entities.

**Response:**

**REQUEST FOR PRODUCTION NO. 20:**  All documents recording or reflecting communications between OHA and Optumas regarding the 2017 Actuarial Certification, the information contained therein, or the information on which the 2017 Rate Certification was based.

**Response:**

**REQUEST FOR PRODUCTION NO. 21:**  All documents recording or reflecting internal communications related to the 2017 Actuarial Certification, the information contained therein, or the information on which it was based.

**Response:**

**REQUEST FOR PRODUCTION NO. 22:**  All drafts of the 2017 Actuarial Certification.

**Response:**

**REQUEST FOR PRODUCTION NO. 23:**  All drafts of the 2017 Reimbursement Review.

PAGE  13- PLAINTIFF'S FIRST SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS TO DEFENDANT

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222 **EXHIBIT A**
**Page 13 of 17**

**Response:**

**REQUEST FOR PRODUCTION NO. 24:**  All documents recording or reflecting communications within OHA related to the 2017 Reimbursement Review, its implementation, the policy decisions reflected therein, or the information on which it was based.

**Response:**

**REQUEST FOR PRODUCTION NO. 25:**  All documents recording or reflecting communications involving OHA related to the 2017 Reimbursement Review, its implementation, the policy decisions reflected therein, or the information on which it was based.

**Response:**

**REQUEST FOR PRODUCTION NO. 26:**  All documents recording or reflecting communications between OHA and Optumas related to the 2017 Capitation Rates, including but not limited to the development of those rates.

**Response:**

**REQUEST FOR PRODUCTION NO. 27:**  All documents recording or reflecting internal communications related to the 2017 Capitation Rates, including but not limited to the development of those rates.

**Response:**

PAGE  14- PLAINTIFF'S FIRST SET OF REQUESTS FOR
           PRODUCTION OF DOCUMENTS TO DEFENDANT

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

**REQUEST FOR PRODUCTION NO. 28:**  All documents recording or reflecting communications involving OHA related to the 2017 Capitation Rates, including but not limited to the development of those rates.

**Response:**

**REQUEST FOR PRODUCTION NO. 29:**  All documents recording or reflecting any communication, written policies, documents, and/or data involving the Settlement Agreement, effective as of May 22, 2106, entered into between OHA and FamilyCare.

**Response:**

**REQUEST FOR PRODUCTION NO. 30:**  All documents recording or reflecting any communication, written policies, documents, and/or data communicating CCO cost, utilization and/or performance related to the Quality and Health Outcomes Committee of the Office of Clinical Services Improvement.

**Response:**

**REQUEST FOR PRODUCTION NO. 31:**  All documents recording or reflecting any OHA communication to any of the 16 CCOs in Oregon, written policies, documents, and/or data regarding CCO cost, utilization, and/or performance.

**Response:**

PAGE  15- PLAINTIFF'S FIRST SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS TO DEFENDANT

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222  **EXHIBIT A**
**Page 15 of 17**

DATED:  June 1, 2017

**PERKINS COIE LLP**

By:  */s Meredith M. Price*
　　　Stephen F. English, OSB No. 730843
　　　SEnglish@perkinscoie.com
　　　Thomas R. Johnson, OSB No. 010645
　　　TRJohnson@perkinscoie.com
　　　Meredith M. Price, OSB No. 134627
　　　MPrice@perkinscoie.com
　　　1120 N.W. Couch Street, 10th Floor
　　　Portland, OR  97209-4128
　　　Telephone:  503.727.2000
　　　Facsimile:  503.727.2222

Attorneys for Plaintiff FamilyCare, Inc.

*Of Counsel (admitted via pro hac vice)*

　　　Melanie K. Curtice WSB No. 28479
　　　MCurtice@perkinscoie.com
　　　Matthew P. Gordon, WSB No. 41128
　　　MGordon@perkinscoie.com
　　　Perkins Coie LLP
　　　1201 Third Avenue, Suite 4900
　　　Seattle, WA 98101
　　　Telephone:  1.206.359.8000
　　　Facsimile:  1.206.359.9000

Attorneys for Plaintiff FamilyCare, Inc.

PAGE  16- PLAINTIFF'S FIRST SET OF REQUESTS FOR
　　　　PRODUCTION OF DOCUMENTS TO DEFENDANT

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

**EXHIBIT A**
**Page 16 of 17**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies under penalty of perjury under the laws of the State of Oregon that, on June 1, 2017, he caused to be served on the person(s) listed below in the manner shown:

**PLAINTIFF FAMILYCARE INC.'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO OREGON HEALTH AUTHORITY**

Oregon Health Authority
c/o Renee Stineman
Department of Justice, Special Litigation Unit
100 SW Market St.
Portland, OR  97201

*Attorneys for Oregon Health Authority*

☒    United States Mail, First Class

☐    By Messenger

☒    By E-Mail

☐    By regular e-mail and/or court's electronic service if parties are enrolled

Dated at Portland, Oregon, on June 1, 2017.

*/s Meredith M. Price*
Meredith M. Price

CERTIFICATE OF SERVICE

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

123045-

**EXHIBIT A**
**Page 17 of 17**

8/10/2017 8:07:32 PM
17CV09226

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF MARION

FAMILYCARE, INC., an Oregon non-profit corporation,

  Plaintiff,

  v.

OREGON HEALTH AUTHORITY, an agency of the State of Oregon,

  Defendant.

Case No. 17CV09226

JUDGE: SEA

**NON-PARTIES' MOTION TO INTERVENE**
(ORCP 33)

(ORAL ARGUMENT REQUESTED)

**UTCR 5.050 REQUEST FOR ORAL ARGUMENT**

Pursuant to UTCR 5.050, AllCare CCO, Inc.; Cascade Health Alliance, LLC; Columbia Pacific CCO, LLC; Eastern Oregon Coordinated Care Organization, LLC; Intercommunity Health Network – Coordinated Care Organization; Jackson Care Connect; PacificSource Community Solutions; PrimaryHealth of Josephine County, LLC; Trillium Community Health Plan, Inc.; Umpqua Health Alliance; Western Oregon Advanced Health, LLC; Willamette Valley Community Health, LLC; and, Yamhill Community Care Organization (collectively the "CCOs") request oral argument in this matter. The CCOs estimate that argument will require approximately 30 minutes and official court reporting services are requested.

**MOTION**

Pursuant to ORCP 33, the CCOs move for an order allowing them to intervene for the limited purpose of protecting their trade secrets and other confidential information from discovery. Attached as Exhibit 1 to this motion is the CCOs Proposed Answer in compliance with ORCP 33D.

Page 1   NON-PARTIES' MOTION TO INTERVENE

Brian M. Parrott, LLC
851 SW 6th Ave, Ste 1500
Portland, OR  97204
503-607-2715

**EXHIBIT B
Page 1 of 11**

In support of this motion, the CCOs rely on the Declaration of Brian M. Parrott ("Parrott Dec."), the following points and authorities, and the records already on file with the court.

**POINTS AND AUTHORTIES**

**I.    Introduction.**

The CCOs seek narrow relief from this Court; namely, that they be permitted to intervene for the sole purpose of protecting their confidential trade secret information in discovery through the means of a protective order. Plaintiff FamilyCare, Inc. ("FamilyCare") issued Plaintiff FamilyCare Inc.'s First Set of Requests for Production of Documents to Defendant Oregon Health Authority ("Plaintiff's First RFP"), broadly seeking, among other documents, information the CCOs previously provided to the Oregon Health Authority ("OHA"). The CCOs were required to provide the information but did so with the expectation and assurance that the documents, many of which contain highly sensitive financial and trade secret information, would not be disclosed.

FamilyCare previously sought this information through Public Records Law requests but was rebuffed because the information is exempt from disclosure under trade secret and other Public Records Law exemptions. *See* Complaint Exs. 1 and 5. OHA's refusal to disclose this information is alleged as a major factual predicate for FamilyCare's claims in this case. *See* First Amended Complaint, ¶¶ 35-36, 40, 42-45. OHA has objected to numerous FamilyCare First RFP Requests on the basis they seek the CCOs' trade secret information. However, OHA has informed the CCOs that OHA lacks the resources and factual support needed to defend against FamilyCare's continuing efforts to obtain their information. OHA needs the CCOs to intervene or take other affirmative steps to protect their interests.

Because FamilyCare served Plaintiff's First RFP on OHA rather than subpoenaing the CCOs directly, the CCOs have no means of raising relevant objections or otherwise protecting their information.[1]    While the Stipulated Protective Order entered in this case allows a

---

[1] FamilyCare chose to subpoena documents directly from only one Oregon CCO, Health Share. Based on the direct subpoena, Health Share has a separate and independent basis on which to contest production of its information and is not a party to this motion. FamilyCare refused OHA's request that FamilyCare issue subpoenas to the moving CCOs to enable them to protect their interests without intervention.

Page 2    NON-PARTIES' MOTION TO INTERVENE

Brian M. Parrott, LLC
851 SW 6th Ave, Ste 1500
Portland, OR  97204
503-607-2715

**EXHIBIT B**
**Page 2 of 11**

producing party the ability to protect documents, it presupposes there will be production and provides no recourse or protection for non-parties affected by the requested disclosure of their confidential, trade secret information. For this reason, the CCOs respectfully request that the Court allow them to intervene for the limited purpose of protecting their information.

**II.    Argument.**

**A. A Sufficient "Interest in the Matter in Litigation" Is Required to Intervene.**

ORCP 33C provides:

"At any time before trial, any person who has an interest in the matter in litigation may, by leave of court, intervene. In exercising its discretion, the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."

Under an analysis of ORCP 33C, the threshold question is whether the party moving to intervene "has an interest in the matter in litigation." *Taylor v. Portland Adventist Med. Ctr.*, 242 Or App 92, 102, 255 P3d 526, 531 (2011). While that test may be strict, is it not "self-defining." *Id*.

The bases for permissive intervention in ORCP 33C are comparable to the intervention of right in FRCP 24(a)(2). *Samuels v. Hubbard*, 71 Or App 481, 448 n. 5, 692 P2d 700, 704 (1985). Cases which hold that a party had a right to intervene under FRCP 24(a)(2) indicate that a similarly situated party would qualify for permissive intervention under Oregon law. *Id*. There are various cases in which a party was found to have a right to intervene under FRCP 24(a)(2) to assert protection for documents. *See, e.g.*, *U.S. v. American Tel. & Tel. Co.*, 642 F.2d 1285, 206 US App DC 317 (C.A.D.C., 1980) (non-party allowed to intervene to assert work product privilege to documents requested in discovery) and *In Re Grand Jury Subpoena*, 274 F3d 563 (1st Cir, 2001) (nonparties allowed to intervene for the purpose of asserting attorney-client privilege in documents sought by a subpoena duces tecum issued by a federal grand jury).

In addition, FRCP 24(a)(2) has been amended and construed to abandon "formalistic restrictions in favor of 'practical considerations' to allow courts to reach pragmatic solutions to

Page 3    NON-PARTIES' MOTION TO INTERVENE

Brian M. Parrott, LLC
851 SW 6th Ave, Ste 1500
Portland, OR  97204
503-607-2715

**EXHIBIT B
Page 3 of 11**

intervention problems. Rule 24(a)(2) is a nontechnical directive to courts that provides the flexibility necessary 'to cover the multitude of possible intervention situations,' and that requires consideration of all of the competing and relevant interests raised by an application for intervention. [It is] 'an obvious and important truth' that in applying Rule 24(a)(2) courts should 'not make a fortress of the dictionary' but rather should 'apply the rule with thoughtful consideration of the objectives it is intended to serve.'" *U.S. v. Hooker Chemicals & Plastics Corp.*, 749 F2d 968 (2nd Cir 1984) (citations omitted).

**B. The Court Has Discretion in Allowing Intervention.**

Intervention by right is limited to only those instances where the intervenor has been given an unconditional right to intervene and are reviewed as matters of law; however, permissive interventions are reviewed only to determine whether the decision was within the court's discretion. *Samuels*, 71 Or App at 485-86; 692 P2d at 703 (1985). When there is no rule of law that requires intervention the decision of the court is reviewed only for abuse of discretion. *State ex. Rel. Tosterud v. Druian*, 325 Or 315, 937 P2d 1015 (1997). The CCOs seek permissive intervention, and the Court should use practical considerations to reach a pragmatic solution by allowing the CCOs to intervene.

**C. The Amended Complaint Specifically References the CCOs' Confidentiality Concerns and OHA's Refusal to Disclose the Information as a Factual Predicate to Claims.**

FamilyCare has acknowledged that it seeks documents which the CCOs consider confidential. Amended Complaint ¶¶ 35-36, 40, 42-45 and Exhibits 1 and 5 to Complaint. These documents, according to FamilyCare, are necessary for its actuary to determine whether the rates offered FamilyCare were actuarially sound. Amended Complaint ¶41. As a CCO that submitted documents to OHA, FamilyCare is aware that the information submitted is considered confidential by OHA and the CCOs.

