| | |
|---|---|
| **From:** | Saxton Lynne |
| **To:** | MOHR-PETERSON Judy; Clement Leslie M |
| **CC:** | Saxton Lynne |
| **Sent:** | 2/9/2015 4:56:59 PM |
| **Subject:** | FW: Response to Family Care |
| **Attachments:** | 2015 Capitation Rate Information |

Hi – I have read both documents submitted by David. My question is do you both believe it is critical to respond to Family Care prior to the 2015 rate worksession? If so, do we believe the responses contained herein are consistent with the information and responses we will be giving at the worksession? Finally, do we believe our responses are as clear as possible? (my guess is our response may travel to others). I would suggest proofreading prior to transmittal as the content is missing some words.

I ask these questions not because I have concerns about the quality of David's analysis, but rather as I want to ensure we are being accurate and clear. Though I get the general direction of his responses here, I would not profess to be a technical expert so want to be sure we are putting our best response forward.

Thank you for your consideration - I appreciate your thoughts.

**From:** Rohrer David L
**Sent:** Monday, February 09, 2015 4:31 PM
**To:** Saxton Lynne
**Cc:** MOHR-PETERSON Judy; Coyner Lori A
**Subject:** Response to Family Care
**Importance:** High

Hello Lynne,
Please find (below) my intended response to Bill Murray CFO of Family Care Inc. This is a follow up email by Family Care following their original request for information dated January 8, 2015. (attached) Please contact me if you have any questions or suggested changes.

Thank you,


David Rohrer


Hello Bill,

Thank you for your comments and proposed solutions. I appreciate your suggestion about using floor/ceilings as a method for controlling variations in the rates from year to year. I know we have used this method successfully in the past as part of our risk adjustment methodology and as a tool to control variations in new services as they are rolled into managed care. However, in consultation with the actuarial firm, Optumas, we've concluded that it would not be advisable to implement a ceiling/floor approach for several reasons. 1) The effect of OHA implementing a floor/ceiling in the 2015 rates would by definition be mixed. This method would produce gains for some CCOs and losses for others. 2. Given that the variation from one year to the next is largely due to the effect of the rebasing, which CMS required as part of the ACA rate setting process, it would be difficult to create a ceiling or floor without tying it to the rebased data that we do have.

Regarding the second point, as you are aware, with the ACA expansion population and the 100% federal match, there was and is increased scrutiny of the rate methodology, and a very different review process of the rates and methodology at the federal level. In that process the fact that the rates would need to be rebased was communicated,

through the CMS Actuarial Guidance, in the capitation rate report and verbally on a number occasions.

The increased CMS scrutiny led to many rate discussions, and in the end resulted in the requirement for stronger connections with encounter and financial data. The rebase highlights the variation from the cost template process for 2014 to the use of data for the OHP Standard population for the 2015 rates. For the 2014 cost template submissions, many CCOs included large utilization and high trend adjustments for their OHP Standard population based on their concerns regarding the ACA populations. In addition to the higher trend and additional adjustments for the OHP Standard population, OHA included additional adjustment factors for the entire ACA/expansion population of pent up demand and access to care as well as a risk margin which was eventually disallowed by CMS.  All of this converged to create a 2014 ACA rate structure that was significantly higher than the base Standard rates. Compared to the 2014 rates that relied on assumptions regarding utilization and costs, for the 2015 rates, actual 2013 utilization and trend data were used for the OHP Standard population, along with financial data to capture alternative payment methodology and flexible services spending for 2013 and 2014 trends. Taken as a whole, trends were significantly lower for many CCOs than what the cost template submissions had assumed. However, there still may be residual pent-up demand and access issues, and thus, portions of those adjustments were retained.

Given all of this, adding a ceiling/floor on the rebased rates, would be highly unlikely to be approved by CMS.

I appreciate your suggestions and look forward to continued dialogue as we continue to work together to find solutions. Please feel free to contact me by email or phone if you have any additional questions.


