UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

FAMILYCARE, INC., an Oregon non-profit
corporation,

Plaintiff,

vs.                                    Case No. 6:18-cv-00296-MO

OREGON HEALTH AUTHORITY, an
agency of the State of Oregon, and
PATRICK ALLEN, both individually and in
his official capacity as director of the
Oregon Health Authority, and LYNNE SAXTON,

Defendants.

VIDEOTAPED DEPOSITION OF RENEE STINEMAN

THURSDAY, AUGUST 2, 2018

9:05 a.m.

Exhibit 13
Page 1 of 16

Stineman, Renee                                          August 2, 2018

Page 17

A.    I believe that my topic that I've been designated to testify to today relates to -- if you're talking about Topic 4 -- relates to written communication plans relating to FamilyCare or matters at issue in this lawsuit, from my best memory without having it in front of me, not generally, nor generally as it relates to medical topics or healthcare.

Q.    Did OHA, from January 1st, 2015 onward, develop any communications plans relating to FamilyCare?

A.    Written communications plans?

Q.    Any type of communications plans.

A.    That's not what the topic is.

MS. SIMPSON:  We're going to object.  It's outside the topic.

Q.    Did OHA, from January 1st, 2015 onward, develop any written communications plans relating to FamilyCare?

A.    The agency began the drafting of three different written communications plans that relate to issues raised by FamilyCare.

Q.    And what were those three

Beovich Walter & Friend

Exhibit 13
Page 2 of 16

Stineman, Renee                                                August 2, 2018

Page 18

different written communications plans that relate to issues raised by FamilyCare?

MR. MARKOWITZ:  I'm going to object.  It misstates her testimony.  She said they began drafting three different written communications plans, not that there were three different plans.

BY MR. JOHNSON:

Q.    You can answer the question.

A.    The three different written communication plans that the agency began drafting, I'm not sure how to distinguish them other than time frames.

There was one in 2015, one in 2016, and one in 2017.

Q.    What can you tell me about the effort in 2015 to create a written communications plan relating to FamilyCare?

A.    I can tell you that the written communication plan that was drafted in 2015 was initiated, at least in part, to address the fact that FamilyCare had breached its contract with OHA and had been given notice of its intent to terminate FamilyCare's contract.

Exhibit 13
Page 3 of 16

Stineman, Renee                                                August 2, 2018

Page 19

Q.    At whose direction was this effort in 2015 performed?

A.    Ms. Saxton's.

Q.    When did she provide that direction, initially?

A.    Generally, it would be in the time frame of the agency's issuance of its notice to intent to terminate the contract due to the breach by FamilyCare.

Q.    Who did she provide that direction to?

A.    I'm not aware specifically. Generally, it was a responsibility of the communications unit.

Q.    During your interview with Ms. Darby, did she indicate that she was involved in that at all?

A.    I don't recall specifically the particulars of who said what in my interviews. There had been a number of interviews and many hours with people.

My interviews were conducted for the purpose of formulating a response to questions about the plans today, not about particular conversations between me

Beovich Walter & Friend

Exhibit 13
Page 4 of 16

CERTIFICATE

State of Oregon

County of Multnomah

   I, Mary C. Soldati, Registered Professional Reporter, CSR No. 3406 and Notary Public in and for the State of Oregon, do hereby certify that RENEE STINEMAN, was satisfactorily identified and was duly sworn by me, and that such deposition is a true record of the testimony given by the witness.

        I further certify that I am neither related to nor employed by any of the parties in or counsel to this action, nor am I financially interested in the outcome of this action.

        In witness whereof, I have hereunto set my hand this 5th day of August, 2018.

                    Mary C. Soldati, RPR

My commission expires:

October 5, 2018

Exhibit 13
Page 5 of 16

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION


FAMILYCARE, INC., an Oregon non-profit
corporation,


Plaintiff,


vs.                              Case No. 6:18-cv-00296-MO


OREGON HEALTH AUTHORITY, an
agency of the State of Oregon, and
PATRICK ALLEN, both individually and in
his official capacity as director of the
Oregon Health Authority, and LYNNE SAXTON,
Defendants.



