Stephen F. English, OSB No. 730843
SEnglish@perkinscoie.com
Thomas R. Johnson, OSB No. 010645
TRJohnson@perkinscoie.com
Alletta Brenner, OSB No. 142844
ABrenner@perkinscoie.com
Brian Samuelson, OSB No. 165476
BSamuelson@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Telephone:  503.727.2000
Facsimile:  503.727.2222

Matthew Gordon, *pro hac vice*
MGordon@perkinscoie.com
Nicholas Hesterberg, *pro hac vice*
NHesterberg@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone:  206.359.8000
Facsimile:  206.359.9000

*Attorneys for Plaintiff FamilyCare, Inc.*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| FAMILYCARE, INC., an Oregon non-profit corporation,<br><br>                    Plaintiff,<br><br>          v.<br><br>OREGON HEALTH AUTHORITY, an agency of the State of Oregon, PATRICK ALLEN, both individually and in his official capacity as director of the Oregon Health Authority, and LYNNE SAXTON,<br><br>                    Defendants. | No. 3:18-cv-00296-MO<br><br>DECLARATION OF WILLIAM MURRAY IN SUPPORT OF FAMILYCARE, INC.'S MOTION FOR PARTIAL RECONSIDERATION |

1-   DECLARATION OF WILLIAM MURRAY IN SUPPORT
     OF FAMILYCARE, INC.'S MOTION FOR PARTIAL
     RECONSIDERATION

I, William Murray, state as follows:

1.      I am the Chief Operating Officer of FamilyCare, Inc., ("FamilyCare"), plaintiff in the above-captioned case.  I have personal knowledge of the matters stated herein and am competent to testify thereto.

2.      In my role as FamilyCare's Chief Operating Officer, I am responsible for leading the day-to-day operations of the organization, including overseeing reporting and monitoring of the organizational performance, staying abreast of changes in the healthcare industry, and adjusting business operations as required.  I was also directly involved in preparing and submitting the specific financial and operational data and information that FamilyCare, as a Coordinated Care Organization (CCO), was required to submit to the Oregon Health Authority (OHA), including the data and information used by OHA and its outside actuary, Optumas, in the rate-setting process.  I was directly involved in communicating with OHA about those submissions and the rate-setting process in general.  I participated in nearly all meetings and exchanges of information with OHA that relate to this case.  I have reviewed and analyzed information received from OHA as part of the discovery in this case and have identified inconsistencies, discrepancies, misrepresentations, and errors in OHA's productions.

3.      Before joining FamilyCare in 2013, I was Chief Executive Officer with another Oregon Medicaid managed care organization for 10 years.  I have also been active in Oregon's administrative and legislative process in the healthcare field, including serving on the Oregon Health Policy Board's Health Incentives and Outcomes Committee that helped develop Oregon's CCO model that is in effect today.  I have over 30 years of leadership, business management, information systems, finance, and regulatory experience.  I began my career as a certified public accountant (CPA) with an international accounting firm and subsequently ran my own healthcare-focused CPA practice for seven years.

2-    DECLARATION OF WILLIAM MURRAY IN SUPPORT
      OF FAMILYCARE, INC.'S MOTION FOR PARTIAL
      RECONSIDERATION

4.      Based on this experience, I am familiar with the types of information that CCOs submit to OHA and the extent to which that information would be of competitive value to another CCO participating in Oregon's Medicaid Program.

5.      My inability to view the more than 19,000 documents marked "Attorneys Eyes Only" (AEO) is having a profound negative impact on FamilyCare's preparation for trial, including working with experts.  In particular, my inability to view details of how OHA/Optumas treated data from other CCOs is limiting FamilyCare's, its experts', and its counsel's ability to fully analyze all of the ways in which OHA treated FamilyCare unfairly and differently than other CCOs and to respond to OHA's assertions that its various policies and decisions were implemented in a neutral and unbiased manner.  My review of FamilyCare's data has revealed that OHA/Optumas used inconsistent data, made numerous errors and unsupported manipulations, and did not address the problems FamilyCare identified.  My inability to review how OHA/Optumas treated other CCOs' data—and what was communicated to other CCOs about that process—is significantly limiting my ability to analyze the extent to which OHA treated FamilyCare differently from other CCOs.

