UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

|  |  |  |
|---|---|---|
| FAMILYCARE, INC., an Oregon non-profit corporation, | ) ) ) |  |
| Plaintiff, | ) ) ) | No. |
| vs. | ) ) | 6:18-cv-00296-MO |
| OREGON HEALTH AUTHORITY, an agency of the State of Oregon, and PATRICK ALLEN, both individually and in his official capacity as director of the Oregon Health Authority, and LYNNE SAXTON, | ) ) ) ) ) ) ) ) |  |
| Defendants. | ) ) ) |  |

VIDEOTAPED DEPOSITION OF

LYNNE SAXTON

Taken in behalf of Plaintiff

*   *   *

August 1, 2018

1211 S.W. Fifth Avenue, Suite 3000

Portland, Oregon 97204

Teresa L. Dunn,

Court Reporter

CSR, CCR, RPR

**Mersereau Declaration - Exhibit 1**
**Page 1 of 5**

Lynne Saxton, 8/1/2018                              FamilyCare, Inc. v. Oregon Health Authority, et al.

184

didn't say it said that.

Q.    (By Mr. English) Show me where you intended to convey that by the language?

A.    I am communicating that this is not our product by saying first that it is a good start, that there are new developments, and we will convene a conversation.

Q.    Okay.  How was it shelved?

A.    Pardon me?

Q.    How was it shelved?

A.    I communicated with BethAnne Darby and we agreed it would be shelved and not used and not worked on or developed further.

We simply did not have the right approach.

Q.    Did you communicate that you were shelving the plan in writing or text message?

A.    Verbally.

Q.    So the answer is not in writing or text message, but just verbally?

A.    Yes.

Q.    Okay.  And when did you communicate that you were withdrawing the plan?

A.    It was within that week or the following week.  I had other priorities, but I would have

Lynne Saxton, 8/1/2018                          FamilyCare, Inc. v. Oregon Health Authority, et al.

185

to -- I don't know the date of our conversation.

Q.    How did you intend to convey to your staff working under you that the Communications Plan that they had had you review exceeded the boundaries of a State agency's responsibility to the public trust by referencing that it was -- that you could build on the already good start you have outlined?

A.    In my experience working with state employees I have found that it is very helpful to start with saying something positive so that criticism can then be absorbed.

It is -- and so I -- when I read it I knew immediately this was not what I wanted, it is not what I could support, and I thought, okay, what can I say so that we can have this conversation.

And my decision was to say it is a good start and let's set up a time to talk about it. And in my experience when you are discussing a project that is going to be terminated, that does not meet the grade, that is coming in some time after it was requested, it's best to deliver those messages directly to the person and to develop their professional understanding

Lynne Saxton, 8/1/2018                    FamilyCare, Inc. v. Oregon Health Authority, et al.

186

of what the executive is seeking.

Q.    So when you had this -- was it a face-to-face meeting with BethAnne Darby?

A.    My recollection is that it was.

Q.    Okay.  Did you tell her that despite what it sounded like this plan is one that exceeds the boundaries of OHA's responsibility to the public trust?

A.    I did not use those words, but we discussed that it missed the mark.

Q.    Did you in any manner convey to her that this was offensive to you, this draft plan?

A.    I may have phrased it in different words.  I didn't say this is offensive to me.  I more appropriately said this is just not even close, we're not getting close, we are not going to get there, and we're just going to shelve it.

Q.    You would agree that exceeding the boundaries of a state agency's responsibility to the public trust is a serious matter, wouldn't you?

A.    Yes.

Q.    Did you not feel it necessary to tell her directly that this plan did that?

A.    I believe she understood that after we

Lynne Saxton, 8/1/2018                                    FamilyCare, Inc. v. Oregon Health Authority, et al.

209

C E R T I F I C A T E

I, Teresa L. Dunn, a Certified Shorthand Reporter for Oregon, do hereby certify that, pursuant to stipulation of counsel for the respective parties hereinbefore set forth, LYNNE SAXTON personally appeared before me at the time and place set forth in the caption hereof; that at said time and place I reported in Stenotype all testimony adduced and other oral proceedings had in the foregoing matter; that thereafter my notes were reduced to typewriting under my direction; and that the foregoing transcript, pages 1 to 210, both inclusive, constitutes a full, true and accurate record of all such testimony adduced and oral proceedings had, and of the whole thereof.

Witness my hand and CSR stamp at Vancouver, Washington, this 15th day of August, 2018.

_____
TERESA L. DUNN
Certified Shorthand Reporter
Certificate No. 00-0367
Commission Expires:  6/30/20

**Mersereau Declaration - Exhibit 1**
**Page 5 of 5**