Eric A. Lindenauer, OSB #833721
E-Mail: elindenauer@gsblaw.com
Matthew J. Yium, OSB #054377
E-Mail: myium@gsblaw.com
Garvey Schubert Barer, P.C.
Eleventh Floor
121 SW Morrison Street
Portland, Oregon 97204-3141
Telephone: (503) 228-3939
Facsimile: (503) 226-0259

Attorneys for Intervenor
PacificSource Community Solutions

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| FAMILYCARE, INC., an Oregon non-profit corporation,<br>　　　　　　Plaintiff,<br><br>　　v.<br><br>OREGON HEALTH AUTHORITY, an agency of the State of Oregon, and PATRICK ALLEN, both individually and in his official capacity as director of the Oregon Health Authority, and LYNNE SAXTON,<br><br>　　　　　　Defendants. | Case No. 6:18-cv-00296-MO<br><br>DECLARATION OF JULIE FARROW IN OPPOSITION TO FAMILYCARE'S MOTION FOR PARTIAL RECONSIDERATION OF ORDER DENYING MOTION TO PERMIT ACCESS TO AEO DOCUMENTS |

I, Julie Farrow, declare as follows:

1.　I am the Actuarial Manager, Government Pricing for PacificSource. In that capacity, I am responsible for various financial matters relating to PacificSource Medicare Advantage and Medicaid (Oregon Health Plan) lines of business. I am over the age of 18 years,

DECLARATION OF JULIE FARROW IN OPPOSITION TO FAMILYCARE'S MOTION FOR PARTIAL RECONSIDERATION OF ORDER DENYING MOTION TO PERMIT ACCESS TO AEO DOCUMENTS

competent to make this declaration, and do so on the basis of my personal knowledge of the facts set forth herein, except when noted to the contrary.

2.    I have submitted two prior declarations in this case signed on March 29, 2018, [Dkt. 42] and September 28, 2018, [Dkt. 277], respectively.  The statements within those declarations remain accurate.

3.    I have reviewed the declaration of William Murray, including paragraph 6, wherein he lists "categories" of documents to which he seeks access and contends they either do not contain trade secret information and/or would not subject CCOs to potential competitive disadvantage should he be provided access.  Without identification of the specific documents FamilyCare and Mr. Murray would deem included in each "category", it is impossible to address with specificity Mr. Murray's contentions.  The general nature of these descriptions leaves Mr. Murray or FamilyCare with large discretion to deem documents in or out of particular categories.  The following are concerns with the six categories as identified by Mr. Murray in paragraph 6 of his declaration as best they can be addressed based on the very general category descriptions.

      a.    ***Documents containing information and/or discussion of raw and relative risk scores, and OHA communication with CCOs related to risk scores.***

While aggregate risk scores in isolation are not trade secret, documents containing discussions of risk scores may well contain trade secret information.  Without identification of the specific documents and communications to which Mr. Murray seeks access, it is impossible to determine what trade secret information they may contain, but it is quite possible trade secret information would be included.  In addition, aggregate risk scores could give FamilyCare a competitive advantage in the CCO 2.0 contracting process by providing information which

would inform FamilyCare as to how to approach a proposal to enter a geographic region currently served by a different CCO.

        **b.**     ***Documents relating to the "rate of growth" calculations and the reimbursement policy, as well as OHA communications with CCOs relating to the rate of growth calculations and the reimbursement policy.***

Rate of growth calculations and information beyond what is publicly available is trade secret and would provide FamilyCare with information on CCO business models and give FamilyCare a competitive advantage in CCO 2.0.

        **c.**     ***CCO triangulation-related documents and discussions.***

While triangulation amounts are aggregate, documents in this category reveal trade secret information on how CCOs pay providers, including, for example, whether they are capitated as opposed to paid fee-for-service.

        **d.**     ***Optumas rate development documents shared among CCOs in other regions, but not shared with FamilyCare.***

Without identification of specific documents, it is difficult to know what trade secret information they may contain. There are regional rate models which OHA shares only with CCOs operating within a region and not with CCOs outside that region. Broader access would give FamilyCare an advantage in CCO 2.0.

        **e.**     ***Unmasked regional rate model for all regions.***

The unmasked regional rate models contain trade secret information. Although they contain aggregate data, it is possible to extrapolate provider reimbursement rates from the data. And in some geographic areas there may be only one provider of a particular type so that the aggregate information would reveal a specific provider rate even without extrapolation.

DECLARATION OF JULIE FARROW IN OPPOSITION TO FAMILYCARE'S MOTION FOR PARTIAL RECONSIDERATION OF ORDER DENYING MOTION TO PERMIT ACCESS TO AEO DOCUMENTS

Page 3 of 4

**f.**    *Documents containing information, comparison and/or discussion of FamilyCare's and/or other CCOs' financial and/or operational performance.*

This description is so general that it is impossible to determine what FamilyCare would deem within this category. As described, it may well contain trade secret information.

4.    With respect to Exhibit L, my Declaration signed March 29, 2018, [Dkt. 42] explains what specific portions of Exhibit L are trade secret and confidential. Mr. Murray contends trade secret information will be redacted from what he sees but without a specific explanation of what information will be redacted, it is impossible to determine what information Mr. Murray may be provided that is trade secret.

5.    Mr. Murray's contention CCO 2.0 will not be competitive because it will be a request for application process is incorrect. The "qualification" criteria set forth in the forthcoming request will likely create metrics that must be met to qualify and will create potential competition between CCOs to meet those metrics. The information sought by Mr. Murray would likely assist FamilyCare in efforts to enter new regions and disadvantage other CCOs seeking to service those regions. Attached as Exhibit A is a timeline provided by OHA regarding the CCO 2.0 process. The description of the process demonstrates that CCOs may be evaluated based on criteria to be developed and that not all participating CCOs will be deemed qualified for contracts.

**I declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge.**

Executed this 25ᵗʰ day of October, 2018.

Julie Farrow

GSB:9737203.1

DECLARATION OF JULIE FARROW IN OPPOSITION TO FAMILYCARE'S MOTION FOR PARTIAL RECONSIDERATION OF ORDER DENYING MOTION TO PERMIT ACCESS TO AEO DOCUMENTS

Case 6:18-cv-00296-MO    Document 319    Filed 10/29/18    Page 5 of 5

# CCO 2.0 RFA Timeline



**CCOs will be selected through a Request for Application (RFA) process**

Only current CCOs and companies with an existing Oregon "footprint" can apply. New applicants can apply for designated regions. Returning applicants can apply for designated regions or their current footprint.

- ➢ October 2018: RFA development begins. OHA will amend rules, develop rates, and hold pre-RFA release conferences
- ➢ January 2019: RFA released
- ➢ February 2019: Letters of intent due
- ➢ April to June 2019: Evaluation, CCO selection, and negotiations
- ➢ June 2019: Award CCO contracts
- ➢ September to December 2019: Readiness review
- ➢ January 2020: New CCO contracts implemented

