**David B. Markowitz, OSB #742046**
DavidMarkowitz@MarkowitzHerbold.com
**Matthew A. Levin, OSB #003054**
MattLevin@MarkowitzHerbold.com
**Renée E. Rothauge, OSB #903712**
ReneeRothauge@Markowitzherbold.com
**Harry B. Wilson, OSB #077214**
HarryWilson@MarkowitzHerbold.com
**Laura Salerno Owens, OSB #076230**
LauraSalerno@MarkowitzHerbold.com
MARKOWITZ HERBOLD PC
1211 SW Fifth Avenue, Suite 3000
Portland, OR  97204-3730
Tele: (503) 295-3085
Fax:  (503) 323-9105

> Special Assistant Attorneys General for Defendants Oregon
> Health Authority, an agency of the State of Oregon, and
> Patrick Allen in his official capacity as director of the
> Oregon Health Authority
> [Additional Counsel of Record Listed on Signature Page]

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| FAMILYCARE, INC., an Oregon non-profit corporation,<br><br>                     Plaintiff,<br><br>      v.<br><br>OREGON HEALTH AUTHORITY, an agency of the State of Oregon, and PATRICK ALLEN, both individually and in his official capacity as director of the Oregon Health Authority, and LYNNE MS. SAXTON,<br><br>                    Defendants. | Case No. 6:18-cv-00296-MO<br><br>**DEFENDANTS OREGON HEALTH AUTHORITY AND PATRICK ALLEN'S OPPOSITION TO FAMILYCARE, INC.'S MOTION FOR SANCTIONS** |

**DEFENDANTS OREGON HEALTH AUTHORITY AND PATRICK ALLEN'S OPPOSITION TO FAMILYCARE, INC.'S MOTION FOR SANCTIONS**

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................... 1

FACTUAL BACKGROUND .................................................................................................. 1

I.      OHA sent out litigation-hold notices once it anticipated litigation with
        FamilyCare.................................................................................................................... 1

II.     OHA collected over 4 million documents and produced over 1.3 million pages
        of documents, including over 4,800 text messages......................................................... 2

III.    When OHA discovered that not all of Ms. Saxton's text messages could be
        recovered, it promptly looked into the unrecoverable texts and provided
        metadata for the unrecoverable texts to FamilyCare. ..................................................... 3

IV.     Ms. Saxton believed that texts on her phone were backed up elsewhere. ......................... 3

V.      Most of Ms. Saxton's unrecoverable text messages are not related to the
        litigation, narrowing the number of potentially relevant unrecovered texts to
        14................................................................................................................................... 4

VI.     FamilyCare did not reveal that Heatherington has multiple missing text
        messages until two months after the close of discovery and 45 minutes before
        filing this motion for sanctions. ................................................................................... 5

LEGAL STANDARD.............................................................................................................. 6

ARGUMENT ........................................................................................................................... 7

I.      No evidence suggests, much less demonstrates, that Ms. Saxton removed text
        messages from her phone with the intent to deprive FamilyCare of evidence. .................. 7

        A.      To prove that OHA intended to deprive FamilyCare of evidence,
                FamilyCare must demonstrate conduct more severe than negligence or
                even gross negligence. ...................................................................................... 7

        B.      FamilyCare has not proven that OHA had an intent to deprive
                FamilyCare of the unrecoverable text messages................................................ 9

        C.      FamilyCare's remaining arguments about state policy and discovery
                disputes are irrelevant. ..................................................................................... 9

II.     FamilyCare suffers no prejudice from OHA's inability to recover the content
        of a small number of potentially responsive texts, particularly considering an
        otherwise extraordinary volume of discovery and deposition testimony. ........................ 10

        A.      FamilyCare suffers no prejudice from the unrecoverable text messages,
                especially considering the small number of unrecoverable texts and the
                low likelihood that any of their content is relevant............................................ 10

        B.      FamilyCare cannot demonstrate prejudice from the metadata of the
                unrecoverable texts. ........................................................................................ 12

1.     The unrecoverable texts' metadata does not demonstrate that FamilyCare was unable to obtain evidence related to the draft communication plan. ................................................................... 12

2.     FamilyCare is not prejudiced by two unrecoverable text messages to legislators. ................................................................. 13

C.     Unlike OHA, FamilyCare did not suffer the prejudice of being unable to conduct discovery regarding the unrecoverable text messages. ....................... 14

III.     If this Court concludes that sanctions are appropriate, the sanctions imposed should apply equally to OHA and FamilyCare. .................................................. 14

CONCLUSION ....................................................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**                                                                              Page

*Alabama Aircraft Industries, Inc. v. Boeing Company*
  319 F.R.D. 730 (N.D. Ala. 2017).............................................................................. 8

*DVComm, LLC v. Hotwire Commc'ns*, LLC
  2016 WL 6246824 (E.D. Pa. Feb. 3, 2016) .......................................................... 8

*Global Material Tech., Inc. v. Dazheng Metal Fibre Co.*
  2016 WL 4765689 (N.D. Ill. Sept. 13, 2016) ....................................................... 8

*Living Color Enterprises, Inc. v. New Era Aquaculture, LTD*
  2016 WL 1105297 (S.D. Fla. Mar. 22, 2016)............................................. 7, 8, 9, 11

