UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION


FAMILYCARE, INC., an Oregon non-profit
corporation,


                    Plaintiff,


vs.                                    Case No. 6:18-cv-00296-MO


OREGON HEALTH AUTHORITY, an
agency of the State of Oregon, and
PATRICK ALLEN, both individually and in
his official capacity as director of the
Oregon Health Authority, and LYNNE SAXTON,
                    Defendants.



VIDEOTAPED DEPOSITION OF RENEE STINEMAN

THURSDAY, AUGUST 2, 2018

9:05 a.m.

Ex. 2 to Salerno Owens Decl.
1 of 7

Stineman, Renee                                                        August 2, 2018

Page 3

                                 APPEARANCES


Appearing on behalf of the Plaintiff:

MR. THOMAS RUSSELL JOHNSON

MS. SASHA PETROVA

PERKINS COIE LLP

1120 NW Couch, 10th Floor

Portland, Oregon  97209

trjohnson@perkinscoie.com

spetrova@perkinscoie.com


Appearing on behalf of the Defendants:

MR. DAVID B. MARKOWITZ

MS. LAURA SALERNO OWENS

MS. BRITTANY SIMPSON

MARKOWITZ HERBOLD PC

1211 SW 5th Avenue, Suite 3000

Portland, Oregon  97204

davidmarkowitz@markowitzherbold.com

laurasalerno@markowitzherbold.com

brittanysimpson@markowitzherbold.com


ALSO PRESENT:   Ted Falk, Greg Scott, Artur Suchorzewski

                and Chivalo Boyd, Videographer

Page 157

Exhibit 1211, to whom within OHA was this letter sent?

A.    There were documents that record that information.  I am not able to recite that from memory.

Q.    Is it the Oregon Health Authority's understanding that it was every employee of the Oregon Health Authority to whom this litigation hold notice was sent?

A.    I'm sorry.  I couldn't hear your question.  You're talking into your mouth (sic).

Q.    Is it the Oregon Health Authority's understanding that this litigation hold was sent to every employee of the Oregon Health Authority?

A.    No.  In each instance, the people that received litigation hold notices are identified, based on whether or not they may have information that would be relevant to the litigation.

Q.    With whom did you speak in preparation for this topic?

A.    It's listed on Exhibit 1200. It includes Lars Schou, Keely West, Rodney

Stineman, Renee                                            August 2, 2018

Page 169

were notified.

Q.    And in your conversation with Lynne Saxton regarding this topic, did she communicate to you that there had been any problem or issue with the retention of her electronic communications?

A.    My investigation, as it relates to Ms. Saxton's text messages for the most part, actually, was not through direct communications with Ms. Saxton, but instead communications with others, as well as reviewing interrogatory responses and other information.

I don't understand there to be a problem with Ms. Saxton's technology. I understand that she understood that her text messages were available from a backup source, and with that understanding, she deleted the copies that were on her phone, if that's what you're getting at.

Q.    And did, in your interview of Ms. Saxton if preparation for this topic as your role as the representative of the Oregon Health Authority today, did she communicate that she had deleted text messages from her

Ex. 2 to Salerno Owens Decl.
4 of 7

Stineman, Renee                                              August 2, 2018

Page 170

phone?

A.    I think I just answered that.

Q.    I understand you said that you looked at interrogatory responses and other things, but I just want to understand, during your conversation with Ms. Saxton, in preparation for your role as the corporate representative of the Oregon Health Authority, whether she told you during that interview that she deleted text messages from her phone subsequent to her receipt of the litigation hold?

A.    The information I have regarding the text messages on Ms. Saxton's phone comes primarily from my conversations from the forensic examiners and other technological support people in reviewing interrogatories and responses.

Q.    So your interview in preparation for today, you didn't ask Ms. Saxton about deleted text messages from her phone?

A.    In preparation for today, I spoke with the forensic examiners to learn what information was available on Ms. Saxton's phone and what could be recovered

Page 172

available, that wouldn't be important for you to inquire about that?

A.    So to be clear, both DOJ and the Agency take very seriously the responsibility to preserve and produce evidence in litigation.

It is my understanding that as the Agency's representative here, to provide testimony that is accurate and fully investigated.

In my opinion, the most accurate information about what was available in regard to Ms. Saxton's text messages was through technology and the people that know about that and to rely on testimony that the Agency has already provided.

In addition, in my investigation, I have not learned any information that would suggest that any of the text messages on Ms. Saxton's phone were deleted with the intention of hiding it or making it unavailable.

Q.    But in your preparation for your role today as the representative of the Oregon

Stineman, Renee                                          August 2, 2018

CERTIFICATE

State of Oregon

County of Multnomah

I, Mary C. Soldati, Registered Professional Reporter, CSR No. 3406 and Notary Public in and for the State of Oregon, do hereby certify that RENEE STINEMAN, was satisfactorily identified and was duly sworn by me, and that such deposition is a true record of the testimony given by the witness.

I further certify that I am neither related to nor employed by any of the parties in or counsel to this action, nor am I financially interested in the outcome of this action.

In witness whereof, I have hereunto set my hand this 5th day of August, 2018.

Mary C. Soldati, RPR

My commission expires:

October 5, 2018

Beovich Walter & Friend