UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

|  |  |  |
|---|---|---|
| FAMILYCARE, INC., an Oregon non-profit corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | No. 6:18-cv-00296-MO |
| OREGON HEALTH AUTHORITY, an agency of the State of Oregon, and PATRICK ALLEN, both individually and in his official capacity as director of the Oregon Health Authority, and LYNNE SAXTON, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

VIDEOTAPED DEPOSITION OF

LYNNE SAXTON

Taken in behalf of Plaintiff

\*   \*   \*

August 1, 2018

1211 S.W. Fifth Avenue, Suite 3000

Portland, Oregon 97204

Teresa L. Dunn,

Court Reporter

CSR, CCR, RPR

Ex. 8 to Salerno Owens Decl.

1 of 13

Lynne Saxton, 8/1/2018                              FamilyCare, Inc. v. Oregon Health Authority, et al.

2

APPEARANCES:

For the Plaintiff:

MR. STEPHEN F. ENGLISH
MR. BRIAN SAMUELSON
Perkins Coie, LLP
Tenth Floor
1120 N.W. Couch Street
Portland, OR 97209
503-727-2076
senglish@perkinscoie.com
bsamuelson@perkinscoie.com


For the Defendant, Oregon Health Authority:

MS. LAURA SALERNO OWENS
MS. ANNA JOYCE
Special Assistant Attorneys General
Markowitz Herbold Glade & Mehlhaf, P.C.
Suite 3000
1211 S.W. Fifth Avenue
Portland, OR 97204
503-295-3085
laurasalerno@markowitzherbold.com
annajoyce@markowitzherbold.com


For the Defendant, Lynne Saxton:

MR. PETER R. MERSEREAU
Mersereau and Shannon, LLP
Suite 1100
One S.W. Columbia
Portland, OR 97258
503-226-6400
pmersereau@mershanlaw.com


Also Present:
Joe Walsh, Videographer

Lynne Saxton, 8/1/2018                          FamilyCare, Inc. v. Oregon Health Authority, et al.

63

court?

A.    Yes.

Q.    All right.  So when I talk about the lawsuit, I want you to go back to the initial lawsuit filed in Marion County which has ultimately been removed to the federal court lawsuit that we're dealing with right now.

Okay?

A.    Yes.

MS. SALERNO OWENS:  For the record is that the lawsuit filed on February 27th, 2017?

MR. ENGLISH:  Yes, yes.

MS. SALERNO OWENS:  Thank you.

Q.    (By Mr. English) So have you deleted texts during that period of time starting from February 27th, 2017?

A.    So can you tell me what you mean by deleting texts?

Q.    Yes.  Do you understand what a phone text is?

A.    Yes.

Q.    Okay.  What do you understand by the term deleting a phone text?

A.    In my understanding -- so I have not deleted texts.  I have removed texts from my

64

screen as my general practice of business.  And in my mind they are all recoverable.  And that's my understanding just like e-mails are recoverable.

So I don't -- not knowing your definition of deletion I'm not sure what your question is.

Q.   Well, let me tell you my layman's understanding of what's happened and then you can help clarify for me.

My understanding is that certain texts were sent to you by individuals and then received from you by individuals and neither the text you sent nor the text the individual received are at this point able to be recovered.

So not just what you sent or what you received, but the individuals who sent them to you or received them from you, texts are missing.

So do you have any idea how that happened?

A.   I do not.

Q.   Did you have any discussions with anyone about removing texts that you sent to individuals?

Lynne Saxton, 8/1/2018                    FamilyCare, Inc. v. Oregon Health Authority, et al.

65

MS. SALERNO OWENS:  And I'm going to caution you not to reveal any discussions with your attorneys on this topic.

Q.    (By Mr. English) Other than attorneys.

A.    Can you restate the question?

Q.    Sure.  Did you have any discussions with anyone other than your lawyers about removing texts that you sent to individuals?

