PERKINSCOIE

1201 Third Avenue
Suite 4900
Seattle, WA 98101-3099

T  +1.206.359.8000
F  +1.206.359.9000
PerkinsCoie.com

Amanda J. Beane
ABeane@perkinscoie.com
D.  +1.206.359.3965
F.  +1.206.359.4965

August 15, 2018

**VIA EMAIL**

Laura Salerno Owens
Markowitz Herbold PC
1211 SW Fifth Ave., Ste 3000
Portland, Or 97204
LauraSalerno@MarkowitzHerbold.com

Re:    *FamilyCare, Inc. v. Oregon Health Authority*

Dear Laura,

I am writing in response to your letter of July 24, 2018 and OHA's motion to compel filed on August 8 regarding FamilyCare's production of text messages.  The motion also questioned our production of instant messages (or "IMs").

Please know that we were working on a substantive response to your letter, which asked many questions, but the deposition schedule, oral argument, and other demands of the case meant we could not get back to you right away.  We are surprised, however, that you would file your motion without further attempts to contact us or a conferral.  We also note that your motion includes a request to compel production of IMs, but IMs were not raised in your letter of July 24, nor are we aware of your asking questions about IMs in any previous communication with us. Nevertheless, we provide responsive information regarding IMs in this letter.

In addition, as you know, text message productions were discussed during a July 19, 2018 conferral with Harry Wilson of your office and Matt Gordon, Brian Samuelson, and Alletta Brenner of my office. Ms. Brenner provided information regarding FamilyCare's production of text messages, confirming that we had collected (or were collecting) all responsive messages. We understood during that call that your questions were resolved.  Your July 24 letter was the first indication that we have had that you believe issues remained, and it does not appear to account for the substantive information provided to Mr. Wilson during that meet and confer.

In any event, as stated during the parties' conferral call on July 19, FamilyCare has collected (or, at the time, was finishing its collection of) text messages from all agreed-upon document custodians who have sent or received such messages in connection with FamilyCare's business and who may have responsive text messages and where such text messages were within FamilyCare's possession, custody, or control.   Since December 2017, FamilyCare has continued to update its collections, and additional responsive text messages have been produced on a

140849793.1

Perkins Coie LLP

Laura Salerno Owens
August 15, 2018
Page 2

rolling basis, including in FamilyCare's most recent productions to OHA.  Specifically, our production on July 13, 2018 included text messages dated *after* January 6, 2018 as did our production on July 31, 2018.  And, to the extent that additional responsive text messages are identified, these will be produced to OHA.

In other words, while there are unlikely to be many responsive text messages in 2018 because FamilyCare ended its Medicaid business, it is incorrect to say that we are refusing to produce text messages after January 2018.

The fact that FamilyCare has produced fewer text messages than OHA is not salient.  FamilyCare's agreed-upon custodian list includes only 15 individuals compared to the 76 individuals from whom OHA has produced documents thus far.  And, 4 of those were outside legal counsel for whom the parties agreed that only specific, targeted collections of certain emails would be performed.  Overall, FamilyCare has produced approximately 80,000 documents, while OHA has produced over 200,000 documents.  More importantly, unlike OHA employees, most FamilyCare employees rarely used text messages for work, and many of them never did, which is why you have no text messages from them.  To this point, it is worth noting that although FamilyCare has searched both company-owned and personal cell phones for responsive texts where appropriate, few FamilyCare custodians (unlike OHA employees) had company-owned cell phones.

For example, text messages have not been collected from Bill Guest because he did not have a company-issued cell phone and he has stated that he did not use his personal cell phone to text for work.  According to Mr. Guest, the text to him from Ms. Saxton was her congratulating him when he started his job at FamilyCare, and therefore not relevant to the issues in this case.  In any event, his personal cell phone from the relevant time period has been preserved, but we do not think steps to collect from him are warranted based on this information.

We acknowledge that you have asked why we have not produced the text message between Jeff Heatherington and Pat Allen, which was produced by OHA at OHA_LIT_01134688.  We believe Mr. Heatherington's text messages were appropriately preserved, collected, and produced, and continue to investigate why this single message (of which you have a copy) did not appear in our production.

In sum, we have no reason to believe that any responsive text messages over which we had possession, custody, or control were not preserved, collected, or produced.  In fact, in order to identify potentially responsive messages, FamilyCare initially used the same search terms that were negotiated by the parties in 2017.  However, in an abundance of caution, FamilyCare has now reviewed all collected text messages for responsiveness, irrespective of whether a message hit on any search term.  There are simply few text messages because FamilyCare employees generally did not use text for business purposes.

140849793.1

Perkins Coie LLP

Laura Salerno Owens
August 15, 2018
Page 3

As for instant messages, your motion suggests that Mr. McDonald testified that all FamilyCare employees used instant messaging and that no instant messages have been produced by FamilyCare, but these statements are not accurate. Mr. McDonald testified that he and his group used an IM platform called "MatterMost," but that it was not used by all employees at FamilyCare. In fact, he testified it was largely his group (analytics) and engineering that used MatterMost, and that he never IM'd through MatterMost with Bill Murray, Jeff Heatherington, or Kevin Clancy. In any event, Mr. MacDonald's MatterMost IM's were, in fact, preserved (they are automatically archived), collected and reviewed, a fact we would have shared with you if you had asked before filing a motion. Since this was a platform largely used by the analytics and engineering team, the MatterMost IM's collected from Mr. McDonald were not responsive. Note that other FamilyCare employees did sometimes use a different IM platform called "Barracuda." These IMs were automatically archived as emails and therefore a part of all preservation, collection, search, and review efforts to date, and responsive IMs have been produced to you. *See*, *e.g.,* FCI0561044 and FCI0563597.

Finally, you briefly reference "all other electronic communications" in your motion to compel. If you are aware of potential deficiencies you would like us to address, please let us know. We are not aware of any.

We remain willing to meet and confer about these issues. Given the information we have provided, however, we believe your motion is without merit and should be withdrawn. Please let us know by the end of day tomorrow, August 16, if you will withdraw your motion.

Very truly yours,

Amanda J. Beane