**David B. Markowitz, OSB #742046**
DavidMarkowitz@MarkowitzHerbold.com
**Matthew A. Levin, OSB #003054**
MattLevin@MarkowitzHerbold.com
**Renée E. Rothauge, OSB #903712**
ReneeRothauge@Markowitzherbold.com
**Harry B. Wilson, OSB #077214**
HarryWilson@MarkowitzHerbold.com
**Laura Salerno Owens, OSB #076230**
LauraSalerno@MarkowitzHerbold.com
MARKOWITZ HERBOLD PC
1211 SW Fifth Avenue, Suite 3000
Portland, OR  97204-3730
Tele:  (503) 295-3085
Fax:  (503) 323-9105

> Special Assistant Attorneys General for Defendants Oregon
> Health Authority, an agency of the State of Oregon, and
> Patrick Allen, in his official capacity as director of the
> Oregon Health Authority

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| FAMILYCARE, INC., an Oregon non-profit corporation, | Case No. 6:18-cv-00296-MO |
| Plaintiff, | **DECLARATION OF LYNNE SAXTON IN SUPPORT OF DEFENDANTS OREGON HEALTH AUTHORITY AND PATRICK ALLEN'S OPPOSITION TO FAMILYCARE'S MOTION FOR SANCTIONS** |
| v. | |
| OREGON HEALTH AUTHORITY, an agency of the State of Oregon, and PATRICK ALLEN, both individually and in his official capacity as director of the Oregon Health Authority, and LYNNE SAXTON, | |
| Defendants. | |

///

**Page 1 -   DECLARATION OF LYNNE SAXTON IN SUPPORT OF DEFENDANTS OREGON HEALTH AUTHORITY AND PATRICK ALLEN'S OPPOSITION TO FAMILYCARE'S MOTION FOR SANCTIONS**

I, Lynne Saxton, declare:

1.      I was employed as the director of the Oregon Health Authority ("OHA") from January 20, 2015[1] to August 31, 2017.  The following statements are true and correct and, if called upon, I could competently testify to the facts averred herein.

2.      When I joined OHA, it was my understanding that the State of Oregon and State agencies such as OHA preserved all employee electronic communications as part of the State's compliance with public records laws.

3.      While at OHA, I recall having general conversations in passing with other State employees that text messages could be recovered from State cell phones.  Those general conversations confirmed my understanding that all State employee electronic communications, including emails and text messages, were preserved and could be recovered.

4.      During my employment with OHA, I never intended to permanently delete any text messages on my work phone.  It was my operative understanding that text messages (like emails) were backed up to a location where they were preserved and could be accessed.  Based on that understanding, I removed text messages, regardless of content, from the screen by touching the "Delete" icon on the phone.  I did so on a daily basis throughout my tenure at OHA.  Similarly, I removed emails from my inbox as a daily practice.  At the time, it was my understanding that my text messages, like emails, were recoverable after being removed from the phone screen.

5.      I was not a frequent text-user while at OHA.  Most of my substantive conversations with my team occurred in person, over the phone, or by email, not in text messages.  I primarily used text messages on my work phone for business logistics, for example to notify someone that I was late to a meeting.

///

---

[1] I started as the Acting Director on January 20, 2015.  I was confirmed by the legislature on March 3, 2015.

**Page 2 -    DECLARATION OF LYNNE SAXTON IN SUPPORT OF DEFENDANTS OREGON HEALTH AUTHORITY AND PATRICK ALLEN'S OPPOSITION TO FAMILYCARE'S MOTION FOR SANCTIONS**

6.      As the agency director, I had a wide scope of responsibilities at OHA, an agency with thousands of employees. I oversaw all divisions of OHA, including Health Systems, Public Health, Health Policy and Analytics, External Relations, the Oregon State Hospital, and the Office of the Chief Financial Officer. Several OHA division heads reported directly to me, including the Chief Financial Officer, the Chief Health Systems Officer, the State Hospital Superintendent, the Public Health Division, and the Medicaid Director. Within OHA's organizational structure, the 16 Coordinated Care Organizations ("CCOs") worked operationally with OHA's Chief Health Systems Officer, who reported to me. As such, CCOs such as FamilyCare were only one area of my attention in the wider context of my diverse responsibilities as the director of OHA.

7.      I was aware of the litigation hold in this case. My daily practice of clearing text messages from my phone did not change after I received the litigation hold notice due to my understanding that all of my OHA electronic communications were preserved and could be recovered for litigation purposes.

