FILED

**NOT FOR PUBLICATION**

APR 30 2020

UNITED STATES COURT OF APPEALS

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| PATRICK ALLEN, in his official capacity as DIRECTOR OF OREGON HEALTH AUTHORITY, an agency of the State of Oregon,<br><br>        Plaintiff-Appellant,<br><br>v.<br><br>FAMILYCARE, INC., an Oregon non-profit corporation,<br><br>        Defendant-Appellee. | No.    18-35593<br><br>D.C. No. 3:18-cv-00212-MO<br><br>MEMORANDUM[*] |
| FAMILYCARE, INC., an Oregon non-profit corporation,<br><br>        Plaintiff-Appellant,<br><br>v.<br><br>OREGON HEALTH AUTHORITY, an agency of the State of Oregon; PATRICK ALLEN, in his official capacity as Director of Oregon Health Authority,<br><br>        Defendants-Appellees, | Nos.   19-35103<br><br>D.C. No. 6:18-cv-00296-MO |

[*]        This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

and

LYNNE SAXTON,

        Defendant.

---

| FAMILYCARE, INC., an Oregon non-profit corporation, | No.   18-35891 |
|---|---|
|         Plaintiff-Appellee, | D.C. No. 6:18-cv-00296-MO |
| v. | |
| PATRICK ALLEN, in his individual capacity, | |
|         Defendant-Appellant, | |
| and | |
| OREGON HEALTH AUTHORITY, an agency of the State of Oregon; LYNNE SAXTON, | |
|         Defendants. | |

---

| FAMILYCARE, INC., an Oregon non-profit corporation, | No.   18-36009 |
|---|---|
|         Plaintiff-Appellee, | D.C. No. 6:18-cv-00296-MO |
| v. | |
| LYNNE SAXTON, | |

Defendant-Appellant,

and

PATRICK ALLEN, in his individual capacity; OREGON HEALTH AUTHORITY, an agency of the State of Oregon,

Defendants.

---

FAMILYCARE, INC., an Oregon non-profit corporation,

Plaintiff-Appellant,

v.

LYNNE SAXTON,

Defendant-Appellee,

and

PATRICK ALLEN, in his individual capacity; OREGON HEALTH AUTHORITY, an agency of the State of Oregon,

Defendants.

No.    18-36048

D.C. No. 6:18-cv-00296-MO

Appeal from the United States District Court
for the District of Oregon
Michael W. Mosman, District Judge, Presiding

3

Argued and Submitted March 2, 2020
Portland, Oregon

Before:  WOLLMAN,[**] FERNANDEZ, and PAEZ, Circuit Judges.

These appeals arise out of a 2014 contract between FamilyCare, Inc. (FamilyCare) and the Oregon Health Authority (OHA).  FamilyCare was a Coordinated Care Organization (CCO)[1] and participated in Oregon's Medicaid[2] program.  The contract was subject to federal oversight by the Centers for Medicare & Medicaid Services (CMS), which must "review[] and approve[] all of Oregon['s] contracts with [CCOs] and requires that capitation rates . . . be actuarially sound."  *Oregon v. Campbell*, 438 P.3d 448, 456 (Or. Ct. App. 2019).

---

[**]    The Honorable Roger L. Wollman, United States Circuit Judge for the U.S. Court of Appeals for the Eighth Circuit, sitting by designation.

[1]    *See* Or. Rev. Stat. §§ 414.620(1), 414.625(1).  Oregon received a demonstration waiver from the federal government for its Medicaid program, pursuant to which Oregon's CCOs meet the requirements of managed care organizations (MCOs) under federal law.  *See* 42 U.S.C. §§ 1315(a), 1396b(m)(1)(A); *see also* 42 C.F.R. § 438.2 (defining "[m]anaged care organization (MCO)").

