**David B. Markowitz, OSB #742046**
DavidMarkowitz@MarkowitzHerbold.com
**Matthew A. Levin, OSB #003054**
MattLevin@MarkowitzHerbold.com
**Harry B. Wilson, OSB #077214**
HarryWilson@MarkowitzHerbold.com
**Laura Salerno Owens, OSB #076230**
LauraSalerno@MarkowitzHerbold.com
MARKOWITZ HERBOLD PC
1455 SW Broadway, Suite 1900
Portland, OR  97201
Tele:  (503) 295-3085
Fax:  (503) 323-9105

Special Assistant Attorneys General for Defendants Oregon
Health Authority, an agency of the State of Oregon, and
Patrick Allen in his official capacity as director of the
Oregon Health Authority
[Additional Counsel of Record Listed on Signature Page]

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| FAMILYCARE, INC., an Oregon non-profit corporation,<br><br>                                 Plaintiff,<br><br>        v.<br><br>OREGON HEALTH AUTHORITY, an agency of the State of Oregon, and PATRICK ALLEN, both individually and in his official capacity as director of the Oregon Health Authority, and LYNNE SAXTON,<br><br>                                 Defendants. | Case No. 6:18-cv-00296-MO<br><br>**DEFENDANT OREGON HEALTH AUTHORITY'S MOTION TO EXTEND STAY**<br><br>**Oral argument requested** |

**Page 1 -   OHA'S MOTION TO EXTEND STAY**

**LR 7-1 CERTIFICATION**

Pursuant to Local Rule 7-1(a)(1)(A), counsel for defendant Oregon Health Authority ("OHA") has conferred by telephone with counsel for plaintiff FamilyCare, Inc. ("FamilyCare"). Despite these efforts, OHA has been unable to resolve the dispute with FamilyCare, and FamilyCare opposes this motion. Defendant Lynne Saxton does not oppose the motion.

**MOTION**

Pursuant to the Court's inherent authority, OHA moves the Court to extend the stay of proceedings (Dkt. ##342, 370) until July 5, 2021.

**POINTS AND AUTHORITIES**

**I.     Introduction**

Oregon, the United States, and the world are in the midst of a deadly, once-in-a-century pandemic. As the Oregon Supreme Court recently observed: A "novel coronavirus was first detected in late 2019, and it has spread rapidly across the globe, killing hundreds of thousands of people. Even more people have fallen ill, and healthcare systems in cities around the world have been overwhelmed, including in the United States. As the virus has spread, government leaders have taken actions to protect people in their jurisdictions from illness and death. They have done so in constantly changing circumstances, and they have responded to new information about the virus and its effects as it has become available." *Elkhorn Baptist Church v. Brown*, 366 Or. 506, 509 (2020).

The deadly threat created by the virus has led countries worldwide to impose remarkable restrictions on daily life. In the United States, state governments have ordered businesses and schools to close. Travelers are ordered to quarantine. Courts, including this one, have postponed trials and cancelled in-person appearances. Individuals across Oregon and the United States have made significant sacrifices to ensure that they and their families, friends, and neighbors can remain safe and healthy during this difficult and challenging time.

**Page 2 -  OHA'S MOTION TO EXTEND STAY**

In Oregon, OHA is the lead the agency responsible for the State's response to the coronavirus pandemic.  OHA has completely reconfigured itself to address the crisis.  It has pulled resources from across the entire agency to support its work protecting the health, safety, and well-being of more than four million Oregonians.  Its staff are working enormous hours and suspending work on everything but essential tasks.  OHA's Director, Patrick Allen, co-chairs the State Multi-Agency Coordinating Committee, the State committee responsible for advising the Governor on the State's overall pandemic response.  Given the severity of the circumstances and the enormous press of work, OHA and its leadership have no capacity to participate in this litigation, let alone prepare for trial.  OHA, therefore, moves this Court to extend the present stay of litigation for 12 months.  If this litigation is not stayed, OHA will be faced with the stark choice of defending the agency against this lawsuit or defending all Oregonians against the deadliest public health emergency in a century.

