**Stephen F. English**, OSB No. 730843
SEnglish@perkinscoie.com
**Thomas R. Johnson**, OSB No. 010645
TRJohnson@perkinscoie.com
**Heidee Stoller**, OSB No. 072835
HStoller@perkinscoie.com
**Matthew J. Mertens**, OSB No. 146288
MMertens@perkinscoie.com
**Sasha A. Petrova**, OSB No. 154008
SPetrova@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Telephone:  503.727.2000
Facsimile:  503.727.2222

**Matthew Gordon**, *pro hac vice*
MGordon@perkinscoie.com
**David B. Robbins**, OSB No. 070630
DRobbins@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone:  206.359.8000
Facsimile:  206.359.9000

Attorneys for Plaintiff *FamilyCare, Inc.*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| FAMILYCARE, INC., an Oregon non-profit corporation,<br><br>          Plaintiff,<br><br>     v.<br><br>OREGON HEALTH AUTHORITY, an agency of the State of Oregon, PATRICK ALLEN, both individually and in his official capacity as director of the Oregon Health Authority, and LYNNE SAXTON,<br><br>          Defendants. | No. 6:18−cv−00296−MO<br><br>FAMILYCARE, INC.'S MOTION TO DOWN-DESIGNATE AEO DOCUMENTS<br><br>REQUEST FOR ORAL ARGUMENT |

FAMILYCARE, INC.'S MOTION TO DOWN-DESIGNATE AEO DOCUMENTS

## LOCAL RULE 7-1 CERTIFICATION[1]

Pursuant to Local Rule 7-1(a)(1)(A), and in an effort to reduce the number of documents at issue in this Motion or obviate the need for a motion entirely, counsel for plaintiff FamilyCare, Inc. ("FamilyCare") has extensively conferred in good faith about the subject of this Motion with counsel for Schramm Health Partners dba Optumas ("Optumas"), the fourteen other Coordinated Care Organizations ("CCOs"), and the Oregon Health Authority ("OHA"). Through that process, FamilyCare was able to reach a resolution with most of the CCOs and Optumas about down-designation. This Motion reflects and is consistent with the terms of those agreements.

In particular, (1) AllCare, (2) Columbia-Pacific, (3) Eastern Oregon CCO, (4) Health Share of Oregon, (5) Jackson Care Connect, (6) InterCommunity Health Network, (7) Primary Health of Josephine County, and (8) Willamette Valley Community Health (collectively, the "Consenting CCOs") agreed to down-designate to confidential the documents at issue, with the provisos that FamilyCare would immediately re-designate as AEO any documents that contain specific prescription-drug pricing information and that the terms of the protective orders otherwise remain in place. This Motion seeks down-designation on those terms.

Counsel for (1) Trillium Community Health Plan ("Trillium"), (2) Cascade Health Alliance ("Cascade"), (3) PacificSource Community Solutions ("PacificSource"), (4) Umpqua Health Alliance ("Umpqua"), and (5) Western Oregon Advanced Health ("WOAH," and collectively, the "Holdout CCOs") did not agree to down-designation on the terms agreed to with the Consenting CCO. Despite several requests, counsel for one CCO, Yamhill CCO, has not provided their client's position regarding down-designation.

---

[1] The Court's recent extension of the coronavirus-related stay preserved the parties' ability to seek relief for down-designation issues. *See* ECF No. 401 (OHA's unopposed motion to extend stay originally imposed in ECF No. 342, where Court left open resolution of AEO down-designation issues).

1-    FAMILYCARE'S MOTION TO DOWN-
      DESIGNATE AEO DOCUMENTS

The documents at issue include documents produced by OHA that OHA designated AEO, and documents produced by Optumas that Optumas designated AEO. Optumas-designated AEO documents include some that contain Optumas-specific detail that Optumas does (or did) maintain warrant AEO protection, as well as documents that Optumas initially determined may contain information that a CCO may consider to be commercially sensitive. After extensive conferral, and after re-reviewing such documents, Optumas agreed to down-designate, to confidential or to no designation, nearly all Optumas-designated documents at issue. But, as described in more detail below, the Holdout CCOs objected to FamilyCare accessing any of the documents that Optumas has down-designated, including those that Optumas determined after review did not appear to contain identifiable CCO information that might be considered potentially commercially sensitive and could be down-designated entirely. This Motion reflects and is consistent with the agreement reached with Optumas.

OHA, for its part, does not maintain that any of the OHA-designated documents at issue contain any information that OHA seeks to protect as AEO. Rather, OHA maintains that it designated documents as AEO on the basis that they might contain information that a CCO would consider to be commercially sensitive. OHA has stated that it will abide by an agreement with the CCOs and takes no position on the documents that a CCO contends must remain AEO.

### ORAL ARGUMENT REQUESTED

Oral argument is requested. FamilyCare estimates that thirty minutes will be required.

