**Stephen F. English**, OSB No. 730843
SEnglish@perkinscoie.com
**Thomas R. Johnson**, OSB No. 010645
TRJohnson@perkinscoie.com
**Heidee Stoller**, OSB No. 072835
HStoller@perkinscoie.com
**Matthew J. Mertens**, OSB No. 146288
MMertens@perkinscoie.com
**Sasha A. Petrova**, OSB No. 154008
SPetrova@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Telephone:  503.727.2000
Facsimile:  503.727.2222

**Matthew Gordon**, *pro hac vice*
MGordon@perkinscoie.com
**David B. Robbins**, OSB No. 070630
DRobbins@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone:  206.359.8000
Facsimile:  206.359.9000

Attorneys for Plaintiff *FamilyCare, Inc.*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **FAMILYCARE, INC.**, an Oregon non-profit corporation,<br><br>                    Plaintiff,<br><br>        v.<br><br>**OREGON HEALTH AUTHORITY**, an agency of the State of Oregon, **PATRICK ALLEN**, both individually and in his official capacity as director of the Oregon Health Authority, and **LYNNE SAXTON**,<br><br>                    Defendants. | Case No. 6:18−cv−00296−MO<br><br>**DECLARATION OF WILLIAM H. MURRAY IN SUPPORT OF FAMILYCARE, INC.'S MOTION TO DOWN-DESIGNATE AEO DOCUMENTS** |

DECLARATION OF WILLIAM H. MURRAY IN
SUPPORT OF FAMILYCARE, INC.'S MOTION TO
DOWN-DESIGNATE AEO DOCUMENTS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

I, William H. Murray, declare as follows:

1.    I am the Chief Operating Officer of FamilyCare, Inc., ("FamilyCare"), plaintiff in the above-captioned case.  I have personal knowledge of the matters stated herein and am competent to testify thereto.

2.    In my role as FamilyCare's Chief Operating Officer, I have been responsible for leading the day-to-day operations of the organization, including overseeing reporting and monitoring of the organizational performance, staying abreast of changes in the healthcare industry, and adjusting business operations as required.  I was also directly involved in preparing and submitting the specific financial and operational data and information that FamilyCare, as a Coordinated Care Organization (CCO), was required to submit to the Oregon Health Authority (OHA), including the data and information used by OHA and its outside actuary, Optumas, in the rate-setting process.  I was directly involved in communicating with OHA about those submissions and the rate-setting process in general.  I participated in nearly all meetings and exchanges of information with OHA that relate to this case.  I have reviewed and analyzed information received from OHA as part of the discovery in this case and have identified inconsistencies, discrepancies, misrepresentations, and errors in OHA's productions.

3.    Before joining FamilyCare in 2013, I was Chief Executive Officer with another Oregon Medicaid managed care organization for 10 years.  I have also been active in Oregon's administrative and legislative process in the healthcare field, including serving on the Oregon Health Policy Board's Health Incentives and Outcomes Committee that helped develop Oregon's CCO model that is in effect today.  I have over 30 years of leadership, business management, information systems, finance, and regulatory experience.  I began my career as a certified public accountant (CPA) with an international accounting firm and subsequently ran my own healthcare-focused CPA practice for seven years.

1-    DECLARATION OF WILLIAM H. MURRAY IN SUPPORT OF FAMILYCARE, INC.'S MOTION TO DOWN-DESIGNATE AEO DOCUMENTS

4.      Based on this experience, I am familiar with the types of information that CCOs submit to OHA and the extent to which that information would be of competitive value to another CCO participating in Oregon's Medicaid Program.

5.      Optumas and OHA set the 2018 rates in calendar year 2017, using financial information for the CCOs from 2016 and earlier. As a result, the data submitted to OHA for use in setting the 2017 and 2018 rates dates is primarily from 2015 and 2016.

6.      My inability to view the more than 19,000 documents marked "Attorneys Eyes Only" (AEO) has had and is continuing to have a profound negative impact on FamilyCare's ability to analyze its claims and OHA's defenses, FamilyCare's work with its outside actuarial expert, FamilyCare's counsel's ability to ask substantive questions of me, and FamilyCare's preparations for trial. In particular, my inability to view details of how OHA/Optumas treated data from other CCOs is limiting the ability of FamilyCare and its experts and counsel to fully analyze all of the ways in which OHA treated FamilyCare unfairly and differently than other CCOs and to respond to OHA's assertions that it implemented policies and decisions in a neutral and unbiased manner. My review of FamilyCare's data has revealed that OHA/Optumas used inconsistent data, made numerous errors and unsupported manipulations, and did not address the problems FamilyCare identified. My inability to review how OHA/Optumas treated other CCOs' data—and what OHA and Optumas communicated to other CCOs about that process—is significantly limiting my ability to analyze the extent to which OHA treated FamilyCare differently from other CCOs.

