**PERKINS**Coie

1201 Third Avenue
Suite 4900
Seattle, WA 98101-3099

☎ +1.206.359.8000
🖷 +1.206.359.9000
PerkinsCoie.com

November 5, 2020

Matthew P. Gordon
MGordon@perkinscoie.com
D.  +1.206.359.3552
F.  +1.206.359.4552

**VIA EMAIL TO JHERN@SCHWABE.COM**

Jeffrey Hern
Schwabe Williamson & Wyatt
1211 SW 5th Ste 1900
Portland OR 97204

**Re:    FamilyCare v. OHA**

Dear Jeff:

I write in response to your October 26 letter, in which you threaten to seek sanctions "against FamilyCare and its attorneys" based on numerous unfounded and misinformed accusations.  It is regrettable that you have again chosen heated rhetoric rather than making any attempt at productive dialogue. Although I notified you more than five weeks ago about Optumas's decision to down-designate documents, you never once called me to inquire about the down-designation or discuss any concerns but instead jumped straight to penning accusatory missives. While that strategy is unfortunately consistent with your client's unwillingness to engage in a good-faith process of identifying which documents it believes contain sensitive information—so that the parties might have a productive dialogue about those documents—I remain willing to discuss with you any concerns you have about Optumas's decision to down-designate certain documents and FamilyCare's understanding of that decision.

But to be clear, your letter's accusations that FamilyCare or its counsel acted improperly are entirely devoid of merit.  As explained before, and as further detailed in my October 29 letter to Chris Thompson (cc'd to you), FamilyCare simply followed the designation decisions of the designating party, Optumas.  When *Optumas* decided to designate thousands of documents as AEO, we treated them as AEO.  When *Optumas* decided to down-designate some of those documents, based on *Optumas's* determination that they did not merit AEO protection, we made the corresponding adjustments, and we notified you of the down-designation.  When, after receiving a phone call from you on October 9, 2020, Optumas asked us to temporarily suspend access to the down-designated documents, we did so straightaway, even though Optumas did not change any designations.  And when, after further communications with you, Optumas notified us that it was re-designating certain documents, we continued to suspend access while we worked with Optumas to clarify which documents it has re-designated.

This process of honoring the designations of the party who produces the documents and makes such designations is consistent with the protective order and Optumas's role as the designating

Exhibit 12
Page 1 of 3

Jeffrey Hern
November 5, 2020
Page 2


party.  And, as set forth in my letter to Mr. Thompson, it's readily apparent that Optumas made the decision to down-designate documents while it was or should have been fully aware of Trillium's position, if for no other reason than that you cc'd Optumas counsel on your various letters to me.

If you or your client have concerns with the designation decisions Optumas has made, you're free to raise those with Optumas and explain to Optumas which Optumas documents you believe contain your client's information that merits AEO protection, and why.  We have asked you several times to identify any documents you believe merit AEO protection, and we provided you with the information necessary to isolate the documents that referenced your client.  But you still have not identified—to FamilyCare or to Optumas—a single such document.  Indeed, you waited nearly two weeks after I notified you of Optumas's decision to down-designate before contacting me at all, and then only by letter.  This all reveals that Trillium recognizes that it has no colorable basis for claiming that any of the documents at issue merit AEO protection.  Indeed, as your client is well aware, OHA and Optumas have now set the 2021 CCO rates, and as a result, the outer limit of temporal restrictions imposed on experts under Paragraph 10 of the two protective orders has expired, leaving them free to work on the next round of rate-setting in Oregon.  This only further illustrates that the materials have long grown stale, and that, if they ever had any competitive value, it has long since evaporated.

In any event, your various letters have not identified anything in the protective orders or in the law suggesting that a party such as FamilyCare cannot or should not abide by the designation decisions of the designating party—here, Optumas.  Nor can you. We abided by Optumas's decision to down-designate.  We made the corresponding changes.  And as we informed Mr. Yium weeks ago, before we suspended access on October 9, 2020, Bill Murray at FamilyCare reviewed some of the documents that Optumas had down-designated.

FamilyCare has abided by the designating parties' designations in this case.  Any effort to seek sanctions for doing so would be a waste of the Court's resources.  I repeat that if you have any interest in productive dialogue rather than continued baseless accusations and threats, please don't hesitate to give me a call.  We have spent many hours trying in good faith to resolve issues with the numerous CCOs and with Optumas.  Indeed, FamilyCare's negotiations with Optumas and with other CCOs demonstrate FamilyCare's willingness to engage in good faith and to abide by a party's reasonable and good faith request that some information (prescription drug pricing, e.g.,) would remain AEO. This is the process that we have asked Trillium to engage in, but Trillium has refused. [1]  Nevertheless, despite the utter lack of reciprocation by Trillium, we remain open to further discussion.

---

[1] Your letter is riddled with errors and inaccurate statements.  In the interests of brevity, I've not addressed all of them here.  I will point out, however, that your characterization of FamilyCare's efforts to confer with the numerous

Perkins Coie LLP

Exhibit 12
Page 2 of 3

Jeffrey Hern
November 5, 2020
Page 3


Finally, recall that the protective orders require that designations restricting access to documents be made in good faith.  We do not understand that provision to directly apply to Trillium, because, contrary to your suggestions in your letter, Trillium is not a designating party and has not actually designated any documents as AEO—indeed, if Trillium had done so, it could presumably easily identify such documents.  But given that Trillium has now harangued Optumas into re-designating documents as AEO, it is incumbent on you to identify your client's good-faith basis for believing that the documents at issue include Trillium information that merits AEO protection.  Your client has the documents, you have the search overlay files, and you have had more than ample time to review them.  Yet your client has refused.  Given that lack of review, it is readily apparent that your client had no good-faith basis for insisting that *Optumas* documents that *Optumas* had down-designated must be re-designated as AEO.  If there is such a basis, please identify it.

As noted above and in my prior correspondence, FamilyCare has complied with the terms of the protective orders and specifically has honored and followed the designations made by the designating and producing parties, OHA and Optumas.

Sincerely,

Matthew P. Gordon

MPG:mjm


cc:    Harry Wilson, counsel for Oregon Health Authority
       Kevin O'Malley and Chris Thompson, counsel for Optumas
       Anna Sortun, counsel for CHA, WOAH, and UHA
       Matthew Yium, counsel for PCS

---

CCOs, OHA, and Optumas as a "pressure campaign" is misinformed and wildly inaccurate.  Indeed, CCO counsel initiated the stipulation for down-designation agreed to by a majority of the CCOs in this case, and we have conferred with counsel prior to filing a motion for down-designation, as required under the local rules.

Perkins Coie LLP

Exhibit 12
Page 3 of 3