Matthew J. Yium, OSB #054377
matthew.yium@foster.com
Foster Garvey P.C.
Eleventh Floor
121 SW Morrison Street
Portland, Oregon 97204-3141
Telephone: (503) 228-3939
Facsimile: (503) 226-0259

       Attorneys for Nonparty
       PacificSource Community Solutions

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| FAMILYCARE, INC., an Oregon non-profit corporation,<br>          Plaintiff,<br><br>    v.<br><br>OREGON HEALTH AUTHORITY, an agency of the State of Oregon, and PATRICK ALLEN, both individually and in his official capacity as director of the Oregon Health Authority, and LYNNE SAXTON,<br><br>          Defendants. | Case No. 6:18-cv-00296-MO<br><br><br>**PACIFICSOURCE COMMUNITY SOLUTIONS' OPPOSITION TO FAMILYCARE, INC.'S MOTION TO DOWN-DESIGNATE AEO DOCUMENTS**<br><br>ORAL ARGUMENT REQUESTED |

FG:11492526.3

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................. 1

II.   FACTUAL BACKGROUND................................................................................. 4

III.  DISCUSSION....................................................................................................... 9

      A.    Legal Standard ........................................................................................ 9

      B.    FamilyCare did not adequately confer before filing its motion. ............................ 11

      C.    FamilyCare has not demonstrated a need for the AEO-protected data of
            PacificSource..................................................................................... 12

      D.    Disclosure of AEO data of PacificSource would be highly prejudicial to
            PacificSource's business and should remain designated as AEO. ........................ 15

      E.    Optumas documents containing PacificSource-specific AEO data should not be
            down-designated.................................................................................. 19

IV.   CONCLUSION ................................................................................................. 20

# TABLE OF AUTHORITIES

**Cases**

*Altamont Summit Apartments LLC v. Wolff Properties LLC*,
  2002 WL 31971832, *5 (D. Or. 2002). ...................................................................... 11

*Collins and Aikman Corp. v. J. P. Stevens & Co., Inc.*,
  51 F.R.D. 219 (D.S.C.1971) ...................................................................................... 10

*Dart Indus. Co. v. Westwood Chem. Co.*,
  649 F.2d 646 (9th Cir. 1980) .................................................................................... 10

*Fed. Trade Comm'n v. DIRECTV, Inc.*,
  No. 15-CV-01129-HSG (MEJ), 2015 WL 8302932, at *4 (N.D. Cal. Dec. 9, 2015) .............. 10

*IntelliCAD Tech. Consortium v. Suzhou Gstarsoft Co. Ltd.*,
  3:19-CV-1963-SI, 2020 WL 7488174, at *4 (D. Or. Dec 21, 2020) ...................................... 10

*Nutratech, Inc. v. Syntech (SSPF) Int'l, Inc.*,
  242 F.R.D. 552 (C.D. Cal. 2007) ............................................................................... 10

*St. Jude Med. S.C., Inc. v. Janssen-Counotte*,
  305 FRD 630  (D Or 2015) .......................................................................................... 9

*United States v. Columbia Broad. Sys., Inc.*,
  666 F.2d 364 (9th Cir. 1982) ....................................................................................... 9

*Vesta Corp. v. Amdocs Mgmt. Ltd.*,
  147 F Supp 3d 1147 (D Or 2015) .............................................................................. 12

*Vesta Corp. v. Amdocs Mgmt. Ltd.*,
  2017 WL 714354, at *2 (D. Or. Feb. 21, 2017) ........................................................... 10

**Rules**

FRCP 26(b)(1) ............................................................................................................... 9

## I.    INTRODUCTION

FamilyCare, Inc.'s latest motion marks its fifth attempt to down-designate the Attorneys' Eyes Only (AEO) protected data of its competitors, none of whom are litigants in this case.  The non-party Coordinated Care Organizations ("CCOs") who have endured FamilyCare's four-year effort to walk back its promise of "robust protections" for CCOs under the protective orders entered by Judge Armstrong in 2017 include PacificSource Community Solutions ("PacificSource"), Trillium Community Health Plan, Cascade Health Alliance, Umpqua Health Alliance, and Western Oregon Advanced Health (collectively "Objecting CCOs").[1]  The protective orders struck a balance by allowing FamilyCare broad discovery of its competitors' sensitive commercial information—which the CCOs have always maintained is irrelevant and unnecessary for FamilyCare to prove its claims—but prohibiting FamilyCare employees from viewing documents marked "Attorneys' Eyes Only."

