Matthew J. Yium, OSB #054377
matthew.yium@foster.com
Foster Garvey P.C.
Eleventh Floor
121 SW Morrison Street
Portland, Oregon 97204-3141
Telephone: (503) 228-3939
Facsimile: (503) 226-0259

    Attorneys for Nonparty
    PacificSource Community Solutions

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| FAMILYCARE, INC., an Oregon non-profit corporation,<br><br>   Plaintiff,<br><br>  v.<br><br>OREGON HEALTH AUTHORITY, an agency of the State of Oregon, and PATRICK ALLEN, both individually and in his official capacity as director of the Oregon Health Authority, and LYNNE SAXTON,<br><br>   Defendants. | Case No. 6:18-cv-00296-MO<br><br><br>**DECLARATION OF JULIE FARROW IN SUPPORT OF PACIFICSOURCE COMMUNITY SOLUTIONS' OPPOSITION TO FAMILYCARE, INC.'S MOTION TO DOWN-DESIGNATE AEO DOCUMENTS** |

I, Julie Farrow, declare as follows:

1. I am the Director of Government Pricing in Actuarial Services for PacificSource

Community Solutions, Inc. ("PacificSource"). In that capacity, I am responsible for various

financial matters relating to PacificSource Medicare Advantage and Medicaid (Oregon Health

DECLARATION OF JULIE FARROW IN SUPPORT OF PACIFICSOURCE
COMMUNITY SOLUTIONS' OPPOSITION TO FAMILYCARE, INC.'S MOTION TO
DOWN-DESIGNATE AEO DOCUMENTS
Page 1 of 12

FG:11507797.1

Plan) lines of business.  I am over the age of 18 years, competent to make this declaration, and do so on the basis of my personal knowledge of the facts set forth herein, except when noted to the contrary.

2.    PacificSource is an active and successful coordinated care organization providing Medicaid/OHP services in the Central Oregon, Columbia Gorge, Lane County, and Marion/Polk County regions.  During the time period covering the documents and data at issue on this motion (2016 and earlier), PacificSource served only the Columbia Gorge and Central Oregon regions, and not any region in which FamilyCare operated.

3.    I have submitted three prior declarations in this case signed on March 29, 2018, [Doc 42]; September 28, 2018, [Doc 277]; and October 25, 2018 [Doc 319] respectively.  The statements made in those declarations remain true and accurate subject to updated points made in this declaration.

4.    In my March 29, 2018 declaration [Doc 42], I set forth the specific PacificSource documents containing PacificSource confidential and trade secret information in the form requested by OHA at the time.  My declaration and its Exhibit A identified the type and categories of confidential and trade secret information PacificSource requested that Oregon Health Authority (OHA) designate as Attorneys Eyes Only.  For ease of reference, I have attached a duplicate copy of Exhibit A to this declaration.

5.    PacificSource's AEO designations as identified on Exhibit A remain unchanged today.  The information on Exhibit A which PacificSource designated as needing attorneys' eyes only protection is trade secret and, except for required disclosures to OHA or other government

DECLARATION OF JULIE FARROW IN SUPPORT OF PACIFICSOURCE COMMUNITY SOLUTIONS' OPPOSITION TO FAMILYCARE, INC.'S MOTION TO DOWN-DESIGNATE AEO DOCUMENTS
Page 2 of 12

FG:11507797.1

agencies, is kept confidential by PacificSource because it could provide a PacificSource competitor with an advantage if known.

6.      On Exhibit A, PacificSource identified with specificity those trade secret documents and information within the 13 categories created by OHA as potentially needing protection.  In some instances on Exhibit A, PacificSource indicated an entire category could be produced without protection.  Where only some documents within a category required protection, PacificSource identified them specifically.  The following is a brief explanation of the rationale for the PacificSource designations on Exhibit A within each category:

a.      CCO Rate of Growth Tool.  The Rate of Growth Tool compares provider costs between years and addresses reasons for cost changes.  It contains information on which providers are capitated and which are not.  The document also explains reasons for cost changes.  These reasons could provide others with competitive information.  In addition, some of the PacificSource provider contracts have confidentiality clauses.  Accordingly, the PacificSource identified portions of the Rate of Growth Tool require protection as trade secret and confidential.

b.      Exhibit L.  Exhibit L is a Financial Reporting Template.  The template contains information on provider rates and incentives, and capitated versus non-capitated providers.  Accordingly, the identified portions of Exhibit L are trade secret and confidential.

c.      Supplemental Rate Templates.  These documents have information which would reveal pricing under PacificSource's contract with its pharmacy benefits manager.

