**Stephen F. English**, OSB No. 730843
SEnglish@perkinscoie.com
**Thomas R. Johnson**, OSB No. 010645
TRJohnson@perkinscoie.com
**Heidee Stoller**, OSB No. 072835
HStoller@perkinscoie.com
**Matthew J. Mertens**, OSB No. 146288
MMertens@perkinscoie.com
**Sasha A. Petrova**, OSB No. 154008
SPetrova@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Telephone:  503.727.2000

**Matthew Gordon**, *pro hac vice*
MGordon@perkinscoie.com
**David B. Robbins**, OSB No. 070630
DRobbins@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone:  206.359.8000

*Attorneys for Plaintiff FamilyCare, Inc.*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **FAMILYCARE, INC.**, an Oregon non-profit corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>**OREGON HEALTH AUTHORITY**, an agency of the State of Oregon, **PATRICK ALLEN**, both individually and in his official capacity as director of the Oregon Health Authority, and **LYNNE SAXTON**,<br><br>    Defendants. | No. 6:18−cv−00296−MO<br><br>**FAMILYCARE INC.'S REPLY IN SUPPORT OF THEIR MOTION FOR SANCTIONS AGAINST DEFENDANT OREGON HEALTH AUTHORITY DUE TO EVIDENCE SPOLIATION** |

REPLY IN SUPPORT OF FAMILYCARE, INC.'S
MOTION FOR SANCTIONS AGAINST OHA DUE
TO EVIDENCE SPOLIATION

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ...................................................................................................... 1

II.     ARGUMENT.............................................................................................................. 1

        A.      The Saxton Text Messages are forever lost because OHA
                abdicated its duty to take reasonable steps to preserve them................................ 2

                1.      OHA's duty to preserve extended to all 78 Saxton Text
                        Messages .................................................................................................. 2

                2.      OHA's preservation duty attached no later than October 6,
                        2016........................................................................................................... 2

                3.      OHA mistakenly categorizes the bulk of the Saxton Text
                        Messages as "non-responsive."................................................................ 4

                4.      OHA failed to take reasonable steps to preserve the Saxton
                        Text Messages.......................................................................................... 5

                5.      The Saxton Text Messages are permanently lost...................................... 7

        B.      There is ample circumstantial evidence that OHA intended to
                deprive FamilyCare of the use of the Saxton Text Messages in
                litigation ......................................................................................................... 7

        C.      The loss of the Saxton Text Messages prejudices FamilyCare............................ 11

                1.      The Saxton Text Messages are likely relevant to this
                        dispute ..................................................................................................... 12

                2.      OHA's arguments that the Saxton Text Messages are not
                        relevant lack merit and are not grounded in the record .......................... 13

                        a.      Saxton and Cowie appear to have deleted an August 8,
                                2017, message regarding the communications plan ................... 13

                        b.      The Saxton Text Messages are likely not duplicative of
                                other discovery........................................................................... 15

        D.      The Heatherington Text Messages Are Not Relevant to this Motion.................. 16

        E.      Sanctions against OHA are appropriate here....................................................... 17

III.    CONCLUSION........................................................................................................ 18

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alabama Aircraft Indus., Inc. v. Boeing Co.*,
  319 F.R.D. 730 (N.D. Ala. 2017)...............................................................................8, 9, 10, 12

*Brown v. Chertoff*,
  563 F. Supp. 2d 1372 (S.D. Ga. June 18, 2008) ....................................................................12

*DVComm, LLC v. Hotwire Commc'ns, LLC*,
  No. CV 14-5543, 2016 WL 6246824 (E.D. Pa. Feb. 3, 2016) ..................................................8

*Living Color Enterprises, Inc. v. New Era Aquaculture, Ltd.*,
  No. 14-CV-62216, 2016 WL 1105297 (S.D. Fla. Mar. 22, 2016)................................9, 10, 16

*Lokai Holdings LLC v. Twin Tiger USA LLC*,
  No. 15CV9363 (ALC) (DF), 2018 WL 1512055 (S.D.N.Y. Mar. 12, 2018) ...............2, 16, 17

*Marten Transp., Ltd. v. Plattform Advert., Inc.*,
  No. 14-CV-02464-JWL-TJJ, 2016 WL 492743 (D. Kan. Feb. 8, 2016) ...................................3

*Oppenheimer v. City of La Habra*,
  No. SACV1600018JVSDFMX, 2017 WL 1807596 (C.D. Cal. Feb. 17, 2017)........8, 9, 10, 13

*Orchestratehr, Inc. v. Trombetta*,
  178 F. Supp. 3d 476 (N.D. Tex. 2016) ...................................................................................11

*Taylor v. Mitre Corp.*,
  2012 WL 5473573 (E.D. Va. Nov. 8, 2012).............................................................................12

*TLS Mgmt. & Mktg. Servs. LLC*,  2017 WL 1155743, at *1.........................................................12

*Zubulake v. UBS Warburg LLC*,
  220 F.R.D. 212 (S.D.N.Y. 2003) ..........................................................................................2, 6

STATUTES

Zeke Smith act ...............................................................................................................................4

OTHER AUTHORITIES

Fed. R. Civ. P. 37(e) .............................................................................................................. passim

ii-   TABLE OF AUTHORITIES

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

## I.  INTRODUCTION

OHA tries to minimize its spoliation of evidence by attempting to downplay the scope and significance of the loss of text messages from Lynne Saxton's state-issued iPhone (the "Saxton Text Messages").  But whether the number of missing, relevant text messages is 59 or 78 or some unknown greater number, the fact remains that Saxton and other OHA custodians deleted at least dozens of internal messages during the *exact time period* that Defendants engaged in intentional misconduct by developing and implementing the smear campaign against FamilyCare. Saxton's intentional daily practice of manually deleting text messages and emails is not a "mere imperfection," as OHA contends, but a flagrant violation of OHA's document retention policy, Oregon public records law, and a litigation hold—a violation that resulted in the destruction of potentially damaging evidence. Moreover, the problem is not limited to Saxton, as illustrated by OHA's inability to recover multiple messages deleted by Saxton from the *other* OHA custodians with whom Saxton was texting.  OHA violated its discovery obligations regarding these text messages, which is particularly problematic given that OHA personnel frequently texted about the subject matter of this lawsuit.

