BethAnne Darby, 7/25/2018                    FamilyCare v. OHA, et al.

Page 173

A. So this is the draft document that was prepared in 2016.

Q. Sorry. Correct. Sorry. And thank you for that clarification.

So I'm showing you Exhibit 1090. Just so we can -- do you have the -- unless -- unless you've written on it. Did anybody write on Exhibit 1012?

All right. So, then, I think this one was -- when I gave this to you earlier, it just had this -- I don't know what you want to call it, a paper clip or whatever?

A. Uh-huh.

Q. So now I want it to be in order when you look at it.

A. Uh-huh.

Q. So I'm handing you a copy of 1012 -- Exhibit 1012.

A. Mine only goes to 519. Do you want me to -- oh, maybe this is the stack in here. I don't -- I don't know.

Q. Well, I'm representing to you that -- that this is a complete version of 1012.

A. Okay.

Q. Because I think yours got --

Page 174

A. Okay.

Q. We can sort it out later.

A. Okay.

Q. So in Exhibit 1012, and if you look -- can you turn to the attachment that Ms. Crowell sent to you.

A. Uh-huh. Uh-huh. (Witness complies.)

Q. Did any piece of that communications plan get implemented by OHA?

A. No. There's no communications plan.

Q. Okay. Did any of the ideas in that document attached to Deposition Exhibit 1012 -- did any of the ideas in there with respect to FamilyCare get acted on by OHA in any way?

A. This is a draft document that was shelved, that was never implemented, never used, never finalized.

Q. And you -- and you may have just been answering my question, but I want to make sure the record's clear.

Did any of the ideas in that document attached to Deposition Exhibit 1012 get implemented by OHA with respect to FamilyCare in any way?

A. I -- I -- any of the ideas? Can you be

Page 175

more specific? This is a draft document that was shelved. I haven't looked at it since it was shelved last -- early last -- it looks like January 26th, so I -- I haven't seen it since then, so...

Q. Well, if -- if you need to -- if we need to take a break for you to read that document, I'm -- I'm completely happy to do that.

A. Ideas are -- ideas are vague. That's why I'm asking, you know --

Q. Did --

MS. ROTHAUGE: And I guess if you are going to be asking such a broad question, I do want the witness to review it.

MR. JOHNSON: All right. Let's -- let's do that, then. Let's take a ten-minute break, and you can review the document.

THE VIDEOGRAPHER: We are off the record. The time is 2:35 p.m.

(Recess from 2:38 p.m. to 2:47 p.m.)

THE VIDEOGRAPHER: We are back on the record. The time is 2:45 p.m.

Q. (By Mr. Johnson) After the conversation that you had with Ms. Stineman in February of 2017, did you or your team implement any of the

Page 176

aspects of this document?

A. So this plan -- this draft document was never finalized, approved. It was shelved. OHA always fulfills its role as a state agency in providing information to help people understand the pros and cons of different policy implications during a legislative session, answering questions generally, providing information that will be responsive to an inquiry.

To the extent those aspects are embedded within this plan, we fulfilled that particular position. But I -- this plan was never looked at again after probably -- by me or anyone on my team after late January.

Q. Following -- between the conversation that you had with Ms. Stineman and early August 2017, did you or your team ever reach out to legislators regarding FamilyCare?

A. We responded to -- we shared information when requested. I mentioned the letter that we received from the Department of Justice that they sent to Perkins Coie to outline OHA's position. We did share that on occasion.

Q. Between the conversation that you had

Exhibit 4
Page 1 of 1