**Edwin A. Harnden,** OSB No. 721129
eharnden@barran.com
**Chris M. Morgan,** OSB No. 175384
cmorgan@barran.com
Barran Liebman LLP
601 SW Second Avenue
Suite 2300
Portland, Oregon  97204-3159
Telephone: (503) 228-0500
Facsimile No.: (503) 274-1212
Attorneys for Defendant Lynne Saxton

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

Eugene

| | |
|---|---|
| **FAMILYCARE, INC.**, an Oregon non-profit corporation, | **CV. 6:18-cv-00296-MO** |
| Plaintiff, | |
| v. | **DEFENDANT LYNNE SAXTON'S MOTION TO DISMISS** |
| **OREGON HEALTH AUTHORITY**, an agency of the State of Oregon, and **LYNNE SAXTON**, | **ORAL ARGUMENT REQUESTED** |
| Defendants. | |

Page i – DEFENDANT LYNNE SAXTON'S MOTION TO DISMISS

**BARRAN LIEBMAN** LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500  FAX (503) 274-1212

## TABLE OF CONTENTS

**MOTION** ...................................................................................................................1

**INTRODUCTION**.....................................................................................................1

**LEGAL STANDARDS UNDER FED. R. CIV. P. 12** ............................................1

**ARGUMENT** ............................................................................................................2

    I.    **THE FACTUAL ALLEGATIONS AGAINST SAXTON.** ..............................3

    II.    **THE CLAIM FOR RELIEF UNDER § 1983.**.................................................5

    III.    **THE LEGAL CONCLUSIONS, COUCHED AS FACTUAL ALLEGATIONS, FAIL TO STATE A CLAIM UNDER FED. R. CIV. P. 12** ..........................................................................................................5

        *A)*    *Conclusions Regarding Saxton's Participation in Rate Setting Fail Under Iqbal and Twombly.* ...............................................7

        *(B)*    *Conclusions Regarding Saxton's Failure to Act on Rate Setting Fail Under Iqbal and Twombly.* ..............................................9

        *(C)*    *Conclusions Regarding Saxton's Failure to Provide Procedural Protections Fail Under Iqbal and Twombly.*................................9

        *(D)*    *Conclusions Regarding Saxton's Implementation of a Policy Decision and Plan to Put FamilyCare Out of Business Fail Under Iqbal and Twombly.*........................................................10

        *(E)*    *Conclusions Regarding Saxton's "Development and Implementation" of a "Smear Campaign" Fail Under Iqbal and Twombly.* ...........................................................................11

        *(F)*    *FamilyCare's Reliance on the Term "Among Other Things" Cannot Fill Any Gaps or Otherwise Cure the Deficiencies in Its Pleadings.*......12

        *(G)*    *The Fifth Amended Complaint Fails to State a Claim Under 42 U.S.C. § 1983 Because it Fails to Allege That Saxton Undertook Action With a Discriminatory Purpose in Opposition to FamilyCare's "Constitutionally Protected" Conduct.* ...........................12

        *(H)*    *FamilyCare's Fifth Amended Complaint Fails to State a Claim Against Saxton Because it Fails to Plead Allegations or Resulting Damages Which Arise Independently of its Former Contractual Relationship With Saxton and OHA.* ..........................................14

            i)    **The CCO Agreements.**.................................................................14

            ii)    **FamilyCare's claim against Saxton must plead an independent entitlement to relief.**...............................................15

            iii)    **FamilyCare's entitlement to relief arises directly from the contractual relationship between FamilyCare and OHA.**.........16

    IV.    **SAXTON JOINS IN OHA'S MOTION TO DISMISS / MOTION FOR SUMMARY JUDGMENT IN RESPONSE TO FAMILYCARE'S FIFTH AMENDED COMPLAINT.**..........................................................18

**CONCLUSION** ......................................................................................................19

Page ii – DEFENDANT LYNNE SAXTON'S MOTION TO DISMISS

**BARRAN LIEBMAN LLP**
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

# TABLE OF AUTHORITIES

## Cases

*Alpha Energy Savers, Inc., v. Hansen*, 381 F.3d 917, 923 (9th Cir. 2004) .................................... 5

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ................................................................ passim

*Austin v. Univ. of Or.*, 205 F. Supp. 3d 1214, 1227 (D. Or. 2016) .......................................... 6, 13

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ................................................................ passim

*Chavez v. Tempe Union High Sch. Dist.*, 565 F.2d 1087, 1095 (9th Cir. 1997) ....................... 6, 13

*Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 540-541 (1993) ........................ 13

*Dynamis Therepeutics, Inc. v. Alberto-Culver Int'l, Inc.*, No. CIV. A. 09-773-GMS, 2010 U.S. Dist. LEXIS 100639 at *15 (D. Del. Sept. 2010) ........................................................... 15

*Georgetown Realty v. Home Ins. Co.,* 313 Or. 97 (1992) ....................................................... 16

*Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) ................................................................. 6, 7

*Moss v. U.S. Secret Serv.*, 572 F.3d 962, 971-72 (9th Cir. 2009) .................................................... 2

*Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) ............................................................. 1

*Personnel Administrator of Mass. v. Feeney*, 442 U.S. 256, 279 (1979) ..................................... 13

*Petzschke v. Century Aluminum Co.*, 729 F.3d 1104, 1108 (9th Cir. 2013) .................................. 9

*Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) ......................................... 2

*Whitaker v. Tesla Motors, Inc.,* 985 F.3d 1173, 1176 (9th Cir. 2021) ........................................... 2

*Wine Bottle Recycling, LLC v. Niagara Sys. LLC*, No. 12-1924 SC, 2013 U.S. Dist. LEXIS 138896 (N.D. Cal. Sep. 26, 2013) .............................................................................. 15

## Statutes

42 U.S.C. § 1113 ................................................................................................................... 19

42 U.S.C. § 1983 ............................................................................................................... passim

## Rules

42 CFR § 438.4(b) ................................................................................................................ 17

Fed. R. Civ. P. 12 .............................................................................................................. 5, 14

Fed. R. Civ. P. 12(b)(6) ........................................................................................................ 3

Fed. R. Civ. P. 8 ..................................................................................................... 3, 8, 12, 14

00980157.1

**BARRAN LIEBMAN** LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500  FAX (503) 274-1212

## LR 7 – 1 COMPLIANCE

In compliance with Local Rule 7 – 1, Counsel for Defendant Saxton states that it has made a good faith effort through a telephone conference to resolve the dispute underlying this motion, and has been unable to do so.

