**David B. Markowitz, OSB #742046**
DavidMarkowitz@MarkowitzHerbold.com
**Matthew A. Levin, OSB #003054**
MattLevin@MarkowitzHerbold.com
**Harry B. Wilson, OSB #077214**
HarryWilson@MarkowitzHerbold.com
**Laura Salerno Owens, OSB #076230**
LauraSalerno@MarkowitzHerbold.com
MARKOWITZ HERBOLD PC
1455 SW Broadway, Suite 1900
Portland, OR  97201
Tele:  (503) 295-3085
Fax:  (503) 323-9105

> Special Assistant Attorneys General for Defendants Oregon
> Health Authority, an agency of the State of Oregon
> [Additional Counsel of Record Listed on Signature Page]

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## EUGENE DIVISION

| | |
|---|---|
| FAMILYCARE, INC., an Oregon non-profit corporation, | Case No. 6:18-cv-00296-MO |
| Plaintiff, | **DEFENDANT OREGON HEALTH AUTHORITY'S MOTION TO DISMISS, MOTION FOR SUMMARY JUDGMENT, AND MOTION TO STRIKE** |
| v. | |
| OREGON HEALTH AUTHORITY, an agency of the State of Oregon, and LYNNE SAXTON, | **Fed. R. Civ. P. 12(b)(6), 12(f), 56** |
| Defendants. | **Oral Argument Requested** |

**DEFENDANT OREGON HEALTH AUTHORITY'S MOTION TO DISMISS, MOTION
FOR SUMMARY JUDGMENT, AND MOTION TO STRIKE**

**TABLE OF CONTENTS**

Introduction ........................................................................................................ 1

Background ......................................................................................................... 2

I.      The CCO Contract defines OHA's and FamilyCare's rights and
        obligations related to capitation rates. ............................................................. 2

II.     Procedural history ......................................................................................... 4

        A.      This Court initially dismissed FamilyCare's good and fair dealing
                claim. ...................................................................................................... 4

        B.      On reconsideration, this Court adhered to its prior ruling on alternative
                grounds. ................................................................................................... 5

        C.      FamilyCare appealed and the Ninth Circuit remanded the good faith
                claim for reconsideration. ...................................................................... 6

        D.      FamilyCare amended its good faith claim to assert two new theories. ................... 7

        E.      FamilyCare amended its good faith claim to allege an entirely new
                theory of damages. ................................................................................. 7

III.    According to FamilyCare's own allegations in its Fifth Amended
        Complaint, OHA set the 2017 and 2018 rates in compliance with the CCO
        Contract and state law. .................................................................................... 8

Legal Standard ................................................................................................... 9

Argument ............................................................................................................ 9

I.      The Court should dismiss FamilyCare's Third Claim with prejudice
        pursuant to Rule 12(b)(6) because it fails to state a cognizable legal theory. ........... 9

        A.      The duty of good faith does not apply to the CCO Contract's annual
                rate amendments. ................................................................................. 10

        B.      FamilyCare's objectively reasonable expectations were met as a matter
                of law because OHA gave FamilyCare notice of how rates would be
                determined and what rates were being offered. .................................... 12

        C.      FamilyCare cannot use the duty of good faith to impose new conditions
                on rate-setting that the parties did not agree to in the CCO Contract. .................. 14

        D.      FamilyCare's timeliness theory fails as a matter of law. ..................................... 17

II.     In the alternative, this Court should grant OHA summary judgment on its
        limitation of liability affirmative defense and dismiss FamilyCare's new
        damages theory in its Third Claim for Relief. ..................................................... 19

III.    This Court should strike Paragraph 78 of the Fifth Amended Complaint. .............. 21

CONCLUSION ................................................................................................. 22

## TABLE OF AUTHORITIES

**Cases**                                                                   **Pages**

*Allen v. FamilyCare, Inc.*,
    812 F. App'x 413 (9th Cir. 2020) ................................................................ passim

*Anderson v. Ashland Rental, Inc.*,
    122 OR. App. 508 (1993) ................................................................................ 20

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ....................................................................................... 19

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ......................................................................................... 9

*Balistreri v. Pacifica Police Department*,
    901 F.2d 696 (9th Cir. 1990) ........................................................................... 9

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ......................................................................................... 9

*Bennett v. Farmers Insurance Co. of Oregon*,
    332 Or. 138 (Or. 2001) ................................................................................... 11

*Best v. United States Nat. Bank of Oregon*,
    303 Or. 557 (1987) .................................................................................... 13, 14

*Branch v. Tunnell*,
    14 F.3d 449 (9th Cir. 1994) .............................................................................. 3

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ....................................................................................... 19

*Conley v. Gibson*,
    355 U.S. 41 (1957) ........................................................................................... 9

*Galbraith v. County of Santa Clara*,
    307 F.3d 1119 (9th Cir. 2002) .......................................................................... 3

*Intel Corp. v. Hartford Acc. & Indem. Co.*,
    952 F.2d 1551 (9th Cir. 1991) ................................................................... 19, 20

*J. Lilly, LLC v. Clearspan Fabric Structures Int'l, Inc.*,
    No. 3:18-CV-01104-HZ, 2020 WL 1855190 (D. Or. Apr. 13, 2020) ............. 20

*Matsushita Elec. Industrial Co. v. Zenith Radio*,
    475 U.S. 574 (1986) ....................................................................................... 20

*Mireskandari v. Daily Mail & Gen. Tr. PLC*,
    No. CV 12-02943 MMM(FFMx), 2013 WL 12129642 (C.D. Cal. July 31, 2013) ......... 21

*Nguyen v. United States*,
    792 F.2d 1500 (9th Cir. 1986) ........................................................................ 12

*Pacific First Bank v. New Morgan Park Corp.*,
    319 Or. 342 (1994) .................................................................................... 12, 15

**Page ii -    DEFENDANT OREGON HEALTH AUTHORITY'S MOTION TO DISMISS,
MOTION FOR SUMMARY JUDGMENT, AND MOTION TO STRIKE**

*Ramco, Inc. v. Pac. Ins. Co.*,
    249 Or. 666 (1968)................................................................................................ 20

*Richards v. Neilsen Freight Lines*,
    810 F.2d 898 (9th Cir. 1987) ............................................................................... 20

*Saroya v. Univ. of the Pac.*,
    5:20-CV-03196-EJD, 2020 WL 7013598 (N.D. Cal. Nov 27, 2020)............................ 21

*Tolbert v. First Nat. Bank of Oregon*,
    312 Or. 485 (1991)........................................................................................... passim

*United States Nat'l Bank of Oregon v. Boge*,
    311 Or. 550 (1991).............................................................................................. 15

*Uptown Heights Associates Ltd. Partnership v. Seafirst Corp.*,
    320 Or. 638 (1995).............................................................................................. 15

*W. Property Holdings, LLC v. Aequitas Capital Mgmt., Inc.*,
    284 Or. App. 316 (2017)...................................................................................... 15

*Welch v. U. S. Bancorp Realty & Mortgage Tr.*,
    286 Or. 673 (1979).............................................................................................. 20

*Yogman v. Parrott*,
    325 Or. 358 (1997)...................................................................................... 6, 10, 11

**Statutory Authorities**

ORS 42.230................................................................................................................ 15

ORS 414.590(2)(a)............................................................................................. 2, 10, 11

ORS 414.590(5) ..................................................................................................... 7, 8, 18

ORS 414.625 (1) ........................................................................................................ 16

ORS 414.652(4) ........................................................................................................ 18

**Rules and Regulations**

Fed. R. Civ. P. 12(b)(6)........................................................................................ 1, 3, 9

Fed. R. Civ. P. 12(f)............................................................................................... 1, 21

Fed. R. Civ. P. 56................................................................................................... 1

Fed. R. Civ. P. 56(a) .............................................................................................. 19

Fed. R. Civ. P. 56(c) .............................................................................................. 19

Fed. R. Civ. P. 56(e) .............................................................................................. 20

Fed. R. Evid. 407 ................................................................................................... 21

## LR 7-1 CERTIFICATION

Pursuant to LR 7-1(a)(1), counsel for Oregon Health Authority made a good faith effort to resolve this dispute by telephone and was unable to do so.

