**Stephen F. English**, OSB No. 730843
SEnglish@perkinscoie.com
**Thomas R. Johnson**, OSB No. 010645
TRJohnson@perkinscoie.com
**Heidee Stoller**, OSB No. 072835
HStoller@perkinscoie.com
**Matthew J. Mertens**, OSB No. 146288
MMertens@perkinscoie.com
**Sasha A. Petrova**, OSB No. 154008
SPetrova@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Telephone: 503.727.2000
Facsimile: 503.727.2222

**Matthew Gordon**, *pro hac vice*
MGordon@perkinscoie.com
**David B. Robbins**, OSB No. 070630
DRobbins@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000

Attorneys for Plaintiff *FamilyCare, Inc.*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **FAMILYCARE, INC.**, an Oregon non-profit corporation,<br><br>              Plaintiff,<br><br>     v.<br><br>**OREGON HEALTH AUTHORITY**, an agency of the State of Oregon, and **LYNNE SAXTON**,<br><br>              Defendants. | Case No. 6:18−cv−00296−MO<br><br>**FAMILYCARE, INC.'S MOTION FOR DISCOVERY**<br><br>Oral Argument and Expedited Hearing Requested |

FAMILYCARE, INC.'S MOTION FOR DISCOVERY

152520598.4

**LOCAL RULE 7-1 CERTIFICATION**

Prior to filing this Motion, counsel for FamilyCare conferred with counsel for OHA and Lynne Saxton. OHA agrees that supplemental discovery is appropriate but opposes the particular discovery sought by this Motion and opposes an expedited hearing. Ms. Saxton opposes the discovery sought but not an expedited hearing.

**MOTION**

Pursuant to Federal Rules of Civil Procedure 26(e) and 16(b)(4), FamilyCare requests that this Court order that discovery may be had into certain aspects of OHA's 2019 and 2020 rate-setting, including rate increases for Health Share and changes to rate-setting.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

After refusing for years to address errors and problems with rate setting and repeatedly rebuffing FamilyCare's request for rates on par with its competitor, Health Share, OHA abruptly reversed course shortly after FamilyCare announced it would close. With FamilyCare out of the way, OHA significantly raised Health Share's rates, belatedly addressed errors FamilyCare had identified, and changed rate-setting in ways that FamilyCare had advocated. The net result of these changes was that OHA paid Health Share tens of millions more to cover medical care for former FamilyCare members than it had offered to FamilyCare. Had FamilyCare been provided similar rates to care for those same members, FamilyCare would likely have received more than enough revenue to close the deficit OHA imposed on FamilyCare through low rates.

These changes and rate increases are highly relevant because they directly undermine OHA's and Saxton's primary defenses, including that they did not target FamilyCare through biased and punitive rate-setting, that FamilyCare's rates were lower than Health Share's because FamilyCare's members were healthier, and that FamilyCare's "business decisions" were to blame for its demise. Put simply, these changes call into question the veracity of OHA's and Saxton's assertions about why FamilyCare received less than all other CCOs and bear directly on OHA's

1-    FAMILYCARE, INC.'S MOTION FOR DISCOVERY

152520598.4

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

and Saxton's credibility: *If* FamilyCare's rates were lower only because its members were healthier, *if* the low rates did not cause FamilyCare's financial difficulties, and *if* OHA's rate-setting process was not riddled with errors, then why would OHA boost those rates right after FamilyCare closed and agree to pay Health Share $82 million more to care for the same members in 2019? And why did OHA finally address the problems FamilyCare identified *after* FamilyCare no longer stood to benefit? The answers to these and other related questions are key to the claims alleged in this case, and FamilyCare should have the opportunity to conduct discovery into them.

## II.    BACKGROUND

At the April 5, 2021 status conference, this Court lifted the stay and entered a new trial management order setting trial for April 25, 2022. ECF 421, 422. The parties raised several issues with the Court, including an amended complaint and supplemental or additional discovery. OHA and Ms. Saxton consented to the filing of FamilyCare's Fifth Amended Complaint, and FamilyCare filed it on April 27. ECF 427, 429. That pleading added allegations about OHA's changes and increases to rate-setting after FamilyCare closed its doors. *See*, *e.g.*, ECF 429 ¶ 78 ("[A]fter OHA forced FamilyCare from the market, and continuing through rate-setting in 2019 and subsequent years, OHA revised the rate-setting process to address many of the issues previously raised by FamilyCare. These changes would have resulted in disproportionately large increases in FamilyCare's rates had FamilyCare not been forced to shut down in January 2018 and would have enabled FamilyCare to remain in business for additional years."). Although the parties subsequently agreed to supplemental discovery, OHA objected to discovery into 2019 or 2020 rate-setting.

