**Stephen F. English**, OSB No. 730843
SEnglish@perkinscoie.com
**Thomas R. Johnson**, OSB No. 010645
TRJohnson@perkinscoie.com
**Heidee Stoller**, OSB No. 072835
HStoller@perkinscoie.com
**Matthew J. Mertens**, OSB No. 146288
MMertens@perkinscoie.com
**Sasha A. Petrova**, OSB No. 154008
SPetrova@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Telephone:  503.727.2000
Facsimile:  503.727.2222

**Matthew Gordon**, *pro hac vice*
MGordon@perkinscoie.com
**David B. Robbins**, OSB No. 070630
DRobbins@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone:  206.359.8000
Facsimile:  206.359.9000

Attorneys for Plaintiff *FamilyCare, Inc.*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **FAMILYCARE, INC.**, an Oregon non-profit corporation,<br><br>            Plaintiff,<br><br>     v.<br><br>**OREGON HEALTH AUTHORITY**, an agency of the State of Oregon, and **LYNNE SAXTON**,<br><br>            Defendants. | Case No. 6:18−cv−00296−MO<br><br>**DECLARATION OF WILLIAM H. MURRAY IN SUPPORT OF FAMILYCARE, INC.'S MOTION FOR DISCOVERY** |

DECLARATION OF WILLIAM H. MURRAY IN
SUPPORT OF FAMILYCARE, INC.'S MOTION FOR
DISCOVERY

152531398.1

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

I, William H. Murray, declare as follows:

1.    I am the Chief Operating Officer of FamilyCare, Inc., ("FamilyCare"), plaintiff in the above-captioned case.  I have personal knowledge of the matters stated herein and am competent to testify thereto.

2.    In my role as FamilyCare's Chief Operating Officer, I have been responsible for leading the day-to-day operations of the organization, including overseeing reporting and monitoring of the organizational performance, staying abreast of changes in the healthcare industry, and adjusting business operations as required.  I was also directly involved in preparing and submitting the specific financial and operational data and information that FamilyCare, as a Coordinated Care Organization ("CCO"), was required to submit to the Oregon Health Authority ("OHA"), including the data and information used by OHA and its outside actuary, Optumas, in the rate-setting process.  I was directly involved in communicating with OHA about those submissions and the rate-setting process in general.  I participated in nearly all meetings and exchanges of information with OHA that relate to this case.  I have reviewed and analyzed information received from OHA as part of the discovery in this case.

3.    Before joining FamilyCare in 2013, I was Chief Executive Officer with another Oregon Medicaid managed care organization for 10 years.  I have also been active in Oregon's administrative and legislative process in the healthcare field, including serving on the Oregon Health Policy Board's Health Incentives and Outcomes Committee that helped develop Oregon's CCO model that is in effect today.  I have over 30 years of leadership, business management, information systems, finance, and regulatory experience.  I began my career as a certified public accountant (CPA) with an international accounting firm and subsequently ran my own healthcare-focused CPA practice for seven years.

4.    In my role at FamilyCare and another Oregon Medicaid managed care organization, and in reviewing documents produced in discovery in this litigation, I gained specific knowledge

1-    DECLARATION OF WILLIAM H. MURRAY IN SUPPORT OF FAMILYCARE, INC.'S MOTION FOR DISCOVERY

152531398.1

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

of Medicaid capitation rate-setting in Oregon from 2001 through 2018. Because FamilyCare was forced to close its doors in early 2018, I have not had access to rate-setting materials for 2019 and 2020 other than the limited documents that OHA has chosen to make publicly available. Those publicly available documents show that OHA significantly raised Health Share's rates in 2019, especially for the rate groups that predominated at FamilyCare, and made certain other changes to rate-setting methodology as discussed further below.

5.    During the time that FamilyCare was a CCO, I and others at FamilyCare repeatedly informed OHA that its rates were too low and did not reflect increased risk and disease burden, especially for the Medicaid expansion members, and were causing FamilyCare to run significant deficits and imperiling its ability to continue as a CCO. I also repeatedly pointed out to OHA that FamilyCare's rates were well below Health Share's and asked specifically to receive the same rates as Health Share. OHA refused to change FamilyCare's rates and maintained that FamilyCare's rates were lower than Health Share's because FamilyCare's members were healthier and that FamilyCare's financial difficulties resulted from FamilyCare's own business decisions. For example, in comments to the media on March 1, 2017, then-director Lynne Saxton stated "This is a simple case of fairness. The rates OHA pays to CCOs are matched to the risk of the population served. . . . The state is committed to cost containment measures and it would not be fair to give FamilyCare a preferential rate because of their business decisions." Attached as Exhibit A is a true and correct copy of a March 1, 2017 State of Reform article including OHA's press release reflecting Ms. Saxton's statement (highlighting added). And in a press release dated April 11, 2017, OHA asserted that "nothing in FamilyCare's complaint supports its claim" and again suggested that FamilyCare's "business decisions" were to blame for its negative operating margins. Attached as Exhibit B is a true and correct copy of that press release (highlighting added).

