

HEALTH POLICY AND ANALYTICS DIVISION

Kate Brown, Governor



500 Summer St NE E64
Salem, OR 97301
Fax: 503-945-5872
www.Oregon.gov/OHA
www.health.oregon.gov

April 4, 2017

TO:         The Honorable Laurie Monnes Anderson, Chair
Senate Committee on Health Care
900 Court St. NE
Salem, OR 97301

FROM:    BethAnne Darby, Director, External Relations Division

Cc:         Lori Coyner, State Medicaid Director
Mark Fairbanks, Chief Financial Officers, Fiscal & Operations Division

RE:         Senate Bill 233 (-2 Amendment)

Chair Monnes Anderson and members of the Senate Committee on Health Care; the Oregon Health Authority (OHA) appreciates the opportunity to provide written testimony outlining the Oregon Health Plan's global budget process for Coordinated Care Organizations (CCOs) and the potential impact of Senate Bill 233 with the -2 amendments on that process.

Background

Oregon's 1115 Medicaid Demonstration Waiver agreement with the Centers for Medicare & Medicaid Services (CMS) grants the state authority to provide title XIX and XXI funded services through the Oregon Health Plan (OHP) to eligible Oregonians. With the passage of House Bill 3650 and its initiation of Health System Transformation (better health, better care, lower cost) in 2011, Oregon also received CMS' approval for moving forward through its Waiver amendment and extension in 2012.

Fundamental to the success of transformation was Oregon's commitment to bend the Medicaid cost curve through the establishment of coordinated care organizations (CCOs) that were tasked with integrating the physical, behavioral and oral health services of Oregon Health Plan beneficiaries. Oregon's ability to deliver on this promise relies heavily on its commitment to using global budgets to help fund CCOs and in the rate development process (that OHA revised in 2015 at the request of CCOs) to meet established standards of actuarial soundness and receive the approval of our federal regulators at CMS.  CMS has approved OHA's rates for all 16 CCOs, using the current rate methodology for all three years of the current contract.

As part of its commitment toward better care for OHP members at lower cost, the Oregon Health Authority's primary objective in CCO rate development is ensuring that each of

Exhibit I
Page 1 of 4

Oregon's 16 CCOs operate with budgets that are actuarially sound and otherwise meet the guidelines and expectations set by CMS.

On January 12th of this year, Oregon was able to gain CMS approval of another five year extension to its 1115 Demonstration Waiver. This approval was largely based on the State's demonstrated success in maintaining its promised sustainable rate of cost growth of 3.4% and its promise to continue delivering on this success during the term of the waiver extension.

Several provisions in Senate Bill 233 with the -2 amendments leave OHA concerned about its ability to meet its commitment in the 1115 Demonstration Waiver:

- Revises definitions that conflict with federally required actuarial standards
- Proposes to establish new requirements for OHA in establishing CCO global budgets that:
    - Create potential inequity in rural communities for OHP Services
    - Limits flexibility to respond to federal changes; and
    - Compromises actuarial soundness necessary for final CMS approval

- Grants CCOs new rights to appeal the established global budget; and to have the Department of Consumer and Business Services (DCBS) review both the process and budget itself de novo.


Definitions in Senate Bill 233

The Bill seeks to establish definitions that are in conflict with federal requirements or OHA's agreements with CMS.
- Section 2 of the -2 amendments "actuarially sound" is defined as taking into account "all reasonable, appropriate and attainable costs." This definition is narrower than the CMS standard established in the Actuarial Standards of Practice (ASOPs) and does not speak to the need to also follow CMS guidance in rate development. Therefore, the definition would create a conflict between state law and the federal regulations relating to CCO rate development.

- Section 2 of the -2 amendments defines "flexible services" in a way that conflicts with Oregon's 1115 Demonstration Waiver. Specifically, the Waiver notes that "health related services" including "flexible services" must be cost-effective. The Waiver further requires that "health related services" be "activities that improve health care quality as defined in 45 C.F.R. 158.150. The definition proposed in Senate Bill 233 offers no similar sideboard on the definition, or permitted use, of flexible services. *In fact, Section 4(2) would explicitly prohibit OHA from considering the cost-effectiveness of flexible services in establishing CCO global budgets.*

Senate Bill 233 Global Budget Process

***Hurts Rural Oregon***

The proposed global budget setting process outlined in Section 4 is inconsistent with established actuarial standards and CMS expectations. Section 4(2)(a) would require OHA to use a single statewide risk score. This mandate would limit actuaries' ability to consider all the factors recommended by the Actuarial Standards of Practice (ASOPs).

