

121 SW Morrison Street
11ᵗʰ Floor
Portland, OR 97204

Main: 503.228.3939
Fax: 503.226.0259
foster.com

Direct Phone: 503.553.3115
matthew.yium@foster.com

June 8, 2021

**VIA CM/ECF AND EMAIL**

Hon. Michael W. Mosman
Mark O. Hatfield United States Courthouse
1000 SW Third Ave, Room 1615
Portland OR 97204-2945
Chambers_Mosman@ord.uscourts.gov

**Re:**    *FamilyCare, Inc. v. Oregon Health Authority et al.*, **Case No. 6:18-cv-00296-MO**

Dear Judge Mosman:

I am writing on behalf of PacificSource Community Solutions, one of the intervening CCOs opposing FamilyCare's Motion to Down-Designate AEO Documents in this matter. I am also writing on behalf of the other objecting CCOs, Trillium Community Health Plan, Cascade Health Alliance, Umpqua Health Alliance, and Western Oregon Advanced Health (collectively "Objecting CCOs"), who through their counsel join in this letter.

After further conferral attempts with counsel for FamilyCare following the hearing on June 1, 2021, the parties were unable to reach a stipulated path forward. A copy of the parties' counterproposals is enclosed herewith. As the Objecting CCOs understood Your Honor's guidance at the June 1 hearing, three potential areas for resolution were to be considered including:

1. Down designation of AEO documents of all Non-Objecting CCOs where such documents do not contain the AEO data of Objecting CCOs;

2. Redaction of the AEO data of Objecting CCOs where such data is contained in documents containing the AEO data of one or more Non-Objecting CCOs and Objecting CCOs; and

3. Creation of an exception that would allow FamilyCare's Chief Operating Officer, William H. Murray, to be included among those persons granted access to AEO-designated data.

The Objecting CCOs will stipulate to Options 1 and 2 above, so long as FamilyCare is responsible for the time and cost associated with the identification and redaction of documents and data of each CCO in accordance with its status as either a Non-Objecting CCO or Objecting CCO.

FG:11619620.3

SEATTLE          PORTLAND          WASHINGTON, D.C.          NEW YORK          SPOKANE          BEIJING

Hon. Michael W. Mosman
June 8, 2021
Page 2

According to FamilyCare, identification and redaction of the respective documents and data of each CCO presents technical challenges.  The Objecting CCOs are willing to accept FamilyCare's good faith and best efforts to implement the processes necessary to fulfill Options 1 and 2 above, so long as the Court enters an Order containing a clawback provision obligating FamilyCare to immediately notify the appropriate Objecting CCO in writing of any instances of inadvertently down-designated data and to sequester such data upon its discovery.  The proposed Order contemplated by the Objecting CCOs would also put an end to this four-year dispute and include a provision precluding future motions by FamilyCare for down designation of the Objecting CCOs' AEO data.

The resolution proposed by the Objecting CCOs is, in our view, entirely consistent with principles of proportionality.  The Objecting CCOs (as well as the previously objecting CCOs) have incurred hundreds of thousands of dollars in litigation expenses in a lawsuit to which they are not parties due to FamilyCare's endless motions and shifting demands for down-designation of every CCOs' AEO data.  The Objecting CCOs would be burdened with even significantly more expenses if required to undertake the process of redaction or review of more documents or continue in this dispute over the same set of documents which FamilyCare has possessed for over three years now.

To be clear: the Objecting CCOs do not and have not objected to down-designation of the AEO data of any Non-Objecting CCOs (*e.g.,* Health Share of Oregon), including down-designation of documents that do not contain Objecting CCOs' AEO data.  The only obstacle to achieving stipulation in that regard was FamilyCare's insistence that the Objecting CCOs shoulder the cost, time, and burden of hiring outside litigation counsel to review and identify documents the CCOs wished to remain AEO.  I make this point not to prolong this dispute, but only to correct any misimpressions that may have been caused by FamilyCare's representation at the June 1 hearing that the Objecting CCOs were somehow preventing FamilyCare's access to entire categories of documents containing the Non-Objecting CCOs' AEO data.  If the Non-Objecting CCOs' data are as necessary to FamilyCare's expert and trial preparation as it claims (which has never been shown with any particularity), the costs and burden associated with utilization of that data should be borne by FamilyCare.

