PERKINSCOIE

1201 Third Avenue
Suite 4900
Seattle, WA 98101-3099

T   +1.206.359.8000
F   +1.206.359.9000
PerkinsCoie.com

June 8, 2021

Matthew P. Gordon
MGordon@perkinscoie.com
D.  +206.359.3552
F.  +206.359.4552

**VIA CM/ECF FILING AND EMAIL TO:**

The Honorable Michael W. Mosman
United States District COurt
1000 SW Third Avenue, Room 1615
Portland, OR 97204

**Re:   FamilyCare, Inc. v. Oregon Health Authority, et al., Case No. 6:18-cv-00296-MO**
**Motion to Down-Designate AEO Documents**

Dear Judge Mosman:

FamilyCare responds to the letter submitted on behalf of the Objecting CCOs (Dkt. 444), which was the first notice FamilyCare received that the Objecting CCOs would not be making a good-faith responsive proposal and which omitted the full correspondence between the parties.  That correspondence is enclosed.  As reflected therein, FamilyCare made a new proposal to the Objecting CCOs that directly addressed each concern they identified to the Court and would result in no financial or administrative burden on them, and the Objecting CCOs never explained why that proposal would not be satisfactory.

FamilyCare requests that the Court grant its Motion to Down-Designate.  In the alternative, FamilyCare submits the details of its proposal to the Objecting CCOs as an alternative for the Court to consider.

This proposal follows along the framework suggested by the Court and directly addresses the concerns the Objecting CCOs identified at the hearing about Mr. Murray's potential future employment and the potential financial burden on the Objecting CCOs of any further document review.  The proposal does not include redaction because more than 2,000 documents at issue are Excel files, and redacting those would alter them in such a way as to severely limit the utility of having FamilyCare access the documents (e.g., by making inaccessible embedded formulae).  It does not directly adopt the Optumas categories because most of the documents at issue were produced by OHA rather than Optumas and therefore have not been so categorized.

FamilyCare's proposal is as follows:

1.  Documents that do not hit on any of the search terms related to the Objecting CCOs will be down-designated to confidential.

Perkins Coie LLP
152736356.2

The Honorable Michael W. Mosman
June 8, 2021
Page 2

2. Documents that hit on one or more search term will remain AEO, and FamilyCare's Bill Murray will be carved into the protective order so that he may review them, and:

    a. Mr. Murray will agree to be bound by the restrictions in the protective order (i.e., access and use the information contained therein solely for purposes of this litigation, and otherwise keep their contents confidential).

    b. Mr. Murray will also agree:

        i. He will not work for another CCO through July 1, 2024.

        ii. If FamilyCare decides to attempt to re-enter the CCO market in the 2024 re-procurement, he will not work on or assist with that re-entry, including working on any response to an OHA request for proposal associated therewith.

These restrictions on Mr. Murray go far above any beyond those placed on anybody else who has access to these documents, including state employees and experts of all parties, and they directly address the concerns the Objecting CCOs identified in the hearing about Mr. Murray working for another CCO or helping FamilyCare get back into the market. And because the 2024 re-procurement is expected to result in the letting of five-year contracts (as required by statute), Mr. Murray would not work on CCO procurement through at least 2029, at which point the data at issue will be at least 13 years old. Carving in Mr. Murray to the protective order also eliminates any cost or burden on the Objecting CCOs, a concern voiced during the hearing and in Mr. Yium's letter to the Court today, because no further involvement or review of the documents by the Objecting CCOs would be needed under FamilyCare's proposal.

