# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

FAMILYCARE, INC., an Oregon     )
non-profit corporation,          )
                                 )
            Plaintiff,           )   Case No. 6:18-cv-00296-MO
                                 )
      v.                         )
                                 )
OREGON HEALTH AUTHORITY, an      )
agency of the State of Oregon,   )
PATRICK ALLEN, both              )   April 5, 2021
individually and in his          )
official capacity as director    )
of the Oregon Health Authority,  )
and LYNNE SAXTON,                )
                                 )
            Defendants.          )   Portland, Oregon
_____  )

**Telephone Status Conference**

TRANSCRIPT OF PROCEEDINGS

BEFORE THE HONORABLE MICHAEL W. MOSMAN

UNITED STATES DISTRICT COURT JUDGE

                              APPEARANCES

FOR PLAINTIFF:              Mr. Thomas R. Johnson
                           Ms. Heidee Stoller
                           Perkins Coie, LLP
                           1120 N.W. Couch Street, 10th Floor
                           Portland, OR 97209


                           Mr. Matthew P. Gordon
                           Mr. David B. Robbins
                           Perkins Coie, LLP
                           1201 Third Avenue, Suite 4800
                           Seattle, WA 98101


FOR DEFENDANTS OREGON
HEALTH AUTHORITY and
PATRICK ALLEN:             Mr. David B. Markowitz
                           Mr. Harry B. Wilson
                           Markowitz Herbold PC
                           1211 S.W. Fifth Avenue, Suite 3000
                           Portland, OR 97204


FOR DEFENDANT LYNNE
SAXTON:                    Mr. Chris M. Morgan
                           Mr. Edwin A. Harnden
                           Barran Liebman LLP
                           601 S.W. Second Avenue, Suite 2300
                           Portland, OR 97204


FOR INTERVENOR
DEFENDANT TRILLIUM:        Mr. Jeffrey D. Hern
                           Schwabe, Williamson & Wyatt
                           1211 S.W. Fifth Avenue, Suite 1600
                           Portland, OR 97204

FOR INTERVENOR
DEFENDANT
PACIFICSOURCE:           Mr. Matthew J. Yium
                        Foster Garvey P.C.
                        121 S.W. Morrison Street, 11th Floor
                        Portland, OR 97204


COURT REPORTER:          Bonita J. Shumway, CSR, RMR, CRR
                        United States District Courthouse
                        1000 S.W. Third Ave., Room 301
                        Portland, OR  97204
                        (503) 326-8188

(P R O C E E D I N G S)

(April 5, 2021; 11:07 a.m.)

* * * * *

THE COURTROOM DEPUTY:  Your Honor, this is the time and place set for a telephone status conference in Case No. 6:18-cv-296-MO, FamilyCare, Inc. versus Oregon Health Authority, et al.

Counsel, can you introduce yourself for the record.

THE COURT:  Let's start with counsel for plaintiff.

MR. GORDON:  Matt Gordon.

MR. ROBBINS:  For FamilyCare, this is David Robbins.

MR. JOHNSON:  For FamilyCare, this is Tom Johnson.

MS. STOLLER:  Heidee Stoller for FamilyCare.

MR. WILSON:  Harry Wilson, special assistant attorney general for Oregon Health Authority.

MR. MARKOWITZ:  David Markowitz, special assistant attorney general also for the Oregon Health Authority.

MR. MORGAN:  Chris Morgan, special assistant attorney general for Lynne Saxton.

MR. HARNDEN:  Ed Harnden, special assistant attorney general for Lynne Saxton.

THE COURT:  Mr. Hern, are you on the line?

MR. HARNDEN:  Yes, Ed Harnden.

THE COURT:  I'm sorry, Mr. Hern, Jeffrey Hern, are you on the line?

MR. HERN:  Yes, I am on the line for nonparty Trillium, just listening.

THE COURT:  And Matthew Yium for PacificSource, are you on the line, sir?

MR. YIUM:  Yes, I'm on the line, sir.

THE COURT:  Thank you very much, folks, for being ready today.

Let's talk about trial date first, since that may influence the rest of our discussion.

So the bad news is I won't have a trial date available for quite some time, and the reason I'll explain briefly.  In the pandemic era, we have not held very many trials.  I've held a few recently, but it's been a long time since we've been at full pace for criminal trials in particular, so now they're backed up.  It's like the Suez Canal out there on my docket, and there's a lot of things that need to happen, including in the next 12 months, two -- each of them eight-week long RICO cases, along with a bunch of other criminal cases, and as you know, they take priority under the Constitution over civil cases when that's necessary.

