**Stephen F. English** (OSB No. 730843)
SEnglish@perkinscoie.com
**Thomas R. Johnson** (OSB No. 010645)
TRJohnson@perkinscoie.com
**Heidee Stoller** (OSB No. 072835)
HStoller@perkinscoie.com
**Matthew J. Mertens** (OSB No. 146288)
MMertens@perkinscoie.com
**Sasha Petrova** (OSB No. 154008)
SPetrova@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Telephone: 503.727.2000
Facsimile:  503.727.2222

**Matthew P. Gordon** (admitted *pro hac vice*)
MGordon@perkinscoie.com
**David B. Robbins** (OSB No. 070630)
DRobbins@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Telephone: 206.359.8000
Facsimile:  206.359.9000

*Attorneys for Plaintiff FamilyCare, Inc.*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **FAMILYCARE, INC.**, an Oregon non-profit corporation,<br><br>Plaintiff,<br><br>v.<br><br>**OREGON HEALTH AUTHORITY**, an agency of the State of Oregon, and **LYNNE SAXTON**,<br><br>Defendants. | Case No. 6:18-cv-00296-MO<br><br>**PLAINTIFF FAMILYCARE, INC.'S OPPOSITION TO DEFENDANT OREGON HEALTH AUTHORITY'S MOTION FOR PROTECTIVE ORDER REGARDING SCOPE OF SUPPLEMENTAL DISCOVERY**<br><br>ORAL ARGUMENT REQUESTED |

OPPOSITION TO OREGON HEALTH AUTHORITY'S
MOTION FOR PROTECTIVE ORDER

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

## I.    INTRODUCTION

Almost immediately after forcing FamilyCare from the Medicaid market in early 2018 by setting its rates too low, OHA significantly raised the rates it paid to Health Share and initiated changes to fix known errors in the rate-setting process that FamilyCare previously identified but that went unremedied. As a result, OHA paid Health Share approximately $82.5 million more in 2019 to care for former FamilyCare members than it offered FamilyCare for 2018 to care for those same individuals, despite repeatedly telling FamilyCare in previous years that the lower rates were correct and that OHA simply could not pay more. And in 2020, OHA fundamentally changed how it set rates, abandoning both the punitive "reimbursement policy" it created to punish FamilyCare during the 2017 and 2018 rate-setting years and the regional rate approach that had depressed FamilyCare's rates.

FamilyCare seeks discovery to understand why OHA made those changes and how they relate to OHA's pretextual assertions about FamilyCare's low rates. Had OHA fixed errors FamilyCare identified, used a statewide (rather than regional) rate-setting approach, not imposed the reimbursement policy, and offered FamilyCare similar rates to those paid to Health Share, FamilyCare would still be a CCO and this lawsuit would not have been filed. Information about these changes is highly relevant to FamilyCare's theory of the case—that OHA and its former director, Lynne Saxton, targeted FamilyCare in bad faith by lowering its rates to the point of insolvency with the aim of putting FamilyCare out of business. It is also highly relevant to OHA's and Saxton's defenses, including their assertions that they acted in good faith, did not target FamilyCare, and that the rates were unbiased and appropriate, notwithstanding the massive losses they imposed.

Notably, OHA does not dispute that it made rate-setting changes in 2019 and 2020; it argues instead that FamilyCare should not have any opportunity through discovery to reveal *why* the changes were made.

1-    OPPOSITION TO OREGON HEALTH AUTHORITY'S
MOTION FOR PROTECTIVE ORDER

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

## II.    BACKGROUND[1]

OHA's motion for protective order was prompted by FamilyCare advising OHA that its duty to supplement discovery included providing discovery into select aspects of 2019 and 2020 rate-setting. ECF 436 at 2-3. OHA now seeks a blanket prohibition on supplemental discovery into 2019 and 2020 rate-setting. *See id.* at 2. FamilyCare incorporates the facts and legal arguments from its Motion for Discovery and the supporting declarations, ECF 436, 437, 438, in their entirety rather than restating them here.

