**Stephen F. English** (OSB No. 730843)
SEnglish@perkinscoie.com
**Thomas R. Johnson** (OSB No. 010645)
TRJohnson@perkinscoie.com
**Heidee Stoller** (OSB No. 072835)
HStoller@perkinscoie.com
**Matthew J. Mertens** (OSB No. 146288)
MMertens@perkinscoie.com
**Sasha Petrova** (OSB No. 154008)
SPetrova@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Telephone: 503.727.2000
Facsimile:  503.727.2222

**Matthew P. Gordon** (admitted *pro hac vice*)
MGordon@perkinscoie.com
**David B. Robbins** (OSB No. 070630)
DRobbins@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Telephone: 206.359.8000
Facsimile:  206.359.9000

*Attorneys for Plaintiff FamilyCare, Inc.*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **FAMILYCARE, INC.**, an Oregon non-profit corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>**OREGON HEALTH AUTHORITY**, an agency of the State of Oregon, and **LYNNE SAXTON**,<br><br>    Defendants. | Case No. 6:18-cv-00296-MO<br><br>**PLAINTIFF FAMILYCARE, INC.'S OPPOSITION TO OREGON HEALTH AUTHORITY'S MOTION TO DISMISS, MOTION FOR SUMMARY JUDGMENT, AND MOTION TO STRIKE**<br><br>ORAL ARGUMENT REQUESTED |

FAMILYCARE'S OPPOSITION TO MOTION TO
DISMISS, MOTION FOR SUMMARY JUDGMENT,
AND MOTION TO STRIKE

Perkins Coie LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

**TABLE OF CONTENTS**

**Page(s)**

INTRODUCTION ................................................................................................1

POINTS AND AUTHORITIES ........................................................................2

    I.    Background .......................................................................................2

        A.    Factual Background .............................................................2

            1.    OHA and FamilyCare enter into a five-year Contract that requires OHA to exercise discretion in setting FamilyCare's capitation rates. ....................................................2

            2.    OHA provides FamilyCare with 2017 rates developed using faulty methodologies and incorrect data. .........................3

            3.    OHA provides FamilyCare with an incomplete rate amendment for 2018 that suffers from the same defects in methodology and data errors as FamilyCare identified in 2017.................................................................................3

            4.    OHA forces FamilyCare to decide whether to accept the admittedly incorrect 2018 rate amendment in violation of Oregon law.................................................................................4

        B.    Procedural Background.......................................................5

            1.    This Court previously granted OHA's motion to dismiss FamilyCare's breach of contract claim on the grounds that FamilyCare had no contractual expectation to receive actuarially sound rates...............................................................5

            2.    On reconsideration, this Court acknowledged that, for purposes of the implied covenant claim, FamilyCare's reasonable contractual expectations could be informed by statutory duties but concluded that good faith did not apply to the Contract................................................................6

             3.    The Ninth Circuit vacated and reversed for consideration of the Contract on a full record. .........................................7

             4.    FamilyCare filed its Fifth Amended Complaint, incorporating the Ninth Circuit's ruling and clarifying its allegations for trial. ...................................................................7

i-    TABLE OF CONTENTS

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

**TABLE OF CONTENTS (continued)**

**Page(s)**

MOTION TO DISMISS .................................................................................................8

    I.      Legal Standard ................................................................................8

    II.     Argument ........................................................................................8

          A.     The duty of good faith and fair dealing applies to the parties' five-year Contract. ...................................................................9

              1.     The Contract's express language and the circumstances underlying its formation unambiguously establish a five-year term. ................................................9

              2.     Even if the Contract was ambiguous, resolution of any such ambiguity is a question of fact for the factfinder. .....................11

          B.     Whether OHA breached its duty of good faith and fair dealing is an issue of fact for trial. ................................................12

              1.     FamilyCare's reasonable expectations, and whether OHA failed to meet those expectations, are issues for the jury to decide. ...................................................13

              2.     The jury's decision can be informed by extrinsic evidence. ......14

               3.     FamilyCare alleged sufficient facts to state a claim for breach of the implied covenant. ...............................................15

                    a.     OHA violated FamilyCare's reasonable expectation that OHA would not set rates based on bias against FamilyCare. ....................................16

                    b.     OHA violated FamilyCare's reasonable expectation that OHA would correct known material errors. ..........17

                    c.     OHA violated FamilyCare's reasonable expectation that OHA would provide rate amendments in a timely manner. ...........................................17

               4.     FamilyCare's objectively reasonable expectations are not dependent on "actuarial soundness." ...........................................19

           C.     OHA's remaining arguments do not warrant dismissal of FamilyCare's Third claim for relief. .....................................21

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

**TABLE OF CONTENTS (continued)**

Page(s)

1.    FamilyCare does not seek to vary express Contract terms. ....... 21

2.    *Tolbert* is distinguishable and does not apply in the
      Medicaid rate setting context. ................................................... 22

MOTION FOR PARTIAL SUMMARY JUDGMENT ........................................... 24

I.    Legal Standard ................................................................................. 24

II.    Argument ......................................................................................... 25

A.    OHA's summary judgment motion should be denied because it
      was filed well beyond the deadline for such motions and ignores
      the Court's directives at the April 5, 2021, status conference. ............. 25

B.    OHA's summary judgment motion should be denied because
      FamilyCare's enterprise damages are direct damages. ......................... 28

C.    OHA's summary judgment motion should be denied because the
      limitation of liability provision is unenforceable when stemming
      from OHA's willful conduct and gross negligence. ............................. 29

MOTION TO STRIKE ........................................................................................ 32

I.    Legal Standard ................................................................................. 33

II.    Argument ......................................................................................... 33

A.    A motion to strike is not the appropriate procedural vehicle for
      excluding evidence under FRE 407. ....................................................... 33

B.    OHA has failed to meet its high burden of showing Paragraph 78
      "irrelevant" in the context of a motion to strike. ................................. 35

CONCLUSION ................................................................................................... 35

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Airfreight Exp. Ltd v. Evergreen Air Ctr., Inc.*,
  215 Ariz. 103 (Ct. App. 2007) ...................................................................................30

*Allen v. FamilyCare, Inc.*,
  812 F. App'x 413 (9th Cir. 2020), *as amended* (May 7, 2020) ................................7, 8, 12, 19

*Bagley v. Mt. Bachelor, Inc.*,
  356 Or. 543 (2014)......................................................................................................31

*Batzer Const., Inc. v. Boyer*,
  204 Or. App. 309 (2006)............................................................................................10

*Best v. U.S. Nat'l Bank of Oregon*,
  303 Or. 557 (1987)...........................................................................................14, 16, 23

*Biotronik A.G. v. Conor Medsystems Ireland, Ltd.*,
  11 N.E.3d 676 (N.Y. 2014)......................................................................................28, 29

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)....................................................................................................24

*City of Dillingham v. CH2M Hill Nw., Inc.*,
  873 P.2d 1271 (Alaska 1994).....................................................................................30

*Colonial Life Ins. Co. of Am. v. Elec. Data Sys. Corp.*,
  817 F. Supp. 235 (D.N.H. 1993)...............................................................................31

*Degon v. USAA Cas. Ins. Co.*,
  No. 3:19-CV-01152-IM, 2021 WL 413839 (D. Or. Jan. 7, 2021)...........................14

*Depaul Indus. v. City of Eugene*,
  No. 6:18-CV-00320-MC, 2020 WL 5078758 (D. Or. Aug. 27, 2020)..................11, 13, 14, 16

*Farina v. Mt. Bachelor, Inc.*,
  66 F.3d 233 (9th Cir. 1995) .......................................................................................31

*Fayer v. Vaughn*,
  649 F.3d 1061 (9th Cir. 2011) .....................................................................................8

*Gregory Funding LLC v. Saksoft, Inc.*,
  No. 3:16-CV-480-SI, 2016 WL 4480693 (D. Or. Aug. 24, 2016) ...........................13

iv-   TABLE OF AUTHORITIES

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

## TABLE OF AUTHORITIES (continued)

**Page(s)**

*Gunderson LLC v. BCG Properties Grp., Inc.*,
No. 3:19-CV-01569-AC, 2020 WL 1529356 (D. Or. Mar. 30, 2020)........................14, 15, 17

*Hamilton Properties, Inc. v. Associated Grocers Inc.*,
144 Or. App. 171 (1996)...............................................................................................................12

*Hansen v. Gov't Emps. Ins. Co.*,
771 F. App'x 385 (9th Cir. 2019) ................................................................................................17

*Iron Horse Eng'g Co., v. Nw. Rubber Extruders, Inc.*,
193 Or. App. 402 (2004)...............................................................................................................14

*J. A. Jones Const. Co. v. City of Dover*,
372 A.2d 540 (Del. Super. Ct. 1977) ..........................................................................................30

*Jackson v. Starbucks Corp.*,
No. CV 19-1487, 2020 WL 3791873 (D.D.C. July 7, 2020)......................................................35

*Jewish Hosp. of St. Louis, Missouri v. Boatmen's Nat. Bank of Belleville*,
261 Ill. App. 3d 750 (Ill. App. Ct. 1994) ...................................................................................30

*Jones v. George Fox Univ.*,
No. 3:19-CV-0005-JR, 2021 WL 1414280 (D. Or. Feb. 3, 2021), *reported and
recommendation adopted*, No. 3:19-CV-00005-JR, 2021 WL 1414202 (D. Or.
Apr. 14, 2021) .........................................................................................................................16, 22

*Kalisch-Jarcho, Inc. v. City of New York*,
58 N.Y.2d 377 (1983) .............................................................................................................30, 31

*Klamath Off–Project Water Uses, Inc. v. Pacificorp*,
237 Or. App. 434 (2010)...............................................................................................................13

*L.E. v. Lakeland Joint School District #272*,
403 F. Supp. 3d 888 (D. Id 2019) ...............................................................................................34

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
519 F.3d 1025 (9th Cir. 2008) ........................................................................................................8

*Mireskandari v. Daily Mail and General Trust PLC*,
NO. CV 12-02943 MMM, 2013 WL 12129642 (C.D. Cal. July 31, 2013) ............................34

*Morrow v. Red Shield Ins. Co.*,
212 Or. App. 653 (2007)...............................................................................................................14

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

## TABLE OF AUTHORITIES (continued)

**Page(s)**

*Nguyen v. Simpson Strong-Tie Co., Inc.*,
No. 19-cv-07901-TSH, 2020 WL 5232563 (N.D. Cal. Sept. 2, 2020) ....................................34

*Park v. Welch Foods, Inc.*,
No. 5:12-CV-06449-PSG, 2014 WL 1231035 (N.D. Cal. Mar. 20, 2014) .............................35

*Pitts v. G4S Secure Sols. (USA) Inc.*,
No. 3:20-CV-00074-AC, 2020 WL 6333959 (D. Or. May 26, 2020), *report
and recommendation adopted*, No. 3:20-CV-00074-AC, 2020 WL 4495453
(D. Or. July 31, 2020) ....................................................................................................27

*Planned Parenthood Arizona Inc. v. Betlach*,
727 F.3d 960 (9th Cir. 2013) ............................................................................................2

*Ramco, Inc. v. Pac. Ins. Co.*,
249 Or. 666 (1968)..........................................................................................................29

*Saroya v. Univ. of the Pac.*,
5:20-CV-03196-EJD, 2020 WL 7013598 (N.D. Cal. Nov 27, 2020).....................................34

*Sidney-Vinstein v. A.H. Robins Co.*,
697 F.2d 880 (9th Cir. 1983) ...........................................................................................33

