**David B. Markowitz, OSB #742046**
DavidMarkowitz@MarkowitzHerbold.com
**Matthew A. Levin, OSB #003054**
MattLevin@MarkowitzHerbold.com
**Harry B. Wilson, OSB #077214**
HarryWilson@MarkowitzHerbold.com
**Laura Salerno Owens, OSB #076230**
LauraSalerno@MarkowitzHerbold.com
MARKOWITZ HERBOLD PC
1455 SW Broadway, Suite 1900
Portland, OR  97201
Tele:  (503) 295-3085
Fax:  (503) 323-9105

> Special Assistant Attorneys General for Defendant Oregon
> Health Authority, an agency of the State of Oregon
> [Additional Counsel of Record Listed on Signature Page]

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| FAMILYCARE, INC., an Oregon non-profit corporation, | Case No. 6:18-cv-00296-MO |
| Plaintiff, | **DEFENDANT OREGON HEALTH AUTHORITY'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS, MOTION FOR SUMMARY JUDGMENT, AND MOTION TO STRIKE** |
| v. | |
| OREGON HEALTH AUTHORITY, an agency of the State of Oregon, and LYNNE SAXTON, | |
| Defendants. | |

**DEFENDANT OREGON HEALTH AUTHORITY'S REPLY IN SUPPORT OF
MOTIONS TO DISMISS, FOR SUMMARY JUDGMENT, AND TO STRIKE**

## TABLE OF CONTENTS

Reply.............................................................................................................................. 1

Argument ..................................................................................................................... 1

I.     The Court should dismiss FamilyCare's Third Claim for Relief. ................................ 1

     A.    The duty of good faith and fair dealing does not apply to the formation of the annual rate amendments under the CCO Contract. ..................................... 1

     B.    Even if the Court finds that the duty of good faith applies to the formation of rate amendments, it should dismiss FamilyCare's Third Claim for Relief because the CCO Contract gave OHA discretion to set rates and OHA notified FamilyCare of the new rates............................................. 2

     C.    The Court should dismiss FamilyCare's Third Claim for Relief because the CCO Contract gives OHA unilateral discretion to set rates subject to only two conditions, which OHA met. ................................................... 4

          1.   The CCO Contract establishes that the parties' reasonable expectations were that OHA had unilateral discretion to set rates subject to only two conditions. ................................................... 4

          2.   The Court should reject FamilyCare's new and unpleaded assertion that its reasonable contractual expectations were informed by "prior practice, industry standards, the applicable regulatory framework," and "constitutional and other obligations and limitations." ........................................................ 4

          3.   FamilyCare had no contractual expectation that it could challenge OHA's subjective motivations or "bias" when setting the rates. ....................................................................................... 6

          4.   FamilyCare's statement of its reasonable contractual expectations contradicts numerous express contractual provisions. ......................................................................................... 8

          5.   The 2018 Rate Amendment was timely. ....................................... 9

          6.   FamilyCare implicitly concedes that some of its pleaded reasonable expectations are unsupportable. ........................................ 10

          7.   Contract interpretation is a question of law and can be decided on a motion to dismiss. ......................................................... 11

II.    If the Court does not dismiss FamilyCare's Third Claim for Relief, it should grant partial summary judgment dismissing FamilyCare's "enterprise" damages. ................................................................................... 12

     A.    This Court's statements and scheduling orders did not bar OHA's motion for summary judgment................................................................. 12

     B.    Enterprise value damages are consequential damages prohibited by the CCO Contract's limitation of liability. ................................................ 13

     C.    The CCO Contract's limitation of liability is enforceable................................. 15

**III.    The Court should strike paragraph 78 of the Fifth Amended Complaint. ............... 16**

**Conclusion ..................................................................................................................................... 18**

**REPLY**

This Court should grant OHA's Motion to Dismiss FamilyCare's Third Claim for Relief for three independent reasons.  First, FamilyCare's claim fails because the duty of good faith and fair dealing does not apply to the formation of the annual rate amendments under the CCO Contract.  Second, even if the Court concludes that it does, the CCO Contract provided OHA with unilateral discretion to set rates and OHA gave FamilyCare notice of the new rates.  Under Oregon Supreme Court precedent, nothing more in required.  Third, even if the Court does not adopt either of the first two reasons, FamilyCare's only objectively reasonable contractual expectations were those provided for in the express terms of the CCO Contract, specifically, that OHA would actuarially set and certify rates and submit them to the Centers for Medicare and Medicaid Systems ("CMS").  FamilyCare makes no allegation that OHA failed to meet those expectations.  The Court should dismiss FamilyCare's Third Claim for Relief with prejudice.

**ARGUMENT**

**I.      The Court should dismiss FamilyCare's Third Claim for Relief.**

**A.      The duty of good faith and fair dealing does not apply to the formation of the annual rate amendments under the CCO Contract.**

The duty of good faith and fair dealing "does not extend to the *formation* of the contract." *Tolbert v. First Nat. Bank of Oregon*, 312 Or. 485, 492 (1991) (emphasis in original).  Contract amendments require mutual assent and consideration, just like contract formation.  *Bennett v. Farmers Ins. Co. of Oregon*, 332 Or. 138, 148 (2001).  Accordingly, the implied covenant of good faith does not apply to the formation of the rate amendments to the CCO Contract.  *See Thomas v. OneWest Bank, FSB*, CIV. 10-6234-AA, 2011 WL 3585042, at *7 (D. Or. Aug 15, 2011) (holding that bank lacked duty of good faith when offering amendment to promissory note with borrower).

Here, the covenant of good faith does not apply to the formation of the annual rate amendments.  Each year, OHA offered an amendment with new rates and FamilyCare could choose to accept or reject the amendment.  If FamilyCare did not accept, the CCO Contract

**Page 1 -    DEFENDANT OREGON HEALTH AUTHORITY'S REPLY IN SUPPORT OF MOTIONS TO DISMISS, FOR SUMMARY JUDGMENT, AND TO STRIKE**

would automatically terminate.  As this Court correctly ruled in its first order dismissing FamilyCare's Third Claim for Relief, annual rate amendments "amount to new contract formation every year and therefore make inapplicable the doctrine of the implied covenant of good faith and fair dealing."  (Dkt. 187 at 66-67.)  The Court should adhere to its prior ruling and dismiss FamilyCare's Third Claim for Relief.

