IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

FAMILYCARE, INC., an Oregon )
non-profit corporation, )
 )
        Plaintiff, )    Case No. 6:18-cv-00296-MO
 )
    v. )
 )
OREGON HEALTH AUTHORITY, an )    July 6, 2021
agency of the State of Oregon, )
and LYNNE SAXTON, )
 )
        Defendants. )    Portland, Oregon
_____ )

**Oral Argument**

TRANSCRIPT OF PROCEEDINGS

BEFORE THE HONORABLE MICHAEL W. MOSMAN

UNITED STATES DISTRICT COURT JUDGE

APPEARANCES

FOR PLAINTIFF:                  Ms. Sasha A. Petrova
                                Perkins Coie, LLP
                                1120 N.W. Couch Street, 10th Floor
                                Portland, OR 97209


                                Mr. Matthew P. Gordon
                                Perkins Coie, LLP
                                1201 Third Avenue, Suite 4800
                                Seattle, WA 98101


FOR DEFENDANT OREGON
HEALTH AUTHORITY:               Mr. David B. Markowitz
                                Mr. Anit K. Jindal
                                Ms. Erin Dawson
                                Markowitz Herbold PC
                                1455 S.W. Broadway, Suite 1900
                                Portland, OR 97201



FOR DEFENDANT LYNNE
SAXTON:                         Mr. Edwin A. Harnden
                                Mr. Chris M. Morgan
                                Barran Liebman LLP
                                601 S.W. Second Avenue, Suite 2300
                                Portland, OR 97204



COURT REPORTER:                 Bonita J. Shumway, CSR, RMR, CRR
                                United States District Courthouse
                                1000 S.W. Third Ave., Room 301
                                Portland, OR  97204
                                (503) 326-8188

(P R O C E E D I N G S)

(July 6, 2021; 10:08 a.m.)

THE COURTROOM DEPUTY:  Your Honor, this is the time and place set for oral argument in Case No. 6:18-cv-296-MO, FamilyCare, Inc. versus Oregon Health Authority, et al.

Counsel, can you introduce yourself for the record.

MR. MARKOWITZ:  David Markowitz, special assistant attorney general, State of Oregon.

MR. JINDAL:  Anit Jindal, attorney at Markowitz Herbold, special assistant attorneys general, State of Oregon.

MS. DAWSON:  Erin Dawson, attorney at Markowitz Herbold, also for defendant.

MR. GORDON:  Matthew Gordon for FamilyCare.

THE COURT:  I don't believe your microphone is on, sir.

MR. GORDON:  Matthew Gordon for plaintiff FamilyCare.

MS. PETROVA:  Sasha Petrova for plaintiff FamilyCare.

MR. MORGAN:  Chris Morgan, Your Honor, for defendant Lynne Saxton.

MR. HARNDEN:  Ed Harnden for defendant Lynne Saxton.

THE COURT:  Thank you all for being here.  Let me give you my tentative thoughts and then I'll hear further argument.

What is sought is further discovery by way of either new discovery or supplemented responses regarding rate setting

in the 2019 and 2020 years.  It's important to me to be clear at the outset what theories are in play by this.  And there are sort of two advanced:  One is to simply reopen discovery so that the typical sort of ab initio discovery is started up again on these two new years; and the other is to rely on supplemented responses under Rule 26(e)(1)(A) and (B).  If (A) doesn't work, then get the Court to order it under (B).  And then the final doctrine in play comes from Rule 1 and other sources about proportionality.

So that proportionality analysis, in my view, has a baseline of what's already been done and what's already obligated to be done in the future without any further order of the Court.  So you're well aware of what's already been done, and we can talk in a moment about the ways in which Rule 26(e)(1)(A) already obligates supplemented responses without further order of the Court.  And that's sort of my baseline.  I don't need to order somebody to do what Rule 26(e)(1)(A) orders them to do already, for example.

The proportionality analysis also takes into account not just what's been done and what is already under some order to be done, but then there's this sort of scale of two things to look at:  One is the cost of what's further sought; and two is the importance, relevance, value of what's being sought.

I think I have some feel for -- some very rough feel for the cost of what's being sought.  The value in this case,

as in so many questions under -- more under FRE than FRCP, but I think applying to both here, is the incremental value; that is, the value on top of what's already known.

So here I need to take into account what might be expected to be learned from further discovery that would add to what plaintiff already knows about those two years in a way that advances any meaningful theory of recovery the plaintiff might have.

So my sort of rough understanding is that what plaintiff thinks it can get from further discovery from '19 and '20 is evidence that the explanations for rate setting in the current litigating years, that the explanations for rate setting in those years were -- are or were pretextual, something in those two new years, '19 and '20, that would either sort of congratulate everyone on a conspiracy well pulled off or otherwise describe earlier rate setting as, you know, pretextual.

So when I say "incremental," then what I'm taking into account is there is some degree already revealed by the pleadings on this matter, if nothing else, there's some degree to which plaintiff is currently in possession of some knowledge by which it could advance this theory to a jury, raising it as an inference that the subsequent behavior raises the inference of a culpable mens rea earlier.

I'm not saying here that I've made some kind of trial

ruling about the admissibility of all that. That's not today's question. But there's certainly known to plaintiff information about 2019 and 2020 rate settings that lends itself to an argument that earlier years' explanations for rate setting with regard to FamilyCare were pretextual.

So what we're talking about then is plaintiff would like, understandably, additional support for that theory from 2019 and '20, more information that makes a stronger inference. And that's the proportionality question: Is obtaining that additional information worth the cost?

Now, when I reference 26(e)(1)(A), that becomes important here because if you sort of just imagine standing at the gates of potential discovery from 2019 and '20, what one might get from those years. And it is important to me that defendants are already under a preexisting obligation baked into Rule 26 to produce the most relevant information that might support plaintiff's theories from those two years; that is, if plaintiff is, in the language of the rules -- learns that in some material respect its prior disclosures were incomplete or incorrect, then it in this case and every other case under the federal rules must supplement its answers.

So the real difference is if I require discovery, full discovery -- really additional new discovery from 2019 and '20 at some expense, what's the likelihood that that process will produce something that Rule 26(e)(1)(A) won't already

produce, because I'm not going to order that process if that likelihood is low.  And in my own tentative views -- merely tentative, I'll be interested to hear what you have to say here -- the likelihood seems low.  This does not seem to me to be a case where evidence supporting plaintiff's theory is going to be in the bottom of the ten thousandth box, unknown to everyone in the case.  In other words, I think it highly likely that what plaintiff most wants from '19 and '20 is the very sort of thing that if it exists is, in fact, already known -- not learned but already known to the parties, and if it exists, they're already under an obligation to supplement, or if not, that it's not the sort of thing that's going to be only learned by complete new discovery in '19 and '20.  It's highly likely to come into the case through the avenue of 26(e)(1)(A) rather than new discovery, by which I mean either just reopening discovery or ordering it by the Court under (e)(1)(B), which seem to me in this case to be functionally the same thing. Just the nature of what plaintiff would like to find in '19 and '20, it seems to me to be highly likely to be captured by the burdens imposed on the defense by 26(e)(1)(A), and therefore not something I need to order complete new discovery to locate.

If I'm right about that, then I'm disinclined to order it, and equally disinclined to reopen discovery, since a great deal or all of what plaintiffs could possibly want to advance the theory of liability they are seeking to support by

this motion is something they will already get without further expense of discovery ordered by the Court.

I guess it goes without saying -- so I'll say it anyway -- that if plaintiff's theory is that such information is out there and just hasn't been disclosed yet by initial disclosure or supplementation under 26(e)(1)(A) by, you know -- for, say, nefarious reasons, then ordering it to be done doesn't create any higher likelihood that it will be done than the preexisting burdens of 26(e)(1)(A), and does impose a chance that that's all incorrect significant additional expense.

