**Stephen F. English** (OSB No. 730843)
SEnglish@perkinscoie.com
**Thomas R. Johnson** (OSB No. 010645)
TRJohnson@perkinscoie.com
**Heidee Stoller** (OSB No. 072835)
HStoller@perkinscoie.com
**Matthew J. Mertens** (OSB No. 146288)
MMertens@perkinscoie.com
**Sasha Petrova** (OSB No. 154008)
SPetrova@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Telephone: 503.727.2000
Facsimile:  503.727.2222

**Matthew P. Gordon** (admitted *pro hac vice*)
MGordon@perkinscoie.com
**David B. Robbins** (OSB No. 070630)
DRobbins@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Telephone: 206.359.8000
Facsimile:  206.359.9000

*Attorneys for Plaintiff FamilyCare, Inc.*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **FAMILYCARE, INC.**, an Oregon non-profit corporation,<br><br>Plaintiff,<br><br>v.<br><br>**OREGON HEALTH AUTHORITY**, an agency of the State of Oregon, and **LYNNE SAXTON**,<br><br>Defendants. | Case No. 6:18-CV-00296-MO<br><br>**FAMILYCARE, INC.'S SUPPLEMENTAL BRIEF REGARDING THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING** |

FAMILYCARE, INC.'S SUPPLEMENTAL BRIEF
REGARDING THE IMPLIED COVENANT OF
GOOD FAITH AND FAIR DEALING

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Exhibit A
Page 1 of 10

## I.    INTRODUCTION

This Supplemental Brief addresses the Court's concern raised during the September 1, 2021 oral argument on Defendant OHA's Motion to Dismiss (ECF 432) about the appropriate methodology for determining whether the implied covenant of good faith and fair dealing (hereinafter "implied covenant") applies to OHA's exercise of discretion in setting FamilyCare's 2017 and 2018 rates, as reflected in the 2017 and 2018 rate amendments.

During the hearing, OHA argued that contract amendment was tantamount to contract formation because contract amendment involves an offer, acceptance, consideration, and mutual assent, and, for that reason, OHA had no duty to set FamilyCare's rates in good faith.  Transcript at 14-15.  The Court then asked FamilyCare about the difference between "contract performance" and "contract amendment" for purposes of applying the implied covenant.  The Court suggested that if OHA's rate-setting is not performance but is effectively a contract amendment, the implied covenant would not apply because, in the Court's words, "contract amendment is contract formation."  Transcript at 33.

FamilyCare respectfully submits that contract amendment is *not* tantamount to contract formation for purposes of determining whether the implied covenant applies—at least not here, where OHA set FamilyCare's 2017 and 2018 rates within the context of, and pursuant to, an underlying, statutorily mandated five-year contract whose lengthy term was designed to provide longer-term stability to CCOs to encourage long-term investments.  Case law from Oregon and other states shows that the correct methodology for determining whether the implied covenant applies to OHA's setting of FamilyCare's 2017 and 2018 rates is not whether there was an offer, acceptance, mutual assent, or consideration regarding the amendment that followed the rate-setting; instead, the issues are whether (1) OHA exercised discretion to change the price term after the parties reached an underlying, original agreement and while subject to that existing agreement and (2) whether the contractual change related to the parties' performance under the

1-    FAMILYCARE, INC.'S SUPPLEMENTAL BRIEF REGARDING THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

existing contract.  Because the rate-setting at issue was conducted pursuant to the express performance requirements of a then-existing contract, the implied covenant applies to and limits OHA's discretion in how it set rates.

## II.    ANALYSIS

### A.    Application of the implied covenant does not turn on offer, acceptance, or mutual assent.

Although contract amendment—like formation—involves mutual assent, that is not germane to determining whether the implied covenant applies.  This is demonstrated in part by the fact that Oregon courts have repeatedly held that the implied covenant applies to a variety of contract changes and modifications that require mutual assent.

