IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

FAMILYCARE, INC., an Oregon ) <br>
non-profit corporation, ) <br>
) <br>
      Plaintiff, )  Case No. 6:18-cv-00296-MO <br>
) <br>
  v. ) <br>
) <br>
OREGON HEALTH AUTHORITY, an )  September 1, 2021 <br>
agency of the State of Oregon, ) <br>
and LYNNE SAXTON, ) <br>
) <br>
     Defendants. )  Portland, Oregon <br>
_____)

**Oral Argument**

TRANSCRIPT OF PROCEEDINGS

BEFORE THE HONORABLE MICHAEL W. MOSMAN

UNITED STATES DISTRICT COURT JUDGE

APPEARANCES

FOR PLAINTIFF:              Ms. Heidee Stoller
                           Mr. Thomas Johnson
                           Perkins Coie, LLP
                           1120 N.W. Couch Street, 10th Floor
                           Portland, OR 97209


                           Mr. Matthew P. Gordon
                           Perkins Coie, LLP
                           1201 Third Avenue, Suite 4800
                           Seattle, WA 98101


FOR DEFENDANT OREGON
HEALTH AUTHORITY:          Mr. Harry Wilson
                           Mr. Anit K. Jindal
                           Markowitz Herbold PC
                           1455 S.W. Broadway, Suite 1900
                           Portland, OR 97201


FOR DEFENDANT LYNNE
SAXTON:                    Mr. Edwin A. Harnden
                           Mr. Chris M. Morgan
                           Barran Liebman LLP
                           601 S.W. Second Avenue, Suite 2300
                           Portland, OR 97204


COURT REPORTER:            Bonita J. Shumway, CSR, RMR, CRR
                           United States District Courthouse
                           1000 S.W. Third Ave., Room 301
                           Portland, OR  97204
                           (503) 326-8188

P R O C E E D I N G S

(September 1, 2021; 1:34 p.m.)

* * * * *

THE COURTROOM DEPUTY:  Your Honor, this is the time and place set for oral argument in Case No. 6:18-cv-296-MO, FamilyCare, Inc. versus Oregon Health Authority, et al.

Counsel, can you introduce yourself for the record.

MR. WILSON:  Good afternoon, Your Honor.  Harry Wilson, special assistant attorney general, for the Oregon Health Authority.

MR. JINDAL:  Your Honor, my name is Anit Jindal, also representing the Oregon Health Authority.

MR. GORDON:  Good afternoon, Your Honor.  Matthew Gordon for plaintiff FamilyCare.

MS. STOLLER:  Heidee Stoller for FamilyCare.

MR. JOHNSON:  Tom Johnson for FamilyCare.

MR. MORGAN:  Chris Morgan for defendant Saxton.

MR. HARNDEN:  And Ed Harnden for defendant Saxton.

THE COURT:  Thank you all for being here.  I want to state some preliminary views, and take it in pieces rather than all of those preliminary views all at once.  And I want to try to be precise, because I believe that part of why we are here with the results of an appeal that ended up not really advancing the litigation very much can be blamed at least in part on me, I think, inadequately explaining the issues that

were present before me before the appeal.  So I want to try to do a better job this time around.

So I'll state tentative views, and then I'll ask for your further comments.  And I do want you to pay attention not just to what you think the right result will be, but what the right framework of analysis or methodology is for answering what I think are the remaining questions in this case.

So I want to start with OHA's current motion to dismiss the third claim of the fifth amended complaint, which we'll call the good faith claim.

So, first of all, I guess I'd say that it's very unusual for me to do something, get reversed for doing it, and even think about doing it again.  So I'm trying to pay attention to what the Ninth Circuit has said here.  But I am concerned for what I mentioned a minute ago, for some maybe loose or vague language that the Ninth Circuit has not answered the main question that I think was presented to it on appeal, leaving it unanswered for us here today.  So I want to explain why I think that is.

I think the Ninth Circuit viewed the question as sort of bimodal, and that is there's either a five-year contract, in which case the rate setting that occurred within the time period of that five-year contract would amount to a performance issue for which good faith could apply, or in the alternative, there were a series of one-year contracts.  And since the very

subject of those one-year contracts would have been the rates set each of those years, then rate setting would be contract formation of those contracts to which the performance equitable doctrine of good faith would not apply.

I think that's the question the Ninth Circuit thought it had in front of it, and so then it reversed me for inadequately analyzing that particular question, failing to apply the sort of three-part *Yogman* factors, and giving them enough to go on while broadly suggesting -- if not outright commanding -- me to find a five-year contract.

That's not, I think, quite the issue that I'm facing today. I guess I don't know how the parties briefed it, but I suspect that maybe that's true of the briefing also, that it's maybe not quite the issue that should have been answered.

In any event, today the question before me is -- rests first on the agreement of the parties that the unambiguous text of the contract here sets out a five-year contract. So certainly by the end of the reply brief, it's clear that OHA and FamilyCare agree that there's a five-year contract, and that's the only question to which the *Yogman* factors would apply. And if I did apply them, if I were forced to apply them, I guess I'd say, well, I'd first look at the terms of the contract, and the term in dispute for purposes of the question the Ninth Circuit was considering is what's the term, the length of the contract. And if I applied those

factors, I'd stop with sort of factor number one, it's unambiguously a five-year contract.  And I wouldn't get appealed by that because both parties agree with it, so there you have it.

What I said before the appeal is that it's comprised of a series of one-year contracts, and, in fact, probably more sloppily than I should have, suggested that it, in fact, was a series of one-year contracts, maybe not even a five-year contract.

For today's purposes, what's important is that OHA is arguing, as it probably has all along, that within a five-year contract, you can have amendments, annual amendments in this case, and that amending a contract upon consideration and mutual assent is contract formation, even if you don't create a brand-new contract each year.  It's not contract performance.

And here's where the parties' briefing sort of glides past each other quite a bit, I think, which is that there's quite a beat of heat devoted to the question of who is right, a five-year contract or a series of one-year contracts, and that ends up not being the issue in the case.  The real issue in the case is within the overarching accepted sort of brute fact of a five-year contract, what are the annual rate settings?  Are they amendments to the contract performed each year or are they performance of the contract, a discretionary act by which OHA does what the contract allows it to do through its own

discretion by way of performance, or are they amendments?

And if I had probably used the word "five individual annual amendments to the contract," instead of calling it five contracts, we might not be here today.

So the first question I think presented to me today by the parties' briefing, when read in total, is to decide whether these rate settings each year are annual amendments to the contract or whether they amount to the performance of the contract. And so I'll be interested to hear your answer to that question. And as I mentioned a moment ago, I'll be interested to hear by what method you think one answers that question, because I don't think that's a question that's answered by *Yogman*. The parties don't disagree as to these terms, they disagree as to the character of these search terms. Do the terms which are agreed upon for rate setting amount to amendment or do they amount to defining the contours of performance? But I'll hear from you. That's question number one. It's a decision tree, and so I'll sort of head down each path of the decision tree briefly.

So, in my view, if the right answer to that question is that these are amendments to the contract, not performance of the contract, then I think I should grant OHA's current motion to dismiss this claim. The two paths of the decision tree are ones we've walked down before, and I think I've explained myself before, and I'm not of a different view today

as to how that plays out.  So if they are amendments, I think FamilyCare loses.  If they are not amendments, they're to be viewed as performance, then there are another series of decisions that I think the briefing requires me to make that I want to lay out here.

So the first is -- I guess I'd say sort of first in the abstract, can there even be a claim for breach of the objective reasonable expectations of the parties for a good faith performance, where the performance complained of by the other side amounts to performing a discretionary act the parties contracted for and allowed that party to do, citing principally *Tolbert*, but other cases.

So there's a fair amount of argument by OHA that there's really almost no such thing as a good faith claim if one side is just doing -- exercising the discretion the contract gave it the right to exercise, that that -- there's two ways to look at it.  They're two sides of the same coin, really.  That either means you don't have a good faith claim, or probably more accurately, it simply means that in doing so, that party -- here OHA -- has acted completely within the objective reasonable expectations of the party for good faith performance.

To resummarize it, I guess, if the parties negotiated for OHA to do something, a particular thing, and OHA goes and does it, then it's within the objective reasonable expectations

of the parties that OHA did what the parties contracted for. That's one argument.  And it's more -- it's sort of telescopic, because it's the idea that you could never have a good faith claim where there are expressed terms that talk about the performance at issue.

I disagree, I think, tentatively in the abstract that you could never have such a good faith claim.  And here the cases, sort of under the whole umbrella of the Restatement, but even in Oregon, limited just to Oregon, sort of talk out of both sides of their mouth, I think not ultimately incoherently. That is, they talk about not adding any terms to the contract by good faith claims or contradicting the terms of the contract, at the same time -- see, for example, *Best* in Oregon, the *Best* case in Oregon -- it's regularly possible in good faith claims for there to be reasonable objective expectations of the parties about performance that are not defined by the terms of the contract.  It can be done.  And the way I'd say it is that almost all the time, if a party does what the contract allows it to do, that will satisfy the reasonable objective good faith expectations of the parties, but it's possible to have sort of extra-contractual reasonable expectations the parties have that define good faith expectations in ways not defined expressly by the contract.  I would say that it's almost impossible -- maybe impossible for those extra-contractual sources to contradict the terms of the

contract, but it may well be able to supplement them.  And sometimes that's because the parties sort of cross-reference those expectations in the contract itself.  That's not necessary, but sometimes that happens.  They'll say, here's our contract and oh, by the way, we're going to follow all equal rights statutes or something like that.  Sometimes, you know, it's imposed just by outside sources not referenced in the contract.  You could have a mortgage banking contract, for example, that would be, I think, subject to the reasonable expectation that there be no racial discrimination in the lending practices of the institution, for example, whether the contract referenced those external sources or not.

So I think in the abstract, it is possible to state a claim for having reasonable objective good faith expectations when those expectations are not directly found in the contract, even when the behavior complained of is behavior that's outlined and allowed by the contract.  That's the abstract question.

Then for motion to dismiss purposes, telescopically, thinking of it telescopically, the next question is did FamilyCare state such a claim here.  And that's just looking at the complaint.  Did the complaint state such a claim here?  And tentatively my view to that question is tentatively I think yes.  I think they sort of for *Iqbal/Twombly* purposes did adequately state such a claim in Claim 3.

So I would say that *Tolbert* isn't so much a case that needs to be distinguished, it simply says that in that case -- it simply says that in many cases, including that case, where one would look to find these reasonable expectations is the contract itself, but I don't read anything in *Tolbert* to say that's the only place you can ever look in any case, that sort of case. And that's pretty common but not -- it's not coterminous with the idea that that's the only place you could look.

So was it pled, adequately pled? We'll come down to the last two questions, I think, about this motion to dismiss, and that is was it pled in such a way as to meet the requirements that this complaint not bring up new claims and new theories. And I don't know the answer to that question. That's a serious question for us here today.

So it's not an argument that's derived from the language of the complaint itself, which I think seems unobjectionable on that score. It says it's derived from the way in which FamilyCare has explained this claim in its briefing. It's an acceptable way to think about a motion to dismiss, but it took me a minute -- first, it took me a minute because the quote relied upon by OHA for what FamilyCare is saying about this claim that's beyond what should be allowed at this late stage in the litigation -- it's a quibble, I guess, but it cost me some time. It says it's at page 32. It turns

out it's at page 23.  It took me a while to find it.

But that's the idea, is that by alleging legislative history and constitutional sources and other things, FamilyCare is now relying on sort of extra-contractual sources for this good faith obligation that were never previously presented, and therefore there's been no real discovery on it, and so it shouldn't be allowed.

I'll say that if that turns out to be true, if to advance this claim FamilyCare has to rely on sources for this obligation that have never previously been identified and that weren't the subject of discovery, then I won't allow the claim to go forward.

And then finally there's a dispute between the parties about -- Well, actually, I should back up a little. There's a dispute between the parties about whether identifying the scope of this claim, what is -- what are the reasonable expectations of the parties here that form the potential for a good faith claim.  FamilyCare I think at least suggests, if not outright states, that that's a question for the jury.  OHA argues that that is for the Court to decide.  And I also don't know the answer to that one.  It's a hard one for the Court to decide, in the sense that it appears to be a factual question, it's not grounded in the terms of the contract.  I guess that's the main obstacle.  I'm not just reading the contract to determine this.  So there's that question.

And then I think the last one is the one I've already stated, that if you get to that, if you get that far, then the last question is can FamilyCare actually adduce enough evidence to advance this claim.  If we know what the claim is, either because I've decided or otherwise, if it's not procedurally barred by being too late, and if it otherwise fits the requirements that it's not sort of in contradiction of the terms of the statute, then can FamilyCare come up with enough evidence, so to speak, to justify the claim moving forward.  And by having phrased it that way, I think it's obvious to everyone that's not a motion to dismiss question, that's a summary judgment question.

The parties may be surprised to hear me say the words "summary judgment" out loud, since we're not going to have any more summary judgment, but if we got that far, that's something I feel like I'd have to allow, since this question has been sent back to me by the Ninth Circuit, and I think it may well be that getting that far is the only way to answer the very question that the Ninth Circuit ordered me to answer, so I'd probably allow it if we got that far.

So that's a lot to absorb.  It's one discrete issue among several today, but I think it's the most complex one.  The others, I think, are simpler.  And so I'll invite your answers both to the substantive answers and to the appropriate methodologies for answering the questions I posed just now.

I'll start with the moving party, OHA.

MR. WILSON:  Thank you, Your Honor.

I'd like to begin by addressing your first question, which I understand to be are the rate amendments contract performance or contract formation.  Our view, Your Honor, is that each of the rate amendments, including the 2017 and 2018 rate amendments, were offers.  They fully disclosed the terms at offer, and they gave FamilyCare an opportunity to accept, as it did in 2017, or reject, as it did in 2018, the offered terms.

THE COURT:  Is that one of the main things you think distinguishes performance from formation?  Because in performance, you either perform or don't, and by doing so you're either in breach or not, but you don't get to say, well, I'm just not going to do this thing.

MR. WILSON:  It is, Your Honor.  In fact, I think it's the only critical distinction here, and it's the distinction that the *Tolbert* case draws on and talks about. *Tolbert* says that a party cannot have a reasonable expectation about how the other party would set an open price term if the first party either specifically agreed to or specifically rejected the actual term.

THE COURT:  I don't think that's what *Tolbert* says. I think *Tolbert* says you meet the reasonable expectations of the parties if the parties have contracted for you to do a

discretionary act and then you do it.

MR. WILSON:  I agree that *Tolbert* says that, Your Honor, but I think that's the second part of *Tolbert*.  I think *Tolbert* is addressing two separate situations.  In the first situation, it's addressing a case where -- a circumstance in which the bank has made an offer to a depositor that discloses a price term, and the depositor has an opportunity to say yes or no.  The second circumstance in *Tolbert* is where the bank changes the price term after the contract has been accepted.

I want to come to that second portion of *Tolbert* in a moment, but I want to focus on the first here.

And here what OHA has done in 2017 and 2018 is disclosed a price term and given FamilyCare an opportunity to accept it or reject it, and because FamilyCare either accepted or rejected that term, it can't have any reasonable expectations about how that term was set.  Therefore, the rate amendments, which are offers, are episodes of contract formation, and the duty of good faith does not apply.

THE COURT:  If you were going to describe a methodology for answering this question, then I take it from what you said that you'd basically just say do you look for underlying facts in a case that show contract formation, the things we'd typically look for to show contract formation:  offer, agreement of the minds, acceptance?

MR. WILSON:  Correct, Your Honor.

THE COURT:  All right.  Go ahead with the next issue. I'm not going to ping-pong back and forth yet.

MR. WILSON:  Very good.

I understand your next question, Your Honor, to be if we accept -- or if we work from the premise that, in fact, the rate amendments were contract performance, then we're trying to decide whether or not -- you phrased it as does the good faith -- does the good faith claim apply, and if it does, what is good faith?  Can you look outside the contract?  Are there extra-contractual obligations?

Our view, Your Honor, is that in some cases there can be extra-contractual obligations, but this is not one of those cases, and the reason is for a very subtle distinction between the *Best* case and the *Tolbert* case.  And I think OHA agrees with Your Honor that the Oregon Supreme Court cases are somewhat opaque, but I do think that the *Tolbert* case draws out this distinction.

In the *Best* case, there was an open price term, but in that case, the contract between the depositor and the bank didn't state that either party had any discretion about setting the term.  The contract said -- the contract said depositors are obligated to pay the bank's service charges in effect at the time.

In contrast, in the *Tolbert* case, the contract between the depositors and the bank stated that the bank

could -- the bank had discretion to change the price term.
Now, this is the second part of the *Tolbert*.  This is after
you've had a contract.

So the critical distinction between *Best* and *Tolbert*
is that *Best* didn't identify or place -- didn't identify an
agreed-upon term that allocated discretion to one party or
another, whereas in the *Tolbert* case, the contract actually
said that the bank has discretion.

So in *Tolbert*, the Court then says because there is a
term of the contract to which the parties agreed that places
the discretion to change the price term with the bank, then the
bank has, as a matter of law, met all of its reasonable
contractual expectations if it changes that term and provides
notice to the depositors before it did so.

THE COURT:  Just so I can be sure of the breadth of
that principle in your mind, assume a price term like that,
where the discretion is placed with, let's say, a bank, and the
bank decides that it wants to get rid of its African American
depositors, so it raises price terms for them, otherwise
completely within the contour of the contract.  There's no
extra-contractual obligation not to do that, to operate in good
faith, that if they do what the contract negotiated for them to
do, end of analysis?

MR. WILSON:  Your Honor, in such an instance, that
would be, obviously, an abomination, and there would be many

claims that those depositors should bring.  But in a contract claim, the Oregon Supreme Court has been quite clear that the duty of good faith does not provide a remedy for unpleasantly motivated acts.  That's the *Boge* case, *U.S. National Bank v. Boge*.

So I want to be very clear that there are many things that such depositors should and could do, but the case law that the Oregon Supreme Court has set forth has been pretty clear that if a party acts according to the express and unambiguous terms of a contract, those are the only reasonable contractual expectations that a party -- that the other party can have about how the first party will exercise its discretion.

THE COURT:  So your argument really is that in the *Tolbert* situation or, in your view, in this situation, where the discretionary act that's complained of is the one that is set out in the contract to be performed by your client, that ends the analysis for good faith, that means that all reasonable expectations of good faith have been met so long as the contractual terms have been followed?

MR. WILSON:  That is correct, Your Honor.  And the other thing I'd say --

THE COURT:  It really means that there can be no other expectations beyond those found in the performance described by the contract that's reasonable.  It's really saying the expectation, for example, that you wouldn't exercise

that discretion in a racially prejudiced way is an unreasonable expectation to have for that contractual relationship?

MR. WILSON:  Yes, Your Honor, that's correct.  The only expectations the parties can have, if there is a method on the discretion that is identified and unambiguous in the contract, is that identified unambiguous method.  The duty of good faith merges, in effect, with the express and unambiguous terms of the contract.

THE COURT:  All right.  Thank you.

So, again, sort of as I said telescopically, if you assume you lose that point, then the next one is more procedural, and that is sort of twofold:  Has this claim been adequately pled; and if yes, has it been pled in a way that sort of satisfies the timing requirements currently in place in the case.

MR. WILSON:  Your Honor, to answer the first of those two questions, the claim has not been adequately pled.  The actual allegations in the claim state that the parties' reasonable contractual expectations were informed by contract and by applicable regulations.

THE COURT:  Applicable law?

MR. WILSON:  Applicable law, I apologize.  There are no allegations in the claim that the parties' reasonable expectations were informed by things like industry standard or past practice or any of the other things that appear for the

very first time in the opposition brief.

THE COURT:  I thought the claim mentioned bias as a -- Let's take a look at the claim for a second.

MR. WILSON:  Sure.  And Your Honor is correct that the claim does include language like "adequate," "free from errors," and things like that, but in paragraph 107 --

THE COURT:  Give me just a second to get there.

MR. WILSON:  Of course.

THE COURT:  Go ahead.

MR. WILSON:  So in paragraph 107, Your Honor, FamilyCare is identifying the source of its objective reasonable expectations, and it says, "FamilyCare had an objectively reasonable expectation based on the contract and applicable law."

It's that bases from which FamilyCare then concludes -- or attempts to conclude that the rate amendment should have been timelier and unbiased and so forth.  But there's never been an allegation that the parties' reasonable expectations were informed by anything else other than the contract and applicable law.

