**David B. Markowitz, OSB #742046**
DavidMarkowitz@MarkowitzHerbold.com
**Harry B. Wilson, OSB #077214**
HarryWilson@MarkowitzHerbold.com
**Laura Salerno Owens, OSB #076230**
LauraSalerno@MarkowitzHerbold.com
MARKOWITZ HERBOLD PC
1455 SW Broadway, Suite 1900
Portland, OR  97201
Tele:  (503) 295-3085
Fax:  (503) 323-9105

   Special Assistant Attorneys General for Defendant Oregon
   Health Authority, an agency of the State of Oregon
   [Additional Counsel of Record Listed on Signature Page]

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| FAMILYCARE, INC., an Oregon non-profit corporation,<br><br>         Plaintiff,<br><br>  v.<br><br>OREGON HEALTH AUTHORITY, an agency of the State of Oregon, and LYNNE SAXTON,<br><br>         Defendants. | Case No. 6:18-cv-00296-MO<br><br>**OREGON HEALTH AUTHORITY'S RESPONSE TO FAMILYCARE'S SUPPLEMENTAL BRIEF REGARDING GOOD FAITH** |

**INTRODUCTION**

   Under Oregon law, there is no implied duty of good faith in precontractual negotiations. There is an implied duty of good faith in the performance of contracts.  In that context, the duty of good faith operates to effectuate the reasonable expectations of the parties as determined under the terms of their contract.  The CCO Contract required OHA to offer FamilyCare annual rate amendments, which FamilyCare was free to accept or reject.  The CCO Contract expressly contemplated that the parties might not reach an agreement on a rate amendment, thereby terminating the Contract.  Because performance of the Contract did not require agreement on rate

**Page 1 -  OREGON HEALTH AUTHORITY'S RESPONSE TO FAMILYCARE'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL BRIEFING**

amendments, the implied duty of good faith does not extend to the parties' pre-rate-amendment negotiation.

FamilyCare's arguments to the contrary are unavailing. No Oregon authority provides that pre-contractual negotiation is subject to the implied duty of good faith and the only controlling authority—*Tolbert v. First Nat. Bank of Oregon*, 312 Or. 485 (1991)—holds that it does not. The various out-of-state authorities FamilyCare cites are not binding on this Court, fail to support FamilyCare's arguments, or address inapposite fact patterns.

Finally, even if the Court were to conclude that the duty of good faith attaches to OHA's rate amendment offers, the Court should still dismiss FamilyCare's third claim for relief. Where, as here, the contract expressly establishes the method for OHA's exercise of discretion to set rates, the duty of good faith cannot impose extra-contractual conditions on that discretion. OHA complied with the two conditions on its discretion. Accordingly, FamilyCare's claim fails.

## ARGUMENT

**I.    The implied duty of good faith does not govern OHA's offers for rate amendments because the CCO Contract does not require the parties to agree on amendments.**

Under Oregon law, the implied duty of good faith and fair dealing does not apply to the formation of contracts. *Tolbert*, 312 Or. at 493. In its supplemental briefing, FamilyCare contends, however, that the implied duty of good faith applies to "OHA's rate-setting" because the CCO Contract "require[ed] annual rate amendments[.]" (FamilyCare's Supp. Br. (Dkt. 476-1) at 8-9.) The duty of good faith, according to FamilyCare, attaches to the offered rate amendments because the rate amendments were not contract formation, they were performance of the contract.

FamilyCare's argument is wrong. To perform the CCO Contract, OHA was required to offer FamilyCare a rate amendment each year. (Dkt. 433-1 at 12, 19.) But the CCO Contract did not require that the parties reach an agreement on a rate amendment; it expressly contemplated that they might not. (Dkt. 433-1 at 12 ("If the parties have not entered into a Rate Amendment by the [first day of the year], then this Contract will terminate on the [first day of

