**Stephen F. English** (OSB No. 730843)
SEnglish@perkinscoie.com
**Thomas R. Johnson** (OSB No. 010645)
TRJohnson@perkinscoie.com
**Heidee Stoller** (OSB No. 072835)
HStoller@perkinscoie.com
**Matthew J. Mertens** (OSB No. 146288)
MMertens@perkinscoie.com
**Sasha Petrova** (OSB No. 154008)
SPetrova@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Telephone: 503.727.2000
Facsimile: 503.727.2222

**Matthew P. Gordon** (admitted *pro hac vice*)
MGordon@perkinscoie.com
**David B. Robbins** (OSB No. 070630)
DRobbins@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000

*Attorneys for Plaintiff FamilyCare, Inc.*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **FAMILYCARE, INC.**, an Oregon non-profit corporation,<br><br>          Plaintiff,<br><br>    v.<br><br>**OREGON HEALTH AUTHORITY**, an agency of the State of Oregon, and **LYNNE SAXTON**,<br><br>          Defendants. | Case No. 6:18-cv-00296-MO<br><br>**FAMILYCARE'S SUPPLEMENTAL BRIEFING IN RESPONSE TO THE COURT'S NOVEMBER 13, 2018 ORDER (ECF 342)** |

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

123045.0001\154275425.1

## I.    INTRODUCTION

Pursuant to this Court's order, ECF 485, FamilyCare submits this supplemental briefing to attach its January 3, 2019 letter to the Court, attached hereto as Exhibit 1.

As discussed below, FamilyCare believes that, if the Court wishes to address FamilyCare's evidence of expressive activity before trial, the evidence should be addressed at the pre-trial conference through pre-trial submissions.  FamilyCare respectfully requests that this Court reserve making evidentiary rulings regarding FamilyCare's expressive acts until that time.  To the extent this Court prefers to make these determinations before the pre-trial conference, FamilyCare respectfully requests the opportunity to submit briefing in response to any challenges raised by Ms. Saxton to FamilyCare's specified expressive acts to address whether such expression was on a matter of public concern or whether it may be admissible for other purposes.

## II.    BACKGROUND

FamilyCare alleges that former OHA director Lynne Saxton retaliated against FamilyCare for exercising its First Amendment rights by reducing FamilyCare's capitation rates and implementing a campaign of disparagement to hurt FamilyCare's credibility and undermine its efforts to advocate for increased transparency and fair rate-setting.  As part of that claim, FamilyCare bears the burden of demonstrating that it engaged in expressive conduct on a matter of public concern.  *See Alpha Energy Savers, Inc. v. Hansen*, 381 F.3d 917, 923 (9th Cir. 2004).

At oral argument on Saxton's motion for summary judgment, this Court ruled that FamilyCare had presented sufficient evidence of expressive conduct on a matter of public concern to defeat summary judgment, but reserved for a later date the determination of what specific evidence will be admissible to support FamilyCare's claim at trial:

> So I find that there is in this case enough expressive conduct by FamilyCare that involves a matter of public concern to defeat summary judgment.  Some day we'll have to do that item by item. I'm not able to do that today on the record I have in front of me, and I'm not sure whether that should be just left to a motion in limine based on witness statements and exhibit lists before trial or

1-        FAMILYCARE'S SUPPLEMENTAL BRIEFING

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

123045.0001\154275425.1

whether we should try to do something sooner than that, but in any event, there's enough to defeat summary judgment.

ECF 339 at 48-49 (November 2, 2018 Oral Argument Transcript). The Court also granted Saxton partial qualified immunity on the grounds that it was not clearly established that a government official's retaliatory speech violated the Constitution. *Id.* at 52. As with FamilyCare's expressive activity, the Court left for a later date the issue of which speech was entitled to qualified immunity, and therefore could not provide a basis for FamilyCare's retaliation claim:

> So to the degree there is such speech here, it will fall outside qualified immunity, and I can't today -- I don't have a clear enough record in front of me today to go line by line and say what gets qualified immunity and what doesn't.

*Id.* at 53. Finally, the Court instructed the parties to consider whether, in light of anticipated interlocutory appeals, these issues should be carved out from the stay and resolved in advance of pre-trial filings:

> [T]he only way to go through piece by piece and analyze my summary judgment ruling on Ms. Saxton is what would normally be the case, which is that you would apply it by way of filing motions in limine against, or witness or exhibit objections against your opponent's pretrial submissions, which punts this down the road quite a ways.
>
> I'm willing to do that, but I'd like the parties to think about whether it makes sense to try to resolve this issue of what speech is public versus private and what speech can be retaliatory versus not retaliatory sooner than that, which would be a carve-out.

*Id.* at 63.

Several days later, the Court ordered FamilyCare to "provide a specific list of designated retaliation to the Court by 01/03/19." ECF 342. Consistent with the Court's order, on January 3, 2019, FamilyCare submitted a letter citing dozens of examples of its expressive conduct and speech on matters of public concern, as well as Saxton's retaliatory acts and speech, while

2-    FAMILYCARE'S SUPPLEMENTAL BRIEFING

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

123045.0001\154275425.1

expressly noting that the list was not exhaustive and reserving the right to submit additional evidence at trial. *See* Ex. 1 at 1. Although the letter contained a short explanation of FamilyCare's approach to identifying this evidence, consistent with the Court's order, FamilyCare did not make specific arguments regarding individual instances of speech or retaliation or their admissibility at trial. *Id.*; *see also* ECF 342.

The Court did not direct or request any response to FamilyCare's letter, and, over the ensuing years, Saxton did not respond, either in court or directly to FamilyCare. Consequently, Saxton has not yet identified which instances of expressive speech she intends to challenge. On October 8, 2021, Saxton's counsel wrote to the Court to inquire if the Court preferred to hold a hearing to decide whether the evidence of protected speech previously identified by FamilyCare qualifies as speech "on a matter of public concern," and, if so, proposed submitting a list to FamilyCare's counsel and the Court identifying specific instances of speech she disagrees with. In response, the Court ordered FamilyCare to re-submit its January 3, 2019 letter to the Court and ordered OHA to submit its position by October 29, 2021. ECF 485.

### III.    FAMILYCARE'S POSITION

FamilyCare submits that an item-by-item analysis of FamilyCare's evidence of speech on a matter of public concern and a ruling about the admissibility of such evidence at this point would be premature, will not foster judicial economy, and could prejudice FamilyCare.

This Court has held that FamilyCare presented sufficient evidence of protected expressive activity on a matter of public concern to defeat summary judgment and to have the issue tried. *See* ECF 339 at 48-49. Because the Court also concluded that Saxton was entitled to partial qualified immunity for some of her speech, it ordered FamilyCare to submit a list of its protected activity and Saxton's retaliation (including her retaliatory speech).[1] The Court stated

---

[1] As noted, the Court suggested that this determination could occur either as part of pre-trial filings or earlier, as a carve-out from the stay pending any interlocutory appeals. *See* ECF 339 at 48-49.

