**PERKINS**COIE

1120 NW Couch Street
10th Floor
Portland, OR 97209-4128

T  +1.503.727.2000
F  +1.503.727.2222
PerkinsCoie.com

July 28, 2021

Matthew P. Gordon
MGordon@perkinscoie.com
D.  +206.359.3552
F.  +206.359.4552

**VIA EMAIL**

Harry Wilson
Markowitz Herbold PC
1455 SW Broadway St., Ste. 1900
Portland, OR 97201

**Re:**  ***FamilyCare, Inc. v. Oregon Health Authority, et. al.***
 **USDC Oregon Case No. 6:18-cv-00296-MO**
 **Supplemental discovery**

Dear Harry:

I write regarding the parties' supplemental discovery.  As you know, FamilyCare and OHA previously agreed that each party was obligated under Rule 26 to supplement its respective document productions.  In an effort to reduce the respective burdens, the parties also agreed to identify specific RFPs that each believed required supplementation and agreed to use different search terms across data pulled from a narrowed list of custodians (while each reserving our rights to insist on broader supplemental discovery).  That process is underway—we've agreed to custodians and initial search terms, and FamilyCare continues to work in good faith to potentially hone searches depending on the data revealed in the search term reports.

The parties disagreed, however, about OHA's production of materials related to 2019 and 2020 rate-setting. FamilyCare sought supplementation on certain limited aspects of rate-setting from those years, such as the increase in Health Share's rates in 2019 and specific changes to OHA's rate setting methodology and practices that were implemented shortly after FamilyCare left the CCO market. In addition, FamilyCare identified existing RFPs that encompass such documents, including, specifically, RFP Nos. 113, 122, 123, 124, 132, 144, & 145. But OHA took the position  that it would not produce *any* materials related to rate-setting in 2019 or 2020, even though OHA did not and has not contended that such materials are outside the scope of existing discovery requests or otherwise not subject to the duty to supplement.  OHA instead stated that it would not produce those materials simply because it believes them to be irrelevant and their production to be potentially overly burdensome.

The dispute over production of materials related to 2019 and 2020 rate-setting was addressed at the July 6, 2021 hearing on the parties' respective discovery motions.  There, the Court focused

Perkins Coie LLP

153013279.3
153013279.4

EXHIBIT B
Page 1 of 4

Harry Wilson
July 28, 2021
Page 2

on the text of Fed. R. Civ. P. 26(e)(1), which requires a party to timely supplement its responses to discovery requests "if the party learns that in some material respect the . . . response is *incomplete* or incorrect[.]" (Emphasis added.)  The Court made clear that OHA remains obligated to produce, without any court order, responsive materials it learns about through the ongoing, agreed-upon process or otherwise if those materials render its prior production "incomplete or incorrect."

Although the Court did not provide guidance as to what makes a prior discovery response or production "incomplete or incorrect," courts interpret  Rule 26(e) to require supplementation when "there is an objectively reasonable likelihood that the additional or corrective information could substantially affect or alter the opposing party's discovery plan or trial preparation." *Robbins & Myers, Inc. v. J.M. Huber Corp.*, 274 F.R.D. 63, 77 (W.D. N.Y. 2011) (citing *Sender v. Mann*, 225 F.R.D. 645 (D. Colo. 2004)).

OHA has indisputably "learn[ed]" of additional information that is material to FamilyCare's claims and trial preparation.  *See Robbins & Myers, Inc.*, 274 F.R.D. at 77 (a party that "responds to a request that no responsive document exists, or that the only responsive documents are those described in the response, and then at a later time creates another responsive document which the party then knows, or reasonably should know, is materially within the scope of the earlier request most certainly 'learns' of the existence of the document thereby triggering the duty to timely serve a supplemental response"). As reflected on OHA's website, OHA made significant changes to the rate-setting methodologies and practices soon after FamilyCare's closure, including without limitation the following three changes:

- Significantly increasing Health Share's capitation rates for 2019 to care for FamilyCare's former members;

- Eliminating the "reimbursement adjustment" policy that OHA first implemented in 2017 and applied in subsequent years to reduce CCOs' primary care costs; and

- Reverting to a statewide rate-setting methodology in 2020.

FamilyCare has notified OHA previously, and hereby notifies OHA again, that these changes are highly relevant to the issues in this case, and that materials related to these changes could "substantially affect or alter" FamilyCare's trial preparation.  As you know, FamilyCare's claim against Ms. Saxton implicates her motive for the reimbursement adjustment policy and other actions that depressed FamilyCare's rates, and FamilyCare alleges—with substantial evidentiary support—that the explanations offered for such actions were pretextual attempts to obscure the retaliatory targeting of FamilyCare based on its protected First Amendment expression.  *See Gorzynski v. JetBlue Airways Corp.*, No. 03CV774A, 2012 WL 712067, at *5 (W.D.N.Y. Mar.

Perkins Coie LLP

153013279.3
153013279.4

Harry Wilson
July 28, 2021
Page 3

5, 2012) (after close of discovery, ordering supplementation of documents relevant to the plaintiff's contention that non-discretionary reasons for actions were pretextual). The significant increase in Health Share's rates in 2019 to care for FamilyCare's former members likewise support FamilyCare's claim that the excuses for failing to adjust the rates before were pretextual. And the materials are also highly relevant to FamilyCare's breach of contract claims.  OHA's elimination of the punitive reimbursement adjustment policy once FamilyCare shut its doors is directly probative of OHA's reasons for implementing that policy in the first place, and specifically whether OHA did so in violation of the parties' Settlement Agreement to claw back the settlement credit. Changes to the rate-setting methodology after FamilyCare closed its doors—changes that FamilyCare had advocated for years and that would have benefited FamilyCare through tens of millions of additional funding—are relevant to whether OHA acted in bad faith when it  refused to make those changes earlier and set FamilyCare's rates so low. And OHA's decision to pay Health Share tens of millions of dollars more to provide services to FamilyCare's former members undermines OHA's explanations for the disparity between FamilyCare and Health Share rates.

There is no dispute that OHA has within its possession or control numerous documents related to these changes, including without limitation rate-model workbooks with the details of Health Share's 2019 rate development—rates that were developed using 2017 based data that included FamilyCare's 2017 reported encounter and financial data from 2017.  OHA also presumably has within its possession or control documents addressing the reasons for the changes.  Such documents are within the scope of FamilyCare's existing discovery requests, including RFP Nos. 113, 122, 123, 124, 132, 144, and 145 (a fact that OHA has not disputed) and thus subject to supplementation.

For these reasons, OHA's discovery responses are at this point materially incomplete and require supplementation. Consistent with the scope of supplemental discovery described above, FamilyCare expects that OHA will honor its obligations under Rule 26(e)(1) and the Court's ruling by producing responsive, non-privileged materials related to the three categories described above, notwithstanding the fact that they relate to 2019 or 2020 rate-setting.  We believe and will submit to the court that withholding or failure to produce such documents violates OHA's obligations to supplement its prior discovery under Rule 26(e). And, to the extent OHA does not produce those materials in full, FamilyCare will seek to offer evidence at trial of the changes to the 2019 and 2020 rates and rate-setting based on publicly available information and will also seek to exclude from trial any evidence offered by OHA about these changes beyond what it reflected in the publicly available information.

Perkins Coie LLP

153013279.3
153013279.4

Harry Wilson
July 28, 2021
Page 4

Sincerely,

Matthew P. Gordon

MPG:mjm

cc:

Perkins Coie LLP

153013279.3
153013279.4