**David B. Markowitz, OSB #742046**
DavidMarkowitz@MarkowitzHerbold.com
**Harry B. Wilson, OSB #077214**
HarryWilson@MarkowitzHerbold.com
**Laura Salerno Owens, OSB #076230**
LauraSalerno@MarkowitzHerbold.com
MARKOWITZ HERBOLD PC
1455 SW Broadway, Suite 1900
Portland, OR  97201
Tele:  (503) 295-3085
Fax:  (503) 323-9105

      Special Assistant Attorneys General for Defendant Oregon
      Health Authority, an agency of the State of Oregon

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| FAMILYCARE, INC., an Oregon non-profit corporation,<br><br>               Plaintiff,<br><br>      v.<br><br>OREGON HEALTH AUTHORITY, an agency of the State of Oregon, and LYNNE SAXTON,<br><br>               Defendants. | Case No. 6:18-cv-00296-MO<br><br>**DEFENDANT OREGON HEALTH AUTHORITY'S MOTION FOR SUMMARY JUDGMENT RE FAMILYCARE'S THIRD CLAIM FOR RELIEF**<br><br>**Fed. R. Civ. P. 56**<br><br>**Oral argument requested** |

**DEFENDANT OREGON HEALTH AUTHORITY'S MOTION FOR
SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

LR 7-1 CERTIFICATION ................................................................................................ 1

MOTION ........................................................................................................................... 1

MEMORANDUM IN SUPPORT OF MOTION ............................................................... 1

Introduction ..................................................................................................................... 1

Procedural BackGround ................................................................................................. 2

I.      In 2018, the Court dismissed FamilyCare's good faith claim at the pleading
        stage. ...................................................................................................................... 2

II.     FamilyCare re-filed its good faith claim after the close of discovery and OHA
        moved to dismiss ................................................................................................... 3

III.    The Court denied OHA's motion to dismiss and directed the parties to address
        three issues on summary judgment. ...................................................................... 4

IV.     FamilyCare refuses to identify the exact bases for its reasonable expectations
        during telephone conferral. ................................................................................... 4

Undisputed Facts ............................................................................................................. 6

I.      FamilyCare expressly agreed in the 2016 Settlement Agreement that OHA has
        discretion to set capitation rates, subject only to CMS approval. ........................ 7

II.     The CCO Contract establishes only two conditions on OHA's discretion to set
        the rates: An actuary must set and certify the rates and OHA must submit the
        rates to CMS for approval or modification. .......................................................... 7

III.    Federal law provides that CMS approves the rates if CMS determines that the
        rates are actuarily sound and appropriate ............................................................. 8

IV.     In its Rule 30(b)(6) deposition, FamilyCare testified that its contractual
        expectation were based on the contract and CMS rules and regulations. ............ 9

V.      Optumas actuarily set and certified the 2017 and 2018 rates and OHA
        submitted them to CMS for approval ..................................................................... 9

VI.     CMS approved FamilyCare's 2017 and 2018 rates. .......................................... 10

Legal Standard ............................................................................................................... 10

Argument ....................................................................................................................... 11

I.      The Court should disallow FamilyCare from relying on extra-contractual bases
        for its good faith claim ........................................................................................ 11

        A.      Issue #1: The parties' exact bases for their reasonable contractual
                expectations about the CCO Contract ..................................................... 12

        1.      The only basis for the parties' reasonable expectations is found in the unambiguous terms of the CCO Contract. ...................................... 12

        2.      OHA cannot fully address FamilyCare's exact bases for its alleged reasonable expectations because FamilyCare refused to identify its bases until four days before this motion was due and then identified every conceivable basis. .................................................. 13

        3.      FamilyCare has identified only vague bases for its alleged reasonable expectations. ............................................................... 16

    B.      Issue #2: The Court should prohibit FamilyCare from relying on any extra-contractual bases for its good faith claim because the parties have not taken discovery on them. ............................................................... 17

II.      Issue #3: The Court should grant summary judgment to OHA on FamilyCare's good faith claim because there is no dispute of material fact that FamilyCare has not adduced evidence to advance its good faith claim. ............................................. 18

    A.      FamilyCare has not adduced any evidence that the CCO Contract informs its alleged reasonable expectations. ........................................................ 19

    B.      FamilyCare has not adduced any evidence that "applicable law" informs its alleged reasonable expectations. ........................................................ 22

    C.      FamilyCare has not adduced any evidence that industry standards, past practices, or constitutional obligations or other limitations inform its alleged reasonable expectations. ....................................................... 23

    D.      FamilyCare has not adduced any evidence that the parties intended ORS 414.652(4) to create an implied contractual duty for OHA to provide 60 days' notice of rate amendments. ....................................................... 24

        1.      The 60 days' notice requirement in ORS 414.652(4) is not an implied term of the CCO Contract. .......................................................... 25

        2.      FamilyCare had already decided to reject the 2018 Rate Amendment by the December 20, 2017 "ultimatum." ............................. 26

    E.      The implied duty of good faith does not create free-floating, normative obligations that exist apart from the express terms of the contract....................... 27

Conclusion ............................................................................................................. 28

# TABLE OF AUTHORITIES

Page(s)

Cases

*Allen v. FamilyCare, Inc.*,
   812 F. App'x 413 (9th Cir. 2020) ....................................................................... 3, 23
*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)............................................................................................ 10
*Bulkoski v. Bacharach, Inc.*,
   1 F. Supp. 2d 484 (W.D. Pa. 1997).................................................................... 18
*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)............................................................................................ 10
*Davis v. Detroit Downtown Dev. Auth.*,
   No. 17-CV-11742, 2017 WL 11318204 (E.D. Mich. June 19, 2017) ...................... 15
*Fleshman v. Wells Fargo Bank*,
   27 F. Supp. 3d 1127 (D. Or. 2014) ............................................................... 22, 25
*Forsberg v. Pac. Nw. Bell Tel. Co.*,
   840 F.2d 1409 (9th Cir. 1988) ...................................................................... 14, 24
*Intel Corp. v. Hartford Acc. & Indem. Co.*,
   952 F.2d 1551 (9th Cir. 1991) ...................................................................... 10, 14
*Klamath Off-Project Water Users, Inc. v. Pacificorp*,
   237 Or. App. 434 (2010).............................................................................. 18, 27
*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986)...................................................................................... 10, 11
*Moore v. IMCO Recycling of CA, Inc.*,
   No. CV041304DSFVBKX, 2005 WL 5887179 n.21 (C.D. Cal. June 29, 2005) .............. 18, 24
*Oregon Univ. Sys. v. Oregon Pub. Emps. Union, Local 503*,
   185 Or. App. 506 (2002)............................................................................... passim
*Pac. First Bank v. New Morgan Park Corp.*,
   319 Or. 342 (1994)......................................................................................... 1, 19
*Sharma v. Providence Health & Servs.-Oregon*,
   289 Or. App. 644 (2018)..................................................................................... 26
*Speziale v. Bethlehem Area School Dist.*,
   266 F.Supp.2d 366 (2003) ................................................................................. 18
*Thompson ex rel. Thorpe Fam. Charitable Remainder Unitrust v. Federico*,
   324 F. Supp. 2d 1152 (D. Or. 2004) .................................................................. 15
*U.S. Nat. Bank of Oregon v. Boge*,
   311 Or. 550 (1991)............................................................................................ 27
*Uptown Heights Assocs. Ltd. P'ship v. Seafirst Corp.*,
   320 Or. 638 (1995)............................................................................................ 12
*W. Prop. Holdings, LLC v. Aequitas Capital Mgmt., Inc.*,
   284 Or. App. 316 (2017)............................................................................... 12, 13

*Zygar v. Johnson*,
   169 Or App 638 (2000) ..................................................................................................... 27

Statutes

ORS 414.652(4) ........................................................................................................... 24, 25

Rules

Fed. R. Civ. P. 56 ............................................................................................................ 1, 10

Regulations

42 C.F.R. § 438.4(b) ................................................................................................. 8, 16, 21

**Page iv -  DEFENDANT OREGON HEALTH AUTHORITY'S MOTION FOR
            SUMMARY JUDGMENT**

## LR 7-1 CERTIFICATION

Pursuant to LR 7-1(a)(1), counsel for Oregon Health Authority ("OHA") made a good faith effort to resolve this dispute by telephone and was unable to do so.

## MOTION

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, OHA moves this Court for summary judgment with prejudice in favor of OHA and against FamilyCare, Inc. ("FamilyCare") on FamilyCare's Third Claim for Relief.

## MEMORANDUM IN SUPPORT OF MOTION

## INTRODUCTION

The "duty of good faith operates to effectuate the reasonable expectations of the parties as determined under the terms of their contract." *Pac. First Bank v. New Morgan Park Corp.*, 319 Or. 342, 354 (1994). The terms of the CCO Contract provide OHA with discretion to set rates, subject to two conditions: OHA must actuarially set and certify the rates and submit them to CMS for approval or modification. The CCO Contract does not provide for any other express limitations on OHA's discretion.

