**Edwin A. Harnden,** OSB No. 721129
eharnden@barran.com
**Chris M. Morgan,** OSB No. 175384
cmorgan@barran.com
Barran Liebman LLP
601 SW Second Avenue, Suite 2300
Portland, Oregon 97204-3159
Telephone: (503) 228-0500
Facsimile No.: (503) 274-1212
Attorneys for Defendant Lynn Saxton

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

Eugene Division

| | |
|---|---|
| **FAMILYCARE, INC.**, an Oregon non-profit corporation,<br><br>                               Plaintiff,<br><br>        v.<br><br>**OREGON HEALTH AUTHORITY**, an agency of the State of Oregon, and **LYNN SAXTON**,<br><br>                               Defendants. | **Case No. 6:18-cv-00296-MO**<br><br>**DEFENDANT LYNN SAXTON'S OPPOSITON TO FAMILYCARE'S MOTION FOR SUMMARY JUDGMENT**<br><br>**ORAL ARGUMENT REQUESTED** |

## I.      INTRODUCTION

Defendant Lynn Saxton's ("Saxton") inclusion as a party to this litigation is specifically calculated to evade the limitation on liability provision contained in the operative contracts (the "CCO Contracts"). Despite styling its claim against Saxton as a civil rights claim, the gravamen of the Complaint remains that FamilyCare blames Saxton, personally, for allegedly interfering with its rights under the CCO Contracts by "setting rates that were unreasonable, biased, actuarially unsound, and based on erroneous data and methodology" and "refusing to correct known errors in data and methodology[.]" See ECF 429, at 3.

/ / /

Page 1 – DEFENDANT LYNN SAXTON'S OPPOSITION TO FAMILYCARE'S MOTION
        FOR SUMMARY JUDGMENT

Despite the fact that FamilyCare has no competent evidence that Saxton personally interfered with its rates, these are actions which only could have been undertaken within the scope of Saxton's role as Director of OHA. The enterprise damages sought by FamilyCare arise *exclusively* from its perceived reduction of capitation rates that it received under the CCO Contracts. In pursuing this action against Saxton, FamilyCare therefore seeks to vindicate its perceived right to damages under the CCO Contracts, while simultaneously seeking to evade the limitation on damages contained in that very same contract. To separate the damages sought by FamilyCare with the contractual agreement that gave FamilyCare its sole entitlement to "rates" in the first place is logically impossible.

Under Oregon law, "the primary objective for any court interpreting a contract is to give effect to the parties' agreed-upon intentions."[1] FamilyCare's position that Saxton is not covered under the operative limitation on liability requires a conclusion that the Parties somehow intended to subject their respective employees to personal liability for incidental or consequential damages arising out of or connected to an alleged breach of the CCO Contracts. In other words, the Parties intended that employees of either organization be held personally liable in the event of an alleged breach of the organization's contractual obligations, irrespective of whether they caused such breach, and irrespective of whether such actions as alleged were undertaken within the scope of their employment duties.

Here, FamilyCare's Motion for Summary Judgment on Defendant Saxton's Fifth Affirmative Defense should be denied because it is ambiguous, and therefore a question for the jury, whether it was intended that the limitation on liability extends to employees of the respective organizations who are acting within the scope of their job duties. Where there is ambiguity, summary judgment should be denied as this ambiguity is one to be resolved by the jury. *See*

---

[1] *See, e.g., McKenzie Law Firm, P.A. v. Ruby Receptionists, Inc.* (*McKenzie*), 501 F.Supp.3d 965, 971 (D. Or. 2020); *see also Sleash, LLC v. One Pet Planet, LLC*, 2014 U.S. Dist. LEXIS 109253 (D. Or. Aug. 6, 2014) (same); *Complete Distrib. Servs. V. All States Transp.*, 2015 U.S. Dist. LEXIS 134209 (D. Or. Sept. 30, 2015) (same).

Page 2 – DEFENDANT LYNN SAXTON'S OPPOSITION TO FAMILYCARE'S MOTION
FOR SUMMARY JUDGMENT

*Yogman v. Parrott*, 325 Or. 358, 363-64, 937 P.2d 1019 (1997); *v. Milne Constr. Co.*, 207 Or. App. 382, 388, 142 P.3d 475 (2006).

