**Stephen F. English**, OSB No. 730843
SEnglish@perkinscoie.com
**Thomas R. Johnson**, OSB No. 010645
TRJohnson@perkinscoie.com
**Matthew J. Mertens**, OSB No. 146288
MMertens@perkinscoie.com
**Sasha Petrova,** OSB No.  154008
SPetrova@perkinscoie.com
**PERKINS COIE LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Telephone: 503.727.2000
Facsimile:  503.727.2222

**Matthew Gordon**, *pro hac vice*
MGordon@perkinscoie.com
**David B. Robbins**, OSB No. 070630
DRobbins@perkinscoie.com
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000

*Attorneys for Plaintiff FamilyCare, Inc.*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| FAMILYCARE, INC., an Oregon non-profit corporation,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>OREGON HEALTH AUTHORITY, an agency of the State of Oregon, and LYNNE SAXTON,<br>　　　　　　Defendants. | No. 6:18−cv−00296−MO<br><br>**PLAINTIFF'S OPPOSITION TO OREGON HEALTH AUTHORITY'S MOTION FOR SUMMARY JUDGMENT ON FAMILYCARE'S THIRD CLAIM FOR RELIEF**<br><br>**Oral Argument Requested** |

PLAINTIFF'S OPPOSITION TO OREGON HEALTH AUTHORITY'S
MOTION FOR SUMMARY JUDGMENT ON FAMILYCARE'S
THIRD CLAIM FOR RELIEF

155457114.10

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ........................................................................................................... 1

II.     BACKGROUND ............................................................................................................ 1

      A.      Procedural Background.......................................................................................... 1

            1.      OHA was on notice of, and had ample opportunity to seek discovery about, the sources of FamilyCare's reasonable expectations........................................................................................ 2

                    a.      OHA took discovery on FamilyCare's good faith claim. .............. 2

                    b.      The Court denied FamilyCare's request for reconsideration and dismissed the good faith claim after concluding the duty of good faith did not apply, and the Ninth Circuit reversed. ................................................................................. 3

                    c.      On remand, OHA filed a renewed motion to dismiss FamilyCare's good faith claim, choosing not to seek additional discovery on the claim. ................................................. 4

            2.      FamilyCare met its obligations to confer in good faith on OHA's motion. ......................................................................................... 5

      B.      Corrections to OHA's "Undisputed Facts".................................................. 5

            1.      OHA mischaracterizes testimony about actuarial soundness as a comprehensive source of FamilyCare's expectations........................... 5

            2.      CMS did not approve the 2018 annual rates that OHA offered to FamilyCare while FamilyCare was still in business. ................................ 6

III.    LEGAL STANDARD................................................................................................... 7

IV.     ARGUMENT................................................................................................................. 8

      A.      FamilyCare's objectively reasonable expectations are based on the Contract and external sources including applicable law, industry standards, and past practices. ...................................................................................... 8

            1.      This Court has already held that FamilyCare's reasonable expectations can be informed by sources outside the parties' Contract........................................................................................ 8

            2.      FamilyCare's reasonable expectations are based on the Contract, applicable laws, industry standards, and past practices. ........................... 8

                      a.      The nature and terms of the CCO statutory framework and implementing contracts informed FamilyCare's reasonable expectations of rates that would permit FamilyCare to fulfill its obligations. ......................................................................... 9

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

155457114.10

**TABLE OF CONTENTS**
**(continued)**

**Page**

b.  The parties had objectively reasonable expectations that OHA would exercise its contractual discretion to set unbiased rates. ................................................................ 13

c.  The parties had objectively reasonable expectations that OHA would exercise its discretion to set rates that were not knowingly based on material errors in data and methodology. .................................................................. 16

d.  The parties had objectively reasonable expectations that OHA would exercise its contractual discretion to give CCOs timely notice of forthcoming rate amendments to permit them to evaluate their adequacy. .................................... 17

3.  The 2016 Settlement Agreement in no way "erases" FamilyCare's objectively reasonable expectations under the Contract and in fact confirms them. ........................................................................ 18

a.  The Settlement Agreement recitals do not alter FamilyCare's rights under the Contract. ...................................... 18

b.  The express terms of the Settlement Agreement reflect OHA's commitment to set rates in good faith, and therefore *support* FamilyCare's claim. .......................................................... 19

B.  FamilyCare is entitled to rely on extra-contractual sources for its expectations because OHA had opportunities to seek discovery, did conduct discovery, and chose not to conduct further discovery. ........................ 20

C.  Summary judgment is not appropriate because FamilyCare has raised genuine issues of fact as to whether OHA's erroneous, biased, and untimely rate setting violated FamilyCare's objectively reasonable expectations.......................................................................... 22

1.  Ample evidence supports sending FamilyCare's good faith claim to the jury. ...................................................................................... 22

a.  OHA's erroneous and biased rate-setting. .................................. 23

(i)  OHA imposed a "reimbursement policy" in bad faith that substantially reduced FamilyCare's rates. ........ 24

(ii)  OHA made unsupported and inaccurate medical trend assumptions.............................................................. 26

(iii)  The Communications Plan provides additional circumstantial evidence of OHA's erroneous, biased, and unreasonable capitation rate-setting.............. 27

b.  Evidence of OHA's failure to provide timely and complete rates. ................................................................................................ 28

c.  OHA's bad faith breaches damaged FamilyCare......................... 31

ii-  TABLE OF CONTENTS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

155457114.10

**TABLE OF CONTENTS**
**(continued)**

**Page**

2.    FamilyCare's expectations were not contrary to the Contract................. 33

V.    CONCLUSION.................................................................................................... 35

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

155457114.10

# TABLE OF AUTHORITIES

**Page**

CASES

*Allen v. FamilyCare, Inc.*,
    812 F. App'x 413 (9th Cir. 2020), *as amended* (May 7, 2020) ....................................4, 20, 36

*Arizona v. California*,
    460 U.S. 605 (1983)..............................................................................................................8

*Best v. U.S. Nat. Bank of Or.*,
    303 Or.  557, 739 P.2d 554 (1987) ............................................................................... passim

*Container Recovery, Inc. v. Shasta Nw., Inc.*,
    No. CIV 05-1749-PK, 2007 WL 1724937 (D. Or. June 11, 2007)...................................7, 33

*Helicopter Transp. Servs., LLC v. Sikorsky Aircraft Corp.*,
    448 F. Supp. 3d 1127 (D. Or. 2020) .................................................................................7, 33

*Iron Horse Eng'g Co., Inc. v. Nw. Rubber Extruders, Inc.*,
    193 Or. App. 402, 89 P.3d 1249 (2004)..................................................................................8

*Jones v. George Fox Univ.*,
    No. 3:19-CV-0005-JR, 2021 WL 1414280 (D. Or. Feb. 3, 2021)..........................................34

*Oregon Univ. Sys. (OUS) v. Oregon Pub. Emps. Union, Loc. 503*,
    185 Or. App. 506, 60 P.3d 567 (2002)..............................................................................34, 35

*Ri Ky Roofing & Sheet Metal, LLC v. DTL Builders, Inc.*,
    No. 6:17-cv-01592-JR, 2018 WL 1528790 (D. Or. Feb. 7, 2018)..........................................21

*State v. Savastano*,
    354 Or. 64, 309 P.3d 1083 (2013) ........................................................................................9

*Uptown Heights Associates Ltd. P'ship v. Seafirst Corp.*,
    320 Or. 638, 891 P.2d 639 (1995) ........................................................................................8

*Zetwick v. Cnty. of Yolo*,
    850 F.3d 436 (9th Cir. 2017) ...............................................................................................7

*Zygar v. Johnson*,
    169 Or. App. 638, 10 P.3d 638 (2000)..................................................................................34

STATUTES

42 U.S.C. § 1983.........................................................................................................................9

ORS 414.018.................................................................................................................10, 11, 17

iv-   TABLE OF AUTHORITIES

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

155457114.10

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

ORS 414.025 ................................................................................................................10

ORS 414.065 ..................................................................................................10, 11, 14, 16

ORS 414.067 ................................................................................................................10

ORS 414.570 ..........................................................................................................10, 11, 14

ORS 414.577(1) ..............................................................................................................11

ORS 414.590 ................................................................................................................12

ORS 414.591 ................................................................................................................13

ORS 414.593(2) ..............................................................................................................11

ORS 414.625 (2013) ......................................................................................... passim

ORS 414.652 (2015) ..................................................................................................18, 29

v- PLAINTIFF'S OPPOSITION TO OREGON HEALTH AUTHORITY'S
MOTION FOR SUMMARY JUDGMENT ON FAMILYCARE'S
THIRD CLAIM FOR RELIEF

155457114.10

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

## I.    INTRODUCTION

FamilyCare has adduced considerable evidence that OHA breached the covenant of good faith and fair dealing in the parties' five-year contract by intentionally and with animus setting FamilyCare's rates so low that it lost tens of millions of dollars and was ultimately forced from the Medicaid market.  OHA attempts to prevent this claim from going to the jury by arguing that it was deprived of discovery as to the sources of FamilyCare's reasonable expectations.  OHA also argues that FamilyCare could not have reasonably expected that OHA—the government agency charged with administering Medicaid for millions of Oregon's most vulnerable citizens—would set its rates fairly and reasonably, without bias, without knowingly using erroneous data and methods, and without using the rate-setting process to short-change FamilyCare and deprive it of the full term of its contract.

OHA's arguments lack merit and should be rejected.  OHA has long known that the sources of FamilyCare's expectations went beyond the contract and included applicable law, industry standards and practices, and the parties' history.  And, despite ample opportunity, OHA chose not to seek much discovery about those sources and instead filed multiple motions to dismiss the claim.  OHA's litigation choices should not limit FamilyCare's claims for trial. Because FamilyCare has adduced evidence of its reasonable expectations and OHA's breach thereof, there are genuine issues of material for the jury.  Summary judgment should be denied.

## II.    BACKGROUND

### A.    Procedural Background

OHA argues that the Court should not permit FamilyCare to rely on extra-contractual sources for its reasonable expectations of good faith, because OHA took only "limited discovery" of this claim.  ECF 507[1] at 6, 7.  But the procedural history demonstrates that OHA's

---

[1] All ECF citations are to documents filed in Case No. 6:18−cv−00296, and all pin-citations refer to ECF pagination.  Pin citations to declaration exhibits refer to exhibit pagination.

