**Stephen F. English** (OSB No. 730843)
SEnglish@perkinscoie.com
**Thomas R. Johnson** (OSB No. 010645)
TRJohnson@perkinscoie.com
**Matthew J. Mertens** (OSB No. 146288)
MMertens@perkinscoie.com
**Sasha Petrova** (OSB No. 154008)
SPetrova@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Telephone: 503.727.2000
Facsimile:  503.727.2222

**Matthew P. Gordon** (admitted *pro hac vice*)
MGordon@perkinscoie.com
**David B. Robbins** (OSB No. 070630)
DRobbins@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Telephone: 206.359.8000
Facsimile:  206.359.9000

*Attorneys for Plaintiff FamilyCare, Inc.*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **FAMILYCARE, INC.**, an Oregon non-profit corporation,<br><br>               Plaintiff,<br><br>    v.<br><br>**OREGON HEALTH AUTHORITY**, an agency of the State of Oregon, and **LYNNE SAXTON**,<br><br>               Defendants. | Case No. 6:18-cv-00296-MO<br><br>**DECLARATION OF JEFF HEATHERINGTON IN SUPPORT OF FAMILYCARE'S OPPOSITION TO OHA'S MOTION FOR SUMMARY JUDGMENT** |

153826749.2   DECLARATION OF JEFF HEATHERINGTON

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

123045.0001\155501752.1

I, Jeff Heatherington, declare as follows:

1.     I am the chief executive officer of FamilyCare, Inc. ("FamilyCare"), a position I have held since FamilyCare's founding in 1984.  I make this declaration based on my personal knowledge and am competent to testify to the matters herein.

2.     From its founding as a nonprofit, FamilyCare has been committed to keeping our communities in Oregon healthy and to serve the medical and other health care needs of Oregonians, regardless of their socioeconomic status. FamilyCare is what is known in the health care industry as a Medicaid "managed care organization" or "MCO," and what has become known in Oregon as a Medicaid "coordinated care organization" or "CCO."  For approximately thirty-three (33) years, from 1985 until early 2018, FamilyCare has managed and coordinated health care service delivery to beneficiaries of the Oregon Medicaid program.  In that period, FamilyCare grew to become the second-largest CCO in Oregon, managing and coordinating integrated physical, mental, and dental health services for more than 120,000 Oregon Health Plan ("OHP") members in the Tri-County area and in Marion County.  This management and care coordination meant contracting and working closely with health care providers to emphasize prompt patient access to case and evidence-based interventions and treatments and with patients to obtain care from appropriately expert providers in settings well-suited to delivery of needed and effective diagnoses, treatment, and preventive care.

3.     FamilyCare's model has prided itself on implementing key innovations to foster and deliver an efficient, timely, and holistic approach to member health care that emphasized both preventative as well as remedial care.

a.     Even before the advent of OHP in 1995, FamilyCare successfully developed capitated payment models for physician and hospital services on behalf of FamilyCare's members, making it easier for physicians to get paid and easier for members to access care.  When the CCO model was implemented in 2013, FamilyCare created a unique delivery system of fully integrated service teams—our slogan was "one call does it all"— to give

1-      DECLARATION OF JEFF HEATHERINGTON

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

123045.0001\155501752.1

both providers and FamilyCare's patients a streamlined system where they could get all the services they needed with just one phone call. In more traditional models, the customer service department are balkanized, with different personnel in charge of addressing provider issues (and separated further among medical, dental, and behavioral health care), customer concerns, treatment options, financing issues and the like.  FamilyCare integrated these services into teams to address the needs of the member or patient as a whole, so that coordination of the patient's care was a one-stop affair and could be more efficiently and effectively managed.

b.      FamilyCare also took a fully integrated approach to member physical and behavioral health care, knitting together a member's primary care providers with that member's behavioral health providers to allow for more holistic care.

