**Stephen F. English** (OSB No. 730843)
SEnglish@perkinscoie.com
**Thomas R. Johnson** (OSB No. 010645)
TRJohnson@perkinscoie.com
**Matthew J. Mertens** (OSB No. 146288)
MMertens@perkinscoie.com
**Sasha Petrova** (OSB No. 154008)
SPetrova@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Telephone: 503.727.2000
Facsimile:  503.727.2222

**Matthew P. Gordon** (admitted *pro hac vice*)
MGordon@perkinscoie.com
**David B. Robbins** (OSB No. 070630)
DRobbins@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Telephone: 206.359.8000
Facsimile:  206.359.9000

*Attorneys for Plaintiff FamilyCare, Inc.*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **FAMILYCARE, INC.**, an Oregon non-profit corporation,<br><br>            Plaintiff,<br><br>    v.<br><br>**OREGON HEALTH AUTHORITY**, an agency of the State of Oregon, and **LYNNE SAXTON**,<br><br>            Defendants. | Case No. 6:18−cv−00296−MO<br><br><br>**DECLARATION OF PETER DAVIDSON IN SUPPORT OF FAMILYCARE, INC.'S RESPONSE TO OHA'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

DECLARATION OF PETER DAVIDSON

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

I, Peter Davidson, declare as follows:

1.      I am over 18 years of age, and I make this declaration based on my personal knowledge and professional opinion and am competent to testify to the matters herein.

2.      I have been engaged by counsel for FamilyCare, Inc. to opine about the development of FamilyCare's 2017 and 2018 capitation rates by the Oregon Health Authority ("OHA") and Optumas, OHA's contracted actuary.  My review of the development of FamilyCare's 2017 and 2018 capitation rates included examining data, information, assumptions and policies provided by OHA to Optumas, which Optumas relied on without assuming responsibility, in developing the capitation rates.  It also encompassed a review of the information Optumas and OHA provided to the Center for Medicare & Medicaid Services ("CMS").

3.      As explained below, it is my professional opinion that OHA and Optumas made numerous decisions and errors related to the development of the rates offered to FamilyCare for 2017 and 2018 that collectively had the effect of reducing FamilyCare's rates by at least $128.7 million and substantially increased the likelihood that the rates paid to FamilyCare would be insufficient to cover its costs.

4.      I am a Managing Director in the Consulting Solutions practice of PricewaterhouseCoopers LLP ("PwC") in San Francisco.  I am a Fellow of the Society of Actuaries and have over 30 years of industry experience, including more than 20 years working with state Medicaid programs and Medicaid managed care plans.  I lead teams of health actuaries, data analysts, financial experts, policy analysts, strategy consultants, and others to provide a wide variety of services to health insurance companies, health maintenance organizations, federal, state, and local government agencies across the United States.

5.      My expertise lies in the areas of healthcare pricing, modeling, risk analysis, operations, and financial analysis.  I lead PwC's actuarial work with Medicaid-related clients, and over the period 2001 to 2017, I developed and certified actuarially sound capitation rates for

1-      DECLARATION OF PETER DAVIDSON

several state Medicaid programs (Kentucky, Oregon, Utah, Virginia, Wisconsin). I have also been engaged as a consultant to assess capitation rates offered by the states, develop bid rates, and provide other actuarial assistance for Medicaid managed care plans covering more than a dozen state Medicaid programs (including Arizona, California, Florida, Hawaii, Illinois, Indiana, Massachusetts, North Carolina, New Mexico, New York, Oregon, Pennsylvania, Texas, Virginia, Washington, Wisconsin). I have served on a number of Society of Actuaries (SOA) and American Academy of Actuaries (AAA) workgroups, and am currently serving on the SOA's Medicaid Subgroup, the AAA Medicaid Working Group, the SOA Individual/Small Group Subgroup, and the SOA Health Financial Reporting Subgroup.

6.      My curriculum vitae, which is attached as Exhibit A, further describes my professional credentials as well as the last ten years of publications.

7.      My analysis of OHA's and Optumas's process for development of the 2017 and 2018 Oregon coordinated care organization ("CCO") Medicaid capitation rates is based on the application of generally accepted actuarial principles and practices, as reflected in guidance published by the Actuarial Standards Board (ASB) and CMS, and my experience setting capitation rates for state Medicaid programs and reviewing Medicaid rates and rate-setting methodologies on behalf of Medicaid health plans. In performing my analysis, I received and analyzed documents and materials produced by Optumas and OHA in this litigation, as identified in Exhibit B, including various workbooks and rate-setting models utilized by Optumas to develop the rates. My understanding is that I received the full and complete set of Optumas's workpapers for those rate-setting years.

