IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | | |
|---|---|---|
| PATRICK ALLEN, in his official capacity as DIRECTOR OF OREGON HEALTH AUTHORITY, an agency of the State of Oregon, | ) ) ) ) ) ) | |
| | ) | Case No. |
| | ) | 3:18-cv-00212-MO |
| Plaintiff, | ) | (Leading) |
| | ) | Case No. |
| vs. | ) | 6:18-cv-00296-MO |
| | ) | (Trailing) |
| FAMILYCARE, INC., an Oregon non-profit corporation, | ) ) | |
| | ) | VOLUME II |
| | ) | |
| Defendant. | ) | VIDEOTAPED FRCP |
| | ) | 30(b)(6) |
| | ) | DEPOSITION OF |
| | ) | |
| FAMILYCARE, INC., an Oregon non-profit corporation | ) ) | WILLIAM MURRAY |
| | ) | Taken in Behalf of |
| Plaintiff, | ) | Defendants |
| | ) | |
| vs. | ) | July 17, 2018 |
| | ) | |
| OREGON HEALTH AUTHORITY, an agency of the State of Oregon, and PATRICK ALLEN, both individually and in his official capacity as director of the Oregon Health Authority, | ) ) ) ) ) ) ) | 1120 N.W. Couch Street, 10th Floor Portland, OR 97209 |
| | ) | |
| Defendants. | ) ) | |

Teresa L. Dunn,

Court Reporter

CSR, CCR, RPR

Exhibit 8
Page 1 of 8

William Murray, 7/17/2018          Allen v. FamilyCare, Inc.

245

average of those for either CCO because the costs have to be reasonable and attainable for each CCO.

So a simple averaging is -- would be subject to question by CMS or subject to concern.

Q.    So it is FamilyCare's position that its contract with OHA entitles it to actuarially sound rates?

A.    Yes.

Q.    And how is that defined?

A.    So --

Q.    How is actuarially sound rates defined?

A.    So actuarially -- actuarially sound rates are defined in the CMS rule.  The contract states that there shall be compliance with the federal rules.

We know that OHA entered into its waiver agreement for a five-year fixed period acknowledging that it would be subject to the CMS rules which include those of actuarially sound rates.

The CMS rules talk about the contract between the State and the CCOs and those containing actuarially sound rates.

Schmitt Reporting & Video, Inc.
(360) 695-5554 -- (503) 245-4552 -- (855) 695-5554

Exhibit 8
Page 2 of 8

So it is our -- probably for those reasons and other reasons it is our belief that FamilyCare was entitled to have actuarially sound rates set by OHA under its contract.

Q.   What I'm trying to get at is what FamilyCare believes that the phrase actuarially sound rates means.

And do you look to any definition of or meaning of that phrase other than CMS's definition?

A.   I believe the requirement is that the rates are actuarially sound in compliance with the CMS regulations.

So I believe that as long as -- I believe that the definition under CMS's rules is a definition of actuarially sound rates.

(Deposition Exhibit Number 162 marked for identification.)

Q.   (By Mr. Markowitz) Can you identify Exhibit 162 for us, please?

A.   162 is a letter to CMS to Mr. Dave Meacham at the Region 10 CMS office in Seattle, Washington, from me.

Q.   And it has the attachments that were submitted to CMS by you along with the letter?

William Murray, 7/17/2018                Allen v. FamilyCare, Inc.

273

Health Plan Health Plan Services Contract

Coordinated Care Organization Contract 143114

with FamilyCare, Inc.

I assume you have seen this document before?

A.    I have seen this document, yes.

Q.    All right.    Please show us -- please identify for the record where the contract requires that the -- that the rates be actuarially sound.

A.    I can do one of two things.  I can read this whole contract which would take the rest of our time.

I do believe that the answer to that question is what we have already talked about is that the contract requires that the -- the contract itself be compliant with all CMS rules and regulations.

