IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

FAMILYCARE, INC., an Oregon    )
non-profit corporation,        )
                               )
        Plaintiff,             )   Case No. 6:18-cv-00296-MO
                               )
    v.                         )
                               )
OREGON HEALTH AUTHORITY, an    )
agency of the State of Oregon, )
PATRICK ALLEN, both            )   July 31, 2018
individually and in his        )
official capacity as director  )
of the Oregon Health Authority,)
and LYNNE SAXTON,              )
                               )
        Defendants.            )   Portland, Oregon
_____)

Oral Argument

TRANSCRIPT OF PROCEEDINGS

BEFORE THE HONORABLE MICHAEL W. MOSMAN

UNITED STATES DISTRICT COURT CHIEF JUDGE

Exhibit 12
Page 1 of 11

appears to have been essentially -- "punted" isn't the best word but it's the only one I can think of right now, punted to Optumas.

Beyond that, I don't believe that the issues relating to methodology, the core issue with relation to the actuarial applications are issues that she would be involved with.  So she has a role, it's important as to part of the case, it does not appear to be significant as to other parts of the case.

THE COURT:  So the current discovery deadline is today.  And you'd want -- you'd agree to extend that to when?

MR. ENGLISH:  Your Honor, may I consult with Mr. Johnson?

THE COURT:  Yes.

(There is a pause in the proceedings.)

MR. ENGLISH:  So apparently we were willing to give them until August 20th, and so obviously I've already said that if it's significant to the Court and to the other side that they go until September 1, I would certainly be willing to do that, Your Honor.

THE COURT:  And the current --

MR. ENGLISH:  I'm going to let Mr. Johnson deal with this as well because he's actually more familiar with that part of it, Your Honor.

THE COURT:  Thank you.

Mr. Johnson, are we really talking, to make this

Exhibit 12
Page 2 of 11

sort of delayed summary judgment hearing schedule and hearing date or we can run it separately -- that is, run Saxton on a separate schedule, with an additional summary judgment hearing.

Do you care?

MR. LEVIN: My preference, my client's preference, Your Honor, would be to run it separately so we can keep the hearing date for the --

THE COURT: Why?

MR. LEVIN: Because we do have a lot of additional core issues that we have to get ready for for trial, and right now we've got a hearing date of September 21st that is going to give us time to digest the Court's ruling and get ready for trial on the issues that are remaining. I worry that as that moves closer to the trial date, that will make the process much more difficult. Briefing is already in on our motions.

THE COURT: Mr. Johnson, are you here to talk about FamilyCare's extension? I know you just mentioned it.

MR. JOHNSON: Yes.

THE COURT: So you'd like an extension to file your motion for summary judgment until August 10th?

MR. JOHNSON: Until August 20th.

THE COURT: Why is that?

MR. JOHNSON: We are -- the parties are still conducting some depositions. We are --

THE COURT: 30(b)(6) deposition is tomorrow?

Exhibit 12
Page 3 of 11

MR. JOHNSON: 30(b)(6) depositions. There are a few fact witnesses that will be deposed next week, and then a couple to the following week. Just with summer schedules we've -- all the lawyers have been trying very hard to get all these depositions done but we haven't been able to. So a couple of those depositions that are helpful -- critical for our summary judgment response to the arguments they are making, we will need to have those depositions completed before we respond, and so that's why we have requested August 20th for our response date. And that would still allow all of the briefing to be completed for a September 21st hearing, which is the current hearing.

THE COURT: Right. You just reduced my gap, that's all.

MR. JOHNSON: It reduces your gap.

THE COURT: You have great confidence in my brilliance.

MR. JOHNSON: In our email to your chambers, Your Honor, we did point that out and ask if that was sufficient time. It gave eight or nine days. I don't know --

THE COURT: I can absorb this stuff in minutes really.

Do you have an idea of the degree of overlap between the cross motions for summary judgment? Are they going to be handling much the same issues or significantly different

Exhibit 12
Page 4 of 11

didn't, the contract ceases to exist; there's no new contract formation. And if you do, you had at that year new contract formation on express terms.

And if that's what happened, if at each year you had new contract formation on express terms, then there's no claim 10, there's no duty of -- covenant of -- implied covenant of good faith and fair dealing, there's just the express terms.

So I'll hear oral argument on what I think is the dividing question.

I should make clear if it's not that, if it's, in fact, sort of continuing performance on an original contract, then I do agree with FamilyCare that the parties can have an expectation of good faith and fair dealing that's informed by statutory duties. What I said earlier in my opinion on claim 10 is true as to express contractual terms: they're not altered by statutory requirements that are referenced in the contract but not incorporated as terms of the contract.

But the same is not true for the issue we're now taking up with claim 10, and that is is there an implied understanding or covenant of good faith and fair dealing that's informed by the contract terms.

And so my going the other way, my tentative view is if it's not a new contract every year with express terms that sort of erases the application of good faith and fair dealing, then it's certainly plausible that a rational jury in this case

Exhibit 12
Page 5 of 11

could find an understanding of what the offered actuarial terms would be, informed by the relevant statutes that the parties have briefed in this case.

So, Mr. English, I'll turn to you first on whether you think this is a series of new contract formations or one contract with performance across the years.

MR. ENGLISH: Your Honor, I'm arguing the other motion. Mr. Gordon is arguing this one.

