**David B. Markowitz, OSB #742046**
DavidMarkowitz@MarkowitzHerbold.com
**Harry B. Wilson, OSB #077214**
HarryWilson@MarkowitzHerbold.com
**Laura Salerno Owens, OSB #076230**
LauraSalerno@MarkowitzHerbold.com
MARKOWITZ HERBOLD PC
1455 SW Broadway, Suite 1900
Portland, OR  97201
Tele:  (503) 295-3085
Fax:  (503) 323-9105

Special Assistant Attorneys General for Defendant Oregon
Health Authority, an agency of the State of Oregon

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| FAMILYCARE, INC., an Oregon non-profit corporation,<br><br>Plaintiff,<br><br>v.<br><br>OREGON HEALTH AUTHORITY, an agency of the State of Oregon, and LYNNE SAXTON,<br><br>Defendants. | Case No. 6:18-cv-00296-MO<br><br>**REPLY IN SUPPORT OF OREGON HEATH AUTHORITY'S PARTIAL MOTION FOR SUMMARY JUDGMENT ON FAMILYCARE'S THIRD CLAIM FOR RELIEF** |

# TABLE OF CONTENTS

Introduction ............................................................................................................................. 1

Reply ...................................................................................................................................... 2

I.      Issue #1: The parties' exact bases for their objectively reasonable expectations. ............. 2

        A.      The parties' reasonable contractual expectations are based on the CCO
                Contract, the 2016 Settlement Agreement, and federal Medicaid
                regulations. ........................................................................................................ 2

        B.      FamilyCare has repeatedly changed the bases for its reasonable
                expectations. ...................................................................................................... 2

                1.      In 2018, FamilyCare contended that the parties' reasonable
                        contractual expectations were based on federal Medicaid
                        regulations. .............................................................................................. 3

                2.      In 2021, after the appeal and close of discovery, FamilyCare
                        changed its theory and contended that the parties' reasonable
                        expectations were based on industry standards, past practices,
                        all positive and normative law in Oregon, and the United States
                        Constitution. ............................................................................................ 5

                3.      In 2022, FamilyCare changed its theory again and now contends
                        that the parties' reasonable expectations were based on more
                        than 40 new sources. ............................................................................... 6

II.     Issue #2: The Court should prohibit FamilyCare from relying on its new, 2022
        extracontractual bases for its good faith claim. ................................................................. 8

III.    Issue #3: The Court should grant summary judgment to OHA on FamilyCare's
        good faith claim because there is no dispute of material fact that FamilyCare
        has not adduced evidence to advance its good faith claim. .............................................. 11

        A.      The 2016 Settlement Agreement confirms that FamilyCare did not have
                reasonable expectations other than that OHA had authority to set the
                rates subject to CMS approval. ........................................................................ 12

        B.      FamilyCare's alleged reasonable expectations undermine the CCO
                Contract. ........................................................................................................... 14

        C.      The implied duty of good faith does not create free-floating obligations
                that exist apart from the express terms of the contract. .................................... 15

        D.      FamilyCare's timeliness theory fails because ORS 414.652(4) does not
                create an implied contractual duty and, in any event, FamilyCare
                suffered no damages. ........................................................................................ 16

                1.      The 60 days' notice requirement in ORS 414.652(4) is not an
                        implied term of the CCO Contract. .......................................................... 16

                2.      FamilyCare had already decided to reject the 2018 Rate
                        Amendment by the December 20, 2017 "ultimatum." ............................. 17

3.    There is no evidence that FamilyCare would have remained in the CCO market if it had known the amount of the revised 2018 rates. ................................................................................................ 18

Conclusion .................................................................................................................... 20

**Page ii -   REPLY IN SUPPORT OF OREGON HEATH AUTHORITY'S PARTIAL MOTION FOR SUMMARY JUDGMENT ON FAMILYCARE'S THIRD CLAIM FOR RELIEF**

# TABLE OF AUTHORITIES

Cases                                                                                                                              Page(s)

*Abraxis Bioscience, LLC v. Sabyetn, Inc.*,
  2010 WL 11549884 n.4 (CD Cal Sept 16, 2010) ....................................................... 2
*Allen v. FamilyCare, Inc.*,
  812 F. App'x 413 (9th Cir. 2020) .......................................................................... 5, 15
*Bliss v. S. Pac. Co.*,
  212 Or. 634 (1958).................................................................................................. 15
*Boyd v. City of Oakland*,
  458 F. Supp. 2d 1015 (N.D. Cal. 2006) ................................................................... 20
*Bulkoski v. Bacharach, Inc.*,
  1 F. Supp. 2d 484 (W.D. Pa. 1997)........................................................................... 9
*Davis v. Detroit Downtown Dev. Auth.*,
  No. 17-CV-11742, 2017 WL 11318204 (E.D. Mich. June 19, 2017) ........................ 7
*Fleshman v. Wells Fargo Bank*,
  27 F. Supp. 3d 1127 (D. Or. 2014) ......................................................................... 16
*Galvan v. Walt Disney Parks & Resorts, U.S., Inc.*,
  No. SACV1801721ABFFMX, 2019 WL 8017810 (C.D. Cal. Nov. 27, 2019)......... 19, 20
*Greyhound Lines, Inc. v. Miller*,
  402 F.2d 134 (8th Cir. 1968) ................................................................................... 10
*Hydrick v. Hunter*,
  669 F3d 937 (9th Cir 2012) ....................................................................................... 2
*Kennedy v. Allied Mutual Ins.*,
  952 F.2d 262 (9th Cir.1991) ................................................................................... 19
*Klamath Off-Project Water Users, Inc. v. Pacificorp*,
  237 Or. App. 434 (2010)......................................................................................... 15
*Moore v. IMCO Recycling of CA, Inc.*,
  No. CV041304DSFVBKX, 2005 WL 5887179 n.21 (C.D. Cal. June 29, 2005) ....... 9
*Morrow v. Red Shield Ins. Co.*,
  212 Or. App. 653 (2007).......................................................................................... 14
*Oregon Univ. Sys. v. Oregon Pub. Emps. Union, Local 503*,
  185 Or. App. 506 (2002).................................................................................... 16, 17
*Snapp v. United Transportation Union*,
  889 F.3d 1088 (9th Cir. 2018) ............................................................................. 9, 20
*Starr v. Baca*,
  652 F.3d 1202 (9th Cir. 2011) ................................................................................. 11
*U.S. Nat. Bank of Oregon v. Boge*,
  311 Or. 550 (1991).................................................................................................. 15
*Van Asdale v. Int'l Game Tech.*,
  577 F.3d 989 (9th Cir.2009) .................................................................................... 19

Statutes

ORS 414.652.............................................................................................................. 16, 17

Regulations

42 C.F.R. Part 438.......................................................................................................... passim

**INTRODUCTION**

This Court should grant the Oregon Health Authority ("OHA") summary judgment on FamilyCare's implied duty of good faith and fair dealing claim because OHA has satisfied the reasonable expectations of the parties. The CCO Contract, the 2016 Settlement Agreement, and federal Medicaid regulations establish that the parties' only objectively reasonable contractual expectations were that OHA would actuarially set and certify the rates and submit them to CMS for approval. The 2016 Settlement Agreement—in which FamilyCare expressly agreed that "OHA has the authority to set the CCO rates under which OHA contracts with CCOs, subject to CMS approval"—confirms that the parties could not have had any other objectively reasonable expectations.

