IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| PATRICK ALLEN, in his official capacity as DIRECTOR OF OREGON HEALTH AUTHORITY, an agency of the State of Oregon, ) ) ) ) ) ) | Case No. 3:18-cv-00212-MO (Leading) |
| Plaintiff, ) | Case No. |
| vs. ) | 6:18-cv-00296-MO (Trailing) |
| FAMILYCARE, INC., an Oregon non-profit corporation, ) ) ) | VOLUME I |
| Defendant. ) ) ) ) | VIDEOTAPED FRCP 30(b)(6) DEPOSITION OF |
| FAMILYCARE, INC., an Oregon non-profit corporation ) ) ) | WILLIAM MURRAY |
| Plaintiff, ) ) | Taken in Behalf of Defendants |
| vs. ) | July 16, 2018 |
| OREGON HEALTH AUTHORITY, an agency of the State of Oregon, and PATRICK ALLEN, both individually and in his official capacity as director of the Oregon Health Authority, ) ) ) ) ) ) ) | 1120 N.W. Couch Street, 10th Floor Portland, OR 97209 |
| Defendants. ) ) | |

Teresa L. Dunn,

Court Reporter

CSR, CCR, RPR

William Murray, 7/16/2018          Allen v. FamilyCare, Inc.

2

APPEARANCES:


For the Plaintiff:

MR. THOMAS R. JOHNSON
MS. ALETTA BRENNER
Perkins Coie, LLP
Tenth Floor
1120 N.W. Couch Street
Portland, OR 97209
503-727-2076
trjohnson@perkinscoie.com
abrenner@perkinscoie.com


For the Defendants:

MR. DAVID B. MARKOWITZ
MS. LAURA SALERNO OWENS
Special Assistant Attorneys General
Markowitz Herbold Glade & Mehlhaf, P.C.
Suite 3000
1211 S.W. Fifth Avenue
Portland, OR 97204
503-295-3085
davidmarkowitz@markowitzherbold.com
laurasalerno@markowitzherbold.com

MR. THEODORE C. FALK
Senior Assistant Attorney General
Oregon Department of Justice
1162 Court Street, N.E.
Salem, OR 97301
503-947-4430
theodore.falk@doj.state.or.us


Also Present:
Camille Schmitt, Videographer
Greg Scott
Laura Robison
Renee Steiman
Artur Suchorzewski



Schmitt Reporting & Video, Inc.
(360) 695-5554 -- (503) 245-4552 -- (855) 695-5554

William Murray, 7/16/2018          Allen v. FamilyCare, Inc.

42

Q.    (By Mr. Markowitz) Does FamilyCare contend that it has a contract right to rates permitted to cover all of its expenses?

A.    FamilyCare has a belief that the rates need to be appropriate and attainable with regards to, you know, its ability to go forward.

Q.    Okay.  That's different than my question.

My question is is it FamilyCare's contention that it has a contract right to rates that are high enough to allow the company to break even or make a profit?

A.    FamilyCare believes that its costs are reasonable and that the rates are required to be, you know, reasonable and attainable.

Q.    Okay.  You still haven't answered my question.

A very simple yes or no, is it FamilyCare's contention that it has a contract right to have rates set high enough to meet its expenses?

A.    FamilyCare --

MR. JOHNSON:  I'm sorry, object to the form of the question, calls for a legal conclusion.

Schmitt Reporting & Video, Inc.
(360) 695-5554 -- (503) 245-4552 -- (855) 695-5554

William Murray, 7/16/2018                Allen v. FamilyCare, Inc.

43

THE WITNESS:  What FamilyCare believes is it has a right to actuarially sound rates.

Q.    (By Mr. Markowitz) Whether or not it generates sufficient revenue to meet your expenses?

A.    FamilyCare believes it has a right to actuarially sound rates.

Q.    Whether or not they meet your expenses?

A.    I'm not sure I follow what you mean by whether or not they meet our expenses.

Q.    Well, if there are actuarially sound rates that still generate a loss and that loss is so high that you have to go out of business, do you contend that there is a contract claim because of that?

A.    FamilyCare believes that the rates need to be actuarially sound for FamilyCare for each rate cell.  And that's what FamilyCare believes.

Q.    Well, I will ask it one more time and then if you don't answer it I will contend you cannot later answer it.

Is there a contention in this case that the -- that the rates that were set by OHA needed to be high enough such that FamilyCare would have sufficient revenue to allow it to

Schmitt Reporting & Video, Inc.
(360) 695-5554 -- (503) 245-4552 -- (855) 695-5554

Ex. 1 - Wilson Decl.
Page 4 of 9

William Murray, 7/16/2018                Allen v. FamilyCare, Inc.

52

after, but it was somewhere in that -- that time frame.

Q.    And how did the determination by OHA as to the size of the adjustments that would be made for 2018, how did that impact the ultimate decision to close?

