**Stephen F. English**, OSB No. 730843
SEnglish@perkinscoie.com
**Thomas R. Johnson**, OSB No. 010645
TRJohnson@perkinscoie.com
**Matthew J. Mertens**, OSB No. 146288
MMertens@perkinscoie.com
**Sasha Petrova,** OSB No.  154008
SPetrova@perkinscoie.com
**PERKINS COIE LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Telephone: 503.727.2000
Facsimile:  503.727.2222

**Matthew Gordon**, *pro hac vice*
MGordon@perkinscoie.com
**David B. Robbins**, OSB No. 070630
DRobbins@perkinscoie.com
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000

*Attorneys for Plaintiff FamilyCare, Inc.*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| FAMILYCARE, INC., an Oregon non-profit corporation,<br><br>                    Plaintiff,<br><br>        v.<br><br>OREGON HEALTH AUTHORITY, an agency of the State of Oregon, and LYNNE SAXTON,<br>                    Defendants. | No. 6:18−cv−00296−MO<br><br><br>**PLAINTIFF'S SUR-REPLY TO OREGON HEALTH AUTHORITY'S MOTION FOR SUMMARY JUDGMENT ON FAMILYCARE'S THIRD CLAIM FOR RELIEF**<br><br>Pursuant to LR 56-1(b) |

PLAINTIFF'S SUR-REPLY TO OHA'S MOTION FOR
SUMMARY JUDGMENT

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000

155722374.3

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ....................................................................................................... 1

II.     ARGUMENT ............................................................................................................... 1

      A.      Mr. Murray's declaration testimony does not contradict his deposition testimony............................................................................................................. 1

      B.      Mr. Murray's testimony is not a "sham." ................................................... 5

      C.      Mr. Murray's declaration testimony is within his scope of knowledge................. 6

III.    CONCLUSION ........................................................................................................... 8

i-    TABLE OF CONTENTS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000

155722374.3

# TABLE OF AUTHORITIES

**Page**

CASES

*Boyd v. City of Oakland*,
458 F. Supp. 2d 1015 (N.D. Cal. 2006) ...............................................................................8

*Galvan v. Walt Disney Parks & Resorts, U.S., Inc.*,
No. SA CV18-01721-AB(FFMX), 2019 WL 8017810 (C.D. Cal. Nov. 27,
2019) ...............................................................................................................................5, 6

*Kennedy v. Allied Mut. Ins. Co.*,
952 F.2d 262 (9th Cir. 1991) ..............................................................................................5

*Snapp v. United Transportation Union*,
889 F.3d 1088 (9th Cir. 2018) ............................................................................................6

*Stuart v. UNUM Life Ins. Co. of Amer.*,
217 F.3d 1145 (9th Cir. 2000) ............................................................................................7

*Van Asdale v. Int'l Game Tech.*,
577 F.3d 989 (9th Cir. 2009) ..............................................................................................5

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000

155722374.3

## I.    INTRODUCTION

William Murray is competent to testify about the options that would have been available to FamilyCare had OHA's January 2018 rate adjustment been disclosed to FamilyCare in December 2017. And Mr. Murray's declaration testimony that FamilyCare's board "could" have approved a contract with higher rates does not contradict his deposition testimony that he does not know whether it actually "would" have done so. Mr. Murray's declaration testimony cannot possibly be considered a "sham" as OHA asserts. To the contrary, Mr. Murray's declaration testimony is both consistent with and supported by his deposition testimony, including his explanations of FamilyCare's decision-making process and the import of OHA's rate setting, as well as FamilyCare's desire to stay in business and not forfeit its contract. The Court accordingly should overrule OHA's evidentiary objection to Mr. Murray's declaration.[1]

## II.    ARGUMENT

### A.    Mr. Murray's declaration testimony does not contradict his deposition testimony.

Mr. Murray testified, in his declaration, that if FamilyCare had known about the rate increase that OHA would make in January 2018, FamilyCare *could* have made a different decision in December 2017 about how to proceed—this is the testimony to which OHA objects:

> The revised 2018 rates would have paid FamilyCare an additional approximately $20 million if FamilyCare had remained in business for the entirety of 2018. Had OHA timely provided FamilyCare with these final rates for 2018[,] . . . FamilyCare's board *could* have voted to accept those rates so that FamilyCare could stay in business long enough to try to bridge the budgetary gap created by OHA's faulty rate-setting.

