EXHIBIT

1010

Crowell

PENGAD 800-631-6989

| From: | Darby BethAnne |
|---|---|
| To: | Crowell Courtney W |
| CC: | WAHL Jeffrey |
| Sent: | 1/9/2017 1:49:13 PM |
| Subject: | FW: Attorney Client Privilege - Family Care Plan |
| Attachments: | - JUSTICE-#7232668-v1-News_release_- March 16 2016 4pm.docx; - JUSTICE-#7232668-v1-News_release_- March 16 2016 5pm LS FINAL.docx; - Rates and FamilyCare - FAQ - March 2016 copy -4pm.docx; - Rates and FamilyCare - FAQ - March182016.pdf; - Timeline - Rates FamilyCare -- March 16 2016 - 5pm FINAL.docx; 2016-23-03_FAQs_-_FamilyCare_and_OHA_Dispute.pdf; FAQ- Rates and FamilyCare -March 16 2016 -5pm FINAL.docx; OHA response 03_29_16.docx |

Courtney ---As we discussed, attached are most of the docs we created the last time. I am about to send you some of the newer materials. We will want to create a comms plan for Lynne as soon as possible.

Thank,s

**BethAnne Darby**
Director, External Relations Division
OREGON HEALTH AUTHORITY
BethAnne.Darby@state.or.us
503-798-7100
www.oregon.gov/OHA

**From:** Saxton Lynne
**Sent:** Tuesday, January 03, 2017 10:16 AM
**To:** Darby BethAnne <BETHANNE.DARBY@dhsoha.state.or.us>; Black Jeston J <JESTON.J.BLACK@dhsoha.state.or.us>; Cowie Robb <ROBB.COWIE@dhsoha.state.or.us>; Fairbanks Mark R <MARK.R.FAIRBANKS@dhsoha.state.or.us>; Chauhan Varsha <VARSHA.CHAUHAN@dhsoha.state.or.us>; Coyner Lori A <LORI.A.COYNER@dhsoha.state.or.us>; Zachary Aters <zachary.aters@optumas.com>; Busek Rhonda J <RHONDA.J.BUSEK@dhsoha.state.or.us>
**Cc:** SCOTT Carla A <Carla.A.SCOTT@doj.state.or.us>; STINEMAN Renee <Renee.STINEMAN@doj.state.or.us>; Falk Theodore C <theodore.falk@doj.state.or.us>; WAHL Jeffrey <Jeffrey.WAHL@doj.state.or.us>; Souza Theresa <THERESA.SOUZA@dhsoha.state.or.us>
**Subject:** RE: Attorney Client Privilege - Family Care Plan

Hi all -- I am asking BethAnne to develop our communication plan for the dispute resolution process; Theresa, I need a 15 minute call with BethAnne to start this process following the work last week. Thank you.

**From:** Saxton Lynne
**Sent:** Friday, December 23, 2016 8:03 AM
**To:** Darby BethAnne <BETHANNE.DARBY@dhsoha.state.or.us>; Black Jeston J <JESTON.J.BLACK@dhsoha.state.or.us>; Cowie Robb <ROBB.COWIE@dhsoha.state.or.us>; Fairbanks Mark R <MARK.R.FAIRBANKS@dhsoha.state.or.us>; Chauhan Varsha <VARSHA.CHAUHAN@dhsoha.state.or.us>; Coyner Lori A <LORI.A.COYNER@dhsoha.state.or.us>; Zachary Aters <zachary.aters@optumas.com>; Busek Rhonda J <RHONDA.J.BUSEK@dhsoha.state.or.us>
**Cc:** SCOTT Carla A <Carla.A.SCOTT@doj.state.or.us>; STINEMAN Renee <Renee.STINEMAN@doj.state.or.us>; Falk Theodore C <theodore.falk@doj.state.or.us>; WAHL Jeffrey <Jeffrey.WAHL@doj.state.or.us>; Souza Theresa <THERESA.SOUZA@dhsoha.state.or.us>
**Subject:** Attorney Client Privilege - Family Care Plan

Thank you all for your time. I want to clarify next steps. We will discuss further at our 1:30 call, if not earlier. Again, Carla and Ted, please feel free to step out of the meeting and call my cell.

Mark: Ensure BethAnne's team have all the slides Jeff and Zach shared yesterday; they need to be formatted so they can be used with the media.  Also, I don't have the email referenced on the call this morning regarding FC's other issue so please forward that. Theresa, I will need both an electronic and print set of these slides by COB today.

BethAnne: your team will need to be prepared for a press release today should FC decide to go to court today. I would like your recommendation on a proactive strategy for that possibility.

Varsha: I need to know how many contracts are signed from CCOS and I will need a continuous update on this. Thank you.

Going to another meeting – will follow up.

OHA_LIT_00565539

Exhibit 2
Page 2 of 26

**Oregon Health Authority proposes resolution to 2015 rate dispute**

The Oregon Health Authority (OHA) presented FamilyCare with a plan for resolving the more than $55 million in rate overpayment FamilyCare received in 2015 to provide care to Oregon Health Plan (OHP) members. OHA offered a monetary settlement to address concerns that FamilyCare had the most significant rate difference when revised 2015 rates were implemented to address issues with the original 2015 rates. This plan would also allow FamilyCare to have an extended period to make the necessary repayments, through December of 2018.

In exchange, FamilyCare would agree to reimburse Oregon for the remaining overpayments; drop its lawsuit challenging OHA to revise rates set for FamilyCare; and agree that they should not have a separate or different methodology than other CCOs.

OHA has also provided FamilyCare a notice of breach of contract in the event the two sides are unable to reach an agreement. OHA has been advised by the federal government's Center for Medicare and Medicaid Services (CMS) that FamilyCare does not have a valid 2015 or 2016 contract in place. Without a CMS-approved agreement in place, FamilyCare is not in compliance with its state contract to provide coordinated care to Oregon Health Plan (OHP) members in the tri-county metro region or to receive federal funding for those services. Despite the lack of CMS-approved contract, OHP members will continue to receive their health plan benefits and are not at risk of losing coverage.

Lynne Saxton, director of the Oregon Health Authority said, "This is a reasonable solution that allows FamilyCare and OHA to move forward and focus on serving members Oregon Health Plan members."

