IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

FAMILYCARE, INC., an Oregon            )
non-profit corporation,                )
                                       )
          Plaintiff,                   )   Case No. 6:18-cv-00296-MO
                                       )
     v.                                )
                                       )
OREGON HEALTH AUTHORITY, an            )   February 24, 2022
agency of the State of Oregon,         )
and LYNNE SAXTON,                      )
                                       )
          Defendants.                  )   Portland, Oregon
_____)

Oral Argument

TRANSCRIPT OF PROCEEDINGS

BEFORE THE HONORABLE MICHAEL W. MOSMAN

UNITED STATES DISTRICT COURT SENIOR JUDGE

APPEARANCES

FOR PLAINTIFF:            Ms. Julia E. Markley
                         Perkins Coie, LLP
                         1120 N.W. Couch Street, 10th Floor
                         Portland, OR 97209


                         Mr. Matthew P. Gordon
                         Perkins Coie, LLP
                         1201 Third Avenue, Suite 4800
                         Seattle, WA 98101


FOR DEFENDANT OREGON
HEALTH AUTHORITY:        Mr. Harry Wilson
                         Mr. Anit K. Jindal
                         Ms. Laura Salerno Owens
                         Markowitz Herbold PC
                         1455 S.W. Broadway, Suite 1900
                         Portland, OR 97201


FOR DEFENDANT LYNNE
SAXTON:                  Mr. Edwin A. Harnden
                         Mr. Chris M. Morgan
                         Barran Liebman LLP
                         601 S.W. Second Avenue, Suite 2300
                         Portland, OR 97204


COURT REPORTER:          Bonita J. Shumway, CSR, RMR, CRR
                         United States District Courthouse
                         1000 S.W. Third Avenue, Room 301
                         Portland, OR 97204
                         (503)326-8188
                         bonita_shumway@ord.uscourts.gov

(P R O C E E D I N G S)

(February 24, 2022; 1:35 p.m.)

* * * * * *

THE COURTROOM DEPUTY:  We are here today for oral argument in Case No. 6:18-cv-296-MO, FamilyCare, Inc. versus Oregon Health Authority, et al.

Counsel, please state your name for the record.

MR. JINDAL:  My name is Anit Jindal, on behalf of OHA.

MR. WILSON:  Harry Wilson, special assistant attorney general for Oregon Health Authority.

MS. SALERNO OWENS:  Laura Salerno Owens, special assistant attorney general for Oregon Health Authority.

MR. GORDON:  Matthew Gordon for Plaintiff FamilyCare.

MS. MARKLEY:  Julia Markley for Plaintiff FamilyCare.

MR. MORGAN:  Chris Morgan for Defendant Lynne Saxton.

MR. HARNDEN:  And Ed Harnden for Defendant Lynne Saxton.

THE COURT:  Thank you all for being here.

We have two motions to deal with today.  The first is the motion against Ms. Saxton's first affirmative defense. I'll take that one up first.  But I'll give you my tentative thoughts and then I'll hear any further argument.  Please rest assured that I've read what you've submitted and tried to understand it as carefully as I know how, so you don't have to

repeat that.

The operative method of analysis comes from *Yogman*, and my tentative views are that Ms. Saxton has a difficult time getting around that method of analysis, that terms of the contract read in context of the entire contract seem to me to be so unambiguous that it would be unreasonable to find ambiguity there. They outline two parties to the contract in a couple of different ways, both by name and by use of the word "neither" instead of "none." There is an exclusivity provision of the contract which may apply by analogy but which nevertheless continues the theme. And along the way, in various ways, the contract limits its reach, at least with regard to this provision, to the two parties. So, for example, the exclusivity provision does the same.

Ms. Saxton doesn't deal, in my view, directly with the terms of the contract, the text of the contract, and instead suggests or argues that it wouldn't make much sense to have a contract that limited liability without some mechanism for limiting liability by involving the actions of the only people who can really perform under the contract. And I guess I'd say that in my view, that's an argument that sounds better in theory than in reality, in terms of thinking about how contracts are written and how parties draft terms and how this plays out.

So my tentative views are that *Yogman* applies, in the

sense that it binds me to interpret the contract using unambiguous terms, and that the -- that the scope of the limitation of liability in this case is unambiguous.

Since my reasoning tends to run against Ms. Saxton, I'll start with you first for argument.

MR. MORGAN:  Thank you, Your Honor.  And so I'll address just those points directly.

The provision at the end of the day that we're arguing is ambiguous is the definition of the State of Oregon, which in the contract it expressly states that they're acting by and through the Oregon Health Authority.  And as we've briefed in our papers, it's our position that the OHA is not autonomous.  It can only act through human beings, and that by extension, the definition then of OHA needs to encompass actors, employees, agents who are acting in furtherance of the terms of those agreements, otherwise its would make no sense.

Looking at --

THE COURT:  Can I pause you there for just a moment.

Wouldn't the scope of your argument then be that any contract between institutions or companies that had a limitation of liability would necessarily have to include the institution's or corporation's agents and officers that can act on its behalf?

MR. MORGAN:  Yes.  So I think our position would be that generally yes, based upon traditional tort principles, and

so generally speaking --

THE COURT:  Why would traditional tort principles tell me how to interpret the contract?

MR. MORGAN:  So traditionally, based upon the case law that we have cited, Oregon law that's been adopted in this jurisdiction as well, employees who are acting within the scope of their employment and for the benefit of their employer are shielded from liability for tortious interference.  And at the end of the day, what we think we have here -- and we've had this position since the beginning of our involvement -- is that this is a tortious interference claim that's really acting somehow as a civil rights claim.

So we do think the tortious interference principles are applicable, particularly when given that the allegations, the only plausible theory of damages that have been set forth arise exclusively out of the contract, out of an alleged interference with the contract, out of setting rates that were allegedly unreasonable, biased, actuarially unsound, using erroneous data and methodology, the allegations that Saxton somehow interfered with that.  And so we think that it really is a tortious interference argument, but given the fact that traditionally employees acting within the scope of their employment and in furtherance of their employer's obligations -- which is a question of fact not a question of law -- shields an employee from liability for tortious

interference, which is why we believe that the claim is pled as it is, but the gravamen of the complaint, as we said, this is a contract interference claim.

The only plausible --

THE COURT:  I'm more interested in getting at this text.  So if their argument is that it's really a tortious interference claim, and that if it is, Ms. Saxton comes within the tort provisions, tort hornbook law that shields her from liability, then you don't need the limitation of liability from the contract to get where you want to get, right?

MR. MORGAN:  Well, from a standing perspective, yes, we'd agree with that, Your Honor.  But we do think it lends credence to the fact that the contract cannot reasonably be interpreted, in our view, to somehow shield only the OHA as an organization but not claims broadly that arise out of exclusively the contract language.

THE COURT:  I guess I'm still struggling with how these two relate to each other.  Your contention is that -- well, it's not a contention.  I accept the proposition that tort law shields your client in a situation like this from tortious interference with contract liability.  Let's start with that.

So help me understand a contractual provision that tends to limit liability for breach of contract --

MR. MORGAN:  So --

THE COURT:  -- or any claim arising out of the contract.

MR. MORGAN:  So, in this situation, I think that the language of the limitation on liability provision itself is instructive, and that it's not limited to a particular cause of action, in our view.  It says that neither party shall be liable for incidental or consequential damages arising out of or related to this contract.

THE COURT:  Let me phrase my question a different way.  Why would the principles of tort law you've just explained help me understand what the parties might be up to in a contract like this for a breach of contract claim?  Let's just start with that.

MR. MORGAN:  Well --

THE COURT:  Why couldn't parties contract to limit liability for breach of contract claims that are completely independent of tort law and its breach?

MR. MORGAN:  Well, if the claim that's at issue is a breach of contract claim, which is not necessarily as this claim has been pled, we think it would shield her liability in its entirety.  But here I suppose what we're saying, Your Honor, is it doesn't matter how it's pled, whether it's pled as a tortious interference claim or as a civil rights claim.  So long as Saxton is subsumed as director, the head employee of the Oregon Health Authority, she's entitled to protection under

the limitation of liability contained therein.   I think --

THE COURT:  I can't tell whether your argument is one that stands to one side of the text or is intending to interpret the text.  I think it's telling me that the text says what it says, but the only way to really understand what the parties really intended here is to take a look at starting, for starters, tort law.

MR. MORGAN:  I would agree with that, Your Honor.  I think the tort principles that we've outlined are instructive.

THE COURT:  So if I'm not looking at text, I'm trying to figure out what the parties really intended, then why couldn't they sit down and say, well, we're going to limit liability here and it's going to be the two parties to the contract?  And we all know that if there's a tortious interference claim, we know how that will go down, so that's not a real concern.  Our real concern is every other situation where we might want to limit liability.

MR. MORGAN:  Yeah.  I would say to that, Your Honor, that if it's interpreted in a manner that doesn't cover officers and employees, it would obviate the entire purpose of the limitation on liability, which really is risk allocation. And I don't think that the OHA reasonably, in interpreting the definition of OHA under the contract, could have said, okay, well, us as the entity are going to contract to a limitation on liability which prevents the recovery of consequential damages

arising out of the contract, while not saying also as part of this we're including all of the employees and agents who are actually acting in furtherance.  I think it's further evidence of that.  What FamilyCare is essentially trying to do here is take advantage of the contract as its basis for damages while also saying that other provisions, such as the limitation on liability, don't actually apply.

THE COURT:  Do you have plaintiff's reply in front of you?

MR. MORGAN:  I do.

THE COURT:  What do you make of their argument at page 5, footnote 2, on the point you just made?

MR. MORGAN:  Yes.  Two points, Your Honor.  I disagree by making them parties to the contract you would subject individuals for claims of breach of contract, because as I've just outlined, what the case law says is that so long as an employee is acting within the scope, in furtherance of their employer's obligations, they're shielded from contract claims, interfering essentially with contracts with the organization.

THE COURT:  The main contention is they're shielded from tortious interference with contract?

MR. MORGAN:  Tortious interference of contract.

THE COURT:  Are you contending that they're shielded from breach of contract, just a straight-up breach of contract

claim by common law?

MR. MORGAN:  I would say specifically the cases that are cited speak to tortious interference claims as opposed to specifically breach of contract claims, although I would --

THE COURT:  Breach of contract claims, just for starters, wouldn't making Ms. Saxton a party to the contract subject to her to something she's not currently subjected to, a claim for breaching the contract?

MR. MORGAN:  Hypothetically, it could.

THE COURT:  Couldn't the parties have wanted to avoid that by not naming her as a party to the contract?

MR. MORGAN:  They could have, but we don't --

THE COURT:  What would be implausible or illogical about doing that?

MR. MORGAN:  I don't think it would be implausible or illogical.

THE COURT:  I mean, it's your opponent's explanation for why they didn't do what you contend they might have needed to have done to name them in some way as a party to the contract where liability is limited.

MR. MORGAN:  I suppose I would put it this way, Your Honor, that the provision that we're challenging as potentially ambiguous is the scope, the definition of OHA in the contract.

THE COURT:  So your core argument, at least in terms of economic motivation, if I understand it right, is why would

OHA limit liability for itself but leave itself open to the exact same amount of liability through the actions of its agents, right?  That doesn't make much sense to do it in that way because they're still going to be coughing up the same amount of money through another channel.

MR. MORGAN:  Theoretically, you could.

THE COURT:  And the other channel arises out of the indemnity clause, correct?

MR. MORGAN:  That's correct.

THE COURT:  So at least in this contract, you say, well, if you're going to indemnify Ms. Saxton but not impose a limitation of liability that covers here, then you could end up paying all of the money they don't have to pay due to their own limitation of liability.  Isn't that your economic argument, basically?

MR. MORGAN:  I think that's essentially it, Your Honor, yes.  That you'd be opening yourself up to -- from a risk allocation standpoint to something that is not manageable.

THE COURT:  And the idea being that therefore what looks like a plain reading of the text ends up not being something a sane actor would do?

MR. MORGAN:  I don't know if I would say "sane," but that's the idea, is that --

THE COURT:  It's crazy to contract to limit liability is your argument -- right? -- to contract to limit liability in

a way that doesn't limit liability at all?  I know you don't like the word "sane."  I give you that.  I'm used to hyperbole.

It's economically unreasonable, in your view, to limit liability through the front door but allow it through the back door to the tune of the exact same amount of dollars?

MR. MORGAN:  Yes, particularly where, as in this case, the damages that are at issue are the exact type of damages that presumably you would have contracted to limit in the first place.

THE COURT:  Thank you.

Anything else?

MR. MORGAN:  No, Your Honor.

THE COURT:  Go ahead.

MS. MARKLEY:  Thank you, Your Honor.

THE COURT:  Before you launch into your slide show, can you just tell me what's wrong with the economic argument you just heard?

MS. MARKLEY:  Yes.

THE COURT:  That argument, the point of it is that it would be an unreasonable interpretation of the text to give it its, I guess I'd say, plain English meaning, because to do so creates a situation where the contract at the end of the day, because of the indemnity clause, doesn't limit liability at all, even though it tries to do so.

MS. MARKLEY:  Yes.  Ms. Saxton's argument violates

the *Yogman v. Parrott* methodology for interpreting contracts. That argument goes beyond the four corners of the contract, which is what *Yogman* teaches must be analyzed at the first level of analysis.  If after looking at the text and context, as the Court recited in its preliminary remarks, to which I would add that the contract expressly defines the term "parties" --

THE COURT:  Before we get to the definition of "parties," why does it violate *Yogman*?  I mean, the hook, the source for the argument your opponent is making is the indemnity clause, and then how this contract on its own terms, without reference to any emails or dreams or visions, just the text of the contract, the argument is this entire contract read together means that the limitation of liability clause read your way is nonsensical.  It's all text and context.  There's nothing else being relied upon.  How does that violate *Yogman*?

MS. MARKLEY:  Because it's a policy-based argument that goes --

THE COURT:  Not yet.  We haven't got to the policy-based argument.  We're still on the text-based argument. They say the indemnity clause and the way it operates makes the limitation of liability clause ineffective.  That's their argument, that it's just text.

MS. MARKLEY:  No, because the limitation of liability clause operates to limit damages between the contracting

parties, something that is a perfectly rational choice for contracting parties to make.

THE COURT:  That's the argument I've asked you to address, is is it a perfectly rational choice when you take the indemnity clause into account.

MS. MARKLEY:  Well, just so I can understand what people are referring to by the indemnity clause, is it this Exhibit D, section 9 clause?

THE COURT:  Yes.

MS. MARKLEY:  Where the contractor, FamilyCare, is obligated to indemnify OHA and its officers, employees, and agents.  So this is an example of when employees and agents receive the benefit of a particular contractual provision.

THE COURT:  Well, the idea you're facing, the argument you just heard is that Ms. Saxton will have to be indemnified if there's liability imposed against her, and so therefore --

MS. MARKLEY:  That's not within the corners of the contract, though.  This is a 1983 tort-based claim that has elements independent of a breach of contract claim.  It's certainly a different claim from the intentional interference of economic relations claim, which is the type of tort that FamilyCare could not sue Ms. Saxton for intentional interference of economic relations, but that's not what we have here.  We have a different kind of claim against an individual

defendant which is not -- does not come within the definition of -- she doesn't come within the definition of "party" in the limitation of liability clause.

THE COURT:  All right.  Thank you.

MS. MARKLEY:  So to not repeat what the Court said, I would add that there is two -- in addition to the text of the contract defining the term "parties" as OHA and FamilyCare, and section 19, reinforcing that OHA and contractor are the only parties to the contract, and expressly disclaiming an intent to provide any benefit to third parties unless individually named.

THE COURT:  Is that your contention that what Ms. Saxton is trying to do here is put herself in the position of a third-party beneficiary?

MS. MARKLEY:  It's similar to that.  What she seems to be arguing is the Court should interpret the term "party" in this limitation of liability clause to include her.  I counted the times in the 2017 amendment that the term "party" or "parties" are used, and it's 49 times.  She's not arguing that she falls within the definition of "party" for any of the other 48 times in the contract that the term is used but only in this particular provision.