Despite the importance of the documents and knowing full well they were likely to be considered confidential by OHA and the CCOs, FamilyCare, rather than requesting the documents directly from the CCOs by way of subpoena, requested the documents from OHA.

Page 4    NON-PARTIES' MOTION TO INTERVENE

Brian M. Parrott, LLC
851 SW 6th Ave, Ste 1500
Portland, OR  97204
503-607-2715

**EXHIBIT B**
**Page 4 of 11**

Amended Complaint ¶41; *see also*, Plaintiff's First RFP. Apparently for strategic reasons, FamilyCare subpoenaed documents directly from only one Oregon CCO, HealthShare, and rejected OHA's position that subpoenas would be the appropriate means to seek information from other CCOs.

OHA has asserted trade secret objections to 13 of FamilyCare's 31 pending requests – specifically noting that they seek information "that is trade secret or other proprietary information of a third party." Ex. 1 to Parrott Dec. However, due to limited resources and the need for factual support for protection, OHA informed the CCOs they must act to protect their own interests. Ex. 2 to Parrott Dec.

Since the CCOs are not parties to the case, they have no method by which to assert the documents requested should be protected without being allowed to intervene. A party seeking to intervene is not required to unite with the plaintiff or defendant, but may demand "something adverse to both the plaintiff and defendant." *Taylor v. Portland, Adventist Med. Ctr.*, 242 Or App 92, 101; 255 P3d 526, 531 (2001). Because OHA's refusal to produce the CCOs' trade secret and proprietary information is a major factual predicate to FamilyCare's alleged claims and based on its attempted end-run around the CCOs by requesting the documents from OHA instead of issuing subpoenas, FamilyCare has created a sufficient interest in the case to allow the CCOs to intervene.

**D. The CCO Specific Information Sought by FamilyCare for CCOs Outside Its Region Is Not Relevant to FamilyCare's Contention that Its Rates Are Not Actuarially Sound.**

FamilyCare has alleged that "OHA utilized actuarially unsound rate-setting processes in establishing the 2017 capitation rates as they apply to FamilyCare." Amended Complaint ¶70. As identified by FamilyCare, the standard for determining whether the rates are actuarially sound is determined by 42 CFR § 438.4. Amended Complaint ¶11. 42 CFR § 438.4(a) states:

> "Actuarially sound capitation rates are projected to provide for all reasonable, appropriate, and attainable costs that are required under the terms of the contract and for the operation of the MCO, PIHP, or PAHP for the time period and *the population covered under the terms of the contract*, and such capitation rates are

Page 5    NON-PARTIES' MOTION TO INTERVENE

Brian M. Parrott, LLC
851 SW 6th Ave, Ste 1500
Portland, OR 97204
503-607-2715

EXHIBIT B
Page 5 of 11

developed in accordance with the requirements in paragraph (b) of this section" (emphasis added).

Similarly, the requirements in 42 CFR § 438.4(b) include a requirement that capitation rates must: "(2) Be appropriate for the populations to be covered and the services to be furnished under the contract."

Oregon's CCOs are divided into four rating regions. Amended Complaint, Ex. 3 at 8. These regions are important to the rate setting process because "Oregon could be considered a predominately rural state with a handful of metropolitan areas." Id. at 7. FamilyCare is in the "Tri-County" region. Id. at 7-8. Only one other CCO is in the Tri-County Area, Health Share of Oregon ("Health Share"). Id. at 8. To determine whether the rates offered to FamilyCare are actuarially sound, the only population that needs to be evaluated is that in the Tri-Counties area, which is the area covered by the FamilyCare contract with OHA. The specific documents requested by FamilyCare regarding rates and contracts with CCOs outside the Tri-Counties area are not relevant to FamilyCare's claims and should not be required to be produced.

FamilyCare has acknowledged that the Health Share data is the relevant data for its claims and served a Civil Deposition Subpoena Duces Tecum directly on Health Share seeking documents. The documents sought through the Subpoena include many of the same documents requested from OHA. Ex. 3 to Parrott Dec. Because Health Share received a subpoena directly from FamilyCare, Health Share has a means by which it can object to and seek protections for its trade secrets. The remaining CCOs should have the same opportunity. The CCOs should be allowed to intervene to fully explain to the Court what FamilyCare already knows – that the CCO specific rate data requested for CCOs outside the Tri-Counties region is not relevant nor likely to lead to the discovery of relevant information, and should not be produced.

**E.  Even if the CCOs' Data Is Determined to Be Relevant, the Plaintiff's First RFP Is Vague and Overly Broad.**

The request for documents in Plaintiff's First RFP goes well beyond what FamilyCare would need to support the claims alleged in the Amended Complaint. Many of the requests are

Page 6     NON-PARTIES' MOTION TO INTERVENE

Brian M. Parrott, LLC
851 SW 6th Ave, Ste 1500
Portland, OR  97204
503-607-2715

**EXHIBIT B
Page 6 of 11**

so broad and vague that it is difficult to discern what, exactly, would be included within the scope of the request.

For example, Request No. 31 reads: "All documents recording or reflecting OHA communication to any of the 16 CCOs in Oregon, written policies, documents and/or data regarding CCO cost, utilization, and/or performance." First, given that the purpose of a CCO is to ensure access to health services (utilization), to manage risk and control costs, and to improve quality of care and health outcomes (performance), every document created or disseminated from the CCO could be captured by this request. Second, this request is not bound in time. So, in essence, this request seeks all communications or documents shared between the OHA and all CCOs for all time about anything that is related to being a CCO. Clearly, this request is over broad.

While Request No. 31 may be the broadest of the requests, it is by no means the only vaguely-crafted and overly broad request. As such, it is impossible for the CCOs to predict what documents or communications FamilyCare may contend should be included within the scope of the request. That, in itself, seems like an abuse of the discovery process because it shifts the burden on those entities whose information will be disclosed to the position of having to guess at what might be included and further, of that, what might include trade secrets that might give a competitor an unfair advantage.

Further, once again, since FamilyCare has requested the CCOs' documents through OHA, the CCOs are not even aware of exactly what documents OHA might consider within the bound of the request and are without a method to object to their production.

**F. Even if the CCOs' Data Is Determined to Be Relevant, the Existing Protective Order Is Insufficient to Protect the Interests of the CCOs.**

FamilyCare and OHA have stipulated to a protective order which allows "producing parties" to designate material as "Confidential" or "Attorney's Eyes Only." Stipulated Protective Order ¶ 4. Since FamilyCare has failed to request the documents directly from the CCOs, the CCOs are not "producing parties" anticipated under the protective order. OHA, the

Page 7    NON-PARTIES' MOTION TO INTERVENE

Brian M. Parrott, LLC
851 SW 6th Ave, Ste 1500
Portland, OR  97204
503-607-2715

**EXHIBIT B
Page 7 of 11**

producing party, has indicated it does not possess the knowledge nor have the time and resources available to designate documents as "Confidential" or "Attorney's Eyes Only." Therefore, the CCOs are wholly unable to avail themselves of the stipulated protections without being allowed to intervene as a party. The existing Protective Order is also insufficient because it does not prevent those individuals who will review produced information from assisting FamilyCare, other Oregon CCOs, or other potentially interested parties in future endeavors in which they may be competitors or have adverse economic interests. Those may include future matters such as healthcare provider contracting or competing efforts to move into a current CCO's existing geographic region.

**III.    Conclusion.**

The CCOs have a sufficient interest in the matter in litigation to intervene for the limited purpose of asserting adequate protections for confidential and trade secret information. The CCOs respectfully request the Court grant their motion to intervene.

Dated this 9th day of August, 2017.

BRIAN M. PARROTT, LLC

By:    /s/  *Brian M. Parrott*
        **Brian M. Parrott, OSB No. 013760**
        Telephone: (503) 607-2715
        E-Mail: brian@bparrott-law.com
        Attorney for PrimaryHealth of
        Josephine County, LLC

DUNN CARNEY ALLEN HIGGINS & TONGUE, LLP

By:    /s/  *Elizabeth C. Knight*
        **Elizabeth C. Knight, OSB No. 992454**
        **Michael D. Crew, OSB No. 720603**
        Telephone: (503) 224-6440
        E-Mail: eknight@dunncarney.com
           mcrew@dunncarney.com
        Attorneys for AllCare CCO, Inc.

Brian M. Parrott, LLC
851 SW 6th Ave, Ste 1500
Portland, OR  97204
503-607-2715

**EXHIBIT B**
**Page 8 of 11**

TONKON TORP, LLP

By:    /s/ *Anna Sortun*
       **Anna Sortun, OSB No. 045279**
       Telephone: (503) 802-2107
       E-Mail: anna.sortun@tonkon.com
       Attorney for Cascade Health Alliance, LLC,
       Western Oregon Advanced Health, LLC,
       and Umpqua Health Alliance

ATER WYNNE LLP

By:    /s/ *Daniel P. Larsen*
       **Daniel P. Larsen, OSB No. 943645**
       Telephone: (503) 226-1191
       E-Mail: dpl@aterwynne.com
       Attorney for Columbia Pacific CCO, LLC
       and Jackson Care Connect

MILLER NASH GRAHAM & DUNN LLP

By:    /s/ *Frank V. Langfitt, III*
       **Frank V. Langfitt, III, OSB No. 731770**
       Telephone: (503) 205-2425
       E-Mail: frank.langfitt@millernash.com
       Attorney for Eastern Oregon Coordinated Care
       Organization, LLC

SAMARITAN HEALTH SERVICES

By:    /s/ *W. Chris Jenkins*
       **W. Chris Jenkins, OSB No. 090612**
       Telephone: (800) 863-5241
       E-Mail: wjenkins@samhealth.org
       Attorney for Intercommunity Health Network –
       Coordinated Care Organization

GARVEY SCHUBERT BARER

By:    /s/ *Eric A. Linenauer*
       **Eric Lindenauer, OSB No. 833721**
       Telephone: (503) 228-3939
       E-Mail: elindenauer@gsblaw.com
       Attorney for PacificSource Community Solutions

Page 9    NON-PARTIES' MOTION TO INTERVENE

Brian M. Parrott, LLC
851 SW 6th Ave, Ste 1500
Portland, OR  97204
503-607-2715

**EXHIBIT B
Page 9 of 11**

SCHWABE WILLIAMSON & WYATT PC

By:    /s/  *Joel A. Parker*
       **Joel A. Parker, OSB No. 001633**
       **Jeffrey D. Hern, OSB No. 043138**
       Telephone: (503) 222-9981
       E-Mail: jparker@schwabe.com
                jhern@schwabe.com
       Attorneys for Trillium Community Health
       Plan, Inc.

HARRANG LONG GARY RUDNICK PC

By:    /s/  *Arden J. Olson*
       **Arden J. Olson, OSB No. 870704**
       Telephone: (541) 485-0220
       E-Mail: arden.j.olson@harrang.com
       Attorney for Willamette Valley Community
       Health, LLC

PETER F. STOLOFF P.C.

By:    /s/  *Peter F. Stoloff*
       **Peter F. Stoloff, OSB No. 780898**
       Telephone: (503) 992-6463
       E-Mail: pstoloff@petersoloff-law.com
       Attorney for Yamhill Community Care
       Organization

Page 10   NON-PARTIES' MOTION TO INTERVENE

Brian M. Parrott, LLC
851 SW 6th Ave, Ste 1500
Portland, OR  97204
503-607-2715

**EXHIBIT B**
**Page 10 of 11**

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing NON-PARTIES' MOTION TO INTERVENE was served on:

Meredith M. Price
Perkins Coie LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209

    Attorneys for Plaintiff

☐ By hand delivery
☒ By first-class mail*
☐ By overnight mail
☐ By facsimile transmission
   Fax #: _____
☐ By e-mail:_____

Oregon Health Authority
Attn.: Renee Stineman
Department of Justice, Special Litigation Unit
100 SW Market Street
Portland, OR 97201

    Attorneys for Defendant

☐ By hand delivery
☒ By first-class mail*
☐ By overnight mail
☐ By facsimile transmission
   Fax #: _____
☐ By e-mail: _____

*With first-class postage prepaid and deposited in Portland, Oregon.

Dated this 9th day of August, 2017.