Thank you,


David Rohrer, MPA
Administrator Actuarial Services, Office of Health Analytics
Oregon Health Authority
500 Summer St
Salem, Oregon 97035
David.l.rohrer@state.or.us
Salem (503) 945-6923|Portland (971) 673-1628|Cell (503) 884-8578

---

**From:** William (Bill) Murray
**Sent:** Wednesday, January 14, 2015 1:37 PM
**To:** Rohrer David L
**Cc:** Ballas Kelly R; Coyner Lori A; Kevin Clancy; Jeff Heatherington
**Subject:** Re: 2015 Capitation Rate Information

As discussed today I am also sending this "reminder" email regarding FamilyCare's request to adjust its 2015 cap rates (and any similarly impacted plans) to include rate change corridors to limit the significant variances and /or to utilize the rate ranges as a similar means to mitigate the variances. (FamilyCare made this suggestion as a temporary "Quick Fix" that could be implemented by February 1 if the additional analysis could not be completed/approved by February 1).
As discussed, the application of "bumpers" to limit variability in new programs/populations/methodologieshas been previously employed by the department in its determination of actuarially sound rates.
If you need any further information please let me know.
Thank you.
Bill

Sent from my iPhone

On Jan 8, 2015, at 11:24 AM, "William (Bill) Murray" <billm@familycareinc.org> wrote:

David,
Thank you for meeting with FamilyCare yesterday.  Here is the list of questions/information requested based on the

discussions and communications regarding the 2015 Capitation Rates.

- OHA to provide revised Exhibit 3A from 2015 CCO Capitation Rate Report.  Based on calculation provided by FamilyCare, the revised Exhibit will show a statewide weighted average capitation rate decrease of 1.52%, as compared to the statewide weighted average increase of 3.2% appearing in the original report.
- OHA to review and update the individual CCO Plan rate comparison exhibits (beginning with Exhibit 4)based on the calculation provided by FamilyCare for its plan.  The correction is required due to an error in the state's calculation of the "pro-forma" capitation rate for the ACA age-banded capitation rates as of October 2014.  For FamilyCare, Exhibit 4 currently shows a pro-forma October 2014 capitation rate of $575.45 for the ACA age-banded categories; FamilyCare calculates this amount to be $611.85.
- FamilyCare requests OHA revise and update the 2015 CCO Capitation Report and related Plan-specific exhibits to utilize current enrollment figures (instead of calendar year 2013 enrollment mix) to properly communicate the impact of the capitation rate changes between October 2014 and January 2015.
- OHA to provide its calculation/analysis of the impact of the change in the ACA expansion eligibility categories (from "with and without children" to the age-banded categories) on FamilyCare's rates.
- OHA to review methodology/calculations for the ACA expansion rate categories given the unexplained significant variability in individual plan rates and significant variability in plan rates within geographic regions.  As discussed, as this is predominantly a new population that  lacks creditable data sufficient to support the variance in the currently calculated rates.
- OHA to review and update capitation rate calculations for all rate categories to address:
  - Plan-to-plan variability in base-data costs (2013) used to develop 2015 rates;
  - Use of national cost trends ("CMS Market Basket forecasts, BLS medical CPI estimates and OHA's expected changes in FFS payments in forming the basis for inflation that go into the cost trend") over more specific CCO-provided information;
  - Same as above for utilization trends
  - Significant variance in  resulting capitation rates by eligibility category between periods and plans
- Disproportionately adverse impact of the 2015 Capitation Rates on FamilyCare.   Actuarial sound rates from one period to another should not generate the disproportionately adverse impact of the 2015 CCO Capitation Rates.

If any of the above items require further clarification, please let me know.

Thank you,

Bill

**William (Bill) Murray, CPA**
**Chief Operating Officer**
825 NE Multnomah St, Suite 1400, Portland, OR 97232
Office: 503-734-3147
Cell: 503-858-0426
Fax: 503-734-3197
*billm@familycareinc.org*
<image001.jpg>

This message is intended for the sole use of the individual and entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended addressee, nor authorized to receive for the intended addressee, you are hereby notified that you may not use, copy, disclose or distribute to anyone the message or any information contained in the message. If you have received this message in error, please immediately advise the sender by reply email and delete the message.

This message is intended for the sole use of the individual and entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended addressee, nor authorized to receive for the intended addressee, you are hereby notified that you may not use, copy, disclose or distribute to anyone the message or any information contained in the message. If you have received this message in error, please immediately advise the sender by reply email and delete the message.  Thank you.

OHA_LIT_00146592

Exhibit 5
Page 3 of 3