VIDEOTAPED DEPOSITION OF LAURA ROBISON

FRIDAY, AUGUST 3, 2018

9:05 a.m.

Exhibit 13
Page 6 of 16

Robison, Laura                                                    August 3, 2018

Page 156

Q.    You said this is not something that happened in connection with the 2015 or 2016 rate setting?

A.    There was not a reimbursement adjustment for the redeveloped 2015 rates or the 2016 rates.

Q.    Whose decision was it to do a reimbursement adjustment for 2017 and 2018?

A.    OHA made the decision to implement a reimbursement adjustment for 2017 and 2018.

Q.    Who at OHA?

A.    So during both years, there were many people involved in discussions about the reimbursement adjustment policy and the implementation of it.

Q.    And who ultimately made decision to do it?

A.    So in 2017, ultimately Lynne Saxton signed off on the reimbursement adjustment policy decision, based on the discussion that was had with many other people at OHA.

Q.    And in 2018?

A.    In 2018, ultimately Pat Allen

Exhibit 13
Page 7 of 16

Robison, Laura                                        August 3, 2018

Page 157

signed off on the reimbursement adjustment decision, again, based on decisions with others at OHA.

Q.   Who developed the policy?

A.   Could you be more specific about what you mean by developed the policy?

Q.   Yeah.  I'm just trying to understand who at OHA -- so I understand that Ms. Saxton and Mr. Allen signed off on the policy, and I was just trying to understand who actually -- somebody -- somebody must have or maybe it was multiple people, came up with the parameters of the policy, how it was going to be implemented, et cetera.  Who was that?

A.   So there were -- there were several people involved in that process, in that development.

So I -- it wasn't just one person who developed that.

Q.   Okay.  Who are those people?

A.   So for 2017, the people that I recall -- and there may have been other people that I'm not recalling top of mind that I could research or others that were

Exhibit 13
Page 8 of 16

not brought to my attention in my preparation for this topic.

But I recall that Chelsea Guest, Lori Coyner, Mark Fairbanks, trying to think of who else would have been involved in discussions about the reimbursement policy in 2017.

I've already mentioned Lynne Saxton. It's possible that Kate Nass was part of those discussions.

Q. Would it have been the same group of people for the 2018 reimbursement policy or a different group?

A. So it would have -- so for the 2018 reimbursement policy, some of the same people were involved at one stage of the process, but we also had other people involved at a different stage.

And I should clarify that on answering the prior question, there could have been other people involved that I'm not recalling.

Q. Who made the decision which CCOs initial base data should be reduced as part of the reimbursement policy?

Robison, Laura                                            August 3, 2018

Page 171

surplus payments.

And I also -- I also recall that there is some -- that, actually, no. I'm sorry. I'm thinking of something else.

There was discussions between Optumas and OHA, but I don't recall a specific individual or individuals who made that specific decision.

But it was part of the policy that was developed. And I shared with you earlier the individuals who were involved in developing that policy.

And so it may have been one of those or that group of individuals, but I don't have a specific person or group of people.

Q.    Was it made by OHA or Optumas? And when I say "it" I mean the decision about what business decisions should not be perpetuated.

A.    I think my research of this topic, my understanding is that the discussion of the reimbursement policy was -- that was discussed with Optumas and

Beovich Walter & Friend

Exhibit 13
Page 10 of 16

Robison, Laura                                              August 3, 2018

Page 172

OHA.

And ultimately OHA made the decision to implement the policy and how it would be implemented, but it was based on discussions with OHA and Optumas and also it's important to note that Optumas would -- needed to -- needed to feel comfortable that the adjustments would still lead to rates that it could certify as actuarially sound.

Q.    On what basis was the decision made -- I'm sorry.  Strike that.

What basis or bases were there for the decision about which business decisions of the CCOs should not be perpetuated?