6.      In an effort to identify which of the more than 19,000 documents marked AEO are likely to be of the most use in trial preparations and in working with experts, I reviewed metadata from those documents.  Based on that metadata, I matched documents, to the best of my ability, to various categories of information set forth below.  For each category, I explain why the information is vital to FamilyCare's case and why it is not trade secret information. Attached hereto as Exhibit A is a list, by Bates Number, of the documents I identified.  Much of the information sought is data that has been aggregated to the point where it would not reveal the type of pricing information or contracting methodology that CCOs claim to be trade secret.  For example, cost data that is aggregated at the level of the Category of Aid (the categorization of Medicaid recipients by their eligibility category, e.g. blind and disabled or ACA 19-44) or

3-    DECLARATION OF WILLIAM MURRAY IN SUPPORT OF FAMILYCARE, INC.'S MOTION FOR PARTIAL RECONSIDERATION

Category of Service (the type of medical service provided, e.g., inpatient hospital or primary care physician) reveals only what a particular CCO spent, in total, for that category, and even when combined with the total number of events in the category, would reveal only the average expenditure per type of Medicaid recipient or type of service, not the amount paid to a particular provider.  The categories and explanations are as follows:

a.      *Documents containing information and/or discussion of raw and relative risk scores, and OHA communication with CCOs related to risk scores.*  This information is relevant to FamilyCare's claim that OHA treated it differently and portrayed it as an outlier, and to rebutting OHA's claims that FamilyCare overpaid primary care providers, that FamilyCare's business model was responsible for its "poor" financial performance, that FamilyCare's rates were lower because it had healthier members, and OHA's claims that payment rates to CCOs matched the risk of each CCO members.  This information will also assist FamilyCare in validating risk scores calculated by OHA.  De-designating this information will not inflict competitive harm on the other CCOs because risk scores are simply information about the morbidity of a CCO's members, which is not trade secret, and in any event are aggregated figures at the category of aid level.

b.      *Documents relating to the "rate of growth" calculations and the reimbursement policy, as well as OHA communications with CCOs relating to the rate of growth calculations and the reimbursement policy.*  This information is relevant to FamilyCare's argument that its spending was in line with other CCOs (meaning that FamilyCare was not an "outlier," as OHA argues), and that OHA's comparison of primary care spending improperly targeted FamilyCare by not comparing other components of cost.  This information is also relevant to OHA's claim that its "reimbursement policy" was implemented in a fair and unbiased manner across all CCOs.

4-  DECLARATION OF WILLIAM MURRAY IN SUPPORT
OF FAMILYCARE, INC.'S MOTION FOR PARTIAL
RECONSIDERATION

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

This information will not inflict competitive harm on the other CCOs because the rate of growth was calculated based on aggregated expenditures.

c.    *CCO triangulation-related documents and discussions.*  This information is necessary for FamilyCare to reconcile regional data totals to individual CCO data totals, the tie-out of individual CCO data to CCO financial submissions to OHA and each CCO's audited financial statements, as well as to confirm that appropriate base data was used for the rate development process across all CCOs.  This information is not trade secret because all amounts in triangulation are aggregate amounts.  The Court previously ordered that the portions of HealthShare's triangulation-related documents prepared by Optumas should be down-designated.

d.    *Optumas rate development documents shared among the CCOs in other regions, but not shared with FamilyCare.*  FamilyCare needs this information to explore OHA's assertion that the rate development process was unbiased and consistent across all regions and all CCOs.  This data is not trade secret and was shared among all CCOs in a region (just not outside that region), where the CCOs are the most competitive.

e.    *Unmasked Regional rate model for all regions.*  This information will allow FamilyCare to explore OHA's assertion that the rate development process was unbiased and consistent across all CCOs in all regions.  This document is not classified as AEO pursuant to this Court's ruling that this document should be made available to FamilyCare.

f.    *Documents containing information, comparison and/or discussion of FamilyCare's and/or other CCOs' financial and/or operational performance.*  This information is relevant to the accuracy of OHA's communications with others about FamilyCare, including OHA's claims that it treated FamilyCare the same, that FamilyCare was a financial and operational outlier, that FamilyCare overpaid primary

5-    DECLARATION OF WILLIAM MURRAY IN SUPPORT
OF FAMILYCARE, INC.'S MOTION FOR PARTIAL
RECONSIDERATION

care providers, that FamilyCare's business model was responsible for its "poor" financial performance and that FamilyCare's rates were lower because it had healthier members.

7.      FamilyCare also seeks to access quarterly and annual financial submissions (Schedule Ls) submitted by the CCOs, as well as communications with CCOs related to these submissions, with specific exclusion of any portion of any submissions that contain "trade secret" information.  This documentation will show FamilyCare's spending was reasonable compared to other CCOs, and that the data OHA chose to highlight regarding FamilyCare's spending, financial position, and operational performance was misleading.  Moreover, any trade secret data contained in the financial submissions will be redacted, therefore no competitive harm will be inflicted on the other CCOs.

8.      My interpretation and knowledge of these documents is critical to assist FamilyCare's experts in preparation for trial due to my knowledge of the CCOs' varying business models and structures and my historical knowledge of the interactions among OHA and the CCOs.  That knowledge provides the context for understanding the information and how OHA's actions or inactions may have impacted the inputs into rate-setting and the financial information used to portray FamilyCare as an outlier.  FamilyCare's experts and counsel do not have that knowledge, and the AEO designations prohibit them from showing me or asking me about the data or financial information of other CCOs.  Without access to these documents, it is extremely difficult for me to assist FamilyCare's experts or counsel in assessing the consistency or inconsistency of FamilyCare's treatment compared to that of other CCOs.  Further, my colleague Art Suchorzewski has been involved in reviewing documents produced in this litigation and his assistance in reviewing these AEO documents will significantly aid me in reviewing these documents in a timely fashion.