*Lokai Holdings LLC v. Twin Tiger USA LLC*
  2018 WL 1512055 (S.D.N.Y. Mar. 12, 2018) ........................................... 10, 11

*OmniGen Research v. Yongqiang Wang*, 321 F.R.D. 367, 372 (D. Or. 2017),
  *appeal dismissed sub nom*, *OmniGen Research, LLC v. Yongqiang Wang*,
  2017 WL 6507124 (9th Cir. Oct. 5, 2017).............................................................. 7

*Oppenheimer v. City of La Habra*
  2017 WL 1807596 (D. Ca. 2017) ........................................................................ 7

*Orchestratehr, Inc. v. Trombetta*
  178 F. Supp. 3d 476 (N.D. Tex. 2016) ................................................................ 8

*TLS Mgmt. & Mktg. Servs. LLC v. Rodriguez-Toledo*
  2017 WL 1155743 (D.P.R. Mar. 27, 2017) ................................................... 10, 13

**Statutes and Other Authorities**

Fed. R. Civ. P. 37(e) ...................................................................................... *passim*

## INTRODUCTION

Oregon Health Authority ("OHA") has produced over 1.3 million pages of documents (including over 4,800 text messages).  Nonetheless, FamilyCare, Inc. moves for sanctions—up to and including exclusion of evidence directly relevant to OHA's defenses—because OHA has been unable to produce the content of 78 text messages (only 14 of which are even potentially relevant) of former OHA Director Lynne Saxton.  Yet FamilyCare also has been unable to produce all of its potentially relevant text messages.  Minutes before filing this motion, FamilyCare disclosed to OHA that it cannot produce at least nine of CEO Jeff Heatherington's potentially responsive text messages.

Both parties, then, failed to perfectly preserve all potentially relevant electronically stored evidence ("ESI").  But perfection is not the standard by which a Rule 37(e) motion is judged.  The rule expressly recognizes that "[d]ue to the ever-increasing volume of electronically stored information and the multitude of devices that generate such information, perfection in preserving all relevant electronically stored information is often impossible."  Fed. R. Civ. P. 37(e) Advisory Committee's Note to 2015 Amendment.

This case reflects that animating principle—both parties fell short of perfection.  But the small number of unrecoverable text messages creates no prejudice to FamilyCare, any more than FamilyCare's unrecoverable text messages prejudice OHA.  Furthermore, FamilyCare has no evidence of an intent to deprive it of information, nor does it have any evidence of a conspiracy reflected in a small number of unrecoverable text messages that is otherwise absent in a huge volume of discovery.  This Court should therefore deny FamilyCare's motion for sanctions.  Alternatively, if this Court determines that sanctions are warranted, OHA should be entitled to parallel sanctions against FamilyCare.

## FACTUAL BACKGROUND

### I.    OHA sent out litigation-hold notices once it anticipated litigation with FamilyCare.

OHA's preservation obligation started in December 2016.  On December 16, 2016, FamilyCare's counsel emailed the Oregon Department of Justice ("DOJ") that FamilyCare was

"heading toward the filing of a lawsuit very soon, but would like a chance to chat with you first." (Declaration of Laura Salerno Owens in Support of Defendants Oregon Heath Authority and Patrick Allen's Opposition to FamilyCare, Inc.'s Motion for Sanctions ("Salerno Owens Decl.") Ex. 1.)  Accordingly, on December 21, 2016, OHA sent a litigation-hold notice.[1]  (FamilyCare, Inc's Motion for Sanctions ("Sanctions Mot.") (Dkt. 257); Declaration of Amanda Beane in Support of FamilyCare Inc's Motion for Sanctions ("Beane Decl.") (Dkt. 258) Ex. 3.; Salerno Owens Decl. Ex. 2 at 157:13-21, Ex.s 3, 4).  OHA continued its preservation efforts by sending a series of litigation-hold reminders over the following year.  (Salerno Owens Decl. Ex.s 5, 6, 7.)

**II.    OHA collected over 4 million documents and produced over 1.3 million pages of documents, including over 4,800 text messages.**

OHA collected millions of documents from over 70 custodians.  (Declaration of Greg Scott in Support of Defendants Oregon Heath Authority and Patrick Allen's Opposition to FamilyCare, Inc.'s Motion for Sanctions ("Scott Decl.") ¶ 3.)  OHA collected and produced hard-copy documents including contracts, rate certification and rate-setting documents and spreadsheets, financial records, memos, correspondence, legislative reports, and policies, as well as electronic documents, including Word and PDF documents, Excel spreadsheets, PowerPoints, calendars, instant messages, emails, and text messages.  (*Id.* ¶ 4.)

In total, OHA provided 64 separate productions to FamilyCare, totaling 241,650 individual documents (over 1.3 million pages).  (*Id.* ¶ 5.)  In addition, OHA collected mobile devices from 26 custodians and produced 4,841 text messages.  (*Id.* ¶ 6.)  FamilyCare deposed 18 witnesses for over 125 hours, and marked 333 deposition exhibits.  (*Id.* ¶ 8.)

///

///

---

[1] December 21, 2016 is the relevant date by which to measure OHA's preservation obligation.  FamilyCare maintains that the pertinent date is early October 2016, based on an October 6 email from Ms. Saxton.  But for OHA to reasonably expect that FamilyCare would sue over the 2017 rates before those 2017 rates were released to the CCOs would hold OHA to an impossible—indeed, prescient—standard. *See also* Saxton Decl. ¶ 16.  Moreover, although FamilyCare relies on an October 2016 public records request, FamilyCare fails to cite authority or facts explaining why a public records request would put OHA on notice that FamilyCare was likely to initiate litigation.