A.    No.

Q.    And did any individual -- so you have no understanding of how those texts have either been removed or deleted from your phone?

A.    I have no understanding.

Q.    And you didn't do it yourself?

A.    In my mind I removed texts from my screen and they were recoverable.  I have no knowledge of deleted texts.

Q.    Did you remove texts from your screen after the lawsuit was filed?

A.    My practice of removing texts from my screen has been consistent throughout my tenure.

Q.    My question was did you remove texts from your screen after the lawsuit was filed?

A.    I think I answered the question.

Q.    I don't think you have.

Lynne Saxton, 8/1/2018                    FamilyCare, Inc. v. Oregon Health Authority, et al.

66

A.    I removed texts from my screen on a daily basis as a matter of standard business practice throughout my tenure which would be from the last week in January 2015 to August 31st, 2017.

Q.    I don't understand what you mean when you say removed from your screen.  Tell me what that involves.  Walk me through it.

A.    The -- in the course of the day you would have some texts perhaps on your screen and you would edit them and remove them from the screen with my understanding that they were recoverable as e-mails are recoverable.

Q.    We actually filed what's called a request for admission about texts from your phone and the answer we got was that certain texts had been deleted.

Is that incorrect?

A.    I can't -- I don't know what you are referring to.

Q.    Well, hold on.  Let's mark this as an exhibit.

(Deposition Exhibit Number 208 marked for identification.)

Q.    (By Mr. English) So, Ms. Saxton,

Lynne Saxton, 8/1/2018                    FamilyCare, Inc. v. Oregon Health Authority, et al.

71

A.    From my screen, yes.

Q.    Do you have any understanding as to why your removal from your screen would also have ended up with the people you sent the texts to not having copies of the texts anymore?

A.    I have no idea.

Q.    Were the texts involving at least in some capacity a discussion of OHA business?

MS. SALERNO OWENS:    Objection, vague as to OHA business.

MR. MERSEREAU:    By texts I assume you mean the removed texts?    Maybe you can restate that question.

Q.    (By Mr. English) Yes.    Okay.    Did the texts that you removed deal with OHA business?

MS. SALERNO OWENS:    Same objection.

Q.    (By Mr. English) You can answer.

A.    On my OHA phone they could deal with specific aspects of my day.

Q.    You weren't using your OHA phone for private communications?

A.    No.

Q.    You weren't using your OHA phone for private business, were you?

A.    No.

Ex. 8 to Salerno Owens Decl.
7 of 13

Lynne Saxton, 8/1/2018                                    FamilyCare, Inc. v. Oregon Health Authority, et al.

72

Q.   You weren't using your OHA phone for anything other than OHA-related business, correct?

MS. SALERNO OWENS:   Objection, vague as to OHA-related business.

Q.   (By Mr. English) You can answer the question.

A.   I was not a frequent text-user and I used it primarily for logistical information. So it's hard for me to answer the question.

I would, for example, text that I was 15 minutes late and couldn't find a parking place.

Q.   Did you have any concern that your daily removal of your texts was, in fact, inconsistent with your obligation to have a litigation hold?

MR. MERSEREAU:   Object, assumes facts. You can answer.

THE WITNESS:   Could you restate the question?

Q.   (By Mr. English) Sure.  I think you have already told me that you were aware a litigation hold was in place from the filing of the lawsuit?

A.   Yes.

Q.   Knowing that a litigation hold was in

73

place from the filing of the lawsuit did you consider whether your removal of the texts on a daily basis was in violation of that litigation hold?

A.    My understanding was that all texts were recoverable like e-mails.  And so I did not have that concern and was aware of and complied with the litigation hold.

Q.    You have already indicated you are not tech-savvy so who did you talk to to confirm whether your understanding was accurate before you removed them?

A.    My understanding was consistent throughout my tenure that all texts were recoverable.

And so I did not have a conversation with people about, again, certain episodes of time.  My practice was consistent.