8.      I never directed any OHA employees to delete their text messages.

9.      I understand that OHA has been unable to recover all text messages from my work cell phone. To assist OHA, I reviewed and attempted to recreate as many of the unrecoverable text messages from my work phone as possible. As part of that process, I examined the metadata charts produced by OHA on June 13, 2018 and that have been marked as Exhibit 13 to the Declaration of Amanda Beane in Support of FamilyCare Inc.'s Motion for Sanctions (Dkt. No. 257) ("Beane Declaration").

10.     I undertook a multi-step process to determine whether any of the 85 text messages listed in the metadata charts were relevant to this lawsuit. First, I cross-referenced the dates and times of partially-recovered text messages with my calendar and Robb Cowie's, OHA Communications Director, calendar. I compared the time stamps on each of the text messages to my Outlook calendar entries to determine the likely context of each text conversation. My

**Page 3 -    DECLARATION OF LYNNE SAXTON IN SUPPORT OF DEFENDANTS OREGON HEALTH AUTHORITY AND PATRICK ALLEN'S OPPOSITION TO FAMILYCARE'S MOTION FOR SANCTIONS**

calendar notes from this process were produced in this litigation at OHA_LIT_01271681-1272289.

11.    My OHA calendar was the best tool for refreshing my memory because while at OHA I relied on my calendar as my primary time-management tool.  My assistant printed my calendar at the beginning of every day and my calendar contained all my work events.

12.    Through this process, by comparing the time stamp and recipients to meetings and activities on my Outlook calendar, I evaluated the likelihood that each text message was related to the litigation.  I assigned each text message to one of the following categories: "not related to claims," "highly unlikely related to claims," or "unknown."

13.    As an example, on January 24, 2017, there is a text message from me to Oregon State Senator Betsy Johnson.  From reviewing my calendar, I recalled that Senator Johnson's office contacted me about a constituent concern and that I was out of town in San Diego, California and sick with the flu at the time.  My memory is that I likely responded to Senator Johnson over text message to let her know that I was unavailable or that someone else from OHA would get back to her because I was out of town and ill.  My notes from reviewing my January 24, 2017 calendar were produced in this litigation at OHA_LIT_01272070.

14.    My approach in categorizing the text messages was conservative.  If I could not definitively say that a message was "not related to the claims" or "highly unlikely to be related to claims," I categorized the message as "unknown."  I ultimately determined that, of the list of 85 text messages, 20 were not related to claims, 46 were highly unlikely to be related to claims, and 15 were unknown.  In addition, I learned from counsel for OHA that 4 of the 85 text messages had already been produced in the litigation.  My review and sorting of the list of 85 unrecovered text messages is reflected in Exhibit A to OHA's Response to FamilyCare's Interrogatory 20, which is marked as Exhibit 16 to the Beane Declaration.

15.    For the text messages that I categorized as "unknown," that designation meant that I could not determine whether the text message was relevant to the claims in this case from looking at the participants and my calendar for the date of the message.  The list of 15 messages

**Page 4 -    DECLARATION OF LYNNE SAXTON IN SUPPORT OF
             DEFENDANTS OREGON HEALTH AUTHORITY AND PATRICK
             ALLEN'S OPPOSITION TO FAMILYCARE'S MOTION FOR
             SANCTIONS**

that I categorized as "unknown" is reflected in the Exhibit B and Updated Exhibit B to OHA's Response to FamilyCare's Interrogatory 20, which are marked as Exhibit 16 and Exhibit 20 to the Beane Declaration. I learned from counsel for OHA that 1 of the 15 "unknown" text messages had already been produced in the litigation.

16. On October 6, 2016, I stated in an email to Leslie Clement, OHA Director of Health Policy & Analytics, that "as we anticipate litigation as a result of the rates process, please ask Zeke to discuss this request with us prior to scheduling a tour." My email is attached as Exhibit 2 to the Beane Declaration. My email speculated generally that litigation might arise involving any of the 16 CCOs concerning the 2017 rates. I was aware of FamilyCare's concerns about the 2017 rates, but I did not know at the time, before the 2017 rates had even been finalized, that FamilyCare would be filing a lawsuit. In fact, I was not aware that FamilyCare's attorneys had concretely and affirmatively threatened litigation against OHA until I received the December 21, 2016 litigation hold notice from OHA's counsel.

17. My responses to FamilyCare, Inc.'s First Set of Interrogatories, Requests for Production of Documents and Requests for Admission are attached as Exhibit 1.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED this 29th day of October, 2018.

*/s/ Lynne Saxton*

Lynne Saxton

785170

**Page 5 -    DECLARATION OF LYNNE SAXTON IN SUPPORT OF DEFENDANTS OREGON HEALTH AUTHORITY AND PATRICK ALLEN'S OPPOSITION TO FAMILYCARE'S MOTION FOR SANCTIONS**