[2]    *See Planned Parenthood Ariz. Inc. v. Betlach*, 727 F.3d 960, 963 (9th Cir. 2013); *see also* 42 U.S.C. § 1315(a); Or. Rev. Stat. § 413.032(1)(i).

The district court dismissed certain claims and granted or denied summary judgment on others. We have jurisdiction pursuant to 28 U.S.C. § 1291,[3] the collateral order doctrine,[4] and the doctrine of pendent jurisdiction.[5] We affirm in part, reverse in part, and vacate in part.

No. 19-35103

The district court properly granted summary judgment to OHA on FamilyCare's Oregon Administrative Procedure Act (APA)[6] claims that OHA failed to set actuarially sound capitation rates in 2017 and 2018. The parties agree that Oregon law requires OHA to comply with federal Medicaid law. *See, e.g.*, Or. Rev. Stat. § 413.071; Or. Admin. R. 410-141-3010(7); *see also Adamson v. Or. Health Auth.*, 412 P.3d 1193, 1194, 1196 (Or. Ct. App. 2017). As relevant to the contract at issue here,[7] federal law explicitly requires CMS to "review[] and approve[]" capitation rates "as actuarially sound," describes the standards rates

---

[3]     *See* Fed. R. Civ. P. 54(b).

[4]     *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 944–45 (9th Cir. 2017).

[5]     *Cunningham v. Gates*, 229 F.3d 1271, 1284–85 (9th Cir. 2000).

[6]     Or. Rev. Stat. § 183.484(5)(a)–(c).

[7]     *See* 42 C.F.R. § 438.3(a).

must satisfy to qualify for approval,[8] and defines "[a]ctuarially sound capitation rates" to include both CMS approval and the criteria CMS uses to bestow that approval.[9]  Because capitation rates cannot be approved by CMS unless they are actuarially sound,[10] CMS could not approve them if they were not.[11]  In light of that truism, in these circumstances neither Oregon nor federal law required OHA to do more than seek and obtain CMS approval of the 2017 and 2018 rates.  Thus, the district court did not err in granting summary judgment to OHA as to FamilyCare's Oregon APA claims.[12]

However, the district court erred in dismissing FamilyCare's contract claim against OHA, in which FamilyCare alleged that OHA had breached the implied covenant of good faith and fair dealing in their 2014 contract, as amended and extended, by presenting FamilyCare with unreasonable capitation rates in 2017 and

---

[8]    42 C.F.R. § 438.4(b)(1)–(9); *see also id.* at (a).

[9]    *Id.* at (a).

[10]    *Id.* at (a)–(b).

[11]    Of course, this does not mean that CMS could not approve a later adjustment.  Nor would it preclude a proper attack on a CMS determination pursuant to the provisions of federal law.  *See* 5 U.S.C. § 706; *see also Douglas v. Indep. Living Ctr. of S. Cal., Inc.*, 565 U.S. 606, 614, 132 S. Ct. 1204, 1210, 182 L. Ed. 2d 101 (2012).

[12]    The district court properly entered judgment on all of FamilyCare's Oregon APA claims, because all shared a common factual basis: OHA's purported failure to set rates that were actuarially sound.

2018.  The district court determined that the implied covenant of good faith and fair dealing was inapplicable because each annual rate-setting amendment was essentially a new contract.  The district court failed to properly apply Oregon law[13] to interpret the 2014 contract.  It did not identify the contractual provision it perceived to be disputed,[14] nor did it examine extrinsic evidence of the parties' intent, or apply maxims of construction to resolve the perceived ambiguity.  The district court also erred in failing to interpret the contract alleged in the operative complaint— the 2014 contract, as amended and extended— as a whole.  Thus, we vacate the dismissal of FamilyCare's contract claim and remand to allow the district court to consider the contract to which FamilyCare's claim applies.