The prejudice to FamilyCare from a stay, if any, is remote.  FamilyCare ceased administering health care for Oregonians in early 2018.  Its only remaining viable claims are for monetary damages and the organization has no immediate needs for funds.  The case record has been preserved: all discovery, including depositions, is complete.  Whatever document discovery needs to be supplemented, if any, can be completed in a timely manner once the stay is lifted. In light of the critical functions OHA is performing to protect public health, and the absence of prejudice to FamilyCare, this Court should extend the stay of this litigation for 12 months.

## II.    Background

### A.    OHA is the lead agency responsible for responding to the coronavirus pandemic in Oregon.

Last March, Governor Kate Brown declared a statewide health emergency due to the spread of the novel coronavirus in Oregon.[1]  The Governor extended that declaration earlier this week.[2]  The federal government similarly declared a national emergency at the same time.

---

[1] https://www.oregon.gov/gov/Documents/executive_orders/eo_20-03.pdf

[2] https://www.oregon.gov/gov/Documents/executive_orders/eo_20-30.pdf

**Page 3 -   OHA'S MOTION TO EXTEND STAY**

The coronavirus pandemic has dramatically re-ordered American life, killing more than 120,000, ending public gatherings, shuttering businesses, and leaving millions without jobs.

OHA is the lead Oregon state agency responsible for responding to the coronavirus pandemic.  (Declaration of Patrick Allen in Supp. of Mot. to Extend Stay ("Allen Decl.") ¶ 3.)  Since the spread of the pandemic, OHA has reconfigured its operations to make coronavirus response the agency's first priority.  (Allen Decl. ¶ 3; Declaration of Kristine Kautz in Supp. of Mot. to Extend Stay ("Kautz Decl.") ¶ 3.)  OHA has transformed into a coronavirus agency, pulling resources from across the agency to respond to the crisis.  (Declaration of Aaron Dunn in Supp. of Mot. to Extend Stay ("Dunn Decl.") ¶ 4.)  Managers and staff across the agency have been reassigned to tasks dedicated to coronavirus response.  (*Id.*)  No body of work in OHA is untouched.  (*Id.*)  Over the next several months, OHA will work on tracking case outbreaks, performing contact-tracing, monitoring hotspot locations, ensuring hospitals and health care providers have adequate supplies, reviewing emergency room usage, and protecting vulnerable populations.  (*Id.* ¶ 5.)  When treatments or vaccines become available, OHA will be responsible for ensuring they are made available across the state.  (*Id.*)  OHA has deferred much of its other work pending resolution of the pandemic.  (Kautz Decl. ¶ 3; Declaration of Chelsea Guest in Supp. of Mot. to Extend Stay ("Guest Decl.") ¶ 6.)  OHA's leaders and staff are working extraordinary hours to protect the health and safety of Oregonians.[3]  (Dunn Decl. ¶ 7.)

**B.    OHA's leadership—who are responsible for overseeing this litigation and may be fact witnesses—are devoted to responding to coronavirus.**

**1.    OHA Director Patrick Allen is one of the top officials statewide responsible for protecting Oregonians during the pandemic.**

OHA's director, Patrick Allen, is responsible for the overall operations of the agency. (Allen Decl. ¶ 2.)  Director Allen is also one of the top officials statewide responsible for leading Oregon's response to the pandemic.  (*Id.* ¶ 4.)  Presently, Director Allen spends at least 90% of

---

[3]  The preparation of this motion and the accompanying declarations itself deprived OHA officials of time they needed to spend on more pressing tasks.  However, the importance of obtaining a stay to assure that they can have uninterrupted focus going forward justified and necessitated their assistance.

his time working directly on coronavirus response. (*Id.* ¶ 3.) With limited exceptions, Director Allen works seven days a week due to the increased workload from responding to the pandemic. (*Id.* ¶ 6.) Director Allen does not anticipate his workload dropping significantly until a vaccine or treatment is in widespread use. (*Id.* ¶ 5.)

In addition to leading OHA's response to coronavirus, Director Allen co-chairs the Multi-Agency Coordinating Committee, the group of State agency leaders that report directly to the Governor regarding the State's response to the coronavirus pandemic. (*Id.* ¶ 4.) Over the next several months, Director Allen will oversee the creation of a new division within OHA dedicated solely to managing Oregon's coronavirus response. (*Id.* ¶ 3.)

### 2. OHA's Manager of Actuarial Services, Chelsea Guest, is completely occupied working on coronavirus response and essential tasks.