### MOTION

Pursuant to Federal Rules of Civil Procedure 26 and 37, FamilyCare moves this Court to order down-designation, on the terms agreed to with the Consenting CCOs, the documents identified in the list attached hereto as Exhibit 1. FamilyCare and the Consenting CCOs agreed that: (1) the documents in Exhibit 1 will be down-designated to confidential; (2) FamilyCare "agrees to immediately sequester any such documents it encounters that contain information about

2-    FAMILYCARE'S MOTION TO DOWN-
DESIGNATE AEO DOCUMENTS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

CCO-specific prescription drug pricing and to promptly re-designate any such documents as AEO";
and (3) the terms of the protective orders otherwise remain in effect. Exhibit 1 also reflects the
agreement between FamilyCare and Optumas, whereby Optumas down-designated all but 118
Optumas-produced documents at issue. [2] This motion is supported by the points and authorities
set forth in FamilyCare's February 1, 2019, letter to the Court, the points and authorities discussed
below, and the Declarations of William Murray ("Murray Decl.") and Matt Mertens ("Mertens
Decl.") filed herewith.[3]

## MEMORANDUM IN SUPPORT OF FAMILYCARE'S MOTION TO DOWN-DESIGNATE AEO DOCUMENTS

## I.    INTRODUCTION

In the nearly two years since FamilyCare submitted a list of documents to this Court for
down-designation, FamilyCare has negotiated extensively with other CCOs and Optumas (OHA's
rate-setting advisor) to try to reach a resolution. Most CCOs—including FamilyCare's former
competitor in the Portland metropolitan area—have agreed to terms for down-designation. And,
after re-reviewing documents it had originally designated, Optumas decided to down-designate the
vast majority. But a few CCOs have refused to agree and objected to Optumas's decision to down-
designate documents—even those that Optumas believes have no information that a CCO *might*
consider commercially sensitive. Notably, despite ample opportunity, most of these Holdout

---

[2] Exhibit 1 consists of the documents identified in FamilyCare's February 1, 2019 and June 9,
2020 submissions to the Court, except for the 118 documents on those lists that Optumas
contends should remain AEO because they ostensibly contain Optumas's "core" trade secret
information. FamilyCare does not seek down-designation of those documents at this time
pursuant to an agreement with Optumas discussed *infra.* By excluding those documents from
this Motion, FamilyCare does not concede that they contain trade secrets or merit AEO
protection and reserves the right to later seek down-designation. Additionally, FamilyCare has
removed five documents from its February 1, 2019 submission after further review:
OHA_LIT_00290264, OHA_LIT_00293971, OHA_LIT_00299131, OHA_LIT_00488376, and
OHA_LIT_00494773..

FAMILYCARE'S MOTION TO DOWN-
DESIGNATE AEO DOCUMENTS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

CCOs have never even bothered to download the documents at issue. And, in all this time, none has identified a single document that they claim contains material that merits AEO protection.

This absence of effort by the Holdout CCOs is telling, as other events have rendered any already-tenuous claims for AEO protection even less merited. The "CCO 2.0" contracts have all been awarded, for five-year terms, through at least the end of 2024. The information in the subject documents—from 2016 and earlier—is already five years old, and it will be even staler when CCO contracts are re-let in the future—2024 or later. Because of its age, OHA's rate-making no longer relies on such data. Moreover, the CCO landscape has changed. CCO 2.0 heralded a shift in reimbursement methodologies, to value-based payments, that renders reimbursement data from 2016 and earlier competitively useless. As a result, any potential competitive value the information *might* have had two-and-a-half years ago has evaporated.

Meanwhile, FamilyCare has been out of the CCO marketplace for nearly three years and has only a few employees remaining. As a practical matter, down-designating the documents at issue would allow only a few additional individuals to view the documents, and they would of course still be subject to the protections in the protective orders, including the limitation that the documents and information contained therein be used only for this litigation.

The documents at issue in this motion are key to FamilyCare's litigation because they relate to a core issue in this case—whether OHA treated FamilyCare unfairly in rate-setting. And although the documents are accessible by an outside expert, the AEO designation has hindered FamilyCare's employees—who know more than anybody about the issue—from full participation with counsel in this litigation. Meanwhile, OHA has had unfettered access to, and ability to discuss with counsel, the information in the more than 19,000 AEO documents. This information asymmetry has disadvantaged FamilyCare throughout this case and should be rectified. For those reasons, FamilyCare respectfully requests that the Court grant the Motion.

4-     FAMILYCARE'S MOTION TO DOWN-
DESIGNATE AEO DOCUMENTS

## II.     BACKGROUND

A brief overview of the AEO dispute, which now spans several years, may be helpful. In short, FamilyCare has explored multiple approaches to addressing this issue, including extensively negotiating (or attempting to negotiate) in good faith with the CCOs and Optumas regarding the document designations, only to see a handful of CCOs hold up the process. These CCOs have done so without attempting to follow the steps set forth in the relevant protective orders and without identifying a single specific document or piece of information that would bestow a competitive advantage on FamilyCare.

As background, two protective orders, very similar in form, are at issue here: the November 1, 2017, protective order (the "OHA Protective Order") and the January 17, 2018, protective order (the "Optumas Protective Order," and collectively, "Protective Orders"). ECF No. 251. *See* Mertens Decl., Exs. 1 (OHA Protective Order) and 2 (Optumas Protective Order).  Each Protective Order requires that a party have "a good faith basis for asserting" AEO protection "under the applicable legal standards."  Protective Orders ¶¶ 4 and 4.  Both Protective Orders specify that all documents labeled Confidential or AEO "shall be used only in this proceeding," and such documents and any information derived therefrom "shall be restricted solely to the litigation of this case and shall not be used by any party" or employee of a party "for any business, commercial, or competitive purpose."  Protective Orders ¶ 2.