7.      In an effort to identify which of the more than 19,000 documents marked AEO are likely to be of the most use in trial preparations and in working with experts, I reviewed metadata from those documents. Based on that metadata, I matched documents, to the best of my ability, to various categories of information set forth below. For each category, I explain why the information is vital to FamilyCare's case and why it is not trade secret information. Much of the information

2-    DECLARATION OF WILLIAM H. MURRAY IN SUPPORT OF FAMILYCARE, INC.'S MOTION TO DOWN-DESIGNATE AEO DOCUMENTS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

sought is data that has been aggregated to the point where it would not reveal the type of pricing information or contracting methodology that CCOs claim to be trade secret.  For example, cost data that is aggregated at the level of the Category of Aid (the categorization of Medicaid recipients by their eligibility category, e.g. blind and disabled or ACA 19-44) or Category of Service (the type of medical service provided, e.g., inpatient hospital or primary care physician) reveals only what a particular CCO spent in total for that category. Even combining this information with the total number of events in the category would reveal only the average expenditure per type of Medicaid recipient or type of service, not the amount paid to a particular provider.

The categories and explanations are as follows:

a.      *Documents containing information and/or discussion of raw and relative risk scores and OHA communications with CCOs related to risk scores.*[1]  This information is relevant to FamilyCare's claim that OHA treated it differently and portrayed it as an outlier. It is also relevant to rebutting OHA's claims that FamilyCare overpaid primary care providers, that FamilyCare's business model was responsible for its "poor" financial performance, that FamilyCare's rates were lower because it had healthier members, and that payment rates to CCOs matched the risk of each CCO members.  This information will also assist FamilyCare in validating the risk scores that OHA calculated.  De-designating this information will not inflict competitive harm on the other CCOs because risk scores are simply information about the morbidity of a CCO's members, which is not trade secret, and in any event are aggregated figures at the category of aid level.

---

[1] In simple terms, "risk scoring" refers to the methodology OHA and Optumas used to predict relative expected costs of providing health care services to a particular individual and to a population. OHA and Optumas assigned each individual member a raw "risk score" based on factors like the member's demographics and reported underlying health conditions. Optumas then adjusted the rates within a region based on its calculation of the aggregated relative risk of the CCOs in that region.  FamilyCare contends  that OHA and Optumas systematically undercalculated the relative risk of FamilyCare's member population, with the result that Health Share received disproportionately more—and FamilyCare received disproportionately less—of the Medicaid funds available in the Tri-County area.

3-      DECLARATION OF WILLIAM H. MURRAY IN SUPPORT OF FAMILYCARE, INC.'S MOTION TO DOWN-DESIGNATE AEO DOCUMENTS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

b.      *Documents relating to the "rate of growth" calculations and the reimbursement policy, as well as OHA communications with CCOs relating to the rate of growth calculations and the reimbursement policy.* This information is relevant to FamilyCare's argument that its spending was in line with other CCOs (meaning that FamilyCare was not an "outlier," as OHA argues), and that OHA's comparison of primary care spending improperly targeted FamilyCare by not comparing other components of cost. This information is also relevant to OHA's claim that its "reimbursement policy" was implemented in a fair and unbiased manner across all CCOs. This information is not competitively sensitive because the rate of growth was calculated based on aggregated expenditures.

c.      *CCO triangulation-related documents and discussions.* This information is necessary for FamilyCare to reconcile regional data totals to individual CCO data totals and the tie-out of individual CCO data to CCO financial submissions to OHA and each CCO's audited financial statements. It is also needed to confirm that appropriate base data was used for the rate development process across all CCOs. This information is not trade secret because the amounts used for the triangulation are aggregate amounts.

d.      *Unmasked regional rate models for all regions.* OHA shared "masked" regional rate models, which redacted utilization and per-unit cost per category of service information, with the CCOs within a particular region, but not with CCOs outside that region. The information contained in the unmasked regional rate models will allow FamilyCare to explore OHA's assertion that the rate development process was unbiased and consistent across all CCOs in all regions. The information in the regional rate models is aggregated to the category-of-aid or category-of-service level, and the models also lack competitive value because Optumas and OHA have since switched to a statewide (i.e., not regional) rate-setting methodology.