Consistent with the terms of the protective order, PacificSource (and other CCOs) in good faith and with specificity identified in 2017 the categories and type of data requiring AEO protection ("PacificSource-specific AEO Information") from among the 13 categories of potentially sensitive information created by Oregon Health Authority (OHA) and recognized by Optumas ("OHA/Optumas Categories").  The PacificSource-specific AEO Information includes pricing data, incentives, and payment arrangements such as capitation PacificSource has negotiated with healthcare providers.  That information required protection then as it does today.

---

[1] The Objecting CCOs intend to file motions joining in opposition to FamilyCare's motion.

As explained below, the passage of time and CCO 2.0 have not eliminated the need for protection of PacificSource-specific AEO Information and does not justify the wholesale down-designation sought by FamilyCare.  PacificSource operates in single provider regions and operates commercial (non-OHP) lines of business.  Aggregate data for a given region would allow a competitor to extrapolate provider pricing and payment methodologies that could provide FamilyCare employees with a competitive advantage if they were to seek to enter into PacificSource's territories or the commercial sector.  Data from 2016 and earlier is not "stale" because, among other reasons, many of PacificSource's provider contracts are multiyear and provider pricing in various areas remains relatively stable.  Further, changes to OHA's rate setting process and shift to value-based payment methodologies do not change the fact that the data contains provider protected payment arrangements and capitation information of PacificSource that could be used to PacificSource's disadvantage in future bidding processes.

Principles of proportionality, this Court's prior directives, and the Protective Orders all dictate that FamilyCare bear the burden of establishing its need for PacificSource-specific AEO Information, including the cost and burden of identifying any PacificSource-specific data it seeks to down-designate.  FamilyCare's motion seeks the wholesale down-designation of approximately 5,000 documents containing the undifferentiated data of more than a dozen CCOs.  The undifferentiated documents were assembled by FamilyCare at a time when all of the CCOs objected to down-designation.  Following an appeal and remand from the Ninth Circuit, FamilyCare reached stipulation to down-designation with CCOs who were worn down by the time, burden, and cost of nearly four years of litigation.  In light of those stipulations, FamilyCare now has access to many of the CCOs' previously AEO-protected data, including

HealthShare, the CCO that was FamilyCare's direct competitor and the only other CCO operating in the Portland region where FamilyCare's claims are based.

FamilyCare has not demonstrated a particularized need for PacificSource-specific AEO Information.  Its motion is devoid of explanation why PacificSource-specific AEO Information is necessary to prove any particular claim or allegation in its operative complaint.  Nor does FamilyCare explain why it needs access to PacificSource's (and the Objecting CCOs) AEO data when it now has access to many other CCOs data.  Further, FamilyCare conspicuously omits addressing why FamilyCare cannot prove its claims utilizing redacted documents that protect PacificSource's and the Objecting CCOs' AEO data.

Making matters more complicated, FamilyCare has framed its motion around eight self-created categories of documents that do not correspond with the OHA/Optumas Categories from which PacificSource and other CCOs made their AEO determinations in 2017.  With FamilyCare electing to re-categorize and seek wholesale down-designation of the entire 5,000 document set, PacificSource is left without a sensible means of determining which documents are at issue in the first place.  Meanwhile, FamilyCare spends most of its motion casting aspersions on PacificSource (and the Objecting CCOs)—non-parties unwillingly dragged into litigation that have borne significant cost and time to enforce their rights under the protective orders—for not having eagerly assumed the cost and burden of hiring outside litigation counsel to review an undifferentiated set of 5,000 documents when only a fraction contains their respective protected data.

With FamilyCare having denied PacificSource's request for a narrowed subset of documents implicating PacificSource AEO Information, and with FamilyCare having failed to

establish a need for PacificSource-specific documents in the first place, FamilyCare's motion

should be denied with respect to PacificSource-specific AEO Information (and that of the

Objecting CCOs) without leave to file further motions. If the motion is not denied on the merits,

PacificSource respectfully requests that FamilyCare be required to pay the reasonable costs of

any further review or involvement by PacificSource necessary to identify documents containing

PacificSource-specific AEO data that may be down-designated by stipulation upon a showing of

need for such data by FamilyCare.

This response memorandum is supported by the declarations of Julie Farrow ("Farrow

Decl.") and Matthew J. Yium ("Yium Decl.").