FG:11507797.1

As previously noted, the contract has a confidentiality clause.  Accordingly, the identified portions of the Supplemental Rate Templates are trade secret and confidential.

d.     <u>Claims and Encounter Data</u>.  In addition to containing protected health information, this data would reveal provider pricing and capitation arrangements.  As previously discussed, this information is trade secret and confidential.

e.     <u>State Enrollment Data including premiums paid</u>.  PacificSource has not sought protection for this data.

f.     <u>Medical Loss Ratio Template</u>.  This document has information which would allow a competitor to determine information about capitation arrangements.  As previously discussed, this is trade secret and confidential information.

g.     <u>Audited Financials</u>.  PacificSource does not have separate audited financials for the period in question and has not sought protection for this category.

h.     <u>Actuarial Opinions</u>.  PacificSource rescinded its prior request for protection in this category in the case of the publically reported Actuarial Statement of Opinion associated with the NAIC Health Annual Statements.  To the extent other actuarial opinions are expressed, they should be considered confidential as they can be based on internal provider payment data.

i.     <u>SNRG Reconciliation</u>.  This document has provider pricing and capitation arrangement information.  The document also has information on PacificSource reinsurance premiums and pharmacy rebates under PacificSource's contract with its

FG:11507797.1

pharmacy benefits manager containing a confidentiality provision.  As previously discussed, this information is trade secret and confidential.

j.    Primary Care Template.  This document identifies instances in which PacificSource has capitation arrangements.  It is trade secret and confidential.

k.    Any records or detail that would identify prescription drug prices or rebates.  Drug pricing through PacificSource's pharmacy benefits manager is confidential and the applicable contract imposes a confidentiality obligation.  As previously discussed, the information is trade secret and confidential.

l.    Any other records or detail data that would expose encounters, rates or contractual agreements with physicians, hospitals or any other providers.  As previously addressed, this information is trade secret and confidential.

m.    Regional Rate Models and supporting exhibits for the Southwestern, Northwestern, and Eastern Oregon Regions.  The non-blinded version for which PacificSource seeks protection shows provider data which directly or through extrapolation would reveal provider rates and capitation arrangements.  This information is trade secret and confidential.

7.    In addition to the above, I provide the following reasons supporting PacificSource's continuing need to seek protection of the AEO designated data identified above.

8.    The PacificSource AEO-designated data as described above is not "stale," nor will it likely be stale in 2024, the next expected procurement phase by OHA.  PacificSource understands OHA will likely use a competitive procurement bidding process for future CCO

DECLARATION OF JULIE FARROW IN SUPPORT OF PACIFICSOURCE COMMUNITY SOLUTIONS' OPPOSITION TO FAMILYCARE, INC.'S MOTION TO DOWN-DESIGNATE AEO DOCUMENTS
Page 5 of 12

FG:11507797.1

contracts.  It is possible OHA may choose to contract with fewer CCOs within the State of Oregon.  It is also possible other entities will bid on serving the geographic regions in the Columbia Gorge and Central Oregon served by PacificSource during the period covered by the documents at issue.

9.      From earlier than 2016 to present, PacificSource has only one or a few providers for certain services, in which case the aggregate data for a given region would allow a competitor to extrapolate provider pricing and payment methodologies.  To the extent a competitor can obtain or extrapolate either provider rates and pricing or provider engagement strategies or methodologies, a competitor could use that to PacificSource's disadvantage in a future CCO competitive bidding process.  The information could also be used by a competitor to PacificSource's disadvantage with respect to its commercial lines of business.  Thus, even where data is displayed in aggregate, it may be trade secret and confidential.