OHA also attempts to deflect attention from its violations by invoking FamilyCare's disclosure that it cannot produce a small number of text messages from its CEO, Jeff Heatherington.  There is nothing equivalent about the situations—not in size, scope, significance, or prejudice to the other party.  OHA implicitly concedes this. OHA has not filed a motion and has not even attempted to make a showing that the loss of Heatherington's text messages is prejudicial.  FamilyCare has demonstrated that sanctions under Federal Rule of Civil Procedure 37(e)(2) are necessary and appropriate.

## II.  ARGUMENT

The threshold requirements of Rule 37(e) are satisfied: the Saxton Text Messages are lost, OHA failed to take reasonable steps to preserve them, and they cannot be restored or

1- REPLY IN SUPPORT OF FAMILYCARE, INC.'S
MOTION FOR SANCTIONS AGAINST OHA DUE
TO EVIDENCE SPOLIATION

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

replaced through additional discovery. *See* Fed. R. Civ. P. 37(e). OHA's contrary arguments lack merit.

> **A.     The Saxton Text Messages are forever lost because OHA abdicated its duty to take reasonable steps to preserve them.**

> **1.     OHA's duty to preserve extended to all 78 Saxton Text Messages.**

The Saxton Text Messages—the 78 unrecoverable texts FamilyCare knows about—plainly fall within the scope of the duty to preserve. *See* Dkt. No. 257 at 15–16. A party "is under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request." *Lokai Holdings LLC v. Twin Tiger USA LLC*, No. 15CV9363 (ALC) (DF), 2018 WL 1512055, at *10 (S.D.N.Y. Mar. 12, 2018). Here, the messages were exchanged between October 13, 2016 and August 31, 2017, a period when several incidents at issue in this litigation occurred: the release of the 2017 rates, the unsuccessful mediation, the commencement of this litigation, and the development and implementation of the communications plan. *See* Dkt. No. 257 at 16; *see also* Dkt. No. 258-23 (2017 rates released); Dkt. No. 224-15 (Dispute Resolution Agreement); Dkt. No. 224-31 (instruction to start working on communications plan). Moreover, most of the missing texts were exchanged between Saxton and OHA personnel who were designated as custodians in this action, including individuals responsible for capitation rate development and external communications planning. *See* Dkt. No. 257 at 6–8; *see also* Dkt. No. 258-13. *See Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003) (holding that "the duty to preserve extends to those employees likely to have relevant information").

> **2.     OHA's preservation duty attached no later than October 6, 2016.**

OHA contends the duty to preserve did not apply to 19 of the Saxton Text Messages that predate the December 21, 2016 litigation hold. Dkt. No. 320 at 5. OHA is wrong. The duty to preserve is triggered when a party reasonably anticipates future litigation, even if that date

2-    REPLY IN SUPPORT OF FAMILYCARE, INC.'S
      MOTION FOR SANCTIONS AGAINST OHA DUE
      TO EVIDENCE SPOLIATION

precedes a litigation hold.  *See* Fed. R. Civ. P. 37(e) advisory committee's notes to 2015 amendment; *see also Marten Transp., Ltd. v. Plattform Advert., Inc.*, No. 14-CV-02464-JWL-TJJ, 2016 WL 492743, at *5 (D. Kan. Feb. 8, 2016) ("[T]he duty to preserve . . . may arise even before a lawsuit is filed if a party has notice that future litigation is likely.").[1]

Here, Saxton's own correspondence in October 2016 shows that OHA—and Saxton in particular—reasonably anticipated litigation with FamilyCare well before receiving the December 21, 2016 litigation hold.  *See* Dkt. No. 257 at 14.  In an October 6, 2016, email to Leslie Clement with subject line "Re: COHO Letter to Zeke & Lynne re: FamilyCare rates/Attorney Client Privilege," Saxton wrote, "as *we anticipate litigation as a result of the rates process*, please ask Zeke[2] to discuss this request with us prior to scheduling a tour." Dkt. No. 258-2 at 1 (emphasis added).  Saxton's post-hoc explanation—that her "email speculated generally that litigation might arise involving any of the 16 CCOs concerning the 2017 rates," Dkt. No. 325 at 5 (¶ 16), is not credible, as a plain reading of the email chain demonstrates. FamilyCare was the only CCO that invited Zeke Smith to tour its offices.  *Id*.  And Saxton's October 18, 2016, follow-up correspondence confirms that she anticipated litigation *with FamilyCare*: "[I]f Zeke decides to tour FC [FamilyCare], he needs to tour other CCOs (or other members can) and he needs to be appropriate in terms of past and future litigation possibilities." Declaration of Matt Mertens ("Mertens Decl.") Ex. 1.  This was not general speculation about all of the CCOs but rather a specific statement from Saxton that she *anticipated litigation* (her words) with one CCO—FamilyCare.  That is unsurprising, given the contentious history between the parties, including their recently settled litigation over the 2015 and 2016 rates, and that

---

[1] Saxton's assertion that she was unaware that FamilyCare had "concretely and affirmatively threatened litigation against OHA until [she] received the litigation hold notice," also fails for this reason.  Dkt. No. 325 at 5 (¶ 16).  The standard is reasonably anticipated, not "concretely and affirmatively" knew.