## MOTION

Defendant Lynn Saxton ("Saxton") moves for an order dismissing Plaintiff FamilyCare, Inc.'s ("FamilyCare") first claim for relief alleging a deprivation of civil rights in violation of 42 U.S.C. § 1983 ("§ 1983").

## INTRODUCTION

FamilyCare, in its attempt to use § 1983 as a commercial weapon to fight a personal financial battle, states threadbare, conclusory allegations against Saxton which are not entitled to a deference of truth by the Court, and which ultimately fail to cross the line from possibility to plausibility under the standards set forth by the United States Supreme Court and the Ninth Circuit Court of Appeals.

The claim against Saxton should be dismissed with prejudice because FamilyCare has not, and cannot, state sufficient facts supporting a plausible entitlement to relief under the principles set forth in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Where a plaintiff has repeatedly failed to cure deficiencies in their pleadings, a dismissal with prejudice is appropriate.  See, e.g., *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993)("dismissal of plaintiff's fifth amended complaint with prejudice was appropriate in light of [plaintiff's] repeated failure to cure the deficiencies in his pleadings").

## LEGAL STANDARDS UNDER FED. R. CIV. P. 12

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is <u>plausible</u> on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (emphasis added).  Under the Supreme Court's affirmation of *Twombly* in *Ashcroft v. Iqbal*, there is a decided distinction between claims which state a claim for relief which

Page 1 – DEFENDANT LYNNE SAXTON'S MOTION TO DISMISS

**BARRAN LIEBMAN** LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

is possible, and those which state a claim for relief which is *plausible*. The latter of the two is acceptable, while the former is not. See *Ashcroft at* 679 (2009) ("where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—that the pleader is entitled to relief.")

Although Court's must generally accept allegations in a complaint as true, they are not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); see also *Iqbal* at 662 (2009). "Taken together, *Iqbal* and *Tombly* require well-pleaded facts, not legal conclusions." *Whitaker v. Tesla Motors, Inc.,* 985 F.3d 1173, 1176 (9th Cir. 2021).

Where the factual content contained within a complaint does not allow a court to reasonably infer an entitlement to relief that is plausible, the complaint fails to satisfy *Twombly* and *Iqbal*. See, e.g., *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 971-72 (9th Cir. 2009) ("The factual content contained within the complaint does not allow us to reasonably infer that the Agents ordered the relocation of Plaintiff's demonstration because of its anti-Bush message, and it therefore fails to satisfy *Twombly* and *Iqbal*.")

## ARGUMENT

As the court in *Iqbal* confirms, "two working principles underlie [the] decision in *Twombly*." *Iqbal* at 678. "First, the tenant that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" because "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "Second, only a complaint that states a *plausible* claim for relief survives a motion to dismiss." *Id.* at 679 (emphasis added); see also *Tesla Motors, Inc.* at 1176.

Here, FamilyCare's claim against Saxton for an alleged violation of § 1983 fails to meet the standards set forth under *Iqbal* and *Twombly*. The statements alleging misconduct by Saxton are not required to be accepted as true by this Court because they are threadbare recitals supported by statements which are merely conclusory. Such conclusions, couched as factual allegations, fail

Page 2 – DEFENDANT LYNNE SAXTON'S MOTION TO DISMISS

**BARRAN LIEBMAN** LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500  FAX (503) 274-1212

to cross the threshold line from possible to plausible.  As a result, the allegations fail to state a claim under Fed. R. Civ. P. 8 and Fed. R. Civ. P. 12(b)(6).  The claim must be dismissed.

## I.    THE FACTUAL ALLEGATIONS AGAINST SAXTON.

The fifth amended complaint comprises only sparse factual allegations involving Saxton, and they are insufficient to support a plausible claim for liability under § 1983.

- Paragraph 3:  notes that "Lynne Saxton is the former director of the Oregon Health Authority."  Fifth Amended Complaint at ¶ 3.

- Paragraph 45:  alleges that "Lynne Saxton directed the Director of OHA's External Relations Division, BethAnne Darby, to develop a 'communications plan for the dispute resolution process.'"  It goes on to allege that BethAnne Darby ("Ms. Darby") "delegated the task of drafting the communications plan to Courtney Crowell, telling her, "We will want to create a comms plan for Lynne as soon as possible."

- Paragraph 47:  alleges that "Ms. Saxton had received a copy of the slide deck and, at 11:23 A.M., forwarded it to Ms. Darby, telling her that 'it will be helpful to us in developing our communications strategy.'"

- Paragraph 49:  alleges that Ms. Darby forwarded an updated draft of a communications plan to Saxton and told her that "Ms. Crowell 'use[d] the slides that [FamilyCare] presented at the last session' and that Ms. Darby had conferred with, among others, OHA's finance director in the building [about] the communications plan."  It goes on to make the unsupported and conclusory allegation that "all [of] this activity was done with the full awareness, approval, and encouragement of the top OHA official, Lynne Saxton, contrary to what she later stated in her letter of apology."

- Paragraph 52:  states that "at 3:19 P.M. on February 18, 2017, Ms. Saxton signaled her approval of the communications plan which had been sent to her on January 26, 2017, telling Ms. Darby that she had reviewed it, and there were some 'new developments that I think will build on the already good start you have outlined…Thank you!'"

Page 3 – DEFENDANT LYNNE SAXTON'S MOTION TO DISMISS

**BARRAN LIEBMAN** LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500  FAX (503) 274-1212

- Paragraph 54: notes that Saxton sent a letter of apology to FamilyCare stating that "sharing negative information about FamilyCare with media" is "not an acceptable strategy for OHA or any state agency." It goes on to note that Saxton stated that the draft communications plan was "developed by OHA staff in the heat of ongoing litigation" and "was not implemented or acted on in any way." It then makes the unsupported allegation that "Ms. Saxton did not mention that she had directed the creation of the communications plan…." The paragraph finally notes that Saxton was tendering her resignation.