## MOTIONS

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Oregon Health Authority ("OHA") moves this Court to dismiss FamilyCare's Third Claim for Relief with prejudice.

In the alternative, pursuant to Rule 56 of the Federal Rules of Civil Procedure, OHA moves this Court for partial summary judgment on FamilyCare's Third Claim for Relief and OHA's Nineteenth Affirmative Defense.

Pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, OHA moves this Court to strike paragraph 78 of the Fifth Amended Complaint.

## MEMORANDUM IN SUPPORT OF MOTION
## INTRODUCTION

This Court has twice ruled that FamilyCare's good faith and fair dealing claim is meritless, and it should do so again. There are three independent reasons: First, the duty of good faith and fair dealing does not apply because OHA and FamilyCare formed a new rate amendment every year. OHA and FamilyCare were parties to a multi-year contract that governed FamilyCare's work as a coordinated care organization. According to the contract's terms, the parties were required to amend the contract every year to adopt new rates. Each amendment would fully disclose the rates. FamilyCare could choose to sign the amendment, continuing the underlying contract, or reject the amendment, automatically ending the contract. Because each contract amendment required the parties to have a meeting of the minds concerning disclosed rates, the duty of good faith and fair dealing does not apply.

Second, even if the Court rejects the first argument, FamilyCare's claim still fails because OHA met the parties' objectively reasonable contractual expectations. OHA and FamilyCare expressly agreed in the contract that OHA would adjust the rates each year, and

**Page 1 -    DEFENDANT OREGON HEALTH AUTHORITY'S MOTION TO DISMISS, MOTION FOR SUMMARY JUDGMENT, AND MOTION TO STRIKE**

OHA provided notice to FamilyCare before changing the rates.  Under long-standing Oregon Supreme Court precedent, the duty of good faith and fair dealing requires nothing more.

Third, even if the Court rejects the first two arguments, FamilyCare's claim still fails because OHA met the contract's two conditions on its discretion to set rates: the rates must be 1) actuarially set and 2) submitted to CMS for approval.  Neither the terms of the contract— express or implied—nor any state or federal law demand more.  FamilyCare's attempt to import a variety of other conditions on OHA's express discretion impermissibly varies the substantive terms of the contract.  The Court can, and should, dismiss FamilyCare's good faith claim, with prejudice, for any of these reasons.

The Court should also strike the newly-added Paragraph 78 in FamilyCare's Fifth Amended Complaint because it alleges subsequent remedial measures that would be inadmissible at trial.

## BACKGROUND

**I.      The CCO Contract defines OHA's and FamilyCare's rights and obligations related to capitation rates.**

OHA administers Oregon's Medicaid program.  In 2014, OHA and FamilyCare entered into a contract setting out the terms and conditions of FamilyCare's role as a coordinated care organization and OHA's obligation to pay capitation rates to FamilyCare for its services (the "CCO Contract").  Under Oregon law, contracts with coordinated care organizations shall be for a term of five years and may be amended once each year.  ORS 414.590(2)(a),(b).  Pursuant to the CCO Contract, OHA and FamilyCare agreed that OHA would propose annual rate amendments.  (2017 CCO Contract, Ex. C § 10 & Ex. D § 20(c) attached to Decl. of Anit Jindal in Support of Defendant Oregon Health Authority's Motion to Dismiss, Motion for Summary Judgment, and Motion to Strike ("Jindal Decl.") as Ex. 1.[1])  Those amendments set forth OHA's

---

[1] The complete CCO Contract runs nearly 300 pages.  For the convenience of the Court, Exhibit 1 to Mr. Jindal's Declaration is a condensed version of the 2017 CCO Contract, with relevant passages highlighted.  As discussed below, the complete 2014 CCO Contract and all the amendments are also included as exhibits to Mr. Jindal's declaration.

**Page 2 -    DEFENDANT OREGON HEALTH AUTHORITY'S MOTION TO DISMISS, MOTION FOR SUMMARY JUDGMENT, AND MOTION TO STRIKE**

annual adjustments to the capitation rates OHA paid FamilyCare.[2]  Between 2014 and 2017, OHA and FamilyCare entered 12 amendments, including rate amendments in 2015, 2016, and 2017.  The original 2014 CCO Contract and each of the amendments and restatements are attached to the Declaration of Anit Jindal and are referred to collectively as the "CCO Contract."[3]  (Jindal Decl. Exs 2-13.)  OHA also proposed to FamilyCare a rate amendment for the 2018 rates.  (Jindal Decl. Ex. 15 ("2018 Rate Amendment").)  FamilyCare refused to sign the 2018 rate amendment for the whole year, but signed a one-month rate amendment that ran through January 31, 2018.  (5th Am. Compl. (Dkt. 429) ¶¶ 70-71.)  The CCO Contract terminated at the end of that day.  (*Id.*)

The CCO Contract set out the terms for OHA's rate payments to FamilyCare.  (CCO Contract at Ex. C, Jindal Decl. Ex. 1.[4])  It provided that OHA would pay FamilyCare a per member, per month capitation rate: "OHA will pay Contractor a monthly CCO Payment for each Member enrolled. . . ."  (*Id.* § 1(a).)  The actual rates for that rate year were attached as an exhibit to the CCO Contract.  (*See, e.g.,* 2017 CCO Contract at 223-72, Jindal Decl. Ex. 13.)  The CCO Contract stated that the rates in the attachment were "actuarially set."  (2017 CCO Contract at Ex. C, § 6, Jindal Decl. Ex. 1 ("OHA has developed actuarially set Adjusted Per

---

[2] The amendments often restated the entire CCO Contract, making small changes to various other portions of the Contract.  But the vast majority of relevant terms in the CCO Contract, except for the rates, are identical year-to-year and so, where there are no differences, OHA will refer to the various versions of the Contract as the CCO Contract, without specifying the year.  In its Fifth Amended Complaint, FamilyCare refers to the CCO Contract as the "Contract."  The parties have also, at times, referred to the CCO Contract as the "five-year contract."  (*See, e.g.,* FamilyCare's Mot. for Recons. (Dkt. 108) at 1.)