### A.    OHA's 2019 and 2020 rate setting undermines OHA's defenses.

Up until the time it was forced out of business, FamilyCare repeatedly publicly criticized OHA's ratemaking processes and told OHA that its low rates threatened FamilyCare's continued viability because they did not match the risk and disease burden, especially for FamilyCare's

2-    FAMILYCARE, INC.'S MOTION FOR
DISCOVERY

152520598.4

Medicaid expansion (ACA) members. FamilyCare pointed out, repeatedly, that its rates were well below Health Share's and asked specifically to receive the same rates as Health Share. Declaration of William Murray in support of FamilyCare, Inc.'s Motion for Discovery ("Murray Decl.") ¶ 5. OHA refused to change FamilyCare's rates and continues to this day to insist that FamilyCare was not targeted, that its rates were lower than Health Share's because FamilyCare's members were healthier, and that FamilyCare's financial difficulties resulted from FamilyCare's own business decisions.[1] OHA also claimed it could not provide FamilyCare with higher rates because OHA was required to hold the growth of Medicaid costs to 3.4% or lower.[2]

In the years prior to its closure, FamilyCare repeatedly informed OHA that its rate-setting process was biased and replete with errors that could easily be remedied. *Id.* ¶ 6. For example, FamilyCare alerted OHA that its process of pruning Medicaid expansion members as a result of OHA's Cover Oregon fiasco resulted in disproportionally healthier people leaving Medicaid, and, consequently, the rates for the Medicaid expansion population did not match the risk of members who remained in Medicaid and were inadequate to cover their health care expenses. *Id.* ¶ 8. FamilyCare also notified OHA about errors with OHA's system for tracking newborns as they aged into different Categories of Aid. *Id.* ¶ 7. Both of these errors affected FamilyCare more than other CCOs because it had disproportionately more newborns and Medicaid expansion members, but OHA refused to address these and other concerns. *Id.* ¶¶ 7-8.

But almost immediately after FamilyCare announced it could not accept the 2018 rates, OHA changed course, raising rates for FamilyCare's former members for the very reasons previously identified by FamilyCare. In February 2018, OHA submitted a rate amendment that

---

[1] *See, e.g.*, Murray Decl. ¶ 5, Ex. A at 3 (OHA press release) ("'This is a simple case of fairness. The rates OHA pays to CCOs are matched to the risk of the population served,' said Saxton. 'The state is committed to cost containment measures and it would not be fair to give FamilyCare a preferential rate because of their business decisions.'").

[2] *See, e.g.*, Murray Decl. ¶ 14, Ex. F (Patrick Allen's December 21, 2017 letter to FamilyCare providers), Ex. G (OHA press releases regarding 2017 and 2018 rates).

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

retroactively raised 2018 rates by correcting the Category of Aid problems and by implementing a partial Reimbursement Adjustment that began to account for the disenrollment errors stemming from the Cover Oregon debacle. *Id.* ¶¶ 7-8, Ex. C. Because FamilyCare was in business for only one month in 2018, those rate increases inured almost exclusively to the benefit of Health Share, which received an additional boost in rates that year to manage care for the approximately 100,000 former FamilyCare members who had transitioned to Health Share.

OHA finalized 2019 rates by October 1, 2018. *Id.* ¶ 9. Without FamilyCare around, OHA significantly raised Health Share's rates, particularly for the groups that predominated among FamilyCare's membership—newborns and the Medicaid expansion population—and who were most affected by the Category of Aid and disenrollment errors. *Id.*, Ex. D. OHA increased rates it paid Health Share for FamilyCare's former members by another 12.5% overall, and by 16.7% for the ACA rate groups, part of which was attributable to OHA's further Reimbursement Adjustment for the disenrollment errors. *Id.* ¶ 9. These rate increases far surpassed OHA's supposed 3.4% rate of growth limit, even though OHA claimed that it could not have raised FamilyCare's rates as a result of this limit. *Id.* ¶ 14, Exs. F, G. In fact, OHA no longer appeared concerned with that limit, blithely announcing in a press release that the aggregate 2019 rates Medicaid costs exceeded 3.4%. *Id.* Ex. H. Health Share's 2019 rates for FamilyCare's former members were 16.1% higher than the 2018 rates offered to FamilyCare, and the rates for the expansion populations were 21.2% higher. *Id.* ¶ 10. As a result, OHA paid Health Share approximately $82.5 million more to care for FamilyCare's former members than it offered FamilyCare in December 2017.[3] *Id.*

**B.      OHA's reimbursement policy targeted primary care while FamilyCare was a CCO but changed shortly after FamilyCare closed its doors.**

In July 2016—shortly after signing the settlement agreement with FamilyCare over the 2015 and 2016 rates—OHA implemented a novel "Reimbursement Policy" that expressly targeted

---

[3] The 2019 rates were based on 2017 data. Murray Decl. ¶ 9. Thus, Health Share's higher 2019 rates were based on costs incurred by FamilyCare to pay for its members' care in 2017.