6.    During the time FamilyCare was a CCO, my review of FamilyCare's data and my involvement in the rate-setting process revealed that OHA/Optumas used inconsistent data and

2-    DECLARATION OF WILLIAM H. MURRAY IN SUPPORT OF FAMILYCARE, INC.'S MOTION FOR DISCOVERY

152531398.1

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

made numerous errors and unsupported manipulations in the rate-setting process. On multiple occasions, I and others at FamilyCare informed OHA of errors and problems with the rate-setting, but OHA did not address problems I identified until after 2017.

7.     As one example, I notified OHA about certain errors with OHA's system for tracking newborns as they aged into different Categories of Aid. Because FamilyCare had a higher proportion of newborns among its population, these errors also had a disproportionately negative effect on FamilyCare's rates. In late 2017, OHA finally admitted that this problem existed but, despite my previous notifications to them dating back to 2016, claimed they had just learned of it. And OHA did not begin to adjust the rates to correct for these errors until after it had forced FamilyCare to shut its doors. OHA did not address the problem until after FamilyCare ceased being a CCO, via the February 2018 rate amendment and in 2019 rate-setting. OHA did not compensate FamilyCare for the lower rates and decreased revenue these errors caused prior to 2018.

8.     As another example, I notified OHA that its "Redetermination" process, which disenrolled certain Medicaid expansion members who were mistakenly added to Medicaid as a result of OHA's Cover Oregon fiasco, was resulting in disproportionally healthier people leaving Medicaid, and, as a result, the rates for the Medicaid expansion population did not match the risk of the disproportionately less healthy members who remained in Medicaid and were inadequate to cover their health care expenses. Because FamilyCare had a higher proportion of Medicaid expansion members among its population, these errors had a disproportionately negative effect on FamilyCare's rates. As with the Category of Aid errors discussed in the previous paragraph, OHA issued a rate amendment in February 2018 that began to address the Redetermination problem, and, in developing 2019 rates, OHA further addressed the error by applying a "Redetermination Factor" to increase 2019 rates, but OHA did not retroactively compensate FamilyCare for the

3-     DECLARATION OF WILLIAM H. MURRAY IN
       SUPPORT OF FAMILYCARE, INC.'S MOTION
       FOR DISCOVERY
152531398.1

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

negative effect the errors had on its rates in previous years. Attached as Exhibit C is a true and correct copy of the first page of the February 2018 Rate Amendment (highlighting added).

9.     OHA finalized 2019 rates by October 1, 2018. According to the 2019 rate certification, Optumas and OHA used 2017 CCO financial and encounter information as the base data to set the 2019 rates. Attached as Exhibit D is a true and correct copy of the relevant portions of the 2019 Rate Certification (highlighting added). That rate certification also explains that OHA and Optumas applied "Redetermination Factors" to the 2017 base data to account for the fact that disenrolled members were healthier and less costly. Application of the Redetermination Factors resulted in an increase in the base data and in the resulting rates, especially for the rate groups for Medicaid expansion (ACA) individuals and children, groups that were overrepresented among FamilyCare's members. As reflected in the 2019 rate certification, the adjustments to the base data for ACA rate groups in the Tri-County region were significantly higher than in other regions. And at least partially as a result of the Redetermination Factors, Health Share received a significant increase in its 2019 rates, particularly for the groups that predominated among FamilyCare's membership—newborns and the Medicaid expansion population—who were most affected by the Category of Aid and disenrollment errors. I calculated that OHA increased rates it paid Health Share for FamilyCare's former members by another 12.5% overall, and by 16.7% for the ACA rate groups, as compared to the amended 2018 rates reflected in the February 2018 rate amendment.

10.     I calculated that Health Share's 2019 rates for FamilyCare's former members were 16.1% higher than the 2018 rates offered to FamilyCare in December 2017, and the rates for the expansion populations were 21.2% higher. As a result, in 2019, OHA paid Health Share approximately $82.5 million more to care for FamilyCare's former members than it had offered FamilyCare in December 2017.