Exhibit I

Page 2 of 4

Use of a single statewide risk score would disregard regional differences that disproportionately impact rural areas of the state and would likely shift funding to urban areas. This mandate also appears to conflict with other requirements of Senate Bill 233 that require data reporting and rate certification to be done on a regional basis.

Rates set on a regional basis are essential to maintaining access to Medicaid services. Oregon has long had a policy of supporting Type A and B hospitals in rural areas, but that policy means that hospital costs are not uniform statewide.

Uniform statewide risk scores would shift revenues to the Portland metro area. Without additional state funds to make up this difference, access to services for OHP members in more rural areas would suffer.

Because services and resources would not be fairly distributed across the state, rates set under a single statewide risk score would compromise the actuarial soundness of those rates and potentially jeopardize OHA's ability to receive CMS approval of rates.

### *Limits Flexibility to Respond to Federal Changes*

While OHA is proud of the sustainable rate of growth which it has met under its first CMS waiver and which it expects to continue under its new five-year waiver, OHA can have no assurance that federal funding will meet OHA's sustainable rate of growth. Therefore, OHA needs to maintain considerable flexibility around rates to respond to potential federal changes and continue to maximize the available federal match dollars available to Oregon's Medicaid program (total federal match is currently 77%).

### *Compromises Actuarial Soundness*

Actuarial soundness is a requirement for federal approval of CCO rates, and is not optional. The State currently contracts with Optumas to act as the State's actuary for the Oregon Health Plan. In this role, Optumas is responsible for evaluating the risk inherent within the Oregon CCO program without bias such that its risk evaluation can be used to inform policy and develop capitation rates that meet all federal standards. The nature of this work is for the actuary to provide state leadership with sound advice surrounding the CCO program that can be supported/substantiated by actuarial analyses that are conducted consistent with all applicable Actuarial Standards of Practice (ASOPs). This work must be done without CCO bias or predetermined outcomes and is compromised by the provisions of Senate Bill 233.

For example, Section 4(2)(c) and (d) would not allow OHA or Optumas to make any adjustments necessary to take into account effectiveness and otherwise ensure actuarial soundness. Most glaringly, these provisions would prohibit OHA from excluding expenditures funded by the quality pool incentive received by a CCO.  This would potentially allow a CCO to receive duplicative payment for expenditures funded both through capitation rates and quality pool incentive payments.

New Global Budget Appeal Provisions

Finally, the proposed global budget appeal provisions in Sections 4(6) and 5 further confuse an already complicated process and weakens OHA's relationship with OHP's federal regulators—CMS. These provisions would allow a CCO to contest its budget via an appeal to the

Exhibit I

Page 3 of 4

Department of Consumer and Business Services (DCBS). While OHA works collaboratively with DCBS on many elements of health care financing, DCBS' actuarial expertise is in commercial health insurance and it has no expertise or interaction with Medicaid rate-setting.

Granting de novo review authority to a separate state agency that has no history with Medicaid rate-setting only serves to undermine OHA's relationship with CMS as the single state Medicaid agency for Oregon. CMS has final authority for confirming actuarial soundness and must approve all CCO rates.

CMS approved the 2017 CCO contracts and rates for all 16 CCOs on March 28, 2017. CMS actuarial review of Oregon's rates, like those of states nationwide, has become more intense starting with the expansion of Medicaid under the Affordable Care Act.

Allowing DCBS the power to review and accept, reject or modify CCO rates will only complicate the roles of the respective agencies and jeopardize the State's relationship with its federal regulators and final authority on CCO rates – CMS.

<u>Conclusion</u>

The Oregon Health Authority recognizes the profound importance of being diligent, deliberate and fair in setting rates that are actuarially sound for each of the State's 16 coordinated care organizations. This process is core to our relationship with CMS, our ability to continue to maintain a sustainable rate of growth in the Oregon Health Plan and, ultimately, our ability to provide quality health services to the one million plus Oregonians receiving benefits.

Exhibit I
Page 4 of 4