Finally, FamilyCare is expected to make a plea to the Court that a proposed declaration from Mr. Murray stating that he would agree not to work for another CCO until 2024 would provide the most reasonable path forward.  The Objecting CCOs are unwilling to stipulate to such proposal for the reasons set forth in their prior briefing, including the continued absence of any showing of a particularized need for Mr. Murray to view the documents despite the Court's November 13, 2018 Order requiring that it do so.  In addition, Paragraphs 1, 2, and 16 of the Protective Orders already state that any party, employee of a party (including Mr. Murray), and expert may not use any confidential or AEO data beyond this litigation for any business, commercial, or competitive purpose *at any time* whether during or after this litigation.  The proposed declaration is not a reasonable or acceptable path forward for the Objecting CCOs.

Respectfully, the Objecting CCOs request that FamilyCare's motion be denied in its entirety without leave to file further motions to down-designate their AEO data.  If the motion is not denied in its

Hon. Michael W. Mosman
June 8, 2021
Page 3

entirety, the Objecting CCOs request a ruling from the Court consistent with the terms of the Objecting CCOs' proposed resolution outlined herein.

Very truly yours,

FOSTER GARVEY PC

Matthew J. Yium
Principal

MJY:ew
Enclosure
cc via Email w/Enc.:    All Counsel of Record

| From: | Matthew Yium |
|---|---|
| Sent: | Monday, June 7, 2021 10:25 AM |
| To: | 'Gordon, Matthew P. (Perkins Coie)'; 'jhern@schwabe.com'; 'anna.sortun@tonkon.com'; 'Stephanie Grant'; 'Anit Jindal'; 'Thompson, Christopher W.' |
| Cc: | 'Robbins, David B. (Perkins Coie)'; 'Johnson, Thomas R., Jr. (Perkins Coie)' |
| Subject: | RE: FamilyCare v. OHA -- AEO Proposal |

Matt:

Respectfully, PacificSource Community Solutions, Trillium Community Health Plan, Cascade Health Alliance, Umpqua Health Alliance, and Western Oregon Advanced Health (collectively "Objecting CCOs") decline FamilyCare's proposed path forward as outlined in your email of June 4.  However, the Objecting CCOs are prepared to enter into a stipulated resolution that covers much of what FamilyCare proposes and would allow FamilyCare employees' confidential access to many or most of the ~5,000 AEO documents/data it sought on its Motion for Down-Designation.

As the Objecting CCOs understood the Court's guidance at the June 1 hearing, three potential paths to resolution were to be considered including:

1.  Down designation of AEO documents of the Non-Objecting CCOs where such documents do not contain the AEO data of Objecting CCOs;
2.  Redaction of the AEO data of Objecting CCOs where such data is contained in documents containing the AEO data of one or more Non-Objecting CCOs and Objecting CCOs; and
3.  Creation of an exception that would allow FamilyCare's Chief Operating Officer, William H. Murray, to be included among those persons granted access to the ~5,000 AEO documents.

The Objecting CCOs are ready and willing to stipulate to Options 1 and 2 above.  FamilyCare must be responsible for the time and cost associated with implementation of those options, including redaction of the Objecting CCOs' data in the ~5,000 AEO documents.  The Objecting CCOs are not willing to stipulate to Option 3 for the reasons stated in their current and past briefs and correspondence, in addition to the continued absence of any particularized need for Mr. Murray to view the documents despite FamilyCare's having more than two years to make such a showing since the Court's 11/13/18 order.

According to your latest email, the process of identification and redaction of documents and data of each CCO presents some technical challenges.  The Objecting CCOs are willing to accept FamilyCare's best efforts to accurately and in good faith perform the appropriate identification and redaction of documents and data in accordance with Options 1 and 2 above, so long as FamilyCare stipulates to entry of an Order by the Court that enumerates the terms of our proposed path forward and includes a clawback provision whereby FamilyCare must immediately notify the appropriate Objecting CCO in writing of all instances of inadvertently down-designated data of that CCO and to sequester such data upon its discovery.  Finally, the proposed stipulated Order would include a provision precluding future motions by FamilyCare for down designation of any of the Objecting CCOs' AEO data.