While the Objecting CCOs acknowledge, as they must, that they cannot object to down-designating documents that do not contain information they consider AEO, they have continued to refuse to agree on a mechanism for identifying such documents. As the enclosed correspondence shows, FamilyCare again asked Mr. Yium to clarify whether the Objecting CCOs would agree to the down-designation of documents that do not hit on search terms that pertain to these organizations. Mr. Yium did not respond, and his representation in his letter to the Court today—that the Objecting CCOs have not been an obstacle to down-designation of documents—is demonstrably inaccurate, as shown by the letters from Optumas explaining that the CCOs would not even consent to down-designation of documents that Optumas had re-reviewed and determined did not concern any individual CCO information that appeared to be even potentially commercially sensitive. *See* Dkt. 407-13 at 3 (explaining Optumas re-review and proposal to down-designate documents that "do not concern individual, identifiable CCO information that appear to be of a potentially sensitive commercial nature"); Dkt. 407-15 (explaining that Objecting CCOs opposed Optumas proposal).

The Honorable Michael W. Mosman
June 8, 2021
Page 3

Finally, the Objecting CCOs' request that FamilyCare's Motion for Down-Designation be denied "in its entirety" is an overreach and is inconsistent with their briefing, which sought denial only with respect to documents that implicated their client's purported AEO information. *See, e.g.,* Dkt. 415 at 18 ("the motion should be denied *with respect to PacificSource-specific AEO Information*") (emphasis added).

FamilyCare's inability to access the more than 19,000 AEO documents, while OHA employees have had unfettered access to those same documents for several years, is a significant information disparity that is continuing to prejudice FamilyCare in this litigation. Granting FamilyCare's Motion or adopting FamilyCare's proposal would help remedy that asymmetry.

Sincerely,

Matthew P. Gordon

MPG:nkl

Enclosure

cc:     All counsel of record

| From: | Gordon, Matthew P. (SEA) |
|---|---|
| To: | Matthew Yium; jhern@schwabe.com; anna.sortun@tonkon.com; Stephanie Grant; "Anit Jindal"; Thompson, Christopher W. |
| Cc: | Robbins, David B. (SEA); Johnson, Thomas R., Jr. (POR) |
| Subject: | RE: FamilyCare v. OHA -- AEO Proposal |
| Date: | Monday, June 07, 2021 5:41:06 PM |

Matt,

As you must know, your email is unresponsive to FamilyCare's proposal and the detailed rationale for it. Unsurprisingly then, your proffered "proposal" makes no strides toward amicable resolution.  In fact, by including additional provisions that benefit your clients beyond those under consideration or suggested by the Court, it moves the parties farther apart.

Specifically, your proposal tosses aside the Court's proposal that Mr. Murray be carved in to see documents without plausible explanation for why FamilyCare's proposed restrictions on Mr. Murray's future employment with any other CCO as well as his role at FamilyCare—limitations that are far beyond those imposed by the protective orders on any state employees or any of the parties' experts who possess this information—do not satisfy your clients.   (And you certainly know why Mr. Murray's participation, like OHA's key financial personnel, is key.)  Your proposal also prevents bringing any further documents to the Court's attention, despite the Court's express suggestion that judicial flexibility be left intact.

Finally, FamilyCare and its counsel spent considerable time analyzing the redaction issue and described, both over the telephone and in writing, why it will not work given the predominance of spreadsheets and redaction's disruption to their embedded formulas, and why carving in Mr. Murray with restrictions is a reasonable alternative that would result in no additional burden on your client.  Your proposal simply ignores this as a real issue.

Regarding Option 1:  your clients have no standing to object to the down-designation of documents that, as you put it, "do not contain the AEO data of Objecting CCOs."  So your purported stipulation on that point is inconsequential. The issue remains how to determine which documents are in that category, and your email fails to address it.  You've previously rejected all efforts at identifying documents that do not implicate the objecting CCOs' AEO information, including objecting to down-designating documents that Optumas re-reviewed and said did not implicate such data and documents that do not hit on search terms containing your client's names.  But you represented in open court that you will not stand in the way of FamilyCare accessing documents if they do not implicate your clients.