And then the second issue is just that while I could find time for a civil case here or there that lasted three or four or even five days, the length of this trial means I have to find a block that will accommodate it.  So I do not have a block of time open until April 25th of next year, through the

middle of May.

I'll say first, before I ask you about your availability, then, that there is another option -- and I only raise it not because I want to see it happen in any way but just because I feel obligated to raise it in light of how long it would be to get a trial date in front of me -- and that is that our magistrate judges do not have that same problem. They don't have a backlog of criminal cases, and their calendars are significantly more wide open than mine, for trials at least. They're busy but they can find trial dates.

So I won't ask for answers now, but I'm going to at least have you think about whether you can get a trial date a lot faster, many, many months faster by consenting to a magistrate judge in this case. You'll just let me know if that's what happens.

So on the assumption there isn't full consent, I'll start with counsel for FamilyCare, whether you can go to trial April 25th through May 13th of next year.

MR. GORDON: Your Honor, this is Matt Gordon for FamilyCare. I would need to check with my client, of course, but I would imagine that that date, those times would work for us.

THE COURT: Thank you.

MR. GORDON: Unless my co-counsel on the call has problems with those dates, but I do not.

THE COURT:  Anyone else for FamilyCare need to speak to those dates?

(No reply.)

THE COURT:  All right.  For OHA?

MR. WILSON:  Your Honor, those dates are acceptable for me.  This is Harry Wilson.  Like Mr. Gordon said, I would want to do a quick check with my client, but I will confer with Mr. Gordon and make sure that that works.

THE COURT:  Anyone else for OHA need to speak up to those dates?

(No response.)

THE COURT:  Thank you.

For Ms. Saxton?

MR. HARNDEN:  This is Ed Harnden.  We would make those dates work.  We'll need to check with our client, but from our end, we'll make it work.

THE COURT:  Thank you.

From the two intervenors, anything you want to say about that trial date?

MR. YIUM:  No, Your Honor.

MR. HERN:  No, Your Honor.  This is Jeff Hern.

THE COURT:  All right.  Then I will set that as our trial date.

Let's work backwards from that about a month or so for a pretrial conference date.

Ms. Stephens, can you suggest a time?

THE COURTROOM DEPUTY:  Yes, Your Honor.  If I could just have a moment to get to 2022.

THE COURT:  While she's checking those dates, you should all be aware that by the time we try this case, I'll be a senior judge.  So I won't be working as hard and I'll probably be wearing like Hawaiian shirts to trial or something like that.  So just be aware that that may be a problem.

UNIDENTIFIED SPEAKER:  Do we take a vote to see whether you can return for senior status or is that required?

THE COURT:  Just a second.  Let me check on the date.

(There is a pause in the proceedings.)

THE COURT:  All right.  Let me talk about the pretrial conference date with you.  So I've given you the earliest trial date setting that I can give you.  And it turns out it follows right on the heels of the second long RICO case that I mentioned.  So it's my intention, with a date that far out, to wrap up everything else on your punch list that you've given me by, say, July of this year at the latest, and then we would just park this case and then I'll get ready for trial.

The problem is the pretrial conference.  Since we're following literally a couple days after the RICO case ends, we wouldn't be -- and because of criminal trials that precede that RICO case, we'd have to go clear back into January of '22 for the pretrial conference in this date -- in this case.  I'm

happy to do that. I recognize that sort of means you gear up twice for trial. It may help you to know that you're ready right down to the verdict form in January for this trial. If that poses a problem for anyone and you'd like a pretrial conference much closer to the trial date, then we'd have to move the trial and try it from the latter part of May into June instead, and then pick a time in April or May for the pretrial conference.

So I'm giving you two options. One is to keep the trial date we just talked about and hold a PTC on January 10th of '22, or move the whole thing later, with a later trial date but a PTC much closer to the trial.

For plaintiff, what's your preference?

MR. GORDON: Your Honor, this is Matt Gordon for plaintiff. Is this something that we might be able to discuss internally and with our client and get back to you on?

THE COURT: I suppose.

For defendant, what's your preference?

MR. WILSON: We prefer the April -- I'm sorry, for OHA, Harry Wilson. We prefer the April 25th trial setting.

THE COURT: With a January PTC?

MR. WILSON: Correct, Your Honor.

MR. HARNDEN: This is Ed Harnden. I would join in that. I would prefer the April trial date and the January 10th pretrial conference date.