## III.    LEGAL STANDARD

Discovery is permitted into "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The scope of discovery has been "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Information "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Upon a showing of good cause, a court may issue a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). The movant has a "heavy burden" of showing good cause for the order. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

## IV.    ARGUMENT

OHA concedes that FamilyCare's request for discovery into limited aspects of OHA's 2019 and 2020 rate-setting seeks supplementation, rather than reopening, of discovery.[2] *See* ECF 434 at 3. And OHA does not dispute that it made the changes FamilyCare identifies, including the significant increases to Health Share's rates. OHA nevertheless argues FamilyCare's request should be denied because the supplemental discovery is irrelevant, inadmissible, unduly

---

[1] All references to pin cite pages refer to ECF page numbers.

[2] Accordingly, this Court may disregard the alternative argument—that good cause exists to reopen discovery for limited purposes—in FamilyCare's Motion for Discovery. ECF 436 at 10.

OPPOSITION TO OREGON HEALTH AUTHORITY'S
MOTION FOR PROTECTIVE ORDER

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

burdensome, and disproportionate to the needs of this case. OHA's arguments are without merit.

> ### A.    Certain Aspects of 2019 and 2020 Rate-Setting are Highly Relevant to FamilyCare's Claims and OHA's Defenses

FamilyCare's requested discovery—which bears on whether Saxton and OHA retaliated against FamilyCare and acted in bad faith when setting FamilyCare's rates—easily satisfies the low bar for relevance under Rule 26. The issue is not whether FamilyCare can seek supplemental discovery regarding "events in which FamilyCare did not participate and . . . rates that FamilyCare did not receive." ECF 434 at 2. Rather, the question is whether OHA's decisions to raise rates for FamilyCare's former members and change rate setting in other ways OHA had long maintained were impossible "bears on, or . . . reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc.*, 437 U.S. at 351; *see also Rogue Advocs. v. Mountain View Paving, Inc.*, No. 1:15-CV-01854-CL, 2017 WL 6540047, at *4 (D. Or. Jan. 31, 2017) (requests for discovery are relevant if there is "any possibility" the information sought may be relevant to the subject matter of the action) (citation omitted). The answer is plainly "yes." OHA's changes to rate setting are relevant to FamilyCare's claims about why its rates were set so low and whether the offered rationale for OHA's refusal to address the problems is pretext to disguise its true, bad faith motives. They are also relevant to OHA's and Saxton's defenses: that they did not target FamilyCare through rate-setting; that FamilyCare's rates were lower than Health Share's rates because FamilyCare's members were healthier; that increasing FamilyCare's rates would violate OHA's agreement with CMS; and that FamilyCare's business decisions are to blame for its demise.

> ### 1.    The discovery sought is highly relevant to FamilyCare's Section 1983 retaliation claim against former Director Saxton.

FamilyCare's first claim for relief alleges that Saxton retaliated against FamilyCare to drive FamilyCare from the market by developing and implementing (1) a policy to reduce the Medicaid rates payable to FamilyCare under its contract with OHA, and (2) an anti-FamilyCare disparagement campaign. Fifth Amended Complaint ("FAC") ¶¶ 79-89; *see also* ECF 438 ¶ 11.

3-    OPPOSITION TO OREGON HEALTH AUTHORITY'S
MOTION FOR PROTECTIVE ORDER

OHA notes that Saxton "was not director of OHA when the 2018 rates were released"[3] and argues rate-setting decisions in future years do not make it more or less probable that Saxton set "unreasonable, biased, [or] actuarially unsound rates" in 2017. ECF at 4; *id.* n.1. But documents reflecting rate-setting decisions in subsequent years—without Saxton's influence— are highly probative of whether the policies implemented at Saxton's direction were necessary as she claimed at the time, or simply pretext for acts designed specifically to target FamilyCare for elimination from the Medicaid market based on its protected First Amendment activities. *See Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1062 (9th Cir. 2013) ("To establish that retaliation was a substantial or motivating factor . . . a plaintiff may introduce evidence that . . . the proffered explanations for the adverse action were false and pretextual.") (Citation omitted).