*Smithkline Beecham Corp. v. Abbott Lab'ys*,
No. C 07-05702 CW, 2011 WL 3903190 (N.D. Cal. Sept. 6, 2011).....................................31

*Sommer v. Fed. Signal Corp.*,
79 N.Y.2d 540, 593 N.E.2d 1365 (1992)............................................................................31

*State ex rel. Mountain States Tel. & Tel. Co. v. Dist. Ct. In & For Silver Bow*,
160 Mont. 443 (1972) ......................................................................................................30

*Superior Integrated Sols., Inc. v. Reynolds & Reynolds Co.*,
No. 3:09-CV-314, 2009 WL 4135711 (S.D. Ohio Nov. 23, 2009) .......................................30

*Swenson v. Legacy Health Sys.*,
169 Or. App. 546 (2000)..................................................................................................14

*T.D. Bank, N.A. v. Nutmeg Invs., LLC*,
No. X02UWYCV085009473S, 2010 WL 4277552 (Conn. Super. Ct. Sept. 29,
2010) (unpublished) ........................................................................................................30

*Tolbert v. First Nat'l Bank of Oregon*,
312 Or. 485 (1991)......................................................................................................22, 23

vi-   TABLE OF AUTHORITIES

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

## TABLE OF AUTHORITIES (continued)

**Page(s)**

*Wanke Cascade Distribution, Ltd. v. Forbo Flooring, Inc.*,
No. 3:13-CV-00768-AC, 2015 WL 1757151 (D. Or. Apr. 17, 2015) .....................................33

*Welch v. U. S. Bancorp Realty & Mortg. Tr.*,
286 Or. 673 (1979)..........................................................................................................29

*Whitman-McCoy v. Dep't of Corr.*,
132 Or. App. 45 (1994)....................................................................................................28

*Yamamoto v. Omiya*,
564 F.2d 1319 (9th Cir. 1977) ........................................................................................33

*Yogman v. Parrott*,
325 Or. 358 (1997)......................................................................................................9, 10

*Zetwick v. Cty. of Yolo*,
850 F.3d 436 (9th Cir. 2017) .....................................................................................24, 25

**STATUTES**

42 U.S.C. § 1396...................................................................................................................24

Medicaid Act............................................................................................................................2

ORS 414.590.............................................................................................................................2

ORS 414.652............................................................................................................... passim

**OTHER AUTHORITIES**

42 C.F. R. § 438.4(a).......................................................................................................20, 22

2013 Reg. Sess. (2013) .........................................................................................................11

5C Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1382
(3d ed.) ...........................................................................................................................33

FRCP 12.......................................................................................................................8, 17, 33

FRE 407 ..............................................................................................................................33, 34

Hearing on S.B. 725 Before the S. Comm. on Health Care & Human Servs., 77th
Or. Legis. Assemb., 2013 Reg. Sess. (2013) ..........................................................11

Restatement (Second) of Contracts § 205, cmt. d (1981)........................................................13

vii-    TABLE OF AUTHORITIES

## TABLE OF AUTHORITIES (continued)

**Page(s)**

Senate Bill 725 ...................................................................................................................................11

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

**INTRODUCTION**

OHA's motion to dismiss, motion for summary judgment, and motion to strike lack merit. Each will be addressed in turn.

OHA's Motion to Dismiss ignores that the issues it raises were largely addressed in prior rulings—the Ninth Circuit recognized that Oregon law requiring five-year CCO contracts indicated the parties' contract has a five-year term, and this Court previously stated that FamilyCare could have reasonable expectations about how OHA would set its rates if the contract had a five-year term. Nevertheless, OHA argues that FamilyCare could not have reasonably expected OHA, a state agency, to act in an unbiased manner and to refrain from driving a CCO out of business and forcing its 100,000 members into a new Medicaid plan. OHA is free to make that argument to the jury, but the scope of FamilyCare's expectations, and whether OHA breached them, are jury issues.

OHA's Motion for Partial Summary Judgment ignores both the expiration of the summary judgment deadline in August *2018*, and this Court's recent directive about new dispositive motions. It also seeks to "dismiss FamilyCare's new damages theory" despite that such damages have long been at issue. *Three years ago,* FamilyCare alleged that OHA forced it out of business and caused a loss of enterprise value, and OHA acknowledged the enterprise damages in its last motion for summary judgment yet failed to raise any limitation of liability defense. FamilyCare identified no new theory of damages in its Fifth Amended Complaint, and OHA's defense is too late. It is also factually and legally meritless because it is premised on an inaccurate characterization of the damages and a limitation of liability provision that is unenforceable under Oregon law due to OHA's willful conduct.

Finally, OHA's Motion to Strike ignores the fact that paragraph 78 of the Fifth Amended Complaint discusses the dramatic rate increases and rate-setting changes OHA implemented after FamilyCare went out of business—allegations which are highly relevant to FamilyCare's theory that OHA targeted it through biased rate-setting and to OHA's defenses about why FamilyCare's rates were so low. Indeed, OHA argued for years that it *could not* pay FamilyCare more, and

1- FAMILYCARE'S OPPOSITION TO MOTION TO DISMISS, MOTION FOR SUMMARY JUDGMENT, AND MOTION TO STRIKE

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

specifically that it could not pay the higher rates awarded to Health Share. After giving Health Share huge increases for the same population after FamilyCare closed, OHA cannot deny the relevance of its 2019 and 2020 rate setting to the issues in this case.

## POINTS AND AUTHORITIES

### I.    BACKGROUND

#### A.    Factual Background

##### 1.    OHA and FamilyCare enter into a five-year Contract that requires OHA to exercise discretion in setting FamilyCare's capitation rates.

Medicaid is a cooperative federal-state program that funds healthcare services for persons of limited means. *Planned Parenthood Arizona Inc. v. Betlach*, 727 F.3d 960, 963 (9th Cir. 2013). The program is jointly funded by the federal government and participating states and, subject to federal and state legal requirements, is administered at the state level. *See id.* As the agency responsible for administering Oregon's Medicaid program, OHA must comply with the requirements of the Medicaid Act, its implementing regulations, and applicable state law.

FamilyCare has contracted with OHA to provide Medicaid services to Oregonians since 1985. ECF 429, Fifth Am. Complaint ("FAC") ¶ 19. Until 2013, those contracts had a one-year term, but in 2013, the Oregon legislature passed former ORS 414.652,[1] for the first time requiring that contracts between OHA and CCOs have a term of 5 years. Later that year, and consistent with this new statutory mandate, FamilyCare and OHA entered into a five-year contract that ran from January 1, 2014, through December 31, 2018 (the "Contract"). *See* ECF 433-2 at 7; FAC ¶ 19.[2] This Contract, and OHA's contracts with other CCOs, required OHA to set per-member, per-month "capitation" payment rates to reimburse CCOs like FamilyCare for

---

[1]    ORS 414.652 was renumbered as ORS 414.590 in 2019. The requirement that contracts between OHA and CCOs have a term of 5 years has remained unchanged. *See* ORS 414.590(2)(a) ("A contract entered into between [OHA] and a coordinated care organization. . . [s]hall be for a term of five years[.]"). For purposes of this brief, FamilyCare will refer to former ORS 414.652 as the statute in effect at all relevant times.

[2]    Although the Contract was initially set to expire at the end of 2018, it was subsequently extended through 2019. FAC ¶ 19.

2-    FAMILYCARE'S OPPOSITION TO MOTION TO DISMISS, MOTION FOR SUMMARY JUDGMENT, AND MOTION TO STRIKE

managing medical services for Medicaid-eligible Oregonians. FAC ¶ 10. The Contract also obligated OHA to provide FamilyCare with annual rate amendments and required OHA, in connection with those rate amendments, to "actuarially set [capitation rates] to reimburse [FamilyCare] for providing" covered services under the Contract. ECF 433-2 at 125.

### 2. OHA provides FamilyCare with 2017 rates developed using faulty methodologies and incorrect data.

Since 2015, the parties have had multiple disputes regarding OHA's rate-setting process and methodology. *See* FAC ¶¶ 20-28. FamilyCare and OHA settled their dispute over the 2015-2016 rates, with OHA agreeing to provide FamilyCare with a $24.8 million credit. *Id.* ¶ 30. The settlement agreement prevented OHA from penalizing FamilyCare for raising the settled issues or using the settlement credit to limit or reduce FamilyCare's capitation rates in future years. *Id.*

In defiance of the settlement, Defendant Saxton and OHA implemented a "reimbursement policy" to cut FamilyCare's 2017 rates by removing more than $34 million from FamilyCare's base data, far more than was removed from any other CCO. *See id.* ¶¶ 43, 98. While publicly portraying it as necessary to manage growth in CCO costs, OHA's reimbursement policy specifically targeted FamilyCare's investments in primary care by striking these costs as if they had not been incurred. *See id.* ¶¶ 93-94, 96-98. As a result, FamilyCare's 2017 rates were, on average, lower than the other 15 CCOs and were insufficient to cover FamilyCare's reasonable costs of providing the contracted services. *Id.* ¶ 33.

### 3. OHA provides FamilyCare with an incomplete rate amendment for 2018 that suffers from the same defects in methodology and data errors as FamilyCare identified in 2017.

On October 31, 2017, OHA sent FamilyCare a draft of the proposed contract amendment for 2018. FAC ¶ 59. OHA explained that the rates in OHA's draft contract amendment "may change based on the outcome of the pending independent reviews and redetermination analysis." *Id.* The rates OHA provided to FamilyCare were $95 million lower than FamilyCare's projected costs for 2018 and would have exhausted FamilyCare's reserves by August 2018. *Id.* ¶ 61.

3- FAMILYCARE'S OPPOSITION TO MOTION TO DISMISS, MOTION FOR SUMMARY JUDGMENT, AND MOTION TO STRIKE

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

FamilyCare's analysis of the preliminary rates revealed that OHA again ignored FamilyCare's concerns with OHA's rate development and assumptions and based the rates again on OHA's "reimbursement policy," that OHA used to target FamilyCare. *Id.* ¶ 57. FamilyCare also identified flaws in OHA's underlying data, including errors in member enrollment and eligibility data, that reduced FamilyCare's rates more than other CCOs. *Id.* FamilyCare's repeated requests to OHA for clarification and correction were rebuffed or ignored. *Id.* ¶ 65.

Finally, on December 8, 2017, OHA agreed that data errors identified by FamilyCare in OHA's proposed 2018 rates required OHA to reevaluate those rates but refused to provide even a preliminary analysis until December 29, 2017—the last business day of the year and the last day under the Contract for FamilyCare to accept the 2018 rate amendment. *Id.* ¶ 66.

> **4.      OHA forces FamilyCare to decide whether to accept the admittedly incorrect 2018 rate amendment in violation of Oregon law.**

But OHA never gave FamilyCare the chance to consider even that "preliminary analysis." On December 20, 2017, OHA changed course and abruptly gave FamilyCare a twenty-four-hour ultimatum to decide whether it would accept the 2018 rate amendment, as is, despite OHA's acknowledgement that errors FamilyCare identified required a redetermination analysis that would materially affect FamilyCare's rates. *Id.* ¶ 68.