FamilyCare does not respond to this argument.  Instead, FamilyCare devotes its response brief to arguing that the CCO Contract had a five-year term.  OHA agrees that the CCO Contract had a five-year term and made that clear in its Motion.  (Def. OHA's Mot. to Dismiss, Mot. for Summ. J., and Mot. to Strike ("Mot.") (Dkt. 432) at 14 ("The CCO Contract was a five-year contract. . . .").)  The relevant question is not whether the CCO Contract had a five-year term or a one-year term; the relevant question is whether the duty of good faith and fair dealing applies to formation of the CCO Contract's annual rate amendments.  It does not and the Court should dismiss the claim.[1]

FamilyCare also contends that OHA's position lacks "logic" because it would mean that no duty of good faith applies "to the performance" of any contract that can be terminated at will.  But that is not OHA's position.  The duty of good faith does not apply to the formation of contract *amendments* because contract amendments require mutual assent and consideration, hence a new meeting of the minds.  The duty of good faith applies to the performance of contract amendments after they have been formed.  There is nothing illogical about OHA's position; it is the law.

> **B.** **Even if the Court finds that the duty of good faith applies to the formation of rate amendments, it should dismiss FamilyCare's Third Claim for Relief**

---

[1]  FamilyCare cites a variety of legislative history in its argument that the CCO Contract is a five-year contract.  OHA agrees that the Contract is a five-year contract and the terms of the Contract itself are clear on that point.  Consequently, there is no basis for the Court to consider extrinsic evidence.  *Yogman v. Parrott*, 325 Or. 358, 361 (1997) ("[T]he court examines the text of the disputed provision, in the context of the document as a whole.  If the provision is clear, the analysis ends.").

**Page 2 -    DEFENDANT OREGON HEALTH AUTHORITY'S REPLY IN SUPPORT OF MOTIONS TO DISMISS, FOR SUMMARY JUDGMENT, AND TO STRIKE**

**because the CCO Contract gave OHA discretion to set rates and OHA notified FamilyCare of the new rates.**

In Oregon, where a contract provides for the "unilateral exercise of discretion" by one party, then the other party's only "reasonable expectation[]" is that it receives notice of the exercise of discretion. *Tolbert*, 312 Or. at 494; *see also Pac. First Bank v. New Morgan Park Corp*, 319 Or. 342, 354 (1994) (where parties "agreed to a unilateral, unrestricted exercise of discretion" then exercise of discretion could not be "constrained" by other party). Accordingly, this Court is bound by the Oregon Supreme Court's binding statement of Oregon law and should reject FamilyCare's efforts to constrain OHA's contractually permissible exercise of discretion.

FamilyCare's attempts to distinguish *Tolbert* are unpersuasive. FamilyCare is wrong as a legal matter that *Tolbert* "was limited to the particular facts of that case." (Pls. Opp'n to Mot. to Dismiss, Mot. for Summ. J., and Mot. to Strike ("Opp'n") (Dkt. 452) at 32). Since *Tolbert*, the Oregon Supreme Court has reiterated that where a contract grants one party the "unilateral" right to exercise its discretion, that exercise of discretion is not constrained by the other party's "expectations." For instance, in *Uptown Heights Associates Ltd. Partnership v. Seafirst Corporation,* a bank foreclosed on a real estate development and thereby scuttled several lucrative purchase offers obtained by the developer. 320 Or. 638, 643 (1995). The developer alleged that the bank's conduct was unreasonable and improperly motivated because it harmed the developer but provided no benefit to the bank. But, according to the Oregon Supreme Court, under the terms of the developer and the bank's contract, "'the parties agreed to—that is, reasonably expected—a unilateral, unrestricted exercise of discretion' in Bank's choice of foreclosure as a remedy[.]" *Id.* at 648 (quoting *Pac. First Bank,* 319 Or. at 354). Accordingly, the developer had no expectation of anything more than the bank's exercise of its contractual discretion and the developer's claim for breach of the duty of good faith failed. *Id.*

FamilyCare also contends that unlike the depositors in *Tolbert*, FamilyCare did not agree to the rates it was offered. (Opp'n at 32.) FamilyCare misreads *Tolbert*. As OHA explained in its Motion, *Tolbert* addressed two distinct circumstances: the initial fees that the depositors agreed to when they opened their accounts and the defendant bank's subsequent changes to those

**Page 3 -  DEFENDANT OREGON HEALTH AUTHORITY'S REPLY IN SUPPORT OF MOTIONS TO DISMISS, FOR SUMMARY JUDGMENT, AND TO STRIKE**

fees, pursuant to its unilateral discretion in the contract and after providing notice to the depositors. 312 Or. at 491-95. The fact pattern in *Tolbert* is nearly identical to the pattern here, where FamilyCare agreed to the rates in the initial, 2014 CCO Contract, and then OHA gave FamilyCare notice of each annual change to the rates in the rate amendments. (Decl. of Anit Jindal in Supp. of Def. OHA's Mot. to Dismiss, Mot. for Summ. J., and Mot. to Strike (Dkt. 433) ("Jindal Decl.") Exs. 2-13.) As in *Tolbert*, FamilyCare's claim fails because OHA met the parties' only reasonable contractual expectations.