So since my tentative thoughts run against plaintiff, I'll start with you for responding.

MS. PETROVA:  Thank you, Your Honor.

I'll start with just explaining the general basis for these motions.  FamilyCare has since the beginning of this case alleged that OHA and the directors at OHA have set our rates too low in order to drive us from the Medicaid business, and we constantly argued that these low rates resulted from policies and decisions that were disproportionally negative to FamilyCare and were adopted to specifically harm FamilyCare.

Now information has come to light that the reasons that we were given for those policies and practices before, they are no longer applicable, because after FamilyCare was driven from the market, OHA made significant changes to the

rate-setting process.  These were changes that we had requested for years, and OHA, like I said, have made various excuses for why they were not possible earlier.

OHA eliminated policies that depressed our rates, and then implemented other policies that would have given us additional funding to care for our members.

THE COURT:  Let me pause you there.  So I accept that that's the state of things for the purposes of this motion, and what you've gotten are explanations for those that you think are pretextual, right?  They say, we made these changes for the following reasons, but you think it's just hiding the fact that the actual rationale was to drive FamilyCare out of the market.  Right?

MS. PETROVA:  That's correct in part.  The other part of this is that this is a discovery request, and so FamilyCare seeks actual evidence to verify whether OHA directors' explanations for these policies in the past were pretextual and whether these changes were possible in the past.

THE COURT:  It's correct in part, in the sense that that's what you think happened, and the other part is you want evidence of it?

MS. PETROVA:  Correct, Your Honor.  At this point we just --

THE COURT:  My question is imagine such evidence, evidence -- or an email exchange in which someone says, we're

going to say this is the reason why we made these changes, but we all know the real reason is to drive FamilyCare out of the market. Way to go, we did it. Imagine such an email, your smoking gun, so to speak. Why wouldn't that be obligated to be produced under 26(e)(1)(A)?

MS. PETROVA: Well, Your Honor, this is not new discovery. Our position is that this is supplemental discovery and this is a position that the parties have agreed on. FamilyCare has not issued --

THE COURT: It's not new discovery, it's supplemental discovery. Why wouldn't the thing that you most want out of these two years' trove of documents be already, before I even took the bench today, already required to be produced under 26(e)(1)(A)?

MS. PETROVA: Your Honor, our position is that it is already required to be produced, but the reason we're here today is that during our conferrals, OHA has arbitrarily carved out the 2019 and 2020 rate-setting years entirely from supplemental discovery, and has refused to basically negotiate any search terms or custodians with respect to those rate-setting years on the basis that it is not relevant, inadmissible, and a number of other reasons.

THE COURT: I'll clarify that in a moment. Let's imagine for a second that that's not actually what your opponent has done. Imagine that what your opponent has done is

said, we won't go engage in a brand-new search using search terms for this sort of stuff because that's not what supplemental discovery requires.  Supplemental discovery does not require reengaging in searching, and the rule text makes that pretty clear, and the advisory notes make it crystal clear.  It only requires it if you actually learn something that makes a former answer materially incorrect or misleading in some way that you have to produce it.

So if what they're saying -- imagine for a moment what your opponents are saying is, we will engage in a supplemental discovery, Rule 26(e)(1)(A).  We'll do it.  If we learn something that makes a former answer wrong, we will give it to you, and we acknowledge our obligation for '19 and for '20, not just for the prior years.  We just don't think we're under an obligation to research, to redo discovery, to learn something we don't currently know by way of discovery.

What's wrong with that answer?

MS. PETROVA:  Your Honor, what's wrong with that answer is that we do know that there have been changes.  There are changes that are gleaned from the publicly available materials at OHA's website.

THE COURT:  There's been changes for which there's either an innocent or a nefarious rationale.  So you want them to go look for possible nefarious rationale supported by the evidence, and they say, well, we'll tell you if we learn it,

but we're not going to engage in new discovery.

So what's wrong with that position?

MS. PETROVA:  Essentially that position --

THE COURT:  What I'm asking is why isn't that the correct reading of 26(e)(1)(A)'s obligation?

MS. PETROVA:  Well, Your Honor, again, the parties in this case have not raised that -- OHA has not taken that position in this briefing.  OHA has agreed to supplement, and has decided that certain aspects, the ones that we are most interested --

THE COURT:  I'll let you finish your answer, trust me.  We have plenty of time.  But what I'm asking for is your answer to my textual question.

What's wrong with that position as a reading of your opponent's obligations to you under 26(e)(1)(A)?  In other words, do you agree that 26(e)(1)(A) does not require people to search through 2019 and '20 with new search terms on the possibility that there might be something out there but rather only requires them to tell you something they learned without engaging in new discovery, that there's that distinction in 26(e)(1)(A)?

MS. PETROVA:  No, Your Honor.  Our position is that the obligations to supplement discovery do require rewriting search terms.  In fact, that's exactly what's happening now between the parties.

As to the general --

THE COURT:  I don't care what's happening between the parties.  I care what the rule says.  I shouldn't say I don't care.  I do want to hear that, but I want to get the rule right.  You're contending that the rule in an extended case says that as litigation goes on, once you've given discovery, you can't just sit back and produce what you learned that is contrary to what you've earlier said, you have to constantly engage in researching documents?

MS. PETROVA:  Our position is that as the parties both have an obligation to supplement, to bring the discovery current to today, and essentially this case has been stayed based on appeals and the pandemic, and there have been material developments in the rate setting and the facts.

THE COURT:  I'll come back to you on what the parties have agreed.  I just want to make sure I understand where the parties are on reading the obligation of 26(e)(1)(A).  I now understand your position.

I'd like to turn to defendants first to see if what I have suggested is the reading of 26(e)(1)(A) is not, in fact, how you read it or is.

MR. JINDAL:  No, we read it as Your Honor does.

THE COURT:  What's your obligation in terms of, say, reapplying search terms to troves of documents after you've engaged in -- after the deadline for discovery has been

complete?

MR. JINDAL:  Our understanding is consistent with Your Honor's description of it, that if we learn of information that makes a prior disclosure inaccurate or incomplete, we must disclose that information.

THE COURT:  Learn it how?

MR. JINDAL:  I'm sorry?

THE COURT:  Learn it how?

MR. JINDAL:  Well, what we've offered to FamilyCare is that we will search for the word "FamilyCare" or similar, "Family space Care," "FCI."

THE COURT:  Have you offered that because you think you're obligated under the rule or because you're being nice?

MR. JINDAL:  I think probably the latter, but I don't know that I would --

THE COURT:  What's important to me first is just to get the rule right.  So is it your position you have to do that under the rule or not?

MR. JINDAL:  No.  Our position is that we are --

THE COURT:  I'll give you two choices.  You can't just say "no."

MR. JINDAL:  Oh, sorry.  That we're not obligated to do it under the rule.  We think that as Your Honor has said it, that the rule doesn't require us to apply new search terms to old custodians.

THE COURT:  Once discovery is complete, you view your obligation to supplement as learning it, let's just say, sort of in the ordinary course of business.  You've learned your client -- or you, mostly your client, learns that a former answer is incorrect.  You have to supplement?

MR. JINDAL:  Right.  And that's why we're searching for "FamilyCare."  I think that the way Your Honor described it was accurate, that it doesn't -- the rule doesn't per se require us to run new search terms on the old custodians or even the old search terms on the old custodians, but if we learn that there is a smoking gun document out there, as Your Honor described it, that says, "Great job, conspiracy worked, we got them out of here," I assure you that -- I don't think there is such a document, but if that exists, we would want --

THE COURT:  You moved from "I assure you" to "I don't think."