At oral argument, the Court distinguished between "contract modification" and "contract amendment," noting that "contract modification would be . . . modifying [a term] from what it was to something else," whereas "contract amendment is contract formation."  Transcript at 33. FamilyCare respectfully submits that Oregon law does not distinguish between modification and amendment in any way with legal significance here.  No Oregon case recognizes a pertinent legal distinction between contract modification and amendment, either expressly or impliedly.  And Oregon cases hold that both contract modification and contract amendment require mutual assent.  *Bennett v. Farmers Ins. Co. of Oregon*, 26 P.3d 785, 792, 332 Or. 138, 148 (Or. 2001) ("It is axiomatic that parties to a contract may modify that contract by mutual assent. Such a modification must be supported by consideration."  (citations omitted)); *Florey v. Meeker*, 240 P.2d 1177, 1188, 194 Or. 257, 282 (Or. 1952) ("The right of parties to a contract to modify or amend it from time to time by mutual consent is . . . an accepted and recognized incident of every contract . . . ."  (emphasis added)); *see also* Modern Law of Contracts § 5:20 ("The common law treats a modification the same as an ordinary contract.  There must be consideration

FAMILYCARE, INC.'S SUPPLEMENTAL BRIEF REGARDING THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

to support the modification.  Mutual assent—an exchange of promises to modify—will suffice and the agreed changes supplant conflicting terms in the original agreement.").[1]

Moreover, Oregon courts use the two terms interchangeably, referring to modification clauses as allowing "amendment" of the contract and vice-versa.  *E.g.*, *Hilfiker Square, LLC v. Thrifty Payless, Inc.*, No. 6:16-cv-01885-MC, 2018 WL 358495 (D. Or. Jan. 10, 2018) (describing acts changing an agreement under a "modification" clause as "amendment" of the contracts terms); *W. Prop. Holdings, LLC v. Aequitas Cap. Mgmt., Inc.*, 392 P.3d 770, 777, 778, 284 Or. App. 316, 328, 329-30 (Or. Ct. App. 2017) (using "modify" and "modifications" in referring to a provision in a loan agreement that uses the term "amendments"); *Circle K Stores, Inc. v. Zillman*, 827 F. Supp. 2d 1251 (D. Or. 2011) (referring to Lease Amendments, and contract referring to "amendment" of terms, as "modifying" and "modification" of the lease).

As a result, even if there could, in certain cases, be circumstance-specific differences between modifications and amendments, there is no evident difference under Oregon law relevant to the question whether the implied covenant applies to a party's exercise of discretion. If a party exercises discretion afforded by and pursuant to an existing contract, the implied covenant applies, regardless of whether the resulting change to the contract is described as a modification, an amendment, or simply a change.  *See Wells Fargo Bank, N.A. v. The Ash Org.*, No. 09-CV-188-MO, 2010 WL 2681675, at *7-8 (D. Or. July 2, 2010); *Tolbert v. First Nat. Bank of Oregon*, 823 P.2d 965, 969-70, 312 Or. 485, 493 (1991); *Best v. U.S. Nat'l Bank*, 739 P.2d 554, 303 Or. 557 (1987); *Associated Oregon Veterans v. Dep't of Veterans' Affairs*, 712 P.2d 103, 107, 107, 300 Or. 441, 448-49 (Or. 1985); *Depaul Indus. v. City of Eugene*, No. 6:18-CV-00320-MC, 2020 WL 5078758, at *4 (D. Or. Aug. 27, 2020) ("In the context of agreements granting unilateral discretion to one party, a duty of good faith is always implied absent language

---

[1] Notably, there was no mutual assent regarding either the 2017 or 2018 rates.  FamilyCare signed the 2017 rate amendment but expressly reserved the right to challenge those rates, and FamilyCare did not sign the 2018 rate amendment.  *See* ECF 429 at ¶¶ 38, 70-71 (Fifth Amended Complaint).