THE COURT:  I guess I don't see a very significant limiting principle in the words "applicable law."  I almost thought that was a lawyer's phrase designed to sweep in almost everything.

MR. WILSON:  Well, I might have expected that, Your

Honor, except FamilyCare has throughout this case identified what it thinks the applicable law is many times, and it's CMS regulations.

THE COURT:  Well, right now we're just looking at a motion to dismiss the complaint, so I'm just reading the complaint.  And I guess I don't track you that "contract" and "applicable law" places much limit on what FamilyCare can say is happening here.  And then it goes on to say, among other things, "unbiased," which certainly picks up a theme that I've been hearing since this case began, that it was retaliatory and designed to drive FamilyCare out of the markets.

So assume that's the case.  Why doesn't that satisfy *Iqbal/Twombly* for the specificity and for you to defend this case?

MR. WILSON:  Because, Your Honor, the claim has to give us notice of what we are to try to figure out the reasonable expectations are based on so we can inquire about them, conduct discovery based on them.  We never had any expectation based on this pleading that we would need to look past the contract or applicable law.  And even if Your Honor is -- assuming you were correct, Your Honor, that applicable law could sweep in lots of laws, it doesn't sweep in industry standards or past practices, the sorts of things FamilyCare is now contending inform the reasonable expectations of the parties.

THE COURT:  I'm not sure what to do with this exactly.  If the complaint textually satisfies *Iqbal/Twombly* -- it may or may not -- but if it does, then it doesn't get worse for motion to dismiss purposes by what has been advanced in briefing about what the ultimate theory is.  You can attack the ultimate theory in other ways, but right now, as I understand it, you're attacking the validity of the claim in the complaint.

MR. WILSON:  That is right, Your Honor.

THE COURT:  I guess I'm really asking what use do you want me to make of what FamilyCare has been saying for the last while about where it intends to go with this claim?

MR. WILSON:  I don't think Your Honor should make any use of that, because I think on a motion to dismiss, the only document that defines what the parties are arguing about is the allegations in the complaint, and so the fact that you may raise something in an opposition, I don't think can save the fact that a complaint has not been adequately pleaded.

THE COURT:  For your purposes, if they say something outside the complaint about a source that might actually help them satisfy *Iqbal/Twombly*, you would say I should ignore that as a way of reading whether the complaint satisfies *Iqbal/Twombly*?

MR. WILSON:  Correct.

THE COURT:  Last question.  If it does satisfy

*Iqbal/Twombly*, then where do I go with this argument that relying principally on their briefing in the case, the theory is one that raises issues that were never the subject of discovery and not sufficiently noticed up to be subjects of discovery?

MR. WILSON:  Well, Your Honor, we think that there's been no discovery on very important questions that are suggested in FamilyCare's opposition.  For example, in the opposition, Your Honor, they talk about past practices and industry standards but don't identify what those are.

THE COURT:  I guess -- I appreciate that argument. I'm asking sort of a technical question, which is you filed a motion to dismiss, and you want me to dismiss this claim in part because the responsive briefing says something about the claim that you don't think should be allowed to happen.  How does that fit within a motion to dismiss?  I guess it would be almost a motion in limine at trial, wouldn't it, more properly?

MR. WILSON:  I think that's one way to look at it, Your Honor.  We either -- as OHA goes to prepare its case for trial, we need to prepare, for example, witness statements. What are we to talk to our witnesses about in terms of industry standards when we've had no notice what we should expect FamilyCare to present as industry standard for the first time in their witness statements?

THE COURT:  I understand how that might work as a

motion in limine.  What's your theory how that works in a motion to dismiss?  Does it?  I should dismiss this complaint if -- I only get this far if I find it otherwise satisfies *Iqbal/Twombly*.  I should dismiss this claim because where your opponent wants to go with this claim is a place you don't think they to be allowed to go?

MR. WILSON:  I think I understand your question, Your Honor, and I think if Your Honor decides that the claim satisfies *Iqbal/Twombly*, then the only place to go would be to allow us to have the discovery we would need to answer what's going to be presented at trial, which would be that there are industry standards and past practices that we've never been noticed about that we need to be prepared for.

THE COURT:  Trust me, that's not the only place that could go, because it's not where this case is going to go.  The other place it could go is to forbid them from advancing a theory this late in the game that was never advanced in such a way that it would have been the subject of discovery.  I assume that's your other position.

MR. WILSON:  Yes, Your Honor.

THE COURT:  All right.  Thank you.

For FamilyCare, who is going to speak to this?

MR. GORDON:  Matthew Gordon, Your Honor.

THE COURT:  Mr. Gordon, first -- the first question is the formation versus performance question.

MR. GORDON:  Sure.  Even OHA admits in its briefing that rate setting is performance under the contract.  If we go back to 2014, when the contract was initially set, it says that rates will be amended annually.  That process of setting the rates is OHA's act of performing under the contract, and it has to present those rates to FamilyCare -- again, an act of performance.  The fact that the contract --

THE COURT:  You've told me that it's performance so far by telling me it's performance and telling me your opponent says it's performance.  I guess I'm not with you yet.  Maybe you could start with telling me how one distinguishes between performance and formation, by what methodology.

MR. GORDON:  Well, I think you look at the contract and what the contract says that the parties are to do.  The contract here says that OHA is supposed to amend the rates annually and present the rates to FamilyCare.  That's a term of OHA's performance under the contract.

And the *Tolbert* case actually speaks directly to this issue.  It's a part of *Tolbert* that we haven't talked about yet.  But the *Tolbert* case talks about the notion that there might be a term that is changed that could lead to termination.  The *Tolbert* case quotes extensively from the Court of Appeals decision.  The Court of Appeals decision says that the obligation of good faith is not eliminated by the fact that the bank notified the depositor and the depositor could terminate.

The Court of Appeals said it's immaterial that a party could terminate the contract if it is dissatisfied with how the other party exercised discretion.  This is excerpted in the Oregon Supreme Court's opinion.

And then the Oregon Supreme Court opinion, after laying that out, it goes on to say that the Court of Appeals' statement of the law is correct.  Good faith is required in the performance of the contract and exercise of discretion under it, notwithstanding whether or not the party could terminate if they're dissatisfied with how the other party exercised that discretion.

And *Tolbert* went on to say that the good faith obligation does, in fact, apply to changes in the NSF fees that were at issue in that case.  The distinction in *Tolbert* is the Court said the depositor there had no basis to have any expectation about why or how the bank would set those rates. That's the key distinction from *Tolbert* and *Best*, because *Best* also dealt with contractual discretion.  The Court says --

THE COURT:  Before you get to *Best* --

MR. GORDON:  Sure.

THE COURT:  -- I still want to back up and ask you about methodology.  So what you've told me from *Tolbert* is that the ability of a depositor to terminate a contract, unlike what your opponent has argued, doesn't really help us distinguish between contract performance and contract formation, right?

You could have a term that was all about performance that allowed someone still to terminate if they were dissatisfied with the performance in some way, right?

MR. GORDON:  That's right.  And the --

THE COURT:  So that tells me one thing -- that tells me a factor that doesn't help me distinguish between performance and formation.  What does?  What does tell me that I'm in the land of contract performance as opposed to contract formation, if the ability to reject the term and terminate the contract isn't one of those things?

MR. GORDON:  Again, if it's something the contract says a party is supposed to do under the contract -- here, OHA is supposed to amend the rates -- that's, I think, by definition OHA's performance under that contract.

And I will add that even if you don't get to that point --

THE COURT:  I want to make sure I understand.  So if the terms of the contract say here's what the other party is going to do -- here, set rates -- in your view that ends the analysis if your opponent is doing something the contract, when initially formed, says it should do, then that cannot be an amendment to the contract, it has to be performance?

MR. GORDON:  Well, the performance is the rate setting, and that leads then to the amendment.  But the performance happens during the period of contract --

THE COURT:  Leads to what amendment?

MR. GORDON:  I'm sorry?

THE COURT:  Leads to what amendment?

MR. GORDON:  Leads to the amendment for the next year.

THE COURT:  So you're contending that the endgame of rate setting each year is to amend the contract each year with new terms, amended terms?

MR. GORDON:  The contract does get amended each year, but the performance -- so when the contract was initially signed, the first year of performance was 2015 -- 2014, excuse me.  During that 2014 time period, that's when OHA is setting the rates, while the parties are under a contractual agreement with each other.  And so that's, I think, one way to distinguish this is is the party doing something that is set out in the contract while the parties are in a contractual agreement with each other, as opposed to one of the cases that OHA cited, where the Court said three of the four things that were complained of here were things that happened before there was any contract at all before the parties.

THE COURT:  I guess what I'm struggling with is you're telling me that I can know that it's performance not formation, and by formation I mean amendment, because amendment is just a subset of formation, right?

MR. GORDON:  Well, yes, but --

THE COURT:  Just a second.  So you're telling me I can tell the two apart if what a party is doing that's being complained of here is the thing that the contract negotiated for that party to do, but at the same time you're telling me the contract has negotiated for the parties -- well, for your opponent to set rates, but you also appear to be telling me that the contract negotiated for the parties to amend the contract every year.  So I guess knowing what the contract tells the parties to go and do doesn't tell me whether it's performance or amendment, because you're telling me that the contract -- the parties agreed to perform the behavior of amending the contract every year.

MR. GORDON:  They do.  So they say that the rates will be amended annually.  That's what the contract says.  And now remember that this is in the context of a five-year contract, statutorily mandated to be five years long.  Why?  Why was that the case?  The legislative history shows that because of CCOs wanted longer-term stability in their contracts.

THE COURT:  I understand that point, and it's the point that helps you win the day that this is a five-year contract.  But now I'm trying to get at -- we'll get to other things, but I'm trying to get at the method by which you want me to tell whether this is contract amendment or contract performance.  So far the one you've given me is that if the

contract instructs someone to go do this and they go do it, that's performance.

MR. GORDON:  And also they're doing that within the time frame of the contract.

THE COURT:  Sure.  And as I've said, my problem with that argument is this contract tells the parties to go and amend the contract every year, so telling them to go and do something amounts to a factor that points both directions.  It points both to performance and amendment.

MR. GORDON:  Well, I think the key issue here is that when we're talking about what does the duty of good faith and fair dealing apply to, we're talking about the act of rate setting.  That act of rate setting does lead to the presentation of rates to FamilyCare in this case, and then FamilyCare looks at that, and it's presented through an annual rate amendment, but it's the act of rate setting, not the act of amending, not the act of formation that we're contending the duty of good faith and fair dealing applies to.

THE COURT:  I understand that.  So you get that far, if you get to the point where it's performance not amendment that's involved here, then I guess the next question is the *Tolbert* question, the second half of the *Tolbert* question, which is is it such -- is the law in Oregon such that if a party performs in the manner outlined by the express terms of the contract, particularly where that's a discretionary act,

that sort of ipso facto by definition means that it has met the reasonable expectations of the parties.

MR. GORDON:  And the answer is no.  As *Tolbert* says, that's specific to the facts of that case.  And the facts of that case, as I mentioned, one of the key factors was that the Court concluded that the depositor had no basis on which to have any reasonable expectations about how the rates would be set.

THE COURT:  And the reason the Court concluded that the depositors had no reasonable expectation for anything else to happen is that that's what the contract told them.

MR. GORDON:  I don't think that's right, Your Honor. And this is where the distinction is between *Tolbert* and *Best*. In *Best*, the Court said the contract didn't say exactly how the rates would be set in *Best*, but the Court said that depositors could infer that in the absence of that detail, the rates would be set in a manner that was similar to how other rates in the contract would be set, i.e. on a cost-plus basis, not as a way to earn exorbitant profits off the depositors.  So that's what the Court said in *Best*.  When there's an absence of detail about how something will be done, you can infer by looking to other things.

Here FamilyCare has much, much more to go on for reasonable expectations about how the rates will be set than just inferring that they might be set like some other fees.

THE COURT:  I don't want to get to that quite yet. So your argument is essentially what I suggested in my initial remarks, that *Tolbert* can't be read to create no possibility of a claim like this one in a setting where the parties did contract for a discretionary act to be done.  It's possible even in that setting for you to set out a reason why the parties might have objective reasonable expectations for good faith performance beyond what the contract laid out, right?

MR. GORDON:  That's correct, Your Honor.  And two points on that.  First, OHA has not identified any term in the contract that says OHA has absolute discretion to set the rates.  They haven't identified that.  So we don't even have that specific term here.  But even if we did, Your Honor, in a case ten years ago, the *Wells Fargo* case looked at a contract that gave one party the sole and absolute discretion to do something, and Your Honor said even where there is the sole and absolute discretion, that's still limited by the covenant of good faith and fair dealing.  And neither party cited that case, but I do have copies available for the other parties and the Court, if you'd like.

THE COURT:  So I take it that you also, by what you just said, would -- do you agree with the proposition that the covenant -- that the expectation of good faith, the reasonable objective expectation of good faith cannot contradict an express term in the contract?

MR. GORDON:  I do, Your Honor.

THE COURT:  And you contend, of course, that the expectation you're advancing here does not contradict any express term of the contract?

MR. GORDON:  It does not, and OHA has not identified any such term in the contract.

THE COURT:  So we're past the point where in the abstract a party can make such a claim as this, and then I guess we're at the *Iqbal/Twombly* stage.  Have you adequately pled in Claim 3 such a claim?

MR. GORDON:  Before I get to that, I did want to make one more point on the first question, if you don't mind, and that is that even when we're talking about contract modification, Oregon courts have held that the duty of good faith and fair dealing does apply to contract modification, the *Associated Oregon Veterans* case and the *National Mortgage Services* case.  They said that any authority to modify a provision unilaterally must nonetheless be exercised in good faith and fair dealing.  So even if we're dealing with contract modification, contract amendment, rather than --

THE COURT:  Those are two different ideas.  Contract modification would be raising the NSF fee, modifying it from what it was to something else.  But contract amendment is contract formation.  And I'm just going to lay a marker out here for you to go by, and that is if we're in the land of

contract formation, I'm not going to give you your claim.

MR. GORDON:  Understood, Your Honor.

THE COURT:  So let's move on to *Iqbal/Twombly*. You've made the claim adequately, you think?

MR. GORDON:  We have, Your Honor.  We've identified that we -- what the contract is, we've laid out the history between the parties, we've said that it contains an implied covenant of good faith and fair dealing, and then in paragraph 107, the paragraph where there was the discussion between yourself and counsel a moment ago, we said FamilyCare -- and this is important.  We said "among other things."  So in that sentence that counsel seizes on, the introduction says, "Among other things, FamilyCare had objectively reasonable expectations, based on contract and applicable law, that OHA would present annual rate amendments that were timely, reasonable," et cetera.  And as Your Honor noted, "applicable law" is a broad term here, and applicable law sweeps in not just relevant statutes, regulations, but also relevant case law.  And it's the case law here that talks about the types of things that can inform a party's reasonable contractual expectations.

THE COURT:  Well, I guess the *Iqbal/Twombly* question isn't that.  It's whether those words adequately inform your opponent of the nature of your claim.  So "among other things" is a negative, not a positive for satisfying *Iqbal/Twombly*,

because that's a catchall phrase that is a clear indicator that the complaint is alleging things no one can defend against.

And then I'm troubled also by the phrase "applicable law," because where does your opponent go upon reading paragraph 107 to know what it is you're alleging are the foundations for this reasonable expectation, and then to ask people that it deposes questions about it?  "Applicable law," you contend, means really all positive and normative law in the world on this subject.

MR. GORDON:  Not necessarily in the world, but certainly positive and normative law in Oregon.

THE COURT:  Well, you could go to the Restatement, for example, couldn't you?

MR. GORDON:  You could go to the Restatement.  That's something the *Best* court relied on.

THE COURT:  So you could range fairly far afield from the contract into regulations, cases, treatises to get this applicable law on your theory.  So how does that tell your opponent what you're up to?

MR. GORDON:  So a couple things, Your Honor.  First, even if you want to read -- even if you don't want to look at "among other things" and you want to read "applicable law" narrowly --

THE COURT:  Well, I'm happy to look at it.  It just hurts your case, not helps it.

MR. GORDON: If what is affirmatively stated in that sentence other than those things is sufficient under *Iqbal/Twombly*. But remember our opponent here is a single state agency that administers Medicaid. So when counsel talks about not being able to take discovery about things like industry standards and past practices, OHA knows those things. OHA to some extent has a big effect on what industry standards are.

THE COURT: The argument isn't that they didn't know the industry standards. The argument is they didn't know you were going to rely on industry standards. They can't read this and know that one of your foundations for your objectively reasonable expectation was going to be industry standards. So you're not facing the argument we don't know what industry standards are. You're facing the argument that we had no idea that plaintiff was going to rely on industry standards to make this claim. How would they read 107 and know you were going to rely on industry standards such that they could then ask people about industry standards in depositions?

MR. GORDON: Well, there are a couple things, Your Honor. One is you have to read 107 in the context of this whole complaint, which describes the history between the parties, including the history before this most current contract was formed. So those are past practices that we're talking of.

The second thing, certainly if I'm taking a deposition and I want to know what the bases of a party's claim are, I ask them and I say, "Where it says 'among other things,' what other things?  What applicable law?"  Those things are, I think, relatively commonplace in pleading and relatively commonplace to be asked about at deposition when people -- when those words are in a complaint or in a pleading, to specifically ask the party what is it specifically that you're alleging here?  What other things?  What applicable law do you contend applies here?

So I don't think --

THE COURT:  I appreciate that that's correct.  Here it's just that we're a little bit backwards at a motion to dismiss here, but probably what you'd normally do if you faced a complaint where you weren't sure what the parties' foundations for the theories were are a number of things.  The first thing you might do with what you thought was a vague claim is move to dismiss it, and then when you won that and it was repled, then you might ask for clarification, and then you might take depositions.

But here I'm treating this as a motion to dismiss, so I have to ask does it satisfy *Iqbal/Twombly*, not -- we'll get to depositions in a minute, but not could they recover from its vagueness by asking the right questions.

But your contention fundamentally is that it's clear

enough to satisfy pleading standards?

MR. GORDON:  It is clear enough to satisfy pleading standards.

THE COURT:  So what about the procedural question, then, which is a little bit tricky at the motion to dismiss stage?  And that is that you're now relying on theories, particularly at page 23 of your response briefing, you're relying on theories that have never been advanced before, and you should be prohibited from doing so this late in the game.

MR. GORDON:  OHA doesn't cite any authority that a party in pleading has to identify every single potential basis on which their reasonable expectations rely.  And OHA has taken more than ten -- I can't remember how many depositions, issued hundreds of RFPs and interrogatories.  They've had ample opportunity to explore these things.

THE COURT:  And that's your idea that if they haven't asked what your bases for your reasonable expectations were up to now, and they wish they could now that they see what they are, that's on them?

MR. GORDON:  I think it is on them, Your Honor.  And that's -- this is notice pleading.  We put them on notice that we have a claim for breach of the implied covenant of good faith and fair dealing, that our objectively reasonable expectations were that they would present us with rates that were timely, unbiased, et cetera, and OHA has had ample

opportunity to explore the bases of those claims.

And I haven't reviewed all the deposition transcripts, but I would imagine that they asked representatives of FamilyCare about the bases for these claims. And if they didn't, that's out of my control. But there's certainly enough here.

And, again, this complaint has overwhelming amounts of detail about what happened here and about the parties' history. And that parties' history is something that informs our -- FamilyCare's reasonable expectations about what the contract was for and what the purpose of the contract was for.

And I think at the end of the day, that is ultimately the question here. As the Court said in *Best*, as Your Honor recognized in the *Wells Fargo* case, if a party exercises its discretion for purposes that are not contemplated by the parties in the contract, not part of the reasonable expectations, that's bad faith. And that's what OHA did here. And their contention --

THE COURT: How do you square that with the Oregon cases saying essentially, to put a little bit too simplistic a holding on it, motive doesn't matter?

MR. GORDON: Sure. Initially, the case that counsel referenced, the *Boge* case -- and there are other cases that OHA cites -- are cases that deal with a different obligation of good faith and fair dealing. So in *Boge*, the obligation of

good faith and fair dealing that was at issue was the statutory one under the UCC. And in the *Eddy* case, it was the statutory duty under the Residential Landlord-Tenant Act. Both of those are much more circumscribed than the common law duty of good faith. They require only subjective honesty. So those cases are not relevant here.