**Page 2 -   OREGON HEALTH AUTHORITY'S RESPONSE TO FAMILYCARE'S
                MOTION FOR LEAVE TO FILE SUPPLEMENTAL BRIEFING**

the year] automatically and without any requirement for notice between the parties.").)  Thus, although the CCO Contract required OHA to offer a rate amendment, it did not require OHA to offer a rate amendment that FamilyCare could or would accept.  Accordingly, the CCO Contract, in effect, put the parties in a state of pre-amendment negotiation, with no expectations about the outcome.  And, under Oregon law, the duty of good faith does not apply to precontractual negotiations.  *Tolbert*, 312 Or. at 492 (There is "no duty of good faith in precontractual negotiation."  (*Citing* 1 Farnsworth, Contracts 312, § 3.26a (1990))).  The parties could perform the CCO Contract by reaching agreement on an amendment or they could perform the CCO Contract by failing to reach agreement on an amendment.  Because neither outcome was required, the implied duty of good faith does not govern the parties' pre-amendment conduct.[1]

The circumstances might have been different had OHA and FamilyCare agreed to different terms in the initial, 2014 CCO Contract.  If, for example, the CCO Contract, provided OHA with unilateral discretion to modify the rates each year, without an opportunity for FamilyCare to accept or reject an offer, the duty of good faith would have applied.  *Best v. U.S. Nat'l Bank of Or.*, 303 Or. 557 (1987).  (Although, as discussed below, if the contract identified OHA's method of exercising its discretion, the duty would have extended no further than OHA's application of that expressly agreed method.)  Or, if the CCO Contract had required OHA and FamilyCare to reach an agreement on rates, the duty of good faith may have

---

[1]  The CCO Contract had a five-year term, but the five-year term did not guarantee either party a contractual right to five years of performance.  The term simply meant that the Contract expired after five years if it had not been terminated earlier: "This Contract is effective January l, 2014.  Unless extended or terminated earlier in accordance with its terms, this Contract expires on December 3 1, 2018."  (Dkt. 433-2 at 7.)  The Contract repeatedly made clear that the Contract could terminate in fewer than five years.  As noted above, if the parties did not execute an annual rate amendment, the CCO Contract terminated automatically.  (Dkt. 433-1 at 12.)  In addition, both FamilyCare and OHA could terminate the Contract without cause and in their "sole discretion."  (Dkt. 433-2 at 245; 433-1 at 15.)  FamilyCare frequently cites the legislative history of a statute governing OHA's administration of CCOs to contend that it had a right to five years of performance.  But where, as here, the contract is not ambiguous (and OHA and FamilyCare agree that it is not ambiguous), courts may not look outside the contract.  *Yogman v. Parrott*, 325 Or. 358, 361 (1997) ("First, the court examines the text of the disputed provision, in the context of the document as a whole.  If the provision is clear, the analysis ends.").

**Page 3 -  OREGON HEALTH AUTHORITY'S RESPONSE TO FAMILYCARE'S**
**MOTION FOR LEAVE TO FILE SUPPLEMENTAL BRIEFING**

applied (*i.e.,* as in an "agreement to agree").  *See, e.g.*, *Black & Veatch v. Modesto Irr. Dist.*, No. CV F 11-0695 LJO SKO, 2011 WL 2636218, at \*5 (E.D. Cal. July 5, 2011) (duty of good faith applied to new contract formation where the contract stated an adjustment "shall be made" by mutual agreement).  But neither of those situations are present here.  The CCO Contract required OHA to make an offer for rates, but FamilyCare was not required to accept it and the CCO Contract expressly contemplated that the parties might not reach agreement.  OHA's offers, therefore, were no more than precontractual negotiations for a potential amendment.  Under Oregon law, an implied duty of good faith does not apply to negotiations.

FamilyCare's argument is also wrong because FamilyCare did not have a reasonable contractual expectation that OHA would offer terms to which FamilyCare could or would agree.  "The duty of good faith operates to effectuate the reasonable expectations of the parties as determined under the terms of their contract."  *Pac. First Bank v. New Morgan Park Corp.*, 319 Or. 342, 354 (1994) (emphasis omitted).  As described above, the CCO Contract did not require the parties to agree to annual rate amendments.  Accordingly, FamilyCare did not have a reasonable contractual expectation that OHA would make offers to which FamilyCare would agree; FamilyCare's only reasonable expectation was that OHA would make a rate amendment offer and it would have the opportunity to accept or reject it.

FamilyCare contends that the duty of good faith applies to rate amendment formation because there was an existing contractual relationship between the parties.  (FamilyCare's Supp. Br. at 6-7.)  That could be true in some cases where the existing contract requires agreement to amendments or establishes conditions on negotiations for amendments.  *See*, *e.g.*, *Black & Veatch*, 2011 WL 2636218, at \*5.  But where, as here, the underlying CCO Contract does not require acceptance of offers—and expressly contemplates termination of the Contract in the absence of agreement on amendments—the duty of good faith does not apply.