3-    FAMILYCARE'S SUPPLEMENTAL BRIEFING

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

123045.0001\154275425.1

that it needed to "go through piece by piece and analyze [the Court's] summary judgment ruling on Ms. Saxton." *Id.* at 63; *see also id.* at 53 ("So to the degree there is such speech here, it will fall outside qualified immunity, and I can't today -- I don't have a clear enough record in front of me today to go line by line and say what gets qualified immunity and what doesn't."). FamilyCare understood that the purpose of submitting those lists was to allow the Court to determine, in light of its grant of partial summary judgment, what remained of FamilyCare's retaliation claim against Saxton for trial.

FamilyCare also understood that the Ninth Circuit's ruling—reversing qualified immunity for Saxton and concluding that FamilyCare presented sufficient evidence of retaliation through speech—had obviated the purpose of the lists. *See Allen v. FamilyCare, Inc.*, 812 F. App'x 413, 420 (9th Cir. 2020), *as amended* (May 7, 2020) ("FamilyCare presented sufficient evidence suggesting that Saxton retaliated against its protected speech by implementing the campaign. On this record, whether Saxton's statements were accurate or she had a benign motive were quintessential disputes of fact that could not be resolved at the summary judgment stage.").

There is no dispute that FamilyCare has identified sufficient evidence of expressive conduct on a matter of public concern for trial.[2]  As such, the only question for potential resolution at this stage is the *quantity* of protected speech.  Whether speech is on a "matter of public concern" is a question of law, and the Court could, in theory, go through FamilyCare's list to make line-by-line determinations about each act of speech.  But there are numerous examples of expression by FamilyCare that plainly pass muster—*e.g.*, advocating for legislation to

---

[2] In reversing the grant of qualified immunity, the Ninth Circuit held that Saxton's speech (*i.e.*, the disparagement campaign) constitutes actionable retaliation. *Allen*, 812 F. App'x at 420 ("At the time Saxton acted, a reasonable official would have been on notice that retaliating against a contractor's protected speech with a campaign that improperly disparaged it, while simultaneously reducing the contractor's compensation, violated the contractor's First Amendment rights.").  The Ninth Circuit's decision obviates the need to continue to litigate whether the specific instances of *Saxton's speech* listed in FamilyCare's letter constitute actionable retaliation.  Consistent with that ruling, Saxton's counsel requested a hearing only to evaluate whether *FamilyCare's speech* was on a matter of public concern, and not to review evidence of Saxton's retaliation.

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

123045.0001\154275425.1

increase transparency and improve the rate-setting process or criticizing OHA's operations to lawmakers—and therefore any determination about specific instances of expression will not change whether the claim against Ms. Saxton goes to trial and is unlikely to substantially affect the parties' trial preparation.

Moreover, such an approach is likely to be inefficient. Even if the Court concludes that there are some instances of expressive activity that do not qualify as speech on a matter of public concern, evidence related to those instances may still be relevant and admissible for other purposes, such as to provide context or support for other aspects of FamilyCare's case. As a result, trying to determine the admissibility of such evidence at this stage, without the benefit of further context and briefing, may require the parties to re-visit these issues again during the pre-trial conference.[3]

This Court may exercise its broad discretion to narrow the issues for trial, by, for example, making evidentiary rulings at the pre-trial conference. And Saxton may seek to exclude specific instances of expressive conduct via motions in limine or timely objections, to which FamilyCare can substantively respond. But the procedural mechanism that Saxton proposes to limit FamilyCare's evidence before trial—in the absence of any pending motion and without the benefit of argument or necessary factual context—confounds the salutary purpose of the pretrial process. If this Court would nonetheless prefer to address these issues before the pretrial motions, FamilyCare requests the opportunity to respond to Saxton's contentions regarding particular instances of FamilyCare's expressive conduct. Given the procedural posture, despite having nearly three years to review FamilyCare's proffered evidence of protected speech, Saxton has not yet identified which instances she contends do not qualify as

---

[3] Saxton may argue that an early evidentiary ruling regarding specific evidence will streamline the case for trial. This argument should be rejected, as it seeks to artificially move up FamilyCare's pre-trial deadlines by forcing FamilyCare to prematurely identify its evidence for trial. Moreover, as noted, the January 3, 2019 list was not intended to include all evidence related to each instance of actionable expression.

5-    FAMILYCARE'S SUPPLEMENTAL BRIEFING

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

123045.0001\154275425.1

expression on a matter of public concern, let alone why.  FamilyCare should have the opportunity to respond to any such contentions before this Court addresses them.

### IV.    CONCLUSION

For the reasons set out above, FamilyCare respectfully requests that the Court reserve any decisions regarding FamilyCare's evidence in support of its retaliation claim until the pre-trial conference.  If, however, the Court chooses to address these issues before that time, FamilyCare respectfully requests that the Court allow it to submit briefing addressing any particular instances of expression that Saxton challenges.

DATED: October 15, 2021.          **PERKINS COIE LLP**

By:/s/ *Matthew Gordon*
    **Stephen F. English**, OSB No. 730843
    SEnglish@perkinscoie.com
    **Thomas R. Johnson** (OSB No. 010645)
    TRJohnson@perkinscoie.com
    **Heidee Stoller** (OSB No. 072835)
    HStoller@perkinscoie.com
    **Matthew J. Mertens** (OSB No. 146288)
    MMertens@perkinscoie.com
    **Sasha Petrova** (OSB No. 154008)
    SPetrova@perkinscoie.com
    PERKINS COIE LLP
    1120 N.W. Couch Street, Tenth Floor
    Portland, Oregon 97209-4128
    Telephone: 503.727.2000
    Facsimile:  503.727.2222

    **Matthew P. Gordon** (admitted *pro hac vice*)
    MGordon@perkinscoie.com
    **David B. Robbins** (OSB No. 070630)
    DRobbins@perkinscoie.com
    PERKINS COIE LLP
    1201 Third Avenue, Suite 4900
    Seattle, Washington 98101-3099
    Telephone: 206.359.8000
    Facsimile:  206.359.9000

*Attorneys for Plaintiff FamilyCare, Inc.*

6-      FAMILYCARE'S SUPPLEMENTAL BRIEFING

123045.0001\154275425.1



1120 NW Couch Street
10th Floor
Portland, OR 97209-4128

**T** +1.503.727.2000
**F** +1.503.727.2222
PerkinsCoie.com

January 3, 2019

Stephen F. English
SEnglish@perkinscoie.com
D.  +1.503.727.2003

**VIA EMAIL (WITHOUT APPENDICES) AND HAND DELIVERY**

The Honorable Michael W. Mosman
United States District Court
1000 SW Third Avenue, Room 1615
Portland, OR  97204

**Re:**    ***FamilyCare, Inc. v. Oregon Health Authority, et al.*, Case No. 6:18-cv-00296-MO**
         **List of Protected Speech and Retaliatory Speech and Conduct**

Dear Judge Mosman:

This letter and accompanying submission are in response to this Court's order that FamilyCare create a list identifying (1) FamilyCare's protected speech and (2) retaliatory speech and conduct by directors Lynne Saxton and Patrick Allen. *See* Dkt. 342. This letter explains the approach taken by FamilyCare to create that list, as well as the legal grounds for FamilyCare's classification of certain acts and speech as protected or retaliatory.[1]

*Methodology*

FamilyCare's submission identifies the categories of protected speech and retaliation that form the basis of its First Amendment retaliation claim and identifies multiple examples of documentary evidence for each category of conduct.[2]  Consistent with its understanding of the Court's directive, FamilyCare has not identified every piece of evidence related to each instance of actionable speech and conduct.   FamilyCare does not intend to limit itself to the evidence in this submission nor to waive any rights to expand its theory of the § 1983 claims—either in terms of categories or specific evidence—closer to the date of trial. Given that the case is stayed pending the outcome of Saxton and Allen's qualified immunity appeals, FamilyCare believes

---

[1] By letters dated November 19 and 20, respectively, counsel for Defendants Saxton and Allen (in his individual capacity) previously objected to the Court addressing or ruling on the alleged retaliatory acts and statements on grounds that their respective notices of appeal divested the Court of jurisdiction.  FamilyCare agrees that the Court lacks jurisdiction to address issues related to defendants' claims of qualified immunity and makes this submission without waiving its objections on those grounds.

[2] Due to the length of some attachments to relevant emails, FamilyCare included attachments only when necessary to identify the speech or conduct in question.

142602977.4
Perkins Coie LLP

EXHIBIT 1
Page 1 of 27

The Honorable Michael W. Mosman
January 3, 2019
Page 2

that its submission will allow the Court to further consider FamilyCare's First Amendment retaliation claim without requiring FamilyCare to reveal work product many months and perhaps years in advance of trial.

Consistent with this Court's prior ruling, FamilyCare has limited the submission to retaliatory conduct and speech that occurred after April 25, 2016—two years before FamilyCare filed its notice of intent to file the Fourth Amended Complaint. *See* Dkt. 85.  By limiting the submission to this time period, FamilyCare does not waive any arguments that that the statute of limitations does not bar claims based on actions that occurred prior to that date.  FamilyCare also reserves the right to present evidence of retaliatory speech and conduct at trial that occurred prior to April 25, 2016, and is relevant to Defendants' speech, conduct, and intent after that date.

### *Legal basis for identifying FamilyCare's protected speech*

Each act of expressive conduct identified by FamilyCare is protected by the First Amendment and properly forms the basis of FamilyCare's retaliation claim because the speech addressed matters of public concern. As detailed in FamilyCare's summary judgment briefing, courts evaluate the "content, form, and context" of government employee or contractor speech to determine whether the speech "can be fairly considered as relating to a matter of political, social, or other concern to the community." Dkt. 295 at 17-21 (quoting *Voigt v. Savell*, 70 F.3d 1552, 1559 (9th Cir. 1995)). As explained, FamilyCare's communications—which relate to functioning, performance, and administration of OHA, the expenditure of federal and state funds through the state's Medicaid program, and compliance with legal requirements—address core topics of public concern. *See id.* As such, each act of FamilyCare's expressive conduct identified in the accompanying submission is protected under the First Amendment.[3]

---

[3] Whether FamilyCare's speech addresses a matter of public concern is a question of law for the Court's determination. *Roe v. City & County of San Francisco*, 109 F.3d 578, 584 (9th Cir. 1997) ("In evaluating the First Amendment rights of a public employee, the threshold inquiry is whether the statements at issue substantially address a matter of public concern. Although necessarily driven by facts of a particular case, this determination is one of law for the court.") (citations omitted). In contrast, and as explained further below, the determination of whether a government official has engaged in First Amendment retaliation through his or her own speech or other conduct typically raises factual issues, including with issues related to the official's intent, that must be decided by the jury. *See, e.g.*, *Ulrich v. City & County of San Francisco*, 308 F.3d 968, 979 (9th Cir. 2002) ("As with proof of motive in other contexts, this element of a First Amendment retaliation suit . . . involves questions of fact that normally should be left for trial.") (citation omitted); *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1315 (9th Cir. 1989) (whether plaintiff's protected speech motivated government official's conduct "generally presents a jury question" and thus is "inappropriate for summary judgment") (citation omitted).

EXHIBIT 1
Page 2 of 27

The Honorable Michael W. Mosman
January 3, 2019
Page 3

***Legal basis for classifying speech and acts as retaliation.***

With regard to Saxton's and Allen's retaliation, FamilyCare has identified speech and conduct that is not protected by qualified immunity and is actionable under FamilyCare's retaliation claim.

A government employer is liable under § 1983 for retaliation if an employee or contractor's protected speech was a "substantial or motivating" factor behind any "adverse employment action" taken by the employer. *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003); *see also Alpha Energy Savers, Inc. v. Hansen*, 381 F.3d 917, 923 (9th Cir. 2004). An adverse employment action is any action that is "reasonably likely to deter [an employee or contractor] from engaging in protected activity." *Coszalter*, 320 F.3d at 976. "The precise nature of the retaliation is not critical to the inquiry" and "[d]epending on the circumstances, even minor acts of retaliation can infringe on an employee's First Amendment rights." *Id.* at 974-75.  "To constitute an adverse employment action, a government act of retaliation need not be severe and it need not be of a certain kind." *Id.* at 975.  The test is whether an action is "reasonably likely to deter" the contractor "from engaging in speech protected under the First Amendment." *Id.* at 976-77.

It has long been well established that a government employer may not take any "action designed to retaliate against and chill political expression." *Id.* at 975 (citing *Anderson v. Central Point School District*, 746 F.2d 505, 506 (9th Cir.1984)).  And since at least 2003, when *Coszalter* was decided, it has been well established in the Ninth Circuit that conduct, including government speech, that is "reasonably likely to deter" protected speech, is actionable.   It has also long been well-established that a government employer's own speech can support a retaliation claim if the jury finds that the employer's speech was part of a campaign to deter the employee or contractor from exercising its First Amendment rights. *See, e.g., Allen v. Scribner*, 812 F.2d 426,429, 434 n.17 (9th Cir. 1987) (adverse actions included "defamatory statements to the media" made by the defendants "with the intent of discrediting" the employee and which amounted "in gross" to a "campaign of harassment"); *Coszalter*, 320 F.3d at 976-97 (holding that actions including false accusations and verbal harassment and humiliation "amounted to a severe and sustained campaign of employer retaliation"). When there are disputed issues of fact regarding the intent or effect of the government employer's actions, including its speech acts, courts may not grant summary judgment on qualified immunity grounds.  *See Allen*, 812 F.2d at 436; *Coszalter* 320 F.3d at 979.

Here, FamilyCare will ask the jury to find that multiple actions taken by Saxton and Allen were intended to deter or stop FamilyCare from exercising its First Amendment rights. As reflected in the list that accompanies this letter, Saxton and Allen continuously acted in a manner designed to

EXHIBIT 1
Page 3 of 27

The Honorable Michael W. Mosman
January 3, 2019
Page 4

punish FamilyCare for its expressive conduct and to deter further expressive speech critical of OHA and its leadership.  Many of these actions related directly to the rate-setting and contract-renewal processes, and FamilyCare understands that the Court has properly denied Allen and Saxton's respective requests for summary judgment (including on qualified immunity grounds) as to those actions.