The extra-contractual evidence confirms that there are no other conditions on OHA's discretion—express or implied. In 2016, OHA and FamilyCare settled two lawsuits concerning rates. In their settlement agreement, FamilyCare agreed that "OHA has the authority to set the CCO rates under which OHA contracts with CCOs, subject to CMS approval." (2016 Settlement Agreement (Dkt. 155-2 at 3) ("Settlement Agreement").) FamilyCare also agreed that "OHA is not obligated to adjust the rates paid to any CCO to ensure that such rates cover all costs that a CCO has incurred during a rate year[.]" (*Id.*) Given its express agreement to OHA's authority, FamilyCare cannot have any reasonable expectations that the CCO Contract implicitly imposed a duty on OHA limiting that authority.

The Court should disallow FamilyCare from now contending—years after the close of discovery—that its reasonable expectations are based on extra-contractual sources it has never pleaded. But even if the Court considers those extra-contractual sources, they cannot vary the

**Page 1 -   DEFENDANT OREGON HEALTH AUTHORITY'S MOTION FOR
            SUMMARY JUDGMENT**

substantive terms of the CCO Contract or contradict FamilyCare's plainly stated agreement that OHA has authority to set CCO rates.  The Court should, therefore, grant OHA summary judgment on FamilyCare's good faith claim.

<strong>PROCEDURAL BACKGROUND</strong>

**I.      In 2018, the Court dismissed FamilyCare's good faith claim at the pleading stage.**

FamilyCare asserted a claim for breach of the implied duty of good faith and fair dealing for the first time in its Third Amended Complaint, which it filed in February 2018.  (3rd Am. Compl. ¶¶ 146-51 (Dkt. 1-1 at 547-48).)  In that claim, FamilyCare alleged it "had an objectively reasonable expectation, based on the Contract and applicable law, that OHA would present annual Rate Amendments that were reasonable, unbiased, actuarially sound, and free of errors in underlying data and methodology."  (*Id.* ¶ 148.)  OHA moved to dismiss the claim at the pleading stage.  (Dkt. 21, 81.)

The Court dismissed the claim with prejudice.  (Dkt. 105.)  The Court stated that "nothing in the words of the Contract gives FamilyCare a reasonable expectation to actuarially sound rates."  (*Id.* at 25.)  The Court further explained that state and federal Medicaid laws were "not sufficient to give FamilyCare a reasonable *contractual* expectation in actuarially sound rates."  (*Id.* at 26 (emphasis in original).)

FamilyCare moved for reconsideration.  (Dkt. 108.)  The Court granted the motion to reconsider its ruling but declined to alter its prior order dismissing FamilyCare's good faith claim with prejudice.  (Dkt. 183.)  Because the Court dismissed the good faith claim at the pleading stage, FamilyCare and OHA took limited discovery on the claim.[1, 2]

---

[1]  OHA began discovery on the claim shortly after FamilyCare filed the Third Amended Complaint on February 15, 2018.  For example, OHA requested documents regarding the good faith claim in an RFP issued before the Court dismissed the claim on June 1, 2018.  OHA also issued a Rule 30(b)(6) deposition notice that included a topic on the claim before the Court's dismissal.  But that 30(b)(6) deposition, and many others (including depositions of FamilyCare's CEO and CFO), did not take place until after the Court's dismissal.  OHA stopped seeking discovery on the claim after the Court dismissed the claim.

[2] As this Court noted, "[p]erplexingly, even though the Court had dismissed claims two and ten [the good faith claim] from the third amended complaint with prejudice, FamilyCare included both claims, again nearly verbatim, in the Fourth Amended Complaint."  (12/14/21 Op. and Order at 3 (Dkt. 504).)  OHA understood that, despite FamilyCare's failure to remove the

**Page 2 -    DEFENDANT OREGON HEALTH AUTHORITY'S MOTION FOR SUMMARY JUDGMENT**

FamilyCare appealed.  (Dkt. 351.)  The Ninth Circuit vacated this Court's order and remanded.  *Allen v. FamilyCare, Inc.*, 812 F. App'x 413, 417 (9th Cir. 2020), as amended (May 7, 2020) (unpublished).  Of note, on ruling on a different claim, the Ninth Circuit stated that "neither Oregon nor federal law required OHA to do more than seek and obtain CMS approval of the 2017 and 2018 rates."  *Id.*

## II.    FamilyCare re-filed its good faith claim after the close of discovery and OHA moved to dismiss.

On April 27, 2021, after the close of discovery, FamilyCare filed a Fifth Amended Complaint that included a claim for breach of the implied duty of good faith and fair dealing that is similar to the claim FamilyCare originally pleaded in its Third Amended Complaint. (5th Am. Compl. ¶¶ 105-10 (Dkt. 429).)  In its good faith claim, FamilyCare alleged again, in nearly the same words as the Third Amended Complaint, that it "had an objectively reasonable expectation, based on the Contract and applicable law, that OHA would present annual Rate Amendments that were timely, reasonable, unbiased, actuarially sound, adequate, and free of errors in underlying data and methodology."  (5th Am. Compl. ¶ 107 (The alleged expectations that rate amendments would be "timely" and "adequate" were new in the Fifth Amended Complaint).)

OHA moved to dismiss the claim again.  (OHA's Mot. to Dismiss (Dkt. 432).)  Among its arguments, OHA argued that the CCO Contract afforded OHA discretion to set rates, subject to CMS approval.  As the CCO Contract defined the mechanism for OHA to exercise its discretion, OHA argued that FamilyCare's objectively reasonable expectations could only be informed by the unambiguous terms of the CCO Contract—and not on any extra-contractual basis.  (*Id.* at 14-17.)

OHA also argued that FamilyCare failed to specifically identify any provision of the CCO Contract that supported its alleged reasonable expectations.  (*Id.* at 15.)  In response, FamilyCare contended that its objectively reasonable contractual expectations were not limited

---

claim from its Fourth Amended Complaint, the Court had dismissed it and it was no longer part of the case.

**Page 3 -    DEFENDANT OREGON HEALTH AUTHORITY'S MOTION FOR SUMMARY JUDGMENT**

to the terms of the CCO Contract.  Instead, according to FamilyCare, its reasonable expectations also could be based on "applicable law" (5th Am. Compl. ¶ 107), "prior practice, industry standards, the applicable regulatory framework, and the fact that OHA . . . is a government agency subject to constitutional and other obligations and limitations." (FamilyCare's Opp'n to Mot. to Dismiss at 23 (Dkt. 452).)  But FamilyCare did not identify any specific laws, prior practices, industry standards, regulatory frameworks, or constitutional or other obligations and limitations.  When the Court asked what "applicable law" FamilyCare was referring to during the hearing, FamilyCare responded that it included all "positive and normative law in Oregon."  (Tr. of 9/1/2021 at 35:7-11 (Dkt. 480).)

**III.    The Court denied OHA's motion to dismiss and directed the parties to address three issues on summary judgment.**

The Court denied OHA's motion to dismiss on November 10, 2021.  (11/10/21 Op. and Order (Dkt. 495).)  The Court found that "the parties' objective reasonable expectations can be informed by something other than the express terms of the contract[.]"  (*Id.* at 10.)  The Court reserved ruling on three issues and "directed [FamilyCare and OHA] to resolve" them on a motion for summary judgment:

1.  The "parties should address what exactly they believe to be the basis for the parties' objective reasonable expectations that form the basis for the implied covenant of good faith and fair dealing claim."

2.  Is "FamilyCare now relying on extra-contractual sources for the good faith obligation that were not previously presented in this case, as to which there has been limited or no discovery, and therefore, the Court should potentially disallow"?

3.  Has "FamilyCare . . . actually adduce[d] enough evidence to advance its third claim for relief"?

(*Id.*)

**IV.    FamilyCare refuses to identify the exact bases for its reasonable expectations during telephone conferral.**

In its Third Amended Complaint, FamilyCare alleged that its reasonable expectations were based on "the Contract and applicable law."  (3rd Am. Compl. ¶ 148.)  Because the Court

**Page 4 -    DEFENDANT OREGON HEALTH AUTHORITY'S MOTION FOR
          SUMMARY JUDGMENT**

dismissed FamilyCare's good faith claim in 2018 at the pleading stage, the parties conducted limited discovery on the claim.

When FamilyCare re-filed its good faith claim in 2021, it continued to identify just "the Contract and applicable law" as the bases for its reasonable expectations. But then, in its briefing in opposition to OHA's motion to dismiss, FamilyCare argued that its reasonable expectations were also informed by "prior practice, industry standards, the applicable regulatory framework, and the fact that OHA . . . is a government agency subject to constitutional and other obligations and limitations." (FamilyCare's Opp'n to Mot. to Dismiss at 23.) FamilyCare did not identify specific practices, standards, regulations, obligations, or limitations, either in its briefing or during the hearing.