It is FamilyCare's burden on summary judgment to prove the absence of any genuine fact with respect to the Parties' intent, and whether the limitation on liability was intended to cover employees acting within the scope of their employment in carrying out the underlying provisions of the CCO Contracts. Viewing the underlying facts in the light most favorable to Saxton, FamilyCare's Motion for Summary Judgment on Defendant Saxton's Fifth Affirmative Defense should be denied.

## II.    KEY FACTUAL BACKGROUND

### A.  FamilyCare Contractually Agreed to Limit its Consequential Damages Arising Out of or Relating to the CCO Contracts.

Beginning in 2013, FamilyCare and the OHA entered into a Health Plan Services Contract that was amended, restated, or both on an annual basis (the "CCO Contracts"). ECF 433-1–15. In short, the CCO Contracts governed the relationship between FamilyCare, as a Coordinated Care Organization, and the OHA. ECF 433-1. Broadly, in exchange for FamilyCare agreeing to coordinate certain health services for its Medicare membership in accordance with the terms and conditions set forth in the CCO Contracts, FamilyCare would be compensated on a per-member-per-month basis in the form of capitation rates.

As part of the CCO Contracts, FamilyCare and the OHA agreed that "[n]either party shall be liable for incidental or consequential damages arising out of or related to this Contract." *See, e.g.,* ECF 433-13, at 144. By negotiating and agreeing upon a limitation of liability which extended to *any* incidental or consequential damages arising out of or related to the CCO Contract, the Parties signaled their intent that the limitation apply broadly.

### B.  The Parties.

As FamilyCare notes, the Parties to the CCO Contracts are defined as FamilyCare (the "Contractor") and "the State of Oregon, acting by and through its Oregon Health Authority,

Page 3 – DEFENDANT LYNN SAXTON'S OPPOSITION TO FAMILYCARE'S MOTION FOR SUMMARY JUDGMENT

hereinafter referred to as 'OHA.'" ECF 433-13 at 7. Here, as will be outlined in further detail below, the "Oregon Health Authority" can only act by and through its own employees and agents. The OHA is not a robot which functions autonomously in its execution of contractual agreements, nor the undertaking of actions related to its contractual obligations. The terms of any agreement, including the agreement at issue, are necessarily undertaken by employees of each respective organization who are, absent evidence to the contrary, acting within the scope of their job duties in carrying out those functions.

### C. FamilyCare's Claim Against Saxton.

In 2018, FamilyCare named Saxton as a defendant in the instant suit, alleging a claim which unequivocally arises out of and is related to the CCO Contracts. *See* ECF 111; ECF 429. Couched as a civil rights claim, FamilyCare alleges what really amounts to a makeshift tortious interference claim: that Saxton impaired its rights under the CCO Contracts by "setting rates that were unreasonable, biased, actuarially unsound, and based on erroneous data and methodology" and "refusing to correct known errors in data and methodology[.]" ECF 429, at 33.

FamilyCare also alleges that Saxton implemented a draft communications plan which was allegedly designed to "disparage and smear FamilyCare." ECF 429, at 16. However, FamilyCare has yet to identify any plausible causal connection between the draft communications plan and the consequential damages it seeks. The damages sought arise exclusively from the "rate setting" theory—that FamilyCare was ultimately forced to go out of business as a result of the inadequacy of the 2018 capitation rate amendments. *See id.* at 33. In other words, despite setting forth two separately alleged "adverse actions" ((1) the rate setting theory and (2) the communications plan theory), the alleged damages arise only from the former and not from the latter.

Throughout its fifth amended complaint, and lending further credence to the fact that the damages themselves arise exclusively out of the CCO Contracts, FamilyCare largely conflates its allegations against OHA with those against Saxton—alleging that both undertook the same actions

Page 4 – DEFENDANT LYNN SAXTON'S OPPOSITION TO FAMILYCARE'S MOTION
FOR SUMMARY JUDGMENT

(i.e. undercutting its capitation rates), but then concluding that the two should ultimately be treated separately for the purpose of allocating or limiting liability.

## III.  LEGAL STANDARDS

### A.  Fed. R. Civ. P. 56

Here, FamilyCare must establish that, taking the facts in the light most favorable to Saxton, no reasonable juror could find that the definition of OHA in the CCO Contracts was intended to encompass employees of the OHA who were acting within the scope of their employment duties.