<table>
<tr><td>1-</td><td>PLAINTIFF'S OPPOSITION TO OREGON HEALTH AUTHORITY'S<br>MOTION FOR SUMMARY JUDGMENT ON FAMILYCARE'S</td><td><b>Perkins Coie LLP</b><br>1120 N.W. Couch Street, 10th Floor<br>Portland, OR  97209-4128<br>Phone:  503.727.2000<br>Fax:  503.727.2222</td></tr>
</table>

155457114.10

argument is founded solely in OHA's own litigation strategy—focusing discovery on FamilyCare's other claims and gambling that its motions to dismiss the good faith claim would be granted—which hardly provides a reason to limit the bases for or evidence in support of this claim. *See* App. 1 (timeline of discovery opportunity on good faith claim).

        **1.**       **OHA was on notice of, and had ample opportunity to seek discovery about, the sources of FamilyCare's reasonable expectations.**

        **a.**       **OHA took discovery on FamilyCare's good faith claim.**

In March 2018, OHA issued its Sixth Request for Production of Documents, which included a request regarding FamilyCare's reasonable expectations in connection with the good faith claim. *See* Gordon Decl., Ex. 3 at 8 (requesting documents related to FamilyCare's "expectation that OHA would present annual rate amendments that were reasonable, unbiased, actuarially sound, and free of errors in underlying data and methodology"). FamilyCare responded that such documents had already been produced but agreed to search for and produce additional documents. *Id.*, Ex. 4 at 7. The following month, OHA issued a Rule 30(b)(6) deposition notice, listing as topic five (5) FamilyCare's claim that OHA improperly reduced FamilyCare's rates, specifically citing a complaint paragraph in the good faith claim. *Id.*, Ex. 5 at 8.[2]

On June 1, 2018, this Court issued an opinion dismissing the good faith claim. *See* ECF 105 at 25-26. FamilyCare moved for reconsideration on June 13, 2018. Gordon Decl., Ex. 6. In its briefing, FamilyCare discussed the good faith claim extensively and argued that FamilyCare's reasonable contractual expectations were informed by, among other things, relevant industry standards and practices. *See id.* at 17.

---

[2] The designated paragraph alleged that OHA breached the duty of good faith by presenting contract amendments that were "unreasonable, biased, actuarially unsound, and based on erroneous data and methodology." *See* Gordon Decl. Ex. 24 (Third Amended Complaint) ¶ 149.

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

The parties continued discovery on the good faith claim after reconsideration was sought and was pending.  During that period, OHA amended its Rule 30(b)(6) deposition notice to FamilyCare.  Not only did OHA update its fifth topic designation to track the Fourth Amended Complaint, OHA *added* another paragraph from FamilyCare's good faith claim to its designation.  *See* Gordon Decl., Ex.  7 at 8 (seeking discovery about ¶¶ 152–153 of the Fourth Amended Complaint).  This directly controverts OHA's contention that it did not engage in further discovery because it "understood that . . . the Court had dismissed [the claim] and it was no longer part of the case."  *See* ECF 507 at 7–8 n.2.

While awaiting the Court's ruling on reconsideration, OHA chose not to ask FamilyCare's Rule 30(b)(6) deposition witnesses about the sources of FamilyCare's reasonable expectations under the five-year contract ("Contract").[3]  OHA asked only a single question about FamilyCare's expectations, specifically whether rates should be free from "all errors." *See* Gordon Decl., Ex.  8 at 7.  At the deposition of OHA's Chief Operating Officer on July 27, 2018, OHA asked Bill Murray about his expectations under the parties' Dispute Resolution Agreement and began asking similar questions about the Contract but did not pursue them. *See* Gordon Decl., Ex.  11 at 3 ("Turn to paragraph 151" [of the Fourth Amended Complaint, concerning FamilyCare's expectations under the five-year contract]); *id.*  ("Actually, strike that.  We'll put this one away.").  OHA was on notice that FamilyCare's expectations were informed by extra-contractual sources, including industry standards and practices, and had every opportunity to inquire further about the good faith claim and its genesis, but chose not to.

          **b.**      **The Court denied FamilyCare's request for reconsideration and dismissed the good faith claim after concluding the duty of good faith did not apply, and the Ninth Circuit reversed.**

---

[3] Throughout this brief, FamilyCare refers to the Health Plan Services Contract, Coordinated Care Organization Contract #143114 ("2014 Contract," Gordon Decl. Ex. 9) and the amendments thereto, including Contract #143114-11 ("2017 Amendment," Gordon Decl. Ex. 10), collectively as the "Contract." FamilyCare cites specific amendments where appropriate.

3-   PLAINTIFF'S OPPOSITION TO OREGON HEALTH AUTHORITY'S
MOTION FOR SUMMARY JUDGMENT ON FAMILYCARE'S

155457114.10

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

On July 31, 2018, the Court held oral argument on FamilyCare's motion for reconsideration.[4]  FamilyCare argued that dismissal was not appropriate because its reasonable expectations are a question of fact informed by external evidence including industry practices. *See* Gordon Decl., Ex. 12 at 7-8.  The Court indicated that it was "at least in tentative agreement" with FamilyCare on that point and instructed counsel to move on. *See id.* at 8.  Ultimately, the Court concluded that good faith did not apply to the Contract and issued its final ruling dismissing that claim. *See id.* at 9-10; *see also* ECF 183.

FamilyCare appealed, arguing again that dismissal was not appropriate because FamilyCare's objectively reasonable expectations would be questions of fact for the jury and were informed by extrinsic evidence. *See* Gordon Decl., Ex. 13 at 3 ("Such evidence includes industry standards and practices relevant to the parties' relationship and other evidence in the record developed by the parties.").  The Ninth Circuit reversed and remanded the good faith claim to this Court. *See Allen v. FamilyCare, Inc.*, 812 F. App'x 413, 418 (9th Cir. 2020), *as amended* (May 7, 2020).

> **c.      On remand, OHA filed a renewed motion to dismiss FamilyCare's good faith claim, choosing not to seek additional discovery on the claim.**

After remand, the parties engaged in supplemental discovery, and OHA sought additional, new discovery from FamilyCare regarding text messages, *see* ECF 469.  But OHA made no attempt to seek further or supplemental discovery about the sources of expectations for FamilyCare's good faith claim despite the claim's reinstatement.  OHA did, however, file another motion to dismiss, arguing that FamilyCare's reasonable expectations are limited to express contract terms.  ECF 432 at 19-20.

---

[4] At the time of the reconsideration hearing, discovery was still ongoing. *See* Gordon Decl. Ex. 12 at 3-4 (FamilyCare's counsel informed the Court that the parties were still conducting depositions as of July 31, 2018, despite the scheduled termination of discovery on that date).

4-    PLAINTIFF'S OPPOSITION TO OREGON HEALTH AUTHORITY'S
MOTION FOR SUMMARY JUDGMENT ON FAMILYCARE'S

155457114.10

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

The Court denied OHA's motion and ruled that parties' objective reasonable expectations can be informed by something other than the express terms of the contract, and further held that FamilyCare had plausibly alleged a claim for breach of the implied covenant. ECF 495 at 8-9.

### 2.    FamilyCare met its obligations to confer in good faith on OHA's motion.

OHA does not explain why it includes a lengthy (and misleading) recitation of the parties' conferral in its motion. Regardless, OHA misconstrues the purpose and meaning of Local Rule 7-1, which requires the moving party to identify the bases of its motion, and not the other way around. If OHA is suggesting that FamilyCare did not comply with its obligations to confer, the argument should be rejected because FamilyCare both engaged in the conferral and then exceeded its obligations when it identified, in advance of OHA's motion, the sources of its reasonable expectations under the contract. *See* Gordon Decl., ¶¶ 3-5 Exs. 1, 2. OHA was not entitled to obtain discovery it failed to seek through traditional means under the guise of a Local Rule 7-1 conferral. *Id.*

### B.    Corrections to OHA's "Undisputed Facts"

FamilyCare corrects two points in OHA's recitation of "undisputed facts."[5]

### 1.    OHA mischaracterizes testimony about actuarial soundness as a comprehensive source of FamilyCare's expectations.

OHA identifies two excerpts from FamilyCare's Rule 30(b)(6) deposition testimony that OHA claims are evidence that FamilyCare's only reasonable contractual expectation was for "actuarially sound" rates. ECF 507 at 14. But this testimony was the product of OHA's narrow questioning, which did not touch on the sources or breadth of FamilyCare's expectations.[6]

---

[5] In doing so, FamilyCare does not concede the accuracy of the remaining "facts," *see* ECF 507 at 11-15, or waive its right to develop argument as to the same.

[6] OHA was well aware *before* the deposition that FamilyCare's reasonable expectations went beyond mere expectations of actuarial soundness. *Compare* Gordon Decl. Ex. 6 at 24-25 (June

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

OHA queried FamilyCare's Rule (30)(b)(6) witness on whether FamilyCare believed it was "entitled" to "actuarially sound" rates. *See* Gordon Decl., Ex. 8 at 2. Even though FamilyCare's pleadings have always been clear that FamilyCare's expectations arise from the Contract, "applicable law," and "other things"—and during the deposition, FamilyCare's counsel even voluntarily directed OHA to FamilyCare's motion for reconsideration, which discussed in detail the "applicable law," "industry standards," and other sources of FamilyCare's expectations[7]—OHA nonetheless limited its questions to FamilyCare's expectations under the Contract. *Id.* at 4-7, 273:7–10 ("[P]lease identify for the record where *the contract* requires that the . . . rates be actuarially sound."), 274:12–14 ("[I]s there any other provision *in the contract* that mandates that the rates be actuarially sound?"), 275:6–15 ("[I]n the Fourth Amended Complaint at paragraphs 89 and 151 there are allegations that . . . rates were biased and not actuarially sound and that they were not free from errors. Now . . . is there any provision *of the contract* that requires that the rates that are set be actuarially sound?"), 276:5–7 ("Is there any provision *of the contract* that requires that the rates be free of all error?") (emphases added). Despite being on notice of extra-contractual sources of FamilyCare's expectations, OHA chose not to inquire about them.

### 2. CMS did not approve the 2018 annual rates that OHA offered to FamilyCare while FamilyCare was still in business.

OHA also asserts that CMS approved FamilyCare's 2018 rates. ECF 507 at 15. In fact, CMS did *not* approve the only such rates that OHA offered to FamilyCare for the 2018 rate-setting year while FamilyCare was still in business. *See* Declaration of Donna Novak ("Novak Decl.") ¶¶ 5, 8. OHA first presented FamilyCare with the 2018 rates on October 31, 2017, and

---

13, 2018, motion for reconsideration briefing describing FamilyCare's additional reasonable expectations) and Gordon Decl. Ex. 8 (July 11, 2018, FamilyCare 30(b)(6) deposition).