c.      Finally, FamilyCare raised its reimbursement rates to the same level as commercial insurers, thus guaranteeing equitable access to primary care services, including behavioral care. Because primary care services are time-based, FamilyCare was very cognizant that patients get time and attention commensurate with the reimbursement rate paid.  By matching reimbursement rates up to the commercial level, FamilyCare's patients were guaranteed the same access to primary care that the general population enjoys. In seeking to eliminate the disparity in care based on the level of provider payment, FamilyCare was a pioneer in improving  member health and reducing costs of overall care by allowing Medicaid members to have prompt access to needed and preventative care from a roster of the best practitioners available.  The investment in higher reimbursement rates for primary care providers counteracted historical practitioner unwillingness to see Medicaid beneficiaries because Medicaid typically paid so poorly for the services required, especially mental health services.  Timely access to primary care services not only benefitted the patient, but lowered the use of more costly emergency services in favor of lower-cost preventative care—an essential tool in reducing medical expenditures, as the OHA has acknowledged for years.  And before undertaking their

2-      DECLARATION OF JEFF HEATHERINGTON

123045.0001\155501752.1

destructive behavior that led to the filing of this lawsuit, OHA recognized the value and success of FamilyCare's pioneering efforts.

4.    I have been involved on FamilyCare's behalf in negotiating Medicaid contracts with OHA since 1985. Between 1985 and 2014, when FamilyCare entered the five-year contract with OHA ("Contract"), negotiations with OHA were collaborative, straightforward, and above all else transparent.  OHA gave the MCOs all the relevant rate-setting data, including individual MCO cost and utilization data, risk scores, and adjustments.  The MCOs and OHA were partners in the rate-setting process.  When there were disagreements about the rates for a given rating year—sometimes involving just a few MCOs, and sometimes all of us—OHA and the MCOs worked together to resolve them.  MCOs sometimes disagreed with OHA about what the rate-setting numbers *meant*, but we always knew *how* OHA had derived those numbers.

5.    FamilyCare had hundreds or even thousands of interactions with OHA in which we discussed, corresponded, and otherwise communicated to promote and ensure OHA's accurate accounting for historical MCO costs, and the sufficiency of projected rates for forthcoming time periods to ensure that the rates would be expected to cover reasonable costs of services to be provided and administrative costs to be incurred.

6.    My 30 years' experience negotiating Medicaid contracts with OHA and rate-setting-related interactions were always open, transparent, and mutually cooperative. This changed dramatically in 2015, when FamilyCare and the other CCOs challenged OHA's original 2015 rates, and CMS rejected them.  The redeveloped 2015 rates resulted in a further 20% decrease in FamilyCare's reimbursement compared with 2014.  Thereafter, OHA kept FamilyCare in the dark about the specifics of the rate-setting process and refused to show FamilyCare the meaningful data underlying OHA's rate calculations.  Their first refusal to share critical data was stated as a protection of the State's own "trade secrets." When the legislature challenged this concept, OHA then solicited the other CCOs to raise their own trade secret

3-        DECLARATION OF JEFF HEATHERINGTON

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

123045.0001\155501752.1

objections to sharing data with FamilyCare. This was a marked departure from OHA's historical transparency in rate-related interactions with FamilyCare from 1985 to 2015.

7.      I have reviewed the declaration of Bill Murray, filed contemporaneously, and Mr. Murray's statements regarding FamilyCare's process of negotiating the Contract with OHA, FamilyCare's reasonable expectancies under the Contract and the bases therefor, and FamilyCare's attempts to pursue "dual track" discussions with OHA in December 2017 to simultaneously try to obtain corrected 2018 rates and plan for a possible transition of FamilyCare's members are consistent with my experiences as FamilyCare CEO.  Like Mr. Murray, I was personally involved in these events, and his statements regarding them are true and accurate.

*I hereby declare that the above statement is true to the best of my knowledge and belief, and that I understand it is made for use as evidence in court and is subject to penalty for perjury.*

DATED: January 14, 2022                          */s/ Jeff Heatherington*
                                                Jeff Heatherington

4-          DECLARATION OF JEFF HEATHERINGTON

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

123045.0001\155501752.1