8.      To facilitate comparisons between different versions of rates developed by Optumas and to estimate the impact of certain rate-setting decisions made by Optumas, PwC created a spreadsheet calculation model that allows us to recreate Optumas' rate calculations for 2017 and 2018 using the assumptions applied by Optumas or alternative assumptions. Using this

2-      DECLARATION OF PETER DAVIDSON

model, I was able to estimate the financial effect on FamilyCare's rates of various rate-setting decisions implemented by OHA and Optumas.

9.      As stated above, it is my professional opinion that OHA and Optumas made a number of decisions and errors related to the development of the rates offered to FamilyCare for 2017 and 2018 that had the effect of significantly reducing FamilyCare's rates and substantially increased the likelihood that the rates paid to FamilyCare would be insufficient to cover its costs. These decisions and errors are summarized in this and the following two paragraphs, and I provide additional detail below.  Many of these decisions were inconsistent with generally accepted actuarial principles and practices, as well as Actuarial Standards of Practice, federal regulations, and/or sub-regulatory guidance, either because of calculation errors, insufficient supporting analysis, or lack of documentation of analysis or consideration.  While some of these decisions also negatively affected other CCOs' rates, many had a disproportionately negative effect on FamilyCare's payments.  Among these decisions were:

a. OHA's and Optumas's failure to appropriately measure and consider the deterioration in FamilyCare's average enrollee health risk, resulting in payment rates that were substantially below FamilyCare's actual 2017 costs and projected 2018 costs.  In other words, FamilyCare's 2017 and 2018 rates were not appropriately matched to the actual risk of FamilyCare's membership, and as a result were insufficient to cover the costs of health care services that FamilyCare was required to pay in 2017 and was projected to pay in 2018.

b.  Optumas's use of unsupported trend assumptions that were substantially below relevant historical cost increases and did not adequately reflect the deterioration in health risk elsewhere in the rate development process.  For both 2017 and 2018 rate development, Optumas, without evidence of justification or explanation, chose significantly lower trend figures than the data indicated for FamilyCare's region, resulting in significantly lower rates.

3-     DECLARATION OF PETER DAVIDSON

c.   Optumas's application of material and inadequately supported reductions to FamilyCare's healthcare cost data pursuant to OHA's so-called "reimbursement policy," which substantially reduced payment rates to FamilyCare.   For both 2017 and 2018 rates, Optumas reduced from the cost data the amount FamilyCare reported it paid to primary care physicians, and those reductions resulted in significantly lower rates for FamilyCare. OHA justified its reimbursement policy and the reductions to FamilyCare's cost data on measured rates of growth in FamilyCare's historical costs, but OHA's analysis and justification ignored 1) the significant deterioration in the health risk characteristics of FamilyCare's enrollees; 2) the fact that FamilyCare's rate of growth when adjusted for the deterioration in health risk was below the threshold OHA and Optumas set for reductions; and 3) the fact that FamilyCare was less costly than its competitor CCO, Health Share of Oregon ("Health Share"), even after adjusting for relative population health between the two CCOs.   When measuring the rate of growth of costs for a managed care organization ("MCO") or otherwise evaluating an MCO's cost effectiveness, it is standard practice to consider changes in costs on a risk-adjusted basis because doing so controls for changes in health risk of a population, which are associated with changes in the amount and cost of required health care.   A rate of growth calculated without adjusting for changes in a MCO's membership risk profile does not reveal whether any observed change is the result of factors within the MCO's control or change in its enrollees' risk profile.   Thus, an observation that costs have increased without controlling for changes in risk does not indicate that the cost growth is correlated with an MCO's business decisions or effectiveness.

d.   OHA's budget-based decision to disregard actual CCO patient case management costs and assume substantially lower case management costs, which resulted in substantial reductions to FamilyCare's capitation rates.

e.   Optumas's and OHA's reductions to so-called margin allowances, which are included in CCO payment rates to compensate them for the insurance risk they assume by being

4-     DECLARATION OF PETER DAVIDSON

at full risk for member health care expenses that exceed the amount paid to them by OHA. Despite increasing uncertainty and risk to the CCOs, OHA and Optumas without evidence of support or justification cut the risk margin included in FamilyCare's rates in half in the 2017 and 2018 rates.

     f.   Optumas's knowing use of incorrect enrollment data in the development of the 2017 capitation rates, which disproportionately impacted FamilyCare. This error was partially corrected in the 2018 rates, shortly after FamilyCare exited the program.