CMS rules and regulations talk about the development of actuarially sound rates.  It talks about the relationship of the State and its contracting with MCOs, which is a CCO in Oregon.

We talked about the fact that OHA has entered into its waiver which binds CMS to those

Schmitt Reporting & Video, Inc.
(360) 695-5554 -- (503) 245-4552 -- (855) 695-5554

Exhibit 8
Page 4 of 8

William Murray, 7/17/2018                Allen v. FamilyCare, Inc.

274

provisions for the same period or for a -- bound CMS to those provisions before FamilyCare signed this agreement.

So FamilyCare's understanding and expectation from all of that is that it is due actuarially sound rates under this contract.

Short answer, I'm not an attorney and there may be some part of a legal reason I have missed, but that is my -- my understanding.

Q.    All right.  So separate and apart from FamilyCare's position that because the federal law is discussed in this contract, is there any other provision in the contract that mandates that the rates be actuarially sound?

MR. JOHNSON:  Object to the form of the question.

THE WITNESS:  My prior answer is the answer I understand at this point in time.  Once again, I'm not an attorney and that is a legal -- seems to be a legal question.

I know there are other communications from the DOJ and other parties that state that the CCOs -- the rates of the CCOs are to be actuarially sound.

Q.    (By Mr. Markowitz) All right.  Well, I'm

William Murray, 7/17/2018                    Allen v. FamilyCare, Inc.

275

referring to the third topic that you were on notice of that refers to the contract which you have in front of you, the January 1, 2015, contract and all amendments thereto including the alleged breach of that agreement.

And in the Fourth Amended Complaint at paragraphs 89 and 151 there are allegations that -- claims asserted because the rates were biased and not actuarially sound and that they were not free from errors.

Now, other than the provision of the contract that requires that it be in compliance with federal law, is there any provision of the contract that requires that the rates that are set be actuarially sound?

MR. JOHNSON:  Object to the form of the question to the extent it calls for a legal conclusion.

I would note for the record that much of the answer to this question is currently stated in briefing before the Court on motion for reconsideration.

Q.   (By Mr. Markowitz) Can you identify any such provision?

A.   I have identified the provisions as I

William Murray, 7/17/2018                Allen v. FamilyCare, Inc.

276

understand them.

Q.    And your contract claim in the Fourth
Amended Complaint complained about the -- the
errors that were embedded in the rates.

Is there any provision of the contract
that requires that the rates be free of all
error?

A.    The requirement that rates are
actuarially sound would mean that an error
itself could make the rates not actuarially
sound.  So the two are related.  The two are
related and inseparable.

If they aren't actuarially sound due to
error, then they would need to be corrected so
that they are actuarially sound.

Q.    Does FamilyCare contend that any of its
contracts with OHA or its amendments or the
rates do not comply with federal law?

A.    So I believe I have answered that
question in that I believe federal law requires
the rates to be actuarially sound for each CCO
for each rate cell and that that is what
FamilyCare's entitled to and that the contract
itself must be compliant with federal law so,
therefore, if it's not compliant with federal

William Murray, 7/17/2018                Allen v. FamilyCare, Inc.

290

C E R T I F I C A T E

I, Teresa L. Dunn, a Certified Shorthand Reporter for Oregon, do hereby certify that, pursuant to stipulation of counsel for the respective parties hereinbefore set forth, WILLIAM MURRAY personally appeared before me at the time and place set forth in the caption hereof; that at said time and place I reported in Stenotype all testimony adduced and other oral proceedings had in the foregoing matter; that thereafter my notes were reduced to typewriting under my direction; and that the foregoing transcript, pages 144 to 291, both inclusive, constitutes a full, true and accurate record of all such testimony adduced and oral proceedings had, and of the whole thereof. Witness my hand and CSR stamp at Vancouver, Washington, this 18th day of July, 2018.

_____
TERESA L. DUNN
Certified Shorthand Reporter
Certificate No. 00-0367
Commission Expires:  6/30/20

Exhibit 8
Page 8 of 8