THE COURT: Mr. Gordon, go ahead.

MR. GORDON: Yes. So this contract at its inception was a five-year contract that provided for annual rate terms, annual rate amendments to the contract. And so it's -- as the Court rightly recognizes, it has elements of both the five-year contract and one where there are terms that are set each time.

My understanding of the *Tolbert* case and the authority that interprets the *Tolbert* case is that what's really at issue is whether or not -- if a party has discretion to set in this case a price term, the issue is whether or not the party -- there's something in the contract that says that the party has unlimited discretion to set whatever price term it wants. And that isn't present in this case. There's nothing that's been identified in the contract that says when OHA presents its annual rates, that it can set them in any manner it chooses, with unbounded discretion.

THE COURT: That concept is in the case, I just think

Exhibit 12
Page 6 of 11

like your NSF, I'm going to go to another bank."  This is a much more deeply engrained long-term relationship, with a lot more investment on the part of the CCOs -- FamilyCare in this case -- up front in terms of its membership and its network.

I would also add that --

THE COURT:  So you're reciting those facts not just to say that walking away from an unacceptable contract term would be more monumental than in *Best*, but to suggest that it shows that the intent of the parties was to enter into a multiyear contract not a year-to-year contract?

MR. GORDON:  That's correct, Your Honor.  That was the intent of the parties was for this to be a five-year contract, where OHA would have the discretion to go through the rate-setting process and set the rates.  But it wasn't unbounded discretion.  And that's where the Oregon case law talks about this is exactly where the implied covenant of good faith and fair dealing applies, when one party has discretion but it's not specified that that discretion is unbounded or that there's a specific way in which the party will exercise that discretion.

In those circumstances, that's where the courts have said that we look to the parties' reasonable -- objectively reasonable expectations about the contract, and the courts have said that that's not -- that's a question of fact.  And so I think it's particularly unsuited for a motion to dismiss like

Exhibit 12
Page 7 of 11

Case 6:13-cv-00296-MO Document 518-12 Filed 06/06/14 Page 28 of 99
Case 1:17-cv-02926-MO Document 210-12 Filed 06/14/22 Page 8 of 11

28

this, because it is a question of fact that courts can and do look outside the four corners of the contract. They consider things like in the *Iron Horse* case, industry practices, for example, where in the *Best* case they cited there the *Comini* case, talking about whether or not an action was taken to retaliate against the contracting party as an example of bad faith.

THE COURT: Thank you. I don't need you to give me much more than that on that point, since I am at least in tentative agreement that if it's not new contract formation it is a question about what the reasonable intent of the parties would be -- or expectation of the parties would be.

Thank you.

MR. GORDON: Thank you, Your Honor.

THE COURT: Let's start with the first point, whether this is a five-year contract with just performance issues every year or an amended or renewed contract every year in which one party is offering terms that can be accepted or rejected that are express terms.

MR. LEVIN: Your Honor, it's the latter, and here's why: This five-year contract anticipates -- and this is clear from the plaintiff's complaint -- anticipates that something really, really important is going to happen every year. And that is that OHA is going to announce the rates that are worth $500 million to each CCO, and that is something that is going

Exhibit 12
Page 8 of 11

it's the dominant, the most critical term being renegotiated each year.

Two is that the contract itself has a number of terms referred to by counsel here that support the idea that that's what's happening.

Three -- and I'm now looking at Exhibit 1, page 134 of the contract. It's very clear from the contract that if the rate amendment isn't entered into by the amendment date, then the contract terminates. And that's not a clause that seems to speak about ongoing performance or enforcement of contractual terms.

Certainly it's, I think, a fine argument made by counsel that it's seemingly unusual that a party would enter into this sort of business arrangement with this kind of investment where the contract might terminate each and every year after one year, for example. That's not -- that's not something I can know a lot about on the record I have in front of me today. So I guess I'd say that while to my uninformed eye maybe that does seem like an unusual contractual arrangement, that might just be because I am, in fact, uninformed about what would motivate economic actors in this particular arena, and nothing in the record tells me anything other than that it's certainly an arrangement that one might enter into. The contract certainly seems to make it such.

So ultimately my decision is that, in fact, these

Exhibit 12
Page 9 of 11

annual rate offers amount to new contract formation every year and therefore make inapplicable the doctrine of the implied covenant of good faith and fair dealing, and therefore I deny the motion to reconsider on the grounds of -- I guess we'd call it futility.

I think that's all we can resolve here today. We'll handle other matters as they come up according to the schedule I've set.

Mr. English, I haven't set a specific schedule for your broader motion to alter the AEO designation, but we'll take that up as quickly as it can be briefed by the parties.

MR. ENGLISH: Thank you very much, Your Honor.

THE COURT: Thank you. We'll be in recess.

(Proceedings concluded at 3:00 p.m.)

Exhibit 12
Page 10 of 11

68

--o0o--

I certify, by signing below, that the foregoing is a correct transcript of the record of proceedings in the above-entitled cause. A transcript without an original signature or conformed signature is not certified.


/s/Bonita J. Shumway                    August 5, 2018
_____             _____
BONITA J. SHUMWAY, CSR, RMR, CRR        DATE
Official Court Reporter

Exhibit 12
Page 11 of 11