The Court should reject FamilyCare's belated attempt to advance a new, unpleaded theory of good faith, based on dozens of sources it has never previously identified. First, the 2016 Settlement Agreement and federal Medicaid regulations show that FamilyCare could not have had reasonable expectations that extended beyond the objective expectation that OHA would actuarially set and certify the rate and submit them to CMS.

Second, FamilyCare's entirely new good faith theory contradicts its Rule 30(b)(6) testimony and comes too late to be considered. In 2018, when FamilyCare originally advanced a good faith claim, FamilyCare based its allegations about the parties' reasonable expectations on federal Medicaid regulations pertaining to actuarial soundness. It also testified in deposition that its expectation was for actuarially sound rates and that other expectations were "inseparable" from actuarial soundness. In 2022, FamilyCare now bases its claim on more than 40 different sources—none of which are federal Medicaid regulations—and contends that actuarial soundness is irrelevant to the parties' alleged reasonable expectations. The Court can, and should, prohibit FamilyCare from advancing this new theory of its claim.

There is no dispute of material fact that OHA met the parties' objectively reasonable expectations. OHA actuarially set and certified the rates and submitted them to CMS for approval. The Court should grant summary judgment in favor of OHA.

**REPLY**

I.    **Issue #1: The parties' exact bases for their objectively reasonable expectations.**

A.    **The parties' reasonable contractual expectations are based on the CCO Contract, the 2016 Settlement Agreement, and federal Medicaid regulations.**

OHA has consistently contended that the parties' only objectively reasonable contractual obligations are that OHA would actuarially set and certify the rates and submit them to CMS for approval.  The only relevant bases for these expectations are the CCO Contract (*see* 2016 CCO Contract (Dkt. 433-9), § I.A; Ex. C, §§ 2, 7; Ex. D, § 20.a), the 2016 Settlement Agreement (Settlement Agreement, §§ 1.a, 1.b, 1.d (Dkt. 155-2 at 3)), and federal Medicaid regulations, 42 C.F.R. § 438.4(b).  The 2016 Settlement Agreement not only helps set the parties' objectively reasonable expectations, it demonstrates that in 2016, FamilyCare expressly agreed that the parties' expectations went no further than the expectation that OHA had authority to set CCO rates, subject to CMS approval.

B.    **FamilyCare has repeatedly changed the bases for its reasonable expectations.**

FamilyCare, in contrast, has repeatedly changed its theory of its good faith claim, identifying different bases for and definitions of the parties' alleged reasonable expectations at different times.  In its Fifth Amended Complaint, it alleges that the parties reasonably expected OHA to offer rate amendments that were "timely, reasonable, unbiased, actuarially sound, adequate, and free of errors in underlying data and methodology."  (5th Am. Compl. ¶ 107.)  In its third, fourth, and fifth amended complaints, FamilyCare vaguely alleges that the parties' reasonable expectations were based on "the Contract and applicable law," among "other things."[1]

---

[1]  The Court should reject FamilyCare's allegation that its "reasonable expectations" are based on "other things."  (5th Am. Compl. ¶ 107; FamilyCare's Opp'n to Mot. for Summ. J. (Dkt. 515) at 20.)  "Others things" is a conclusory, open-ended phrase that lacks any defined reference.  In assessing a complaint, the Court should ignore the "conclusory allegations and generalities," and instead look to "allegation[s] of the *specific* wrong-doing" at issue. *Hydrick v. Hunter*, 669 F3d 937, 942 (9th Cir 2012).  Generalities like "among other things" are insufficient to provide a defendant fair notice of the grounds on which a claim rests. *See Abraxis Bioscience, LLC v. Sabyent, Inc.*, CV 10-2255-GW(SHX), 2010 WL 11549884, at *4 n.4 (CD Cal Sept 16, 2010) ("Though the FACC includes the placeholder term 'among other things,' to the extent the facts underlying those 'other things' have not been pled, that reference would not suffice under *Iqbal* and *Twombly*.").  As this Court noted at the September 1, 2021 hearing, "'among other things' is a negative, not a positive for satisfying *Iqbal/Twombly* because that's a catchall phrase

**Page 2 -    REPLY IN SUPPORT OF OREGON HEATH AUTHORITY'S PARTIAL MOTION FOR SUMMARY JUDGMENT ON FAMILYCARE'S THIRD CLAIM FOR RELIEF**

(3rd Am. Compl. (Dkt. 1-1 at 547-48); 4th Am. Compl. ¶ 151 (Dkt. 111); 5th Am. Compl. ¶ 107 (Dkt. 429).)  Over the course of the last three years, FamilyCare has relied on its vague pleading to repeatedly change its theory of the good faith claim.

### 1.    In 2018, FamilyCare contended that the parties' reasonable contractual expectations were based on federal Medicaid regulations.

When it first advanced its good faith claim, FamilyCare contended that the parties' reasonable expectations were based on federal Medicaid regulations.  In its response to OHA's 2018 motion to dismiss the good faith claim, for example, FamilyCare cited provisions of the Medicaid regulations regarding actuarial soundness, such as 42 C.F.R. §§ 438.5 and 438.5. (FamilyCare's Resp. in Opp'n to Defs.' 2018 Mot. to Dismiss (Dkt. 39) at 25.)  Later that summer, in its Motion for Reconsideration, FamilyCare again cited 42 C.F.R. Part 438, contending that FamilyCare expected OHA would comply with that Part because OHA had agreed to do so in a demonstration project with CMS (also known as Oregon's "1115 Waiver"). (FamilyCare's Mot. for Recons. (Dkt. 108) at 18.)  FamilyCare also identified sections of the CCO Contract that addressed potential conflicts with Medicaid regulations.  On those bases, FamilyCare claimed that "at the time FamilyCare entered the [CCO Contract] with OHA, it reasonably expected that the contract would conform in all respects with the requirements of 42 C.F.R. Part 438."  (*Id.* at 18-19.)

FamilyCare's Rule 30(b)(6) deposition testimony confirmed that FamilyCare was alleging that the parties' reasonable contractual expectations were based solely on federal Medicaid regulations, which FamilyCare believed required OHA to offer FamilyCare "actuarially sound" rates.  When asked where the CCO Contract required OHA to provide actuarially sound rates, FamilyCare responded "the contract requires that * * * the contract itself be compliant with all CMS rules and regulations.  CMS rules and regulations talk about the development of actuarially sound rates.  * * *  So FamilyCare's understanding and expectation

that is a clear indicator that the complaint is alleging things no one can defend against."  (Tr. of 9/1/21 (Dkt. 480) at 34:24-35:2.)