A.    That decision had already been made because the one-month extension was made as we talked about just a little bit ago after the 24-hour situation with Mr. Allen.

And ultimately the one-month extension included a provision that OHA did not intend to extend that contract at all.

So the decision -- there was no opportunity at that point in time.

Q.    If the $20 million adjustment had been known in December of 2017, would that have been sufficient to allow FamilyCare to remain open in 2018?

In other words, if, in fact, what you learned in the end of January 2018 had been known in the early part of December of 2017, what difference would it have made in the decision to close?

MR. JOHNSON:  Object to the form of the

Schmitt Reporting & Video, Inc.
(360) 695-5554 -- (503) 245-4552 -- (855) 695-5554

Ex. 1 - Wilson Decl.
Page 5 of 9

William Murray, 7/16/2018                Allen v. FamilyCare, Inc.

53

question.

THE WITNESS:  I don't know the answer to that because that didn't happen.

Q.  (By Mr. Markowitz) There still would have been a $75 million projected loss for 2018?

A.  Yes.

Q.  And was that so substantial that the board would have not permitted Mr. Heatherington to sign the 2018 contract?

MR. JOHNSON:  Object to the form of the question.

THE WITNESS:  I don't know the answer to that question.

Q.  (By Mr. Markowitz) So, again, I'm not asking about you, I'm asking about FamilyCare.

Is it FamilyCare's position that if it had known its projected loss for 2018 was $75 million it would have stayed in business and signed a 2018 contract?

MR. JOHNSON:  Object to the form of the question.

THE WITNESS:  I don't know the answer. That size of a loss is still substantial.

Q.  (By Mr. Markowitz) Okay.  And the board had directed Mr. Heatherington not to enter into

Schmitt Reporting & Video, Inc.
(360) 695-5554 -- (503) 245-4552 -- (855) 695-5554

William Murray, 7/16/2018                    Allen v. FamilyCare, Inc.

97

have been filed we have asked to not be excluded or somehow put at a disadvantage with regards to any future contracting with OHA and to the extent that did happen that FamilyCare could be restored as quickly as possible to the point it was at when the contract was terminated.

Q.    Any other damages asserted or other remedies sought?

A.    Not from my layman's perspective.  We want to be treated equally and fairly and if we weren't those are legal issues at that point in time.

Q.    Let me be clear.  I'm not asking you questions as Bill Murray layman, CPA.

I'm asking you as the officially designated spokesperson for FamilyCare on the topic of the damages, remedies, and penalties sought by FamilyCare in the present action.

You have given me your complete list?

A.    I have given you my list as FamilyCare. The other are discussions that we have had with legal counsel around those legal remedies.

Q.    All right.  On a rate differential for what years does FamilyCare contend that it is entitled to damages for rate differential?

Schmitt Reporting & Video, Inc.
(360) 695-5554 -- (503) 245-4552 -- (855) 695-5554

William Murray, 7/16/2018                Allen v. FamilyCare, Inc.

98

A.    For 2017 and 2018.

Q.    And how is that rate differential to be calculated?

A.    Well, FamilyCare believes that the rates needed to be actuarially sound.  So it would be a calculation of actuarially sound rates versus what was actually paid.

Q.    And for 2017 what is that amount?

A.    That amount FamilyCare has not been able to calculate that.  We are still waiting for discovery documents.  We have talked about the fact that we haven't been able to see a number of AEO documents.

So FamilyCare has not been able to calculate that amount because it does not have the information necessary to complete that calculation.

Q.    So for 2017 you said there are two pieces to the equation that creates the rate differential, amount paid versus what actuarially sound rates would have been, you know the amount paid for 2017, correct?

A.    We do.

Q.    So what you have been unable to calculate is the actuarially sound rates for

Schmitt Reporting & Video, Inc.
(360) 695-5554 -- (503) 245-4552 -- (855) 695-5554

Ex. 1 - Wilson Decl.
Page 8 of 9

William Murray, 7/16/2018          Allen v. FamilyCare, Inc.

142

C E R T I F I C A T E

I, Teresa L. Dunn, a Certified Shorthand Reporter for Oregon, do hereby certify that, pursuant to stipulation of counsel for the respective parties hereinbefore set forth, WILLIAM MURRAY personally appeared before me at the time and place set forth in the caption hereof; that at said time and place I reported in Stenotype all testimony adduced and other oral proceedings had in the foregoing matter; that thereafter my notes were reduced to typewriting under my direction; and that the foregoing transcript, pages 1 to 141, both inclusive, constitutes a full, true and accurate record of all such testimony adduced and oral proceedings had, and of the whole thereof. Witness my hand and CSR stamp at Vancouver, Washington, this 18th day of July, 2018.

_____
TERESA L. DUNN
Certified Shorthand Reporter
Certificate No. 00-0367
Commission Expires:  6/30/20

Schmitt Reporting & Video, Inc.
(360) 695-5554 -- (503) 245-4552 -- (855) 695-5554