Decl. of William Murray in Supp. of FamilyCare's Opp. to OHA's Mot. for Summ. J. ("Murray Decl.") (Dkt. 519) ¶ 43 (emphasis added).

---

[1] FamilyCare submits this sur-reply pursuant to Local Rule 56-1(b).

1-    PLAINTIFF'S SUR-REPLY TO OHA'S MOTION FOR SUMMARY JUDGMENT

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000

155722374.3

Mr. Murray was not asked at his deposition whether FamilyCare *could* have made a different decision—instead, he was asked to speculate as to whether FamilyCare *would* have made a different decision based on a specific contrafactual scenario that contemplated a change in only one of the variables the board considered, *i.e.*, the 2018 rate:

> Q.    If the $20 million adjustment had been known in December of 2017, would that have been sufficient to allow FamilyCare to remain open in 2018? In other words, if, in fact, what you learned in the end of January 2018 had been known in the early part of December of 2017, what difference *would* it have made in the decision to close?
>
> MR. JOHNSON: Object to the form of the question.
>
> A.    I don't know the answer to that because that didn't happen.

Decl. of Harry B. Wilson in Supp. of OHA's Partial Mot. for Summ. J. on FamilyCare's 3d Claim for Relief ("Wilson Decl."), Ex. 1 (Dkt. 527-1) (Tr. of FamilyCare Rule 30(b)(6) Dep., July 16, 2018) at 52:16-53:3 (emphasis added).[2]

OHA asserts that Mr. Murray's declaration testimony that FamilyCare *could* have made a different decision, had only the fact of the January 2018 increase been known in December 2017, "contradicts" Mr. Murray's deposition testimony that he does not know whether FamilyCare *would* have done so in that hypothetical situation, and that the Court should strike this portion of Mr. Murray's declaration. Reply in Supp. of OHA's Partial Mot. for Summ. J. on FamilyCare's 3d Claim for Relief ("OHA Reply") (Dkt. 526) at 23. But there is no contradiction. Mr. Murray's declaration testimony that FamilyCare "could" have made a different decision in December had OHA presented FamilyCare with higher rates at that time is entirely consistent with his

---

[2] This speculative question, which drew an objection, was not fairly within the ambit of the applicable Rule 30(b)(6) designation, which sought information about the actual decision made, not what would have occurred in a contrafactual, hypothetical scenario. *See* Decl. of Matthew Gordon in Supp. of FamilyCare, Inc.'s Resp. to OHA's Mot. for Summ. J. Re FamilyCare's Third Claim for Relief, Ex. 7 (Dkt. 520-7) (Amend. Notice of Videotaped Dep. of FamilyCare, Inc., July 11, 2018), at 11 (Topic 11: "Decision-making, consideration and execution of FamilyCare's decision to cease doing business").

2-    PLAINTIFF'S SUR-REPLY TO OHA'S MOTION FOR SUMMARY JUDGMENT

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000

155722374.3

deposition testimony that he "do[es]n't know" whether FamilyCare "would" have made a different decision in those circumstances because the hypothetical disclosure of higher rates "didn't happen."