**Federal government calls for sound FamilyCare rates**

At the request of Oregon's coordinated care organizations and with the approval of the Centers for Medicare and Medicaid Services (CMS), OHA redeveloped the 2015 rate methodology and in August 2015 issued revised rates. Based on those rates, FamilyCare was liable to return more than $55 million in overpayments. All other 15 CCOs have signed the 2015 contracts with revised rates based on the new rate-setting methods. Family Care is the only CCO that has not reimbursed, or began a plan to reimburse, the state and federal government for its 2015 overpayment.

OHA, in consultation with CMS, has been attempting to resolve this matter with FamilyCare. In late February, CMS issued a letter calling for the state to finalize its 2015 contract with FamilyCare based on the new rate methodology, certification and rates. If FamilyCare doesn't sign a 2015 contract with CMS approved rates, the state will be liable for repayment of federal funds already paid to FamilyCare.

"We have a responsibility to protect the health and well-being of Oregon's most vulnerable citizens --- Oregon Health Plan members," said Lynne Saxton, director of the Oregon Health Authority. "OHA's proposal is in line with the expectations of Oregon's federal partners, as well

OHA_LIT_00565540

Exhibit 2
Page 3 of 26

as the long-term financial sustainability of our health care system. Now it's time to move forward and prevent any further worry or disruption for OHP members."

Oregon's Medicaid program is funded approximately three-quarters through federal taxpayer dollars and one-quarter through state funds. Funding for a settlement is not available through federal dollars.

###

OHA_LIT_00565541

Exhibit 2
Page 4 of 26

**Oregon Health Authority proposes resolution to 2015 rate dispute**

The Oregon Health Authority (OHA) presented FamilyCare with a plan for resolving the more than $55 million in rate overpayment FamilyCare received in 2015 for providing care to Oregon Health Plan (OHP) members. OHA offered a monetary settlement to address FamilyCare's dispute that it had the most significant rate difference, when revised 2015 rates were implemented to address concerns with the original 2015 rates. This plan would also allow FamilyCare to have an extended period to make the necessary repayments, through December of 2018.

In exchange, FamilyCare would agree to reimburse Oregon for the remaining overpayments; drop its lawsuit challenging OHA to revise rates set for FamilyCare; and agree that they should not have a separate or different rate methodology than other CCOs.

OHA has also provided FamilyCare a notice of breach of contract in the event the two sides are unable to reach an agreement. OHA has been advised by the federal government's Center for Medicare and Medicaid Services (CMS) that FamilyCare does not have a valid 2015 or 2016 contract in place. Without a CMS-approved agreement in place, FamilyCare is not in compliance with its state contract to provide coordinated care to Oregon Health Plan (OHP) members in the tri-county metro region or to receive federal funding for those services. Despite the lack of CMS-approved contract, OHP members will continue to receive their health plan benefits and are not at risk of losing coverage.

Lynne Saxton, director of the Oregon Health Authority said, "This is a reasonable solution that allows FamilyCare and OHA to move forward and focus on serving Oregon Health Plan members."

**Federal government calls for sound FamilyCare rates**

At the request of Oregon's coordinated care organizations and with the approval of the Centers for Medicare and Medicaid Services (CMS), OHA redeveloped the 2015 rate methodology and in August 2015 issued revised rates. Based on those rates, FamilyCare was liable to return more than $55 million in overpayments. All other 15 CCOs have signed the 2015 contracts with revised rates based on the new rate-setting methods. Family Care is the only CCO that has not reimbursed, or began a plan to reimburse, the state and federal government for its 2015 overpayment.

OHA, in consultation with CMS, has been attempting to resolve this matter with FamilyCare. In late February, CMS issued a letter calling for the state to finalize its 2015 contract with FamilyCare based on the new rate methodology, certification and rates. If FamilyCare doesn't sign a 2015 contract with CMS approved rates, the state will be liable for repayment of federal funds already paid to FamilyCare.

"We have a responsibility to protect the health and well-being of Oregon's most vulnerable citizens --- Oregon Health Plan members," said Lynne Saxton, director of the Oregon Health Authority. "OHA's proposal is in line with the expectations of Oregon's federal partners, as well

OHA_LIT_00565542

Exhibit 2
Page 5 of 26

as the long-term financial sustainability of our health care system.  Now it's time to move forward and prevent any further worry or disruption for OHP members."

Oregon's Medicaid program is funded approximately three-quarters through federal taxpayer dollars and one-quarter through state funds. Funding for a settlement is not available through federal dollars.

###

OHA_LIT_00565543

Exhibit 2
Page 6 of 26



# Rates and FamilyCare – Frequently asked questions

## Updated March 18, 2016

**How is OHA trying to resolve the overpayment issue with FamilyCare?**
The Oregon Health Authority (OHA) presented FamilyCare with a plan for resolving the more than $55 million in rate overpayment FamilyCare received in 2015 to provide care to Oregon Health Plan (OHP) members. OHA offered a monetary settlement to address concerns that FamilyCare had the most significant rate difference when revised 2015 rates were implemented to address issues with the original 2015 rates. This plan would also allow FamilyCare to have an extended period to make the necessary repayments, through December of 2018.

In exchange, FamilyCare would agree to reimburse Oregon for the remaining overpayments; drop its lawsuit challenging OHA to revise rates set for FamilyCare; and agree that they should not have a separate or different methodology than other CCOs.

**What is the role of CMS?**

The Center for Medicare and Medicaid Services is the third party to Oregon's Medicaid contract with the federal government. Oregon's Medicaid program is funded approximately three-quarters through federal taxpayer dollars and one-quarter through state funds.

OHA has been advised by the federal government's Center for Medicare and Medicaid Services (CMS) that FamilyCare does not have a valid 2015 or 2016 contract in place. Without an agreement in place, FamilyCare is not in compliance with its state contract to provide coordinated care to Oregon Health Plan (OHP) members in the tri-county metro region. Despite the lack of contract, OHP members will continue to receive their health plan benefits and are not at risk of losing coverage.