That argument is contrary to several provisions of the contract, including these two provisions, the additional insured provision and the indemnity provision, which is just a one way -- it's not the indemnity that the Court had a colloquy

with counsel about.  This indemnity is obligating the contractor, FamilyCare, to provide an indemnity to the State OHA officers.  So this is not -- this is different.

But this provision shows that the parties knew -- the parties -- and specifically OHA -- knew how to extend a contractual benefit to employees when it wanted to, and it's particularly contrary to Ms. Saxton's argument.  It's a *Yogman* first-level analysis to which Ms. Saxton has no response in her briefing.

THE COURT:  Thank you very much.

Do you wish to reply at all?

MR. MORGAN:  I would just close by saying, Your Honor, that at the end of the day, this is a contractual interference claim that's masquerading as a civil rights claim, and this was done essentially intentionally to circumvent the limitation on liability provision that's included here, and would not be a reasonable interpretation from a risk allocation standpoint, given the indemnity provisions that you've mentioned, to subject Lynne Saxton to consequential damages arising out of the contract, particularly where the sole plausible basis for those damages arise specifically out of the contract.

That's it.

THE COURT:  Thank you very much.

I think *Yogman* tells me that to read this contract

without trying to guess unknown intent or motivations and without trying to import ideas not found in the text requires that I grant FamilyCare's motion against this affirmative defense.  I think the plain meaning of this contract is that the only two entities for whom liability is limited -- I guess I should say three -- are on the one hand FamilyCare, and the State of Oregon through OHA.

Let's turn to the next motion, and that's a motion for partial summary judgment.  Here I've tried to think about how to explain my tentative thoughts because I think the issue is mostly a procedural one and not as substantive as it might be.  What I thought I'd do is try to use a template of what I'm going to call a normal case and then see how close this case gets to the normal case.

So normally if you're this close to trial and a defendant complains that the theory for the case for the plaintiff has shifted dramatically, then you'd be taking a look at what the plaintiff had staked out as its position through the course of discovery.  And one of your big questions would be did the defense have an opportunity to flesh out in discovery its defense against this theory of the case by plaintiff or whether it's, you know, sort of being sprung on to the scene after the close of discovery.  So you'd look at answers to interrogatories and 30(b)(6) depositions and the like to try to figure out the kind of fairness of how this

played out, and you'd prevent a plaintiff from shifting its theories of liability this close to trial if that plaintiff hadn't announced those theories at some point and there hadn't been some opportunity to flesh that out and develop it. I think in a normal case that would be normally how you'd try to answer this question.

And I do agree with the premise that the answer given today to my three questions -- my first question in particular -- in which FamilyCare sets out its 40-some bases for its theory of implied covenant is a dramatic shift from anything it's said before and new enough to raise very serious fairness concerns.

The reason that normal case template doesn't fit here, of course, has to do with the -- sort of the procedural history of the case. And I think the parties agree with this, but my estimation is that there is about a -- about a three-and-a-half-month period where this particular claim -- I think it's now paragraph 107. Is that right?

That, by the way -- Let me digress. That hasn't changed much. There's, I think, two new words but don't affect my analysis. I think now we have "timely" and "adequate" to what was otherwise the same paragraph throughout, including in 2018.

So that claim I think was alive for purposes of discovery in this case, depending on how you measure it, for

either three and a half or maybe up to five and a half months. I think it's three and a half. I think it's from February 15th, 2018, until I ruled on that claim, kicking it out of the case on June 1st, 2018, although discovery goes on, and in fact the 30(b)(6) deposition in this case takes place, I think, clear into August of that year.

Of course, the reason it's three and a half months, at least as stated by OHA, is that they lost -- when I got rid of that claim, they lost all motivation to care very much about it, and therefore didn't, you know, ask many questions about it in 30(b)(6) deposition or otherwise follow up on it.

That argument, by the way, sort of cuts both ways, because I think FamilyCare's response to that is, well, if you didn't ask about it, then we didn't have to say much about it. And so that's just showing how the normal template doesn't fit here very well.

I suppose it could be said that even though I dismissed the claim from the case, with the idea that appeal coming up, maybe more should have been done about that, I guess for my purposes here today, I find no fault with the idea that -- I'm not basing my ruling in any way on OHA sort of inadequately seeking clarification during this period of discovery. Maybe they just couldn't believe I'd get reversed or something like that.

So what we have here is not the normal way, but I've

looked at whether there are other ways at which at some point prior to this time FamilyCare either undertook on its own or was obligated to be clearer.  And I'll answer that question in a second, but I should also sort of back up and say that I think they did have an obligation prior to today to be clear, as I've stated on an earlier occasion, the idea that the contractual language, the contract and applicable law was enough to tee this case up for trial I rejected, or if I haven't formally rejected it, I do now.  I don't think a defendant can prepare for a case where what they're told about the basis for the claim is that it's grounded in the contract -- fair enough -- and applicable law.  And it's not -- the ball isn't moved forward at all on that score by the phrase "among other things," because now it could not only be contract and applicable law but things that aren't even law, you know, tradition or culture or something.  So none of that tees a case up for trial adequately or fairly.  So, in my view, there was some responsibility by the plaintiff to do something more than just say, well, we're going to go to trial and you need to get ready for this claim by searching the contract and applicable law, among other things.

So how did that happen in this case?  I think it happened on three occasions.  The first is when OHA filed a motion to dismiss in March of 2018, and FamilyCare responded to that motion relying primarily at that time as its basis for

this claim on federal Medicaid regulations.

Now, I understand why FamilyCare might want to move away from federal Medicaid regulations for a number of things, including dictum and Ninth Circuit opinion, but I'd say it has clearly moved away from federal Medicaid regulations to something else, and there's been a dramatic shift.

The second was when FamilyCare filed a motion to reconsider.  And that was another occasion when it would have been incumbent on FamilyCare to lay out -- perhaps even more than on the earlier occasion, since it's a motion to reconsider -- its basis, but instead it really offers at that time nothing clarifying more specific about the basis for its expectations other than the contract.

And then the third occasion is when OHA files another motion to dismiss in May of 2021, and there FamilyCare again comes forward with what I view as relatively vague and nonspecific language, "among other things" again, 30 years of prior practice.  I've tried to imagine how one defends by trying to figure out what that means, industry standards, applicable regulatory framework, et cetera.  So I view that answer also as nonspecific for litigation purposes when we're well past the point of needing to start drawing this case from the funnel of the filing of a complaint to the narrow edge of a trial.

So today FamilyCare has identified, as I said, 40 or

so bases for its expectation on this claim, and that list includes nine contract provisions and then other things.  And those other things are, generally speaking, either brand-new or specific, where previously one would have to only look at vague language to guess that they were in the case.

So, again, this is sort of a procedural ruling more than anything else, but my own view is that FamilyCare has previously failed to do what prior occasions obligated it to do, which is to be more specific about the nature of the claim, that we're too close to trial to now announce what has never been previously announced with any sort of clarity, and to prohibit any theory of liability except that which has been specifically adduced before.  And the only thing specifically adduced before is the contract and federal Medicaid regulations.  Now, there's not been a whisper of Medicaid regulations, so I assume they're not in the case and probably shouldn't be as a matter of law anyway.

And so that leaves FamilyCare, in my tentative view, with the ability to advance this claim by reference to the nine terms of the contract it has identified in its most recent pleadings, in its response in opposition.  And that happens to fit pretty neatly with what most cases say is the only basis for such a claim anyway, but be that as it may, I view it as -- again, my tentative view is that it's unfair, given the procedural history of the case, for FamilyCare to now go

forward with the bases it's just recently announced.

Since my tentative views run against FamilyCare, I'll turn to FamilyCare first.

MR. GORDON:  Thank you, Your Honor.

The Court talked about how this is a procedural question, and I agree in some part.  What we have is a number of motions to dismiss, and those motions necessarily framed the arguments.  And so when the Court talks about FamilyCare didn't lay out in detail the sources of its contractual expectations, that's because those weren't put at issue in the motions to dismiss.

And I think it's important to back up a step and recognize that OHA's argument here to try to limit FamilyCare's presentation of its case and the evidence to the jury based on OHA's own discovery choices proceeds from the faulty premise that FamilyCare was somehow obligated in its complaint to identify all the sources of its reasonable contractual expectations.

OHA has identified --

THE COURT:  I reject the proposition that you were obligated to be that specific in your complaint, although I remain troubled even under notice pleading by the phrase "applicable law."

But let's assume that that's not the point at which you had an obligation to be as specific as you must be for

trial.  At what point prior to trial were you required to be more specific than you were in the complaint about the nature of this claim?

MR. GORDON:  We would have been required to be more specific about it in discovery if OHA had asked about it.

THE COURT:  I'm asking not what went wrong with this case, but since we are headed to trial, at what point do you view your client as obligated before trial starts to be as specific as you have been for today's purposes about the nature of this claim?

MR. GORDON:  Certainly at the motion for summary judgment stage, which is what we've done.

But I would also take issue with the Court's discussion of our prior briefing in this case as not going beyond the contract when we talked about our sources.  Again, those were motions to dismiss.  The sources weren't put at issue.  But we did, particularly in the motion for reconsideration, both in briefing and in argument to this Court, we talked about things beyond the contract, industry standards.  I talked to you about the fact that --

THE COURT:  I didn't say you only limited yourself to the contract.  I mean, I noted that you have other statements of bases, including federal Medicaid regulations, and that in your motion to reconsider, you stated things like industry standards, prior relationships over the last 30 years.  What I

said about those was that they were very nonspecific; that one can't do much with that. What does industry standards mean? Which industry standards? I don't think that -- I don't think your motion for reconsideration really moved the needle much from the complaint in terms of specificity.

MR. GORDON: Well, again, it was because of the procedural posture at that time.

THE COURT: I understand that argument, I just thought you were saying that even though you weren't obligated to, you really did, and I'm curious as to when before today you think you did move the needle much for specificity from the complaint itself.

MR. GORDON: In the motion for reconsideration, in the oral argument on the motion for reconsideration, where I started to talk about the fact that a CCO would not enter into this type of contract, discussed how this type of contract is very different than those at issue in *Best* or in *Tolbert*, and the Court asked me to move on from that, that line of argument. So it was both in the briefing and in the oral argument.

In the briefing to the Ninth Circuit, both in our opening brief and our reply brief, we talked about things beyond the contract, sources of expectations. Again -- and there's a footnote actually in our briefing on the motion for reconsideration that I think is important to point out to the Court, where we say this really isn't at issue here in this

case, the sources of our contractual expectations, the details of that. We're citing these here for -- to illustrate that this motion to dismiss cannot be decided at this stage, that indeed these types of issues are typically not even resolved on motion for summary judgment, and we said if the Court thinks that we need to provide more, then we'll gladly do so.

But -- so that just illustrates -- the point of what we did in the briefing was illustrative, to bring to the Court's attention that we weren't solely relying on the contract or law, we were relying on other things as well, and it was appropriate for the Court to look beyond the contract to those other things in deciding the scope of a party's reasonable expectations.

And the point of all that briefing was to say that's not -- that determination about the scope of the reasonable expectations is not one that can be made or is not properly made on a motion to dismiss standard. So that's why we -- that's why we mentioned it but didn't get into the detail that we do in a motion for summary judgment.

THE COURT: The point about discovery is I assume you agree that normally in discovery the parties -- the defendant would come away in normal discovery with a far better understanding than the complaint would give it about the basis for the theories of liability for claim 5, right?

MR. GORDON: That's what discovery is for, certainly.

I mean, we --

THE COURT:  And your point is that it's not your fault that that didn't happen here.

MR. GORDON:  It's not.  We didn't resist the discovery.  We put forward people for 30(b)(6)s, we responded to the RFPs.  They didn't ask interrogatories.  They never asked a question at any of the depositions about what are your sources of reasonable expectations, what do you mean by "applicable law," what do you mean by "among other things."  And we presumed that they didn't do that because this is OHA.  OHA knows --

THE COURT:  I don't need you to presume anything about their mental state.  You can just make your own argument.

MR. GORDON:  Sure.  That's fine.

As a matter of record, it's clear that they did not ask those questions.

Their argument to you has been that once you granted the motion to dismiss, they decided not to proceed with discovery on this.  That's not -- that's inaccurate when you look at the record.  They had an initial notice of deposition for the 30(b)(6) deposition of FamilyCare where they included a number of claims -- or a number of paragraphs.  They specifically identified a number of paragraphs specific to this claim.  Notably, they did not include the paragraph that is now paragraph 107 about the sources of the expectations.

After Your Honor granted the motion to dismiss, while the motion for reconsideration was pending -- which was when they took the depositions, to be clear. It was during the pendency of the motion for reconsideration. So the claim had been dismissed, but it was back before the Court. They amended their notice of deposition and actually added more paragraphs related to this claim for relief. Again, they still did not specifically identify the paragraph that related to the sources of the contractual expectations.

So it's simply not the case, at least not on the paper record, that they decided to abandon discovery on that because of the motion -- of the ruling on the motion to dismiss. As a factual matter, when the depositions came up, they did not ask about these, and in fact there was a point in time in the deposition of Mr. Murray, I believe in his personal deposition, where the attorney said, okay, let's turn to this paragraph, and then said, no, actually let's put that away and decided to move on.

THE COURT: Let me be clear about your position, just --

MR. GORDON: Sure.

THE COURT: Just for me to understand its scope in a case like this.

I guess it's your position that if you're not put to the point, obligated in some way either through discovery or

otherwise, if you're not obligated to be more specific about the basis for your expectation, then you can go all the way up to and including the first day of trial without being specific. Nothing requires you to do so if your opponent doesn't ask you to do so. Is that your position?

MR. GORDON: I'm not aware of any authority that says that a party has the obligation to provide additional information unsolicited to the other side about -- in this particular instance. And again --

THE COURT: So the answer is yes, you feel that you could -- if I had made you do so by my own order in this hearing, you would have felt at liberty to go to trial with your explanation for the basis for your contractual expectation being what it's been up through May of 2021?

MR. GORDON: I don't think it's any different than any other kind of factual basis. As a matter of fact, of course, before trial we would put in our witness statements and other exhibits, et cetera, that would have identified that, but it's no different than --

THE COURT: You wouldn't have had to, right? Your witness statements could have been also -- they could have said we're relying on industry standards and regulatory framework. You could have been about that specific, right?

MR. GORDON: I think that's probably a court-specific thing. My understanding about Your Honor is that in witness

statements, is that witness statements tend to require more specificity.

THE COURT: That's correct. I usually know that if somebody objects, right?

I think I understand your position. I'm not -- I'm not suggesting it's fatal to your case at all, I just want to understand that you really are saying that the only thing that in law triggers you to say more is either discovery or some hearing that puts it at issue.

MR. GORDON: Well, to be clear, it could also be a requirement that such information was pleaded in the complaint, but as I've said, OHA cited no cases and I'm aware of no authority that says that the sources for the reasonable expectations have to be affirmatively pled in the complaint. So if it's not required to be in the complaint and it's not asked about in discovery, and it's not put at issue in a motion, I'm not sure -- I'm not aware of another obligation or something else that would require a party to come forward and voluntarily offer that information.

And certainly -- and I know you didn't want me to talk about OHA's motives, but I'll set that aside and just say OHA knows the industry standards. OHA knows the parties' history. OHA knows the innumerable times it has referred to CCOs as partners and talked about the CCO project as a long-term partnership to transform healthcare.

THE COURT:  Here you're making two arguments.  One is that you didn't have to say more than what you've said because no law, no duty was imposed on you to do so.  That argument I understand.

If you now want to argue that saying "industry standards" was specific enough, then I just need you to understand I disagree.  I mean, I know what applicable law is.  I know all the law.  All the law, I know it.  But I don't know where to go look if someone sues me for violating the law.  I need more than that to go on.

So that argument I'm going to have you put to bed because I don't agree with it, but I take seriously your argument that you had no obligation ever to say more imposed on you by a prior hearing or by discovery.  That's your argument, right?