BRIAN M. PARROTT, LLC

By:    /s/ Brian M. Parrott
**Brian M. Parrott, OSB No. 013760**
Telephone: (503) 607-2715
E-Mail: brian@bparrott-law.com
Attorney for PrimaryHealth of
Josephine County, LLC

Page 1    CERTIFICATE OF SERVICE

Brian M. Parrott, LLC
851 SW 6th Ave, Ste 1500
Portland, OR  97204
503-607-2715

**EXHIBIT B
Page 11 of 11**

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF MARION

|  |  |
|---|---|
| FAMILYCARE, INC., an Oregon non-profit corporation, | Case No. 17CV09226 |
| Plaintiff, | JUDGE: SEA |
| v. | **JOINT INTERVENORS' MOTION FOR PROTECTIVE ORDER** |
| OREGON HEALTH AUTHORITY, an agency of the State of Oregon, | (ORCP 36) |
| Defendant, | HEARING SET:<br>SEPT. 28, 2017<br>1:00 PM |
| and |  |
| ALLCARE CCO, INC., an Oregon corporation; CASCADE HEALTH ALLIANCE, LLC, an Oregon limited liability company; COLUMBIA PACIFIC CCO, LLC, an Oregon limited liability company; EASTERN OREGON COORDINATED CARE ORGANIZATION, LLC, an Oregon limited liability company; INTERCOMMUNITY HEALTH PLANS, INC., an Oregon corporation doing business as INTERCOMMUNITY HEALTH NETWORK – COORDINATED CARE ORGANIZATION; JACKSON COUNTY CCO, LLC, an Oregon limited liability company doing business as JACKSON CARE CONNECT; PACIFICSOURCE COMMUNITY SOLUTIONS, an Oregon nonprofit; PRIMARYHEALTH OF JOSEPHINE COUNTY, LLC, an Oregon limited liability company; TRILLIUM COMMUNITY HEALTH PLAN, INC., an Oregon corporation; UMPQUA HEALTH |  |

Page 1   JOINT INTERVENORS' MOTION FOR PROTECTIVE ORDER

Brian M. Parrott, LLC
851 SW 6th Ave, Ste 1500
Portland, OR  97204
503-607-2715

**EXHIBIT C**
**Page 1 of 27**

ALLIANCE, LLC, an Oregon limited liability company; WESTERN OREGON ADVANCED HEALTH, LLC, an Oregon limited liability company; WILLAMETTE VALLEY COMMUNITY HEALTH, LLC, an Oregon limited liability company; AND, YAMHILL COMMUNITY CARE ORGANIZATION, INC., an Oregon corporation,

Joint Intervenors.

_____

**UTCR 5.010 CERTIFICATION**

AllCare CCO, Inc.; Cascade Health Alliance, LLC; Columbia Pacific CCO, LLC; Eastern Oregon Coordinated Care Organization, LLC; Health Share of Oregon; Intercommunity Health Network – Coordinated Care Organization; Jackson Care Connect; PacificSource Community Solutions; PrimaryHealth of Josephine County, LLC; Trillium Community Health Plan, Inc.; Umpqua Health Alliance; Western Oregon Advanced Health, LLC; Willamette Valley Community Health, LLC; and, Yamhill Community Care Organization (collectively the "CCOs") have conferred with plaintiff, FamilyCare, Inc., ("FamilyCare") prior to the filing of this motion and have been unable to reach a resolution.

**UTCR 5.050 REQUEST FOR ORAL ARGUMENT**

Pursuant to UTCR 5.050, the CCOs request oral argument in this matter. The CCOs estimate that argument will require approximately 30 minutes and official court reporting services are requested.

**MOTION**

The CCOs move this Court to order consistent with ORCP 36C that certain discovery not be had and that trade secret or other confidential information not be disclosed except as designated by the proposed protective order attached hereto.

Page 2    JOINT INTERVENORS' MOTION FOR PROTECTIVE ORDER

Brian M. Parrott, LLC
851 SW 6th Ave, Ste 1500
Portland, OR 97204
503-607-2715

**EXHIBIT C**
**Page 2 of 27**

**POINTS AND AUTHORITIES**

**I.    Introduction.**

The Court allowed the CCOs to intervene in this case to protect their trade secrets and other confidential information from disclosure by defendant Oregon Health Authority ("OHA") pursuant to requests for production of documents by FamilyCare.  The CCOs, in the process of contracting with OHA to provide managed care Medicaid services, provide to OHA a vast amount of business and financial information, some of which they maintain are trade secrets or confidential information which deserve heightened protections.  The CCOs worked with FamilyCare to try and agree on stipulated protections for the information but were unable to reach agreement.

**II.    Legal Authority.**

**A.  Trade Secrets are Entitled to Special Protections.**

Oregon law recognizes that trade secrets receive special protection in accordance with ORCP 36 and the Trade Secret Act, ORS 646.641.  *See Banaitis v. Mitsubishi Bank, Ltd.*, 129 Or. App. 371, 378, 879 P.2d 1288, 1294 (1994) (noting, "Numerous statutes reflect a legislative recognition of the important public policy of protecting from disclosure confidential commercial and financial information," including ORCP 36, which protects trade secrets).  That is, in an action involving a trade secret, the trial court is expected to preserve the secret by "reasonable means," which may include "granting protective orders in connection with discovery proceedings, holding in camera hearings, [or] sealing the records of the action."  ORS 646.469.

Oregon Rule of Civil Procedure 36C seeks to do just that.  Generally,

> "Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: * * * (1) that the discovery not be had; * * * (7) that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way."

Page 3    JOINT INTERVENORS' MOTION FOR PROTECTIVE ORDER

Brian M. Parrott, LLC
851 SW 6th Ave, Ste 1500
Portland, OR  97204
503-607-2715

**EXHIBIT C
Page 3 of 27**

ORCP 36C.  Notably, Oregon courts have interpreted ORCP 36C(7) consistent with its federal

counterpart, FRCP 26(c)(7).  *See Citizens' Util. Bd. of Or. v. Or. Pub. Util. Comm'n*, 128 Or

App 650, 658, 877 P2d 116, 120 (1994) (relying on federal decisions to interpret the

requirements of ORCP 36C(7)); *see also Lindell v. Kalugin*, 353 Or 338, 355, 297 P3d 1266,

1276 (2013) (stating, "when the Oregon legislature borrows wording from a statute originating

in another jurisdiction, there is a presumption that the legislature borrowed controlling case law

interpreting the statute along with it").

**B. The Party Seeking Protection Has the Burden of Establishing the Information is Trade Secret or Confidential Information.**

*Citizens' Util. Bd. of Oregon* lays the procedure for a party seeking protection under

ORCP 36C(7).  Initially, "the party seeking protection must show that the information is a trade

secret or confidential commercial information," within the scope of ORCP 36C.  *Citizens' Util.*

*Bd. of Oregon*, 128 Or App at 658 (citing *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.,*

529 F Supp 866 (E.D. Pa. 1981)).  In so doing, the court noted that:

> "Courts traditionally examine six factors in determining whether information constitutes a trade secret:  (1) the extent to which the information is known outside the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken to safeguard the secrecy of the information; (4) the value of the information to the business or its competitors; (5) the amount of effort or money expended by the business in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others. *See, e.g., Waelde v. Merck, Sharp & Dohme,* 94 FRD 27 (ED Mich 1981)."

*Id*. at 658-59.  In addition, the moving party must show that disclosure would cause "a clearly

defined and serious injury" to the party, substantiated by specific examples and/or articulated

reasoning.  *Id*. (quoting *Zenith Radio*, 529 F. Supp. at 890).

Page 4    JOINT INTERVENORS' MOTION FOR PROTECTIVE ORDER

Brian M. Parrott, LLC
851 SW 6th Ave, Ste 1500
Portland, OR  97204
503-607-2715

**EXHIBIT C
Page 4 of 27**

**C. Once the Information Has Been Established as a Trade Secret or Confidential, the Party Seeking Discovery Must Prove the Information Should Be Produced.**

Once it is established that trade secrets are being sought, the burden shifts to the party seeking discovery to establish that the information is sufficiently relevant and necessary to his or her case to outweigh the harm disclosure would cause to the person from whom he or she is seeking the information. *Hartley Pen Co. v. U.S. Dist. Court,* 287 F.2d 324, 331 (9th Cir. 1961); *Capsugel Belgium NV v. Bright Pharma Caps, Inc.*, 2015 WL 5706925, at \*3 (D. Or. Sept. 28, 2015). A court must then "weigh the risk of disclosure of the trade secret to unauthorized parties with the risk that a protective order will impede prosecution or defense of the claims." *Capsugel,* 2015 WL 5706925, at \*3. If the party seeking discovery fails to show that the trade secret is necessary and relevant, discovery must be denied. "[U]nder the plain language of [ORCP 36C], once a court concludes that a party or person is entitled to a protective order, it has the authority to protect that party or person in any way that justice requires." *Carton v. Shisler,* 146 Or App 513, 516, 934 P2d 448, 450 (1997).

As a baseline, the party requesting discovery must "establish that material sought is relevant to subject matter of lawsuit and that information is necessary to prepare case for trial." *Coca-Cola Bottling Co. of Shreveport v. Coca-Cola Co.*, 107 FRD 288 (D Del 1985). "'Necessity' means that without discovery of the particular trade secret, the discovering party would be unable to present its case 'to the point that an unjust result is a real, rather than a merely possible, threat.'" *Bridgestone Americas Holding, Inc.,* 878 N.E.2d at 196 (quoting *In re Bridgestone/Firestone, Inc.,* 106 S.W.3d 730, 733 (Tex.2003)).

**D. Oregon Public Records Law Also Provides Protection for Trade Secrets.**

By contrast, Oregon's Public Record Law ("OPRL") exempts "trade secrets" from disclosure in two ways. First, ORS 192.501(2) lists categories of exempt "trade secrets," including, "any formula, plan, pattern, process, tool, mechanism, compound, procedure, production data, or compilation of information which is not patented, which is known only to

Brian M. Parrott, LLC
851 SW 6th Ave, Ste 1500
Portland, OR  97204
503-607-2715

**EXHIBIT C**
**Page 5 of 27**

certain individuals within an organization and which is used in a business it conducts, having actual or potential commercial value, and which gives its user an opportunity to obtain a business advantage over competitors who do not know or use it." Additionally, ORS 192.502(9)(a), the catch-all provision, exempts from disclosure under the OPRL "[p]ublic records or information the disclosure of which is prohibited or restricted or otherwise made confidential or privileged under Oregon law." Oregon courts have determined that the public disclosure of trade secrets through a public records request can constitute the misappropriation of trade secrets, which is prohibited under the Oregon Trade Secrets Act. ORS 646.461 *et seq.*; *Pfizer Inc. v. Or. Dep't of Justice ex rel. Kroger*, 254 Or App 144, 159-62, 294 P3d 496, 505–07 (2012). Often these cases turn on whether the disputed discovery items are "trade secrets," as defined in the Uniform Trade Secrets Act, which provides:

> "Trade secret means information, including a drawing, cost data, customer list, formula, pattern, compilation, program, device, method, technique or process that: (a) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."

ORS 646.461(4). Ordinarily, it is the public body that "has the burden of sustaining an asserted exemption from disclosure" under the OPRL. *In Defense of Animals v. OHSU,* 199 Or App 160, 172, 112 P3d 336 (2005).

**E. Actuary Soundness is Determined by a Review of the Population to be Served under the Contract at Issue.**

"[T]he starting point for the legal analysis of this regulation is … the language of the regulation itself." *Sierra Club v. Sigler*, 695 F.2d 957, 973 (5th Cir. 1983). Here, the language of the relevant regulations make clear that "actuarially sound" rates must be calculated with respect to the "population covered under the terms of the contract." 42 C.F.R. § 438.4, 42 C.F.R. § 438.5(c)(1) ("States must provide all the validated encounter data, FFS data (as appropriate), and audited financial reports (as defined in § 438.3(m)) that demonstrate

Page 6    JOINT INTERVENORS' MOTION FOR PROTECTIVE ORDER

experience *for the populations to be served* by the MCO, PIHP, or PAHP to the actuary developing the capitation rates")(emphasis supplied).

While there are no cases applying 42 C.F.R. § 438.4 or 438.5 that discuss whether "actuarially sound" rates must account for population-specific factors, cases discussing other sections of this Subchapter reinforce the plain language of these regulations, namely, that "actuarially sound" rates are determined by, *inter alia*, the population served. *See Crabtree v. Goetz*, No. 3:08-0939, 2008 U.S. Dist. LEXIS 103097, at *49 (M.D. Tenn. Dec. 18, 2008) ("Applicable federal regulations require States to pay "actuarially sound" rates, 42 C.F.R. § 438.6(c)(1), meaning that the rates must be actuarially certified as appropriate for the populations and services under the contract"); *G. v. Haw., Dep't of Human Servs.*, 676 F. Supp. 2d 1006, 1023-24 (D. Haw. 2009) ("Capitation rates are actuarially sound when, among other things, they "[a]re appropriate for the populations to be covered, and the services to be furnished under the contract."); *Clayworth v. Bonta*, 295 F. Supp. 2d 1110, 1124-25 (E.D. Cal. 2003) (rev'd on other grounds) ("The plain meaning of this regulation is that to be 'actuarially sound' a rate must be based on the demographics of the area to be served and the services provided there.").