A.    Would you repeat that, please?

Q.    Yeah.  Maybe it's not clear.  Let's try it a different way.

What I'm trying to understand is, there was a decision that was made sounds like between OHA and Optumas, maybe ultimately by OHA about which of the CCOs business decisions should not be perpetuated.

And I'd like to understand what

Exhibit 13
Page 11 of 16

Page 223

CERTIFICATE

State of Oregon

County of Multnomah

I, Mary C. Soldati, Registered Professional Reporter, CSR No. 3406 and Notary Public in and for the State of Oregon, do hereby certify that LAURA ROBISON, was satisfactorily identified and was duly sworn by me, and that such deposition is a true record of the testimony given by the witness.

I further certify that I am neither related to nor employed by any of the parties in or counsel to this action, nor am I financially interested in the outcome of this action.

In witness whereof, I have hereunto set my hand this 6th day of August, 2018.

Mary C. Soldati, RPR

My commission expires:

October 5, 2018

Exhibit 13
Page 12 of 16

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION


FAMILYCARE, INC., an Oregon non-profit
corporation,


                    Plaintiff,


vs.                                    Case No. 6:18-cv-00296-MO


OREGON HEALTH AUTHORITY, an
agency of the State of Oregon, and
PATRICK ALLEN, both individually and in
his official capacity as director of the
Oregon Health Authority, and LYNNE SAXTON,
                    Defendants.



CONTINUED VIDEOTAPED DEPOSITION OF

LAURA ROBISON

THURSDAY, AUGUST 16, 2018

9:45 a.m.

VOLUME II

Exhibit 13
Page 13 of 16

Page 354

A.    So, in my preparation for this topic, I, you know, I did not previously -- I don't recall seeing this document or doing a comparison or asking about changes.

It's possible that there are differences in the source or the timing of this information, but I am happy to research that to understand why, but I didn't ask that specific question.

MR. MARKOWITZ:  To be clear, this document you're referring to is Exhibit 1246.

A.    So, yes.  I did review this, whatever this document is labeled, 1247. But I suppose I may have seen this.  I don't recall seeing this particular document or doing a comparative analysis or asking questions about differences between these numbers, but I am happy to do that research.

Q.    A question for you about the HIV analysis that was done by OHA with respect to FamilyCare and Health Share members.

Did OHA ever undertake a similar analysis with respect to CCOs, other than

Exhibit 13
Page 14 of 16

Page 355

FamilyCare and Health Share.

And the analysis I'm referring to is the transition of members with HIV and AIDS between FamilyCare and Health Share?

A.    So, based on my preparation, OHA did not conduct a similar analysis for CCOs, other than FamilyCare and Health Share related to the transition of members with HIV/AIDS.

MR. MARKOWITZ:  Okay.  Thank you very much.

MR. GORDON:  We out of time? Okay.  A couple of things before we go off the record.

We're keeping the deposition open for several reasons; one, I understand that there were privileged claims made when Ms. Stineman was the designee that we disagree with the basis for.  And so on that basis, we're keeping this deposition open.

The second basis is that we were provided these 36 or so odd pages of notes for the first time today at lunch, despite asking for them a couple weeks ago during the deposition.

Exhibit 13
Page 15 of 16

Page 359

CERTIFICATE

State of Oregon

County of Multnomah

   I, Mary C. Soldati, Registered Professional Reporter, CSR No. 3406 and Notary Public in and for the State of Oregon, do hereby certify that LAURA ROBISON, was satisfactorily identified and was duly sworn by me, and that such deposition is a true record of the testimony given by the witness.

        I further certify that I am neither related to nor employed by any of the parties in or counsel to this action, nor am I financially interested in the outcome of this action.

        In witness whereof, I have hereunto set my hand this 20th day of August, 2018.


                    Mary C. Soldati, RPR


My commission expires:

October 5, 2018

Exhibit 13
Page 16 of 16