9.      At FamilyCare, I am bound by a confidentiality agreement I signed upon my employment that states "I shall hold confidential all information regarding the company and

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

business to which I have access" and "any breach of this confidentiality agreement on my part shall result in immediate termination of my employment" and "may result in legal action." Furthermore, I have held a CPA license from the State of Oregon since 1985 (license number 5244, expires 6/30/2020, inactive status) and am bound by the Code of Professional Conduct that contains confidentiality provisions. I have complied with these obligations and will continue to do so, as I have done throughout my career.

10.     Furthermore, I have had access to or been provided with sensitive and confidential information during my professional career lasting over 35 years. I have protected this sensitive and confidential information from any inappropriate disclosure or misuse at all times. If allowed to view AEO-designated documents in this matter, I will abide by the restrictions in the Protective Orders entered in this case, including the prohibition on using the information for any purpose other than litigation.

11.     I have reviewed Health Share's opposition to FamilyCare's Motion to Permit Access to AEO Documents filed with the Court on October 2, 2018 (ECF 269, "Motion"). The Motion incorrectly states that "FamilyCare intends to reenter the Medicaid market as soon as possible. FamilyCare's entry will start in a few months." ECF 269 at 4. FamilyCare has asked the Court, as part of this litigation, to prevent OHA from taking any action, directly or indirectly, that would prohibit FamilyCare from seeking a future Medicaid contract. However, although FamilyCare wishes to reenter the Medicaid market in Oregon at some point, it has not made any decision about if or when it would do so. In any event, FamilyCare's entry could not "start in a few months," as FamilyCare currently employs only 15 individuals out of the more than 325 individuals it needed to operate a Medicaid contract, has no contracts with medical, dental or behavioral health providers, and has terminated numerous key administrative and technology-related service agreements.

7-  DECLARATION OF WILLIAM MURRAY IN SUPPORT
    OF FAMILYCARE, INC.'S MOTION FOR PARTIAL
    RECONSIDERATION

12.     According to OHA, the upcoming CCO 2.0 procurement will be through a Request for Application rather than a Request for Proposal.  Attached hereto as Exhibit B is a true and correct excerpt from the Oregon Health Policy Board's recommendations for the CCO 2.0 procurement, which references, at pages 12 and 45, the Request for Applications.

13.     Attached hereto as Exhibit C is a true and correct copy of a document produced by OHA in discovery in this matter explaining that the Request for Application process is not a competitive process:  "With an RFA, generally every qualified applicant is awarded a contract, without a competitive comparison between applicants.  As a result, no competitive comparison of costs or prospective rates between applicants is performed during the RFA."

14.     In setting Medicaid capitation rates for 2015-2019 rate-years, OHA and Optumas have used the single most recent complete year of encounter data from the CCOs as the base data, which is two years behind the rate year.  For example, OHA and Optumas set the 2019 rates in 2018 using CY2017 CCO encounter data.  Attached hereto as Exhibit D is a true and correct excerpt from the 2019 rate certification explaining the base data used for 2019 rate-setting, which I obtained from the OHA website at: https://www.oregon.gov/oha/HPA/ANALYTICS/OHPRates/2019-Aggregate-CCO-Rate-Certification.pdf.  Under that methodology, 2020 rates would be set using CY2018 CCO encounter data.  To my knowledge, OHA has not communicated any intention to change that methodology.

15.     Medicaid capitation rate-setting in Oregon is not a competitive process, and CCOs do not submit competing rates or competing bids based on rates.  I have specific knowledge of Medicaid capitation rate-setting in Oregon from 2001 to current.  During this entire period of time, OHA (with the assistance of its internal or external actuary) has unilaterally set Oregon's Medicaid capitation rates for the CCOs.  To my knowledge, OHA has not communicated any

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

intention to change rate-setting to a competitive process.  In fact, OHA stated that under CCO

2.0 that "rates will be developed for successful applicants."  *See* Exhibit C.

*I hereby declare that the above statement is true to the best of my knowledge and belief,*
*and that I understand it is made for use as evidence in court and is subject to penalty for perjury.*

DATED: October 15, 2018              */s/ William H. Murray*
                                      William H. Murray

9-    DECLARATION OF WILLIAM MURRAY IN SUPPORT         **Perkins Coie LLP**
      OF FAMILYCARE, INC.'S MOTION FOR PARTIAL      1120 N.W. Couch Street, 10th Floor
      RECONSIDERATION                                 Portland, OR  97209-4128
                                                      Phone:  503.727.2000
                                                        Fax:  503.727.2222