**Page 2 -    DEFENDANTS OREGON HEALTH AUTHORITY AND PATRICK ALLEN'S OPPOSITION TO FAMILYCARE, INC.'S MOTION FOR SANCTIONS**

**III.    When OHA discovered that not all of Ms. Saxton's text messages could be recovered, it promptly looked into the unrecoverable texts and provided metadata for the unrecoverable texts to FamilyCare.**

Despite OHA's ESI preservation efforts, in the process of collecting text messages from Ms. Saxton's work phone, OHA was unable to recover all contents of her text messages.  (Beane Decl. Ex. 9.)  Although information such as the texts' date, time, sender, and recipient(s) could be recovered from the phone's metadata, the content of the text messages was not recoverable. (Beane Decl. Ex. 13.)

OHA's counsel alerted FamilyCare nearly six months ago, and over three months before FamilyCare took Ms. Saxton's deposition, that some of Ms. Saxton's text messages were unrecoverable.  (Beane Decl. Ex. 9.)  Shortly thereafter, OHA provided FamilyCare with the metadata for Ms. Saxton's unrecoverable texts.  (Beane Decl. Ex.s 13, 14.)

**IV.    Ms. Saxton believed that texts on her phone were backed up elsewhere.**

OHA does not dispute that Ms. Saxton removed text messages from the queue displayed on her phone's screen.  The relevant inquiry is why she did so.  Ms. Saxton did not intend to deprive FamilyCare of evidence when she removed text messages from her screen. Ms. Saxton readily admitted that she had a daily practice of clearing text messages from her phone screen.  (Salerno Owens Decl. Ex. 8 at 66:1-5; Declaration of Lynne Saxton in Support of Defendants Oregon Heath Authority and Patrick Allen's Opposition to FamilyCare, Inc.'s Motion for Sanctions ("Saxton Decl.") ¶ 4).  That daily practice was consistent throughout her tenure as Director of OHA: FamilyCare's initiation of this litigation did not affect her practice. (Saxton Decl. ¶ 7; Salerno Owens Decl. Ex. 8 at 65:18-21.)  Ms. Saxton did not selectively delete some text messages and not others: she cleared her phone screen regularly, without regard to content.  (*See id.*, ¶ 4.)  She did not direct any other OHA custodian to delete their text messages.  (*Id.*, ¶ 8.)

Ms. Saxton relied on email, phone, and in-person conversations, and was an infrequent user of text messaging.  (Saxton Decl. ¶ 5.)  When she did use texts, she did so primarily for "business logistics," such as notifying colleagues that she was running late for a meeting.  (*Id*;

**Page 3 -    DEFENDANTS OREGON HEALTH AUTHORITY AND PATRICK ALLEN'S OPPOSITION TO FAMILYCARE, INC.'S MOTION FOR SANCTIONS**

Salerno Owens Decl. Ex. 8 at 72:8-12, 83:10-15.)  And she believed, based on her understanding of how OHA handles email and other data, that everything—emails, text messages, documents, etc.—was being backed-up.  (Saxton Decl. ¶ 2, 3; Salerno Owens Decl. Ex. 8 at 75:9-14.)  As with emails, Ms. Saxton did not believe that removing a message from her screen caused a permanent deletion of that item.  (Saxton Decl. ¶ 3-4; Salerno Owens Decl. Ex. 8 at 63:22-64:4, 66:9-13.)  She was correct about that point with respect to emails, and FamilyCare has the benefit of those emails because OHA produced them.

OHA's 30(b)(6) corporate representative confirmed Ms. Saxton's understanding and practice.  Based on conversations with forensic examiners and other technological support professionals about Ms. Saxton's text messages, OHA learned that Ms. Saxton understood that her text messages were "available from a backup source, and with that understanding, she deleted the copies that were on her phone[.]"  (Salerno Owens Decl. Ex. 2 at 170:13-18; 169:14-19.)  At no point did OHA obtain any information that suggested that Ms. Saxton deleted a text message "with the intention of hiding it or making it unavailable."  (*Id*. at 172:18-23.)

## V.  Most of Ms. Saxton's unrecoverable text messages are not related to the litigation, narrowing the number of potentially relevant unrecovered texts to 14.

Ms. Saxton and OHA put in significant time and effort to ascertain the contents of the unrecoverable text messages.  Ms. Saxton reviewed the metadata of the 85 texts for which content could not be recovered.  (Saxton Decl. ¶ 9.)  She compared that available metadata (the date, time, and recipient of each text) with her emails and work calendar, as well as the calendar of Robb Cowie, OHA Communications Director.  (Saxton Decl. ¶ 10-11.)  For each text message, Ms. Saxton analyzed the likelihood that the message could have been related to the claims in this litigation.  (Saxton Decl. ¶ 12.)  Ms. Saxton used a conservative methodology:  if she could not definitively say that a message was "not related to the claims" or "highly unlikely to be related to claims," she categorized the message as "unknown."  (Saxton Decl. ¶ 14.)  OHA produced Ms. Saxton and Mr. Cowie's calendars that Ms. Saxton used to determine the relevance of her unrecovered text messages, as well as Ms. Saxton's calendar notes written contemporaneously with her review.  (Saxton Decl. ¶ 10; Scott Decl. ¶ 10-11.)