Q.    What have you done to attempt recovery of the texts that you removed?

A.    I have reviewed -- my organizing document for my work was my calendar.  And so I have reviewed my calendar to identify daily activity, what was going on, who -- who were texts from, who were texts to.

74

And I have already reviewed the calendar of Mr. Cowie which would indicate issues of -- of communication going on at that time for texts.

Q.    And I understand your answer, but my question was what have you done to attempt recovery of the actual text?

A.    Oh, I have no idea how to recover the actual text.

Q.    And has your knowledge about how to recover the actual text changed from the beginning of the lawsuit?

A.    No.

Q.    So when you removed them is it a fair statement you had no idea how to recover them?

A.    No, that's not a fair statement.

Q.    Okay.

A.    I -- those were -- my understanding is they were recoverable.  And I did not have to be -- I was not the person in charge of recovering data.  We had a team that did -- does IT work and does that kind of work.

My operating assumption was consistently that I had simply removed them from my screen and they were recoverable.

75

Q.    And I understand, but you also indicated to me you are not tech-savvy.  So who told you that removing them the way you were removing them still made them recoverable?

A.    Other -- no one told me that removing -- that specific question was not asked because my understanding was they were all recoverable.

Q.    And how did you come to that understanding since you are not tech-savvy?

A.    My understanding when I began at the State was that everything was available and a matter of public access and information and that e-mails and texts were recoverable and...

Q.    And where did you get that understanding?

A.    The -- it was my understanding.

Q.    You just can't remember where you got it?

A.    I don't think it was a specific conversation, but it was certainly my operating understanding.

Q.    How many different personal cell phones have you had since you were appointed director of OHA?

Ex. 8 to Salerno Owens Decl.
11 of 13

Lynne Saxton, 8/1/2018                          FamilyCare, Inc. v. Oregon Health Authority, et al.

83

Q.    Well, you see where it says From?

A.    Yes.

Q.    And you think that's your cell phone number issued to you by the Oregon Health Authority?

A.    Yes.

Q.    Okay.  Do you have any knowledge as to who this was sent to?

A.    No.

Q.    How frequently would you text during the day on your state-issued cell phone?

A.    Not -- rarely.  I was not a big text-user.  I don't know what, you know, you are considering rarely, but my use was mostly business logistics.

(Deposition Exhibit Number 210 marked
       for identification.)

Q.    (By Mr. English) I will hand you what has been marked as Exhibit 210 and this is a multi-page document starting with Bates stamp 01086923 and going through 01086931.

Now, do you recognize the number you previously identified as the likely number that you were given for your OHA cell phone?

A.    You are referring to (503) 930-6314.

Schmitt Reporting & Video, Inc.
(360) 695-5554 -- (503) 245-4552 -- (855) 695-5554

Ex. 8 to Salerno Owens Decl.
12 of 13

Lynne Saxton, 8/1/2018                                    FamilyCare, Inc. v. Oregon Health Authority, et al.

209

C E R T I F I C A T E

I, Teresa L. Dunn, a Certified Shorthand Reporter for Oregon, do hereby certify that, pursuant to stipulation of counsel for the respective parties hereinbefore set forth, LYNNE SAXTON personally appeared before me at the time and place set forth in the caption hereof; that at said time and place I reported in Stenotype all testimony adduced and other oral proceedings had in the foregoing matter; that thereafter my notes were reduced to typewriting under my direction; and that the foregoing transcript, pages 1 to 210, both inclusive, constitutes a full, true and accurate record of all such testimony adduced and oral proceedings had, and of the whole thereof.

Witness my hand and CSR stamp at Vancouver, Washington, this 15th day of August, 2018.

_____
TERESA L. DUNN
Certified Shorthand Reporter
Certificate No. 00-0367
Commission Expires:  6/30/20

Ex. 8 to Salerno Owens Decl.
13 of 13