No. 18-35593

The district court did not err in dismissing OHA's declaratory judgment action, which claimed that federal law preempted FamilyCare's state law claims. OHA argues that because the federal regulatory scheme governing actuarial soundness is so extensive and specific, Congress intended to foreclose all state

---

[13]     *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 474, 109 S. Ct. 1248, 1253, 103 L. Ed. 2d 488 (1989); *see also Yogman v. Parrott*, 937 P.2d 1019, 1021–22 (Or. 1997); *Riverside Homes, Inc. v. Murray*, 214 P.3d 835, 841 (Or. Ct. App. 2009).

[14]     Oregon law requires contracts of this type have a five-year term.  *See* Or. Rev. Stat. § 414.652(2)(a).  That itself indicates that the yearly rate changes were not new contracts at all.

action in that field.  *See Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373, 377, 135 S. Ct. 1591, 1595, 191 L. Ed. 2d 511 (2015).  We disagree.  Congress purposefully structured Medicaid as a cooperative endeavor between the federal government and the governments of individual states,[15] and that structure plainly requires state regulation; thus, Congress plainly did not intend to foreclose state action in the Medicaid field.  *See N.Y. State Dep't of Soc. Servs. v. Dublino*, 413 U.S. 405, 411 n.9, 93 S. Ct. 2507, 2512 n.9, 27 L. Ed. 2d 688 (1973); *id.* at 421, 93 S. Ct. at 2517. We also reject OHA's attempt to infer preemption from the comprehensive nature of the federal regulatory scheme, which is "virtually tantamount to saying that whenever a federal agency decides to step into a field, its regulations will be exclusive."  *Hillsborough Ctv. Automated Med. Labs., Inc.*, 471 U.S. 707, 717, 105 S. Ct. 2371, 2377, 85 L. Ed. 2d 714 (1985); *Dublino*, 413 U.S. at 415, 93 S. Ct. at 2514.  Moreover, the Supreme Court's determination in *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 323–24, 328, 135 S. Ct. 1378, 1382, 1385, 191 L. Ed. 2d 471 (2015), that the Medicaid Act had no private enforcement mechanism says nothing about a Congressional intent to preclude a state from imposing its own sanctions for violating federal requirements.  *See Bates v. Dow Agrosciences*

---

[15]     *Planned Parenthood*, 727 F.3d at 963.

*LLC*, 544 U.S. 431, 441–42, 125 S. Ct. 1788, 1797, 161 L. Ed. 2d 687 (2005).  The

district court properly dismissed OHA's declaratory relief action.

Nos. 18-36009, 18-35891, and 18-36048

Patrick Allen and Lynne Saxton each appeal the district court's denial of

qualified immunity from FamilyCare's 42 U.S.C. § 1983 claim that they retaliated

against it for its constitutionally-protected speech.  *See Ashcroft v. Iqbal*, 556 U.S.

662, 672, 129 S. Ct. 1937, 1946, 173 L. Ed. 2d 868 (2009); *Isayeva*, 872 F.3d at

944–45; *see also Howard v. City of Coos Bay*, 871 F.3d 1032, 1044 (9th Cir.

2017).  FamilyCare cross-appeals the district court's partial grant of qualified

immunity to Saxton.  *See Woodward v. City of Tucson*, 870 F.3d 1154, 1159 (9th

Cir. 2017).  The district court erred in denying Allen qualified immunity, and it

erred in granting Saxton qualified immunity in part.

An official should receive qualified immunity "unless the official's conduct

violated a clearly established constitutional right."  *Pearson v. Callahan*, 555 U.S.

223, 232, 129 S. Ct. 808, 816, 172 L. Ed. 2d 565 (2009).  In order for FamilyCare

to establish that its First Amendment rights were violated,"[it] must prove that (1)

[it] engaged in protected speech; (2) the defendants took an adverse . . . action

against [it]; and (3) [its] speech was a substantial or motivating factor for the

adverse . . . action."  *Howard*, 871 F.3d at 1044 (internal quotation marks omitted);

9

*Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1101, 1102–03 (9th Cir. 2011) (applying that test to an independent contractor).  In order to show that its right was clearly established, FamilyCare must demonstrate "'that every reasonable official would have understood that what he is doing violates that right.'"  *Mullenix v. Luna*, __ U.S. __, __, 136 S. Ct. 305, 308, 193 L. Ed. 2d 255 (2015) (per curiam).