Chelsea Guest is Manager of the Actuarial Services Section of the Oregon Health Authority. (Guest Decl. ¶ 2.) Guest now dedicates 50-60% of her time to coronavirus response. (*Id.* ¶ 3.) She and her staff are focused on protecting the viability of strained health care networks. Guest is working with OHA to develop programs to support financially vulnerable health care providers. (*Id.*) This is a time-consuming process because OHA needs to create new programs to provide this assistance and in some instances obtain waivers from the federal government to provide support. (*Id.*) Guest and her team are supporting the agency in preparing waivers, developing new funding initiatives, and communicating with providers to understand and address the drastic changes in the health care economy. (*Id.*)

Guest is also working to assist CCOs with changes to their businesses. (*Id.* ¶ 5.) CCO enrollment has increased significantly. (*Id.*) The increase in membership has transformed the CCOs' overall budgetary and rate needs. (*Id.*) Guest and OHA are working to ensure that these changes are appropriately reflected in CCOs' rates. (*Id.*) Her team has delayed or suspended non-essential work and, even still, their overall workload has increased. (*Id.* ¶ 6.)

3. **The Governor's Regional Solutions Coordinator for Eastern Oregon, Courtney Warner Crowell, is completely occupied working on coronavirus response and essential tasks.**

Crowell is the Governor's primary liaison for Eastern Oregon municipalities, businesses, and individual constituents regarding the State's coronavirus economic response, particularly around implementation of the Governor's executive orders, dissemination of economic and public health guidelines, and collection of information for the Governor's coronavirus economic advisory council. (Declaration of Courtney Warner Crowell in Supp. of Mot. to Extend Stay ("Crowell Decl.") ¶ 3.) Responding to the coronavirus pandemic has taken over the vast majority of her time and forced her to suspend or postpone many other projects. (*Id.*)

Among other tasks, Crowell is responsible for convening and leading the Eastern Oregon Regional Economic Recovery Team, a group created to assist Eastern Oregon to address the economic fallout from the pandemic. (*Id.* ¶ 4.) This groups consists of state and local government officials, business leaders, and public health experts. (*Id.*) The Team meets every week to ensure that Eastern Oregon communities are receiving the latest guidance from the State on complying with government guidance and to collect information from Eastern Oregon to inform the State's policy decisions. (*Id.*)

Crowell also works directly with municipal officials, businesses, and constituents across Eastern Oregon on issues including compliance with State rules and guidelines related to coronavirus and reopening plans. (*Id.* ¶ 5.) She handles dozens of phone calls a day from elected officials, municipal employees, and small businesses. (*Id.*) In addition to advising those callers about state policies and guidance, she relays questions, concerns, and information back to the Governor's office. (*Id.*) She also assists the Governor's office in developing state policy for the coronavirus response in Eastern Oregon. (*Id.*)

This new work has increased Crowell's overall workload by 20-25% and forced her to postpone much other important work that is not related to coronavirus. (*Id.* ¶ 7.)

**Page 6 -   OHA'S MOTION TO EXTEND STAY**

**C.     OHA does not have the capacity to participate in this litigation without sacrificing critical work that is necessary to protect the health, safety, and well-being of Oregonians.**

Prior to the appeal, OHA officials devoted substantial amounts of time to assisting with this litigation.  Presently, all of OHA's top leadership play a significant role in managing the litigation.  (Kautz Decl. ¶ 5.)  Director Allen, a named defendant in this lawsuit, is responsible for all agency decisions in this litigation, and was deposed by FamilyCare.  (Allen Decl. ¶¶ 2, 7.)  When the litigation was active, Director Allen devoted an average of 10 hours a week to this litigation.  (*Id.* ¶ 7.)  Due to the pandemic, Director Allen has no capacity to devote time to this litigation now.  (*Id.*)  If he had to spend time managing and participating in this litigation, he would be forced to forego other vitally important work that protects the health and safety of Oregonians.  (*Id.*)

Guest devoted a substantial amount of time to assisting the litigation team prior to the appeal.  (Guest Decl. ¶ 7.)  Guest spent many hours assisting OHA's attorneys in understanding the complex actuarial issues at the heart of this dispute.  (*Id.*)  FamilyCare deposed her as a fact witness.  (*Id.* ¶ 2.)  Guest does not have capacity to continue her work on OHA's coronavirus response, perform her other essential job duties, and participate in this litigation.  (*Id.* ¶ 8.)  For Guest, like many during this crisis, her time is further constrained by family obligations with schools and day care closed.  (*Id.*)  If she had to participate in this litigation, there would be a trade-off with other essential work.  (*Id.*)