### A.     OHA and Optumas designated tens of thousands of documents AEO, creating an unbalanced playing field.

Even after FamilyCare's efforts to ameliorate OHA and Optumas's overuse of the AEO designation, there are still 19,439 documents designated AEO, many of which relate to the rate-setting process. Those AEO designations prevent FamilyCare employees from even viewing the 19,439 documents, and they prevent FamilyCare's counsel from discussing the information in the documents with their client.  But because the documents were submitted to OHA, the information in them has been accessible to OHA and its counsel throughout this litigation.

5-     FAMILYCARE'S MOTION TO DOWN-
DESIGNATE AEO DOCUMENTS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Given the volume of AEO documents and the limitations it has placed on FamilyCare's ability to develop its case, FamilyCare moved to allow two FamilyCare employees, Bill Murray and Art Suchorzewski, to access AEO-designated documents under the terms of the Protective Orders. ECF No. 251. On October 5, 2018, the Court denied the motion. ECF No. 290. Based on FamilyCare's understanding of this Court's concerns articulated at the hearing—i.e., that FamilyCare's request for two employees to have access to all AEO documents was insufficiently particularized—FamilyCare filed a limited motion for partial reconsideration on October 15, 2018. FamilyCare requested that Messrs. Murray and Suchorzewski be permitted to access a subset of AEO documents subject to the original motion that appeared, based on analysis of the metadata, to be most critical. ECF No. 302. Mr. Murray filed a supporting declaration explaining, among other things, the negative effect of the AEO designation on FamilyCare's litigation and trial preparation, the categories of documents at issue, and the reasons the information in those documents did not merit AEO protection. ECF No. 303.

While the motion for partial reconsideration was pending, the parties filed interlocutory cross-appeals to the Ninth Circuit on unrelated issues, and the Court did not rule on the motion. Instead, on November 13, 2018, the Court ordered FamilyCare to provide, by February 1, 2019, a list of AEO documents for which FamilyCare requested down-designation. FamilyCare did so. Mertens Decl., Ex. 3 (FamilyCare's February 1, 2019, submission to the Court). FamilyCare's February 2019 submission identified 4,344 documents, divided into nine categories; explained why each category of documents was relevant and necessary to FamilyCare's claims; and further explained why each category of documents did not warrant AEO protection. Mertens Decl., Ex. 3, Attachment B.

In connection with that submission, FamilyCare created an FTP site with all the documents at issue and made the site available to counsel for all CCOs to download the documents for review. FamilyCare advised the CCOs that only the designating party—Optumas or OHA, as the case may

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

be—could answer why a particular document was designated as AEO, and, thus, whether a particular document contained information that might concern a particular CCO. Nonetheless, to help any CCO counsel identify those most likely to be relevant to their client, FamilyCare created and provided an overlay file showing which documents hit on CCO-specific search terms. With this overlay file, counsel for a particular CCO could review only those documents that mentioned their client.

Despite these efforts, most CCOs did not access the FTP site and, of those that did, only five of the fifteen—Columbia Pacific, Jackson Care Connect, AllCare, Eastern Oregon CCO, and Trillium—downloaded any of the documents.[4] Mertens Decl., ¶ 6, Ex. 4 (access logs for February 2019 FTP download).

FamilyCare continued to negotiate with CCOs who were willing to meaningfully engage and with Optumas, and these negotiations eventually bore fruit. FamilyCare and Eastern Oregon CCO reached an agreement whereby Eastern Oregon CCO withdrew its opposition to down-designating the documents identified in FamilyCare's February 2019 letter, provided that FamilyCare agreed to immediately sequester and re-designate as AEO any documents containing information about CCO-specific prescription drug pricing, and that the terms of the protective orders remained in place. On October 9, 2019, FamilyCare and Eastern Oregon CCO notified the Court of their agreement. Mertens Decl., Ex. 5 (October 9, 2019 letter from M. Gordon and F. Langfitt).

### B. After the Ninth Circuit remand, FamilyCare reached agreements with most of the CCOs and with Optumas.

In June 2020, FamilyCare identified an additional 729 AEO documents that had inadvertently been omitted from FamilyCare's February 1, 2019, submission because of a

---

[4] Significantly, of the CCOs who downloaded the documents, all but one (Trillium) have now consented to down-designation on the terms described above. Cascade, PacificSource, Umpqua, and WOAH oppose down-designation, including by Optumas of its own documents, without having ever made the effort to download the documents at issue.

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

technical error. Mertens Decl., Ex. 6 (FamilyCare June 9, 2020, letter to the Court). FamilyCare notified the Court and other parties of the oversight and requested down-designation of these 729 AEO documents as well. *Id.* As before, FamilyCare again made the documents available to the CCOs and provided an overlay file showing which documents hit on CCO-specific search terms. This time, only Health Share and Trillium downloaded the documents. Mertens Decl., ¶ 9. The Holdout CCOs (with the exception of Trillium) once again did not download the documents at issue.