4-     DECLARATION OF WILLIAM H. MURRAY IN SUPPORT OF FAMILYCARE, INC.'S MOTION TO DOWN-DESIGNATE AEO DOCUMENTS

e.      *Schedule L/Rate templates*. CCOs regularly submitted quarterly and annual financial submissions (called Schedule Ls) to OHA. OHA and Optumas used these submissions during rate setting. These submissions, and communications with CCOs related to these submissions, are relevant to showing that FamilyCare's spending was reasonable compared to other CCOs and that OHA knowingly chose to highlight misleading data regarding FamilyCare's spending, financial position, and operational performance. This information is also relevant to FamilyCare's claim that OHA treated it differently and portrayed it as an outlier. It will also assist in rebutting OHA's claims that FamilyCare overpaid primary care providers, that FamilyCare's business model was responsible for its "poor" financial performance, that FamilyCare's rates were lower because it had healthier members, and that payment rates to CCOs matched the risk of each CCO members.  Most of the information in these materials is aggregated information that does not reveal detail about specific payments to specific providers or details of their contractual arrangements. Some tabs in some of the worksheets in this category include more granular details about reimbursement, but as this data is from 2016 or earlier and OHA has required changes to reimbursement methodology, the data is outdated and uninformative about present reimbursements.

f.      *Other rate development documents*. Included in this category are a variety of documents, such as encounter data summaries by CCO; internal Optumas and OHA emails discussing the inclusion of aggregated CCO-specific financial information in rate development; documents and emails relating to OHA's MLR calculations by CCO;[2] worksheets containing utilization analyses;[3] worksheets related to CCOs' "quality pool"

---

[2] "MLR" means "medical loss ratio," which is a federally imposed requirement that CCOs spend a specified percentage of their capitation revenue on their members' medical expenses.

[3] OHA frequently analyzes subsets of members to track overall utilization of services and which specific services are being utilized. For example, OHA may analyze service utilization across a

5-   DECLARATION OF WILLIAM H. MURRAY IN
     SUPPORT OF FAMILYCARE, INC.'S MOTION TO
     DOWN-DESIGNATE AEO DOCUMENTS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

expenditures;[4] and regional trend models.[5] These types of documents contain information relevant to OHA's assertion that the rate development process was unbiased and consistent across all regions and all CCOs. It is also relevant to FamilyCare's claim that OHA treated it differently and portrayed it as an outlier. Most CCO-specific information in these materials is aggregated data that does not reveal detail about specific payments to specific providers or details of their contractual arrangements. Much of the information is also shared between CCOs in a particular region. As the data is from 2016 or earlier, and OHA has since required changes to reimbursement methodology, the data is outdated and uninformative about present reimbursements.

g.      *Documents containing information, comparison, and/or discussion of FamilyCare's and/or other CCOs' financial and/or operational performance.* Information about CCOs' relative financial and/or operational performance is relevant to the accuracy of OHA's communications with others about FamilyCare, and whether OHA and Ms. Saxton knowingly communicated false or misleading information about FamilyCare. It is also relevant to Ms. Saxton's defenses to FamilyCare's claims for retaliation, including her defense of OHA's "smear campaign."  Most of this information is aggregated information that does not reveal detail about specific payments to providers.  As the data is from 2016 or earlier, and OHA has since required changes to reimbursement methodology, the data is outdated and uninformative about present reimbursements.

h.      *Recoupments and Adjustments.* Information about how OHA treated other CCOs relative to recoupments and adjustments, as compared to its treatment of FamilyCare,

---

variety of disease codes, and in doing so, look at which members in which CCOs have been coded with having these diseases.

[4] In general terms, "quality pool" refers to incentive money that OHA pays the CCOs for achieving certain member enrollment or member health outcomes.

[5] "Trend" refers to determining, on a prospective basis, how much medical costs and service utilization are likely to increase (or decrease) in the future. The selection of the trend amount is a key step in rate development.

6-    DECLARATION OF WILLIAM H. MURRAY IN SUPPORT OF FAMILYCARE, INC.'S MOTION TO DOWN-DESIGNATE AEO DOCUMENTS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

is relevant to FamilyCare's claim that OHA treated it differently and to OHA's assertion that it treated FamilyCare the same as other CCOs. Most of this information is aggregated information that does not reveal detail about specific payments to providers. As the data is from 2016 or earlier, and OHA has since required changes to reimbursement methodology, the data is outdated and uninformative about present reimbursements.

8.      My interpretation and knowledge of these documents is critical to assist FamilyCare's counsel and outside experts in developing FamilyCare's claims, analyzing OHA's defenses, and preparing for trial. I have knowledge of the CCOs' varying business models and structures and extensive historical knowledge of the interactions among OHA and the CCOs.  That knowledge provides the context for understanding the information and how OHA's actions or inactions may have impacted the inputs into rate-setting and the financial information used to portray FamilyCare as an outlier and otherwise retaliate against FamilyCare.  FamilyCare's experts and counsel do not have that same depth of knowledge, and the AEO designations prohibit them from showing me or asking me about the data or financial information of other CCOs. It is extremely difficult for me to assist FamilyCare's experts or counsel in assessing the consistency or inconsistency of FamilyCare's treatment compared to that of other CCOs without access to these documents.  Further, my colleague Art Suchorzewski has been heavily involved in reviewing documents produced in this litigation, and his assistance in reviewing these documents will significantly aid me in reviewing these documents in a timely fashion.