## II.    FACTUAL BACKGROUND

PacificSource is an active and successful coordinated care organization providing

Medicaid/OHP services in the Central Oregon, Columbia Gorge, Lane County, and Marion/Polk

County regions. Farrow Decl. at ¶ 2. During the time period covering the documents and data at

issue on this motion (2016 and earlier), PacificSource served the Columbia Gorge and Central

Oregon regions, and not any region in which FamilyCare operated. *Id.*

This Court is likely already familiar with the long history of this discovery dispute, which

began in 2017 in Oregon state court, after FamilyCare's request for production of documents to

OHA implicated nearly a dozen nonparty CCOs' trade secret information. [Doc 43] (Lindenauer

Decl., Ex. A). After the CCOs' intervention, negotiations and a hearing on issues the parties

could not resolve consensually, Judge Armstrong entered protective orders setting forth the

general terms and conditions of the playing field that FamilyCare now claims to be

"unbalanced." Mertens Decl., Ex. 1 and 2 (Protective Orders).[2]

Consistent with the protective orders, PacificSource and other CCOs identified with

specificity the type and categories of data requiring AEO protection ("PacificSource-specific

AEO Information") from among the 13 categories of potentially sensitive information created by

OHA in 2017 and recognized by Optumas ("OHA/Optumas Categories"). Farrow Decl., ¶¶ 4-6

and Ex. A. PacificSource identified the specific data and portions of documents from among

those 13 categories requiring AEO protection. *Id*. The PacificSource-specific AEO Information

includes pricing, incentives, and payment arrangements such as capitation PacificSource has

negotiated with healthcare providers. *Id*. OHA and Optumas presumably marked documents

and data Attorneys' Eyes Only consistent with the PacificSource-specific AEO Information. The

PacificSource-specific AEO Information is trade secret because it contains information on

pricing and payment arrangements such as capitation PacificSource has negotiated with

healthcare providers. *Id*. In addition, certain PacificSource provider contracts have

confidentiality provisions that must be honored. *Id*. As explained in Section D below, the above

information could and still can be used by FamilyCare or other PacificSource competitors to

disadvantage PacificSource.

The Protective Orders provide a procedure by which erroneous AEO designations may be

challenged, which requires FamilyCare to satisfy the burden of identifying for each appropriate

---

[2] During these negotiations, FamilyCare claimed it was "currently negotiating a protective order with robust protections for documents that the CCOs believe to contain confidential information or trade secrets* * *." [Doc 60], Para. 13 (Chaimov Declaration)].

CCO a document-by-document explanation why AEO designation is erroneous.  Mertens Decl., Exs. 1 and 2, ¶ 5(d) (FamilyCare must send letter to **appropriate CCO(s)** with a copy to OHA or Optumas requesting re-designation and explaining its position **why** the document has been erroneously designated).

In March 2018, FamilyCare filed an "omnibus" discovery motion, including a request for down-designation of AEO documents.  [Doc 30].  Following that motion, the Court directed the parties to further confer and establish de-designation procedures.  [Doc 86].  In connection with that process, in or around May 2018, PacificSource (and other CCOs) undertook to review more than 1,100 documents FamilyCare sought to down-designate.  Yium Decl. at ¶ 3, Ex. 1.  Because the documents contained multiple CCOs' information, PacificSource was required to devote significant time and cost for outside litigation counsel and paralegals to conduct the review.  *Id*. As a result of these efforts, PacificSource provided OHA with its list of agreeable down-designations of many of the documents.  *Id*.

Dissatisfied with the CCOs' efforts, FamilyCare subsequently filed more motions for down-designation of some 19,000 AEO documents in August and September 2018, followed by a motion for reconsideration.  [Docs 196, 251, 290, and 302].  In its ruling on the motion for reconsideration, the Court required FamilyCare to provide document-level challenges and an explanation to justify its claimed need for each document for which it sought down-designation. [Doc 342] ("Plaintiff should provide an item by item list of documents it requests be down-designated."; *see also* Yium Decl. at ¶ 4, Ex. 2 (11/13/18 email from Chambers stating, "Plaintiff should provide the Court with an itemized list, including explanations **for each item**, of which documents should be down-designated **and why Plaintiff needs access**.") (emphasis added).

PACIFICSOURCE COMMUNITY SOLUTIONS' OPPOSITION TO FAMILYCARE, INC.'S MOTION TO DOWN-DESIGNATE AEO DOCUMENTS
Page 6 of 21

On February 1, 2019, FamilyCare provided a list of approximately 4,344 documents divided into nine categories created by FamilyCare.  Mertens Decl., Ex. 3.  The categories did not correspond to the OHA/Optumas Categories that were relied upon by PacificSource in identifying the PacificSource-specific AEO Information.[3]  The list of documents was not itemized by CCO, but was a compilation of undifferentiated documents containing any one or more of the CCOs' AEO-protected data.[4]

More than a year passed without action by FamilyCare to seek down-designation or narrow the documents at issue to specific CCOs.  On or about June 9, 2020, apparently after realizing an error with its February 2019 submission, FamilyCare notified the Court of an additional 729 documents it sought to be down-designated.  Mertens Decl., Ex. 6.  The Court informed FamilyCare it would need to file a formal motion.  Mertens Decl., Ex. 7.