10.     I have reviewed the Declaration of William H. Murray in Support of FamilyCare, Inc.'s Motion to Down-Designate AEO Documents dated February 5, 2021 [Doc 406].  In regard to paragraphs 9 and 13 of Mr. Murray's declaration, his contention that future OHA procurement processes will not involve a competitive bidding process is inaccurate.  The "qualification" criteria set forth in future procurement requests by OHA will likely create metrics that must be met to qualify and will create potential competition between CCOs to meet those metrics. Disclosure of PacificSource's AEO information would likely assist FamilyCare or its officers and employees in efforts to enter new regions and disadvantage other CCOs seeking to service

those regions.  The information would also allow FamilyCare or its officers to determine which areas to seek to enter based on where they might achieve the greatest profit.

11.    Mr. Murray's declaration at paragraph 11 suggests that because OHA contracts are pushing CCOs to increase utilization of value-based payments, the historical AEO data to which he seeks access "are unlikely to be informative as to CCO's current reimbursement arrangements or financial information."  Respectfully, I do not agree.  Unlike some CCOs, PacificSource has utilized several value-based payment methodologies for many years, including during the time frame in question (2016 and earlier).  Disclosure of PacificSource's historical value-based payment information could be used by competitors, including FamilyCare, to PacificSource's disadvantage in future procurement bidding processes and/or its commercial line of business.

12.    In paragraph 12 of Mr. Murray's declaration, he opines that one aspect of OHA and Optumas's rate setting process, which involves change to a statewide component, would make regional rate models for which FamilyCare seeks access not relevant to current rate-setting practices in Oregon.  That statement does not account for the fact that the statewide model is effectively an aggregation of all the regional models that continues to apply regional adjustments and the data and information contained in the regional rate setting models contain data from which provider protected payment arrangements and capitation information of PacificSource can be extrapolated.  PacificSource has designated such data as AEO because it can be used by competitors, including FamilyCare, to PacificSource's disadvantage in future procurement bidding processes.

13.     PacificSource's concerns with FamilyCare's request to access its AEO data are not limited to potential future participation of FamilyCare management and employees in rate setting.  Based on their positions in the FamilyCare organization, it seems likely Mr. Murray and Mr. Suchorzewski will be involved in upcoming OHA procurement bidding processes if FamilyCare (or a different CCO that hires one or both of them) participates.  If they or other FamilyCare employees become privy to confidential information relating to whether PacificSource does or does not use alternative payment models, risk sharing, quality based metrics or benchmarks, shared savings, value-based payment or other specific provider engagement methodologies, the information will provide FamilyCare (or a competing healthcare organization hiring any one of them) a competitive advantage in a bidding process independent of any rate setting that may be addressed in the process.

14.     In my opinion, information outside the Portland Tri-County area is not relevant to Portland Tri-County area rates.  Rates during the time period of the documents at issue (2016 and earlier) were set at the regional level, with all claims data coming from the region only.  Regional claims were adjusted by risk score, which was normalized by the region's risk score and an A/B hospital adjustment, which was also normalized to the region.  Trends displayed in the certification were at the regional level.  Thus, rates in each region were set based on that region's information and independently of other regions.  CCO data outside the Portland Tri-County area is not relevant to the Portland Tri-County area rates.

15.     In paragraph 7 of his declaration, Mr. Murray lists "categories" of documents to which he seeks access and contends they either do not contain trade secret information and/or

DECLARATION OF JULIE FARROW IN SUPPORT OF PACIFICSOURCE
COMMUNITY SOLUTIONS' OPPOSITION TO FAMILYCARE, INC.'S MOTION TO
DOWN-DESIGNATE AEO DOCUMENTS
Page 8 of 12

FG:11507797.1

would not subject CCOs to potential competitive disadvantage should he or others at FamilyCare be provided access.  Without further identification of the specific documents FamilyCare and Mr. Murray would deem included in each "category," it is difficult to address with specificity Mr. Murray's contentions.  The following are concerns with the categories as identified by Mr. Murray in paragraph 7 of his declaration based on the very general category descriptions.