[2] "Zeke" refers to Zeke Smith, the chair of the Oregon Health Policy Board.

3- REPLY IN SUPPORT OF FAMILYCARE, INC.'S
    MOTION FOR SANCTIONS AGAINST OHA DUE
    TO EVIDENCE SPOLIATION

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

shortly after the ink dried on that settlement agreement, OHA developed and announced a new policy to slash FamilyCare's 2017 rates. *See*, *e.g.,* Fourth Am. Compl. ¶¶ 102-103.

Significantly, Saxton copied Jeffrey Wahl, a Senior Assistant Attorney General with the Oregon Department of Justice on the email chain. *See id.*; *see also* Dkt. No. 258-2 at 1. Saxton's inclusion of counsel, coupled with repeated admonitions that Zeke Smith act appropriately given "anticipated litigation" and "future litigation possibilities," plainly demonstrates evidence that OHA reasonably anticipated litigation with FamilyCare in early October 2016. OHA has no justification for its attempt to exclude the 19 texts, all dated after October 11, 2016, from the universe of missing text messages.

### 3. OHA mistakenly categorizes the bulk of the Saxton Text Messages as "non-responsive."

OHA next attempts to minimize the number and scope of the missing text messages by contending that only 14 of the Saxton Text Messages are "potentially responsive." Dkt. 320 at 8–9.[3] OHA does not explain how it decided that only 14 of the remaining 59 messages are "potentially responsive" beyond pointing to Saxton's self-serving declaration where she claims to have reviewed the message-related metadata using a "conservative methodology." *Id.*

OHA's Opposition is devoid of details in support of Saxton's statement, such as: (1) when Saxton compared the metadata in the matrices to her calendar; (2) the duration of Saxton's review; or, most importantly, (3) the criteria for messages deemed "not related," "highly unlikely related," or "unknown." Dkt. No. 320 at 9. OHA points to a spreadsheet of Saxton's notes, which are conclusory, and her "calendar notes," which span 608 pages. *Id.* at 8-9. But OHA does not offer a single specific example of how Saxton's calendar review indicated a text message was irrelevant to the claims and defenses in this action. *See* Dkt. No. 320 at 9;

---

[3] OHA originally informed FamilyCare that 85 messages were unrecoverable and potentially responsive. *See* Dkt. No. 258-14. That number was reduced by seven to account for messages that were produced or otherwise obtained. Dkt. No. 320 at 9.

4- REPLY IN SUPPORT OF FAMILYCARE, INC.'S MOTION FOR SANCTIONS AGAINST OHA DUE TO EVIDENCE SPOLIATION

*see also* Dkt. No. 258-16 at 8–19; *see also* Dkt. No. 325 ¶ 10.[4]  Nor does OHA explain why Saxton, who purportedly undertook her review before July 30, 2018 (the date her "notes" were produced to FamilyCare), Dkt. No. 258-16 at 8–19, was unable to recall the content of her text messages in the following exchange during her August 1, 2018, deposition:

> Q: Let me rephrase the question.  Ms. Saxton, do you remember the content of texts that you removed?
>
> A:  Texts plural?
>
> Q:  Yes.
>
> A:  No

Dkt. No. 258-19 at 78:18-23

Finally, in invoking this "methodology," OHA ignores the reality that Saxton could easily send texts about one topic while physically present at a meeting on a different topic, especially given the high-profile nature of OHA's ongoing disputes with FamilyCare and Saxton's involvement in the communications plan.  Saxton's belated attempt to classify the missing messages is not credible. All 78 Saxton Text Messages should be deemed communications that OHA was "unable to rule out as being nonresponsive."  Dkt. 258-14 at 2.

### 4. OHA failed to take reasonable steps to preserve the Saxton Text Messages.

OHA appears to suggest that its efforts to preserve the Saxton Text Messages were reasonable because its counsel issued a litigation hold notice and sent "a series of litigation-hold reminders."  Dkt. 320 at 5-6.  But it is apparent by the result—the permanent loss of multiple text messages from multiple custodians—that the actions of OHA and its counsel were not sufficient.

---

[4] Saxton claims reviewing her calendar entries for January 24, 2017 refreshed her recollection as to the likely content of her text message with Oregon State Senator Betsy Johnson.  Dkt. No. 325 at ¶ 13.  But the document cited in Saxton's declaration, OHA_LIT_01272070, does not support Saxton's contention that Johnson contacted her about a constituent concern—beyond Saxton's after-the-fact handwritten notes.  *See* Mertens Decl. Ex. 2.