- Paragraph 55: states Saxton's position that "the communications plan was not implemented or acted upon in any way" – but then pivots to state that it was OHA who implemented the communications plan. It further alleges that Saxton "made statements to the media consistent with the messaging in the communications plan, telling journalists, among other things, that the disagreement between the parties 'has been driven by FamilyCare's goal to be paid more Medicaid dollars'… and implying that [FamilyCare] is upset simply because they 'didn't get the rate they wanted for 2017.'' The remainder of the paragraph goes on to state conduct allegedly attributable to OHA—not Saxton.

- Paragraph 56: cites unidentified media reports in alleging that "Ms. Saxton had 'taken full responsibility for' the communications plan…[and had] resigned 'as a consequence of' the communications plan." It cites another unidentified media report in alleging that Saxton wrote a letter to OHA employees stating that "staff made mistakes 'when they were thinking out loud in the midst of an adversarial litigation process….'"

- Paragraph 57: states that "On September 1, 2017, following Ms. Saxton's resignation at Governor Brown's request, Patrick Allen assumed leadership of OHA as its new interim director." It goes on to allege that "based on preliminary figures and analysis provided by the OHA, FamilyCare believed that the 2018 rates reflected many of the same data errors and biased methodology as prior rate years, and that, as a result, they may be insufficient

Page 4 – DEFENDANT LYNNE SAXTON'S MOTION TO DISMISS

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500  FAX (503) 274-1212

to cover FamilyCare's reasonable, appropriate, and attainable costs of providing the medical care required under the terms of its contract with OHA."

## II.    THE CLAIM FOR RELIEF UNDER § 1983.

Paragraph 82 of the Complaint concludes that: "acting under color of state law, Defendant Saxton retaliated against FamilyCare for FamilyCare's exercise of its First Amendment rights by, among other things, setting rates that were unreasonable, biased, actuarially unsound, and based on erroneous data and methodology; refusing to correct known errors in data and methodology, developing and implementing a smear campaign against FamilyCare, refusing to grant FamilyCare the procedural protections guaranteed by law, and implementing a policy decision and plan to put FamilyCare out of business." Fifth Amended Complaint at ¶ 82.

FamilyCare goes on to conclude, with no support, that its "protected expression was a substantial or motivating factor in Defendant Saxton's decision to act as she did" and that "as a result of Defendant Saxton's retaliation against FamilyCare's exercise of its First Amendment rights, FamilyCare has suffered an indivisible injury through the loss of its Medicaid business and tangible and intangible assets, including its relationships with providers and employees, and its goodwill" and "is entitled to damages from Defendant Saxton for injury resulting from the deprivation of rights secured by the Constitution, in an amount to be proven at trial, not less than $125,000,000." Fifth Amended Complaint at ¶ 82, 83, 89.

## III.    THE LEGAL CONCLUSIONS, COUCHED AS FACTUAL ALLEGATIONS, FAIL TO STATE A CLAIM UNDER FED. R. CIV. P. 12.

To state a claim for First Amendment retaliation under these circumstances, FamilyCare must first plead that (1) it engaged in protected, expressive conduct that addressed a matter of public concern; (2) that Saxton took adverse action against FamilyCare; and that (3) the protected, expressive conduct was a motivating factor for the adverse action. See, e.g., *Alpha Energey Savers, Inc., v. Hansen*, 381 F.3d 917, 923 (9th Cir. 2004).

Page 5 – DEFENDANT LYNNE SAXTON'S MOTION TO DISMISS

**BARRAN LIEBMAN** LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500  FAX (503) 274-1212

A claim under § 1983 also requires discriminatory motive and intent. See, e.g., *Chavez v. Tempe Union High Sch. Dist*., 565 F.2d 1087, 1095 (9th Cir. 1997) (because 42 U.S.C. § 1983 incorporates terms of the constitution itself, an action relying on a constitutional principle requires proof of discriminatory intent); *Austin v. Univ. of Or*., 205 F. Supp. 3d 1214, 1227 (D. Or. 2016) (under 42 U.S.C. § 1983, "plaintiffs must prove that the defendants acted in a discriminatory manner and that the discrimination was intentional.")

There is no vicarious liability under § 1983, and the alleged wrongdoer themselves must personally have been the one who acted on account of a constitutionally protected characteristic. In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation. See, e.g. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).

Assuming here, *arguendo*, that FamilyCare engaged in speech which would be protected under the First Amendment of the United States Constitution,[1] the fifth amended complaint still fails to state a claim against Saxton for several independent reasons.

First, many of the conclusions drawn against Saxton are quite literally supported by zero factual allegations in the fifth amended complaint, and therefore must be considered pure legal conclusions couched as factual allegations. Such conclusions are expressly prohibited under *Iqbal*. See *Iqbal* at 678 citing *Twombly* at 555 ("a pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do'… nor do 'naked assertions devoid of further factual enhancement.'")

Second, the conclusions which do find *some* limited basis in the factual allegations themselves are nonetheless insufficient to state a claim under § 1983, because the Court is not required to accept them as true, and they ultimately fail to cross the line from possible to plausible

---

[1] Saxton does not waive any defenses or arguments in opposition to FamilyCare's allegation that it engaged in speech protected under the First Amendment of the United States Constitution.

Page 6 – DEFENDANT LYNNE SAXTON'S MOTION TO DISMISS

**BARRAN LIEBMAN** LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500  FAX (503) 274-1212

under the standards set forth under *Iqbal* and *Twombly*. See *Iqbal* at 679 ("only a complaint that states a plausible claim for relief survives a motion to dismiss.")

Third, even if FamilyCare provided some factual information allowing the court to draw a reasonable inference that Saxton engaged in retaliatory conduct in violation of FamilyCare's First Amendment rights, FamilyCare provides nothing more than a mere conclusion (again couched as a factual allegation), that such adverse action was prompted by the exercise of FamilyCare's First Amendment rights, or that Saxton acted with a discriminatory or retaliatory motive.