[3] The Court may consider the CCO Contract on a motion to dismiss.  The CCO Contract is alleged throughout the Fifth Amended Complaint and forms the basis of FamilyCare's Third Claim for Relief.  "[D]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss."  *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).  Moreover, the Ninth Circuit Court of Appeals expressly stated that this Court should "consider the contract to which FamilyCare's claim applies."  *Allen v. FamilyCare, Inc.*, 812 F. App'x 413, 417 (9th Cir. 2020), *as amended* (May 7, 2020) (unpublished).

[4] The citations to the CCO Contract in this Memorandum refer to both exhibits to Mr. Jindal's declaration and exhibits to the CCO Contract itself.  Exhibit citations followed by a numeral refer to a document attached to Mr. Jindal's declaration.  Exhibit citations followed by a letter refer to an exhibit to the CCO Contract.

**Page 3 -    DEFENDANT OREGON HEALTH AUTHORITY'S MOTION TO DISMISS, MOTION FOR SUMMARY JUDGMENT, AND MOTION TO STRIKE**

Capita Costs (Capitation Rates) to reimburse plans for providing the Covered Services.")) The CCO Contract also provided that OHA would offer annual amendments with new, "actuarially certified" rates every year. (*Id.* at Ex. C, § 10 ("The parties intend to amend this Contract to supply Capitation Rates and an Actuarial Report for dates starting on [the first of each year]); *id.* at Ex. D § 20(c) ("Per capita rates are actuarially certified annually. Rates will be amended annually[.]")) The CCO Contract and the rates contained therein were "subject to approval by the US Department of Health and Human Services, Centers for Medicare and Medicaid Services (CMS)." (*Id.* § I.A.) The CCO Contract did not state that the rates OHA set would be reasonable, actuarially sound, adequate, or free of errors.

The capitation rates, as well as the various additional rates described in the CCO Contract, were expressly agreed to and were "the total consideration payable to [FamilyCare] for all work performed under th[e] Contract." (*Id.* at Ex. C, § 2.) If the parties did not execute an annual rate amendment, the CCO Contract terminated automatically: "If the parties have not entered into a Rate Amendment by the [first day of the year], then this Contract will terminate on the [first day of the year] automatically and without any requirement for notice between the parties." (*Id.* at Ex. C, § 10.) Additionally, OHA in "its sole discretion" could terminate the CCO Contract at any time "[w]ithout cause" by providing FamilyCare 90 days' notice. (*Id.* at Ex. D, § 10(e).)

## II.     Procedural history

### A.     This Court initially dismissed FamilyCare's good and fair dealing claim.

On April 27, 2021, FamilyCare filed its Fifth Amended Complaint. (Dkt. 429.) The Fifth Amended Complaint's Third Claim for Relief alleges that OHA breached the implied covenant of good faith and fair dealing in the CCO Contract. (5th Am. Compl. ¶¶ 105-10.) The Third Claim for Relief is based on and substantially similar to FamilyCare's Tenth Claim for Relief in its Third Amended Complaint, which also alleged that OHA breached the implied covenant of good faith and fair dealing in the CCO Contract. (3rd Am. Compl. ¶¶ 146-51 (Dkt. 1-1 at 547-48).)

OHA moved to dismiss the good faith claim in 2018, asserting that FamilyCare had no contractual right to actuarially sound rates. (Dkt. 21, 81.) In response, FamilyCare contended that Medicaid regulations created a reasonable contractual expectation that OHA would set actuarially sound rates. (Dkt. 39.)

This Court agreed with OHA and dismissed the claim. (Dkt. 105.) The Court stated that "nothing in the words of the Contract gives FamilyCare a reasonable expectation to actuarially sound rates." (*Id.* at 25.) The Court further explained that state and federal Medicaid laws were "not sufficient to give FamilyCare a reasonable *contractual* expectation in actuarially sound rates." (*Id.* at 26 (emphasis in original).) Elsewhere in its opinion, the Court noted that "[s]tate law may incorporate an actuarial soundness requirement, but it does that only to the extent that OHA must submit rates that CMS finds to be actuarially sound; it does not extend a right to actuarially sound rates to [FamilyCare]." (*Id.* at 13.)

## B.    On reconsideration, this Court adhered to its prior ruling on alternative grounds.

FamilyCare moved for reconsideration. (Dkt. 108.) The Court granted the motion to reconsider its ruling but declined to alter its prior order dismissing FamilyCare's good faith claim with prejudice. (Dkt. 183.) On reconsideration, the Court adopted an additional rationale for dismissing FamilyCare's claim. The Court interpreted the CCO Contract and decided that because it was subject to yearly rate amendments, it was not a single contract with variable capitation rates, but "a series of contracts in which at each year the parties agree or don't agree on express terms." (Dkt. 187 at 22.) As such, the Court concluded that the duty of good faith and fair dealing did not apply to the CCO Contract at all because FamilyCare's rates were fully disclosed in yearly rate amendments, to which the parties could agree or not agree. "[T]hese annual rate offers," the Court explained, "amount to new contract formation every year and therefore make inapplicable the doctrine of the implied covenant of good faith and fair dealing[.]" (Dkt. 187 at 66-67.)

In reaching this ruling, however, the Court did not reject its reasoning in its prior order. On the contrary, the Court noted that "the actual ruling on claim 10 previously, before the

motion to reconsider, *was correct* as far as it went, in that I don't believe that the statutes in play create any express contractual obligation of the sort that we discussed at oral argument the last time." (*Id.* at 65 (emphasis added).)

### C. FamilyCare appealed and the Ninth Circuit remanded the good faith claim for reconsideration.

FamilyCare appealed. (Dkt. 351.) On appeal, FamilyCare argued that this Court erred in determining that the CCO Contract was a series of contracts. (FamilyCare's Opening Appellate Br. at 41-59.) FamilyCare contended that the question of whether the CCO Contract was a single five-year contract or a series of contracts required this Court to engage the contractual interpretation framework established in *Yogman v. Parrott*, 937 P.2d 1019, 1021 (Or. 1997). (*Id.* at 42.) But, according to FamilyCare, this Court failed to apply that framework. FamilyCare also argued that the Court could not have properly applied the framework at all because the whole CCO Contract was not part of the record at the time the Court ruled. Thus, the Court "could not have analyzed the text of the [CCO] Contract to determine whether the parties intended to enter into a five-year contract with annual rate amendments or whether the parties intended each rate amendment to create a new contract." (*Id.* at 47.) FamilyCare further argued that the only sections of the CCO Contract that were before the Court were portions of the 2017 restated CCO Contract, not the original 2014 CCO Contract. (*Id.* at 42.)

The Ninth Circuit vacated this Court's order and remanded. The Ninth Circuit ruled that this Court erred in failing to apply *Yogman* and other Oregon appellate case law to determine whether the CCO Contract was a five-year contract or a series of contracts. *Allen v. FamilyCare, Inc.*, 812 F. App'x 413, 417 (9th Cir. 2020), *as amended* (May 7, 2020) (unpublished). The Ninth Circuit also ruled that this Court did not "interpret the contract alleged in the operative complaint—the 2014 contract, as amended and extended—as a whole." *Id.* It remanded the claim to this Court "to allow the district court to consider the contract to which FamilyCare's claim applies." *Id.*

**Page 6 -   DEFENDANT OREGON HEALTH AUTHORITY'S MOTION TO DISMISS, MOTION FOR SUMMARY JUDGMENT, AND MOTION TO STRIKE**

The Ninth Circuit did not address or rule on this Court's original order dismissing FamilyCare's good faith claim, which held that FamilyCare did not have "a reasonable *contractual* expectation in actuarially sound rates." (Dkt. 105 at 25 (emphasis in original).) In fact, the Ninth Circuit did not consider the duty of good faith and fair dealing at all; its ruling dealt only with whether this Court correctly interpreted the CCO Contract to be a five-year contract or a series of contracts.