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

FamilyCare's higher rates for primary care providers (despite previously lauding them). *Id.* ¶ 11. The 2017 version of the Reimbursement Policy cut primary care expenses from FamilyCare's base data, thereby lowering its rates by millions of dollars. *Id.* FamilyCare objected, arguing among other things that OHA was wrong to focus on primary care reimbursement while ignoring hospital costs, but OHA maintained that cutting FamilyCare's rates was necessary to contain the rate of growth. OHA again slashed FamilyCare's base data to cut its 2018 rates. *Id.*

OHA reversed course shortly after FamilyCare closed its doors. In its 2019 rate development, OHA utilized instead a "Base Data Policy," in which OHA stated that reimbursements for professional services such as primary care in 2017—when FamilyCare was still a CCO and was still reimbursing primary care at higher levels—were *not* a major driver of cost growth. *Id.* ¶ 12, Ex. D. And in developing the 2020 rates, OHA completely jettisoned its analysis of primary care or professional reimbursement in favor of another "Base Data Policy" that did not cut base data and therefore did not penalize CCOs that paid higher rates for primary care. *Id.* ¶ 13, Ex. E. As a result, the rate increases to Health Share after FamilyCare's departure far exceeded OHA's supposed 3.4% rate of growth which OHA used to suppress FamilyCare's rates.

### C.    OHA insisted on using a regional rate development methodology that harmed FamilyCare and subsequently switched methodologies.

In 2015, OHA switched its rate-setting methodology from a statewide rate model to regional rate development. *Id.* ¶ 15. Not coincidentally, FamilyCare's rates dropped 10.9% under the new approach to rate development. *Id.* FamilyCare expressed its concerns that regional rate development diverted rate revenue from the Tri-County region to rural areas and resulted in rates that were too low for the Tri-County region, and advocated for a return to the statewide approach. *Id.* OHA acknowledged a statewide approach "would shift revenues to the Portland metro area" but insisted "[r]ates set on a regional basis are essential to maintaining access to Medicaid services." *Id.*, Ex. I.

5-    FAMILYCARE, INC.'S MOTION FOR
      DISCOVERY

152520598.4

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

But after FamilyCare closed its doors, OHA changed to a statewide rate-development methodology in 2020, *id.* ¶ 16, calling into question how "essential" the regional approach was.[4]

## III.    ARGUMENT

OHA refuses to provide discovery related to 2019 or 2020 rate-setting, even though that information is both within the scope of existing discovery requests and highly relevant to the claims and defenses in this case. This Court should order OHA to produce this supplemental discovery or in the alternative reopen discovery for this limited purpose.

### A.    FamilyCare's requested discovery is within the scope of existing discovery requests and is highly relevant to key issues in this case.

A party has an independent duty to supplement previous disclosures or responses if the party "learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). Rule 26(e)(1)(B) also allows the court to order a party to supplement its production independent of whether the production was incomplete. *See Remien v. EMC Corp.*, No. 04 C 3727, 2008 WL 821887, at *4 (N.D. Ill. Mar. 26, 2008) (so holding).

OHA does not dispute it has an obligation to supplement its prior document productions and interrogatory responses, nor that such obligation includes producing responsive documents created in the last three years. And the parties are working together to fashion narrower search protocols to reduce the burden of further discovery. But OHA has arbitrarily decided it will not produce any documents related to 2019 or 2020 rate-setting.

The limited discovery FamilyCare seeks into aspects of 2019 and 2020 rate-setting is responsive to existing discovery requests, *see e.g.*, Declaration of Matt Gordon in support of

---

[4] Information about the 2019 and 2020 rates and rate-setting methodology comes from the rate certifications posted on OHA's website, which contain high-level descriptions of methodologies and the resulting rates for the CCOs but lack specific detail. *See* Murray Decl. ¶ 4.