11.     In July 2016, OHA implemented a new "Reimbursement Policy" for 2017 rate setting that expressly targeted FamilyCare's higher rates for primary care providers despite

4-     DECLARATION OF WILLIAM H. MURRAY IN SUPPORT OF FAMILYCARE, INC.'S MOTION FOR DISCOVERY

152531398.1

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

previously praising FamilyCare for this practice. The 2017 version of the Reimbursement Policy cut primary care expenses from FamilyCare's base data, thereby lowering its rates by millions of dollars. FamilyCare objected to this policy, arguing among other things that OHA was wrong to focus on primary care reimbursement while ignoring hospital costs, but OHA maintained that cutting FamilyCare's rates was necessary to contain the rate of growth and meet the 3.4% growth target. OHA perpetuated the Reimbursement Policy in 2018 rate development, again cutting FamilyCare's base data and its rates.

12. In its 2019 rate development, OHA utilized a "Base Data Policy," in which OHA stated that 2017 reimbursements for professional services such as primary care in 2017—when FamilyCare was still a CCO and was still reimbursing primary care at higher levels—"were not major drivers of cost growth." Attached as Exhibit D is a true and correct copy of the relevant portion of the 2019 Rate Certification (highlighting added).

13. In developing the 2020 rates, OHA used a different "Base Data Policy" that did not cut base data at all and did not penalize CCOs that paid higher rates for primary care. Attached as Exhibit E is a true and correct copy of relevant portions of the 2020 Rate Certification, showing this change (highlighting added).

14. OHA previously justified its 2017 and 2018 Reimbursement Policies, which it used to cut FamilyCare's base data and resulting rates, by pointing to a supposed requirement to keep the rate of growth of Medicaid costs at or below 3.4%. For example, in a December 21, 2017 letter to FamilyCare providers, OHA Director Patrick Allen asserted that "Oregon's rates must live up to our promise to the federal government and Oregon taxpayers to hold the growth of Medicaid costs to 3.4 percent or less each year." (Highlighting added.) Attached as Exhibit F is a true and correct copy of that letter (highlighting added). And in announcing the 2017 and 2018 rates, OHA boasted that it had met that target. Attached as Exhibit G are true and correct copies of these press releases (highlighting added). In 2019, after FamilyCare was no longer a CCO, OHA's rate

5- DECLARATION OF WILLIAM H. MURRAY IN SUPPORT OF FAMILYCARE, INC.'S MOTION FOR DISCOVERY

152531398.1

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

increases for Health Share far surpassed OHA's supposed 3.4% rate of growth limit, and the aggregate rate of growth likewise exceeded 3.4%. Attached as Exhibit H is a true and correct copy of OHA's press release regarding the 2019 rates.

15.    For many years prior to 2015, OHA had developed Medicaid capitation rates on a statewide basis.   In 2015, OHA switched its rate-setting methodology to a regional rate development model.  I notified OHA at the time that such a switch would cause a shift in capitation revenue from the Tri-County region to rural areas of the state, and this was reflected in FamilyCare's rates, which dropped 10.9% under the new regional approach to rate development. I expressed to OHA concerns that the regional rate development model diverted rate revenue from the Tri-County region to rural areas of the state and resulted in rates that were too low for the Tri-County region, and advocated for a return to the statewide approach.  Also, FamilyCare sponsored a bill, SB 233, that among other things would have changed rate-setting from the regional development back to a statewide approach.  In written testimony opposing that bill, BethAnne Darby, the Director of OHA's External Relations Division, acknowledged that a statewide approach "would shift revenues to the Portland metro area" but insisted "[r]ates set on a regional basis are essential to maintaining access to Medicaid services."  A true and correct copy of the relevant portion of Ms. Darby's testimony is attached as Exhibit I (highlighting added).

16.    After FamilyCare ceased being a CCO, OHA changed to a statewide rate-development methodology starting in 2020.  Attached as Exhibit J is a true and correct copy of excerpts from an OHA report to the Legislature regarding CCO 2020 Capitation Rates, identifying that change (highlighting added).

*I hereby declare that the above statement is true to the best of my knowledge and belief, and that I understand it is made for use as evidence in court and is subject to penalty for perjury.*

DATED: May 18, 2021

William H. Murray

6-    DECLARATION OF WILLIAM H. MURRAY IN
SUPPORT OF FAMILYCARE, INC.'S MOTION
FOR DISCOVERY
152531398.1