**If this proposal is acceptable, please let me know no later than Monday, June 7, 2021 by 4:30 p.m. Pacific.**

Regards,


**Matthew Yium**
**Principal**

Foster Garvey PC
*Tel:* 503.553.3115
matthew.yium@foster.com

**From:** Gordon, Matthew P. (Perkins Coie) [mailto:MGordon@perkinscoie.com]
**Sent:** Friday, June 4, 2021 4:57 PM
**To:** Matthew Yium <Matthew.Yium@foster.com>; jhern@schwabe.com; anna.sortun@tonkon.com; Stephanie Grant

<stephanie.grant@tonkon.com>; 'Anit Jindal' <anitjindal@markowitzherbold.com>; Thompson, Christopher W. <chris.thompson@gknet.com>
**Cc:** Robbins, David B. (Perkins Coie) <DRobbins@perkinscoie.com>; Johnson, Thomas R., Jr. (Perkins Coie) <TRJohnson@perkinscoie.com>
**Subject:** FamilyCare v. OHA -- AEO Proposal

Counsel:

In our call with Matt Yium yesterday, I explained that, since the hearing on Tuesday, FamilyCare has been analyzing the potential paths proposed by the Court. I detailed some of the challenges we've identified, and I discussed potential paths forward.

To recap briefly:

1. <u>The Optumas categories are of limited utility</u>.

   Most (3,273) of the 5,073 documents at issue were produced by OHA, not Optumas. We understand that OHA has not undergone a re-review and categorization similar to what Optumas did.  As a result, most of the documents at issue are not categorized at all.

2. <u>Redaction of spreadsheets is not a workable solution</u>.

   More than 2/3 of the documents that hit on one or more objecting CCOs' search terms are Excel files (2,135 in total), many of which are the worksheets used by Optumas to set rates and which contain formulas for deriving the various outputs used in the rate-setting process (and, per Optumas counsel, may well have cross formula features whereby a change in one spreadsheet affects the contents of others).  Redacting these spreadsheets would destroy our client's ability to evaluate the formulas and resulting output, thereby severely limiting the utility of having FamilyCare access the documents.

Given those challenges, we propose the following solution, which (1) builds on the Court's suggestions about down-designating documents that do not implicate the objecting CCOs and about carving in Bill Murray to see remaining documents, and (2) directly addresses the concerns Matt Yium raised at the hearing and during our call about Mr. Murray's future employment:

1. We have searched the documents at issue using the objecting-CCO search terms proposed by Optumas, and we propose that the documents that did not hit on any terms be down-designated to confidential.

2. For the remaining documents—i.e., those that hit on one or more search term—we propose that FamilyCare's Bill Murray be carved into the protective order so that he may review them, and:

   a. Mr. Murray would agree to be bound by the protective order (i.e. access and use the information contained therein solely for purposes of this litigation, and otherwise keep their contents confidential).

   b. Mr. Murray would also agree to conditions far above any beyond those placed on anybody else who has access to these documents, including state employees and experts of all parties, namely:

      i. Mr. Murray will agree and represent in a sworn declaration to the Court that he will not work for another CCO through July 1, 2024.

      ii. If FamilyCare decides to attempt to re-enter the CCO market in the 2024 re-procurement, Mr. Murray will not work on or assist with that re-entry, including working on any response to an OHA request for proposal associated therewith.

These restrictions directly address the concerns Mr. Yium articulated in the hearing and on our call yesterday, about Mr. Murray working for another CCO or helping FamilyCare get back into the market.  And because the 2024 re-procurement is expected to result in the letting of five-year contracts (as required by statute), these restrictions would ensure that Mr. Murray would not work on CCO procurement through at least 2029, at which point the data at issue will be at least 13 years old.  As such, we believe this proposal should be acceptable to your clients.  Please let us know if that is the case, and if not, what aspect of your clients' concerns we have missed.

Thanks,

Matt

**Matthew Gordon** | **Perkins Coie LLP**
PARTNER
1201 Third Avenue Suite 4900
Seattle, WA 98101-3099
D. +1.206.359.3552
F. +1.206.359.4552
E. MGordon@perkinscoie.com

**Visit our Covid-19 resource page: www.perkinscoie.com/coronavirus**

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents. Thank you.

3