**Based on that representation, and since you proposed no alternative to FamilyCare's proposal, we presume that you do not object to down-designation to confidential of the documents that do not contain the search terms identified in the December 11, 2020 letter from Optumas counsel.  Please notify me, by 11:00 AM tomorrow (Tuesday) morning, if that is incorrect and you do object, and if so, why.**

**We also remain amenable to considering a good faith proposal from your clients as to the other issues.**

Regards,
Matt

**Matthew Gordon** | **Perkins Coie LLP**
PARTNER
1201 Third Avenue Suite 4900
Seattle, WA 98101-3099
D. +1.206.359.3552
F. +1.206.359.4552
E. MGordon@perkinscoie.com

**Visit our Covid-19 resource page: www.perkinscoie.com/coronavirus**

**From:** Matthew Yium <Matthew.Yium@foster.com>
**Sent:** Monday, June 7, 2021 10:25 AM
**To:** Gordon, Matthew P. (SEA) <MGordon@perkinscoie.com>; jhern@schwabe.com; anna.sortun@tonkon.com; Stephanie Grant <stephanie.grant@tonkon.com>; 'Anit Jindal' <anitjindal@markowitzherbold.com>; Thompson, Christopher W. <chris.thompson@gknet.com>
**Cc:** Robbins, David B. (SEA) <DRobbins@perkinscoie.com>; Johnson, Thomas R., Jr. (POR) <TRJohnson@perkinscoie.com>
**Subject:** RE: FamilyCare v. OHA -- AEO Proposal

Matt:
Respectfully, PacificSource Community Solutions, Trillium Community Health Plan, Cascade Health Alliance, Umpqua Health Alliance, and Western Oregon Advanced Health (collectively "Objecting CCOs") decline FamilyCare's proposed path forward as outlined in your email of June 4.  However, the Objecting CCOs are prepared to enter into a stipulated resolution that covers much of what FamilyCare proposes and would allow FamilyCare employees' confidential access to many or most of the ~5,000 AEO documents/data it sought on its Motion for Down-Designation.

As the Objecting CCOs understood the Court's guidance at the June 1 hearing, three potential paths to resolution were to be considered including:

1.   Down designation of AEO documents of the Non-Objecting CCOs where such documents do not contain the AEO data of Objecting CCOs;
2.   Redaction of the AEO data of Objecting CCOs where such data is contained in documents containing the AEO data of one or more Non-Objecting CCOs and Objecting CCOs; and
3.   Creation of an exception that would allow FamilyCare's Chief Operating Officer, William H. Murray, to be included among those persons granted access to the ~5,000 AEO documents.

The Objecting CCOs are ready and willing to stipulate to Options 1 and 2 above.  FamilyCare must be responsible for the time and cost associated with implementation of those options, including redaction of the Objecting CCOs' data in the ~5,000 AEO documents.  The Objecting CCOs are not willing to stipulate to Option 3 for the reasons stated in their current and past briefs and correspondence, in addition to the continued absence of any particularized need for Mr. Murray to view the documents despite FamilyCare's having more than two years to make such a showing since the Court's 11/13/18 order.

According to your latest email, the process of identification and redaction of documents and data of each CCO presents some technical challenges.  The Objecting CCOs are willing to accept FamilyCare's best efforts to accurately and in good faith perform the appropriate identification and redaction of documents and data in accordance with Options 1 and 2 above, so long as FamilyCare stipulates to entry of an Order by the Court that enumerates the terms of our proposed path forward and includes a clawback provision whereby FamilyCare must immediately notify the appropriate Objecting CCO in writing of all instances of inadvertently down-designated data of that CCO and to sequester such data upon its discovery.  Finally, the proposed stipulated Order would include a provision precluding future motions by FamilyCare for down designation of any of the Objecting CCOs' AEO data.