THE COURT: All right. Then I'm going to tentatively set this case for trial in April, with a January 10, '22 PTC.

What time, Ms. Stephens?

THE COURTROOM DEPUTY: The pretrial conference would start at 1:30 and conclude at 5:00.

THE COURT: All right. So that's what we'll do with the PTC.

Now let's turn to the rest of your list. You've asked that we hold a hearing on -- well, I'm going to start not in the order you gave them to me in your helpful email, but sort of in the order in which they are teed up for me to do something about them.

So you've asked for a hearing on a resolution of FamilyCare's motion to down-designate AEO documents. I won't hold that hearing until June, but we will have a hearing, if the parties can all make it, Tuesday, June 1st, at 9:00 a.m. on down-designation.

Then the next one sort of in order of readiness is you want to complete briefing and then have resolution of FamilyCare's motion for sanctions for spoliation. And I'd be able to hold a hearing on that one on Tuesday, June 22nd, from 9:00 to 10:00.

So, first, any issues with Tuesday, June 1st of this year from 9:00 to 11:00 for a hearing on down-designation? Starting, of course, with FamilyCare.

MR. GORDON:  This is Matt Gordon, Your Honor.  No issues with either date or time.

THE COURT:  For OHA?

MR. WILSON:  No issues, Your Honor.

THE COURT:  Ms. Saxton?

MR. HARNDEN:  No issue with that, Your Honor.

THE COURT:  All right.  Then FamilyCare -- well, everyone needs to brief in advance of the 22nd of June the motion for sanctions.  I guess I'm not remembering where we are, if anywhere, on actually briefing that motion.

I'll start with FamilyCare.

MR. YIUM:  Your Honor, I'm sorry.  This is Matthew Yium for nonparty intervenor PacificSource on the June 1st motion to down-designate.  We did file a response to that, and unfortunately I have an Oregon Court of Appeals argument on June 1st at 9:00 a.m.

THE COURT:  Well, I'm sorry, there's just too many moving parts.  You'll have to work around that somehow.

MR. YIUM:  Okay.

THE COURT:  Mr. Hern, anything you need to add?

MR. HERN:  No, I don't have an issue with the June 1st date.

THE COURT:  Thank you.

Back to FamilyCare.  On briefing the motion for sanctions for spoliation, where are you on that?

MR. GORDON:  Yes, Your Honor.  Matt Gordon for FamilyCare.  So FamilyCare filed the brief, OHA filed a response brief, and the only thing that needs to be done to complete the briefing is the filing of a reply brief, and that was the -- the case was stayed before the reply brief was filed.

THE COURT:  How soon can you get that in?

MR. GORDON:  We could get that in shortly, within a week or shorter if the Court so desires.

THE COURT:  Well, we're not holding a hearing for a while, so we'll make the reply brief due one week from today and the hearing on the 22nd.

So as to the 22nd for the sanctions hearing, any issues with that hearing date or time from plaintiff?

MR. GORDON:  No, Your Honor.  When I was responding earlier, I was responding to the 22nd.  I thought that's what we were starting with.  But just to be clear, no issues from my perspective for either the 22nd or the 1st with those hearing times or dates.

THE COURT:  For OHA, same question.

MR. WILSON:  No issues, Your Honor.

THE COURT:  For Ms. Saxton?

MR. HARNDEN:  No issues, Your Honor.

THE COURT:  For intervenors?

MR. YIUM:  No.  This is Matt Yium.

MR. HERN:  No.  This is Jeff Hern.

THE COURT:  All right.  Then the next issue raised on your list is the possibility of an amended complaint and uncertainty whether that will be stipulated or opposed.

Where are we on that for -- excuse me, for FamilyCare?

MR. GORDON:  Your Honor, this is Matt Gordon. Mr. Wilson and I have discussed -- have had initial discussions about an amended complaint, and we talked about conferring about that over the next essentially couple of weeks to see if the amended complaint -- or the proposed amended complaint that FamilyCare wanted to file was one that OHA was willing to stipulate to, and then if not, we envision filing a motion for leave to file an amended complaint.

THE COURT:  Then I'll just wait and let the parties work on that, and it will come to me if and when you need it to.

The second is a follow-up on the remand of the tenth claim for relief, potentially including motion practice.

Again, turning to FamilyCare first, where are we on that?