For example, FamilyCare seeks supplemental discovery about the elimination in 2020 of the punitive reimbursement policy Saxton developed and implemented for 2017 and 2018 rates. Although OHA has argued that the policy was necessary because FamilyCare paid its primary care providers too much, OHA's abandonment of the policy shortly after FamilyCare closed its doors indicates that OHA's offered justification was mere pretext. In particular, OHA and Saxton developed and implemented the reimbursement policy during the 2017 rate-setting process even though it was contrary to OHA's past practices and discouraged conduct OHA had long praised. ECF 438 ¶ 11. The policy cut primary care reimbursement from FamilyCare's base data, thereby cutting its rates by millions, ostensibly because such reimbursement drove cost increases and therefore the policy was necessary to limit the rate of cost growth to comply with CMS regulations. *Id.* But in 2019, OHA asserted that primary care reimbursement was "not [a] major driver[] of cost growth." *Id.* ¶ 12. And in 2020 rate-setting, OHA's reimbursement policy included no cuts to base data, whether for primary care reimbursement or anything else. *Id.* ¶ 13.

---

[3] OHA omits the fact that Saxton resigned effective August 31, 2017, just two months before OHA presented FamilyCare with an incomplete and error-ridden rate amendment for 2018. *See* FAC ¶¶ 57, 59. Because Saxton resigned well after the rate-setting process for 2018 was already underway, 2019 was the first rate-setting year free from Saxton's influence.

4-    OPPOSITION TO OREGON HEALTH AUTHORITY'S
MOTION FOR PROTECTIVE ORDER

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

FamilyCare should have access to the basis for the agency's about-face because it is highly relevant to FamilyCare's retaliation claim. The discovery is probative of whether Saxton's post-hoc rationalization for the policy in 2017 was pretext for targeting FamilyCare. *See id.* ¶¶ 11-14 (describing changes in policies).

### 2. The discovery sought is highly relevant to FamilyCare's breach of contract claims.

FamilyCare's requested supplemental discovery is also relevant to its contract claims. FamilyCare's claim for breach of the settlement agreement alleges OHA implemented the reimbursement policy to claw back monies paid to FamilyCare to settle claims regarding the 2015 and 2016 rates. *See* FAC ¶¶ 92-97, 100-101. Because the reimbursement policy is at the heart of FamilyCare's claim, discovery dispelling OHA's argument that the policy was necessary is highly relevant to proving that the reimbursement policy was actually a disguised claw back.

FamilyCare's other claim, for breach of the implied covenant of good faith and fair dealing, alleges, among other things, that OHA acted in bad faith by setting rates that were unreasonable, biased, and based on erroneous data and methodology. FAC ¶ 108. Information about rate-setting changes in subsequent years is likewise directly relevant to whether OHA in fact acted in bad faith when it refused to make those changes earlier, and to rebut OHA and Saxton's proffered explanations for why earlier changes were not feasible. *See* ECF 438 ¶¶ 9-16. Similarly, FamilyCare is entitled to discovery about OHA's decision to award Health Share higher rates to care for FamilyCare's former members to test OHA's explanations for the rate disparity between FamilyCare and Health Share in prior years.

Indeed, OHA and Saxton repeatedly insisted that FamilyCare's rates were so low—and so much lower than Health Share's—because FamilyCare's population was healthier, and they refused to raise FamilyCare's rates even when they imposed heavy losses, arguing that the rates were appropriate and that FamilyCare's business decisions were solely to blame for its financial woes. But if that were the case, why did OHA dole out significant rate increases to Health Share shortly after it absorbed FamilyCare's members and pay Health Share $82.5 million more than it

5-    OPPOSITION TO OREGON HEALTH AUTHORITY'S
MOTION FOR PROTECTIVE ORDER

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

paid FamilyCare to provide *the same services to the same population*? The answer to that question bears directly on the main issues in this case.

OHA argues discovery pertaining to later rate-setting years will not prove OHA's bias and bad faith because, in 2019 and 2020, "the market had changed" and therefore OHA's rate setting changes cannot evidence a breach of the parties' earlier contract. ECF 434 at 5. This argument misses the mark; whether FamilyCare will ultimately be able to prove its case before a jury is separate from whether FamilyCare is entitled to seek supplemental discovery that could allow it to do so. Indeed, the fact that OHA makes this argument highlights the need for discovery. If OHA wants to argue to the jury that it belatedly addressed FamilyCare's concerns because the Medicaid market "changed" after FamilyCare's demise, that is all the more reason that FamilyCare needs discovery that could show otherwise.[4]

**B.      FamilyCare's requested supplemental discovery is not barred by FRE 407.**

OHA asserts that *discovery* into certain limited aspects of 2019 and 2020 rate setting is not appropriate because such evidence *might not be admissible*. That argument fails for three reasons: (1) FRE 407 is a rule of admissibility, not discovery; (2) FRE 407 does not apply to OHA's actions; and (3) even if the rate hikes are within the scope of the FRE 407, OHA's conduct falls within well-established exceptions to the rule.