OHA's ultimatum accelerated the deadline for accepting the 2018 rate amendment by 10 days, despite the fact that, under former ORS 414.652, OHA was required to "give a coordinated care organization at least 60 days' advance notice of any amendments the authority proposes to existing contracts between the authority and the coordinated care organization, or to contracts to be renewed, including the global budget paid to the coordinated care organization under the contract." *Id.*

Faced with biased and artificially low 2018 rates that were projected to cause FamilyCare substantial deficits exceeding FamilyCare's reserves, and without OHA indicating what, if any, adjustments would be made to address the admitted data errors, FamilyCare could not responsibly sign the 2018 Amendment within the timeframe demanded by Director Allen. *Id.* ¶

4-    FAMILYCARE'S OPPOSITION TO MOTION TO DISMISS, MOTION FOR SUMMARY JUDGMENT, AND MOTION TO STRIKE

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

70. Instead, on December 22, 2017, FamilyCare was forced to enter a one-month agreement with OHA to allow FamilyCare to continue operations while transitioning its members to other CCOs through January 31, 2018. *Id.* ¶ 71. At OHA's insistence, the one-month agreement included a provision foreclosing FamilyCare's opportunity to extend the agreement if the issues and errors identified by FamilyCare were subsequently addressed by OHA. ECF 222 at 42; ECF 225-3 at 2. This new language was not part of any prior CCO agreement between OHA and FamilyCare.

On January 23, 2018, a month after OHA forced FamilyCare to accept or reject the incomplete 2018 rate amendment, OHA issued a rate update stating that the capitation rates paid to CCOs in 2018 would increase by roughly 2-3%. FAC ¶ 75. This change would have resulted in an increase of no less than $20 million in additional compensation for FamilyCare. *Id.*

OHA then continued to change the rate-setting process to address many of the issues previously raised by FamilyCare. *Id.* ¶ 78. These changes would have resulted in disproportionately large increases in FamilyCare's rates had FamilyCare not been forced to forfeit its contract and shut down in January 2018. Simply put, the changes FamilyCare long sought, which OHA offered only after FamilyCare was out of the picture, would have enabled FamilyCare to remain in business. *Id.*

## B.     Procedural Background

FamilyCare provides the following summary of the relevant procedural background to correct certain representations and omissions in OHA's brief.

### 1.     **This Court previously granted OHA's motion to dismiss FamilyCare's breach of contract claim on the grounds that FamilyCare had no contractual expectation to receive actuarially sound rates.**

FamilyCare's Fourth Amended Complaint alleged that OHA breached express provisions of the parties' five-year Contract and that the Contract contains an implied covenant of good faith and fair dealing that protects FamilyCare's "objectively reasonable expectation, based on the Contract and applicable law, that OHA would present annual Rate Amendments that were reasonable, unbiased, actuarially sound, and free of errors in underlying data and methodology."

5-    FAMILYCARE'S OPPOSITION TO MOTION TO
      DISMISS, MOTION FOR SUMMARY JUDGMENT,
      AND MOTION TO STRIKE

ECF 111 at ¶¶ 149-154. FamilyCare alleged that OHA breached the implied covenant by setting rates that were "unreasonable, biased, actuarially unsound, and based on erroneous data and methodology." *Id.* at ¶152.

OHA first moved to dismiss FamilyCare's express and implied breach of contract claims in 2018. OHA argued, among other things, that FamilyCare had no reasonable contractual expectation to actuarially sound rates. ECF 21 at 10.[3] This Court initially agreed with OHA and dismissed both the express and the implied breach of contract claims. ECF 105 at 25-26. FamilyCare moved for reconsideration of that decision, ECF 108, and this Court granted FamilyCare's motion insofar as it agreed to reconsider its prior ruling with respect to FamilyCare's breach of implied covenant claim, ECF 187 at 20-21.

> **2.      On reconsideration, this Court acknowledged that, for purposes of the implied covenant claim, FamilyCare's reasonable contractual expectations could be informed by statutory duties but concluded that good faith did not apply to the Contract.**

At the hearing on FamilyCare's motion to reconsider, this Court focused on the issue of "whether the rate proposals each year amounted to new contract formation, which would eliminate the applicability of the implied covenant of good faith and fair dealing, or whether they amount to performance of a five-year contract[.]" ECF 187 at 65.[4] The Court observed that, if the Contract were for five years, a good faith obligation would apply, FamilyCare's reasonable contractual expectations could be informed by statute, and a reasonable jury could find in favor of FamilyCare on its claim:

> I should make clear if it's not that, if it's, in fact, sort of continuing performance on an original contract, *then I do agree with FamilyCare that the parties can have an expectation of good faith*

---

[3]      When OHA moved to dismiss, the operative complaint was FamilyCare's Third Amended Complaint. *See* ECF 1-1. FamilyCare filed its Fourth Amended Complaint during the parties' briefing on FamilyCare's motion for reconsideration. *See* ECF 111. Because FamilyCare's breach of contract claim remained unchanged in the later complaint, FamilyCare cites to the allegations from the Fourth Amended Complaint.

[4]      Because that issue had not been briefed, the record before this Court contained only five of the 332 pages of the original Contract executed in late 2013. *See* ECF 82.

6-    FAMILYCARE'S OPPOSITION TO MOTION TO
      DISMISS, MOTION FOR SUMMARY JUDGMENT,
      AND MOTION TO STRIKE

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

*and fair dealing that's informed by statutory duties*. What I said earlier in my opinion on [FamilyCare's breach of contract claim] is true as to express contractual terms: they're not altered by statutory requirements that are referenced in the contract but not incorporated as terms of the contract.

*But the same is not true for the issue we're now taking up with claim 10, and that is is there an implied understanding or covenant of good faith and fair dealing that's informed by the contract terms.*

And so my going the other way, my tentative view is if it's not a new contract every year with express terms that sort of erases the application of good faith and fair dealing, *then it's certainly plausible that a rational jury in this case could find an understanding of what the offered actuarial terms would be, informed by the relevant statutes that the parties have briefed in this case.*

ECF 187 at 23-24 (emphases added.)

Ultimately, this Court declined to reverse its prior ruling based on its conclusion that the "annual rate offers amount to new contract formation every year and therefore make inapplicable the doctrine of the implied covenant of good faith and fair dealing." *Id.* at 67; ECF 183 at 1. FamilyCare appealed this ruling.

### 3.    The Ninth Circuit vacated and reversed for consideration of the Contract on a full record.

On appeal, the Ninth Circuit vacated the dismissal of FamilyCare's breach of contract claim. *See Allen v. FamilyCare, Inc.*, 812 F. App'x 413, 417 (9th Cir. 2020), *as amended* (May 7, 2020). The Ninth Circuit remanded the case for further consideration of the parties' arguments under the applicable framework for contract interpretation and upon a complete record. *Id.* With respect to the Contract term, the Ninth Circuit observed that: "Oregon law requires contracts of this type have a five-year term. *See* Or. Rev. Stat. § 414.652(2)(a). That itself indicates that the yearly rate changes were not new contracts at all." *Id.* at 417 n.14.

### 4.    FamilyCare filed its Fifth Amended Complaint, incorporating the Ninth Circuit's ruling and clarifying its allegations for trial.

On remand, FamilyCare filed its Fifth Amended Complaint on April 27, 2021. ECF 429. That pleading clarified that FamilyCare's implied breach of contract claim is based on two

7-    FAMILYCARE'S OPPOSITION TO MOTION TO DISMISS, MOTION FOR SUMMARY JUDGMENT, AND MOTION TO STRIKE

theories: OHA acted in bad faith by (1) "presenting FamilyCare with a Rate Amendment for 2017 that was unreasonable, biased, and based on erroneous data and methodology, and a Rate Amendment for 2018 that was unreasonable, biased, actuarially unsound, and based on erroneous data and methodology," and (2) "forcing FamilyCare to decide whether to sign the full 2018 Amendment on December 20, 2017, in violation of former ORS 414.652(4) and without notice of the rates to which FamilyCare would be entitled under the contract. FAC ¶ 108. FamilyCare also amended the amount of damages it seeks but added no new damages theories.

## MOTION TO DISMISS

### I.    LEGAL STANDARD

On a motion to dismiss under Rule 12(b)(6), courts must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Accordingly, "[a] motion to dismiss will only be granted if the complaint fails to allege 'enough facts to state a claim to relief that is plausible on its face.'" *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted)).

### II.    ARGUMENT

The Ninth Circuit remanded to allow this Court to consider the Contract under the applicable framework for contract interpretation, which requires consideration of the entire agreement as well as extrinsic evidence of the parties' intent. *Allen*, 812 F. App'x at 417. As noted, the Ninth Circuit recognized that Oregon law requires OHA's contracts with CCOs to be for a five-year term. *Id.* n.14.

8-    FAMILYCARE'S OPPOSITION TO MOTION TO
DISMISS, MOTION FOR SUMMARY JUDGMENT,
AND MOTION TO STRIKE

Consistent with the Ninth Circuit's ruling, this Court should hold that the Contract has a five-year term and that OHA's actions were governed by an implied duty of good faith and fair dealing in exercising its discretion in setting rate amendments under the Contract. And, for the reasons previously articulated by this Court, this Court should deny OHA's motion to dismiss because a jury could reasonably conclude that OHA breached FamilyCare's objectively reasonable expectations under the Contract—expectations that are appropriately informed not only by the language of the contract, but also extrinsic evidence about the parties' long history of collaboration on these services, past practice, industry standards, applicable rate-setting statutes, and regulatory requirements. More fundamentally, FamilyCare could reasonably expect that a state agency, with its attendant constitutional and legal obligations, would implement the Medicaid program in a manner that was not retaliatory, discriminatory, biased, or inappropriately designed to force a contracting party to forfeit its contract and terminate its service to Oregon's Medicaid beneficiaries.

### A.    The duty of good faith and fair dealing applies to the parties' five-year Contract.

OHA concedes the Contract "was a five-year contract"—as it must, given that it affirmatively alleged a "five-year CCO Contract" in its counterclaim against FamilyCare, ECF 115 ¶ 197, and repeatedly referenced the "five-year" contract term in its prior motion to dismiss briefing, ECF 21 at 8, 13 (citing former ORS § 414.652). But OHA also argues that the annual rate amendments "involved new contract formation" to which good faith does not apply. ECF 432 at 14. This argument ignores the express contract terms and the circumstances of contract formation, both of which unambiguously demonstrate that the Contract is a five-year agreement.

### 1.    The Contract's express language and the circumstances underlying its formation unambiguously establish a five-year term.

Determining the length of a contract requires a court to apply the contract interpretation framework described in *Yogman v. Parrott,* 325 Or. 358 (1997), and its progeny. A court first examines the text of the disputed provision, in the context of the document as a whole and in

9-    FAMILYCARE'S OPPOSITION TO MOTION TO DISMISS, MOTION FOR SUMMARY JUDGMENT, AND MOTION TO STRIKE

light of the circumstances underlying contract formation. *Id.* at 361; *see also Batzer Const., Inc. v. Boyer*, 204 Or. App. 309, 317 (2006). If the text is unambiguous, the analysis ends and the meaning of the contract is decided as a matter of law. *Yogman*, 225 Or. at 361. If the text and context reveal that the provision is ambiguous, then the factfinder considers "extrinsic evidence of the contracting parties' intent." *Id.* at 363.

Here, both the express Contract terms and the circumstances underlying the Contract's formation unambiguously establish a five-year term. The first paragraph, Section I, provides the Contract is "effective January 1, 2014" and "expires on December 31, 2018" "[u]nless extended or terminated earlier in accordance with its terms." *See* 433-2 at 7 ("Effective Date and Duration"). This alone establishes that the Contract expressly provides for a five-year term. Moreover, various benchmarks for FamilyCare's performance expressly address "the first five years of operation." *Id.* at 67.

The Oregon legislation enacted in 2013 that authorized OHA to enter this Contract, further demonstrates that the Contract had a five-year term. *See Batzer Const., Inc.*, 204 Or. App. at 317 (in determining whether a contract is ambiguous, a court "can properly consider . . . the circumstances underlying the formation of the contract").