**C.    The Court should dismiss FamilyCare's Third Claim for Relief because the CCO Contract gives OHA unilateral discretion to set rates subject to only two conditions, which OHA met.**

**1.    The CCO Contract establishes that the parties' reasonable expectations were that OHA had unilateral discretion to set rates subject to only two conditions.**

As explained in OHA's Motion to Dismiss, the CCO Contract provided two—and only two—express limits on OHA's discretion to determine capitation rates in a contract amendment: OHA had to i) provide rates that were actuarially set and certified and ii) submit the rates to CMS for approval. (2017 CCO Contract, § I.A, Ex. C, § 6, Ex. D § 20.c, Jindal Decl. Ex. 1.) In its Opposition, FamilyCare does not dispute these terms of the Contract or that they are the only contractual constraints on OHA's discretion. Because "the reasonable contractual expectations of the parties are shown by the express terms of the contract," *W. Prop. Holdings, LLC v. Aequitas Capital Mgmt., Inc.*, 284 Or. App. 316, 325 (2017), FamilyCare's only reasonable expectation was that OHA would actuarially set and certify rates and submit those rates to CMS. FamilyCare does not allege that OHA failed to meet these expectations.

**2.    The Court should reject FamilyCare's new and unpleaded assertion that its reasonable contractual expectations were informed by "prior practice, industry standards, the applicable regulatory framework," and "constitutional and other obligations and limitations."**

The "duty of good faith operates to effectuate the reasonable expectations of the parties as determined under the terms of their contract." *Pac. First Bank*, 319 Or. at 354 (emphasis omitted). FamilyCare contends in its response—for the first time *and after the close of discovery*—that its contractual expectations were formed by "prior practice, industry standards,

**Page 4 -    DEFENDANT OREGON HEALTH AUTHORITY'S REPLY IN SUPPORT OF MOTIONS TO DISMISS, FOR SUMMARY JUDGMENT, AND TO STRIKE**

the applicable regulatory framework," and "constitutional and other obligations and limitations." (Opp'n at 32.)  But, despite filing six complaints, FamilyCare has never pleaded that its reasonable contractual expectations were based on things such as "industry standards," "prior practice," or "constitutional and other obligations and limitations."  On the contrary, in its Fifth Amended Complaint, FamilyCare pleads that its "objectively reasonable expectation[s]" were based on "the Contract and applicable law"—and nothing else.  (5th Am. Compl. (Dkt. 429) ¶ 107.)  FamilyCare cannot now, outside of its pleading and after the close of discovery, contend that its objectively reasonable expectations were also based on a host of other factors it has never pleaded.  *See Schneider v. Cal. Dep't. of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." (citation omitted; emphasis in original)).  To the extent that it contends that its reasonable expectations are based on factors other than what it expressly pleaded—the "Contract and applicable law"—FamilyCare has failed to plead a claim for relief because its Fifth Amended Complaint fails to give OHA fair notice of the grounds on which its claim its based.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (Rules of Civil Procedure require pleading to "give the defendant fair notice of what the claim is and the grounds upon which it rests[.]" (cleaned up).)

Because FamilyCare never pleaded these supposed standards, OHA never had an opportunity to take discovery on them.  If FamilyCare had pleaded that it was relying on "prior practices," OHA would have asked FamilyCare's deposition witnesses what prior practices created FamilyCare's reasonable expectations.  But discovery closed more than two years ago and OHA no longer has that opportunity.  For that reason alone, the Court should bar FamilyCare from introducing a new and unpleaded basis for its claim into this case.  *See Tucker v. Cascade Gen., Inc.*, No. CV 09-1491-AC, 2011 WL 13250770, at *2 (D. Or. Nov. 7, 2011) (denying motion to amend to add new allegation to claim after close of discovery and shortly before trial).

FamilyCare's newfound reliance on "prior practice, industry standards, the applicable regulatory framework," and "constitutional and other obligations and limitations" separately fails

**Page 5 -   DEFENDANT OREGON HEALTH AUTHORITY'S REPLY IN SUPPORT OF MOTIONS TO DISMISS, FOR SUMMARY JUDGMENT, AND TO STRIKE**

because FamilyCare does not explain what these factors are or how they created FamilyCare's objectively reasonable contractual expectations. What prior practice is FamilyCare referring to? It identifies none. What industry standards? FamilyCare cites to no practice guide, association handbook, or other set of standards that supposedly import new terms into the CCO Contract. Although FamilyCare suggests that some "regulatory framework" is "applicable," it does not cite a single regulation—federal, state, or local. And the supposed "constitutional" obligations appear to be nothing more than an attempt to re-introduce FamilyCare's Section 1983 claim against Patrick Allen back into the case, despite the fact that the Ninth Circuit dismissed the claim. In any event, FamilyCare does not identify what constitutional obligation supposedly creates a reasonable contractual expectation.

Even if adequately pleaded, FamilyCare's reliance on "prior practice" and "industry standards" fails on the merits. It is black-letter law that parole evidence cannot be used to supplement the terms of a completely integrated agreement. *Abercrombie v. Hayden Corp.*, 320 Or. 279, 288 (1994) ("A completely integrated writing may not be contradicted or supplemented by prior terms."); ORS 41.740 ("When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can be, . . . no evidence of the terms of the agreement, other than the contents of the writing."); *see also* (Jindal Decl. Ex. 2 at Ex. D, § 26 ("This Contract constitutes the entire agreement between the parties on the subject matter hereof. There are no understandings, agreements, or representations, oral or written, not specified herein regarding this Contract.")). This rule applies to good faith claims too because the duty of good faith and fair dealing "effectuate[s] the reasonable expectations of the parties as determined under the terms of their contract." *Pac. First Bank*, 319 Or. at 354 (emphasis omitted).

### 3. FamilyCare had no contractual expectation that it could challenge OHA's subjective motivations or "bias" when setting the rates.