MR. JINDAL:  Well, I haven't done any of the searches.  Well, we haven't run the searches yet, but I'm confident it won't be there.

THE COURT:  In a case like this, it's one thing to have like a roomful of documents and you search them and you're done, and then you're under an obligation should you learn of a contrary factor, something that makes a former answer incorrect, then you have to disclose it.  What about a case like this, which goes on long enough thanks to various things,

a pandemic and appeals, et cetera, that you now have another new room of new documents that might be relevant to the case? Why not new discovery and new search terms for that, as opposed to just 26(e)(1)(A)?

MR. JINDAL:  For many reasons, Your Honor.  One, I think at this late stage that might have been something that they could have -- they should have foreseen that the 2019 rate setting was going to happen, and they never once indicated to us during the normal course of discovery that they needed any of this evidence to prove their case.

And another reason is the proportionality here.  This is going to be an immense burden, essentially doubling the discovery burden at the very tail end of the case.

And the third is relevance.  We just don't -- we think --

THE COURT:  I'll come back to you on proportionality. I was really just getting at text first.

Your answer to my textual question is you do not believe that 26(e)(1)(A) imposes on you a burden to do something like reengage in what I'll call new discovery against the two new years?

MR. JINDAL:  Correct.

THE COURT:  And to the degree you've done so, agreed to run "FamilyCare" as a new search term against 2019 and 2020, that's just what people do in litigation to sort of avoid

headaches when they can, and that's something you've agreed to do?

MR. JINDAL:  Correct.

THE COURT:  And to the degree it's been described that your position is that you will not engage in supplemental discovery as to 2019 and 2020, do you acknowledge that you have an obligation under 26(e)(1)(A) that runs to any document in 2019 and 2020, to the degree that you learn it per the terms of the statute?

MR. JINDAL:  No, Your Honor.  This case is about 2017 and 2018 rates.

THE COURT:  That was a badly phrased question, I'm sorry.  Let me try again.

Your position has been that you've sort of told your opponents to pound sand, that you're not going to engage in supplemental discovery in '19 and '20, and I'm asking whether you in fact will just under the terms of the rule and not under something more than that?

MR. JINDAL:  Yes, Your Honor.  We will engage in supplemental discovery to the extent anything that happened in 2019 or 2020, you have a rule that renders any prior disclosure incomplete or inaccurate.

THE COURT:  To the degree you learn it through the normal course or even through your what I'll call voluntary agreement to supplement with new search terms?

MR. JINDAL:  Right, Your Honor.  And I think -- what we think is that -- one of the reasons we're searching for "FamilyCare" is because if there's that smoking gun document out there, we want to find it and disclose it.

THE COURT:  I'll come back to you.  Thank you.

MS. PETROVA:  One point we want to make is the parties have not agreed -- the OHA has not agreed to do any type of searches for 2019 and 2020 supplemental discovery.  And I think that much is clear.

THE COURT:  It's not clear at all.  I thought I just heard they agreed to run "FamilyCare" as a new search term.

MS. PETROVA:  That was not a position that we understand OHA has taken in our conferrals.

THE COURT:  You just now heard this in court today.

MS. PETROVA:  That's correct, Your Honor.  We did not understand that OHA would be willing to supplement anything with respect to the 2019 and 2020 rate-setting years.

THE COURT:  Thank you.

I'm going to take a five-minute break.  I'd like the parties to understand each other's positions better before I come back.

THE COURTROOM DEPUTY:  This court is in recess.

(A recess is then taken.)

THE COURT:  I'd like to pick up where I left off.  Is it your position that your opponent agreed just in court today

for the first time to run the search term "FamilyCare" against relevant documents for '19 and '20?

MS. PETROVA:  Your Honor, our understanding after conferring is that OHA will agree to look for the term "FamilyCare" in 2019 and 2020 years, but that it is not willing to produce every document that hits on the term "FamilyCare" for 2020 and 2019, just the sort of smoking gun evidence that this Court earlier referred to, but --

THE COURT:  I appreciate that answer, but my question was is it your position that you only just for the first time heard that in court today, or maybe just for the first time understood it, I guess?

MS. PETROVA:  I think that is the -- the latter is correct, for the first time understood their position to be that.

THE COURT:  All right.  Thank you.

I deny the motion on what I hope is the rather obvious understanding of the preexisting obligations created by Rule 26(e)(1)(A), so I won't use the term "smoking gun" as a shorthand.  OHA has agreed, in my view, in excess of what Rule 26(e)(1)(A) requires, but perfectly understandably in the context of a big litigation like this, to run the search term "FamilyCare" against the cache of 2019 and 2020 documents, and then to disclose any information learned in whatever manner through that search or in any other way that is required to be

disclosed by the terms of 26(e)(1)(A).

So you have both the preexisting obligation imposed by the rule, and the obligation imposed by your agreement to run the "FamilyCare" search term, and then make a decision about whether that fits your preexisting obligations under Rule 26(e)(1)(A).

One way to think about it is through running this search term, you are creating the opportunity that you may learn, as the rule says, learn information otherwise required to be disclosed under the rule.  Understood?

MR. JINDAL:  Yes, Your Honor.

THE COURT:  Thank you very much.

And because of that, and because of the significant expense, in no way relying on Rule 407, I'm denying the motion.

Thank you all.  We'll be in recess.

THE COURTROOM DEPUTY:  This court is in recess.

(Proceedings concluded at 10:44 a.m.)

--o0o--

I certify, by signing below, that the foregoing is a correct transcript of the record of proceedings in the above-entitled cause.  A transcript without an original signature or conformed signature is not certified.


*/s/Bonita J. Shumway*                    *July 7, 2021*
_____          _____
BONITA J. SHUMWAY, CSR, RMR, CRR      DATE
Official Court Reporter

**MR. GORDON: [2]**  3/12 3/15
**MR. HARNDEN: [1]**  3/19
**MR. JINDAL: [17]**  3/8 13/21 14/1 14/6 14/8 14/13 14/18 14/21 15/5 15/16 16/4 16/21 17/2 17/9 17/18 17/25 20/10
**MR. MARKOWITZ: [1]**  3/6
**MR. MORGAN: [1]**  3/17
**MS. DAWSON: [1]**  3/10
**MS. PETROVA: [16]**  3/16 8/13 9/13 9/21 10/5 10/14 11/17 12/2 12/5 12/21 13/9 18/5 18/11 18/14 19/2 19/12
**THE COURT: [34]**
**THE COURTROOM DEPUTY: [3]**  3/2 18/21 20/15

**'**

**'19 [8]**  5/10 5/14 7/8 7/13 7/18 11/13 17/16 19/2
**'20 [12]**  5/11 5/14 6/8 6/13 6/24 7/8 7/13 7/19 11/14 12/17 17/16 19/2
**'s [1]**  12/5

**-**

**--o0o [1]**  21/2

**/**

**/s/Bonita [1]**  21/9

**1**

**1000 [1]**  2/20
**10:08 [1]**  3/2
**10:44 [1]**  20/17
**10th [1]**  2/4
**1120 [1]**  2/4
**1201 [1]**  2/7
**1455 [1]**  2/11
**1900 [1]**  2/11

**2**

**2017 [1]**  17/10
**2018 [1]**  17/11
**2019 [17]**  4/1 6/3 6/8 6/13 6/23 10/18 12/17 16/7 16/24 17/6 17/8 17/21 18/8 18/17 19/5 19/7 19/23
**2020 [12]**  4/1 6/3 10/18 16/24 17/6 17/8 17/21 18/8 18/17 19/5 19/7 19/23
**2021 [3]**  1/6 3/2 21/9
**2300 [1]**  2/16
**26 [26]**