3-    FAMILYCARE, INC.'S SUPPLEMENTAL BRIEF
REGARDING THE IMPLIED COVENANT OF
GOOD FAITH AND FAIR DEALING

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

expressly allowing consent to be withheld "unreasonably." (citing *Wells Fargo Bank, N.A.*, 2010 WL 2681675 at *7-8)); *Hilfiker Square, LLC*, 2018 WL 358495, at *4 (same). This is true even where (as here) the other party may reject the change by terminating the contract—*i.e.*, to changes that require mutual assent to be effective. *Tolbert*, 823 P.2d 969-70, 312 Or. 493 (quoting, with approval, Court of Appeals statement that, in determining whether the implied covenant applies, "it is immaterial that a party could terminate the contract if dissatisfied with how the other party exercises its discretion").

Courts of other jurisdictions apply similar principles to hold that the implied covenant applies to the unilateral exercise of discretion in changing a contract term, regardless whether the change is called a "modification" or "amendment" and regardless whether the change involved mutual assent, consideration, and the like. *See, e.g.*, *Yufan Zhang v. UnitedHealth Group*, 367 F. Supp. 3d 910, 916 (D. Minn. 2019) (implied covenant applied to an employment contract that allowed employer to "amend, modify, or terminate" the contract); *Pre-Paid Legal Servs., Inc. v. Cahill*, 171 F. Supp. 3d 1219, 1224-25 (E.D. Okla. 2016) (implied covenant applied to the exercise by a party's contractual right to "amen[d] from time to time" the contract); *cf. Rekhter v. Dep't of Soc. & Health Servs.*, 323 P.3d 1036, 1041, 180 Wash. 2d 102, 112-13 (Wash. 2014) (implied covenant applied to provisions authorizing a party to "set a future contract term" for its contractors); s*ee also, e.g.*, *Ali v. J.P. Morgan Chase Bank, N.A.*, 647 F. App'x 783, 786 (9th Cir. 2016) (noting that, under California law, a contract's unilateral modification clause is subject to "the covenant of good faith and fair dealing implied in every contract"); *N.Y. Life Ins. v. Grant*, 57 F. Supp. 3d 1401, 1411-12 (M.D. Ga. 2014) (party stated viable claim for breach of implied covenant where he alleged that other party "entered into two written agreements and violated the implied covenant . . . in modifying the terms of these agreements" unilaterally); *Stewart Title Guar. Co. v. Greenlands Realty, L.L.C.*, 58 F. Supp. 2d 370, 385 (D.N.J. 1999) (issue of fact

4-    FAMILYCARE, INC.'S SUPPLEMENTAL BRIEF REGARDING THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

Exhibit A
Page 5 of 10

existed as to whether a party violated the implied covenant by unilaterally modifying the contract).[2]

Accordingly, even though the rate amendments in this case involve mutual assent, that does not mean that the implied covenant is inapplicable. To the contrary, as explained below, the implied covenant applies because OHA exercised discretion afforded it by the contract to set rates pursuant to the contract.

> **B.     The application of the implied covenant depends on the existence of a contract that defines the parties' performance as including changing the contract.**

In response to the Court's request for a methodology for determining whether the rate amendments here constitute contract performance requiring good faith and fair dealing, FamilyCare submits that the appropriate methodology is to ask whether there was (1) an existing contract at the time of the change and (2) the change was made pursuant to an express term of the existing contract. If there is an existing contract and it requires the change, the implied covenant applies.