There are cases that deal with the common law duty of good faith, and those say that if a party is granted unlimited discretion to exercise a contractual right, then their motive in doing that doesn't matter.

But that's not what we're dealing with here. OHA is not exercising the contractual right in setting rates, they're performing something that the contract says that they are supposed to do. And there is nothing that OHA has identified in the contract that says that they have unlimited discretion, absolute discretion, sole discretion. And that's why this case is really a quintessential -- the quintessential case where the applied duty of good faith and fair dealing applies. There is not much detail --

THE COURT: I think I understand your argument. Thank you very much.

All right. I want to move on to other points. Just because, as I said, this is probably the most complex issue for each of you, I'll give you a minute just to hit something you think I might have missed, starting with you, Mr. Wilson.

MR. WILSON:  Thank you, Your Honor.

The one point I would like to make, Your Honor, is with respect to the so-called extra-contractual obligations that may be present, I think that the *Uptown Heights* case contains an excellent discussion of the differences between the *Best* and the *Tolbert* case.  It is quite clear that when there is an express and unambiguous term of the contract that provides for how discretion will be exercised, that it is only the unambiguous and express terms that the Court looks to.  And *Uptown Heights*, Your Honor, was decided on a motion to dismiss, like the procedural posture here.

The other quick point I'd make, Your Honor, is simply that the *Boge* case is not limited to a UCC good faith duty when it comes to talking about motives.  In fact, that case even contains a citation noting that "In the common law context, if an enforceable contract expressly creates rights or privileges, motive for exercising them is immaterial."

THE COURT:  Thank you.

Same opportunity, Mr. Gordon.

MR. GORDON:  Sure.  And just in response to that, Your Honor, the *Uptown Heights* case deals with a construction loan, and there the agreement specifically authorized foreclosure for any default.  And so the Court said it's consistent with the contractually described purpose of the bank's power, i.e. to foreclose, to remedy a default.  And the

Court said the parties agreed to and so therefore reasonably expected a unilateral unrestricted exercise of discretion.

OHA cites these cases and talks about unrestricted exercise of discretion.  That's not what we're dealing with here, and there's no term --

THE COURT:  You made an argument on that.  I don't need you to make it again.

I did leave one thing off, and that is I'll hear from you each briefly, although I've read your briefs on this matter, as to whether determining -- not the violation or not, but the scope of the reasonable expectations of the parties is a matter for the Court to decide or not.

You've briefed this rather thoroughly.  Is there anything you wish to add to that, Mr. Wilson?

MR. WILSON:  I don't think so, Your Honor.  I think the *Tolbert* case is a statement that as a matter of law, it can be determined where there are express terms sufficiently states our case.

THE COURT:  And although I can't find the scope of this duty in reading the contract, is it a matter for the Court to decide based on anything else the parties put in front of me to determine the scope of such duty, in your view?

MR. WILSON:  I'm not sure I quite understand the Court's question.

THE COURT:  Well, what I'm asking is assuming we get

as far as that I have to decide whether -- what the parameters of the good faith expectations are, what are the parties' reasonable good faith expectations, you've suggested as an alternative argument that far down the decision chain, if we get that far, it's on the Court to determine, much like it would be for express contractual terms, to determine what the contract is, or in this case what the implied terms of the contract are.  And you want me to do that even though I can't read the contract to find those terms, I've got to go elsewhere.

MR. WILSON:  Well, I think you can read the contract, Your Honor, and it is in record in totality.  The only way that I think Your Honor would have to submit a question to the jury would be if the Court goes farther -- far enough down the decision tree that it has decided that in fact it can look to extra-contractual obligations, and then it needs to determine what those extra-contractual obligations are, and if there is a disagreement between the parties about what those are, then that would be a jury question.  But I don't think --

THE COURT:  What they are or whether they were violated?

MR. WILSON:  I think there are two separate questions.  If there is a disagreement about what they are, that could be a jury question, and it could be a jury question whether they were violated.

THE COURT:  When you say it's a matter for the Court to decide, that's if the methodology I apply to deciding it is to read the terms of the contract to see what the parties' reasonable expectations are.  If I were to go a step further and say, I'm going to look beyond the terms of the contract to decide what the parties' reasonable expectations are, you think that question, if there's disagreement, should be submitted to a jury?

MR. WILSON:  That's correct, Your Honor.

THE COURT:  And I assume there is disagreement, right?

MR. WILSON:  Well, actually, Your Honor, I don't think there is disagreement, because we don't know, we have not been given adequate pleading to understand what the extra-contractual obligations are, what industry standards, what past practices.  Maybe we'd agree with them but we don't know what they are.

THE COURT:  I assume you disagree with the last point, but I'll start with the beginning.  So I assume that you would agree that if the only thing I had to do -- if the only thing I had to do to determine the parties' reasonable expectations for good faith was to look at the express terms of the contract, that's something I could decide without the help of a jury, right?

MR. GORDON:  If that were, Your Honor.

THE COURT:  That was precisely my hypothetical.

MR. GORDON:  Correct.

THE COURT:  So if I have to move beyond that, then your opponent has agreed with what you've briefed, which is, at least for the first stage of that analysis, that's a jury question.  And you agree with that, right?

MR. GORDON:  I agree that if the parties disagree about the scope of the contractual expectations and whether or not those were violated, that that ultimately, if there's a genuine issue of material fact, of course, if we were at summary judgment, then that would go to the jury, as Your Honor recognized in the *Wells Fargo* case.

But at this stage, at the motion to dismiss stage, to accept -- I don't think you can determine the exact parameters of the contractual expectations because you don't have --

THE COURT:  I don't intend to do that at the motion to dismiss stage, that's right, but when do we get to that point?  By what mechanism, in your view?

MR. GORDON:  At this point, typically you would get there via summary judgment or you would get there at trial, and you might have motions at trial.  But at this stage to accept OHA's argument, you would have to conclude that OHA -- that it was unreasonable for FamilyCare to expect that OHA would not use its discretion under the contract to set rates that were biased, that were unreasonable, in bad faith, with the

purpose of --

THE COURT:  I understand that.  That's perfectly clear.  I don't disagree with that at all that that's what I'd have to accept, but I guess more fundamental for me is that since the question I asked was is this a jury question or a court question, the parties agree that if I look to extra-contractual sources to determine the rights, the reasonable expectations of the parties here, and if there's disagreement between the parties on that, it goes to the jury.

And I think you may well agree, Mr. Wilson, that it's implicit in what you've said already that that's not something we know today.

And I think you, Mr. Gordon, agree with that, that today sitting here, we don't know whether there's disagreement, and you haven't laid out in any pleading specifically the parameters of this expectation in such a way that we could answer that question today about disagreement, right?

MR. GORDON:  I don't think that's quite right, Your Honor.  We have said that we have expectations that OHA would not set rates that were biased, that they would deliberate and they were timely.  OHA --

THE COURT:  Well, I can look to paragraph 107 to learn the parameters of the reasonable expectations of good faith that you contend are in the case?

MR. GORDON:  So there we identify a number of

expectations we have --

THE COURT: I'm not looking to where you identify them in part. I'm looking at where you nail them down so people know what they are. So where do they get nailed down so someone knows what they're facing at trial in terms of your theory for what the scope of this expectation is?

MR. GORDON: Well, if we're talking about what the expectations are, they are in paragraph 107, they're in paragraph 108. They're also informed by what we talk about earlier in the pleading -- in the complaint, which is that OHA -- FamilyCare's position all along is that OHA used rate setting in bad faith to try to put FamilyCare out of business. That's really in essence.

THE COURT: Thank you very much.

All right. Let's not keep Mr. Harnden sitting all day. I'll turn to Ms. Saxton. Are you going to talk at all today or are you turning it all over to him?

MR. HARNDEN: I have to say something in order to be on the record.

THE COURT: Let the record reflect Mr. Harnden has spoken at least once in this case.

The biggest concern for Ms. -- for Ms. Saxton's motion here is, as your opponent has alleged, that it violates the procedural and timing limitations in this case by raising arguments against the complaint that's not fundamentally new.

And if it's not new, then I agree that it's -- that your motion is too late and should be denied on procedural grounds.

My own tentative views, having looked at the two complaints, is that I don't see much that's new here other than the damage foundation and the damage amount.  So let's set damages off to one side for a moment and just deal with the rest.  What's your best argument why this is so new that you should be allowed to make a motion that would otherwise be three years too late?

MR. MORGAN:  Sure, Your Honor.  So it would actually be our position that the motion in and of itself is procedurally proper before the Court, and we cited some cases to this effect, but in our view the filing of a fifth amended complaint effectively nullifies the fourth amended complaint, and in that case we essentially have two issues -- or two options under the Federal Rules of Civil Procedure:  We can either file an answer, or if we believe there's adequate grounds for it, we can file a motion under Rule 12, which is what we essentially did here.

THE COURT:  I sort of thought that was your position, and the idea is that you don't think the complaint has to raise new issues, it just has to be a new complaint, and that triggers your opportunity to file against it?

MR. MORGAN:  Procedurally speaking, yes, Your Honor.

THE COURT:  All right.  Thank you.

That's fairly simple and not a silly position at all, and it may be required of you to do what you did, but I find that the filing of the new complaint didn't obviate my earlier rulings in the case -- they control -- and so on everything except as to damages, I deny the motion because it's too late.

Let's talk about damages.  So certainly the amount is more than double, I think $71 million added.  What about the theory?  I guess the argument, as I understand it, is that while enterprise liability has been seen in the case before, you -- and, for that matter, OHA -- didn't have any real obligation to move against it before because the claim to which it was attached had been dismissed.  So, in that sense, it was out of the case.

Now that theory, which you have seen before, is attached to this claim.  It's newly attached to this claim.  And so this represents your first motivation, if not opportunity to move against it because here it is on a new claim.  Is that your argument?

MR. MORGAN:  Correct, Your Honor.  So we think in this specific complaint, the amount that is raised is $75 million, and for the first time now it's clear that what's being sought here by FamilyCare are consequential damages.  I know we briefed this a little bit, but it's pretty clear, at least in our view, that these are consequential damages not direct damages that are being sought here, not direct damages

in the sense that, you know, the two of us agreed on to sell a car for $10,000, and I didn't get what I paid for, so my damages are $10,000. What we're talking about here are everything that comes after, which is where it pushes us into this realm of consequential damages. And I think the fundamental question at the end of the day for purposes of a motion to dismiss and under *Iqbal/Twombly* is are there plausible -- not just possible but plausible factual allegations supporting a conclusion that Lynne Saxton, based upon the facts as alleged in this complaint, is liable to FamilyCare in an amount of $125 million.

THE COURT: Before I get to that question, I want to get past the question that your motion is procedurally too late. And so I guess I need to hear how the problem of consequential damages raised in the fifth amended complaint isn't a problem you would have moved against earlier.

MR. MORGAN: Well, I think that the consequential damages issue implicates a couple of different things, one of which we raised, the same issue that OHA has raised, in that we think there's a problem with the limitation of liability provision, which we believe frankly that Lynne Saxton is a party to, in addition to OHA. In fact, we actually believe that's why Lynne Saxton is named individually in this case.

And so the amount of damages we think actually changes the calculus for purposes of *Iqbal/Twombly*, because our

position would be that for purposes of that analysis, there has to be plausible factual allegations to support causation, and then --

THE COURT:  Well, I guess I'm not stating my question very clearly.  I'm not interested in *Iqbal/Twombly* right now. Your argument is the complaint is deficient under *Iqbal/Twombly*.

MR. MORGAN:  Correct.

THE COURT:  You don't get to make that argument at all, you don't get out of the gate until you explain to me why this motion isn't untimely -- so untimely means I don't even read your motion -- before you tell me how it's timely.  The only way it's timely is if the thing you're moving against is not something you could have moved against earlier.

So what's your response to that?

MR. MORGAN:  I suppose my only response to that would be, Your Honor, that we believe in this iteration of the complaint that the damages sought changed the entire analysis to the extent to where the Court could, within its discretion, revisit whether or not the underlying allegations -- and I suppose I could --

THE COURT:  Just so I'm clear, you're contending that when you see this new amount, that is what tells you for the first time that what you're really dealing with are consequential damages not something else?

MR. MORGAN:  I would agree with that, Your Honor.

THE COURT:  All right.  Thank you.

While we're on the subject, I'll hear from OHA on this very same issue, which I think the parties share.

So for OHA, you also contend -- I'm sorry, OHA is there.  I'm sorry.  I just saw you standing up and it made me think you were right person to look to right away.

You make the same basic argument, right, as to timing, that this is new to you now, not just in amount but in theory, right?

MR. WILSON:  We do, Your Honor.

THE COURT:  Explain a little bit more.

MR. WILSON:  Sure.  And I don't want to compare what I'm stating as compared to what Ms. Saxton's argument is, because I don't -- we're not advocating for her.

Our position is that paragraph 109, which states the basis for how FamilyCare gets from the violation, the supposed violation of good faith and fair dealing, which is set out in paragraphs 107 and 108, to the damages, which are set out in paragraph 110, that causal information in paragraph 109 is new. That paragraph as it is pleaded in the fifth amended complaint, that explanation is not present in the fourth amended complaint.

THE COURT:  Thank you very much.

Mr. Johnson, are you going to respond to these

arguments?

MS. STOLLER:  Your Honor, I'm actually responding to the motion for partial summary judgment, which I believe overlaps with Ms. Saxton's motion.

THE COURT:  That's fine.  I'm just now figuring out that Mr. Johnson stood up for actually no good reason.

MR. GORDON:  It was a diversionary tactic.

MR. JOHNSON:  I just want to keep you guessing.

THE COURT:  Thank you, sir.  Thank you.  You caught my attention.

Ms. Stoller, go ahead.

MS. STOLLER:  Do you want me to focus on the argument of whether they couldn't have brought this earlier and whether they were on fair notice?

THE COURT:  Yes.

MS. STOLLER:  So the first thing I would say is OHA brought a motion for summary judgment on all categories of damages, including enterprise damages, already back in July 2018, so they certainly were on notice of enterprise damages.  We have pled the same damages -- the same language in that paragraph 109 was earlier in the complaint and incorporated into the complaint.

THE COURT:  Does it matter that the theory of damages was not attached to a good faith claim and is now attached to a claim it wasn't previously attached to?

MS. STOLLER:  I think they were still on notice.  It was the same amount of damages, and the allegations were all incorporated, which under Oregon district court law is appropriate to do.  So at the time the good faith claim had been dismissed, but they didn't really bring a motion based on claims.  They brought a motion based on enterprise damages. They had already -- they'd already done a 30(b)(6), so they had asked our corporate representative what type of damages they were seeking.  Enterprise damages was one of those, and they moved against those type of damages.  They knew then that they were there.

THE COURT:  Moved and won?

MS. STOLLER:  Excuse me?

THE COURT:  Moved and won, right?

MS. STOLLER:  No, I believe they lost.

THE COURT:  Well, I don't have the fourth amended complaint in front of me.  Can you walk me through where I would find in the fourth amended complaint the theory of liability found in paragraph 109?

MS. STOLLER:  Yes.  I believe it may have even been the same paragraph, but it was much earlier.  I think it was in the third claim for relief.

THE COURT:  What was the third claim for relief in the complaint?

MS. STOLLER:  I believe it was the breach of

settlement agreement.

THE COURT: All right.

MS. STOLLER: So that was also paragraph 109, but that was back when we had the 11 claims. So it was in an earlier one.

There was also --

THE COURT: You're contending that that paragraph 109 is verbally similar to this Fifth Amendment complaint's paragraph 109?

MS. STOLLER: Yes, and it was incorporated into the claim for good faith and fair dealing, incorporating previous allegations. And I believe there was another allegation that talks about putting FamilyCare out of business as well.

THE COURT: Thank you very much.

That's your timing argument, that it's something they could have and, in fact, did move against earlier, so they shouldn't be allowed to make this motion at all today, right?

MS. STOLLER: Yes.

THE COURT: Thank you.

MR. JOHNSON: Your Honor, may I?

THE COURT: Yes.

MR. JOHNSON: The reason I was going to say something, with respect to Ms. Saxton, though, in paragraph 82 of the complaint, in the former complaint and in the current complaint --

THE COURT:  Same paragraph each time?

MR. JOHNSON:  I have a redlined.  Yes -- no, it was paragraph 85 in the former complaint.

THE COURT:  Eighty-two in this one?

MR. JOHNSON:  Yes.  And that's within the first claim, which was the First Amendment retaliation claim, we said in the prior complaint that the policy and plan in terms of the rate setting and smear campaign was to drive FamilyCare out of business.  That enterprise theory was in the former complaint against Ms. Saxton.

THE COURT:  Thank you very much.

Your response?

MR. WILSON:  Thank you, Your Honor.

The allegations in paragraph 109 were not, as far as I can recall, verbatim in any claim, but I think it's a very important thing to note that taking allegations, explaining causation and link to damages from one claim that alleges breach of express contract on a different contract and putting it into another claim with a separate contract and then tripling -- almost tripling the amount of damages reasonably leads OHA to conclude that there is a new damages theory being alleged in the good faith claim.  We did not move against this theory in the motion for summary judgment.  We did not bring a motion for summary judgment --

THE COURT:  You did not move against which theory?

The enterprise liability theory?

MR. WILSON:  We did not move against -- we did not move for summary judgment on the limitation of liability affirmative defense, and this claim, the breach of good faith was not in the case at the time we brought the motion for summary judgment.  It had been dismissed.  This Court has never had the opportunity to decide whether or not the affirmative defense of limitation of liability applies to the good faith claim, and it has never before seen a good faith claim that contains allegations like those in 109 and damages of $125 million.

THE COURT:  What's the theory -- assume just for the moment -- it's only a hypothetical, you don't have to panic. Assume just for the moment that I find that there's sound reasons not to allow you to move this late in the game against this particular theory of damages, that you had that opportunity before or even took it, it would still be the case that it's a very significant increase in the amount.  Based on what would I say that this is too late in the day to allow plaintiff to raise the amount that substantially?

MR. WILSON:  Well, Your Honor, we haven't alleged that -- we're not arguing that it would be just procedurally or timingly -- on the reasons of timing it would be not allowed for FamilyCare to raise the amount of damages.

THE COURT:  Plaintiff is typically allowed to do that

during the pendency of the case, correct?

MR. WILSON:  We haven't taken a position one way or the other, Your Honor.

THE COURT:  All right.  Thank you.

Those are all the questions I have.  I'm not prepared to just simply answer from the bench today.  I'll issue a written opinion.  But I want to make sure once again, now that we've covered new material, that there's not something you left on the table that you thought when you were preparing last night that this was just going to be a dynamite point that you didn't want me to miss.  I know Mr. Harnden has had his say today, but I want to make sure the rest of you had that opportunity.

Mr. Wilson?

MR. WILSON:  OHA believes it has exploded all of its dynamite.

THE COURT:  Thank you.

For plaintiff, any of you?

MS. STOLLER:  I have lots of excellent arguments on the damages issue, but it sounds like --

THE COURT:  You can send them to me in a card and I'll put them in with the other cards I get to the same effect.

For Ms. Saxton?

MR. MORGAN:  Nothing further, Your Honor.

THE COURT:  Thank you all for your very helpful

arguments today.  I'll get something out as soon as we can.

We'll be in recess.

THE COURTROOM DEPUTY:  This court is adjourned.

(Proceedings concluded at 3:02 p.m.)

--o0o--

I certify, by signing below, that the foregoing is a correct transcript of the record of proceedings in the above-entitled cause.  A transcript without an original signature or conformed signature is not certified.