**Page 4 -   OREGON HEALTH AUTHORITY'S RESPONSE TO FAMILYCARE'S
            MOTION FOR LEAVE TO FILE SUPPLEMENTAL BRIEFING**

**II.      The only controlling authority provides that the implied duty of good faith does not apply to contract formation.**

*Tolbert*—decided by the Oregon Supreme Court—is the only controlling authority addressing the implied duty of good faith and contract formation.  It holds that "[i]n the context of contract formation, when there is an agreement after full disclosure, [a contracting party's] expectations are irrelevant."  312 Or. at 492-93.  OHA fully disclosed its offered rates in the proposed amendments; because FamilyCare could choose to accept or reject those offers, its expectations were irrelevant.

*Tolbert* does not address the formation of contract amendments, but *Thomas v. OneWest Bank, FSB*, No. CIV. 10-6234-AA, 2011 WL 3585042 (D. Or. Aug. 15, 2011) does, and it concluded that the duty of good faith did not apply even though there was an existing contract.  In that case, a bank offered an amended promissory note to plaintiffs.  *Id.* at *1.  Plaintiffs agreed to the amendment and later defaulted.  *Id.*  Plaintiffs brought a claim for breach of the duty of good faith regarding the bank's representations in offering and drafting the proposed amended note.  *Id.*  The Court dismissed plaintiffs' claim because it found that the duty of good faith did not apply to formation of the amendment: "As the implied duty of good faith does not attach until after the contract is formed, *Tolbert*, 312 Or. at 492, . . . defendant did not have a duty . . . to make representations in good faith or to draft the terms of the [amended note] in good faith."  *Id.* at *7.

The Oregon authority FamilyCare cites does not reach any other conclusion.  Indeed, the Oregon cases cited by FamilyCare, such as *Best v. U.S. National Bank*, 303 Or. 557 (1987), *Associated Oregon Veterans v. Department of Veterans' Affairs*, 300 Or. 441 (1985), and *Wells Fargo Bank, N.A. v. The Ash Organization*, No. 09-CV-188-MO, 2010 WL 2681675 (D. Or. July 2, 2010), do not address contract amendment at all.  (*See* FamilyCare's Supp. Br. at 3.) *Depaul Industries v. City of Eugene*, No. 6:18-CV-00320-MC, 2020 WL 5078758 (D. Or. Aug. 27, 2020) involved a decision not to extend a contract, not the formation of a contract amendment.

**Page 5 -  OREGON HEALTH AUTHORITY'S RESPONSE TO FAMILYCARE'S**
           **MOTION FOR LEAVE TO FILE SUPPLEMENTAL BRIEFING**

FamilyCare's string cites of out-of-state and non-binding authority also offer little guidance.  In some instances, FamilyCare's descriptions of the out-of-state authority are incomplete.  For example, FamilyCare cites the California Court of Appeals decision in *Racine & Laramie, Ltd. v. Department of Parks & Recreation* for the proposition that "a contractual alteration . . . may impart an obligation to negotiate in good faith."  (FamilyCare's Supp. Br. at 8.)  But that case actually holds that "[t]he fact that parties commence negotiations looking to a contract, or to the amendment of an existing contract, does not by itself impose any duty on either party not to be unreasonable or not to break off negotiations, for any reason or for no reason."  11 Cal. App. 4th 1026, 1034 (1992), *reh'g denied and op. mod.*, (Jan. 6, 1993), *as mod. on denial of reh'g*, (Mar. 25, 1993).  Moreover, the portion of the decision FamilyCare quotes suggests that an express agreement could impose a duty of good faith on negotiations, an unexceptional proposition that is not at issue here.