The retaliatory speech and conduct also include knowingly false or disparaging statements made or directed by Saxton and Allen as part of OHA's attempt to discredit FamilyCare in the eyes of the Oregon Legislature and public. The acts of Saxton and Allen were intended to cover up OHA's efforts to push FamilyCare out of business through reductions in FamilyCare's rates, as well as OHA's failure to address rate-setting errors identified by FamilyCare. Whether "considered individually" or "taken together" with the adverse rate-setting conduct, a jury could find that the false and defamatory statements were part of a "campaign of employer retaliation that was 'reasonably likely to deter' [FamilyCare] from engaging in speech protected under the First Amendment." *Coszalter*, 320 F.3d at 976; *see also Allen*, 812 F.2d at 429, 434 n. 17. The law prohibiting such false and disparaging statements by employers is well-established, as is the Ninth Circuit's directive that the jury decide whether such statements amount to First Amendment retaliation.[4] As such, the jury should be permitted to determine the import of anti-FamilyCare speech by Saxton and Allen.

---

[4] To our knowledge, the Ninth Circuit has never suggested that the First Amendment shields a government employer from liability for retaliatory speech. As a threshold matter, the First Amendment may not extend to any of the statements made by Saxton and Allen and their subordinates. Saxton, Allen, and OHA have argued that the "communications plan" and related anti-FamilyCare messaging to the Legislature, media, and public were made as part of the official job duties of Saxton, Allen, and their staff, and "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes . . ." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). Moreover, in employer retaliation cases, the inquiry is not whether government employer statements are protected by the First Amendment, but instead whether statements (or other actions) taken by a government employer to curtail an employee or contractor's protected speech were necessary to "promot[e] the efficiency of the public services [the employer] performs through its employees." *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968). As noted in FamilyCare's prior briefing, Saxton and Allen have not argued that their anti-FamilyCare statements were permitted pursuant to *Pickering*, much less that the Court can or should find them to be allowed as a matter of law.

Even assuming that the speech by Saxton and Allen is protected by the First Amendment, cases like *Coszalter* and *Allen* make clear that speech by a government employer constitutes retaliation when it is intended to, and is reasonably likely to, deter protected expressive conduct. Saxton previously relied on to *Mulligan v. Nichols*, 835 F.3d 983 (9th Cir. 2016), but that decision is inapposite.  *Mulligan* was not an employer retaliation case, did not involve a claim of qualified

EXHIBIT 1
Page 4 of 27

The Honorable Michael W. Mosman
January 3, 2019
Page 5


We hope that this submission is useful to the Court's efforts to prepare for trial in this matter.

Very truly yours,

Stephen F. English

cc:  All Counsel (via email)

Enclosures

---

immunity, and turned on the lack of a sufficient connection between the government actor's speech and the loss of a tangible government benefit belonging to the private citizen-plaintiff. *See id.* at 989.  Even so, the court in *Mulligan* acknowledged that even "in the absence of a loss of tangible rights or government benefits," "speech by government officials can . . . give rise to a claim of First Amendment retaliation." *Id.* at 989 n.5. Here, FamilyCare has had its contractual relationship with the government degraded or eliminated, and comments made by or at the direction of Saxton and Allen were part and parcel of the degradation of that contractual relationship. Regardless, *Mulligan* does not disrupt the well-established law that disparaging or harassing statements made against a government employee or contractor can give rise to a retaliation claim.

142602977.4
Perkins Coie LLP

EXHIBIT 1
Page 5 of 27

*FamilyCare v. OHA*:  List of Examples of Protected Speech and Retaliatory Acts and Speech
**(The accompanying cover letter dated 1/3/19 is an integral part of this document.)**

| Time Period | FamilyCare Protected Speech | Saxton/Allen Retaliatory Acts or Speech |
|---|---|---|
| **JANUARY 21, 2015 – LYNNE SAXTON BECOMES ACTING DIRECTOR OF OHA** | | |
| 2015 | FamilyCare engages in numerous instances of protected speech, including, but not limited to:<br><br>• Repeatedly complaining to OHA about problems with the 2015 rates, the lack of transparency in the rate-setting process, and OHA's failure to meet required or established deadlines (*see, e.g.*, **Appendices ("Apps.") 1-4**);<br><br>• Repeatedly asking OHA for information sufficient to evaluate or substantiate rate development policies and calculations, including through formal public records requests (*see, e.g.*, **App. 1, Apps. 5-7**);<br><br>• Notifying OHA that it failed to comply with state and federal laws and breached the terms of its contract with FamilyCare in the 2016 rate-development process (**Apps. 8-10**);<br><br>• Communicating repeatedly with the press, Oregon legislators, the Governor's office, CMS, other CCOs, and providers regarding OHA's failure to act in a transparent manner, concerns about the rate-setting process, concerns about the accuracy and completeness of OHA's communications and | |

- 1 -

EXHIBIT 1
Page 6 of 27

*FamilyCare v. OHA*:  List of Examples of Protected Speech and Retaliatory Acts and Speech
(The accompanying cover letter dated 1/3/19 is an integral part of this document.)

| Time Period | FamilyCare Protected Speech | Saxton/Allen Retaliatory Acts or Speech |
|---|---|---|
| | concerns about the accuracy of OHA's comparisons of FamilyCare to other CCOs (*see, e.g.*, **Apps. 11-22**);<br><br>• Filing a lawsuit against OHA challenging the 2015 rates as non-compliant with state and federal laws (**App. 23**); and<br><br>• Communicating repeatedly with the press, Oregon legislators, and other CCOs regarding OHA's attempt to retroactively reduce 2015 rates in violation of state law (*see, e.g.*, **Apps. 24-27**). | |
| January - March 2016 | FamilyCare engages in numerous instances of protected speech, including, but not limited to:<br><br>• Communicating with legislators in support of Senate Bill 1531 and House Bill 4107.  House Bill 4107 prohibited retroactive clawbacks of rate payments to CCOs and was passed by the legislature and signed into law by the Governor.  SB 1531 would have made modifications to the rate-setting process and required transparency of data and documents (*see, e.g.*, **Apps. 28-30**);<br><br>• Communicating with legislators and the press regarding FamilyCare's lawsuit over the 2015 rates and OHA's attempts to terminate | |

- 2 -

EXHIBIT 1
Page 7 of 27

**FamilyCare v. OHA**:  List of Examples of Protected Speech and Retaliatory Acts and Speech
(The accompanying cover letter dated 1/3/19 is an integral part of this document.)