In compliance with Local Rule 7-1, ten days before this motion was due, OHA requested that FamilyCare confer regarding OHA's motion for summary judgment. Because the Court's Order directed the parties to "address what exactly they believe to be the basis for the parties' objective reasonable expectations," OHA asked FamilyCare to "specifically identify: [t]he applicable laws and/or regulations, [p]rovisions and sections of the CCO Contract, [i]ndustry standards, [p]ast practices, and/or [o]ther bases FamilyCare contends inform the parties' objectively reasonable expectations" during the conferral. (December 2021 email exchange, attached to Decl. of Harry Wilson in Supp. of Mot. for Summ. J. as Ex. 1 at 7 ("Wilson Decl.).)

FamilyCare refused. In an email sent to OHA minutes before the telephone conferral, FamilyCare contended that "OHA should be well aware of bases for FamilyCare's reasonable expectations if for no other reason than that the issue has been briefed and argued multiple times in this Court and before the Ninth Circuit." (*Id*. at 6.) During the telephone conferral, OHA asked FamilyCare to identify the exact bases for its reasonable expectations. (Wilson Decl. ¶ 2.) FamilyCare again refused. (*Id.*) It contended, again, that OHA should be aware of the bases for FamilyCare's claim. (*Id.*) Even when OHA explained that it was FamilyCare's claim for relief and OHA was asking FamilyCare to explain its own claim, FamilyCare refused to identify what exactly were the bases for its claim. (*Id.*) In another email, FamilyCare stated that "[o]ur

**Page 5 -   DEFENDANT OREGON HEALTH AUTHORITY'S MOTION FOR
                    SUMMARY JUDGMENT**

submission to the Court will provide the information the Court requested." (Wilson Decl. Ex. 1 at 4.)

Then, four days after the telephone conferral and four days before this motion was due, FamilyCare sent a new email. In this December 13, 2021, email, FamilyCare identifies a laundry list of supposed bases for its alleged reasonable expectations. (*Id*. at 1-2.) The bases—with the exception of the CCO Contract and some provisions of Medicaid regulations—are new. Moreover, FamilyCare's list of alleged bases is so broad and vague that it is effectively meaningless. For example, FamilyCare claims that "the parties' 30+ year history working together" informs its reasonable expectations. (*Id.* at 2.) FamilyCare also asserts that "OHA's communications and statements about rate-setting" are a basis for its reasonable expectations. (*Id.*) But there are potentially thousands of communications between OHA and FamilyCare about rates over the parties' "30+ year history." (*Id.*) FamilyCare also lists "OHA's communications and statements about health care transformation," the "terms and conditions" of the "state Medicaid plan," and "standards, established *inter alia* by the federal constitution . . . that a government agency should not be biased or unreasonable," among many others. (*Id.*) And although FamilyCare identifies some provisions of the CCO Contract, it does so "without limitation," apparently because it refuses to be pinned down to any particular provision. (*Id.* at 1.)

### UNDISPUTED FACTS

OHA administers Oregon's Medicaid program. (5th Am. Compl. ¶ 2; Answer to 5th Am. Compl. ("Answer") ¶ 2 (Dkt. 501).) In 2014, OHA and FamilyCare entered into a contract setting out the terms and conditions of FamilyCare's role as a coordinated care organization (the "CCO Contract"). (Attached to 5/18/21 Jindal Decl. in Supp. of Mot. to Dismiss ("Jindal Decl.") as Ex. 2 (Dkt. 433-2).) The CCO Contract has been amended 12 times, including new rate amendments in 2015, 2016, 2017, and 2018 (for January only). (Jindal Decl. Exs. 6-13.)

**Page 6 -** **DEFENDANT OREGON HEALTH AUTHORITY'S MOTION FOR**
**SUMMARY JUDGMENT**

**I.    FamilyCare expressly agreed in the 2016 Settlement Agreement that OHA has discretion to set capitation rates, subject only to CMS approval.**

In 2015 and 2016, FamilyCare sued OHA regarding its rates. (Oregon Cir. Ct., County of Marion, Case No. 15CV13782; Oregon Cir. Ct., County of Marion, Case No. 16CV10253). On May 22, 2016, OHA and FamilyCare entered a settlement agreement ("2016 Settlement Agreement") resolving FamilyCare's lawsuits. (5th Am. Compl. ¶ 29; Answer ¶ 29 ("Settlement Agreement") (Dkt. 1-1 at 28-40; Dkt. 155-2).)

FamilyCare agreed in the 2016 Settlement Agreement that "OHA has the authority to set the CCO rates under which OHA contracts with CCOs, subject to CMS approval." (Settlement Agreement § 1.a. (Dkt. 155-2 at 3).) FamilyCare also agreed that CMS is the arbiter of whether rates are actuarially sound: "OHA must establish <u>to the satisfaction of CMS</u> that the rates are actuarially sound[.]" (*Id.* § 1.b (emphasis added).) And FamilyCare agreed that OHA was not obligated to adjust FamilyCare's rates to cover FamilyCare's costs: "OHA is not obligated to adjust the rates paid to any CCO to ensure that such rates cover all costs that a CCO has incurred during a rate year[.]" (*Id.* § 1.d.)

**II.    The CCO Contract establishes only two conditions on OHA's discretion to set the rates: An actuary must set and certify the rates and OHA must submit the rates to CMS for approval or modification.**

The CCO Contract provides that OHA must actuarially set and certify the rates. The 2016 Contract (in effect during development of the 2017 rates) and the 2017 Contract (in effect during development of the 2018 rates) both state that "OHA will pay Contractor a monthly CCO Payment for each Member enrolled under the Contract[.]" (2016 CCO Contract, Ex. C, § 1.a, Jindal Decl., Ex. 9 (Dkt. 433-9 at 120); 2017 CCO Contract, Ex. C, § 1.a., Jindal Decl., Ex. 13 (Dkt. 433-13 at 121).) The Contracts further explain that "OHA has developed actuarially set Adjusted Per Capita Costs (Capitation Rates) to reimburse plans for providing the Covered Services." (2016 CCO Contract, Ex. C, § 7, Jindal Decl., Ex. 9 (Dkt. 433-9 at 129); 2017 CCO Contract, Ex. C, § 6, Jindal Decl., Ex. 13 (Dkt. 433-13 at 132).) And they note that the "Per capita rates are actuarially certified annually." (2016 CCO Contract Ex. D, § 20.c, Jindal Decl.,

**Page 7 -    DEFENDANT OREGON HEALTH AUTHORITY'S MOTION FOR SUMMARY JUDGMENT**

Ex. 9 (Dkt. 433-9 at 147); 2017 CCO Contract Ex. D, § 20.c, Jindal Decl., Ex. 13 (Dkt. 433-13 at 148).)

After setting the rates, OHA must submit them to CMS, which can approve or modify the rates. The 2016 and 2017 CCO Contracts both state: "This Contract, and the CCO Payment Rates contained herein, is subject to approval by the US Department of Health and Human Services, Centers for Medicare and Medicaid Services (CMS). In the event CMS fails to approve the proposed 2016 CCO Payment Rates prior to the Effective Date, OHA shall pay Contractor at the proposed CCO Payment Rates, subject to adjustment upon OHA's receipt of CMS approval or modification of the proposed CCO Payment Rates." (Jindal Decl. Ex. 9, § I.A (Dkt. 433-9 at 7); Jindal Decl., Ex. 1, § I.A (Dkt. 433-1 at 7).)

### III. Federal law provides that CMS approves the rates if CMS determines that the rates are actuarily sound and appropriate.

Federal law confirms that OHA is responsible for obtaining approval from CMS for its proposed rates, not from CCOs or any other source. "Capitation rates for [CCOs] must be reviewed and approved by CMS[.]" 42 C.F.R. § 438.4(b). FamilyCare cites this provision in its Fifth Amended Complaint. (5th Am. Compl. ¶ 11.)

Federal regulations establish the conditions that a state's proposed rates must meet to obtain CMS approval. According to the regulations, "[t]o be approved by CMS, capitation rates must":

1. Have been developed in accordance with standards specified in § 438.5 and generally accepted actuarial principles and practices. . . .

2. Be appropriate for the populations to be covered and the services to be furnished under the contract.

[ . . . ]

6. Be certified by an actuary as meeting the applicable requirements of this part[.]

42 CFR § 438.4(b)(1),(2),(6).

**Page 8 -    DEFENDANT OREGON HEALTH AUTHORITY'S MOTION FOR SUMMARY JUDGMENT**

IV.    **In its Rule 30(b)(6) deposition, FamilyCare testified that its contractual expectation were based on the contract and CMS rules and regulations.**

FamilyCare testified that its reasonable contractual expectation, based on the CCO

Contract and CMS rules and regulations, was that it was due actuarially sound rates.