A motion for summary judgment under FRCP 56(a) is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In deciding a motion for summary judgment, the Court must determine "whether, viewing the evidence in the light most favorable to the non-moving party, there are any genuine issues of material fact." *Espinosa v. City & Cty. of San Francisco*, 598 F.3d 528, 532 (9th Cir. 2010) (internal quotations omitted); *Ormsby v. Sunbelt Rentals, Inc.*, 205 F.Supp.3d 1204, 1209 (D. Or. 2016) ("On a motion for summary judgment, a court views 'the evidence in a light most favorable to the non-moving party." (internal quotations omitted)). A genuine issue of material fact "arises if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *California v. Campbell*, 319 F.3d 1161, 1166 (9th Cir. 2003) (internal quotations omitted). Accordingly, summary judgment in FamilyCare's favor is "inappropriate if reasonable jurors, drawing all inferences in favor of [Saxton], could return a verdict in [Saxton's] favor." *Richardson v. Nw. Christian Univ.*, 242 F.Supp.3d 1132, 1143 (D. Or. 2017) (quoting *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008)).

### B.  Contractual Principles

In determining whether a contract exists and what its terms are, the court examines the objective manifestations of intent, as evidenced by the parties' communications and acts. *See, e.g., Holdner v. Holdner*, 176 Or. App. 111, 120, 29 P.3d 1199 (2001). Under Oregon law, "the primary objective for any court interpreting a contract is to give effect to the parties' agreed-upon

Page 5 – DEFENDANT LYNN SAXTON'S OPPOSITION TO FAMILYCARE'S MOTION
      FOR SUMMARY JUDGMENT

intentions." *See, e.g., McKenzie Law Firm, P.A. v. Ruby Receptionists, Inc.* (*McKenzie*), 501 F.Supp.3d 965, 971 (D. Or. 2020); *see also Sleash, LLC v. One Pet Planet, LLC*, 2014 U.S. Dist. LEXIS 109253 (D. Or. Aug. 6, 2014) (same); *Complete Distrib. Servs. V. All States Transp.*, 2015 U.S. Dist. LEXIS 134209 (D. Or. Sept. 30, 2015) (same).

As part of a three-step process, courts interpreting Oregon contracts must first determine whether the contract is ambiguous. *McKenzie*, 501 F.Supp.3d at 971. If the contract is found to be ambiguous, the factfinder must turn to extrinsic evidence and, if necessary, relevant maxims of construction, to resolve the ambiguity. *Id.* While determining the question of ambiguity is a question of law, the remaining analyses are questions of fact that are not appropriate for resolution by summary judgment. *Id.* at 971; *see also PGF Care Ctr., Inc. v. Wolfe*, 208 Or. App. 145, 151, 144 P.3d 983 (2006) ("Disputes over the meaning of a contract provision may not be disposed of by summary judgment if the provision is ambiguous.").

A contractual ambiguity exists if reasonably intelligent persons could honestly differ on the meaning of the provision at issue. *State Farm Mutual Auto Ins. Co. v. White,* 60 Or. App. 666, 672, 655 P.2d 599 (1982). Oregon courts interpreting contracts note "[t]he threshold to show ambiguity is not high." *Milne v. Milne Constr. Co.*, 207 Or. App. 382, 388, 142 P.3d 475 (2006); *Cryo-Tech, Inc. v. JKC Bend, LLC*, 313 Or. App. 413, 424, 495 P.3d 699 (2021). If the word or term can, when viewed in context of the contract as a whole, be given more than one reasonable interpretation, the issue becomes one of fact. *See Yogman v. Parrott*, 325 Or. 358, 363-64, 937 P.2d 1019 (1997); *Milne*, 207 Or. App. at 388. A provision is "unambiguous only if its meaning is so clear as to preclude doubt by a reasonable person." *PGF Care Center, Inc. v. Wolfe*, 208 Or. App. 145, 151, 144 P3d 983 (2006) (internal quotations omitted); *see also Cent. Or. Indep. Health Servs. v. State*, 211 Or. App. 520, 528-29, 156 P.3d 97 (2007).

/ / /

/ / /

/ / /

Page 6 – DEFENDANT LYNN SAXTON'S OPPOSITION TO FAMILYCARE'S MOTION
FOR SUMMARY JUDGMENT

## IV.    ARGUMENT

FamilyCare cannot satisfy its burden of showing that, viewing the facts in the light most favorable to Saxton, no reasonable juror could conclude that the Parties' intent was to encompass individual employees acting within the scope of their employment in the definition of the entity parties to the CCO Contracts.  Organizations can only act through their employees and agents, and the purpose of a limitation on liability provision would largely be obviated if individual employees of either organization were subject to personal liability for undertaking actions within the scope of their employment, and in furtherance of the organization's contractual obligations.