[7] *See* Gordon Decl. Ex. 8 at 6, Ex. 6 at 17.

6-   PLAINTIFF'S OPPOSITION TO OREGON HEALTH AUTHORITY'S
MOTION FOR SUMMARY JUDGMENT ON FAMILYCARE'S

155457114.10

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

submitted those rates to CMS the next day.  Murray Decl. Ex. 14; Gordon Decl. Ex. 14.  CMS began the process of reviewing those rates but, after learning that OHA intended to submit revised rates for 2018, suspended that effort pending receipt of revised rates.  Novak Decl. ¶ 8. As a result, CMS never thoroughly reviewed, audited or approved the original 2018 Rates.  *Id.* After FamilyCare's closed its doors, OHA retroactively revised the 2018 rates and submitted those rates (which were higher than the original 2018 rates and addressed issues that FamilyCare had previously identified) to CMS.  *Id.*; *see also* Gordon Decl.  Ex. 15, and Murray Decl.  ¶ 37. CMS approved those redeveloped rates in 2020.  Novak Decl. ¶ 8.

## III.    LEGAL STANDARD

In evaluating a motion for summary judgment, a court must "view[] the evidence in the light most favorable to the nonmoving party" and may not "weigh the evidence" or "make any credibility determinations." *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 440-441 (9th Cir. 2017) (internal quotations and citations omitted).  Where evidence is genuinely disputed, summary judgment should be denied.  *Id.* at 441.

Whether a party violated another's reasonable contractual expectations is generally a question of fact.  *E.g.*, *Best v. U.S. Nat. Bank of Or.*, 303 Or.  557, 565, 739 P.2d 554 (1987) (reversing summary judgment because the evidence raised genuine issues of material fact as to whether bank breached good faith obligations); *Container Recovery, Inc. v. Shasta Nw., Inc.*, No. CIV 05-1749-PK, 2007 WL 1724937, at *8 (D. Or. June 11, 2007) (denying summary judgment because a genuine issue of material fact existed as to the parties' reasonable expectations).  The exception to this rule is where a party's alleged contractual expectations are contrary to the express terms of the contract and are therefore unreasonable as a matter of law.  *See, e.g.*, *Helicopter Transp.  Servs., LLC v. Sikorsky Aircraft Corp.*, 448 F. Supp. 3d 1127, 1141 (D. Or. 2020) ("in light of th[e] express waivers and disclaimers, no reasonable jury could conclude that" the parties had reasonable expectations conflicting with these provisions); *see also Uptown*

*Heights Associates Ltd. P'ship v. Seafirst Corp.*, 320 Or. 638, 647-48, 891 P.2d 639 (1995).

## IV.    ARGUMENT

### A.    FamilyCare's objectively reasonable expectations are based on the Contract and external sources including applicable law, industry standards, and past practices.

This Court instructed the parties to "*address what exactly they believe to be the basis for the parties' objective reasonable expectations that form the basis of the implied covenant of good faith and fair dealing claim*." As discussed below, the expectations are based on the Contract and external sources including applicable law, industry standards, and past practices.

#### 1.    This Court has already held that FamilyCare's reasonable expectations can be informed by sources outside the parties' Contract.

OHA's primary argument effectively seeks reconsideration of its twice-rejected contention that the Contract is the only source of FamilyCare's objectively reasonable expectations. *See* ECF 507 at 16-17. This Court rejected this argument in 2018, Gordon Decl. Ex. 12 at 5-6, and more recently when denying OHA's latest motion to dismiss, ECF 495 at 9 ("I disagree with OHA's statement that the objective reasonable expectations of the parties can only be informed by the express terms of the contract."). The Court's decisions on this issue are the law of the case. *See Arizona v. California*, 460 U.S. 605, 618 (1983) (law of the case "doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case").

#### 2.    FamilyCare's reasonable expectations are based on the Contract, applicable laws, industry standards, and past practices.

The implied covenant of good faith and fair dealing requires that each party refrain from any act that would "have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Iron Horse Eng'g Co., Inc. v. Nw. Rubber Extruders, Inc.*, 193 Or. App. 402, 421, 89 P.3d 1249, 1259 (2004). "Good faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified

8-    PLAINTIFF'S OPPOSITION TO OREGON HEALTH AUTHORITY'S
MOTION FOR SUMMARY JUDGMENT ON FAMILYCARE'S

155457114.10

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

expectations of the other party[.]" *Best*, 303 Or. at 562–63.  A party violates the implied covenant when it undermines the agreed common purpose or frustrates the parties' expectations, depriving the other party of the benefit of the bargain.  This principle particularly applies where, as here, a contract authorizes a party's exercise of discretion.  *See id.*  The Contract vests OHA with the discretion to set rates, and that discretion must be exercised consistently with the parties' objectively reasonable expectations.

FamilyCare's objectively reasonable expectations under the Contract were clear: OHA would present annual rate amendments that were timely, reasonable, unbiased, actuarially sound, adequate, and free of errors in underlying data and methodology.  ECF No. 429 at ¶ 107.  Evidence of the objective reasonableness of these expectations abounds in the Contract, state and federal laws that govern both the Medicaid program and how governmental agencies must and are expected to act, industry standards, and past practices.[8]

**a.**   **The nature and terms of the CCO statutory framework and implementing contracts informed FamilyCare's reasonable expectations of rates that would permit FamilyCare to fulfill its obligations.**

CCO contracts arise by legislative mandate and are governed by a complex legislative scheme that effectuates both state health and federal Medicaid policy.  *See generally* ORS 414.570–414.686 (collectively titled "Coordinated Care Organizations").  That legislative backdrop informs the expectations of the parties, as the Contract itself reflects.

A fundamental purpose of CCO contracts is for OHA to pay the CCO rates that the CCO

---

[8] It is a fundamental principle of both state and federal law that, since OHA is a government entity, it may not discriminate against particular citizens or contractors for arbitrary or improper reasons.  Such principles are well and long established in, among other places, federal statutes and the Oregon Constitution.  *See, e.g.*, 42 U.S.C. § 1983; *see also* Or. Const., Art. I, § 20 ("No law shall be passed granting to any citizen . . . privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens."); *State v. Savastano*, 354 Or. 64, 96, 309 P.3d 1083, 1102 (2013) (explaining that, under Oregon's Privileges and Immunities Clause, agency officials may not treat similarly situated persons differently for arbitrary or improper reasons).

9-   PLAINTIFF'S OPPOSITION TO OREGON HEALTH AUTHORITY'S
MOTION FOR SUMMARY JUDGMENT ON FAMILYCARE'S

155457114.10

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

uses to cover the reasonably incurred costs of delivering and managing covered health care services required by Medicaid beneficiaries assigned to the CCO.  Gordon Decl., Ex. 9 at 25–113, 114–238; Ex. 10 at 28–120, 121–25, 223–72.  This is reflected in the governing statutory scheme adopted by the Oregon legislature.  OHA pays CCOs a fixed "global budget" which is the total amount established prospectively to be paid to a CCO for the delivery, management, access to, and quality of healthcare required of its members.  *See* ORS 414.025(11), 414.065(5).  The law requires that this global budget must be informed by the CCOs' health care costs and service delivery, innovation, community assessment of need through an interactive process between OHA and the CCOs and ultimately the legislature.  *See generally* ORS 414.065(1), (5), ORS 414.067(1), and ORS 414.570(1)-(2).

The law sets forth broad statutory requirements and considerations for OHA in setting rates.  *See* ORS 414.018(1)-(4) and 414.065(1), (5).  The legislation specifically requires that the OHA determine the services to be delivered and "[*r*]*easonable* fees, charges, daily rates and *global payments for meeting the costs of providing health services to an applicant or recipient*."  ORS 414.065(1)(a)(A), (D) (emphasis added).  The legislature expressly commanded OHA to consider the CCO's "health care costs" in setting the global budget, ORS 414.065(5)(b)—not some erroneous, cherry-picked or artificially generated facsimile of those costs.  CCO costs must be "fully transparent" to all, even the public.  ORS 414.593(2).  The legislature expressed its intent that "[i]nteractions between the Oregon Health Authority and coordinated care organizations are done *in a transparent and public manner*."  ORS 414.018(3)(g) (emphasis added).  FamilyCare accordingly expected the parties would interact on rates in a transparent and public manner, and neither party thereby could have expected the resulting rates to be manifestly unreasonable, unsound, biased, rife with error, inadequate or created to disfavor and injure a

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

CCO.[9] Oregon's legislative directive in ORS 414.018(3)(g) for OHA to act in in a "transparent and public manner" in relation to CCOs also strongly suggests that the parties had every reason to expect and did expect that OHA's rate-setting conduct would be above reproach.

The statutory rate-setting framework also contemplates encouraging improvements and innovations in the delivery, management, access, and quality of care, as well as taking into account CCO feedback as to the cost and delivery of services. *See, e.g.*, ORS 414.065(5)(c) (in determining the CCO global budget the OHA must "take into account the [CCO's] provision of innovative, nontraditional health services."). The legislation required that OHA seek input from the CCOs as to strategies to improve the efficiency and quality of health systems and that CCO feedback be used in determining CCOs' global budgets or rates. ORS 414.570(2); s*ee also* ORS 414.065(5)(b) (OHA must consider CCO "community health assessments" required by ORS 414.577(1) in determining CCO global budgets).

Under its global budget, the CCO assumes the risk of financial loss from any cost overruns for covered services but enjoys certain authorized freedom to find innovative ways to allocate and manage Medicaid resources and, if successful, reap certain limited benefits of any surplus. *See* ORS 414.065(2), (3), (5)(a); 414.570(1); *see also* Gordon Decl. Ex. 9 at 125 (Exhibit C.8., "Global Payment Rate Methodology"), 309 (Exhibit L.5., "Assumption of Risk/Private Market Reinsurance:  Contractor assumes the risk for providing the Covered Services required under this Contract."); Ex.  10 at 132, 210 (same, respectively); Murray Decl. ¶ 13 and Ex. 2.

Of particular importance is the requirement that the CCO contract have a five-year term. *See* Murray Decl. ¶¶ 7, 14-15.  Previously, OHA contracted with CCOs on a year-to-year basis. *Id.* ¶ 14.  In 2013, the Oregon legislature passed legislation requiring that OHA-CCO contracts

---

[9] This legislative pronouncement also highlights the bad-faith nature of OHA's secret disparagement campaign in retaliation for FamilyCare's public speech.