     10.   Using the model, I was able to identify the effect on FamilyCare's rates of some of the decisions. Though it is not possible to precisely quantify the impact of every error or unsupported decision made by OHA and Optumas related to FamilyCare's 2017 and 2018 capitation rates, the table below summarizes, for those issues I was able to quantify, the effect on FamilyCare's payments.

**Table 1. Issues Quantified - Reductions to FamilyCare's Revenue (in $millions)**

| (Opinion Number) Description of Issue | Rating Period | | Total |
|---|---|---|---|
| | 2017 | 2018 | |
| (1a) Exclusion of FamilyCare case management costs | n/a | -7.7 | -7.7 |
| (1b-1d) FamilyCare physician payment and incentive cuts | -11.3 | -10.5 | -21.8 |
| (1g) Duals adjustment error | n/a | -1.4 | -1.4 |
| (1h) Paid COA miscategorization | -4.3 | n/a | -4.3 |
| (2a) Understatement of changes in costs due to trend / risk | -21.6 | -18.2 | -39.8 |
| (3a) Reduction to risk margin allowance | -2.2 | -2.5 | -4.7 |
| (3b) Reduction to non-benefit expense allowance | n/a | -5.6 | -5.6 |
| (4b) Not appropriately adjusting 2017 data for redetermination adjustment | n/a | -11.0 | -11.0 |
| (4d) Additional Paid COA and redetermination factors applied to 2018 rates | n/a | -13.5 | -13.5 |
| (6b) Applying full credibility to risk adjust ACA rate cells | -11.5 | -3.8 | -15.3 |
| (6c) Applying CCO's average risk score to unscorable enrollees | -3.2 | -0.4 | -3.6 |
| Total | -54.1 | -74.6 | -128.7 |

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

11.     As Table 1 shows, the decisions made by Optumas and OHA adverse to FamilyCare reduced FamilyCare's 2017 rates by at least $54.1 million and FamilyCare's 2018 rates by at least $74.6 million. I also identified numerous other issues that resulted in reductions to FamilyCare's rates but were not readily quantifiable due to inadequate or missing documentation from Optumas and OHA, lack of necessary data, the difficulty quantifying certain issues, and the range of estimates that could result from other potential approaches.  Those issues are identified below in Table 2, which identifies the issue and the rate year in which it was observed.  While I cannot with specificity quantify the amount by which FamilyCare's rates were decreased as a result of these various errors, the net effect of them was likely to decrease FamilyCare's rates even further.

**Table 2. Issues Not Quantified**

| (Opinion Number) Description of Issue | Observed in Rating Period | |
|---|---|---|
| | 2017 | 2018 |
| (1e) Failure to account for changes in enrollee characteristics in base data | Yes | Yes |
| (1f) Inadequate assessment of credibility | Yes | Yes |
| (2b) Failure to substantiate trend assumptions | Yes | Yes |
| (2c) Failure to adjust trend for emerging experience | Yes | Yes |
| (2d) Failure to follow generally accepted healthcare trend analysis practices and procedures | Yes | Yes |
| (2e) Misrepresentation of trend methodology | Yes | Yes |
| (2f) Failure to comply with trend documentation requirements | Yes | Yes |
| (4a) Failure to account for changes in enrollee risk characteristics in CY17 rates | Yes | n/a |
| (4c) Misrepresentation of 2018 redetermination factors | n/a | Yes |
| (5) No consideration of projected MLR | Yes | Yes |

12.     It is my opinion that OHA and Optumas data and calculation errors, decisions to reduce or eliminate certain FamilyCare costs and use an unsupported low rating trend, and failure to adequately recognize changes in enrollee risk collectively reduced FamilyCare's rates such that they were foreseeably and actually insufficient to cover FamilyCare's costs or projected costs.