**Page 3 -    REPLY IN SUPPORT OF OREGON HEATH AUTHORITY'S PARTIAL MOTION FOR SUMMARY JUDGMENT ON FAMILYCARE'S THIRD CLAIM FOR RELIEF**

from all of that is that it is due actuarially sound rates under this contract." (7/17/18 FamilyCare 30(b)(6) Dep. 273:15-274:6, Decl. of Harry Wilson (Dkt. 510) ("First Wilson Decl."), Ex. 2.)

In its Opposition, FamilyCare wrongly contends that OHA did not ask FamilyCare about its other alleged reasonable expectations, such as FamilyCare's allegation that it expected that rates would be free from errors. (FamilyCare's Opp'n to Mot. for Summ. J. at 11-12.) OHA did ask about those alleged expectations and FamilyCare testified that they were merely aspects of actuarial soundness. When asked where the CCO Contract required that the rates be free from errors, FamilyCare testified that the "requirement that rates are actuarially sound would mean that an error itself could make the rates not actuarially sound. So the two are related. The two are related and inseparable." (7/17/18 FamilyCare 30(b)(6) Dep. at 276:8-12, First Wilson Decl., Ex. 2.) And when asked if FamilyCare had a contractual right to rates that covered its expenses, FamilyCare again responded that "[w]hat FamilyCare believes is it has a right to actuarially sound rates." (7/16/18 FamilyCare 30(b)(6) Dep. at 42:1-43:7, Decl. of Harry Wilson ("Second Wilson Decl."), Ex. 1.) FamilyCare confirmed that its expectations were limited solely to actuarial soundness again when OHA asked FamilyCare the basis for its damages. FamilyCare testified that its rates damages were limited to the difference between actuarially sound rates and the rates it actually received:

> Q. [F]or what years does FamilyCare contend that it is entitled to damages for rate differential?
>
> A. For 2017 and 2018.
>
> Q. And how is that rate differential to be calculated?
>
> A. Well, FamilyCare believes that the rates needed to be actuarially sound. So it would be a calculation of actuarially sound rates versus what was actually paid.

(*Id.* at 97:23 to 98:7.) According to FamilyCare's own briefing and testimony in 2018, its good faith claim was based on federal Medicaid regulations dealing with actuarial soundness.

FamilyCare contends that it also identified "industry standards" as a basis for its reasonable expectations in its Motion for Reconsideration. (FamilyCare's Opp'n to Mot. for Summ. J at 12.) That is incorrect. FamilyCare's Motion for Reconsideration cites cases that

**Page 4 -  REPLY IN SUPPORT OF OREGON HEATH AUTHORITY'S PARTIAL MOTION FOR SUMMARY JUDGMENT ON FAMILYCARE'S THIRD CLAIM FOR RELIEF**

discuss industry standards, but FamilyCare did not identify any industry standards in its Motion for Reconsideration on which FamilyCare relied.  (Mot. for Recons. at 17 (citing case law but not identifying any industry standards on which FamilyCare relied other than federal Medicaid regulations).)  In fact, other than the legal citations, the Motion for Reconsideration does not mention industry standards at all.

**2.**     **In 2021, after the appeal and close of discovery, FamilyCare changed its theory and contended that the parties' reasonable expectations were based on industry standards, past practices, all positive and normative law in Oregon, and the United States Constitution.**

FamilyCare appealed this Court's June 1, 2018 order dismissing its good faith claim. (Dkts. 105, 345.)  On appeal, the Ninth Circuit held that federal Medicaid regulations did not create rights FamilyCare could enforce, stating "neither Oregon nor federal law required OHA to do more than seek and obtain CMS approval of the 2017 and 2018 rates."  *Allen v. FamilyCare, Inc.*, 812 F. App'x 413, 417 (9th Cir. 2020), *as amended* (May 7, 2020).

The Ninth Circuit's ruling impacted FamilyCare's good faith claim in two important ways.  First, it eliminated FamilyCare's ability to rely on federal Medicaid regulations as a basis for its alleged reasonable expectations.  Because those regulations define OHA's relationship to CMS, not to FamilyCare, they cannot invest contractual rights in FamilyCare even by implication.[2]  Second, the Ninth Circuit's ruling eliminated FamilyCare's purported expectation that OHA had to provide FamilyCare with "actuarially sound" rates.  FamilyCare acknowledged these impacts.  In its opposition to OHA's 2021 motion to dismiss, it admitted that the Ninth Circuit's "ruling[] may affect FamilyCare's [good faith] claim insofar as it encompasses an expectation for rates that were actuarially sound[.]"  (FamilyCare's Opp'n to Mot. to Dismiss, Mot. for Summ. J., and Mot. to Strike (Dkt. 452) at 19.)

---

[2] OHA has long contended that to the extent federal Medicaid regulations inform the duty of good faith, they still do create any rights enforceable by FamilyCare.  (*E.g.,* OHA's Opp'n to FamilyCare's Mot. to Recons. (Dkt. 117) at 10.)  Incorporating Medicaid regulations into the implied duty merely confirms that CMS, not FamilyCare, approves the rates.  (*Id.*)

**Page 5 -   REPLY IN SUPPORT OF OREGON HEATH AUTHORITY'S PARTIAL MOTION FOR SUMMARY JUDGMENT ON FAMILYCARE'S THIRD CLAIM FOR RELIEF**

Forced to change tacks, FamilyCare adopted a wholly new theory of good faith in the summer of 2021. FamilyCare asserted, in its opposition to OHA's 2021 motion to dismiss, that its expectations were based on "the parties' thirty-plus years of prior practice, industry standards, the applicable regulatory framework, and the fact that OHA is a government agency subject to constitutional and other obligations and limitations." (*Id.* at 23.) FamilyCare did not, however, identify any particular industry standard, specific past practice, or regulation, law, or constitutional provision. When the Court asked what "applicable law" FamilyCare was referring to during the hearing, FamilyCare responded that it included all "positive and normative law in Oregon." (Tr. of 9/1/2021 (Dkt. 480) at 35:7-11.)

FamilyCare also asserted in its 2021 opposition that it had expectations beyond actuarial soundness, including that OHA would offer rates that are "reasonable," "adequate," "timely," and "free from errors." It makes the same assertion in its Opposition to this Motion for Summary Judgment. (*E.g.*, FamilyCare's Opp'n to Mot. for Summ. J at 11 n.6.) As noted above, however, FamilyCare testified in deposition in 2018 that its other alleged expectations, such as that rates would be free from errors, were "inseparable" components of actuarial soundness. (7/17/18 FamilyCare 30(b)(6) Dep. at 276:8-12, First Wilson Decl., Ex. 2.) And, FamilyCare testified that its rate-setting damages were based exclusively on "a calculation of actuarially sound rates versus what was actually paid." (7/16/18 FamilyCare 30(b)(6) Dep. at 98:6-7, Second Wilson Decl., Ex. 1.)

      **3.**      **In 2022, FamilyCare changed its theory again and now contends that the parties' reasonable expectations were based on more than 40 new sources.**

On November 10, 2021, the Court denied OHA's 2021 motion to dismiss. (11/10/21 Op. and Order (Dkt. 495).) The Court directed OHA and FamilyCare to "address what exactly they believe to be the basis for the parties' objective reasonable expectations that form the basis for the implied covenant of good faith and fair dealing claim." (*Id.* at 10.)