Mr. Murray further explained at his deposition—in numerous passages not identified by OHA—why FamilyCare could have made a different decision if presented with different rates, and why the mere quantum of higher 2018 rates, the only variable mentioned in the deposition question, was not the only consideration. Mr. Murray testified that "FamilyCare desired to stay in business" (54:7-8); that FamilyCare considered other potential actions "to change programs, to change its expense structure, to change its revenue structure to be able to stay in business" (58:3-8); that projected losses would not necessarily preclude FamilyCare from signing a contract, but "the board would seriously *consider* not signing a contract if it were to . . . result in a substantial loss to FamilyCare" (24:18-21); that "[t]here was never a specific dollar amount [of loss] that FamilyCare or the board identified" that would result in the contract not being signed (25:15-17); that FamilyCare's "decision about signing or not signing the contract" would be "inform[ed]" by "the magnitude" of the annual rate change, the actual amount of which was unknown in December 2017 when FamilyCare was forced to decide whether to commit to the unidentified rate (51:4-9); and that FamilyCare's decision whether to sign would be based not only on the rates themselves, and the near-term projected losses they would create, but also what the contract "indicat[ed] of where we thought that would be going in the future" (26:21-25)—*all* of which is consistent with his declaration testimony that FamilyCare "could" have made a different decision *and* his deposition testimony that he does not know whether FamilyCare "would" have actually done so in a contrafactual hypothetical situation in which OHA disclosed the January rate increase in December. Decl. of Matthew Gordon in Supp. of FamilyCare, Inc.'s Sur-Reply to OHA's Mot. for Summ. J. Re FamilyCare's Third Claim for Relief ("Gordon 2d Decl."), Ex. 1 (Tr. of FamilyCare Rule 30(b)(6) Dep., July 16, 2018) (emphasis added). As Mr. Murray's

3- PLAINTIFF'S SUR-REPLY TO OHA'S MOTION FOR SUMMARY JUDGMENT

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000

155722374.3

testimony shows, the board was considering not only the magnitude of the 2018 deficit created by OHA's erroneous rate-setting but also whether the outcome of the negotiations with OHA would indicate that OHA would further address and solve problems with the rates such that they would further improve in 2019—which, of course, they did, by such a significant amount that OHA paid Health Share $82.5 million more to care for FamilyCare's members in 2019 than it had offered FamilyCare for those same members for 2018. *See* Decl. of William Murray in Supp. of FamilyCare, Inc.'s Mot. for Discovery (Dkt. 438) ¶ 10.

Mr. Murray's declaration also provides further context, including details about how, at the December 14, 2017 FamilyCare board meeting, he and the board discussed his ongoing negotiations with OHA over the 2018 rates and the board's intent to revisit its decision if those negotiations bore fruit, in the form of corrected, higher rates for 2018, or even sufficient progress with OHA towards such a goal. *See* Murray Decl. (Dkt. 519) ¶ 39. This testimony, and the fact that the negotiations were ongoing and expected to continue, *see id.*, is also entirely consistent with OHA's prior representations about the purpose of the 60-day notification requirement. Specifically, all parties knew that FamilyCare had a statutory right to a 60-day review period which was designed to allow the parties to negotiate the rates. And OHA specifically acknowledged that CCOs have a statutory right to such notice—and that if rates were not provided 60 days before the end of the year, CCOs had the right to wait to sign the contracts until after the start of the new year, to ensure the full 60 days' consideration. *See* Murray Decl. (Dkt. 519) ¶ 32 & Ex. 16 (Dkt. 519-16). OHA had also affirmatively acknowledged that the purpose of the 60-day requirement was to give time for CCOs to "review and negotiate" the proposed rates. *See* Gordon 2d Decl., Ex. 2 at 8, 11 (OHA press releases). Given that the board knew those negotiations were ongoing and expected to continue, and that they might yet prove fruitful, Mr. Murray's statement that the board *could* have accepted the revised rate had it been timely offered is well supported by the record. Moreover, it also is objectively true.

4- PLAINTIFF'S SUR-REPLY TO OHA'S MOTION FOR SUMMARY JUDGMENT

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000

155722374.3

**B.    Mr. Murray's testimony is not a "sham."**

Even if the Court sees a possible inconsistency between Mr. Murray's declaration testimony that FamilyCare "could" have signed the contract in December 2017 had it known of the January 2018 rate adjustment and Mr. Murray's deposition testimony that he does not know whether FamilyCare actually "would" have done so in that scenario, Mr. Murray's declaration is not a "sham," and OHA's reliance on the *Foster-Radobenko* "sham affidavit" rule is misplaced.

"The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991). However, "the *Foster-Radobenko* rule does not automatically dispose of every case in which a contradictory affidavit is introduced to explain portions of earlier deposition testimony. Rather, the *Radobenko* court was concerned with '*sham*' testimony that *flatly contradicts* earlier testimony in an attempt to '*create*' an issue of fact and avoid summary judgment. Therefore, before applying the *Radobenko* sanction, the district court must make a factual determination that the contradiction was *actually* a 'sham.'" *Id*. at 266-67 (emphases added).