**Why didn't OHA accept the proposed solution that FamilyCare offered?**

After analyzing FamilyCare's proposed solution, OHA concluded FamilyCare's proposed solution would:

- Be inconsistent with CMS approved 2015 and 2016 rate methodologies;
- Treat FamilyCare differently in regard to payment, violating trust and transparency with other CCOs and CMS; and
- Require addition taxpayer dollars to pay FamilyCare instead of benefiting some of Oregon's most vulnerable citizens-- Oregon Health Plan members.

OHA_LIT_00565544

Exhibit 2
Page 7 of 26



**How many CCOs have signed 2015 contract amendments?**
To date, 15 of 16 CCOs have signed their 2015 rate amendments. Those rates were approved by CMS in December 2015. The February 2016 letter from CMS confirmed that FamilyCare does not have an approved contract for 2015 or 2016.

**How many OHP members are enrolled in FamilyCare? What's their capacity?**
Approximately 128,000 OHP members are enrolled in FamilyCare. They are approved to serve up to 240,000 members.

**Has FamilyCare had a chance to review their rates with OHA?**
OHA remains committed to transparency and this was a priority during the 2015 rate redevelopment process. Individuals meetings were held with all the CCOs, including FamilyCare, to review the methodology and answer any questions.

**Why were rates redeveloped?**
In January 2015, eleven of Oregon's coordinated care organizations sent a letter to Governor Kitzhaber saying 2015 rates were flawed.

In particular, the issues raised were that the rates varied widely without explanation for CCOs within the same region and that 2015 rates had been developed without transparency. The coordinated care organizations also expressed concern that the 2015 final rates were not presented until late in December 2014 and without adequate opportunity to review.

**How long will OHA use the same rate methodology?**
Now that OHA knows that it has an actuarially sound rate methodology, it will continue to use the same methodology for the foreseeable future as the foundation for future rates. This methodology is consistent with CMS's proposed guidelines. OHA used the redeveloped 2015 rate methodology to determine 2016 rates and will use it again for 2017 rates. By statute, all CCOs (including FamilyCare) have 60 days to review and negotiate proposed rates prior to signing the annual contract rate amendment. Oregon's waiver requires that rates stay within 3.4% sustainable rate of growth.

**How did the lawsuit between OHA and FamilyCare develop?**
FamilyCare notified OHA that the 2015 rates were not actuarially sound and needed to be redeveloped by law March 2016, prior to seeing the revised 2015 rates. Their lawsuit was filed in May 2015. FamilyCare sued asking for the rates to be redeveloped, which OHA had begun at that time – and then completed in August 2015.

**How did OHA work with Oregon's CCOs to redevelop the rates?**
In March 2015, OHA convened Oregon's coordinated care organizations to discuss the challenges and opportunities of redeveloping rates. The outcome of the meeting was that OHA would contract with the actuarial consultant, Optumas, to redevelop the 2015 rates using a revised 2015 rate methodology and certification.

OHA_LIT_00565545

Exhibit 2
Page 8 of 26



At the request of Oregon's coordinated care organizations and with the consent of the Centers for Medicare and Medicaid Services, OHA began redeveloping 2015 rates in April 2015, seeking not only to address the 2015 methodological issues but also to establish a solid financial foundation for Oregon's health system in 2016 and beyond. OHA hired Optumas as its actuarial consultant to redevelop the 2015 rate methodology and the 2015 rates, as well develop a methodology that could be applied to future rates.

OHA, coordinated care organizations, and Optumas developed the new methodology through a transparent, intensive process. This process included over 100 meetings between coordinated care organizations, OHA staff, and Optumas. Close coordination, partnership, and transparency with CCOs and their actuaries were key to this successful process. A revised rate methodology and certification for 2015 was completed in August and the same methodology is used for the 2016 rates.

### Did FamilyCare participate in the rate redevelopment meetings with CCOs?
A representative from FamilyCare attended all group meetings. For 2015, FamilyCare attended five individual meetings and 16 group meetings, for a total of 21 meetings on 2015 rate development. For 2016, FamilyCare attended three individual meetings and six group meetings, for a total of nine meetings.

### What is an overpayment?
As defined in OAR 410-120-0000, overpayment "means a payment made by the Authority to a provider in excess of the correct Authority payment amount for a service. Overpayments are subject to repayment to the Authority."

OHA Contracts with Coordinate Care Organizations specifically define overpayments as "Any payments received by Contractor from OHA under this Contract, and any other payments received by Contractor from OHA, or any other source to which Contractor is not entitled under the terms of this Contract shall be considered an overpayment and may be recovered by OHA from Contractor."

### Would the federal government cover the cost of a settlement?
Funding for a settlement is not available through federal dollars.

OHA_LIT_00565546

Exhibit 2
Page 9 of 26



# Rates and FamilyCare – Frequently asked questions

## Updated March 18, 2016

How is OHA trying to resolve the overpayment issue with FamilyCare?
The Oregon Health Authority (OHA) presented FamilyCare with a plan for resolving the more than $55 million in rate overpayment FamilyCare received in 2015 to provide care to Oregon Health Plan (OHP) members. OHA offered a monetary settlement to address concerns that FamilyCare had the most significant rate difference when revised 2015 rates were implemented to address issues with the original 2015 rates. This plan would also allow FamilyCare to have an extended period to make the necessary repayments, through December of 2018.

In exchange, FamilyCare would agree to reimburse Oregon for the remaining overpayments; drop its lawsuit challenging OHA to revise rates set for FamilyCare; and agree that they should not have a separate or different methodology than other CCOs.

What is the role of CMS?

The Center for Medicare and Medicaid Services is the third party to Oregon's Medicaid contract with the federal government. Oregon's Medicaid program is funded approximately three-quarters through federal taxpayer dollars and one-quarter through state funds.

OHA has been advised by the federal government's Center for Medicare and Medicaid Services (CMS) that FamilyCare does not have a valid 2015 or 2016 contract in place. Without an agreement in place, FamilyCare is not in compliance with its state contract to provide coordinated care to Oregon Health Plan (OHP) members in the tri-county metro region. Despite the lack of contract, OHP members will continue to receive their health plan benefits and are not at risk of losing coverage.

Why didn't OHA accept the proposed solution that FamilyCare offered?