MR. GORDON:  That is my argument.  I don't believe OHA has identified that.

I would also say that even if this Court agrees with its -- stays with its tentative views here about limiting the sources of the reasonable expectations, the motion for summary judgment should still be denied because when you look at the contract, you look at the law that's directly applicable here, federal regulations regarding actuarial soundness, which are still at issue in this case -- and I'll explain why in a moment -- but also other law that we've cited in prior

briefing, including on the motion for reconsideration and to the Ninth Circuit, Oregon law specific to CCOs and CCO contracts, including the requirement that contracts be for a five-year term and the reason for that requirement, that is sufficient to establish that FamilyCare had a reasonable expectation that OHA would not penalize it through unfair, unreasonable rates, would not give it rates that were unsound or that were full of errors.

OHA's argument here, to be clear, is that they as the single state agency responsible for Medicaid can act with impunity and set rates in a punitive way to put a CCO partner contractor out of business by giving -- intentionally giving it rates that are too low to cover costs, and that it would be unreasonable to expect anything different. And that, I submit to the Court, is an untenable argument.

THE COURT: Thank you. I'm going to pause you there for a minute. Thank you very much.

MR. GORDON: Can I -- I'm sorry.

THE COURT: I'm going to pause you there.

So on this idea of an obligation to say more, that general thought, what's your response?

MR. WILSON: Your Honor, I think one way to look at this is to compare it to what you would say if this was an express breach of contract claim. So imagine, Your Honor, that FamilyCare had argued that OHA had breached an express

provision of the CCO contract, provision one, and we took some discovery on that, it went up on appeal, we get back here, we go to trial, and at trial FamilyCare says, "And here is our argument that OHA breached express provision two of the contract." We would certainly be very upset about that, and we would contend that what FamilyCare has done is while it is still a breach of contract claim, it's a completely different theory of the claim that's never been advanced before.

What FamilyCare advanced on January 14th of 2022 is a different theory of the claim, akin to alleging that we breached a different express provision of the contract. They are alleging that we breached a different kind of implicit duty of good faith and fair dealing, and we think that that should not be allowed.

THE COURT: Why? Based on what principle that they're violating, other than you would not like it?

MR. WILSON: A few, Your Honor. It's not the claim that has been pleaded. So the claim that was pleaded in -- originally in 2018 was that based on contract and applicable law -- they actually alleged the two bases that they had at the time -- we violated their -- the parties' reasonable expectations.

The claim that they're advancing now is no longer tied to specific -- it's no longer based on those same things. What they're now saying is, well, back in 2012, the legislature

passed the CCO implementation program, Mr. Murray had an understanding about that program that caused Mr. Murray to have these beliefs, and so forth and so on. That's just a much different claim than what we understood in 2018.

We did --

THE COURT: I guess the argument that what they're now saying today can't be found -- can't be found within the meaning of the words "contract" and "applicable law," that's a tough sell because, as I've stated, one of my problems with "applicable law" is it includes everything.

So I guess I can see how you'd say that if it were based on something that's neither the contract nor law, as in internal psychological motivations, then maybe yes. But to the degree it's grounded based on law, like the 2012 legislative enactment, then just as a matter of whether it's fairly included within the verbal language of the contract, how does that fail to do so?

MR. WILSON: I think I would say that there has to be some kind of -- we had some kind of expectation about what kind of claim we're going to face at trial, and we did have other reasons to have those expectations, and one of the reasons we had the expectation that the claim would be based on federal Medicaid law and would be about actuarial soundness is the briefing that FamilyCare filed in 2018. But it's also the deposition testimony that we elicited. And it is simply not

correct that we never asked questions about this claim.  We cite in our briefing --

THE COURT:  I guess I stated -- and maybe I was wrong, was that one of your positions in showing unfairness of going to trial on this theory is that you haven't had a chance to flesh it out in discovery.  Did you have a chance to flesh it out in discovery?

MR. WILSON:  We had a little bit of a chance to question that.  So your timeline is correct, Your Honor.  We agree the claim was dismissed on June 1st, 2018.  We agree with Mr. Gordon that we had issued a 30(b)(6) notice that encompassed this claim.  And we agree with Your Honor that given our many obligations and limited discovery time, we stopped focusing as much on the claim after it had been removed from the case.

But it is not true that we asked no questions.  We did ask some questions, and what we were told at that time in 2018 was that FamilyCare's expectations were based on federal Medicaid law.  This is cited in our motion, that chunk of testimony.  And we asked what provision of the contract -- anywhere in the contract provides FamilyCare with a right to rates that are free of errors.  And the response you get, which is -- again, we put this before the Court, it's in the declarations -- is that the expectation that rates would be free from errors is simply a part of actuarial soundness.

So at the end of 2018, the claim that gets appealed to the Ninth Circuit, the claim that we understood FamilyCare was appealing, was a claim that federal Medicaid law informed FamilyCare's reasonable expectations, that those reasonable expectations were for actuarially sound rates, and that every other reasonable expectation they alleged -- accuracy, freedom from errors, reasonableness -- was just an aspect of actuarial soundness.

When the case came back from the Ninth Circuit --

THE COURT:  Your contention today is that that understanding you had was solidly based in your 30(b)(6) answers?

MR. WILSON:  Absolutely.

THE COURT:  Thank you.

MR. GORDON:  Your Honor, if I may respond.

THE COURT:  Go ahead.

MR. GORDON:  I have four points.

First, where counsel ended up on the questions, the question said where in the contract, where in the contract, where in the contract.  OHA's focus throughout this case, as reflected in their multiple motions to dismiss and their argument to you today, that our expectations are limited by -- to two provisions of the contract, their focus has already been on the contract.  So their questions at the 30(b)(6) deposition about where in the contract certainly did not include questions

about sources of expectations outside of the contract.  And to the extent that they had an understanding of the case and our theory of the case, that it was limited, it was limited -- that was limited because of the specific questions that they chose to ask.

The second point is that to the extent OHA had any confusion about what our claim was, they could have filed a 12(b) motion for a more definite statement.  In fact, they did that back when we were in state court on the first complaint. They filed a 12(b) motion.  They didn't file any such motion here.  So I just want to point that out because the Court asked what other times or what opportunities would there have been for a more detailed explication of the sources.

The third point, counsel says that -- gave you an example of if this was an express breach case.  And I think counsel said if FamilyCare had alleged we breached provision No. 1, and then right before trial said no, you breached provision No. 2, he tried to say that these are analogous circumstances.

That is not an apt analogy, Your Honor.  The claim is the same.  It is the same reasonable expectations that it has been since we first alleged it in the third amended complaint. There are three elements to such a claim:  expectations, breach, and damage.  From the beginning we have said that we were entitled to or had a reasonable expectation of -- excuse

me, of fair, unbiased, error free, actuarially sound rates. That has not changed.  So the basis of our claim has stayed the same.

And fourth, I wanted to talk about actuarial soundness issue.  That is at issue in this case, and the federal regulations related to actuarial soundness remain at issue in this case because, as established by the declaration of Donna Novak in support -- in opposition to summary judgment, CMS did not review and has not approved the 2018 rates that were offered up to FamilyCare.  CMS asked OHA questions about those rates, but before OHA could respond, OHA notified CMS that it would be amending those rates.  And so CMS said, well, don't bother responding to the questions, we'll wait and see your amended rates.

Those amended rates came out in February of 2018. Those were not the rates that were offered to FamilyCare in November of 2017, which are the basis of our claim on 2018 rates.  And as Ms. Novak explains, the subsequent approval of the February 2018 rates cannot be imputed as an approval of the rates that were offered in 2017.

So to put it simply, the rates that were offered to FamilyCare had not been reviewed thoroughly by CMS, and CMS has not said that they were actuarially sound.  And for that reason, the actuarial soundness issue remains in this case.

THE COURT:  If allowed to do so, are you going to

rely on federal Medicaid regulations to support this claim?

MR. GORDON:  Yes, for the actuarial soundness claim with respect to the 2018 rates, yes, just as we would rely on Oregon law related to CCOs and to the five-year contract term.

THE COURT:  Thank you very much.

MR. WILSON:  Your Honor, I must say I'm very surprised to hear that FamilyCare is contending that actuarial soundness is part of this claim.  In their opposition to our motion to dismiss, they all but conceded that it was no longer part of the claim.  This is OHA's frustration.  It is an ever-moving target.  We don't know whether FamilyCare contends that actuarial soundness is part of its good faith claim or is not part of its good faith claim.

THE COURT:  You do know, you now know, you're just contending you didn't know until five minutes ago.

MR. WILSON:  That is correct, Your Honor.

And I'd say the same for federal Medicaid regulations.  They're not even cited in the January 14th, 2022 opposition to the motion for summary judgment.  Once again, they're in sometimes, they're out sometimes.  It's impossible for us to prepare for trial if we don't know what we're facing.

MR. GORDON:  Your Honor, may I just say one brief thing in response?

THE COURT:  Yes.

MR. GORDON:  And that is that OHA in its motion

said --

THE COURT:  Which motion when?

MR. GORDON:  This motion for summary judgment.  OHA said -- I want to make sure I direct you to the right page I have in my notes.  They basically conceded --

THE COURT:  Tell me what they said.  Because when I hear the words "basically conceded," I hear "not conceded."

MR. GORDON:  If you'd give me a moment.

MR. WILSON:  Your Honor, I can say on page 22, section B of our motion for summary judgment, we argue that "FamilyCare has not adduced any evidence that the parties intended to incorporate statutes or regulations into the CCO contract that would imply a duty for OHA to develop rates that met FamilyCare's alleged reasonable expectations.  But even if the parties contemplated incorporating federal Medicaid law into the CCO contract's implied duties," and so on.

At this point when we filed the motion, we didn't know what FamilyCare was going to contend their reasonable expectations were or the bases for it.  We were trying to answer every potential outcome.

THE COURT:  Thank you.

Is that the page you were looking for?

MR. GORDON:  No, that was not the page I'm looking for.

What they said in their motion is that the -- they

took the position that the only basis for --

THE COURT:  Just take a minute to find it.

Have you found it?  Have you found the page you're looking for?

MR. GORDON:  I have not, but I can tell you what it says, which is that OHA said that the only basis for our reasonable expectations were the contract and federal Medicaid regulations.  So they basically -- when I say "basically conceded," they said that that federal Medicaid regulations could be a basis for our reasonable expectations.

THE COURT:  Will you email the parties and the Court with that page when you find it.

MR. GORDON:  I will.  I apologize.  I had it in my notes, but apparently I have too many notes.  I will email it to you.

THE COURT:  Thank you.

Ms. Salerno Owens, are you here to summarize everything or not?

MR. WILSON:  Your Honor, may I make one final point?

THE COURT:  Yes.  Go ahead.

MR. WILSON:  The one thing I would just return to, Your Honor, is the 2016 settlement agreement.  We believe that's the best contemporaneous evidence of what the parties' actual reasonable expectations were in May of 2016, shortly before OHA issued the 2017 rates that are at issue in this case

and before the 2018 rates. And what that settlement agreement says is that FamilyCare and OHA both acknowledge that OHA has authority to set the rates subject to CMS approval, and that no CCO can -- that OHA does not have an obligation to provide for all of the CCOs' expected -- or I'm sorry, all of the CCOs' actual costs during the year. That's the only objective evidence of what the parties' reasonable expectations were.

THE COURT: Why do I need to care what you think the reasonable foundations for the claim are? Why don't I only care about what plaintiff asserts and whether plaintiff has the right at this point to assert them? So if you say, well, this is what we think the foundation for any reasonable expectation is, that doesn't help me a lot, does it?

MR. WILSON: Well, I think it only helps you in one instance, Your Honor. If you were to conclude, okay, FamilyCare has asserted some kind of basis to move forward on this claim, then I think Your Honor has to get to its issue No. 3, which is have the parties adduced sufficient evidence for the claim to survive the motion for summary judgment. And on that point, I think the 2016 settlement agreement becomes very important, because whatever evidence FamilyCare -- or whatever basis FamilyCare has come up with, by the time you get to issue No. 3, then you have to see what the evidence says. The 2016 settlement agreement is evidence of what the parties' objective reasonable expectations were. FamilyCare's long list

of 40 new sources and so forth they frame as their expectations. So you'll see the phrase "FamilyCare's expectations" about 20 times in their opposition brief. What FamilyCare expected subjectively is not the reasonable -- objective reasonable expectations of the parties. The only thing that is the objective reasonable expectations of the parties is reflected in the 2016 settlement agreement.

THE COURT: Thank you very much.

MR. GORDON: Your Honor, I did find --

THE COURT: I'm sorry. You have the page?

MR. GORDON: I do. Page 11 at the bottom, last sentence: "The Court should disallow FamilyCare from relying on any basis for its good faith claim except the CCO contract and federal Medicaid law." That's what OHA said.

THE COURT: Thank you very much.

MR. GORDON: Can I respond on the settlement agreement?

THE COURT: No. We've hit the finish line on Zeno's paradox, where each incremental comment isn't moving us forward much.

Thank you for your helpful comments here today. We're in recess. I'll take this under advisement.

THE COURTROOM DEPUTY: Court is in recess.

(Proceedings concluded at 2:41 p.m.)

--o0o--

I certify, by signing below, that the foregoing is a correct transcript of the record of proceedings in the above-entitled cause.  A transcript without an original signature or conformed signature is not certified.


/s/Bonita J. Shumway                    February 28, 2022
_____               _____
BONITA J. SHUMWAY, CSR, RMR, CRR        DATE
Official Court Reporter

**MR. GORDON: [29]** 3/13 24/3 25/3 25/10 26/5 26/12 27/24 28/3 28/13 29/20 30/5 30/14 30/23 31/9 32/15 33/17 37/14 37/16 40/1 40/21 40/24 41/2 41/7 41/22 42/4 42/12 44/8 44/10 44/15

**MR. HARNDEN: [1]** 3/16
**MR. JINDAL: [1]** 3/7
**MR. MORGAN: [26]** 3/15 5/5 5/23 6/3 7/10 7/24 8/2 8/13 8/17 9/7 9/17 10/9 10/12 10/22 11/1 11/8 11/11 11/14 11/20 12/5 12/8 12/15 12/21 13/5 13/11 17/11

**MR. WILSON: [12]** 3/9 33/21 34/16 35/17 36/7 37/12 40/5 40/15 41/8 42/18 42/20 43/13

**MS. MARKLEY: [11]** 3/14 13/13 13/17 13/24 14/16 14/23 15/5 15/9 15/17 16/4 16/13

**MS. SALERNO OWENS: [1]** 3/11

**THE COURT: [73]**
**THE COURTROOM DEPUTY: [2]** 3/2 44/22

**-**

**--o0o [1]** 45/2

**/**

**/s/Bonita [1]** 45/9

**1**

**1000 [1]** 2/20
**107 [2]** 19/18 28/25
**10th [1]** 2/4
**11 [1]** 44/11
**1120 [1]** 2/4
**12 [2]** 38/8 38/10
**1201 [1]** 2/7
**1455 [1]** 2/11
**14th [2]** 34/9 40/18
**15th [1]** 20/3
**19 [1]** 16/8
**1900 [1]** 2/11
**1983 [1]** 15/19
**1:35 [1]** 3/2
**1st [2]** 20/4 36/10

**2**

**20 [1]** 44/3
**2012 [2]** 34/25 35/14
**2016 [5]** 42/22 42/24 43/20

43/24 44/7
**2017 [4]** 16/17 39/17 39/20 42/25
**2018 [16]** 19/23 20/3 20/4 21/24 34/19 35/4 35/24 36/10 36/18 37/1 39/9 39/15 39/17 39/19 40/3 43/1
**2021 [2]** 22/15 30/14
**2022 [5]** 1/6 3/2 34/9 40/18 45/9
**22 [1]** 41/9
**2300 [1]** 2/16
**24 [2]** 1/6 3/2
**28 [1]** 45/9
**2:41 [1]** 44/24