**III.     Argument.**

**A.  The Information Sought is Not Relevant to the Claims Pled.**

"The scope of discovery is defined by the parties' claims and defenses." *Hayes v. Corr. Corp. of Am.*, No. CV 09-122-BLW, 2011 WL 1314908, at *3 (D. Idaho Mar. 11, 2011). FamilyCare has pled that OHA used "actuarially unsound methods impermissibly to penalize FamilyCare, Second Amended complaint ¶ 77, and that OHA used actuarially unsound rate-setting processes establishing the 2017 capitation rates as they apply to FamilyCare. Second Amended Complaint ¶ 83.[1]

---

[1] The CCOs have briefed the relevancy issue in their Motion to Intervene and Reply thereto. *See* Motion to Intervene pg. 5, ln. 19 and Reply to Motion to Intervene pg. 3, ln. 10.

Page 7    JOINT INTERVENORS' MOTION FOR PROTECTIVE ORDER

Brian M. Parrott, LLC
851 SW 6th Ave, Ste 1500
Portland, OR 97204
503-607-2715

**EXHIBIT C
Page 7 of 27**

During the conferral process, the CCOs asked FamilyCare to review a set of identified categories documents that the CCOs seek to protect and determine whether there was information listed that FamilyCare did not actually need. Parrott Supp. Dec. to Motion to Intervene ¶ 7, Ex. 6. Rather than narrow the information requested, FamilyCare's responded that FamilyCare needed everything except provider-level information. (Parrott Dec to Motion to Intervene. ¶ 5, Ex. 3.) As FamilyCare explained:

> "At a very high level, we intend to prove that OHA has been setting FamilyCare's rates in an unfair and actuarially unsound way. We need data showing how rates were set for other CCOs to determine whether FamilyCare has been treated differently than the other CCOs. At a slightly more specific level, the agreement between OHA and CMS puts a limit on how much OHA can increase the state-wide capitation rate year-over-year. FamilyCare's share of that increase has gotten smaller and smaller, and OHA hasn't told FamilyCare why that is, or how its costs are out of line with expectation. We're asking for the data above in an effort to assess why the total budget was allocated in a way that is inadequate to FamilyCare – first across regions based on average regional experience, and then across CCOs within each region based on average risk score. The regional rate models, for example, will allow us to identify the utilization and unit cost profile for each region to assess how attainable the Tri-County adjusted base data is for FamilyCare."

The issue with FamilyCare's description of the broad purpose for the information is that it doesn't match the claims which FamilyCare has pled. The relevance standard in this incident requires that "some relationship must be shown between the information sought and the claims." *Bridgestone Americas Holding v. Mayberry*, 878 N.E.2d 189 (Ind., 2007) (citing *American Standard, Inc. v. Pfizer, Inc.*, 828 F2d 734 (Fed.Cir. 1987)). FamilyCare has pled eight separate claims for relief; however, none is based on disparate treatment by OHA as compared to other CCOs. All the claims regarding rates (first, second, third, and fourth claims for relief) specifically refer to the actuarially soundness of the rates at issue. Because the actuary soundness is based on the population to be served under the contract, the only population at issue is FamilyCare's population. *See,* II.E above. Detailed inquiry into the rates of CCOs outside the FamilyCare population is not necessary. Three of the remaining claims are specific

Page 8    JOINT INTERVENORS' MOTION FOR PROTECTIVE ORDER

Brian M. Parrott, LLC
851 SW 6th Ave, Ste 1500
Portland, OR 97204
503-607-2715

**EXHIBIT C
Page 8 of 27**

as to the contracts between FamilyCare and OHA (fifth, sixth, and seventh).  The final claim is specific as to action by OHA which interfered with FamilyCare's business relationships with health providers, OHP members, and FamilyCare's own employees.  To the extent that the Court finds information outside FamilyCare's contracted population relevant and necessary, data at the regional level should be sufficient.

**B.  The Information Sought Meets the Criteria for Trade Secret Information.**

The information the CCOs seek to protect meets the characteristics of trade secret information set forth in *Citizens' Util. Bd. of Oregon* above.  Other than when mandated by OHA, the information is not released outside the individual CCOs.  CCO Dec. ¶ 5. Even within the organization, only a limited number of people have access to the complete information complied in the documents. CCO Dec. ¶ 6.  Some of these documents contain detailed information on alternate, incentive, and payment arrangements which are unique and proprietary to each CCO. CCO Dec. ¶ 7.  A significant amount of time is invested in compiling the information and the information cannot be easily duplicated.  CCO Dec. ¶¶ 9-10.  FamilyCare attempted to obtain much of the same or similar trade secret and confidential information from other CCOs through a public records request in or around August 2015. *See* Second Amended Complaint ¶ 21, Ex. 1. The request, however, was properly denied because the State of Oregon determined the materials were exempt from disclosure under OPRLs. *Id.*, at Ex. 1, p. 3.  FamilyCare never challenged OHA's designation of the information as trade secret as allowed in ORS 192.460(1).

**C.  Information for Which CCOs are Seeking Protection.**

The CCOs initially identified 13 categories[2] of documents as trade secret or confidential such that they should not be produced.  In addition, the CCOs have further identified portions of the documents or categories of documents that are not confidential and for which protection is

Page 9    JOINT INTERVENORS' MOTION FOR PROTECTIVE ORDER

Brian M. Parrott, LLC
851 SW 6th Ave, Ste 1500
Portland, OR  97204
503-607-2715

**EXHIBIT C
Page 9 of 27**

not required.  The categories of documents and a brief description are attached as exhibits to CCO Dec.  The sample documents are for illustrative purposes only and are not a complete list of all the documents in each category.  While much of the information submitted by CCOs is identical, each CCO may have additional templates or submissions as requested by OHA.  The CCOs made a reasonable attempt to identify documents applicable to all CCOs, but may identify documents not included in the list that should be subject to a protective order.

**D. FamilyCare Has Failed to Sufficiently Demonstrate the Information is Relevant and Necessary.**

As identified above, the information the CCOs are seeking to protect are not relevant to the claims that FamilyCare has pled.  Since these documents are trade secret or confidential, FamilyCare must prove that the information is both relevant and necessary to its case. *Carton* at 516.  At a very basic level, the CCOs insist that the detailed information requested from each CCO is not necessary to prove FamilyCare's claims.  First, the information is not necessary to prove the actuarially soundness of FamilyCare's rates.  Second, even if some comparison is appropriate, aggregate and public data is sufficient to make those comparisons.

Further, some information the CCOs have identified as trade secret or confidential is very detailed information regarding individual enrollees including claims submitted and encounters with health professionals.  Category 4, Exhibit 1 to CCO Dec. Some documents detail the CCOs contractual relationships with suppliers and prices paid for supplies.  Category 11, Exhibit 1 to CCO Dec.  Other documents contain information that is not even related to the Medicaid line of business.  Category 9, Exhibit 1 to CCO Dec. Yet, FamilyCare has continued to insist that all the information is necessary to their claims.  It is not. Prohibiting FamilyCare

---

[2] Through the conferral process, the CCOs removed one category of documents but added another.  The full list of documents for which protection is sought is attaches as Exhibit 1 of CCO Dec.

Page 10   JOINT INTERVENORS' MOTION FOR PROTECTIVE ORDER

Brian M. Parrott, LLC
851 SW 6th Ave, Ste 1500
Portland, OR  97204
503-607-2715

**EXHIBIT C
Page 10 of 27**

from a detailed inquiry into the trade secret and confidential information of other CCOs down to the claim and contract level will not prevent FamilyCare from being able to present its case.

**E. If the Court Orders Production to be Had, Trade Secret or Confidential Information Should Be Produced Subject to a Reasonable Protective Order.**

If the Court orders production to be had of the CCOs trade secrets and confidential information, then the CCOs request the Court order such production be subject to the attached Protective Order.  The CCOs attempted to negotiate modifications to the Stipulated Protective Order entered on June 9, 2017, in this case but were unable to reach agreement.  The CCOs request that the Court enter the attached Proposed Protective Order[3] to replace the Stipulated Protective Order.

Dated this 27th day of September, 2017.

BRIAN M. PARROTT, LLC

By:     /s/  Brian M. Parrott
     **Brian M. Parrott, OSB No. 013760**
     Telephone: (503) 607-2715
     E-Mail: brian@bparrott-law.com
     Attorney for Intervenor, PrimaryHealth of Josephine County, LLC

DUNN CARNEY ALLEN HIGGINS & TONGUE, LLP

By:     /s/  Elizabeth C. Knight
     **Elizabeth C. Knight, OSB No. 992454**
     **Michael D. Crew, OSB No. 720603**
     Telephone: (503) 224-6440
     E-Mail: eknight@dunncarney.com
          mcrew@dunncarney.com
     Attorneys for Intervenor, AllCare CCO, Inc.

---

[3] Attached is also a redline document comparing the Proposed Protective Order with the last version of the Stipulated Protective Order on which the CCOs and FamilyCare agreed.

Page 11    JOINT INTERVENORS' MOTION FOR PROTECTIVE ORDER

TONKON TORP, LLP

By:     /s/  *Anna Sortun*
        **Anna Sortun, OSB No. 045279**
        Telephone: (503) 802-2107
        E-Mail: anna.sortun@tonkon.com
        Attorney for Intervenors, Cascade Health
        Alliance, LLC, Western Oregon Advanced
        Health, LLC, and Umpqua Health Alliance

ATER WYNNE LLP

By:     /s/  *Daniel P. Larsen*
        **Daniel P. Larsen, OSB No. 943645**
        Telephone: (503) 226-1191
        E-Mail: dpl@aterwynne.com
        Attorney for Intervenors, Columbia Pacific CCO,
        LLC and Jackson Care Connect

MILLER NASH GRAHAM & DUNN LLP

By:     /s/  *Frank V. Langfitt, III*
        **Frank V. Langfitt, III, OSB No. 731770**
        Telephone: (503) 205-2425
        E-Mail: frank.langfitt@millernash.com
        Attorney for Intervenor, Eastern Oregon
        Coordinated Care Organization, LLC

GARVEY SCHUBERT BARER

By:     /s/  *Eric A. Lindenauer*
        **Eric Lindenauer, OSB No. 833721**
        Telephone: (503) 228-3939
        E-Mail: elindenauer@gsblaw.com
        Attorney for Intervenor, PacificSource
        Community Solutions

HARRANG LONG GARY RUDNICK PC

By:     /s/  *Arden J. Olson*
        **Arden J. Olson, OSB No. 870704**
        Telephone: (541) 485-0220
        E-Mail: arden.j.olson@harrang.com
        Attorney for Intervenor, Willamette Valley
        Community Health, LLC

Page 12   JOINT INTERVENORS' MOTION FOR PROTECTIVE ORDER

Brian M. Parrott, LLC
851 SW 6th Ave, Ste 1500
Portland, OR  97204
503-607-2715

**EXHIBIT C**
**Page 12 of 27**

IN THE CIRCUIT COURT FOR THE STATE OF OREGON

FOR THE COUNTY OF MARION

| | |
|---|---|
| FAMILYCARE, INC., an Oregon non-profit corporation,<br><br>                Plaintiff,<br><br>    v.<br><br>OREGON HEALTH AUTHORITY, an agency of the State of Oregon,<br><br>                Defendant. | Case No. 17CV09226<br>Hon. Sean E. Armstrong<br><br><br>AMENDED STIPULATED PROTECTIVE ORDER |

This action concerns information that may be considered confidential, trade secret, proprietary, ~~or~~ commercially-sensitive information of the parties and third-parties, or protected health information as that term is defined in 45 CFR § 160.103 and 164.501 (collectively, "confidential information") and, in the course of this litigation, the parties expect to exchange and obtain from third-parties confidential information and documents referencing or containing confidential information (collectively, "confidential materials"). The parties agree that the entry of this Stipulated Protective Order ("Protective Order") is warranted to limit disclosure of any such documents and information.

1.     All documents, testimony, and other materials produced by the parties and any subpoenaed party and labeled "Confidential" or "Attorneys' Eyes Only" and subject to this Protective Order shall be used only in this proceeding.

2.     Use of any information or documents labeled "Confidential" or "Attorneys' Eyes Only" and subject to this Protective Order, including all information derived therefrom, shall be

**EXHIBIT C**<br>**Page 13 of 27**

restricted solely to the litigation of this case and shall not be used by any party or any person listed under paragraphs 9(b), (c), or (d) for any business, commercial, or competitive purpose.

3.      This Protective Order does not restrict the disclosure or use of any information or documents lawfully obtained by the receiving party from any source other than the party claiming confidentiality or through means or sources outside of this litigation. Should a dispute arise as to any specific information or document, the burden shall be on the party claiming that such information or document was lawfully obtained through means and sources outside of this litigation.

4.      Producing parties, including third parties and subpoenaed parties, may designate as "Confidential" or "Attorneys' Eyes Only" documents, testimony, written responses, or other materials produced in this case if they contain information that the producing party has a good faith basis for asserting is confidential under the applicable legal standards. As used herein, "designating party" shall refer to the party or third party designating any document, testimony or other materials as "Confidential" or "Attorneys' Eyes Only" under this Protective Order. The designating party shall designate each page of the document with a stamp identifying it as "Confidential" or "Attorneys' Eyes Only," unless impractical to do so.