**Page 4 -  DEFENDANTS OREGON HEALTH AUTHORITY AND PATRICK ALLEN'S OPPOSITION TO FAMILYCARE, INC.'S MOTION FOR SANCTIONS**

All told, of the 85 text messages, Ms. Saxton deemed 46 unrecoverable texts "highly unlikely related" to the claims, and she concluded that 20 texts were definitively "unrelated" to the claims.  (Saxton Decl. ¶ 14; Beane Decl. Ex. 16 at 8-19.)   Additionally, OHA discovered that 5 of the 85 texts had been produced (Scott Decl. ¶ 12.), one additional text was found to be non-responsive (Beane Decl. Ex. 14 at 2), and FamilyCare obtained an additional text via a public records request (Sanctions Mot. at 16 and n.16; Beane Decl. ¶ 45), narrowing the number of unrecoverable texts to 78 text messages.  (Sanctions Mot. at 6 and n.4.)  Further, 19 text messages predated the litigation hold.  (*See* Beane Decl. Ex. 16 at 8-9, 15, 19.)  Thus, only 59 unrecoverable texts are at issue, and of those 59, only 14 are potentially responsive.  (Saxton Decl. ¶ 15; Beane Decl. Ex. 20.)

Once OHA disclosed to FamilyCare the fact of Ms. Saxton's unrecoverable texts in April 2018, FamilyCare fully availed itself of the opportunity to conduct discovery on that topic, including requests for production, requests for admissions, and interrogatories to OHA and Ms. Saxton.  (Beane Decl. Ex.s 15, 16, 17; Saxton Decl. Ex. 1.)

FamilyCare also deposed Ms. Saxton, and extensively questioned her about her use of text messages.  Notwithstanding the fact that OHA had disclosed the unrecoverable texts far in advance of the deposition, FamilyCare chose not to ask Ms. Saxton any questions about the metadata for her unrecovered texts, her calendar review of the texts, how she categorized the likely relevance of the individual text messages, her memory of the substance of individual texts, or how she determined the context of the messages based upon the metadata.  (Salerno Owens Decl. Ex. 8. at 73:19-74:4.)  Nor did FamilyCare subpoena or depose any third-party witnesses about whether they were involved in the so-called "smear campaign" that FamilyCare has alleged.

VI.    **FamilyCare did not reveal that Heatherington has multiple missing text messages until two months after the close of discovery and 45 minutes before filing this motion for sanctions.**

OHA repeatedly sought Jeff Heatherington's text messages in discovery, and even filed a motion to compel.  (Dkt. 189.)  FamilyCare successfully rebuffed the requests after repeatedly

**Page 5 -    DEFENDANTS OREGON HEALTH AUTHORITY AND PATRICK ALLEN'S
            OPPOSITION TO FAMILYCARE, INC.'S MOTION FOR SANCTIONS**

assuring OHA and this Court that, with the exception of a single text, it had produced all of Heatherington's responsive texts.[2] (Salerno Owens Decl. Ex. 9; (Dkt. 204 at p. 2) ("FamilyCare, however, is not withholding responsive communications. They simply do not exist."); *see also id.* at p. 1 ("FamilyCare has produced all responsive text messages[.]").)

Yet just 45 minutes before filing this motion for sanctions, FamilyCare revealed to OHA that it had discovered nine potentially relevant text messages were unrecoverable from Heatherington's cell phone, for a total of 10 text messages that he could not recover. (Salerno Owens Decl. Ex. 10(a), (b).) FamilyCare's revelation came two months after the close of discovery (July 31, 2018), thereby depriving OHA of the ability to depose Heatherington, issue interrogatories, propound requests for admission, or seek further discovery about his missing texts. By contrast, OHA's disclosure in April had allowed FamilyCare to conduct full discovery regarding missing messages.

## LEGAL STANDARD

Rule 37(e) governs a motion for sanctions for spoliation of ESI.[3] As noted above, the standard for judging a motion for sanctions under Rule 37(e) is not perfection. Here, that "short of perfection" standard benefits both OHA and FamilyCare: OHA cannot recover the content of some of Ms. Saxton's texts from her or from other custodians. FamilyCare likewise cannot recover the content of some of Heatherington's texts from him or from other custodians.

What the Rule 37(e) standard *does* require this Court to determine is whether any party suffered prejudice or whether any party intended to deprive the other side of evidence. The moving party bears the burden to prove by the preponderance of the evidence that the other party

---

[2] In opposition to the motion to compel, FamilyCare acknowledged that Heatherington could not recover one text. (Dkt. No. 204.)

[3] Rule 37(e) provides that if a party was obligated to preserve the lost information "in the anticipation or conduct of litigation" and the party "failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery," then: (1) upon a finding of prejudice, the court "may order measures no greater than necessary to cure the prejudice"; or (2) upon a finding of acting with intent to deprive another party of the evidence, the court may presume the lost information was unfavorable to the party, or instruct the jury "it may or must presume the information was unfavorable to the party," or "dismiss the action or enter default judgment."