**(1)    Allen**

FamilyCare argues that Allen retaliated against it.  We disagree.  Assuming for present purposes that an independent contractor should be treated as a public employee in the context presented here,[16] Allen was entitled to summary judgment as to the 2018 rate-setting because there was no genuine dispute of material fact regarding whether FamilyCare's speech was a substantial or motivating factor for Allen's commissioning the independent reports and retaining the rate methodology.  *See Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1056, 1062 (9th Cir. 2013).  FamilyCare's speculation about Allen's motive is insufficient to show a genuine dispute of material fact.  *See Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986); *Nat'l Indus., Inc. v.*

---

[16]    *See Clairmont*, 632 F.3d at 1101

*Republic Nat'l Life Ins. Co.*, 677 F.2d 1258, 1267 (9th Cir. 1982).  Because

FamilyCare failed to adduce sufficient evidence that Allen acted with a retaliatory

motive, Allen was entitled to qualified immunity as to his rate-setting conduct.  *See*

*Keyser v. Sacramento City Unified Sch. Dist.*, 265 F.3d 741, 752–53 (9th Cir.

2001); *Pratt*, 65 F.3d at 808; *see also Howard*, 871 F.3d at 1045 (proximity in time

must be such "that a 'jury logically could infer'" a retaliatory motive); *Coszalter v.*

*City of Salem*, 320 F.3d 968, 978 (9th Cir. 2003).

Allen was likewise entitled to summary judgment as to his conduct in

issuing the purported ultimatum and failing to timely provide the 2018 rates to

FamilyCare.  FamilyCare presented no evidence that Allen's issuing of essentially

empty threats during a negotiation, even if done in retaliation for protected activity,

rises to the level of a constitutional violation.  *Cf. Alpha Energy Savers, Inc. v.*

*Hansen*, 381 F.3d 917, 923, 928 (9th Cir. 2004) (government agency workers

"tampered with files, altered bidding sheets, manipulated the department's

computer database, and engaged in other schemes" to divert work from a

contractor who had engaged in protected speech).  And even if Allen's negotiation

tactics could amount to a constitutional violation in certain contexts, FamilyCare

points to no authority that clearly established a violation in the particular

circumstances presented here: an agency head making empty threats, or taking

11

obdurate and intransigent (or even bad faith) positions in contract amendment negotiations with a sophisticated contractor that was ready and able to aggressively assert and protect its rights. *See Karl v. City of Mountlake Terrace*, 678 F.3d 1062, 1073–74 (9th Cir. 2012). Thus, the district court should have granted Allen qualified immunity from FamilyCare's § 1983 claim.

### (2)    Saxton

FamilyCare also brought a § 1983 claim against Saxton for speech retaliation, alleging that she retaliated against it by cutting its 2017 contract rates and disparaging it in a public relations campaign.

As to the 2017 retaliatory rate-setting, we decline to consider Saxton's argument that she was entitled to qualified immunity because she failed to present that argument to the district court. *See Greisen v. Hanken*, 925 F.3d 1097, 1115 (9th Cir. 2019); *Crawford v. Lungren*, 96 F.3d 380, 389 n.6 (9th Cir. 1996). Moreover, we lack jurisdiction to review the district court's denial of Saxton's motion for summary judgment arising from the 2017 rate-setting, and to consider any of her arguments on appeal that fail to view the facts in the light most favorable to FamilyCare. *See Moss v. U.S. Secret Serv.*, 572 F.3d 962, 972–73 (9th Cir. 2009).