Crowell was deposed in the litigation and documents and emails she worked on were produced in discovery.  (Crowell Decl. ¶ 8.)  Given her added workload due to the coronavirus response, Crowell does not have the capacity to participate in discovery or prepare for trial.  (*Id.*)  If forced to participate in discovery and prepare for trial, she would have to reduce her work on the State's efforts to protect the well-being of Eastern Oregonians.  (*Id.*)

**Page 7 -  OHA'S MOTION TO EXTEND STAY**

### III.    Legal Standard

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  When deciding whether to issue a stay, the court should weigh competing interests, including (1) the hardship or inequity a party may suffer in being required to go forward; (2) the possible damage that might result from the granting of a stay; and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.  *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (quoting *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)).  Only if there is a "fair possibility" of damage to someone else, must the movant show hardship or inequity.  *Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007).

### IV.    The Court should stay this litigation for 12 months so that OHA can respond to the coronavirus pandemic.

OHA's time, resources, and staff are consumed in responding to a once-in-a-century pandemic.  Proceeding with this litigation now would impose a hardship on OHA by forcing it to choose between defending FamilyCare's claims for more than $100 million in public money and defending the health, safety, and well-being of Oregonians.  There is no prejudice to FamilyCare from a stay: the case record is closed, depositions are complete, and any discovery that needs to be supplemented can be addressed after the stay.  FamilyCare has ceased administering health care services to Oregonians and its only remaining viable claims are for money damages. This Court should stay this case for one year so that OHA, its director, and its high-level officials can focus on protecting Oregonians.

#### A.    Defendants will experience significant hardship if they are forced to divert attention from their efforts to stop the spread of novel coronavirus.

Restarting this litigation now would cause a severe hardship on OHA.  If this case becomes active again, the demands on OHA's leadership will be substantial.  The parties may seek to revise their pleadings in light of the Ninth Circuit's decision and potentially prepare and

**Page 8 -  OHA'S MOTION TO EXTEND STAY**

respond to another round of summary judgment motions.[4]  (Declaration of David Markowitz in Supp. of Mot. to Extend Stay ("Markowitz Decl.") ¶ 2.)  OHA's leadership plays a critical role in that process:  They set and approve all legal strategy and assist trial counsel with developing and coordinating the agency's factual support.  (*Id.*)  Although discovery was previously completed, if the parties supplement existing document requests, trial counsel relies on OHA's leadership and staff to assist in developing search terms, identifying relevant custodians, reviewing responsive documents, checking documents for privilege, and answering questions about complex factual issues.  (*Id.*)  OHA's leadership is also critical to preparation of expert reports. (*Id.* ¶ 3.)  When the parties exchange expert reports, OHA leadership will play a critical role in determining and supporting the factual response to plaintiff's expert report.  (*Id.*)

The demands of preparation for trial would be significant on OHA.  (*Id.* ¶ 4.)  This is a factually complex case, involving detailed data compilations and formulas and esoteric standards, rules, and regulations.  (*Id.*)  Trial counsel will need to prepare witness statements for all trial witnesses.  (*Id.*)  OHA's leadership are key witnesses who counsel need to actively participate in the preparation of their trial testimony and required witness statements.  (*Id.*) Because they are the most knowledgeable about key issues in the case, OHA's leadership will also assist trial counsel in preparing OHA's other witnesses and its experts.  (*Id.*)  And OHA leadership will need to review plaintiff's trial witness submissions and assist with gathering responsive exhibits and locating rebuttal witnesses.  (*Id.*)  At least one member of OHA's leadership will need to be present for all or virtually all of trial.  (*Id.*)

Yet, as described in detail above, given the coronavirus pandemic, OHA's leadership does not have the capacity to participate in this litigation.  If the case goes forward now and OHA officials dedicate time to the litigation, they will have to forego vitally important tasks critical to the health, safety, and well-being of Oregonians.  (Allen Decl. ¶ 7.)  But if the case goes forward and OHA officials do not work on the litigation, defense of the case will be materially harmed.  (Markowitz Decl. ¶ 5.)  Restarting this case, therefore, presents OHA with a

---

[4]  OHA reserves its right to oppose a motion to amend.