The Court then directed FamilyCare to file a motion for down-designation. Mertens Decl., Ex. 7. FamilyCare had reached an agreement with one CCO and was in the midst of negotiations with Optumas. In an effort to narrow or avoid the necessity of a motion, FamilyCare continued to negotiate with Optumas and contacted counsel for the remaining CCOs to learn whether their positions on down-designation had changed, given the passage of time and the fact that FamilyCare had neither sought nor been awarded a new contract in the "CCO 2.0" contract bidding process through 2024, and because the agreement with Eastern Oregon provided a template for the other CCOs to follow. Mertens Decl., Ex. 8 (FamilyCare's July 1, 2020, letter to the CCOs). After some back-and-forth, most CCOs, including Health Share of Oregon—FamilyCare's former competitor in the Tri-County service area, and the CCO that had led the opposition to FamilyCare's motions to grant access for Messrs. Murray and Suchorzewski—agreed to down-designation.[5] Two CCOs have since withdrawn from the case. *See* ECF Nos. 394 (PrimaryHealth withdrawal), 396 (Eastern Oregon CCO withdrawal).

Meanwhile, FamilyCare continued to negotiate with Optumas regarding the Optumas-designated documents. In September 2020, after re-reviewing the underlying documents, Optumas

---

[5] In addition to Health Share and Eastern Oregon, Columbia Pacific, AllCare, Jackson Care Connect, Willamette Valley Health, InterCommunity Health Network and PrimaryHealth of Josephine County all agreed to the terms for down-designation.

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

decided to down-designate the vast majority of the Optumas-designated documents on the two submissions. Mertens Decl., Ex. 9 (Email correspondence between M. Mertens and C. Thompson).

     **C.**     **The Holdout CCOs did not agree to down-designation and objected to FamilyCare accessing documents Optumas down-designated.**

Notwithstanding the progress with most CCOs and Optumas, the Holdout CCOs refused to agree to the terms for down-designation, even though most had never even bothered to download any of the documents identified in FamilyCare's letters to the Court and not one had identified a single document that they believe contains information that merits AEO protection.

One of the Holdout CCOs, Trillium, demanded that *FamilyCare* identify every document on the February 2019 and June 2020 submissions to the Court that contained information that Trillium might consider to be AEO. Mertens Decl., Ex. 10 (FamilyCare August 14, 2020, letter to Trillium). FamilyCare did what it could, identifying for Trillium each such document that contained one or more instances of the word, "Trillium," but, as FamilyCare explained multiple times, OHA and Optumas—not FamilyCare—were the designating parties, and thus FamilyCare could not (and cannot) know with any certainty why either OHA or Optumas designated a particular document AEO. *Id.* Trillium's request also inappropriately attempted to shift Trillium's burden to have "a good faith basis for asserting" AEO protections "under the applicable legal standards" to FamilyCare. *See* Mertens Decl., Ex. 1, ¶ 4 (OHA Protective Order), Ex. 2, ¶ 4 (Optumas Protective Order).

As for PacificSource, FamilyCare repeatedly asked PacificSource to identify any particular documents (e.g., provider-specific payment arrangements, prescription drug pricing arrangements) containing information that concerned PacificSource and carve these documents out from FamilyCare's down-designation request, as this may have provided a framework for resolving PacificSource's concerns. Mertens Decl., Ex. 11 (email correspondence from M. Mertens to M. Yium). PacificSource never substantively responded to this proposal despite FamilyCare's repeated inquiry.

9-   FAMILYCARE'S MOTION TO DOWN-
     DESIGNATE AEO DOCUMENTS

The Holdout CCOs also objected to Optumas's decision to down-designate documents. In an effort to resolve the AEO issue with FamilyCare, Optumas re-reviewed documents it originally designated as AEO.   Following that re-review, Optumas agreed to down-designate—to confidential or to no designation—the vast majority of the Optumas-designated documents on the February 2019 and June 2020 submissions.  But certain Holdout CCOs objected to Optumas's down-designation and to FamilyCare accessing such documents, apparently on grounds that Optumas could not change document designations without their consent, even though Optumas was the designating party and the Holdout CCOs did not review the documents at issue and provide input as to which of those documents warranted AEO protection.. Nonetheless, the Holdout CCOs' objection caused Optumas to withdraw the down-designations. *See* Mertens Decl., Ex. 12 (FamilyCare November 5, 2020, letter to Trillium). [6]

In response, FamilyCare worked collaboratively with Optumas to identify a subset of the down-designated documents that FamilyCare could review without accessing any information specific to the Holdout CCOs. Mertens Decl., Ex. 13 (Optumas December 11, 2020, letter to FamilyCare). Optumas proposed what it described as a "reasonable and targeted" two-pronged approach. *Id.* First, based on Optumas's multiple reviews, Optumas identified many documents that Optumas believed did not contain identifiable CCO information that a CCO might consider to be of a potentially sensitive commercial nature. *Id.* Optumas suggested that those documents remain down-designated and available for FamilyCare review. Second, Optumas provided FamilyCare with the Optumas-generated naming conventions specific to the Holdout CCOs and suggested that these search terms be run against those documents Optumas believed *might* contain CCO-specific information to isolate documents potentially implicating the Holdout CCOs. *Id.*

---

[6] , Following down-designation, FamilyCare employees had access to those documents that Optumas down-designated.  But when the Holdout CCOs objected to Optumas's decision, and Optumas advised FamilyCare counsel of the objections, access to the down-designated documents was suspended and has remained suspended.