9.      Medicaid capitation rate-setting in Oregon is not a competitive process. This means CCOs do not submit competing rates or competing bids based on rates.  I have specific knowledge of Medicaid capitation rate-setting in Oregon from 2001 to present.  During this entire period of time, OHA (with the assistance of its internal or external actuary) has unilaterally set Oregon's Medicaid capitation rates for the CCOs.  OHA has not communicated any intention to change rate-setting to a competitive process to my knowledge.

7-      DECLARATION OF WILLIAM H. MURRAY IN
        SUPPORT OF FAMILYCARE, INC.'S MOTION TO
        DOWN-DESIGNATE AEO DOCUMENTS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

10.    OHA has implemented significant changes to CCO reimbursement methodologies over the past two years, and Optumas has made extensive changes to the rate-setting process. Information in the documents FamilyCare seeks to down-designate is outdated and likely uninformative about CCO operations today.

11.    The CCO 2.0 contract requires CCOs to transform their payment methodologies away from an emphasis on fee-for-service reimbursement and toward payments based on value. In particular, the contract required that at least 20% of CCO expenditures for care delivery in 2020 were based on value-based payments ("VBP"). The contract further requires the VBP percentage to increase steadily, through the duration of the CCO 2.0 period, to 70% by 2024. This is a dramatic change from how CCOs contracted with providers during the pre-CCO 2.0 period at issue in this lawsuit. Because the VBP requirements in CCO 2.0 require significant changes to how CCOs contract with providers, allocate their funds for care delivery, and orchestrate their businesses, pre-CCO 2.0 financial information and documents related to reimbursement are unlikely to be informative as to CCOs' current reimbursement arrangements or financial information.

12.    Optumas and OHA have also moved away from their prior regional rate-setting approach. Shortly after FamilyCare exited the CCO market, OHA and Optumas changed to a statewide approach, whereby Optumas builds up rates at a statewide level and then adjusts for regional factors. The regional rate models for which FamilyCare seeks access are thus not relevant to current rate-setting practices in Oregon.

13.    CCO rates continue to be set by regulatory fiat rather than competitive bids. CCOs do not submit rate bids or otherwise compete against each other for rates; rather, OHA and Optumas continue to annually set the rates unilaterally for the upcoming year based on data from preceding years. In the most recent round of rate-setting—in 2020, for 2021 rates—Optumas reviewed data from 2018 to 2020 and relied primarily on data from 2019.

8-    DECLARATION OF WILLIAM H. MURRAY IN SUPPORT OF FAMILYCARE, INC.'S MOTION TO DOWN-DESIGNATE AEO DOCUMENTS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

14.    FamilyCare has now been out of the CCO business for nearly three years and has only a handful of employees remaining.  FamilyCare made no effort to be awarded a contract under CCO 2.0 and has made no subsequent effort to re-enter the CCO market.  Each FamilyCare employee who would view the documents in question has agreed to sign onto the existing protective orders.

15.    At FamilyCare, I am bound by a confidentiality agreement I signed upon my employment that states "I shall hold confidential all information regarding the company and business to which I have access" and "any breach of this confidentiality agreement on my part shall result in immediate termination of my employment" and "may result in legal action." Furthermore, I have held a CPA license from the State of Oregon since 1985 (license number 5244, expires 6/30/2022, inactive status) and am bound by the Code of Professional Conduct that contains confidentiality provisions.  I have complied with these obligations and will continue to do so, as I have done throughout my career.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

9-    DECLARATION OF WILLIAM H. MURRAY IN SUPPORT OF FAMILYCARE, INC.'S MOTION TO DOWN-DESIGNATE AEO DOCUMENTS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

16.    Furthermore, I have had access to or been provided with sensitive and confidential information during my professional career lasting over 35 years.  I have protected this sensitive and confidential information from any inappropriate disclosure or misuse at all times.  If allowed to view AEO-designated documents in this matter, I will abide by the restrictions in the Protective Orders entered in this case, including the prohibition on using the information for any purpose other than this litigation.

*I hereby declare that the above statement is true to the best of my knowledge and belief, and that I understand it is made for use as evidence in court and is subject to penalty for perjury.*

DATED: February 5, 2021                    */s/ William H. Murray*
                                           William H. Murray

10-    DECLARATION OF WILLIAM H. MURRAY IN
       SUPPORT OF FAMILYCARE, INC.'S MOTION TO
       DOWN-DESIGNATE AEO DOCUMENTS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222