On July 1, 2020, FamilyCare sent a letter to counsel for various CCOs seeking stipulation to down-designation.  Mertens Decl, Ex. 8.  According to FamilyCare, three of the CCOs had stipulated to down-designation of their respective AEO data with the exception of prescription drug pricing data.  *Id*.  Additional stipulations have apparently since been reached with other CCOs, including HealthShare.  In connection with their withdrawal as intervenors, stipulating CCOs made clear their withdrawal did not reflect a lack of commercial value or appropriate

---

[3] *Compare* Farrow Decl., Ex. A with Mertens Decl., Ex. 3.
[4] With respect to FamilyCare's February 2019 list, this Court ruled that, "[o]nce the Court receives that list it will decide whether to require a response or hold a hearing."  Yium Decl. at Para. 4, Ex. 2 (11/13/18 email ruling).  As such, PacificSource awaited direction from the Court and did not file a formal response.

protections of any of the information for other CCOs. [Docs 394 and 396] (EOCCO and PHJC Motions to Withdraw).

In August 2020, counsel for FamilyCare contacted counsel for PacificSource regarding whether a stipulation might be reached as to down-designation. Yium Decl. at ¶ 5, Ex. 3. At that time, FamilyCare's counsel provided PacificSource's counsel (who had recently stepped in as new lead counsel) with what FamilyCare's counsel represented as the "relevant protective order that all the CCOs have been following." Yium Decl., Ex. 3 at p.1. That version of protective order—which turned out to be obsolete—allowed for review of documents by PacificSource's in-house counsel and staff. Yium Decl., Ex. 3 at p. 5, ¶¶ 9 and 8(b). Based on this misinformation, PacificSource began efforts to explore the possibility of conducting a review of the full set of 5,000 documents. Yium Decl. at ¶ 5.

After FamilyCare's error was discovered, it became apparent that review of the 5,000 AEO documents could only be performed by outside litigation counsel at significant time and cost, and PacificSource sought to narrow the set of documents in dispute. *Id*. at ¶ 6. To that end, it proposed the following:

> "I am open to continuing to work with you to try to reach an agreement with respect to PacificSource-specific documents, but in order to have a meaningful conferral, we would ask FamilyCare to: (a) identify the set of documents for which it will seek "down-designation" in its action against OHA now that many of the CCOs have dropped their objections; (b) identify with particularity the subset of documents containing PacificSource's information; and (c) state with particularity as to each document or category of documents the purported "need" for FamilyCare access for expert report and trial preparation and how FamilyCare is prejudiced by the AEO-only designation."

Yium Decl. at ¶ 6, Ex. 4.

PacificSource's proposal aligned with the proposal of other Objecting CCOs, including Trillium. Yium Decl. at ¶ 7, Ex. 5. FamilyCare did not respond substantively to PacificSource's (or Trillium's) proposal to narrow the set of documents, opting instead to file a motion for wholesale down-designation.

## III.    DISCUSSION

### A.    Legal Standard

Fed R. of Civ. Proc. 26(b)(1) adopted the principle of civil discovery known as "proportionality," under which a party's discovery needs must be tempered by consideration of the resources, burden, and expenses imposed on a responding party to satisfy discovery requests:

> "(1) Scope in General. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

The "rule of proportionality" set forth in FRCP 26(b)(1) applies to non-parties. *St. Jude Med. S.C., Inc. v. Janssen-Counotte*, 305 FRD 630, 637 (D. Or. 2015). Consistent with principles of proportionality, the Ninth Circuit has generally recognized that discovery involving non-parties is generally limited when it would cause excessive burden, harassment, inconvenience or disclosure of confidential documents.

> "While discovery is a valuable right and should not be unnecessarily restricted,…the 'necessary restriction may be broader when a nonparty is the target of discovery. As one district court has noted, (t)here appear to be quite strong considerations indicating that discovery would be more limited to protect

third parties from harassment, inconvenience, or disclosure of confidential documents."

*Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir. 1980) (quoting *Collins and Aikman Corp. v. J. P. Stevens & Co., Inc.,* 51 F.R.D. 219, 221 (D.S.C.1971)).