       **a.**       *Documents containing information and/or discussion of raw and relative risk scores, and OHA communication with CCOs related to risk scores.*

While aggregate risk scores in isolation are not trade secret, documents containing discussions of risk scores may well contain trade secret information.  Without identification of the specific documents and communications to which Mr. Murray seeks access, it is impossible to determine what trade secret information they may contain, but it is quite possible trade secret information would be included.  In addition, discussions of risk scores may reveal trade secret information that could give FamilyCare a competitive advantage in future OHA bidding processes by providing information which would inform FamilyCare as to how to approach a proposal to enter a geographic region currently served by a different CCO.

       **b.**       *Documents relating to the "rate of growth" calculations and the reimbursement policy, as well as OHA communications with CCOs relating to the rate of growth calculations and the reimbursement policy.*

Rate of growth and reimbursement policy documents and communications and information beyond what is publicly available is trade secret and could provide FamilyCare with information on CCO business models and give FamilyCare a competitive advantage in future OHA bidding processes.

FG:11507797.1

### c.    *CCO triangulation-related documents and discussions.*

While triangulation amounts are aggregated by service category, documents in this category reveal trade secret information on how CCOs pay providers, including, for example, whether they are capitated as opposed to paid fee-for-service.

### d.    *Unmasked regional rate model for all regions.*

The unmasked regional rate models contain trade secret information.  Although they contain aggregate data, it is possible to extrapolate provider reimbursement rates from the data for the reasons discussed above.  In some geographic areas served by PacificSource, there may be only one provider of a particular type so that the aggregate information would reveal a specific provider rate even without extrapolation.

### e.    *Schedule L/Rate Templates*

With respect to Schedule L (also known as Exhibit L), the attached Exhibit A identifies what specific portions of Exhibit L are trade secret and confidential.  The data in Exhibit L is not stale because provider contracts existing in the time period in question (2016 and earlier) can continue for years.  Some of these provider negotiations and agreements also cross lines of business.  Disclosure of PacificSource's trade secret data in Exhibit L could be used by competitors, including FamilyCare, to PacificSource's disadvantage in future procurement bidding processes and/or its commercial line of business.  It is also worth noting that Mr. Murray and FamilyCare previously offered to redact any trade secret information from Exhibit L documents (*see e.g.* paragraph 7 of Murray Declaration dated 10/15/18 [Doc 303].  That offer of redaction appears to have been removed from Mr. Murray's latest declaration.  I am unaware of

DECLARATION OF JULIE FARROW IN SUPPORT OF PACIFICSOURCE COMMUNITY SOLUTIONS' OPPOSITION TO FAMILYCARE, INC.'S MOTION TO DOWN-DESIGNATE AEO DOCUMENTS
Page 10 of 12

FG:11507797.1

any reason why FamilyCare or its counsel cannot redact from Exhibit L the trade secrets of PacificSource and any remaining objecting CCO as offered previously.

### f.      *Other Rate Development Documents*

Without identification of PacificSource-specific documents, it is difficult to know what trade secret information they may contain.  Encounter data may contain provider-specific information that should remain protected as AEO.  As discussed above, aggregate data for a given region would allow a competitor to extrapolate provider pricing and payment methodologies specific to PacificSource.  Broader access would give FamilyCare an advantage in future procurement bidding processes.

### g.      *Documents containing information, comparison and/or discussion of FamilyCare's and/or other CCOs' financial and/or operational performance.*

Without identification of PacificSource-specific documents, it is difficult to know what trade secret information they may contain.  As described, they may well contain PacificSource-specific trade secret information.  As discussed above, aggregate data with certain information for a given CCO would allow a competitor to extrapolate provider pricing and payment methodologies specific to PacificSource.

### h.      *Recoupments and Adjustments*

Without identification of PacificSource-specific documents, it is difficult to know what trade secret information they may contain.  As described, they may well contain PacificSource-specific trade secret information.  As discussed above, aggregate data with certain information for a given CCO would allow a competitor to extrapolate provider pricing and payment

FG:11507797.1

methodologies specific to PacificSource.  Also, provider contracts from the time period at issue continue today, and other newer contracts are built on those during the relevant time period. PacificSource seeks to protect disclosure about payment methodologies under these contracts.

**I declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge.**

Executed this 25th day of February, 2021.


_s/ Julie Farrow_
Julie Farrow

FG:11507797.1