5- REPLY IN SUPPORT OF FAMILYCARE, INC.'S
   MOTION FOR SANCTIONS AGAINST OHA DUE
   TO EVIDENCE SPOLIATION

*See Zubulake*, 229 F.R.D. at 432 ("[I]t is *not* sufficient to notify all employees of a litigation hold and expect that the party will then retain and produce all relevant information.") (emphasis in original).  Upon instituting a litigation hold, a party and its counsel "must make certain that all sources of potentially relevant information are identified and placed 'on hold.'"  *Id.*  This requires complete familiarity with the party's document retention policies and data retention architecture.  *Id.*  Counsel must also speak with IT personnel to understand "system-wide backup procedures," and communicate with "'key players' in the litigation to understand how they stored information."  *Id.*

Here, it is apparent that neither OHA nor its counsel took any of these steps to prevent the loss of the Saxton Text Messages.  *See generally* Dkt. No. 257 at 16–19.  For two years, Saxton deleted emails and text messages from her OHA-issued device daily, saying she wrongly believed they were being backed up.  Dkt. No. 325 ¶ 4; *see also* Dkt. No. 258-19 at 79:8–80:7, 66:1–13, 72:25–75:22.  Although aware of her preservation obligations—under OHA's retention policy, the litigation hold, and Oregon law—Saxton continued this practice because she believed her deleted content was "recoverable."  *Id.* at 72:25-73:18; *see also id.* at 63:14-64:4, 72:25-75:22, 78:24-80:10, 81:4-19, 196:3-15; *see also* Dkt. No. 325 ¶¶ 4, 7.  But Saxton is at best willfully ignorant: she did not ask whether her deletion practice complied with her preservation obligations, and she never had a conversation with anyone at OHA to confirm whether her text messages were "available from a backup source."  Dkt. No 320 at 13; *see also* Dkt. No. 258-19 at 72:25–75:22, 79:20–80:7.[5] And Saxton's mistaken belief about recovering deleted text messages only demonstrates that neither OHA nor its counsel took necessary actions to ensure that she and other OHA personnel understood the particulars of their preservation obligations.

---

[5] Saxton's recollection of "having general conversations in passing with other [unnamed] State employees" regarding the recovery of text messages from Oregon-issued cell phones, Dkt. No. 325 ¶ 3,  contradicts her sworn deposition testimony, where she repeatedly denied having conversations with anyone to confirm whether her deleted text messages were recoverable.  *See* Dkt. No. 258-19 at 72:25–75:22, 79:20–80:7, 82:25–87:1.

6-    REPLY IN SUPPORT OF FAMILYCARE, INC.'S
       MOTION FOR SANCTIONS AGAINST OHA DUE
       TO EVIDENCE SPOLIATION

The inability to recover the Saxton Text Messages *from multiple other OHA custodians* underscores OHA's failure to comply with its obligations.  OHA offers no explanation for why it cannot recover the texts at issue from 12 *other* OHA custodians.  This alone is sufficient evidence that OHA and its counsel failed to ensure compliance with the litigation hold: they did not just fail to preserve documents from one custodian, but from 13.

### 5.      The Saxton Text Messages are permanently lost.

It is undisputed that the Saxton Text Messages were deleted and are unrecoverable.  *See* Dkt. No. 257 at 11–13; *see also* Dkt. No. 320 at 9; Dkt. No. 258-14 (email including OHA's determination that the messages are "not recoverable or otherwise retrievable from an alternative source").  Yet, OHA appears to suggest that the large volume of its discovery productions makes up for the loss of the Saxton Text Messages.  *See* Dkt. No. 320 at 6, 11–12.  OHA is again mistaken.  The volume of OHA's discovery production is irrelevant, as is the fact that other evidence may overlap temporally with the Saxton Text Messages.  The question is whether the content of the Saxton Text Messages can be "restored or replaced through additional discovery." Fed. R. Civ. P. 37(e).  They cannot.  OHA has not pointed to a single document in its "1.3 million page[]" document production that replaces any of the Saxton Text Messages.  These internal communications among OHA employees during the very time period in which FamilyCare asserts defendants were engaging in retaliatory conduct and breach of contract are lost forever.

### B.      There is ample circumstantial evidence that OHA intended to deprive FamilyCare of the use of the Saxton Text Messages in litigation.

Courts consider multiple factors under Rule 37(e) to determine whether ESI was lost with an intent to deprive the other party of the use of the information, including the method of deletion, the timing of the deletion, whether the data loss was unexplained, the sophistication of the party, and the failure to adhere to a company policy and/or litigation.  Dkt. No. 257 at 23-26; Dkt. No. 320 at 11–12.  Direct evidence of intent to deprive is not necessary; instead, courts look

7-  REPLY IN SUPPORT OF FAMILYCARE, INC.'S
    MOTION FOR SANCTIONS AGAINST OHA DUE
    TO EVIDENCE SPOLIATION

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

to these factors as circumstantial evidence. *See, e.g., DVComm, LLC v. Hotwire Commc'ns, LLC*, No. CV 14-5543, 2016 WL 6246824, at *8 (E.D. Pa. Feb. 3, 2016) ("While we cannot specifically examine Sizemore's head and confirm DVComm acted in bad faith … there is substantial circumstantial evidence DVComm acted with an intent to deprive Hotwire of the underlying document[.]"); *see also Alabama Aircraft Industries,* 319 F.R.D. 730, 746 (N.D. Ala. 2017) (listing four-factor test for bad faith used to assess intent to deprive, which includes factors such as whether spoliation was an affirmative act, whether the spoliator knew of its duty to preserve, and the lack of a credible explanation for the loss).

Multiple factors militate in favor of finding that OHA had an intent to deprive FamilyCare of the use of the Saxton Text Messages.