Fourth, FamilyCare fails to plead an entitlement to relief or resulting damages which arises independently of its former contractual relationship with Saxton and OHA. Fifth and finally, even assuming that all else is true, the damages sought against Saxton are barred because they are consequential damages that arise exclusively from FamilyCare's former contractual relationship with Saxton and OHA.

### A)    *Conclusions Regarding Saxton's Participation in Rate Setting Fail Under Iqbal and Twombly.*

Paragraph 82 of the fifth amended complaint first concludes "Defendant Saxton retaliated against FamilyCare for FamilyCare's exercise of its First Amendment rights by, among other things, setting rates that were unreasonable, biased, actuarially unsound, and based on erroneous data and methodology…." Fifth Amended Complaint at ¶ 82. There is not a single supporting allegation anywhere in the entire fifth amended complaint which purports to explain how Saxton, in her personal capacity, set rates that were "unreasonable, biased, actuarially unsound, and based on erroneous data and methodology."

As noted above, there is no vicarious liability under § 1983, and liability under § 1983 is dependent upon a showing of personal participation in the alleged deprivation of rights. Mere membership in a group who did participate in the alleged unlawful deprivation is not enough absent evidence of personal participation. *Jones v. Williams*, 297 F.3d 930 (9th Cir. 2002) (mere

Page 7 – DEFENDANT LYNNE SAXTON'S MOTION TO DISMISS

**BARRAN LIEBMAN** LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500  FAX (503) 274-1212

membership in group, without personal involvement in and causal connection to unlawful act, cannot create liability under § 1983).

In this respect, the factual circumstances in *Iqbal* are actually quite illustrative. In *Iqbal*, a detainee who was designated as a person of "high interest" following 9/11 filed an action against a number of federal officials (including John Ashcroft, the former U.S. Attorney General, and Robert Mueller, the FBI Director) challenging the way that he was treated while in prison confinement and alleging, inter alia, that the FBI (under Mueller's direction) subjected Iqbal to harsh conditions of confinement as a matter of policy and for "no legitimate penological interest." *Iqbal* at 662. *Iqbal* further alleged that Ashcroft was the policy's "principal architect" and that Mueller was "instrumental" in its adoption and execution. *Id.*

The Supreme Court ultimately held that Iqbal's pleadings did not comply with Fed. R. Civ. P. 8, as his allegations against Ashcroft and Mueller (including allegations that Ashcroft was the policy's principal architect and that Mueller was instrumental in its adoption and execution) were "conclusory and not entitled to be assumed true." *Id.* at 664.

Here, similar to *Iqbal*, FamilyCare merely concludes that Saxton personally participated in "setting rates that were unreasonable, biased, actuarially unsound, and based on erroneous data and methodology…." without providing any factual support for the conclusion. Such statements are entirely conclusory and not entitled to be assumed true. Accordingly, consistent with *Iqbal*, the allegations cannot serve as a basis for stating a plausible claim under Fed. R. Civ. P. 8.

In further support of the conclusion that the rate-setting allegation fails to state a plausible claim against Saxton, it must be noted that the fifth amended complaint largely focuses on the "unreasonable and biased rate-setting methods used by OHA and Optumus" – not Saxton. See, e.g., Fifth Amended Complaint at ¶ 5. Saxton's personal liability can only arise in the event that she personally participated in the alleged deprivation.

Here, FamilyCare blames OHA and Optumus for the same conduct that they allege that Saxton undertook personally. In analyzing the principles set forth in *Iqbal* and *Twombly*, the Ninth

Page 8 – DEFENDANT LYNNE SAXTON'S MOTION TO DISMISS

**BARRAN LIEBMAN** LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR 97204-3159
PHONE (503) 228-0500  FAX (503) 274-1212

Circuit has held that "[w]hen faced with two possible explanations, only one of which can be true and only one of which results in liability, plaintiffs cannot offer allegations that are 'merely consistent' with their favored explanation but are also consistent with the alternative explanation." *Petzschke v. Century Aluminum Co.,* 729 F.3d 1104, 1108 (9th Cir. 2013) citing *Iqbal* at 678. FamilyCare's allegation that OHA and Optimus are responsible for "unreasonable and biased rate-setting" is entirely inconsistent with its allegation that Saxton personally undertook the exact same action. The allegation is insufficient. See *Id.* (plaintiffs must offer facts tending to exclude the possibility that their alternative explanation is true "in order to render their allegations plausible within the meaning of *Iqbal* and *Twombly*.")

### (B)     Conclusions Regarding Saxton's Failure to Act on Rate Setting Fail Under Iqbal and Twombly.

Paragraph 82 next concludes that Saxton retaliated against FamilyCare by "refusing to correct known errors in data and methodology." Fifth Amended Complaint at ¶ 82. For the same reasons stated above, this mere conclusion is not sufficient to allege an "adverse action" for purposes of stating a claim under § 1983. There is no factual allegation in the entirety of the fifth amended complaint purporting to show that Saxton personally was "aware of known errors" in unspecified "data and methodology," and thereafter "refused" to correct it. Without more, such a statement is not entitled to an assumption of truth. It is a legal conclusion couched as a factual allegation, and it is insufficient to state a claim for relief.

### (C)     Conclusions Regarding Saxton's Failure to Provide Procedural Protections Fail Under Iqbal and Twombly.

Paragraph 82 next concludes that Saxton retaliated against FamilyCare by "refusing to grant FamilyCare the procedural protections guaranteed by law." Complaint at ¶ 82. Same as above, this conclusion is not sufficient to allege an "adverse action" for purposes of stating a claim under § 1983. This conclusion does not provide Saxton, the Court, or anyone else with any idea of what "procedural protections" are at issue—nor how or why FamilyCare is entitled to such protections as "guaranteed by law." In fact, the words "protections," "procedural protections" and

Page 9 – DEFENDANT LYNNE SAXTON'S MOTION TO DISMISS

**BARRAN LIEBMAN** LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR 97204-3159
PHONE (503) 228-0500  FAX (503) 274-1212

"guaranteed by law" are not used anywhere else in the fifth amended complaint. It is a legal conclusion couched as a factual allegation, and it is insufficient to state a claim for relief.