But, although the Ninth Circuit did not address the duty of good faith and fair dealing itself, the Ninth Circuit lent support to this Court's ruling "that the statutes in play" do not "create any express contractual obligation." (Dkt. 187 at 65.) The Ninth Circuit agreed with this Court that "neither Oregon nor federal law required OHA to do more than seek and obtain CMS approval of the 2017 and 2018 rates." *Allen*, 812 F. App'x at 417. Thus, even if, on remand, this Court were to conclude that the CCO Contract is a five-year contract, and not a series of contracts, this Court's original ruling would nonetheless still apply. Accordingly, if this Court continues to agree that its "actual ruling on claim 10 previously, before the motion to reconsider, *was correct*," (dkt. 187 at 65 (emphasis added)), it should, once again, dismiss FamilyCare's good faith claim.

## D.    FamilyCare amended its good faith claim to assert two new theories.

FamilyCare adds two new theories to its good faith claim in its Fifth Amended Complaint. First, FamilyCare now alleges that the 2018 rate amendment was untimely because OHA failed to provide the 60 days required by ORS 414.590(5). (5th Am. Compl. ¶ 108.) Second, FamilyCare now alleges that the duty of good faith required OHA to offer it rate amendments that were "adequate" to "cover FamilyCare's operating expenses." (*Id.* ¶¶ 107, 109.)

## E.    FamilyCare amended its good faith claim to allege an entirely new theory of damages.

Adding new theories of liability was not the only change FamilyCare made to its good faith claim. It also added a new theory of damages and nearly *tripled* the amount of taxpayer Medicaid funds it is demanding from OHA. (5th Am. Compl. ¶¶ 109-10.) Despite the fact that

**Page 7 -    DEFENDANT OREGON HEALTH AUTHORITY'S MOTION TO DISMISS,
           MOTION FOR SUMMARY JUDGMENT, AND MOTION TO STRIKE**

the CCO Contract unambiguously prohibits consequential damages, (CCO Contract, Ex. D, § 11, Jindal Decl. Ex. 1), FamilyCare contends that OHA's rates "forced" it to "begin shutting its Medicaid business down." (5th Am. Compl. ¶ 109.) Even though FamilyCare no longer administers Medicaid services to Oregonians, FamilyCare seeks a staggering $125,000,0000 in consequential damages. (*Id.* ¶ 110.)

### III.    According to FamilyCare's own allegations in its Fifth Amended Complaint, OHA set the 2017 and 2018 rates in compliance with the CCO Contract and state law.

Under ORS 414.590(5), OHA must give "a coordinated care organization at least 60 days' advance notice of any amendments [OHA] proposes to existing contracts between [OHA] and the coordinated care organization." On November 1, 2016, more than 60 days before the first day of 2017, by which an amendment had to be approved to avoid automatic termination, OHA sent FamilyCare its proposed amendment for the 2017 rate year. (5th Am. Compl. ¶ 34.) (Although FamilyCare alleges that the version sent on November 1, 2016 "omitted several attachments," FamilyCare does not assert that it suffered any damages flowing from the alleged omissions.) Optumas, OHA's outside actuary firm, certified OHA's proposed 2017 rates. (*Id.* ¶ 33.) FamilyCare signed the amendment on December 30, 2016, but reserved its rights to contest the rates. (*Id.* ¶¶ 38-39; 2017 CCO Contract, Jindal Decl. Ex. 13.) CMS subsequently approved the rates. (3/27/17 CMS rate approval letter attached as Ex. 14 to Jindal Decl.)

The following year, on October 31, 2017, more than 60 days before the first day of 2018, OHA sent FamilyCare its proposed amendment for the 2018 rate year. (5th Am. Compl. ¶ 59; 2018 Rate Amendment, Jindal Decl. Ex. 15.) As for the 2017 rates, Optumas, OHA's outside actuary, developed the 2018 rates. (*Id.* ¶ 62.) OHA also hired a second, independent outside actuary, Lewis & Ellis, to review the proposed 2018 rates, and Lewis & Ellis concluded that Optumas "appeared to have followed generally accepted actuarial principles in the development of the rates[.]" (*Id.*) In December 2017, OHA informed FamilyCare that it would prepare an addendum to the 2018 rate amendment that would potentially increase FamilyCare's rates in the 2018 rate amendment, but that addendum would not be complete until after January 1, 2018. (*Id.* ¶¶ 63, 72.) The addendum was not part of the 2018 rate amendment, and FamilyCare chose not

**Page 8 -    DEFENDANT OREGON HEALTH AUTHORITY'S MOTION TO DISMISS, MOTION FOR SUMMARY JUDGMENT, AND MOTION TO STRIKE**

to sign the 2018 rate amendment. (*Id.* ¶ 77.) Apart from close-out activities, FamilyCare ceased operating as a coordinated care organization at the end of January 2018. (*Id.*)

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), dismissal of a complaint is appropriate based on either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* The allegations must be sufficient to "'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (ellipses removed)).

## ARGUMENT

**I.    The Court should dismiss FamilyCare's Third Claim with prejudice pursuant to Rule 12(b)(6) because it fails to state a cognizable legal theory.**

FamilyCare's good faith and fair dealing claim fails for three, independent reasons. First, the Court should dismiss the claim because the duty of good faith does not apply to contract formation. As provided in the Ninth Circuit's remand, the Court should interpret the CCO Contract according to Oregon law and determine that it was a five-year contract that expressly provided for OHA to propose annual rate amendments. FamilyCare could, at its choice, accept the annual rate amendment, forming a new, amended five-year contract, or reject the amendment, automatically ending the contract. Because the rate amendments disclosed the rates and required a meeting of the minds, the duty of good faith did not apply.

Second, even if the Court concludes that the CCO Contract did not involve new contract formation each year, the Court should dismiss FamilyCare's claim because FamilyCare expressly agreed that OHA would, in its discretion, set new rates each year and OHA provided notice to FamilyCare before doing so.

Page 9 -   DEFENDANT OREGON HEALTH AUTHORITY'S MOTION TO DISMISS, MOTION FOR SUMMARY JUDGMENT, AND MOTION TO STRIKE

Third, even if the Court rejects the first two reasons, the Court should dismiss FamilyCare's claim because OHA met the contract's two conditions on its discretion: It actuarially set the rates and submitted them to CMS for approval. The CCO Contracts express and implied terms do not require anything more. FamilyCare's attempt to import a variety of other conditions on OHA's express discretion impermissibly varies the substantive terms of the contract. As this Court originally held, "nothing in the words of the Contract gives FamilyCare a reasonable expectation to actuarially sound rates" and state and federal Medicaid laws are "not sufficient to give FamilyCare a reasonable *contractual* expectation in actuarially sound rates." (Dkt. 105 at 25-26 (emphasis in original).)