6-    FAMILYCARE, INC.'S MOTION FOR
      DISCOVERY

152520598.4

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

FamilyCare, Inc's Motion for Discovery, Exs. 1-2 (RFP Nos. RFP 113, 122, 123, 124, 132, 144, & 145), and concerns topics directly raised in FamilyCare's allegations, *see* FAC ¶ 78. It is therefore squarely within the scope of OHA's supplemental discovery obligations and the allegations in the operative complaint. Moreover, the information sought is highly relevant to key issues in this case, including whether OHA's and Saxton's proffered excuses for FamilyCare's low 2017 and 2018 rates were pretextual. As discussed above, while FamilyCare was in business, OHA consistently blamed FamilyCare for its rate shortfalls, ignored the errors and problems with rate setting FamilyCare identified, and pointed to factors such as the 3.4% rate of growth to justify limiting FamilyCare's rates. Yet after FamilyCare was gone, OHA blew past the 3.4% growth rate, addressed problems with rate setting, and awarded Health Share tens of millions more to care FamilyCare's former members, who OHA previously said were healthier and thus merited lower rates. OHA also made significant changes to its methodology, to both the Reimbursement Policy and the regional rate approach OHA had previously claimed were necessary. Discovery is needed to test the credibility of OHA's defenses.

### B.    FRE 407 does not apply.

OHA indicated in conferral that it opposed discovery based on Federal Rule of Evidence 407's bar on evidence of subsequent remedial measures to prove culpability. That argument fails for at least three reasons: (1) FRE 407 is a rule of *admissibility*, not *discovery*; (2) OHA's conduct falls outside the scope of the rule and undermines the policy rationale for exclusion; and (3) in the alternative, OHA's conduct falls within well-established exceptions to the rule.

Initially, application of FRE 407 is premature because it is a rule of *admissibility*, not *discovery*. *See, e.g.*, *Pershing Pac. W., LLC v. Marine Max, Inc.*, No. 10–cv–1345–L (DHB), 2013 WL 941617, at *5 (S.D. Cal. Mar. 11, 2013); *Bernat v. City of Cal. City*, 2010 WL 4008361 (E.D.Cal. Oct.12, 2010) (rejecting discovery objection based on Rule 407, and stating "though the evidence discovered may not, ultimately, be admitted at trial, this is no basis for refusing to

7-    FAMILYCARE, INC.'S MOTION FOR
DISCOVERY

152520598.4

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

disclose it during discovery"). Any issue of admissibility is premature because neither FamilyCare nor this Court has had an opportunity to *review* that evidence to consider whether it would fall under FRE 407, and whether exceptions to the rule apply. 12 Fed. Proc., L. Ed. § 33:225 (March 2021 Update) (observing that "[t]he admissibility of evidence of subsequent remedial measures offered for particular purposes cannot be determined in advance of trial").

In any event, FRE 407 does not apply here. The rule bars evidence of subsequent measures that would have made the "earlier injury or harm less likely to occur" to prove culpable conduct by a defendant and is heavily grounded in public policy: "The purpose of Rule 407 is to ensure that prospective defendants will not forego safety improvements because they fear that these improvements will be used against them as evidence of their liability." *In re Aircrash in Bali, Indonesia*, 871 F.2d 812, 816 (9th Cir. 1989). That is not at issue here. FamilyCare has alleged that OHA and Saxton purposefully and in bad faith retaliated through punitive rate setting and provided pretextual reasons for cutting or refusing to increase FamilyCare's rates. Allowing OHA and Saxton to exclude such evidence would turn the purpose of FRE 407 on its head by barring discovery regarding bad faith.

The discovery sought also falls within well-established exceptions to FRE 407, to show, for example, that changes OHA made to rates after FamilyCare went out of business were measures that Defendants *could have* made previously but did not make in bad faith. *Boeing Airplane Co. v. Brown*, 291 F.2d 310, 314-15 (9th Cir. 1961) (design changes to an airplane after a crash were admissible to show "it would have been feasible and practicable to incorporate those features" before the crash); *Michaels v. Taco Bell Corp.*, No. 3:10-cv-1051-AC, 2012 WL 13054260, at *11 (D. Or. Oct. 29, 2012). The rate setting is also admissible for impeachment purposes, which is especially pertinent here given OHA's and Saxton's excuses for FamilyCare's low rates and for failure to implement changes or correct errors.

8-    FAMILYCARE, INC.'S MOTION FOR
      DISCOVERY

152520598.4

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

C.      **In the alternative, good cause exists to reopen discovery for the limited purpose of obtaining information about 2019 and 2020 rate setting.**

If, in the alternative, this Court views discovery into 2019 and 2020 rate setting as outside the scope of existing discovery, then good cause exists to re-open discovery for this limited purpose. Courts in this circuit consider six factors when ruling on such motions:

> 1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence.

*City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1066 (9th Cir. 2017) (citation omitted).