**If this proposal is acceptable, please let me know no later than Monday, June 7, 2021 by 4:30 p.m. Pacific.**

Regards,

**Matthew Yium**
Principal

Foster Garvey PC
*Tel:* 503.553.3115
matthew.yium@foster.com

---

**From:** Gordon, Matthew P. (Perkins Coie) [mailto:MGordon@perkinscoie.com]
**Sent:** Friday, June 4, 2021 4:57 PM
**To:** Matthew Yium <Matthew.Yium@foster.com>; jhern@schwabe.com; anna.sortun@tonkon.com; Stephanie Grant <stephanie.grant@tonkon.com>; 'Anit Jindal' <anitjindal@markowitzherbold.com>; Thompson, Christopher W. <chris.thompson@gknet.com>
**Cc:** Robbins, David B. (Perkins Coie) <DRobbins@perkinscoie.com>; Johnson, Thomas R., Jr. (Perkins Coie) <TRJohnson@perkinscoie.com>
**Subject:** FamilyCare v. OHA -- AEO Proposal

Counsel:

In our call with Matt Yium yesterday, I explained that, since the hearing on Tuesday, FamilyCare has been analyzing the potential paths proposed by the Court. I detailed some of the challenges we've identified, and I discussed potential paths forward.

To recap briefly:

1.  The Optumas categories are of limited utility.

    Most (3,273) of the 5,073 documents at issue were produced by OHA, not Optumas. We understand that OHA has not undergone a re-review and categorization similar to what Optumas did.  As a result, most of the documents at issue are not categorized at all.

2.  Redaction of spreadsheets is not a workable solution.

    More than 2/3 of the documents that hit on one or more objecting CCOs' search terms are Excel files (2,135 in total), many of which are the worksheets used by Optumas to set rates and which contain formulas for deriving the various outputs used in the rate-setting process (and, per Optumas counsel, may well have cross formula features whereby a change in one spreadsheet affects the contents of others).  Redacting these spreadsheets would destroy our client's ability to evaluate the formulas and resulting output, thereby severely limiting the utility of having FamilyCare access the documents.

Given those challenges, we propose the following solution, which (1) builds on the Court's suggestions about down-designating documents that do not implicate the objecting CCOs and about carving in Bill Murray to see remaining documents, and (2) directly addresses the concerns Matt Yium raised at the hearing and during our call about Mr. Murray's future employment:

1.  We have searched the documents at issue using the objecting-CCO search terms proposed by Optumas, and we propose that the documents that did not hit on any terms be down-designated to confidential.

2.  For the remaining documents—i.e., those that hit on one or more search term—we propose that FamilyCare's Bill Murray be carved into the protective order so that he may review them, and:
    a.  Mr. Murray would agree to be bound by the protective order (i.e. access and use the information contained therein solely for purposes of this litigation, and otherwise keep their contents confidential).

    b.  Mr. Murray would also agree to conditions far above any beyond those placed on anybody else who has access to these documents, including state employees and experts of all parties,

namely:

    i.  Mr. Murray will agree and represent in a sworn declaration to the Court that he will not work for another CCO through July 1, 2024.

    ii.  If FamilyCare decides to attempt to re-enter the CCO market in the 2024 re-procurement, Mr. Murray will not work on or assist with that re-entry, including working on any response to an OHA request for proposal associated therewith.

These restrictions directly address the concerns Mr. Yium articulated in the hearing and on our call yesterday, about Mr. Murray working for another CCO or helping FamilyCare get back into the market. And because the 2024 re-procurement is expected to result in the letting of five-year contracts (as required by statute), these restrictions would ensure that Mr. Murray would not work on CCO procurement through at least 2029, at which point the data at issue will be at least 13 years old.  As such, we believe this proposal should be acceptable to your clients.  Please let us know if that is the case, and if not, what aspect of your clients' concerns we have missed.

Thanks,

Matt

**Matthew Gordon** | **Perkins Coie LLP**
**PARTNER**
1201 Third Avenue Suite 4900
Seattle, WA 98101-3099
D. +1.206.359.3552
F. +1.206.359.4552
E. MGordon@perkinscoie.com

**Visit our Covid-19 resource page: www.perkinscoie.com/coronavirus**

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents. Thank you.