MR. GORDON:  Where we are -- and Mr. Wilson and I have discussed this a little bit again initially.  I think from FamilyCare's view, Your Honor, the Ninth Circuit remanded for further consideration of the tenth claim for relief, but I

think the Ninth Circuit indicated that it believed that the basis on which the claim was dismissed before was erroneous, and this Court has already ruled that if in fact the contract was a five-year contract rather than a series of one-year contracts, that the Court ruled it was possible that a rational jury could find that it was an issue of fact about what the parties' expectations were.  So, from FamilyCare's perspective, it's back in the Court's -- the ball is in the Court's court, if you excuse the phrase, to move that along, I believe, but we think that the issue about the -- whether or not the motion to dismiss should have been granted has been largely resolved by the Ninth Circuit.

            THE COURT:  Thank you.

            For OHA?

            MR. WILSON:  This is Harry Wilson, Your Honor.  We believe that the Ninth Circuit has clearly put this issue back in front of the Court, and ask the Court to consider whether the contract -- the full contract contains an obligation of good faith and fair dealing that applies as FamilyCare believes that it does.  We believe that quick motion practice would be very beneficial to the Court and the parties to clarify the issues that remain and present them to the Court for resolution.  We think it might make sense, Your Honor, for this to be considered in a motion potentially after there is an amended complaint, but we defer -- we don't feel strongly one

way or the other, but we do think that this should be teed up with a motion by OHA, a response by FamilyCare, and resolution by the Court.

THE COURT:  Thank you.

Does any other attorney for any defendant or intervenor wish to speak up on this issue?

MR. HARNDEN:  No, Your Honor.  This is Ed Harnden. No, Your Honor.

THE COURT:  All right.  Thank you.

I don't think the ball is in my court right now, only in the most informal way.  I appreciate that pragmatically it might be, but I don't want to get ahead of myself right now.  I think motion practice is the right way under the federal rules to resolve a question like this even after a remand, and I have no objection to the parties waiting until after the filing of an amended complaint before a motion is filed.  So the most we can do today is say it's all right to wait until you've worked on the amended complaint, and I agree to fully resolve this question, motion practice would be necessary.  I'll await the filing of a motion without setting today any deadline for it.

The next issue you've raised is supplemental discovery and potential motion practice regarding reopening of discovery.  That puts in one sentence two of my least favorite concepts, but let's go ahead and talk about them anyway.

I'll start with counsel for FamilyCare.

MR. GORDON:  Your Honor, again, they are two -- I'm sorry, Matt Gordon for FamilyCare.  Two distinct things here.  One, I think the parties -- and, again, Mr. Wilson and I have touched on this briefly, but I think that both FamilyCare and OHA are in agreement that there is some supplementation of existing discovery that is going to be required once the case is unstayed.  And then so there's that issue.  And then -- and that's primarily, I would think, document discovery.  And then the separate issue is whether there will be additional discovery in this case, and the additional discovery that FamilyCare envisions relates primarily to events that have occurred since the case went on stay related to rate development, contract terms, et cetera.

THE COURT:  Thank you.

For OHA?

MR. WILSON:  Harry Wilson, Your Honor.  We agree that there may be some limited supplemental discovery that needs to occur.  We'll discuss and confer with FamilyCare about the extent of that and bring any issues to the Court's attention only if need be.

With respect to reopening discovery, OHA opposes that categorically at this point and doesn't think there's any reason to reopen discovery when the case discovery was complete and set for trial when it went into stay in 2018, and if necessary we'll brief that for the Court's resolution.

THE COURT: Thank you.

Mr. Harnden?

MR. HARNDEN: We agree with OHA.

THE COURT: All right. So certainly supplemental discovery will just occur as you've described, as each of you have described, according to the rules, and doesn't require any deadlines by me at this point. And so I will await the parties' intentions to litigate the reopening of discovery for new discovery. And, again, because of the upcoming pendency of an amended complaint that may shape questions of discovery, I'm not going to set a specific deadline on discovery today, and I'll deal with any motions oppose -- seeking or opposing discovery as they come to me.

And I suppose the same -- Let's take up the last issue, and then I'll talk about, even though I haven't set deadlines, what my intentions are on the question of potential additional dispositive motion practice.

Here I'll start with OHA.

MR. WILSON: Thank you, Your Honor. We think that there may be a need for a few additional dispositive motions. This would be for several reasons: one, given the potential of an amended complaint, we certainly want to keep open the possibility that there might need to be some sort of dispositive motion to deal with the amended complaint. We also would like to keep the option open, given the supplemental

discovery and the possibility of reopening discovery.