As noted in FamilyCare's Motion for Discovery, ECF 436, even if FRE 407 *might* apply to exclude evidence from trial, such analysis is premature at this stage because FRE 407 is a rule of *admissibility*, not *discovery*. *See, e.g.*, *Pershing Pac. W., LLC v. Marine Max, Inc.*, No. 10–cv–1345–L, 2013 WL941617, at *5 (S.D. Cal. Mar. 11, 2013); *Granberry v. Jet Blue Airways*, 228 F.R.D. 647, 651 n.2 (N.D. Cal. 2005) ("Rule 407 governs admissibility. It does not preclude

---

[4]      Indeed, in its Response to FamilyCare's Motion for Discovery filed earlier today, OHA speculates about things that "could be the reason" for OHA's changes to rate-setting. ECF 447 at 4. OHA's argument just reinforces FamilyCare's point: while there *could* be benign reasons for the changes, what matters are the *actual* reasons, which discovery is necessary to reveal. OHA also argues that, to show pretext, FamilyCare must do more than simply identify the changes. *Id.* Again, that is the purpose of discovery.

6-              OPPOSITION TO OREGON HEALTH AUTHORITY'S          **Perkins Coie LLP**
                MOTION FOR PROTECTIVE ORDER                     1120 N.W. Couch Street, Tenth Floor
                                                                Portland, Oregon 97209-4128
                                                                Phone: 503.727.2000
                                                                Fax: 503.727.2222

discovery."). Admissibility is not properly decided at this stage because FamilyCare has not had the opportunity to review that evidence and determine exactly how it would be used at trial. 12 Fed. Proc., L. Ed. § 33:225 ("The admissibility of evidence of subsequent remedial measures offered for particular purposes cannot be determined in advance of trial, because the relevance of such evidence can only be determined in the context of the state of the evidence at the time that proof of subsequent remedial measures is offered in evidence.").

In any event, FRE 407 does not apply here. The rule bars evidence of subsequent measures that would have made the "earlier injury or harm less likely to occur" to prove culpable conduct by a defendant. It is grounded in public policy: "The purpose of Rule 407 is to ensure that prospective defendants will not forego safety improvements because they fear that these improvements will be used against them as evidence of their liability." *In re Aircrash in Bali, Indonesia*, 871 F.2d 812, 816 (9th Cir. 1989); *see Pau v. Yosemite Park & Curry Co.*, 928 F.2d 880, 888 (9th Cir. 1991) ("Rule 407 is based on the policy of encouraging potential defendants to remedy hazardous conditions without fear that their actions will be used as evidence against them."). That is not at issue here. FamilyCare alleges that OHA and Saxton purposefully and in bad faith retaliated through punitive rate-setting and provided pretextual reasons for cutting or refusing to increase FamilyCare's rates. Allowing OHA and Saxton to exclude evidence about how and why OHA changed rate setting once FamilyCare was no longer in the market would turn the fundamental purpose of FRE 407 on its head by barring discovery that would shed light on potentially willful, intentional, and bad faith conduct.