Specifically, since 2013 Oregon law has *required* five-year terms in OHA contracts:

> *A contract* entered into between the Oregon Health Authority and a coordinated care organization under ORS 414.625(1):
>
> (a) *Shall be for a term of five years*;
>
> (b) Except as provided in subsection (3) of this section, may not be amended more than once in each 12-month period[.]

Former ORS 414.652(1) (emphases added). The use of the singular throughout that statute confirms that the legislature intended the OHA/CCO relationship to be governed by a single contract subject to certain amendments.

The statute's legislative history reveals that the law was enacted to reduce the frequency with which CCOs negotiate contracts with OHA, to increase stability in the Medicaid program,

10- FAMILYCARE'S OPPOSITION TO MOTION TO DISMISS, MOTION FOR SUMMARY JUDGMENT, AND MOTION TO STRIKE

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

and to encourage long-term investments by the CCOs. *See* Staff Measure Summary for S.B. 725 for the S. Comm. on Health Care & Human Servs., 77th Or. Legis. Assemb., 2013 Reg. Sess. (2013).[5] Before 2013, CCOs were required to annually enter new contracts with OHA. *Id.* CCOs argued that the short contract duration made it "difficult to justify long-term investments" in the absence of a guarantee that a CCO would continue to operate for more than a year. *See* Hearing on S.B. 725 Before the S. Comm. on Health Care & Human Servs., 77th Or. Legis. Assemb., 2013 Reg. Sess. (2013), (Exhibit 8, Submitted by Josh Balloch) ("Balloch Exhibit").[6] Senate Bill 725 solved that problem by requiring OHA to enter into five-year contracts with CCOs that could be amended only once every 12 months. *See* Staff Measure Summary for S.B. 725 for the H. Comm. on Health Care, 77th Or. Legis. Assemb., 2013 Reg. Sess. (2013).[7] Proponents of the bill argued that replacing the year-to-year contracts with longer, five-year contracts would foster the confidence and stability necessary to allow CCOs to make long-term investments in healthcare. *See* Balloch Exhibit.

In sum, the express Contract provisions, the governing statute, and its legislative history unambiguously show that the parties did not enter a Contract for a shorter term than five years. Therefore, the implied covenant of good faith and fair dealing applies to the Contract and its implementation, including OHA's proposed rate setting. *See Depaul Indus. v. City of Eugene*, No. 6:18-CV-00320-MC, 2020 WL 5078758, at *4 (D. Or. Aug. 27, 2020) ("Under Oregon law, every contract contains an implied duty of good faith and fair dealing.").

### 2. Even if the Contract was ambiguous, resolution of any such ambiguity is a question of fact for the factfinder.

OHA acknowledges the five-year term but contends that offering annual rate amendments, coupled with early termination if the CCO fails to accept the amendments, demonstrates that the parties' relationship is governed by a series of one-year contracts. ECF 432

---

[5]    https://olis.leg.state.or.us/liz/2013R1/Downloads/MeasureAnalysisDocument/18782.

[6]    https://olis.leg.state.or.us/liz/2013R1/Downloads/CommitteeMeetingDocument/27402.

[7]    https://olis.leg.state.or.us/liz/2013R1/Downloads/MeasureAnalysisDocument/21022.

11-  FAMILYCARE'S OPPOSITION TO MOTION TO DISMISS, MOTION FOR SUMMARY JUDGMENT, AND MOTION TO STRIKE

at 14-15. OHA's argument was disapproved of by the Ninth Circuit, *see Allen*, 812 F. App'x at 417 n.14, and is contrary to contract law and logic: the fact that a party may be able to amend or terminate a contract before its term expires does not speak to the term of the contract itself, or whether the implied covenant applies. For instance, if a contract has a ten-year term but is terminable at will or is terminable for material breach, OHA's logic would suggest that the contract actually has no term whatsoever, and that no duty of good faith applies to the performance of the contract.[8] There is no basis in contract law to support such a claim, and it is of course contrary to the statutory requirement in former ORS 414.652(1) that the contract "[s]hall be for a term of five years." Indeed, the fact that OHA re-set rates annually only heightens the importance of the obligation to implement the Contract in good faith: FamilyCare reasonably expected that OHA would set rates that would permit FamilyCare to fulfill its full five-year term.

Even if OHA's legal argument had any merit, it would at most lead to ambiguity as to the Contract term, which would implicate extrinsic evidence of the parties' intent. *See Hamilton Properties, Inc. v. Associated Grocers Inc.,* 144 Or. App. 171, 176 (1996) ("If the language is ambiguous, then what the parties intended by the language presents a question of fact to be decided by the trier of fact."). To the extent that any ambiguity exists, which it does not, it cannot be resolved in favor of OHA at the motion to dismiss stage.

**B.    Whether OHA breached its duty of good faith and fair dealing is an issue of fact for trial.**

OHA's motion should be denied because FamilyCare has alleged sufficient facts to state a facially plausible claim for breach of the implied duty of good faith and fair dealing based on OHA's actions in (1) presenting rate amendments that were unreasonable, biased, actuarially

---

[8]    In fact, the Contract includes provisions allowing it to be terminated before the one-year mark. *See* ECF 433-2 at 244-245. OHA's contention is also illogical in part because any one of these conditions could occur before the one-year mark when rate amendments occur. Thus, under OHA's interpretation, the length of the contract would be determined retroactively by the date on which a party decides to terminate the agreement, with or without cause.

12-    FAMILYCARE'S OPPOSITION TO MOTION TO
       DISMISS, MOTION FOR SUMMARY JUDGMENT,
       AND MOTION TO STRIKE

unsound, and based on erroneous data and methodology, and (2) in bad faith forcing FamilyCare to decide whether to accept or reject the 2018 amendment without providing sufficient notice of the actual rates to which FamilyCare would be entitled, in violation of former ORS 414.652(4).

The implied covenant of good faith and fair dealing "ensure[s] that the parties will refrain from any act that would have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Klamath Off–Project Water Uses, Inc. v. Pacificorp*, 237 Or. App. 434, 445 (2010) (citations and internal quotation marks omitted); *see also id.* ("The common-law implied duty of good faith and fair dealing serves to effectuate the objectively reasonable expectations of the parties.").

Where a contract grants one party unilateral discretion, "a duty of good faith is always implied absent language expressly allowing consent to be withheld 'unreasonably.'" *Depaul Indus.*, 2020 WL 5078758, at *4 (citation omitted). Without such express language, a party acts in bad faith by exercising its discretion contrary to the parties' reasonable contractual expectations, which are informed not only by express contract terms but also extrinsic evidence. *See id.*; Restatement (Second) of Contracts § 205, cmt. d (1981) (observing that bad faith has been recognized to include "abuse of a power to specify terms").

> **1.    FamilyCare's reasonable expectations, and whether OHA failed to meet those expectations, are issues for the jury to decide.**

Questions about the scope of FamilyCare's objectively reasonable expectations, and whether they were met, cannot be determined on a motion to dismiss because the precise contours of the implied duty of good faith "are always case specific and dependent upon specific evidence." *Depaul Indus.*, 2020 WL 5078758, at *4; *see also Gregory Funding LLC v. Saksoft, Inc.*, No. 3:16-CV-480-SI, 2016 WL 4480693, at *3 (D. Or. Aug. 24, 2016) (the reasonable expectations of the parties to a contract "may include evidence from outside the terms of the contract and generally present a question of fact"). As such, disputes regarding the reasonableness of the parties' expectations or whether a party has breached its duty of good faith often present questions of fact that are inappropriate to resolve even at summary judgment, let

13-    FAMILYCARE'S OPPOSITION TO MOTION TO
       DISMISS, MOTION FOR SUMMARY JUDGMENT,
       AND MOTION TO STRIKE

alone on a motion to dismiss. *See, e.g., Depaul Indus.*, 2020 WL 5078758, at *4-5 (denying motion for summary judgment because plaintiff had a reasonable expectation that the city would exercise its sole discretion to renew contract in good faith and because plaintiff had offered evidence from which a jury could conclude that the city "no longer wanted to contract" with plaintiff and crafted "a pretext"); *Degon v. USAA Cas. Ins. Co.*, No. 3:19-CV-01152-IM, 2021 WL 413839, at *9 (D. Or. Jan. 7, 2021) ("This claim will turn on Defendant's conduct and Plaintiff's reasonable contractual expectations. Accordingly, summary judgment is inappropriate at this time.") (Internal citations omitted.); *Best v. U.S. Nat'l Bank of Oregon*, 303 Or. 557, 566-67, (1987) (reversing summary judgment because the evidence raised genuine issues of material fact as to whether bank breached good faith obligations); *Morrow v. Red Shield Ins. Co.*, 212 Or. App. 653, 662 (2007) (summary judgment inappropriate because whether defendant breached duty of good faith and fair dealing was for the factfinder); *Swenson v. Legacy Health Sys.*, 169 Or. App. 546, 555 (2000) (same).

### 2.    The jury's decision can be informed by extrinsic evidence.

FamilyCare's reasonable expectations are not limited by the four corners of the Contract—it is, after all, an *implied* duty of good faith and fair dealing—and instead must be determined by a factfinder in view of applicable law and extrinsic evidence, including industry standards, practices relevant to the parties' relationship, and other evidence in the record developed by the parties. *See Iron Horse Eng'g Co., v. Nw. Rubber Extruders, Inc.*, 193 Or. App. 402, 420-21 (2004); *Gunderson LLC v. BCG Properties Grp., Inc.*, No. 3:19-CV-01569-AC, 2020 WL 1529356, at *7 (D. Or. Mar. 30, 2020) ("[T]he duty of good faith and fair dealing involves industry standards and practices.").

OHA tries to avoid this well-settled law by repeatedly mischaracterizing the record and omitting pertinent portions of the transcript to suggest that this Court's ruling on FamilyCare's express breach of contract claim applies with equal force to FamilyCare's implied breach claim. *Compare* ECF 432 at 14 ("As this Court originally held, 'nothing in the words of the Contract

14-    FAMILYCARE'S OPPOSITION TO MOTION TO
DISMISS, MOTION FOR SUMMARY JUDGMENT,
AND MOTION TO STRIKE

gives FamilyCare a reasonable expectation to actuarially sound rates'"), *with* ECF 187 at 65 ("I think the actual ruling on claim 10 previously, before the motion to reconsider, was correct as far as it went, in that *I don't believe that the statutes in play create any express contractual obligation* of the sort that we discussed at oral argument the last time. But what is correct, and why—and *the reason why I've decided to reconsider my ruling is that we needed more fleshing out of this implied covenant of good faith and fair dealing*, and I'm glad we have. I have decided to reconsider and hear the oral arguments that we've heard today.") (Emphases added.) Contrary to OHA's representations, this Court correctly recognized the distinction between express and implied claims during oral argument on FamilyCare's request for reconsideration and observed that "it's certainly plausible that a rational jury in this case could find an understanding of what the offered actuarial terms would be, informed by the relevant statutes that the parties have briefed in this case." *Id.* at 23-24.

### 3. FamilyCare alleged sufficient facts to state a claim for breach of the implied covenant.

OHA's motion to dismiss should be denied because FamilyCare's allegations are more than sufficient to allow a reasonable juror to find that OHA breached the Contract's implied covenant of good faith and fair dealing.