The covenant of good faith does not "provide a remedy for an unpleasantly motivated act[.]" *U.S. Nat. Bank of Oregon v. Boge*, 311 Or. 550, 567 (1991). As such, FamilyCare's contention that OHA was "bias[ed]" and that this "anti-FamilyCare animus" breached the

**Page 6 -    DEFENDANT OREGON HEALTH AUTHORITY'S REPLY IN SUPPORT OF MOTIONS TO DISMISS, FOR SUMMARY JUDGMENT, AND TO STRIKE**

implied covenant of good faith is meritless. (Opp'n at 29.) In *Boge*, a bank foreclosed on a dairy farmer's cows immediately after the farmer defaulted on a loan. The farmer offered evidence that the bank's employee "harbored subjective ill will toward him" and therefore the employee demanded that the farmer immediately surrender the cows even though the farmer intended to redeem. *Id.* at 566. The Supreme Court rejected this "ill will" theory because the bank was simply exercising its legal rights under the contract. *Id.* That ruling applies equally here. Regardless of OHA's motivations, it did no more than exercise its contractual rights. The duty of good faith cannot provide a remedy for OHA's supposed motivations.

Oregon case law on this point is overwhelming. *Eddy v. Anderson*, 366 Or. 176, 188 (2020) ("Whether (or not) his or her actions meet an objective standard of 'reasonableness'—or are 'unpleasantly motivated,'—is irrelevant." (citation omitted)); *Zygar v. Johnson*, 169 Or. App. 638, 645 (2000) (The "implied covenant cannot contradict an express contractual term, nor otherwise provide a remedy for an unpleasantly motivated act that is permitted expressly by the contract."); *Pac. First Bank*, 319 Or. at 352-53 (quoting *Boge*, 311 Or. at 567); *Bliss v. S. Pac. Co.*, 212 Or. 634, 646 (1958) ("If, however, a given enforceable contract creates rights and privileges in one of the parties, his motives for the exercise of such rights or privileges so conferred are immaterial.").

FamilyCare derives its contrary rule from unpublished decisions from other judges of this Court that are either distinguishable or should not be followed. For instance, in *Jones v. George Fox Univ.*, a university reprimanded a student for requesting accommodations for her disability. No. 3:19-CV-0005-JR, 2021 WL 1414280, at *7 (D. Or. Feb. 3, 2021). The university's contract with the student "commit[ted] to providing equal opportunity and meaningful access for qualified students with physical, psychological, attentional, or learning-based disabilities in compliance with the ADA and the Rehabilitation Act." *Id.*, at *6. Thus, *Jones* is distinguishable because in that case the Court identified an express contract term that gave rise to the reasonable expectation of non-discrimination. The covenant of good faith did not create a freestanding requirement against animus; the contract itself created the expectation of non-discrimination. FamilyCare cites to no similar statement in the CCO Contract.

**Page 7 -   DEFENDANT OREGON HEALTH AUTHORITY'S REPLY IN SUPPORT OF MOTIONS TO DISMISS, FOR SUMMARY JUDGMENT, AND TO STRIKE**

In *DePaul Industries v. City of Eugene*, a government contract for security services expired at the end of its term and a city chose to contract with a different security company. No. 6:18-CV-00320-MC, 2020 WL 5078758, at *4 (D. Or. Aug 27, 2020).  A different judge in this Court held that the duty of good faith applied to the city's decision not to renew the contract and that the duty prevented the City from declining to renew the contract for reasons unrelated to the contractor's performance.

Respectfully, *DePaul Industries* fails to follow binding Oregon appellate court precedent and this Court should not apply its conclusions that contradict that precedent.  The Oregon Supreme Court has stated that the duty of good faith does not apply to new contract formation. *Tolbert*, 312 Or. at 494.  The Oregon Supreme Court has also stated the duty of good faith and fair dealing does not provide a remedy for unpleasantly motivated acts.  *Boge*, 311 Or. at 567. And the Oregon Supreme Court has repeatedly stated that where a contract provides for the "unilateral exercise of discretion" by one party then the other party's only "reasonable expectation[]" is that it have notice of the exercise of discretion.  *Tolbert*, 312 Or. at 494; *see also Pac. First Bank*, 319 Or. at 354 (where parties "agreed to a unilateral, unrestricted exercise of discretion" then exercise of discretion could not be "constrained" by other party).  The conclusions in *DePaul Industries* that do not comport with Oregon appellate precedent should not be applied here.

### 4.      FamilyCare's statement of its reasonable contractual expectations contradicts numerous express contractual provisions.

FamilyCare admits that the covenant of good faith cannot "vary express contract terms" but wrongly argues that its "reasonable expectations" do not contradict any express contract terms.  (Opp'n at 30-31.)  On the contrary, they contradict multiple terms.  FamilyCare contends that it "reasonably expected that OHA would set rates that would permit FamilyCare to fulfill its full five-year term."  (Opp'n at 21.)  For this proposition, FamilyCare cites legislative history suggesting that certain legislators wanted to "encourage long-term investments by CCOs."  (*Id.* at 20.)  Thus, FamilyCare characterizes the CCO Contract as a "a multi-billion-dollar, long-term contract."  (*Id.* at 30.)  Based on this expectation of a full five-year term during which it would

**Page 8 -   DEFENDANT OREGON HEALTH AUTHORITY'S REPLY IN SUPPORT OF MOTIONS TO DISMISS, FOR SUMMARY JUDGMENT, AND TO STRIKE**

receive billions of dollars in revenue, FamilyCare "expected" that it could challenge the rate-setting methodology and demand higher rates than were offered to it in a given annual rate amendment.

But FamilyCare's "expectations" are contradicted by the terms of the CCO Contract, which not only contains no terms creating such expectations, it also disclaims any reasonable expectation that FamilyCare would have such a right. For one, FamilyCare had no expectation that it would receive a "full five-year term" of rates worth billions of dollars. Pursuant to express terms, OHA could terminate the CCO Contract in its sole discretion for a variety of reasons set forth in the CCO Contract. (2017 CCO Contract at Ex. D, § 10(e), § 6, Jindal Decl. Ex. 1.) Further, FamilyCare had no reasonable expectation that it could demand higher rates than were offered in the annual rate amendments. The rates provided in the amendment were the "total consideration for all work performed" by FamilyCare. (*Id.* at Ex. C, § 2.) And, if FamilyCare rejected the amendment, the CCO Contract would terminate. (*Id.* at Ex. C, § 10.) What FamilyCare could expect was no more than what the CCO Contract expressly stated: That it would have an opportunity, each year, to accept or reject rates that OHA "actuarially set" and that were submitted to CMS for approval. If FamilyCare accepted the rates—as it did in 2017— those rates would provide the "total consideration" payable to FamilyCare. If FamilyCare rejected the rates—as it did in 2018—the CCO Contract would "terminate . . . automatically and without any requirement for notice between the parties." (*Id.* at Ex. C, § 10.)