**3**

**301 [1]**  2/20
**326-8188 [1]**  2/21

**4**

**407 [1]**  20/14
**4800 [1]**  2/7

**5**

**503 [1]**  2/21

**6**

**601 [1]**  2/16
**6:18-cv-00296-MO [1]**  1/4
**6:18-cv-296-MO [1]**  3/4

**8**

**8188 [1]**  2/21

**9**

**97201 [1]**  2/12
**97204 [2]**  2/16 2/20
**97209 [1]**  2/4
**98101 [1]**  2/7

**A**

**a.m [2]**  3/2 20/17
**ab [1]**  4/4
**about [11]**  4/9 4/14 5/6 6/1 6/3 6/6 7/22 15/24 17/10 20/5 20/7
**above [1]**  21/6
**above-entitled [1]**  21/6
**accept [1]**  9/7
**account [3]**  4/19 5/4 5/19
**accurate [1]**  15/8
**acknowledge [2]**  11/13 17/6
**actual [2]**  9/12 9/16
**actually [2]**  10/24 11/6
**add [1]**  5/5
**additional [5]**  6/7 6/10 6/23 8/10 9/6
**admissibility [1]**  6/1
**adopted [1]**  8/21
**advance [2]**  5/22 7/25
**advanced [1]**  4/3
**advances [1]**  5/7
**advisory [1]**  11/5
**after [4]**  8/24 13/24 13/25 19/3
**again [3]**  4/5 12/6 17/13
**against [5]**  8/12 16/20 16/24 19/1 19/23
**agency [1]**  1/7
**agree [2]**  12/16 19/4
**agreed [10]**  10/8 12/8 13/16 16/23 17/1 18/7 18/7 18/11

**agreement [2]**  17/25 20/3
**al [1]**  3/5
**all [8]**  3/21 6/1 7/24 8/10 10/2 18/10 19/16 20/15
**alleged [1]**  8/17
**already [18]**  4/11 4/11 4/13 4/15 4/18 4/20 5/3 5/6 5/19 6/15 6/25 7/9 7/10 7/11 8/1 10/12 10/13 10/16
**also [2]**  3/12 4/19
**analysis [2]**  4/10 4/19
**Anit [2]**  2/10 3/9
**another [2]**  16/1 16/11
**answer [10]**  11/7 11/12 11/17 11/19 12/11 12/13 15/5 15/23 16/18 19/9
**answers [1]**  6/21
**any [11]**  4/12 5/7 8/8 10/20 15/17 16/9 17/7 17/21 18/7 19/24 19/25
**anything [2]**  17/20 18/16
**anyway [1]**  8/4
**appeals [2]**  13/13 16/1
**APPEARANCES [1]**  2/2
**applicable [1]**  8/24
**apply [1]**  14/24
**applying [1]**  5/2
**appreciate [1]**  19/9
**arbitrarily [1]**  10/17
**are [15]**  4/2 4/2 5/13 6/15 7/25 8/24 9/9 9/10 11/10 11/20 11/20 12/9 13/17 14/19 20/8
**argued [1]**  8/19
**argument [4]**  1/14 3/4 3/23 6/4
**as [17]**  5/1 5/16 5/22 12/14 13/1 13/6 13/10 13/22 14/23 15/2 15/11 16/3 16/24 17/6 18/11 19/19 20/9
**asking [3]**  12/4 12/12 17/16
**aspects [1]**  12/9
**assistant [2]**  3/7 3/10
**assure [2]**  15/13 15/15
**attorney [3]**  3/8 3/9 3/11
**attorneys [1]**  3/10
**AUTHORITY [3]**  1/6 2/9 3/5
**available [1]**  11/20
**Ave [1]**  2/20
**avenue [3]**  2/7 2/16 7/14
**avoid [1]**  16/25
**aware [1]**  4/13

**B**

**back [5]**  13/7 13/15 16/16 18/5 18/21

**B**

**badly [1]** 17/12
**baked [1]** 6/15
**Barran [1]** 2/15
**based [1]** 13/13
**baseline [2]** 4/11 4/16
**basically [1]** 10/19
**basis [2]** 8/15 10/21
**be [28]**
**because [9]** 6/12 7/1 8/24 11/2
 14/12 14/13 18/3 20/13 20/13
**becomes [1]** 6/11
**been [12]** 4/11 4/13 4/20 8/5
 11/19 11/22 13/12 13/13 13/25
 16/6 17/4 17/14
**before [4]** 1/16 8/23 10/12
 18/20
**beginning [1]** 8/16
**behavior [1]** 5/23
**being [4]** 3/21 4/23 4/25 14/13
**believe [2]** 3/14 16/19
**below [1]** 21/4
**bench [1]** 10/13
**better [1]** 18/20
**between [2]** 12/25 13/2
**big [1]** 19/22
**Bonita [3]** 2/19 21/9 21/10
**both [3]** 5/2 13/11 20/2
**bottom [1]** 7/6
**box [1]** 7/6
**brand [1]** 11/1
**brand-new [1]** 11/1
**break [1]** 18/19
**briefing [1]** 12/8
**bring [1]** 13/11
**Broadway [1]** 2/11
**burden [3]** 16/12 16/13 16/19
**burdens [2]** 7/20 8/9
**business [2]** 8/18 15/3

**C**

**cache [1]** 19/23
**call [2]** 16/20 17/24
**can [4]** 3/6 4/14 5/10 17/1
**can't [2]** 13/7 14/20
**captured [1]** 7/19
**care [5]** 9/6 13/2 13/3 13/4
 14/11
**carved [1]** 10/17
**case [19]** 1/4 3/4 4/25 6/20
 6/21 7/5 7/7 7/14 7/17 8/16
 12/7 13/5 13/12 15/20 15/24
 16/2 16/10 16/13 17/10
**cause [1]** 21/6

**certain [1]** 12/9
**certainly [1]** 6/2
**certified [1]** 21/7
**certify [1]** 21/4
**cetera [1]** 16/1
**chance [1]** 8/10
**changes [8]** 8/25 9/1 9/10 9/18
 10/1 11/19 11/20 11/22
**choices [1]** 14/20
**Chris [2]** 2/15 3/18
**clarify [1]** 10/23
**clear [5]** 4/1 11/5 11/6 18/9
 18/10
**client [2]** 15/4 15/4
**Coie [2]** 2/3 2/6
**come [6]** 7/14 8/22 13/15 16/16
 18/5 18/21
**comes [1]** 4/8
**complete [4]** 7/13 7/21 14/1
 15/1
**concluded [1]** 20/17
**conferrals [2]** 10/17 18/13
**conferring [1]** 19/4
**confident [1]** 15/19
**conformed [1]** 21/7
**congratulate [1]** 5/15
**consistent [1]** 14/2
**conspiracy [2]** 5/15 15/12
**constantly [2]** 8/19 13/8
**contending [1]** 13/5
**context [1]** 19/22
**contrary [2]** 13/8 15/23
**corporation [1]** 1/3
**correct [9]** 9/14 9/19 9/22 12/5
 16/22 17/3 18/15 19/14 21/5
**cost [3]** 4/22 4/25 6/10
**Couch [1]** 2/4
**could [3]** 5/22 7/24 16/7
**Counsel [1]** 3/6
**course [3]** 15/3 16/9 17/24
**court [15]** 1/1 1/17 2/19 4/7
 4/13 4/16 7/16 8/2 18/14 18/22
 18/25 19/8 19/11 20/16 21/11
**Courthouse [1]** 2/19
**create [1]** 8/8
**created [1]** 19/18
**creating [1]** 20/8
**CRR [2]** 2/19 21/10
**crystal [1]** 11/5
**CSR [2]** 2/19 21/10
**culpable [1]** 5/24
**current [2]** 5/12 13/12
**currently [2]** 5/21 11/16
**custodians [4]** 10/20 14/25
 15/9 15/10