---

[2] Each of the above decisions involves unilateral modification to contracts that allow the other party to reject the proposed change by terminating the contract. *See, e.g.*, *Yufan Zhang*, 367 F. Supp. 3d at 916 (employment contract); *Pre-Paid Legal Servs., Inc.*, 171 F. Supp. 3d at 1224-25 (contractor agreement where the contractor "retained the right to reject [the] modifications by terminating the Agreement"); *Rekhter*, 323 P.3d at 1041 (contract between state agency and individual care providers who care for the agency's clients); *Ali*, 647 F. App'x at 786 (employment contract); *N.Y. Life Ins.*, 57 F. Supp. 3d at 1411-12 (contract between insurance company and insurance agent); *Stewart Title Guar. Co.*, 58 F. Supp. 2d at 385 (insurance policy). These cases arise in jurisdictions where contract changes require mutual assent and consideration. *See Midwest Motor Supply Co. v. Superior Court of Contra Costa County*, 56 Cal. App. 5th 702, 710, 270 Cal. Rptr. 3d 683, 689 (Cal. Ct. App. 2020) ("Modification is a change in the obligation by a modifying agreement, which requires mutual assent, and must ordinarily be supported by consideration." (quoting 1 Witkin, Summary of Cal. Law (11th ed. 2020) Contracts, § 995)); *J.E.M. Enterprises, Inc. v. Taco Pronto, Inc.*, 244 S.E.2d 253, 255, 145 Ga. App. 573, 574 (Ga. Ct. App. 1978); *County of Morris v. Fauver*, 707 A.2d 958, 965, 153 N.J. 80, 94 (N.J. 1998).

5-     FAMILYCARE, INC.'S SUPPLEMENTAL BRIEF
REGARDING THE IMPLIED COVENANT OF
GOOD FAITH AND FAIR DEALING

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

The Court noted that, under Oregon law, the implied covenant does not apply to contract formation. Transcript at 33. The reason that parties' actions *forming* a brand-new contract are not subject to a good-faith requirement is that the implied covenant must attach to a term of an *existing* contract. Because a claim for breach of the implied covenant is a claim for breach of contract, it cannot apply to a contract that does not yet exist. *See Herron v. Wells Fargo Fin., Inc.*, 299 F. App'x 713, 714-15 (9th Cir. 2008) (holding that, under Oregon law, a party "cannot maintain a claim for breach of the duty of good faith and fair dealing because, without a valid contract in place, [the party] has no duty of good faith and fair dealing for contract performance"); *Stoss v. J.P. Morgan Chase Bank, N.A.*, No. 3:13-CV-01068-AC, 2014 WL 585946, at *7 (D. Or. Feb. 14, 2014) ("In order for this failure to constitute a breach of [the covenant of good faith and fair dealing under the] contract, there must be an underlying contract from which the duty to approve the application arises.").

But the implied covenant does apply to parties' actions *changing an existing contract* because those changes are to contracts that are *already formed*, and the implied covenant applies through that existing contract. To be sure, the implied covenant does not necessarily apply to all contract changes—but it does apply where the changes result directly from the contract's required performance of acts that cause the change to the existing contract.

Specifically, the implied covenant applies to OHA's 2017 and 2018 rate-setting because that rate-setting (1) occurred after the original contract was executed and during the 5-year contractual term, (2) was done pursuant to the contractual requirement for annual rate-setting, and (3) relates to performance of the existing contract. By way of contrast, the implied covenant presumably did not apply to OHA's setting of the 2014 rates because OHA set those rates *before* the parties executed the contract at issue here and included those rates in an attachment to that contract before it was executed. Also, had the parties executed an amendment to the contract involving performance not encompassed or contemplated by the existing contract, such as adding services for a different state-sponsored health care program, the implied covenant might well

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

have not applied to the parties' negotiations of that amendment. But here, OHA set the 2017 and 2018 rates *after* the contract was executed in late 2013, and that rate-setting was part and parcel of OHA's performance during the contract. That is precisely when the implied covenant applies.