/s/Bonita J. Shumway                    September 11, 2021
_____               _____
BONITA J. SHUMWAY, CSR, RMR, CRR        DATE
Official Court Reporter

**MR. GORDON: [41]** 3/12 24/22 24/25 25/12 26/19 27/3 27/10 27/22 28/1 28/3 28/8 28/24 29/12 30/2 30/9 31/2 31/11 32/8 32/25 33/4 33/10 34/1 34/4 35/9 35/13 35/19 35/25 36/19 38/1 38/9 38/19 39/21 41/19 44/24 45/1 45/6 45/18 46/17 46/24 47/6 53/6
**MR. HARNDEN: [2]** 3/17 47/17
**MR. JINDAL: [1]** 3/10
**MR. JOHNSON: [6]** 3/15 53/7 55/19 55/21 56/1 56/4
**MR. MORGAN: [9]** 3/16 48/9 48/23 49/18 50/16 51/7 51/15 51/25 58/23
**MR. WILSON: [37]** 3/7 14/1 14/15 15/1 15/24 16/2 17/23 18/19 19/2 19/15 19/21 20/3 20/7 20/9 20/24 21/14 22/8 22/12 22/23 23/5 23/17 24/6 24/19 40/25 42/14 42/22 43/10 43/21 44/8 44/11 52/10 52/12 56/12 57/1 57/20 58/1 58/14
**MS. STOLLER: [13]** 3/14 53/1 53/11 53/15 53/25 54/12 54/14 54/19 54/24 55/2 55/9 55/17 58/18
**THE COURT: [102]**
**THE COURTROOM DEPUTY: [2]** 3/2 59/2

**$**

**$10,000 [2]** 50/2 50/3
**$125 [2]** 50/11 57/11
**$125 million [2]** 50/11 57/11
**$71 [1]** 49/7
**$71 million [1]** 49/7
**$75 [1]** 49/21
**$75 million [1]** 49/21

**'**

**'among [1]** 37/3

**-**

**--o0o [1]** 60/2

**/**

**/s/Bonita [1]** 60/9

**1**

**1000 [1]** 2/20
**107 [9]** 20/6 20/10 34/9 35/5

36/17 36/21 46/22 47/8 52/19
**108 [2]** 47/9 52/19
**109 [9]** 52/16 52/20 53/21 54/19 55/3 55/7 55/9 56/14 57/10
**10th [1]** 2/4
**11 [2]** 55/4 60/9
**110 [1]** 52/20
**1120 [1]** 2/4
**12 [1]** 48/18
**1201 [1]** 2/8
**1455 [1]** 2/12
**1900 [1]** 2/12
**1:34 [1]** 3/2

**2**

**2014 [3]** 25/3 28/11 28/12
**2015 [1]** 28/11
**2017 [3]** 14/6 14/9 15/12
**2018 [4]** 14/6 14/9 15/12 53/19
**2021 [3]** 1/6 3/2 60/9
**23 [2]** 12/1 38/7
**2300 [1]** 2/16

**3**

**30 [1]** 54/7
**301 [1]** 2/20
**32 [1]** 11/25
**326-8188 [1]** 2/21
**3:02 [1]** 59/4

**4**

**4800 [1]** 2/8

**5**

**503 [1]** 2/21

**6**

**601 [1]** 2/16
**6:18-cv-00296-MO [1]** 1/4
**6:18-cv-296-MO [1]** 3/5

**8**

**8188 [1]** 2/21
**82 [1]** 55/23
**85 [1]** 56/3

**9**

**97201 [1]** 2/12
**97204 [2]** 2/16 2/20
**97209 [1]** 2/5
**98101 [1]** 2/8

**A**

**ability [2]** 26/23 27/9
**able [2]** 10/1 36/5

**abomination [1]** 17/25
**about [57]** 4/13 9/4 9/11 9/16 11/11 11/20 11/23 12/14 12/15 14/18 14/20 15/16 16/20 18/12 21/17 22/5 22/12 22/15 22/20 23/9 23/14 23/21 24/13 25/19 25/20 26/16 26/22 27/1 30/11 30/12 31/7 31/21 31/24 33/13 34/19 35/7 36/5 36/5 36/19 37/6 38/4 39/4 39/8 39/8 39/10 41/14 42/3 43/18 43/23 45/8 46/17 47/7 47/9 49/6 49/7 50/3 55/13
**above [1]** 60/6
**above-entitled [1]** 60/6
**absence [2]** 31/16 31/20
**absolute [4]** 32/11 32/15 32/17 40/16
**absorb [1]** 13/21
**abstract [5]** 8/7 9/6 10/13 10/17 33/8
**accept [6]** 14/8 15/14 16/5 45/14 45/21 46/4
**acceptable [1]** 11/20
**acceptance [1]** 15/24
**accepted [3]** 6/21 15/9 15/14
**according [1]** 18/9
**accurately [1]** 8/19
**act [14]** 6/24 8/10 15/1 18/15 25/5 25/6 30/12 30/13 30/16 30/16 30/17 30/25 32/5 40/3
**acted [1]** 8/20
**acts [2]** 18/4 18/9
**actual [2]** 14/22 19/18
**actually [11]** 12/14 13/3 17/7 22/20 25/18 44/12 48/10 50/22 50/24 53/2 53/6
**add [2]** 27/15 42/14
**added [1]** 49/7
**adding [1]** 9/11
**addition [1]** 50/22
**addressing [3]** 14/3 15/4 15/5
**adduce [1]** 13/3
**adequate [3]** 20/5 44/14 48/17
**adequately [8]** 10/25 11/10 19/13 19/17 22/18 33/9 34/4 34/23
**adjourned [1]** 59/3
**administers [1]** 36/4
**admits [1]** 25/1
**advance [2]** 12/9 13/4
**advanced [3]** 22/4 24/17 38/8
**advancing [3]** 3/24 24/16 33/3
**advocating [1]** 52/15
**affirmative [2]** 57/4 57/7

**affirmatively [1]**  36/1
**afield [1]**  35/16
**African [1]**  17/18
**after [4]**  15/9 17/2 26/5 50/4
**afternoon [2]**  3/8 3/13
**again [7]**  4/13 19/10 25/6 27/11 39/7 42/7 58/7
**against [15]**  35/2 47/25 48/23 49/11 49/17 50/16 51/13 51/14 54/10 55/16 56/10 56/22 56/25 57/2 57/15
**agency [2]**  1/7 36/4
**ago [4]**  4/15 7/10 32/14 34/10
**agree [13]**  5/19 6/3 15/2 32/22 44/16 44/20 45/6 45/7 46/6 46/10 46/13 48/1 52/1
**agreed [8]**  7/15 14/21 17/6 17/10 29/11 42/1 45/4 50/1
**agreed-upon [1]**  17/6
**agreement [6]**  5/16 15/24 28/13 28/17 41/22 55/1
**agrees [1]**  16/14
**ahead [3]**  16/1 20/9 53/11
**al [1]**  3/6
**all [35]**  3/19 3/21 3/21 4/11 6/11 9/18 10/5 16/1 17/12 18/17 19/9 24/21 27/1 28/20 35/8 39/2 40/22 46/3 47/11 47/15 47/15 47/16 47/17 48/25 49/1 51/10 52/2 53/17 54/2 55/2 55/17 58/4 58/5 58/15 58/25
**allegation [2]**  20/18 55/12
**allegations [11]**  19/18 19/23 22/16 50/9 51/2 51/20 54/2 55/12 56/14 56/16 57/10
**alleged [4]**  47/23 50/10 56/22 57/21
**alleges [1]**  56/17
**alleging [4]**  12/2 35/2 35/5 37/9
**allocated [1]**  17/6
**allow [6]**  12/11 13/16 13/20 24/10 57/15 57/19
**allowed [11]**  8/11 10/17 11/23 12/7 23/15 24/6 27/2 48/8 55/17 57/23 57/25
**allows [2]**  6/25 9/19
**almost [7]**  8/14 9/18 9/24 20/22 20/23 23/17 56/20
**along [2]**  6/11 47/11
**already [5]**  13/1 46/11 53/18 54/7 54/7

**also [13]**  3/11 5/13 12/20 26/18 29/6 30/3 32/21 34/18 35/3 47/9 52/5 55/3 55/6
**alternative [2]**  4/24 43/4
**although [2]**  42/9 42/19
**am [1]**  4/14
**amend [5]**  25/15 27/13 28/7 29/7 30/7
**amended [12]**  4/9 25/4 28/8 28/9 29/14 48/13 48/14 50/15 52/21 52/22 54/16 54/18
**amending [3]**  6/13 29/12 30/17
**amendment [18]**  7/16 20/16 27/22 27/24 28/1 28/3 28/4 28/23 28/23 29/10 29/24 30/9 30/16 30/20 33/20 33/23 55/8 56/6
**amendments [15]**  6/12 6/12 6/23 7/1 7/3 7/7 7/21 8/1 8/2 14/4 14/6 14/7 15/17 16/6 34/15
**American [1]**  17/18
**among [6]**  13/22 21/8 34/11 34/12 34/24 35/22
**amount [17]**  4/23 7/8 7/15 7/16 8/13 48/5 49/6 49/20 50/11 50/24 51/23 52/9 54/2 56/20 57/18 57/20 57/24
**amounts [3]**  8/10 30/8 39/7
**ample [2]**  38/14 38/25
**analysis [7]**  4/6 17/23 18/17 27/20 45/5 51/1 51/18
**analyzing [1]**  5/7
**Anit [2]**  2/11 3/11
**annual [6]**  6/12 6/22 7/3 7/7 30/15 34/15
**annually [3]**  25/4 25/16 29/14
**another [4]**  8/3 17/7 55/12 56/19
**answer [12]**  7/9 7/20 11/14 12/21 13/18 13/19 19/16 24/10 31/3 46/17 48/17 58/6
**answered [3]**  4/16 5/14 7/13
**answering [3]**  4/6 13/25 15/20
**answers [3]**  7/11 13/24 13/24
**any [22]**  5/15 9/11 11/6 13/14 15/15 16/20 19/25 21/18 22/13 26/15 28/20 31/7 32/10 33/3 33/6 33/17 38/10 41/23 46/15 49/10 56/15 58/18
**anything [5]**  11/5 20/19 31/10 42/14 42/21
**apart [1]**  29/2
**apologize [1]**  19/22
**appeal [4]**  3/23 4/1 4/17 6/5

**appealed [1]**  6/3
**Appeals [3]**  25/22 25/23 26/1
**Appeals' [1]**  26/6
**appear [2]**  19/25 29/6
**APPEARANCES [1]**  2/2
**appears [1]**  12/22
**applicable [19]**  19/20 19/21 19/22 20/14 20/20 20/22 21/2 21/7 21/20 21/21 34/14 34/16 34/17 35/3 35/7 35/18 35/22 37/4 37/9
**applied [2]**  5/25 40/18
**applies [4]**  30/18 37/10 40/18 57/8
**apply [12]**  4/24 5/4 5/8 5/21 5/21 5/22 15/18 16/8 26/13 30/12 33/15 44/2
**appreciate [2]**  23/11 37/12
**appropriate [2]**  13/24 54/4
**are [84]**
**argued [1]**  26/24
**argues [1]**  12/20
**arguing [3]**  6/11 22/15 57/22
**argument [27]**  1/14 3/5 8/13 9/2 11/16 18/13 23/1 23/11 30/6 32/2 36/9 36/10 36/14 36/15 40/20 42/6 43/4 45/22 48/7 49/8 49/18 51/6 51/9 52/8 52/14 53/12 55/15
**arguments [4]**  47/25 53/1 58/19 59/1
**around [1]**  4/2
**as [51]**  4/20 6/11 7/10 7/13 7/14 8/1 8/3 8/14 11/12 14/8 14/9 16/7 17/12 18/18 19/10 20/2 22/6 22/22 23/19 23/23 23/25 27/8 28/17 30/5 31/3 31/5 31/18 33/8 34/16 37/21 39/13 39/13 40/23 42/10 42/16 43/1 43/1 43/3 45/11 47/23 49/5 49/8 50/10 52/8 52/14 52/21 55/13 56/14 56/14 59/1 59/1
**ask [8]**  4/3 26/21 35/6 36/18 37/3 37/8 37/19 37/22
**asked [5]**  37/6 38/17 39/3 46/5 54/8
**asking [4]**  22/10 23/12 37/24 42/25
**assent [1]**  6/14
**assistant [1]**  3/9
**Associated [1]**  33/16
**assume [9]**  17/16 19/11 21/12 24/18 44/10 44/18 44/19 57/12 57/14

**A**

**assuming [2]** 21/21 42/25
**attached [6]** 49/12 49/15 49/15 53/24 53/24 53/25
**attack [1]** 22/5
**attacking [1]** 22/7
**attempts [1]** 20/16
**attention [3]** 4/4 4/14 53/10
**attorney [1]** 3/9
**authority [7]** 1/6 2/10 3/6 3/10 3/12 33/17 38/10
**authorized [1]** 41/22
**available [1]** 32/19
**Ave [1]** 2/20
**Avenue [2]** 2/8 2/16
**away [1]** 52/7

**B**

**back [7]** 12/14 13/17 16/2 25/3 26/21 53/18 55/4
**backwards [1]** 37/13
**bad [3]** 39/17 45/25 47/12
**bank [14]** 15/6 15/8 16/19 16/25 16/25 17/1 17/8 17/11 17/12 17/17 17/18 18/4 25/25 26/16
**bank's [2]** 16/22 41/25
**banking [1]** 10/8
**Barran [1]** 2/15
**barred [1]** 13/6
**based [10]** 20/13 21/17 21/18 21/19 34/14 42/21 50/9 54/5 54/6 57/18
**bases [5]** 20/15 37/2 38/17 39/1 39/4
**basic [1]** 52/8
**basically [1]** 15/21
**basis [5]** 26/15 31/6 31/18 38/11 52/17
**be [84]**
**beat [1]** 6/18
**because [29]** 3/22 6/3 7/12 9/3 10/2 11/22 13/5 14/12 15/14 17/9 21/15 22/14 23/14 24/4 24/15 26/17 28/23 29/10 29/18 35/1 35/4 40/23 44/13 45/15 49/5 49/11 49/17 50/25 52/15
**been [29]** 5/1 5/14 12/6 12/10 13/16 15/9 18/2 18/8 18/18 18/19 19/12 19/13 19/17 20/17 20/18 21/10 22/4 22/11 22/18 23/7 24/12 24/18 38/8 44/14 49/9 49/12 54/5 54/20 57/6
**before [22]** 1/16 4/1 4/1 5/15

6/5 7/24 7/25 17/14 26/19 28/19 28/20 33/11 36/23 38/8 48/12 49/9 49/11 49/14 50/12 51/12 57/9 57/17
**began [1]** 21/10
**begin [1]** 14/3
**beginning [1]** 44/19
**behavior [3]** 10/16 10/16 29/11
**being [8]** 3/19 6/20 13/6 29/2 36/5 49/22 49/25 56/21
**believe [10]** 3/22 48/17 50/21 50/22 51/17 53/3 54/15 54/20 54/25 55/12
**believes [1]** 58/15
**below [1]** 60/4
**bench [1]** 58/6
**best [17]** 9/13 9/14 16/14 16/18 17/4 17/5 26/17 26/17 26/19 31/13 31/14 31/15 31/20 35/15 39/13 41/6 48/7
**better [1]** 4/2
**between [16]** 12/13 12/15 16/13 16/19 16/25 17/4 25/11 26/25 27/6 31/13 34/7 34/9 36/22 41/5 43/18 46/9
**beyond [5]** 11/23 18/23 32/8 44/5 45/3
**bias [1]** 20/2
**biased [2]** 45/25 46/20
**big [1]** 36/7
**biggest [1]** 47/22
**bimodal [1]** 4/21
**bit [6]** 6/17 37/13 38/5 39/20 49/23 52/12
**blamed [1]** 3/24
**Boge [5]** 18/4 18/5 39/23 39/25 41/13
**Bonita [3]** 2/19 60/9 60/10
**both [6]** 6/3 9/10 13/24 30/8 30/9 40/3
**brand [1]** 6/15
**brand-new [1]** 6/15
**breach [6]** 8/7 14/14 38/22 54/25 56/18 57/4
**breadth [1]** 17/15
**brief [2]** 5/18 20/1
**briefed [4]** 5/12 42/13 45/4 49/23
**briefing [10]** 5/13 6/16 7/6 8/4 11/20 22/5 23/2 23/14 25/1 38/7
**briefly [2]** 7/19 42/9
**briefs [1]** 42/9
**bring [4]** 11/13 18/1 54/5 56/23
**broad [1]** 34/17

**broadly [1]** 5/9
**Broadway [1]** 2/12
**brought [4]** 53/13 53/17 54/6 57/5
**brute [1]** 6/21
**business [3]** 47/12 55/13 56/9
**but it [1]** 58/20

**C**

**calculus [1]** 50/25
**call [1]** 4/10
**called [1]** 41/3
**calling [1]** 7/3
**campaign [1]** 56/8
**can [35]** 3/7 3/24 6/12 8/7 9/17 11/6 13/3 13/8 16/9 16/11 17/15 18/11 18/22 19/4 21/7 21/17 22/5 22/17 28/22 29/2 31/21 33/8 34/20 35/2 42/16 43/11 43/15 45/14 46/22 48/16 48/18 54/17 56/15 58/21 59/1
**can't [6]** 15/15 32/3 36/11 38/13 42/19 43/8
**cannot [3]** 14/19 27/21 32/24
**car [1]** 50/2
**card [1]** 58/21
**cards [1]** 58/22
**case [75]**
**case where [1]** 15/5
**cases [15]** 8/12 9/8 11/3 16/11 16/13 16/15 28/17 35/17 39/20 39/23 39/24 40/5 40/7 42/3 48/12
**catchall [1]** 35/1
**categories [1]** 53/17
**caught [1]** 53/9
**causal [1]** 52/20
**causation [2]** 51/2 56/17
**cause [1]** 60/6
**CCOs [1]** 29/18
**certainly [7]** 5/18 21/9 35/11 37/1 39/6 49/6 53/19
**certified [1]** 60/7
**certify [1]** 60/4
**cetera [2]** 34/16 38/25
**chain [1]** 43/4
**change [2]** 17/1 17/11
**changed [2]** 25/21 51/18
**changes [4]** 15/9 17/13 26/13 50/25
**character [1]** 7/14
**charges [1]** 16/22
**Chris [2]** 2/15 3/17
**Circuit [7]** 4/14 4/16 4/20 5/5 5/24 13/17 13/19

**circumscribed [1]** 40/4
**circumstance [2]** 15/5 15/8
**citation [1]** 41/15
**cite [1]** 38/10
**cited [3]** 28/18 32/18 48/12
**cites [2]** 39/24 42/3
**citing [1]** 8/11
**Civil [1]** 48/16
**claim [69]**
**claims [8]** 9/12 9/15 11/13 18/1
  39/1 39/4 54/6 55/4
**clarification [1]** 37/19
**clear [12]** 5/19 18/2 18/6 18/8
  35/1 37/25 38/2 41/6 46/3
  49/21 49/23 51/22
**clearly [1]** 51/5
**client [1]** 18/16
**CMS [1]** 21/2
**Coie [2]** 2/4 2/7
**coin [1]** 8/17
**come [3]** 11/10 13/8 15/10
**comes [2]** 41/14 50/4
**commanding [1]** 5/10
**comments [1]** 4/4
**common [4]** 11/7 40/4 40/7
  41/15
**commonplace [2]** 37/5 37/6
**compare [1]** 52/13
**compared [1]** 52/14
**complained [5]** 8/9 10/16
  18/15 28/19 29/3
**complaint [44]** 4/9 10/22 10/22
  11/13 11/17 21/5 21/6 22/2
  22/8 22/16 22/18 22/20 22/22
  24/3 35/2 36/22 37/7 37/15
  39/7 47/10 47/25 48/14 48/14
  48/21 48/22 49/3 49/20 50/10
  50/15 51/6 51/18 52/21 52/23
  53/21 53/22 54/17 54/18 54/24
  55/24 55/24 55/25 56/3 56/7
  56/9
**complaint if [1]** 24/3
**complaint's [1]** 55/8
**complaints [1]** 48/4
**completely [2]** 8/20 17/20
**complex [2]** 13/22 40/23
**comprised [1]** 6/5
**concern [1]** 47/22
**concerned [1]** 4/15
**conclude [3]** 20/16 45/22
  56/21
**concluded [3]** 31/6 31/9 59/4
**concludes [1]** 20/16