Other cases FamilyCare cites are inapposite because they address unilateral contract modification, not an offer for an amendment.  *See, e.g., Yufan Zhang v. UnitedHealth Grp.*, 367 F. Supp. 3d 910, 916 (D. Minn. 2019) (addressing unilateral modifications to contracts, not amendment formation); *Pre-Paid Legal Servs., Inc. v. Cahill*, 171 F. Supp. 3d 1219, 1224 (E.D. Okla. 2016) (same); *Rekhter v. State, Dep't of Soc. & Health Servs.*, 323 P.3d 1036 (Wash. 2014) (addressing setting future contract terms within an existing contract, not amendment formation).  *Rand-Whitney Containerboard Ltd. Partnership v. Town of Montville*, 289 F. Supp. 2d 62, 79 (D. Conn. 2003), which interprets Connecticut law, suggests that the duty of good faith applies to renegotiation of contracts, but does not contain persuasive analysis.  *Keiter v. Penn Mutual Insurance Company*, 900 F. Supp. 1339, 1345 (D. Haw. 1995) addressed circumstances in which defendant induced plaintiff to cancel a contract and enter a new contract, not an offer for amendment.

**III.    Even if the Court concludes that the implied duty of good faith attaches to OHA's rate amendment offers, OHA met the duty because it exercised its discretion according to the parties' reasonable contractual expectations.**

If the Court concludes that the implied duty of good faith applies to OHA's offers for rate amendments, the Court still should dismiss FamilyCare's claim.  Where, as here, a contract expressly establishes a method for exercising discretion, the implied duty of good faith does not impose any extra-contractual conditions on that discretion.  The CCO Contract's unambiguous terms provide that OHA has discretion to set rates subject to only two conditions: the rates must be 1) actuarily set and certified and 2) submitted to CMS for approval.  FamilyCare has made no allegations that OHA failed to meet these conditions.

Oregon Supreme Court case law holds that when a contract expressly establishes the method for exercising discretion, courts may not look outside the contract to define the parties' reasonable expectations.  In *Best*, the contract between the depositors and the bank had an open price term, and the contract did not establish any method—even a unilateral exercise of discretion—for setting the price: "The sole reference to NSF fees was contained in the account agreement signed by the depositors, which obligated them to pay the Bank's 'service fees in effect at any time.'"  303 Or. at 565.  In *Tolbert*, by contrast, the agreement between the depositors and the bank expressly established that the bank had discretion to set the fees: "'These charges are subject to change at the discretion of [bank].'"  *Tolbert*, 312 Or. at 491.  This distinction was critical.  In *Best*, because the contract did not include any method for setting the open price term, the Supreme Court looked outside of the contract, to things like the bank's cost studies, to consider the reasonable expectations of the parties.  303 Or. at 565-66.  In *Tolbert*, because the bank "enforced a right specifically granted to it under the contract," the Supreme Court concluded that "as a matter of law . . . the parties' reasonable expectations have been met."  312 Or. at 493-94.

The Oregon Supreme Court relied on this precise and subtle distinction to decide *Uptown Heights Associates Ltd. Partnership v. Seafirst Corporation*, 320 Or. 638 (1995).  In that case, Uptown entered into a construction loan agreement with a bank to build an apartment

complex. *Id.* at 641-42. The loan agreement "gave [the b]ank the right to foreclose should Uptown default on the loan." *Id.* at 645. Uptown was unable to make its payments on the loan and the bank initiated a foreclosure. *Id.* at 642-43. Uptown found two potential buyers for the apartment complex, notified the bank, and asked it to postpone the foreclosure. *Id.* at 643. But the bank refused to postpone the foreclosure sale and foreclosed on the property. *Id.* at 643-44. Uptown sued the bank for breach of the implied duty of good faith and fair dealing. The trial court granted the bank's motion to dismiss the claim. *Id.* at 644.

On review before the Oregon Supreme Court, Uptown argued that when a contract gives one party discretion—in that case, giving the bank the discretion to initiate a foreclosure—the implied duty of good faith requires the court to look outside the contract to determine the reasonable contractual expectations of the parties. *Id.* at 646. Uptown contended that the court should consider the reasons the parties agreed to a foreclosure provision to determine whether the bank exercised its discretion consistent with those reasons. *Id.*

The Supreme Court rejected Uptown's argument and held that where a contract sets forth the method for exercising discretion, courts may not look outside the contract. *Id.* at 647-48. To reach its holding, the Supreme Court drew upon the distinction between *Best* and *Tolbert* identified above. In *Best*, the Supreme Court explained, "no method of setting the NSF fee was spelled out in the depositors' contracts." *Id.* at 647. Because there was no agreement about the method for setting the fees, the *Best* Court "concluded that there was a genuine issue of fact concerning the method by which that bank would exercise its discretion." *Id.* But in *Tolbert*, the Supreme Court explained, "the bank's customers were apprised of the fees that would be applied to their accounts." *Id.* Therefore, there was no fact question necessitating the *Tolbert* Court to look outside the contract. *Id.*