| Time Period | FamilyCare Protected Speech | Saxton/Allen Retaliatory Acts or Speech |
|---|---|---|
| | FamilyCare's contract (*see, e.g.*, **Apps. 31-32**);<br><br>• Adding additional claims against OHA, including one for injunctive relief, to the pending lawsuit (**App. 33 at 2**); and<br><br>• Updating CMS on the status of ongoing litigation with OHA and notifying CMS of OHA's inaccurate communications related to the dispute (**App. 34**). | |
| **APRIL 25, 2016 – TWO YEARS PRIOR TO DATE SAXTON RECEIVES NOTICE THAT SHE WILL BE ADDED AS AN INDIVIDUAL DEFENDANT IN THE FAMILYCARE LAWSUIT** | | |
| April - June 2016 | FamilyCare submits Rate Setting Reports to OHA, certifying its concerns that OHA report formats and instructions are not adequate for rate-setting and do not insure consistency or comparability of data across CCOs, and that reconciliations to validate cost, utilization and member data have not been completed (**App. 35**).<br><br>FamilyCare complains about OHA's inaccurate statements related to compliance with Oregon's 1115 Waiver; state funding and rate-making, including OHA's decision related to quality incentive payments; OHA's claim that it was bound by a 3.4% sustainable rate of growth; problems with OHA's member-month calculations; and OHA's claim that | |

- 3 -

EXHIBIT 1
Page 8 of 27

**FamilyCare v. OHA:  List of Examples of Protected Speech and Retaliatory Acts and Speech**
**(The accompanying cover letter dated 1/3/19 is an integral part of this document.)**

| Time Period | FamilyCare Protected Speech | Saxton/Allen Retaliatory Acts or Speech |
|---|---|---|
| | the FamilyCare dispute puts all of Oregon's federal funding at risk (*see, e.g.*, **Apps. 36-38**).<br><br>At FamilyCare's request, providers write OHA about the impact on consumers and providers if the dispute with OHA is not positively resolved (*see, e.g.*, **App. 39**).<br><br>FamilyCare continues to reach out to legislators and press about its dispute with OHA, its concerns about the rate-setting process, and OHA's statements about FamilyCare's business model (*see, e.g.*, **Apps. 40-41**). | |
| May 14, 2016 | FamilyCare makes a public records request regarding OHA's communications with other CCOs related to FamilyCare's rates (**App. 42**). | |
| May - June 2016 | | OHA threatens FamilyCare with demonstrably false allegations that FamilyCare does not have an adequate provider network for treating high-risk populations, such as patients with AIDS (*see, e.g.*, **App. 43**). |
| July 14, 2016 | | OHA, under Saxton's direction, works exclusively with Care Oregon on the development of a new service contract for Native American tribes, excluding FamilyCare from the process (*see, e.g.*, **Apps. 44-45**). |

- 4 -

EXHIBIT 1
Page 9 of 27

*FamilyCare v. OHA*:  **List of Examples of Protected Speech and Retaliatory Acts and Speech**
**(The accompanying cover letter dated 1/3/19 is an integral part of this document.)**

| Time Period | FamilyCare Protected Speech | Saxton/Allen Retaliatory Acts or Speech |
| --- | --- | --- |
| July - September 2016 | FamilyCare complains to OHA about OHA's lack of responsiveness to FamilyCare's continuing requests for information and various problems with rate setting, including:<br><br>• FamilyCare's inability to validate OHA's data (*see, e.g.*, **App. 46**);<br><br>• Lack of data and information from OHA related to rate development (*see, e.g.*, **App. 47**); and<br><br>• OHA's policy decisions related to specific reimbursement issues (*see, e.g.*, **App. 48**). | |
| July - October 2016 | | OHA engages in rate-setting process that reduces FamilyCare's rates by:<br><br>• Implementing, for the first time, a "reimbursement review" that specifically targeted FamilyCare and its payments to primary care providers, resulting in the following decisions that OHA knew would negatively impact FamilyCare's rates (**App. 49**):<br><br>   o Formulating a methodology and choosing a time period to calculate the rate of growth that would |

- 5 -

EXHIBIT 1
Page 10 of 27

*FamilyCare v. OHA*:  **List of Examples of Protected Speech and Retaliatory Acts and Speech**
**(The accompanying cover letter dated 1/3/19 is an integral part of this document.)**

| Time Period | FamilyCare Protected Speech | Saxton/Allen Retaliatory Acts or Speech |
|---|---|---|
| | | knowingly disadvantage FamilyCare;<br><br>○ Choosing to calculate year-over-year rate of growth without adjusting for the increasing risk profile of FamilyCare's population despite knowing about that increasing risk profile (*see, e.g.*, **App. 50** at 343:15-345:20);<br><br>○ Cutting $34 million from FamilyCare's base data, the most of any CCO, to decrease FamilyCare's rates (*see, e.g.*, **App. 51**);<br><br>○ Targeting FamilyCare—and only FamilyCare—for an additional round of cuts to base data based on its reimbursement of primary care providers (*see, e.g.*, **App. 52**);<br><br>• Ignoring known errors in the rate-setting process identified by FamilyCare (*see, e.g.*, **App. 53**);<br><br>• Refusing to investigate member-level risk score discrepancies identified by FamilyCare (*see, e.g.*, **App. 54**); |

- 6 -

EXHIBIT 1
Page 11 of 27

**FamilyCare v. OHA:  List of Examples of Protected Speech and Retaliatory Acts and Speech**
**(The accompanying cover letter dated 1/3/19 is an integral part of this document.)**

| Time Period | FamilyCare Protected Speech | Saxton/Allen Retaliatory Acts or Speech |
|---|---|---|
| | | • Assigning the CCO-specific average risk score to unscored members instead of using a "neutral" risk score of 1.0, knowing that doing so would increase Health Share's rates and decrease FamilyCare's (*see, e.g.,* **App. 55** at 289:3-291:2); and<br><br>• Inappropriately excluding or failing to consider FamilyCare's case management costs and other administrative costs of more than $11 million as part of FamilyCare's base data (*see, e.g.,* **App. 56**). |
| August 1, 2016 | | OHA begins analyzing "high risk" populations, comparing relative risk of members between CCOs; analysis is intentionally flawed and fails to account for impact of FamilyCare's disproportionate growth in members since ACA expansion (*see, e.g.,* **App. 57**). |
| August 19, 2016 | FamilyCare points out how updated reporting requirements are not supported by CCO contract language and submits public records request to OHA requesting information regarding OHA's legal basis for proposed changes to CCO reporting requirements (*see, e.g.,* **Apps. 58-59**). | |