> Q. All right. Please show us -- please identify for the record where the contract requires that the -- that the rates be actuarially sound.
>
> A. . . . I do believe that the answer to that question is . . . that the contract requires that the -- the contract itself be compliant with all CMS rules and regulations. CMS rules and regulations talk about the development of actuarially sound rates. It talks about the relationship of the State and its contracting with MCOs, which is a CCO in Oregon. . . . So **FamilyCare's understanding and expectation from all of that is that it is due actuarially sound rates under this contract**. Short answer, I'm not an attorney and there may be some part of a legal reason I have missed, but that is my -- my understanding.

(7/17/18 FamilyCare 30(b)(6) Dep. 273:7-274:9, Wilson Decl. Ex. 2 (emphasis

added).)

FamilyCare further testified that its expectation that the rates would be free from errors

was part of and "inseparable" from its expectation that rates would be actuarially sound:

> Q. And your contract claim . . . about the -- the errors that were embedded in the rates. Is there any provision of the contract that requires that the rates be free of all error?
>
> A. The requirement that rates are actuarially sound would mean that an error itself could make the rates not actuarially sound. So the two are related. The two are related and inseparable.

(*Id.* at 276:2-15.)

V.    **Optumas actuarily set and certified the 2017 and 2018 rates and OHA submitted them to CMS for approval.**

In 2016, OHA and Optumas developed 2017 rates, Optumas certified the rates, and OHA

submitted them to CMS for approval.  (Dkt. 1-1 at 41; Dkt. 154-2.)  FamilyCare signed OHA's

2017 rate amendment, which contained the rates Optumas set and certified.  (5th Am. Compl.

¶ 40; Jindal Decl., Ex 13 (Dkt. 433-13.)

In 2017, OHA and Optumas developed 2018 rates, Optumas certified the rates, and OHA

submitted them to CMS for approval.  (Dkt. 158-1.)  FamilyCare declined to sign a full-year

**Page 9 -   DEFENDANT OREGON HEALTH AUTHORITY'S MOTION FOR
            SUMMARY JUDGMENT**

2018 rate amendment, but FamilyCare signed a one-month rate amendment covering just January 2018.  (Wilson Decl., Ex. 3; 5th Am. Compl. ¶ 71.)  The one-month rate amendment that FamilyCare signed contained the 2018 rates that Optumas set and certified.  FamilyCare left the CCO market after January 31, 2018.  (5th Am. Compl. ¶ 73.)

## VI.    CMS approved FamilyCare's 2017 and 2018 rates.

CMS approved the 2017 and 2018 rates for FamilyCare.  (2017 CMS approval attached to the Decl. of Lynne Saxton in Supp. of Mot. for Summ. J. as Ex. 1; 2018 CMS approval attached to the Decl. of Pat Allen in Supp. of Mot. for Summ. J. as Ex. 1.)  CMS's 2018 rate approval letter specifically stated that the "Oregon CCO contract amendment number 143114-12 [the one-month rate amendment] with FamilyCare . . . is approved for the period from January 1, 2018 through January 31, 2018."

## LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."  Fed. R. Civ. P. 56(a).  A party is entitled to summary judgment where the documentary evidence produced by the parties permits only one conclusion.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  A party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) (quoting Fed. R. Civ. P. 56(c)).  "If the moving party meets its initial burden of showing 'the absence of a material and triable issue of fact,' 'the burden then moves to the opposing party, who must present significant probative evidence tending to support its claim or defense.'"  *Intel Corp. v. Hartford Acc. & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991) (quoting *Richards v. Neilsen Freight Lines*, 810 F.2d 898, 902 (9th Cir. 1987)).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party,

**Page 10 - DEFENDANT OREGON HEALTH AUTHORITY'S MOTION FOR
        SUMMARY JUDGMENT**

there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation marks and citation omitted).

## ARGUMENT

**I.     The Court should disallow FamilyCare from relying on extra-contractual bases for its good faith claim.**

In its Opinion and Order, the Court outlined three issues for the parties to address on summary judgment.  The first two issues address OHA's and FamilyCare's bases for their reasonable expectations concerning the CCO Contract.  "First, the parties should address what exactly they believe to be the basis for the parties' objective reasonable expectations that form the basis of the implied covenant of good faith and fair dealing claim."  (11/10/21 Op. & Order at 10 (Dkt. 495).)  Second, the Court directed the parties to address whether FamilyCare is "now relying on extra-contractual sources for the good faith obligation that were not previously presented in this case, as to which there has been limited or no discovery, and therefore, the Court should potentially disallow."  (*Id.*)

In response to the first issue, OHA believes that the only basis for the parties' reasonable contractual expectations is the CCO Contract.  The 2016 Settlement Agreement confirms the CCO Contract's express terms and erases any extra-contractual expectations that exceed the Contract's express terms.  FamilyCare has either refused to identify its exact bases for its alleged reasonable expectations or has identified what amounts to, in total, the entire history of the parties' relationship, every communication between them, and a vast expanse of federal and state law.

In response to the second issue, FamilyCare is now relying on extra-contractual sources for its good faith claim on which the parties' have not conducted full discovery.  The Court should disallow FamilyCare from relying on any basis for its good faith claim except the CCO Contract and federal Medicaid law.

**Page 11 - DEFENDANT OREGON HEALTH AUTHORITY'S MOTION FOR SUMMARY JUDGMENT**

### A.    Issue #1: The parties' exact bases for their reasonable contractual expectations about the CCO Contract.

#### 1.    The only basis for the parties' reasonable expectations is found in the unambiguous terms of the CCO Contract.

OHA believes that the parties' only reasonable contractual expectations are found in the CCO Contract. The "reasonable contractual expectations of the parties are shown[] by the unambiguous terms of the contract." *Uptown Heights Assocs. Ltd. P'ship v. Seafirst Corp.*, 320 Or. 638, 647-48 (1995) (quotation marks and citation omitted); *W. Prop. Holdings, LLC v. Aequitas Capital Mgmt., Inc.*, 284 Or. App. 316, 325 (2017) ("[T]he reasonable contractual expectations of the parties are shown by the express terms of the contract."). OHA identified the exact terms of the CCO Contract that set the parties' reasonable expectations about the rates in its Motion to Dismiss. Those terms are (in the 2016 and 2017 versions of the CCO Contract): Section I.A. (requiring OHA to submit proposed rate amendments to CMS for approval or modification); Exhibit C, § 7 of the 2016 CCO Contract and § 6 of the 2017 CCO Contract (providing that OHA "actuarially set" the rates); Exhibit C, § 2 (providing that the rates described in Exhibit C are the "total consideration payable" to FamilyCare) and Exhibit D, § 20.a (providing that rates "are actuarially certified annually").

The 2016 Settlement Agreement erases any basis for FamilyCare to have reasonable expectations that exceed the express terms on the CCO Contract. In the Settlement Agreement, FamilyCare agreed that "OHA has the authority to set the CCO rates under which OHA contracts with CCOs, subject to CMS approval" and "OHA must establish to the satisfaction of CMS that the rates are actuarially sound[.]" (Settlement Agreement §§ 1.a, 1.b. (Dkt. 155-2 at 3).) FamilyCare also agreed that "OHA is not obligated to adjust the rates paid to any CCO to ensure that such rates cover all costs that a CCO has incurred during a rate year[.]"[3] (*Id.* § 1.d.)

---

[3] OHA argued in the briefing on its Motion to Dismiss that where a "contract expressly establishes a method for exercising discretion, the implied duty of good faith does not impose any extra-contractual conditions on that discretion." (OHA's Supp. Br. Re. Good Faith at 7 (Dkt. 482); *W. Prop. Holdings, LLC*, 284 Or. App. at 325 ("[T]he reasonable contractual expectations of the parties are shown by the express terms of the contract.").) OHA contended that because the CCO Contract expressly establishes a method for OHA to exercise its discretion (*i.e.*, have an actuary set and certify the rates and submit them to CMS for approval), the parties could not have any extra-contractual expectations that obligated OHA to develop rates under a different or

**2.    OHA cannot fully address FamilyCare's exact bases for its alleged reasonable expectations because FamilyCare refused to identify its bases until four days before this motion was due and then identified every conceivable basis.**

Ten days before this motion was due, OHA asked FamilyCare to identify the exact bases for its objectively reasonable expectations during conferral on this motion. FamilyCare initially refused. In an email to FamilyCare before the telephone conferral, OHA explained that it was asking FamilyCare to clarify its exact bases because:

> The [Fifth Amended Complaint] identif[ies] only the "Contract"—with no provisions cited—and "applicable law"—which FamilyCare narrowed to all "positive and normative law in Oregon" during the September hearing. The unpleaded assertions in FamilyCare's briefing reference "the parties' thirty-plus years of prior practice," "industry standards," "the applicable regulatory framework," and "constitutional and other obligations and limitations," but offer no explanation of what prior practice, what industry standards, what regulations, or what obligations and limitations FamilyCare means. Nor has FamilyCare explained how these asserted bases inform [its] alleged reasonable expectations.