To the extent that there is any ambiguity whatsoever with respect to the Parties' intent to protect employees acting within the scope of their employment from incidental or consequential damages arising out of or in connection with the CCO Contracts, that is an issue for the jury. See *McKenzie*, 501 F.Supp.3d at 971. Here, that includes any assertion by FamilyCare that Saxton was *not* acting within the scope of her employment when she allegedly impaired FamilyCare's capitation rates under the CCO Contracts. That is an issue of fact for the jury.[2] *See, e.g., Walthers v. Gossett*, 148 Or. App. 548, 557, 941 P.2d 575 (1997). As noted above, a contractual ambiguity exists if reasonably intelligent persons could honestly differ on the meaning of the provision at issue. *State Farm Mutual Auto Ins. Co.* 60 Or. App. at 599 (1982).

Here, viewing the operative contract in context, a number of different factors weigh in favor of a finding of ambiguity.

### A.  The OHA Can Only Implement the CCO Contracts Through its Employees.

It is well-established that organizations can act only through their employees. *See, e.g., Wampler v. Palmerton*, 250 Or. 65, 74, 439 P.2d 601 (1968) (an organization "can only act upon the advice of officers or employe[e]s and through the actions of agents"); *Dept. of Rev. v. Carpet*

---

[2] To the extent FamilyCare argues that the issue has already been decided because the Ninth Circuit Court of Appeals found that Saxton was *not* acting within the scope of her employment—that is false. The Ninth Circuit merely found that, viewing the facts in the light most favorable to *FamilyCare*, Saxton was not entitled to summary judgment with respect to her qualified immunity argument. *See Allen v. FamilyCare, Inc.*, 812 F. App'x 416, 419-20 (9th Cir. 2020).

Page 7 – DEFENDANT LYNN SAXTON'S OPPOSITION TO FAMILYCARE'S MOTION
        FOR SUMMARY JUDGMENT

*Warehouse, Inc.*, 296 Or. 400, 407, 676 P.2d 299 (1984) (noting a "corporation can only act through its agents"); *Walthers v. Gossett*, 148 Or. App. 548, 941 P.2d 575 (1997) ("It reasons that a corporation can only act through its officers and employees[.]").

In the context of the CCO Agreements, it would be impossible for either FamilyCare or the OHA to carry out their respective duties and obligations under the CCO Contracts absent the participation of a large number of employees. This is particularly true with respect to executives and other high level employees who are ultimately tasked with overseeing delegation and ensuring compliance with the CCO Contract's provisions.

It reasons, then, that a contractual limitation on liability between two organizations must operate to insulate both the organization and the organization's employees who are acting within the scope of their employment in furtherance of the contract's intent. Absent such extension, the purpose of the limitation itself would largely be obviated. An organization's individual employees could simply be sued personally for the debts and obligations incurred by an alleged breach of the organization's contracts with third parties, irrespective of whether the employee was simply acting within the scope of their employment and carrying out their job duties.

**B. Saxton Was Acting Within the Scope of Her Employment as Director of OHA at All Relevant Times.**

FamilyCare attempts to isolate Saxton from the OHA by couching its claim against Saxton as a civil rights claim independent of the CCO Contracts. The problem, though, is that Saxton could not logically have undertaken the actions alleged if not for her role as Director of the OHA. Accordingly, even if FamilyCare's allegations against Saxton were accurate (which they are not), such actions would have nonetheless been undertaken specifically within the scope of her employment as Director of OHA.

The decision in *Wampler v. Palmerton* outlines this principle clearly. *See* 250 Or. at 74-76. That is, even where employees advise their employer to breach a contract, as long as that advice is given in furtherance of their employer's interests, such advice is well within that employee's

Page 8 – DEFENDANT LYNN SAXTON'S OPPOSITION TO FAMILYCARE'S MOTION
         FOR SUMMARY JUDGMENT

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR 97204-3159
PHONE (503) 228-0500  FAX (503) 274-1212

scope of employment and, therefore, shields the employee from liability.[3] *Id.; see also McGanty v. Staudenraus*, 321 Or. 532, 538, 901 P.2d 841 (1995) ("[W]hen an employee is acting in the scope of the employee's employment, the employee is acting as the employer, and not as an independent entity."); *Baker v. Maricle Indus.*, 2017 U.S. Dist. LEXIS 38668, *9-13 (D. Or. 2017) (applying *McGanty* principles to claims for aiding and abetting unlawful employment practice).