11-   PLAINTIFF'S OPPOSITION TO OREGON HEALTH AUTHORITY'S
MOTION FOR SUMMARY JUDGMENT ON FAMILYCARE'S

155457114.10

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

have a five-year term. *See* former ORS 414.652(1)(a) (2013)[10]; Murray Decl. at ¶ 14. The five-year term was intended to foster CCO stability necessary to allow them to make long-term investments in care management and to innovate and transform the healthcare delivery system to realize efficiencies, improve beneficiary access to care and bend the cost curve, which was the purpose of the CCO model. *See* Murray Decl. at ¶¶ 9-15 and Ex. 1; *see also* Gordon Decl. Ex. 32 (Hearing on S.B. 725 Before the S. Comm. on Health Care & Human Servs., 77th Or. Legis. Assemb., 2013 Reg. Sess. (2013), Exhibit 8, Statement of Josh Balloch ("Balloch Testimony")). The legislative mandate for a five-year contract term recognized that CCOs bore the initial costs of innovation and that these innovations needed time to yield the anticipated cost-saving results, which would accrue largely towards the end of the multiyear term. Murray Decl. at ¶ 15. Thus, the five-year term is critical to the CCO contract, as demonstrated by its placement in the first substantive provision (I.A.) of the 332-page Contract. *See* Gordon Decl. Ex. 9 at 7, Ex. 10 at 7.

Other provisions of the Contract reinforce the importance of the legislature's decision to require a five-year term for the parties' obligations, the long-term, transformational nature of the CCO model, and the reasonable expectations that this term entailed. For instance, an entire exhibit sets out a "Transformation Plan," under which FamilyCare must effectuate improvements to health care according to a multi-year "timeline" of "milestones" and "benchmarks." Gordon Decl. Ex. 9 at 296–303; Ex. 10 at 195–204. And both FamilyCare and OHA understood that the five-year term encouraged long-term CCO investments in health care transformation. Murray Decl. ¶¶ 13-15; *see also* Gordon Decl. Ex. 18 at 3 (Busek Depo.) (goal of CCO model includes creating fiscal sustainability); Ex. 19 at 10 (Oct. 17, 2014, Health System Transformation presentation promoting "fiscal sustainability"). Successfully changing the health care delivery

---

[10] Former ORS 414.652 (2013) was renumbered to ORS 414.590 in 2018. Throughout this brief, FamilyCare refers to ORS 414.652, as it was the operative statute at relevant times.

12- PLAINTIFF'S OPPOSITION TO OREGON HEALTH AUTHORITY'S MOTION FOR SUMMARY JUDGMENT ON FAMILYCARE'S

155457114.10

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

system with strategic investments was expected to take more than a single year.  Murray Decl. ¶ 15.

Other provisions of the Contract similarly would have imposed impossible obligations on FamilyCare if OHA offered bad faith, adversely erroneous or unreasonable and inadequate rates. For instance, Exhibit L, titled "Solvency Plan and Financial Reporting," requires that a CCO "maintain sound financial management procedures and demonstrate to OHA through proof of financial responsibility that it is able to perform the Work required under this Contract efficiently, effectively and economically and is able to comply with the requirements of this Contract" and certain Oregon Administrative Rules.  Gordon Decl., Ex. 9 at 304; Ex. 10 at 205. Further, Exhibit L of the Contract imposes "Restricted Reserve" and "Net Worth" requirements that could not be maintained if OHA acted in bad faith to force FamilyCare into the red or under. *Id.* at 309–14, 316–18.  Oregon's statutes governing CCO contracts contain similar requirements. *See, e.g.*, ORS 414.591(3)(a).  Given that FamilyCare's sole business was serving the Oregon Medicaid market—a fact well known to OHA—FamilyCare reasonably expected that the rates paid would not foreseeably jeopardize its solvency obligations.  These provisions created objectively reasonable expectations that OHA would not set rates that materially jeopardize or destroy FamilyCare's ability to perform the Contract.

  **b.**  **The parties had objectively reasonable expectations that OHA would exercise its contractual discretion to set unbiased rates.**

Based on the Contract, applicable laws, and industry standards, FamilyCare also had the objectively reasonable expectation that OHA would not act with bias to set rates that favored some CCOs over FamilyCare or otherwise penalize FamilyCare through lower rates.

FamilyCare expected, based on applicable law and Contract provisions giving FamilyCare discretion under the global budget to care for FamilyCare's members, that OHA's actions would be free from personal, professional or organizational bias targeting the exercise of

13-  PLAINTIFF'S OPPOSITION TO OREGON HEALTH AUTHORITY'S
  MOTION FOR SUMMARY JUDGMENT ON FAMILYCARE'S

155457114.10

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

that discretion.  The law provides that a CCO's governing board is in charge of determining its own allocation of payments, risk, and cost savings.  *See* ORS 414.065(5)(a); *see also* ORS 414.570(1).  The Contract also echoes that obligation.  *See* Gordon Decl. Ex. 9 at 125 (Exhibit C.8., "Global Payment Rate Methodology"), 309 (Exhibit L.5., "Assumption of Risk/Private Market Reinsurance:  Contractor assumes the risk for providing the Covered Services required under this Contract."); Ex.  10 at 132 (Exhibit C.6.), 210 (same, respectively).  OHA itself acknowledges that the global budget model gives a CCO autonomy in how to spend Medicaid funds for member care.  As an example, OHA represented to CMS that "[o]ne of the primary goals of the global budget concept is to allow CCOs flexibility to invest in care that may decrease costs and achieve better outcomes" and the global budget would allow CCOs "maximum flexibility" to decide how to allocate resources toward efficient care.  FamilyCare therefore had an objectively reasonable expectation that OHA would not set biased rates targeting FamilyCare based on how FamilyCare chose to exercise its discretion on spending its Medicaid funding.  *See Best*, 303 Or. at 563-564 (bad faith includes "evasion of the spirit of the bargain" and exercising discretion to retaliate against party).

This is further illustrated by the parties' expectation that CCO spending would prioritize primary care to improve member access to care and lower overall Medicaid costs.  *See, e.g.*, Gordon Decl., Ex.  9 at 27 (Exhibit B, Part 1, 4.d.(5) (requiring CCOs to "[f]ocus on primary care" in Community Health Assessment and Community Health Improvement plans)), 64 (Exhibit B, Part 4, 2.j.  ("Contractor shall ensure that each Member has an ongoing source of primary care appropriate to the Member's needs . . . .")); *id.* at 79 (Exhibit B, Part 6 (requiring CCOs to "assign a high priority to implementing . . . incentives for" Patient-Centered Primary Care Homes); Ex.  10 at 30, 69 (Exhibit B, Part 4, 2.k.), 84 (same, respectively); Murray Decl. ¶ 18, Ex. 5, and Ex. 6 at 44; *see also former* ORS 414.625(2)(c) (2013) (adoption of requirements that CCOs use patient-centered primary homes or other means to support primary

care).  Notably, the Contract required CCOs to "ensure that Providers do not discriminate between Members and non-OHP persons," which FamilyCare implemented in part by paying primary care providers at rates comparable to those paid for treating non-Medicaid beneficiaries. Murray Decl. ¶ 18; Gordon Decl., Ex.  9 at 63 (Exhibit B, Part 4, 2.b.); Ex. 10 at 68 (Exhibit B, Part 4, 2.c.).

Consistent with the stated purpose of the CCO model, OHA consistently encouraged investments in primary care, stating that "[a] robust primary care system is at the heart of the [CCO] model; primary care payments should support both an effective primary care infrastructure and the provision of high-quality primary and preventative services."  Gordon Decl., Ex.  20 at 6.  Moreover, OHA touted the results of a study showing that every dollar increase in primary care expenditures resulted in thirteen dollars of savings in overall Medicaid expenditures, *id.*, Ex.  21 and even praised FamilyCare for its leadership in focusing on primary care and increasing primary care reimbursement, *id.*, Ex.  22 at 7-8 (OHA Rule 30(b)(6) deposition testimony, acknowledging same "promising practice[]").  Given this encouragement—and requirement—to invest in primary care, no CCO would reasonably expect OHA to penalize primary care investments to reduce the CCO's rates.  *See Best*, 303 Or. at 563 (bad faith includes "evasion of the spirit of the bargain" and "interference with or failure to cooperate in the other party's performance").  FamilyCare certainly did not.  Murray Decl. ¶ 18. Yet, as explained below, the evidence shows that OHA penalized FamilyCare for making these very investments through biased rate-setting that favored other CCOs.

Finally, FamilyCare had objectively reasonable expectations, based on industry standards and applicable law, that FamilyCare would not exercise its rate-setting discretion in an improperly discriminatory or preferential manner that favored other CCOs over FamilyCare.  *See* n.8 above. FamilyCare reasonably expected, based on industry standards, that OHA would set rates without bias toward any CCO and without material errors in the underlying data used to

15-    PLAINTIFF'S OPPOSITION TO OREGON HEALTH AUTHORITY'S MOTION FOR SUMMARY JUDGMENT ON FAMILYCARE'S

155457114.10

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

construct the rates. Davidson Decl. ¶ 15. It is also standard to set rates that are intended to provide stability in the market. *Id.* FamilyCare also reasonably relied on OHA's stated desire for CCO stability and longer-term investment in the Oregon Medicaid program (Murray Decl., ¶¶ 9, 14-15); OHA's professed intentions to work with the CCOs as "partners" (*id.* ¶¶ 9, 12, 19-20, and Exs. 7-9); OHA's own role as the gatekeeper and administrator of the Medicaid program in Oregon (*id.* ¶ 8); and OHA's repeated statements about providing a "global budget" that would grow at a fixed rate (*id.* ¶¶ 10, 16, and Exs. 1, 3-4) and would provide reasonable payments for global costs of care (ORS 414.065(1)(D)) in forming the expectation that OHA would abide by these standards.

These principles all informed FamilyCare's objectively reasonable expectation that, when OHA exercised its discretion to set rates, it would not arbitrarily disfavor FamilyCare. Yet, as described in Section IV.C.1 below, ample evidence shows that this is precisely what OHA did. *See also* Murray Decl. ¶ 44 (contrasting OHA's treatment of FamilyCare with its treatment of his prior employer, another MCO).

> **c.    The parties had objectively reasonable expectations that OHA would exercise its discretion to set rates that were not knowingly based on material errors in data and methodology.**

The parties had the objectively reasonable expectation from state and federal laws, industry standards, and past practices that OHA would not exercise its discretion to set rates that were knowingly based on erroneous data and methodology.