6-     DECLARATION OF PETER DAVIDSON

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

This conclusion is consistent with FamilyCare's poor 2017 financial results and projected losses for 2018. This conclusion is also consistent with and reinforced by the large rate increases in the 2019 capitation rates provided to the remaining CCO in FamilyCare's region, Health Share, after FamilyCare left the market, as those increase were particularly significant for rate groups that were overrepresented among FamilyCare's membership and appeared to belatedly account for the deterioration in health risk in those groups.

13.    It is also my professional opinion that Optumas failed to adequately document their processes in reports, workpapers or communications with OHA such that another actuary, including me, could not objectively determine the reasonableness of key components and assumptions of Optumas's work to develop the 2017 and 2018 rates, which violates Actuarial Standards of Practice ("ASOPs"). Hindsight analysis of the 2017 financial experience of FamilyCare as well as the size of the final rate increases OHA applied in 2018 and proposed for 2019, indicate that the 2017 rates and 2018 rates offered to FamilyCare by OHA were substantially inadequate and did not match payment to risk.

14.    It is my professional opinion that Optumas and OHA were not candid in their representations to CMS about the rate-setting methodology. In particular, in the rate certifications and responses to CMS, Optumas/OHA misrepresented the methodology used to develop rating trends. Other misrepresentations are detailed below.

15.    Based on my education and experience, it is industry standard and a reasonable expectation of contracting Medicaid MCOs that capitation rates will be set in a manner that does not intentionally advantage or disadvantage any particular MCO, that adjusts for known material errors in the underlying data used to construct the rates, and that provides sufficient funding to support appropriate member access to high quality healthcare and financial stability of efficiently-run MCOs.

7-    DECLARATION OF PETER DAVIDSON

16.    The remaining paragraphs of this document provide further details of my professional opinion about the rate-setting errors and decisions made by OHA and Optumas that negatively affected FamilyCare's rates.

17.    **Base data**.  Medicaid capitation rate-setting begins with the base data, which reflects the costs incurred for healthcare services in a prior year.  After establishing the base data, the actuary then applies trend factors to account for anticipated changes in costs or utilization of services in the year for which the rates are being set.  Reducing the base data and choosing lower trend figures have the foreseeable effect, unless corrected elsewhere, of reducing the resulting rates.  Optumas made certain mistakes and applied unsupported or poorly supported assumptions that, individually and in the aggregate, materially reduced FamilyCare's base data resulting in reductions to FamilyCare's 2017 and 2018 capitation rates.  Other elements of Optumas's work to establish the base data suggest inadequate depth of analysis, which adds to CCO risk, but it is difficult to precisely quantify the impacts of those additional deficiencies.  In particular:

a.    Citing budget shortfalls and without any documentation or analysis of attainability, in the CY18 rate development OHA inappropriately reduced FamilyCare's 2016 case management costs—which are for services that help Medicaid beneficiaries gain access to needed medical, social, educational, and other services—by 99% ($19 million).

b.    Optumas did not adequately consider whether reductions it made to FamilyCare's 2015 and 2016 reported physician expenditures resulted in costs that were attainable by FamilyCare.

c.    OHA/Optumas failed to account for the deteriorating health risk of FamilyCare's population when evaluating FamilyCare's rate of expenditure growth in CY2015 and CY2016 resulting in inappropriate cuts to FamilyCare's base data.

d.    OHA's reimbursement policy, which resulted in material reductions to FamilyCare's base data, unfairly and improperly penalized FamilyCare.  The reimbursement

8-    DECLARATION OF PETER DAVIDSON

policy focused solely on increases in expenditures and ignored important considerations—such as CCO costs per capita and CCO costs normalized for differences in CCO population risk—that provide more comprehensive measures to assess CCO efficiency.

e. Optumas did not adequately consider the rapid changes in FamilyCare's population mix when setting FamilyCare's 2017 and 2018 rates.

f. Optumas did not adequately examine the credibility of the base data when it assumed that one year of experience was sufficient to establish full credibility.

g. Optumas made a methodological error in their attempt to correct the dual eligible (i.e. members eligible for both Medicare and Medicaid) miscategorization, resulting in cross-subsidization of rate cells.

h. OHA and Optumas should have corrected known issues with miscategorizations of enrollees and their experience data into incorrect rate cells in the 2017 rate-setting process. The issue was not remediated until the 2018 rates.