**Page 6 -  REPLY IN SUPPORT OF OREGON HEATH AUTHORITY'S PARTIAL MOTION FOR SUMMARY JUDGMENT ON FAMILYCARE'S THIRD CLAIM FOR RELIEF**

Despite the Court's direction, FamilyCare initially refused to identify its bases in conferral on this motion.[3]  (OHA's Mot. for Summ. J. (Dkt. 507) at 5-6.)  Then, after conferral, FamilyCare sent an email asserting that the parties' alleged reasonable contractual expectations were based on almost every conceivable basis, including the parties' 30+ year history, the entire CCO Contract, "OHA's communications and statements about health care transformation," the "terms and conditions" of the "state Medicaid plan," and "standards, established inter alia by the federal constitution . . . that a government agency should not be biased or unreasonable," among many others.  (December 2021 email exchange, attached to Decl. of Harry Wilson in Supp. of Mot. for Summ. J. as Ex. 1 (Dkt. 510-1) at 1-2.)  OHA filed its Motion for Summary Judgment on December 17, 2021, without any concrete guidance about what FamilyCare would contend were its bases for the parties' alleged reasonable expectations.

FamilyCare's January 14, 2022 opposition brief unleashes an avalanche of new and never-before mentioned bases for the parties' reasonable expectations, including at least 14 Oregon statutory sections, nine sections of the CCO Contract, six OHA publications or presentations, new declaration testimony from FamilyCare's officers Jeff Heatherington and William Murray, and the Privileges and Immunities Clause of the Oregon Constitution. (FamilyCare's Opp'n to Mot. for Summ. J. (Dkt. 515) at 15-25.)  All told, FamilyCare identifies more than 40 purported separate bases for the parties' reasonable expectations.  Tellingly, however, FamilyCare does not cite federal Medicaid regulations in 42 C.F.R. Part 438, the former foundation of its claim.  In fact, even though FamilyCare testified in 2018 that its damages were based on actuarial soundness, FamilyCare barely contends that it is owed

---

[3]  In its Opposition, FamilyCare contends that it was not obligated to reveal the bases on which it intended to rely during conferral on this motion because OHA was attempting to use conferral "to obtain discovery."  (FamilyCare's Opp'n to Mot. for Summ. J. (Dkt. 515) at 11 ("OHA was not entitled to obtain discovery it failed to seek through traditional means under the guise of a Local Rule 7-1 conferral.").)  But OHA was not trying to obtain discovery; it was trying to learn FamilyCare's theory of its claim so that it could comply with the Court's order. *Davis v. Detroit Downtown Dev. Auth.*, No. 17-CV-11742, 2017 WL 11318204, at *3 (E.D. Mich. June 19, 2017) ("It is Plaintiffs' burden to identify a viable legal basis for their claim.")). Because FamilyCare did not reveal its precise bases until it filed its opposition, OHA did not know FamilyCare's latest good faith theory until January 14, 2022.

**Page 7 -   REPLY IN SUPPORT OF OREGON HEATH AUTHORITY'S PARTIAL MOTION FOR SUMMARY JUDGMENT ON FAMILYCARE'S THIRD CLAIM FOR RELIEF**

actuarially sound rates at all.  (*Id*. at 29 n.15 ("FamilyCare's reasonable expectations go beyond mere CMS approval of rates as actuarially sound.").)  FamilyCare's 2022 good faith claim is entirely different than its 2018 good faith claim.

**II.     Issue #2: The Court should prohibit FamilyCare from relying on its new, 2022 extracontractual bases for its good faith claim.**

The more than 40 bases FamilyCare now identifies in its January 14, 2022 opposition to OHA's summary judgment motion are nearly all new.  The Court should disallow FamilyCare from relying on those bases because (1) FamilyCare has impermissibly changed its theory of the case after the close of discovery; (2) FamilyCare's new bases contradict FamilyCare's Rule 30(b)(6) deposition testimony; and (3) FamilyCare failed to plead its new bases and, consequently, the parties took limited discovery on them during the brief three-and-a-half-month period the good faith claim was operative during discovery.

First, FamilyCare's 2022 good faith claim is entirely different than its 2018 good faith claim.  In 2018, FamilyCare contended that its good faith claim was premised on federal Medicaid regulations set out in 42 C.F.R. Part 438 that, according to FamilyCare, entitled it to actuarially sound rates.  (FamilyCare's Resp. in Opp'n to Defs.' 2018 Mot to Dismiss (Dkt. 39) at 25; FamilyCare's Mot. for Recons. (Dkt. 108) at 18-22.)  As FamilyCare stated in its 2018 Motion for Reconsideration, "at the time FamilyCare entered the [CCO Contract] with OHA, it reasonably expected that the contract would conform in all respects with the requirements of 42 C.F.R. Part 438."  (FamilyCare's Mot. for Recons. at 18-19.)

In 2022, FamilyCare no longer cites 42 C.F.R. Part 438 as a basis for the parties' alleged reasonable contractual expectations and it no longer seriously asserts that it has a reasonable expectation to actuarially sound rates.  Instead, FamilyCare now contends the "nature and terms of the CCO statutory framework and implementing contracts informed FamilyCare's reasonable expectations of rates that would permit FamilyCare to fulfill its obligations."  (FamilyCare's Opp'n to Mot. for Summ J. at 15.)  Whatever the merits of this contention, it is completely distinct from FamilyCare's 2018 theory.  FamilyCare's good faith claim is no longer based on federal Medicaid regulations and it no longer centers actuarial soundness as the primary

**Page 8 -     REPLY IN SUPPORT OF OREGON HEATH AUTHORITY'S PARTIAL MOTION FOR SUMMARY JUDGMENT ON FAMILYCARE'S THIRD CLAIM FOR RELIEF**

expectations from which each of the others are derived.  The Court should disallow FamilyCare from advancing this new theory: It is not in FamilyCare's pleadings, no party has taken discovery on it, and it was raised for the first time in FamilyCare's response to OHA's Motion for Summary Judgment.[4]  *Moore v. IMCO Recycling of CA, Inc.*, No. CV041304DSFVBKX, 2005 WL 5887179, at \*13 n.21 (C.D. Cal. June 29, 2005) ("Plaintiffs' attempt to change the basis of their negligent misrepresentation claim after the close of discovery is unavailing."); *Bulkoski v. Bacharach, Inc.*, 1 F. Supp. 2d 484, 487 n.6 (W.D. Pa. 1997), *aff'd*, 149 F.3d 1163 (3d Cir. 1998) ("it is too late for plaintiff to change his theory of the case" after summary judgment).