Mr. Murray's declaration does not include any "sham" testimony to be disregarded by the Court under the *Foster-Radobenko* rule. Indeed, the very cases cited by OHA fail to support OHA's argument. In *Kennedy* and *Van Asdale*, the Ninth Circuit reversed the district courts' use of the *Foster-Radobenko* rule because the district courts did not make the requisite findings that challenged testimony was actually a "sham"; moreover, in *Van Asdale*, the Ninth Circuit did not even remand to the district court to consider the issue, because the "minor conflicts" between the declaration and prior deposition testimony did not warrant application of the rule. *Kennedy*, 952 F.2d at 267; *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 999-1000 (9th Cir. 2009). And in *Galvan*, the only case cited by OHA finding that declaration testimony should be stricken under the *Foster-Radobenko* rule, the plaintiff's declaration directly contradicted his deposition

5-    PLAINTIFF'S SUR-REPLY TO OHA'S MOTION FOR
      SUMMARY JUDGMENT

155722374.3

testimony regarding the nature and scope of his own disabilities. *See Galvan v. Walt Disney Parks & Resorts, U.S., Inc.*, No. SA CV18-01721-AB(FFMX), 2019 WL 8017810, at \*2-3 (C.D. Cal. Nov. 27, 2019). *Galvan* illustrates what sham testimony actually looks like, underscoring why Mr. Murray's noncontradictory testimony that FamilyCare "could" have made a different decision if additional information had been disclosed, but that he does not know whether FamilyCare "would" have done so, is nothing of the sort.

Finally, OHA cites *Snapp v. United Transportation Union*, 889 F.3d 1088 (9th Cir. 2018), for the proposition that "a 'corporation *generally* cannot present a theory of the facts that differs from that articulated by the designated Rule 30(b)(6) representative." OHA Reply (Dkt. 526) at 25, citing *Snapp*, 889 F.3d at 1103 (restoring italics in court opinion omitted by OHA). But the Ninth Circuit concluded in *Snapp* that the district court did not err in allowing the jury to hear defense evidence that contradicted the defendant's Rule 30(b)(6) deposition responses. *See Snapp*, 889 F.3d at 1104; *see also id.* at 1103 (rule "applies only where the purportedly conflicting evidence truly, and without good reason or explanation, is in conflict, *i.e.*, where it cannot be deemed as clarifying or simply providing full context for the Rule 30(b)(6) deposition"). *Snapp* does not assist OHA's objection here.

### C.    Mr. Murray's declaration testimony is within his scope of knowledge.

Relying on a fragment of one sentence in a single deposition answer—that Mr. Murray "had relatively limited board interactions"—OHA argues that Mr. Murray is not competent to testify that FamilyCare's board could have accepted OHA's proposed rates in December had the forthcoming January adjustment to those rates been disclosed at that time. OHA Reply (Dkt. 526) at 25. OHA is mistaken.

Review of Mr. Murray's complete answer to that deposition question reveals that what Mr. Murray characterized as "limited board interactions" actually included attendance at some meetings of the full board as well as its committees and subcommittees:

6-    PLAINTIFF'S SUR-REPLY TO OHA'S MOTION FOR SUMMARY JUDGMENT

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000

155722374.3

> Q.    We've talked about employees of FamilyCare. Now I want to talk about board members. And I'm going to ask very similar questions. Do you remember having any conversation with any board member of FamilyCare where the board member expressed concerns about decisions that FamilyCare was making or had made?
>
> A.    Let me first talk about I had relatively limited board interactions. My responses would be based on my limited interaction, you know, with board members. I attended some but not all board meetings. I attended or was asked to attend some of the subcommittee or committee meetings of the board. But I – I generally did not have separate conversations with board members other than conversations that occurred in the meetings.

Wilson Decl., Ex. 2 (Dkt. 527-2) (Tr. of Murray Dep., July 27, 2018) at 69:11-70:4.

And this was merely Mr. Murray's description of his general participation in board activities during the course of his employment. More importantly with respect to the testimony in question, Mr. Murray confirmed that he *specifically* attended the *December 14, 2017* board meeting where the decision was taken to not approve the proposed contract rates as initially presented at the time. *See* Wilson Decl., Ex. 2 (Dkt. 527-2) at 78:24-79:25.