After analyzing FamilyCare's proposed solution, OHA concluded FamilyCare's proposed solution would:

- Be inconsistent with CMS approved 2015 and 2016 rate methodologies;
- Treat FamilyCare differently in regard to payment, violating trust and transparency with other CCOs and CMS; and
- Require addition taxpayer dollars to pay FamilyCare instead of benefiting some of Oregon's most vulnerable citizens-- Oregon Health Plan members.

OHA_LIT_00565547

Exhibit 2
Page 10 of 26



### How many CCOs have signed 2015 contract amendments?
To date, 15 of 16 CCOs have signed their 2015 rate amendments. Those rates were approved by CMS in December 2015. The February 2016 letter from CMS confirmed that FamilyCare does not have an approved contract for 2015 or 2016.

### How many OHP members are enrolled in FamilyCare? What's their capacity?
Approximately 128,000 OHP members are enrolled in FamilyCare. They are approved to serve up to 240,000 members.

### Has FamilyCare had a chance to review their rates with OHA?
OHA remains committed to transparency and this was a priority during the 2015 rate redevelopment process. Individuals meetings were held with all the CCOs, including FamilyCare, to review the methodology and answer any questions.

### Why were rates redeveloped?
In January 2015, eleven of Oregon's coordinated care organizations sent a letter to Governor Kitzhaber saying 2015 rates were flawed.

In particular, the issues raised were that the rates varied widely without explanation for CCOs within the same region and that 2015 rates had been developed without transparency. The coordinated care organizations also expressed concern that the 2015 final rates were not presented until late in December 2014 and without adequate opportunity to review.

### How long will OHA use the same rate methodology?
Now that OHA knows that it has an actuarially sound rate methodology, it will continue to use the same methodology for the foreseeable future as the foundation for future rates. This methodology is consistent with CMS's proposed guidelines. OHA used the redeveloped 2015 rate methodology to determine 2016 rates and will use it again for 2017 rates. By statute, all CCOs (including FamilyCare) have 60 days to review and negotiate proposed rates prior to signing the annual contract rate amendment. Oregon's waiver requires that rates stay within 3.4% sustainable rate of growth.

### How did the lawsuit between OHA and FamilyCare develop?
FamilyCare notified OHA that the 2015 rates were not actuarially sound and needed to be redeveloped by law March 2016, prior to seeing the revised 2015 rates. Their lawsuit was filed in May 2015. FamilyCare sued asking for the rates to be redeveloped, which OHA had begun at that time – and then completed in August 2015.

### How did OHA work with Oregon's CCOs to redevelop the rates?
In March 2015, OHA convened Oregon's coordinated care organizations to discuss the challenges and opportunities of redeveloping rates. The outcome of the meeting was that OHA would contract with the actuarial consultant, Optumas, to redevelop the 2015 rates using a revised 2015 rate methodology and certification.

OHA_LIT_00565548

Exhibit 2
Page 11 of 26



At the request of Oregon's coordinated care organizations and with the consent of the Centers for Medicare and Medicaid Services, OHA began redeveloping 2015 rates in April 2015, seeking not only to address the 2015 methodological issues but also to establish a solid financial foundation for Oregon's health system in 2016 and beyond. OHA hired Optumas as its actuarial consultant to redevelop the 2015 rate methodology and the 2015 rates, as well develop a methodology that could be applied to future rates.

OHA, coordinated care organizations, and Optumas developed the new methodology through a transparent, intensive process. This process included over 100 meetings between coordinated care organizations, OHA staff, and Optumas. Close coordination, partnership, and transparency with CCOs and their actuaries were key to this successful process. A revised rate methodology and certification for 2015 was completed in August and the same methodology is used for the 2016 rates.

Did FamilyCare participate in the rate redevelopment meetings with CCOs?
A representative from FamilyCare attended all group meetings. For 2015, FamilyCare attended five individual meetings and 16 group meetings, for a total of 21 meetings on 2015 rate development.  For 2016, FamilyCare attended three individual meetings and six group meetings, for a total of nine meetings.

What is an overpayment?
As defined in OAR 410-120-0000, overpayment "means a payment made by the Authority to a provider in excess of the correct Authority payment amount for a service. Overpayments are subject to repayment to the Authority."

OHA Contracts with Coordinate Care Organizations specifically define overpayments as "Any payments received by Contractor from OHA under this Contract, and any other payments received by Contractor from OHA, or any other source to which Contractor is not entitled under the terms of this Contract shall be considered an overpayment and may be recovered by OHA from Contractor."

Would the federal government cover the cost of a settlement?
Funding for a settlement is not available through federal dollars.

March 18, 2016
Page **3** of **3**

OHA_LIT_00565549

Exhibit 2
Page 12 of 26

OHA Rate Development Timeline

July 2014
OHA receives a corrective action from CMS stating that OHA needed to change its rate methodology and no longer use the cost template methodology.

Fall 2014
The 2015 capitation rates are developed by OHA in-house actuaries using a CCO-specific methodology that was certified by OHA's internal actuary.

December 24, 2014
CCOs received final 2015 rates included in their contracts for 2015. They had six days to sign without a comment period.

January 2015
Eleven of Oregon's sixteen coordinated care organizations sent a letter to Governor Kitzhaber saying 2015 rates are flawed. In particular, the issues were that the rates varied widely without explanation for CCOs within the same region and that 2015 rates had been developed without transparency. The coordinated care organizations also expressed concern that the 2015 final rates were not presented until late in December 2014 and without adequate opportunity to review and provide input.

Family Care meets with OHA to object to rate methodology used in 2014 for 2015 rates.

March 2015
FamilyCare notifies OHA that they believe the 2015 rates are not actuarially sound, need to be corrected, and made retroactive to January 1, 2015.

OHA convenes Oregon's all 16 coordinated care organizations to discuss the challenges and opportunities of redeveloping rates. The outcome of the meeting was that OHA would contract with the actuarial consultant, Optumas, to redevelop the 2015 rates using a revised 2015 rate methodology and certification. The effective date of those rates was not determined.

OHA received a letter from CMS that requested the certifying in-house actuary answer 103 questions regarding the original 2015 capitation rates.