**3**

**30 [10]** 18/24 20/5 20/11 22/17 25/25 28/5 28/21 36/11 37/11 37/24
**301 [1]** 2/20
**326-8188 [1]** 2/21

**4**

**40 [2]** 22/25 44/1
**40-some [1]** 19/9
**48 [1]** 16/20
**4800 [1]** 2/7
**49 [1]** 16/18

**5**

**503 [1]** 2/21

**6**

**601 [1]** 2/16
**6:18-cv-00296-MO [1]** 1/4
**6:18-cv-296-MO [1]** 3/5

**8**

**8188 [1]** 2/21

**9**

**97201 [1]** 2/12
**97204 [2]** 2/16 2/20
**97209 [1]** 2/4
**98101 [1]** 2/7

**A**

**abandon [1]** 29/11
**ability [1]** 23/19
**about [54]**
**above [1]** 45/6
**above-entitled [1]** 45/6
**Absolutely [1]** 37/13
**accept [1]** 7/19
**account [1]** 15/5

**accuracy [1]** 37/6
**acknowledge [1]** 43/2
**act [3]** 5/13 5/22 33/10
**acting [7]** 5/10 5/15 6/6 6/11 6/22 10/3 10/17
**action [1]** 8/6
**actions [2]** 4/19 12/2
**actor [1]** 12/21
**actors [1]** 5/15
**actual [2]** 42/24 43/6
**actually [6]** 10/3 10/7 26/23 29/6 29/17 34/20
**actuarial [10]** 32/23 35/23 36/25 37/7 39/4 39/6 39/24 40/2 40/7 40/12
**actuarially [4]** 6/18 37/5 39/1 39/23
**add [2]** 14/6 16/6
**added [1]** 29/6
**addition [1]** 16/6
**additional [2]** 16/23 30/7
**address [2]** 5/7 15/4
**adduced [4]** 23/13 23/14 41/11 43/18
**adequate [1]** 19/21
**adequately [1]** 21/17
**adopted [1]** 6/5
**advance [1]** 23/19
**advanced [2]** 34/8 34/9
**advancing [1]** 34/23
**advantage [1]** 10/5
**advisement [1]** 44/22
**affect [1]** 19/20
**affirmative [2]** 3/21 18/3
**affirmatively [1]** 31/14
**after [4]** 14/4 18/23 29/1 36/14
**again [11]** 22/15 22/17 23/6 23/24 25/15 26/6 26/22 29/7 30/9 36/23 40/19
**against [7]** 3/21 5/4 15/16 15/25 18/3 18/21 24/2
**agency [2]** 1/7 33/10
**agents [6]** 5/15 5/22 10/2 12/3 15/12 15/12
**ago [1]** 40/15
**agree [10]** 7/12 9/8 19/7 19/15 24/6 27/21 32/12 36/10 36/10 36/12
**agreement [6]** 42/22 43/1 43/20 43/24 44/7 44/17
**agreements [1]** 5/16
**agrees [1]** 32/18
**ahead [3]** 13/13 37/16 42/20
**akin [1]** 34/10
**al [1]** 3/6

| | | |
|---|---|---|
| **alive [1]** 19/24 | **appealing [1]** 37/3 | **back [8]** 13/5 21/4 24/12 29/5 |
| **all [20]** 3/19 9/14 10/2 12/13 | **APPEARANCES [1]** 2/2 | 34/2 34/25 37/9 38/9 |
| 13/1 13/24 14/15 16/4 17/11 | **applicable [13]** 6/14 21/7 | **ball [1]** 21/13 |
| 20/9 21/13 24/17 27/14 30/2 | 21/12 21/15 21/20 22/20 24/23 | **Barran [1]** 2/15 |
| 31/6 32/8 32/8 40/9 43/5 43/5 | 28/9 32/7 32/22 34/19 35/8 | **based [15]** 5/25 6/4 14/17 |
| **allegations [2]** 6/14 6/19 | 35/10 | 14/20 14/20 15/19 24/14 34/15 |
| **alleged [6]** 6/16 34/20 37/6 | **applies [1]** 4/25 | 34/19 34/24 35/12 35/14 35/22 |
| 38/16 38/22 41/14 | **apply [2]** 4/10 10/7 | 36/18 37/11 |
| **allegedly [1]** 6/18 | **appropriate [1]** 27/11 | **bases [6]** 19/9 23/1 24/1 25/23 |
| **alleging [2]** 34/10 34/12 | **approval [3]** 39/18 39/19 43/3 | 34/20 41/19 |
| **allocation [3]** 9/21 12/18 17/17 | **approved [1]** 39/9 | **basically [5]** 12/15 41/5 41/7 |
| **allow [1]** 13/4 | **apt [1]** 38/20 | 42/8 42/8 |
| **allowed [2]** 34/14 39/25 | **are [38]** 3/4 4/3 4/23 4/25 5/15 | **basing [1]** 20/21 |
| **along [1]** 4/11 | 6/6 6/7 6/14 8/16 9/9 9/24 10/2 | **basis [19]** 10/5 17/21 21/11 |
| **already [1]** 37/23 | 10/24 11/3 13/7 13/7 15/7 16/8 | 21/25 22/11 22/12 23/22 27/23 |
| **also [10]** 10/1 10/6 21/4 22/21 | 16/18 18/6 21/1 23/3 25/7 27/4 | 30/2 30/13 30/16 39/2 39/17 |
| 25/13 30/21 31/10 32/18 32/25 | 28/7 31/7 32/23 33/13 34/12 | 42/1 42/6 42/10 43/16 43/22 |
| 35/24 | 36/22 37/22 38/18 38/23 39/17 | 44/13 |
| **although [3]** 11/4 20/4 24/21 | 39/25 42/17 42/25 43/9 | **be [58]** |
| **ambiguity [1]** 4/7 | **aren't [1]** 21/15 | **because [22]** 10/15 12/4 13/21 |
| **ambiguous [2]** 5/9 11/23 | **argue [2]** 32/5 41/10 | 13/23 14/17 14/24 18/10 20/13 |
| **amended [4]** 29/5 38/22 39/14 | **argued [1]** 33/25 | 21/14 24/10 26/6 28/10 29/12 |
| 39/15 | **argues [1]** 4/17 | 32/2 32/12 32/21 35/9 38/4 |
| **amending [1]** 39/12 | **arguing [3]** 5/9 16/15 16/18 | 38/11 39/7 41/6 43/21 |
| **amendment [1]** 16/17 | **argument [46]** | **becomes [1]** 43/20 |
| **among [4]** 21/14 21/21 22/17 | **arguments [2]** 24/8 32/1 | **bed [1]** 32/11 |
| 28/9 | **arise [3]** 6/16 7/15 17/21 | **been [24]** 6/5 6/15 8/20 19/4 |
| **amount [3]** 12/2 12/5 13/5 | **arises [1]** 12/7 | 20/19 22/6 22/9 23/11 23/12 |
| **analogous [1]** 38/18 | **arising [4]** 8/1 8/7 10/1 17/20 | 23/15 25/4 25/9 28/17 29/5 |
| **analogy [2]** 4/10 38/20 | **around [1]** 4/4 | 30/14 30/21 30/23 34/8 34/18 |
| **analysis [5]** 4/2 4/4 14/4 17/8 | **as [64]** | 36/14 37/23 38/12 38/22 39/22 |
| 19/21 | **aside [1]** 31/21 | **before [16]** 1/16 13/15 14/8 |
| **analyzed [1]** 14/3 | **ask [8]** 20/10 20/14 28/6 28/16 | 19/11 23/13 23/14 25/8 26/10 |
| **Anit [2]** 2/10 3/8 | 29/14 30/4 36/17 38/5 | 29/5 30/17 34/8 36/23 38/17 |
| **announce [1]** 23/10 | **asked [10]** 15/3 25/5 26/18 | 39/11 42/25 43/1 |
| **announced [3]** 19/3 23/11 24/1 | 28/7 31/16 36/1 36/16 36/20 | **beginning [2]** 6/10 38/24 |
| **another [4]** 12/5 22/8 22/14 | 38/11 39/10 | **behalf [2]** 3/8 5/23 |
| 31/17 | **asking [1]** 25/6 | **being [7]** 3/19 12/19 12/20 |
| **answer [6]** 19/6 19/7 21/3 | **aspect [1]** 37/7 | 14/16 18/22 30/3 30/14 |
| 22/21 30/10 41/20 | **assert [1]** 43/11 | **beings [1]** 5/13 |
| **answers [2]** 18/24 37/12 | **asserted [1]** 43/16 | **beliefs [1]** 35/3 |
| **any [18]** 3/23 5/19 8/1 14/12 | **asserts [1]** 43/10 | **believe [5]** 7/1 20/23 29/15 |
| 16/10 16/19 20/21 23/11 23/12 | **assistant [2]** 3/10 3/13 | 32/16 42/22 |
| 28/7 30/6 30/15 30/16 38/6 | **assume [3]** 23/16 24/24 27/20 | **below [1]** 45/4 |
| 38/10 41/11 43/12 44/13 | **assured [1]** 3/24 | **beneficiary [1]** 16/13 |
| **anything [5]** 13/11 19/11 23/7 | **attention [1]** 27/9 | **benefit [4]** 6/7 15/13 16/10 |
| 28/12 33/14 | **attorney [3]** 3/10 3/13 29/16 | 17/6 |
| **anyway [2]** 23/17 23/23 | **August [1]** 20/6 | **best [2]** 26/17 42/23 |
| **anywhere [1]** 36/21 | **authority [10]** 1/6 2/9 3/6 3/11 | **better [2]** 4/21 27/22 |
| **apologize [1]** 42/13 | 3/13 5/11 8/25 30/6 31/13 43/3 | **between [2]** 5/20 14/25 |
| **apparently [1]** 42/14 | **autonomous [1]** 5/13 | **beyond [5]** 14/2 25/15 25/19 |
| **appeal [2]** 20/18 34/2 | **Avenue [3]** 2/7 2/16 2/20 | 26/22 27/11 |
| **appealed [1]** 37/1 | **avoid [1]** 11/10 | **biased [1]** 6/18 |
| | **aware [3]** 30/6 31/12 31/17 | |
| | **away [4]** 22/3 22/5 27/22 29/17 | |

**B**

**big [1]** 18/19
**binds [1]** 5/1
**bit [1]** 36/8
**bonita [4]** 2/19 2/21 45/9 45/10
**both [6]** 4/8 20/12 25/18 26/19 26/20 43/2
**bother [1]** 39/13
**bottom [1]** 44/11
**brand [1]** 23/3
**brand-new [1]** 23/3
**breach [15]** 7/24 8/12 8/16 8/17 8/19 10/15 10/25 10/25 11/4 11/5 15/20 33/24 34/7 38/15 38/24
**breached [6]** 33/25 34/4 34/11 34/12 38/16 38/17
**breaching [1]** 11/8
**brief [4]** 26/21 26/21 40/22 44/3
**briefed [1]** 5/12
**briefing [11]** 17/9 25/14 25/18 26/19 26/20 26/23 27/8 27/14 33/1 35/24 36/2
**bring [1]** 27/8
**broadly [1]** 7/15
**Broadway [1]** 2/11
**business [1]** 33/12
**but it's [1]** 30/19

**C**

**call [1]** 18/13
**came [3]** 29/13 37/9 39/15
**can [17]** 4/20 5/13 5/18 5/22 13/16 15/6 21/10 27/16 28/13 30/2 33/10 33/18 35/11 41/9 42/5 43/4 44/16
**can't [4]** 9/2 26/2 35/7 35/7
**cannot [3]** 7/13 27/3 39/19
**care [3]** 20/9 43/8 43/10
**carefully [1]** 3/25
**case [44]** 1/4 3/5 5/3 6/4 10/16 13/7 18/13 18/13 18/14 18/16 18/21 19/5 19/13 19/15 19/25 20/4 20/5 20/18 21/8 21/10 21/16 21/22 22/22 23/5 23/16 23/25 24/14 25/7 25/14 27/1 29/10 29/23 31/6 32/24 36/15 37/9 37/20 38/2 38/3 38/15 39/5 39/7 39/24 42/25
**cases [3]** 11/2 23/22 31/12
**cause [2]** 8/5 45/6
**caused [1]** 35/2
**CCO [10]** 26/15 31/24 33/2

33/11 34/1 35/1 41/12 41/16 43/4 44/13
**CCOs [3]** 31/24 33/2 40/4
**CCOs' [2]** 43/5 43/5
**certainly [6]** 15/21 25/11 27/25 31/20 34/5 37/25
**certified [1]** 45/7
**certify [1]** 45/4
**cetera [2]** 22/20 30/18
**challenging [1]** 11/22
**chance [3]** 36/5 36/6 36/8
**changed [2]** 19/20 39/2
**channel [2]** 12/5 12/7
**choice [2]** 15/1 15/4
**choices [1]** 24/15
**chose [1]** 38/4
**Chris [2]** 2/15 3/16
**chunk [1]** 36/19
**Circuit [5]** 22/4 26/20 33/2 37/2 37/9
**circumstances [1]** 38/19
**circumvent [1]** 17/15
**cite [1]** 36/2
**cited [6]** 6/5 11/3 31/12 32/25 36/19 40/18
**citing [1]** 27/2
**civil [3]** 6/12 8/23 17/14
**claim [71]**
**claim: [1]** 38/23
**claim: expectations [1]** 38/23
**claims [8]** 7/15 8/16 10/15 10/19 11/3 11/4 11/5 28/22
**clarification [1]** 20/22
**clarifying [1]** 22/12
**clarity [1]** 23/11
**clause [12]** 12/8 13/23 14/11 14/14 14/21 14/22 14/25 15/5 15/7 15/8 16/3 16/16
**clear [7]** 20/6 21/5 28/15 29/3 29/19 31/10 33/9
**clearer [1]** 21/3
**clearly [1]** 22/5
**client [2]** 7/20 25/8
**close [6]** 17/12 18/13 18/15 18/23 19/2 23/10
**CMS [7]** 39/9 39/10 39/11 39/12 39/22 39/22 43/3
**Coie [2]** 2/3 2/6
**colloquy [1]** 16/25
**come [5]** 16/1 16/2 27/22 31/18 43/22
**comes [3]** 4/2 7/7 22/16
**coming [1]** 20/19
**comment [1]** 44/19
**comments [1]** 44/21

**common [1]** 11/1
**companies [1]** 5/20
**compare [1]** 33/23
**complains [1]** 18/16
**complaint [13]** 7/2 22/23 24/16 24/21 25/2 26/5 26/12 27/23 31/11 31/14 31/15 38/9 38/22
**completely [2]** 8/16 34/7
**conceded [5]** 40/9 41/5 41/7 41/7 42/9
**concern [2]** 9/16 9/16
**concerns [1]** 19/12
**conclude [1]** 43/15
**concluded [1]** 44/24
**conformed [1]** 45/7
**confusion [1]** 38/7
**consequential [3]** 8/7 9/25 17/19
**contained [1]** 9/1
**contemplated [1]** 41/15
**contemporaneous [1]** 42/23
**contend [3]** 11/18 34/6 41/18
**contending [3]** 10/24 40/7 40/15
**contends [1]** 40/11
**contention [5]** 7/18 7/19 10/21 16/11 37/10
**context [3]** 4/5 14/4 14/15
**continues [1]** 4/11
**contract [105]**
**contract's [1]** 41/16
**contracted [1]** 13/8
**contracting [2]** 14/25 15/2
**contractor [4]** 15/10 16/8 17/2 33/12
**contracts [5]** 4/23 10/19 14/1 33/3 33/3
**contractual [10]** 7/23 15/13 17/6 17/13 21/7 24/9 24/17 27/1 29/9 30/13
**contrary [2]** 16/22 17/7
**core [1]** 11/24
**corners [2]** 14/2 15/18
**corporation [1]** 1/3
**corporation's [1]** 5/22
**correct [7]** 12/8 12/9 31/3 36/1 36/9 40/16 45/5
**costs [2]** 33/13 43/6
**Couch [1]** 2/4
**coughing [1]** 12/4
**could [16]** 9/23 11/9 11/12 12/6 12/12 15/23 20/17 21/14 30/11 30/21 30/21 30/23 31/10 38/7 39/11 42/10
**couldn't [4]** 8/15 9/12 11/10