5.      The parties acknowledge and agree that some amount of the third-party information produced by the Oregon Health Authority in this litigation will contain information that other Coordinated Care Organizations ("CCOs") in Oregon may consider confidential or proprietary to them. Thus, to ensure that these other CCOs have adequate opportunity to protect such information, the parties and the CCOs have agreed to the following protocol for third-party information produced by the Oregon Health Authority:

        a.   The CCOs have received copies of FamilyCare, Inc.'s ("FamilyCare's") first, second, third, and fourth sets of document requests served on the Oregon Health Authority ("OHA"). Within ten (10) days of entry of this Protective Order, any CCO may simultaneously identify, in addition to any documents previously identified, in writing

EXHIBIT C
Page 14 of 27

to both OHA and FamilyCare any documents or categories of documents that it believes are appropriate to be designated as "Confidential" or "Attorneys' Eyes Only" under this Protective Order.

b.  FamilyCare will provide the CCOs with any future requests for production of documents it serves on the OHA, on the same date that it serves those requests on OHA. Within ten (10) days of FamilyCare's service of future document requests on OHA, any CCO may identify to both OHA and FamilyCare any documents or categories of documents that it believes are responsive to the requests and appropriate to be designated as "Confidential" or "Attorneys' Eyes Only" under this Protective Order.

c.  When producing documents to FamilyCare, OHA will abide by any such reasonable request from a CCO to designate a document or type of document as "Confidential" or "Attorneys' Eyes Only." All provisions of this Protective Order will apply to documents designated as "Confidential" or "Attorneys' Eyes Only" pursuant to this paragraph 5.

d.  If FamilyCare believes a document has been erroneously designated as "Confidential" or "Attorneys' Eyes Only" pursuant to this paragraph 5, FamilyCare will send a letter to the appropriate CCO(s) (with a copy to OHA) requesting re-designation and explaining its position why the document has been erroneously designated, and the CCO(s) will have ten (10) days from receipt of the letter to respond to such letter and explain why the designation is proper.  If FamilyCare and the CCO(s) are unable to reach an agreement, both letters will be forwarded to the Court for hearing at an appropriate time considering the Court's schedule.  CCO(s) may appear before the Court and speak in defense of the designation if the matter is brought before the Court.

EXHIBIT C
Page 15 of 27

6.      If portions of documents or other materials deemed "Confidential" or "Attorneys' Eyes Only" or any papers containing or making reference to such materials are filed with the Court, the party seeking to file the confidential materials shall first move the court pursuant to UTCR 5.160. Upon approval by the court the party shall file the confidential materials under seal, marked as follows or in substantially similar form:

> CONFIDENTIAL - IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS CONFIDENTIAL AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 8 9 OF THE PROTECTIVE ORDER.

> *or*

> ATTORNEYS' EYES ONLY - IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 9 10 OF THE PROTECTIVE ORDER.

7.      Any portion of a transcript of the deposition of any party or witness in this case in which "Confidential" or "Attorney Eyes Only" information or documents are discussed shall be designated "Confidential" or "Attorney Eyes Only" accordingly.  If the designation of the document under discussion as "Confidential" or "Attorney Eyes Only" is withdrawn or successfully challenged, the relevant portion of the transcript shall no longer be considered "Confidential" or "Attorney Eyes Only."  If a portion of a transcript designated as "Confidential" or "Attorney Eyes Only" is filed with the Court, it shall be filed under seal and marked in the manner described in paragraph 5.

8.      "Confidential" or "Attorneys' Eyes Only" information and documents subject to this Protective Order shall not be filed with the Court or included in whole or in part in pleadings, motions, briefs, etc., filed in this case, except when any portion(s) of such pleadings, motions, briefs, expert reports, documents, etc. have been filed under seal by counsel and marked in the same manner as described in paragraph 5 above. Such sealed portion(s) of pleadings, motions,

EXHIBIT C
Page 16 of 27

briefs, expert reports or files, documents, etc., shall be opened only by the Court or by personnel authorized to do so by the Court.

9.    Use of any information, documents, or portions of documents marked "Confidential," including all information derived therefrom, shall be restricted solely to the following persons, who agree to be bound by the terms of this Protective Order, unless additional persons are stipulated by counsel or authorized by the Court:

    a.    Outside counsel of record for the parties, and the administrative staff of outside counsel's firms.

    b.    In-house counsel for the parties, and the administrative staff for each in house counsel.

    c.    Any party to this action and any employee, director, officer, or manager of any party, as such party's counsel may deem reasonable for purposes of this litigation.

    d.    Independent consultants or expert witnesses (including partners, associates and employees of the firm which employs such consultant or expert) retained by a party or its attorneys for purposes of this litigation, as such party's counsel may deem reasonable for purposes of this litigation.

    e.    The Court and its personnel, including, but not limited to, stenographic reporters regularly employed by the Court and stenographic reporters not regularly employed by the Court who are engaged by the Court or the parties during the litigation of this action,

    f.    The authors and the original recipients of the documents.

    g.    Any court reporter or videographer reporting a deposition.

    h.    Employees of copy services, microfilming or database services, trial support firms and/or translators who are engaged by the parties during the litigation of this action.

10.    Use of any information, documents, or portions of documents marked "Attorneys' Eyes Only," including all information derived therefrom, shall be restricted solely to the persons listed

**EXHIBIT C**
**Page 17 of 27**

in paragraphs 9(a), 9(d), 9(e), 9(f), 9(g) and 9(h), unless additional persons are stipulated by counsel or authorized by the court. Any person listed in paragraph 9(d) shall not be an employee of FamilyCare and FamilyCare agrees that any person who receives or reviews "Attorneys Eyes Only" documents or information will not assist FamilyCare or any competitor of a CCO (or their related entities) in Oregon or in any other state with rate setting, including contract bids, through the rate-setting process for 2020 2022 rates. Prior to being shown any documents produced by another party marked "Confidential" or "Attorneys' Eyes Only," any person listed under paragraph 9(c) or 9(d) shall agree to be bound by the terms of this Order by signing the agreement attached as Exhibit A. Whenever information designated as "Confidential" or "Attorneys' Eyes Only" pursuant to this Protective Order is to be discussed by a party or disclosed in a deposition, hearing, or pre-trial, dispute resolution, trial, or appellate proceeding, the parties present must exclude from the room any person, other than persons designated in paragraphs 8 and 9, as appropriate, for that portion of the deposition, hearing or pre-trial proceeding, unless additional persons are stipulated by counsel for the designating party. Each party reserves the right to dispute the confidential status claimed by any other party or subpoenaed party in accordance with this Protective Order. If a party believes that any documents or materials have been inappropriately designated by another party or subpoenaed party, that party shall confer with counsel for the designating party. As part of that conferral, the designating party must assess whether redaction is a viable alternative to complete non-disclosure. If the parties are unable to resolve the matter informally, a party may file an appropriate motion before the Court requesting that the Court determine whether the Protective Order covers the document in dispute. Regardless of which party files the motion, the party seeking to protect a document from disclosure bears the burden of establishing good cause for why the document should not be disclosed. A party who disagrees with another party's or subpoenaed parties' designation must nevertheless abide by that designation until the matter is resolved by agreement or by order of the Court.

**EXHIBIT C**
**Page 18 of 27**

11.    The inadvertent failure to designate a document, testimony, or other material as "Confidential" or "Attorneys' Eyes Only" prior to disclosure shall not operate as a waiver of the party's or subpoenaed party's right to later designate the document, testimony, or other material as "Confidential" or "Attorneys' Eyes Only." The receiving party or its counsel shall not disclose such documents or materials if that party or counsel knows or reasonably should know that a claim of confidentiality would be made by the producing party. Promptly after receiving notice from the producing party of a claim of confidentiality, the receiving party or its counsel shall inform the producing party of all pertinent facts relating to the prior disclosure of the newly-designated documents or materials, and shall make reasonable efforts to retrieve such documents and materials and to prevent further disclosure.

12.    Designation by a party or subpoenaed party of information or documents as "Confidential" or "Attorneys' Eyes Only," or failure to so designate, will not constitute an admission that information or documents are or are not confidential or trade secrets. Neither party may introduce into evidence in any proceeding between the parties, other than a motion to determine whether the Protective Order covers the information or documents in dispute, the fact that the other party designated or failed to designate information or documents as "Confidential" or "Attorneys' Eyes Only."

13.    A large volume of documents may be exchanged through discovery in this lawsuit, and the parties want to expedite the review and delivery of such documents. It is agreed that if a party or subpoenaed party discloses privileged information and/or protected trial preparation materials, there will be no waiver of privilege and/or protection. A party or subpoenaed party may assert the privilege and/or protection at any time in the litigation. After being notified of the privilege or protection, the other parties (a) must promptly return the specified information, and any copies in its possession, custody, or control, (b) must make reasonable efforts to retrieve and to prevent disclosure of the information, if a party disclosed it before being notified, and (c) may not further use or disclose the information. A party opposing the claim of privilege and/or protection must

EXHIBIT C
Page 19 of 27

promptly present the information to the court under seal for a determination of the claim. Absent an expressed intent to waive, the presumption will be in favor of privilege and/or protection.

14.      Upon the request of the producing party or subpoenaed party, within 30 days after the entry of a final judgment no longer subject to appeal on the merits of this case, or the execution of any agreement between the parties to resolve amicably and settle this case, the parties and any person authorized by this Protective Order to receive confidential information shall return to the producing party or third party, or destroy, all information and documents subject to this Protective Order. Returned materials shall be delivered in sealed envelopes marked "Confidential" or "Attorneys' Eyes Only" as appropriate to respective counsel. Notwithstanding the foregoing, counsel for a party may retain archival copies of all confidential documents.

15.      This Protective Order shall not constitute a waiver of any party's or non-party's right to oppose any discovery request or object to the admissibility of any document, testimony or other information.

16.      Nothing in this Protective Order shall prejudice any person or party from seeking amendments to expand or restrict the rights of access to and use of confidential information, or other modifications, subject to order by the Court.

17.      The restrictions on disclosure and use of confidential information shall survive the conclusion of this action and this Court shall retain jurisdiction of this action after its conclusion for the purpose of enforcing the terms of this Protective Order.

EXHIBIT C
Page 20 of 27

DATED:  September 11, 2017          **PERKINS COIE LLP**

By:  */s/*
    Stephen F. English, OSB No. 730843
    SEnglish@perkinscoie.com
    Thomas R. Johnson, OSB No. 010645
    TRJohnson@perkinscoie.com
    Telephone:  503.727.2000
    Facsimile:  503.727.2222

    *Of Counsel (admitted pro hac vice)*

    Melanie K. Curtice, WSB No. 28479
    MCurtice@perkinscoie.com
    Matthew P. Gordon, WSB No. 41128
    MGordon@perkinscoie.com
    Telephone:  206.359.8000
    Facsimile:  206.359.9000

Attorneys for Plaintiff FamilyCare, Inc.

**EXHIBIT C**
**Page 21 of 27**

**BRIAN M. PARROTT, LLC**

By: */s/*
    Brian M. Parrott, OSB No. 013760
    brian@bparrott-law.com
    Telephone:  503.607.2715

Attorneys for PrimaryHealth of Josephine
County, LLC

**TONKON TORP, LLP**

By: */s/*
    Anna Sortun, OSB No. 045279
    Anna.sortun@tonkon.com
    Telephone:  503.803.2107

Attorneys for Cascade Health Alliance, LLC,
Western Oregon Advanced Health, LLC, and
Umpqua Health Alliance

**MILLER NASH GRAHAM & DUNN LLP**

By: */s/*
    Frank V. Langfitt, III, OSB No. 731770
    Frank.langfitt@millernash.com
    Telephone:  503.205.2425

Attorneys for Eastern Oregon Coordinated
Care Organization, LLC

**GARVEY SCHUBERT BARER**

By: */s/*
    Eric A. Lindenauer, OSB No. 833721
    elindenauer@gsblaw.com
    Telephone:  503.228.3939

Attorneys for PacificSource Community
Solutions

**DUNN CARNEY ALLEN HIGGINS & TONGUE, LLP**

By: */s/*
    Elizabeth C. Knight, OSB No. 992454
    eknight@dunncarney.com
    Michael D. Crew, OSB No. 720603
    mcrew@dunncarney.com
    Telephone:  503.224.6440

Attorneys for AllCare CCO, Inc.