Page 6 -   **DEFENDANTS OREGON HEALTH AUTHORITY AND PATRICK ALLEN'S OPPOSITION TO FAMILYCARE, INC.'S MOTION FOR SANCTIONS**

spoliated the evidence with the intent to deprive the moving party of the evidence. *OmniGen Research v. Yongqiang Wang*, 321 F.R.D. 367, 372 (D. Or. 2017), *appeal dismissed sub nom*, *OmniGen Research, LLC v. Yongqiang Wang*, 2017 WL 6507124 (9th Cir. Oct. 5, 2017) (internal cites omitted) ("the applicable standard of proof for spoliation motions in the Ninth Circuit is the preponderance of evidence").

Although Rule 37(e) is generally sequential, *see Living Color Enterprises, Inc. v. New Era Aquaculture, LTD*, 2016 WL 1105297, at *3-4 (S.D. Fla. Mar. 22, 2016), OHA inverts the (e)(1) and (e)(2) inquiries. That is because the primary sanctions that FamilyCare seeks fall under the framework of (e)(2). FamilyCare requests three separate sanctions, including an evidentiary exclusion, under that subsection, and only in a footnote makes an alternative request for sanctions under (e)(1). OHA thus begins with the question whether FamilyCare has made a showing of any intent to deprive FamilyCare of evidence. It has not, because there was no such intent.

## ARGUMENT

I.     **No evidence suggests, much less demonstrates, that Ms. Saxton removed text messages from her phone with the intent to deprive FamilyCare of evidence.**

FamilyCare has failed to carry its burden that OHA acted with the intent to deprive it of the content of the unrecoverable text messages.

A.     **To prove that OHA intended to deprive FamilyCare of evidence, FamilyCare must demonstrate conduct more severe than negligence or even gross negligence.**

In evaluating whether a party spoliated evidence with an intent to deprive the other party of its content, courts consider a number of factors, including the party's level of sophistication, whether the data loss was unexplained, the party's state of mind, the method of deletion, the timing of deletion, and whether the actor in question had a common practice of deleting her/his text messages.

For instance, where the text messages themselves specifically referenced the litigation and the spoliators could not provide any reason for why they deleted the text messages, courts have concluded that the text messages were deleted with the intent to deprive the other side of

**Page 7 -    DEFENDANTS OREGON HEALTH AUTHORITY AND PATRICK ALLEN'S OPPOSITION TO FAMILYCARE, INC.'S MOTION FOR SANCTIONS**

evidence. *E.g.*, *Oppenheimer v. City of La Habra*, 2017 WL 1807596, at *13 (D. Ca. 2017). Similarly, where the spoliating parties knew how to comply with the retention plan, failed to do so with respect to a third individual's information, and in fact intentionally deleted that third party's information, the spoliating party's conduct amounted to "unexplained, blatantly irresponsible behavior" that reflected an intent to deprive the other party of the use of the information. *Alabama Aircraft Industries, Inc. v. Boeing Company*, 319 F.R.D. 730, 746 (N.D. Ala. 2017); *see also DVComm, LLC v. Hotwire Commc'ns*, LLC, 2016 WL 6246824, at *8 (E.D. Pa. Feb. 3, 2016) (the double deletion of ESI, the timing of the deletion, and the sophistication of the spoliator led the court to conclude that the party deleted ESI with an intent to deprive the other party of its content); *Global Material Tech., Inc. v. Dazheng Metal Fibre Co.*, 2016 WL 4765689, at *9-10 (N.D. Ill. Sept. 13, 2016) (after finding that the party "lied" about its preservation efforts, and where the party discarded one source of ESI and deleted other sources of ESI, the court concluded that the record supported a finding of spoliation with the intent to deprive).

By contrast, in *Living Color Enterprises, Inc.*, the court found no intent to deprive. There, the party accused of spoliation admitted to deleting potentially relevant text messages. But he averred that he had a "usual practice to periodically remove text message exchanges from [his] phone to maintain the operational speed and efficiency of [his] phone." *Id.*, 2016 WL 1105297 at *1. The court declined to impose sanctions under (e)(2), observing that "it is common practice amongst many cell phone users to delete text messages as they are received or soon thereafter. There is nothing nefarious about such a routine practice under the facts presented here." The court concluded that defendant had "simply acted negligently" and sanctions under the "intent to deprive" standard were not warranted. *Id.* at *6; *see also Alabama Aircraft Industries*, 319 F.R.D. at 745 ("Negligent or even grossly negligent behavior does not logically support that inference" that the party acted with an intent to deprive); *Orchestratehr, Inc. v. Trombetta*, 178 F. Supp. 3d 476, 491 (N.D. Tex. 2016) (declining to find an intent to deprive where the party who was anticipating litigation deleted emails "on a regular basis" and "during the normal course of business" unless there was a specific reason to keep them).