As to the public relations campaign, we hold that the district court erred in partially granting Saxton qualified immunity because, taking the facts in the light most favorable to FamilyCare,[17] it was clearly established that Saxton's conduct violated the Constitution.  At the time Saxton acted, a reasonable official would have been on notice that retaliating against a contractor's protected speech with a campaign that improperly disparaged it, while simultaneously reducing the contractor's compensation, violated the contractor's First Amendment rights.  *See Greisen*, 925 F.3d at 1113–14; *Allen v. Scribner*, 812 F.2d 426, 434 & n.17 (9th Cir.), *amended by* 828 F.2d 1445 (9th Cir. 1987).  FamilyCare presented sufficient evidence suggesting that Saxton retaliated against its protected speech by implementing the campaign.  On this record, whether Saxton's statements were accurate or she had a benign motive were quintessential disputes of fact that could not be resolved at the summary judgment stage.  *See Allen*, 812 F.2d at 435; *see also O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016).  Thus, the district court should have denied her motion for summary judgment in full.

**AFFIRMED in part and VACATED in part in No. 19-35103; AFFIRMED in Nos. 18-35593 and 18-35891; REVERSED in Nos. 18-36009 and 18-36048.**  The parties shall bear their own costs in No. 19-35103.

---

[17]    *See Isayeva*, 872 F.3d at 945.

# United States Court of Appeals for the Ninth Circuit

## Office of the Clerk
95 Seventh Street
San Francisco, CA 94103

## Information Regarding Judgment and Post-Judgment Proceedings

**Judgment**
- This Court has filed and entered the attached judgment in your case. Fed. R. App. P. 36.  Please note the filed date on the attached decision because all of the dates described below run from that date, not from the date you receive this notice.

**Mandate (Fed. R. App. P. 41; 9th Cir. R. 41-1 & -2)**
- The mandate will issue 7 days after the expiration of the time for filing a petition for rehearing or 7 days from the denial of a petition for rehearing, unless the Court directs otherwise.  To file a motion to stay the mandate, file it electronically via the appellate ECF system or, if you are a pro se litigant or an attorney with an exemption from using appellate ECF, file one original motion on paper.

**Petition for Panel Rehearing  (Fed. R. App. P. 40; 9th Cir. R. 40-1)**
**Petition for Rehearing En Banc (Fed. R. App. P. 35; 9th Cir. R. 35-1 to -3)**

**(1)    A.    Purpose (Panel Rehearing):**
- A party should seek panel rehearing only if one or more of the following grounds exist:
  - ► A material point of fact or law was overlooked in the decision;
  - ► A change in the law occurred after the case was submitted which appears to have been overlooked by the panel; or
  - ► An apparent conflict with another decision of the Court was not addressed in the opinion.
- Do not file a petition for panel rehearing merely to reargue the case.

**B.    Purpose (Rehearing En Banc)**
- A party should seek en banc rehearing only if one or more of the following grounds exist:

► Consideration by the full Court is necessary to secure or maintain uniformity of the Court's decisions; or

► The proceeding involves a question of exceptional importance; or

► The opinion directly conflicts with an existing opinion by another court of appeals or the Supreme Court and substantially affects a rule of national application in which there is an overriding need for national uniformity.

**(2)** **Deadlines for Filing:**

• A petition for rehearing may be filed within 14 days after entry of judgment. Fed. R. App. P. 40(a)(1).

• If the United States or an agency or officer thereof is a party in a civil case, the time for filing a petition for rehearing is 45 days after entry of judgment. Fed. R. App. P. 40(a)(1).

• If the mandate has issued, the petition for rehearing should be accompanied by a motion to recall the mandate.

• *See* Advisory Note to 9th Cir. R. 40-1 (petitions must be received on the due date).

• An order to publish a previously unpublished memorandum disposition extends the time to file a petition for rehearing to 14 days after the date of the order of publication or, in all civil cases in which the United States or an agency or officer thereof is a party, 45 days after the date of the order of publication. 9th Cir. R. 40-2.