**Page 9 -  OHA'S MOTION TO EXTEND STAY**

stark choice: It could either forego vitally important work for the people of Oregon to defend itself in litigation, or it could shortchange the litigation, leaving itself vulnerable to FamilyCare's claims for more than $100 million.  The hardship posed by this choice outweighs the minimal prejudice to FamilyCare, if any.

District courts in the Ninth Circuit have permitted stays and extensions to deadlines due to the hardship imposed on a party by coronavirus.  For instance, in *Libutan v. MGM Grand Hotel LLC*, the district court granted a joint motion for a stay of all proceedings because coronavirus had imposed "an enormous drain" on the resources of defendant, a Las Vegas casino.  2:20-cv-00304-RFB-NJK, 2020 WL 1434440, at *2 (D. Nev. Mar. 24, 2020).  The district court reasoned that the casino had closed temporarily and therefore defendant would have limited capacity to provide witnesses and documents in discovery:  "[T]he unavailability of witnesses and documents due to the closure of MGM Grand will significantly infringe on both parties' ability to 'meaningfully participate in the discovery process,' which is an appropriate basis for staying proceedings."  *Id.* (citation omitted).  In other cases, district courts have similarly issued stays, citing the hardship to one of the parties caused by coronavirus.  *See, e.g., Bryant v. Boyd*, No. 1:18-CV-117-SEP, 2020 WL 1493548, at *2 (E.D. Mo. Mar. 27, 2020) (Granting stay of discovery where the "breadth of discovery . . . is substantial, and the Covid-19 pandemic will only compound the difficulty the parties have experienced obtaining discovery."); *Magassa v. Wolf*, 2:19-cv-02036-RSM, 2020 WL 2307477, at *1 (W.D. Wash. May 8, 2020) (Granting motion to stay discovery where defendants argued that "a temporary stay would relieve the Government from unnecessary discovery while operations are impaired during the COVID-19 pandemic."); *DivX, LLC v. Netflix, Inc.*, CV-191602-PSGDFMX, 2020 WL 3026034, at *3 (C.D. Cal. May 11, 2020) ("The coronavirus pandemic is also a relevant consideration" and favors a stay.).

**B.     FamilyCare will not suffer any damage by a one-year stay.**

FamilyCare faces little to no prejudice from a 12-month stay.  It is well-established in the Ninth Circuit that a delay in recovering money is not a sufficient harm to deny a stay.  *CMAX, Inc.*, 300 F.2d at 269 (denying mandamus petition where only evidence of prejudice was

**Page 10 - OHA'S MOTION TO EXTEND STAY**

delay in trying damages claims and all discovery was complete); *Reynolds v. Geico Corp.*, 2:16-CV-01940-SU, 2017 WL 815238, at \*2 (D. Or. Mar. 1, 2017) ("A delay in recovering monetary damages is not sufficient harm to warrant denying a stay."); *Bay Area Surgical Grp., Inc. v. Aetna Life Ins. Co.*, 5:13-CV-05430 EJD, 2014 WL 2759571, at \*5 (N.D. Cal. June 17, 2014) ("A delay in compensation for past harms does not equate to a strong showing of prejudice."). The gravamen of FamilyCare's complaint is that OHA underpaid it in 2017 and 2018 and it is entitled to damages for that underpayment.  But a one-year delay in litigating those claims does not outweigh the public's interest in having its public officials fully focused on coronavirus response.  *See Mays v. Dart*, No. 1:20-cv-02134, 2020 WL 1987007, at \*35 (N.D. Ill. Apr. 27, 2020) (noting the "interest of the public in containing the spread of coronavirus" when granting injunctive relief).  As the Supreme Court has explained, "[e]specially in cases of extraordinary public moment, the individual may be required to submit to delay not immoderate in extent and not oppressive in its consequences if the public welfare or convenience will thereby be promoted." *Landis*, 299 U.S. at 256.