10-  FAMILYCARE'S MOTION TO DOWN-
DESIGNATE AEO DOCUMENTS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Optumas proposed that the remainder of those documents—those that did not hit on any search term—would remain down-designated and available to FamilyCare for review. *Id.* FamilyCare ran the search terms Optumas proposed and advised Optumas that FamilyCare had isolated documents that hit on the terms and potentially implicated the Holdout CCOs. Mertens Decl., Ex. 14 (FamilyCare December 18, 2020, letter to Optumas). FamilyCare was amenable to isolating this subset for resolution, judicial or otherwise, and making the remainder of the Optumas down-designated documents available to its employees for review. *Id.*

Yet the Holdout CCOs also objected to this process, on the basis that "the search process outlined by Optumas cannot guarantee that it will identify each and every document containing information the Objecting CCOs contend is commercially sensitive." Mertens Decl., Ex. 15 (Optumas December 21, 2020, letter to FamilyCare). As a result, and given the Holdout CCOs' unwillingness to actually review the documents to see for themselves whether they contain any information that is protectable as AEO, Optumas concluded it cannot do any more. *See id.*

In sum, the AEO down-designation dispute has dragged on for more than two years. During that time, none of the Holdout CCOs has identified a *single document* on FamilyCare's February 2019 and June 2020 letters to the Court that it maintains contains information meriting AEO protection. Only one of the Holdout CCOs has even downloaded the documents that FamilyCare made available for review. Nonetheless, the Holdout CCOs have refused to agree to the reasonable terms agreed on by most of the CCOs, or those agreed by Optumas, and have ignored or undermined FamilyCare's efforts to isolate a more limited subset of documents specific to the Holdout CCOs' concerns. Because of their recalcitrance, *both* designating parties—OHA and Optumas—have told FamilyCare that the Holdout CCOs' objections must be resolved before FamilyCare can access the documents identified on the February 2019 and June 2020 submissions to the Court. Yet the Holdout CCOs will not take the simplest steps to review the documents.  It is

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

in this posture that FamilyCare seeks the Court's intercession to order the down-designation of the documents identified on Exhibit 1.

      **D.**    **Other relevant developments**

Meanwhile, the CCO program has changed in several relevant ways over the past two years.

First, as part of its "CCO 2.0" program, OHA is now under contract with fifteen CCOs for five-year terms, through at least December 31, 2024.[7]  The next contracting period will not begin until 2025, at the earliest, with re-solicitation expected in 2024.  *See* Mertens Decl., Ex. 3, and Ex. 1 thereto.[8]

Second, the CCO 2.0 program ushered in substantial changes in how CCOs reimburse health care providers and facilities.  In particular, the CCO 2.0 contract requires CCOs to change how they pay providers—in 2020, at least 20% of the amounts CCOs spent on care delivery was required to be through value-based payment (VBP) contracts, rather than traditional fee-for-service reimbursement, and, per the contract, CCOs must annually increase the level of payments that are value based through the duration of the CCO 2.0 period, to 70% by 2024.  Murray Decl. ¶ 11. Moreover, even before CCO 2.0 formally began, reimbursement was changing, as evidenced by Optumas's comment in the 2021 rate certification that after reviewing data from both 2018 and 2019, Optumas was relying only on 2019 data because of "significant differences in facility reimbursement" between those years.[9] This change in reimbursement is particularly significant

---

[7] Most of the CCO 2.0 contracts were for five-year terms. *CCO 2.0 Contract Awardees: Frequently Asked Questions* https://www.oregon.gov/oha/OHPB/CCODocuments/2019-CCO-2.0-FAQ.pdf .  Several CCOs were given only one-year terms initially, *see id.*, but each of those were subsequently awarded contract extensions through 2024. *OHA approves AllCare, Cascade Health Alliance Umpqua Health Alliance full five-year coordinated care contracts* https://www.oregon.gov/oha/ERD/Pages/OHAApprovesAllCareCascadeHealthAllianceUmpquaHealthAllianceFullFiveYearCoordinatedCareContracts.aspx

[8] OHA extended the five-year, 2014-2018 contracts by an additional year, through 2019.

[9] *See* Oregon Health Authority Oregon Health Plan CCO Actuarial Certification at 15, available at https://www.oregon.gov/oha/HPA/ANALYTICS/OHPRates/Oregon-CY21-Rate-Certification-CCO-Rates.pdf.

    FAMILYCARE'S MOTION TO DOWN-
DESIGNATE AEO DOCUMENTS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

given that CCOs have previously argued that reimbursement data—e.g., how much they paid a particular provider—was competitively sensitive information.[10]

Third, OHA and Optumas have made changes to how they develop CCO capitation rates. Murray Decl. ¶ 12. When FamilyCare was a CCO, Optumas used a regional rate-setting approach and built four region-specific rate models, despite FamilyCare's long-expressed concerns that such an approach unfairly suppressed its rates. *See id.* Shortly after FamilyCare exited the CCO market, OHA and Optumas changed to a statewide approach, whereby Optumas builds up rates at a statewide level and then adjusts for regional factors. *Id.* As a result, the "regional rate models" and related inputs—some of the very documents FamilyCare seeks to down-designate—are relics of a bygone era, highly relevant to this litigation but not to rate-setting in Oregon. *See id.*

Fourth, the express temporal limitations in the Protective Orders on individuals who were provided access to AEO documents have now expired. Both Protective Orders include various time-limited restrictions, the most expansive of which is a prohibition preventing anybody who accesses AEO materials from assisting with Medicaid rate setting in Oregon "through the rate-setting process for 2021 rates." Mertens Decl., Ex. 1, ¶ 10; Ex. 2, ¶ 10. On October 3, 2020, OHA released the 2021 rates.[11] As a result, that prohibition has now lapsed.