Nonparty witnesses are powerless to control the scope of litigation and discovery, and courts have found they should not be forced to subsidize an unreasonable share of the costs of litigation to which they are not a party. *United States v. Columbia Broad. Sys., Inc.*, 666 F.2d 364, 371 (9th Cir. 1982); see also *Fed. Trade Comm'n v. DIRECTV, Inc.*, No. 15-CV-01129-HSG (MEJ), 2015 WL 8302932, at *4 (N.D. Cal. Dec. 9, 2015) (Ninth Circuit "does not favor unnecessarily burdening nonparties with discovery requests, and, as a result, [n]on-parties deserve extra protection from the courts.").

FamilyCare insists that PacificSource bears the burden of establishing its need for trade secret protection with respect to the documents at issue on its motion. That contention is without merit as it ignores the fact that PacificSource and the other CCOs already established their need for AEO protection of the documents, which led to entry of the protective orders in the first place. PacificSource and the Objecting CCOs properly identified in 2017 their respective AEO data within the OHA/Optumas Categories as requested. As such, the burden falls on FamilyCare as the party seeking disclosure to establish that disclosure of the PacificSource-specific AEO Information is warranted. *IntelliCAD Tech. Consortium v. Suzhou Gstarsoft Co. Ltd.*, 3:19-CV-1963-SI, 2020 WL 7488174, at *4 (D. Or. Dec 21, 2020) (citing *Vesta Corp. v. Amdocs Mgmt. Ltd.*, 2017 WL 714354, at *2 (D. Or. Feb. 21, 2017) (Vesta II); *Nutratech, Inc. v. Syntech (SSPF) Int'l, Inc.*, 242 F.R.D. 552, 555 (C.D. Cal. 2007) ("After a party seeking a protective order shows

that the information at issue is a trade secret or otherwise confidential and that disclosure would be harmful, the burden shifts to the party seeking disclosure to establish disclosure is warranted.").

### B.    FamilyCare did not adequately confer before filing its motion.

FamilyCare did not adequately confer with PacificSource and the Objecting CCOs before filing its motion.  Local Rule 7-1 requires a moving party to confer with the non-moving party about the "merits" of the planned motion, *i.e.*, the "specific issues" the planned motion will raise. *Altamont Summit Apartments LLC v. Wolff Properties LLC*, 2002 WL 31971832, *5 (D. Or. 2002).

Before filing its motion, FamilyCare did not identify for PacificSource the subset of documents at issue on this motion implicating PacificSource-specific AEO Information.[5] Document-level specificity is required to meaningfully confer under Local Rule 7-1, as well as the Protective Order.  Mertens Decl., Exs. 1 and 2, ¶ 5(d).  Exhibit 1 attached to FamilyCare's motion lumps together the undifferentiated data of all CCOs, making it unreasonably time consuming and costly for PacificSource to even begin to assess whether and to what extent there are PacificSource-specific documents to which it can stipulate to down-designation.  And FamilyCare offers no explanation in its motion why it cannot and will not narrow the subset of

---

[5] A comparison of Exhibit 1 with FamilyCare's February 1, 2019 and June 9, 2020 submissions (marked as Exhibits 3 and 6 to the Mertens Declaration) does not readily reveal how Exhibit 1 was compiled.  It appears Exhibit 1 may have re-ordered documents numerically, which makes verification of FamilyCare's representation extraordinarily difficult.

documents at issue in light of the stipulation of many of the CCOs to down-designation of the data contained in Exhibit 1.

Requiring identification of particular documents not only facilitates good faith conferral, but also prevents a "fishing expedition" into competitor's commercially sensitive trade secrets. *Vesta Corp. v. Amdocs Mgmt. Ltd.*, 147 F. Supp. 3d 1147, 1153 (D. Or. 2015) (citation omitted).

PacificSource offered a reasonable path forward by requesting that FamilyCare: (a) identify the narrowed set of documents for which it has not obtained stipulated down-designation in light of the CCOs that have dropped their objections; (b) identify with particularity the subset of documents containing PacificSource's AEO information; and (c) state with particularity as to each document or category of documents the purported need for FamilyCare access for expert report and trial preparation and how FamilyCare is prejudiced by the AEO-only designation. FamilyCare did not respond with any alternative path to narrowing the documents at issue before filing its motion.

Because FamilyCare elected not to meaningfully confer and because of the significant time and cost already incurred by PacificSource, the motion should be denied with respect to any PacificSource-specific AEO Information without leave to refile further motions.