**The timing of the deletion is suspect**: OHA took intentional, affirmative acts while litigation was reasonably anticipated and after litigation was filed that resulted in the destruction of the Saxton Text Messages. *See, e.g.*, *Oppenheimer v. City of La Habra*, No. SACV1600018JVSDFMX, 2017 WL 1807596, at *13 (C.D. Cal. Feb. 17, 2017). Fifty of the Saxton Text Messages were deleted ***after*** this action was filed on February 27, 2017. Dkt. No. 258-13.

**The data loss is unexplained**: OHA cannot credibly explain the affirmative deletion of ESI subject to a duty to preserve. *Alabama Aircraft Indus., Inc. v. Boeing Co.*, 319 F.R.D. 730, 746 (N.D. Ala. 2017) (inferring intent to deprive where defendant could not explain its inconsistent compliance with litigation hold policy). OHA has not offered a credible explanation for why Saxton deleted text messages from her OHA-issued phone, beyond her (mistaken) belief that her messages were recoverable. Dkt. No. 320 at 13. OHA offers Saxton's belief as evidence that her actions were taken in good faith but has not offered any credible explanation for Saxton's failure to confirm the accuracy of her belief with OHA's counsel or IT personnel, or for the failure of OHA's counsel to educate her regarding her obligations. *Id.*; *see also supra*

8- REPLY IN SUPPORT OF FAMILYCARE, INC.'S
MOTION FOR SANCTIONS AGAINST OHA DUE
TO EVIDENCE SPOLIATION

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

section II.A.4.  In fact, Saxton's descriptions of her efforts to confirm the accuracy of her belief are inconsistent: at deposition, she denied having conversations regarding whether her messages were backed up or recoverable; now, she recalls having "general conversations" with unnamed "State employees" on that topic.  *See supra* note 5.  The inference of intent to deprive is appropriate here.  *See Alabama Aircraft Indus.*, 319 F.R.D. at 746.

Moreover, most of the messages are missing not just from Saxton but from multiple custodians: eighty percent of the Saxton Text Messages were exchanged with other OHA custodians, who also do not have the text messages—a fact that OHA does not and cannot explain.  *See* Dkt. No. 257 at 11-12 (setting forth OHA custodians and highlighting lack of explanation for texts missing from other custodians).  And there is no question that Saxton and other OHA custodians used texts to discuss the subject of the litigation.  *See Oppenheimer*, 2017 WL 1807596, at *12 (finding that deletion of text messages amounted to prejudice where available texts showed the subject of the litigation was a topic of discussion); *see also, e.g.,* Dkt. Nos. 258-28, 258-29, 258-30, and Dkt. No. 257 at 21 (OHA custodians used text messaging to communicate about the subject matter of this litigation, including OHA's anti-FamilyCare communications plan).

**OHA is an experienced litigant and Saxton is highly sophisticated**: As set forth in more detail in the Motion, OHA is a large agency that has been involved in multiple lawsuits, and Saxton headed an agency with a budget in excess of $20 billion. Dkt. 257 at 17.  The collective sophistication of OHA and Saxton undercuts OHA's reliance on *Living Color Enterprises, Inc. v. New Era Aquaculture, Ltd.,* No. 14-CV-62216, 2016 WL 1105297, at *1 (S.D. Fla. Mar. 22, 2016), in which the court found that the defendant's conduct was merely negligent rather than intentional, in part because the defendant "appears to be a relatively unsophisticated litigant." *Id.* at *2, *6.

9-    REPLY IN SUPPORT OF FAMILYCARE, INC.'S
      MOTION FOR SANCTIONS AGAINST OHA DUE
      TO EVIDENCE SPOLIATION

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

**OHA and Saxton failed to adhere to internal policy and public records law**:  Saxton offers no explanation as to why she departed not only from a litigation hold, but also OHA's document preservation policy and Oregon's public records law.  *See, e.g., Alabama Aircraft Indus.*, 319 F.R.D. at 746 (inferring intent from intentional deletion, where defendant's agents anticipated litigation, departed from the litigation preservation policy, and lacked a credible explanation for their conduct); *see also Oppenheimer*, 2017 WL 1807596, at *12–13 (finding intent to deprive where defendant adhered to e-mail retention policy, but loss of ESI, which occurred after a request for information, was not the result of a mistake or accident, and defendant offered no reason for its deletion).

**OHA's counterarguments are unconvincing**:  OHA relies on *Living Color Enterprises,* 2016 WL 1105297, at *1 *,* for the proposition that Saxton's conduct does not evince an intent to deprive, because she "had a daily practice [of] remov[ing] text messages," did not selectively delete text messages, and mistakenly believed they would be backed up.  Dkt. 320 at 13.  But unlike OHA, the defendant in *Living Color Enterprises* was able to replace most of his missing text messages and produce them to plaintiff by obtaining the messages from the other party to the communication.  2016 WL 1105297, at *1–2.  Second, in *Living Color Enterprises*, the loss of the text messages was accidental—the defendant forgot to disable a feature on his phone that automatically deleted text messages after 30 days.  2016 WL 1105297, at *2, *6.  Here, in contrast, the Saxton Text Messages were lost because of intentional, affirmative acts: Saxton manually deleted messages from her phone, as did, apparently, other OHA custodians who corresponded with her.  *See* Dkt. No. 325 ¶ 4 and Dkt. No. 257 at 11-12. Moreover, it appears that Saxton *did* selectively delete text messages, given OHA's admission that Saxton deleted only "*some* text messages from the cellular phones issued to her from OHA." Mertens Decl. Ex. 3 at 9.