**(D)    Conclusions Regarding Saxton's Implementation of a Policy Decision and Plan to Put FamilyCare Out of Business Fail Under Iqbal and Twombly.**

Paragraph 82 next concludes that Saxton retaliated against FamilyCare by "implementing a policy decision and plan to put FamilyCare out of business." Complaint at ¶ 82. Same as above, this conclusion is not sufficient to allege an "adverse action" for purposes of stating a claim under § 1983. There are no factual allegations in the fifth amended complaint alleging what "policy decision" was made by Saxton personally; how Saxton personally implemented such policy decision or plan; or how such plan was personally designed by Saxton to "put FamilyCare out of business."

Again, a comparison to *Iqbal* itself is particularly instructive, as the Court rejected Iqbal's assertion that the underlying policies at issue were attributable to Ashcroft or Mueller. See *Iqbal* at 664 (allegations "that Ashcroft was the policy's 'principal architect'; and that Mueller was 'instrumental' in its adoption and execution—are conclusory and not entitled to be assumed true.").

Same as above—FamilyCare blames Saxton for personally undertaking the same actions which she alleges were undertaken by OHA. FamilyCare goes back and forth throughout the fifth amended complaint, and then ultimately abandons its previous allegations that "OHA succeeded in forcing FamilyCare to exit the Medicaid market and shut down its Medicaid Business"[2] for the self-serving conclusion Saxton somehow personally oversaw and implemented such a plan. There are no non-conclusory factual allegations suggesting that Saxton, in her individual capacity, devised, oversaw, or otherwise implemented a plan targeted to "put FamilyCare out of business." It is a legal conclusion couched as a factual allegation, and it is insufficient to state a claim for relief.

/ / /

---

[2] Fifth Amended Complaint at ¶ 4.

Page 10 – DEFENDANT LYNNE SAXTON'S MOTION TO DISMISS

### (E)    Conclusions Regarding Saxton's "Development and Implementation" of a "Smear Campaign" Fail Under Iqbal and Twombly.

Paragraph 82 concludes that Saxton retaliated against FamilyCare by "developing and implementing a smear campaign against FamilyCare…." Fifth Amended Complaint at ¶ 82. Same as above, this conclusion is not sufficient to allege an "adverse action" for purposes of stating a claim under § 1983.

The conclusion that Saxton *personally* developed and implemented a "smear campaign" is not supported by any competent, non-conclusory factual allegations in the fifth amended complaint. Instead, for her part, FamilyCare alleges that Saxton requested the development of a "communications plan for the dispute resolution process" (Fifth Amended Complaint at ¶ 45); that Saxton told Darby that a copy of a slide deck prepared by FamilyCare "will be helpful to us in developing our communications strategy" (Fifth Amended Complaint at ¶47); and that Saxton "signaled her approval of the communications plan" (Fifth Amended Complaint at ¶47). FamilyCare also concludes, with no support, that "all [of] this activity was done with the full awareness, approval, and encouragement" of Saxton. (Fifth Amended Complaint at ¶47). Such a statement is a conclusion couched as a factual allegation.

In fact—contrary to its position that Saxton *personally* directed and implemented the "communications plan" – FamilyCare expressly states throughout the fifth amended complaint (including at ¶¶ 53, 54, 55) that it was "OHA" that "created" the "communications plan" – not Saxton. See, e.g., ¶ 53 ("The communications plan that OHA created…."); ¶ 55 ("despite Ms. Saxton's claim that the communications plan was not implemented or acted on in any way, OHA did implement its communications plan….")

In doing so, FamilyCare undercuts any argument that such a plan was developed or implemented by Saxton personally. "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal* at 677. Accordingly, to the extent that FamilyCare alleges that it was OHA who developed and implemented the

Page 11 – DEFENDANT LYNNE SAXTON'S MOTION TO DISMISS

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR 97204-3159
PHONE (503) 228-0500  FAX (503) 274-1212

communications plan—such an allegation is inconsistent with any personal liability for Saxton under § 1983.

A conclusion that Saxton personally directed and implemented a smear campaign for the purpose of putting FamilyCare out of business is not entitled to be taken as true by the Court. It is a conclusion, without a sufficient factual basis, that is "merely consistent with" liability, but which "stops short of the line between possibility and plausibility…" – particularly given that FamilyCare pleads alternative theories which are inconsistent with personal liability under § 1983. See *Iqbal* at 678 ("where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.")

**(F)    *FamilyCare's Reliance on the Term "Among Other Things" Cannot Fill Any Gaps or Otherwise Cure the Deficiencies in Its Pleadings.***

Paragraph 82 of the Fifth Amended Complaint states that "Acting under color of state law, Defendant Saxton retaliated against FamilyCare for FamilyCare's exercise of its First Amendment rights by, among other things,…." Fifth Amended Complaint at ¶82. FamilyCare's reference to "among other things" cannot fill any gaps or otherwise cure any deficiencies in Plaintiff's pleadings. Such reference to unidentified subject matter clearly violates the heightened pleading standards under *Iqbal*, *Twombly*, and Fed. R. Civ. P. 8.

**(G)    *The Fifth Amended Complaint Fails to State a Claim Under 42 U.S.C. § 1983 Because it Fails to Allege That Saxton Undertook Action With a Discriminatory Purpose in Opposition to FamilyCare's "Constitutionally Protected" Conduct.***

Even if FamilyCare were able to sufficiently plead that Saxton personally took an adverse action against it, its claim under § 1983 still fails because it does not adequately allege that such action taken by Saxton was prompted by FamilyCare's exercise of First Amendment rights, or that Saxton otherwise acted with a discriminatory purpose.