> **A.    The duty of good faith does not apply to the CCO Contract's annual rate amendments.**

The duty of good faith and fair dealing "does not extend to the *formation* of the contract." *Tolbert v. First Nat. Bank of Oregon*, 312 Or. 485, 492 (1991) (emphasis in original). The CCO Contract was a five-year contract, but it provided for OHA to offer FamilyCare annual rate amendments with new rates for the following year. Because FamilyCare could choose to accept those rates and amend the CCO Contract, or reject the rates and end the Contract, the rate amendments involved new contract formation so that the duty of good faith did not apply.

On remand, the Ninth Circuit suggested that this Court should apply Oregon law to interpret the CCO Contract "as amended and extended . . . as a whole." *Allen*, 812 F. App'x at 417. To interpret a contract under Oregon law, this Court follows three steps. First, "the court examines the text of the disputed provision, in the context of the document as a whole. If the provision is clear, the analysis ends." *Yogman v. Parrott*, 325 Or. 358, 361 (1997). Second, the court examines "extrinsic evidence of the contracting parties' intent." *Id.* at 363. Third, "the court relies on appropriate maxims of construction." *Id.* at 364.

The CCO Contract as a whole unambiguously required OHA to propose rate amendments each year, which FamilyCare could accept or reject. OHA and FamilyCare entered the CCO Contract in 2014. (2014 CCO Contract, § I.A, Jindal Decl. Ex. 2.) Oregon law provided that the Contract should be for a term of five years, with the option of amendment once

each year.  ORS 414.590(2)(a),(b).  The law did not prohibit either party from terminating the Contract in fewer than five years and both OHA and FamilyCare expressly agreed that they could terminate the CCO Contract at their "sole discretion" and "without cause" on sufficient notice.  (*Id.* Ex. D, §§ 10(e)(1)(a), 10(e)(5)).  The CCO Contract expressly provided that it would be effective from January 1, 2014 until December 31, 2018, but it also expressly required that "[r]ates will be amended annually."  (*Id.* Ex. D, § 20(d); *see also* Ex. C § 11 ("The parties intend to amend this Contract to supply Capitation Rates and an Actuarial Report for dates starting on the Rate Amendment Date.").  Each rate amendment set forth the rates OHA would pay for the renewal year.  (*Id.* Ex. C, § 1.a.)  If the parties did not agree on a rate amendment, the CCO Contract would automatically terminate: "If the parties have not entered into a Rate Amendment by the Rate Amendment Date, then this Contract will terminate on the Rate Amendment Date automatically and without any requirement for notice between the parties."  (*Id.*, Ex. C § 11.)  Thus, the clear text of the CCO Contract, in the context of the entire agreement, demonstrates that each year FamilyCare was provided an opportunity to agree to amend the Contract to accept new rates or allow the Contract to terminate.  Because those terms are clear, there is no need to consider the remaining two steps in the *Yogman* analysis.

The process for forming a contract amendment is no different from the process of contract formation itself: Both require a meeting of the minds and consideration.  *Bennett v. Farmers Ins. Co. of Oregon*, 332 Or. 138, 148 (Or. 2001) (contract amendment requires mutual assent).  OHA disclosed its proposed rate amendments to FamilyCare more than 60 days before the beginning of each new rate year.  (5th Am. Compl. ¶ 34 (2017 rate amendment), ¶ 59 (2018 rate amendment).)  The proposed rate amendments fully disclosed OHA's rates for the upcoming rate year.  (*See, e.g.,* 2018 Rate Amendment, Jindal Decl. Ex. 15.)  FamilyCare then had a choice whether to sign the rate amendment or reject it, which would terminate the CCO Contract at the end of the current year.  Because the rates were fully disclosed and FamilyCare could, at its own choice, agree to the amendment or not, the duty of good faith and fair dealing does not apply.  "In the context of contract formation, when there is an agreement after full disclosure, the [contractor's] expectations are irrelevant."  *Tolbert*, 312 Or. at 492-93.

**Page 11 - DEFENDANT OREGON HEALTH AUTHORITY'S MOTION TO DISMISS, MOTION FOR SUMMARY JUDGMENT, AND MOTION TO STRIKE**

After applying Oregon law and considering the CCO Contract "as a whole," as instructed by the Ninth Circuit, the Court should adhere to its original opinion and order and dismiss FamilyCare's Third Claim for Relief because the duty of good faith and fair dealing does not extend to the CCO Contract's annual rate amendments.

### B.    FamilyCare's objectively reasonable expectations were met as a matter of law because OHA gave FamilyCare notice of how rates would be determined and what rates were being offered.

A party's objectively reasonable expectations are met as a matter of law when one party exercises discretion to set a price term and the other party receives adequate notice of the term. Here, OHA had authority to set capitation rates and gave FamilyCare notice of that authority and notice of the amended rates. For that reason, even if the good-faith duty applies to the CCO Contract and its rate amendments, this Court should nonetheless dismiss FamilyCare's Third Claim for Relief.[5]

"The duty of good faith operates to effectuate the reasonable expectations of the parties as determined under the terms of their contract." *Pac. First Bank v. New Morgan Park Corp.*, 319 Or. 342, 354 (1994) (emphasis omitted). But "it is only the *objectively* reasonable expectations of parties that will be examined in determining whether the obligation of good faith has been met." *Tolbert*, 312 Or. at 494 (emphasis added). In cases like one, as a matter of law, when "(1) the parties agree to (and their contract provides for) a unilateral exercise of discretion regarding changes in one of the contract terms, and (2) the discretion is exercised after prior notice" their objectively reasonable expectations have been met. *Id*.

*Tolbert* illustrates these principles. In that case, a class of plaintiffs challenged two types of non-sufficient fund (NSF) fees charged by a bank when depositors overdrew their

---

[5]  OHA presented this argument to the Ninth Circuit Court of Appeals as an alternative reason for the Court of Appeals to affirm this Court's ruling. The Court of Appeals did not address the argument, and instead remanded to this Court "to allow the district court to consider the contract to which FamilyCare's claim applies." *Allen*, 812 F. App'x at 417. Consequently, this Court may consider the argument here. Although "the mandate of an appellate court forecloses the lower court from reconsidering matters determined in the appellate court, it leaves to the district court any issue not expressly or impliedly disposed of on appeal." *Nguyen v. United States*, 792 F.2d 1500, 1502 (9th Cir. 1986) (quotation marks and citation omitted).

accounts. *Id.* at 490. The first type of fee comprised the initial NSF fees at the time that depositors opened their accounts; the second type comprised revised NSF fees that the Bank set periodically during the course of depositors' accounts. *Id.* at 488, 493 (describing initial fees and revised fees). The bank informed plaintiffs of the amount of the initial fees before they opened their accounts and they had the option of declining to open the account. *Id*. at 491. The bank also informed plaintiffs that the revised fee would be governed by "the rules, regulations, and customs of this Bank." *Id.* at 490. The bank advised them that "charges are subject to change at the discretion" of the bank. *Id.* at 491. And the bank provided them periodic notices of changes to their checking accounts, including the revised fees. *Id.*

The plaintiffs contended that the Bank violated the good-faith duty in setting the initial fees and the revised fees too high. About the initial fees, the Oregon Supreme Court held that if the depositors were made aware of them, and agreed to them, the good-faith duty did not apply. *Id.* at 492; (*see* § I.A.1, *supra*). About the revised fees, the Supreme Court explained that, as a matter of law, the parties' reasonable expectations have been met "when (1) the parties agree to (and their contract provides for) a unilateral exercise of discretion regarding changes in one of the contract terms, and (2) the discretion is exercised after prior notice." *Id.* at 494. Applying that rule to the facts, the Supreme Court reasoned that the depositors had no reason to think that the bank would set fees at a particular amount—that is, neither the contract nor anything else created that expectation. *Id.* at 495. Rather, the only expectation was that the Bank would set the revised fees in its discretion and give some notice of those fees to depositors. *Id.* If depositors wanted to keep their accounts, despite those fees, they could. If the fees were too high, the depositors could close their accounts. But nothing about the contract created a different expectation about how fees would be set.