First, trial is nearly one year away, and, therefore, the limited discovery will not further delay the proceedings. *See Estep v. Forever 21 Retail, Inc.*, No. 3:16-CV-02214-SB, 2019 WL 430884, at *2 (D. Or. Feb. 4, 2019).

Second, although OHA opposes the request to reopen discovery, OHA consented to the filing of FamilyCare's Fifth Amended Complaint, which added factual allegations regarding rate-setting in 2019 and 2020. *See*, *e.g.*, ¶ 78. OHA cannot now argue that FamilyCare does not have a right to discovery on issues that are squarely within the scope of the operative complaint.[5]

Third, OHA would not be prejudiced by FamilyCare's request for limited discovery because it will not delay resolution of the case. FamilyCare seeks only limited discovery into certain aspects of 2019 and 2020 rate setting regarding the development of Health Share's rates and changes to the rate-setting methodology, and does not seek further depositions. *See Boyington v. Percheron Field Servs., LLC*, No. 3:14-CV-90, 2017 WL 5633171, at *3 (W.D. Pa. Nov. 21, 2017) (granting motion where plaintiff sought limited document and written discovery, the cost of which was "significantly lower than that of re-depositions").

---

[5] Although OHA reserved the right to challenge FamilyCare's claims, *see* ECF 427, OHA made no objection to the addition of allegations on which FamilyCare now seeks discovery.

9-      FAMILYCARE, INC.'S MOTION FOR
        DISCOVERY

152520598.4

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

The fourth and fifth factors also favor FamilyCare, as the requested discovery concerns events that occurred after OHA last pulled documents for production, and FamilyCare has acted diligently by raising this issue at the status conference on the day the stay was lifted and by conferring with OHA and filing this motion shortly after filing the Fifth Amended Complaint.

Finally, as discussed above, the discovery is highly relevant to FamilyCare's claims and OHA's defenses. FamilyCare's allegations put the 2019 and 2020 rate setting squarely at issue. The significant increases in Health Share's rates for FamilyCare's former members starting immediately after FamilyCare's departure call into question OHA's defense that FamilyCare's low rates were necessary and that FamilyCare's closure was the result of bad decisions on the part of FamilyCare. Indeed, the question why OHA set FamilyCare's rates so low is not merely "central to the resolution" of this case—it is *the* central question for the jury to answer. *See, e.g., Carlos v. Patenaude & Felix, A.P.C.*, No. 3:14-cv-00921-MO, 2019 WL 7630943 at *1-2 (D. Or. Aug. 14, 2019) (Mosman, J.) (granting motion to reopen discovery on remand to permit third-party deposition because the information sought was "central to the resolution" of the case).

These factors therefore weigh in favor of granting FamilyCare's request. *See Estep*, 2019 WL 430884, at *2 (granting motion to reopen discovery because trial was five months away, moving party acted diligently upon being granted permission to file amended complaint, and the requested discovery was relevant to claims in the amended complaint).[6]

## IV.    CONCLUSION

For the foregoing reasons, FamilyCare's motion should be granted.

---

[6] In the alternative, if FamilyCare is not allowed to conduct discovery into 2019 and 2020 rate setting, then OHA should be precluded from presenting at trial any evidence or testimony about those topics beyond the information contained in the publicly available rate certifications.

10-    FAMILYCARE, INC.'S MOTION FOR
       DISCOVERY

152520598.4

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

DATED: May 18, 2021

**PERKINS COIE LLP**

By: */s/ Matthew Gordon*

    **Stephen F. English**, OSB No. 730843
    SEnglish@perkinscoie.com
    **Thomas R. Johnson**, OSB No. 010645
    TRJohnson@perkinscoie.com
    **Heidee Stoller**, OSB No. 072835
    HStoller@perkinscoie.com
    **Matthew J. Mertens**, OSB No. 146288
    MMertens@perkinscoie.com
    **Sasha A. Petrova**, OSB No. 154008
    SPetrova@perkinscoie.com
    PERKINS COIE LLP
    1120 N.W. Couch Street, 10th Floor
    Portland, OR 97209-4128
    Telephone: 503.727.2000
    Facsimile: 503.727.2222

    **Matthew Gordon**, *pro hac vice*
    MGordon@perkinscoie.com
    **David B. Robbins**, OSB No. 070630
    DRobbins@perkinscoie.com
    PERKINS COIE LLP
    1201 Third Avenue, Suite 4900
    Seattle, WA 98101-3099
    Telephone: 206.359.8000
    Facsimile: 206.359.9000

Attorneys for Plaintiff *FamilyCare, Inc.*

11-     FAMILYCARE, INC.'S MOTION FOR DISCOVERY

152520598.4