And finally, Your Honor, especially given that we're looking at an April trial date, we think that some narrow dispositive motion practice could help narrow the issues in such a way that would be beneficial to the party -- to the parties potentially for additional mediation or other reasons.

THE COURT:  Thank you.

For FamilyCare, anything you wish to add to this question?

MR. GORDON:  Well, yes, Your Honor.  Matt Gordon for FamilyCare.  The potential additional dispositive motion practice is something that OHA wanted to raise, and I think from FamilyCare's perspective, the time for dispositive motion practice has largely come and gone in this case.  There were multiple motions to dismiss filed, multiple motions for summary judgment.  Those have all been ruled on and been subject to appeal before the Ninth Circuit.

I certainly understand what Mr. Wilson says about if there's an amendment to the complaint that introduces a new claim, that that -- that there may be some dispositive motion practice relative to that, but otherwise I'm not -- I'm not aware of any potential dispositive motions in this case, given where we are.

THE COURT:  All right.  Thank you.

So on potential additional dispositive motions, OHA

has raised three possible grounds for that. One is something arises in supplemental discovery that might justify further dispositive motions, and that's, I suppose, correct. The second is that in -- that if there is a reopening of discovery, and the reopening of discovery produces more information that leads to new dispositive motions not justified by the previous state of discovery, then I suppose that's also correct. And the third is just that hey, we've got a lot of time between now and trial, why don't we take another run at dispositive motions. And that's not correct. I'm not going to do that.

The first two would require a showing that something came up either in reopened or supplemental discovery that would justify a dispositive motion that hasn't been filed yet. I'm disinclined to have any further dispositive motions, but if those first two reasons -- supplemental discovery or reopened discovery -- really do result in something new, then I'll entertain a request by OHA or any other party for dispositive motions triggered by discovery that you didn't ever have before.

So that leaves a fair amount of things sort of up in the air pending the amended complaint. I'm asking the parties to work on deadlines for everything other than the two deadlines I've set today, and as well as, of course, the trial date. And the goal is to hold a hearing no later than July to resolve all of these matters so that we have that sort of put

to bed and ready before we just sort of put the case away for a while until the January PTC.

And I'll ask the parties to submit after the amended complaint is out a proposed schedule for anything I haven't set a hearing on today that shows up as a possible motion that would be a challenge to the amended complaint, a request for reopening of discovery, anything regarding the tenth claim for relief.  Those things all will be part of your proposed schedule once the amended complaint is out in a week's time.

Anything further today from FamilyCare?

MR. GORDON:  Your Honor, just to clarify on the amended complaint, you mentioned just at the end in a week's time.  And I don't believe that we had set a deadline for that. I believe we talked about for the negotiation between FamilyCare and OHA on the amended complaint, and I believe you said you hadn't set a deadline for that.  My understanding was the week's deadline was with respect to the reply brief in support of the motion for sanctions.  I just wanted to clarify that.

THE COURT:  That's right.

How soon can you get the amended complaint in?

MR. GORDON:  Mr. Wilson and I had talked about working on this over the next couple of weeks to see if we can reach an agreement on that, and if not, then filing a motion for leave to amend shortly thereafter.

THE COURT:  So by April 21st?

MR. GORDON:  Yes.

THE COURT:  All right.  The amended complaint, if not sooner, is due April 21st, close of business.  And about that time, then, the parties will submit anything flowing from that amended complaint that we've discussed today that hasn't had a deadline set for it yet as a suggested schedule to get us a resolution of these issues through the two hearings I've set in June and an additional hearing in July if that becomes necessary.

Anything further today from FamilyCare?

MR. GORDON:  No, Your Honor.  Thank you for your time.

THE COURT:  Thank you.

Anything further from OHA?

MR. WILSON:  No, Your Honor.

THE COURT:  Mr. Harnden?

MR. HARNDEN:  No, Your Honor.

THE COURT:  From either intervenor?

MR. YIUM:  No, Your Honor.

MR. HERN:  No, Your Honor.  Thank you.

THE COURT:  Thank you all.  We'll be in recess.

(Proceedings concluded at 11:35 a.m.)

--oOo--

I certify, by signing below, that the foregoing is a correct transcript of the record of proceedings in the above-entitled cause.  A transcript without an original signature or conformed signature is not certified.


/s/Bonita J. Shumway                    April 13, 2022
_____        _____
BONITA J. SHUMWAY, CSR, RMR, CRR        DATE
Official Court Reporter