Even if FRE 407 otherwise applied, the discovery sought falls within well-established exceptions to the rule, to show, for example, that the rate increases and changes were measures that Defendants could have taken in prior years but, in bad faith, opted against. *Boeing Airplane Co. v. Brown*, 291 F.2d 310 (9th Cir. 1961) (design changes to an airplane after a crash were admissible to show "it would have been feasible and practicable to incorporate those features" before the crash); *Michaels v. Taco Bell Corp.*, NO. 3:10-cv-1051, 2012 WL 13054260, at *11

7-     OPPOSITION TO OREGON HEALTH AUTHORITY'S
MOTION FOR PROTECTIVE ORDER

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

(D. Or. Oct. 29, 2012). It is also admissible for impeachment purposes, *see* FRE 407, which is especially pertinent here given that OHA and Saxton made numerous excuses for the low rates to FamilyCare and failing to make changes FamilyCare sought. Under that same exception, it is admissible to impeach the explanation OHA now offers up for raising rates and changing methodologies. ECF 434 at 5. Finally, FRE 407 does not exclude steps taken toward implementing remedial measures. *See, e.g.*, *Rigsbee v. City and Cty. of Honolulu*, No. 17-00532, 2019 WL 1102496, at *1-2 (D. Haw. Mar. 7, 2019) ("Reports, investigations, and self-analysis of deficiencies that represent the preliminary steps that may lead to changes or decisions are not remedial measures themselves."); *Aranda v City of McMinnville*, 942 F. Supp. 2d 1096, 1103-04 (D. Or. 2013). Any correspondence, reports, audits, analyses, or other actions related to the 2019 and 2020 rate-setting changes at issue are admissible, and thus, discoverable.

Finally, *even if* the Court concluded that FRE 407 barred the use of such evidence against OHA, it is still discoverable and admissible as to Ms. Saxton because she was no longer director when the changes and increases were implemented. *Martinez v. Davis*, No. CV 05-5684, 2011 WL 13213962, at *2 (C.D. Cal. Mar. 17, 2011).

**C.     OHA failed to meet its burden of demonstrating undue burden.**

OHA's speculative and unsubstantiated assumptions about the time and cost required to supplement discovery fall well short of satisfying OHA's burden for obtaining a protective order. The party seeking a protective order has the burden of demonstrating good cause, which requires a showing that "specific prejudice or harm will result if the protective order is not granted." *See Rapid Funding Grp., Inc. v. Keybank Nat. Ass'n*, No. CV 07-1348-PK, 2008 WL 4681611, at *3 (D. Or. Oct. 22, 2008) (citation omitted). Good cause is not shown by merely offering broad allegations of harm, unsubstantiated by specific examples or articulated reasoning. *Id.*; *see also Aikens v. Deluxe Fin. Servs., Inc.*, 217 F.R.D. 533, 536–37 (D.Kan.2003) (requiring "a particular and specific demonstration of fact" in support of a request for a protective order based on undue burden or expense); *Trinos v. Quality Staffing Servs. Corp.*, 250 F.R.D. 696, 698 (S.D.Fla.2008).

OPPOSITION TO OREGON HEALTH AUTHORITY'S MOTION FOR PROTECTIVE ORDER

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

OHA has failed to show good cause. OHA ignores the limited supplementation that FamilyCare seeks and instead relies on speculative projections based on inapt comparisons to prior productions. *See* ECF 434 at 6 ("FamilyCare seeks *potentially* hundreds of thousands of pages of documents, which *could* require hundreds of hours to review and produce. . . . FamilyCare's requests *could* require an additional production of documents comparable to OHA's already substantial production . . .") (Emphases added.). But OHA provides no actual facts or information from which this Court could reasonably conclude that FamilyCare's request for supplemental discovery will be unduly burdensome.

OHA suggests the "substantial production" of documents in this case to date somehow demonstrates that supplemental discovery into certain limited aspects of 2019 and 2020 rate-setting will require a similar effort and result in a similar quantity of documents. But this is a non-sequitur; the number of documents produced in this action—many of which have nothing to do with rate-setting at all, and which go as far back as 2015—sheds no light whatsoever on the volume of documents likely to be responsive to FamilyCare's limited requests for supplementation for 2019 and 2020 rate-setting years, which will assuredly be much lower.  For example, to explore why OHA raised Health Share's rates so much in 2019, FamilyCare seeks discovery about how Health Share's rates were set in 2019, not all rate-setting materials for all 15 CCOs in all regions. And for 2020, FamilyCare seeks discovery about specific changes OHA implemented, not, as OHA suggests, all documents about CCO 2.0.