OHA treats FamilyCare's implied covenant claim as if it were a claim for express breach of specific contractual terms. OHA avers that "[t]he CCO Contract unambiguously gives OHA unilateral discretion to set amended capitation rates and . . . makes clear that the capitation rates depend on CMS approval;" and that "the parties agreed that the contract would be terminated if the parties did not enter into a rate amendment." ECF 432 at 18. This, according to OHA, means that "as a matter of law, FamilyCare's only objectively reasonable expectations were that OHA would actuarially set the rates each year, provide notice of the amended rates to FamilyCare, submit them to CMS for approval, and pay those approved rates to FamilyCare unless FamilyCare decided not to enter into the contractual amendment." *Id.*

15- FAMILYCARE'S OPPOSITION TO MOTION TO DISMISS, MOTION FOR SUMMARY JUDGMENT, AND MOTION TO STRIKE

OHA's argument overlooks the basic fact that FamilyCare has alleged a breach of the *implied* covenant of good faith and fair dealing. As the name suggest, this claim is not based on a breach of an express term in the contract, but instead looks to FamilyCare's objectively reasonable expectations, which are informed by, but not limited to, the express contract terms.[9] At a minimum, there is a question of fact regarding whether OHA violated FamilyCare's objectively reasonable expectations that OHA would offer rate amendments that were unbiased, timely, and not knowingly based on erroneous data.

> **a.     OHA violated FamilyCare's reasonable expectation that OHA would not set rates based on bias against FamilyCare.**

FamilyCare reasonably expected that OHA, the sole Oregon agency charged with administering the rate-setting process for a governmental insurance program, would provide rates free from bias and abstain from intentionally providing any particular CCO with retaliatory, lower rates than its peer CCOs. *See Best*, 303 Or. at 564 (observing that a company "would have performed in bad faith if, for example, it had rejected a transfer in order to retaliate against the distributor for some reason"); *Depaul Indus.*, 2020 WL 5078758, at *5 (denying summary judgment on breach of implied covenant claim because "[a] reasonable jury could infer ... that the City decided it no longer wanted to contract with Plaintiff then crafted a pretext" in bad faith) (quotation marks omitted); *Jones v. George Fox Univ.*, No. 3:19-CV-0005-JR, 2021 WL 1414280, at *7 (D. Or. Feb. 3, 2021), *report and recommendation adopted*, No. 3:19-CV-00005-JR, 2021 WL 1414202 (D. Or. Apr. 14, 2021) (denying summary judgment on implied covenant claim where contract did not permit actions to be taken "with discriminatory or retaliatory

---

[9] *Even if* FamilyCare's expectations were limited to express terms of the Contract, OHA's argument would still fail, as terms of the Contract provided that FamilyCare would receive rates that were adequate to reimburse it for providing covered services under the Contract. See Jindal Decl. Ex. 2 at 125 (Exhibit C, 8 "Global Payment Rate Methodology") (providing that "OHA has developed actuarially set Adjusted Per Capita Costs (Capitation Rates) *to reimburse* plans for providing the Covered Services.") (Emphasis added). That did not happen—the 2017 rates and the rates offered to FamilyCare in 2018 fell well short of the amount required to reimburse FamilyCare for the services it was required to provide to its members.

16-    FAMILYCARE'S OPPOSITION TO MOTION TO
       DISMISS, MOTION FOR SUMMARY JUDGMENT,
       AND MOTION TO STRIKE

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

intent"). But that is exactly what FamilyCare alleges OHA did with its punitive rate-setting policies, which, along with OHA's campaign to disparage FamilyCare in the media, were part and parcel of its larger scheme to drive FamilyCare out of the Medicaid market. FAC ¶¶ 4, 40-56, 82-89, 96-101, 108.

> **b.      OHA violated FamilyCare's reasonable expectation that OHA would correct known material errors.**

Similarly, FamilyCare reasonably expected—based on industry practice and its over thirty years of prior experience—that OHA would promptly fix material errors that OHA discovered or that FamilyCare brought to its attention. *See Gunderson LLC*, 2020 WL 1529356, at *9 (denying motion to dismiss where party "sufficiently pleaded that the industry standards and practices. . . effectuated a potentially reasonable contractual expectation" under rule 12(b)(6) plausibility standard); *Hansen v. Gov't Emps. Ins. Co.*, 771 F. App'x 385, 386–87 (9th Cir. 2019) (reversing dismissal of implied covenant claim because industry standards and practices "effectuated a potentially reasonable contractual expectation"). As alleged, FamilyCare identified substantial flaws in OHA's rate-setting data that caused materially and disproportionately lower rates for FamilyCare, and did so early in the rate-setting process to give OHA the opportunity to correct them. FAC ¶¶ 64-69. Without correcting its underlying data, OHA developed rates with known errors and sent proposed contract amendments to CMS for approval that it knew to be based on bad data and incorrect assumptions. *Id.* ¶ 72.

> **c.      OHA violated FamilyCare's reasonable expectation that OHA would provide rate amendments in a timely manner.**

FamilyCare also had an objectively reasonable expectation that OHA would present FamilyCare with timely rate amendments that comply with former ORS 414.652, which required OHA to give FamilyCare "at least 60 days' advance notice" of Contract amendments. FamilyCare alleges OHA breached the implied covenant by issuing the 24-hour ultimatum, which "forc[ed] FamilyCare to decide whether to sign the full 2018 Amendment on December

17-  FAMILYCARE'S OPPOSITION TO MOTION TO
DISMISS, MOTION FOR SUMMARY JUDGMENT,
AND MOTION TO STRIKE

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

20, 2017, in violation of former ORS 414.652(4) and without notice of the rates to which FamilyCare would be entitled under the contract." FAC ¶ 108.

OHA does not dispute that FamilyCare could reasonably expect OHA to comply with that statutory obligation. Rather, OHA contends it complied by providing FamilyCare with a rate amendment on October 31, 2017. ECF 432 at 22. But OHA ignores that the rates offered to FamilyCare were incorrect even by OHA's own estimation and required a fix that OHA failed to implement before FamilyCare was forced to decide whether to accept the incorrect rates. FAC ¶ 66 ("On December 8, 2017, OHA agreed that the data errors identified by FamilyCare necessitated a redetermination analysis that would materially affect FamilyCare's compensation . . . ."); ¶ 68 (alleging OHA required FamilyCare "to accept or reject the 2018 Amendment, as is, by December 21, 2017" even though "OHA had yet to provide any of the promised analysis on what compensation FamilyCare would receive in 2018 once the data errors were corrected").

Adopting OHA's position—that former ORS 414.652 did not require OHA to provide accurate rates, but rather only *any* rates, to satisfy its legislatively-imposed obligations—would eviscerate the purpose of that statute and allow OHA to "satisfy" its obligations by providing patently inadequate or flawed rate amendments that fail to sufficiently notify the CCO of its actual rates so that it could timely make an informed decision about whether to accept those rates. This highlights the extreme nature of the positions staked out by OHA, both as a contracting party and a government agency implementing a government program. Essentially, OHA claims that it can operate with impunity in bad faith and deprive its contracted vendors a meaningful opportunity to receive rate proposals in a manner required by law because there is no obligation to act in good faith. ECF 432 at 8 ("The CCO Contract did not state that the rates OHA set would be reasonable, actuarially sound, adequate, or free of errors.") By OHA's logic, it could have satisfied the sixty-day notice requirement by, in bad faith, offering one dollar per member per year even though it knew that offer to be inadequate, actuarially unsound, derived in bad faith and certain to put the CCO out of business. OHA's effective contention that the Oregon

18-  FAMILYCARE'S OPPOSITION TO MOTION TO
      DISMISS, MOTION FOR SUMMARY JUDGMENT,
      AND MOTION TO STRIKE

legislature intended to allow a state agency to fulfill its statutory obligations by offering rates it knows to be erroneous is untenable.

OHA's remaining argument—that Director Allen did not really require FamilyCare to accept or reject the hypothetical rates before January 1, 2018—should be rejected. The Ninth Circuit ruled only that there was insufficient evidence that Allen's ultimatum did not rise "to the level of a constitutional violation" in the context of qualified immunity for FamilyCare's Section 1983 claim against him. *See Allen*, 812 F. App'x at 419. But the Ninth Circuit made no factual determination as to whether Director Allen actually issued the ultimatum or forced FamilyCare to make a decision in violation of a statute or in bad faith on OHA's behalf, and certainly not in the context of FamilyCare's breach of implied covenant claim. In fact, the Ninth Circuit specifically allowed that Director Allen could have acted in bad faith, even if his actions fell short of a clearly-established violation. *Id.* (describing this as "an agency head making empty threats, or taking obdurate and intransigent (*or even bad faith*) positions in contract amendment negotiations") (emphasis added).

### 4.    FamilyCare's objectively reasonable expectations are not dependent on "actuarial soundness."

Prior rulings on actuarial soundness in this case have at most a limited effect on FamilyCare's claim because FamilyCare's reasonable expectations go beyond mere CMS approval of rates as actuarially sound.

This Court previously held that FamilyCare had no reasonable contractual expectation to actuarially sound rates, ECF 105 at 25, and did not have the right to bring an APA claim on the basis that it had a legal right to actuarially sound rates, ECF 229 at 9-10, 41; *see also Allen*, 812 F. App'x at 417 (affirming summary judgment on FamilyCare's APA claims on the basis that "neither Oregon nor federal law required OHA to do more than seek and obtain CMS approval of the 2017 and 2018 rates"). While those rulings may affect FamilyCare's claim insofar as it encompasses an expectation for rates that were actuarially sound, they do not affect FamilyCare's other reasonable expectations about how OHA would exercise its rate-setting

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

discretion. CMS approval of rates as actuarially sound does not encompass all the issues raised by FamilyCare. CMS approval does not signify, for example, that the rates were set without bias, based on data and assumptions that were not erroneous, set lower than they otherwise would have but for anti-FamilyCare animus, or that they were in fact adequate to reimburse FamilyCare for the cost of providing services.

Medicaid capitation rates are set in advance and necessarily based on a prediction about future medical costs. Actuarial soundness means the rates are "*projected to* provide for all reasonable, appropriate, and attainable costs that are required under the contract[,]" 42 C.F. R. § 438.4(a) (emphasis added)—not that the rates are free from error or bias, nor that they in fact provide for all reasonable costs. For for any particular rate group there is a range of rates that could be certified as actuarially sound. ECF 227-6 at 2. CMS review does not consider whether the rates were set in good faith, and CMS approval does not signal that the rate submitted was the only actuarially sound option, or that a higher rate would not have been sound.

As a result, OHA could repeatedly set FamilyCare's rates lower than they would have been if the agency had not been biased against FamilyCare—to try to put it out of business, for example—and still have the rates approved by CMS. To take one example, OHA's "reimbursement policy" reduced FamilyCare's rates by tens of millions of dollars in 2017 and 2018; it is undisputed that had OHA not implemented that policy, FamilyCare's rates would have been higher in both years. FAC ¶ 96. If, as FamilyCare alleges, OHA devised and implemented the reimbursement policy in bad faith to target FamilyCare, that conduct would violate FamilyCare's reasonable expectations under the Contract, even if CMS approved the resulting rates—again, CMS does not examine whether the rates were set free of bias. Or if, as FamilyCare alleges, OHA in bad faith ignored the data errors FamilyCare identified—errors that depressed FamilyCare's rates—that, too, would constitute a breach of the implied covenant of good faith and fair dealing regardless of CMS approval, which does not include an audit of the underlying data for accuracy. FAC ¶¶ 4, 64-65; ECF 249-2 at 2. Indeed, the 2018 rates offered to

20-   FAMILYCARE'S OPPOSITION TO MOTION TO
      DISMISS, MOTION FOR SUMMARY JUDGMENT,
      AND MOTION TO STRIKE

FamilyCare were, by OHA's own admission, based on errors that lowered FamilyCare's rates and were corrected only after FamilyCare was forced to close its doors. FAC ¶¶ 66, 67, 72, 75, 78. Evidence that those errors were not fixed before 2018 because OHA had it out for FamilyCare would establish a breach of the implied covenant.