FamilyCare's reliance on legislative history is also inappropriate. FamilyCare has not pleaded that the legislative history of Oregon statutes informed the parties' understanding of their reasonable contractual expectations and OHA has not had an opportunity to take discovery on that question. *See supra* § I.C.2. In addition, FamilyCare does not identify any term of the CCO Contract that is ambiguous, permitting introduction of extrinsic evidence. *See Yogman v. Parrott*, 325 Or. 358, 361 (1997) ("If the provision is clear, the analysis ends.").

### 5.    The 2018 Rate Amendment was timely.

As explained in OHA's Motion, FamilyCare received the 2018 Rate Amendment, with an effective date of January 1, 2018, on October 31, 2017. The rate amendment was, therefore,

**Page 9 -    DEFENDANT OREGON HEALTH AUTHORITY'S REPLY IN SUPPORT OF MOTIONS TO DISMISS, FOR SUMMARY JUDGMENT, AND TO STRIKE**

timely under former ORS 414.652.  FamilyCare does not respond to this undisputed, dispositive fact.  Instead, FamilyCare contends that the 2018 Rate Amendment was "incorrect" because it was based on "errors" in enrollment data.  (Opp'n at 27.)  But in making this argument, FamilyCare simply restates its theory that it was entitled to challenge the rate-setting methodology.  FamilyCare does not offer any reason why the 2018 Rate Amendment was untimely in violation of former ORS 414.652.

FamilyCare also contends that under OHA's interpretation of the CCO Contract, OHA could offer a CCO "*any* rates" including "one dollar per member per year."  (Opp'n at 27 (emphasis in original).)  But that is not true.  The CCO Contract provides two limitations on OHA's rate-setting authority: the rates must be "actuarially set" and submitted to CMS for review and approval.  *See supra* § I.C.1.  OHA—obviously—could not set rates of one dollar and hope to obtain CMS approval.  FamilyCare's scenario in which OHA offers one-dollar rates is not based on law or fact.

Furthermore, Director Allen did not—and could not—shorten the time period FamilyCare had to accept or reject the rate amendment.  The 2018 Rate Amendment expressly provided its effective date of January 1, 2018.  (2018 Rate Amendment, § I.A., Jindal Decl. Ex. 15.)  FamilyCare could have signed the Amendment up until that date; FamilyCare makes no argument explaining how Director Allen could have changed the effective date of the Contract.  In any event, FamilyCare does not allege that it attempted to execute the rate amendment after Director's Allen's alleged "ultimatum," (Opp'n at 26), or that it would have signed before January 1, 2018 but for the "ultimatum."  Accordingly, FamilyCare fails to establish any causation or damages resulting from the conduct it alleges.

> **6.    FamilyCare implicitly concedes that some of its pleaded reasonable expectations are unsupportable.**

In its Third Claim for Relief, as pleaded, FamilyCare asserts that it was entitled to "annual Rate Amendments that were timely, reasonable, unbiased, actuarially sound, adequate, and free of errors in underlying data and methodology."  (5th Am. Compl. ¶ 107).  In its Motion to Dismiss, OHA observed that none of these extra-contractual conditions on the rate-setting

process were reasonable contractual expectations.  (Mot. at 19.)  In its opposition, FamilyCare only defends some of these theories, namely that rate amendments should be "unbiased, timely, and not knowingly based on erroneous data."  (Opp'n at 25.)  Thus, FamilyCare implicitly concedes that its good faith claim no longer encompasses a claim for actuarially sound, adequate, or reasonable rates.  Even if the Court does not grant OHA's Motion on any of the bases above, it should narrow the claim to the legal theories that FamilyCare defends in its opposition.[2]

### 7.    Contract interpretation is a question of law and can be decided on a motion to dismiss.

Contrary to FamilyCare's contention, the parties' reasonable contractual expectations are not a jury question.  First, as discussed above, the Court should not allow FamilyCare to raise the extrinsic factors it cites for the first time in its opposition and which it has never pleaded.  Second, as explained in *Pacific First Bank*, "the reasonable expectations of the parties [are] determined under the terms of their contract," 319 Or. at 354, and where the contract terms are unambiguous "the court construes the words of a contract as a matter of law."  *ACN Opportunity, LLC v. Emp. Dep't*, 362 Or. 824, 839 (2018) (quotation marks and citation omitted).  Here, there is no dispute about the meaning of the terms of the CCO Contract in the context of FamilyCare's good faith claim and, consequently, the Court may determine the parties' reasonable contractual expectations as a matter of law.  Third, the Oregon Supreme Court has never held that the parties' reasonable expectations are a jury question and has determined the reasonable expectations of the parties on review of a trial court's decision on a motion to dismiss.  *Uptown Heights Assocs. Ltd. P'ship*, 320 Or. at 641; *see also Klamath Off-Project Water Users, Inc.*, 237 Or. App. at 446 (affirming grant of motion to dismiss good faith and fair dealing claim).  Fourth, most of the cases cited by FamilyCare are

---

[2] In a footnote, FamilyCare contends that it was entitled to rates that covered its costs of "providing covered services under the Contract."  (Opp'n at 25 n. 9).  But by statute, FamilyCare was required to operate within a "fixed global budget."  ORS 414.570(1).  The CCO Contract specifically states that the rates provided the "*total* consideration payable . . . for *all* work performed under this Contract."  (2017 CCO Contract, Ex. C, § 2, Jindal Decl. Ex. 1.)  Accordingly, FamilyCare had no expectation that its costs would be fully reimbursed.  In any event, FamilyCare has not pleaded this theory and it is raised for the first time in its opposition.