**cv [2]** 1/4 3/4

**D**

**DATE [1]** 21/10
**David [2]** 2/9 3/7
**Dawson [2]** 2/10 3/11
**deadline [1]** 13/25
**deal [1]** 7/24
**decided [1]** 12/9
**decision [1]** 20/4
**decisions [1]** 8/20
**defendant [5]** 2/9 2/14 3/12
 3/18 3/20
**defendants [3]** 1/8 6/15 13/19
**defense [1]** 7/20
**degree [6]** 5/19 5/20 16/23
 17/4 17/8 17/23
**deny [1]** 19/17
**denying [1]** 20/14
**depressed [1]** 9/4
**describe [1]** 5/16
**described [3]** 15/7 15/12 17/4
**description [1]** 14/3
**developments [1]** 13/14
**did [2]** 10/3 18/15
**difference [1]** 6/22
**directors [1]** 8/17
**directors' [1]** 9/16
**disclose [4]** 14/5 15/24 18/4
 19/24
**disclosed [3]** 8/5 20/1 20/10
**disclosure [3]** 8/6 14/4 17/21
**disclosures [1]** 6/19
**discovery [42]**
**disinclined [2]** 7/22 7/23
**disproportionally [1]** 8/20
**distinction [1]** 12/20
**DISTRICT [4]** 1/1 1/2 1/17 2/19
**do [15]** 4/17 4/18 11/11 11/19
 12/16 12/23 13/4 14/17 14/23
 16/18 16/19 16/25 17/2 17/6
 18/7
**doctrine [1]** 4/8
**document [5]** 15/11 15/14 17/7
 18/3 19/6
**documents [7]** 10/12 13/9
 13/24 15/21 16/2 19/2 19/23
**does [5]** 7/4 8/9 11/3 12/16
 13/22
**doesn't [5]** 4/7 8/8 14/24 15/8
 15/8
**don't [10]** 3/14 4/17 11/14
 11/16 13/2 13/3 14/15 15/13
 15/15 16/14
**don't know [1]** 14/15

**done [12]** 4/11 4/12 4/13 4/20 4/21 8/7 8/8 10/25 10/25 15/17 15/22 16/23
**doubling [1]** 16/12
**drive [3]** 8/18 9/12 10/2
**driven [1]** 8/25
**during [2]** 10/17 16/9

**E**

**each [1]** 18/20
**earlier [6]** 5/16 5/24 6/4 9/3 13/8 19/8
**Ed [1]** 3/20
**Edwin [1]** 2/14
**either [4]** 3/24 5/15 7/15 11/23
**eliminated [1]** 9/4
**else [1]** 5/20
**email [2]** 9/25 10/3
**end [1]** 16/13
**engage [7]** 11/1 11/10 12/1 13/9 17/5 17/15 17/19
**engaged [1]** 13/25
**engaging [1]** 12/20
**enough [1]** 15/25
**entirely [1]** 10/18
**entitled [1]** 21/6
**equally [1]** 7/23
**Erin [2]** 2/10 3/11
**essentially [3]** 12/3 13/12 16/12
**et [2]** 3/5 16/1
**et cetera [1]** 16/1
**even [3]** 10/12 15/10 17/24
**every [2]** 6/20 19/6
**everyone [2]** 5/15 7/7
**evidence [9]** 5/11 7/5 9/16 9/21 9/24 9/25 11/25 16/10 19/7
**exactly [1]** 12/24
**example [1]** 4/18
**excess [1]** 19/20
**exchange [1]** 9/25
**excuses [1]** 9/2
**exists [3]** 7/9 7/10 15/14
**expected [1]** 5/5
**expense [4]** 6/24 8/2 8/11 20/14
**explaining [1]** 8/15
**explanations [5]** 5/11 5/12 6/4 9/9 9/17
**extended [1]** 13/5
**extent [1]** 17/20

**F**

**fact [5]** 7/9 9/11 12/24 13/20 17/17
**factor [1]** 15/23
**facts [1]** 13/14
**Family [1]** 14/11
**FAMILYCARE [25]**
**FCI [1]** 14/11
**federal [1]** 6/21
**feel [2]** 4/24 4/24
**final [1]** 4/8
**find [2]** 7/18 18/4
**finish [1]** 12/11
**first [7]** 13/19 14/16 16/17 19/1 19/10 19/11 19/14
**fits [1]** 20/5
**five [1]** 18/19
**five-minute [1]** 18/19
**Floor [1]** 2/4
**following [1]** 9/11
**foregoing [1]** 21/4
**foreseen [1]** 16/7
**former [4]** 11/7 11/12 15/4 15/23
**FRCP [1]** 5/1
**FRE [1]** 5/1
**full [1]** 6/23
**functionally [1]** 7/17
**funding [1]** 9/6
**further [8]** 3/22 3/24 4/12 4/16 4/22 5/5 5/10 8/1
**future [1]** 4/12

**G**

**gates [1]** 6/13
**general [4]** 3/8 3/10 8/15 13/1
**get [6]** 4/7 5/10 6/14 8/1 13/4 14/17
**getting [1]** 16/17
**give [3]** 3/22 11/12 14/20
**given [3]** 8/23 9/5 13/6
**gleaned [1]** 11/20
**go [3]** 10/3 11/1 11/24
**goes [3]** 8/3 13/6 15/25
**going [9]** 7/1 7/5 7/12 10/1 12/1 16/8 16/12 17/15 18/19
**Gordon [3]** 2/6 3/13 3/16
**got [1]** 15/13
**gotten [1]** 9/9
**great [2]** 7/24 15/12
**guess [2]** 8/3 19/12
**gun [5]** 10/4 15/11 18/3 19/7 19/19

**H**

**had [1]** 9/1
**happen [1]** 16/8
**happened [2]** 9/20 17/20
**happening [2]** 12/24 13/2
**harm [1]** 8/21
**Harnden [2]** 2/14 3/20
**has [18]** 4/10 8/16 8/22 10/9 10/17 10/19 10/25 10/25 12/7 12/8 12/9 13/12 13/25 14/23 17/14 18/7 18/13 19/20
**hasn't [1]** 8/5
**have [29]**
**haven't [2]** 15/17 15/18
**headaches [1]** 17/1
**HEALTH [3]** 1/6 2/9 3/5
**hear [3]** 3/22 7/3 13/4
**heard [3]** 18/11 18/14 19/11
**Herbold [3]** 2/11 3/10 3/12
**here [9]** 3/21 5/2 5/4 5/25 6/12 7/4 10/16 15/13 16/11
**hiding [1]** 9/11
**higher [1]** 8/8
**highly [3]** 7/7 7/13 7/19
**hits [1]** 19/6
**Honor [20]** 3/3 3/18 8/14 9/22 10/6 10/15 11/18 12/6 12/22 13/22 14/23 15/7 15/12 16/5 17/10 17/19 18/1 18/15 19/3 20/11
**Honor's [1]** 14/3
**HONORABLE [1]** 1/16
**hope [1]** 19/17
**how [3]** 13/21 14/6 14/8

**I**

**I'd [3]** 13/19 18/19 18/24
**I'll [13]** 3/22 7/3 8/3 8/13 8/15 10/23 12/11 13/15 14/20 16/16 16/20 17/24 18/5
**I'm [13]** 5/18 5/25 7/1 7/22 7/22 12/4 12/12 14/7 15/18 17/12 17/16 18/19 20/14
**I've [1]** 5/25
**imagine [6]** 6/12 9/24 10/3 10/24 10/25 11/9
**immense [1]** 16/12
**implemented [1]** 9/5
**importance [1]** 4/23
**important [4]** 4/1 6/12 6/14 14/16
**impose [1]** 8/9
**imposed [3]** 7/20 20/2 20/3
**imposes [1]** 16/19
**inaccurate [2]** 14/4 17/22
**inadmissible [1]** 10/22
**INC [2]** 1/3 3/5
**incomplete [3]** 6/20 14/4 17/22