The five-year contract's requirement for yearly rate amendments causes the implied covenant to apply. If an underlying contract has express terms about amendments, then the implied covenant attaches to those terms and requires the parties to perform those terms in good faith. This principle is demonstrated by cases in which a contractual obligation to negotiate a contractual alteration or a new contract may impart an obligation to negotiate in good faith. *See, e.g.*, *Racine & Laramie, Ltd. v. Dept. of Parks & Rec.*, 11 Cal. App. 4th 1026, 14 Cal. Rptr. 2d 335 (Ct. App. Cal. 1992) ("[A] preexisting agreement may impose an obligation of good faith bargaining with respect to the modification of some term of the agreement. The preexisting agreement which vests a discretionary power of alteration of the terms of the agreement may impliedly require that such be done in good faith."); *Rand-Whitney Containerboard Ltd. P'ship v. Town of Montville*, 289 F. Supp. 2d 62, 79 (D. Conn. 2003) ("[T]he general rule [is] that the covenant does not apply to negotiations, and that, if the parties were negotiating a new agreement rather than renegotiating the existing one, the covenant would not apply. However, the covenant may apply to renegotiations in an existing contractual relationship." (internal quotation marks and alterations omitted)); *Keiter v. Penn Mut. Ins. Co.*, 900 F. Supp. 1339, 1345 (D. Haw. 1995) ("A duty to negotiate in good faith may arise from explicit agreement or implication from a prior contract subject to modification[.]"). For these reasons, for purposes of the implied covenant, contract performance and contract amendment are often not mutually exclusive. Where, as here, there are existing, express terms of a contract providing that a party will amend the contract, contract performance and contract amendment are coextensive.

The implied covenant applies to OHA's rate-setting, as reflected in the 2017 and 2018 rate amendments, because there was an existing contract with terms requiring annual rate amendments and defining the parties' performance to include the rate-setting that resulted in

7-    FAMILYCARE, INC.'S SUPPLEMENTAL BRIEF
REGARDING THE IMPLIED COVENANT OF
GOOD FAITH AND FAIR DEALING

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

such amendments: that is, the parties agreed in 2013 to annually "amend this Contract to supply Capitation Rates and an Actuarial Report." *See* ECF 433-2 at 125.[3] That express term underlies and governs both the 2017 and 2018 rate amendments in this case—and, accordingly, imposes the implied covenant of good faith and fair dealing to the parties' generation of such Capitation Rates and Actuarial Report for purposes of performance of that term through amending the rates in both 2017 and 2018. Here, the implied covenant's requirement does not and, we submit, cannot differentiate between the good faith required of performing that act of developing the rates and actually changing the contract rate terms accordingly.

---

[3] The contractual requirement for annual rate-setting amendments reflects federal statutory and regulatory requirements requiring capitation rates paid by state Medicaid agencies to Medicaid managed care organizations to be set one year at a time and requiring annual CMS approval of contracts and amendments containing such annual rates. *See* 42 U.S.C. § 1396b-(m)(2)(A)(iii); 42 C.F.R. §§ 438.2, 438.3(a), 438.7(a). The same Oregon statute that requires CCO contracts to have five-year terms also disallows any additional amendments each year except in limited circumstances. ORS 414.590(2)(a).

8-    FAMILYCARE, INC.'S SUPPLEMENTAL BRIEF REGARDING THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

DATED:  September 14, 2021.        **PERKINS COIE LLP**

By: *s/ Thomas R. Johnson*

**Stephen F. English**, OSB No. 730843
SEnglish@perkinscoie.com
**Thomas R. Johnson** (OSB No. 010645)
TRJohnson@perkinscoie.com
**Heidee Stoller** (OSB No. 072835)
HStoller@perkinscoie.com
**Matthew J. Mertens** (OSB No. 146288)
MMertens@perkinscoie.com
**Sasha Petrova** (OSB No. 154008)
SPetrova@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Telephone:   503.727.2000
Facsimile:    503.727.2222

**Matthew P. Gordon** (admitted *pro hac vice*)
MGordon@perkinscoie.com
**David B. Robbins** (OSB No. 070630)
DRobbins@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Telephone:   206.359.8000
Facsimile:    206.359.9000

*Attorneys for Plaintiff FamilyCare, Inc.*

9-     FAMILYCARE, INC.'S SUPPLEMENTAL BRIEF
REGARDING THE IMPLIED COVENANT OF
GOOD FAITH AND FAIR DEALING

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Exhibit A
Page 10 of 10