**conclusion [1]** 50/9
**conduct [1]** 21/18
**conformed [1]** 60/7
**consequential [6]** 49/22 49/24
  50/5 50/15 50/17 51/25
**consideration [1]** 6/13
**considering [1]** 5/24
**consistent [1]** 41/24
**constitutional [1]** 12/3
**construction [1]** 41/21
**contains [4]** 34/7 41/5 41/15
  57/10
**contemplated [1]** 39/15
**contend [5]** 33/2 35/8 37/10
  46/24 52/5
**contending [5]** 21/24 28/6
  30/17 51/22 55/7
**contention [2]** 37/25 39/18
**context [3]** 29/15 36/21 41/15
**contour [1]** 17/20
**contours [1]** 7/16
**contract [157]**
**contracted [3]** 8/11 9/1 14/25
**contracts [8]** 4/25 5/1 5/3 6/6
  6/8 6/19 7/4 29/19
**contractual [25]** 9/21 9/25
  12/4 16/10 16/12 17/13 17/21
  18/10 18/19 19/2 19/19 26/18
  28/13 28/16 34/20 40/9 40/12
  41/3 43/6 43/16 43/17 44/15
  45/8 45/15 46/7
**contractually [1]** 41/24
**contradict [3]** 9/25 32/24 33/3
**contradicting [1]** 9/12
**contradiction [1]** 13/7
**contrast [1]** 16/24
**control [2]** 39/5 49/4
**copies [1]** 32/19
**corporate [1]** 54/8
**corporation [1]** 1/3
**correct [15]** 15/25 18/20 19/3
  20/4 21/21 22/24 26/7 32/9
  37/12 44/9 45/2 49/19 51/8
  58/1 60/5
**cost [2]** 11/25 31/18
**cost-plus [1]** 31/18
**coterminous [1]** 11/8
**Couch [1]** 2/4
**could [31]** 4/24 9/3 9/7 10/8
  11/8 17/1 18/7 21/22 24/15
  24/16 25/11 25/21 25/25 26/1
  26/9 27/1 31/16 35/12 35/14
  35/16 36/18 37/23 38/18 43/24
  43/24 44/23 46/16 51/14 51/19
  51/21 55/16

**couldn't [2]** 35/13 53/13
**counsel [5]** 3/7 34/10 34/12
  36/4 39/22
**couple [3]** 35/20 36/20 50/18
**course [3]** 20/8 33/2 45/10
**court [40]** 1/1 1/17 2/19 12/20
  12/21 16/15 17/9 18/2 18/8
  25/22 25/23 26/1 26/5 26/6
  26/15 26/18 28/18 31/6 31/9
  31/14 31/15 31/20 32/20 35/15
  39/13 41/9 41/23 42/1 42/12
  42/20 43/5 43/14 44/1 46/6
  48/12 51/19 54/3 57/6 59/3
  60/11
**Court's [2]** 26/4 42/24
**Courthouse [1]** 2/19
**courts [1]** 33/14
**covenant [4]** 32/17 32/23 34/8
  38/22
**covered [1]** 58/8
**create [2]** 6/14 32/3
**creates [1]** 41/16
**critical [2]** 14/17 17/4
**cross [1]** 10/2
**cross-reference [1]** 10/2
**CRR [2]** 2/19 60/10
**CSR [2]** 2/19 60/10
**current [4]** 4/8 7/22 36/23
  55/24
**currently [1]** 19/14
**cv [2]** 1/4 3/5

---

**D**

**damage [2]** 48/5 48/5
**damages [32]** 48/6 49/5 49/6
  49/22 49/24 49/25 49/25 50/3
  50/5 50/15 50/18 50/24 51/18
  51/25 52/19 53/18 53/18 53/20
  53/20 53/23 54/2 54/6 54/8
  54/9 54/10 56/17 56/20 56/21
  57/10 57/16 57/24 58/20
**DATE [1]** 60/10
**day [5]** 29/21 39/12 47/16 50/6
  57/19
**deal [3]** 39/24 40/7 48/6
**dealing [16]** 30/12 30/18 32/18
  33/15 33/19 33/19 34/8 38/23
  39/25 40/1 40/11 40/18 42/4
  51/24 52/18 55/11
**deals [1]** 41/21
**dealt [1]** 26/18
**decide [11]** 7/6 12/20 12/22
  16/7 42/12 42/21 43/1 44/2
  44/6 44/23 57/7
**decided [3]** 13/5 41/10 43/15

**decides [2]** 17/18 24/8
**deciding [1]** 44/2
**decision [7]** 7/18 7/19 7/23 25/23 25/23 43/4 43/15
**decisions [1]** 8/4
**default [2]** 41/23 41/25
**defend [2]** 21/13 35/2
**defendant [4]** 2/10 2/14 3/17 3/18
**Defendants [1]** 1/8
**defense [2]** 57/4 57/8
**deficient [1]** 51/6
**define [1]** 9/22
**defined [2]** 9/16 9/23
**defines [1]** 22/15
**defining [1]** 7/16
**definition [2]** 27/14 31/1
**deliberate [1]** 46/20
**denied [1]** 48/2
**deny [1]** 49/5
**deposes [1]** 35/7
**deposition [3]** 37/2 37/6 39/2
**depositions [4]** 36/19 37/20 37/23 38/13
**depositor [8]** 15/6 15/7 16/19 25/25 25/25 26/15 26/23 31/6
**depositors [9]** 16/21 16/25 17/14 17/19 18/1 18/7 31/10 31/15 31/19
**derived [2]** 11/16 11/18
**describe [1]** 15/19
**described [2]** 18/24 41/24
**describes [1]** 36/22
**designed [2]** 20/23 21/11
**detail [4]** 31/16 31/20 39/8 40/19
**determine [8]** 12/25 42/22 43/5 43/6 43/16 44/21 45/14 46/7
**determined [1]** 42/17
**determining [1]** 42/10
**devoted [1]** 6/18
**did [21]** 5/21 9/1 10/20 10/22 10/24 14/9 14/9 17/14 32/4 32/13 33/11 39/17 42/8 48/19 49/2 55/16 56/22 56/23 56/25 57/2 57/2
**didn't [12]** 16/20 17/5 17/5 31/14 36/9 36/10 39/5 49/3 49/10 50/2 54/5 58/11
**differences [1]** 41/5
**different [5]** 7/25 33/21 39/24 50/18 56/18
**direct [2]** 49/25 49/25

**directions [1]** 30/8
**directly [2]** 10/15 25/18
**disagree [6]** 7/13 7/14 9/6 44/18 45/7 46/3
**disagreement [8]** 43/18 43/23 44/7 44/10 44/13 46/9 46/14 46/17
**disclosed [2]** 14/7 15/13
**discloses [1]** 15/6
**discovery [9]** 12/6 12/11 21/18 23/4 23/5 23/7 24/10 24/18 36/5
**discrete [1]** 13/21
**discretion [28]** 7/1 8/15 16/20 17/1 17/6 17/8 17/11 17/17 18/12 19/1 19/5 26/3 26/8 26/11 26/18 32/11 32/15 32/17 39/15 40/9 40/15 40/16 40/16 41/8 42/2 42/4 45/24 51/19
**discretionary [6]** 6/24 8/10 15/1 18/15 30/25 32/5
**discrimination [1]** 10/10
**discussion [2]** 34/9 41/5
**dismiss [23]** 4/9 7/23 10/19 11/11 11/21 13/11 21/5 22/4 22/14 23/13 23/13 23/16 24/2 24/2 24/4 37/14 37/18 37/21 38/5 41/10 45/13 45/17 50/7
**dismissed [3]** 49/12 54/5 57/6
**dispute [3]** 5/23 12/13 12/15
**dissatisfied [3]** 26/2 26/10 27/2
**distinction [8]** 14/17 14/18 16/13 16/17 17/4 26/14 26/17 31/13
**distinguish [3]** 26/24 27/6 28/15
**distinguished [1]** 11/2
**distinguishes [2]** 14/12 25/11
**district [5]** 1/1 1/2 1/17 2/19 54/3
**diversionary [1]** 53/7
**do [51]** 4/2 4/4 4/12 6/25 7/15 7/16 8/11 8/24 9/19 14/15 14/25 15/1 15/21 16/16 17/21 17/22 17/23 18/7 22/1 22/10 23/1 25/14 27/12 27/19 27/21 29/4 29/9 29/13 30/1 30/1 30/7 32/15 32/19 32/22 33/1 37/9 37/14 37/17 39/19 40/14 43/8 44/20 44/21 45/16 45/17 47/4 49/2 52/11 53/12 54/4 57/25
**doctrine [1]** 5/4
**document [1]** 22/15
**does [26]** 6/25 8/25 9/18 15/18

16/7 16/8 16/8 18/3 20/5 22/3 22/25 23/16 24/2 26/13 27/7 27/7 28/9 30/11 30/13 33/3 33/5 33/15 35/4 35/18 37/22 53/23
**doesn't [9]** 21/12 21/22 22/3 26/24 27/6 29/9 38/10 39/21 40/10
**doing [11]** 4/12 4/13 8/15 8/19 14/13 27/20 28/15 29/2 30/3 38/9 40/10
**don't [47]** 5/12 6/14 7/12 7/13 8/18 11/5 11/14 12/20 14/13 14/14 14/23 20/21 21/6 22/13 22/17 23/10 23/15 24/6 27/15 31/12 32/1 32/12 33/12 35/21 36/14 37/11 42/6 42/15 43/19 44/12 44/13 44/16 45/14 45/15 45/16 46/3 46/14 46/18 48/4 48/21 51/9 51/10 51/11 52/13 52/15 54/16 57/13
**done [5]** 9/17 15/12 31/21 32/5 54/7
**double [1]** 49/7
**down [7]** 7/18 7/24 11/10 43/4 43/14 47/3 47/4
**draws [2]** 14/18 16/16
**drive [2]** 21/11 56/8
**during [3]** 27/25 28/12 58/1
**duty [13]** 15/18 18/3 19/6 30/11 30/18 33/14 40/3 40/4 40/7 40/18 41/13 42/20 42/22
**dynamite [2]** 58/10 58/16

**E**

**each [15]** 5/2 6/15 6/17 6/23 7/7 7/18 14/6 28/7 28/7 28/9 28/14 28/17 40/24 42/9 56/1
**earlier [9]** 47/10 49/3 50/16 51/14 53/13 53/21 54/21 55/5 55/16
**earn [1]** 31/19
**Ed [1]** 3/18
**Eddy [1]** 40/2
**Edwin [1]** 2/14
**effect [5]** 16/22 19/7 36/7 48/13 58/22
**effectively [1]** 48/14
**Eighty [1]** 56/4
**Eighty-two [1]** 56/4
**either [10]** 4/21 8/18 13/4 14/13 14/14 14/21 15/14 16/20 23/19 48/17
**eliminated [1]** 25/24
**else [5]** 20/19 31/10 33/23

**else... [2]** 42/21 51/25
**elsewhere [1]** 43/10
**end [4]** 5/18 17/23 39/12 50/6
**ended [1]** 3/23
**endgame [1]** 28/6
**ends [3]** 6/20 18/17 27/19
**enforceable [1]** 41/16
**enough [7]** 5/9 13/3 13/8 38/1 38/2 39/6 43/14
**enterprise [7]** 49/9 53/18 53/19 54/6 54/9 56/9 57/1
**entire [1]** 51/18
**entitled [1]** 60/6
**episodes [1]** 15/17
**equal [1]** 10/5
**equitable [1]** 5/3
**errors [1]** 20/6
**essence [1]** 47/13
**essentially [4]** 32/2 39/20 48/15 48/19
**et [3]** 3/6 34/16 38/25
**et cetera [2]** 34/16 38/25
**even [22]** 4/13 6/8 6/14 8/7 9/9 10/16 21/20 25/1 27/15 32/6 32/12 32/13 32/16 33/13 33/19 35/21 35/21 41/14 43/8 51/11 54/20 57/17
**event [1]** 5/15
**ever [1]** 11/6
**every [4]** 29/8 29/12 30/7 38/11
**everyone [1]** 13/11
**everything [3]** 20/24 49/4 50/4
**evidence [2]** 13/3 13/9
**exact [1]** 45/14
**exactly [2]** 22/2 31/14
**example [7]** 9/13 10/9 10/11 18/25 23/8 23/20 35/13
**excellent [2]** 41/5 58/19
**except [2]** 21/1 49/5
**excerpted [1]** 26/3
**excuse [2]** 28/11 54/13
**exercise [7]** 8/16 18/12 18/25 26/8 40/9 42/2 42/4
**exercised [4]** 26/3 26/10 33/18 41/8
**exercises [1]** 39/14
**exercising [3]** 8/15 40/12 41/17
**exorbitant [1]** 31/19
**expect [2]** 23/22 45/23
**expectation [15]** 10/10 14/19 18/25 19/2 20/13 21/19 26/16 31/10 32/23 32/24 33/3 35/6

36/13 46/16 47/6
**expectations [49]** 8/8 8/21 8/25 9/15 9/20 9/21 9/22 10/3 10/14 10/15 11/4 12/17 14/24 15/16 17/13 18/11 18/18 18/23 19/4 19/19 19/24 20/12 20/19 21/17 21/24 31/2 31/7 31/24 32/7 34/14 34/21 38/12 38/17 38/24 39/10 39/17 42/11 43/2 43/3 44/4 44/6 44/22 45/8 45/15 46/8 46/19 46/23 47/1 47/8
**expected [2]** 20/25 42/2
**explain [3]** 4/18 51/10 52/12
**explained [2]** 7/25 11/19
**explaining [2]** 3/25 56/16
**explanation [1]** 52/22
**exploded [1]** 58/15
**explore [2]** 38/15 39/1
**express [11]** 18/9 19/7 30/24 32/25 33/4 41/7 41/9 42/17 43/6 44/22 56/18
**expressed [1]** 9/4
**expressly [2]** 9/23 41/16
**extensively [1]** 25/22
**extent [2]** 36/7 51/19
**external [1]** 10/12
**extra [11]** 9/21 9/25 12/4 16/10 16/12 17/21 41/3 43/16 43/17 44/15 46/7
**extra-contractual [11]** 9/21 9/25 12/4 16/10 16/12 17/21 41/3 43/16 43/17 44/15 46/7

## F

**faced [1]** 37/14
**facing [4]** 5/11 36/14 36/15 47/5
**fact [15]** 6/6 6/7 6/21 14/16 16/5 22/16 22/18 25/7 25/24 26/13 41/14 43/15 45/10 50/22 55/16
**facto [1]** 31/1
**factor [3]** 6/1 27/6 30/8
**factors [4]** 5/8 5/21 6/1 31/5
**facts [4]** 15/22 31/4 31/4 50/10
**factual [3]** 12/22 50/8 51/2
**failing [1]** 5/7
**fair [14]** 8/13 30/12 30/18 32/18 33/15 33/19 34/8 38/23 39/25 40/1 40/18 52/18 53/14 55/11
**fairly [2]** 35/16 49/1
**faith [59]** 4/10 4/24 5/4 8/9 8/14 8/18 8/21 9/3 9/7 9/12

9/15 9/20 9/22 10/14 12/5 12/18 15/18 16/8 16/8 16/9 17/22 18/3 18/17 18/18 19/7 25/24 26/7 26/12 30/11 30/18 32/8 32/18 32/23 32/24 33/15 33/19 34/8 38/23 39/17 39/25 40/1 40/5 40/8 40/18 41/13 43/2 43/3 44/22 45/25 46/24 47/12 52/18 53/24 54/4 55/11 56/22 57/4 57/8 57/9
**FAMILYCARE [44]** 1/3 3/6 3/14 3/15 3/16 5/19 8/2 10/21 11/19 11/22 12/3 12/9 12/18 13/3 13/8 14/8 15/13 15/14 20/11 20/12 20/15 21/1 21/7 21/11 21/23 22/11 23/23 24/22 25/6 25/16 30/14 30/15 31/23 34/10 34/13 39/4 45/23 47/12 49/22 50/11 52/17 55/13 56/8 57/24
**FamilyCare's [3]** 23/8 39/10 47/11
**far [14]** 13/2 13/15 13/18 13/20 24/3 25/9 29/25 30/19 35/16 43/1 43/4 43/5 43/14 56/14
**Fargo [3]** 32/14 39/14 45/12
**farther [1]** 43/14
**Federal [1]** 48/16
**fee [1]** 33/22
**feel [1]** 13/16
**fees [2]** 26/13 31/25
**fifth [5]** 4/9 48/13 50/15 52/21 55/8
**figure [1]** 21/16
**figuring [1]** 53/5
**file [3]** 48/17 48/18 48/23
**filed [1]** 23/12
**filing [2]** 48/13 49/3
**finally [1]** 12/13
**find [9]** 5/10 11/4 12/1 24/3 42/19 43/9 49/2 54/18 57/14
**fine [1]** 53/5
**first [29]** 4/11 5/16 5/22 7/5 8/6 8/6 11/21 14/3 14/21 15/4 15/11 18/12 19/16 20/1 23/23 24/24 24/24 28/11 32/10 33/12 35/20 37/17 45/5 49/16 49/21 51/24 53/16 56/5 56/6
**fit [1]** 23/16
**fits [1]** 13/6
**five [15]** 4/21 4/23 5/10 5/17 5/19 6/2 6/8 6/11 6/19 6/22 7/2 7/3 29/15 29/16 29/21
**five-year [12]** 4/21 4/23 5/10 5/17 5/19 6/2 6/8 6/11 6/19

## F

**five-year... [3]**  6/22 29/15 29/21
**Floor [1]**  2/4
**focus [2]**  15/11 53/12
**follow [1]**  10/5
**followed [1]**  18/19
**forbid [1]**  24/16
**forced [1]**  5/21
**foreclose [1]**  41/25
**foreclosure [1]**  41/23
**foregoing [1]**  60/4
**form [1]**  12/17
**formation [17]**  5/3 6/14 14/5 14/12 15/18 15/22 24/25 25/12 26/25 27/7 27/9 28/23 28/23 28/24 30/17 33/24 34/1
**formation: [1]**  15/24
**formation: offer [1]**  15/24
**formed [2]**  27/21 36/24
**former [3]**  55/24 56/3 56/9
**forth [3]**  16/2 18/8 20/17
**forward [2]**  12/12 13/9
**found [3]**  10/15 18/23 54/19
**foundation [1]**  48/5
**foundations [3]**  35/6 36/12 37/16
**four [1]**  28/18
**fourth [4]**  48/14 52/22 54/16 54/18
**frame [1]**  30/4
**framework [1]**  4/6
**frankly [1]**  50/21
**free [1]**  20/5
**front [3]**  5/6 42/21 54/17
**fully [1]**  14/7
**fundamental [2]**  46/4 50/6
**fundamentally [2]**  37/25 47/25
**further [3]**  4/4 44/4 58/24

## G

**game [3]**  24/17 38/9 57/15
**gate [1]**  51/10
**gave [3]**  8/16 14/8 32/15
**general [1]**  3/9
**genuine [1]**  45/10
**get [34]**  4/12 6/2 13/2 13/2 14/14 17/18 20/7 22/3 24/3 26/19 27/15 28/9 29/22 29/22 29/23 30/19 30/20 32/1 33/11 35/17 37/22 42/25 43/5 45/17 45/19 45/20 47/4 50/2 50/12 50/13 51/9 51/10 58/22 59/1
**gets [1]**  52/17

**getting [1]**  13/18
**give [4]**  20/7 21/16 34/1 40/24
**given [3]**  15/13 29/25 44/14
**giving [1]**  5/8
**glides [1]**  6/16
**go [27]**  5/9 12/12 16/1 20/9 22/12 23/1 24/5 24/6 24/9 24/15 24/15 24/16 25/2 29/9 30/1 30/1 30/6 30/7 31/23 33/25 35/4 35/12 35/14 43/9 44/4 45/11 53/11
**goes [6]**  8/24 21/8 23/19 26/6 43/14 46/9
**going [20]**  10/5 13/14 14/15 15/19 16/2 24/11 24/15 24/22 27/19 33/24 34/1 36/11 36/13 36/16 36/17 44/5 47/16 52/25 55/22 58/10
**good [60]**  3/8 3/13 4/10 4/24 5/4 8/8 8/14 8/18 8/21 9/3 9/7 9/12 9/14 9/20 9/22 10/14 12/5 12/18 15/18 16/3 16/7 16/8 16/9 17/21 18/3 18/17 18/18 19/7 25/24 26/7 26/12 30/11 30/18 32/7 32/18 32/23 32/24 33/14 33/18 34/8 38/22 39/25 40/1 40/4 40/8 40/18 41/13 43/2 43/3 44/22 46/23 52/18 53/6 53/24 54/4 55/11 56/22 57/4 57/8 57/9
**Gordon [6]**  2/7 3/14 24/23 24/24 41/19 46/13
**got [3]**  13/15 13/20 43/9
**grant [1]**  7/22
**granted [1]**  40/8
**grounded [1]**  12/23
**grounds [2]**  48/2 48/18
**guess [22]**  4/11 5/12 5/22 8/6 8/23 11/24 12/23 20/21 21/6 22/10 23/11 23/16 25/10 28/21 29/8 30/21 33/9 34/22 46/4 49/8 50/14 51/4
**guessing [1]**  53/8