The Supreme Court concluded that Uptown's construction loan agreement was more like the depositor's contract in *Tolbert* because it expressly permitted the bank to exercise its discretion upon Uptown's default. The "remedies pursued by [the b]ank are expressly permitted

**Page 8 -  OREGON HEALTH AUTHORITY'S RESPONSE TO FAMILYCARE'S
           MOTION FOR LEAVE TO FILE SUPPLEMENTAL BRIEFING**

by the parties' written contract in the event of such a default," the Court explained. *Id.* Accordingly, the "'the reasonable contractual expectations of the parties are shown, by the unambiguous terms' of the contract[.]" *Id.* at 647-48 (*quoting Pac. First Bank v. New Morgan Park Corp.*, 319 Or. 342, 353 (1994)). "Under those terms," the Court concluded, "'the parties agreed to—that is, reasonably expected—a unilateral, unrestricted exercise of discretion' in [the b]ank's choice of foreclosure as a remedy[.]" *Id.* at 648 (*quoting Pac. First Bank*, 319 Or. at 354).

The same is true here. Under the terms of the CCO Contract, FamilyCare and OHA agreed that OHA would exercise its discretion according to an express method—an actuary would set and certify the rates and OHA would submit them to CMS. Accordingly, "the parties agreed to—that is, reasonably expected" OHA would set the rates according to that method, nothing more. It would only be appropriate to look outside the contract if, as in *Best*, the CCO Contract had failed to establish a method by which OHA would set the rates. But where, as here, the Contract identifies the method, and OHA acted according to that agreed method, "as a matter of law . . . the parties' reasonable expectations have been met." *Tolbert*, 312 Or. 494; ORS 42.230 ("In the construction of an instrument, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted[.]").[2]

---

[2] Some federal district court cases suggest that courts may always look to extrinsic evidence to determine the scope of the parties' reasonable expectations. *See, e.g.*, *Hilfiker Square, LLC v. Thrifty Payless, Inc.*, No. 6:16-CV-01885-MC, 2018 WL 358495 (D. Or. Jan. 10, 2018); *Depaul Indus. v. City of Eugene*, No. 6:18-CV-00320-MC, 2020 WL 5078758 (D. Or. Aug. 27, 2020); *Gregory Funding LLC v. Saksoft, Inc.*, No. 3:16-CV-480-SI, 2016 WL 4480693 (D. Or. Aug. 24, 2016). But, in *Tolbert*, *Pacific First Bank*, and *Uptown Heights*, the Oregon Supreme Court held that if the parties' contract sets out the method for exercising discretion, it is only the terms of the contract describing that method that determines the parties' reasonable expectations. Courts can look outside the contract—as the Supreme Court did in *Best*—only when there is "no agreement about the method" for determining the open term. *Uptown Heights*, 320 Or. at 647 (alterations, quotation marks, and citation omitted).

**Page 9 -  OREGON HEALTH AUTHORITY'S RESPONSE TO FAMILYCARE'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL BRIEFING**

## CONCLUSION

For the foregoing reasons, and the reasons in OHA's motion to dismiss, reply, and those expressed at oral argument, the Court should dismiss FamilyCare's third claim for relief with prejudice.

DATED this 21st day of September, 2021.

ELLEN ROSENBLUM
ATTORNEY GENERAL
FOR THE STATE OF OREGON

By:     *s/ Harry B. Wilson*

David B. Markowitz, OSB #742046
DavidMarkowitz@MarkowitzHerbold.com
Harry B. Wilson, OSB #077214
HarryWilson@MarkowitzHerbold.com
Laura Salerno Owens, OSB #076230
LauraSalerno@MarkowitzHerbold.com

*Special Assistant Attorneys General for Defendant Oregon Health Authority, an agency of the State of Oregon*

Carla A. Scott, OSB #054725
carla.a.scott@doj.state.or.us

*Of Attorney for Defendant Oregon Health Authority, an agency of the State of Oregon*