- 7 -

EXHIBIT 1
Page 12 of 27

*FamilyCare v. OHA*:  List of Examples of Protected Speech and Retaliatory Acts and Speech
**(The accompanying cover letter dated 1/3/19 is an integral part of this document.)**

| Time Period | FamilyCare Protected Speech | Saxton/Allen Retaliatory Acts or Speech |
|---|---|---|
| August 30, 2016 | FamilyCare continues to criticize OHA's pattern of delivering key information just hours before the meeting scheduled to discuss it, leaving FamilyCare without reasonable time to review or analyze information in advance of meetings (*see, e.g.*, **App. 60**). | |
| September 1, 2016 | | OHA issues the first Quarterly Legislative Report, which contains information on CCO finances that OHA knew falsely portrayed FamilyCare as an outlier—for example, falsely representing FamilyCare's profitability relative to that of other CCOs (**App. 61**). |
| September 2016 | FamilyCare lobbies Oregon legislature for greater transparency in rate setting and in the Medicaid program as a whole (*see, e.g.*, **App. 62**). | |
| September 22, 2016 | FamilyCare provides media, legislators, and CMS with information about why the Quarterly Legislative Report is misleading (*see, e.g.*, **Apps. 63-64**). | |
| September -November 2016 | FamilyCare continues to press OHA for agency operating transparency and underlying data and information regarding OHA's rate-setting methodology (*see, e.g.*, **Apps. 47, 65**). | |
| September - December 2016 | FamilyCare repeatedly complains to OHA regarding:<br><br>• Lack of comparability of CCO financial results due to OHA's prescribed financial | |

- 8 -

EXHIBIT 1
Page 13 of 27

***FamilyCare v. OHA*: List of Examples of Protected Speech and Retaliatory Acts and Speech**
**(The accompanying cover letter dated 1/3/19 is an integral part of this document.)**

| Time Period | FamilyCare Protected Speech | Saxton/Allen Retaliatory Acts or Speech |
|---|---|---|
| | reporting methodology, OHA's failure to reconcile and tie-out data, OHA's lack of organizational and operational transparency and significant problems with the rate-setting methodology, including problems with risk scoring, related-party transactions, and rate of growth (*see, e.g.*, **Apps. 66-68**);<br><br>• Discrepancies in the data used to set 2017 rates (*see, e.g.*, **Apps. 69-70**);<br><br>• OHA's failure to comply with the terms of its contract with FamilyCare in ways unrelated to rate-setting (*see, e.g.*, **App. 71**); and<br><br>• Concerns related to OHA's processing of eligibility and enrollment and OHA's efforts to recoup funds from FamilyCare for OHA errors in improperly coded dual-eligible members. (*see, e.g.*, **App. 70, Apps. 72-75**). | |
| October 26, 2016 | FamilyCare refuses to support "Regional BH (Behavioral Health) Partnerships" program spearheaded by Lynne Saxton, arguing that her proposal failed to follow the model of community-focused integrated health that the CCO model was designed to promote (*see, e.g.*, **App. 76**). | |

- 9 -

EXHIBIT 1
Page 14 of 27

**FamilyCare v. OHA:  List of Examples of Protected Speech and Retaliatory Acts and Speech**
**(The accompanying cover letter dated 1/3/19 is an integral part of this document.)**

| Time Period | FamilyCare Protected Speech | Saxton/Allen Retaliatory Acts or Speech |
|---|---|---|
| October - December 2016 | FamilyCare complains to state and federal legislators, the Oregon Health Policy Board, and CMS about OHA's shortened timeframes, failure to respond to questions, lack of transparency, concerns with rate development, changes made to rate-setting methodology from prior year, and disproportionate impact of rate-setting decisions on FamilyCare (*see, e.g.*, **Apps. 77-86**). | |
| January 2017 | | OHA issues follow-up Quarterly Legislative Report, which contains information on CCO finances that OHA knew falsely portrayed FamilyCare as an outlier—for example, falsely representing FamilyCare's profitability relative to that of other CCOs (*see, e.g.*, **Apps. 87-88**). |
| January 2017 | FamilyCare notifies legislators that it has entered into a dispute resolution process with OHA but emphasizes that it remains concerned, for instance, about the whether the 2017 rates were compliant with federal law (*see, e.g.*, **App. 89**). | |
| January 27, 2017 | FamilyCare gives OHA formal notice that OHA's proposed MLR recoupments violate the terms of the CCO contract-not related to rate-setting (**App. 90**). | |

- 10 -

EXHIBIT 1
Page 15 of 27

**FamilyCare v. OHA:  List of Examples of Protected Speech and Retaliatory Acts and Speech**
**(The accompanying cover letter dated 1/3/19 is an integral part of this document.)**

| Time Period | FamilyCare Protected Speech | Saxton/Allen Retaliatory Acts or Speech |
|---|---|---|
| January - May 2017 | FamilyCare advocates for proposed legislation that would increase transparency of OHA's rate-setting process, conform Oregon's rate setting to federal law, and involve the Department of Consumer and Business Services ("DCBS") in Oregon's rate-setting process (*see, e.g.*, **Apps. 91-95**). | |
| January - February 2017 | | Building on elements of the existing 2016 communications plan targeting FamilyCare, and using, among other things, the information shared by FamilyCare during the dispute resolution process, Lynne Saxton directs staff to develop the 2017 communications plan to knowingly disseminate false information about FamilyCare (the "smear campaign") (*see, e.g.*, **Apps. 96-97**). |
| February 10, 2017 | | OHA denies request for review of FamilyCare's MLR rebate calculation for 2015 (**Apps. 98-100**). |
| February 14, 2017 | | OHA knowingly discloses to other CCOs, including FamilyCare's competitor, Health Share, information about FamilyCare that OHA considers to be trade secret to other CCOs, without disclosing such information for any other CCO and without seeking FamilyCare's consent to disclose such information (**App. 101**). |

- 11 -

EXHIBIT 1
Page 16 of 27

*FamilyCare v. OHA*:  List of Examples of Protected Speech and Retaliatory Acts and Speech
(The accompanying cover letter dated 1/3/19 is an integral part of this document.)

| Time Period | FamilyCare Protected Speech | Saxton/Allen Retaliatory Acts or Speech |
|---|---|---|
| February 2017 | FamilyCare informs CMS, legislators, and the press that the dispute resolution process has failed, and criticizes OHA's conduct during that process, as well as the lack of transparency in rate setting (*see, e.g.*, **Apps. 102-105**). | |
| February 27, 2017 | FamilyCare files lawsuit against OHA regarding soundness of 2017 rates (**App. 106**). | |
| February - May 2017 | FamilyCare discusses lawsuit and related rates issues with press, legislators, State of Reform, and the Oregon Health Policy Board (*see, e.g.*, **Apps. 107-110**). | |
| March - April 2017 | FamilyCare complains to OHA regarding incorrect forecast numbers for 2017-2019, OHA's misleading legislative testimony related to retroactive enrollment problems, and serious underlying issues that OHA had yet to acknowledge or correct (*see, e.g.*, **Apps. 111-113**). | |
| April 4, 2017 | FamilyCare testifies in support of Senate Bill 233, legislation that would have made modifications to the rate-setting process, including greater transparency and making certain data and documents publicly available (**App. 114**). | |