(Wilson Decl., Ex. 1 at 5.) During the telephone conferral, OHA again asked FamilyCare to identify the exact bases for its reasonable expectations. (Wilson Decl. ¶ 2.) FamilyCare refused again. (*Id.*) Instead, FamilyCare has offered three assertions why it would not tell OHA the bases for its own claim. First, FamilyCare asserted that "OHA should be well aware of bases for FamilyCare's reasonable expectations if for no other reason than that the issue has been briefed and argued multiple times in this Court and before the Ninth Circuit." (Wilson Decl., Ex. 1 at 6.) Second, FamilyCare asserted that OHA was attempting to use conferral as "a platform for OHA to engage in discovery of FamilyCare that it chose not to pursue earlier." (*Id.* at 4.) And, third, FamilyCare asserted that the purpose of conferral was only to learn whether the parties would stipulate to the proposed motion and, barring that, there was nothing else to discuss. (Wilson

---

additional set of standards. (*Id.*) OHA agrees with the Court that when a contract does not expressly set forth a method for exercising discretion, courts may determine the parties' "objective reasonable expectations" from "something other than the express terms of the contract." (11/10/21 Op. & Order at 10.) But OHA maintains and does not waive its position that the CCO Contract expressly establishes the method by which OHA exercises its discretion to set rates and, therefore, any consideration of factors outside of the CCO Contract is improper. For the purpose of this motion and in accordance with the Court's Nov. 10, 2021, Opinion and Order, however, OHA considers extra-contractual sources in this motion for summary judgment.

**Page 13 - DEFENDANT OREGON HEALTH AUTHORITY'S MOTION FOR SUMMARY JUDGMENT**

Decl. ¶ 2.)  FamilyCare reiterated the first two assertions when it sent a follow-up email four days after the telephone conferral.  (Wilson Decl., Ex. 1 at 1-2.)

FamilyCare's assertions are incorrect and unavailing.  FamilyCare's first assertion—that OHA "should be well aware of bases for FamilyCare's reasonable expectations"—is wrong for multiple reasons.  Foremost, it is FamilyCare's burden as the complainant, not OHA's, to identify its reasonable expectations:  Plaintiff "had the burden, as the complainant . . . , to establish that [defendant] breached its implied duty. . . .  That burden required [plaintiff] to identify the parties' objectively reasonable expectations."  *Oregon Univ. Sys. v. Oregon Pub. Emps. Union, Local 503*, 185 Or. App. 506, 517 (2002).  FamilyCare must meet this burden to survive summary judgment.  *Intel Corp.*, 952 F.2d at 1558 (non-moving party must present significant probative evidence supporting its claim).  Alluding vaguely to the record is not sufficient.  *Forsberg v. Pac. Nw. Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988) ("The district judge is not required to comb the record to find some reason to deny a motion for summary judgment.").

For another reason, FamilyCare has not, contrary to its implication, identified the exact bases for its good faith claim in prior briefing and pleading.  Prior to December 13, 2021 email, it had never cited a particular provision of the CCO Contract.  It had never identified a specific industry standard, past practice, or constitutional obligation.  FamilyCare had occasionally cited to federal regulations that set forth OHA's obligations to CMS, but the Ninth Circuit has held that those regulations do not govern OHA's obligations to FamilyCare—they govern OHA's obligations to CMS.  (*See infra*, § II.B.)  As OHA explained to FamilyCare in a December 10 email after the telephone conferral, "OHA is unaware of FamilyCare ever identifying an exact contractual provision, applicable law, applicable regulatory framework, past practice, industry standard, or 'constitutional and other obligation and limitation' that informs its alleged reasonable contractual expectations[.]"  (Wilson Decl., Ex. 1 at 3.)

FamilyCare's second assertion—that OHA could have and should have used discovery to learn FamilyCare's bases for its good faith claim—is also wrong.  OHA is not seeking factual discovery about OHA's claim: OHA is seeking basic notice about FamilyCare's legal theory.  "It

**Page 14 - DEFENDANT OREGON HEALTH AUTHORITY'S MOTION FOR**
**SUMMARY JUDGMENT**

is Plaintiffs' burden to identify a viable legal basis for their claim." *Davis v. Detroit Downtown Dev. Auth.*, No. 17-CV-11742, 2017 WL 11318204, at \*3 (E.D. Mich. June 19, 2017).  At present, OHA cannot construct a complete defense to FamilyCare's alleged reasonable expectations because OHA does not know how or why FamilyCare believes it has those expectations.  FamilyCare's December 13 email only makes the problem worse because FamilyCare identifies essentially the entire history of the parties' relationship and every communication between them as informing its expectations.  OHA cannot rebut FamilyCare's reasonable expectations based on past practice if FamilyCare is unwilling or unable to identify which past practices supposedly created those expectations, except to say every practice in the parties' "30+ year history."

Furthermore, FamilyCare's repeated assertion that OHA should have taken discovery on FamilyCare's good faith claim is misleading because the original version of the claim was dismissed at the pleading stage (dkt. 105, 187) and the present version was re-filed into the case after the close of discovery.  (Dkt. 429.)  Thus, the parties took only limited discovery on the claim during the brief period it was operative.  In addition, FamilyCare never alleged that the claim was based on anything other than "the Contract and applicable law."  Accordingly, OHA never had notice that FamilyCare might contend that it had reasonable expectations about the performance of the CCO Contract based on things such as industry standards and past practice.

FamilyCare's third assertion—that the only purpose of conferral is to learn whether the opposing party will stipulate to a proposed motion—does not reflect the purpose of Local Rule 7-1.  "The obvious purpose of Local Rule 7.1 is to encourage parties to resolve amicably disputes when possible, preserving judicial resources for those matters that require the court's intervention." *Thompson ex rel. Thorpe Fam. Charitable Remainder Unitrust v. Federico*, 324 F. Supp. 2d 1152, 1172 (D. Or. 2004) (Mosman, J.).  Moreover, the Court specifically directed the parties to address "what exactly they believe to be the basis for the parties' objective reasonable expectations."  (11/10/21 Op. & Order at 10.)  FamilyCare's refusal to identify the exact bases for its own claim in conferral both wastes judicial resources and contravenes the Court's direction for the parties to use this motion to address FamilyCare's supposed bases for its

**Page 15 - DEFENDANT OREGON HEALTH AUTHORITY'S MOTION FOR
      SUMMARY JUDGMENT**

reasonable expectations.  FamilyCare's change of course four days after the telephone conferral to list every conceivable basis, with essentially no limitation, is no better.  Either way, FamilyCare has failed to provide OHA with reasonable notice about the contours of its claim.

> **3.**     **FamilyCare has identified only vague bases for its alleged reasonable expectations.**

In its complaint, FamilyCare identified two bases for its reasonable expectations in its Fifth Amended Complaint: "the Contract and applicable law."  (5th Am. Compl. ¶ 107.) Although other parts of FamilyCare's complaint described state and federal Medicaid statutes in general terms, FamilyCare's good faith claim did not elaborate on the "applicable law" or "Contract" provisions applicable to that claim.

In briefing and discovery in 2018, FamilyCare stated that its reasonable contractual expectations were based on federal Medicaid regulations providing that CCO rates "must be reviewed and approved by CMS as actuarially sound."  42 C.F.R. § 438.4(b); (7/17/18 FamilyCare 30(b)(6) Dep. at 273:7-274:9, Wilson Decl. Ex. 2; *see also* Mot. for Recons. at 14 (Dkt. 108) ("[I]t was objectively reasonable for FamilyCare to expect that the rates set by OHA each year would comport with the requirements imposed by the Medicaid Act and implementing regulations.").  FamilyCare did not identify any other bases for its good faith claim in briefing or discovery on that claim.  Indeed, FamilyCare testified that its expectation that the rates would be free from errors was part of and "inseparable" from its expectation that rates would be actuarially sound.  (7/17/18 FamilyCare 30(b)(6) Dep. at 276:2-15, Wilson Decl. Ex. 2.)

After the Ninth Circuit rejected FamilyCare's reading of federal Medicaid law and CMS approved the 2018 rates, FamilyCare changed tacks.  In its recent opposition to OHA's Motion to Dismiss, FamilyCare stated that its reasonable contractual expectations were informed by "prior practice, industry standards, the applicable regulatory framework, and the fact that OHA . . . is a government agency subject to constitutional and other obligations and limitations."  (FamilyCare's Opp'n to Mot. to Dismiss at 23 (Dkt. 452).)  And, at the September 1, 2021 hearing, FamilyCare suggested that "applicable law" meant all "positive and normative law in Oregon"—not just federal Medicaid regulations.  (Tr. of 9/1/2021 at 35:7-11 (Dkt. 480).)