As discussed above, it is a "recognized and necessary incident of business life" that employers "can only act upon the advice of officers or employees and through the actions of agents." *Id.* at 74. As a result, "courts have tended to shield such persons from responsibility for inducing breach of the corporate contract, often saying that they are not liable if the action was taken in 'good faith' and for the benefit of the corporation." *Id.* at 75. If officers and employees "who advised and carried out the breach had to run the risk of personal responsibility," organizations would be substantially prevented from acting upon their employees' good faith advice, or actions taken, for the benefit of the organization. *Id.*

Here, particularly when viewing the underlying facts in the light most favorable to Saxton, Saxton was acting within the scope of her employment and in furtherance of the rights and obligations set forth in the CCO Contracts. An employee acts within the scope of their employment when (1) the act at issue "occurred substantially within the time and space limits authorized by the employment"; (2) "the employee was motivated, at least partially, by a purpose to serve the employer"; and (3) "the act is of a kind which the employee was hired to perform." *Walthers*, 148 Or. App. at 558.

First, each of the actions allegedly taken by Saxton related to this Action were taken during her tenure as Director of the OHA. Second, any involvement whatsoever by Saxton in the development of capitation rates was motivated by and undertaken for the purpose of serving OHA

---

[3] While, in the matter at hand, the claim at issue is not expressly stated as one for contractual interference, the gravamen of FamilyCare's allegations are synonymous: (1) FamilyCare had rights arising exclusively out of a contract; and (2) Saxton disrupted those contractual rights.

Page 9 – DEFENDANT LYNN SAXTON'S OPPOSITION TO FAMILYCARE'S MOTION
        FOR SUMMARY JUDGMENT

and ensuring the OHA's satisfactory performance under the CCO Contracts. Third, any involvement by Saxton in overseeing, at a high level, the development of capitation rates pursuant to the CCO Contracts, is well within the scope of Saxton's role as Director of the OHA.

To the extent FamilyCare argues Saxton was *not* acting within the scope of her employment in undertaking actions which allegedly caused the damages that it now seeks, that in and of itself is a question of fact that cannot and should not be decided on a motion for summary judgment. *See, e.g., Walthers*, 148 Or. App. at 557; *Baker*, 2017 U.S. Dist. LEXIS, at *12.

### C. General Principles of Contract Weigh in Favor of Inclusion.

Generally speaking, the law does not attach personal liability to employees acting within the scope of their employment.[4] *See, e.g., Wellington*, 2009 U.S. Dist. LEXIS 65337, at *9 (employees may be personally liable for interfering with contractual relationships between their employer and others where the employee does not act within the scope of their employment); *Hernandez v. Catholic Health Initiatives*, 311 Or. App. at 80-81 (employee may be personally liable for aiding or abetting unlawful employment practice). The general application of the law further evidences the intent to encompass employees as part of the definition of "OHA" in the CCO Contracts.

For example, it is not reasonable to assume, as FamilyCare suggests, that failure to expressly list employees as part of the limitation of liability provision is dispositive. Rather, at the time of contracting, the Parties more reasonably understood that employees acting within the scope of their employment are inherently covered by the defined term "OHA." Further, it is not reasonable to assume general legal principles would fail to apply and the Parties would instead be required to expressly delineate each and every employee to which they intended the limitation of liability to extend.

---

[4] Indeed, there are limited circumstances in which employees may be liable in their individual capacity for actions undertaken related to their employment. In any event, the issue here is not whether an entity has standing to sue an employee in their individual capacity, but whether that employee nonetheless remains entitled to coverage under separate provisions of the same contract which gives rise to the suit.