For decades before the Oregon legislature enacted the current CCO system, OHA contracted and worked with FamilyCare to provide health care to Medicaid members. Declaration of Jeff Heatherington ("Heatherington Decl.") ¶ 4. OHA gave the MCOs all the relevant rate-setting data and were partners in the rate-setting process. *Id.* MCOs sometimes disagreed with OHA about what the rate-setting numbers meant but always knew how OHA had derived those numbers, and OHA and the MCOs worked together to resolve disagreements over

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

the rates. *Id.; see also* ORS 414.018(3)(g) (requiring transparency and public scrutiny in OHA/CCO interactions).[11]

The Contract and prevailing industry standards also informed FamilyCare's expectation. *See, e.g.*, Gordon Decl., Ex. 9 at 10 ("If Contractor believes that any provision of this Contract or OHA's interpretation thereof is in conflict with federal or State statutes or regulations, Contractor shall notify OHA in writing immediately."); Ex. 10 at 10 (same); Davidson Decl. ¶ 15 (industry standard to set Medicaid MCO capitation rates without bias toward any MCO and without material errors in the underlying data).

Moreover, after identifying errors in ratemaking in the past, OHA has submitted "retroactive amendments" to correct errors in the rates it originally submitted to CMS. Gordon Decl., Ex. 23 (Robison Dep.) (discussing retroactive rate amendment filed with CMS "after the original filing" to address eligibility redeterminations and other issues); Ex. 22 at 11-13 (OHA 30(b)(6) Dep.) (discussing 2018 "rate amendment" to address mismatches between member enrollment data and categorization).

The parties' course of dealing, relevant Contract provisions, and industry standards all created an objectively reasonable expectation that, if FamilyCare found material errors in OHA's rate-setting, OHA would not willfully ignore them or fail to correct them. *Best*, 303 Or. at 563 (bad faith includes "willful rendering of imperfect performance," "lack of diligence," and "failure to cooperate in the other party's performance"). But that is exactly what OHA did when, on multiple occasions, it refused to address FamilyCare's concerns about problems in OHA's rate-setting data and methodologies and make the needed corrections. Murray Decl. ¶¶ 33-38.

> **d.      The parties had objectively reasonable expectations that OHA would exercise its contractual discretion to give CCOs timely**

---

[11] Initially, OHA's post-Contract behavior continued this course of dealing and showed FamilyCare's expectations were well-founded. Murray Decl. ¶ 19 (describing OHA's practice meeting with CCOs monthly to collaboratively and iteratively develop rates).

**notice of forthcoming rate amendments to permit them to evaluate their adequacy.**

FamilyCare had objectively reasonable expectations from applicable laws and its prior course of dealing that OHA would not propose untimely rate amendments. Murray Decl. ¶¶ 31-32. Former ORS 414.652(4) (2015) expressly required that, when OHA proposes an amendment to the CCO contract, OHA "must give a coordinated organization at least 60 days' advance notice of any amendments [OHA] proposes to existing contracts." OHA itself acknowledged the 60-day notice requirement, which based on past practice could extend into the new benefit year if OHA provided insufficient time for review before that year started. *See* Murray Decl. ¶ 32 Ex. 16 (CCOs were "entitled to the full 60-day period guaranteed by statute[.]")

FamilyCare has consistently alleged that OHA violated former ORS 414.652(4) (2015) by not timely providing actual 2018 rates and delivering an ultimatum that gave FamilyCare mere hours to consider the preliminary rate amendment rather than the 60 days to consider its actual rates that FamilyCare reasonably expected under the law and from previous dealings with OHA. Compliance with governing law is an objectively reasonable expectation of both parties, particularly where one is a government agency.

> **3.     The 2016 Settlement Agreement in no way "erases" FamilyCare's objectively reasonable expectations under the Contract and in fact confirms them.**

OHA argues that the parties' 2016 Settlement Agreement ("Settlement Agreement") "erases" FamilyCare's reasonable expectations to the extent they go beyond what is expressly set out in the Contract. In so doing, OHA attempts to put its best face on a document that undermines the basis of its argument.

> **a.     The Settlement Agreement recitals do not alter FamilyCare's rights under the Contract.**

As an initial matter, it is unclear how an agreement entered in 2016 could erase FamilyCare's expectations at the time that it entered the Contract two years prior, in 2014. *See*

PLAINTIFF'S OPPOSITION TO OREGON HEALTH AUTHORITY'S
18-    MOTION FOR SUMMARY JUDGMENT ON FAMILYCARE'S

155457114.10

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

Gordon Decl., Ex. 9 at 2. Regardless, the text of the Settlement Agreement shows that it did not curtail any of FamilyCare's expectations or waive any of its rights: "Nothing in Paragraph 1 of this Section affects or alters any preexisting rights or creates any contractual or legal right for either Party." Murray Decl., Ex. 10 at 4. Notably, the rate-setting recitals that OHA cites in support of its arguments, *see* ECF 507 at 17, 26, are all found in Paragraph 1 and are thus irrelevant to FamilyCare's rights or expectations under the Contract.[12] Murray Decl. Ex. 10 at 4.

> **b.** **The express terms of the Settlement Agreement reflect OHA's commitment to set rates in good faith, and therefore *support* FamilyCare's claim.**

While the recitals OHA cites do not affect FamilyCare's expectations under the Contract, the full text of the Settlement Agreement underscores OHA's commitment (and FamilyCare's reasonable expectation) that OHA would set rates in good faith.

In the "Future Rate Amendments" section, which *does* apply to the rates at issue in this litigation, OHA and FamilyCare agreed, among other things, that they intend "to work in a professional manner to address any concerns regarding rate amendments in the future." Murray Decl., Ex. 10 at 7 ¶ 1. The parties contemplated doing so through a discussion mechanism "to discuss FamilyCare's questions, concerns, and/or objections" with both parties' actuaries, "to resolve the issue(s) as promptly as possible." *Id.* ¶ 2. And OHA expressly agreed "[i]t is *OHA's goal that all CCOs have confidence in the rate-setting process*." *Id.* at 8 ¶ 6 (emphasis added).

Far from erasing FamilyCare's contractual expectations, the Settlement Agreement confirms and is evidence of the parties' reasonable expectation that OHA would act

---

[12] Indeed, the fact that FamilyCare and OHA entered the Settlement Agreement—an extrinsic document pursuant to which OHA agreed to pay FamilyCare funds to care for its members, irrespective of CMS's decision—demonstrates that the parties' dealings (and expectations) were not limited solely by the express terms of the Contract. *See* Murray Decl., Ex. 10 at 5 ¶ 5. ("If CMS does not approve Amendment No. 8, OHA will make a payment to FamilyCare of $2,726,662 using state funds.")

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

professionally and in good faith in the rate-setting process to instill confidence in the CCOs.

>    **B.     FamilyCare is entitled to rely on extra-contractual sources for its expectations because OHA had opportunities to seek discovery, did conduct discovery, and chose not to conduct further discovery.**

The Court requested that the parties address whether "*FamilyCare* [*has*] *pled its claim for breach of the implied covenant of good faith and fair dealing in such a way that it has not brought up new claims or theories. Specifically, is FamilyCare now relying on extra-contractual sources for the good faith obligation that were not previously presented in this case, as to which there has been limited or no discovery, and therefore, the Court should potentially disallow.*"

The answer to the Court's "extracontractual and not previously presented sources" question is "no." The procedural history described above shows that OHA was on notice that extracontractual sources informed FamilyCare's expectations, OHA had ample opportunity to conduct discovery about those sources, and OHA simply chose not to.

OHA argues that FamilyCare has not identified the exact bases for its good faith claim and should be precluded from relying on them now. OHA's position is baseless for at least three reasons.

First, FamilyCare consistently alleged that its expectations were based on, "[*a*]*mong other things* . . . the Contract and applicable law." Gordon Decl., Ex. 24 (Third Am. Compl.) ¶ 148; ECF 111 (Fourth Am. Compl.) ¶ 151; ECF 429 (Fifth Am. Compl.) ¶ 107 (emphasis added). This language and the extensive discussion in the complaint about the parties' history and OHA's conduct is legally sufficient to put OHA on notice that FamilyCare intended to rely on extracontractual sources in connection with its good faith claim to include law and other things. *See Ri Ky Roofing & Sheet Metal, LLC v. DTL Builders, Inc.*, No. 6:17-cv-01592-JR, 2018 WL 1528790, at *2 (D. Or. Feb. 7, 2018) ("[C]ourts generally permit breach of good faith and fair dealing claims to proceed where the plaintiff has alleged facts indicative of conduct that goes beyond that which is reasonably contemplated by the parties' contract—e.g., intentional

misconduct, improper behavior, etc."). In its briefing on reconsideration of the dismissal of the claim (which occurred when discovery was in full swing), and again on appeal to the Ninth Circuit, FamilyCare clarified that, among its other bases, those sources included industry standards and practices. *See* Gordon Decl. Ex. 6 at 6 (Mot. for Reconsideration) (FamilyCare's reasonable contractual expectations were informed by "industry standards and practices" and citing applicable caselaw), Ex. 13 at 3-4 (expectations are informed by "other extrinsic evidence," including "industry standards and practices relevant to the parties' relationship and other evidence in the record developed by the parties," and citing FamilyCare's 30-year history in Oregon's Medicaid market). And, during FamilyCare's organizational deposition, FamilyCare counsel expressly directed OHA to the motion for reconsideration. Gordon Decl. Ex. 8 at 6. OHA was unquestionably on notice that FamilyCare was asserting multiple, extracontractual sources of reasonable expectations under the Contract and had the opportunity to inquire about those sources.[13]

Second, until now, OHA has not sought information about the sources of FamilyCare's reasonable expectations in detail; instead, OHA pursued motion practice to try to defeat this claim. *See, e.g.*, ECF 21 (2018 Mot. to Dismiss), ECF 432 (2021 Mot. to Dismiss). Accordingly, the parties' briefing and argument on the good faith claim has been framed by OHA's motions, which never sought greater exposition as to their bases. FamilyCare cannot be penalized because of OHA's strategic choices.

Third, OHA had every opportunity to get clarification in advance of trial through

---

[13] Although FamilyCare first alleged that OHA breached its duty of good faith by providing untimely rates in the Fifth Amended Complaint, FamilyCare had consistently alleged facts related to OHA's ultimatum and the failure to comply with ORS 414.652 in prior pleadings. *See* Gordon Decl., Ex. 24 (Third Am. Compl.) ¶¶ 72, 88; ECF 111 (Fourth Am. Compl.) ¶¶ 71, 90; ECF 429 (Fifth Am. Compl.) ¶¶ 68, 108. OHA indisputably had reason and opportunity to seek discovery on the timeliness issue.