18. **Trend**. A key step in rate development is the choice of the trend, which is meant to account for projected differences in costs and utilization in the rating year as compared to the base data year. To project costs in 2017 and 2018, Optumas failed to substantiate its trend assumptions, failed to comply with actuarial documentation requirements and misstated its method. Optumas's trend assumptions are significantly lower than suggested by historical data, a difference which is not addressed in Optumas's rate certifications or workpapers. The drivers of the increases, largely changes in enrollee health risk, were not adequately recognized elsewhere in the rate development process, nor is there evidence of circumstances that would support the lower trends used. Optumas chose trends for rate setting that were far below the trend they measured, but they gave no explanation for this negative adjustment, which significantly reduces the projected costs and, consequently, the capitation rates. In particular,

a. Optumas assumed trend values significantly lower than suggested by historical data.

9-    DECLARATION OF PETER DAVIDSON

b.   Optumas failed to substantiate its trend assumptions.

c.   Optumas did not adequately monitor and respond to available emerging experience in the methodology used to measure and set trends.

d.   Optumas did not appear to have followed several generally accepted actuarial practices associated with historical healthcare trend analysis.

e.   Optumas appears to have misrepresented the methodology it used to develop rating trends in the rate certifications and responses to CMS.

f.   Optumas failed to comply with actuarial documentation requirements.

g.   Optumas inappropriately added an extra one-half month of trend, which inflated Health Share's 2018 rates after FamilyCare left the program

19.   **Non-benefit expense**.  Medicaid capitation rate-setting includes a component for expenses other than payment for health care services, such as administrative costs incurred in the operation of a managed care organization and compensation for the insurance risk assumed by the organization. The Non-Benefit Expense allowances used by Optumas in the development of FamilyCare's 2017 and 2018 rates do not appear to reflect reasonable, appropriate, and attainable expenses.  In particular, Optumas cut the allowance for profit and risk margin included in the CCO rates in half in the 2017 rates despite the additional uncertainty caused by significant changes in enrollment and costs, bringing its margin load down to among the lowest of any Medicaid managed care program in the country.  And Optumas reduced the non-benefit expense allowance in the 2018 rates by 1 percentage point compared to actual CCO non-benefit expenses without documenting the factual basis for the cut or validating that the resulting costs were attainable.

20.   **Adjustments**.  Optumas does not appear to have adequately accounted for changes in enrollee risk characteristics between the base data period and contract period in the development of FamilyCare's 2017 rates.  Moreover, Optumas misrepresented the method it used to calculate

10-    DECLARATION OF PETER DAVIDSON

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

the adjustment for the 2018 rates while also neglecting to make certain necessary adjustments to the data, all to FamilyCare's detriment.  In particular:

a.  In the development of FamilyCare's CY17 rates, Optumas failed to make any provisions for changes in enrollee risk characteristics between the base data period and contract period.

b.  Optumas underestimated the 2018 redetermination factors by failing to adjust for incurred-but-not-reported (IBNR) claims and underreporting in its 2017 data.

c.  Optumas appears to have misrepresented the redetermination adjustment applied in the 2018 rates.

d.  Shortly after FamilyCare's departure, Optumas developed and certified additional Paid COA and redetermination factors that significantly increased the rates paid to Health Share in 2018.

21.    **Risk adjustment**. Optumas and OHA made a number of decisions, dating back to the 2016 rates, in the calculation of CCO-specific risk or cost adjustment factors that harmed FamilyCare, despite significant changes in and uncertainties regarding population risk and the existence of reasonable alternative approaches.  In particular:

a.  Given the uncertainty regarding population risk changes and the compression of FamilyCare's and Health Share's risk scores, particularly for the ACA, it would have been reasonable for Optumas to apply no risk adjustment to those rate cells for the 2017 and 2018 rates rather than use a risk-adjustment methodology that decreased FamilyCare's rates.

b.  Despite the uncertainties, changes in relative population risk between the Tri-County CCOs, and impacts of redetermination, Optumas chose to apply the CCO's average risk score enrollees to enrollees without enough data to calculate risk scores.

*I hereby declare that the above statement is true to the best of my knowledge and belief, and that I understand it is made for use as evidence in court and is subject to penalty for perjury.*

11-    DECLARATION OF PETER DAVIDSON

DATED: January 14, 2022

/s/ *Peter Davidson*
Peter Davidson

12-    DECLARATION OF PETER DAVIDSON

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222