Second, FamilyCare's Rule 30(b)(6) deposition testimony established the bases and contours of its good faith claim.  FamilyCare may not advance a new theory that contradicts that testimony.  *Snapp v. United Transportation Union*, 889 F.3d 1088, 1103 (9th Cir. 2018) (A "corporation generally cannot present a theory of the facts that differs from that articulated by the designated Rule 30(b)(6) representative." (Quoting 7 James Wm. Moore et al., Moore's Federal Practice § 30.25[3] (3d ed. 2016) (emphasis omitted))).  In deposition, FamilyCare testified that "CMS rules and regulations talk about the development of actuarially sound rates," and, accordingly, "FamilyCare's understanding and expectation from all of that is that it is due actuarially sound rates under this contract."  (7/17/18 FamilyCare 30(b)(6) Dep. 273:7-274:9, First Wilson Decl. (Dkt. 510), Ex. 2.)  FamilyCare's new reliance on more than 40 sources other than CMS rules and regulations is inconsistent with this testimony and presents a new theory of the facts that differs from its Rule 30(b)(6) testimony.

FamilyCare also testified that its other alleged expectations, that the rates would be "free from errors" and adequate, were simply derivations of its expectation that it was owed actuarially sound rates.  As FamilyCare explained in its 2018 deposition, its expectations that the rates

---

[4] If, as FamilyCare originally alleged, the parties' expectation between 2014 and 2017 was that FamilyCare would receive actuarially sound rates based on federal Medicaid regulations, it cannot retroactively change those expectations simply by asserting a different legal theory in 2022.

**Page 9 -    REPLY IN SUPPORT OF OREGON HEATH AUTHORITY'S PARTIAL MOTION FOR SUMMARY JUDGMENT ON FAMILYCARE'S THIRD CLAIM FOR RELIEF**

would be free of errors and actuarially sound "are related and inseparable." (*Id*. at 276:11-12.) And FamilyCare's deposition testimony about the basis for its damages leaves no doubt that FamilyCare's sole expectation was for actuarially sound rates. When asked how FamilyCare calculated its rate-setting damages, it testified that "FamilyCare believes that the rates needed to be actuarially sound. So it would be a calculation of actuarially sound rates versus what was actually paid." (7/16/18 FamilyCare 30(b)(6) Dep. at 98:6-7, Second Wilson Decl., Ex. 1.) FamilyCare's new, 2022 argument that its "reasonable expectations go beyond mere CMS approval of rates as actuarially sound" squarely contradicts this Rule 30(b)(6) deposition. (FamilyCare's Opp'n to Mot. for Summ. J. at 23 n.15.) The Court should reject FamilyCare's attempt to create a new good faith theory that contradicts its Rule 30(b)(6) deposition testimony. *See Greyhound Lines, Inc. v. Miller*, 402 F.2d 134, 143 (8th Cir. 1968) ("The purpose of our modern discovery procedure is to narrow the issues, to eliminate surprise, and to achieve substantial justice.").

Third, FamilyCare failed to plead its new bases for its good faith claim and, consequently, OHA was not on notice to take discovery on them. FamilyCare's good faith claim was operative in this litigation for just three-and-a-half months. FamilyCare filed the claim on February 15, 2018 (dkt. 1-1 at 501-553), and the Court dismissed it with prejudice on June 1, 2018. (Dkt. 105.) Most of OHA's depositions of FamilyCare and its executives took place after the Court dismissed the claim, including the depositions of FamilyCare's Chief Executive Officer Jeff Heatherington, Chief Financial Officer William Murray, Vice President of Finance Kevin Clancy, and Controller Tony Jackson. FamilyCare's Rule 30(b)(6) deposition took place nearly two months after the Court dismissed the good faith claim with prejudice. As explained above, OHA did take limited discovery on FamilyCare's original good faith claim, including in the Rule 30(b)(6) deposition, but OHA has never had the opportunity to take discovery on FamilyCare's new version of the good faith claim.

FamilyCare never provided OHA any notice in 2018—in pleadings or elsewhere—that it would, in 2022, rely on a theory of good faith based on some 40 specific sources identified for

**Page 10 - REPLY IN SUPPORT OF OREGON HEATH AUTHORITY'S PARTIAL MOTION FOR SUMMARY JUDGMENT ON FAMILYCARE'S THIRD CLAIM FOR RELIEF**

the first time in its Opposition to summary judgment.  The Third Amended Complaint, which FamilyCare filed on February 15, 2018, alleged that FamilyCare's version of the parties' reasonable expectations was based on "the Contract and applicable law."  FamilyCare did not identify any specific sections of the Contract or provisions of law in its claim.  In its opposition to OHA's 2018 motion to dismiss the claim, FamilyCare cited federal Medicaid regulations. (FamilyCare's Resp. in Opp'n to Defs.' 2018 Mot. to Dismiss (Dkt. 39) at 18.)  In its Motion for Reconsideration, it did the same, contending that the CCO Contract, 1115 Waiver, and various extracontractual statements were relevant only in so far as they supposedly indicated that OHA would follow Medicaid regulations.  (Mot. for Recons. (Dkt. 108) at 18-21.)  FamilyCare cited case law discussing industry standards, but never argued that specific industry standards formed the basis of its claim.  (*Id.* at 17 (citing case law referring to industry standards).)  FamilyCare failed to give OHA fair notice in 2018—either in its Third Amended Complaint, briefing, or deposition testimony—of the theory of good faith on which it now relies.  *See Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) (complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively").

This Court should disallow FamilyCare from advancing its good faith claim and grant summary judgment in favor of OHA because FamilyCare's claim is based on theories and facts that it never asserted before January 14, 2022.  The parties have not had the opportunity to take discovery on the claim and it is now, three years after the close of discovery, too late for FamilyCare to adopt a new theory that contradicts its earlier Rule 30(b)(6) deposition testimony.

**III.    Issue #3: The Court should grant summary judgment to OHA on FamilyCare's good faith claim because there is no dispute of material fact that FamilyCare has not adduced evidence to advance its good faith claim.**

The parties' only reasonable contractual expectations were that OHA would actuarially set and certify the rates and submit them to CMS for approval.  There is no dispute of material fact that OHA actuarially set the 2017 and 2018 rates and submitted them to CMS for approval. The Court should, therefore, grant summary judgment in favor of OHA on FamilyCare's good faith claim.

**Page 11 - REPLY IN SUPPORT OF OREGON HEATH AUTHORITY'S PARTIAL
            MOTION FOR SUMMARY JUDGMENT ON FAMILYCARE'S THIRD
            CLAIM FOR RELIEF**

A.    **The 2016 Settlement Agreement confirms that FamilyCare did not have reasonable expectations other than that OHA had authority to set the rates subject to CMS approval.**

Even if the Court considers FamilyCare's new, 2022 version of its good faith claim, it should grant summary judgment to OHA because FamilyCare's current version of the parties' alleged reasonable expectations are contradicted by FamilyCare's own representations in the 2016 Settlement Agreement.