Moreover, OHA's singular focus on Mr. Murray's personal interactions with the board ignores Mr. Murray's other sources of information as to what options were available to FamilyCare, in particular his role leading Family Care's day-to-day operations as its Chief Operating Officer during the relevant time period. *See* Murray Decl. (Dkt. 519) ¶¶ 2-3. As FamilyCare's COO, as someone directly involved in the OHA rate-setting process for several years, and as an attendee at the December 14, 2017 board meeting at which FamilyCare decided not to enter into the proposed contract, Mr. Murray is competent to testify about the options available to FamilyCare at that time—*i.e.*, whether the board "could have" signed the contract had the January 2018 rate increase, which would have substantially reduced FamilyCare's projected losses, been disclosed in December. *See* Fed. R. Evid. 602; *Stuart v. UNUM Life Ins. Co. of Amer.*, 217 F.3d 1145, 1154-55 (9th Cir. 2000) ("conclud[ing] that the district court's disregard of [vice-president's] declaration based on a perceived lack of personal knowledge was

7-    PLAINTIFF'S SUR-REPLY TO OHA'S MOTION FOR SUMMARY JUDGMENT

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000

155722374.3

a clearly erroneous assessment of the evidence"; witness's responsibilities conferred sufficient personal knowledge of the relevant corporate activities).

In *Boyd v. City of Oakland*, 458 F. Supp. 2d 1015 (N.D. Cal. 2006), the only legal authority relied upon by OHA for this point, the district court ruled that hearsay statements in a declaration were inadmissible. *See id.* at 1022-39. OHA does not identify any allegedly inadmissible hearsay in Mr. Murray's declaration. Mr. Murray's testimony regarding FamilyCare's options was based on his personal knowledge as FamilyCare's COO, as someone who attended FamilyCare board meetings, and as an attendee at the December 14, 2017 board meeting specifically. Mr. Murray is competent to testify about the options that would have been available to FamilyCare had OHA's January 2018 rate adjustment been proposed to FamilyCare in December 2017 before it was forced to forfeit its contract. Notably, Mr. Murray's statements in his declaration also were confirmed by FamilyCare's CEO, Jeff Heatherington, and OHA has not objected to or sought to strike Mr. Heatherington's declaration. *See* Decl. of Jeff Heatherington in Supp. of FamilyCare's Opp. to OHA's Mot. for Summ. J. (Dkt. 516) ¶ 7.

### III.   CONCLUSION

Mr. Murray's declaration is based on his personal knowledge. It does not contradict his deposition testimony. It is not a "sham." The Court should consider Mr. Murray's declaration in its entirety.

8-   PLAINTIFF'S SUR-REPLY TO OHA'S MOTION FOR SUMMARY JUDGMENT

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000

155722374.3

DATED:  February 4, 2022          **PERKINS COIE LLP**

By: */s/ Matthew P. Gordon*

    **Stephen F. English**, OSB No. 730843
    SEnglish@perkinscoie.com
    **Thomas R. Johnson** (OSB No. 010645)
    TRJohnson@perkinscoie.com
    **Matthew J. Mertens** (OSB No. 146288)
    MMertens@perkinscoie.com
    **Sasha Petrova** (OSB No. 154008)
    SPetrova@perkinscoie.com
    1120 N.W. Couch Street, Tenth Floor
    Portland, Oregon 97209-4128
    Telephone: 503.727.2000
    Facsimile: 503.727.2222

    **Matthew P. Gordon** (admitted *pro hac vice*)
    MGordon@perkinscoie.com
    **David B. Robbins** (OSB No. 070630)
    DRobbins@perkinscoie.com
    1201 Third Avenue, Suite 4900
    Seattle, Washington 98101-3099
    Telephone: 206.359.8000
    Facsimile: 206.359.9000

    *Attorneys for Plaintiff FamilyCare, Inc.*

9-    PLAINTIFF'S SUR-REPLY TO OHA'S MOTION FOR
        SUMMARY JUDGMENT

155722374.3