April 2015 through August 2015
At the request of Oregon's coordinated care organizations and with the consent of the Centers for Medicare and Medicaid Services, OHA began redeveloping 2015 rates, seeking not only to address the 2015 methodological issues but also to establish a solid financial foundation for Oregon's health system in 2016 rates and beyond.

OHA commits to hiring Optumas as its actuarial consultant to redevelop the 2015 rate methodology and the 2015 rates as well develop a methodology that could be applied to future rates.

OHA, the coordinated care organizations, and Optumas make progress on developing the new methodology through a transparent, intensive process that included over 100 meetings between

OHA_LIT_00565550

Exhibit 2
Page 13 of 26

coordinated care organizations, OHA staff, and Optumas, OHA's actuarial contractor. Close coordination, partnership, and transparency with CCOs were key to this successful process. Revised rate methodology and certification for 2015 was completed in August and the same methodology was used for the 2016 rates. FamilyCare attended all group meetings. For 2015, FamilyCare attended 5 individual meetings and 16 group meetings, for a total of 21 meetings on 2015 rate development.  For 2016, FamilyCare attended 3 individual meetings and 6 group meetings, for a total of 9.

May 2015
Family Care sues OHA, based on their March 2015 intent to file a lawsuit (prior to new rate methodology being determined). The lawsuit demands that OHA re-develop the 2015 rates to satisfy federal law requirements that they be actuarially sound, and also demanded that OHA apply the re-developed rates retroactive to January 1, 2015.

July 13, 2015
OHA and Optumas released the regional rate ranges to the CCOs for the redeveloped 2015 rates.

July 21, 2015
OHA and Optumas released the payment rates within the rate ranges to each CCO. The payment rate was chosen within the rate range by OHA, in conjunction with Optumas, after analyzing sustainable growth targets of 3.4% and waiver requirements. At this time, OHA had scheduled meetings with CMS to discuss the effective date of the rates.

July 27, 2015 and August 10, 2015
OHA had calls with CMS to discuss the effective date of the redeveloped rates. CMS advised OHA their preference was to approve only one rate methodology for 2015 and gave verbal acknowledgement that the redeveloped rates were consistent with CMS/OACT regulations and proposed rules.

August 19, 2015
OHA and Optumas released the payment rates within the rate ranges to each CCO with an effective date of January 1, 2015.

The agency accomplished both requirements of the Family Care lawsuit with its August rate setting: 1) actuarially sound rates; and 2) retroactive to January 1, 2015.

August 21, 2015
OHA received a formal letter from CMS regarding the redeveloped rates and the preferred effective date of January 1, 2015.

August 28, 2015
OHA submitted the 2015 redeveloped rate methodology, certification, and rates to CMS for review and approval. The actuarial certification and contract rate sheets are available on the OHP rates website: www.oregon.gov/oha/analytics/Pages/OHPrates.aspx.

August 31, 2015

OHA_LIT_00565551

Exhibit 2
Page 14 of 26

CCOs received their executable 2015 contract amendment with the redeveloped 2015 rates.

September 2015
Legislative days focus on rates and health system transformation. CCOs see 2016 rate ranges.

October 2015
15 out of 16 CCOs sign their 2015 contract amendments containing redeveloped rates. These annual amendments are required in the CCO's contract.

November 2015
FamilyCare fails to sign the 2015 contract amendment containing redeveloped rates. CMS sends letter signaling intent to approve 2015 redeveloped rate methodology, certification, and rates; OHA begins mediation with FamilyCare. OHA sends Letter of Interest request to certified CCOs to ensure members are served in 2016 regardless of the lawsuit. FamilyCare confirms they are interested in serving members in 2016.  OHA sends CCOs 2016 contracts with 60 day notice.

December 2015
The Centers for Medicare and Medicaid Services approve the 2015 redeveloped rate methodology, certification, and contracts. OHA continues mediation efforts with Family.Care. FamilyCare signs the 2016 contract, which is based on the same methodology as the 2015 rates.

February 2016
OHA receives a letter from CMS regarding FamilyCare's unapproved and unapprovable 2015 and 2016 contracts. The CMS letter indicates that FamilyCare's refusal to accept the rates approved by CMS have put at risk the state's ability to draw down federal funds for 2015 and 2016.

March 2016
OHA reviews FamilyCare's proposal and concludes that it would: 1) violate CMS-approved 2015 and 2016 rate methodologies and certifications (OHA has not yet received CMS approval of the 2016 rate methodology and certification, but anticipates it based on the similar, approved 2015 rate methodology); and 2) treat FamilyCare differently in regard to payment, violating trust and transparency with other CCOs and CMS. For these actuarial, financial, and policy reasons, OHA does not accept FamilyCare's proposal.

The Oregon Health Authority issues a 14-day breach of contract notice to FamilyCare to resolve the overpayment in rates FamilyCare received for 2015.  OHA requests that FamilyCare sign their 2015 contract amendment; repay the overpayment; and withdraw their lawsuit.

*Definition of overpayment:*
As defined in OAR 410-120-0000, overpayment "means a payment made by the Authority to a provider in excess of the correct Authority payment amount for a service. Overpayments are subject to repayment to the Authority."

OHA contracts with Coordinate Care Organizations specifically define overpayments as "Any payments received by Contractor from OHA under this Contract, and any other payments

OHA_LIT_00565552

Exhibit 2
Page 15 of 26

received by Contractor from OHA, or any other source to which Contractor is not entitled under the terms of this Contract shall be considered an overpayment and may be recovered by OHA from Contractor."

OHA_LIT_00565553

Exhibit 2
Page 16 of 26


**FamilyCare Health**

## FAMILYCARE HEALTH'S DISPUTE WITH THE OREGON HEALTH AUTHORITY (OHA) -

### FREQUENTLY ASKED QUESTIONS

### What is FamilyCare?

FamilyCare is an Oregon Not for Profit Corporation. It was founded in 1984 and has been serving the Medicaid population for the last 32 years.

### What are the basic issues at hand?

There are two issues: 1) the methodology used by the OHA to set the reimbursement rates paid to the Coordinated Care Organizations (CCOs) for services provided to Oregon Health Plan members; and 2) the unfair treatment of FamilyCare in the process.