**C**

**couldn't... [1]** 20/23
**counsel [5]** 3/7 17/1 37/18 38/14 38/16
**counted [1]** 16/16
**couple [1]** 4/8
**course [4]** 18/19 19/14 20/7 30/17
**court [25]** 1/1 1/17 2/19 14/5 16/5 16/15 16/25 24/5 24/8 25/19 26/18 26/25 27/5 27/11 29/5 30/24 32/18 33/15 36/23 38/9 38/11 42/11 44/12 44/23 45/11
**Court's [2]** 25/13 27/9
**court-specific [1]** 30/24
**Courthouse [1]** 2/19
**covenant [1]** 19/10
**cover [2]** 9/19 33/13
**covers [1]** 12/12
**crazy [1]** 12/24
**creates [1]** 13/22
**credence [1]** 7/13
**CRR [2]** 2/19 45/10
**CSR [2]** 2/19 45/10
**culture [1]** 21/16
**curious [1]** 26/10
**currently [1]** 11/7
**cuts [1]** 20/12
**cv [2]** 1/4 3/5

**D**

**damage [1]** 38/24
**damages [9]** 6/15 8/7 9/25 10/5 13/7 13/8 14/25 17/19 17/21
**data [1]** 6/19
**DATE [1]** 45/10
**day [5]** 5/8 6/9 13/22 17/13 30/3
**deal [2]** 3/20 4/15
**dealing [1]** 34/13
**decided [4]** 27/3 28/18 29/11 29/18
**deciding [1]** 27/12
**declaration [1]** 39/7
**declarations [1]** 36/24
**defendant [8]** 2/9 2/14 3/16 3/17 16/1 18/16 21/10 27/21
**Defendants [1]** 1/8
**defends [1]** 22/18
**defense [4]** 3/21 18/4 18/20 18/21
**defines [1]** 14/6

**defining [1]** 16/7
**definite [1]** 38/8
**definition [8]** 5/9 5/14 9/23 11/23 14/8 16/1 16/2 16/19
**degree [1]** 35/14
**denied [1]** 32/21
**depending [1]** 19/25
**deposition [9]** 20/5 20/11 28/20 28/21 29/6 29/15 29/16 35/25 37/24
**depositions [4]** 18/24 28/7 29/3 29/13
**detail [2]** 24/9 27/18
**detailed [1]** 38/13
**details [1]** 27/1
**determination [1]** 27/15
**develop [2]** 19/4 41/13
**dictum [1]** 22/4
**did [19]** 18/20 21/5 21/22 25/17 26/10 26/11 27/8 28/15 28/24 29/7 29/14 35/5 35/20 36/6 36/17 37/25 38/8 39/9 44/9
**didn't [16]** 11/18 20/10 20/14 20/14 24/8 25/21 27/18 28/3 28/4 28/6 28/10 31/20 32/2 38/10 40/15 41/17
**different [14]** 4/8 8/9 15/21 15/25 17/3 26/17 30/15 30/19 33/14 34/7 34/10 34/11 34/12 35/4
**difficult [1]** 4/3
**digress [1]** 19/19
**direct [1]** 41/4
**directly [3]** 4/15 5/7 32/22
**director [1]** 8/24
**disagree [2]** 10/14 32/7
**disallow [1]** 44/12
**disclaiming [1]** 16/9
**discovery [23]** 18/19 18/21 18/23 19/25 20/4 20/23 24/15 25/5 27/20 27/21 27/22 27/25 28/5 28/19 29/11 29/25 31/8 31/16 32/14 34/2 36/6 36/7 36/13
**discussed [1]** 26/16
**discussion [1]** 25/14
**dismiss [12]** 21/24 22/15 24/7 24/11 25/16 27/3 27/17 28/18 29/1 29/13 37/21 40/9
**dismissed [3]** 20/18 29/5 36/10
**DISTRICT [4]** 1/1 1/2 1/17 2/19
**do [36]** 6/13 7/12 10/4 10/8 10/10 10/11 11/18 12/3 12/21

13/21 13/24 16/12 17/11 18/12 19/7 19/14 21/9 21/18 23/8 23/9 25/7 26/2 27/6 27/19 28/8 28/9 28/10 30/4 30/5 30/11 32/3 35/17 39/25 40/14 43/8 44/11
**does [8]** 4/14 14/9 14/16 16/1 26/2 35/16 43/4 43/13
**doesn't [11]** 4/15 8/22 9/19 12/3 13/1 13/23 16/2 19/13 20/15 30/4 43/13
**doing [1]** 11/14
**dollars [1]** 13/5
**don't [22]** 3/25 7/9 9/22 10/7 11/12 11/15 12/13 12/22 13/1 19/20 21/9 26/3 26/3 28/12 30/15 32/8 32/12 32/16 39/13 40/11 40/21 43/9
**done [5]** 11/19 17/15 20/19 25/12 34/6
**Donna [1]** 39/8
**door [2]** 13/4 13/5
**down [2]** 9/12 9/15
**draft [1]** 4/23
**dramatic [2]** 19/10 22/6
**dramatically [1]** 18/17
**drawing [1]** 22/22
**dreams [1]** 14/12
**due [1]** 12/13
**during [3]** 20/22 29/3 43/6
**duties [1]** 41/16
**duty [3]** 32/3 34/12 41/13

**E**

**each [2]** 7/18 44/19
**earlier [2]** 21/6 22/10
**economic [5]** 11/25 12/14 13/16 15/22 15/24
**economically [1]** 13/3
**Ed [1]** 3/17
**edge [1]** 22/23
**Edwin [1]** 2/14
**either [5]** 20/1 21/2 23/3 29/25 31/8
**elements [2]** 15/20 38/23
**elicited [1]** 35/25
**else [5]** 13/11 14/16 22/6 23/7 31/18
**email [2]** 42/11 42/14
**emails [1]** 14/12
**employee [3]** 6/25 8/24 10/17
**employees [8]** 5/15 6/6 6/22 9/20 10/2 15/11 15/12 17/6
**employer [1]** 6/7
**employer's [2]** 6/23 10/18

**E**

**employment [2]** 6/7 6/23
**enactment [1]** 35/15
**encompass [1]** 5/14
**encompassed [1]** 36/12
**end [6]** 5/8 6/9 12/12 13/22 17/13 37/1
**ended [1]** 37/18
**ends [1]** 12/20
**English [1]** 13/21
**enough [4]** 19/11 21/8 21/12 32/6
**enter [1]** 26/15
**entire [3]** 4/5 9/20 14/13
**entirety [1]** 8/21
**entities [1]** 18/5
**entitled [3]** 8/25 38/25 45/6
**entity [1]** 9/24
**erroneous [1]** 6/19
**error [1]** 39/1
**errors [4]** 33/8 36/22 36/25 37/7
**essentially [4]** 10/4 10/19 12/16 17/15
**establish [1]** 33/5
**established [1]** 39/7
**estimation [1]** 19/16
**et [3]** 3/6 22/20 30/18
**et cetera [2]** 22/20 30/18
**even [10]** 13/24 20/17 21/15 22/9 24/22 26/9 27/4 32/18 40/18 41/14
**ever [2]** 32/13 40/11
**ever-moving [1]** 40/11
**every [3]** 9/16 37/5 41/20
**everything [2]** 35/10 42/18
**evidence [9]** 10/3 24/14 41/11 42/23 43/7 43/18 43/21 43/23 43/24
**exact [3]** 12/2 13/5 13/7
**example [3]** 4/13 15/12 38/15
**except [2]** 23/12 44/13
**exclusively [2]** 6/16 7/16
**exclusivity [2]** 4/9 4/14
**excuse [1]** 38/25
**Exhibit [1]** 15/8
**exhibits [1]** 30/18
**expect [1]** 33/14
**expectation [10]** 23/1 30/2 30/13 33/6 35/19 35/22 36/24 37/6 38/25 43/12
**expectations [32]** 22/13 24/9 24/18 26/22 27/1 27/13 27/16 28/8 28/25 29/9 31/14 32/20

34/22 35/21 36/18 37/4 37/5 37/22 38/1 38/21 38/23 41/14 41/19 42/7 42/10 42/24 43/7 43/25 44/2 44/3 44/5 44/6
**expected [2]** 43/5 44/4
**explain [2]** 18/10 32/24
**explained [1]** 8/11
**explains [1]** 39/18
**explanation [2]** 11/17 30/13
**explication [1]** 38/13
**express [5]** 33/24 33/25 34/4 34/11 38/15
**expressly [3]** 5/10 14/6 16/9
**extend [1]** 17/5
**extension [1]** 5/14
**extent [2]** 38/2 38/6

**F**

**face [1]** 35/20
**facing [2]** 15/14 40/21
**fact [9]** 6/21 6/24 7/13 20/5 25/20 26/15 29/14 30/16 38/8
**factual [2]** 29/13 30/16
**fail [1]** 35/17
**failed [1]** 23/8
**fair [3]** 21/12 34/13 39/1
**fairly [2]** 21/17 35/15
**fairness [2]** 18/25 19/12
**faith [4]** 34/13 40/12 40/13 44/13
**falls [1]** 16/19
**FAMILYCARE [48]**
**FamilyCare's [8]** 18/3 20/13 24/13 36/18 37/4 41/14 43/25 44/2
**far [1]** 27/22
**fatal [1]** 31/6
**fault [2]** 20/20 28/3
**faulty [1]** 24/15
**February [6]** 1/6 3/2 20/3 39/15 39/19 45/9
**February 15th [1]** 20/3
**February 2018 [1]** 39/19
**federal [16]** 22/1 22/3 22/5 23/14 25/23 32/23 35/22 36/18 37/3 39/6 40/1 40/17 41/15 42/7 42/9 44/14
**feel [1]** 30/10
**felt [1]** 30/12
**few [1]** 34/17
**figure [3]** 9/11 18/25 22/19
**file [1]** 38/10
**filed [6]** 21/23 22/7 35/24 38/7 38/10 41/17
**files [1]** 22/14

**filing [1]** 22/23
**final [1]** 42/19
**find [5]** 4/6 20/20 42/2 42/12 44/9
**fine [1]** 28/14
**finish [1]** 44/18
**first [14]** 3/20 3/21 3/22 5/5 13/9 14/3 17/8 19/8 21/23 24/3 30/3 37/18 38/9 38/22
**first-level [1]** 17/8
**fit [3]** 19/13 20/15 23/22
**five [4]** 20/1 33/4 40/4 40/15
**five-year [2]** 33/4 40/4
**flesh [4]** 18/20 19/4 36/6 36/6
**Floor [1]** 2/4
**focus [2]** 37/20 37/23
**focusing [1]** 36/14
**follow [1]** 20/11
**footnote [2]** 10/12 26/23
**foregoing [1]** 45/4
**formally [1]** 21/9
**forth [3]** 6/15 35/3 44/1
**forward [7]** 21/13 22/16 24/1 28/5 31/18 43/16 44/19
**found [5]** 18/2 35/7 35/7 42/3 42/3
**foundation [1]** 43/12
**foundations [1]** 43/9
**four [2]** 14/2 37/17
**fourth [1]** 39/4
**frame [1]** 44/1
**framed [1]** 24/7
**framework [2]** 22/20 30/22
**free [3]** 36/22 36/25 39/1
**freedom [1]** 37/6
**front [2]** 10/8 13/4
**frustration [1]** 40/10
**full [1]** 33/8
**funnel [1]** 22/23
**further [2]** 3/23 10/3
**furtherance [4]** 5/15 6/23 10/3 10/17

**G**

**gave [1]** 38/14
**general [3]** 3/11 3/13 33/21
**generally [3]** 5/25 6/1 23/3
**get [10]** 7/10 7/10 14/8 20/23 21/19 27/18 34/2 36/22 43/17 43/22
**gets [2]** 18/14 37/1
**getting [2]** 4/4 7/5
**give [6]** 3/22 13/2 13/20 27/23 33/7 41/8
**given [6]** 6/14 6/21 17/18 19/7

**G**

**given... [2]** 23/24 36/13
**giving [2]** 33/12 33/12
**gladly [1]** 27/6
**go [11]** 9/15 13/13 21/19 23/25 30/2 30/12 32/9 32/10 34/3 37/16 42/20
**goes [3]** 14/2 14/18 20/4
**going [15]** 9/12 9/13 9/24 12/4 12/11 18/13 21/19 25/14 32/11 33/16 33/19 35/20 36/5 39/25 41/18
**good [4]** 34/13 40/12 40/13 44/13
**Gordon [3]** 2/6 3/14 36/11
**got [2]** 14/19 20/8
**grant [1]** 18/3
**granted [2]** 28/17 29/1
**gravamen [1]** 7/2
**grounded [2]** 21/11 35/14
**guess [11]** 4/20 7/17 13/21 18/1 18/5 20/19 23/5 29/24 35/6 35/11 36/3

**H**

**had [29]** 5/20 6/9 16/25 18/18 24/25 25/5 28/20 29/4 30/11 30/20 32/13 33/5 33/25 33/25 34/20 35/1 35/19 35/22 36/5 36/8 36/11 36/14 37/11 38/2 38/6 38/16 38/25 39/22 42/13
**hadn't [2]** 19/3 19/3
**half [5]** 19/17 20/1 20/1 20/2 20/7
**hand [1]** 18/6
**happen [2]** 21/22 28/3
**happened [1]** 21/23
**happens [1]** 23/21
**Harnden [2]** 2/14 3/17
**Harry [2]** 2/9 3/10
**has [32]** 4/3 8/20 15/19 17/8 18/17 19/14 22/4 22/25 23/7 23/10 23/12 23/20 24/19 28/17 30/7 31/23 32/17 34/6 34/18 35/18 37/23 38/21 39/2 39/2 39/9 39/22 41/11 43/2 43/10 43/16 43/17 43/22
**hasn't [1]** 19/19
**have [56]**
**haven't [3]** 14/19 21/9 36/5
**he [1]** 38/18
**head [1]** 8/24
**headed [1]** 25/7
**HEALTH [7]** 1/6 2/9 3/6 3/11

3/13 5/11 8/25
**healthcare [1]** 31/25
**hear [4]** 3/23 40/7 41/7 41/7
**heard [2]** 13/17 15/15
**hearing [3]** 30/12 31/9 32/14
**help [3]** 7/23 8/11 43/13
**helpful [1]** 44/21
**helps [1]** 43/14
**her [7]** 7/8 8/20 11/7 11/11 15/16 16/16 17/8
**Herbold [1]** 2/11
**here [29]** 3/4 3/19 6/9 8/21 9/6 9/13 10/4 12/12 15/25 16/12 17/16 18/9 19/14 20/16 20/20 20/25 24/13 26/25 27/2 28/3 32/1 32/19 32/22 33/9 34/2 34/3 38/11 42/17 44/21
**herself [1]** 16/12
**his [1]** 29/15
**history [3]** 19/15 23/25 31/23
**hit [1]** 44/18
**Honor [30]** 5/6 7/12 8/22 9/8 9/18 10/13 11/22 12/17 13/12 13/14 17/13 24/4 29/1 30/25 33/22 33/24 34/17 36/9 36/12 37/15 38/20 40/6 40/16 40/22 41/9 42/19 42/22 43/15 43/17 44/9
**HONORABLE [1]** 1/16
**hook [1]** 14/9
**hornbook [1]** 7/8
**how [23]** 3/25 4/22 4/23 4/23 6/3 7/17 8/22 9/15 14/11 14/16 17/5 18/10 18/13 18/25 19/5 19/25 20/15 21/22 22/18 24/5 26/16 35/11 35/16
**human [1]** 5/13
**hyperbole [1]** 13/2
**Hypothetically [1]** 11/9