**ATER WYNNE LLP**

By: */s/*
    Daniel P. Larsen, OSB No. 943645
    dpl@aterwynee.com
    Telephone:  503.226.1191

Attorneys for Columbia Pacific CCO, LLC and
Jackson Care Connect

**SAMARITAN HEALTH SERVICES**

By: */s/*
    W. Chris Jenkins, OSB No. 090612
    wjenkins@samhealth.org
    Telephone:  800.863.5241

Attorneys for Intercommunity Health
Network - Coordinated Care Organization

**SCHWABE WILLIAMSON & WYATT PC**

By: */s/*
    Joel A. Parker, OSB No. 001633
    jparker@schwabe.com
    Jeffrey D. Hern, OSB No. 043138
    jhern@schwabe.com
    Telephone:  503.222.9981

Attorneys for Trillium Community Health
Plan, Inc.

**EXHIBIT C**
**Page 22 of 27**

**HARRANG LONG GARY RUDNICK PC**

By:  */s/*
    Arden J. Olson, OSB No. 870704
    Arden.j.olson@harrang.com
    Telephone:  541.485.0220

Attorneys for Willamette Valley Community
Health, LLC

**PETER F. STOLOFF P.C.**

By:  */s/*
    Peter Stoloff, OSB No. 780898
    pstoloff@petersoloff-law.com
    Telephone:  503.992.6463

Attorneys for Yamhill Community Care
Organization

**EXHIBIT C**
**Page 23 of 27**

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing **AMENDED STIPULATED PROTECTIVE ORDER** on the following:

Oregon Health Authority
c/o Renee Stineman, Carla Scott and
Elleanor Chin
renee.stineman@doj.state.or.us
carla.a.scott@doj.state.or.us
elleanor.chin@doj.state.or.us
Department of Justice, Special
Litigation Unit
100 SW Market St.
Portland, OR  97201

Attorneys for Oregon Health Authority

by causing a full, true, and correct copy thereof, addressed to the last-known office address of the attorney (except when served by fax), to be sent by the following indicated method or methods, on the date set forth below:

| X | by **mailing** in a sealed, first-class postage-prepaid envelope and deposited with the United States Postal Service at Portland, Oregon. |

| X | by **emailing** to the recipient's last known email addresses |

**EXHIBIT C**
**Page 24 of 27**

DATED:  September 11, 2017

**PERKINS COIE LLP**

By:  */s/*
    Stephen F. English, OSB No. 730843
    SEnglish@perkinscoie.com
    Thomas R. Johnson, OSB No. 010645
    TRJohnson@perkinscoie.com
    Telephone:  503.727.2000
    Facsimile:  503.727.2222

    *Of Counsel (admitted pro hac vice)*

    Melanie K. Curtice, WSB No. 28479
    MCurtice@perkinscoie.com
    Matthew P. Gordon, WSB No. 41128
    MGordon@perkinscoie.com
    Telephone:  206.359.8000
    Facsimile:  206.359.9000

Attorneys for Plaintiff FamilyCare, Inc.

**BRIAN M. PARROTT, LLC**

By:  */s/*
    Brian M. Parrott, OSB No. 013760
    brian@bparrott-law.com
    Telephone:  503.607.2715

Attorneys for PrimaryHealth of Josephine
County, LLC

**DUNN CARNEY ALLEN HIGGINS &
TONGUE, LLP**

By:  */s/*
    Elizabeth C. Knight, OSB No. 992454
    eknight@dunncarney.com
    Michael D. Crew, OSB No. 720603
    mcrew@dunncarney.com
    Telephone:  503.224.6440

Attorneys for AllCare CCO, Inc.

**TONKON TORP, LLP**

By:  */s/*
    Anna Sortun, OSB No. 045279
    Anna.sortun@tonkon.com
    Telephone:  503.803.2107

Attorneys for Cascade Health Alliance, LLC,
Western Oregon Advanced Health, LLC, and
Umpqua Health Alliance

**ATER WYNNE LLP**

By:  */s/*
    Daniel P. Larsen, OSB No. 943645
    dpl@aterwynee.com
    Telephone:  503.226.1191

Attorneys for Columbia Pacific CCO, LLC and
Jackson Care Connect

**EXHIBIT C**
**Page 25 of 27**

**MILLER NASH GRAHAM & DUNN LLP**

By: */s/*
    Frank V. Langfitt, III, OSB No. 731770
    Frank.langfitt@millernash.com
    Telephone:  503.205.2425

Attorneys for Eastern Oregon Coordinated
Care Organization, LLC

**GARVEY SCHUBERT BARER**

By: */s/*
    Eric A. Lindenauer, OSB No. 833721
    elindenauer@gsblaw.com
    Telephone:  503.228.3939

Attorneys for PacificSource Community
Solutions

**HARRANG LONG GARY RUDNICK PC**

By: */s/*
    Arden J. Olson, OSB No. 870704
    Arden.j.olson@harrang.com
    Telephone:  541.485.0220

Attorneys for Willamette Valley Community
Health, LLC

**SAMARITAN HEALTH SERVICES**

By: */s/*
    W. Chris Jenkins, OSB No. 090612
    wjenkins@samhealth.org
    Telephone:  800.863.5241

Attorneys for Intercommunity Health
Network - Coordinated Care Organization

**SCHWABE WILLIAMSON & WYATT PC**

By: */s/*
    Joel A. Parker, OSB No. 001633
    jparker@schwabe.com
    Jeffrey D. Hern, OSB No. 043138
    jhern@schwabe.com
    Telephone:  503.222.9981

Attorneys for Trillium Community Health
Plan, Inc.

**PETER F. STOLOFF P.C.**

By: */s/*
    Peter Stoloff, OSB No. 780898
    pstoloff@petersoloff-law.com
    Telephone:  503.992.6463

Attorneys for Yamhill Community Care
Organization

**EXHIBIT C**
**Page 26 of 27**

# CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing JOINT INTERVENORS' MOTION FOR

PROTECTIVE ORDER was served on:

| | |
|---|---|
| Stephen F. English | ☐ By hand delivery |
| Courtney Rian Peck | ☒ By first-class mail* |
| Matthew P. Gordon | ☐ By overnight mail |
| Melanie K. Curtice | ☐ By facsimile transmission |
| Thomas Russell Johnson | Fax #: _____ |
| Perkins Coie LLP | ☐ By e-mail:_____ |
| 1120 N.W. Couch Street, 10th Floor | |
| Portland, OR 97209 | |

     Attorneys for Plaintiff

| | |
|---|---|
| Oregon Health Authority | ☐ By hand delivery |
| Attn.: Renee Stineman | ☒ By first-class mail* |
| Attn.: Carla Scott | ☐ By overnight mail |
| Department of Justice, Special Litigation Unit | ☐ By facsimile transmission |
| 100 SW Market Street | Fax #: _____ |
| Portland, OR 97201 | ☐ By e-mail: _____ |

     Attorneys for Defendant

*With first-class postage prepaid and deposited in Portland, Oregon.

Dated this 27th day of September, 2017.

BRIAN M. PARROTT, LLC

By:    /s/ *Brian M. Parrott*          
       **Brian M. Parrott, OSB No. 013760**
       Telephone: (503) 607-2715
       E-Mail: brian@bparrott-law.com
       Attorney for Intervenor, PrimaryHealth of
       Josephine County, LLC

Page 1    CERTIFICATE OF SERVICE

Brian M. Parrott, LLC
851 SW 6th Ave, Ste 1500
Portland, OR 97204
503-607-2715

**EXHIBIT C**
**Page 27 of 27**

Verified Correct Copy of Original 9/27/2017.

IN THE CIRCUIT COURT OF STATE OF OREGON
FOR MARION COUNTY

FAMILYCARE, INC., an Oregon non-profit )
corporation, )
                                                 )
                   Plaintiff, )
                                               ) Case No.: 17CV09226
     v. )
                                               ) ORDER GRANTING INTERVENTION
                                             )
OREGON HEALTH AUTHORITY, an agency )
of the State of Oregon, )
                                               )
                 Defendant. )

     This matter came before the court for oral argument on September 21, 2017 on Non-Parties' Motion to Intervene. The court reviewed the pleadings and heard oral argument. Now, therefore, it is hereby ORDERED that;

     Non-Parties Motion to Intervene is GRANTED for the limited purpose of entering an appropriate form of protective order and for hearing Non-Parties' objections to defendant's production of documents under ORCP 36. The court will review proposed forms of protective order and hear oral argument on Non-Parties' ORCP 36 objections on September 28, 2017 at 1:00 pm.

     DATED this 27th day of September, 2017.

*[signature]*

Honorable Sean E. Armstrong
Circuit Court Judge

Order prepared by Court

1 – ORDER

EXHIBIT D
Page 1 of 1



**DIRECTOR'S OFFICE**

Kate Brown, Governor



500 Salem St. NE, E-20
Salem, OR, 97301
50-945-6292

August 25, 2015

Kelly Knivila
Stoel Rives
900 SW Fifth Avenue, Suite 2600
Portland, OR 97204

Dear Ms. Knivila,

Dear Ms. Knivila:

You have made public records requests on behalf of your client, FamilyCare, Inc., for the following information ("Requested Information"):

1. A complete copy of all documents submitted to CMS by OHA and referenced in the email dated May 6, 2015 from Tricia Macinnes to the Rates Workgroup and CCO CEOs ("May 6 Email) including, without limitation, "[t]wo packages of work files [that] were also sent to CMS as part of the response.   The two packages included the Rate Review Tools (RRTs) for each CCO and the trend models for all CCOs. This information includes detailed cost and utilization data by CCO." For purposes of clarity, this request is for the rate tools and trend models for all CCOs.

2.  The detailed worksheets, workbooks, and documents of the calculations relied upon by X. Dennis Tang (and any others assisting him with his work) ("OHA Actuary") in certifying the 2015 rates as set forth in the Actuary's Letter of Certification Coordinated Care Organizations January 2015-December 2015 and dated FINAL as of December 15, 2014 ("2015 Actuary Report"). This request includes but is not limited to:
    a. All base data used by the OHA Actuary to develop the 2015 rates as set forth in the 2015 Actuary Report and all adjustments made to get to the final rate by plan or rate range for each 2015 rate cell as set forth in the 2015 Actuary Report;
    b. The "CY2013 databook" developed by Optumas and referenced on page 7 of the attached Oregon Encounter Data & Data Base Model Narrative Supporting CY15 Rate Development" document prepared by Optumas ("Optumas Report"); and
    c. The "dynamic base data model" prepared by Optumas and referenced on page 7 of the "Optumas Report."

3. An unredacted version of the material that OHA shared in redacted form with FamilyCare for the Regional Rate Model for the region that FamilyCare shares with HealthShare and all other regions.

OHA is denying your request for the Requested Information based on the trade secret exemption of ORS 192.501(2).   OHA believes the Requested Information qualifies as both the trade secret of OHA and the trade secret of CCOs.

**EXHIBIT E**
**Page 1 of 3**

## I.  Trade Secret of OHA

OHA believes that the Requested Information is the trade secret of OHA.   The Requested Information is substantially similar in nature to the information that you requested in a public records request that resulted in a Public Record Order dated July 3, 2012 ("2012 PRO").   Under that 2012 PRO, you requested "Public records reflecting the final upper and lower rate ranges (or bounds) of the 'actuarially sound rate ranges' referenced in" an October 2011 Capitation Rate Development Report.

In the 2012 PRO, the Oregon Department of Justice found that the information was a trade secret of OHA, finding that it met the four criteria of a trade secret under the Oregon Public Records Act exemption of ORS 192.501(2).   The Requested Information is of the same nature of the information you requested under the 2012 PRO and similarly meets all the criteria of a trade secret.   The Requested Information is not patented.  It is known only to certain individuals within OHA.   The Requested Information is of commercial value to OHA in that disclosing the information undermines OHA's negotiation position in establishing the rates to be paid to CCOs.   Disclosure would give a CCO that uses the Requested Information the opportunity to obtain a business advantage over other CCOs.

## II.  Trade Secret of the CCOs

Though OHA believes that all of the Requested Information is the trade secret of OHA, OHA also believes that much of the Requested Information qualifies as the trade secret of the CCOs.   When informed of the public records request, several vendors asserted trade secret protection over certain data.   The assertions ("CCO Information") are as follows:

1.   Health Share asserts trade secret over the following:
   - The Rate Review Tool for Health Share of Oregon including detailed cost data for Health Share of Oregon.
   - All base data for Health Share of Oregon, including supplemental financial data and any supplemental disclosures of processes, procedures or reports, including but not limited to alternative payment methodologies, incentive payments, claims lag reports and internal financial reports used by the OHA Actuary to develop the 2015 rates as set forth in the 2015 Actuary Report.
   - Redacted information from Regional Rate Model Worksheet

2. Case Oregon asserts trade secret over the following:
   - All information included in (or derived from) Financial Reporting Template except Enrollment and IBNR reports and the submission certification page.
3. EOCCO asserts trade secret over the following:
   - Any EOCCO supplied document containing pricing, rates, discounts, terms related to payment.
4. Umpqua Health Alliance asserts trade secret over the following:
   - "CCO specific unit cost and utilization information at the provider and/or service level", but not including "collectively sharing information rolled up to the regional level."