**Page 8 -    DEFENDANTS OREGON HEALTH AUTHORITY AND PATRICK ALLEN'S OPPOSITION TO FAMILYCARE, INC.'S MOTION FOR SANCTIONS**

**B.      FamilyCare has not proven that OHA had an intent to deprive FamilyCare of the unrecoverable text messages.**

FamilyCare has failed to prove that Ms. Saxton intended to deprive FamilyCare of evidence when she removed text messages from her screen.  There is no mystery around the unrecovered text messages:  Ms. Saxton readily admitted that she cleared text messages from her phone on a daily basis.  (Salerno Owens Decl. Ex. 8 at 65:20-21, 66:1-5.)  Her practice was consistent throughout her tenure as director of OHA.  (Saxton Decl. ¶ 7.)  Ms. Saxton did not selectively delete some text messages and not others.  Rather, she cleared her text messages regularly regardless of their content.  (*See id.*, ¶ 4.)  As in *Living Color Enterprises, Inc.*, Ms. Saxton had a daily practice to remove text messages, believing (mistakenly) that they would be backed up.  (*Id.*)  The fact that Ms. Saxton believed that the text messages were preserved, and she believed that she was acting in accordance with the litigation hold, demonstrates her good faith, *i.e.*, the exact opposite of an intent to deprive FamilyCare of evidence.

**C.      FamilyCare's remaining arguments about state policy and discovery disputes are irrelevant.**

Although FamilyCare goes on at length about its belief that Ms. Saxton failed to adhere to the state policy with respect to document retention, the state policy is not dispositive here.  As noted by the Rule 37(e) Advisory Committee, the fact that the party had an "independent obligation to preserve information does not necessarily mean that it had such a duty with respect to the litigation, and the fact that the party failed to observe some other preservation obligation does not itself prove that its efforts to preserve were not reasonable with respect to a particular case." Fed. R. Civ. P. 37(e), 2015 Notes of Advisory Committee.

Likewise, good-faith disputes over the disclosure of documents have occurred throughout this case, and by both parties.  A discovery dispute occurring at another time or in another context bears no relation to whether either party acted with intent to deprive the other of specific evidence in discovery.

///

///

**Page 9 -    DEFENDANTS OREGON HEALTH AUTHORITY AND PATRICK ALLEN'S OPPOSITION TO FAMILYCARE, INC.'S MOTION FOR SANCTIONS**

In sum, FamilyCare has not met its burden to prove that Ms. Saxton or OHA failed to retain potentially relevant text messages with the intent to keep evidence from FamilyCare. Accordingly, no basis exists to impose any sanctions here—whether a permissive or mandatory jury instruction or the preclusion of evidence—based upon an intent to deprive.

**II.    FamilyCare suffers no prejudice from OHA's inability to recover the content of a small number of potentially responsive texts, particularly considering an otherwise extraordinary volume of discovery and deposition testimony.**

FamilyCare suggests that it has suffered prejudice from the unrecoverable texts because, in FamilyCare's view, those unrecoverable texts likely relate to the draft communication plan. The evidence demonstrates otherwise. "An evaluation of prejudice from the loss of information necessarily includes an evaluation of the information's importance in the litigation. Although it may be difficult to establish the content of any lost information, often times the content may be evident, the information unimportant, or the information that was preserved is sufficient to meet the parties' needs." Advisory Committee Notes to 2015 Amendments to Rule 37(e). Where the missing information is not substantively different from information that the party has been able to obtain already, or where the missing information does not increase the likelihood of the requesting party's success on the merits, no prejudice exists. *Lokai Holdings LLC v. Twin Tiger USA LLC*, 2018 WL 1512055 at *13-14 (S.D.N.Y. Mar. 12, 2018) (no prejudice where the party seeking sanctions in that case had "already in possession of discovery sufficient to" support its claims). Moreover, to show prejudice, a party must come forward with "plausible, concrete suggestions as to what [the destroyed] evidence might have been." *TLS Mgmt. & Mktg. Servs. LLC v. Rodriguez-Toledo*, 2017 WL 1155743, at *1-2 (D.P.R. Mar. 27, 2017).

**A.    FamilyCare suffers no prejudice from the unrecoverable text messages, especially considering the small number of unrecoverable texts and the low likelihood that any of their content is relevant.**

The potential prejudice from the unrecoverable content of Ms. Saxton's potentially relevant texts narrows to nothing when several factors are considered:

- Ms. Saxton did not text frequently – the vast majority of her electronic communication were emails (which have been produced). (*See* Saxton Decl. ¶ 5.)

**Page 10 - DEFENDANTS OREGON HEALTH AUTHORITY AND PATRICK ALLEN'S OPPOSITION TO FAMILYCARE, INC.'S MOTION FOR SANCTIONS**

- When she did text, the texts generally would involve "business logistics" and "deal with specific aspects of my day." (*Id.*; Salerno Owens Decl. Ex. 8 at 71:7-19, 83:10-15.)

- As OHA Director, Ms. Saxton was in charge of an agency with a wide scope of responsibilities, of which CCOs contracts were but a fraction. Her texts were likely not about FamilyCare, given that Ms. Saxton had significant and diverse responsibilities as the director of a large agency with multiple divisions. (Saxton Decl. ¶ 6.)

- Of the 14 texts at issue, only three are close in time to the preparation of the draft communication plan; the remaining 12 were sent well after. (Beane Decl. Ex. 20.)

Relatedly, the content of texts that have been produced overlaps significantly with other evidence already in FamilyCare's possession, suggesting that the same would be true of the unrecoverable text messages. That holds particularly so with respect to the draft communication plan, a subject on which OHA produced nearly a thousand documents and for which FamilyCare has had the opportunity to depose witnesses. (*See* Scott Decl. ¶ 9.); *see also Lokai Holdings, LLC.*, 2018 WL 1512055 at *13-14 (no prejudice where the missing information would not be more likely to support a claim than the evidence already in the party's possession); *Living Color Enterprises, Inc.*, 2016 WL 1105297, at *6 (declining to find prejudice where the "abundance of preserved information appears sufficient to meet the needs" of the plaintiff).