**(3)** **Statement of Counsel**

• A petition should contain an introduction stating that, in counsel's judgment, one or more of the situations described in the "purpose" section above exist. The points to be raised must be stated clearly.

**(4)** **Form & Number of Copies (9th Cir. R. 40-1; Fed. R. App. P. 32(c)(2))**

• The petition shall not exceed 15 pages unless it complies with the alternative length limitations of 4,200 words or 390 lines of text.

• The petition must be accompanied by a copy of the panel's decision being challenged.

• An answer, when ordered by the Court, shall comply with the same length limitations as the petition.

• If a pro se litigant elects to file a form brief pursuant to Circuit Rule 28-1, a petition for panel rehearing or for rehearing en banc need not comply with Fed. R. App. P. 32.

- The petition or answer must be accompanied by a Certificate of Compliance found at Form 11, available on our website at www.ca9.uscourts.gov under *Forms.*
- You may file a petition electronically via the appellate ECF system. No paper copies are required unless the Court orders otherwise. If you are a pro se litigant or an attorney exempted from using the appellate ECF system, file one original petition on paper. No additional paper copies are required unless the Court orders otherwise.

## Bill of Costs (Fed. R. App. P. 39, 9th Cir. R. 39-1)
- The Bill of Costs must be filed within 14 days after entry of judgment.
- See Form 10 for additional information, available on our website at www.ca9.uscourts.gov under *Forms.*

## Attorneys Fees
- Ninth Circuit Rule 39-1 describes the content and due dates for attorneys fees applications.
- All relevant forms are available on our website at www.ca9.uscourts.gov under *Forms* or by telephoning (415) 355-7806.

## Petition for a Writ of Certiorari
- Please refer to the Rules of the United States Supreme Court at www.supremecourt.gov

## Counsel Listing in Published Opinions
- Please check counsel listing on the attached decision.
- If there are any errors in a published opinion, please send a letter **in writing within 10 days** to:
  - ► Thomson Reuters; 610 Opperman Drive; PO Box 64526; Eagan, MN 55123 (Attn: Jean Green, Senior Publications Coordinator);
  - ► and electronically file a copy of the letter via the appellate ECF system by using "File Correspondence to Court," or if you are an attorney exempted from using the appellate ECF system, mail the Court one copy of the letter.

Post Judgment Form - Rev. 12/2018

3

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
### Form 10. Bill of Costs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form10instructions.pdf*

**9th Cir. Case Number(s)**

**Case Name**

The Clerk is requested to award costs to (*party name(s)*):

I swear under penalty of perjury that the copies for which costs are requested were actually and necessarily produced, and that the requested costs were actually expended.

**Signature**                    **Date**

*(use "s/[typed name]" to sign electronically-filed documents)*

| COST TAXABLE | REQUESTED *(each column must be completed)* | | | |
|---|---|---|---|---|
| DOCUMENTS / FEE PAID | No. of Copies | Pages per Copy | Cost per Page | TOTAL COST |
| Excerpts of Record* | | | $ | $ |
| Principal Brief(s) *(Opening Brief; Answering Brief; 1st, 2nd , and/or 3rd Brief on Cross-Appeal; Intervenor Brief)* | | | $ | $ |
| Reply Brief / Cross-Appeal Reply Brief | | | $ | $ |
| Supplemental Brief(s) | | | $ | $ |
| Petition for Review Docket Fee / Petition for Writ of Mandamus Docket Fee | | | | $ |
| | | | **TOTAL:** | $ |

***Example:*** *Calculate 4 copies of 3 volumes of excerpts of record that total 500 pages [Vol. 1 (10 pgs.) + Vol. 2 (250 pgs.) + Vol. 3 (240 pgs.)] as:*
*No. of Copies: 4; Pages per Copy: 500; Cost per Page: $.10 (or actual cost IF less than $.10);*
*TOTAL: 4 x 500 x $.10 = $200.*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*