Further, FamilyCare has already left the Medicaid market and has no definite plan to return and thus is not subject to any continuing harm by a one-year delay.  Moreover, discovery is complete.  The parties have taken nearly 30 depositions and exchanged tens of thousands of documents.   The record has been adequately preserved.  Any additional supplemental document discovery, which is likely to be minimal, can be exchanged expeditiously when the stay is lifted.  Delay in resolution of litigation, alone, does not warrant denying a stay.  *Enhanced Sec. Research, LLC v. Cisco Sys., Inc.*, No. C.A.09-571-JJF, 2010 WL 2573925, at \*3 (D. Del. June 25, 2010) ("the Court recognizes that a stay may delay resolution of the litigation, but this alone does not warrant a finding that Plaintiffs will be unduly prejudiced").

Finally, it is unlikely that this case will be resolved in the next year regardless of a stay.  Since Governor Brown declared a statewide emergency, this Court has issued six standing orders amending existing rules and procedures due to the virus.  (District of Oregon Standing Orders Nos. 2020-4, 2020-5, 2020-7, 2020-8, 2020-9, 2020-12.)  These orders have postponed all in-person hearings, including jury trials, until July 15, 2020.  When the Court resumes normal

**Page 11 - OHA'S MOTION TO EXTEND STAY**

operations, it may experience a backlog of cases, especially because criminal trials will be given precedence over civil matters. *See DivX, LLC*, 2020 WL 3026034, at *3 (Noting that, because of the coronavirus pandemic, it "is likely that if these cases were to proceed on their current schedule, hearings and trial would be subject to delays, particularly because criminal matters will take priority over these patent infringement actions."). Thus, even absent a stay, it is unlikely this matter will soon be set for a lengthy jury trial. (*See* Dkt. #129 (setting this matter for a 13-day jury trial).)

### C. The orderly course of justice favors a stay.

OHA requests a stay for a definite length of time: 12 months. This amount of time is consistent with the likely demands on the agency. Director Allen does not expect his time commitments to change for "the foreseeable future and probably not until after a vaccine or treatment has been made available throughout Oregon and is in widespread use." (Allen Decl. ¶ 5.) OHA's workload will continue even through development of a treatment or vaccine because OHA will have responsibility for ensuring that they are made available throughout Oregon. (Dunn Decl. ¶ 5.) A stay of 12 months is reasonable under the extraordinary and extenuating circumstances. *See Neste Oil OYJ v. Dynamic Fuels, LLC*, No. CV 12-1744-GMS, 2013 WL 3353984, at *2 (D. Del. July 2, 2013) (granting stay even where "the delay that would result from a stay of this action has the potential to be lengthy").

The orderly course of justice also favors a stay because the coronavirus pandemic creates scheduling issues for the Court that would be alleviated by a stay. As the Court knows, this is a complex case involving esoteric Medicaid regulations, substantial discovery, and potentially dozens of fact and expert witnesses. To move this case to trial, the parties will likely need the Court's assistance with substantial motion practice, including possibly renewed motions for summary judgment, discovery motions, and voluminous motions in limine. Trial itself will last 13 days and require a jury. The Court can temporarily avoid these concerns by granting the stay.

**Page 12 - OHA'S MOTION TO EXTEND STAY**

## V.    Conclusion

For the foregoing reasons, the Court should extend the stay (Dkt. ##342, 370) until July 5, 2021.

DATED this 3rd day of July, 2020.

ELLEN ROSENBLUM
ATTORNEY GENERAL
FOR THE STATE OF OREGON

By:    *s/Harry B. Wilson*
David B. Markowitz, OSB #742046
DavidMarkowitz@MarkowitzHerbold.com
Matthew A. Levin, OSB #003054
MattLevin@MarkowitzHerbold.com
Harry B. Wilson, OSB #077214
HarryWilson@MarkowitzHerbold.com
Laura Salerno Owens, OSB #076230
LauraSalerno@MarkowitzHerbold.com

*Special Assistant Attorneys General for Defendants Oregon Health Authority, an agency of the State of Oregon, and Patrick Allen in his official capacity as director of the Oregon Health Authority*

Carla A. Scott, OSB #054725
carla.a.scott@doj.state.or.us

*Of Attorney for Defendants Oregon Health Authority, an agency of the State of Oregon, and Patrick Allen in his official capacity as director of the Oregon Health Authority*

1012356

**Page 13 - OHA'S MOTION TO EXTEND STAY**