Fifth, FamilyCare has now been out of the CCO business for nearly two years and has only a handful of employees remaining. Murray Decl. ¶ 14. FamilyCare made no effort to be awarded a contract under CCO 2.0 and has made no subsequent effort to re-enter the CCO market. *Id.* Each FamilyCare employee who would view the documents in question has agreed to sign onto the existing protective order. *Id.*

---

[10] In any event, the reimbursement data is aggregated data that reveals only how much a CCO paid on average for a particular type of service, such as an outpatient physician visit, not how much a CCO paid a particular physician to provide such a service. *See, e.g.,* Murray Decl. ¶¶ 7.e, 7.h.

[11] *See OHA releases 2021 capitation rates* https://www.oregon.gov/oha/ERD/Pages/OHAReleases2021CapitationRates.aspx

13-    FAMILYCARE'S MOTION TO DOWN-DESIGNATE AEO DOCUMENTS

Meanwhile, some things have not changed.  The CCO 2.0 procurement, like the prior CCO procurements, was not a competitive bid process—the CCOs were independently evaluated against certain criteria, and those who met the criteria were awarded a contract.  Murray Decl. ¶¶ 9, 13. CCO rates likewise continue to be set by regulatory fiat rather than competitive bids.  *Id.* ¶ 13. The CCOs do not submit rate bids or otherwise compete against each other for rates; rather, OHA and Optumas continue to annually set the rates unilaterally for the upcoming year based on data from preceding years.  *Id.* In the most recent round of rate-setting—in 2020, for 2021 rates—Optumas reviewed data from 2018-2020 and relied primarily on data from 2019. *Id.* Finally, FamilyCare's employees—in particular, Mr. Murray and Mr. Suchorzewski—remain unable to review the AEO documents, further inhibiting FamilyCare's litigation efforts and further tilting the field in favor of OHA. *Id.* ¶ 8.

### A.  Legal standard

There is a "well-established" presumption is in favor of disclosure of discovery documents. *San Jose Mercury News, Inc. v. U.S. Dist. Court—N. Dist. (San Jose)*, 187 F.3d 1096, 1103 (9th Cir. 1999).  And AEO designations, in particular, "'shall be made as sparingly as possible' since they have severe consequences affecting the adversary's investigation, attorney client communications, the search for truth, and the judicial system, which is inevitably drawn into the discovery process." *Callsome Sols. Inc. v. Google, Inc.*, 2018 NY Slip Op 32716(U), ¶ 9 (Sup. Ct.) (quoting *Fendi Adele S.R.L. v Burlington Coat Factory Warehouse Corp.*, 2006 US Dist. LEXIS 89546, *6 (SD NY 2006)).

Where a protective order has been entered by stipulation—rather than based on a finding of good cause by the Court—and a party seeks to remove protections from documents, "the party opposing disclosure has the burden of establishing that there is good cause to continue" such protection. *In re Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d 417, 424 (9th Cir.

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

2011).  The Protective Orders in this case, which resulted from stipulation,[12] expressly incorporate that requirement—both specify that, upon motion to the Court, "the party seeking to protect a document from disclosure bears the burden of establishing good cause for why the document should not be disclosed."  Mertens Decl., Exs. 1 and 2, ¶¶ 10 and 10.

The requirement to show good cause for AEO designation means that the party resisting disclosure has the burden, "for each particular document it seeks to protect, of showing that specific prejudice or harm will result" if the document is down-designated.  *Foltz v. State Farm Mut. Auto. Ins. Co.,* 331 F.3d 1122, 1130 (9th Cir. 2003).  "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning," are insufficient to "justify continued protection" of the subject materials.  *Beckman Indus., Inc. v. Int'l Ins. Co.,* 966 F.2d 470, 476 (9th Cir. 1992) (quoting *Cipollone v. Liggett Group, Inc.,* 785 F.2d 1108, 1121 (3rd Cir.1986).785 F.2d 1108, 1121 (3rd Cir.1986)).

### B.  The documents at issue should be down-designated.

The documents should be down-designated because they did not merit AEO protection in the first instance, and there is even less justification for such protection now.  The Holdout CCOs have not and cannot meet their burden to show good cause for continuing the protection.  Indeed, none has identified a single document that it believes merits AEO protection, let alone any harm that would result from down-designation.  In fact, some of the Holdout CCOs previously took the position, nearly four years ago, that much of the information in these materials does not have commercial value and would *not* give competitors an advantage.  The passage of time, and changes in how CCOs do business and OHA sets rates, has only made it clearer.  CCO 2.0 is now in its second year, FamilyCare is not in the Medicaid market, and the next CCO procurement is not

---

[12] The original protective order was entered by stipulation while the case was still in state court. The Protective Orders at issue are modified versions of the original stipulated order.  The state court was not tasked with, and did not make, findings regarding good cause for the protective orders—the court merely modified some of the details regarding the scope of protections.

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

scheduled until 2024, when the most-recent data in the documents will be eight years old. As a result, any competitive or proprietary value in the documents has long since dissipated or evaporated.