### C. FamilyCare has not demonstrated a need for the AEO-protected information of PacificSource.

FamilyCare has not demonstrated any particularized need for PacificSource-specific AEO Information or stated how the documents at issue are necessary to prove any particular claim or allegation in its operative complaint. In fact, in twenty-one pages, FamilyCare makes only two broad-brush statements regarding a need for the AEO data of its competitors to show

unfair treatment in rate setting; however, neither statement actually links the documents sought on this motion to the claims or defenses raised in the operative pleadings.[6]

FamilyCare's motion does not establish any particularized need for PacificSource-specific AEO data in order to show it was treated unfairly in rate-setting. PacificSource is not in the same Oregon Health Plan geographic region previously served by FamilyCare. Farrow Decl. at ¶¶ 2 and 14. During the relevant timeframe of FamilyCare's claims, rates were set at the regional level, with all claims data coming from the region only. Farrow Decl. at ¶ 14. Regional claims were adjusted by risk score, which was normalized by the region's risk score and an A/B hospital adjustment, which was also normalized to the region. *Id*. Trends displayed in the rate certification were at the regional level. *Id*. Thus, each region's rates were set based on that region's information and independently of other regions. *Id*. CCO data outside the Portland Tri-County area was and is not relevant to the Portland Tri-County area's rates. *Id*.

In addition, FamilyCare does not address anywhere in its motion how its newfound stipulated access to a significant portion of the previously designated AEO data—including HealthShare, its direct competitor in the Portland-area market—renders it unable to prepare for trial or otherwise prove its claims. The declaration of Mr. Murray of FamilyCare includes generic statements about the need for access to "other CCOs" AEO data to assist FamilyCare's experts "in assessing the consistency or inconsistency of FamilyCare's treatment compared to that of other CCOs." Murray Decl., ¶ 8. Perhaps because the declaration is largely a "copy and

---

[6] The statements are: "The documents at issue in this motion are key to FamilyCare's litigation because they relate to a core issue in this case—whether OHA treated FamilyCare unfairly in rate-setting" (Motion p. 4) and "…there are still 19,439 [*sic*] documents designated AEO, many of which relate to the rate-setting process." (p. 5)

paste" of an earlier 2018 declaration,[7] there is no acknowledgement of the effect of FamilyCare's

stipulated access to the AEO data of its primary competitor, HealthShare, and many other CCOs.

FamilyCare has failed to establish a need for the wholesale down-designation of the same set of

5,000 documents that was at issue before FamilyCare's stipulated access to the AEO data of

many other CCOs.

Additionally, FamilyCare's motion conspicuously omits discussing why it cannot prepare

its case utilizing redacted versions of documents as contemplated by the Protective Order.

Mertens Decl., Exs. 1 and 2, ¶ 10.  In fact, FamilyCare previously offered to redact portions of

key documents (known as Exhibit L's).  [Doc 303] (10/15/18 Murray Decl. ¶ 7). Curiously,

FamilyCare no longer offers redaction of Exhibit L's or any other documents despite the fact that

the task of redaction has been narrowed to the data of PacificSource and the remaining Objecting

CCOs.  Principles of proportionality and the Protective Order dictate that FamilyCare shoulder

the burden of redactions when PacificSource and the Objecting CCOs are non-parties to this

litigation facing no clear end to this dispute.

Finally, it bears noting that under the current protective order, FamilyCare's actuary

expert witness is entitled to see all documents, including those designated AEO.  FamilyCare

does not provide any declaration from an expert establishing his or her need for assistance from

FamilyCare's employees or officers to understand or analyze the documents to which they

already have access.  In fact, expert access was determined by Judge Armstrong as sufficient to

---

[7] For example, Mr. Murray refers in paragraph 5 to an "inability to view the more than 19,000 documents marked 'Attorneys Eyes Only' (AEO)" which is "having a profound negative impact on FamilyCare's preparation for trial" but the 19,000 figure and statement is taken verbatim from his 10/15/18 declaration [Doc 303].

allow FamilyCare to investigate and present expert testimony on the soundness of rate setting

without undue prejudice to the CCOs. To the extent PacificSource-specific AEO Information is

relevant at all to FamilyCare's claims, FamilyCare's expert has adequate access to that

information.

With FamilyCare having failed to establish a need for PacificSource's AEO data, the

motion should be denied with respect to PacificSource-specific AEO Information without leave

to file further motions.

> **D.      Disclosure of AEO data of PacificSource would be highly prejudicial to PacificSource's business and should remain designated as AEO.**

PacificSource long ago designated the categories of information and data requiring AEO

protection in the format requested by OHA, and FamilyCare did not object to OHA's format. In

each of categories called out by OHA, PacificSource specified which documents require

protection. Farrow Decl., ¶¶ 4-6, Ex. A. For some categories, PacificSource did not seek

protection. *Id*. Only in selected and appropriate instances did PacificSource designate an entire

category as requiring protection. *Id*.