10- REPLY IN SUPPORT OF FAMILYCARE, INC.'S
MOTION FOR SANCTIONS AGAINST OHA DUE
TO EVIDENCE SPOLIATION

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

OHA's reliance on *Orchestratehr, Inc. v. Trombetta*, 178 F. Supp. 3d 476, 491 (N.D. Tex. 2016), is also misplaced. There, the defendant accused of spoliation expressly stated that he did not anticipate his emails would be used in a lawsuit. *Id.* Here, by contrast, OHA knew that the communications of Saxton—and others—were relevant to a lawsuit as early as October 6, 2016, and at the latest by December 21, 2016. Dkt. No. 325 ¶ 16.

Also unavailing is OHA's contention that its failure to comply with its own retention policy **and** state law, and its pattern and practice of evading discovery and public records requests, is irrelevant. Dkt. No. 320 at 13. OHA cites no authority in support of its novel contention that its practice of disregarding disclosure obligations is not circumstantial evidence of its intent to deprive FamilyCare of discoverable materials. *See id.* at 13; *see also* Dkt. No. 257 at 25–26 (describing OHA's pattern and practice of denying public records requests).

Taken together, OHA's conduct provides ample circumstantial evidence that OHA acted intentionally to deprive FamilyCare of the use of the Saxton Text Messages.

### C.      The loss of the Saxton Text Messages prejudices FamilyCare.

Despite OHA's erroneous assertion that it is *FamilyCare*'s obligation to establish prejudice from the deleted Saxton Text Messages, *see* Dkt. No. 320 at 14, Rule 37(e)(1) "does not place [the] burden of proving or disproving prejudice on one party or the other." Fed. R. Civ. P. 37(e)(1) advisory committee's notes to the 2015 amendment. This is because, as the Rule 37(e) Advisory Committee notes (and OHA incompletely quotes):

> Determining the content of lost information may be a difficult task in some cases, and placing the burden of proving prejudice on the party that did not lose the information may be unfair. In other situations, however, the content of the lost information may be fairly evident, the information may appear to be unimportant, or the abundance of preserved information may appear sufficient to meet the needs of all parties.

*Id.*

11- REPLY IN SUPPORT OF FAMILYCARE, INC.'S
MOTION FOR SANCTIONS AGAINST OHA DUE
TO EVIDENCE SPOLIATION

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Courts recognize the problem this information asymmetry poses in proving prejudice. *See Alabama Aircraft Indus.*, 319 F.R.D. at 742 ("In spoliation cases, courts must not hold the prejudiced party to too strict a standard of proof regarding the likely contents of the destroyed evidence because doing so allows the spoliators to profit from the destruction of evidence."); *Taylor v. Mitre Corp.*, 2012 WL 5473573, at *3 (E.D. Va. Nov. 8, 2012) ("[A] party moving for sanctions based on spoliation is not required to prove the content of deleted documents. That burden falls to the accused spoliator." (citations omitted)); *Brown v. Chertoff,* 563 F. Supp. 2d 1372, 1379 (S.D. Ga. June 18, 2008) ("To require a party to show, before obtaining sanctions, that <u>unproduced</u> evidence contains damaging information would simply turn 'spoliation law' on its head." (emphasis in original)). Here, the content of the Saxton Text Messages was known only to OHA and Saxton, and placing the burden of proving prejudice on FamilyCare is unfair.[6]

### 1.    The Saxton Text Messages are likely relevant to this dispute.

FamilyCare has demonstrated the probable relevance of the missing communications to, at minimum, its retaliation claim and its good faith and fair dealing claim.  As OHA recognizes, "a party must only 'come forward with plausible, concrete *suggestions* as to what [the destroyed] evidence *might have been*.'" *TLS Mgmt. & Mktg. Servs. LLC*, 2017 WL 1155743, at *1 (emphases in original); *see also* Dkt. No. 320 at 17*; see also generally* Dkt. No. 257 at 21–23 (explaining the relevance of the missing messages).  The most contemporaneous indicator of the messages' import to this litigation is their metadata, which includes date, time, sender, and recipient information.  Dkt. No. 258-13.  As discussed at length in the Motion, the metadata reveals that key witnesses—Saxton, BethAnne Darby, and Robb Cowie, among others—communicated via text message during an important timeframe in this litigation.  *See* Dkt. 257 at 15–16 (describing key witnesses and events).  Moreover, other discovery produced in this action

---

[6] In any event, FamilyCare has demonstrated the likely prejudicial effect of the deleted Saxton Text Messages as set forth below.

12-  REPLY IN SUPPORT OF FAMILYCARE, INC.'S
MOTION FOR SANCTIONS AGAINST OHA DUE
TO EVIDENCE SPOLIATION

demonstrates these individuals used text messaging to communicate about the subject matter of this litigation, including, significantly, OHA's anti-FamilyCare communications plan. *See e.g.,* Dkt. Nos. 258-28, 258-29, 258-30; *see also* Dkt. No. 257 at 21. The Court can therefore infer that the deleted text messages were also relevant. *Oppenheimer*, 2017 WL 1807596, at *12.

### 2. OHA's arguments that the Saxton Text Messages are not relevant lack merit and are not grounded in the record.

OHA suggests that Saxton probably did not text about FamilyCare because she was an infrequent texter and her "texts generally would involve 'business logistics.'" Dkt. 257 at 14–15. Other documents produced in discovery demonstrate Saxton used text messaging to communicate about more than "business logistics." Dkt. No. 320 at 15; *see, e.g.,* Dkt. No. 258-27 at 9–12 (text message conversation between Saxton, Cowie, and Darby regarding FamilyCare); *see also* Dkt. No. 258-28 (August 31, 2017 message from Saxton regarding the final version of a document "reflecting CMS approved revisions"). Nor is it relevant that Saxton was an infrequent texter, as the metadata indicates she exchanged communications with other OHA custodians who are frequent texters (e.g., Darby and Cowie), and neither Saxton nor the frequent texters have produced the missing messages. *See* Dkt. No. 258-13 (more than half of the Saxton Text Messages are exchanges between Saxton and either Cowie, Darby, or Fairbanks).