In *Iqbal*, the Supreme Court acknowledged that "*Bivens* actions" – private actions for damages against federal officials for alleged violations of constitutional rights which are not covered by the Federal Tort Claims Act ("FTCA"), are "the federal analog to suits brought against

Page 12 – DEFENDANT LYNNE SAXTON'S MOTION TO DISMISS

**BARRAN LIEBMAN** LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR 97204-3159
PHONE (503) 228-0500  FAX (503) 274-1212

state officials under 42 U.S.C. § 1983." *Iqbal* at 675. The Supreme Court further affirmed that "the factors necessary to establish a *Bivens* violation will vary with the constitutional provision at issue. Where the claim is invidious discrimination in contravention of the First and Fifth Amendments, our decisions make clear that the plaintiff must plead and provide that the defendant acted with discriminatory purpose." *Iqbal* at 676 citing to Justice Kennedy's opinion in *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 540-541 (1993).

It follows, then, that when the First Amendment is at issue with respect to a claim brought under *Bivens* corollary (42 U.S.C. § 1983), the plaintiff must also plead and prove that the individual defendant acted with a *discriminatory purpose* in opposition to the Plaintiff's First Amendment conduct. See also, e.g., *Chavez* at 1095 (because 42 U.S.C. § 1983 incorporates terms of the constitution itself, an action relying on a constitutional principle requires proof of discriminatory intent; *Austin* at 1227 (under 42 U.S.C. § 1983, "plaintiffs must prove that the defendants acted in a discriminatory manner and that the discrimination was intentional.")

The factual circumstances underlying *Iqbal* are once again instructive. In noting that Iqbal's claim required a showing that Ashcroft and Mueller acted on account of a protected constitutional characteristic, the Court found that the pleading "do[es] not meet the standard necessary to comply with Rule 8" where "respondent's complaint does not contain any factual allegation sufficient to plausibly suggest petitioners' discriminatory state of mind." *Iqbal* at 683. "Purposeful discrimination requires more than intent as volition or intent as awareness of consequences." *Iqbal* at 676 citing *Personnel Administrator of Mass. v. Feeney*, 442 U.S. 256, 279 (1979).

Here, and similarly, there are no factual allegations sufficient to *plausibly* suggest that Saxton acted with a "discriminatory motive" or otherwise acted in opposition to a protected constitutional characteristic. Paragraph 81 of the fifth amended complaint identifies actions which FamilyCare believes to be legitimate expressions of its First Amendment rights. However, it falls far short of pleading that she acted with any sort of discriminatory motive.

Page 13 – DEFENDANT LYNNE SAXTON'S MOTION TO DISMISS

**BARRAN LIEBMAN** LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR 97204-3159
PHONE (503) 228-0500  FAX (503) 274-1212

The conclusion that "FamilyCare's protected expression was a substantial or motivating factor in Defendant Saxton's decision to act as she did" (see Fifth Amended Complaint at ¶ 82) is conclusory, unsupported, and insufficient. It is the exact kind of "formulaic recital" of elements "consistent with liability" which are precluded under *Iqbal* and *Twombly*. Such a conclusion is not required to be accepted as true by the Court and, absent additional factual allegations purporting to show how or why such adverse actions were taken with a discriminatory motive in opposition to FamilyCare's alleged protected speech, the allegation fails to make the jump from possible to plausible.

Accordingly, the claim does not meet the standard necessary to comply with Fed. R. Civ. P. 8, and it should be dismissed.

### (H) FamilyCare's Fifth Amended Complaint Fails to State a Claim Against Saxton Because it Fails to Plead Allegations or Resulting Damages Which Arise Independently of its Former Contractual Relationship With Saxton and OHA.

FamilyCare's fifth amended complaint should be dismissed pursuant to Fed. R. Civ. P. 12 because it fails to plead factual allegations or damages which arise from a legal duty independent of its former contractual relationship with Saxton and OHA. Dismissal of a personal injury claim "bootstrapped" to a contract claim is appropriate where the claim fails to plead an entitlement to relief that is independent of a duty imposed merely by contractual agreement of the parties.

### i) The CCO Agreements.

FamilyCare was a "Coordinated Care Organization ("CCO")" who "contracted with the State of Oregon, by and through the Oregon Health Authority ("OHA"), to provide services for the Oregon Health Plan ("OHP"), the state's Medicaid program." Fifth Amended Complaint at ¶ 1. OHA, in turn, "funds the cost of providing these services by making per-member-per-month, or "capitation" payments. The capitation payments are based on rates developed and established by OHA." Fifth Amended Complaint at ¶ 10. FamilyCare alleges that "in 2015, 2016, and 2017," during the time period in which Saxton served as Director of the OHA, "OHA singularly targeted

Page 14 – DEFENDANT LYNNE SAXTON'S MOTION TO DISMISS

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500  FAX (503) 274-1212

the elimination of FamilyCare as one of the state's CCO" by "[setting] FamilyCare's capitation rates lower than the rates of every other CCO."  Fifth Amended Complaint at ¶ 13.

All of the damages sought from Saxton by FamilyCare arise exclusively from allegations that FamilyCare received capitation rates that were "unreasonable, biased, actuarially unsound, and based on erroneous data and methodology."  Fifth Amended Complaint at ¶ 82.  The duty to provide rates that are reasonable, unbiased, actuarially sound, and based upon competent data and methodology, arises not from some independent legal duty owned by Saxton to FamilyCare—but by contract  Accordingly, the claim merely seeks to enforce bargained for expectations under the contract as opposed to an independent legal duty.

### ii)    FamilyCare's claim against Saxton must plead an independent entitlement to relief.

A litigant may plead a claim for personal injury / tort against an individual employee while simultaneously pleading a viable contract claim against the organization whom they work for.