Because the plaintiffs in *Tolbert* had notice of the fees and agreed to a contract in which the fees would be reset from time to time in the bank's discretion, *Tolbert* differed from *Best v. U.S. Nat. Bank of Oregon*, 303 Or. 557 (1987), a companion case. In *Best*, the plaintiffs also challenged NSF fees. *Tolbert* 312 Or. at 492 (describing *Best*). But the plaintiffs in *Best* did not know that NSF fees would apply at all—that is, they learned of the fees only after they had

**Page 13 - DEFENDANT OREGON HEALTH AUTHORITY'S MOTION TO DISMISS, MOTION FOR SUMMARY JUDGMENT, AND MOTION TO STRIKE**

triggered them. *Id.* (describing the fees in *Best* as "unknown" to the depositors); *Best*, 303 Or. at 561-562. That was the crucial difference between *Best* and *Tolbert*. In *Tolbert*, the bank told the depositors the amount of the initial NSF fees and that the bank would revise them in its discretion. The bank gave them notice of the revisions. And the depositors decided to keep their accounts open under those terms. *Tolbert*, 312 Or. at 492. The only objectively reasonable expectations of the plaintiffs were therefore met.

This court should draw the same conclusion here. The CCO Contract unambiguously gives OHA unilateral discretion to set amended capitation rates. (CCO Contract, Ex. C, Jindal Decl. Ex. 1.) The contract also makes clear that the capitation rates depend on CMS approval; if CMS did not approve the capitation rates, the rates would be adjusted to reflect CMS's revisions. (*Id.*, § I.A.) Although the parties intended to amend the contract to incorporate the amended capitation rates, the parties agreed that the contract would be terminated if the parties did not enter into a rate amendment. (*Id.*, Ex. C § 11.) For those reasons, as a matter of law, FamilyCare's only objectively reasonable expectations were that OHA would actuarially set the rates each year, provide notice of the amended rates to FamilyCare, submit them to CMS for approval, and pay those approved rates to FamilyCare unless FamilyCare decided not to enter into the contractual amendment. Those expectations were met. This Court should dismiss FamilyCare's Third Claim for Relief.

C.      **FamilyCare cannot use the duty of good faith to impose new conditions on rate-setting that the parties did not agree to in the CCO Contract.**

The duty of good faith cannot vary the substantive terms of a contract. The CCO Contract provides that OHA has discretion to set rates subject to only two conditions: the rates must be 1) actuarily set and 2) submitted to CMS for approval. This Court should, therefore, reject FamilyCare's allegation that the CCO Contract's duty of good faith also imposes a variety of additional conditions on OHA's discretion. Because OHA properly exercised its discretion according to the terms of the Contract, this Court should dismiss FamilyCare's Third Claim for Relief.

**Page 14 - DEFENDANT OREGON HEALTH AUTHORITY'S MOTION TO DISMISS, MOTION FOR SUMMARY JUDGMENT, AND MOTION TO STRIKE**

As stated above, "the duty of good faith operates to effectuate the reasonable expectations of the parties as determined under the terms of their contract." *Pac. First Bank*, 319 Or. at 354 (emphasis omitted). The "reasonable contractual expectations of the parties are shown[] by the unambiguous terms of the contract." *Uptown Heights Assocs. Ltd. P'ship v. Seafirst Corp.*, 320 Or. 638, 647-48 (1995) (quotation marks and citation omitted); *W. Prop. Holdings, LLC v. Aequitas Capital Mgmt., Inc.*, 284 Or. App. 316, 325 (2017) ("[T]he reasonable contractual expectations of the parties are shown by the express terms of the contract."). Where "the parties freely bargained for, and agreed on, certain conditions" on a party's exercise of discretion under the contract, a court cannot import "other conditions" into the contract under the guise of good faith. *See Pac. First Bank*, 319 Or. at 354 (1994); *United States Nat'l Bank of Oregon v. Boge*, 311 Or. 550, 567 (1991) ("The obligation of good faith does not vary the substantive terms of the bargain[.]"). "In the construction of an instrument, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted[.]" ORS 42.230.

In its Third Claim for Relief, FamilyCare alleges that it had an "objectively reasonable expectation, based on the Contract and applicable law, that OHA would present annual Rate Amendments that were timely, reasonable, unbiased, actuarially sound, adequate, and free of errors in underlying data and methodology." (5th Am. Compl. ¶ 107.) But FamilyCare does not identify *any* express terms of the CCO Contract that show these alleged "objectively reasonable expectations." None do. FamilyCare's alleged expectations are broadly-phrased terms that the parties did not bargain for and did not agree to. The express terms of the CCO Contract demonstrate that FamilyCare's alleged expectations, if accepted, would vary the substantive terms of the bargain.

The CCO Contract expressly provided:

- "OHA will pay Contractor a monthly CCO Payment for each Member enrolled under the Contract[.]" (2017 CCO Contract, Ex. C, § 1.a., Jindal Decl. Ex. 1.)

- "This Contract, and the CCO Payment Rates contained herein, is subject to approval by the US Department of Health and Human

**Page 15 - DEFENDANT OREGON HEALTH AUTHORITY'S MOTION TO DISMISS, MOTION FOR SUMMARY JUDGMENT, AND MOTION TO STRIKE**

Services, Centers for Medicare and Medicaid Services (CMS).  In the event CMS fails to approve the proposed 2017 CCO Payment Rates prior to the Effective Date, OHA shall pay Contractor at the proposed CCO Payment Rates, subject to adjustment upon OHA's receipt of CMS approval or modification of the proposed CCO Payment Rates." (*Id.* § I.A.)

- "The consideration described in this Exhibit C is the total consideration payable to Contractor for all work performed under this Contract."  (*Id.* Ex. C, § 2.)

- "OHA has developed actuarially set Adjusted Per Capita Costs (Capitation Rates) to reimburse plans for providing the Covered Services.  A full description of the methodology used to calculate per capita costs may be found in the [Actuarial Report]. . .  The Actuarial Report is not part of this Contract, and except where specifically referred to herein, may not be used in the interpretation or construction of this Contract."  (*Id.* Ex. C, § 6.)