OHA's supporting declaration is uninformative because it merely *hypothesizes* that that "a comparable effort" will be required to collect, review, and produce documents in response to FamilyCare's present request. ECF 435 ¶ 5 (reaching this conclusion based on "experience with similar cases"). Absent from the declaration is any evidence to suggest that OHA actually ran searches or otherwise investigated the volume of potentially responsive documents to FamilyCare's request in reaching that conclusion. Such conclusory "evidence" falls well short of the required showing for a protective order based on undue burden. *See generally Cartel Asset*

9-    OPPOSITION TO OREGON HEALTH AUTHORITY'S
MOTION FOR PROTECTIVE ORDER

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

*Mgmt. v. Ocwen Fin. Corp.*, No. 01-CV-01644-REB-CBS, 2010 WL 502721, at \*16-17 (D. Colo. Feb. 8, 2010) (denying motion for protective order under FRCP 26(b)(2)(B) where the supporting declaration was "more notable for the information it [did] not provide" and left the court "to guess as to the relative burdens and expense of retrieving data"). Because the supplemental discovery FamilyCare now seeks is limited in both time and scope, such discovery should at most constitute a small fraction of the documents produced thus far. And as a result, whether some documents sought in supplemental discovery may be designated as Attorneys' Eyes Only does not change the analysis. Any dispute about the designation of such documents will necessarily be much more limited than it has been for documents pertaining to all CCOs' rate-setting in prior years. Moreover, the possibility that some documents might be labeled AEO, and that there might be some disagreement about such labels, is no basis for depriving FamilyCare of the opportunity to prove its case.

> **D.    FamilyCare's limited request for supplemental discovery is proportional to the needs of this case.**

FamilyCare's requested supplemental discovery is appropriately limited in scope and proportional to the needs of this case—a high-stakes dispute involving a state agency that retaliated against a government contractor and breached its obligations under a statutorily-mandated contract. *See* Fed. R. Civ. P. 26(b)(1) (requiring consideration "the parties' relative access to relevant information," "the amount in controversy," and "the importance of the issues at stake in the action"); *see also* Fed .R. Civ. P. 26 Advisory Committee Note (2015) (the proportionality requirement is not "intended to permit the opposing party to refuse discovery simply by making a boilerplate objection that it is not proportional"). As set out above, the benefits of FamilyCare's requested discovery outweigh any attendant burdens, which can and should be mitigated by crafting limited search terms and selecting appropriate custodians.

## V.    CONCLUSION

For these reasons and those articulated in FamilyCare's Motion for Discovery, ECF 436, this Court should deny OHA's motion.

| 10- | OPPOSITION TO OREGON HEALTH AUTHORITY'S MOTION FOR PROTECTIVE ORDER | **Perkins Coie LLP**<br>1120 N.W. Couch Street, Tenth Floor<br>Portland, Oregon 97209-4128<br>Phone: 503.727.2000<br>Fax: 503.727.2222 |

DATED: June 8, 2021.                          **PERKINS COIE LLP**

By: */s/ Thomas R. Johnson*
    **Stephen F. English**, OSB No. 730843
    SEnglish@perkinscoie.com
    **Thomas R. Johnson** (OSB No. 010645)
    TRJohnson@perkinscoie.com
    **Heidee Stoller** (OSB No. 072835)
    HStoller@perkinscoie.com
    **Matthew J. Mertens** (OSB No. 146288)
    MMertens@perkinscoie.com
    **Sasha Petrova** (OSB No. 154008)
    SPetrova@perkinscoie.com
    PERKINS COIE LLP
    1120 N.W. Couch Street, Tenth Floor
    Portland, Oregon 97209-4128
    Telephone: 503.727.2000
    Facsimile:  503.727.2222

    **Matthew P. Gordon** (admitted *pro hac vice*)
    MGordon@perkinscoie.com
    **David B. Robbins** (OSB No. 070630)
    DRobbins@perkinscoie.com
    PERKINS COIE LLP
    1201 Third Avenue, Suite 4900
    Seattle, Washington 98101-3099
    Telephone: 206.359.8000
    Facsimile:  206.359.9000

    *Attorneys for Plaintiff FamilyCare, Inc.*

11-    OPPOSITION TO OREGON HEALTH AUTHORITY'S
    MOTION FOR PROTECTIVE ORDER