Moreover, Optumas annually presented OHA with a range of rates that it claimed could be certified as actuarially sound, and OHA chose rates at the low end of that range. ECF 227-6 at 2. Of course, the lower the rates are set, the greater the chance they will prove in actual experience (as opposed to in projections) to be inadequate to cover a CCO's expenses. By the same logic, the lower in the range the rates are set, the more likely that errors in the underlying actuarial assumptions and projections will leave a CCO short in covering the costs of service delivery. And, in fact, FamilyCare's 2017 rates proved deeply inadequate. FAC ¶ 61. Evidence establishing that OHA intentionally and in bad faith set FamilyCare's rates lower in the range provided by the actuary to increase the odds that FamilyCare would lose money likewise establishes a breach of the implied covenant of good faith and fair dealing.

To conclude, OHA's arguments, that FamilyCare's only reasonable expectation was for rates that were actuarially set and approved by CMS would mean that, a CCO in a multi-billion-dollar, long-term contract with OHA has no recourse for bad faith implementation of the contract. The implied covenant of good faith and fair dealing exists to address precisely this type of situation, even if a CCO does not have a direct claim against OHA under the rate-setting framework. FamilyCare can therefore establish a breach of the implied covenant even if FamilyCare's expectations about actuarial soundness were satisfied by CMS approval.

**C.      OHA's remaining arguments do not warrant dismissal of FamilyCare's Third claim for relief.**

**1.      FamilyCare does not seek to vary express Contract terms.**

OHA also contends FamilyCare's claim should be dismissed because there is no *express* Contract term requiring rate amendments to be "timely, reasonable, unbiased, actuarially sound, adequate, and free of errors in underlying data and methodology." ECF 432 at 18-21. According

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

to OHA, FamilyCare's *implied* breach claim therefore seeks to vary express Contract terms and write-in what has been omitted from the Contract. *Id.* at 19.

OHA's argument, that a CCO cannot reasonably expect to receive "unbiased" and "timely" Medicaid rates from the implementing state agency that are "free of errors," should require little rejoinder. *Id.* The fact that a party cannot use the implied covenant to vary express contract terms is hardly in dispute. But that is not what FamilyCare seeks to do. As set out above, FamilyCare's expectations—including that OHA would implement its obligations under the Contract in good faith and fairly, by, inter alia, correcting errors in rate-setting, setting rates without bias against FamilyCare, and timely notifying it of rates that will adequately reimburse FamilyCare for the services it provides under the Contract—are not at odds with any terms in the Contract. *See Jones*, 2021 WL 1414280, at *7 ( "Although . . . there is no express anti-discrimination provision incorporated into the contract, there is likewise no provision permitting discrimination such that maintaining a claim for the breach of the implied covenant of good faith and fair dealing in this regard contradicts an express contractual term"). OHA has tellingly failed to identify any express Contract terms that FamilyCare's claim would *contradict*.[10]

### 2. *Tolbert* is distinguishable and does not apply in the Medicaid rate setting context.

OHA also rehashes previously-addressed arguments concerning *Tolbert*, a case that considered whether a bank breached its duty of good faith and fair dealing by revising fees charged to customers for writing overdraft checks.

OHA again asserts that *Tolbert* stands for the proposition that "[a] party's objectively reasonable expectations are met as a matter of law when one party exercises discretion to set a

---

[10]    OHA suggests that it "disclaimed" any obligation to provide rate amendments that are "timely, reasonable, unbiased, actuarially sound, adequate, and free of errors in underlying data and methodology" under the clause in the Contract, which provides that "The consideration described in this Exhibit C is the total consideration payable . . . for all work performed under this Contract." ECF 433 at 20; ECF 433-2 at 117. OHA cites no authority and develops no argument as to how that clause can be plausibly read to foreclose FamilyCare's expectations as to the accuracy, neutrality, sufficiency, and timeliness of OHA's rate amendments.

22- FAMILYCARE'S OPPOSITION TO MOTION TO
    DISMISS, MOTION FOR SUMMARY JUDGMENT,
    AND MOTION TO STRIKE

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

price term and the other party receives adequate notice of the term." ECF 432 at 16. Thus, OHA contends FamilyCare's objectively reasonable expectations were met because OHA had discretion under the Contract to set yearly rate amendments and did so after providing FamilyCare with notice of those amendments.

OHA substantially overstates the significance of *Tolbert*, which was limited to the particular facts of that case, including the fact that bank customers had no basis for expecting the bank to price fees in a certain manner. *See Tolbert v. First Nat'l Bank of Oregon*, 312 Or. 485, 494 (1991) ("*In the context of this case . . .* we hold as a matter of law that the parties' reasonable expectations have been met.") (emphasis added); *id.* at 492 (distinguishing the decision in *Best* on that basis).

Moreover, the facts in *Tolbert* are fully distinguishable from the circumstances of this case. Unlike the customers in *Tolbert*, FamilyCare *did* have reasonable expectations about how OHA would set rates—expectations that were informed by, among other things, the parties' thirty-plus years of prior practice, industry standards, the applicable regulatory framework, and the fact that OHA, unlike the bank in *Tolbert*, is a government agency subject to constitutional and other obligations and limitations. *See* Section II(B)(3) above. And, unlike in *Tolbert*, FamilyCare alleges that OHA's rate setting was biased against one CCO and plagued with errors—allegations that were not present in *Tolbert*, where the depositors challenged only the imposition of a uniform fee for all bank customers. Further, the parties here did not reach agreement on the rates. *Cf. Tolbert*, 312 Or. at 492 ("[T]here is uncontroverted evidence that the depositors did agree to the specific NSF fees charged by Bank."). Instead, FamilyCare expressly reserved its right to challenge the rates set by OHA when it agreed to the 2017 rate amendment under the terms of the parties' Dispute Resolution Agreement and rejected the 2018 rate amendment entirely. *See* FAC ¶¶ 38, 70-71.

OHA's attempt to shoehorn this case into a framework unfit for application to a complex dispute about Medicaid rate-setting also defies OHA's statutory obligations and governing

23- FAMILYCARE'S OPPOSITION TO MOTION TO DISMISS, MOTION FOR SUMMARY JUDGMENT, AND MOTION TO STRIKE

Oregon policy. Unlike in the banking context, the relationship between FamilyCare and OHA is governed by a Contract whose five-year term is required by statute to ensure continuity of care for Oregon's vulnerable Medicaid population and eliminate uncertainty to allow CCOs to make meaningful, long-term investments in healthcare. *See* section II(A)(1) above. CCOs reasonably rely on OHA, a monopsonist in Oregon Medicaid services, to exercise its discretion to set rates in good faith through the term of that contract. Whereas a bank customer is free to take his or her business elsewhere if dissatisfied with fees at little cost to himself or others, CCOs must contract with OHA, which is the single state agency that by law administers Oregon's Medicaid program. *See* 42 U.S.C. § 1396a(a)(5). Moreover, the collateral consequence of punitive rate-setting that drives a CCO out of Medicaid service entirely is significant, as shown by the loss of hundreds of jobs at FamilyCare and the disruption of care for 100,00 vulnerable Medicaid members.

For the reasons above, OHA's Motion to Dismiss should be denied.

## MOTION FOR PARTIAL SUMMARY JUDGMENT

OHA also moves for partial summary judgment to dismiss "FamilyCare's new damages theory," contrary to the Court's clear admonition regarding no further dispositive motion practice. *See* ECF No. 432 at 23. OHA's motion is procedurally improper and should be denied for that reason alone. Moreover, it is based upon an inaccurate characterization of the claim and is otherwise unsupported by the evidence for the following three reasons: (1) FamilyCare did not allege a "new" damages theory; (2) OHA without basis characterizes all claimed damages as consequential damages; and (3) the limitation of liability provision is unenforceable as to willful conduct on public policy grounds.

## I.    LEGAL STANDARD

As OHA acknowledges, the party moving for summary judgment has the burden of providing evidence in support of its arguments. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). In evaluating a motion for summary judgment, a court must "view[] the evidence in the light most favorable to the nonmoving party" and may not "weigh the evidence" or "make any

24- FAMILYCARE'S OPPOSITION TO MOTION TO
DISMISS, MOTION FOR SUMMARY JUDGMENT,
AND MOTION TO STRIKE

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

credibility determinations." *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 440-441 (9th Cir. 2017) (internal quotations and citations omitted). Where evidence is genuinely disputed, summary judgment should be denied. *Id*. at 441.

## II.    ARGUMENT

### A.    OHA's summary judgment motion should be denied because it was filed well beyond the deadline for such motions and ignores the Court's directives at the April 5, 2021, status conference.

OHA's motion should be denied in the first instance as untimely and in defiance of the Court's order about further dispositive motions. The Court was very clear that only *new information* not previously available to the parties would support additional dispositive motion practice:

> So on potential additional dispositive motions, OHA has raised three possible grounds for that. *One is something arises in supplemental discovery that might justify further dispositive motions*, and that's, I suppose, correct. *The second is that* in -- that if there is a reopening of discovery, and *the reopening of discovery produces more information that leads to new dispositive motions not justified by the previous state of discovery*, then I suppose that's also correct. And *the third is just that hey, we've got a lot of time between now and trial, why don't we take another run at dispositive motions. And that's not correct. I'm not going to do that.*
>
> The first two would require a showing that something came up either in reopened or supplemental discovery that would justify a dispositive motion that hasn't been filed yet. *I'm disinclined to have any further dispositive motions, but if those first two reasons -- supplemental discovery or reopened discovery -- really do result in something new*, then I'll entertain a request by OHA or any other party for dispositive motions triggered by discovery that you didn't ever have before.

Declaration of Matt Mertens ("Mertens Decl.") Ex.1 at 18:25-19:19 (emphases added).

OHA—well aware that neither supplemental discovery nor reopened discovery has revealed "something new"—nonetheless brings this Motion on the inaccurate and unsupported grounds that the Fifth Amended Complaint pleads a "new" damages theory related to OHA's breaches of the covenant of good faith and that FamilyCare seeks $125,000,000 in consequential damages. ECF No. 432 at 12, 23. But FamilyCare alleges no "new" damages theory in the Fifth

25- FAMILYCARE'S OPPOSITION TO MOTION TO DISMISS, MOTION FOR SUMMARY JUDGMENT, AND MOTION TO STRIKE

Amended Complaint. The Fourth Amended Complaint alleged—and OHA has long been on notice that—FamilyCare seeks enterprise damages because OHA forced it out of business.

OHA has long known that enterprise damages were at issue. *See, e.g.,* ECF No. 111 at 33 (Fourth Amended Complaint describing OHA's conduct towards FamilyCare regarding the 2018 Amendment, culminating in FamilyCare's "near-total loss of its enterprise value"); ECF No. 149 at 43. In fact, OHA's last summary judgment motion timely filed in July 2018 expressly identified one of FamilyCare's categories of damages as its "enterprise value" *and sought dismissal of these damages*. ECF No. 149 at 43. The Court denied the motion. *See* ECF No. 259 at 69:14-70:5 ("OHA has moved for summary judgment on essentially all of FamilyCare's damages. And I'm relying now on the list of those damages at page 36 of the motion for summary judgment . . . [a]nd on the rest of the damages described at page 36 [including enterprise value damages], I deny OHA's motion for summary judgment.") OHA's second bite at this apple comes nearly three years too late.