**Page 11 - DEFENDANT OREGON HEALTH AUTHORITY'S REPLY IN SUPPORT OF MOTIONS TO DISMISS, FOR SUMMARY JUDGMENT, AND TO STRIKE**

inapposite: they note that whether a defendant has breached the duty of good faith is a question of fact; they do not hold that the parties' reasonable contractual expectations are a question for the jury. The few that imply otherwise—*Degon v. USAA Cas. Ins. Co.*, No. 3:19-CV-01152-IM, 2021 WL 413839, at *9 (D. Or. Jan. 7, 2021), *Depaul Indus.*, 2020 WL 5078758, at *4, and *Gregory Funding LLC v. Saksoft, Inc.*, No. 3:16-CV-480-SI, 2016 WL 4480693, at *3 (D. Or. Aug. 24, 2016)—are unpublished district court cases that cite no binding Oregon Supreme Court precedent for their assertions and do not consider the issue in any depth. Because FamilyCare has failed to plead that OHA breached the parties' reasonable contractual expectations, as determined by the unambiguous terms of the CCO Contract, the Court can and should determine that FamilyCare's Third Claim for Relief fails as a matter of law on this Motion to Dismiss.

**II.    If the Court does not dismiss FamilyCare's Third Claim for Relief, it should grant partial summary judgment dismissing FamilyCare's "enterprise" damages.**

**A.    This Court's statements and scheduling orders did not bar OHA's motion for summary judgment.**

OHA separately moves for partial summary judgment against FamilyCare's newly pleaded enterprise damages theory in its Third Claim for Relief. (5th Am. Compl. ¶¶ 109-10.) FamilyCare contends that at the April 5, 2021 status conference the Court ordered OHA not to file additional dispositive motions regarding the Third Claim for Relief. FamilyCare's characterization of the record is false. The Ninth Circuit vacated and remanded this Court's earlier dismissal of the Third Claim for Relief. At the hearing, regarding the Third Claim for Relief specifically, OHA argued that "motion practice would be very beneficial to the Court and the parties to clarify the issues that remain and present them to the Court for resolution." (4/5/21 Hearing Tr. attached as Ex. 1 to the Decl. of Anit Jindal in Supp. of Def.'s Reply, at 14:20-23.) The Court agreed stating "I think motion practice is the right way under the federal rules to resolve a question like this even after a remand" and "I agree to fully resolve this question, motion practice would be necessary." (*Id.* at 15:13-19.) Indeed, later in the conference, FamilyCare itself conceded that there would be dispositive motion practice regarding the

**Page 12 - DEFENDANT OREGON HEALTH AUTHORITY'S REPLY IN SUPPORT OF MOTIONS TO DISMISS, FOR SUMMARY JUDGMENT, AND TO STRIKE**

amended complaint.  (*Id* at 18:18-20) ("I certainly understand what Mr. Wilson says about if there's an amendment to the complaint that introduces a new claim, that that -- that there may be some dispositive motion practice relative to that . . . .").  And when filing its Fifth Amended Complaint, FamilyCare expressly stipulated that OHA "reserve[d] the right to challenge the allegations and claims in due course."  (Stipulation Regarding FamilyCare's 5th Am. Compl. (Dkt. 427) at 2.)  In arguing that the Court barred OHA from filing additional dispositive motions regarding the Third Claim for Relief, FamilyCare quotes from an irrelevant passage of the hearing discussing reopening discovery.  FamilyCare's mischaracterization of the record is unavailing; OHA's Motion for Summary Judgment is procedurally proper.

FamilyCare's enterprise damage theory is new.  FamilyCare admits that allegations regarding enterprise value damages in its Fourth Amended Complaint appeared in a different claim, not the good faith and fair dealing claim.  (Opp'n at 36 (stating that allegations regarding enterprise value damages appeared "in a claim that is no longer in the complaint")).  And, the majority of paragraph 109 in the Fifth Amended Complaint, which contains the allegations regarding enterprise damages, was not present in any earlier versions of FamilyCare's complaints.  Paragraph 110 reflects the new allegations in paragraph 109, nearly tripling the amount of taxpayer money FamilyCare is demanding.  FamilyCare's attempt to insulate its new allegations from challenge by reliance on a misreading of this Court's instructions fails scrutiny.

FamilyCare also contends that OHA's motion is "three years too late," referencing the summary judgment deadline in this case.  But OHA did not move for summary judgment against FamilyCare's good faith claim in 2018 because the Court had already dismissed the claim on a motion to dismiss.  OHA's Motion is timely and appropriate.

> **B.** **Enterprise value damages are consequential damages prohibited by the CCO Contract's limitation of liability.**

This Court should grant OHA's motion for partial summary judgment because FamilyCare's demand for enterprise value damages are consequential damages and thus barred by the limitation of liability.  (2017 CCO Contract, Ex. D. § 11.a., Jindal Decl. Ex. 1.) FamilyCare contends that enterprise value damages, including lost profits, are direct damages.

**Page 13 - DEFENDANT OREGON HEALTH AUTHORITY'S REPLY IN SUPPORT OF MOTIONS TO DISMISS, FOR SUMMARY JUDGMENT, AND TO STRIKE**

(Opp'n at 37).  FamilyCare is mistaken.  Direct damages "arise directly according to the usual course of things from the breach itself[.]"  *Duyck v. Nw. Chem. Corp.*, 94 Or. App. 111, 117 (1988).  By contrast, consequential damages "occur as a consequence of special circumstances known or reasonably supposed to have been contemplated by the parties when the contract was made."  *Id*.  Here, the only damages arising "directly . . . from the breach itself" would be the difference between the rates offered to FamilyCare and the rates FamilyCare contends it was owed (less any expenses saved as a result of the alleged breach).  But FamilyCare's enterprise value damages are consequential damages because they are "a consequence of special circumstances" of FamilyCare's business but not "directly . . . from the breach itself."  *Id.* Oregon courts have repeatedly held that the components of enterprise value damages (*e.g.* lost profits, reputational harm) are consequential damages.  *Id.*; *Welch v. U. S. Bancorp Realty & Mortgage Tr.*, 286 Or. 673, 703 (1979) (lost profits); *Ramco, Inc. v. Pac. Ins. Co.*, 249 Or. 666, 674-75 (1968) (business reputation).