## I

**incorrect [5]** 6/20 8/10 11/7 15/5 15/24
**incremental [2]** 5/2 5/18
**indicated [1]** 16/8
**inference [3]** 5/23 5/23 6/8
**information [10]** 6/2 6/8 6/10 6/16 8/4 8/22 14/3 14/5 19/24 20/9
**initial [1]** 8/5
**initio [1]** 4/4
**innocent [1]** 11/23
**interested [2]** 7/3 12/10
**introduce [1]** 3/6
**is [88]**
**isn't [1]** 12/4
**issued [1]** 10/9
**it [50]**
**it's [10]** 4/1 7/12 7/13 9/11 9/19 10/10 10/10 15/20 17/4 18/10
**its [2]** 6/19 6/21
**itself [1]** 6/3

## J

**Jindal [2]** 2/10 3/9
**job [1]** 15/12
**JUDGE [1]** 1/17
**July [3]** 1/6 3/2 21/9
**jury [1]** 5/22
**just [26]**

## K

**kind [1]** 5/25
**know [6]** 5/17 8/6 10/2 11/16 11/19 14/15
**knowledge [1]** 5/21
**known [4]** 5/3 6/2 7/9 7/10
**knows [1]** 5/6

## L

**language [1]** 6/18
**late [1]** 16/6
**latter [2]** 14/14 19/13
**learn [13]** 11/6 11/12 11/15 11/25 14/3 14/6 14/8 15/11 15/22 17/8 17/23 20/9 20/9
**learned [7]** 5/5 7/10 7/12 12/19 13/7 15/3 19/24
**learning [1]** 15/2
**learns [2]** 6/18 15/4
**left [1]** 18/24
**lends [1]** 6/3
**let [4]** 3/21 9/7 12/11 17/13
**let's [2]** 10/23 15/2
**liability [1]** 7/25

Liebman [1] 2/15
**light [1]** 8/22
**like [11]** 6/7 7/18 9/2 13/19 15/20 15/21 15/25 16/20 18/19 18/24 19/22
**likelihood [4]** 6/24 7/2 7/4 8/8
**likely [3]** 7/7 7/13 7/19
**litigating [1]** 5/12
**litigation [3]** 13/6 16/25 19/22
**LLP [3]** 2/3 2/6 2/15
**locate [1]** 7/21
**long [1]** 15/25
**longer [1]** 8/24
**look [3]** 4/22 11/24 19/4
**low [4]** 7/2 7/4 8/18 8/19
**LYNNE [4]** 1/7 2/14 3/19 3/20

## M

**made [5]** 5/25 8/25 9/2 9/10 10/1
**make [4]** 11/5 13/16 18/6 20/4
**makes [6]** 6/8 11/4 11/7 11/12 14/4 15/23
**manner [1]** 19/24
**many [2]** 5/1 16/5
**market [3]** 8/25 9/12 10/3
**Markowitz [5]** 2/9 2/11 3/7 3/9 3/11
**material [2]** 6/19 13/13
**materially [1]** 11/7
**materials [1]** 11/21
**matter [1]** 5/20
**Matthew [3]** 2/6 3/13 3/16
**may [1]** 20/8
**maybe [1]** 19/11
**me [10]** 3/21 4/1 6/14 7/4 7/17 7/19 9/7 12/12 14/16 17/13
**mean [1]** 7/15
**meaningful [1]** 5/7
**Medicaid [1]** 8/18
**members [1]** 9/6
**mens [1]** 5/24
**merely [1]** 7/2
**MICHAEL [1]** 1/16
**microphone [1]** 3/14
**might [7]** 5/4 5/8 6/14 6/17 12/18 16/2 16/6
**minute [1]** 18/19
**misleading [1]** 11/7
**MO [2]** 1/4 3/4
**moment [3]** 4/14 10/23 11/9
**more [3]** 5/1 6/8 17/18
**Morgan [2]** 2/15 3/18
**MOSMAN [1]** 1/16
**most [4]** 6/16 7/8 10/11 12/9

mostly [1] 15/4
**motion [4]** 8/1 9/8 19/17 20/14
**motions [1]** 8/16
**moved [1]** 15/15
**Mr [5]** 2/6 2/9 2/10 2/14 2/15
**Ms [2]** 2/3 2/10
**much [2]** 18/9 20/12
**must [2]** 6/21 14/4
**my [11]** 3/22 4/10 4/16 5/9 7/2 8/12 9/24 12/13 16/18 19/9 19/20

## N

**N.W [1]** 2/4
**nature [1]** 7/18
**need [3]** 4/17 5/4 7/21
**needed [1]** 16/9
**nefarious [3]** 8/7 11/23 11/24
**negative [1]** 8/20
**negotiate [1]** 10/19
**never [1]** 16/8
**new [24]**
**nice [1]** 14/13
**no [9]** 1/4 3/4 8/24 12/22 13/22 14/19 14/21 17/10 20/14
**non [1]** 1/3
**non-profit [1]** 1/3
**normal [2]** 16/9 17/24
**not [37]**
**notes [1]** 11/5
**nothing [1]** 5/20
**now [6]** 6/11 8/22 12/24 13/17 16/1 18/14
**number [1]** 10/22

## O

**o0o [1]** 21/2
**obligated [4]** 4/12 10/4 14/13 14/22
**obligates [1]** 4/15
**obligation [13]** 6/15 7/11 11/13 11/15 12/5 13/11 13/17 13/23 15/2 15/22 17/7 20/2 20/3
**obligations [4]** 12/15 12/23 19/18 20/5
**obtaining [1]** 6/9
**obvious [1]** 19/18
**off [2]** 5/16 18/24
**offered [2]** 14/9 14/12
**Official [1]** 21/11
**Oh [1]** 14/22
**OHA [14]** 8/17 8/17 8/25 9/2 9/4 9/16 10/17 12/7 12/8 18/7 18/13 18/16 19/4 19/20
**OHA's [1]** 11/21

**O**

old [4] 14/25 15/9 15/10 15/10
once [3] 13/6 15/1 16/8
one [8] 4/3 4/22 6/13 15/20 16/5 18/2 18/6 20/7
ones [1] 12/9
only [4] 7/12 11/6 12/19 19/10
opponent [3] 10/25 10/25 18/25
opponent's [1] 12/15
opponents [2] 11/10 17/15
opportunity [1] 20/8
opposed [1] 16/3
oral [2] 1/14 3/4
order [9] 4/7 4/12 4/16 4/17 4/20 7/1 7/21 7/23 8/18
ordered [1] 8/2
ordering [2] 7/16 8/7
orders [1] 4/17
ordinary [1] 15/3
OREGON [9] 1/2 1/3 1/6 1/7 1/8 2/9 3/5 3/8 3/10
original [1] 21/6
other [10] 4/5 4/8 6/20 7/7 9/5 9/14 9/20 10/22 12/15 19/25
other's [1] 18/20
otherwise [2] 5/16 20/9
our [13] 8/17 9/4 9/6 10/7 10/15 10/17 11/13 12/22 13/10 14/2 14/19 18/13 19/3
out [9] 8/5 9/12 10/2 10/11 10/18 12/18 15/11 15/13 18/4
outset [1] 4/2
own [1] 7/2