## H

**had [27]**  5/6 7/2 16/20 17/1 17/3 20/12 21/18 23/22 26/15 31/6 31/10 34/13 36/15 38/14 38/25 44/20 44/21 49/12 54/4 54/7 54/7 55/4 57/6 57/7 57/16 58/11 58/12
**half [1]**  30/22
**happen [2]**  23/15 31/11
**happened [2]**  28/19 39/8
**happening [1]**  21/8

**happens [2]**  10/4 27/25
**happy [1]**  35/24
**hard [1]**  12/21
**Harnden [5]**  2/14 3/18 47/15 47/20 58/11
**Harry [2]**  2/10 3/8
**has [52]**  4/14 4/16 6/11 8/20 11/19 12/9 13/16 15/6 15/7 15/9 15/12 17/8 17/12 18/2 18/8 18/8 19/12 19/13 19/17 21/1 21/15 22/4 22/11 22/18 25/5 26/24 27/22 29/5 31/1 31/23 32/10 32/11 33/5 36/7 38/11 38/12 38/25 39/7 40/14 43/15 45/4 47/20 47/23 48/21 48/22 49/9 50/19 51/1 57/6 57/9 58/11 58/15
**have [67]**
**haven't [7]**  25/19 32/12 38/16 39/2 46/15 57/21 58/2
**having [3]**  10/14 13/10 48/3
**head [1]**  7/18
**HEALTH [5]**  1/6 2/10 3/6 3/10 3/12
**hear [7]**  7/9 7/11 7/17 13/13 42/8 50/14 52/3
**hearing [1]**  21/10
**heat [1]**  6/18
**Heidee [2]**  2/3 3/15
**Heights [3]**  41/4 41/10 41/21
**held [1]**  33/14
**help [4]**  22/20 26/24 27/6 44/23
**helpful [1]**  58/25
**helps [2]**  29/21 35/25
**her [1]**  52/15
**Herbold [1]**  2/11
**here [53]**  3/19 3/22 4/14 4/18 5/17 7/4 8/5 8/20 9/7 10/21 10/22 11/15 12/17 14/17 15/11 15/12 21/8 25/15 27/12 27/19 28/19 29/3 30/10 30/21 31/23 32/13 33/3 33/25 34/17 34/19 36/3 37/9 37/10 37/12 37/14 37/21 39/6 39/8 39/13 39/17 40/6 40/11 41/11 42/5 46/8 46/14 47/23 48/4 48/19 49/17 49/22 49/25 50/3
**here's [3]**  6/16 10/4 27/18
**him [1]**  47/17
**his [1]**  58/11
**history [7]**  12/3 29/17 34/6 36/22 36/23 39/9 39/9
**hit [1]**  40/24
**holding [1]**  39/21

**H**

**honesty [1]** 40/5
**Honor [68]**
**Honor is [1]** 21/20
**HONORABLE [1]** 1/16
**how [25]** 5/12 8/1 14/20 15/16 18/12 23/15 23/25 24/1 25/11 26/2 26/10 26/16 31/7 31/14 31/17 31/21 31/24 35/18 36/17 38/13 39/19 41/8 50/14 51/12 52/17
**hundreds [1]** 38/14
**hurts [1]** 35/25
**hypothetical [2]** 45/1 57/13

**I**

**I'd [12]** 4/11 5/22 5/22 6/1 8/6 9/17 13/16 13/19 14/3 18/21 41/12 46/3
**I'll [17]** 4/3 4/3 7/9 7/10 7/17 7/18 12/8 13/23 14/1 40/24 42/8 44/19 47/16 52/3 58/6 58/22 59/1
**I'm [36]** 4/13 5/11 7/25 12/24 14/15 16/2 21/5 22/1 22/10 23/12 25/10 27/8 28/2 28/21 29/22 29/23 33/24 34/1 35/3 35/24 37/1 37/21 42/23 42/25 44/5 47/2 47/3 51/4 51/5 51/22 52/5 52/6 52/14 53/2 53/5 58/5
**I've [7]** 7/24 13/1 13/5 21/9 30/5 42/9 43/9
**i.e [2]** 31/18 41/25
**idea [6]** 9/3 11/8 12/2 36/15 38/16 48/21
**ideas [1]** 33/21
**identified [9]** 12/10 19/5 19/6 21/1 32/10 32/12 33/5 34/5 40/14
**identify [6]** 17/5 17/5 23/10 38/11 46/25 47/2
**identifying [2]** 12/15 20/11
**ignore [1]** 22/21
**imagine [1]** 39/3
**immaterial [2]** 26/1 41/17
**implicates [1]** 50/18
**implicit [1]** 46/11
**implied [3]** 34/7 38/22 43/7
**important [4]** 6/10 23/7 34/11 56/16
**imposed [1]** 10/7
**impossible [2]** 9/24 9/24
**inadequately [2]** 3/25 5/7
**INC [2]** 1/3 3/6

**include [1]** 20/5
**including [4]** 11/3 14/6 36/23 53/18
**incoherently [1]** 9/10
**incorporated [3]** 53/22 54/3 55/10
**incorporating [1]** 55/11
**increase [1]** 57/18
**indicator [1]** 35/1
**individual [1]** 7/2
**individually [1]** 50/23
**industry [16]** 19/24 21/22 23/10 23/21 23/23 24/12 36/6 36/7 36/10 36/11 36/13 36/14 36/16 36/18 36/19 44/15
**infer [2]** 31/16 31/21
**inferring [1]** 31/25
**inform [3]** 21/24 34/20 34/23
**information [1]** 52/20
**informed [4]** 19/19 19/24 20/19 47/9
**informs [1]** 39/9
**initial [1]** 32/2
**initially [4]** 25/3 27/21 28/10 39/22
**inquire [1]** 21/17
**instance [1]** 17/24
**instead [1]** 7/3
**institution [1]** 10/11
**instructs [1]** 30/1
**intend [1]** 45/16
**intends [1]** 22/12
**interested [3]** 7/9 7/11 51/5
**interrogatories [1]** 38/14
**introduce [1]** 3/7
**introduction [1]** 34/12
**invite [1]** 13/23
**involved [1]** 30/21
**ipso [1]** 31/1
**Iqbal [18]** 10/24 21/13 22/2 22/21 22/23 23/1 24/4 24/9 33/9 34/3 34/22 34/25 36/3 37/22 50/7 50/25 51/5 51/7
**Iqbal/Twombly [18]** 10/24 21/13 22/2 22/21 22/23 23/1 24/4 24/9 33/9 34/3 34/22 34/25 36/3 37/22 50/7 50/25 51/5 51/7
**is [217]**
**isn't [6]** 11/1 27/10 34/23 36/9 50/16 51/11
**issue [19]** 4/24 5/11 5/14 6/20 6/20 9/5 13/21 16/1 25/19 26/14 30/10 40/1 40/23 45/10 50/18 50/19 52/4 58/6 58/20

**issued [1]** 38/13
**issues [4]** 3/25 23/3 48/15 48/22
**it [161]**
**it's [69]**
**iteration [1]** 51/17
**its [13]** 6/25 11/19 17/12 17/18 18/12 20/11 23/19 25/1 37/23 39/14 45/24 51/19 58/15
**itself [4]** 10/3 11/5 11/17 48/11

**J**

**Jindal [2]** 2/11 3/11
**job [1]** 4/2
**Johnson [4]** 2/3 3/16 52/25 53/6
**JUDGE [1]** 1/17
**judgment [11]** 13/12 13/14 13/15 45/11 45/20 53/3 53/17 56/23 56/24 57/3 57/6
**July [1]** 53/19
**July 2018 [1]** 53/19
**jury [11]** 12/19 43/13 43/19 43/24 43/24 44/8 44/24 45/5 45/11 46/5 46/9
**just [37]** 4/5 8/15 9/9 10/7 10/21 12/24 13/25 14/15 15/21 17/15 20/7 21/4 21/5 28/24 29/1 31/25 32/22 33/24 34/18 35/24 37/13 40/22 40/24 41/20 48/6 48/22 50/8 51/22 52/6 52/9 53/5 53/8 57/12 57/14 57/22 58/6 58/10
**justify [1]** 13/9

**K**

**keep [2]** 47/15 53/8
**key [3]** 26/17 30/10 31/5
**knew [1]** 54/10
**know [21]** 5/12 10/6 11/14 12/21 13/4 28/22 35/5 36/9 36/10 36/12 36/14 36/17 37/2 44/13 44/17 46/12 46/14 47/4 49/23 50/1 58/11
**knowing [1]** 29/8
**knows [2]** 36/6 47/5

**L**

**laid [3]** 32/8 34/6 46/15
**land [2]** 27/8 33/25
**Landlord [1]** 40/3
**Landlord-Tenant [1]** 40/3
**language [4]** 4/16 11/17 20/5 53/20
**last [7]** 11/11 13/1 13/3 22/11

**L**

**last... [3]** 22/25 44/18 58/9
**late [10]** 11/24 13/6 24/17 38/9 48/2 48/9 49/5 50/14 57/15 57/19
**law [31]** 17/12 18/7 19/21 19/22 20/14 20/20 20/22 21/2 21/7 21/20 21/21 26/7 30/23 34/14 34/17 34/17 34/19 34/19 35/4 35/7 35/8 35/11 35/18 35/22 37/4 37/9 40/4 40/7 41/15 42/16 54/3
**laws [1]** 21/22
**lawyer's [1]** 20/23
**lay [2]** 8/5 33/24
**laying [1]** 26/6
**lead [2]** 25/21 30/13
**leads [5]** 27/24 28/1 28/3 28/4 56/21
**learn [1]** 46/23
**least [5]** 3/24 12/18 45/5 47/21 49/24
**leave [1]** 42/8
**leaving [1]** 4/18
**left [1]** 58/8
**legislative [2]** 12/2 29/17
**lending [1]** 10/11
**length [1]** 5/25
**Let [1]** 47/20
**let's [6]** 17/17 20/3 34/3 47/15 48/5 49/6
**liability [6]** 49/9 50/20 54/19 57/1 57/3 57/8
**liable [1]** 50/10
**Liebman [1]** 2/15
**like [16]** 10/6 13/16 14/3 17/16 19/24 20/5 20/6 31/25 32/4 32/20 36/5 41/2 41/11 43/5 57/10 58/20
**limine [2]** 23/17 24/1
**limit [1]** 21/7
**limitation [3]** 50/20 57/3 57/8
**limitations [1]** 47/24
**limited [3]** 9/9 32/17 41/13
**limiting [1]** 20/22
**link [1]** 56/17
**litigation [2]** 3/24 11/24
**little [6]** 12/14 37/13 38/5 39/20 49/23 52/12
**LLP [3]** 2/4 2/7 2/15
**loan [1]** 41/22
**long [2]** 18/18 29/16
**longer [1]** 29/18
**longer-term [1]** 29/18

**look [20]** 5/22 8/17 11/4 11/6 11/9 15/21 15/23 16/9 20/3 21/19 23/18 25/13 35/21 35/24 43/15 44/5 44/22 46/6 46/22 52/7
**looked [2]** 32/14 48/3
**looking [5]** 10/21 21/4 31/21 47/2 47/3
**looks [2]** 30/15 41/9
**loose [1]** 4/16
**lose [1]** 19/11
**loses [1]** 8/2
**lost [1]** 54/15
**lot [1]** 13/21
**lots [2]** 21/22 58/19
**loud [1]** 13/14
**LYNNE [5]** 1/7 2/14 50/9 50/21 50/23

**M**

**made [4]** 15/6 34/4 42/6 52/6
**main [3]** 4/17 12/24 14/11
**make [16]** 8/4 22/11 22/13 27/17 33/8 33/11 36/16 41/2 41/12 42/7 48/8 51/9 52/8 55/17 58/7 58/12
**mandated [1]** 29/16
**manner [2]** 30/24 31/17
**many [5]** 11/3 17/25 18/6 21/2 38/13
**marker [1]** 33/24
**markets [1]** 21/11
**Markowitz [1]** 2/11
**material [2]** 45/10 58/8
**matter [10]** 17/12 39/21 40/10 42/10 42/12 42/16 42/20 44/1 49/10 53/23
**Matthew [3]** 2/7 3/13 24/23
**may [11]** 10/1 13/13 13/17 22/3 22/3 22/16 41/4 46/10 49/2 54/20 55/20
**maybe [7]** 4/15 5/13 5/14 6/8 9/24 25/10 44/16
**me [49]** 3/25 4/1 4/12 5/6 5/10 5/15 7/5 8/4 11/21 11/21 11/25 12/1 13/13 13/17 13/19 20/7 22/11 23/13 24/14 25/8 25/9 25/9 25/11 26/22 27/5 27/6 27/6 27/7 28/12 28/22 29/1 29/4 29/6 29/9 29/10 29/24 29/25 42/21 43/8 46/4 51/10 51/12 52/6 53/12 54/13 54/17 54/17 58/11 58/21
**mean [1]** 28/23
**means [7]** 8/18 8/19 18/17

**mechanism [1]** 45/18
**Medicaid [1]** 36/4
**meet [2]** 11/12 14/24
**mentioned [4]** 4/15 7/10 20/2 31/5
**merges [1]** 19/7
**met [3]** 17/12 18/18 31/1
**method [4]** 7/11 19/4 19/6 29/23
**methodologies [1]** 13/25
**methodology [5]** 4/6 15/20 25/12 26/22 44/2
**MICHAEL [1]** 1/16
**might [12]** 7/4 20/25 22/20 23/25 25/21 31/25 32/7 37/17 37/19 37/20 40/25 45/21
**million [4]** 49/7 49/21 50/11 57/11
**mind [2]** 17/16 33/12
**minds [1]** 15/24
**minute [5]** 4/15 11/21 11/21 37/23 40/24
**miss [1]** 58/11
**missed [1]** 40/25
**MO [2]** 1/4 3/5
**modification [4]** 33/14 33/15 33/20 33/22
**modify [1]** 33/17
**modifying [1]** 33/22
**moment [6]** 7/10 15/11 34/10 48/6 57/13 57/14
**more [13]** 6/6 8/19 9/2 13/15 19/11 23/17 31/23 33/12 38/13 40/4 46/4 49/7 52/12
**Morgan [2]** 2/15 3/17
**mortgage [2]** 10/8 33/16
**MOSMAN [1]** 1/16
**most [3]** 13/22 36/23 40/23
**motion [39]** 4/8 7/23 10/19 11/11 11/20 13/11 21/5 22/4 22/14 23/13 23/16 23/17 24/1 24/2 37/13 37/21 38/5 41/10 45/13 45/16 47/23 48/1 48/8 48/11 48/18 49/5 50/7 50/13 51/11 51/12 53/3 53/4 53/17 54/5 54/6 55/17 56/23 56/24 57/5
**motions [1]** 45/21
**motivated [1]** 18/4
**motivation [1]** 49/16
**motive [3]** 39/21 40/9 41/17
**motives [1]** 41/14
**mouth [1]** 9/10
**move [12]** 34/3 37/18 40/22

**move... [9]** 45/3 49/11 49/17 55/16 56/22 56/25 57/2 57/3 57/15

**moved [5]** 50/16 51/14 54/10 54/12 54/14

**moving [3]** 13/9 14/1 51/13

**Mr [6]** 2/3 2/7 2/10 2/11 2/14 2/15

**Mr. [12]** 24/24 40/25 41/19 42/14 46/10 46/13 47/15 47/20 52/25 53/6 58/11 58/14

**Mr. Gordon [3]** 24/24 41/19 46/13

**Mr. Harnden [3]** 47/15 47/20 58/11

**Mr. Johnson [2]** 52/25 53/6

**Mr. Wilson [4]** 40/25 42/14 46/10 58/14

**Ms [3]** 2/3 47/22 47/22

**Ms. [7]** 47/16 52/14 53/4 53/11 55/23 56/10 58/23

**Ms. Saxton [4]** 47/16 55/23 56/10 58/23

**Ms. Saxton's [2]** 52/14 53/4

**Ms. Stoller [1]** 53/11

**much [15]** 3/24 11/1 21/7 31/23 31/23 40/4 40/19 40/21 43/5 47/14 48/4 52/24 54/21 55/14 56/11

**must [1]** 33/18

**mutual [1]** 6/14

**my [13]** 3/11 7/20 10/23 30/5 32/2 39/5 45/1 48/3 49/3 50/2 51/4 51/16 53/10

**myself [1]** 7/25

# N

**N.W [1]** 2/4

**nail [1]** 47/3

**nailed [1]** 47/4

**name [1]** 3/11

**named [1]** 50/23

**narrowly [1]** 35/23

**National [2]** 18/4 33/16

**nature [1]** 34/24

**necessarily [1]** 35/10

**necessary [1]** 10/4

**need [6]** 21/19 23/20 24/10 24/13 42/7 50/14

**needs [2]** 11/2 43/16

**negative [1]** 34/25

**negotiated [5]** 8/23 17/22 29/3 29/5 29/7

**neither [1]** 32/18

**never [12]** 9/3 9/7 12/5 12/10 20/18 21/18 23/3 24/12 24/17 38/8 57/6 57/9

**new [17]** 6/15 11/13 11/14 28/8 47/25 48/1 48/4 48/7 48/22 48/22 49/3 49/17 51/23 52/9 52/20 56/21 58/8

**newly [1]** 49/15

**next [6]** 10/20 16/1 16/4 19/11 28/4 30/21

**night [1]** 58/10

**Ninth [7]** 4/14 4/16 4/20 5/5 5/24 13/17 13/19

**no [22]** 1/4 3/5 8/14 10/10 12/6 15/8 17/20 18/22 19/23 23/7 23/22 26/15 31/3 31/6 31/10 32/3 35/2 36/15 42/5 53/6 54/15 56/2

**non [1]** 1/3

**non-profit [1]** 1/3

**nonetheless [1]** 33/18

**normally [1]** 37/14

**normative [2]** 35/8 35/11

**not [118]**

**note [1]** 56/16

**noted [1]** 34/16

**nothing [2]** 40/14 58/24

**notice [8]** 17/14 21/16 23/22 38/21 38/21 53/14 53/19 54/1

**noticed [2]** 23/4 24/13

**notified [1]** 25/25

**noting [1]** 41/15

**notion [1]** 25/20

**notwithstanding [1]** 26/9

**now [18]** 12/4 13/25 17/2 21/4 21/24 22/6 29/15 29/22 38/6 38/18 38/18 49/14 49/21 51/5 52/9 53/5 53/24 58/7

**NSF [2]** 26/13 33/22

**nullifies [1]** 48/14

**number [4]** 6/1 7/17 37/16 46/25

# O

**o0o [1]** 60/2

**objective [9]** 8/8 8/21 8/25 9/15 9/19 10/14 20/11 32/7 32/24

**objectively [4]** 20/13 34/13 36/12 38/23

**obligated [1]** 16/22

**obligation [8]** 12/5 12/10 17/21 25/24 26/13 39/24 39/25 49/11

**obligations [6]** 16/10 16/12

**neither [1]** 32/18 41/3 43/16 43/17 44/15

**obstacle [1]** 12/24

**obviate [1]** 49/3

**obvious [1]** 13/10

**obviously [1]** 17/25

**occurred [1]** 4/22

**off [3]** 31/19 42/8 48/6

**offer [3]** 14/8 15/6 15/24

**offered [1]** 14/9

**offers [2]** 14/7 15/17

**Official [1]** 60/11

**oh [1]** 10/5

**OHA [48]** 5/19 6/10 6/24 8/13 8/20 8/24 8/24 9/1 11/22 12/19 14/1 15/12 16/14 23/19 25/1 25/15 27/12 28/12 28/18 32/10 32/11 33/5 34/14 36/6 36/7 38/10 38/12 38/25 39/17 39/23 40/11 40/14 42/3 45/22 45/23 46/19 46/21 47/11 47/11 49/10 50/19 50/22 52/3 52/5 52/5 53/16 56/21 58/15

**OHA's [6]** 4/8 7/22 25/5 25/17 27/14 45/22

**once [3]** 3/21 47/21 58/7

**one [47]** 4/25 5/1 6/1 6/6 6/8 6/19 7/11 7/18 8/15 9/2 11/4 12/21 12/21 13/1 13/1 13/21 13/22 14/11 16/12 17/6 18/15 19/11 23/3 23/18 25/11 27/5 27/10 28/14 28/17 29/25 31/5 32/4 32/15 33/12 35/2 36/12 36/21 40/2 41/2 42/8 48/6 50/18 54/9 55/5 56/4 56/17 58/2