- 12 -

EXHIBIT 1
Page 17 of 27

**_FamilyCare v. OHA_: List of Examples of Protected Speech and Retaliatory Acts and Speech**
**(The accompanying cover letter dated 1/3/19 is an integral part of this document.)**

| Time Period | FamilyCare Protected Speech | Saxton/Allen Retaliatory Acts or Speech |
|---|---|---|
| April 4, 2017 | | OHA submits misleading written testimony on Senate Bill 233 with approval from Lynne Saxton, but refuses to publicly testify and answer questions on legislation (**App. 115**). |
| April - June 2017 | FamilyCare reaches out to legislators and the press regarding misleading statements by OHA related to the legislation FamilyCare was promoting, OHA's failure to provide information, and OHA's rate-setting process (_see, e.g._, **Apps. 116-118**). | |
| June 29, 2017 | FamilyCare asks OHA for documentation and sends information to OHA on the member-level risk score discrepancies showing that OHA's risk scoring is potentially flawed, and OHA fails to follow up on these known discrepancies (**App. 119**). | |
| February - June 2017 | | OHA's actions confirm components of smear campaign in play, including, but not limited to:<br><br>• Informing legislators in February 2017 that FamilyCare's business decisions caused it to be an outlier in comparison to the other Oregon CCOs, despite knowing this to be false (_see, e.g._, **App. 120**);<br><br>• Issuing statement by Lynne Saxton on FamilyCare lawsuit saying that FamilyCare's goal is to be "paid more Medicaid dollars" and blaming FamilyCare's "business decisions" while portraying |

- 13 -

EXHIBIT 1
Page 18 of 27

***FamilyCare v. OHA*:  List of Examples of Protected Speech and Retaliatory Acts and Speech**
**(The accompanying cover letter dated 1/3/19 is an integral part of this document.)**

| Time Period | FamilyCare Protected Speech | Saxton/Allen Retaliatory Acts or Speech |
|---|---|---|
| | | agency's rate-setting as blameless and transparent (*see, e.g.*, **App. 120**);<br><br>• Knowingly sending false and misleading information to the media and legislators in February and March 2017 about FamilyCare's lawsuit and FamilyCare's financial results in comparison to other CCOs (*see, e.g.*, **Apps. 122-126**);<br><br>• Sending out a press release in April 2017 falsely claiming that FamilyCare's problems stem from its business model (*see, e.g.*, **App. 127**); and<br><br>• Communicating misleading information regarding legislation proposed by FamilyCare, the status of FamilyCare's lawsuit, and its effect on Medicaid dollars to specific legislators (*see, e.g.*, **App. 128**). |
| July - August 2017 | FamilyCare criticizes OHA's smear campaign in statements to the press, legislature, and CMS (*see, e.g.*, **Apps. 129-133**). | |
| May - August 2017 | | OHA begins rate-setting process for 2018 rates, knowingly making decisions that disproportionately impact FamilyCare similar to rate-setting decisions made in previous years, including: |

- 14 -

EXHIBIT 1
Page 19 of 27

**FamilyCare v. OHA:  List of Examples of Protected Speech and Retaliatory Acts and Speech**
**(The accompanying cover letter dated 1/3/19 is an integral part of this document.)**

| Time Period | FamilyCare Protected Speech | Saxton/Allen Retaliatory Acts or Speech |
|---|---|---|
| | | <ul><li>Implementing the "reimbursement policy" to cut FamilyCare's rates (*see, e.g.*, **App. 134**);</li><li>Perpetuating decisions made in the prior year that disadvantaged FamilyCare, including:<ul><li>Developing a methodology and choosing a time period to calculate the rate of growth that would disadvantage FamilyCare (*see, e.g.*, **App. 50** at 245:15-248:1.);</li><li>Cutting $26 million from FamilyCare's base data for 2018, which is the most money cut from any CCO (*see, e.g.*, **App. 135**); and</li><li>Continuing to choose to calculate year-over-year rate of growth without adjusting for risk despite knowing that the risk profile of FamilyCare's population was continuing to increase (*see, e.g.*, **App. 50** at 343:15-345:20);</li></ul></li><li>Purposefully manipulating the data to portray an artificial and exaggerated rate of growth for FamilyCare in order to falsely justify cuts to its base data (*see, e.g.*, **App. 50** at 237:19-238:12);</li></ul> |

- 15 -

EXHIBIT 1
Page 20 of 27

**FamilyCare v. OHA:** **List of Examples of Protected Speech and Retaliatory Acts and Speech**
**(The accompanying cover letter dated 1/3/19 is an integral part of this document.)**

| Time Period | FamilyCare Protected Speech | Saxton/Allen Retaliatory Acts or Speech |
|---|---|---|
|  |  | • Ignoring known errors identified by FamilyCare; <br><br> • Continuing to refuse to investigate member-level risk score discrepancies as a contributing factor to FamilyCare's disproportionately low risk scores for its ACA population (*see, e.g.*, **App. 54**); <br><br> • Continuing to assign the CCO-specific average risk score to unscored members instead of using a "neutral" risk score of 1.0 (*see, e.g.*, **App. 55** at 289:3-291:2); <br><br> • Inappropriately excluding or failing to consider FamilyCare's case management and other administrative costs (of more than $19 million) as part of FamilyCare's base data (*see, e.g.*, **App. 136** at 9); <br><br> • Reducing FamilyCare's administrative expense allowance via a calculation that was not "empirically based" (*see, e.g.*, **App. 137**); and <br><br> • Providing an inappropriately small adjustment to FamilyCare's rates by failing to conduct an accurate redetermination analysis and make appropriate adjustments (*see, e.g.*, **App. 138**). |

EXHIBIT 1
Page 21 of 27

**_FamilyCare v. OHA_: List of Examples of Protected Speech and Retaliatory Acts and Speech**
**(The accompanying cover letter dated 1/3/19 is an integral part of this document.)**

| Time Period | FamilyCare Protected Speech | Saxton/Allen Retaliatory Acts or Speech |
|---|---|---|
| **AUGUST 31, 2017 – SAXTON'S FINAL DAY AS DIRECTOR OF OHA** | | |
| **SEPTEMBER 1, 2017 – ALLEN'S APPOINTMENT AS ACTING DIRECTOR OF OHA BEGINS** | | |
| September 2017 | FamilyCare meets with Allen and complains about Saxton's targeted attack on FamilyCare and OHA's false portrayal of FamilyCare; FamilyCare provides detailed information to OHA about lack of data to substantiate rate-setting decisions, problems with 2018 rate-setting decisions, member-month discrepancies, and other concerns (*see, e.g.*, **Apps. 139-142**). | |
| September - October 2017 | FamilyCare complains to legislators and the Oregon Health Policy Board regarding the rate-setting process, inaccuracies in OHA's comparison of FamilyCare's financial results to other CCOs, and testifies before the legislature on OHA's smear campaign (*see, e.g.*, **Apps. 143-146**). | |
| November 1, 2017 | | Allen ignores known errors and problems with rate-setting implemented by Saxton; OHA submits rate certification to CMS for approval, perpetuating the problems with the retaliatory rate-setting policies and including knowingly inaccurate, incomplete, and misleading responses to FamilyCare questions (*see, e.g.*, **App. 136, Apps. 147-149**). |