**Page 16 - DEFENDANT OREGON HEALTH AUTHORITY'S MOTION FOR SUMMARY JUDGMENT**

Until its December 13, 2021 email, FamilyCare had never cited a specific provision of the Contract that creates its reasonable expectations. And even in its December 13 email, FamilyCare continues to rely on the entire CCO Contract, only citing some broad provisions with the caveat that it is doing so "without limitation." Further, that email contends that FamilyCare's reasonable expectations are also based on every past practice in the parties' "30+ year history," as well as all their communications, every standard that could be derived from the United States Constitution, and various undefined "standards" that government should "conduct its business in a manner above reproach." FamilyCare's resort to new and unpleaded bases for its reasonable expectations after the close of discovery denies OHA the ability to conduct discovery and construct a defense for trial.

**B.**      **Issue #2: The Court should prohibit FamilyCare from relying on any extra-contractual bases for its good faith claim because the parties have not taken discovery on them.**

Even though it pleaded only "the Constitution and applicable law," (5th Am. Compl. ¶ 107), FamilyCare is now relying on extra-contractual sources for the good faith obligation. The Court should disallow FamilyCare from relying on those bases because (1) FamilyCare failed to plead them and, consequently, the parties took limited discovery on them; and (2) FamilyCare is attempting to change its theory of the case after the close of discovery.

As discussed above, OHA began discovery on FamilyCare's original good faith claim while it was briefly in the case in 2018, but it stopped after the Court dismissed the claim on June 1, 2018. In the limited discovery the parties took on the claim, FamilyCare never suggested that its claim encompassed the laundry list of extra-contractual bases it identified for the first time on December 13, 2021. In fact, in its Rule 30(b)(6) deposition, FamilyCare stated that its expectation—based on the CCO Contract and CMS regulations—was that it would receive actuarily sound rates: "the contract requires . . . the contract itself be compliant with all CMS rules and regulations. CMS rules and regulations talk about the development of actuarially sound rates. . . . So FamilyCare's understanding and expectation from all of that is that it is due actuarily sound rates under this contract." (7/17/18 FamilyCare 30(b)(6) Dep. 273:7-274:9, Wilson Decl. Ex. 2.) FamilyCare did not identify any other bases and or expectations.

**Page 17 - DEFENDANT OREGON HEALTH AUTHORITY'S MOTION FOR**
**SUMMARY JUDGMENT**

FamilyCare has never alleged in a pleading more than what it stated in its Rule 30(b)(6) deposition. Accordingly, OHA had no notice that FamilyCare would assert, after the close of discovery, that its reasonable expectations were based on extra-contractual sources, including such impossibly broad categories as every communication between the parties about rates in their "30+ year history."

Under such circumstances, the Court may disallow FamilyCare from relying on extra-contractual bases for its reasonable contractual expectations. *Moore v. IMCO Recycling of CA, Inc.*, No. CV041304DSFVBKX, 2005 WL 5887179, at *13 n.21 (C.D. Cal. June 29, 2005) ("Plaintiffs' attempt to change the basis of their negligent misrepresentation claim after the close of discovery is unavailing."); *Bulkoski v. Bacharach, Inc.*, 1 F. Supp. 2d 484, 487 n.6 (W.D. Pa. 1997), *aff'd*, 149 F.3d 1163 (3d Cir. 1998) ("it is too late for plaintiff to change his theory of the case" after summary judgment); *Speziale v. Bethlehem Area School Dist.*, 266 F.Supp.2d 366, 371 n.3 (2003) ("Plaintiff's counsel cannot reasonably expect to amend the complaint after the close of discovery merely by raising new arguments in the responsive papers."). The Court should disallow FamilyCare from relying on any basis for its good faith claim other than the CCO Contract and federal Medicaid regulations. (As discussed below, federal Medicaid law is not an appropriate basis for FamilyCare's alleged reasonable expectations for other reasons.)

II.    **Issue #3: The Court should grant summary judgment to OHA on FamilyCare's good faith claim because there is no dispute of material fact that FamilyCare has not adduced evidence to advance its good faith claim.**

The duty of good faith fair dealing "does not operate in a vacuum, rather it focuses on the agreed common purpose and the justified expectations of the parties, both of which are intimately related to the parties' manifestation of their purposes and expectations in the express provisions of the contract." *Klamath Off-Project Water Users, Inc. v. Pacificorp*, 237 Or. App. 434, 445 (2010) (quoting *Oregon Univ. Sys.*, 185 Or. App. at 515-16; quotation marks omitted). FamilyCare has failed to adduce any evidence showing that the CCO Contract or any other extra-contractual basis establishes a reasonable contractual expectation that "OHA would present"

FamilyCare with rate amendments that were "timely, reasonable, unbiased, actuarially sound, adequate, and free of errors in underlying data and methodology."  (5th Am. Compl. ¶ 107.)

On the contrary, the CCO Contract, along with the 2016 Settlement Agreement and federal Medicaid regulations, shows that FamilyCare's only reasonable contractual expectation was that OHA would actuarially set and certify rates and submit them to CMS for approval. Implying a duty on OHA to present FamilyCare with rates that met FamilyCare's list of alleged expectations would undermine the express terms of the CCO Contract by making OHA accountable to FamilyCare instead of CMS for development of rates.  Accordingly, the Court should grant summary judgment to OHA on FamilyCare's good faith claim.

### A.      FamilyCare has not adduced any evidence that the CCO Contract informs its alleged reasonable expectations.

The "duty of good faith operates to effectuate the reasonable expectations of the parties as determined under the terms of their contract."  *Pac. First Bank v. New Morgan Park Corp.*, 319 Or. 342, 354 (1994).   In its Fifth Amended Complaint, FamilyCare alleges that the CCO Contract forms the basis of its reasonable expectation that "OHA would present" FamilyCare with rate amendments that are "timely, reasonable, unbiased, actuarially sound, adequate, and free of errors in underlying data and methodology."  (5th Am. Compl. ¶ 107.)  The Court should grant OHA summary judgment against FamilyCare's good faith claim because FamilyCare's list of alleged reasonable expectations are not connected to or supported by the express terms of the CCO Contract.

The CCO Contract expressly provides that OHA must actuarially set and certify the rates and submit them to CMS for approval.  Based on those express terms, the parties' only reasonable expectations were that OHA would attempt to create rates that CMS would approve and FamilyCare would receive rates that CMS either approved or modified.  No term of the CCO Contract creates a justifiable expectation that OHA would attempt to create rates that met FamilyCare's understanding of reasonability, adequacy, soundness, bias, or accuracy.  On the contrary, finding that FamilyCare had implied contractual rights to such expectations would undermine the CCO Contract's express provisions by making OHA accountable to FamilyCare

**Page 19 - DEFENDANT OREGON HEALTH AUTHORITY'S MOTION FOR SUMMARY JUDGMENT**

in addition to CMS for development of rates. But no term of the Contract supports imposing such an implied duty on OHA.

The Oregon Court of Appeals decision in *Oregon University System* illustrates how Oregon courts analyze a claimant's alleged reasonable expectations. In that case, plaintiff the Oregon University System ("OUS"), and the defendant union were parties to a collective bargaining agreement. The agreement, in Article 10, Section 4, prohibited the union from using OUS's "electronic bulletin board system" for "interactive communications." 185 Or. App. at 508 n.1. It also provided, in Article 9, that OUS "shall retain all rights of management in the direction of their work force." *Id.* at 513. The agreement was silent on the use of OUS's email system. *Id.* at 514. OUS alleged, however, that it had a reasonable contractual expectation, based on Articles 9 and 10, that the union would not use the OUS email system.

The Court of Appeals rejected OUS's alleged reasonable expectation. It began by identifying the "dispositive question": "whether it was appropriate to imply a duty on the part of [the union] to refrain from sending e-mail in order to effectuate the parties' objectively reasonable expectations regarding the operation of Article 10, Section 4, or Article 9 of the [agreement]." *Id.* at 516. The Court looked first at Article 10, Section 4. That section "governs only postings to a noninteractive bulletin board system." *Id.* Its provisions, therefore, "can be effectuated regardless of any conduct of [the union] relating to the use of email." *Id.*

The Court then considered Article 9. That article "focuses on the employer's rights to manage its work force, not on union conduct[.]" *Id.* And OUS did not "assert that [the union's] use of the former's e-mail system inhibits the performance or enforcement of any of the subsections of Article 9[.]" *Id.* The Court of Appeals concluded, therefore, that "implying a duty to refrain from sending e-mail also is not necessary to effectuate the parties' reasonable expectations regarding Article 9." *Id.* at 517.