Page 10 – DEFENDANT LYNN SAXTON'S OPPOSITION TO FAMILYCARE'S MOTION
      FOR SUMMARY JUDGMENT

### D. The Breadth of the Limitation on Liability Provision Weighs in Favor of Inclusion.

The limitation of liability provision encompasses <u>all claims</u> arising out of or relating to the CCO Contracts. FamilyCare's section 1983 claim against Saxton clearly meets the criteria. While FamilyCare's claim against Saxton is plead as non-contractual, it plainly arises out of and relates to the CCO Contracts. As previously established, FamilyCare's claim for consequential damages against Saxton is possible only because of the obligations set forth in the CCO Contracts. Given the breadth of the limitation on liability provision, a reasonable juror could find that FamilyCare's claim is of the very type of claim that the Parties intended to preclude in the limitation of liability provision. It is a contract interference claim masquerading as a civil rights claim. Excluding the claim against Saxton from coverage under the limitation of liability necessitates the conclusion that the Parties intended for their individual employees to be personally liable for consequential damages arising from an alleged breach of the CCO Contracts.

### E.  The Enforcement Provision Does Not Preclude Saxton's Inclusion.

FamilyCare argues that Saxton is not entitled to coverage under the limitation on liability provision because the "OHA and Contractor are the only parties to this Contract and are the only parties entitled to enforce its terms." ECF 433-13 at 147. But Saxton is not asserting that she is seeking to enforce rights under the contract as a third party. Instead, Saxton asserts that she is necessarily encompassed under the definition of "OHA" when examining the context of the CCO Contracts as a whole and applying general principles of agency.

### F.  FamilyCare's Reliance on *Hirsovescu and StoneCrest* are misplaced.

Relying on *Hirsovescu v. Shangri-La-Corp*, FamilyCare states that "Oregon law is clear that an agent's role in relation to a contracting party does not convert the agent into a party or contract beneficiary." ECF 512, at 6 (citing 113 Or. App. 145, 147, 831 P.2d 73 (1992)). However, that is not what *Hirsovescu* says. *See* 113 Or. App. At 147. The *Hirsovescu* Court devotes a mere four sentences to deciding whether principles of agency permit a contracting party to sue an individual employee under a breach of contract theory. *See id.* at 147. The circumstances in

Page 11 – DEFENDANT LYNN SAXTON'S OPPOSITION TO FAMILYCARE'S MOTION
FOR SUMMARY JUDGMENT

*Hirsovescu* are both dissimilar and unhelpful in evaluating these circumstances. It analyzes whether board members may be sued in their individual capacity for breach of contract for taking actions that were not "grossly negligent" or "intentional" within the specific scope of Or. Rev. Stat. Chapter 65. Given the case deals with standing, not applicability, *Hirsovescu* would more properly inform whether FamilyCare may sue Saxton for breach of the CCO Contracts, rather than whether the limitation of liability extends to Saxton.

Similarly, *Stonecrest Props., LLC v. City of Eugene* is not helpful. *Stonecrest* deals with the right to standing for third party beneficiaries specifically in the context of third-party creditor rights. *Stonecrest Props., LLC v. City of Eugene* , 280 Or. App. 550, 552, 382 P.3d 539, 543 (2016). In *Stonecrest*, the court analyzed whether third parties who were "strangers" to a development contract between a housing development and the City of Eugene had standing to enforce a bond. *Id.* at 557.

In any event, Saxton is not arguing that she is a "third party beneficiary," and the question at bar in this Motion is not whether Saxton can be sued in her individual capacity, but whether she is covered under the applicable limitation of liability provision if and when she is sued.

### G. The Term is Not so Clear as to Preclude Doubt.

FamilyCare contends that there is no ambiguity here because the contractual term is "so clear as to preclude doubt by a reasonable person." ECF 512, at 4–5; *Manley v. City of Coburg*, 282 Or. App. 834, 839, 387 P.3d 419 (2016). Here, and for all of the reasons stated herein, the term at issue is not so clear as to preclude doubt by a reasonable person. A reasonable person, upon hearing evidence on the context and intent of the CCO Contracts, would rightfully conclude that the intent was not to subject employees of the respective organizations to personal liability for actions taken within the scope of their employment. Here, that is especially true at the summary judgment stage, and in viewing the facts in the light most favorable to Saxton.

/ / /

/ / /

Page 12 – DEFENDANT LYNN SAXTON'S OPPOSITION TO FAMILYCARE'S MOTION
    FOR SUMMARY JUDGMENT

## V.    CONCLUSION

For the foregoing reasons, FamilyCare's Motion for Summary Judgment on Defendant Saxton's Fifth Affirmative Defense should be denied.


DATED this 14th day of January, 2022.