21-   PLAINTIFF'S OPPOSITION TO OREGON HEALTH AUTHORITY'S MOTION FOR SUMMARY JUDGMENT ON FAMILYCARE'S

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

155457114.10

discovery.  OHA had five months—between when FamilyCare first alleged the good faith claim and when the Court issued its final opinion declining to reconsider dismissal—to seek discovery about FamilyCare's reasonable expectations.  *See* App. 1 (timeline).  And OHA did seek discovery, through document requests and Rule 30(b)(6) notices.[14] *See* Section II.A.1(a) above. OHA could have also issued interrogatories on this issue or pursued this line of questioning in the depositions it took of FamilyCare witnesses but chose not to.  Further, OHA could have alerted FamilyCare and the Court of its desire for more discovery on this issue when the case was remanded with the claim reinstated.  As noted above, OHA *did* attempt to seek additional discovery from FamilyCare (without first requesting permission to do so from this Court) on another subject.  *See* ECF 469; ECF 502.  But OHA made no effort to seek additional discovery on the good faith claim.  The jury should not be deprived of relevant evidence in FamilyCare's case because of OHA's informed choices about discovery.

### C.    Summary judgment is not appropriate because FamilyCare has raised genuine issues of fact as to whether OHA's erroneous, biased, and untimely rate setting violated FamilyCare's objectively reasonable expectations.

Finally, the Court seeks argument about "*whether FamilyCare can actually adduce enough evidence to advance its third claim for relief.*"  FamilyCare has adduced more than sufficient evidence of OHA's bad-faith conduct to submit its claim to the jury.

### 1.    Ample evidence supports sending FamilyCare's good faith claim to the jury.

There is ample evidence that OHA acted in bad faith and in contravention of FamilyCare's reasonable expectations by (1) presenting FamilyCare with rate amendments for 2017 and 2018 that were inadequate, unreasonable, biased, and based on erroneous data and

_____

[14] Because the parties did not label documents as being responsive to specific requests for production, OHA cannot now complain that FamilyCare did not expressly identify which documents informed its reasonable expectations under the Contract.  Every exhibit submitted with the fact witnesses' declarations in support of this brief was produced or exchanged in this case or is publicly available.

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

methodology, and (2) forcing FamilyCare to decide whether to accept the 2018 amendment without giving FamilyCare the required 60 days' notice to consider the amendment and without providing, until after FamilyCare had made that decision, the rates that FamilyCare would have received for 2018 had it not been forced out of business.  ECF 429 ¶¶ 108-09.

### a.    OHA's erroneous and biased rate-setting.

The evidence establishes a triable issue of fact that OHA's rate-setting violated FamilyCare's reasonable expectations under the Contract.  As detailed in the declaration of Peter Davidson (an expert actuary who reviewed the rate-setting process in detail), that process was rife with errors and unsupported decisions that collectively reduced FamilyCare's 2017 and 2018 rates by more than $128 million, substantially increasing the likelihood that the rates would be insufficient to cover the costs of healthcare services required under the Contract.  *See* Davidson Decl. ¶ 3.   Many of these decisions were inconsistent with generally accepted actuarial principles and practices, as well as Actuarial Standards of Practice, federal regulations, and/or sub-regulatory guidance, either because of calculation errors, insufficient supporting analysis, or lack of documentation of analysis.  *Id*. ¶ 9.  The resulting rates were foreseeably and actually insufficient to cover FamilyCare's costs, and the large rate increases in 2019, after FamilyCare was out of the market, appeared to belatedly account for at least some of those insufficiencies. *Id.* ¶ 12. Two of the most egregious decisions and errors are discussed below: OHA's so-called "reimbursement policy" to penalize FamilyCare for its primary care emphasis, and the unsupported decision to reduce medical cost trends.[15]

---

[15] Prior rulings in this case on actuarial soundness have at most a limited impact on FamilyCare's implied covenant claim, as FamilyCare's reasonable expectations go beyond mere CMS approval of rates as actuarially sound.  *See* ECF 452 at 28-30 (explaining that FamilyCare's objectively reasonable expectations are not dependent on actuarial soundness).  CMS approval does not signify, for example, that the rates were set without bias, based on data and assumptions that were not erroneous, set lower than they otherwise would have but for anti-FamilyCare animus, or that they were in fact adequate to reimburse FamilyCare for the cost of providing services.  *Id.* Moreover, CMS relies on the information provided by Optumas and OHA, and that information

>           **(i)   OHA imposed a "reimbursement policy" in bad faith**
>                  **that substantially reduced FamilyCare's rates.**

There is overwhelming evidence that OHA acted in bad faith and violated FamilyCare's reasonable expectations by implementing a "reimbursement policy" to make disproportionate cuts to FamilyCare's base data for the 2017 and 2018 rates, reducing FamilyCare's rates to unsustainable levels.  Under the guise of controlling the spending of CCOs with an "excessive" rate of growth in medical expenditures, OHA implemented a policy that disallowed tens of millions of dollars of FamilyCare's primary-care-related costs—the same expenditures that OHA had previously praised as being a "promising practice."  The policy targeted FamilyCare in both conception and execution and was based on a plainly flawed methodology.

First, the reimbursement policy, which "unfairly and improperly penalized FamilyCare," Davidson Decl. at ¶ 17(d), was flawed and biased from its inception, as OHA justified the cuts based on FamilyCare's purported high rate of cost growth, which OHA generated by using an inappropriate, non-standard methodology.  OHA's policy was based on measured increases in historical cost data, that, contrary to standard actuarial practice, failed to account for changes in member risk over the relevant period and was thus uninformative as to whether FamilyCare's measured cost increase resulted from FamilyCare's business decisions or from riskier members. *Id.* ¶ 9(c).  And had risk been appropriately considered, FamilyCare's rate of growth, which reflected a significant deterioration of health risk, would have been below the threshold OHA set for cuts. *Id.*

Second, the reimbursement policy's application to FamilyCare directly contradicted OHA's prior statements about primary care.  As noted, OHA had consistently encouraged investments in primary care, emphasizing it as a cornerstone of the CCO model generally and

---

included misrepresentations about how the rates were developed.  *See* Novak Decl. ¶¶ 5-7; Davidson Decl. ¶¶ 14, 18, & 20.  And, as discussed in Section II.B.2 above, CMS did not even approve the 2018 rates offered to FamilyCare.

PLAINTIFF'S OPPOSITION TO OREGON HEALTH AUTHORITY'S
24-   MOTION FOR SUMMARY JUDGMENT ON FAMILYCARE'S

155457114.10

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

specifically touting FamilyCare's decision to increase primary care reimbursement.  *See* Section IV(A)(2)(b).  As a result, and consistent with OHA's rhetoric about CCOs having maximum flexibility under the global budget, FamilyCare increased reimbursement to primary care providers to ensure that its members had access to care, in line with research showing that such increased access led to better health and saved money overall.  Gordon Decl., Ex. 21. FamilyCare informed OHA of that decision, and OHA praised it as "promising"—an "innovation[] which ultimately will help improve health and lower costs over time," Murray Decl.  ¶ 18, Ex. 5 at 44 —precisely what the CCO model and global budget concept were meant to achieve.  But in developing the 2017 and 2018 rates, OHA directed Optumas to penalize FamilyCare's decision to increase primary care reimbursements under an unprecedented "reimbursement policy," cutting those increased amounts from FamilyCare's base data to significantly reduce FamilyCare's rates for both years, contrary to FamilyCare's expectations based on OHA's representations about primary care.  Murray Decl. ¶ 18 Davidson Decl.  ¶ 9.c.

Third, while OHA reduced some other CCOs' base data, OHA made deeper cuts to FamilyCare's base data than to any other CCO.  After the first round of cuts to the data used for 2017 rates, which included more than $16 million from FamilyCare's reported financials, Optumas told OHA that "[w]ithout further policy decisions being made, we consider the current adjusted figures as the expenditures we would use as our draft base data."  ECF 227-12 at 1, Gordon Decl., Ex.  25.   Yet, at OHA's direction, more rounds of cuts followed, including a final round that targeted only FamilyCare and lacked any justification—as OHA admitted in its organizational deposition, the final cut had an insignificant effect on the statewide rate of growth. *See* Gordon Decl., Ex.  22 at 9-10; ECF 227-13, 227-14, 227-15, 227-16. When the dust settled, OHA had cut more than $34 million from FamilyCare's reported financials— $16 million more than the amount cut from any other CCO.  This targeting of FamilyCare occurred despite that, even under OHA's flawed calculation, two other CCOs had higher apparent rates of growth.

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

ECF 222-15, 227-16.

OHA carried the same punitive reimbursement policy into the 2018 rate-setting process, again penalizing FamilyCare for innovation it had previously praised and again choosing an improper methodology to portray FamilyCare as an outlier. But this time, OHA's methodology was even more transparently flawed and biased against FamilyCare. When OHA calculated the rate of growth from 2015 to 2016 (for use in setting the 2018 rates, *see* Gordon Decl. Ex. 26), OHA ignored FamilyCare's actual 2015 costs and instead used artificial cost data that was $34 million lower, corresponding to OHA's cuts of that magnitude from FamilyCare's expenditures. Of course, artificially reducing the 2015 cost data by $34 million resulted in an artificially high rate of growth from 2015-2016. Gordon Decl., Ex. 22 at 2-6. Because OHA had removed far more from FamilyCare's 2015 base data than from any other CCO, this decision had the largest impact on FamilyCare. And because OHA decided which CCOs' 2016 base data to cut based on the rates of growth it calculated, *id.* Ex. 26, OHA's decision to calculate a misleading rate of growth for FamilyCare ensured that FamilyCare would be above OHA's threshold, so that OHA could justify similar cuts to FamilyCare's 2018 rates.