In the 2016 Settlement Agreement, which FamilyCare signed in May 2016, before OHA issued the 2017 and 2018 rates, FamilyCare agreed that "OHA has the authority to set the CCO rates under which OHA contracts with CCOs, subject to CMS approval." (Settlement Agreement § 1.a. (Dkt. 155-2 at 3).) FamilyCare also agreed that CMS is the arbiter of whether rates are actuarially sound: "OHA must establish to the satisfaction of CMS that the rates are actuarially sound[.]" (*Id.* § 1.b.) And FamilyCare agreed that OHA was not obligated to adjust FamilyCare's rates to cover FamilyCare's costs: "OHA is not obligated to adjust the rates paid to any CCO to ensure that such rates cover all costs that a CCO has incurred during a rate year[.]" (*Id.* § 1.d.)

FamilyCare's 2022 version of its good faith claim directly contradicts its own representations of the parties' expectations in the Settlement Agreement. For example, FamilyCare asserts that it is entitled to rates that "would permit FamilyCare to fulfill its obligations." (FamilyCare's Opp'n to Mot. for Summ. J. at 15.) But FamilyCare agreed in 2016 that "OHA is not obligated to adjust rates . . . to ensure such rates cover all costs that a CCO has incurred[.]" (Settlement Agreement § 1.d.) FamilyCare now asserts that OHA's discretion to set rates is cabined by FamilyCare's alleged expectations about reasonableness, adequacy, bias, and accuracy in data and methodology. (FamilyCare's Opp'n to Mot. for Summ. J. at 19-23.) But in 2016, FamilyCare expressly agreed that OHA had authority to set the rates, subject to CMS's satisfaction, not FamilyCare's. (Settlement Agreement §§ 1.a, 1.b.) FamilyCare's express, agreed, and signed representations confirming OHA's authority nullifies FamilyCare's new assertions about different expectations. The parties' only reasonable expectations are those that

**Page 12 - REPLY IN SUPPORT OF OREGON HEATH AUTHORITY'S PARTIAL MOTION FOR SUMMARY JUDGMENT ON FAMILYCARE'S THIRD CLAIM FOR RELIEF**

they expressly agreed to, both in the CCO Contract and the 2016 Settlement Agreement: OHA would actuarially set and certify the rates and submit them to CMS for approval.

FamilyCare argues that the 2016 Settlement Agreement "did not curtail any of FamilyCare's expectations or waive any of its rights." (FamilyCare's Opp'n to Mot. for Summ. J. at 25.) But OHA is not contending that the 2016 Settlement Agreement changed FamilyCare's reasonable expectations; the 2016 Settlement Agreement demonstrates what FamilyCare's reasonable expectations *actually were* in 2016. It erases, nullifies, and contradicts FamilyCare's present contention, in this litigation, that it had different, far more expansive expectations. What FamilyCare represented in 2016—that OHA had authority to set rates subject only to CMS's approval—is what OHA and FamilyCare reasonably expected at the time OHA developed the 2017 and 2018 rates. FamilyCare's attempt now, in 2022, to contend the parties had different expectations is not consistent with what the parties agreed in 2016 and, accordingly, should not be given any weight.[5]

There is no dispute of material fact that OHA actuarially set and certified the rates and submitted them to CMS for approval.[6] (5th Am. Compl. ¶ 33 (OHA actuarially certified 2017 rates); Decl. of Lynne Saxton, Ex. 1 (Dkt. 509-1) (confirmed CMS received OHA's proposed 2017 rates); 5th Am. Compl. ¶ 62 (Optumas, OHA's outside actuary, developed the 2018 rates); Decl. of Matthew Gordon, Ex. 14 (Dkt. 20-14) (transmission of 2018 rates to CMS).) OHA met the parties' reasonable contractual expectations.

---

[5] FamilyCare also cites to the Settlement Agreement's dispute resolution section to contend that the Settlement Agreement "underscores OHA's commitment . . . that OHA would set rates in good faith." (FamilyCare's Opp'n to Mot. for Summ. J. at 25.) But that section does not set the parties' expectations about performance of the CCO Contract; it creates an optional dispute resolution protocol.

[6] FamilyCare submits two expert declarations with its opposition. (Decl. of Peter Davidson (Dkt. 518) and Donna Novak (Dkt. 519).) Both declarations are subject to numerous evidentiary objections. But because the parties' only reasonable expectations were that OHA would actuarially set and certify the rates and submit them to CMS for approval, neither declaration is relevant to determination of OHA's motion. If FamilyCare re-introduces Davidson's and Novak's opinions in the future, OHA reserves its rights to challenge the admissibility and validity of their opinions. *See* Local Rule 56-1 commentary (party may challenge admissibility at trial even if not challenged on summary judgment).

**Page 13 - REPLY IN SUPPORT OF OREGON HEATH AUTHORITY'S PARTIAL MOTION FOR SUMMARY JUDGMENT ON FAMILYCARE'S THIRD CLAIM FOR RELIEF**

B.      **FamilyCare's alleged reasonable expectations undermine the CCO Contract.**

The "implied covenant of good faith and fair dealing does not vary the substantive terms of the contract or impose obligations inconsistent with the terms of the contract." *Morrow v. Red Shield Ins. Co.*, 212 Or. App. 653, 662 (2007). FamilyCare's alleged reasonable expectations would, by implication, make OHA accountable to FamilyCare for development of rates in addition to CMS. Such an implied contractual right is inconsistent with the terms of the CCO Contract because it would subject OHA to multiple standards for development of CCO rates, potentially trapping OHA between contradictory decisions by CMS on one hand and courts on the other.

The CCO Contract provides OHA with discretion to set FamilyCare's rates, subject to CMS approval. (2017 CCO Contract (Dkt. 433-13 at 7), § I.A ("the CCO Payment Rates contained herein[ are] subject to approval by the . . . Centers for Medicare and Medicaid Services").) The CCO Contract allows FamilyCare to reject the proposed rates by refusing to agree to a rate amendment, but it does not provide FamilyCare any guarantees about the manner in which OHA would develop the rates, other than that OHA would submit them to CMS for approval. Investing FamilyCare with an implied right to contest OHA's rate development would undermine the Contract's express provision that CMS approves the rates by making OHA accountable to FamilyCare under different standards. It would also contradict federal Medicaid regulations, which establish that OHA must develop rates for CMS's approval. 42 C.F.R. § 438.4(b) ("Capitation rates for [CCOs] must be reviewed and approved by CMS[.]").

Finding an implied right for FamilyCare to contest OHA's rates could, moreover, threaten the entire CCO system. OHA develops rates for more than a dozen CCOs as part of a unified rate-development process. CMS reviews and approves the rates for all CCOs. (*See* Decl. of Lynne Saxton, Ex. 1 (Dkt. 509-1) (Letter from CMS to OHA approving 2017 rates for 16 CCOs).) If FamilyCare can challenge its rates, every CCO can, potentially exposing OHA to dozens of conflicting judicial decisions that contradict CMS's determination.