### How was FamilyCare treated differently?

The state developed 2015 and 2016 rates based on costs, but costs were not counted the same for all CCOs. Unlike several of the CCO's, FamilyCare is a single corporate entity, with no subsidiaries or sub-contractors. As a result, all of FamilyCare's revenues and costs are itemized on a single balance sheet, and are not passed through to subsidiaries and sub-contractors (related entities). OHA's rate methodology only calculates the profits of the CCO contractor. Profits that are passed through to related entities (i.e. sub-contractors, partners, risk accepting entities) are treated as costs, thereby inflating their premium structure and negatively impacting FamilyCare's premium structure. It is estimated that approximately $400 million in CCO profits were actually counted as costs in 2014.

### Why did FamilyCare file a lawsuit?

FamilyCare filed a lawsuit in May, 2015 after months of attempts to engage OHA in a dialog about the 2015 rate setting process, resulting in a 9% decrease of FamilyCare's rates as compared to 2014. This was greater than any other plan. It is important to note that CMS had similar concerns which were transmitted in a list of 100+ questions to OHA in March, 2015.

### Why was FamilyCare asked to pay back money?

OHA decided to redo the rate setting process in the summer of 2015 and apply the new rates retroactively (claw back) to January, 2015. The rates were recalculated using a regional rate range versus the individual rate plan methodology OHA used previously. OHA made the final decision on where CCOs rates fell within the regional range.

OHA issued a contract amendment in September requiring CCOs to pay back funds if their new rates were lower than their original 2015 rates. The new rates reduced FamilyCare's reimbursement by another 11% for a total reduction of 19.2% compared to 2014 rates.


Health Happens Here

825 NE Multnomah St., Suite 1400, Portland, OR 97232 | P: 503-222-2880 F: 503-345-5720 | www.familycareinc.org

OHA_LIT_00565554

Exhibit 2
Page 17 of 26



### Why didn't FamilyCare sign the contract amendment?

Oregon law requires CCO premium rates to be established "prospectively." An opinion by Oregon Legislative Council affirmed OHA's lack of authority to retroactively apply revised rates and claw back overpayments based on those rates. Additionally, there were no requirements from CMS to retroactively apply the revised rates.

### Why does FamilyCare bring up transparency concerns?

OHA has consistently not responded to, and refused requests made by FamilyCare and its attorneys for information:

- OHA claimed information that was previously publicly available is now proprietary.
- OHA asked CCO's to "vote" on what they wanted to release in response to FamilyCare's request.
- OHA has outstanding public records requests from FamilyCare that date back to January 2015.

All of these requests relate to data included in the rate calculations for 2015 and how pass-through profits to related entities were treated.

### What about all the meetings OHA had with CCOs to develop the rates?

Several meetings does not equate to transparency or collaboration. FamilyCare has participated in meetings, raising concerns and requesting information. OHA failed to respond. Concerns expressed by FamilyCare, still unanswered, relate to inconsistency in OHA reporting requirements, incomplete data validation and fair treatment of related party transactions.

### What about Mediation?

FamilyCare entered into mediation with OHA in late 2015; OHA terminated mediation on March 14, 2016 and demanded FamilyCare sign their settlement proposal without modification. Three days later, OHA delivered a revised demand letter to FamilyCare. Subsequent counter-proposals have been offered by both parties.

### What is FamilyCare's current proposal?

FamilyCare's most recent proposal, offered on Monday March 21, would require FamilyCare to repay OHA $47.3 million for 2015 and its rates for 2015 and 2016 would be increased for the ACA population. This increase would be fully funded by the federal government and have *no impact* on the state general fund.

Contrary to OHA's statements that FamilyCare's prior proposal is inconsistent with CMS-approved rates, FamilyCare received confirmation from PricewaterhouseCoopers that the proposal is "consistent with the approved rate ranges" as required by CMS's February 24, 2016 letter to OHA. As such, FamilyCare's prior proposal would have allowed OHA to avoid a loss of over $500 million in matching federal funds.



OHA_LIT_00565555

Exhibit 2
Page 18 of 26


**FamilyCare Health**

The same is true of FamilyCare's current proposal. It proposes rates within the CMS-approved rate ranges and would allow OHA to obtain full federal funding to avoid the projected $500 million loss. Additionally, the current proposal employs the exact same rate methodology adopted by OHA.

Under the current 2016 OHA rates, FamilyCare expects to incur a loss of $31.6 million. The expected 2016 loss has been confirmed by Milliman, an independent actuarial firm. To FamilyCare's knowledge, no other CCO is projecting a loss for 2016, based on their OHA rates.

### Correcting the Record on OHA Statements

1. *FamilyCare is asking to be treated differently than other CCO's.* Contrary to OHA's statements, FamilyCare filed the lawsuit last year claiming that OHA was treating it differently in its rate setting process. OHA's most recent (March 22) proposal acknowledges that the 2015 and 2016 reimbursement rates for FamilyCare were calculated using a flawed methodology.

2. *FamilyCare's proposals are inconsistent with CMS approved 2015 and 2016 rate methodologies.* Contrary to OHA's statements that FamilyCare's proposals are inconsistent with CMS-approved rates, FamilyCare received confirmation from PricewaterhouseCoopers that FamilyCare's proposals are "consistent with the approved rate ranges" as required by CMS's February 24, 2016 letter to OHA. As such, FamilyCare's proposals allow OHA to avoid a loss of over $500 million in matching federal funds. OHA's most recent proposal agrees to accept FamilyCare's suggested revisions to its 2015 rates. However, the new proposal does not include a revision to 2016 rates. OHA previously indicated the rate methodology must be consistent for both years.

3. *CMS required OHA to redo the rate setting process for 2015.* Contrary to OHA's statements, CMS never rejected the original 2015 rates submitted by OHA. They only submitted a lengthy list of questions. OHA unilaterally decided to completely redo the rates and apply them retroactively.

4. *FamilyCare does not have a valid 2015 or 2016 contract in place.* Contrary to OHA's statements, FamilyCare has contracts for 2015 and 2016, both of which have been signed by OHA and FamilyCare. OHA drafted the language for both contracts.