**I**

**I'd [6]** 4/21 13/21 18/12 20/23 22/4 40/17
**I'll [10]** 3/22 3/22 3/23 5/5 5/6 21/3 24/2 31/21 32/24 44/22
**I'm [23]** 7/5 7/17 9/10 9/10 13/2 18/12 20/21 25/6 26/10 30/6 31/5 31/5 31/12 31/17 31/17 32/11 33/16 33/18 33/19 40/6 41/23 43/5 44/10
**I've [9]** 3/24 10/16 15/3 18/9 20/25 21/6 22/18 31/12 35/9
**idea [7]** 12/19 12/23 15/14 20/18 20/20 21/6 33/20
**ideas [1]** 18/2

**identified [6]** 22/25 23/20 24/19 28/23 30/18 32/17
**identify [2]** 24/17 29/8
**illogical [2]** 11/13 11/16
**illustrate [1]** 27/2
**illustrates [1]** 27/7
**illustrative [1]** 27/8
**imagine [2]** 22/18 33/24
**implausible [2]** 11/13 11/15
**implementation [1]** 35/1
**implicit [1]** 34/12
**implied [2]** 19/10 41/16
**imply [1]** 41/13
**import [1]** 18/2
**important [3]** 24/12 26/24 43/21
**impose [1]** 12/11
**imposed [3]** 15/16 32/3 32/13
**impossible [1]** 40/20
**impunity [1]** 33/11
**imputed [1]** 39/19
**inaccurate [1]** 28/19
**inadequately [1]** 20/22
**INC [2]** 1/3 3/5
**incidental [1]** 8/7
**include [4]** 5/21 16/16 28/24 37/25
**included [3]** 17/16 28/21 35/16
**includes [2]** 23/2 35/10
**including [8]** 10/2 16/23 19/22 22/4 25/23 30/3 33/1 33/3
**incorporate [1]** 41/12
**incorporating [1]** 41/15
**incremental [1]** 44/19
**incumbent [1]** 22/9
**indeed [1]** 27/4
**indemnified [1]** 15/16
**indemnify [2]** 12/11 15/11
**indemnity [11]** 12/8 13/23 14/11 14/21 15/5 15/7 16/24 16/25 17/1 17/2 17/18
**independent [2]** 8/17 15/20
**individual [1]** 15/25
**individually [1]** 16/10
**individuals [1]** 10/15
**industry [8]** 22/19 25/19 25/24 26/2 26/3 30/22 31/22 32/5
**ineffective [1]** 14/22
**information [3]** 30/8 31/11 31/19
**informed [1]** 37/3
**initial [1]** 28/20
**innumerable [1]** 31/23
**instance [2]** 30/9 43/15
**instead [3]** 4/9 4/17 22/11

**institution's [1]** 5/22
**institutions [1]** 5/20
**instructive [2]** 8/5 9/9
**insured [1]** 16/24
**intended [3]** 9/6 9/11 41/12
**intending [1]** 9/3
**intent [2]** 16/9 18/1
**intentional [2]** 15/21 15/23
**intentionally [2]** 17/15 33/12
**interested [1]** 7/5
**interfered [1]** 6/20
**interference [17]** 6/8 6/11 6/13
 6/17 6/21 7/1 7/3 7/7 7/21 8/23
 9/15 10/22 10/23 11/3 15/21
 15/24 17/14
**interfering [1]** 10/19
**internal [1]** 35/13
**interpret [4]** 5/1 6/3 9/4 16/15
**interpretation [2]** 13/20 17/17
**interpreted [2]** 7/14 9/19
**interpreting [2]** 9/22 14/1
**interrogatories [2]** 18/24 28/6
**involvement [1]** 6/10
**involving [1]** 4/19
**is [156]**
**isn't [4]** 12/14 21/13 26/25
 44/19
**issue [18]** 8/18 13/7 18/10
 24/10 25/13 25/17 26/17 26/25
 31/9 31/16 32/24 39/5 39/5
 39/7 39/24 42/25 43/17 43/23
**issued [2]** 36/11 42/25
**issues [1]** 27/4
**it [99]**
**it's [54]**
**its [35]** 4/12 5/16 5/23 8/17
 8/21 10/5 12/2 13/21 14/5
 14/11 15/11 18/18 18/21 19/1
 19/9 19/10 21/2 21/25 22/11
 22/12 23/1 23/20 23/21 24/9
 24/14 24/16 24/17 29/22 32/19
 32/19 40/12 40/13 40/25 43/17
 44/13
**itself [4]** 8/4 12/1 12/1 26/12

**J**

**January [2]** 34/9 40/18
**January 14th [2]** 34/9 40/18
**Jindal [2]** 2/10 3/8
**JUDGE [1]** 1/17
**judgment [10]** 18/9 25/12 27/5
 27/19 32/21 39/8 40/19 41/3
 41/10 43/19

**Julia [2]** 2/3 3/15
**June [2]** 20/4 36/10
**June 1st [2]** 20/4 36/10
**jurisdiction [1]** 6/6
**jury [1]** 24/14
**just [37]** 5/7 5/18 8/10 8/13
 10/12 10/16 10/25 11/5 13/16
 13/17 14/12 14/23 15/6 15/15
 16/24 17/12 20/15 20/23 21/19
 24/1 26/8 27/7 28/13 29/20
 29/22 31/6 31/21 32/6 35/3
 35/15 37/7 38/11 40/3 40/14
 40/22 42/2 42/21

**K**

**kicking [1]** 20/3
**kind [8]** 15/25 18/25 30/16
 34/12 35/19 35/19 35/19 43/16
**knew [2]** 17/4 17/5
**know [20]** 3/25 9/14 9/15 12/22
 13/1 18/22 20/10 21/15 31/3
 31/20 32/7 32/8 32/8 32/8
 40/11 40/14 40/14 40/15 40/21
 41/18
**knows [4]** 28/11 31/22 31/22
 31/23

**L**

**language [6]** 7/16 8/4 21/7
 22/17 23/5 35/16
**last [2]** 25/25 44/11
**launch [1]** 13/15
**Laura [2]** 2/10 3/12
**law [39]** 6/5 6/5 6/25 7/8 7/20
 8/10 8/17 9/7 10/16 11/1 21/7
 21/12 21/15 21/15 21/21 23/17
 24/23 27/10 28/9 31/8 32/3
 32/7 32/8 32/8 32/9 32/22
 32/25 33/2 34/20 35/8 35/10
 35/12 35/14 35/23 36/19 37/3
 40/4 41/15 44/14
**lay [2]** 22/9 24/9
**least [5]** 4/12 11/24 12/10 20/8
 29/10
**leave [1]** 12/1
**leaves [1]** 23/18
**legislative [1]** 35/14
**legislature [1]** 34/25
**lends [1]** 7/12
**Let [3]** 8/9 19/19 29/19
**let's [6]** 7/21 8/12 18/8 24/24
 29/16 29/17
**level [2]** 14/4 17/8
**liability [40]** 4/18 4/19 5/3 5/21
 6/8 6/25 7/9 7/9 7/21 7/24 8/4

8/16 8/20 9/1 9/13 9/17 9/21
 9/25 10/7 11/20 12/1 12/2
 12/12 12/14 12/24 12/25 13/1
 13/4 13/23 14/14 14/22 14/24
 15/16 16/3 16/16 17/16 18/5
 19/2 23/12 27/24
**liable [1]** 8/7
**liberty [1]** 30/12
**Liebman [1]** 2/15
**like [10]** 7/20 8/12 12/20 13/2
 18/25 20/24 25/24 29/23 34/16
 35/14
**limit [13]** 7/24 8/15 9/12 9/17
 12/1 12/24 12/25 13/1 13/4
 13/8 13/23 14/25 24/13
**limitation [16]** 5/3 5/21 7/9 8/4
 9/1 9/21 9/24 10/6 12/12 12/14
 14/14 14/22 14/24 16/3 16/16
 17/16
**limited [10]** 4/18 8/5 11/20
 18/5 25/21 36/13 37/22 38/3
 38/3 38/4
**limiting [2]** 4/19 32/19
**limits [1]** 4/12
**line [2]** 26/18 44/18
**list [2]** 23/1 43/25
**litigation [1]** 22/21
**little [1]** 36/8
**LLP [3]** 2/3 2/6 2/15
**long [4]** 8/24 10/16 31/25
 43/25
**long-term [1]** 31/25
**longer [3]** 34/23 34/24 40/9
**look [10]** 9/6 18/17 18/23 23/4
 27/11 28/20 32/9 32/21 32/22
 33/22
**looked [1]** 21/1
**looking [6]** 5/17 9/10 14/4
 41/22 41/23 42/4
**looks [1]** 12/20
**lost [2]** 20/8 20/9
**lot [1]** 43/13
**low [1]** 33/13
**LYNNE [5]** 1/7 2/14 3/16 3/17
 17/19

**M**

**made [4]** 10/12 27/16 27/17
 30/11
**main [1]** 10/21
**make [8]** 4/17 5/16 10/11 12/3
 15/2 28/13 41/4 42/19
**makes [1]** 14/21
**making [4]** 10/14 11/6 14/10
 32/1

**M**

**manageable [1]** 12/18
**manner [1]** 9/19
**many [3]** 20/10 36/13 42/14
**March [1]** 21/24
**Markley [2]** 2/3 3/15
**Markowitz [1]** 2/11
**masquerading [1]** 17/14
**matter [6]** 8/22 23/17 28/15 29/13 30/16 35/15
**Matthew [2]** 2/6 3/14
**may [8]** 4/10 22/15 23/23 30/14 37/15 40/22 42/19 42/24
**maybe [5]** 20/1 20/19 20/23 35/13 36/3
**me [19]** 4/5 5/1 6/3 7/23 8/9 8/11 9/4 13/16 17/25 19/19 26/18 29/19 29/22 31/20 32/9 39/1 41/6 41/8 43/13
**mean [8]** 11/17 14/9 25/22 26/2 28/1 28/8 28/9 32/7
**meaning [3]** 13/21 18/4 35/8
**means [2]** 14/14 22/19
**measure [1]** 19/25
**mechanism [1]** 4/18
**Medicaid [16]** 22/1 22/3 22/5 23/14 23/15 25/23 33/10 35/23 36/19 37/3 40/1 40/17 41/15 42/7 42/9 44/14
**mental [1]** 28/13
**mentioned [2]** 17/19 27/18
**met [1]** 41/14
**method [2]** 4/2 4/4
**methodology [2]** 6/19 14/1
**MICHAEL [1]** 1/16
**might [5]** 8/11 9/17 11/18 18/11 22/2
**minute [2]** 33/17 42/2
**minutes [1]** 40/15
**MO [2]** 1/4 3/5
**moment [3]** 5/18 32/25 41/8
**money [2]** 12/5 12/13
**month [1]** 19/17
**months [2]** 20/1 20/7
**more [20]** 7/5 20/19 21/18 22/9 22/12 23/6 23/9 25/2 25/4 27/6 29/6 30/1 31/1 31/8 32/2 32/10 32/13 33/20 38/8 38/13
**Morgan [2]** 2/15 3/16
**MOSMAN [1]** 1/16
**most [2]** 23/20 23/22
**mostly [1]** 18/11
**motion [42]** 3/21 18/3 18/8 18/8 21/24 21/25 22/7 22/10

22/15 25/11 25/17 25/24 26/4 26/13 26/14 26/23 27/3 27/5 27/17 27/19 28/18 29/1 29/2 29/4 29/12 29/12 31/17 32/20 33/1 36/19 38/8 38/10 38/10 40/9 40/19 40/25 41/2 41/3 41/10 41/17 41/25 43/19
**motions [6]** 3/20 24/7 24/7 24/10 25/16 37/21
**motivation [2]** 11/25 20/9
**motivations [2]** 18/1 35/13
**motives [1]** 31/21
**move [5]** 22/2 26/11 26/18 29/18 43/16
**moved [3]** 21/13 22/5 26/4
**moving [2]** 40/11 44/19
**Mr [5]** 2/6 2/9 2/10 2/14 2/15
**Mr. [4]** 29/15 35/1 35/2 36/11
**Mr. Gordon [1]** 36/11
**Mr. Murray [3]** 29/15 35/1 35/2
**Ms [2]** 2/3 2/10
**Ms. [15]** 3/21 4/3 4/15 5/4 7/7 11/6 12/11 13/25 15/15 15/23 16/12 17/7 17/8 39/18 42/17
**Ms. Novak [1]** 39/18
**Ms. Salerno [1]** 42/17
**Ms. Saxton [10]** 4/3 4/15 5/4 7/7 11/6 12/11 15/15 15/23 16/12 17/8
**Ms. Saxton's [3]** 3/21 13/25 17/7
**much [17]** 4/17 12/3 17/10 17/24 19/20 20/9 20/14 26/2 26/4 26/11 33/17 35/3 36/14 40/5 44/8 44/15 44/20
**multiple [1]** 37/21
**Murray [3]** 29/15 35/1 35/2
**must [3]** 14/3 24/25 40/6
**my [26]** 3/8 3/22 4/3 4/15 4/21 4/25 5/4 8/9 18/10 19/8 19/8 19/16 19/21 20/20 20/21 21/17 23/7 23/18 23/24 24/2 30/11 30/25 32/16 35/9 41/5 42/13

**N**

**N.W [1]** 2/4
**name [4]** 3/7 3/8 4/8 11/19
**named [1]** 16/10
**naming [1]** 11/11
**narrow [1]** 22/23
**nature [3]** 23/9 25/2 25/9
**neatly [1]** 23/22
**necessarily [3]** 5/21 8/19 24/7
**need [7]** 7/9 21/19 27/6 28/12 32/6 32/10 43/8

**needed [1]** 11/18
**needing [1]** 22/22
**needle [2]** 26/4 26/11
**needs [1]** 5/14
**neither [3]** 4/9 8/6 35/12
**never [4]** 23/10 28/6 34/8 36/1
**nevertheless [1]** 4/11
**new [4]** 19/11 19/20 23/3 44/1
**next [1]** 18/8
**nine [2]** 23/2 23/19
**Ninth [5]** 22/4 26/20 33/2 37/2 37/9
**no [22]** 1/4 3/5 5/16 13/12 14/24 17/8 20/20 29/17 30/19 31/12 31/12 32/3 32/3 32/13 34/23 34/24 36/16 38/17 40/9 41/23 43/3 44/18
**No. [4]** 38/17 38/18 43/18 43/23
**No. 1 [1]** 38/17
**No. 2 [1]** 38/18
**No. 3 [2]** 43/18 43/23
**non [1]** 1/3
**non-profit [1]** 1/3
**none [2]** 4/9 21/16
**nonsensical [1]** 14/15
**nonspecific [3]** 22/17 22/21 26/1
**normal [7]** 18/13 18/14 19/5 19/13 20/15 20/25 27/22
**normally [3]** 18/15 19/5 27/21
**not [86]**
**Notably [1]** 28/24
**noted [1]** 25/22
**notes [3]** 41/5 42/14 42/14
**nothing [3]** 14/16 22/12 30/4
**notice [4]** 24/22 28/20 29/6 36/11
**notified [1]** 39/11
**Novak [2]** 39/8 39/18
**November [1]** 39/17
**now [14]** 19/18 19/21 21/9 21/14 22/2 23/10 23/15 23/25 28/24 32/5 34/23 34/25 35/7 40/14
**number [5]** 22/3 24/6 28/22 28/22 28/23

**O**

**o0o [1]** 45/2
**objective [4]** 43/6 43/25 44/5 44/6
**objects [1]** 31/4
**obligated [9]** 15/11 21/3 23/8 24/16 24/21 25/8 26/9 29/25