The CCO Information is the type of information that Oregon has exempted as trade secret in previous Public Record Orders ("PROs").   In a PRO to Steven Baldwin dated December 7, 1989, DOJ declined release, under the trade secret exemption, of certain pricing

information used in setting a health insurance provider's rates.   In a PRO to Karen Kirsch dated July 12, 2007, DOJ declined release, as a trade secret, of health insurer's rate- filing information, including information "relating to claim trends, retention, and target loss ratios."

The CCO Information is similar in nature to the information under the Baldwin and Kirsch PROs – it is used by healthcare organizations in setting rates and making projections. Each CCO asserts that their CCO Information meets all the criteria of a trade secret:  it is not patented; it is known only to certain individuals within the CCO; it has commercial value to the CCO;  and disclosure would give a CCO that uses the information a business advantage over another CCO.   OHA finds the assertions of the CCOs to be plausible and therefore, OHA intends to protect the trade secrets of CCOs that assert trade secret protection over this information.

### III.  Public Interest

The trade secret exemption is a conditional exemption under Oregon Public records law.   Even if a conditional exemption exists, disclosure could still be warranted if there is a public interest in disclosure.   In this instance, OHA believes that the public interest favors nondisclosure of the Requested Information.   OHA's economic value in the Requested Information – that disclosure undermines OHA's negotiation position in establishing the rates to be paid to CCOs – is also a public interest in promoting efficient use of OHA funds.    It is also in the public interest for OHA to have access to the internal financial data of CCOs to be able to have reliable information in which to set rates.  A CCO may not be willing to provide full access to its information in the future if it believes the information will be shared with other CCOs.

For the reasons set forth above, OHA denies your public records request for the Requested Information.

Respectfully,

*Keely L. West, J.D.*

Keely West
Policy, Public Records and Rules and
Internal Legal Coordinator

Verified Correct Copy of Original 11/1/2017.

IN THE CIRCUIT COURT FOR THE STATE OF OREGON

FOR THE COUNTY OF MARION

| | |
|---|---|
| FAMILYCARE, INC., an Oregon non-profit corporation,<br><br>Plaintiff,<br><br>v.<br><br>OREGON HEALTH AUTHORITY, an agency of the State of Oregon,<br><br>Defendant,<br><br>and<br><br>ALLCARE CCO, INC., an Oregon corporation; CASCADE HEALTH ALLIANCE, LLC, an Oregon limited liability company; COLUMBIA PACIFIC CCO, LLC, an Oregon limited liability company; EASTERN OREGON COORDINATED CARE ORGANIZATION, LLC, an Oregon limited liability company; INTERCOMMUNITY HEALTH PLANS, INC., an Oregon corporation doing business as INTERCOMMUNITY HEALTH NETWORK – COORDINATED CARE ORGANIZATION; JACKSON COUNTY CCO, LLC, an Oregon limited liability company doing business as JACKSON CARE CONNECT; PACIFICSOURCE COMMUNITY SOLUTIONS, an Oregon nonprofit; PRIMARYHEALTH OF JOSEPHINE COUNTY, LLC, an Oregon limited liability company; TRILLIUM COMMUNITY HEALTH PLAN, INC., an | Case No. 17CV09226<br><br>JUDGE: SEA<br><br>**PROTECTIVE ORDER** |

PAGE 1-    PROTECTIVE ORDER

123045-0001/LEGAL137476513 1

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

**EXHIBIT F**
**Page 1 of 14**

Verified Correct Copy of Original 11/1/2017.

Oregon corporation; UMPQUA HEALTH ALLIANCE, LLC, an Oregon limited liability company; WESTERN OREGON ADVANCED HEALTH, LLC, an Oregon limited liability company; WILLAMETTE VALLEY COMMUNITY HEALTH, LLC, an Oregon limited liability company; AND, YAMHILL COMMUNITY CARE ORGANIZATION, INC., an Oregon corporation,

Joint Intervenors.

This action concerns information that may be considered confidential, trade secret, proprietary, commercially-sensitive information of the parties and third-parties, or protected health information as that term is defined in 45 CFR §160.103 and 164.501 (collectively, "confidential information") and, in the course of this litigation, the parties expect to exchange and obtain from third-parties confidential information and documents referencing or containing confidential information (collectively, "confidential materials").

1.  All documents, testimony, and other materials produced by the parties and any subpoenaed party and labeled "Confidential" or "Attorneys' Eyes Only" and subject to this Protective Order shall be used only in this proceeding.

2.  Use of any information or documents labeled "Confidential" or "Attorneys' Eyes Only" and subject to this Protective Order, including all information derived therefrom, shall be restricted solely to the litigation of this case and shall not be used by any party or any person listed under paragraphs 9(b), (c), or (d) for any business, commercial, or competitive purpose.

3.  This Protective Order does not restrict the disclosure or use of any information or documents lawfully obtained by the receiving party from any source other than the party claiming confidentiality or through means or sources outside of this litigation. Should a dispute arise as to any specific information or document, the

PAGE 2-    PROTECTIVE ORDER

123045-0001/LEGAL137476513 1

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

Verified Correct Copy of Original 11/1/2017.

burden shall be on the party claiming that such information or document was lawfully obtained through means and sources outside of this litigation.

4. Producing parties, including third parties and subpoenaed parties, may designate as "Confidential" or "Attorneys' Eyes Only" documents, testimony, written responses, or other materials produced in this case if they contain information that the producing party has a good faith basis for asserting is confidential under the applicable legal standards. As used herein, "designating party" shall refer to the party or third party designating any document, testimony or other materials as "Confidential" or "Attorneys' Eyes Only" under this Protective Order. The designating party shall designate each page of the document with a stamp identifying it as "Confidential" or "Attorneys' Eyes Only," unless impractical to do so.

5. The parties acknowledge and agree that some amount of the third-party information produced by the Oregon Health Authority in this litigation will contain information that other Coordinated Care Organizations ("CCOs") in Oregon may consider confidential or proprietary to them. Thus, to ensure that these other CCOs have adequate opportunity to protect such information, the parties and the CCOs have agreed to the following protocol for third-party information produced by the Oregon Health Authority:

a. The CCOs have received copies of FamilyCare, Inc.'s ("FamilyCare's") first, second, third, and fourth sets of document requests served on the Oregon Health Authority ("OHA"). Within ten (10) days of entry of this Protective Order, any CCO may simultaneously identify, in addition to any documents previously identified, in writing to both OHA and FamilyCare any documents or categories of documents that it believes are appropriate to be designated as "Confidential" or "Attorneys' Eyes Only" under this Protective Order.

PAGE 3-    PROTECTIVE ORDER

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

123045-0001/LEGAL137476513 1

Verified Correct Copy of Original 11/1/2017.

b. FamilyCare will provide the CCOs with any future requests for production of documents it serves on the OHA, on the same date that it serves those requests on OHA. Within ten (10) days of FamilyCare's service of future document requests on OHA, any CCO may identify to both OHA and FamilyCare any documents or categories of documents that it believes are responsive to the requests and appropriate to be designated as "Confidential" or "Attorneys' Eyes Only" under this Protective Order.

c. When producing documents to FamilyCare, OHA will abide by any such reasonable request from a CCO to designate a document or type of document as "Confidential" or "Attorneys' Eyes Only." All provisions of this Protective Order will apply to documents designated as "Confidential" or "Attorneys' Eyes Only" pursuant to this paragraph 5.

d. If FamilyCare believes a document has been erroneously designated as "Confidential" or "Attorneys' Eyes Only" pursuant to this paragraph 5, FamilyCare will send a letter to the appropriate CCO(s) (with a copy to OHA) requesting re-designation and explaining its position why the document has been erroneously designated, and the CCO(s) will have ten (10) days from receipt of the letter to respond to such letter and explain why the designation is proper. If FamilyCare and the CCO(s) are unable to reach an agreement, both letters will be forwarded to the Court for hearing at an appropriate time considering the Court's schedule. CCO(s) may appear before the Court and speak in defense of the designation if the matter is brought before the Court.

6. If portions of documents or other materials deemed "Confidential" or "Attorneys' Eyes Only" or any papers containing or making reference to such materials are filed with the Court, the party seeking to file the confidential materials shall first move the court pursuant to UTCR 5.160. Upon approval by the court the

PAGE 4-    PROTECTIVE ORDER

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

123045-0001/LEGAL137476513 1

Verified Correct Copy of Original 11/1/2017

party shall file the confidential materials under seal, marked as follows or in substantially similar form:

> CONFIDENTIAL - IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS CONFIDENTIAL AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 9 OF THE PROTECTIVE ORDER.

> *or*

> ATTORNEYS' EYES ONLY - IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 10 OF THE PROTECTIVE ORDER.

7. Any portion of a transcript of the deposition of any party or witness in this case in which "Confidential" or "Attorney Eyes Only" information or documents are discussed shall be designated "Confidential" or "Attorney Eyes Only" accordingly. If the designation of the document under discussion as "Confidential" or "Attorney Eyes Only" is withdrawn or successfully challenged, the relevant portion of the transcript shall no longer be considered "Confidential" or "Attorney Eyes Only." If a portion of a transcript designated as "Confidential" or "Attorney Eyes Only" is filed with the Court, it shall be filed under seal and marked in the manner described in paragraph 5.

8. "Confidential" or "Attorneys' Eyes Only" information and documents subject to this Protective Order shall not be filed with the Court or included in whole or in part in pleadings, motions, briefs, etc., filed in this case, except when any portion(s) of such pleadings, motions, briefs, expert reports or files, documents, etc. have been filed under seal by counsel and marked in the same manner as described in paragraph 5 above. Such sealed portion(s) of pleadings, motions, briefs, expert reports or files, documents, etc., shall be opened only by the Court or by personnel authorized to do so by the Court.

PAGE 5- PROTECTIVE ORDER

Perkins Coie LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

123045-0001/LEGAL137476513 1

Verified Correct Copy of Original 11/1/2017.

9. Use of any information, documents, or portions of documents marked "Confidential," including all information derived therefrom, shall be restricted solely to the following persons, who agree to be bound by the terms of this Protective Order, unless additional persons are stipulated by counsel or authorized by the Court:

a. Outside counsel of record for the parties, and the administrative staff of outside counsel's firms.

b. In-house counsel for the parties, and the administrative staff for each in house counsel.

c. Any party to this action and any employee, director, officer, or manager of any party, as such party's counsel may deem reasonable for purposes of this litigation.

d. Independent consultants or expert witnesses (including partners, associates and employees of the firm which employs such consultant or expert) retained by a party or its attorneys for purposes of this litigation, as such party's counsel may deem reasonable for purposes of this litigation.

e. The Court and its personnel, including, but not limited to, stenographic reporters regularly employed by the Court and stenographic reporters not regularly employed by the Court who are engaged by the Court or the parties during the litigation of this action,

f. The authors and the original recipients of the documents.

g. Any court reporter or videographer reporting a deposition.

h. Employees of copy services, microfilming or database services, trial support firms and/or translators who are engaged by the parties during the litigation of this action.

10. Use of any information, documents, or portions of documents marked "Attorneys' Eyes Only," including all information derived therefrom, shall be

PAGE 6-    PROTECTIVE ORDER

Perkins Coie LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

123045-0001/LEGAL137476513 1

Verified Correct Copy of Original 11/1/2017

restricted solely to the persons listed in paragraphs 9(a), 9(d), 9(e), 9(f), 9(g) and 9(h), unless additional persons are stipulated by counsel or authorized by the court. Any person listed in paragraph 9(d) shall not be an employee of FamilyCare and the parties agree that any person who receives or reviews "Attorneys Eyes Only" documents or information from another party will not assist (1) FamilyCare, (2) any CCO, or (3) any entity who seeks to compete with FamilyCare or a CCO (or who assists such an entity) with Medicaid program rate setting, including contract bids, in Oregon through the rate-setting process for 2021 rates. In addition, any person listed in paragraph 9(d) who receives or reviews "Attorneys Eyes Only" documents or information from another party will not assist any entity who seeks to compete with a CCO-related entity as identified in Exhibit B in the rate region in which the related entity provides services through the rate-setting process for 2018 rates or with contract bidding during 2018. Prior to being shown any documents produced by another party marked "Confidential" or "Attorneys' Eyes Only," any person listed under paragraph 9(c) or 9(d) shall agree to be bound by the terms of this Order by signing the agreement attached as Exhibit A. Whenever information designated as "Confidential" or "Attorneys' Eyes Only" pursuant to this Protective Order is to be discussed by a party or disclosed in a deposition, hearing, pre-trial, dispute resolution, trial, or appellate proceeding, the parties present must exclude from the room any person, other than persons designated in paragraphs 9 and 10, as appropriate, for that portion of the deposition, hearing, pre-trial, dispute resolution, trial, or appellate proceeding, unless additional persons are stipulated by counsel for the designating party or as authorized by the court. Each party reserves the right to dispute the confidential status claimed by any other party or subpoenaed party in accordance with this Protective Order. If a party believes that any documents or materials have been inappropriately designated by another party or subpoenaed party, that party shall

PAGE 7-    PROTECTIVE ORDER

Perkins Coie LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

123045-0001/LEGAL137476513 1

Verified Correct Copy of Original 11/1/2017.

confer with counsel for the designating party. As part of that conferral, the designating party must assess whether redaction is a viable alternative to complete non-disclosure. If the parties are unable to resolve the matter informally, a party may file an appropriate motion before the Court requesting that the Court determine whether the Protective Order covers the document in dispute. Regardless of which party files the motion, the party seeking to protect a document from disclosure bears the burden of establishing good cause for why the document should not be disclosed. A party who disagrees with another party's or subpoenaed parties' designation must nevertheless abide by that designation until the matter is resolved by agreement or by order of the Court.