FamilyCare's own examples prove that point. FamilyCare relies on two produced text messages that reference the draft communication plan in an attempt to establish that the unrecoverable texts could be about FamilyCare and the draft communication plan.[4] (Mot. for Sanctions at 17-18, Beane Decl. Ex. 27, 29.) The first text is a January 26, 2017 text from BethAnne Darby to Robb Cowie and Courtney Crowell that states, "Need to finalize Next draft to FC plan and send to Lynne today if possible – nothing new but stress is happening." (Mot. at 17; Beane Decl. Ex. 29.) The information contained in that text, such as it is, is also reflected in no fewer than six other produced emails. (*E.g.*, Salerno Owens Decl. Ex. 11, Ex. 12, Ex. 13.)

---

[4] FamilyCare also relies on a text from May 2016, which was sent several months before even FamilyCare's expansive view of the litigation hold period.

**Page 11 - DEFENDANTS OREGON HEALTH AUTHORITY AND PATRICK ALLEN'S OPPOSITION TO FAMILYCARE, INC.'S MOTION FOR SANCTIONS**

The same is true of the August 8, 2017 text message, which occurred after the draft communication plan had been released to the press pursuant to a public records request. (Sanctions Mot. at 17; Beane Decl. Ex. 27, p. 12; *e.g.* Salerno Owens Decl. Ex. 14, Ex. 15, Ex. 16.)  OHA has produced hundreds of documents showing that the draft plan was produced in response to a public records request, that OHA had subsequent contacts with reporters about the draft plan, and who within OHA was involved in the draft plan.

In short, FamilyCare conducted significant discovery on the draft plan, including requests for production, requests for admission, and depositions of the individuals who were involved in preparation of the draft plan.  FamilyCare has had numerous opportunities to fill in whatever blanks it perceives on the topic.  Having either failed to avail itself of those opportunities, or been unable to confirm its theories, it now wants to rest its factual theory on the frail reeds of 14 unrecoverable texts.  FamilyCare should be not allowed to create evidence that is inconsistent with over a million pages of documents, by "proving" a conspiracy in a sanctions motion.

B.    **FamilyCare cannot demonstrate prejudice from the metadata of the unrecoverable texts.**

FamilyCare's attempts to demonstrate prejudice based on the metadata of the unrecoverable texts fares no better.

1.    **The unrecoverable texts' metadata does not demonstrate that FamilyCare was unable to obtain evidence related to the draft communication plan.**

FamilyCare maintains that the metadata of the unrecoverable texts demonstrates that Ms. Saxton texted with the "architects" of the draft communication plan (Courtney Crowell, BethAnne Darby, and Robb Cowie) and that, consequently, the unrecoverable texts are germane to FamilyCare's claims.[5]  Not so.  FamilyCare has the responsive text messages for Courtney Crowell, the author of the draft communication plan, including her texts with Ms. Saxton.

---

[5] FamilyCare includes Mark Fairbanks, OHA's former Chief Financial Officer as an "architect" of the draft communication plan, even though FamilyCare has taken his deposition and elicited no supporting evidence for this assertion.  (Sanctions Mot. at 21.)  (*See e.g.*, Salerno Owens Decl. Ex. 21 at 144:5-18.)  Likewise, the other individuals that FamilyCare alleges were "implicated" were not directly involved but were simply copied on an email from Ms. Saxton asking Darby to develop "a communication plan for the dispute resolution process."  (Salerno Owens Decl. Ex. 20.)

**Page 12 - DEFENDANTS OREGON HEALTH AUTHORITY AND PATRICK ALLEN'S OPPOSITION TO FAMILYCARE, INC.'S MOTION FOR SANCTIONS**

Furthermore, none of Ms. Saxton's 14 potentially responsive unrecoverable text messages include Darby as a recipient or participant. (*See* Beane Decl. Ex. 20.) And, only three unrecoverable texts occurred in the time frame when Crowell drafted, and OHA then shelved, the draft communication plan, and *not one* of those text messages is with the so-called "architects." (*See id*.) Therefore, there is no support for the claim that the missing text messages were likely about the draft communication plan.

> 2. **FamilyCare is not prejudiced by two unrecoverable text messages to legislators.**

FamilyCare's attempts to rely on the metadata of two texts with legislators similarly fails, because the texts were about matters that did not involve FamilyCare.

FamilyCare points to the metadata of a text message between Ms. Saxton and Senator Betsy Johnson, a member of the Senate Ways and Means Committee. FamilyCare observes that its proposed legislation relating to OHA's rate-development process went before that committee. Yet, Ms. Saxton texted Johnson in January 2017, a full three months before the Ways and Means Committee even had FamilyCare's bill before it. (*See* Beane Decl. Ex. 32.) Ms. Saxton determined, through comparing her calendar to the text metadata, that the text did not relate to FamilyCare. (*See* Beane Ex. 16 at 15.) Ms. Saxton confirmed that she recalled texting Senator Johnson because Senator Johnson raised a concern about a constituent. (Saxton Decl. ¶ 13.) Similarly, although Ms. Saxton exchanged a text with Knute Buehler, he was not on the committee that heard the FamilyCare bill. (Salerno Owens Decl. Ex. 22.)