### 1.    The documents do not merit AEO protection

In its February 2019 letter to the Court, FamilyCare identified the categories of documents at issue and explained why, for each category, the information in the documents was not likely to cause competitive harm. *See* Mertens Decl., Ex. 3, Attachment B. FamilyCare incorporates that discussion by reference. Briefly, CCOs that previously opposed down-designation focused on information relating to how, and how much, they pay providers. But the vast majority of the documents for which FamilyCare seeks down-designation does not include such detail—and most of the few that do contain aggregated information about expenditures that does not reveal how much a CCO pays a particular provider for a particular service. Moreover, given the passage of time and changes in the CCO program, the information is commercially archaic. It is therefore unsurprising that most CCOs have agreed to down-designation.

As explained in FamilyCare's February 2019 submission, *see id.*, aggregated information reflecting CCO expenditures in different categories of service—inpatient hospital visits; outpatient physician visits, etc.— does not reveal how much a particular CCO pays a particular provider. The Centers for Medicare & Medicaid Services ("CMS") recognized that similarly aggregated data was unlikely to be competitively useful. In rejecting commenters' views that it would be competitively harmful to share information submitted to CMS by managed care organizations in the analogous Medicare Advantage context, CMS remarked that because the information was "already composed of aggregated cost and utilization information," any suggestion "that a competitor would be able to derive payment information related to any specific provider, is simply not credible." Medicare Program; Changes to the Medicare Advantage and the Medicare

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Prescription Drug Benefit Programs for Contract Year 2012 and Other Changes, 76 Fed. Reg. 21432-01, 21517-18 (April 15, 2011).

Moreover, any competitive value of the data has evaporated with the passage of time. During the 2017 and 2018 rate years at issue, OHA and Optumas primarily used data from the most-recent full year in rate development. So the 2017 rates, which OHA developed in 2016, used data from 2015. And the 2018 rates, developed in 2017, were based primarily on 2016 data. As a result, the subject documents reflect CCO data from 2016 and earlier. That information, now at least five years old, is stale, and "stale information is of little value." *Biles v. Dep't of Health & Human Servs.*, 931 F. Supp. 2d 211, 225 (D.D.C. 2013) (quoting *Payne Enterprises, Inc. v. United States*, 837 F.2d 486, 494 (D.C.Cir.1988)). Staleness of two-year-old information was another ground cited by CMS for rejecting commenters' concerns about sharing of cost data. *See* Medicare Program; Changes to the Medicare Advantage and the Medicare Prescription Drug Benefit Programs for Contract Year 2012 and Other Changes, 76 Fed. Reg. 21432-01, 21518 (CMS opining that similar data only two years old was stale: "although trends from one year to the next might be revealed through release of payment data for sequential years, the fact remains that such trends will be stale (at least 2 years old) and reveal little about competitive strategies in future years.").

The *Biles* court cited CMS's conclusion about staleness, and pointed to changes in the healthcare industry, when rejecting the claim that competitive harm would result from the release of information very similar to that at issue here. *Biles*, 931 F. Supp. 2d at 225-227. There, an individual filed a FOIA request in July 2011 that sought 2009 data that Medicare Advantage Organizations (MAOs) had submitted to the federal government for use in setting capitation rates, including cost and utilization data, MAO revenue, non-benefit expenses, risk scores, member months, and other background data. *Id.* at 216-217. The court credited the FOIA requestor's contention that "the passing of time, as well as the changes in the health care industry, which

17- FAMILYCARE'S MOTION TO DOWN-
DESIGNATE AEO DOCUMENTS

include rising costs, health care reform under the Patient Protection and Affordable Care Act, changes in the way rebates are calculated, etc.—make the 2009 data too stale" to cause harm upon release. *Id*. at 226.

Here, of course, even more time has passed—the data are at least five years old—and the industry has likewise changed, significantly.  In addition to "rising costs," *id.*, OHA's CCO 2.0 required CCOs to change how they pay providers, mandating that over time they move away from fee-for-service reimbursement to value-based-payments such that by 2024, 70% of the payments for health care services would be value-based. Murray Decl. ¶ 11. As a result, CCO 2.0 requires CCOs to make significant changes in how they contract with and reimburse providers, limiting the utility of pre-CCO 2.0 reimbursement data. *Id.* Moreover, Optumas has confirmed "significant differences in facility reimbursement" between 2018 and 2019, *see* Note 9 *supra*, indicating that even before CCO 2.0 started, the CCOs substantially changed reimbursement.  These changes render obsolete information about provider payment arrangements that were in place during and before 2016. As in *Biles*, the CCOs cannot "explain why the [2016 and earlier] data is still commercially valuable to competitors or how that data could be used in [2021] or later to create a likelihood of substantial competitive harm." *Biles*, 931 F. Supp. 2d at 227.

Any concerns about competitive advantage during the next round of CCO procurement are even more overblown.  As noted, the current five-year CCO contracts run through at least December 31, 2024, and OHA expects to re-solicit contracts earlier in 2024.  Mertens Decl., Ex. 3, and Ex. 1 thereto. The information would thus be at least eight years old when contracts are re-solicited.[13]  Moreover, OHA and Optumas will not rely on this data in setting CCO rates, as they are already focusing on more recent data—for example, in developing 2021 rates (in 2020), Optumas reviewed encounter and eligibility data for dates of service from January 2018-April

---

[13] CCOs who opposed FamilyCare's motion to grant access to Messrs. Murray and Suchorzewski in October 2018 pointed in particular to the then-upcoming announcement of the CCO 2.0 contracts to argued that the timing was particularly sensitive.