As explained in detail in the Farrow declaration filed herewith, each of the PacificSource

designations is appropriate because the information in the documents could be used by a

competitor to disadvantage PacificSource. *Id*. These facts have not changed. PacificSource

understands OHA will likely use a competitive procurement process for future contracts,

including in 2024. Farrow Decl., ¶ 8. It is possible OHA may choose to contract with fewer

CCOs within the State of Oregon. *Id*. It is also possible other entities including FamilyCare will

seek to serve the geographic regions in the Columbia Gorge and Central Oregon served by

PacificSource today and during the period covered by the documents at issue. *Id*. To the extent FamilyCare can obtain or extrapolate provider rates and pricing or, as importantly, the existence or non-existence of provider engagement strategies or methodologies such as value based payments, FamilyCare or other CCOs who hire FamilyCare employees or officers could use that to PacificSource's disadvantage in future CCO competitive bidding processes. *Id*., ¶¶ 8-9.

Further, certain PacificSource provider contracts require PacificSource keep information confidential. Farrow Decl., ¶ 6. The information from 2016 and earlier is not stale, nor will it become stale in upcoming years because many provider contracts are multiyear and provider pricing in various areas remains relatively stable. Farrow Decl., ¶ 6 and 15(h).

Even aggregate data is sensitive because in some instances individual provider rates and arrangements can be derived from it. Farrow Decl., ¶ 9. From earlier than 2016 to present, PacificSource has only one or a few providers for certain services, in which case the aggregate data for a given region would allow a competitor to extrapolate provider pricing and payment methodologies. *Id*. To the extent a competitor can obtain or extrapolate either provider rates and pricing or provider engagement strategies or methodologies, a competitor could use that to PacificSource's disadvantage in a future CCO competitive bidding process. *Id*. The information could also be used by a competitor to PacificSource's disadvantage with respect to its commercial lines of business. *Id*.

While Mr. Murray's latest declaration states that FamilyCare has been out of the business for several years, he does not provide any assurance that FamilyCare will not return to the

business in the future.[8]  Nor does the declaration provide assurances that current FamilyCare officers (including Messrs. Murray and Suchorzewski), employees, and/or experts may later be engaged by other PacificSource competitors.  Beyond using the information to gain an advantage in the rate setting process, these individuals could use knowledge of whether PacificSource does or does not use alternative payment models, risk sharing, quality based metrics or benchmarks, shared savings, value based payment or other types of strategic provider engagement methodologies to gain an advantage in future contracting processes whether on behalf of FamilyCare or another competing CCO who might hire them.[9]  Farrow Decl., ¶ 13.

FamilyCare's contention that future OHA procurement processes will not involve a competitive bidding process is not accurate.  Farrow Decl. at ¶ 10.  The "qualification" criteria set forth in future procurement requests by OHA will likely create metrics that must be met to qualify and will create potential competition between CCOs to meet those metrics.  *Id*.  Disclosure of PacificSource-specific AEO Information would likely assist FamilyCare or its officers and employees in efforts to enter new regions and disadvantage other CCOs seeking to service those regions.  *Id*.  The information would also allow FamilyCare or its officers to determine which areas to seek to enter based on where they might achieve the greatest profit.  *Id*.

---

[8] Mr. Murray's prior declaration stated that FamilyCare "wishes to reenter the Medicaid market in Oregon at some point, [but] it has not made any decision about if or when it would do so." [Doc 303] at Para. 11.

[9] If the Court considers adding Messrs. Murray or Suchorzewski or other FamilyCare employees to the list of individuals authorized to view AEO data, the provisions limiting use of such information should be clarified as those limitations arguably could be interpreted as expiring in 2021.  Mertens Decl., Ex. 1 and 2, ¶ 10; *See, e.g.* Motion at p. 13 (FamilyCare contending that the limitation prohibiting involvement in future rate setting expired as of October 2020).

PacificSource disputes FamilyCare's argument that because OHA contracts are pushing CCOs to increase utilization of value-based payments, the historical AEO data to which it seeks access "are unlikely to be informative as to CCO's current reimbursement arrangements or financial information." Murray Decl. at ¶ 11. Unlike some CCOs, PacificSource has utilized several value-based payment methodologies for many years, including during the time frame in question. Farrow Decl. at ¶ 11. Disclosure of PacificSource's historical value-based payment information could be used by competitors, including FamilyCare, to PacificSource's disadvantage in future bidding processes and/or its commercial line of business. *Id*.