### a. Saxton and Cowie appear to have deleted an August 8, 2017, message regarding the communications plan.

Analysis of an August 8, 2017 text message exchange between Saxton, Darby, and Cowie suggests that Cowie and Saxton each deleted a text message related to OHA's purported decision to "shelve" the communications plan, which directly relates to Saxton's claim that she did not retaliate because the plan was not implemented. At her July 25, 2018 deposition, Darby testified that OHA "shelved" the communications plan in February 2017 and never implemented it. Mertens Decl., Ex. 5. Subsequently, counsel for FamilyCare asked Darby about the following

13- REPLY IN SUPPORT OF FAMILYCARE, INC.'S
MOTION FOR SANCTIONS AGAINST OHA DUE
TO EVIDENCE SPOLIATION

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

series of text messages, dated August 8, 2017—the day on which Saxton resigned because of the communications plan—between Darby, Saxton, and Cowie:

> Sometime prior to 12:34 PM – two texts from Lynne Saxton stating "OK" and "Please add Kate [Nass] to call then"
>
> 8/8/2017, 12:35:37 PM:  Darby – Only 3 staff had an electronic copy including the writer
>
> 8/8/2017, 12:37:51 PM:  Darby – You CC'd Zach
>
> 8/8/2017, 12:38:42 PM:  Darby – On an email – he did not get a copy of the plan
>
> 8/8/2017, 12:43:17 PM: Cowie – I can say we put so little stock in it we never seriously discussed it.

Mertens Decl. Ex. 5. Darby testified that these text messages were probably talking about the purported decision to shelve the communications plan.  Mertens Decl. Ex. 6. And OHA's metadata matrix of the Saxton Text Messages shows that Cowie texted Saxton on August 8, 2017, at 11:39 AM—less than one hour before the text conversation set forth above—but this text is missing from both Cowie and Saxton's devices. *See* Dkt. 257, Ex. 13 at 4. The timing suggests Saxton and Cowie were likely discussing the communications plan, but the message is forever lost.

Moreover, these texts suggest the Saxton Text Messages may have contained valuable information for FamilyCare's case. OHA downplays their significance by contending that OHA has produced hundreds of documents related to the communications plan being made public. Dkt. No. 320 at 16.  But the August 8, 2017, text message exchange shows Saxton, Darby, and Cowie orchestrating, in real time, on the day Saxton resigned, their story for the public about the communications plan, including Cowie's suggestion for what he "can say" about OHA's purported lack of discussion of the plan.  Saxton, Darby, and Cowie promptly provided this version of events to the press later that day— apparently in near-verbatim form.  *Compare* Dkt. No. 258-27 ("You gave the direction to me, I verbally gave direction to the team") *with* Dkt. No.

14-  REPLY IN SUPPORT OF FAMILYCARE, INC.'S
     MOTION FOR SANCTIONS AGAINST OHA DUE
     TO EVIDENCE SPOLIATION

322-17 ("As [Saxton] mentioned on the call she gave that direction verbally to BethAnne who communicated it with the limited number of communications staff involved.") The spoliated text messages might well have filled in the gaps in OHA's story about the communications plan.

> b.      The Saxton Text Messages are likely not duplicative of other discovery.

OHA's other attempts to demonstrate the Saxton Text Messages are unimportant or overlap with other discovery also fall flat. Dkt. No. 320 at 15–17. OHA suggests that because the subject matter of produced text messages overlaps with produced emails, the subject matter of the deleted Saxton Text Messages also likely overlaps with produced emails. To wit, OHA challenges the significance of the January 26, 2017 text message between Darby, Cowie, and Courtney Crowell (Dkt. No. 258-29) because the information contained in this text is purportedly also reflected in three produced emails (Dkt. No. 322-12, 322-13, 322-14). Dkt. No. 320 at 15. This is inaccurate. The January 26, 2017 text message shows that the development of the communications plan was a time-sensitive, priority project and shows Saxton's interest in seeing a draft, which contradicts her assertions that unnamed "staff" were responsible for the communications plan. *See, e.g.*, Dkt. No. 322-16.   That information is not conveyed in the three emails—they do not indicate that developing the plan was a time-sensitive, priority project, that "stress is happening" related to the development of the plan, or that Saxton has an interest in seeing the draft. In short, the January 26, 2017 text message provides unique insight and information that the three emails do not. By extension, the deleted texts likely also contained unique insight and information that OHA's email production does not contain.[7]

OHA also contends, incorrectly, that it is not "plausible" that two deleted text messages Saxton sent to Oregon legislators concerned FamilyCare. Dkt. No. 320 at 17. OHA claims that

---

[7] The notion that people are often less guarded in text messages than in work emails, and thus that text messages often provide valuable immediacy and color that work emails do not, seems beyond dispute.