However, courts have found that such a capability is dependent upon the existence of some independent duty imposed by law, rather than a duty which arises by mere agreement of the parties. Some federal courts have referred to this concept as the "bootstrapping doctrine."  See, e.g., the District of Delaware's decision in *Dynamis Therepeutics, Inc. v. Alberto-Culver Int'l, Inc*., No. CIV. A. 09-773-GMS, 2010 U.S. Dist. LEXIS 100639 at *15 (D. Del. Sept. 2010) (to prevent "gratuitous bootstrapping of contract claim into tort claims"... "while the same circumstances may give rise to a breach of contract and tortious interference claim, a plaintiff bringing the latter claim must allege breach of an independent duty imposed by law rather than a duty which arises by mere agreement of the parties"); the Northern District of California's opinion in *Wine Bottle Recycling, LLC v. Niagara Sys. LLC*, No. 12-1924 SC, 2013 U.S. Dist. LEXIS 138896 (N.D. Cal. Sep. 26, 2013) (rejecting plaintiffs intentional misrepresentation, concealment, breach of warranty, and negligence claims where the claims "do not seek to do anything but protect Plaintiff's bargained-for expectations" under contract, noting that "to allow tort claims…would impermissibly blur the

Page 15 – DEFENDANT LYNNE SAXTON'S MOTION TO DISMISS

**BARRAN LIEBMAN** LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

distinction between tort and contract, and encourage every putative contract plaintiff to piggyback [tort claims] atop what should rightly be a contract case.")

In *Georgetown Realty v. Home Ins. Co.,* 313 Or. 97 (1992), the Oregon Supreme Court described this principle by stating that "the pivotal question, in deciding whether one party to a contract may sue another party to the contract in tort for negligent performance of a term of the contract, is whether the allegedly negligent party is subject to a standard of care <u>independent</u> of the terms of the contract." *Id.* at 110. (emphasis added). This is true where "the gravamen of the complaint is that one party caused damage to the other by negligently performing its obligations under the contract." *Id.* at 106.

Here, FamilyCare's claim against Saxton fails to identify any legitimate entitlement to relief which arises independently of the contractual relationship between OHA and FamilyCare, which serves as the gravamen of its complaint. Accordingly, FamilyCare's claim does nothing but seek to enforce and protect FamilyCare's "bargained for expectations" under a contractual agreement.

### iii)    FamilyCare's entitlement to relief arises directly from the contractual relationship between FamilyCare and OHA.

Here, although FamilyCare fashions its claim for relief as a claim for First Amendment retaliation in violation of § 1983, the factual allegations supporting the claim, and the damages arising therefrom, necessarily arise directly from the contractual relationship between OHA and FamilyCare (the "CCO Agreements"). It is a contract claim masquerading as personal injury / tort claim.

Notwithstanding the deficiencies in the pleadings already outlined herein, the allegations (even if taken as facially true) only arise directly from the CCO Agreements. In fact, FamilyCare has not plead, and there does not exist, any independent relationship between FamilyCare and Private Citizen Lynn Saxton. Instead, the only relationship between the two arises out of the CCO Agreements, and Saxton's role as Director of OHA during time periods in which FamilyCare

Page 16 – DEFENDANT LYNNE SAXTON'S MOTION TO DISMISS

alleges that "OHA singularly targeted the elimination of FamilyCare as one of the state's CCO's." Fifth Amended Complaint at ¶ 82.

The factual allegations themselves allow no other conclusion. FamilyCare alleges that "Defendant Saxton retaliated against FamilyCare for FamilyCare's exercise of its First Amendment rights by, among other things, setting rates that were unreasonable, biased, actuarially unsound, and based on erroneous data and methodology; refusing to correct known errors in data and methodology, developing and implementing a smear campaign against FamilyCare, refusing to grant FamilyCare the procedural protections guaranteed by law, and implementing a policy decision and plan to put FamilyCare out of business." Fifth Amended Complaint at ¶ 82.

There is no doubt FamilyCare's only entitlement to rates that *are* reasonable, unbiased, and actuarially sound in the context of federal law, including 42 CFR § 438.4(b), arise directly from the contractual agreements governing FamilyCare's capitation rates and referenced throughout its fifth amended complaint (again, the "CCO Agreements"). Private Citizen Saxton has no independent duty to FamilyCare to provide sound rates, or anything else for that matter. Similarly, any duty to "correct known errors in data and methodology" undoubtedly arise exclusively from the CCO Agreements.[3]

Finally, FamilyCare's allegations related to the alleged development and implementation of a smear campaign, and allegations related to the alleged implementation of a plan to put FamilyCare out of business, also arise exclusively from the CCO Agreements and FamilyCare's allegations that OHA refused to provide FamilyCare with Medicaid capitation rates which were sufficient to sustain its business operations. See, e.g., Fifth Amended Complaint at ¶ 82 ("faced with actuarially unsound and otherwise improper and incomplete rates that would cause FamilyCare to run a deficit in 2018 exceeding the amount of its available reserves, and lacking

---

[3] Furthermore, FamilyCare's vague and unsupported allegation regarding a refusal to "grant FamilyCare the procedural protections guaranteed by law" also arise out of the CCO Agreements—as Private Citizen Saxton owes FamilyCare no independent procedural protections.

Page 17 – DEFENDANT LYNNE SAXTON'S MOTION TO DISMISS

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500  FAX (503) 274-1212

any information from OHA about what compensation FamilyCare would actually receive in 2018 upon the correction of acknowledged data errors impacting CCO capitation rates, FamilyCare was unable to sign the 2018 Amendment…"); Fifth Amended Complaint at ¶ 73 ("On January 1, 2018, pursuant to its agreement with OHA, FamilyCare began the process of shutting down its Medicaid business.")

Ultimately, FamilyCare blames Saxton and OHA for providing it with unreasonable, biased, and actuarially unsound Medicaid capitation rates, which ultimately led to the closure of FamilyCare's business. There is no way to reasonably separate the relationship between the CCO Agreements and the express allegations against Saxton as alleged in the fifth amended complaint. The alleged retaliatory actions, and the consequential damages arising therefore, derive exclusively from FamilyCare's former contractual relationship with Saxton and OHA. Because FamilyCare has failed to adequately state a claim for relief which is independent of its contract claims against OHA, FamilyCare's tort claim against Saxton does nothing but seek to protect and remediate FamilyCare's "bargained for expectations" under the CCO Agreements.[4] The remedy is in contract, not personal injury / tort. The claim should be dismissed.

## IV.    SAXTON JOINS IN OHA'S MOTION TO DISMISS / MOTION FOR SUMMARY JUDGMENT IN RESPONSE TO FAMILYCARE'S FIFTH AMENDED COMPLAINT.