- "Per capita rates are actuarially certified annually. Rates will be amended annually along with required language changes, as allowed for in ORS 414.625 (1) and Exhibit C, Section 10."  (*Id.* Ex. D, § 20.c.)

These terms establish that OHA and FamilyCare expressly agreed that OHA would pay FamilyCare rates that would change in an amendment every year and that development of the rates would be subject to only two conditions: they would be actuarially set and certified and submitted to CMS for approval.  Furthermore, the parties expressly agreed that the actuary's report describing its rate development methodology and certification "is not part of this Contract."  (*Id.* Ex. C, § 6.)

OHA and FamilyCare did not agree that the rates would be "reasonable, unbiased, actuarially sound, adequate and free from errors"—those terms are not only absent from the CCO Contract, they are disclaimed by the parties' agreement that the expressly defined payment terms in the contract represent the "the total consideration payable to" FamilyCare.  (*Id.* Ex. C, § 2.)  FamilyCare's attempt to import terms into the CCO Contract that the parties did not bargain for and did not agree to would, if permitted, vary the substantive terms of the CCO contract.

**Page 16 - DEFENDANT OREGON HEALTH AUTHORITY'S MOTION TO DISMISS, MOTION FOR SUMMARY JUDGMENT, AND MOTION TO STRIKE**

FamilyCare also alleges that the terms it attempts to import into the Contract are implied by "applicable law." (5th Am. Compl. ¶107.) But FamilyCare does not identify what "applicable law." That is because there is none. To the extent FamilyCare is referring to federal Medicaid regulations governing the State's obligations to submit rates to CMS, both this Court and the Ninth Circuit have firmly rejected FamilyCare's contention that those regulations establish any rights for FamilyCare. The regulations themselves provide that CMS is the arbiter of whether rates are "actuarially sound": "[c]apitation rates for [CCOs] . . . must be reviewed and approved *by CMS* as actuarially sound[,]" 42. C.F.R. § 438.4(b) (emphasis added). Accordingly, this Court ruled that state and federal Medicaid laws are "not sufficient to give FamilyCare a reasonable *contractual* expectation in actuarially sound rates." (Dkt. 105 at 26 (emphasis in original).) This Court then reaffirmed that ruling when addressing FamilyCare's Motion for Reconsideration, stating "I don't believe that the statutes in play create any express contractual obligation[.]" (Dkt. 187 at 65.) And the Ninth Circuit, in addressing FamilyCare's Administrative Procedures Act claims, emphasized that "neither Oregon nor federal law required OHA to do more than seek and obtain CMS approval of the 2017 and 2018 rates." *Allen*, 812 F. App'x at 417. There is no "applicable law" that created an "objectively reasonable contractual expectation" that FamilyCare would receive any more in rates than what the CCO Contract and federal Medicaid law expressly provide: The rates would be subject to CMS approval.

FamilyCare's alleged expectation that the CCO Contract impliedly imposed a variety of conditions of OHA's rate-setting is not tethered to the Contract itself or any "applicable law." FamilyCare's only reasonable contractual expectation, according to the unambiguous terms of the Contract, was that OHA would actuarially set rates and submit them to CMS for approval. FamilyCare does not allege that OHA failed to meet that expectation. The Court should dismiss FamilyCare's Third Claim for Relief.

**D.    FamilyCare's timeliness theory fails as a matter of law.**

FamilyCare's Fifth Amended Complaint adds a new allegation to its good faith and fair dealing claim. FamilyCare alleges that the implied covenant of good faith and fair dealing

**Page 17 - DEFENDANT OREGON HEALTH AUTHORITY'S MOTION TO DISMISS, MOTION FOR SUMMARY JUDGMENT, AND MOTION TO STRIKE**

required OHA to provide "timely" rate amendments, according to the provisions in ORS 414.590(5).[6] (5th Am. Compl. ¶ 108.) That statute provides that OHA "must give a coordinated care organization at least 60 days' advance notice of any amendments the authority proposes to existing contracts." ORS 414.590(5). FamilyCare's claim fails because OHA complied with ORS 414.590(5) according to FamilyCare's own allegations: FamilyCare alleges that it received the 2018 rate amendment on October 31, 2017. (5th Am. Compl. ¶ 59.) October 31, 2017 was more than 60 days prior to the amendment's January 1, 2018 effective date, and so the amendment was timely as a matter of law. It makes no difference that OHA contemplated later adding an addendum that would potentially increase FamilyCare's rates. (5th Am. Compl. ¶¶ 63, 72.) The addendum was not part of the 2018 rate amendment, and FamilyCare chose not to sign a full-year 2018 rate amendment. (*Id.* ¶ 77.) The fact that OHA may have later proposed different rates in a subsequent amendment makes no difference to the fact that OHA provided FamilyCare the statutory notice for the only amendment that was on the table.

Furthermore, Director Allen did not, as FamilyCare alleges, "move the deadline for signing [the rate amendment] up by ten days." (5th Am. Compl. ¶ 68.) The Ninth Circuit already rejected this theory, which FamilyCare originally pleaded in its Section 1983 claim. According to the Ninth Circuit, Director Allen did nothing more than issue "essentially empty threats during a negotiation[.]" *Allen.*, 812 F. App'x at 419. Furthermore, the effective date of the proposed 2018 rate amendment—January 1, 2018—is set forth in the amendment. (2018 Rate Amendment, § I.A., Jindal Decl. Ex. 15.) FamilyCare does not allege—nor could it—that Director Allen changed that date to make the amendment effective earlier. FamilyCare also does not allege that it could not have chosen to sign the amendment up until January 1, 2018. ORS 414.590(5) requires nothing more than "60 days' advance notice." FamilyCare received that notice, regardless of FamilyCare's allegations about what Director Allen said.

---

[6] In its Complaint, FamilyCare alleges that OHA's actions violated ORS 414.652(4). (5th Am. Compl. ¶ 108.) There is no such statute presently. Chapter 414 was reorganized and re-numbered in 2019 and the provision that FamilyCare is referring to in its Complaint is now codified at ORS 414.590(5).

**II.**    **In the alternative, this Court should grant OHA summary judgment on its limitation of liability affirmative defense and dismiss FamilyCare's new damages theory in its Third Claim for Relief.**

If this Court denies OHA's motion to dismiss FamilyCare's Third Claim in its entirety, it should grant OHA partial summary judgment dismissing FamilyCare's new damages theory. In the Fifth Amended Complaint, FamilyCare alleges, for the first time, that OHA's supposed breaches of the duty of good faith forced it to shut down:

> FamilyCare has suffered substantial and irreparable harm from the 2017 and 2018 Amendments. The global budgets OHA approved for FamilyCare were insufficient to cover FamilyCare's operating expenses, resulting in financial losses for FamilyCare. After incurring a loss in 2016, the 2017 Amendment was again insufficient to cover FamilyCare's operating expenses for 2017 and further depleted FamilyCare's reserves. As a result, and because the rates offered in the full 2018 rate amendment presented to FamilyCare on December 20, 2017 were insufficient to allow FamilyCare to continue operating into the future, FamilyCare was forced to reject the full 2018 Amendment and begin shutting its Medicaid business down while operating under a one-month contract.

(5th Am. Compl. ¶ 109.) Based on that new allegation, FamilyCare nearly triples its damages demand from approximately $54 million to "at least $125,000,000." (*Id.* ¶ 110.)