OHA cites Paragraph 109 of the Fifth Amended Complaint as support for its claim that "[i]n the Fifth Amended Complaint, FamilyCare alleges, for the first time, that OHA's supposed breaches of the duty of good faith forced it to shut down." OHA ignores, however, that the Fourth Amended Complaint had almost identical language. The changes from the Fourth Amended Complaint to the Fifth Amended Complaint are set out below (with deletions in strikethrough and additions underlined):

> FamilyCare has suffered substantial and irreparable harm from the 2017 and 2018 Amendments. The global budgets ~~that~~ OHA approved for FamilyCare ~~in 2015 and 2016~~ were insufficient to cover FamilyCare's operating expenses, <u>resulting in financial losses for FamilyCare</u>. ~~Likewise,~~ <u>After incurring a loss in 2016,</u> the 2017 Amendment was <u>again</u> insufficient to cover FamilyCare's operating expenses for 2017 <u>and further depleted FamilyCare's reserves</u>. As a result, <u>and</u> because the rates offered in the full 2018 rate amendment presented to FamilyCare on December 20, 2017 were insufficient to allow FamilyCare to continue operating into the future, FamilyCare was forced to reject the full 2018 Amendment and begin shutting its Medicaid business down while operating under a one-month contract.

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

*Compare* ECF No. 111 at 41, ¶ 109 *with* ECF No. 429 at 39, ¶ 109. While the Fourth Amended Complaint included these allegations in a claim that is no longer in the complaint, each subsequent claim, including the claim for breach of the implied duty of good faith and fair dealing, "incorporate[d] by reference all former allegations."[11] ECF No. 111 at 49, ¶ 149. As a result, OHA has known since at least June 2018 that FamilyCare seeks enterprise damages related to OHA's improper conduct vis-à-vis the 2017 and 2018 Amendments.

Moreover, OHA identifies no support for its assertion that the $125 million in damages alleged in Paragraph 110 of the Fifth Amended Complaint is a claim for "consequential damages." ECF No. 432 at 12, 23-24. FamilyCare nowhere specifies that those damages are derived from a specified facet of revenue stemming from the breach or the like in the Third Claim for Relief.[12] FamilyCare pleaded entitlement to damages in an amount to be proven at trial of at least $125 million resulting from OHA's contractual breaches. ECF No. 429 at 40, ¶ 110. OHA, not FamilyCare, speculated that these damages consist of loss of enterprise value, lost profits, or loss of reputation.

FamilyCare increased its alleged damages to more accurately identify its damages based on the continued analysis by FamilyCare and its experts. OHA will have the opportunity to assess and make arguments about FamilyCare's damages calculations after the parties exchange expert reports.  OHA's evidence-free assertion that all of FamilyCare's damages are "consequential" should not be permitted.

---

[11]    Such incorporation by reference is commonplace and acceptable under the Federal Rules of Civil Procedure. *See Pitts v. G4S Secure Sols. (USA) Inc.*, No. 3:20-CV-00074-AC, 2020 WL 6333959, at *4 (D. Or. May 26, 2020), *report and recommendation adopted*, No. 3:20-CV-00074-AC, 2020 WL 4495453 (D. Or. July 31, 2020) (stating that the court "agrees with Plaintiff that it can examine other allegations Plaintiff has incorporated by reference" in determining whether a party has pleaded a facial claim for relief).

[12]    Assuming these are consequential damages at all in the context of this lawsuit, which, as explained below, FamilyCare does not concede.

27-    FAMILYCARE'S OPPOSITION TO MOTION TO
       DISMISS, MOTION FOR SUMMARY JUDGMENT,
       AND MOTION TO STRIKE

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

**B.     OHA's summary judgment motion should be denied because FamilyCare's enterprise damages are direct damages.**

Moreover, to the extent that FamilyCare seeks enterprise damages in connection with its implied covenant of good faith claim, any such damages are properly characterized as *direct* damages, not consequential damages. As was well-known to OHA before contracting with FamilyCare, FamilyCare's sole business was providing Medicaid managed care services in Oregon. And, as noted above, by statute OHA is Oregon's sole purchaser of such services. As such, the agreement between OHA and FamilyCare was one for FamilyCare's very existence— that is, FamilyCare would exist only by operation of the relationship between OHA and FamilyCare. Given this, FamilyCare's cessation in business operations is the natural and necessary result of OHA presenting FamilyCare with rate amendments that were unreasonable, biased, based on erroneous data and methodology, and actuarially unsound. *See Whitman-McCoy v. Dep't of Corr.*, 132 Or. App. 45, 50 (1994) (defining "general damages" as "those damages that are the natural and necessary result of the injury").

Because OHA is a monopsonist for managed Medicaid services in Oregon, it knew that by presenting inadequate and flawed rate amendments that were insufficient to cover FamilyCare's reasonably incurred costs, FamilyCare would *necessarily* go out of business. FamilyCare's loss of enterprise value is accordingly a form of direct damages. *See Biotronik A.G. v. Conor Medsystems Ireland, Ltd.*, 11 N.E.3d 676, 681-683 (N.Y. 2014) (holding that where lost profits flow directly from the pricing formula between the parties, rather than from ancillary third-party contracts, such lost profits are direct damages and not consequential damages).

Bolstering this conclusion that enterprise damages are direct damages is the fact that OHA amended Section 11 of the Contract to *remove* key language that existed in prior iterations: specifically, that "neither party shall be liable for any damages of any sort arising solely from the termination of this Contract or any part hereof in accordance with its terms." *Compare* ECF No. 433-2 at 247 and ECF No. 433-13 at 144. The amended Contract retains the language that

28-   FAMILYCARE'S OPPOSITION TO MOTION TO
      DISMISS, MOTION FOR SUMMARY JUDGMENT,
      AND MOTION TO STRIKE

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

"neither party shall be liable for incidental or consequential damages arising out of or related to this Contract." *See* ECF No. 433-13 at 144. The deleted language supports FamilyCare's position because it illustrates that damages arising out of "termination of this Contract or any part hereof in accordance with its terms"—that is, enterprise damages—are necessarily something other than "consequential damages" since the putative bar on consequential damages is retained.

The authorities OHA identifies in its motion do not compel a different conclusion. *Welch v. U. S. Bancorp Realty & Mortg. Tr.*, 286 Or. 673, 703 (1979), suggests that lost profits are consequential damages, but it is silent as to the nature of enterprise damages. Moreover, the relationship at issue in *Welch* is a standard arm's-length commercial relationship—that of real estate developer and lender. *See id.* at 676-678. The developer's claim for lost profits was *not* based on the direct contractual lending relationship between the developer and the lender, but rather loss of development opportunity, which would have resulted in profits to the developer. *Id.* at 702. This is qualitatively different from the relationship between FamilyCare and OHA and the *Biotronik* case, in which the profits flow directly from the contract itself.[13]

### C.    OHA's summary judgment motion should be denied because the limitation of liability provision is unenforceable when stemming from OHA's willful conduct and gross negligence.

Even if enterprise damages were not considered direct damages here, public policy concerns dictate that the limitation of liability provision is unenforceable as to OHA's willful misconduct and/or gross negligence underpinning FamilyCare's Third Claim for Relief. OHA presented Contract amendments that were unreasonable, biased, and knowingly based on material errors. *See* ECF No. 429 at ¶¶ 107 and 108. OHA forced FamilyCare to decide whether to sign the 2018 Amendment on December 20, 2017, in violation of former ORS 414.652(4) and without notice of the rates to which FamilyCare would be entitled under the Contract. *Id.* at

---

[13]    OHA also cites *Ramco, Inc. v. Pac. Ins. Co.*, 249 Or. 666, 674 (1968) for the proposition that reputational damages are consequential damages. Any damages for FamilyCare's loss of reputation flow directly and necessarily from OHA's decision to put FamilyCare out of business. These are direct damages for the same reasons described above.

29-    FAMILYCARE'S OPPOSITION TO MOTION TO
       DISMISS, MOTION FOR SUMMARY JUDGMENT,
       AND MOTION TO STRIKE

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

¶108. These actions forced FamilyCare out of business. *Id.* at ¶ 109. Accepting these allegations as true, which the Court must for purposes of summary judgment, there is a genuine issue of material fact as to whether OHA's willful conduct bars its reliance on the limitation of liability clause on public policy grounds.

The vast majority of states to have considered the issue—most prominently New York— have determined that exculpatory clauses are contrary to public policy to the extent they purport to exempt grossly negligent acts, willful conduct, or bad faith in the breach of contract context. *See Kalisch-Jarcho, Inc. v. City of New York*, 58 N.Y.2d 377, 384–85 (1983); *see also, e.g.*, *Superior Integrated Sols., Inc. v. Reynolds & Reynolds Co.*, No. 3:09-CV-314, 2009 WL 4135711, at *3 (S.D. Ohio Nov. 23, 2009) (stating that under "Ohio law, a limitation-of-liability clause is ineffective where the party to the contract seeking protection has engaged in willful[l] or wanton misconduct"); *State ex rel. Mountain States Tel. & Tel. Co. v. Dist. Ct. In & For Silver Bow*, 160 Mont. 443, 451 (1972) (limitation of liability clause limiting recovery of damages in breach of contract action is not enforceable when there is a "demonstration of bad faith, fraud, or willful or wanton conduct" by the party seeking protection); *City of Dillingham v. CH2M Hill Nw., Inc.*, 873 P.2d 1271, 1275 (Alaska 1994) (liability for "knowing" or "bad faith" breaches can never be limited); *Airfreight Exp. Ltd v. Evergreen Air Ctr., Inc.*, 215 Ariz. 103, 111 (Ct. App. 2007) ("As a matter of public policy, a party should not benefit from a bargain it performed in bad faith."); *T.D. Bank, N.A. v. Nutmeg Invs., LLC*, No. X02UWYCV085009473S, 2010 WL 4277552, at *3 (Conn. Super. Ct. Sept. 29, 2010) (unpublished) (contract provision limiting liability in damages for non-performance of a party's promises is not effective when the party acts fraudulently or in bad faith) (citing *Corbin on Contracts* § 85.18 (2003)); *J. A. Jones Const. Co. v. City of Dover*, 372 A.2d 540, 545 (Del. Super. Ct. 1977) (even if a contract purports to give a general exoneration from damages, it will not protect a party from a claim involving its own fraud or bad faith); *Jewish Hosp. of St. Louis, Missouri v. Boatmen's Nat. Bank of Belleville*, 261 Ill. App. 3d 750, 767 (Ill. App. Ct. 1994) (exculpatory provisions in the breach of contract

30- FAMILYCARE'S OPPOSITION TO MOTION TO DISMISS, MOTION FOR SUMMARY JUDGMENT, AND MOTION TO STRIKE

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

context are not given special favor in the law and are not effective as to reckless or intentional breaches or those committed in bad faith); *Colonial Life Ins. Co. of Am. v. Elec. Data Sys. Corp.*, 817 F. Supp. 235, 242-243 (D.N.H. 1993) (contractual limitation of liability is not enforceable if claim of fraud, bad faith and/or "total and fundamental" breach is proven at trial).

To illustrate, the Northern District of California recently applied New York's *Kalisch-Jarcho* framework in denying summary judgment on a similar limitation-of-liability argument. *Smithkline Beecham Corp. v. Abbott Lab'ys*, No. C 07-05702 CW, 2011 WL 3903190, at *1 (N.D. Cal. Sept. 6, 2011). There, the plaintiff brought a claim for allegedly breaching the implied covenant of good faith and fair dealing associated with the parties' contract. *Id.* In its motion for summary judgment, the defendant argued, among other things, that the limitation of liability clause—which barred the recovery of consequential damages arising out of or related to the contract—prohibited the plaintiff's recovery of lost profits. *Id.* The court denied the motion because there was a triable issue of fact as to whether the defendant's conduct evinced reckless indifference to the plaintiff's rights under the contract, which would bar the defendant's reliance on the limitation of liability clause. *See id.* (citing *Safeway Inc. v. Abbott Lab'ys*, 761 F. Supp. 2d 874, 901 (N.D. Cal. 2011)).