FamilyCare also incorrectly contends that enterprise value damages are not consequential damages because they were "well-known to OHA before contracting with FamilyCare."  (Opp'n at 37).  Setting aside the question of whether FamilyCare's assertion is correct for the purposes of this motion only, consequential damages include damages "known" or "contemplated" by the parties.  *Duyck*, 94 Or. App. at 117.  FamilyCare cites no authority for its contrary rule and it is not the law.

In addition, FamilyCare asserts that enterprise value damages are "general damages." (Opp'n at 37).  But "general damages" and "special damages" are tort law categories, which common law distinguished between "damages that are the natural and necessary result of the injury (general damages) and those naturally, but not necessarily resulting from the injury (special damages)."  *Whitman-McCoy v. Dept. of Corr.*, 132 Or. App. 45, 50 (1994).  These tort law concepts are irrelevant to this breach of contract claim; the limitation of liability does not mention general and special damages.

Finally, FamilyCare cites the rule from New York that lost profits are direct damages when the proceeds from the breached contract were necessary to fund the non-breaching party's

**Page 14 - DEFENDANT OREGON HEALTH AUTHORITY'S REPLY IN SUPPORT OF MOTIONS TO DISMISS, FOR SUMMARY JUDGMENT, AND TO STRIKE**

business.  But this New York rule is not the law in Oregon.  *Joseph Forest Products, Inc. v. Pratt*, 278 Or. 477, 482 (1977) (holding that lost profits due to lack of fire insurance proceeds needed to fund business were consequential damages).

### C.      The CCO Contract's limitation of liability is enforceable.

In Oregon, contracts are presumed to be legal and enforceable.  *Oregon Growers' Etc. Assn. v. Lentz*, 107 Or. 561, 582 (1923).  "A public policy must be 'overpowering' before a court will interfere with the parties' freedom to contract on public policy grounds."  *Estey v. MacKenzie Engineering Inc.*, 137 Or. App 1, 6 (1995), *rev'd on other grounds*, 324 Or. 372 (1996).  "[A] party seeking to avoid contractual responsibility must demonstrate that enforcement of the contractual provision as to him or her will offend public policy.  That is so regardless of whether enforcement of the same contractual provision against other parties in other circumstances would violate public policy."  *Harmon v. Mt. Hood Meadows, Ltd.*, 146 Or. App. 215, 222 (1997).  Accordingly, where a plaintiff fails to identify the public policy at issue and proffer evidence that the public policy was violated on the facts of the particular case, the Court should enforce the limitation of liability and grant summary judgment to the defendant. *See id* at 224. (granting summary judgment where plaintiff failed to identify and apply the relevant public policy); *Nw. Pine Products, Inc. v. Cummins Nw., Inc.*, 126 Or. App 219, 223 (1994) (enforcing consequential damages waiver); *K-Lines, Inc. v. Roberts Motor Co.*, 273 Or. 242, 252 (1975) (holding that consequential damages waiver was not unenforceable as against public policy).  Thus, because FamilyCare does not identify a public policy that the limitation of liability violates, the limitation is legal and enforceable.

FamilyCare relies on numerous out-of-state and inapposite cases declining to enforce limitations of liability.  These non-binding cases do not apply because they address contractual limitations on *direct* damages, not consequential damages.  *See, e.g.*, *Kalisch-Jarcho, Inc. v. City of New York*, 58 N.Y. 2d 377, 381 (1983) (invalidating complete bar to damages for delay in construction); *State ex rel. Mountain States Tel. & Tel. Co. v. Dist. Court In & For Silver Bow*, 160 Mont. 443, 448 (1972) (*enforcing* cap on direct damages); *City of Dillingham v. CH2M Hill Nw., Inc.*, 873 P.2d 1271, 1275 (Alaska 1994) (invalidating direct damages cap as violative of

**Page 15 - DEFENDANT OREGON HEALTH AUTHORITY'S REPLY IN SUPPORT OF MOTIONS TO DISMISS, FOR SUMMARY JUDGMENT, AND TO STRIKE**

state statute); *but see Smithkline Beecham Corp. v. Abbott Lab'ys*, No. C 07-05702 CW, 2011 WL 3903190, at *1 (N.D. Cal. Sept. 6, 2011).

Further, as FamilyCare admits, no Oregon court has ever held that a limitation on damages for breach of contract is unenforceable as against public policy. Instead, Oregon follows the Second Restatement when determining the scope of public policy restrictions on limitations on liability. *See, e.g., Bagley v. Mt. Bachelor, Inc.*, 356 Or. 543, 556 (2014) (citing Second Restatement); *Harmon*, 146 Or. App. at 222 (same). The Second Restatement only recognizes public policy limitations on contract terms "exempting a party from *tort* liability for harm caused intentionally or recklessly." *Harmon*, 146 Or. App. at 222 n.6 (quoting Restatement (Second) of Contracts § 195 (1981) (emphasis added)). Accordingly, it is unlikely that Oregon courts would expand public policy to restrict the parties' right to freely contract regarding contractual liability. *See generally K-Lines, Inc.*, 273 Or. at 248 (1975) ("There is nothing inherently bad about a contract provision which exempts one of the parties from liability. The parties are free to contract as they please, unless to permit them to do so would contravene the public interest." (citation omitted)). FamilyCare's reliance on tort concepts like "gross negligence" and "willful conduct" are not relevant to its contract claim against OHA. The limitation on liability is enforceable.