**P**

pandemic [2] 13/13 16/1
part [4] 9/14 9/14 9/19 9/20
parties [10] 7/10 10/8 12/6 12/25 13/3 13/10 13/15 13/17 18/7 18/20
past [2] 9/17 9/18
pause [1] 9/7
PC [1] 2/11
people [2] 12/16 16/25
per [2] 15/8 17/8
perfectly [1] 19/21
Perkins [2] 2/3 2/6
Petrova [2] 2/3 3/17
phrased [1] 17/12
pick [1] 18/24
place [1] 3/4
plaintiff [14] 1/4 2/3 3/16 3/17 5/6 5/7 5/10 5/21 6/2 6/6 6/18

plaintiff's [3] 6/17 7/5 8/4
plaintiffs [1] 7/24
play [2] 4/2 4/8
pleadings [1] 5/20
plenty [1] 12/12
point [2] 9/22 18/6
policies [5] 8/19 8/23 9/4 9/5 9/17
Portland [5] 1/8 2/4 2/12 2/16 2/20
position [18] 10/7 10/8 10/15 12/2 12/3 12/8 12/14 12/22 13/10 13/18 14/17 14/19 17/5 17/14 18/12 18/25 19/10 19/14
positions [1] 18/20
possession [1] 5/21
possibility [1] 12/18
possible [3] 9/3 9/18 11/24
possibly [1] 7/24
potential [1] 6/13
pound [1] 17/15
practices [1] 8/23
preexisting [5] 6/15 8/9 19/18 20/2 20/5
pretextual [5] 5/13 5/17 6/5 9/10 9/17
pretty [1] 11/5
prior [4] 6/19 11/14 14/4 17/21
probably [1] 14/14
proceedings [3] 1/15 20/17 21/5
process [3] 6/24 7/1 9/1
produce [6] 6/16 6/25 7/1 11/8 13/7 19/6
produced [3] 10/5 10/13 10/16
profit [1] 1/3
proportionality [6] 4/9 4/10 4/19 6/9 16/11 16/16
prove [1] 16/10
publicly [1] 11/20
pulled [1] 5/16
purposes [1] 9/8

**Q**

question [7] 6/2 6/9 9/24 12/13 16/18 17/12 19/9
questions [1] 5/1

**R**

raised [1] 12/7
raises [1] 5/23
raising [1] 5/22
rate [12] 3/25 5/11 5/12 5/16 6/3 6/4 9/1 10/18 10/21 13/14

rate-setting [4] 9/1 10/18 10/21 18/17
rates [4] 8/17 8/19 9/4 17/11
rather [3] 7/14 12/18 19/17
rationale [3] 9/12 11/23 11/24
rea [1] 5/24
read [2] 13/21 13/22
reading [4] 12/5 12/14 13/17 13/20
real [2] 6/22 10/2
really [2] 6/23 16/17
reapplying [1] 13/24
reason [4] 10/1 10/2 10/16 16/11
reasons [6] 8/7 8/22 9/11 10/22 16/5 18/2
recess [4] 18/22 18/23 20/15 20/16
record [2] 3/6 21/5
recovery [1] 5/7
redo [1] 11/15
reengage [1] 16/20
reengaging [1] 11/4
reference [1] 6/11
referred [1] 19/8
refused [1] 10/19
regard [1] 6/5
regarding [1] 3/25
relevance [2] 4/23 16/14
relevant [4] 6/16 10/21 16/2 19/2
rely [1] 4/5
relying [1] 20/14
renders [1] 17/21
reopen [2] 4/3 7/23
reopening [1] 7/15
REPORTER [2] 2/19 21/11
request [1] 9/15
requested [1] 9/1
require [6] 6/22 11/4 12/16 12/23 14/24 15/9
required [4] 10/13 10/16 19/25 20/9
requires [4] 11/3 11/6 12/19 19/21
research [1] 11/15
researching [1] 13/9
respect [3] 6/19 10/20 18/17
responding [1] 8/13
responses [3] 3/25 4/6 4/15
resulted [1] 8/19
revealed [1] 5/19
rewriting [1] 12/23
right [8] 7/22 9/10 9/13 13/5

**right... [4]**  14/17 15/6 18/1 19/16
**RMR [2]**  2/19 21/10
**room [2]**  2/20 16/2
**roomful [1]**  15/21
**rough [2]**  4/24 5/9
**rule [26]**
**rules [2]**  6/18 6/21
**ruling [1]**  6/1
**run [8]**  8/12 15/9 15/18 16/24 18/11 19/1 19/22 20/4
**running [1]**  20/7
**runs [1]**  17/7

**S**

**S.W [3]**  2/11 2/16 2/20
**said [4]**  9/2 11/1 13/8 14/23
**same [1]**  7/17
**sand [1]**  17/15
**Sasha [2]**  2/3 3/17
**SAXTON [4]**  1/7 2/14 3/19 3/20
**say [11]**  5/18 7/3 8/3 8/7 9/10 10/1 11/25 13/3 13/23 14/21 15/2
**saying [4]**  5/25 8/3 11/9 11/10
**says [5]**  9/25 13/3 13/6 15/12 20/9
**scale [1]**  4/21
**se [1]**  15/8
**search [21]**  10/20 11/1 11/1 12/17 12/17 12/24 13/24 14/10 14/24 15/9 15/10 15/21 16/3 16/24 17/25 18/11 19/1 19/22 19/25 20/4 20/8
**searches [3]**  15/18 15/18 18/8
**searching [3]**  11/4 15/6 18/2
**Seattle [1]**  2/7
**second [2]**  2/16 10/24
**see [1]**  13/19
**seeking [1]**  7/25
**seeks [1]**  9/16
**seem [2]**  7/4 7/17
**seems [2]**  7/4 7/19
**sense [1]**  9/19
**set [2]**  3/4 8/17
**setting [11]**  3/25 5/11 5/13 5/16 6/4 9/1 10/18 10/21 13/14 16/8 18/17
**settings [1]**  6/3
**shorthand [1]**  19/20
**should [2]**  15/22 16/7
**shouldn't [1]**  13/3
**Shumway [3]**  2/19 21/9 21/10

**signature [2]**  21/7 21/7
**significant [3]**  8/10 8/25 20/13
**signing [1]**  21/4
**similar [1]**  14/10
**simply [1]**  4/3
**since [3]**  7/23 8/12 8/16
**sir [1]**  3/15
**sit [1]**  13/7
**smoking [5]**  10/4 15/11 18/3 19/7 19/19
**so [21]**  4/3 4/10 4/13 5/1 5/4 5/9 5/18 6/6 6/22 8/3 8/12 9/7 9/15 10/4 11/9 11/23 12/2 14/17 16/23 19/19 20/2
**some [10]**  4/20 4/24 4/24 5/19 5/20 5/21 5/25 6/19 6/24 11/8
**somebody [1]**  4/17
**someone [1]**  9/25
**something [14]**  5/14 6/25 7/21 8/1 11/6 11/12 11/16 12/18 12/19 15/23 16/6 16/20 17/1 17/18
**sorry [3]**  14/7 14/22 17/13
**sort [14]**  4/3 4/4 4/16 4/21 5/9 5/15 6/12 7/9 7/12 11/2 15/2 16/25 17/14 19/7
**sought [4]**  3/24 4/22 4/23 4/25
**sources [1]**  4/9
**space [1]**  14/11
**speak [1]**  10/4
**special [2]**  3/7 3/10
**specifically [1]**  8/21
**stage [1]**  16/6
**standing [1]**  6/12
**start [2]**  8/13 8/15
**started [1]**  4/4
**state [4]**  1/7 3/8 3/10 9/8
**STATES [3]**  1/1 1/17 2/19
**statute [1]**  17/9
**stayed [1]**  13/12
**Street [1]**  2/4
**stronger [1]**  6/8
**stuff [1]**  11/2
**subsequent [1]**  5/23
**such [4]**  8/4 9/24 10/3 15/14
**suggested [1]**  13/20
**Suite [3]**  2/7 2/11 2/16
**supplement [9]**  6/21 7/11 12/8 12/23 13/11 15/2 15/5 17/25 18/16
**supplemental [10]**  10/7 10/10 10/19 11/3 11/3 11/11 17/5 17/16 17/20 18/8
**supplementation [1]**  8/6
**supplemented [3]**  3/25 4/6