**one-year [5]** 4/25 5/1 6/6 6/8 6/19

**ones [1]** 7/24

**only [19]** 5/20 11/6 11/8 13/18 14/17 18/10 19/4 22/14 24/3 24/9 24/14 40/5 41/8 43/12 44/20 44/20 51/13 51/16 57/13

**opaque [1]** 16/16

**open [2]** 14/20 16/18

**operate [1]** 17/21

**opinion [3]** 26/4 26/5 58/7

**opponent [11]** 24/5 25/9 26/24 27/20 29/6 34/24 35/4 35/19 36/3 45/4 47/23

**opportunity [11]** 14/8 15/7 15/13 38/15 39/1 41/19 48/23 49/17 57/7 57/17 58/13

**opposed [2]** 27/8 28/17

**opposition [4]** 20/1 22/17 23/8 23/9

**O**

**options [1]** 48/16
**oral [2]** 1/14 3/5
**order [1]** 47/18
**ordered [1]** 13/19
**OREGON [24]** 1/2 1/3 1/6 1/7 1/8 2/10 3/6 3/9 3/12 9/9 9/9 9/13 9/14 16/15 18/2 18/8 26/3 26/5 30/23 33/14 33/16 35/11 39/19 54/3
**original [1]** 60/6
**other [38]** 6/17 8/10 8/12 12/3 14/20 18/11 18/21 18/23 19/25 20/19 21/8 22/6 24/16 24/19 26/2 26/10 27/18 28/14 28/17 29/22 31/17 31/22 31/25 32/19 34/11 34/13 34/24 35/22 36/2 37/3 37/4 37/9 39/23 40/22 41/12 48/4 58/3 58/22
**others [1]** 13/23
**otherwise [5]** 13/5 13/6 17/19 24/3 48/8
**our [14]** 10/4 14/5 16/11 23/21 36/3 38/23 39/10 42/18 48/11 48/13 49/24 50/25 52/16 54/8
**out [28]** 5/17 8/1 8/5 9/9 12/1 12/8 13/14 16/16 18/16 21/11 21/16 26/6 28/16 32/6 32/8 33/24 34/6 39/5 46/15 47/12 49/13 51/10 52/18 52/19 53/5 55/13 56/8 59/1
**outlined [2]** 10/17 30/24
**outright [2]** 5/9 12/19
**outside [3]** 10/7 16/9 22/20
**over [1]** 47/17
**overarching [1]** 6/21
**overlaps [1]** 53/4
**overwhelming [1]** 39/7
**own [2]** 6/25 48/3

**P**

**p.m [2]** 3/2 59/4
**page [3]** 11/25 12/1 38/7
**paid [1]** 50/2
**panic [1]** 57/13
**paragraph [22]** 20/6 20/10 34/8 34/9 35/5 46/22 47/8 47/9 52/16 52/20 52/20 52/21 53/21 54/19 54/21 55/3 55/7 55/9 55/23 56/1 56/3 56/14
**paragraphs [1]** 52/19
**parameters [4]** 43/1 45/14 46/16 46/23
**part [9]** 3/22 3/25 5/8 15/3 17/2

23/14 25/19 39/16 47/3
**partial [1]** 53/3
**particular [3]** 5/7 8/24 57/16
**particularly [2]** 30/25 38/7
**parties [48]** 5/12 5/16 6/3 7/13 8/8 8/11 8/23 9/1 9/1 9/16 9/20 9/22 10/2 12/14 12/15 12/17 13/13 14/25 14/25 17/10 19/4 21/25 22/15 25/14 28/13 28/16 28/20 29/5 29/7 29/9 29/11 30/6 31/2 32/4 32/7 32/19 34/7 36/23 39/16 42/1 42/11 42/21 43/18 45/7 46/6 46/8 46/9 52/4
**parties' [12]** 6/16 7/6 19/18 19/23 20/18 37/15 39/8 39/9 43/2 44/3 44/6 44/21
**party [32]** 8/11 8/20 8/21 9/18 14/1 14/19 14/20 14/21 16/20 17/6 18/9 18/11 18/11 18/12 26/1 26/3 26/9 26/10 27/12 27/18 28/15 29/2 29/4 30/24 32/15 32/18 33/8 37/8 38/11 39/14 40/8 50/22
**party's [2]** 34/20 37/2
**past [11]** 6/17 19/25 21/20 21/23 23/9 24/12 33/7 36/6 36/24 44/16 50/13
**path [1]** 7/19
**paths [1]** 7/23
**pay [3]** 4/4 4/13 16/22
**PC [1]** 2/11
**pendency [1]** 58/1
**people [4]** 35/7 36/18 37/6 47/4
**perfectly [1]** 46/2
**perform [2]** 14/13 29/11
**performance [46]** 4/23 5/3 6/15 6/24 7/1 7/8 7/17 7/21 8/3 8/9 8/9 8/22 9/5 9/16 14/5 14/12 14/13 16/6 18/23 24/25 25/2 25/7 25/8 25/9 25/10 25/12 25/17 26/8 26/25 27/1 27/3 27/7 27/8 27/14 27/22 27/23 27/25 28/10 28/11 28/22 29/10 29/25 30/2 30/9 30/20 32/8
**performed [2]** 6/23 18/16
**performing [3]** 8/10 25/5 40/13
**performs [1]** 30/24
**period [3]** 4/23 27/25 28/12
**Perkins [2]** 2/4 2/7
**person [1]** 52/7
**phrase [3]** 20/23 35/1 35/3
**phrased [2]** 13/10 16/7
**picks [1]** 21/9

**pieces [1]** 3/20
**ping [1]** 16/2
**ping-pong [1]** 16/2
**place [9]** 3/5 11/6 11/8 17/5 19/14 24/5 24/9 24/14 24/16
**placed [1]** 17/17
**places [2]** 17/10 21/7
**plaintiff [7]** 1/4 2/3 3/14 36/16 57/20 57/25 58/18
**plan [1]** 56/7
**plausible [3]** 50/8 50/8 51/2
**plays [1]** 8/1
**pleaded [2]** 22/18 52/21
**pleading [10]** 21/19 37/5 37/7 38/1 38/2 38/11 38/21 44/14 46/15 47/10
**pled [8]** 11/10 11/10 11/12 19/13 19/13 19/17 33/10 53/20
**plus [1]** 31/18
**point [13]** 19/11 27/16 29/20 29/21 30/20 33/7 33/12 41/2 41/12 44/19 45/18 45/19 58/10
**points [4]** 30/8 30/9 32/10 40/22
**policy [1]** 56/7
**pong [1]** 16/2
**portion [1]** 15/10
**Portland [5]** 1/8 2/5 2/12 2/16 2/20
**posed [1]** 13/25
**position [8]** 24/19 47/11 48/11 48/20 49/1 51/1 52/16 58/2
**positive [3]** 34/25 35/8 35/11
**possibility [1]** 32/3
**possible [5]** 9/14 9/20 10/13 32/5 50/8
**posture [1]** 41/11
**potential [2]** 12/17 38/11
**power [1]** 41/25
**practice [1]** 19/25
**practices [7]** 10/11 21/23 23/9 24/12 36/6 36/24 44/16
**precise [1]** 3/22
**precisely [1]** 45/1
**prejudiced [1]** 19/1
**preliminary [2]** 3/20 3/21
**premise [1]** 16/5
**prepare [2]** 23/19 23/20
**prepared [2]** 24/13 58/5
**preparing [1]** 58/9
**present [8]** 4/1 23/23 25/6 25/16 34/15 38/24 41/4 52/22
**presentation [1]** 30/14
**presented [5]** 4/17 7/5 12/5 24/11 30/15

**P**

**pretty [3]** 11/7 18/8 49/23
**previous [1]** 55/11
**previously [3]** 12/5 12/10 53/25
**price [9]** 14/20 15/7 15/9 15/13 16/18 17/1 17/11 17/16 17/19
**principally [2]** 8/12 23/2
**principle [2]** 17/16 20/22
**prior [1]** 56/7
**privileges [1]** 41/16
**probably [7]** 6/6 6/11 7/2 8/19 13/20 37/14 40/23
**problem [4]** 30/5 50/14 50/16 50/20
**procedural [5]** 19/12 38/4 41/11 47/24 48/2
**procedurally [5]** 13/5 48/12 48/24 50/13 57/22
**Procedure [1]** 48/16
**proceedings [3]** 1/15 59/4 60/5
**process [1]** 25/4
**profit [1]** 1/3
**profits [1]** 31/19
**prohibited [1]** 38/9
**proper [1]** 48/12
**properly [1]** 23/17
**proposition [1]** 32/22
**provide [1]** 18/3
**provides [2]** 17/13 41/8
**provision [2]** 33/18 50/21
**purpose [3]** 39/11 41/24 46/1
**purpose of [1]** 46/1
**purposes [10]** 5/23 6/10 10/19 10/24 22/4 22/19 39/15 50/6 50/25 51/1
**pushes [1]** 50/4
**put [5]** 38/21 39/20 42/21 47/12 58/22
**putting [2]** 55/13 56/18

**Q**

**question [57]** 4/17 4/20 5/5 5/7 5/15 5/20 5/24 6/18 7/5 7/10 7/12 7/12 7/17 7/20 10/18 10/20 10/23 11/14 11/15 12/19 12/22 12/25 13/3 13/11 13/12 13/16 13/19 14/3 15/20 16/4 22/25 23/12 24/7 24/24 24/25 30/21 30/22 30/22 33/12 34/22 38/4 39/13 42/24 43/13 43/19 43/24 43/24 44/7 45/6 46/5 46/5 46/6 46/17 50/6 50/12

50/13 51/4
**questions [9]** 4/7 11/11 13/25 19/17 23/7 35/7 37/24 43/23 58/5
**quibble [1]** 11/24
**quick [1]** 41/12
**quintessential [2]** 40/17 40/17
**quite [9]** 5/11 5/14 6/17 6/18 18/2 32/1 41/6 42/23 46/18
**quote [1]** 11/22
**quotes [1]** 25/22

**R**

**racial [1]** 10/10
**racially [1]** 19/1
**raise [4]** 22/17 48/21 57/20 57/24
**raised [4]** 49/20 50/15 50/19 50/19
**raises [2]** 17/19 23/3
**raising [2]** 33/22 47/24
**range [1]** 35/16
**rate [21]** 4/22 5/2 6/22 7/7 7/15 14/4 14/6 14/7 15/16 16/6 20/16 25/2 27/23 28/7 30/12 30/13 30/16 30/16 34/15 47/11 56/8
**rates [23]** 5/1 25/4 25/5 25/6 25/15 25/16 26/16 27/13 27/19 28/13 29/6 29/13 30/14 31/7 31/15 31/16 31/17 31/24 32/12 38/24 40/12 45/24 46/20
**rather [3]** 3/20 33/20 42/13
**read [13]** 7/6 11/5 32/3 35/21 35/22 36/11 36/17 36/21 42/9 43/9 43/11 44/3 51/12
**reading [5]** 12/24 21/5 22/22 35/4 42/20
**real [3]** 6/20 12/6 49/10
**really [13]** 3/23 8/14 8/18 18/13 18/22 18/24 22/10 26/24 35/8 40/17 47/13 51/24 54/5
**realm [1]** 50/5
**reason [5]** 16/13 31/9 32/6 53/6 55/22
**reasonable [47]** 8/8 8/21 8/25 9/15 9/19 9/21 10/9 10/14 11/4 12/16 14/19 14/24 15/15 17/12 18/10 18/18 18/24 19/19 19/23 20/12 20/13 20/18 21/17 21/24 31/2 31/7 31/10 31/24 32/7 32/23 34/13 34/16 34/20 35/6 36/13 38/12 38/17 38/23 39/10 39/16 42/11 43/3 44/4 44/6 44/21 46/8 46/23

**reasonably [2]** 42/1 56/20
**reasons [2]** 57/15 57/23
**recall [1]** 56/15
**recess [1]** 59/2
**recognized [2]** 39/14 45/12
**record [5]** 3/7 43/12 47/19 47/20 60/5
**recover [1]** 37/23
**redlined [1]** 56/2
**reference [1]** 10/2
**referenced [3]** 10/7 10/12 39/23
**reflect [1]** 47/20
**regularly [1]** 9/14
**regulations [4]** 19/20 21/3 34/18 35/17
**reject [3]** 14/9 15/14 27/9
**rejected [2]** 14/22 15/15
**relationship [1]** 19/2
**relatively [2]** 37/5 37/5
**relevant [3]** 34/18 34/18 40/6
**relied [2]** 11/22 35/15
**relief [2]** 54/22 54/23
**rely [5]** 12/9 36/11 36/16 36/18 38/12
**relying [4]** 12/4 23/2 38/6 38/8
**remaining [1]** 4/7
**remarks [1]** 32/3
**remedy [2]** 18/3 41/25
**remember [3]** 29/15 36/3 38/13
**repled [1]** 37/19
**reply [1]** 5/18
**REPORTER [2]** 2/19 60/11
**representative [1]** 54/8
**representatives [1]** 39/4
**representing [1]** 3/12
**represents [1]** 49/16
**require [1]** 40/5
**required [2]** 26/7 49/2
**requirements [3]** 11/13 13/7 19/14
**requires [1]** 8/4
**Residential [1]** 40/3
**respect [2]** 41/3 55/23
**respond [1]** 52/25
**responding [1]** 53/2
**response [5]** 38/7 41/20 51/15 51/16 56/12
**responsive [1]** 23/14
**rest [2]** 48/7 58/12
**Restatement [3]** 9/8 35/12 35/14
**rests [1]** 5/16
**result [1]** 4/5
**results [1]** 3/23

**R**

**resummarize [1]** 8/23
**retaliation [1]** 56/6
**retaliatory [1]** 21/10
**reversed [2]** 4/12 5/6
**reviewed [1]** 39/2
**revisit [1]** 51/20
**RFPs [1]** 38/14
**rid [1]** 17/18
**right [39]** 4/5 4/6 6/18 7/20
 8/16 16/1 19/9 21/4 22/6 22/9
 24/21 26/25 27/3 27/4 28/24
 31/12 32/8 37/24 40/9 40/12
 40/22 44/11 44/24 45/6 45/17
 46/17 46/18 47/15 48/25 51/5
 52/2 52/7 52/7 52/8 52/10
 54/14 55/2 55/17 58/4
**rights [3]** 10/6 41/16 46/7
**RMR [2]** 2/19 60/10
**Room [1]** 2/20
**Rule [1]** 48/18
**Rules [1]** 48/16
**rulings [1]** 49/4

**S**

**S.W [3]** 2/12 2/16 2/20
**said [27]** 4/14 6/5 15/21 16/21
 16/21 17/8 19/10 26/1 26/15
 28/18 30/5 31/14 31/15 31/20
 32/16 32/22 33/17 34/7 34/10
 34/11 39/13 40/23 41/23 42/1
 46/11 46/19 56/6
**same [13]** 8/17 9/13 29/4 41/19
 50/19 52/4 52/8 53/20 53/20
 54/2 54/21 56/1 58/22
**satisfies [5]** 19/14 22/2 22/22
 24/4 24/9
**satisfy [7]** 9/19 21/12 22/21
 22/25 37/22 38/1 38/2
**satisfying [1]** 34/25
**save [1]** 22/17
**saw [1]** 52/6
**SAXTON [11]** 1/7 2/14 3/17
 3/18 47/16 50/9 50/21 50/23
 55/23 56/10 58/23
**Saxton's [3]** 47/22 52/14 53/4
**say [33]** 4/11 5/22 8/6 9/17
 9/23 10/4 11/1 11/5 12/8 13/13
 14/14 15/7 15/21 17/17 18/21
 21/7 21/8 22/19 22/21 26/6
 26/12 27/18 29/13 31/14 37/3
 40/8 44/1 44/5 47/18 53/16
 55/22 57/19 58/11
**saying [4]** 11/23 18/25 22/11

39/20
**says [26]** 11/2 11/3 11/18
 11/25 14/19 14/23 14/24 15/2
 17/9 20/12 23/14 25/3 25/10
 25/14 25/15 25/23 26/18 27/12
 27/21 29/14 31/3 32/11 34/12
 37/3 40/13 40/15
**scope [6]** 12/16 42/11 42/19
 42/22 45/8 47/6
**score [1]** 11/18
**search [1]** 7/14
**Seattle [1]** 2/8
**second [10]** 2/16 15/3 15/8
 15/10 17/2 20/3 20/7 29/1
 30/22 37/1
**see [6]** 9/13 20/21 38/18 44/3
 48/4 51/23
**seeking [1]** 54/9
**seems [1]** 11/17
**seen [3]** 49/9 49/14 57/9
**seizes [1]** 34/12
**sell [1]** 50/1
**send [1]** 58/21
**sense [3]** 12/22 49/12 50/1
**sent [1]** 13/17
**sentence [2]** 34/12 36/2
**separate [3]** 15/4 43/22 56/19
**September [3]** 1/6 3/2 60/9
**series [5]** 4/25 6/6 6/8 6/19 8/3
**serious [1]** 11/15
**service [1]** 16/22
**Services [1]** 33/17
**set [24]** 3/5 5/2 14/20 15/16
 18/8 18/16 25/3 26/16 27/19
 28/15 29/6 31/8 31/15 31/17
 31/18 31/24 31/25 32/6 32/11
 45/24 46/20 48/5 52/18 52/19
**sets [1]** 5/17
**setting [17]** 4/22 5/2 7/15
 16/20 25/2 25/4 27/24 28/7
 28/12 30/13 30/13 30/16 32/4
 32/6 40/12 47/12 56/8
**settings [2]** 6/22 7/7
**settlement [1]** 55/1
**several [1]** 13/22
**share [1]** 52/4
**should [19]** 5/14 6/7 7/22
 11/23 12/14 18/1 18/7 20/17
 22/13 22/21 23/15 23/22 24/2
 24/4 27/21 38/9 44/7 48/2 48/8
**shouldn't [2]** 12/7 55/17
**show [2]** 15/22 15/23
**shows [1]** 29/17
**Shumway [3]** 2/19 60/9 60/10
**side [3]** 8/10 8/15 48/6

sides [2] 8/17 9/10
**signature [2]** 60/7 60/7
**signed [1]** 28/11
**significant [2]** 20/21 57/18
**signing [1]** 60/4
**silly [1]** 49/1
**similar [2]** 31/17 55/8
**simple [1]** 49/1
**simpler [1]** 13/23
**simplistic [1]** 39/20
**simply [5]** 8/19 11/2 11/3 41/12
 58/6
**since [5]** 4/25 13/14 13/16
 21/10 46/5
**single [2]** 36/3 38/11
**sir [1]** 53/9
**sitting [2]** 46/14 47/15
**situation [3]** 15/5 18/14 18/14
**situations [1]** 15/4
**sloppily [1]** 6/7
**smear [1]** 56/8
**so [110]**
**so-called [1]** 41/3
**sole [3]** 32/15 32/16 40/16
**some [8]** 3/20 4/15 11/25 16/11
 27/3 31/25 36/7 48/12
**someone [3]** 27/2 30/1 47/5
**something [27]** 4/12 8/24 10/6
 13/15 22/17 22/19 23/14 27/11
 27/20 28/15 30/8 31/21 32/16
 33/23 35/15 39/9 40/13 40/24
 44/23 46/11 47/18 51/14 51/25
 55/15 55/23 58/8 59/1
**sometimes [3]** 10/2 10/4 10/6
**somewhat [1]** 16/16
**soon [1]** 59/1
**sorry [3]** 28/2 52/5 52/6
**sort [22]** 4/20 5/8 6/1 6/16 6/21
 7/18 8/6 9/2 9/8 9/9 9/21 10/2
 10/24 11/6 12/4 13/7 19/10
 19/12 19/14 23/12 31/1 48/20
**sorts [1]** 21/23
**sought [3]** 49/22 49/25 51/18
**sound [1]** 57/14
**sounds [1]** 58/20
**source [2]** 20/11 22/20
**sources [7]** 9/25 10/7 10/12
 12/3 12/4 12/9 46/7
**speak [2]** 13/9 24/22
**speaking [1]** 48/24
**speaks [1]** 25/18
**special [1]** 3/9
**specific [3]** 31/4 32/13 49/20
**specifically [6]** 14/21 14/21
 37/8 37/8 41/22 46/15