- 17 -

EXHIBIT 1
Page 22 of 27

**FamilyCare v. OHA:  List of Examples of Protected Speech and Retaliatory Acts and Speech**
**(The accompanying cover letter dated 1/3/19 is an integral part of this document.)**

| Time Period | FamilyCare Protected Speech | Saxton/Allen Retaliatory Acts or Speech |
|---|---|---|
| November 2017 | | OHA initiates a purportedly "independent" review of the 2018 rate-setting process, but limits the scope of the review to exclude problems identified by FamilyCare, limits the time-frame for the review, and denies FamilyCare's request to provide information to correct inaccurate documentation provided by the state's actuary, Optumas.  Allen refuses to discuss any of these issues with FamilyCare CEO Jeff Heatherington for a period of approximately six weeks, despite Heatherington's requests to do so (*see, e.g.*, **App. 150**). |
| November 2017 | FamilyCare complains to legislators, CMS, OHA, and the press regarding known errors in the 2018 rates (*see, e.g.*, **Apps. 151-155**). | |
| November 2017 | FamilyCare requests opinion from office of legislative counsel on several aspects of OHA's rate-setting efforts and forwards opinion that rates are inconsistent with federal and state legal requirements to OHA (*see, e.g.*, **Apps. 156-158**). | |
| December 2017 | | OHA emails legislators results of independent review without informing them of the limitations of that review (*see, e.g.*, **App. 159**). |

EXHIBIT 1
Page 23 of 27

**_FamilyCare v. OHA_: List of Examples of Protected Speech and Retaliatory Acts and Speech**
**(The accompanying cover letter dated 1/3/19 is an integral part of this document.)**

| Time Period | FamilyCare Protected Speech | Saxton/Allen Retaliatory Acts or Speech |
|---|---|---|
| December 4, 2017 | | OHA publishes misleading press release on independent reviews stating that CCO rates are sound. Reviews did not opine on the soundness of CCO rates but merely stated that the State's methodology "appears" to be sound (_see, e.g._, **App. 160**). |
| November 29 - December 13, 2017 | FamilyCare complains to OHA, legislators, the Oregon Health Policy Board, CMS, and the press about numerous problems with the independent review, including: potential bias and limitations in the scope of the review; the likelihood that the 2018 rates will force FamilyCare to shut down; the resulting harm to the community; and Allen's failure to respond to Heatherington to resolve issues (_see, e.g._, **Apps. 161-166**). | |
| December 2, 2017 | FamilyCare complains to OHA about errors in OHA's letter to the Governor, which described past issues with the rates (_see, e.g._, **App. 167**). | |
| December 8, 2017 | FamilyCare provides OHA with information it had previously sent the agency regarding problems with how members are risk scored, including a sample of specific members whose risk scores were incorrect, and OHA's refusal to follow-up on discrepancies (_see, e.g._, **App. 119**). | |

- 19 -

EXHIBIT 1
Page 24 of 27

*FamilyCare v. OHA*:  **List of Examples of Protected Speech and Retaliatory Acts and Speech**
**(The accompanying cover letter dated 1/3/19 is an integral part of this document.)**

| Time Period | FamilyCare Protected Speech | Saxton/Allen Retaliatory Acts or Speech |
|---|---|---|
| December 8 - 16, 2017 | FamilyCare meets with OHA and continues to provide detailed information and analyses regarding the deficiencies with the 2018 rates and to request underlying data and information regarding methodology, which would have enabled FamilyCare to make an informed decision regarding whether to renew its contract for 2018 (*see, e.g.*, **Apps. 168-175**). | |
| December 14, 2017 | | Allen states that the 2018 rates are final, which contradicts earlier positions taken by OHA staff (*see, e.g.*, **Apps. 176-177**). |
| December 8 - 15, 2017 | | OHA fails to respond to errors and deficiencies identified by FamilyCare, and fails to provide FamilyCare with any of the information that it requested, which would have allowed FamilyCare to make an informed decision regarding whether to renew its contract for 2018.<br><br>On December 15, 2017, OHA informs FamilyCare that it will not provide information to FamilyCare about key rate issues prior to the December 29, 2017, deadline for signing the contract, contradicting its previous promises (**App. 179**).<br><br>OHA agrees to provide other information, but later withholds that information as well (*id.*; *see also* entry below dated December 20, 2017.) |

- 20 -

EXHIBIT 1
Page 25 of 27

***FamilyCare v. OHA***:  **List of Examples of Protected Speech and Retaliatory Acts and Speech**
**(The accompanying cover letter dated 1/3/19 is an integral part of this document.)**

| Time Period | FamilyCare Protected Speech | Saxton/Allen Retaliatory Acts or Speech |
|---|---|---|
| December 20, 2017 | | Allen abruptly moves FamilyCare's deadline to sign the 2018 contract from December 29 to December 21, 2017, with just 24 hours' notice and without providing FamilyCare with the information OHA previously promised to provide (*see, e.g.,* **Apps. 180-181**).<br><br>On December 29, 2017, OHA shared the results of a preliminary rate redetermination analysis that showed that FamilyCare's rates would have been impacted between 0 and 5%, which would have been a potential difference of tens of millions of dollars.  By abruptly moving the deadline up to December 21, FamilyCare was unable to consider this important information prior to making its decision regarding whether to renew the contract (**App. 182**). |
| December 20, 2017 - January 2018 | | Allen further implements the smear campaign by knowingly providing false information to the press, healthcare providers, and the State of Reform regarding the reasons for FamilyCare's closure (*see, e.g.,* **Apps. 183-187**). |
| February 28, 2018 | | After FamilyCare is forced from the market, OHA releases information on revised rates for 2018, indicating that CCOs would receive, on average, an increase of 5.3% to their Medicaid capitation rates for the 2018 contract year (*see, e.g.,* **Apps. 188-189**). |

- 21 -

EXHIBIT 1
Page 26 of 27

**FamilyCare v. OHA: List of Examples of Protected Speech and Retaliatory Acts and Speech**
**(The accompanying cover letter dated 1/3/19 is an integral part of this document.)**

| Time Period | FamilyCare Protected Speech | Saxton/Allen Retaliatory Acts or Speech |
| --- | --- | --- |
| March 2018 | | OHA informs FamilyCare that it intends to recoup additional funds for 2014 and 2018 due to dual-eligibility errors on OHA's part that resulted in the misclassification of certain FamilyCare members (*see, e.g.*, **Apps. 190**). |
| March 2018 - present | | DOJ's Charities' Division initiates an (ongoing) investigation into nonprofits associated with FamilyCare, coordinating with the DOJ legal team representing OHA in this litigation (**Apps. 191-194**). |
| April 18, 2018 | | OHA issues Legislative Report that contains information on CCO finances that OHA knew falsely portrayed FamilyCare as an outlier (**App. 195**). |
| October 1, 2018 | | OHA issues 2019 rates, which address many of the deficiencies repeatedly identified by FamilyCare, and which would have resulted in an additional 12% overall rate increase for FamilyCare in 2019 had FamilyCare not been forced from the market (**Apps. 196** (excerpt of full document)**-197**). |

- 22 -

EXHIBIT 1
Page 27 of 27