This Court should use the same analysis set forth in *Oregon University System* to reject FamilyCare's good faith claim. FamilyCare alleges that it had reasonable contractual expectations that "OHA would present annual Rate Amendments" to FamilyCare that were "timely, reasonable, unbiased, actuarially sound, adequate, and free of errors in underlying data

**Page 20 - DEFENDANT OREGON HEALTH AUTHORITY'S MOTION FOR**
           **SUMMARY JUDGMENT**

and methodology." (5th Am. Compl. ¶ 107.) FamilyCare's allegation contends that OHA owed an implicit duty to FamilyCare to develop rates according to FamilyCare's alleged list of expectations. Following *Oregon University System*, the dispositive question, therefore, is whether it is appropriate to imply a duty on OHA to develop rates for FamilyCare that meet FamilyCare's list of alleged expectations to effectuate the parties' performance of the CCO Contract.

It is not. The CCO Contract provides that rates are subject to CMS approval. (*See, e.g.,* 2017 CCO Contract, § I.A (Dkt. 433-13 at 7).) The CCO Contract's express provisions are congruent with federal law, which vests CMS with the authority to approve the rates. 42 C.F.R. § 438.4(b) ("Capitation rates for [CCOs] must be reviewed and approved by CMS as actuarially sound."). The express provisions of the CCO Contract also match OHA and FamilyCare's representations in the 2016 Settlement Agreement, in which FamilyCare agreed that "OHA has the authority to set the CCO rates under which OHA contracts with CCOs, subject to CMS approval." (Settlement Agreement § 1.a (Dkt. 155-2 at 3).) FamilyCare also agreed in the Settlement Agreement that "OHA is not obligated to adjust the rates paid to any CCO to ensure that such rates cover all costs that a CCO has incurred during a rate year[.]" (*Id.* § 1.d.)

Thus, the agreed common purpose of the CCO Contract—confirmed by the 2016 Settlement Agreement and federal law—is that OHA would submit rates to CMS for approval. The parties can effectuate that express agreement without implying on OHA a duty to present rates to FamilyCare that meet FamilyCare's list of alleged expectations. In fact, implying such a duty on OHA would undermine the CCO Contract by making OHA accountable to both CMS and FamilyCare for rates, potentially resulting in conflicting standards of review and decisions. And the problem is compounded by the fact that there more than a dozen CCOs, potentially resulting in multiple conflicting decisions in multiple courts.

Further, CMS approved OHA's 2017 and 2018 rates, including the rates for FamilyCare. Allowing FamilyCare to challenge OHA's rates under the CCO Contract here would result in OHA facing liability for rates that it developed according to the express terms of the Contract and that CMS approved.

**Page 21 - DEFENDANT OREGON HEALTH AUTHORITY'S MOTION FOR**
**SUMMARY JUDGMENT**

Of course, FamilyCare is not exposed to receiving any rates OHA chooses. OHA must develop rates that CMS will approve or modify. CMS approved both the 2017 and 2018 rates. FamilyCare received exactly what it expressly agreed it would receive.

There is no evidence that the CCO Contract imposes an implied duty on OHA to develop rates for FamilyCare that meet FamilyCare's list of alleged expectations. Indeed, OHA can fulfill its express contractual duties regardless of FamilyCare's alleged expectations, showing that those expectations are not necessary to effectuate the parties' performance of the CCO Contact. Accordingly, the Court should grant summary judgment to OHA on FamilyCare's good faith claim.

### B.    FamilyCare has not adduced any evidence that "applicable law" informs its alleged reasonable expectations.

Statutory law does not inform the duty of good faith unless there is evidence that the parties intended to enforce statutes with the implied duty. In *Oregon University System*, the Oregon Court of Appeals rejected the plaintiff's attempt to incorporate statutory law into the duty of good faith. The Court of Appeals explained that the plaintiff "has not cited any evidence . . . supporting the proposition that these parties expected that general labor law rights and obligations would be enforced by means of a duty implied in their [collective bargaining agreement]." 185 Or. App. at 518. This court reached the same conclusion in *Fleshman v. Wells Fargo Bank*, 27 F. Supp. 3d 1127, 1136 (D. Or. 2014). In that case, the court found that where a contract acknowledges that a party must follow "applicable laws," the relevant laws are not themselves "actual contract terms" giving rise to damages under the implied duty of good faith and fair dealing.

Here, FamilyCare has not adduced any evidence that the parties intended to incorporate statutes or regulations into the CCO Contract that would imply a duty for OHA to develop rates that met FamilyCare's alleged reasonable expectations.

But even if the parties contemplated incorporating federal Medicaid law into the CCO Contract's implied duties, that law does not create any expectations that FamilyCare may enforce. The Ninth Circuit explained:

**Page 22 - DEFENDANT OREGON HEALTH AUTHORITY'S MOTION FOR SUMMARY JUDGMENT**

> As relevant to the contract at issue here, federal law explicitly requires CMS to "review[ ] and approve[ ]" capitation rates "as actuarially sound," describes the standards rates must satisfy to qualify for approval, and defines "[a]ctuarially sound capitation rates" to include both CMS approval and the criteria CMS uses to bestow that approval. Because capitation rates cannot be approved by CMS unless they are actuarially sound, CMS could not approve them if they were not. In light of that truism, in these circumstances <u>neither Oregon nor federal law required OHA to do more than seek and obtain CMS approval of the 2017 and 2018 rates</u>.

*Allen*, 812 F. App'x at 417 (footnotes omitted; emphasis added). In other words, federal Medicaid law confirms the express terms of the CCO Contract: OHA's only obligation was to actuarially set and certify rates and submit them to CMS for approval. The law does not invest FamilyCare with its own right to approve rates.

FamilyCare has not specifically alleged any other applicable law or that the parties intended any other law to be enforced through the implied duty. The Court should grant summary judgment against FamilyCare's good faith claim because FamilyCare has not adduced evidence that the parties intended to incorporate federal Medicaid law into the implied duty of good faith and, even if they did, that law does not create any rights that FamilyCare can enforce.

**C.      FamilyCare has not adduced any evidence that industry standards, past practices, or constitutional obligations or other limitations inform its alleged reasonable expectations.**

FamilyCare cannot rely on industry standards, past practices, or constitutional obligations or other limitations to inform its alleged reasonable expectations for three reasons. First, FamilyCare represented in the 2016 Settlement Agreement that "OHA has the authority to set the CCO rates under which OHA contracts with CCOs, subject to CMS approval." (Settlement Agreement § 1.a (Dkt. 155-2 at 3).) It also represented that "OHA must establish <u>to the satisfaction of CMS</u> that the rates are actuarially sound[.]" (*Id.* § 1.b (emphasis added).) And, it agreed that "OHA is not obligated to adjust the rates paid to any CCO to ensure that such rates cover all costs that a CCO has incurred during a rate year[.]" (*Id.* § 1.d.) Those express representations erase any reasonable expectation that the CCO Contract implicitly required OHA to do more than submit proposed rates to CMS for approval.

**Page 23 - DEFENDANT OREGON HEALTH AUTHORITY'S MOTION FOR SUMMARY JUDGMENT**

Second, FamilyCare testified in deposition that its alleged reasonable expectations were based on the CCO Contract and federal Medicaid law, not industry standards, past practices, or constitutional obligations or other limitations. FamilyCare stated:

> [T]he contract requires that the -- the contract itself be compliant with all CMS rules and regulations. CMS rules and regulations talk about the development of actuarially sound rates. It talks about the relationship of the State and its contracting with MCOs, which is a CCO in Oregon. . . . So FamilyCare's understanding and expectation from all of that is that it is due actuarially sound rates under this contract.

(7/17/18 FamilyCare 30(b)(6) Dep. 273:7-274:9, Wilson Decl. Ex. 2.) FamilyCare cannot change its theory of the case after the close of discovery. *See Moore*, 2005 WL 5887179, at *13 n.21 ("Plaintiffs' attempt to change the basis of their negligent misrepresentation claim after the close of discovery is unavailing.")

Third, FamilyCare has not adduced evidence that any industry standard, past practice, or constitutional obligation or other limitation created reasonable expectations about OHA's performance of the CCO Contract. Instead, in its December 13, 2021 email, FamilyCare provided an unlimited laundry list of virtually every practice and communication between the parties and every law in Oregon. But it is not OHA's burden to comb through the parties' "30+ year history" to find and rebut every conceivable basis for the parties' reasonable expectations. (Wilson Decl., Ex. 1.) *See Forsberg*, 840 F.2d at 1418 ("The district judge is not required to comb the record to find some reason to deny a motion for summary judgment."). FamilyCare has failed to adduce specific evidence supporting its good faith claim.

Accordingly, FamilyCare has failed to adduce sufficient evidence to survive a motion for summary judgment and the Court should dismiss FamilyCare's good faith claim with prejudice.