BARRAN LIEBMAN LLP

By ___*s/ Edwin A. Harnden*_____
    Edwin A. Harnden, OSB No. 721129
    eharnden@barran.com
    Chris M. Morgan, OSB No. 175384
    cmorgan@barran.com

    Attorneys for Defendant Lynn Saxton

Page 13 – DEFENDANT LYNN SAXTON'S OPPOSITION TO FAMILYCARE'S MOTION
    FOR SUMMARY JUDGMENT

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of January 2022, I caused the foregoing **DEFENDANT LYNN SAXTON'S OPPOSITION TO FAMILYCARE'S MOTION FOR SUMMARY JUDGMENT** to be:

☒ electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| **Stephen F. English** | **David B. Markowitz** |
| SEnglish@perkinscoie.com | davidmarkowitz@mhgm.com |
| **Thomas R. Johnson** | **Matthew A. Levin** |
| TRJohnson@perkinscoie.com | mattlevin@markowitzherbold.com |
| **Heidee Stoller** | **Vivek A. Kothari** |
| HStoller@perkinscoie.com | vivekkothari@markowitzherbold.com |
| **Matthew J. Mertens** | **Anna Marie Joyce** |
| MMertens@perkinscoie.com | annajoyce@markowitzherbold.com |
| **Sasha A. Petrova** | **Dallas S. DeLuca** |
| SPetrova@perkinscoie.com | dallasdeluca@markowitzherbold.com |
| Perkins Coie LLP | **Harry B. Wilson** |
| 1120 N.W. Couch Street, 10th Floor | harrywilson@markowitzherbold.com |
| Portland, OR 97209-4128 | **Katherine M. Acosta** |
| | katherineacosta@markowitzherbold.com |
| **Matthew Gordon**, *pro hac vice* | **Laura R. Salerno Owens** |
| MGordon@perkinscoie.com | laurasalerno@markowitzherbold.com |
| **David B. Robbins** | Markowitz Herbold PC |
| DRobbins@perkinscoie.com | 1455 SW Broadway, Suite 1900 |
| Perkins Coie LLP | Portland, OR 97201 |
| 1201 Third Avenue, Suite 4900 | |
| Seattle, WA 98101-3099 | **Carla Scott** |
| | Carla.a.scott@doj.state.or.us |
| Counsel for Plaintiff | Oregon Department of Justice |
| | 100 SW Market Street |
| | Portland, Or 97201 |
| | |
| | Counsel for Defendant Oregon Health Authority |

CERTIFICATE OF SERVICE

**BARRAN LIEBMAN** LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR 97204-3159
PHONE (503) 228-0500  FAX (503) 274-1212

| | |
|---|---|
| **David B. Markowitz**<br>davidmarkowitz@mhgm.com<br>**Matthew A. Levin**<br>mattlevin@markowitzherbold.com<br>**Vivek A. Kothari**<br>vivekkothari@markowitzherbold.com<br>**Anna Marie Joyce**<br>annajoyce@markowitzherbold.com<br>**Dallas S. DeLuca**<br>dallasdeluca@markowitzherbold.com<br>**Harry B. Wilson**<br>harrywilson@markowitzherbold.com<br>**Katherine M. Acosta**<br>katherineacosta@markowitzherbold.com<br>**Laura R. Salerno Owens**<br>laurasalerno@markowitzherbold.com<br>Markowitz Herbold PC<br>1455 SW Broadway, Suite 1900<br>Portland, OR 97201<br><br>**Carla Scott**<br>Carla.a.scott@doj.state.or.us<br>Oregon Department of Justice<br>100 SW Market Street<br>Portland, Or 97201<br><br>**Jonathan W. Monson**<br>jmonson@cablehuston.com<br>**Nicole M. Swift**<br>nswift@cablehuston.com<br>Cable Huston LLP<br>1001 SW 5th Avenue, Suite 2000<br>Portland, OR ;972904-1136<br><br>Counsel for Defendant Patrick Allen | |

☐   hand delivered to the following non-CM/ECF participants:

☐   faxed and mailed by first class United States mail, postage prepaid, to the following non-CM/ECF participants:

*s/Edwin A. Harnden*
Edwin A. Harnden

CERTIFICATE OF SERVICE

**BARRAN LIEBMAN** LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR 97204-3159
PHONE (503) 228-0500  FAX (503) 274-1212