### (ii)    OHA made unsupported and inaccurate medical trend assumptions.

Actuaries use a concept called "trend" to project changes in costs and utilization of medical services in an upcoming period of time. Actuaries typically choose a trend figure based on historical data regarding the cost and utilization of medical services, but in setting FamilyCare's rates, OHA and Optumas chose trend figures significantly lower than historical data suggested, depressing FamilyCare's rates by $21.6 million in 2017 and $18.2 million in 2018, without explaining or justifying such a downward departure. Davidson Decl. ¶ 9.b and Table 1. And without reasoned explanation, it was foreseeable and reasonably likely that the projected trends would result in rates that were insufficient to cover FamilyCare's costs in 2017

PLAINTIFF'S OPPOSITION TO OREGON HEALTH AUTHORITY'S MOTION FOR SUMMARY JUDGMENT ON FAMILYCARE'S

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

155457114.10

and 2018. *Id.* at 18. [16]

There is at minimum a genuine issue of material fact as to whether these trend-related shortcomings violated FamilyCare's reasonable expectations under the Contract. *See* Murray Decl. at ¶¶ 5-6, 17, 21, 24 (stating that FamilyCare relied on OHA's communications and conduct in its expectation that OHA would provide annual rate amendments that were, among other things, free of errors in underlying data and methodology that would prejudice the CCOs providing Medicaid services.).

> **(iii)    The Communications Plan provides additional circumstantial evidence of OHA's erroneous, biased, and unreasonable capitation rate-setting.**

OHA's ill-conceived, covert communications plan provides further evidence that OHA acted in bad faith. The plan was developed and implemented in secret at the highest levels of OHA to "hurt [the] credibility" of FamilyCare by portraying it as an "outlier" that was "more concerned with the bottom line and increasing revenues than the health of Oregonians." Gordon Decl., Ex. 27 at 4-7. OHA disparaged FamilyCare by "pitching reporters" on inaccurate financial information about FamilyCare and by "target[ing]" legislators, by covertly spreading disparaging comments through "off the record" discussions with the news media, and by using "legislators and/or other lobbyists to pitch stories to news media if possible so that OHA can staff [sic] neutral."[17] *Id.* at 4-5.

The communications plan is relevant evidence of OHA's breaches of the implied

---

[16] Moreover, Optumas and OHA were not candid in their representations to CMS about the trend methodology, Davidson Decl. at ¶¶ 14, 18, 20, and as a result, CMS relied on misrepresentations when reviewing the rate submissions.

[17] Contrary to what OHA has argued throughout this case, the evidence confirms that OHA implemented the plan by, among other things, following through on the plan's stated "strateg[y]" to "pitch[] reporters" with false and misleading information about FamilyCare. *See*, *e.g.*, Gordon Decl., Ex. 28 (correspondence by OHA to specific reports identified by name in the plan); Ex. 17 at 1 (OHA correspondence stating the plan was not "*fully*" implemented (emphasis added)).

27- PLAINTIFF'S OPPOSITION TO OREGON HEALTH AUTHORITY'S
MOTION FOR SUMMARY JUDGMENT ON FAMILYCARE'S

155457114.10

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

covenant for at least two reasons.  First, it indisputably shows an anti-FamilyCare animus and bias and that OHA acted secretively—contrary to legal requirements for and OHA's repeated promises of transparency, *see supra* Section IV.A.2.a—to further its anti-FamilyCare ends, using information that FamilyCare provided to OHA in good faith to further collaborative rate-setting discussions required by contract.  *See Best*, 303 Or. at 564 (defendant "would have performed in bad faith if, for example, it had rejected a transfer in order to retaliate against the distributor for some reason").  Second, the stated purpose of the communications plan was to undermine FamilyCare's credibility with the Legislature, the media, and the public.  And that was important to OHA because FamilyCare was airing to those audiences its grievances about its substandard rates and OHA wanted those constituencies to believe FamilyCare's rates were appropriate, and that FamilyCare was not credible.  A jury could easily conclude that OHA sought to undermine FamilyCare's credibility precisely to ensure that FamilyCare's advocacy would not result in legislative or media scrutiny that might reveal those problems.  The communications plan thus shows the lengths to which OHA and Ms. Saxton were willing to go to prevent FamilyCare from getting the fair, accurate rates it was entitled to.

        **b.**        **Evidence of OHA's failure to provide timely and complete rates.**

The evidence is sufficient for a jury to find that OHA acted in bad faith when it failed to present FamilyCare with a timely rate amendment for 2018 and instead arbitrarily moved up the deadline for FamilyCare to accept or reject OHA's admittedly faulty and incomplete rates.  As noted, FamilyCare reasonably expected that OHA would comply with the law by providing it with its actual 2018 rates at least 60 days in advance of the deadline to accept the amendment. *Former* ORS 414.652(4) (2015).  *See* Section IV.A.2.[18]  Instead, OHA only provided

_____

[18] OHA incorrectly argues that good faith does not apply because compliance with the 60-day requirement in former ORS 414.652 (2015) is an express, rather than implied contract term.  *See* ECF 507 at 30.  But the Contract does not expressly reference ORS 414.652, and although the

28-  PLAINTIFF'S OPPOSITION TO OREGON HEALTH AUTHORITY'S MOTION FOR SUMMARY JUDGMENT ON FAMILYCARE'S

155457114.10

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

preliminary, admittedly incorrect rates before the end of 2018, and provided FamilyCare with the rates it would have actually received in 2018 *after* OHA had already forced FamilyCare to decide whether it would accept the inaccurate rates initially offered by OHA, foreclosed revisitation of the issue, and FamilyCare had transitioned its members to other CCOs. OHA's actions were in bad faith and contrary to objectively reasonable expectations under the Contract.

OHA provided FamilyCare with the tentative 2018 rates on October 31, 2017,[19] specifically noting that the rates "may change" based on the outcome of, among other things, a "redetermination analysis"[20] that was to be completed by late November. Murray Decl. ¶ 33. Ex. 14. In December, OHA notified CCOs that the redetermination analysis was still ongoing, admitting that the analysis and unspecified "other emerging issues" could "materially affect rates" for 2018. Murray Decl. ¶ 30, Ex. 13. On December 15, FamilyCare met with Allen and OHA Chief Financial Officer Laura Robison to discuss corrections to the rates. Murray Decl.

---

Contract does refer to a 60-day notice period for certain amendments, the Contract does not specify whether those amendments include the yearly contract amendments, which are governed by ORS 414.652. *Compare* Gordon Decl., Ex. 10 (2017 Contract) at 148 ("OHA will send to Contractor *the necessary* Contract amendments no later than 60 days before the proposed effective date of the amendment." (Emphasis added.)) *with* former ORS 414.652(4) (2015) ("[OHA] must give a coordinated care organization at least 60 days' advance notice *of any amendments* [OHA] proposes to existing contracts between [OHA] and the coordinated care organization, or to contracts to be renewed, including the global budget paid to the coordinated care organization under the contract." (Emphasis added.)). Moreover, the fact that the Contract expressly provides for a 60-day notice period for *certain* amendments actually bolsters FamilyCare's reasonable expectation that OHA would provide the same notice period for all contract amendments, including those governed by ORS 414.652.

[19] OHA previously argued that it *complied* with former ORS 414.652 (2015) by offering FamilyCare preliminary (and incorrect) rates 61 days before the December 31 deadline. *See* ECF 432 at 22. OHA has conspicuously dropped its earlier argument, effectively conceding that it did not comply with the statute.

[20] The "redetermination" on which the final 2018 rates hinged was necessary to correct errors that FamilyCare had previously brought to OHA's attention—namely that, because OHA had removed from Medicaid thousands of relatively healthier people, the 2018 rates would be insufficient to cover the cost of health care for the relatively sicker people who remained in Medicaid. *See* Murray Decl. ¶ 33.

29-    PLAINTIFF'S OPPOSITION TO OREGON HEALTH AUTHORITY'S
MOTION FOR SUMMARY JUDGMENT ON FAMILYCARE'S

155457114.10

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

¶ 35.  In advance, FamilyCare provided detailed information about how correcting the identified errors would impact FamilyCare's 2018 rates and permit it to stay in business.  *Id.* The next day, Robison and Allen informed FamilyCare that OHA would furnish only "preliminary results" of its redetermination analysis and its investigation of other issues affecting the 2018 rates by December 29—the last business day of the year to sign the 2018 amendment—and made clear that OHA would "not be in a position to commit to FamilyCare by Dec.  29" what the actual rates for 2018 would be.  *Id.*

On December 20, OHA and FamilyCare were set to meet to continue discussing issues affecting FamilyCare's 2018 rates.  *Id.* ¶ 36.  Instead, and despite having failed to provide any of the promised analyses, Allen demanded that FamilyCare notify OHA by noon the following day whether FamilyCare would sign the 2018 rate amendment.  *Id.* When FamilyCare asked OHA to provide the promised rate analysis in time to allow FamilyCare to analyze it before deciding whether to accept the 2018 amendment, Allen refused, telling FamilyCare that OHA would not provide more information before the new signing deadline and that OHA was implementing a transition plan to move FamilyCare's members and providers to other CCOs.  *Id.*

Unable to agree to tentative rates (which were inadequate to cover the anticipated costs of health care services for its members), and lacking information about what rates it would actually receive in 2018 upon the correction of the acknowledged data errors, FamilyCare did not sign the 2018 rate amendment on December 21, as demanded by Allen.  *Id.*  Instead, FamilyCare and OHA agreed to a one-month amendment to provide FamilyCare's members with time to transition to other CCOs.  Gordon Decl., Ex. 29. The one-month amendment included a clause, inserted by OHA, stating that "[t]he parties do not intend to extend this Contract," ensuring that FamilyCare would be unable to continue as a CCO even if the errors it had identified were corrected and the 2018 rates were amended accordingly.  *Id.* at 8; *see also* Murray Decl.  ¶ 43.

At 4:54 PM on December 29—with six minutes left in the last business day of the year—

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

OHA emailed a "Preliminary Redetermination Analysis" to FamilyCare confirming that the agency's rate-setting process had indeed been materially diminished by data errors identified by FamilyCare. Murray Decl. ¶ 37. Then, in February 2018, after FamilyCare's one-month contract had expired and its members had been disenrolled and transitioned to other CCOs, OHA announced that, because of the redetermination analysis and the correction of other errors identified by FamilyCare, OHA would retroactively amend and significantly increase the 2018 rates. *See* Gordon Decl., Exs. 30, 31; *see also* Murray Decl. ¶¶ 36-37. As a result, FamilyCare would have received tens of millions more than OHA had initially and incorrectly offered to it in the fall of 2017. *See* Murray Decl. ¶ 43.[21]

This evidence conclusively demonstrates that OHA did not timely present FamilyCare with its actual 2018 rates, and that OHA ensured FamilyCare would have to decide whether to accept preliminary rates without the benefit of knowing what its final rates would be. Viewing this evidence in the light most favorable to FamilyCare, a jury could find that OHA's actions were in bad faith and intended to prematurely end FamilyCare's Contract, thus depriving it of the benefit of that agreement.