**Page 14 - REPLY IN SUPPORT OF OREGON HEATH AUTHORITY'S PARTIAL**
                **MOTION FOR SUMMARY JUDGMENT ON FAMILYCARE'S THIRD**
                **CLAIM FOR RELIEF**

FamilyCare contends that the Ninth Circuit has "rejected" this argument. (FamilyCare's Opp'n to Mot. for Summ. J. at 41 n.24.) Not so. The portion of the Ninth Circuit's opinion to which FamilyCare cites is addressing Medicaid preemption, not the implied duty of good faith. *Allen*, 812 F. App'x at 418. Just because the Ninth Circuit held that federal Medicaid law does not preempt all state action does not mean that FamilyCare may imply rights into the CCO Contract that would undermine that Contract and the federal Medicaid regulations that govern OHA's relationship with CMS.

OHA and FamilyCare reasonably expected, based on the CCO Contract, the 2016 Settlement Agreement, and federal Medicaid regulations, that OHA would actuarially set and certify rates and submit them to CMS for approval. There is no material dispute of fact that OHA did just that. The Court should grant summary judgment to OHA on FamilyCare's good faith claim.

### C.    The implied duty of good faith does not create free-floating obligations that exist apart from the express terms of the contract.

The implied duty of good faith "does not operate in a vacuum, rather it focuses on the agreed common purpose and the justified expectations of the parties, both of which are intimately related to the parties' manifestation of their purposes and expectations in the express provisions of the contract." *Klamath Off-Project Water Users, Inc. v. Pacificorp*, 237 Or. App. 434, 445 (2010). FamilyCare repeatedly argues that "OHA is bound to exercise [its] discretion in good faith." (FamilyCare's Opp'n to Mot. for Summ. J. at 40.) But, so long as the parties comply with the express terms of the CCO Contract, the duty of good faith does not establish— independently of the parties' manifestation of their purposes and expectations—an implied right that either parties' actions must be free of bias or unpleasant motives. "The doing of a lawful thing in a lawful way is not tinctured or made less lawful by elsewhere describing it as the product of derogatory motives on the part of the doer." *Bliss v. S. Pac. Co.*, 212 Or. 634, 646 (1958). The Oregon Supreme Court is clear on this point. "The obligation of good faith does not . . . provide a remedy for an unpleasantly motivated act that is expressly permitted by contract or statute." *U.S. Nat. Bank of Oregon v. Boge*, 311 Or. 550, 567 (1991). Because the parties' only

**Page 15 - REPLY IN SUPPORT OF OREGON HEATH AUTHORITY'S PARTIAL MOTION FOR SUMMARY JUDGMENT ON FAMILYCARE'S THIRD CLAIM FOR RELIEF**

reasonable contractual expectations, as determined by the CCO Contract, the 2016 Settlement Agreement, and federal Medicaid regulations, were that OHA would actuarially set and certify the rates and submit them to CMS for approval, FamilyCare did not have any reasonable expectations about OHA's motives in developing rates.

> **D.      FamilyCare's timeliness theory fails because ORS 414.652(4) does not create an implied contractual duty and, in any event, FamilyCare suffered no damages.**

This Court should grant OHA summary judgment on FamilyCare's timeliness theory because (1) the 60-day statutory timeline was not an implied term of the contract and (2) FamilyCare had already considered and rejected the proposed 2018 rate amendment before any supposed "ultimatum" from Director Allen.  OHA made both of these arguments in its Motion for Summary Judgment, and FamilyCare does not directly respond to them.

> **1.      The 60 days' notice requirement in ORS 414.652(4) is not an implied term of the CCO Contract.**

First, FamilyCare may not rely on ORS 414.652(4) to create implied duties.  In Oregon, "an external source of law," such as a statute, is not an implied contract term that can be enforced under the duty of good faith unless there is evidence that parties intended to enforce the statute through the implied duty.  *Oregon Univ. Sys. v. Oregon Pub. Emps. Union, Local 503*, 185 Or. App. 506, 518 (2002); *Fleshman v. Wells Fargo Bank*, 27 F. Supp. 3d 1127, 1136 (D. Or. 2014). FamilyCare never responds to this argument, which is fatal to its timeliness theory.  Instead, in a footnote, FamilyCare irrelevantly contends that complying with the timelines set out in ORS 414.652(4) was not an *express* term of the contract.  (FamilyCare's Opp'n to Mot. for Summ. J. at 34 n. 18.)  That may be so, but it does not answer OHA's argument.  FamilyCare has not adduced any evidence that the parties expected to enforce ORS 414.652(2) through the implied duty.  *Oregon Univ. Sys.*, 185 Or. App. at 518 (Rejecting incorporation of statute into duty of good faith where plaintiff "has not cited any evidence . . . supporting the proposition that these parties expected that general labor law rights and obligations would be enforced by means of a

duty implied in their [collective bargaining agreement].") Accordingly, FamilyCare has failed to establish a breach of the implied duty.[7]

### 2. FamilyCare had already decided to reject the 2018 Rate Amendment by the December 20, 2017 "ultimatum."

Second, on the merits, FamilyCare agrees that "FamilyCare's Board voted to reject" the 2018 Amendment before the "ultimatum" allegedly cut short its time to consider the Amendment. (FamilyCare's Opp'n to Mot. for Summ. J. at 38.) Thus, the ultimatum did not harm FamilyCare. In its response, FamilyCare asserts that the 2018 Amendment was "faulty and biased" and if the supposed errors in the rates had been fixed, FamilyCare might have accepted them. (*Id.* at 37-38.) But this argument merely restates FamilyCare's theory with respect to errors in the rates. In its complaint, FamilyCare pleaded as distinct theories that OHA's 2018 Amendment was based on "errors" in the underlying data and that the 2018 Amendment was not "timel[y]" because the "ultimatum" truncated its time to consider the Amendment. (5th Am. Compl. ¶¶ 107, 108.) In its summary judgment briefing, FamilyCare does not provide any independent evidence or argument demonstrating how it was harmed by the *timeliness* of the 2018 Rate Amendment, only that the *amount* of the rates should have been higher. (FamilyCare's Opp'n to Mot. for Summ. J. at 38 (arguing that before the ultimatum FamilyCare worked "assiduously" to obtain "new rates").) Because FamilyCare concedes that it was not harmed by any lack of timeliness, there is no dispute of material fact that FamilyCare was not damaged by the alleged "ultimatum."[8]

---

[7] To the extent FamilyCare is relying on bases for its alleged timeliness expectation that go beyond ORS 414.652, the Court should disallow those bases for the reasons set forth in § 2, *supra*. FamilyCare pleaded its timeliness good faith theory for the first time in the Fifth Amended Complaint, filed in 2021 after the close of discovery, and its pleadings have never alleged any basis for the theory other than ORS 414.652. (*See* 5th Am. Compl. ¶ 108 (citing only ORS 414.652).)

[8] As OHA pointed out in its Motion, OHA vigorously disputes that Director Allen issued any such "ultimatum." (OHA's Mot. for Summ. J. at 31.) OHA's arguments in this Motion and Reply do not, in any way, concede its contention that there was no such ultimatum.