5. *FamilyCare's settlement proposals cannot be funded through federal dollars.* Our settlement proposals are revisions to the rates within the CMS approved rate ranges and add no cost to the state general fund. OHA has proposed a lump sum payment from the state general fund. FamilyCare is requesting a rate revision, consistent with the OHA rate methodology, not a lump sum payment.



OHA_LIT_00565556

Exhibit 2
Page 19 of 26



6. *FamilyCare had a chance to review their rates with OHA.* Contrary to OHA's statements, FamilyCare attended meetings. However, information requested was not distributed, nor released. This information was critical for FamilyCare to adequately understand how OHA was developing the rates. Without this information, FamilyCare could not raise informed questions or challenges to the process.

7. *The 2015 and 2016 rates are actuarially sound <u>for FamilyCare</u>.* The actuarial opinion certified by Optumas states clearly that the <u>rate ranges</u> for each region are actuarially sound, <u>but the rates for each CCO may not be actuarially sound</u>. Rates cannot be sound if they produce a prospective deficit. Under the current 2016 OHA rates, Milliman, an independent actuarial firm, predicts that FamilyCare will incur a loss of $31.6 million in 2016. To FamilyCare's knowledge, no other CCO is projecting a loss for 2016, based on their OHA rates. Prior to 2015, rates were developed and certified as actuarially sound for each CCO at the individual level. In the development of the 2015 rates, OHA and Optumas, changed the process to certify rates as actuarially sound only at the regional level, versus CCO level. It's unclear why the process was changed in this manner.

OHA_LIT_00565557

Exhibit 2
Page 20 of 26

Rates and FamilyCare – Frequently asked questions – March 2016

How is OHA trying to resolve the overpayment issue with FamilyCare?
The Oregon Health Authority (OHA) presented FamilyCare with a plan for resolving the more than $55 million in rate overpayment FamilyCare received in 2015 to provide care to Oregon Health Plan (OHP) members. OHA offered a monetary settlement to address concerns that FamilyCare had the most significant rate difference when revised 2015 rates were implemented to address issues with the original 2015 rates. This plan would also allow FamilyCare to have an extended period to make the necessary repayments, through December of 2018.

In exchange, FamilyCare would agree to reimburse Oregon for the remaining overpayments; drop its lawsuit challenging OHA to revise rates set for FamilyCare; and agree that they should not have a separate or different methodology than other CCOs.

What is the role of CMS?

The Center for Medicare and Medicaid Services is the third party to Oregon's Medicaid contract with the federal government.

OHA has been advised by the federal government's Center for Medicare and Medicaid Services (CMS) that FamilyCare does not have a valid 2015 or 2016 contract in place. Without an agreement in place, FamilyCare is not in compliance with its state contract to provide coordinated care to Oregon Health Plan (OHP) members in the tri-county metro region. Despite the lack of contract, OHP members will continue to receive their health plan benefits and are not at risk of losing coverage.

Why didn't OHA accept the proposed solution that FamilyCare offered?

After analyzing FamilyCare's proposed solution, OHA concluded FamilyCare's proposed solution would:

- Be inconsistent with CMS approved 2015 and 2016 rate methodologies;
- Treat FamilyCare differently in regard to payment, violating trust and transparency with other CCOs and CMS; and
- Require addition taxpayer dollars to pay FamilyCare instead of benefiting some of Oregon's most vulnerable citizens-- Oregon Health Plan members.

How many CCOs have signed 2015 contract amendments?
To date, 15 of 16 CCOs have signed their 2015 rate amendments. Those rates were approved by CMS in December 2015. The February 2016 letter from CMS confirmed that FamilyCare does not have an approved contract for 2015 or 2016.

How many OHP members are enrolled in FamilyCare? What's their capacity?
Approximately 128,000 OHP members are enrolled in FamilyCare. They are approved to serve up to 240,000 members.

OHA_LIT_00565558

Exhibit 2
Page 21 of 26

Has FamilyCare had a chance to review their rates with OHA?
OHA remains committed to transparency and this was a priority during the 2015 rate
redevelopment process. Individuals meetings were held with all the CCOs, including FamilyCare,
to review the methodology and answer any questions.

Why were rates redeveloped?
In January 2015, eleven of Oregon's coordinated care organizations sent a letter to Governor
Kitzhaber saying 2015 rates were flawed.

In particular, the issues raised were that the rates varied widely without explanation for CCOs
within the same region and that 2015 rates had been developed without transparency. The
coordinated care organizations also expressed concern that the 2015 final rates were not
presented until late in December 2014 and without adequate opportunity to review.

How did the lawsuit between OHA and FamilyCare develop?
FamilyCare notified OHA that the 2015 rates were not actuarially sound and needed to be
redeveloped by law March 2016, prior to seeing the revised 2015 rates. Their lawsuit was filed in
May 2015. FamilyCare sued asking for the rates to be redeveloped, which OHA had begun at that
time – and then completed in August 2015.

How did OHA work with Oregon's CCOs to redevelop the rates?
In March 2015, OHA convened Oregon's coordinated care organizations to discuss the
challenges and opportunities of redeveloping rates. The outcome of the meeting was that OHA
would contract with the actuarial consultant, Optumas, to redevelop the 2015 rates using a
revised 2015 rate methodology and certification.

At the request of Oregon's coordinated care organizations and with the consent of the Centers
for Medicare and Medicaid Services, OHA began redeveloping 2015 rates in April 2015, seeking
not only to address the 2015 methodological issues but also to establish a solid financial
foundation for Oregon's health system in 2016 and beyond. OHA hired Optumas as its actuarial
consultant to redevelop the 2015 rate methodology and the 2015 rates, as well develop a
methodology that could be applied to future rates.

OHA, coordinated care organizations, and Optumas developed the new methodology through a
transparent, intensive process. This process included over 100 meetings between coordinated
care organizations, OHA staff, and Optumas. Close coordination, partnership, and transparency
with CCOs and their actuaries were key to this successful process. A revised rate methodology
and certification for 2015 was completed in August and the same methodology is used for the
2016 rates.

Did FamilyCare participate in the rate redevelopment meetings with CCOs?
A representative from FamilyCare attended all group meetings. For 2015, FamilyCare attended
five individual meetings and 16 group meetings, for a total of 21 meetings on 2015 rate
development. For 2016, FamilyCare attended three individual meetings and six group meetings,

OHA_LIT_00565559

Exhibit 2
Page 22 of 26

for a total of nine meetings.