**O**

**obligated... [1]** 30/1
**obligating [1]** 17/1
**obligation [7]** 21/5 24/25 30/7 31/17 32/13 33/20 43/4
**obligations [3]** 6/24 10/18 36/13
**obviate [1]** 9/20
**occasion [4]** 21/6 22/8 22/10 22/14
**occasions [2]** 21/23 23/8
**offer [1]** 31/19
**offered [4]** 39/10 39/16 39/20 39/21
**offers [1]** 22/11
**officers [4]** 5/22 9/20 15/11 17/3
**Official [1]** 45/11
**OHA [43]** 3/9 5/12 5/14 7/14 9/22 9/23 11/23 12/1 15/11 16/7 16/8 17/3 17/5 18/7 20/8 20/21 21/23 22/14 24/19 25/5 28/10 28/11 31/12 31/22 31/22 31/23 32/17 33/6 33/25 34/4 38/6 39/10 39/11 39/11 40/25 41/3 41/13 42/6 42/25 43/2 43/2 43/4 44/14
**OHA's [6]** 24/13 24/15 31/21 33/9 37/20 40/10
**okay [3]** 9/23 29/16 43/15
**once [2]** 28/17 40/19
**one [21]** 3/22 9/2 9/3 16/25 18/6 18/11 18/19 22/18 23/4 26/1 27/16 32/1 33/22 34/1 35/9 35/21 36/4 40/22 42/19 42/21 43/14
**only [21]** 4/19 5/13 6/15 7/4 7/14 9/5 16/8 16/20 18/5 21/14 23/4 23/13 23/22 25/21 31/7 42/1 42/6 43/6 43/9 43/14 44/5
**open [1]** 12/1
**opening [2]** 12/17 26/21
**operates [2]** 14/21 14/25
**operative [1]** 4/2
**opinion [1]** 22/4
**opponent [2]** 14/10 30/4
**opponent's [1]** 11/17
**opportunities [1]** 38/12
**opportunity [2]** 18/20 19/4
**opposed [1]** 11/3
**opposition [5]** 23/21 39/8 40/8 40/19 44/3
**oral [4]** 1/14 3/4 26/14 26/19
**ord.uscourts.gov [1]** 2/21

**order [1]** 30/11
**OREGON [16]** 1/2 1/3 1/6 1/7 1/8 2/9 3/6 3/11 3/13 5/9 5/11 6/5 8/25 18/7 33/2 40/4
**organization [2]** 7/15 10/20
**original [1]** 45/6
**originally [1]** 34/19
**other [24]** 7/18 9/16 10/6 12/7 16/19 21/1 21/14 21/21 22/13 22/17 23/2 23/3 25/22 27/10 27/12 28/9 30/8 30/16 30/18 32/25 34/16 35/20 37/6 38/12
**otherwise [4]** 5/16 19/22 20/11 30/1
**our [27]** 5/12 5/12 5/24 6/10 7/14 8/6 9/16 25/14 25/15 26/20 26/21 26/23 27/1 30/17 34/3 36/2 36/13 36/19 37/22 38/2 38/7 39/2 39/17 40/8 41/10 42/6 42/10
**out [29]** 4/24 6/16 6/16 6/17 7/15 8/1 8/7 9/11 10/1 12/7 17/20 17/21 18/18 18/20 18/25 19/1 19/4 19/9 20/4 22/9 22/19 24/9 26/24 33/12 36/6 36/7 38/11 39/15 40/20
**outcome [1]** 41/20
**outline [1]** 4/7
**outlined [2]** 9/9 10/16
**outside [1]** 38/1
**over [1]** 25/25
**Owens [3]** 2/10 3/12 42/17
**own [7]** 12/13 14/11 21/2 23/7 24/15 28/13 30/11

**P**

**p.m [2]** 3/2 44/24
**page [9]** 10/12 41/4 41/9 41/22 41/23 42/3 42/12 44/10 44/11
**paper [1]** 29/11
**papers [1]** 5/12
**paradox [1]** 44/19
**paragraph [6]** 19/18 19/22 28/24 28/25 29/8 29/17
**paragraphs [3]** 28/22 28/23 29/6
**Parrott [1]** 14/1
**part [7]** 10/1 24/6 36/25 40/8 40/10 40/12 40/13
**partial [1]** 18/9
**particular [6]** 8/5 15/13 16/21 19/9 19/17 30/9
**particularly [5]** 6/14 13/6 17/7 17/20 25/17
**parties [28]** 4/7 4/13 4/23 8/11

8/15 9/6 9/11 9/13 10/14 11/10 14/7 14/9 15/1 15/2 16/7 16/9 16/10 16/18 17/4 17/5 19/15 27/21 41/11 41/15 42/11 43/18 44/5 44/7
**parties' [5]** 31/22 34/21 42/23 43/7 43/24
**partner [1]** 33/11
**partners [1]** 31/24
**partnership [1]** 31/25
**party [11]** 8/6 11/6 11/11 11/19 16/2 16/13 16/15 16/17 16/19 30/7 31/18
**party's [1]** 27/12
**passed [1]** 35/1
**past [1]** 22/22
**pause [3]** 5/18 33/16 33/19
**pay [1]** 12/13
**paying [1]** 12/13
**PC [1]** 2/11
**penalize [1]** 33/6
**pendency [1]** 29/4
**pending [1]** 29/2
**people [3]** 4/20 15/7 28/5
**perfectly [2]** 15/1 15/4
**perform [1]** 4/20
**perhaps [1]** 22/9
**period [2]** 19/17 20/22
**Perkins [2]** 2/3 2/6
**personal [1]** 29/15
**perspective [1]** 7/11
**phrase [4]** 8/9 21/13 24/22 44/2
**place [2]** 13/9 20/5
**plain [3]** 12/20 13/21 18/4
**plaintiff [12]** 1/4 2/3 3/14 3/15 18/17 18/18 18/22 19/1 19/2 21/18 43/10 43/10
**plaintiff's [1]** 10/8
**plausible [3]** 6/15 7/4 17/21
**played [1]** 19/1
**plays [1]** 4/24
**pleaded [3]** 31/11 34/18 34/18
**pleading [1]** 24/22
**pleadings [1]** 23/21
**please [2]** 3/7 3/23
**pled [5]** 7/1 8/20 8/22 8/22 31/14
**point [22]** 10/12 13/19 19/3 21/1 22/22 24/24 25/1 25/7 26/24 27/7 27/14 27/20 28/2 29/14 29/25 38/6 38/11 38/14 41/17 42/19 43/11 43/20
**points [3]** 5/7 10/13 37/17
**policy [2]** 14/17 14/20

**policy-based [2]** 14/17 14/20
**Portland [5]** 1/8 2/4 2/12 2/16 2/20
**position [10]** 5/12 5/24 6/10 16/12 18/18 29/19 29/24 30/5 31/5 42/1
**positions [1]** 36/4
**posture [1]** 26/7
**potential [1]** 41/20
**potentially [1]** 11/22
**practice [1]** 22/18
**preliminary [1]** 14/5
**premise [2]** 19/7 24/15
**prepare [2]** 21/10 40/21
**presentation [1]** 24/14
**presumably [1]** 13/8
**presume [1]** 28/12
**presume anything [1]** 28/12
**presumed [1]** 28/10
**pretty [1]** 23/22
**prevent [1]** 19/1
**prevents [1]** 9/25
**previously [3]** 23/4 23/8 23/11
**primarily [1]** 21/25
**principle [1]** 34/15
**principles [5]** 5/25 6/2 6/13 8/10 9/9
**prior [9]** 21/2 21/5 22/18 23/8 25/1 25/14 25/25 32/14 32/25
**probably [2]** 23/16 30/24
**problems [1]** 35/9
**procedural [6]** 18/11 19/14 23/6 23/25 24/5 26/7
**proceed [1]** 28/18
**proceedings [3]** 1/15 44/24 45/5
**proceeds [1]** 24/15
**profit [1]** 1/3
**program [2]** 35/1 35/2
**prohibit [1]** 23/12
**project [1]** 31/24
**properly [1]** 27/16
**proposition [2]** 7/19 24/20
**protection [1]** 8/25
**provide [5]** 16/10 17/2 27/6 30/7 43/4
**provides [1]** 36/21
**provision [20]** 4/9 4/13 4/14 5/8 7/23 8/4 11/22 15/13 16/21 16/24 16/24 17/4 17/16 34/1 34/1 34/4 34/11 36/20 38/16 38/18
**provisions [7]** 7/8 10/6 16/22

16/23 17/18 23/2 37/23
**psychological [1]** 35/13
**punitive [1]** 33/11
**purpose [1]** 9/20
**purposes [4]** 19/24 20/20 22/21 25/9
**put [13]** 11/21 16/12 24/10 25/16 28/5 29/17 29/24 30/17 31/16 32/11 33/11 36/23 39/21
**puts [1]** 31/9

## Q

**question [10]** 6/24 6/24 8/9 19/6 19/8 21/3 24/6 28/7 36/9 37/19
**questions [13]** 18/19 19/8 20/10 28/16 36/1 36/16 36/17 37/18 37/24 37/25 38/4 39/10 39/13

## R

**raise [1]** 19/11
**rates [24]** 6/17 33/7 33/7 33/11 33/13 36/22 36/24 37/5 39/1 39/9 39/11 39/12 39/14 39/15 39/16 39/18 39/19 39/20 39/21 40/3 41/13 42/25 43/1 43/3
**rational [2]** 15/1 15/4
**reach [1]** 4/12
**read [5]** 3/24 4/5 14/13 14/14 17/25
**reading [1]** 12/20
**ready [1]** 21/20
**real [2]** 9/16 9/16
**reality [1]** 4/22
**really [13]** 4/20 6/11 6/20 7/6 9/5 9/6 9/11 9/21 22/11 26/4 26/10 26/25 31/7
**reason [4]** 19/13 20/7 33/4 39/24
**reasonable [26]** 17/17 24/17 27/13 27/15 28/8 31/13 32/20 33/5 34/21 37/4 37/4 37/6 38/21 38/25 41/14 41/18 42/7 42/10 42/24 43/7 43/9 43/12 43/25 44/4 44/5 44/6
**reasonableness [1]** 37/7
**reasonably [2]** 7/13 9/22
**reasoning [1]** 5/4
**reasons [2]** 35/21 35/21
**receive [1]** 15/13
**recent [1]** 23/20
**recently [1]** 24/1
**recess [2]** 44/22 44/23
**recited [1]** 14/5

**recognize [1]** 24/13
**reconsider [3]** 22/8 22/11 25/24
**reconsideration [8]** 25/18 26/4 26/13 26/14 26/24 29/2 29/4 33/1
**record [5]** 3/7 28/15 28/20 29/11 45/5
**recovery [1]** 9/25
**reference [2]** 14/12 23/19
**referred [1]** 31/23
**referring [1]** 15/7
**reflected [2]** 37/21 44/7
**regard [1]** 4/13
**regarding [1]** 32/23
**regulations [13]** 22/1 22/3 22/5 23/15 23/16 25/23 32/23 39/6 40/1 40/18 41/12 42/8 42/9
**regulatory [2]** 22/20 30/22
**reinforcing [1]** 16/8
**reject [1]** 24/20
**rejected [2]** 21/8 21/9
**relate [1]** 7/18
**related [5]** 8/8 29/7 29/8 39/6 40/4
**relations [2]** 15/22 15/24
**relationships [1]** 25/25
**relatively [1]** 22/16
**relied [1]** 14/16
**relief [1]** 29/7
**rely [2]** 40/1 40/3
**relying [5]** 21/25 27/9 27/10 30/22 44/12
**remain [2]** 24/22 39/6
**remains [1]** 39/24
**remarks [1]** 14/5
**removed [1]** 36/14
**repeat [2]** 4/1 16/5
**reply [3]** 10/8 17/11 26/21
**REPORTER [2]** 2/19 45/11
**require [2]** 31/1 31/18
**required [3]** 25/1 25/4 31/15
**requirement [3]** 31/11 33/3 33/4
**requires [2]** 18/2 30/4
**resist [1]** 28/4
**resolved [1]** 27/4
**respect [1]** 40/3
**respond [3]** 37/15 39/11 44/16
**responded [2]** 21/24 28/5
**responding [1]** 39/13
**response [6]** 17/8 20/13 23/21 33/21 36/22 40/23
**responsibility [1]** 21/18

# R

responsible [1] 33/10
rest [1] 3/23
return [1] 42/21
reversed [1] 20/23
review [1] 39/9
reviewed [1] 39/22
RFPs [1] 28/6
rid [1] 20/8
right [15] 7/10 11/25 12/3 12/25 16/4 19/18 27/24 30/20 30/23 31/4 32/15 36/21 38/17 41/4 43/11
rights [3] 6/12 8/23 17/14
risk [3] 9/21 12/18 17/17
RMR [2] 2/19 45/10
Room [1] 2/20
ruled [1] 20/3
ruling [3] 20/21 23/6 29/12
run [2] 5/4 24/2

# S

S.W [3] 2/11 2/16 2/20
said [26] 7/2 9/23 16/5 19/11 20/17 22/25 26/1 27/5 29/16 29/17 30/21 31/12 32/2 37/19 38/16 38/17 38/24 39/12 39/23 41/1 41/4 41/6 41/25 42/6 42/9 44/14
Salerno [3] 2/10 3/12 42/17
same [10] 4/14 12/2 12/4 13/5 19/22 34/24 38/21 38/21 39/3 40/17
sane [3] 12/21 12/22 13/2
SAXTON [17] 1/7 2/14 3/16 3/18 4/3 4/15 5/4 6/19 7/7 8/24 11/6 12/11 15/15 15/23 16/12 17/8 17/19
Saxton's [3] 3/21 13/25 17/7
say [33] 4/21 9/12 9/18 11/2 12/10 12/22 13/21 14/21 18/6 20/14 21/4 21/19 22/4 23/22 25/21 26/25 27/14 31/8 31/21 32/2 32/13 32/18 33/20 33/23 35/11 35/18 38/18 40/6 40/17 40/22 41/9 42/8 43/11
saying [9] 8/21 10/1 10/6 17/12 26/9 31/7 32/5 34/25 35/7
says [11] 8/6 9/4 9/5 10/16 30/6 31/13 34/3 38/14 42/6 43/2 43/23
scene [1] 18/23
scope [9] 5/2 5/19 6/6 6/22 10/17 11/23 27/12 27/15 29/22

score [1] 21/13
searching [1] 21/20
Seattle [1] 2/7
second [4] 2/16 21/4 22/7 38/6
section [3] 15/8 16/8 41/10
see [5] 18/13 35/11 39/13 43/23 44/2
seeking [1] 20/22
seem [1] 4/5
seems [1] 16/14
sell [1] 35/9
SENIOR [1] 1/17
sense [4] 4/17 5/1 5/16 12/3
sentence [1] 44/12
serious [1] 19/11
seriously [1] 32/12
set [4] 6/15 31/21 33/11 43/3
sets [1] 19/9
setting [1] 6/17
settlement [6] 42/22 43/1 43/20 43/24 44/7 44/16
several [1] 16/22
shall [1] 8/6
she [3] 16/2 16/14 16/19
she's [3] 8/25 11/7 16/18
shield [2] 7/14 8/20
shielded [4] 6/8 10/18 10/21 10/24
shields [3] 6/25 7/8 7/20
shift [2] 19/10 22/6
shifted [1] 18/17
shifting [1] 19/1
shortly [1] 42/24
should [7] 16/15 18/6 20/19 21/4 32/21 34/13 44/12
shouldn't [1] 23/17
show [1] 13/15
showing [2] 20/15 36/4
shows [1] 17/4
shumway [4] 2/19 2/21 45/9 45/10
side [2] 9/3 30/8
signature [2] 45/7 45/7
signing [1] 45/4
similar [1] 16/14
simply [4] 29/10 35/25 36/25 39/21
since [6] 5/4 6/10 22/10 24/2 25/7 38/22
single [1] 33/10
sit [1] 9/12
situation [4] 7/20 8/3 9/16 13/22
slide [1] 13/15
so [75]

sole [1] 17/20
solely [1] 27/9
solidly [1] 37/11
some [15] 4/18 11/19 19/3 19/4 19/9 21/1 21/18 24/6 29/25 31/8 34/1 35/19 35/19 36/17 43/16
somebody [1] 31/4
somehow [4] 6/12 6/20 7/14 24/16
someone [1] 32/9
something [10] 11/7 12/18 12/21 15/1 20/24 21/16 21/18 22/6 31/18 35/12
sometimes [2] 40/20 40/20
sorry [3] 33/18 43/5 44/10
sort [7] 18/22 19/14 20/12 20/21 21/4 23/6 23/11
sound [3] 37/5 39/1 39/23
soundness [10] 32/23 35/23 36/25 37/8 39/5 39/6 39/24 40/2 40/8 40/12
sounds [1] 4/21
source [1] 14/10
sources [14] 24/9 24/17 25/15 25/16 26/22 27/1 28/8 28/25 29/8 31/13 32/20 38/1 38/13 44/1
speak [1] 11/3
speaking [2] 6/1 23/3
special [2] 3/10 3/12
specific [17] 22/12 23/4 23/9 24/21 24/25 25/2 25/5 25/9 28/23 30/1 30/3 30/23 30/24 32/6 33/2 34/24 38/4
specifically [8] 11/2 11/4 17/5 17/21 23/13 23/13 28/23 29/8
specificity [3] 26/5 26/11 31/2
sprung [1] 18/22
stage [2] 25/12 27/3
staked [1] 18/18
standard [1] 27/17
standards [8] 22/19 25/20 25/25 26/2 26/3 30/22 31/22 32/6
standing [1] 7/11
standpoint [2] 12/18 17/18
stands [1] 9/3
start [4] 5/5 7/21 8/13 22/22
started [1] 26/15
starters [2] 9/7 11/6
starting [1] 9/6
starts [1] 25/8
state [8] 1/7 3/7 5/9 17/2 18/7 28/13 33/10 38/9