11.    The inadvertent failure to designate a document, testimony, or other material as "Confidential" or "Attorneys' Eyes Only" prior to disclosure shall not operate as a waiver of the party's or subpoenaed party's right to later designate the document, testimony, or other material as "Confidential" or "Attorneys' Eyes Only." The receiving party or its counsel shall not disclose such documents or materials if that party or counsel knows or reasonably should know that a claim of confidentiality would be made by the producing party. Promptly after receiving notice from the producing party of a claim of confidentiality, the receiving party or its counsel shall inform the producing party of all pertinent facts relating to the prior disclosure of the newly-designated documents or materials, and shall make reasonable efforts to retrieve such documents and materials and to prevent further disclosure.

12.    Designation by a party or subpoenaed party of information or documents as "Confidential" or "Attorneys' Eyes Only," or failure to so designate, will not constitute an admission that information or documents are or are not confidential or trade secrets. Neither party may introduce into evidence in any proceeding between the parties, other than a motion to determine whether the

PAGE 8-    PROTECTIVE ORDER

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

123045-0001/LEGAL137476513 1

Verified Correct Copy of Original 11/1/2017.

Protective Order covers the information or documents in dispute, the fact that the other party designated or failed to designate information or documents as "Confidential" or "Attorneys' Eyes Only."

13.    A large volume of documents may be exchanged through discovery in this lawsuit, and the parties want to expedite the review and delivery of such documents. It is agreed that if a party or subpoenaed party discloses privileged information and/or protected trial preparation materials, there will be no waiver of privilege and/or protection. A party or subpoenaed party may assert the privilege and/or protection at any time in the litigation. After being notified of the privilege or protection, the other parties (a) must promptly return the specified information, and any copies in its possession, custody, or control, (b) must make reasonable efforts to retrieve and to prevent disclosure of the information, if a party disclosed it before being notified, and (c) may not further use or disclose the information. A party opposing the claim of privilege and/or protection must promptly present the information to the court under seal for a determination of the claim. Absent an expressed intent to waive, the presumption will be in favor of privilege and/or protection.

14.    Upon the request of the producing party or subpoenaed party, within 30 days after the entry of a final judgment no longer subject to appeal on the merits of this case, or the execution of any agreement between the parties to resolve amicably and settle this case, the parties and any person authorized by this Protective Order to receive confidential information shall return to the producing party or third party, or destroy, all information and documents subject to this Protective Order. Returned materials shall be delivered in sealed envelopes marked "Confidential" or "Attorneys' Eyes Only" as appropriate to respective counsel. Notwithstanding the foregoing, counsel for a party may retain archival copies of all confidential documents.

PAGE 9-    PROTECTIVE ORDER

123045-0001/LEGAL137476513.1

Verified Correct Copy of Original 11/1/2017.

15. This Protective Order shall not constitute a waiver of any party's or non-party's right to oppose any discovery request or object to the admissibility of any document, testimony or other information.

16. Nothing in this Protective Order shall prejudice any person or party from seeking amendments to expand or restrict the rights of access to and use of confidential information, or other modifications, subject to order by the Court.

The restrictions on disclosure and use of confidential information shall survive the conclusion of this action and this Court shall retain jurisdiction of this action after its conclusion for the purpose of enforcing the terms of this Protective Order.

11/1/17

_____
SEAN E Armstrong

Submitted by:

PERKINS COIE LLP

By: _____

PAGE 10- PROTECTIVE ORDER

Perkins Coie LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

123045-0001/LEGAL137476513 1

EXHIBIT F
Page 10 of 14

Verified Correct Copy of Original 11/1/2017.

## EXHIBIT A

I, _____ , have been advised by counsel of record for

_____ in FamilyCare, Inc. v. Oregon Health Authority, Case

No. 17CV09226, Marion County, Oregon, of the protective order governing the delivery,

publication, and disclosure of confidential documents and information produced in this litigation.

I have read a copy of the protective order and agree to abide by its terms.

_____
Signed Name

_____
Printed Name

_____
Date

PAGE 1-    EXHIBIT A TO PROTECTIVE ORDER

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

123045-0001/LEGAL137476513 1

Verified Correct Copy of Original 11/1/2017.

EXHIBIT B
CCO RELATED ENTITIES
(as of October 18, 2017)

AllCare CCO, Inc
AllCare Health Plan, Inc

Columbia Pacific
CareOregon, Inc.
Greater Oregon Behavioral Health, Inc (GOBHI) Advantage Dental Capitol Dental ODS (Moda)
Willamette Dental

Jackson Care Connect
CareOregon, Inc.
 Advantage Dental
Capitol Dental
ODS (Moda)
Willamette Dental

Trillium Community Health Plan, Inc.*

| | |
|---|---|
| Arizona | Bridgeway Health Solutions, Inc. |
| | Health Net Access, Inc. |
| | Cenpatico of Arizona, Inc. |
| California | California Health and Wellness Plan |
| Florida | Sunshine State Health Plan, Inc. |
| Georgia | Peach State Health Plan, Inc. |
| Illinois | IlliniCare Health Plan, Inc. |
| Iowa | Iowa Total Care |
| Kansas | Sunflower State Health Plan, Inc. |
| Louisiana | Louisiana Healthcare Connections, Inc. |
| Massachusetts | CeltiCare Health Plan of Massachusetts, Inc. |
| Minnesota | Minnesota Complete Health |
| Mississippi | Magnolia Health Plan, Inc. |
| Missouri | Home State Health Plan, Inc. |
| Nebraska | Nebraska Total Care, Inc. |
| Nevada | SilverSummit Healthplan, Inc. |
| New Hampshire | Granite State Health Plan, Inc. |
| New Mexico | Western Sky Community Care |

PAGE 1-    EXHIBIT B TO PROTECTIVE ORDER

Perkins Coie LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

123045-0001/LEGAL137476513 1

Verified Correct Copy of Original 11/1/2017.

| North Carolina | Carolina Complete Health |
| Ohio | Buckeye Community Health Plan, Inc. |
| Oregon | Trillium Community Health Plan, Inc. |
| Pennsylvania | Pennsylvania Health & Wellness, Inc. |
| South Carolina | Absolute Total Care, Inc. |
| Texas | Superior HealthPlan, Inc. |
| Virginia | Virginia Total Care, Inc. |
| Washington | Coordinated Care of Washington, Inc. |
| Wisconsin | Coordinated Care Corporation, dba Managed Health Services Managed Health Services Insurance Corp. |

\* Trillium reserves its right, without waiver, to move to modify this list in the event a closely related entity enters a new state or withdraws from any of the listed states through the rate-setting process for 2018 rates or during contract bidding during 2018.

PAGE 2-    EXHIBIT B TO PROTECTIVE ORDER

Perkins Coie LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

123045-0001/LEGAL137476513 1

Verified Correct Copy of Original 11/1/2017.

DATED:  October 30, 2017

**PERKINS COIE LLP**

By:  */s/ Brian Samuelson*

Stephen F. English, OSB No. 730843
SEnglish@perkinscoie.com
Thomas R. Johnson, OSB No. 010645
TRJohnson@perkinscoie.com
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Telephone:  503.727.2000
Facsimile:  503.727.2222

Attorneys for Plaintiff FamilyCare, Inc.

*Of Counsel (admitted pro hac vice)*

Melanie K. Curtice, WSB No. 28479
MCurtice@perkinscoie.com
Matthew P. Gordon, WSB No. 41128
MGordon@perkinscoie.com
Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101
Telephone:  1.206.359.8000
Facsimile:  1.206.359.9000

Attorneys for Plaintiff FamilyCare, Inc.

PAGE 1-    EXHIBIT B TO PROTECTIVE ORDER

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

123045-0001/LEGAL137476513 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

FAMILYCARE, INC., an Oregon      )
non-profit corporation,          )
                                 )
          Plaintiff,             )  Case No. 6:18-cv-00296-MO
                                 )
     v.                          )
                                 )
OREGON HEALTH AUTHORITY, an      )
agency of the State of Oregon,   )
PATRICK ALLEN, both              )  September 21, 2018
individually and in his          )
official capacity as director    )
of the Oregon Health Authority,  )
and LYNNE SAXTON,                )
                                 )
          Defendants.            )  Portland, Oregon
_____    )



Oral Argument

TRANSCRIPT OF PROCEEDINGS

BEFORE THE HONORABLE MICHAEL W. MOSMAN

UNITED STATES DISTRICT COURT CHIEF JUDGE

1

targeted any of the CCOs in its rate-setting process.  There was no restrictions relating to that important question.

So when you actually analyze the facts that are in the record and the explanations that are given by the public official for his conduct, I think under Ashcroft v. Iqbal, you have to apply the common sense and judicial experience of applying more the likely explanation and dismiss these claims either on the motion to dismiss or the summary judgment.

THE COURT:  Thank you.

We've covered really two sets of claim so far.  I grant summary judgment on Claims 4 and 11 for the reasons we've discussed, for the tentative views that I set out earlier, which I find to be appropriate reasons for granting summary judgment there.

I deny the motion to dismiss, and I deny the motion for summary judgment on the retaliation claim, again for the reasons we discussed.  I agree that the factual predicate for the expressive conduct being a substantial or motivating factor in the adverse action that Mr. Allen sort of stepped into the stream of bad conduct and perpetuated it is weak, but there are other facts that adequately support that inference sufficient to defeat summary judgment and certainly the motion to dismiss.

I'm going to take a break, and we'll start next with the breach of contract or settlement agreement claims.

THE CLERK:  Court is in recess.

41

else.

THE COURT:  Thank you very much.

MR. HERN:  Yes, Your Honor.

MR. LINDENAUER:  Yes, Your Honor.

THE COURT:  10-5 at 10:00 a.m., we'll take up this motion in which I will consider both the previously briefed issue of the three, and larger issues raised.

I'll tell you right now, the main thing I'm interested in -- and I'm not expressing any tentative views at all, just -- well, I shouldn't say the main thing.  One of the things I clearly want to discuss is FamilyCare takes the position that there are reasons why what would typically be serious confidentiality concerns maybe at the outset of the case have since been reduced.  I think three, perhaps.  One, that the nature of the ratemaking program going forward reduces the competitive nature of the process; two, that a bunch of other people have been given access to this information, so a little bit of the cat-out-of-the-bag sort of argument.  And I forget the third.  There's the argument about the two gentlemen involved.

MR. ENGLISH:  Your Honor, the two gentlemen involved, Mr. Murray and Mr. Suchorzewski, are willing to sign the current confidentiality agreement.  And I can get into this now or later, but their ability -- our ability to produce at least one of the expert reports is impacted by their inability to see

it.

THE COURT:  I know that's what you've already -- I'm trying to think.  I thought you maybe argued that independent of them, other people had access to it and were going to be in the competitive process anyway.

MR. ENGLISH:  That is correct, Your Honor.  And we have AEO information we can supply to the Court and counsel that shows that information, the asymmetry of that.

THE COURT:  So there's a basic dynamic in play in terms of important confidentiality concerns and trial preparation concerns, and that's on a scale.  And I'm curious whether those two things have shifted the scale in favor of trial preparation or confidentiality in any meaningful way.

So we'll take that up, and so I don't know what that means in terms of expert witness preparation.

MR. ENGLISH:  Well, Your Honor, we have worked hard to try to make our experts have information available to them and interpretation of information available to them that will allow them to produce a comprehensive, accurate report.  They can't do it without input from Mr. Murray, who is intimately familiar with the process.

THE COURT:  So if you prevail on the 5th of October, how quickly after that will you be able to -- will you still be able to meet the current expert deadline?

MR. ENGLISH:  Not as to at least one of them.  I

76

--o0o--

I certify, by signing below, that the foregoing is a correct transcript of the record of proceedings in the above-entitled cause.  A transcript without an original signature or conformed signature is not certified.


/s/Bonita J. Shumway                    September 24, 2018
_____        _____
BONITA J. SHUMWAY, CSR, RMR, CRR        DATE
Official Court Reporter

81
EXHIBIT G
Page 5 of 5