In short, for these texts to furnish a "plausible, concrete" basis for sanctions, FamilyCare must show that the matter Ms. Saxton was most likely to text a legislator about was FamilyCare, as opposed to anything else the head of one of Oregon's largest agencies might want to talk to a legislator about. *TLS Mgmt. & Mktg. Servs. LLC*, 2017 WL 1155743, at *1-2 (to show prejudice, a party must come forward with "plausible, concrete suggestions as to what [the destroyed] evidence might have been."). FamilyCare's theory is not supported in millions of pages of discovery and hours of depositions and in fact, OHA produced over 1200 documents, related to SB 233 alone. (Scott Decl. ¶ 7.)

**Page 13 - DEFENDANTS OREGON HEALTH AUTHORITY AND PATRICK ALLEN'S OPPOSITION TO FAMILYCARE, INC.'S MOTION FOR SANCTIONS**

C.      **Unlike OHA, FamilyCare did not suffer the prejudice of being unable to conduct discovery regarding the unrecoverable text messages.**

Lastly, FamilyCare does not—and indeed cannot—explain why, on the one hand, it suffers some form of prejudice from a minimal number of unrecoverable texts and yet why, on the other hand, its own failure to produce Heatherington's texts does not prejudice OHA. FamilyCare maintains that "there is not real prejudice to OHA with respect to [the missing] messages given the very small number at issue." (Salerno Owens Decl. Ex. 10(a).)  Of course, the number of texts says nothing about the significance of their content.  But even if FamilyCare's argument were logical, it would only serve to support a conclusion that FamilyCare likewise has not suffered any prejudice.  Both parties are similarly situated: the known universe of unrecoverable potentially relevant texts for Ms. Saxton and Heatherington are equivalent.

This case simply illustrates what is so often the case when parties are dealing with a high volume of electronic information: "perfection in preserving all relevant electronically stored information is often impossible."  Fed. R. Civ. P. 37(e) Advisory Committee's Note to 2015 Amendment.  But without more, that imperfection does not amount to prejudice, and FamilyCare has not demonstrated that it has suffered any prejudice.

III.    **If this Court concludes that sanctions are appropriate, the sanctions imposed should apply equally to OHA and FamilyCare.**

If this Court concludes that sanctions are appropriate, then it should consider whether similar sanctions under Rule 37(e)(1) are warranted against FamilyCare.  In many ways, FamilyCare's conduct creates a greater prejudice to OHA than the reverse.  FamilyCare repeatedly maintained that it had produced, with one exception, all its potentially responsive texts, even as recently as its successful opposition to OHA's motion to compel those texts.  (Dkt. 204 at p. 2.) ("FamilyCare, however, is not withholding responsive communications.  They simply do not exist."); *see also id.* at p. 1 ("FamilyCare has produced all responsive text messages[.]").  It then waited until the same day that it filed this sanctions motion—and two months after the close of discovery—to admit that the assertion "They simply do not exist"

simply isn't true. Nine additional text messages are not recoverable. (Salerno Owens Decl. Ex. 10(a), (b).) That conduct deprived OHA of the ability to conduct further discovery as to those texts, including preventing OHA from questioning Heatherington in his deposition about the missing texts and their content. In contrast, FamilyCare knew who received the Saxton texts and had the chance to conduct discovery to those third-party recipients. OHA did not have that same opportunity since FamilyCare only disclosed Heatherington's unrecoverable text messages at the last minute.

But the more fitting result flows naturally from Rule 37(e)'s express commentary, which recognizes that the volume of ESI will inevitably result in imperfection, and the rule itself, which instructs that the court "may order measures *no greater than necessary* to cure the prejudice." This is not a case in which sanctions are appropriate. There is no prejudice, and thus no necessary "cure."[6]

## CONCLUSION

No sanctions are warranted in this case; this Court should therefore deny FamilyCare's motion for sanctions.

DATED this 29th day of October, 2018.

> ELLEN ROSENBLUM
> ATTORNEY GENERAL
> FOR THE STATE OF OREGON
>
> By:    */s/ Laura Salerno Owens*
> David B. Markowitz, OSB #742046
> DavidMarkowitz@MarkowitzHerbold.com
> Matthew A. Levin, OSB #003054
> MattLevin@MarkowitzHerbold.com
> Renée E. Rothauge, OSB #903712
> ReneeRothauge@Markowitzherbold.com
> Harry B. Wilson, OSB #077214
> HarryWilson@MarkowitzHerbold.com
> Laura Salerno Owens, OSB #076230
> LauraSalerno@MarkowitzHerbold.com
>
> *Special Assistant Attorneys General for*
> *Defendants Oregon Health Authority, an*
> *agency of the State of Oregon, and Patrick*

---

[6] For that same reason, FamilyCare's request for attorneys' fees is unwarranted.

**Page 15 - DEFENDANTS OREGON HEALTH AUTHORITY AND PATRICK ALLEN'S OPPOSITION TO FAMILYCARE, INC.'S MOTION FOR SANCTIONS**

*Allen in his official capacity as director of the Oregon Health Authority*

Carla A. Scott, OSB #054725
carla.a.scott@doj.state.or.us

*Of Attorney for Defendants Oregon Health Authority, an agency of the State of Oregon, and Patrick Allen in his official capacity as director of the Oregon Health Authority*