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

2020. *See* Note 9 *supra*.[14]  And because OHA and Optumas have now set the 2021 CCO rates, the outer limit of temporal restrictions imposed on experts under Paragraph 10 of the Protective Orders has expired.  This further illustrates that the materials have long grown stale, and that, if they ever had any competitive value, it has long since evaporated. It makes no sense that experts on both sides who accessed AEO materials are now free to work on Oregon rate-setting, but several FamilyCare employees cannot view the same materials because of ostensible claims of competitive harm.

> **2.    None of the Holdout CCOs has articulated any basis why any of the documents at issue should**

Reflecting these changed circumstances, most CCOs, including four of the five CCOs that downloaded the AEO documents have dropped their opposition to down-designation. Even Health Share—FamilyCare's (former) primary competitor and the CCO previously leading the charge against down-designation—has consented to down-designation on the terms stipulated by Eastern Oregon CCO and sought herein. Optumas has similarly concluded that the vast majority of Optumas-designated documents can be down-designated to confidential or no designation.

The Holdout CCOs oppose, however, without ever identifying any documents of particular concern or offering a cogent rationale for their opposition.  This deficiency is hardly surprising, given that most of the Holdout CCOs did not even download any of the documents FamilyCare identified for down-designation.  *See* Mertens Decl. ¶¶ 5-6, 9, and Ex. 4.  The other holdout, Trillium, has given no indication that it has done anything more than download the documents. Under these circumstances, the Holdout CCOs apparently have defied the Protective Orders' requirement for "a good faith basis for asserting [the document] is confidential under the applicable legal standards," Mertens Decl., Exs. 1 and 2, ¶¶ 4 and 4, and this Motion should be granted on that basis alone.

---

[14] CMS regulations require that rate-setting use data "no older" than the three years preceding the rating period.  42 C.F.R. § 438.5(c)(2)

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

The lack of a good faith basis is also evident because some of the Holdout CCOs previously took the position that much of the information FamilyCare seeks to down-designate was of no commercial value and would not provide an unfair competitive advantage.  In February 2017, OHA sent the CCOs a questionnaire to ascertain whether they thought certain information then sought by FamilyCare met the criteria for trade secret protection under Oregon law.  The information sought—regional rate models, base data exhibits, raw risk score data, and data regarding the reimbursement policy—overlaps significantly with the categories of data in the documents at issue. *See* Mertens Decl., Ex. 3, Attachment B (categories include documents containing information about risk scores, "rate of growth" calculations and the "reimbursement policy," and regional rate models).  One of the Holdout CCOs, Umpqua, indicated that the information did not have even *potential* commercial value and would not confer a competitive advantage. Mertens Decl., Ex. 16. Another, PacificSource, did not fill out the questionnaire but instead simply informed OHA, "We are not claiming trade secrets."  Mertens Decl., Ex. 17.[15] Neither Umpqua nor PacificSource has explained how information they did not consider trade secret four years ago could possibly have morphed over time into information that requires AEO protection.

The Holdout CCOs have not reviewed the subject documents, will not explain how or why any of the documents merit AEO protection, and have never identified how allowing several FamilyCare employees to view documents with data from 2016 and earlier, under the terms of the Protective Orders, could possibly lead to any competitive harm. FamilyCare has repeatedly tried

---

[15] Trillium responded that it believed some of the information—the regional rate models and risk score data—had no commercial value, while some did.  Mertens Decl., Ex. 17. The two other holdouts checked boxes indicating they believed the information met criteria for trade secrets, but when asked to describe the commercial value or business advantage, Western Oregon Advanced Health responded with the same three-word answer—"competitive commercial bidding"—for each, while Cascade Health Alliance gave a four-word response—"This is intellectual property"—for all five categories, including the Tri-County Regional Rate Model, which implicated information only from the Tri-County CCOs, FamilyCare and Health Share. Mertens Decl., Exs. 18 and 19.

20-   FAMILYCARE'S MOTION TO DOWN-
      DESIGNATE AEO DOCUMENTS

to engage the Holdout CCOs to understand and address any specific concerns they have, and FamilyCare has been met with deflection and delay.  Meanwhile, the AEO designations continue to create an unbalanced playing field, with OHA's employees free to review and discuss with counsel the more than 19,000 AEO documents while FamilyCare employees and its counsel continue to be unable to do so, leaving them disadvantaged in this lawsuit.

## CONCLUSION

For the foregoing reasons, FamilyCare respectfully requests that this Court grant this Motion to Down-Designate AEO Documents.

DATED:  February 5, 2021                    **PERKINS COIE LLP**

By: */s/ Matthew Gordon*
_____
**Stephen F. English**, OSB No. 730843
SEnglish@perkinscoie.com
**Thomas R. Johnson**, OSB No. 010645
TRJohnson@perkinscoie.com
**Heidee Stoller**, OSB No. 072835
HStoller@perkinscoie.com
**Matthew J. Mertens**, OSB No. 146288
MMertens@perkinscoie.com
**Sasha A. Petrova**, OSB No. 154008
SPetrova@perkinscoie.com
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Telephone:  503.727.2000
Facsimile:  503.727.2222

**Matthew Gordon**, *pro hac vice*
MGordon@perkinscoie.com
**David B. Robbins**, OSB No. 070630
DRobbins@perkinscoie.com
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone:  206.359.8000
Facsimile:  206.359.9000

*Attorneys for Plaintiff FamilyCare, Inc.*