Finally, PacificSource disputes FamilyCare's suggestion that a change to a statewide aspect of OHA and Optumas's rate setting process would make regional rate models for which FamilyCare seeks access not relevant to current rate-setting practices in Oregon. Murray Decl. at ¶ 12. That argument does not account for the fact that the statewide model is effectively an aggregation of all the regional models that continues to apply regional adjustments. Farrow Decl. at ¶ 12. The data and information contained in the regional rate setting models contain data from which provider protected payment arrangements and capitation information of PacificSource can be extrapolated. *Id*. PacificSource has designated such data as AEO because it can be used by competitors, including FamilyCare, to PacificSource's disadvantage in future procurement bidding processes. *Id*.[10]

---

[10] Finally, paragraph 15 of the declaration of Ms. Farrow addresses PacificSource's continued concerns about disclosure of its AEO information with respect to each of the categories of documents outlined in Mr. Murray's declaration.

**E.    Optumas documents containing PacificSource-specific AEO data should not be down-designated.**

In addition to the OHA documents described above, a subset of documents at issue on FamilyCare's motion involve AEO designations by Optumas, OHA's third-party actuary. In November and December of 2020, Optumas at FamilyCare's insistence re-reviewed its documents and identified four categories of documents, including two of which were potentially subject to down-designation if consent from the CCOs were obtained or otherwise resolved by the Court.[11]  Mertens Decl., Ex. 13; Yium Decl., Ex. 6.

FamilyCare—eager to bypass any input from the CCOs—misconstrued Optumas's proposal as an explicit agreement by Optumas to down-designation.  Yium Decl., Ex. 6 and 7. Despite the fact that PacificSource and the Objecting CCOs continued to object to down-designation, FamilyCare proceeded to unilaterally allow its officers (including Murray and Suchorzewski) access to the Optumas documents.  Yium Decl., Exs. 6, 7, and 8.  This decision appears to have violated the Optumas Protective Order, which grants third-parties such as PacificSource the right to make AEO designations (Mertens Decl., Ex. 2 at ¶ 4), and prohibits disclosure when AEO claims are known to have been made.  Mertens Decl., Ex. 1 and 2 at ¶ 11 ("if that party knows or reasonably should know that a claim of confidentiality would be made by the producing party…").[12]  Only after the Objecting CCOs called out FamilyCare on its

---

[11] The four categories created by Optumas do not correspond to the 13 categories of documents created by OHA or the 8 categories of documents created by FamilyCare.

[12] "Producing parties" includes "third parties and subpoenaed parties" such as PacificSource and the Objecting CCOs.  Mertens Decl., Ex. 2 at ¶ 4.

apparent violation of the Protective Order did FamilyCare restore restrictions over its officers' access to AEO-designated Optumas documents.  Yium Decl. at Exs. 6 and 7.

PacificSource and the Objecting CCOs later repeatedly requested, but were not provided with, a list of documents corresponding to Optumas's categories subject to proposed down-designation.  Yium Decl. at ¶ 11, Exs. 9 and 10.  Having been denied that information before FamilyCare filed this motion, the Objecting CCOs did not have a meaningful opportunity to assess which Optumas documents may or may not implicate their AEO data.

To the extent PacificSource-specific AEO Information is contained in the Optumas documents at issue, PacificSource stands by its objection to down-designation for the same reasons stated above.  In light of the extraordinary costs that have already been borne by PacificSource caused by FamilyCare's prolonged and contentious maneuvering, PacificSource respectfully requests that the motion be denied and that PacificSource-specific AEO Information contained in any Optumas documents remain AEO-protected.

## IV.    CONCLUSION

For the reasons set forth above, FamilyCare's motion should be denied with respect to PacificSource-specific AEO Information (and that of the Objecting CCOs) without leave to file further motions.  If the motion is not denied on the merits, PacificSource respectfully requests that FamilyCare be required to pay the reasonable costs of any further review or involvement by PacificSource necessary to identify documents containing PacificSource-specific AEO data that may be down-designated by stipulation upon a showing of need for such data by FamilyCare.

DATED this 25th day of February, 2021.


FOSTER GARVEY P.C.


By *s/ Matthew J. Yium*
　　Matthew J. Yium, OSB #054377
　　matthew.yium@foster.com
　　Telephone:  (503) 228-3939
　　Fax:  (503) 226-0259

　　Attorneys for Nonparty PacificSource
　　Community Solutions