15-  REPLY IN SUPPORT OF FAMILYCARE, INC.'S
     MOTION FOR SANCTIONS AGAINST OHA DUE
     TO EVIDENCE SPOLIATION

Saxton's January 24, 2017 text message to Senator Johnson could not possibly relate to FamilyCare's proposed legislation because it occurred three months before the bill was before the Ways and Means Committee.[8]  *Id.*  But OHA ignores the fact that the text message was sent two weeks after FamilyCare's bill was introduced in the Oregon State Senate.  *See* Dkt. No. 258-32.  Nor can OHA credibly rely on the fact that Representative Buehler did not serve on a committee that heard FamilyCare's bill.  Dkt. No. 320 at 17.  Representative Buehler is a physician and on the House Health Care Committee, and FamilyCare would have needed the support of both chambers to make the bill law.  Dkt. No. 258-34; That OHA might want Representative Buehler to oppose the FamilyCare bill is hardly implausible.

The facts of this case are therefore distinguishable from both cases OHA cites, where the court found no prejudice because the movant was able to replace most of the lost ESI using third-party discovery.  *See Lokai Holdings LLC,* 2018 WL 1512055, at *13 ("Lokai does not explain whether anything appears to be missing from the email correspondence it has been able to obtain by subpoena"); *see also Living Color Enterprises, Inc.,* 2016 WL 1105297, at *1–2 (defendant was able to obtain many of the missing text messages from the other party to the communication).  Here, FamilyCare has only been able to replace one missing message.  Dkt. No. 257 at 20 n.16; *see also* Dkt. No. 258 ¶ 45.  Unless they replace the Saxton Text Messages, the other documents OHA has produced in discovery do not mitigate the prejudice their loss causes.

### D.    The Heatherington Text Messages Are Not Relevant to this Motion

Finally, the Court should reject OHA's attempt to divert attention from the issue through an inapt comparison of the Saxton Text Messages to nine missing Heatherington text messages.

---

[8] Saxton's recollection that she texted Senator Johnson because the latter raised a concern about a constituent, *see* Dkt. 320 at 17, should be accorded no weight considering Saxton's earlier deposition testimony that she does not remember the contents of her deleted texts. *See* Section II.A.3 *supra*.

16- REPLY IN SUPPORT OF FAMILYCARE, INC.'S
   MOTION FOR SANCTIONS AGAINST OHA DUE
   TO EVIDENCE SPOLIATION

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Dkt. No. 320 at 18. The Heatherington text messages—which span a year's worth of time and are with a handful of other people—have no bearing on the Court's evaluation of the prejudice that FamilyCare has suffered because of the loss of the Saxton Text Messages, which "necessarily includes an evaluation of [the Saxton Text Messages'] importance in the litigation." Fed. R. Civ. P. 37(e)(1) advisory committee's notes to the 2015 amendment. OHA offers no suggestion or even speculation as to the probable content of the Heatherington messages, or its potential importance to OHA's defenses or FamilyCare's claims. Instead, having not made a motion for sanctions and having failed to explain how or why the elements of Rule 37(e) have been met, OHA simply claims that it has suffered the prejudice of "being unable to conduct discovery regarding the unrecoverable text messages."[9] Dkt. 320 at 18. OHA draws the Court's attention to the Heatherington text messages for one reason only: to attempt to diminish the significance of its misconduct. The Court should reject OHA's argument for what it is—a red herring.

### E.    Sanctions against OHA are appropriate here.

OHA's intentional destruction of the Saxton Text Messages has deprived FamilyCare of information that "may have been valuable … in proving the elements of [FamilyCare's] claims." *Lokai Holdings LLC*, 2018 WL 1512055, at *12. The Court should exercise its considerable discretion to enter an appropriate sanction to cure that prejudice, including an adverse inference jury instruction; a permissive inference jury instruction; and/or an evidentiary sanction. *See* Dkt. No. 257 at 23-24 (describing FamilyCare's requested relief).

/ / /

/ / /

/ / /

---

[9] Any "prejudice" on this point does not seem to trouble OHA, as it has declared its opposition to reopening discovery in this case for any purpose.

17- REPLY IN SUPPORT OF FAMILYCARE, INC.'S
MOTION FOR SANCTIONS AGAINST OHA DUE
TO EVIDENCE SPOLIATION

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

## III.    CONCLUSION

For the reasons in the Motion and above, FamilyCare requests that the Court sanction OHA for its spoliation of the Saxton Text Messages.

DATED:  April 12, 2021                                **PERKINS COIE LLP**

By: *s/ Matthew P. Gordon*
     **Stephen F. English**, OSB No. 730843
     SEnglish@perkinscoie.com
     **Thomas R. Johnson**, OSB No. 010645
     TRJohnson@perkinscoie.com
     **Heidee Stoller**, OSB No. 072835
     HStoller@perkinscoie.com
     **Matthew J. Mertens**, OSB No. 146288
     MMertens@perkinscoie.com
     **Sasha A. Petrova**, OSB No. 154008
     SPetrova@perkinscoie.com
     Perkins Coie LLP
     1120 N.W. Couch Street, 10th Floor
     Portland, OR  97209-4128
     Telephone:  503.727.2000

     **Matthew Gordon**, *pro hac vice*
     MGordon@perkinscoie.com
     **David B. Robbins**, OSB No. 070630
     DRobbins@perkinscoie.com
     Perkins Coie LLP
     1201 Third Avenue, Suite 4900
     Seattle, WA 98101-3099
     Telephone:  206.359.8000

    *Attorneys for Plaintiff FamilyCare, Inc.*

18- REPLY IN SUPPORT OF FAMILYCARE, INC.'S
MOTION FOR SANCTIONS AGAINST OHA DUE
TO EVIDENCE SPOLIATION

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222