For no discernable purpose, FamilyCare's fifth amended complaint now seeks "damages against Lynn Saxton…in an amount not less than $125,000,000.00" for her alleged violation of § 1983. Fifth Amended Complaint at pg. 41 (emphasis added). Notwithstanding the complete

---

[4] Providing further credence to Saxton's position that the § 1983 claim brought against her is merely a tort claim "bootstrapped" to a rightful contract claim, FamilyCare seeks the same exact amount of damages against Saxton on its tort claim as it does against OHA on its contract claim. See FamilyCare's Fifth Amended Complaint at pg. 41 ("On FamilyCare's first claim for relief: …damages against Lynn Saxton in an amount equal to the injury sustained as a result of the deprivation of FamilyCare's constitutional rights, in an amount not less than $125,000,000.00); FamilyCare's Fifth Amended Complaint at pg. 42 ("On FamilyCare's Fourth Claim for Relief: …an order [awarding] FamilyCare damages, not less than $125,000,000.00, for OHA's breach of the Contract.").

Page 18 – DEFENDANT LYNNE SAXTON'S MOTION TO DISMISS

absence of facts supporting its egregious prayer for damages, the damages sought are contractually barred. Accordingly, and because Saxton is ultimately a party to the CCO Agreements and is entitled to protection under the applicable limitations on liability contained therein, Saxton joins in OHA's motion to dismiss / motion for summary judgment.

## CONCLUSION

For the reasons stated above, Saxton respectfully requests the following:

1) Dismissal with prejudice of FamilyCare's first claim for relief against Saxton alleging a violation of 42 U.S.C. § 1983.

2) An award of attorney fees and costs under 42 U.S.C. § 1113 for defending a claim for damages which is either frivolous, unreasonable, without foundation, or brought in bad faith.

3) Any other relief which the Court may deem equitable and proper under the circumstances.

## CERTIFICATE OF COMPLIANCE

This brief complies with the applicable word-count limitation under LR 7-2(b), and all other applicable local court rules of the U.S. District Court for the District of Oregon, because it contains 6,012 words, including headings footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and certificates of counsel.

DATED this 18th day of May 2021.

BARRAN LIEBMAN LLP

By    *s/ Edwin A. Harnden*
Edwin A. Harnden, OSB No. 721129
eharnden@barran.com
Chris M. Morgan, OSB No. 175384
cmorgan@barran.com

Attorneys for Defendant Lynne Saxton

Page 19 – DEFENDANT LYNNE SAXTON'S MOTION TO DISMISS

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of May 2021, I caused the foregoing **DEFENDANT LYNNE SAXTON'S MOTION TO DISMISS** to be:

☒    electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| **Stephen F. English**<br>SEnglish@perkinscoie.com<br>**Thomas R. Johnson**<br>TRJohnson@perkinscoie.com<br>**Heidee Stoller**<br>HStoller@perkinscoie.com<br>**Matthew J. Mertens**<br>MMertens@perkinscoie.com<br>**Sasha A. Petrova**<br>SPetrova@perkinscoie.com<br>Perkins Coie LLP<br>1120 N.W. Couch Street, 10th Floor<br>Portland, OR 97209-4128<br><br>**Matthew Gordon**, *pro hac vice*<br>MGordon@perkinscoie.com<br>**David B. Robbins**<br>DRobbins@perkinscoie.com<br>Perkins Coie LLP<br>1201 Third Avenue, Suite 4900<br>Seattle, WA 98101-3099<br><br> Counsel for Plaintiff | **David B. Markowitz**<br>davidmarkowitz@mhgm.com<br>**Matthew A. Levin**<br>mattlevin@markowitzherbold.com<br>**Vivek A. Kothari**<br>vivekkothari@markowitzherbold.com<br>**Anna Marie Joyce**<br>annajoyce@markowitzherbold.com<br>**Dallas S. DeLuca**<br>dallasdeluca@markowitzherbold.com<br>**Harry B. Wilson**<br>harrywilson@markowitzherbold.com<br>**Katherine M. Acosta**<br>katherineacosta@markowitzherbold.com<br>**Laura R. Salerno Owens**<br>laurasalerno@markowitzherbold.com<br>Markowitz Herbold PC<br>1455 SW Broadway, Suite 1900<br>Portland, OR 97201<br><br>**Carla Scott**<br>Carla.a.scott@doj.state.or.us<br>Oregon Department of Justice<br>100 SW Market Street<br>Portland, Or 97201<br><br>Counsel for Defendant Oregon Health Authority |

CERTIFICATE OF SERVICE

| |
|---|
| **David B. Markowitz**<br>davidmarkowitz@mhgm.com<br>**Matthew A. Levin**<br>mattlevin@markowitzherbold.com<br>**Vivek A. Kothari**<br>vivekkothari@markowitzherbold.com<br>**Anna Marie Joyce**<br>annajoyce@markowitzherbold.com<br>**Dallas S. DeLuca**<br>dallasdeluca@markowitzherbold.com<br>**Harry B. Wilson**<br>harrywilson@markowitzherbold.com<br>**Katherine M. Acosta**<br>katherineacosta@markowitzherbold.com<br>**Laura R. Salerno Owens**<br>laurasalerno@markowitzherbold.com<br>Markowitz Herbold PC<br>1455 SW Broadway, Suite 1900<br>Portland, OR 97201<br><br>**Carla Scott**<br>Carla.a.scott@doj.state.or.us<br>Oregon Department of Justice<br>100 SW Market Street<br>Portland, Or 97201<br><br>**Jonathan W. Monson**<br>jmonson@cablehuston.com<br>**Nicole M. Swift**<br>nswift@cablehuston.com<br>Cable Huston LLP<br>1001 SW 5th Avenue, Suite 2000<br>Portland, OR ;972904-1136<br><br>Counsel for Defendant Patrick Allen |

☐    hand delivered to the following non-CM/ECF participants:

☐    faxed and mailed by first class United States mail, postage prepaid, to the following non-CM/ECF participants:

_s/Edwin A. Harnden_
Edwin A. Harnden

CERTIFICATE OF SERVICE