Summary judgment dismissing this claim for consequential damages is appropriate. "A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). A party is entitled to summary judgment where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). A party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) (quoting Fed. R. Civ. P. 56(c)). "If the moving party meets its initial burden of showing 'the absence of a material and triable issue of fact,' 'the burden then moves to the opposing party, who must present significant probative evidence tending to support its claim or defense.'" *Intel*

*Corp. v. Hartford Acc. & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991) (quoting *Richards v. Neilsen Freight Lines*, 810 F.2d 898, 902 (9th Cir. 1987)).  The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Industrial Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986) (citations omitted).  Rather, it must come forward with sufficient evidence demonstrating to the Court that there are genuine issues of material fact to be decided at trial.  Fed. R. Civ. P. 56(e).  If "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587.

OHA has pleaded an affirmative defense that "OHA's liabilities on all claims are limited to the extent of the limitation of liability provisions set forth in" the CCO Contract.  (Answer (Dkt. 115) ¶ 190; Nineteenth Affirmative Defense.)  "A limitation of liability provision is enforceable under Oregon law if the provision (1) was bargained for; (2) was called to the other party's attention; or (3) is conspicuous."  *J. Lilly, LLC v. Clearspan Fabric Structures Int'l, Inc.*, No. 3:18-CV-01104-HZ, 2020 WL 1855190, at *4 (D. Or. Apr. 13, 2020) (citing *Anderson v. Ashland Rental, Inc.*, 122 Or. App. 508, 510 (1993)).  The documentary evidence, set forth in the CCO Contract, permits only one conclusion: The CCO Contract's limitation of liabilities provision is unambiguous and conspicuous.  In bold, capitalized letters, it states: "**NEITHER PARTY SHALL BE LIABLE FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES ARISING OUT OF OR RELATED TO THIS CONTRACT**."  (2017 CCO Contract, Ex. D. § 11.a., Jindal Decl. Ex. 1) Enterprise value damages, lost profits, and loss of business reputation are consequential damages.  *Ramco, Inc. v. Pac. Ins. Co.*, 249 Or. 666, 674-75 (1968) (holding that lost business reputation is consequential damage); *Welch v. U. S. Bancorp Realty & Mortgage Tr.*, 286 Or. 673, 703 (1979) (holding that lost profits are consequential damages).  Consequently, the CCO Contract's limitation of liability is enforceable and, FamilyCare cannot recover consequential damages.[7]

---

[7] The same contractual limitation applies to FamilyCare's other claims.

**Page 20 - DEFENDANT OREGON HEALTH AUTHORITY'S MOTION TO DISMISS, MOTION FOR SUMMARY JUDGMENT, AND MOTION TO STRIKE**

Because there is no genuine dispute of fact, the Court should grant OHA summary judgment on its affirmative defense for limitation of liability and bar FamilyCare's new claims for consequential damages in its Third Claim for Relief.

### III.    This Court should strike Paragraph 78 of the Fifth Amended Complaint.

This Court should strike Paragraph 78 because it alleges subsequent remedial measures designed to improve OHA's rate-setting methodology.  Rule 12(f) allows this Court to strike any "impertinent" or "immaterial" matters from a pleading.  Under this standard, the Court can strike allegations from a pleading where the facts pleaded would be inadmissible at trial.  *See Saroya v. Univ. of the Pac.*, 5:20-CV-03196-EJD, 2020 WL 7013598, at *8-9 (N.D. Cal. Nov 27, 2020) (granting motion to strike where defendant argued that allegations alleged subsequent remedial measures).

Paragraph 78 of the Fifth Amendment Complaint alleges that OHA undertook measures subsequent to FamilyCare's supposed injuries that would have made those supposed injuries less likely:

> Shortly after OHA forced FamilyCare from the market, and continuing through ratesetting in 2019 and subsequent years, OHA revised the rate-setting process to address many of the issues previously raised by FamilyCare. These changes would have resulted in disproportionately large increases in FamilyCare's rates had FamilyCare not been forced to shut down in January 2018 and would have enabled FamilyCare to remain in business for additional years.

Federal Rule of Evidence 407 states "[w]hen measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove . . .  negligence [or] culpable conduct. . . . "  Here, evidence of OHA's subsequent rate-setting changes would be inadmissible at trial and thus allegations about those changes should be stricken.

The Court should also strike paragraph 78 because it is irrelevant.  *Mireskandari v. Daily Mail & Gen. Tr. PLC*, No. CV 12-02943 MMM (FFMx), 2013 WL 12129642, at *4 (C.D. Cal. July 31, 2013) ("The court can strike irrelevant allegations as 'immaterial' under Rule 12(f)."). What rates OHA set in 2019 and 2020—when FamilyCare did not participate as a CCO—is

**Page 21 - DEFENDANT OREGON HEALTH AUTHORITY'S MOTION TO DISMISS, MOTION FOR SUMMARY JUDGMENT, AND MOTION TO STRIKE**

irrelevant to FamilyCare's claims about the 2017 and 2018 rates. And FamilyCare's allegation that it would have received more in rates in 2019 and 2020 is an irrelevant hypothetical that can never be proved or disproved because FamilyCare closed its Medicaid business before the 2019 and subsequent rates were fully developed and released. The Court should strike paragraph 78.

## CONCLUSION

For the foregoing reasons, this Court should grant OHA's motions and dismiss FamilyCare's Third Claim with prejudice and strike Paragraph 78 of the Fifth Amended Complaint.

DATED this 18th day of May, 2021.

> ELLEN ROSENBLUM
> ATTORNEY GENERAL
> FOR THE STATE OF OREGON
>
> By:    *s/ Harry B. Wilson*
>       David B. Markowitz, OSB #742046
>       DavidMarkowitz@MarkowitzHerbold.com
>       Matthew A. Levin, OSB #003054
>       MattLevin@MarkowitzHerbold.com
>       Harry B. Wilson, OSB #077214
>       HarryWilson@MarkowitzHerbold.com
>       Laura Salerno Owens, OSB #076230
>       LauraSalerno@MarkowitzHerbold.com
>
> > *Special Assistant Attorneys General for Defendants Oregon Health Authority, an agency of the State of Oregon, and Patrick Allen in his official capacity as director of the Oregon Health Authority*
>
>       Carla A. Scott, OSB #054725
>       carla.a.scott@doj.state.or.us
>
> > *Of Attorney for Defendants Oregon Health Authority, an agency of the State of Oregon, and Patrick Allen in his official capacity as director of the Oregon Health Authority*

1042421

**Page 22 - DEFENDANT OREGON HEALTH AUTHORITY'S MOTION TO DISMISS, MOTION FOR SUMMARY JUDGMENT, AND MOTION TO STRIKE**

## CERTIFICATE OF COMPLIANCE WITH L.R. 7-2(b)(2)

I certify that this brief complies with the applicable word-count limitation under L.R. 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains 8,160 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of authorities, signature block, and any certificates of counsel.

DATED this 18th day of May, 2021.

*s/ Harry B. Wilson*
Harry B. Wilson, OSB #077214
Attorney for Oregon Health Authority

**CERTIFICATE OF SERVICE**