Oregon, like New York and other states, has determined that exculpatory clauses that seek to exculpate gross negligence and wanton or willful misconduct are unenforceable on public policy grounds in the tort context. *See Farina v. Mt. Bachelor, Inc.*, 66 F.3d 233, 235 (9th Cir. 1995) (citing *K–Lines, Inc. v. Roberts Motor Company*, 273 Or. 242, 249 (1975)). Although Oregon courts have not yet addressed the issue in the context of a contract claim, there is no principled reason to believe that Oregon—like the vast majority of other states—would not apply this same public policy-based conclusion. *See Bagley v. Mt. Bachelor, Inc.*, 356 Or. 543, 551 (2014) (stating that "contract rights are not absolute . . . equally fundamental with the private right is that of the public to regulate it in the common interest[,]" and identifying "the principles of tort law" as embodying part of the common interest); s*ee also Sommer v. Fed. Signal Corp.*,

31- FAMILYCARE'S OPPOSITION TO MOTION TO DISMISS, MOTION FOR SUMMARY JUDGMENT, AND MOTION TO STRIKE

79 N.Y.2d 540, 554, 593 N.E.2d 1365, 1370–71 (1992) ("It is the public policy of this State . . . that a party may not insulate itself from damages caused by grossly negligent conduct. This applies equally to contract clauses purporting to exonerate a party from liability and clauses limiting damages to a nominal sum.") (internal citations omitted).

Again, this case involves the deliberate conduct of OHA and Ms. Saxton towards FamilyCare. FamilyCare's First Claim for Relief alleges that Ms. Saxton retaliated against FamilyCare for exercising its First Amendment rights. ECF No. 429 at 32-34, ¶¶ 79-89. FamilyCare's Second Claim for Relief alleges that OHA clawed back monies that otherwise would have been paid to FamilyCare in 2017 and 2018 to unlawfully recoup the Settlement Credit from FamilyCare. *Id.* at 34-38, ¶¶ 90-104. FamilyCare has *already* presented sufficient evidence of the deliberate conduct of Ms. Saxton and OHA to previously defeat summary judgment on these claims. *See* ECF No. 259 at 62:8-14 (excerpt of transcript from September 21, 2018, hearing denying OHA's motion for summary judgment on FamilyCare's "clawback" claim); ECF No. 339 at 51:14-21 (excerpt of transcript from November 2, 2018, hearing denying Ms. Saxton's motion for summary judgment on FamilyCare's Section 1983 claim). A jury should decide whether OHA's deliberate conduct as described in the Third Claim for Relief was such that the limitation of liability clause is, by logical extension of Oregon law, unenforceable.

For these reasons, OHA's Motion for Partial Summary Judgment should be denied.

## MOTION TO STRIKE

Despite consenting to the filing of FamilyCare's Fifth Amended Complaint, OHA now seeks to strike certain allegations on the grounds that they plead facts that will be inadmissible at trial and are "irrelevant." Specifically, OHA moves to strike Paragraph 78, which alleges:

> Shortly after OHA forced FamilyCare from the market, and continuing through rate-setting in 2019 and subsequent years, OHA revised the rate-setting process to address many of the issues previously raised by FamilyCare. These changes would have resulted in disproportionately large increases in FamilyCare's rates had FamilyCare not been forced to shut down in January 2018 and would have enabled FamilyCare to remain in business for additional years.

32- FAMILYCARE'S OPPOSITION TO MOTION TO DISMISS, MOTION FOR SUMMARY JUDGMENT, AND MOTION TO STRIKE

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

FAC ¶ 78. For the reasons set out below, OHA's procedurally improper attempt to litigate the future of admissibility of evidence should be rejected.

## I.    LEGAL STANDARD

Rule 12(f) permits a court to strike "redundant, immaterial, impertinent, or scandalous matter" from a pleading so as to avoid litigating "spurious issues." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983) (quoting Fed. R. Civ. P. 12(f) and *Anchor Hocking Corp. v. Jacksonville Elec. Auth.*, 419 F. Supp. 992, 1000 (M.D. Fla. 1976)). However, Rule 12(f) is "neither an authorized nor a proper way to procure the dismissal of all or part of a complaint." *Yamamoto v. Omiya*, 564 F.2d 1319, 1327 (9th Cir. 1977) (Hufstedler J. concurring) (citation omitted). "[T]here appears to be general judicial agreement . . . that [motions to strike] should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action." 5C Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1382 (3d ed.); *see also Wanke Cascade Distribution, Ltd. v. Forbo Flooring, Inc.*, No. 3:13-CV-00768-AC, 2015 WL 1757151, at *4 (D. Or. Apr. 17, 2015) ("Motions to strike are generally viewed with disfavor and are not frequently granted.").

## II.    ARGUMENT

OHA contends that Paragraph 78 should be stricken under FRE 407 because it alleges "subsequent remedial measures designed to improve OHA's rate-setting methodology" and is otherwise "irrelevant." OHA Mtn. at 21. Neither of OHA's arguments provide a basis for the relief it seeks.

### A.    A motion to strike is not the appropriate procedural vehicle for excluding evidence under FRE 407.

As briefed more fully in FamilyCare's recent Motion for Discovery, ECF 436, and its concurrently filed Opposition to OHA's Motion for Protective Order, application of FRE 407 is both premature and unwarranted under the circumstances of this case.

33-  FAMILYCARE'S OPPOSITION TO MOTION TO
DISMISS, MOTION FOR SUMMARY JUDGMENT,
AND MOTION TO STRIKE

FRE 407 is a rule of *admissibility* and provides no basis for OHA to prematurely seek to *strike* Paragraph 78 from FamilyCare's complaint. *Nguyen v. Simpson Strong-Tie Co., Inc.*, is directly on point and instructive. No. 19-cv-07901-TSH, 2020 WL 5232563, at *4 (N.D. Cal. Sept. 2, 2020). There, the defendant sought to strike several paragraphs from the plaintiffs' amended complaint. Recognizing that the plaintiffs might use the allegations (and evidence) in ways that do not run afoul of FRE 407, the court held it was neither necessary nor appropriate to strike the allegations unless and until they were used in a way that could run afoul of FRE 407— at which point the Court would rule on admissibility *Id.* (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 5285 (2d ed.) ("The range of permissible uses of evidence of remedial measures is much broader than the scope of the exclusionary rule."); *see also L.E. v. Lakeland Joint School District #272*, 403 F. Supp. 3d 888, 896-97 (D. Id 2019) (denying motion to strike letters that met an exception to FRE 407).

Unsurprisingly, OHA fails to cite a single case where the court struck allegations from a complaint as inadmissible under FRE 407. *See Saroya v. Univ. of the Pac.*, 5:20-CV-03196-EJD, 2020 WL 7013598, at *8-9 (N.D. Cal. Nov 27, 2020) (striking two paragraphs from complaint as "immaterial and impertinent," not pursuant to FRE 407); *Mireskandari v. Daily Mail and General Trust PLC*, NO. CV 12-02943 MMM (FFMx), 2013 WL 12129642 (C.D. Cal. July 31, 2013) (not mentioning, let alone applying, FRE 407 to motion to strike).[14]

This Court should reject OHA's FRE 407 argument as premature.

---

[14] Moreover, even if FRE 407 did bar evidence of OHA's rate-setting in subsequent years for purposes of proving culpable conduct, FamilyCare would still be able to introduce that evidence under various exceptions to the rule, including to show feasibility of the subsequent remedial measures and for impeachment purposes. *See* Fed R. Evid. 407; *see also* ECF 436 (FamilyCare's Motion for Discovery) at 7–8.

34- FAMILYCARE'S OPPOSITION TO MOTION TO
DISMISS, MOTION FOR SUMMARY JUDGMENT,
AND MOTION TO STRIKE

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

**B.    OHA has failed to meet its high burden of showing Paragraph 78 "irrelevant" in the context of a motion to strike.**

Contrary to OHA's conclusory arguments, Paragraph 78 alleges material facts that go to the central question for the jury in this case—why OHA and former Director Saxton set FamilyCare's rates so low.

"[R]elevance is not the standard for a motion to strike," and courts will only strike allegations as irrelevant if "it is clear that the allegations in question can have no possible bearing on the subject matter of the litigation" or if "it can be shown that no evidence in support of the allegation would be admissible." *Jackson v. Starbucks Corp.*, No. CV 19-1487, 2020 WL 3791873, at *4 (D.D.C. July 7, 2020) (citation omitted). "Any doubt concerning the import of the allegations to be stricken weighs in favor of denying the motion to strike." *Park v. Welch Foods, Inc.*, No. 5:12-CV-06449-PSG, 2014 WL 1231035, at *1 (N.D. Cal. Mar. 20, 2014) (citation omitted).

Here, OHA has not even approached the high bar for striking allegations as "irrelevant." Allegations regarding OHA's rate increases and rate-setting changes beginning almost immediately after it drove FamilyCare from the market, despite years of FamilyCare pleading with OHA to correct and accordingly raise the rates, are relevant to show bad faith, intentional, and willful conduct by OHA during the time that FamilyCare was a CCO. Those allegations attack OHA's defense that FamilyCare's rates were necessarily low and that FamilyCare's closure was the result of operational decisions made by FamilyCare. The same facts will also show that error correction and higher rates were feasible before FamilyCare was driven out of business, as FamilyCare maintained all along.[15]

In sum, OHA has failed to meet its high burden on a motion to strike, and its motion should be denied.

## CONCLUSION

Based on the foregoing, OHA's motions should be denied.

---

[15]    The facts in Paragraph 78 are relevant for impeachment for the same reasons.

35-  FAMILYCARE'S OPPOSITION TO MOTION TO DISMISS, MOTION FOR SUMMARY JUDGMENT, AND MOTION TO STRIKE

DATED: June 8, 2021.                     **PERKINS COIE LLP**


By:*/s/ Thomas R. Johnson*
    **Stephen F. English**, OSB No. 730843
    SEnglish@perkinscoie.com
    **Thomas R. Johnson** (OSB No. 010645)
    TRJohnson@perkinscoie.com
    **Heidee Stoller** (OSB No. 072835)
    HStoller@perkinscoie.com
    **Matthew J. Mertens** (OSB No. 146288)
    MMertens@perkinscoie.com
    **Sasha Petrova** (OSB No. 154008)
    SPetrova@perkinscoie.com
    PERKINS COIE LLP
    1120 N.W. Couch Street, Tenth Floor
    Portland, Oregon 97209-4128
    Telephone: 503.727.2000
    Facsimile:  503.727.2222

    **Matthew P. Gordon** (admitted *pro hac vice*)
    MGordon@perkinscoie.com
    **David B. Robbins** (OSB No. 070630)
    DRobbins@perkinscoie.com
    PERKINS COIE LLP
    1201 Third Avenue, Suite 4900
    Seattle, Washington 98101-3099
    Telephone: 206.359.8000
    Facsimile:  206.359.9000

    *Attorneys for Plaintiff FamilyCare, Inc.*

36-  FAMILYCARE'S OPPOSITION TO MOTION TO
DISMISS, MOTION FOR SUMMARY JUDGMENT,
AND MOTION TO STRIKE