**III.    The Court should strike paragraph 78 of the Fifth Amended Complaint.**

As explained in OHA's Motion, the Court should strike paragraph 78 of the Fifth Amended Complaint because it describes subsequent remedial measures, which are inadmissible under Federal Rule of Evidence 407. The paragraph is therefore impertinent and immaterial under Federal Rule of Civil Procedure 12(f). *See Saroya v. Univ. of the Pac.*, 5:20-CV-03196-EJD, 2020 WL 7013598, at *8-9 (N.D. Cal. Nov 27, 2020) (striking paragraph where plaintiff contended it was "immaterial and impertinent" because, in part, it alleged subsequent remedial measure barred by Fed. R. Ev. 407).

FamilyCare likens this case to *Nguyen v. Simpson Strong-Tie Co., Inc.*, No. 19-cv-07901-TSH, 2020 WL 5232563 (N.D. Cal. Sept. 2, 2020), but that case is distinguishable. In *Nguyen*, the class action plaintiffs pleaded the contents of various iterations of warning labels regarding

**Page 16 - DEFENDANT OREGON HEALTH AUTHORITY'S REPLY IN SUPPORT OF MOTIONS TO DISMISS, FOR SUMMARY JUDGMENT, AND TO STRIKE**

an allegedly defective product. *Id.* at \*3. The defendant moved to strike, citing Federal Rule of Evidence 407. *Id.* at \*4. The plaintiffs argued that the warnings were neither subsequent nor remedial because class members purchased the product in each iteration of the warning and regardless the later warnings were still insufficient. *Id.* The court declined to strike the plaintiffs' allegations because it was "too early to tell" whether they involved subsequent remedial measures. *Id.* Here, unlike in *Nguyen*, FamilyCare alleges that "after" FamilyCare left the market "OHA revised the rate-setting process to *address many of the issues* previously raised by FamilyCare." (5th Am. Compl. ¶ 78 (emphasis added)). FamilyCare's allegation leaves no room for doubt: it states that OHA took subsequent remedial actions in response to "issues previously raised by FamilyCare." (*Id.*)

FamilyCare also wrongly contends paragraph 78 is appropriate because its allegations could show "bad faith, unintentional, and willful conduct by OHA."[3] (Opp'n at 44.) Not so. Evidence of subsequent policy change "is not probative of defendant's state of mind at the time plaintiff" was injured. *Stahl v. Bd. of Comm'rs of Unified Gov't of Wyandotte Cty./Kansas City, Kansas*, 244 F. Supp. 2d 1181, 1188 (D. Kan. 2003), *aff'd*, 101 F. App'x 316 (10th Cir. 2004); *Gutierrez v. Mora*, No. CV 18-781-KS, 2019 WL 8953125, at \*6 (C.D. Cal. Dec. 18, 2019) ("the Court is not persuaded that the after-the-fact records of Plaintiff's conduct in other institutions has any relevance to the claims and/or defenses at issue in this case"); *King v. Hasbro, Inc.*, No. CIVA 07-4001, 2009 WL 3157319, at \*1 (E.D. Pa. Sept. 28, 2009) ("Evidence regarding events that transpired subsequent to an injury is generally irrelevant to claims arising from that injury."). And, as explained in OHA's Motion for a Protective Order Re Scope of Supplemental Discovery (Dkt. 434) and Response to FamilyCare's Motion for Discovery (Dkt. 447), evidence regarding OHA's 2019 and 2020 rate-setting, when FamilyCare was not in the market, is irrelevant to FamilyCare's claims. The Court should strike paragraph 78 because it is immaterial and impertinent. Fed. R. Civ. P. 12(f).

---

[3] If this Court dismisses FamilyCare's Third Claim for Relief, it should also strike paragraph 78 because none of the remaining claims involve OHA's alleged "bad faith" conduct.

**Page 17 - DEFENDANT OREGON HEALTH AUTHORITY'S REPLY IN SUPPORT OF MOTIONS TO DISMISS, FOR SUMMARY JUDGMENT, AND TO STRIKE**

## CONCLUSION

For the foregoing reasons, the Court should grant OHA's Motions and dismiss FamilyCare's Third Claim with prejudice and strike Paragraph 78 of the Fifth Amended Complaint.

DATED this 22 day of June, 2021.

ELLEN ROSENBLUM
ATTORNEY GENERAL
FOR THE STATE OF OREGON

By:    *s/ Harry B. Wilson*

David B. Markowitz, OSB #742046
DavidMarkowitz@MarkowitzHerbold.com
Matthew A. Levin, OSB #003054
MattLevin@MarkowitzHerbold.com
Harry B. Wilson, OSB #077214
HarryWilson@MarkowitzHerbold.com
Laura Salerno Owens, OSB #076230
LauraSalerno@MarkowitzHerbold.com

*Special Assistant Attorneys General for Defendant Oregon Health Authority, an agency of the State of Oregon*

Carla A. Scott, OSB #054725
carla.a.scott@doj.state.or.us

*Of Attorney for Defendant Oregon Health Authority, an agency of the State of Oregon*

1155248

**Page 18 - DEFENDANT OREGON HEALTH AUTHORITY'S REPLY IN SUPPORT OF MOTIONS TO DISMISS, FOR SUMMARY JUDGMENT, AND TO STRIKE**

## CERTIFICATE OF COMPLIANCE WITH L.R. 7-2(b)(2)

I certify that this brief complies with the applicable word-count limitation under L.R. 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains 6,520 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of authorities, signature block, and any certificates of counsel.

DATED this 22nd day of June, 2021.

*s/ Harry B. Wilson*
Harry B. Wilson, OSB #077214
Attorney for Oregon Health Authority

**Page 19 - DEFENDANT OREGON HEALTH AUTHORITY'S REPLY IN SUPPORT OF MOTIONS TO DISMISS, FOR SUMMARY JUDGMENT, AND TO STRIKE**