**support [3]**  6/7 6/17 7/25
**supported [1]**  11/24
**supporting [1]**  7/5
**sure [1]**  13/16

**T**

**tail [1]**  16/13
**take [2]**  5/4 18/19
**taken [3]**  12/7 18/13 18/23
**takes [1]**  4/19
**taking [1]**  5/18
**talk [1]**  4/14
**talking [1]**  6/6
**tell [2]**  11/25 12/19
**ten [1]**  7/6
**tentative [4]**  3/22 7/2 7/3 8/12
**term [9]**  16/24 18/11 19/1 19/4 19/6 19/19 19/22 20/4 20/8
**terms [14]**  10/20 11/2 12/17 12/24 13/23 13/24 14/24 15/9 15/10 16/3 17/8 17/17 17/25 20/1
**text [2]**  11/4 16/17
**textual [2]**  12/13 16/18
**than [4]**  5/1 7/15 8/8 17/18
**Thank [7]**  3/21 8/14 18/5 18/18 19/16 20/12 20/15
**thanks [1]**  15/25
**that [145]**
**that's [15]**  4/16 6/1 6/9 7/12 8/10 9/8 9/14 9/20 10/24 11/2 12/24 15/6 16/25 17/1 18/15
**their [2]**  16/10 19/14
**them [5]**  4/18 11/23 12/19 15/13 15/21
**then [15]**  3/22 4/7 4/8 4/21 5/18 6/6 6/20 7/22 8/7 9/5 15/22 15/24 18/23 19/24 20/4
**theories [2]**  4/2 6/17
**theory [6]**  5/7 5/22 6/7 7/5 7/25 8/4
**there [14]**  4/2 5/19 8/5 9/7 11/19 11/19 12/18 12/18 13/13 15/11 15/11 15/14 15/19 18/4
**there's [7]**  4/21 5/20 6/2 11/22 11/22 12/20 18/3
**therefore [1]**  7/20
**these [9]**  4/5 8/16 8/19 9/1 9/10 9/17 9/18 10/1 10/12
**they [13]**  7/25 8/1 8/24 9/3 9/10 11/25 12/19 16/7 16/7 16/8 16/9 17/1 18/11
**they're [2]**  7/11 11/9
**thing [5]**  7/9 7/12 7/17 10/11

**T**

**thing... [1]**  15/20
**things [3]**  4/21 9/8 15/25
**think [20]**  4/24 5/2 7/7 9/9 9/11 9/20 11/14 14/12 14/14 14/23 15/7 15/13 15/16 16/6 16/15 18/1 18/2 18/9 19/13 20/7
**thinks [1]**  5/10
**third [3]**  2/7 2/20 16/14
**this [35]**
**those [8]**  5/6 5/13 5/14 6/14 6/17 8/23 9/9 10/20
**thought [1]**  18/10
**thoughts [2]**  3/22 8/12
**thousandth [1]**  7/6
**through [6]**  7/14 12/17 17/23 17/24 19/25 20/7
**time [6]**  3/3 12/12 19/1 19/10 19/11 19/14
**today [6]**  10/13 10/17 13/12 18/14 18/25 19/11
**today's [1]**  6/1
**told [1]**  17/14
**too [1]**  8/18
**took [1]**  10/13
**top [1]**  5/3
**transcript [3]**  1/15 21/5 21/6
**trial [1]**  5/25
**trove [1]**  10/12
**troves [1]**  13/24
**trust [1]**  12/11
**try [1]**  17/13
**turn [1]**  13/19
**two [10]**  4/3 4/5 4/21 4/22 5/6 5/14 6/17 10/12 14/20 16/21
**type [1]**  18/8
**typical [1]**  4/4

**U**

**under [23]**
**understand [5]**  13/16 13/18 18/13 18/16 18/20
**understandably [2]**  6/7 19/21
**understanding [4]**  5/9 14/2 19/3 19/18
**understood [3]**  19/12 19/14 20/10
**UNITED [3]**  1/1 1/17 2/19
**unknown [1]**  7/6
**up [2]**  4/4 18/24
**us [5]**  8/18 9/5 14/24 15/9 16/9
**use [1]**  19/19
**using [1]**  11/1

**V**

**value [4]**  4/23 4/25 5/2 5/3
**various [2]**  9/2 15/25
**verify [1]**  9/16
**versus [1]**  3/5
**very [4]**  4/24 7/8 16/13 20/12
**view [3]**  4/10 15/1 19/20
**views [1]**  7/2
**voluntary [1]**  17/24

**W**

**WA [1]**  2/7
**want [10]**  7/24 9/20 10/11 11/23 13/4 13/4 13/16 15/14 18/4 18/6
**wants [1]**  7/8
**was [8]**  8/24 9/12 15/8 16/8 16/17 17/12 18/12 19/10
**way [9]**  3/24 5/6 10/3 11/8 11/16 15/7 19/25 20/7 20/14
**ways [1]**  4/14
**we [38]**
**we'll [3]**  11/11 11/25 20/15
**we're [8]**  6/6 9/25 10/16 11/14 12/1 14/22 15/6 18/2
**we've [1]**  14/9
**website [1]**  11/21
**well [8]**  4/13 5/15 10/6 11/25 12/6 14/9 15/17 15/18
**were [11]**  5/13 5/13 6/5 6/19 8/20 8/21 8/23 9/1 9/3 9/17 9/18
**what [36]**
**what's [17]**  4/11 4/11 4/13 4/20 4/22 4/23 4/25 5/3 6/24 11/17 11/18 12/2 12/14 12/24 13/2 13/23 14/16
**whatever [1]**  19/24
**when [3]**  5/18 6/11 17/1
**where [3]**  7/5 13/16 18/24
**whether [4]**  9/16 9/18 17/16 20/5
**which [8]**  4/14 5/21 5/22 7/15 7/16 9/25 11/22 15/25
**why [7]**  9/3 10/1 10/4 10/11 12/4 15/6 16/3
**will [10]**  6/25 8/1 8/8 11/10 11/12 14/10 17/5 17/17 17/19 19/4
**willing [2]**  18/16 19/5
**without [6]**  4/12 4/15 8/1 8/3 12/19 21/6
**won't [4]**  6/25 11/1 15/19 19/19
**word [1]**  14/10

**words [2]**  7/7 12/16
**work [1]**  4/7
**worked [1]**  15/12
**worth [1]**  6/10
**would [8]**  5/5 5/14 6/6 7/18 9/5 14/15 15/14 18/16
**wouldn't [2]**  10/4 10/11
**wrong [5]**  11/12 11/17 11/18 12/2 12/14

**Y**

**years [15]**  4/1 4/5 5/6 5/12 5/13 5/14 6/14 6/17 9/2 10/18 10/21 11/14 16/21 18/17 19/5
**years' [2]**  6/4 10/12
**Yes [2]**  17/19 20/11
**yet [2]**  8/5 15/18
**you [65]**
**you that [1]**  15/13
**you're [7]**  4/13 13/5 14/13 14/13 15/21 15/22 17/15
**you've [8]**  9/9 13/6 13/8 13/24 15/3 16/23 17/1 17/14
**your [45]**
**yourself [1]**  3/6