**S**

**specificity [1]** 21/13
**spoken [1]** 47/21
**square [1]** 39/19
**stability [1]** 29/18
**stage [8]** 11/24 33/9 38/6 45/5 45/13 45/13 45/17 45/21
**standard [2]** 19/24 23/23
**standards [16]** 21/23 23/10 23/22 24/12 36/6 36/7 36/10 36/11 36/13 36/15 36/16 36/18 36/19 38/1 38/3 44/15
**standing [1]** 52/6
**start [4]** 4/8 14/1 25/11 44/19
**starting [1]** 40/25
**state [10]** 1/7 3/20 4/3 10/13 10/21 10/22 10/25 16/20 19/18 36/4
**stated [3]** 13/2 16/25 36/1
**statement [2]** 26/7 42/16
**statements [2]** 23/20 23/24
**states [6]** 1/1 1/17 2/19 12/19 42/17 52/16
**stating [2]** 51/4 52/14
**statute [1]** 13/8
**statutes [2]** 10/6 34/18
**statutorily [1]** 29/16
**statutory [2]** 40/1 40/2
**step [1]** 44/4
**still [5]** 26/21 27/2 32/17 54/1 57/17
**Stoller [3]** 2/3 3/15 53/11
**stood [1]** 53/6
**stop [1]** 6/1
**Street [1]** 2/4
**struggling [1]** 28/21
**subject [7]** 5/1 10/9 12/11 23/3 24/18 35/9 52/3
**subjective [1]** 40/5
**subjects [1]** 23/4
**submit [1]** 43/13
**submitted [1]** 44/7
**subset [1]** 28/24
**substantially [1]** 57/20
**substantive [1]** 13/24
**subtle [1]** 16/13
**such [17]** 8/14 9/7 10/21 10/22 10/25 11/12 17/24 18/7 24/17 30/23 30/23 33/6 33/8 33/10 36/18 42/22 46/16
**sufficient [1]** 36/2
**sufficiently [2]** 23/4 42/17
**suggested [4]** 6/7 23/8 32/2 43/3

**suggesting [1]** 5/9
**suggests [1]** 12/18
**Suite [3]** 2/8 2/12 2/16
**summary [11]** 13/12 13/14 13/15 45/11 45/20 53/3 53/17 56/23 56/24 57/3 57/6
**supplement [1]** 10/1
**support [1]** 51/2
**supporting [1]** 50/9
**suppose [2]** 51/16 51/21
**supposed [5]** 25/15 27/12 27/13 40/14 52/17
**Supreme [5]** 16/15 18/2 18/8 26/4 26/5
**sure [15]** 17/15 20/4 22/1 25/1 26/20 27/17 30/5 37/15 39/22 41/20 42/23 48/10 52/13 58/7 58/12
**surprised [1]** 13/13
**suspect [1]** 5/13
**sweep [3]** 20/23 21/22 21/22
**sweeps [1]** 34/17

**T**

**table [1]** 58/9
**tactic [1]** 53/7
**take [6]** 3/20 15/20 20/3 32/21 36/5 37/20
**taken [2]** 38/12 58/2
**taking [2]** 37/1 56/16
**talk [8]** 9/4 9/9 9/11 23/9 23/21 47/9 47/16 49/6
**talked [1]** 25/19
**talking [7]** 30/11 30/12 33/13 36/25 41/14 47/7 50/3
**talks [6]** 14/18 25/20 34/19 36/4 42/3 55/13
**technical [1]** 23/12
**telescopic [1]** 9/2
**telescopically [3]** 10/19 10/20 19/10
**tell [6]** 27/7 29/2 29/9 29/24 35/18 51/12
**telling [9]** 25/9 25/9 25/11 28/22 29/1 29/4 29/6 29/10 30/7
**tells [5]** 27/5 27/5 29/9 30/6 51/23
**ten [2]** 32/14 38/13
**Tenant [1]** 40/3
**tentative [2]** 4/3 48/3
**tentatively [3]** 9/6 10/23 10/23
**term [30]** 5/23 5/25 14/20 14/22 15/7 15/9 15/13 15/15 15/16 16/18 16/21 17/1 17/6

17/10 17/11 17/13 17/16 25/16 25/21 27/1 27/9 29/18 32/10 32/13 32/25 33/4 33/6 34/17 41/7 42/5
**terminate [6]** 25/25 26/2 26/9 26/23 27/2 27/9
**termination [1]** 25/21
**terms [32]** 5/23 7/14 7/14 7/15 9/4 9/11 9/12 9/17 9/25 12/23 13/8 14/7 14/10 17/19 18/10 18/19 19/8 23/21 27/18 28/8 28/8 30/24 41/9 42/17 43/6 43/7 43/9 44/3 44/5 44/22 47/5 56/7
**text [1]** 5/17
**textually [1]** 22/2
**than [10]** 3/20 6/7 20/19 31/24 33/20 36/2 38/13 40/4 48/4 49/7
**Thank [20]** 3/19 14/2 19/9 24/21 40/21 41/1 41/18 47/14 48/25 52/2 52/24 53/9 53/9 55/14 55/19 56/11 56/13 58/4 58/17 58/25
**that [472]**
**that that [1]** 8/16
**that's [82]**
**their [7]** 9/10 23/2 23/24 29/18 38/12 39/18 40/9
**them [22]** 5/8 5/21 5/22 10/1 17/19 17/22 21/18 21/18 22/21 24/16 30/7 31/11 37/3 38/19 38/20 38/21 41/17 44/16 47/3 47/3 58/21 58/22
**theme [1]** 21/9
**then [46]** 4/3 5/2 5/6 7/22 8/3 8/25 10/19 12/11 12/13 13/1 13/2 13/8 15/1 15/20 16/6 17/9 17/11 19/11 20/15 21/8 22/3 23/1 24/9 26/5 27/21 27/24 30/14 30/21 33/8 34/8 35/3 35/6 36/18 37/18 37/19 37/19 38/5 40/9 43/16 43/18 45/3 45/11 48/1 51/3 54/10 56/19
**theories [4]** 11/14 37/16 38/6 38/8
**theory [19]** 22/5 22/6 23/2 24/1 24/17 35/18 47/6 49/8 49/14 52/10 53/23 54/18 56/9 56/21 56/23 56/25 57/1 57/12 57/16
**there [47]** 4/25 6/3 8/3 8/7 9/4 9/15 10/10 16/9 16/11 16/18 17/9 17/25 18/6 18/22 19/4 19/22 20/7 24/11 25/20 26/15 28/19 32/16 34/9 36/20 39/23

**there... [22]** 40/7 40/14 40/18 41/6 41/22 42/13 42/17 43/17 43/22 43/23 44/10 44/13 45/20 45/20 46/25 50/7 51/1 52/6 54/11 55/6 55/12 56/21

**there's [24]** 4/21 5/19 6/17 8/13 8/14 8/16 12/6 12/13 12/15 12/25 17/20 20/18 23/6 31/20 39/5 42/5 44/7 45/9 46/8 46/14 48/17 50/20 57/14 58/8

**therefore [3]** 12/6 15/16 42/1

**these [10]** 7/7 7/13 7/14 7/21 11/4 38/15 39/4 42/3 49/24 52/25

**they [66]**

**they'd [1]** 54/7

**They'll [1]** 10/4

**they're [8]** 8/2 8/17 26/10 30/3 40/12 47/5 47/8 47/9

**They've [1]** 38/14

**thing [14]** 8/14 8/24 14/15 18/21 27/5 29/3 37/1 37/17 42/8 44/20 44/21 51/13 53/16 56/16

**things [31]** 12/3 14/11 15/23 18/6 19/24 19/25 20/6 21/9 21/23 27/10 28/18 28/19 29/23 31/22 34/11 34/13 34/20 34/24 35/2 35/20 35/22 36/2 36/5 36/6 36/20 37/4 37/4 37/9 37/16 38/15 50/18

**things,' [1]** 37/3

**think [86]**

**thinking [1]** 10/20

**thinks [1]** 21/2

**third [5]** 2/8 2/20 4/9 54/22 54/23

**this [105]**

**Thomas [1]** 2/3

**thoroughly [1]** 42/13

**those [37]** 3/21 5/1 5/2 5/3 5/25 9/24 10/3 10/12 10/15 16/12 18/1 18/10 18/23 19/16 23/10 25/6 26/16 27/10 33/21 34/23 36/2 36/6 36/24 37/4 37/7 39/1 40/3 40/5 40/8 43/9 43/17 43/18 45/9 54/9 54/10 57/10 58/5

**though [2]** 43/8 55/23

**thought [6]** 5/5 20/2 20/23 37/17 48/20 58/9

**three [3]** 5/8 28/18 48/9

**three-part [1]** 5/8

**through [3]** 6/25 30/15 54/17

**throughout [1]** 21/1

**time [17]** 3/4 4/2 4/22 9/13 9/18 11/25 16/23 20/1 23/23 28/12 29/4 30/4 49/21 51/24 54/4 56/1 57/5

**timelier [1]** 20/17

**timely [5]** 34/15 38/25 46/21 51/12 51/13

**times [1]** 21/2

**timing [5]** 19/14 47/24 52/9 55/15 57/23

**timingly [1]** 57/23

**today [16]** 4/18 5/12 5/15 7/4 7/5 7/25 11/15 13/22 46/12 46/14 46/17 47/17 55/17 58/6 58/12 59/1

**today's [1]** 6/10

**Tolbert [35]** 8/12 11/1 11/5 14/18 14/19 14/23 14/24 15/2 15/3 15/4 15/8 15/10 16/14 16/16 16/24 17/2 17/4 17/7 17/9 18/14 25/18 25/19 25/20 25/22 26/12 26/14 26/17 26/22 30/22 30/22 31/3 31/13 32/3 41/6 42/16

**told [3]** 25/8 26/22 31/11

**Tom [1]** 3/16

**too [7]** 13/6 39/20 48/2 48/9 49/5 50/13 57/19

**took [4]** 11/21 11/21 12/1 57/17

**total [1]** 7/6

**totality [1]** 43/12

**track [1]** 21/6

**transcript [3]** 1/15 60/5 60/6

**transcripts [1]** 39/3

**treating [1]** 37/21

**treatises [1]** 35/17

**tree [4]** 7/18 7/19 7/24 43/15

**trial [6]** 23/17 23/20 24/11 45/20 45/21 47/5

**tricky [1]** 38/5

**triggers [1]** 48/23

**tripling [2]** 56/20 56/20

**troubled [1]** 35/3

**true [2]** 5/13 12/8

**Trust [1]** 24/14

**try [4]** 3/21 4/1 21/16 47/12

**trying [4]** 4/13 16/6 29/22 29/23

**turn [1]** 47/16

**turning [1]** 47/17

**turns [2]** 11/25 12/8

**two [15]** 7/23 8/17 8/17 11/11

15/4 19/17 29/2 32/9 33/21 43/22 48/3 48/15 48/15 50/1 56/4

**twofold: [1]** 19/12

**twofold:  Has [1]** 19/12

**Twombly [18]** 10/24 21/13 22/2 22/21 22/23 23/1 24/4 24/9 33/9 34/3 34/22 34/25 36/3 37/22 50/7 50/25 51/5 51/7

**type [2]** 54/8 54/10

**types [1]** 34/19

**typically [3]** 15/23 45/19 57/25

**U**

**U.S [1]** 18/4

**UCC [2]** 40/2 41/13

**ultimate [2]** 22/5 22/6

**ultimately [3]** 9/10 39/12 45/9

**umbrella [1]** 9/8

**unambiguous [7]** 5/17 18/9 19/5 19/6 19/7 41/7 41/9

**unambiguously [1]** 6/2

**unanswered [1]** 4/18

**unbiased [3]** 20/17 21/9 38/25

**under [17]** 9/8 25/2 25/5 25/17 26/8 27/12 27/14 28/13 36/2 40/2 40/3 45/24 48/16 48/18 50/7 51/6 54/3

**underlying [2]** 15/22 51/20

**understand [13]** 14/4 16/4 22/6 23/25 24/7 27/17 29/20 30/19 40/20 42/23 44/14 46/2 49/8

**Understood [1]** 34/2

**unilateral [1]** 42/2

**unilaterally [1]** 33/18

**UNITED [3]** 1/1 1/17 2/19

**unlike [1]** 26/23

**unlimited [2]** 40/8 40/15

**unobjectionable [1]** 11/18

**unpleasantly [1]** 18/3

**unreasonable [3]** 19/1 45/23 45/25

**unrestricted [2]** 42/2 42/3

**until [1]** 51/10

**untimely [2]** 51/11 51/11

**unusual [1]** 4/12

**up [12]** 3/23 6/20 11/13 12/14 13/8 21/9 23/4 26/21 35/19 38/17 52/6 53/6

**upon [6]** 6/13 7/15 11/22 17/6 35/4 50/10

**Uptown [3]** 41/4 41/10 41/21

**us [8]** 4/18 11/15 21/16 24/10

**us... [4]**  26/24 38/24 50/1 50/4
**use [3]**  22/10 22/14 45/24
**used [2]**  7/2 47/11

**V**

**vague [2]**  4/16 37/17
**vagueness [1]**  37/24
**validity [1]**  22/7
**verbally [1]**  55/8
**verbatim [1]**  56/15
**versus [2]**  3/6 24/25
**very [20]**  3/24 4/11 4/25 13/18 16/3 16/13 18/6 20/1 20/21 23/7 40/21 47/14 51/5 52/4 52/24 55/14 56/11 56/15 57/18 58/25
**Veterans [1]**  33/16
**via [1]**  45/20
**view [11]**  7/20 7/25 10/23 14/5 16/11 18/14 27/19 42/22 45/18 48/13 49/24
**viewed [2]**  4/20 8/3
**views [4]**  3/20 3/21 4/3 48/3
**violated [3]**  43/21 43/25 45/9
**violates [1]**  47/23
**violation [3]**  42/10 52/17 52/18

**W**

**WA [1]**  2/8
**walk [1]**  54/17
**walked [1]**  7/24
**want [30]**  3/19 3/21 4/1 4/4 4/8 4/18 8/5 15/10 15/11 18/6 22/11 23/13 26/21 27/17 29/23 32/1 33/11 35/21 35/21 35/22 37/2 40/22 43/8 50/12 52/13 53/8 53/12 58/7 58/11 58/12
**want to [1]**  35/21
**wanted [1]**  29/18
**wants [2]**  17/18 24/5
**was [60]**  4/17 5/24 6/7 11/10 11/12 15/16 16/18 20/23 21/10 24/17 25/3 27/1 28/10 28/11 28/20 29/17 31/5 31/17 33/23 34/9 36/13 36/16 36/24 37/17 37/19 39/11 39/11 40/1 40/1 40/2 41/10 44/22 45/1 45/23 46/5 48/20 49/12 49/12 53/7 53/21 53/24 54/2 54/9 54/21 54/21 54/23 54/25 55/3 55/4 55/4 55/6 55/10 55/12 55/22 56/2 56/6 56/8 56/9 57/5 58/10
**wasn't [1]**  53/25
**way [20]**  7/1 9/17 10/5 11/12 11/19 11/20 13/10 13/18 19/1 19/13 22/22 23/18 24/18 27/3 28/14 31/18 43/12 46/16 51/13 58/2
**ways [3]**  8/17 9/22 22/6
**we [71]**
**we'd [2]**  15/23 44/16
**we'll [5]**  4/10 11/10 29/22 37/22 59/2
**we're [21]**  10/5 13/14 16/6 21/4 30/11 30/12 30/17 33/7 33/9 33/13 33/19 33/25 36/24 37/13 40/11 42/4 47/7 50/3 52/3 52/15 57/22
**we've [7]**  7/24 23/22 24/12 34/5 34/6 34/7 58/8
**well [28]**  5/22 10/1 12/14 13/17 14/14 20/25 21/4 23/6 25/13 27/23 28/25 29/5 30/10 34/22 35/12 35/24 36/20 42/25 43/11 44/12 46/10 46/22 47/7 50/17 51/4 54/16 55/13 57/21
**Wells [3]**  32/14 39/14 45/12
**went [1]**  26/12
**were [42]**  4/1 4/25 5/21 12/5 14/7 15/19 16/6 19/19 19/24 20/19 21/21 23/3 26/14 27/2 28/19 28/19 34/15 36/11 36/17 37/16 38/17 38/24 38/25 43/20 43/25 44/4 44/25 45/9 45/10 45/24 45/25 46/20 46/21 52/7 53/14 53/19 54/1 54/2 54/9 54/11 56/14 58/9
**weren't [2]**  12/11 37/15
**what [113]**
**what's [8]**  5/24 6/10 24/1 24/10 48/7 49/21 51/15 57/12
**when [22]**  7/6 10/15 10/16 23/22 25/3 27/20 28/10 28/12 30/11 31/20 33/13 36/4 37/6 37/6 37/18 41/6 41/13 44/1 45/17 51/23 55/4 58/9
**where [31]**  6/16 8/9 9/4 11/3 15/5 15/8 17/17 18/14 22/12 23/1 24/5 24/15 28/18 30/20 30/25 31/13 32/4 32/16 33/7 34/9 35/4 37/3 37/15 40/17 42/17 47/2 47/3 47/4 50/4 51/19 54/17
**whereas [1]**  17/7
**whether [20]**  7/7 7/8 10/11 12/15 16/7 22/22 26/9 29/9 29/24 34/23 42/10 43/1 43/20 43/25 45/8 46/14 51/20 53/13 53/13 57/7
**which [40]**  4/9 4/22 4/24 5/3 5/20 6/17 6/24 7/15 11/17 11/19 14/4 15/6 15/17 17/10 20/15 21/9 23/12 24/11 29/23 30/23 31/6 36/22 38/5 38/12 45/4 47/10 48/18 49/11 49/14 50/4 50/19 50/21 52/4 52/16 52/18 52/19 53/3 54/3 56/6 56/25
**while [7]**  5/9 12/1 22/12 28/13 28/16 49/9 52/3
**who [2]**  6/18 24/22
**whole [2]**  9/8 36/22
**why [11]**  3/22 4/19 21/12 26/16 29/16 29/17 32/6 40/16 48/7 50/23 51/10
**will [9]**  4/5 9/19 18/12 25/4 27/15 29/14 31/21 31/24 41/8
**Wilson [6]**  2/10 3/9 40/25 42/14 46/10 58/14
**win [1]**  29/21
**wish [2]**  38/18 42/14
**within [10]**  4/22 6/11 6/21 8/20 8/25 17/20 23/16 30/3 51/19 56/5
**without [2]**  44/23 60/6
**witness [2]**  23/20 23/24
**witnesses [1]**  23/21
**won [3]**  37/18 54/12 54/14
**won't [1]**  12/11
**word [1]**  7/2
**words [4]**  13/13 20/22 34/23 37/7
**work [2]**  16/5 23/25
**works [1]**  24/1
**world [2]**  35/9 35/10
**worse [1]**  22/3
**would [55]**  4/23 5/1 5/2 5/4 5/21 9/23 10/9 11/1 11/4 14/20 17/25 17/25 21/19 22/21 23/16 24/9 24/10 24/11 24/18 26/16 31/7 31/15 31/16 31/18 32/22 33/22 34/15 36/17 38/24 39/3 41/2 43/6 43/13 43/14 43/19 44/20 45/11 45/19 45/20 45/22 45/23 46/19 46/20 48/8 48/10 50/16 51/1 51/16 52/1 53/16 54/18 57/17 57/19 57/22 57/23
**wouldn't [3]**  6/2 18/25 23/17
**written [1]**  58/7

**Y**

**year [28]**  4/21 4/23 4/25 5/1 5/10 5/17 5/19 6/2 6/6 6/8 6/8 6/11 6/15 6/19 6/19 6/22 6/23

**Y**

**year... [11]**  7/7 28/5 28/7 28/7
28/9 28/11 29/8 29/12 29/15
29/21 30/7
**years [4]**  5/2 29/16 32/14 48/9
**yes [14]**  10/24 15/7 19/3 19/13
24/20 28/25 48/24 53/15 54/20
55/10 55/18 55/21 56/2 56/5
**yet [4]**  16/2 25/10 25/20 32/1
**Yogman [3]**  5/8 5/20 7/13
**you [171]**
**you'd [3]**  15/21 32/20 37/14
**you're [19]**  14/14 22/7 28/6
28/22 29/1 29/4 29/10 33/3
35/5 35/19 36/14 36/15 37/8
38/6 38/7 51/13 51/22 51/24
55/7
**you've [9]**  17/3 25/8 26/22
29/25 34/4 42/13 43/3 45/4
46/11
**your [122]**
**yourself [2]**  3/7 34/10