**D.      FamilyCare has not adduced any evidence that the parties intended ORS 414.652(4) to create an implied contractual duty for OHA to provide 60 days' notice of rate amendments.**

FamilyCare asserts that former ORS 414.652(4) created an implied contractual duty for OHA to deliver rates amendments with at least 60 days' notice. (5th Am. Compl. ¶¶ 68, 108.) FamilyCare's "timeliness" theory fails as a matter of law for two reasons: (1) ORS 414.652(4) is

**Page 24 - DEFENDANT OREGON HEALTH AUTHORITY'S MOTION FOR SUMMARY JUDGMENT**

not an implied term of the CCO Contract; and (2) FamilyCare had already decided to reject the 2018 Rate Amendment by the date of the supposed "ultimatum."

### 1. The 60 days' notice requirement in ORS 414.652(4) is not an implied term of the CCO Contract.

The implied duty of good faith does not incorporate statutory law into contracts unless there is specific evidence that the parties intended the law to be enforced through an implied duty. *Supra*, § II.B; *Oregon Univ. Sys.*, 185 Or. App. at 518 (Rejecting incorporation of statute into duty of good faith where plaintiff "has not cited any evidence . . . supporting the proposition that these parties expected that general labor law rights and obligations would be enforced by means of a duty implied in their [collective bargaining agreement]."); *see also Fleshman*, 27 F. Supp. 3d at 1136 (where a contract acknowledges that a party must follow "applicable laws," the relevant laws are not themselves "actual contract terms" giving rise to damages under the implied duty of good faith and fair dealing).

FamilyCare has not adduced any evidence that OHA and FamilyCare expected to enforce ORS 414.652(4) through the implied duty of good faith. And any such expectation would be nonsensical because the *express* terms of the CCO Contract require OHA to give FamilyCare 60 days' notice for any amendment to the Contract. (2016 and 2017 CCO Contracts, Ex. D, § 20(b)(4), Jindal Decl. Exs. 9 & 13 (Dkt. 433-9 at 147 & 433-13 at 148) ("OHA will send to Contractor the necessary Contract amendments no later than 60 days before the proposed effective date of the amendment.").) Because there is an express term requiring 60 days' notice, FamilyCare cannot maintain a claim for breach of that provision based on the duty of good faith. The "duty of good faith and fair dealing . . . may be implied as to a disputed issue only if the parties have not agreed to an express term that governs that issue; indeed, the reasonable expectations of the parties are irrelevant if the parties have agreed to express terms governing the issue." *Oregon Univ. Sys.*, 185 Or. App. at 511.

**Page 25 - DEFENDANT OREGON HEALTH AUTHORITY'S MOTION FOR
        SUMMARY JUDGMENT**

**2.    FamilyCare had already decided to reject the 2018 Rate Amendment by the December 20, 2017 "ultimatum."**

Regardless, FamilyCare cannot recover on its timeliness theory because the undisputed evidence shows that it was not harmed by OHA allegedly truncating its time to consider the 2018 Rate Amendment. Unlike with Section 1983, "[d]amage is an essential element of any breach of contract action." *Sharma v. Providence Health & Servs.-Oregon*, 289 Or. App. 644, 657 (2018). Here, FamilyCare alleges that on December 20, 2017, OHA Director Pat Allen issued an "ultimatum" that required FamilyCare to decide whether to sign the CCO Contract within 24 hours. (5th Am. Compl. ¶ 68.) FamilyCare alleges that this "ultimatum" breached the duty of good faith because it truncated FamilyCare's 60-day period to consider the 2018 Rate Amendment by ten days. *Id.* OHA vehemently disputes that OHA issued any such "ultimatum." But even if OHA had (which OHA does not concede), FamilyCare could not have been damaged because FamilyCare had already rejected the 2018 Rate Amendment before December 20, 2017.

On December 15, 2017, FamilyCare sent a letter to its staff providing official legal notice that "FamilyCare's Medicaid line of business will not go forward and FamilyCare will make permanent layoffs." (12/15/17 Letter to staff, Wilson Decl. Ex. 4.) At the same time, FamilyCare informed media outlets, legislators, healthcare providers, and other contacts that FamilyCare would not sign the 2018 Rate Amendment. (12/15/17 Suchorzewski Email, Wilson Decl. Ex. 5 at 1-2. ("The board voted to shut down the company."); 12/15/17 Coleman Email, Wilson Decl. Ex. 6. ("Familycare today announced to employees that its board decided not to sign the 2018 CCO contract . . . ."); 12/15/17 Barsotti Email, Wilson Decl. Ex. 7. ("FamilyCare is not going to sign the 2018 contract so will not be a CCO on January 1st"); 12/15/17 Suchorzewski Email, Wilson Decl. Ex. 8. ("Thursday evening, the FamilyCare Board of Directors voted to not sign the 2018 contract—as is—with the State of Oregon . . . ."); 12/15/17 Coleman Email, Wilson Decl. Ex. 9. ("FamilyCare announced today that it is not able to sign the 2018 CCO contract from OHA . . . ."). Local media reported on December 16, 2017 that "FamilyCare Health is shutting down." (Thomas, K., "FamilyCare Health in danger

**Page 26 - DEFENDANT OREGON HEALTH AUTHORITY'S MOTION FOR SUMMARY JUDGMENT**

of closing, leaving patients and care providers fearful," KATU (Dec. 16, 2017) (available at https://katu.com/news/local/familycare-health-in-danger-of-closing-leaving-patients-and-care-providers-fearful (Last accessed: December 17, 2021)).)

Thus, there is no genuine issue of material fact that before the supposed "ultimatum" FamilyCare had already decided to reject the 2018 Rate Amendment and close its Medicaid business. Accordingly, FamilyCare was not damaged by the alleged "ultimatum."

**E.      The implied duty of good faith does not create free-floating, normative obligations that exist apart from the express terms of the contract.**

As set out above, the duty of good faith and fair dealing "does not operate in a vacuum." *Klamath Off-Project Water Users*, 237 Or. App. at 445 (quoting *Oregon Univ. Sys.*, 185 Or. App. at 515). Consistent with that proscription, Oregon courts have held that the duty of good faith does not create free-floating obligations that are untethered to the terms of the parties' contract. For example, in *U.S. Nat. Bank of Oregon v. Boge*, 311 Or. 550, 567 (1991), the Oregon Supreme Court held that the covenant of good faith does not "provide a remedy for an unpleasantly motivated act[.]"

In *Zygar v. Johnson*, 169 Or App 638 (2000), the parties' contract for purchase of a home was conditioned on the buyer approving a pest report. After the report revealed issues with the home, the buyer sought to terminate the contract and demanded return of his earnest money. The seller sued for breach of contract. On summary judgment, the seller offered evidence that the buyer's disapproval of the report was "pretext" and that the buyer's "real motivation" for terminating the contract was that his fiancée did not like the house. *Id.* at 642. The Court of Appeals held that the "buyer's *motivations* for choosing to exercise his right to terminate the transaction" were immaterial and affirmed summary judgment for the buyer. *Id.* at 647 (emphasis added).

*Boge* and *Zygar* apply equally here. The duty of good faith is not free-floating: it must be derived from the express terms of the CCO Contract or some relevant extra-contractual source. FamilyCare has failed to allege any evidentiary basis for an implied duty on OHA that requires OHA to present FamilyCare with rates that are "timely, reasonable, unbiased, actuarially sound,

**Page 27 - DEFENDANT OREGON HEALTH AUTHORITY'S MOTION FOR SUMMARY JUDGMENT**

adequate, and free of errors in underlying data and methodology." (5th Am. Compl. ¶ 107.)

Accordingly, the Court should grant OHA summary judgment on FamilyCare's good faith claim.

**CONCLUSION**

For the foregoing reasons, the Court should grant OHA summary judgment on

FamilyCare's third claim for relief.

DATED this 17th day of December, 2021.

> ELLEN ROSENBLUM
> ATTORNEY GENERAL
> FOR THE STATE OF OREGON
>
>
> By:   *s/ Harry B. Wilson*
> _____
> David B. Markowitz, OSB #742046
> DavidMarkowitz@MarkowitzHerbold.com
> Harry B. Wilson, OSB #077214
> HarryWilson@MarkowitzHerbold.com
> Laura Salerno Owens, OSB #076230
> LauraSalerno@MarkowitzHerbold.com
>
> > *Special Assistant Attorneys General for
> > Defendant Oregon Health Authority, an
> > agency of the State of Oregon*

1226414

**Page 28 - DEFENDANT OREGON HEALTH AUTHORITY'S MOTION FOR
    SUMMARY JUDGMENT**

## CERTIFICATE OF COMPLIANCE WITH L.R. 7-2(b)(2)

I certify that this brief complies with the applicable word-count limitation under L.R. 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains 10,036 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of authorities, signature block, and any certificates of counsel.

DATED this 17th day of December, 2021.

s/ Harry B. Wilson
Harry B. Wilson, OSB #077214
Special Assistant Attorneys General for Defendant
Oregon Health Authority, an agency of the State of
Oregon

**CERTIFICATE OF SERVICE**