> **c.    OHA's bad faith breaches damaged FamilyCare.**

OHA's bad faith rate-setting and untimely rate amendments damaged FamilyCare.

First, the evidence shows that OHA's faulty and biased rate-setting collectively reduced FamilyCare's 2017 and 2018 rates by more than $128 million. *See* Davidson Decl. ¶ 3. Thus, there is a triable issue of fact as to whether OHA's bad faith rate-setting deprived FamilyCare of tens of millions of dollars to which it was entitled and ultimately forced FamilyCare from the Medicaid market by making it impossible for FamilyCare to cover the costs of healthcare services for its members under the Contract.

---

[21] In 2019, OHA significantly increased rates in FamilyCare's region, particularly for the rate groups that were overrepresented in FamilyCare's membership. Davidson Decl. ¶ 12.

31-   PLAINTIFF'S OPPOSITION TO OREGON HEALTH AUTHORITY'S
MOTION FOR SUMMARY JUDGMENT ON FAMILYCARE'S

155457114.10

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Moreover, as noted, the revised 2018 rates were tens of millions more than OHA originally and erroneously offered to FamilyCare in the fall of 2017. *See* Murray Decl. ¶ 43. Had OHA timely provided FamilyCare with these final rates for 2018—which OHA presented only *after* FamilyCare had already closed its doors, and only *after* OHA made sure that FamilyCare could not re-enter the Medicaid market via express language in the parties' one-month contract—FamilyCare would have been able to consider whether those rates would have allowed FamilyCare to stay in business. *See id.* But OHA's actions required FamilyCare to make the difficult but fiscally responsible decision to shut FamilyCare down to effect an orderly transition of its members.

OHA inaccurately argues that, even if it did violate its duty of good faith and fair dealing by failing to provide FamilyCare with a timely rate amendment for 2018, that violation did not damage FamilyCare because its board of directors had already voted to reject the 2018 contract by the time of Allen's ultimatum. Although FamilyCare's Board voted to reject the 2018 contract on December 14, that action was neither surprising nor conclusive. OHA had offered FamilyCare only preliminary (and faulty) rates for 2018 that would bankrupt the company and were in the process of being revised by OHA. *See* Murray Decl. ¶¶ 33-34 and 36. FamilyCare could not accept those rates but, as the Board knew, FamilyCare was assiduously working to obtain new rates from OHA, or at least a preliminary analysis as to how they would be revised. *Id.* ¶ 39. After the vote and before OHA abruptly ended the conversation on December 20, the parties continued active discussions to figure out what rates OHA would actually offer FamilyCare for 2018, once corrected. *Id.* ¶¶ 35, 39-42. This demonstrates that the Board's action was to plan for a transition *in the event that* OHA and FamilyCare could not resolve their dispute. If the Board decision was conclusive, as OHA incorrectly suggests, FamilyCare would have had no reason to continue discussions with OHA about 2018 rates up to the moment of the ultimatum. *See id.* ¶¶ 40-42.

32-   PLAINTIFF'S OPPOSITION TO OREGON HEALTH AUTHORITY'S
MOTION FOR SUMMARY JUDGMENT ON FAMILYCARE'S

155457114.10

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

### 2.    FamilyCare's expectations were not contrary to the Contract.

As noted, whether a party violated another party's reasonable expectations is a question of fact unless the parties' expectations were contrary to the express terms of the contract. *See Container Recovery*, 2007 WL 1724937; *Helicopter Transp.*, 448 F. Supp. 3d at 1141.

OHA cannot shoehorn FamilyCare's claim into this narrow exception by arguing that FamilyCare's only reasonable expectations under the Contract were that OHA would "actuarially set" and certify the rates and submit them to CMS for approval. ECF 507 at 24.[22] OHA claims that FamilyCare's expectation of accurate, unbiased, timely, and sound rates would undermine or are somehow contrary to the purpose of the Contract. Although OHA is careful to avoid using the term "bad faith" in its brief, OHA's fundamental position is effectively that it can act in bad faith by setting biased, unreasonable, and untimely rates so long as the rates are actuarially set and submitted to CMS. OHA's argument is without support even in its governing statute which, as noted above, requires consideration of reasonable costs and other defined aspects of care delivery, not to mention transparency and public scrutiny of the relations between OHA and the CCOs. It also turns decades of Oregon jurisprudence on the implied covenant on its head.

OHA has not and cannot point to any provision in the Contract that even suggests that the parties intended to allow OHA to act in a biased, vindictive way and use its authority under the Contract to bankrupt FamilyCare or wrongfully deprive it of the benefits of its five-year Contract. *See Jones v. George Fox Univ.*, No. 3:19-CV-0005-JR, 2021 WL 1414280, at *7 (D. Or. Feb. 3, 2021), *report and recommendation adopted*, 2021 WL 1414202 (D. Or. Apr. 14, 2021) (upholding claim for breach of implied covenant against university where the contract allowed the university to take remedial action against student but "did not expressly permit" the university to do so unlawfully, with "discriminatory or retaliatory intent"). Nor is there anything in the Contract that expressly governs how OHA must set rates. Because OHA is given

---

[22] As noted, this Court has already rejected that argument. *See* ECF 495 at 9.

33-    PLAINTIFF'S OPPOSITION TO OREGON HEALTH AUTHORITY'S MOTION FOR SUMMARY JUDGMENT ON FAMILYCARE'S

155457114.10

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

discretion in the rate-setting process, OHA is bound to exercise that discretion in good faith. *See Best*, 303 Or. at 563 ("When one party to a contract is given discretion in the performance of some aspect of the contract, the parties ordinarily contemplate that that discretion will be exercised for particular purposes. If the discretion is exercised for purposes not contemplated by the parties, the party exercising discretion has performed in bad faith.").[23]

OHA instead relies on the inapposite decision in *Oregon Univ. Sys. (OUS) v. Oregon Pub. Emps. Union, Loc. 503,* 185 Or. App. 506, 60 P.3d 567 (2002). There, a union sought judicial review of a state agency ruling finding that the union committed an unfair labor practice when it sent email communications in violation of its alleged implied duties under a collective bargaining agreement. After concluding that the agreement contained no express provision addressing the use of email, the Court considered whether the union nevertheless violated an implied duty to refrain from sending email communications. The Court held that no such duty existed because the issue of email communications was unrelated to the subject of the agreement, which instead focused on the union's rights to manage its workforce. *See id.* at 516-17. The Court held that it was therefore unnecessary to "imply a prohibition against e-mail communication between" the union and its members because doing so would not "enforce the parties' 'agreed common purpose' and their 'justified expectations' under the CBA."). *Id.* at 518.

*OUS* is inapplicable because FamilyCare is not seeking to imply a duty related to some tangential aspect of the Contract. Rather, the issue is whether OHA exercised its rate-setting

---

[23] OHA's citation to *Zygar v. Johnson*, 169 Or. App. 638, 10 P.3d 638 (2000) does not assist it. In *Zygar*, the buyer backed out of a home purchase after the inspection revealed water damage. The seller argued the buyer acted in bad faith because the real reason for the repudiation was that the buyer's fiancée disapproved of the purchase. The court affirmed summary judgment for the buyer, because buyer's dissatisfaction with the condition of the home as described in the report was undisputed, and therefore it was immaterial if the buyer also relied on "additional reasons [such as his fiancée's opinion] for terminating the contract." *Id.* at 648.

PLAINTIFF'S OPPOSITION TO OREGON HEALTH AUTHORITY'S MOTION FOR SUMMARY JUDGMENT ON FAMILYCARE'S

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

155457114.10

discretion, a central facet of the Contract, in a way that violates FamilyCare's objectively reasonable expectations and deprives FamilyCare of the benefits of the Contract. Moreover, the purpose of the Contract was completely frustrated by OHA's bad-faith, inadequate, error-riven, untimely and otherwise improper rate-setting. The purpose of the Contract is not merely for OHA to set rates and submit them to CMS, as OHA claims. *See* ECF 507 at 26. Rather, as discussed above in section IV.A.2(a) above, the CCO contract was intended to account for the CCO's reasonable costs and foster innovative delivery of healthcare services to Medicaid beneficiaries for the duration of the five-year contract term. FamilyCare's expectation that OHA would set rates that are reasonable, adequate, and unbiased is therefore fully consistent with and absolutely necessary to effectuate those purposes.[24]

OHA acted in bad faith when it caused FamilyCare to forfeit its Contract rights and drove it from business through rate-setting. *See* Murray Decl. ¶¶ 39-43.

## V.    CONCLUSION

Based on the foregoing, the Court should deny OHA's motion for summary judgment.

---

[24] OHA also argues that allowing FamilyCare's claim to proceed will somehow create conflicting standards of review and decisions because OHA will be accountable "to both CMS and FamilyCare for rates." ECF 507 at 26. But the same argument has already been rejected by the Ninth Circuit in connection with OHA's claim for declaratory relief. *See Allen*, 812 F. App'x at 418 ("Congress purposefully structured Medicaid as a cooperative endeavor between the federal government and the governments of individual states, and that structure plainly requires state regulation; thus, Congress plainly did not intend to foreclose state action in the Medicaid field."). In any event, no such conflict would exist because CMS never approved the rates offered to FamilyCare for 2018.

35-    PLAINTIFF'S OPPOSITION TO OREGON HEALTH AUTHORITY'S MOTION FOR SUMMARY JUDGMENT ON FAMILYCARE'S

155457114.10

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

DATED:  January 14, 2021 **PERKINS COIE LLP**

By: *s/ Matthew P. Gordon*
**Stephen F. English**, OSB No. 730843
SEnglish@perkinscoie.com
**Thomas R. Johnson** (OSB No. 010645)
TRJohnson@perkinscoie.com
**Matthew J. Mertens** (OSB No. 146288)
MMertens@perkinscoie.com
**Sasha Petrova** (OSB No.  154008)
SPetrova@perkinscoie.com
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Telephone:      503.727.2000
Facsimile:      503.727.2222

**Matthew P. Gordon** (admitted *pro hac vice*)
MGordon@perkinscoie.com
**David B. Robbins** (OSB No. 070630)
DRobbins@perkinscoie.com
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Telephone:      206.359.8000
Facsimile:      206.359.9000

*Attorneys for Plaintiff FamilyCare, Inc.*

36-   PLAINTIFF'S OPPOSITION TO OREGON HEALTH AUTHORITY'S
MOTION FOR SUMMARY JUDGMENT ON FAMILYCARE'S

155457114.10

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222