**Page 17 - REPLY IN SUPPORT OF OREGON HEATH AUTHORITY'S PARTIAL MOTION FOR SUMMARY JUDGMENT ON FAMILYCARE'S THIRD CLAIM FOR RELIEF**

**3.    There is no evidence that FamilyCare would have remained in the CCO market if it had known the amount of the revised 2018 rates.**

FamilyCare also contends—wrongly—that had "OHA timely provided FamilyCare" with the revised 2018 rates, "FamilyCare would have been able to consider whether those rates would have allowed FamilyCare to stay in business." (Opp'n to Mot. for Summ J. at 38.)  No valid and admissible evidence supports this argument.  FamilyCare cites to paragraph 43 of the declaration of William Murray, but Mr. Murray's declaration contradicts his own testimony as FamilyCare's corporate designee and is outside of the scope of his knowledge.

Pursuant to Rule 56(c)(2) and Local Rule 56-1(b), OHA moves the Court to strike the underlined portions of paragraph 43 of William Murray's deposition:[9]

> The revised 2018 rates would have paid FamilyCare an additional approximately $20 million if FamilyCare had remained in business for the entirety of 2018. <u>Had OHA timely provided FamilyCare with these final rates for 2018</u>—which OHA presented only after FamilyCare had already closed its doors, and only after OHA made sure that FamilyCare could not re-enter the Medicaid market via express language in the parties' one-month contract, the inclusion of which OHA insisted on—<u>FamilyCare's board could have voted to accept those rates so that FamilyCare could stay in business long enough to try to bridge the budgetary gap created by OHA's faulty rate-setting</u>.

(Decl. of William Murray (Dkt. 519) ¶ 43 (emphasis added).)  The underlined statement contradicts Mr. Murray's Rule 30(b)(6) testimony on behalf of FamilyCare.  In that deposition, OHA asked FamilyCare if it would have stayed open if it had known that it was going to receive $20 million more in rates.  Mr. Murray testified, on behalf of FamilyCare, that he was unable to answer the question, but implied that FamilyCare would have still left the market:

> Q: If the $20 million adjustment had been known in December of 2017, would that have been sufficient to allow FamilyCare to remain open in 2018?  In other words, if, in fact, what you learned in the end of January 2018 had been known in the early part of December of 2017, what difference would it have made in the decision to close?
>
> [objection of counsel omitted]

[9] As required by Local Rules 7-1(a) and 56-1(b), counsel for OHA conferred by telephone with counsel for FamilyCare regarding this Motion.  The parties were unable to resolve the dispute in conferral.

**Page 18 - REPLY IN SUPPORT OF OREGON HEATH AUTHORITY'S PARTIAL MOTION FOR SUMMARY JUDGMENT ON FAMILYCARE'S THIRD CLAIM FOR RELIEF**

A:  I don't know the answer to that because that didn't happen.

Q:  There still would have been a $75 million projected loss for 2018?

A:  Yes.

Q:  And was that so substantial that the board would have not permitted Mr. Heatherington to sign the 2018 contract?

[objection of counsel omitted]

A:  I don't know the answer to that question.

Q:  So, again, I'm not asking about you, I'm asking about FamilyCare.  Is it FamilyCare's position that if it had known its projected loss for 2018 was $75 million it would have stayed in business and signed a 2018 contract?

[objection of counsel omitted]

A:  I don't know the answer.  That size of a loss is still substantial.

(7/16/2018 FamilyCare 30(b)(6) Dep. at 52:16-53:23, Second Wilson Decl, Ex. 1.)

The Court should strike the portions of Mr. Murray's declaration that contradict FamilyCare's deposition testimony. "If a party who was examined at length in depositions can raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Kennedy v. Allied Mutual Ins.*, 952 F.2d 262, 266 (9th Cir.1991) (citation and internal quotations omitted).  A declaration is not a "sham" if the party offering the declaration is "elaborating upon, explaining or clarifying prior testimony elicited by opposing counsel on deposition." *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998-99 (9th Cir.2009).  But Mr. Murray is not elaborating upon, explaining, or clarifying prior testimony.  Where he formerly testified, as FamilyCare, that he did not "know the answer" to the question, he now claims, on behalf of only himself, to know that "FamilyCare's board could have voted to accept those rates."  Mr. Murray's declaration is not more detailed or more precise than FamilyCare's deposition; it is different.  The Court should strike the sham portions of Mr. Murray's declaration. *Galvan v. Walt Disney Parks & Resorts, U.S., Inc.*, No. SACV1801721ABFFMX,

**Page 19 - REPLY IN SUPPORT OF OREGON HEATH AUTHORITY'S PARTIAL MOTION FOR SUMMARY JUDGMENT ON FAMILYCARE'S THIRD CLAIM FOR RELIEF**

2019 WL 8017810, at *3 (C.D. Cal. Nov. 27, 2019) (striking declaration stating that declarant suffered from a "panic disorder" when declarant testified in deposition that he only suffered from "anxiety"); *Snapp*, 889 F.3d at 1103 (A "corporation generally cannot present a theory of the facts that differs from that articulated by the designated Rule 30(b)(6) representative." (Citation omitted)).

The Court should also strike paragraph 43 of Mr. Murray's declaration because Mr. Murray is not competent to testify about what the FamilyCare Board "could" have voted for. Mr. Murray was not a member of FamilyCare's board and, in his personal deposition, Mr. Murray testified that he "had relatively limited board interactions."  (7/27/2018 Murray Depo. Tr. 69:19-20, Second Wilson Decl., Ex. 2.)  Mr. Murray has no basis for knowing what the Board "could" or could not do.  The Court can and should exclude his self-serving speculation.  *Boyd v. City of Oakland*, 458 F. Supp. 2d 1015, 1025 (N.D. Cal. 2006) (excluding testimony outside scope of witness's personal knowledge).

Thus, there is no genuine issue of material fact that before the supposed "ultimatum" FamilyCare had already decided to reject the 2018 Rate Amendment and close its Medicaid business.  There is no evidence that knowledge of OHA's later, revised rates would have changed that decision.  Accordingly, FamilyCare was not damaged by the alleged "ultimatum."

## CONCLUSION

For the foregoing reasons, the Court should grant OHA summary judgment on FamilyCare's good faith claim.

DATED this 28th day of January, 2022.

> ELLEN ROSENBLUM
> ATTORNEY GENERAL
> FOR THE STATE OF OREGON
>
>
> By:    *s/ Harry B. Wilson*
> _____
> David B. Markowitz, OSB #742046
> DavidMarkowitz@MarkowitzHerbold.com
> Harry B. Wilson, OSB #077214
> HarryWilson@MarkowitzHerbold.com

**Page 20 - REPLY IN SUPPORT OF OREGON HEATH AUTHORITY'S PARTIAL MOTION FOR SUMMARY JUDGMENT ON FAMILYCARE'S THIRD CLAIM FOR RELIEF**

Laura Salerno Owens, OSB #076230
LauraSalerno@MarkowitzHerbold.com

*Special Assistant Attorneys General for Defendant Oregon Health Authority, an agency of the State of Oregon*

1238248

**Page 21 - REPLY IN SUPPORT OF OREGON HEATH AUTHORITY'S PARTIAL MOTION FOR SUMMARY JUDGMENT ON FAMILYCARE'S THIRD CLAIM FOR RELIEF**