What is an overpayment?
As defined in OAR 410-120-0000, overpayment "means a payment made by the Authority to a provider in excess of the correct Authority payment amount for a service. Overpayments are subject to repayment to the Authority."

OHA contracts with Coordinate Care Organizations specifically define overpayments as "Any payments received by Contractor from OHA under this Contract, and any other payments received by Contractor from OHA, or any other source to which Contractor is not entitled under the terms of this Contract shall be considered an overpayment and may be recovered by OHA from Contractor."

Would the federal government cover the cost of a settlement?
Funding for a settlement is not available through federal dollars.

OHA_LIT_00565560

Exhibit 2
Page 23 of 26

DRAFT

Attorney Client Privilege

(Insert reporter's name) / Oregon Legislators

Today the Oregon Health Authority provided a technical response to FamilyCare's latest proposal. As you know, this dispute is about the $55 million rate overpayment FamilyCare received in 2015 and FamilyCare's lack of CMS-approved contracts for 2015 and 2016.

At the most basic level, this disagreement has been driven by Family Care from the start. Family Care (and most other CCOs) objected to OHA's original 2015 rates and asked OHA to revise them to ensure that they were actuarially sound. While OHA was collaborating with FamilyCare and the other CCOs to develop revised 2015 rates, FamilyCare filed a legal suit challenging the original rates. They demanded that revised rates be developed and retroactive to January 2015. As part of this process, Optumas – the independent actuarial firm setting the rates – determined that FamilyCare and five other CCOs were actually being overpaid, and that others were actually being underpaid. Even though all of the 15 other CCOs have resolved their 2015 contract rate amendment -- including returning all applicable overpayments, Family Care is continuing to demand special treatment. FamilyCare refuses to return its overpayment and continues to contest the 2015 redeveloped rates created through the collaborative and transparent process they demanded.

While we are disappointed FamilyCare rejected OHA's most recent offer, we remain hopeful we can find agreement. Both sides have an interest in a clear, timely resolution. OHA has participated in mediation and negotiation with Family Care for over a year now. OHA is committed to ending this dispute, despite FamilyCare's combative tone and rhetoric.

With all of this in mind, OHA wants to clarify the key issues and correct some of the statements Family Care has made recently:

- **FamilyCare is not entitled to keep the $55 million in 2015 rate overpayment**: FamilyCare's rates are paid for through state dollars paid by taxpayers, and federal matching funds – i.e., FamilyCare is negotiating to keep public dollars they received in the form of an overpayment. The overpayment was a direct result of a rate redevelopment process FamilyCare and other CCOs initiated in 2015. *In that process, Optumas determined that FamilyCare had enjoyed significant but inflated profits and had failed to deliver medical services meeting minimal medical loss ratio requirements.* Until the overpayment issue is resolved, FamilyCare does not have a CMS-approved contract for 2016, according to CMS.
- **FamilyCare is not entitled to receive a rate of its own choosing within the CMS-approved rate range for Oregon**: FamilyCare and the other CCOs were assigned rates Optumas developed based on the health risks of each CCO's member population. While FamilyCare contends they should receive 100 percent of the approved range, OHA is obligated to pay CCOs within CMS-approved parameters:

- o The rates must be actuarially sound for each CCO, according to Optumas.
  - o The rates one CCO receives cannot be inequitable in relation to rates paid to other CCOs in the range, otherwise all rates would have to be revised upward. Upward revision to the rates of multiple CCOs jeopardizes OHA's waiver agreement with CMS to stay within a 3.4 percent growth limit.
- **OHA's proposed rates are actuarially sound and do not jeopardize the financial health of any CCOs:** The health and well-being of OHP members depends on the financial strength and stability of the CCOs that serve them. As partners in health care transformation, OHA is committed to the success of all of Oregon's CCOs -- however, we want our CCO partners to be financially sound so they can serve OHP members, not maximize their profit margins. There is no external evidence that FamilyCare's operations are unsustainable, or that Family Care is financially unable to return its overpayment:
  - o In 2014, Family Care's operating margin was greater than 20 percent, by far the highest margin of any CCO (see attached chart).
  - o Through the first nine months of 2015, Family Care's operating margin was approximately 5 percent.
  - o No other CCOs have reported operating deficits under the current CMS-approved rates.
  - o All other CCOs have paid back their 2015 rate overpayments.

OHA and Optumas are responsible for paying CCOs appropriate rates approved by CMS. *Oregon and its actuaries are not responsible for business decisions CCOs make that affect their operating margin: e.g., provider contracts, operating expenses (including staff compensation and benefits) and other costs.*

- **Family Care's offer to return a portion of its rate overpayment in exchange for federally-funded enhanced rates puts federal funding for Oregon's Medicaid program at risk:** FamilyCare has publicized its offer to repay $47.3 million of its 2015 rate overpayment, in exchange for receiving enhanced rates in 2015 and 2016 for the expanded population eligible for coverage under the ACA. While FamilyCare is correct in stating their enriched rates would not have an impact on the state general fund (since the expansion population is currently paid for 100 percent through federal dollars), FamilyCare's windfall risks pushing Oregon's Medicaid expenses past the 3.4 percent CMS-allowed growth rate, since OHA would be obligated to treat all other CCOs equitably and enrich their rates as well. Exceeding the 3.4 percent growth limit would put federal participation in OHP funding at risk.

If we can't reach an agreement, FamilyCare will be in breach of contract with the state. As we move forward, it is OHA's responsibility to resolve this dispute in a way that protects coverage and benefits for OHP members, maintains federal participation in Oregon's Medicaid program and provides equitable treatment for all CCOs. While we continue to press for a settlement, we can't compromise these principles or allow this process to drag out indefinitely.

OHA_LIT_00565562

Exhibit 2
Page 25 of 26

Please let me know if you have questions. If you'd like, I'd be happy to set up a time for you to talk more with Lynne Saxton, OHA Director or Lori Coyner (our state Medicaid director) if you'd like clarification on any of these issues.

OHA_LIT_00565563

Exhibit 2
Page 26 of 26