**stated [5]** 20/8 21/6 25/24 35/9 36/3
**statement [1]** 38/8
**statements [5]** 25/22 30/17 30/21 31/1 31/1
**states [4]** 1/1 1/17 2/19 5/10
**statutes [1]** 41/12
**stayed [1]** 39/2
**stays [1]** 32/19
**step [1]** 24/12
**still [7]** 7/17 12/4 14/20 29/7 32/21 32/24 34/7
**stopped [1]** 36/14
**straight [1]** 10/25
**straight-up [1]** 10/25
**Street [1]** 2/4
**struggling [1]** 7/17
**subject [4]** 10/15 11/7 17/19 43/3
**subjected [1]** 11/7
**subjectively [1]** 44/4
**submit [1]** 33/14
**submitted [1]** 3/24
**subsequent [1]** 39/18
**substantive [1]** 18/11
**subsumed [1]** 8/24
**such [5]** 10/6 23/23 31/11 38/10 38/23
**sue [1]** 15/23
**sues [1]** 32/9
**sufficient [2]** 33/5 43/18
**suggesting [1]** 31/6
**suggests [1]** 4/17
**Suite [3]** 2/7 2/11 2/16
**summarize [1]** 42/17
**summary [10]** 18/9 25/11 27/5 27/19 32/20 39/8 40/19 41/3 41/10 43/19
**support [2]** 39/8 40/1
**suppose [3]** 8/21 11/21 20/17
**sure [4]** 28/14 29/21 31/17 41/4
**surprised [1]** 40/7
**survive [1]** 43/19

**T**

**take [8]** 3/22 9/6 10/5 15/4 25/13 32/12 42/2 44/22
**takes [1]** 20/5
**taking [1]** 18/17
**talk [3]** 26/15 31/21 39/4
**talked [6]** 24/5 25/15 25/19 25/20 26/21 31/24
**talks [1]** 24/8
**target [1]** 40/11
**teaches [1]** 14/3
**tee [1]** 21/8
**tees [1]** 21/16
**tell [5]** 6/3 9/2 13/16 41/6 42/5
**telling [1]** 9/4
**tells [1]** 17/25
**template [3]** 18/12 19/13 20/15
**tend [1]** 31/1
**tends [2]** 5/4 7/24
**tentative [8]** 3/22 4/3 4/25 18/10 23/18 23/24 24/2 32/19
**term [8]** 14/6 16/7 16/15 16/17 16/20 31/25 33/4 40/4
**terms [10]** 4/4 4/16 4/22 4/23 5/2 5/16 11/24 14/11 23/20 26/5
**testimony [2]** 35/25 36/20
**text [15]** 4/16 7/6 9/3 9/4 9/4 9/10 12/20 13/20 14/4 14/13 14/15 14/20 14/23 16/6 18/2
**text-based [1]** 14/20
**than [14]** 4/22 21/18 22/10 22/13 23/7 25/2 26/17 27/23 30/15 30/19 32/2 32/10 34/16 35/4
**Thank [17]** 3/19 5/6 13/10 13/14 16/4 17/10 17/24 24/4 33/16 33/17 37/14 40/5 41/21 42/16 44/8 44/15 44/21
**that [335]**
**that's [37]** 4/21 6/5 6/11 8/18 9/15 12/9 12/16 12/23 14/22 15/3 15/18 15/24 17/14 17/16 17/23 18/8 20/15 24/10 24/24 27/14 27/17 27/18 27/25 28/14 28/19 28/19 30/24 31/3 32/14 32/22 34/8 35/3 35/8 35/12 42/23 43/6 44/14
**their [22]** 6/7 6/7 6/22 6/23 7/6 10/11 10/18 12/13 14/22 28/13 28/17 29/6 34/21 37/21 37/21 37/23 37/24 40/8 41/18 41/25 44/1 44/3
**them [3]** 10/14 11/19 43/11
**theme [1]** 4/11
**then [21]** 3/23 5/14 5/19 7/9 9/11 12/12 14/11 18/13 18/17 20/14 22/14 23/2 27/6 29/17 30/2 32/6 35/13 35/15 38/17 43/17 43/23
**Theoretically [1]** 12/6
**theories [3]** 19/2 19/3 27/24
**theory [10]** 4/22 6/15 18/16
**18/21 19/10 23/12 34/8 34/10 36/5 38/3**
**there [15]** 4/7 4/9 5/18 16/6 19/3 19/16 21/1 21/17 22/15 29/14 33/16 33/19 35/18 38/12 38/23
**there's [7]** 9/14 14/15 15/16 19/20 22/6 23/15 26/23
**therefore [3]** 12/19 15/17 20/10
**therein [1]** 9/1
**these [7]** 7/18 16/23 27/2 27/4 29/14 35/3 38/18
**they [48]**
**they're [14]** 5/10 10/18 10/21 10/24 12/4 21/10 23/16 34/16 34/23 34/25 35/6 40/18 40/20 40/20
**thing [6]** 23/13 30/25 31/7 40/23 42/21 44/6
**things [14]** 21/14 21/15 21/21 22/3 22/17 23/2 23/3 25/19 25/24 26/21 27/10 27/12 28/9 34/24
**think [48]**
**thinking [1]** 4/22
**thinks [1]** 27/5
**third [7]** 2/7 2/20 16/10 16/13 22/14 38/14 38/22
**third-party [1]** 16/13
**this [98]**
**thoroughly [1]** 39/22
**those [19]** 5/7 5/16 17/21 19/3 23/3 24/7 24/10 25/16 26/1 26/17 27/12 28/16 34/24 35/21 37/4 39/11 39/12 39/15 39/16
**though [4]** 13/24 15/19 20/17 26/9
**thought [3]** 18/12 26/9 33/21
**thoughts [2]** 3/23 18/10
**three [8]** 18/6 19/8 19/17 20/1 20/2 20/7 21/23 38/23
**three-and-a-half-month [1]** 19/17
**through [11]** 5/11 5/13 12/2 12/5 13/4 13/4 18/7 18/18 29/25 30/14 33/6
**throughout [2]** 19/22 37/20
**tied [1]** 34/24
**time [10]** 4/3 21/2 21/25 22/12 26/7 29/15 34/21 36/13 36/17 43/22
**timeline [1]** 36/9
**timely [1]** 19/21
**times [6]** 16/17 16/18 16/20

**T**

**times... [3]** 31/23 38/12 44/3
**today [11]** 3/4 3/20 19/8 20/20 21/5 22/25 26/10 35/7 37/10 37/22 44/21
**today's [1]** 25/9
**together [1]** 14/14
**Tolbert [1]** 26/17
**told [2]** 21/10 36/17
**too [3]** 23/10 33/13 42/14
**took [3]** 29/3 34/1 42/1
**tort [11]** 5/25 6/2 7/8 7/8 7/20 8/10 8/17 9/7 9/9 15/19 15/22
**tort hornbook [1]** 7/8
**tort-based [1]** 15/19
**tortious [12]** 6/8 6/11 6/13 6/21 6/25 7/6 7/21 8/23 9/14 10/22 10/23 11/3
**tough [1]** 35/9
**tradition [1]** 21/16
**traditional [2]** 5/25 6/2
**traditionally [2]** 6/4 6/22
**transcript [3]** 1/15 45/5 45/6
**transform [1]** 31/25
**trial [20]** 18/15 19/2 21/8 21/17 21/19 22/24 23/10 25/1 25/1 25/7 25/8 30/3 30/12 30/17 34/3 34/3 35/20 36/5 38/17 40/21
**tried [4]** 3/24 18/9 22/18 38/18
**tries [1]** 13/24
**triggers [1]** 31/8
**troubled [1]** 24/22
**true [1]** 36/16
**try [4]** 18/12 18/25 19/5 24/13
**trying [7]** 9/10 10/4 16/12 18/1 18/2 22/19 41/19
**tune [1]** 13/5
**turn [3]** 18/8 24/3 29/16
**two [14]** 3/20 4/7 4/13 7/18 9/13 10/13 16/6 16/23 18/5 19/20 32/1 34/4 34/20 37/23
**type [4]** 13/7 15/22 26/16 26/16
**types [1]** 27/4
**typically [1]** 27/4

**U**

**unambiguous [3]** 4/6 5/2 5/3
**unbiased [1]** 39/1
**under [5]** 4/20 8/25 9/23 24/22 44/22
**understand [13]** 3/25 7/23 8/11 9/5 11/25 15/6 22/2 26/8 29/22 31/5 31/7 32/4 32/7

**understanding [5]** 27/23 30/25 35/2 37/11 38/2
**understood [2]** 35/4 37/2
**undertook [1]** 21/2
**unfair [2]** 23/24 33/6
**unfairness [1]** 36/4
**UNITED [3]** 1/1 1/17 2/19
**unknown [1]** 18/1
**unless [1]** 16/10
**unreasonable [6]** 4/6 6/18 13/3 13/20 33/7 33/14
**unsolicited [1]** 30/8
**unsound [2]** 6/18 33/7
**untenable [1]** 33/15
**until [2]** 20/3 40/15
**up [21]** 3/22 8/11 10/25 12/4 12/12 12/17 12/20 20/1 20/11 20/19 21/4 21/8 21/17 24/12 29/13 30/2 30/14 34/2 37/18 39/10 43/22
**upon [3]** 5/25 6/4 14/16
**upset [1]** 34/5
**us [3]** 9/24 40/21 44/19
**use [2]** 4/8 18/12
**used [3]** 13/2 16/18 16/20
**using [2]** 5/1 6/18
**usually [1]** 31/3

**V**

**vague [2]** 22/16 23/4
**various [1]** 4/12
**verbal [1]** 35/16
**versus [1]** 3/5
**very [14]** 17/10 17/24 19/11 20/9 20/16 26/1 26/17 33/17 34/5 40/5 40/6 43/21 44/8 44/15
**view [13]** 4/15 4/21 7/14 8/6 13/3 21/17 22/16 22/20 23/7 23/18 23/23 23/24 25/8
**views [4]** 4/3 4/25 24/2 32/19
**violate [2]** 14/9 14/16
**violated [1]** 34/21
**violates [1]** 13/25
**violating [2]** 32/9 34/16
**visions [1]** 14/12
**voluntarily [1]** 31/19

**W**

**WA [1]** 2/7
**wait [1]** 39/13
**want [8]** 7/10 9/17 22/2 31/6 31/20 32/5 38/11 41/4
**wanted [3]** 11/10 17/6 39/4
**was [42]** 17/15 19/22 19/24

21/3 21/7 21/17 22/7 22/8 24/16 26/1 26/6 26/19 27/8 27/11 27/14 29/2 29/2 29/3 29/5 29/14 31/11 32/3 32/6 33/23 34/18 34/19 36/3 36/4 36/10 36/18 37/3 37/3 37/7 37/11 38/3 38/3 38/4 38/7 38/15 40/9 41/18 41/23
**way [18]** 4/11 8/10 9/5 11/19 11/21 12/4 13/1 14/15 14/21 16/25 19/19 20/12 20/21 20/25 29/25 30/2 33/11 33/22
**ways [4]** 4/8 4/12 20/12 21/1
**we [87]**
**we'd [1]** 7/12
**we'll [2]** 27/6 39/13
**we're [14]** 5/8 8/21 9/12 10/2 11/22 14/20 21/19 22/21 23/10 27/2 30/22 35/20 40/21 44/22
**we've [6]** 5/11 6/9 9/9 25/12 32/25 44/18
**well [21]** 6/6 7/11 7/19 8/14 8/18 9/12 9/24 12/11 15/6 15/14 20/13 20/16 21/19 22/22 26/6 27/10 31/10 34/25 39/12 43/11 43/14
**went [2]** 25/6 34/2
**were [31]** 6/17 23/5 24/20 25/1 25/2 25/16 26/1 26/9 27/10 33/7 33/8 35/11 36/17 36/18 37/5 38/9 38/25 39/10 39/16 39/16 39/20 39/21 39/23 41/19 41/19 41/22 42/7 42/24 43/7 43/15 43/25
**weren't [4]** 24/10 25/16 26/9 27/9
**what [73]**
**what's [2]** 13/16 33/21
**whatever [2]** 43/21 43/22
**when [24]** 6/14 15/4 15/12 17/6 20/8 21/23 22/7 22/8 22/14 22/21 24/8 25/15 26/10 28/19 29/2 29/13 32/21 37/9 38/9 41/2 41/6 41/17 42/8 42/12
**where [21]** 7/10 9/17 11/20 13/6 13/22 15/10 17/20 19/17 21/10 23/4 26/14 26/25 28/21 29/16 32/9 37/18 37/19 37/19 37/20 37/25 44/19
**whether [7]** 8/22 9/2 18/22 21/1 35/15 40/11 43/10
**which [28]** 4/10 4/10 5/10 6/24 7/1 8/19 9/21 9/25 14/3 14/5 15/22 16/1 16/24 17/8 19/9 21/1 23/9 23/12 24/24 25/12

**which... [8]** 26/3 29/2 32/23 36/22 39/17 41/2 42/6 43/18
**while [4]** 10/1 10/5 29/1 34/6
**whisper [1]** 23/15
**who [4]** 4/20 5/15 6/6 10/2
**whom [1]** 18/5
**why [15]** 6/2 7/1 8/10 8/15 9/11 11/18 11/25 14/9 22/2 27/17 27/18 32/24 34/15 43/8 43/9
**will [5]** 9/15 15/15 42/11 42/13 42/14
**Wilson [2]** 2/9 3/10
**wish [1]** 17/11
**within [10]** 6/6 6/22 7/7 10/17 15/18 16/1 16/2 16/19 35/7 35/16
**without [6]** 4/18 14/12 18/1 18/2 30/3 45/6
**witness [4]** 30/17 30/21 30/25 31/1
**word [2]** 4/8 13/2
**words [3]** 19/20 35/8 41/7
**would [55]**
**wouldn't [4]** 4/17 5/19 11/6 30/20
**written [1]** 4/23
**wrong [3]** 13/16 25/6 36/4

## Y

**Yeah [1]** 9/18
**year [4]** 20/6 33/4 40/4 43/6
**years [2]** 22/17 25/25
**yes [15]** 5/24 5/25 7/11 10/13 12/17 13/6 13/18 13/25 15/9 30/10 35/13 40/2 40/3 40/24 42/20
**yet [1]** 14/19
**Yogman [8]** 4/2 4/25 14/1 14/3 14/9 14/16 17/7 17/25
**you [125]**
**you'd [7]** 12/17 18/17 18/23 19/1 19/5 35/11 41/8
**you'll [1]** 44/2
**you're [8]** 12/11 15/14 18/15 29/24 30/1 32/1 40/14 42/3
**you've [4]** 3/24 8/10 17/18 32/2
**your [72]**
**yourself [2]** 12/17 25/21

## Z

**Zeno's [1]** 44/18